UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,

Plaintiffs,

vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.

Defendants.

10 Civ. 6950 (LBS) (JCF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PLAINTIFF PARISI'S CLAIMS AND COMPEL INDIVIDUAL ARBITRATION**

PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
I. FACTUAL BACKGROUND ..... 1
A. The Parties And Plaintiff's Complaint ..... 1
B. Terms Of Plaintiff's Agreement To Arbitrate ..... 2
C. The Dispute Between The Parties ..... 3
II. ARGUMENT ..... 4
A. The Parties Agreed to Resolution of Plaintiff's Claims by Arbitration on an Individual Basis ..... 4
B. The Arbitration Agreement's Text Confirms The Conclusion That Class Arbitration Is Not Permitted ..... 8
C. The Determination That Plaintiff's Class Action Claims Are Not Arbitrable Is For This Court To Decide ..... 9
III. THE COURT SHOULD STAY PLAINTIFF'S CLAIMS ..... 10
IV. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**


*Anwar v. Fairfield Greenwich Ltd.*,
No. 09 Civ 0118(WM), 2010 WL 3431126 (S.D.N.Y. Aug. 20, 2010) ....................................10

*Bandler v. Charter One Bank*,
No. 451-7-03, 2010 WL 3617115 (Vt. Super. Ct. Aug. 2, 2010) ........................................7, 8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................................................................................................10

*Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.*,
191 F.3d 198 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001)............................................3

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
130 S. Ct. 2847 (2010)..................................................................................................10

*Jock v. Sterling Jewelers, Inc.*,
No. 08-2875, Dkt. No. 87 (S.D.N.Y. Aug. 9, 2010)..............................................................5

*Jock v. Sterling Jewelers, Inc.*,
No. 08 Civ. 2875(JSR), 2010 WL 2898294 (S.D.N.Y. July 26, 2010) ........................5, 6, 7, 9

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010).............................................................................................3

*Rent-a-Center, West, Inc. v. Jackson*,
130 S. Ct. 2772 (2010)...................................................................................................9

*Rice v. Brown Brothers Harriman & Co.*,
No. 96-6326 (MBM), 1997 WL 129396 (S.D.N.Y. Mar. 21, 1997) ........................................3

*Stern v. eSpeed, Inc.*,
No. 06-958 (PKC), 2006 U.S. Dist. LEXIS 68655 (S.D.N.Y. Sept. 22, 2006) .........................3

*Stolt-Nielsen N.A. v. Animal Feeds Int'l. Corp.*,
130 S. Ct. 1758 (2010)..........................................................................................3, 4, 5, 8


**STATUTES**


9 U.S.C. § 3....................................................................................................................10

# INTRODUCTION

Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs" or the "firm") submit this memorandum of law in support of their motion to stay the claims of plaintiff Lisa Parisi ("Plaintiff") and refer them to individual arbitration before the American Arbitration Association ("AAA").

Plaintiff, a former Managing Director of Goldman Sachs, is one of three named plaintiffs who have filed a putative gender discrimination class action against the firm. At the time Plaintiff was promoted to Managing Director, however, she signed an agreement committing to arbitrate any employment-related claims. Therefore, rather than pursuing her claims in this forum, on a class-action basis, Plaintiff is obligated to arbitrate her individual dispute with the firm. Plaintiff acknowledges that her claims are subject to arbitration but contends that she should be permitted to arbitrate on behalf of a putative class, rather than on an individual basis. As the United States Supreme Court confirmed earlier this year, however, and courts within this Circuit have since reaffirmed, Plaintiff cannot proceed on anything other than an individual basis. By this motion, Goldman Sachs seeks an order compelling such arbitration, and staying Plaintiff Parisi's allegations in this action.

## I. FACTUAL BACKGROUND

### A. The Parties And Plaintiff's Complaint

Goldman, Sachs & Co. is a financial services firm engaged primarily in the investment banking, investment management and securities businesses. (Complaint ("Compl.") ¶ 1 (a copy of the Complaint is attached hereto as Ex. A).) The Goldman Sachs Group, Inc. is the indirect parent of Goldman, Sachs & Co. (*Id*. at ¶ 22.)

Goldman Sachs hired Plaintiff in 2001 to serve as a Vice President in the firm's asset management area, Goldman Sachs Asset Management. (*Id.* at ¶ 104.) At that time,

Plaintiff held an M.B.A. degree and had more than 15 years professional experience in the asset management business. Goldman Sachs promoted Plaintiff to Managing Director in 2003. (Compl. ¶ 104.) Plaintiff's employment continued until November 2008, when her employment was terminated as part of an extensive firm-wide reduction in force necessitated by the severe economic crisis of that time. (*Id.* at ¶ 113.)

In her Complaint, Plaintiff alleges gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law ("NYCHRL"). (Compl. ¶¶ 138, 146 & 154.) She asserts claims individually and on behalf of a putative class of allegedly similarly situated individuals.

B. Terms Of Plaintiff's Agreement To Arbitrate

On or about November 4, 2003, in connection with Plaintiff's promotion to Managing Director, she signed a letter agreement with the firm, laying out certain terms and conditions of her employment ("Managing Director Agreement"). Section 4 of the Managing Director Agreement sets forth Plaintiff's commitment to arbitrate all employment-related disputes:

> [A]ny dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration in New York City before, and in accordance with the rules then obtaining of, the New York Stock Exchange, Inc. ("NYSE") or if the matter is not arbitrable before the NYSE, the National Association of Securities Dealers ("NASD"). If both the NYSE and the NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

(*See* Ex. C, Declaration of Erin E. LaRuffa ¶ 2, Attachment 1, p. 6 ("Arbitration Agreement")). The Managing Director Agreement defines "Employment Related Matters" as matters directly

relating to Plaintiff and her employment relationship with the firm. (*Id.* at p. 5; *infra* at p. 8.) Plaintiff's obligations under the Managing Director Agreement – including the Arbitration Agreement – survived the termination of her employment. (*Id.* at § 5.) [1]

C. The Dispute Between The Parties

After the Complaint was filed, counsel for Goldman Sachs raised with Plaintiff's counsel the existence and terms of the Managing Director Agreement. After conferring, the parties agreed that Plaintiff's claims are arbitrable. The parties do not agree, however, on the scope of the referral to arbitration. Pursuant to the terms of the Arbitration Agreement and applicable law, the arbitration must proceed on an individual basis, and the Court therefore should refer the matter to AAA as an individual arbitration.[2]

[1] Plaintiff received ample consideration for the Arbitration Agreement – namely, her promotion and continued employment. *See, e.g.*, *Stern v. eSpeed, Inc.*, No. 06-958 (PKC), 2006 U.S. Dist. LEXIS 68655, at *7 (S.D.N.Y. Sept. 22, 2006) (continuation of employment was sufficient consideration for post-employment arbitration agreement); *see also Desiderio v. Nat'l Assoc. of Secs. Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999) (employment can be conditioned on signing agreement with mandatory arbitration provision covering Title VII claims), *cert. denied*, 531 U.S. 1069 (2001). The Arbitration Agreement requires that Plaintiff arbitrate "Employment Related Matters," defined as "matters arising out of or relating to or concerning … your … employment … or the termination thereof, or otherwise concerning any rights, obligations or other aspects of your employment relationship." (*See* Ex. B, LaRuffa Dec., ¶ 2, Attachment 1, p. 5). Under controlling case law, Plaintiff's individual gender discrimination and retaliation claims are subject to compulsory arbitration under the AAA commercial rules. *See, e.g.*, *Ragone v. Atlantic Video*, 595 F.3d 115, 117 (2d Cir. 2010) (affirming dismissal and order compelling arbitration of plaintiff's Title VII and NYCHRL claims); *Desiderio*, 191 F.3d at 206 (claims brought under Title VII are arbitrable); *Rice v. Brown Brothers Harriman & Co.*, No. 96-6326 (MBM), 1997 WL 129396, at *3 (S.D.N.Y. Mar. 21, 1997) ("discrimination claims under New York City Human Rights law also are arbitrable").

[2] The parties agree that the decision on the proper scope of the issue to be referred to arbitration is for this Court to make. *Cf. Stolt-Nielsen S.A. v. AnimalFeeds Int't Corp.*, 130 S. Ct. 1758, 1773 (2010) ("Under the FAA, a party to an arbitration agreement may petition a United States district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'") (quoting 9 U.S.C. § 4).

## II. ARGUMENT

### A. The Parties Agreed to Resolution of Plaintiff's Claims by Arbitration on an Individual Basis

Plaintiff and Goldman Sachs agreed, in the Managing Director Agreement, to resolve any claim she might bring on her own behalf by arbitration. The Agreement contains no language authorizing class arbitration. It is altogether silent on the issue, and that silence is dispositive as a matter of law.

The Supreme Court held earlier this year that unless the parties expressly agreed to arbitrate on a class basis, the resolution of a claimant's arbitration claims must proceed on an individual basis. In *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 130 S. Ct. 1758 (2010), the Court held that class arbitration cannot be ordered when the relevant arbitration agreement is silent as to arbitration of class claims. *Id.* at 1775 ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so")(emphasis in original). The plaintiff in *Stolt-Nielsen* had initiated the proceedings with an arbitration demand. The Court held that the arbitration panel exceeded its authority by ordering class arbitration when the parties' agreement was silent, which amounted to improperly "impos[ing] its own view of sound policy regarding class arbitration." *Id.* at 1767-68.

The Court held that the arbitration panel in *Stolt-Nielsen* also erred by requiring the party seeking to avoid class arbitration to "establish that the parties to the [arbitration] agreements intended to *preclude* class arbitration." *Id*. at 1775 (emphasis in original; internal quotations omitted).

> An implicit agreement to authorize arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the

> parties consented to it by simply agreeing to submit their disputes to an arbitrator.

*Id.* at 1775. An arbitrator's task is to "give effect to the intent of the parties" with respect to their arbitration agreement, including "*with whom* they choose to arbitrate their disputes." *Id*. at 1774-75 (emphasis in original). In explaining its holding, the Court stressed that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 1776. To reach the opposite conclusion, according to the Court, is "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.* at 1775.

Subsequently, lower courts within the Second Circuit have routinely applied the holding in *Stolt-Nielsen* and have held that a party cannot be required to arbitrate claims on a class basis when the arbitration agreement at bar is silent regarding the availability of class arbitration.[3]

In *Jock v. Sterling Jewelers, Inc.*, No. 08 Civ. 2875(JSR), Dkt. No. 87 (S.D.N.Y. Aug. 9, 2010) (Rakoff, J.), the court issued an order vacating an arbitrator's award permitting class arbitration when the arbitration agreement was silent on the issue.[4] *Jock*, like the present case, involved Title VII employment discrimination claims. The court's August 2010 Order incorporated by reference the court's reasoning in an earlier decision, *Jock v. Sterling Jewelers, Inc.*, No. 08 Civ. 2875(JSR), 2010 WL 2898294 (S.D.N.Y. July 26, 2010). In that earlier ruling,

[3] Indeed, Goldman Sachs is not aware of any case in which a court in any circuit, following *Stolt-Nielsen*, has permitted class arbitration where the parties' agreement was silent on the issue of class arbitration.

[4] The plaintiff's appeal of the *Jock* ruling is pending before the Second Circuit.

the court held that the arbitrator had incorrectly "started from the premise that an arbitration clause silent on class arbitration may be construed to permit such arbitration, devoted her analysis to determining whether there was any indication that the parties intended to preclude class arbitration, and ultimately concluded that the agreements 'do not prohibit' class arbitration." Id. at *4. This approach, the *Jock* court held, is "plainly incompatible with the Supreme Court's subsequent pronouncements in *Stolt-Nielsen*." *Id*. The *Jock* court explained that, at most, the arbitration agreement did not *prohibit* class arbitration; that conclusion, however, is insufficient under *Stolt-Nielsen* to require arbitration of class claims. *Id*. at *5.

The *Jock* court rejected the plaintiffs' attempts to distinguish *Stolt-Nielsen*. The court rejected the plaintiffs' argument that Title VII class arbitration should be treated differently from the maritime setting in *Stolt-Nielsen*. *Id*. Further, the court held that the fact that the defendant drafted the arbitration agreement did not impose an affirmative obligation on the defendant to have excluded class arbitration; such an argument, the court said, ignored *Stolt-Nielsen*'s conclusion that "mere silence on the issue" did not "constitute[] consent to resolve their disputes in class proceedings." *Id.* (citing *Stolt-Nielsen*, 130 S. Ct. at 1776). Next, the court rejected the plaintiffs' argument that *Stolt-Nielsen* was distinguishable because it involved "two commercially sophisticated parties," whereas *Jock* involved a claim between an employer and its employees. *Id.* at *6 ("contextual factors such as the sophistication of the parties, their relative bargaining position…, and any pertinent tradition of dispute resolution … cannot establish assent to class arbitration where, as here, the contract itself provides no reason to believe the parties reached any agreement on that issue"). Finally, the *Jock* court concluded that it was irrelevant

that the parties in *Stolt-Nielsen* stipulated that their arbitration agreement was silent on class arbitration, whereas the Jock parties had entered into no such stipulation. *Id*.[5]

Similarly, in *Bandler v. Charter One Bank*, No. 451-7-03, 2010 WL 3617115 (Vt. Super. Ct. Aug. 2, 2010) (copy attached as Ex. B), the court relied on *Stolt-Nielsen* to vacate an arbitrator's finding that class arbitration was permitted even though the parties' arbitration agreement was silent on class arbitration. The arbitrator had permitted arbitration of class claims after determining that the relevant contract language did not expressly forbid class arbitration. *Id*. at *1-2. Rejecting the arbitrator's decision as "a non-legally supported policy choice," the *Bandler* court explained that "as in *Stolt-Nielsen*, the arbitrator viewed the arbitration agreement from the standpoint of whether the parties intended to preclude class arbitration, rather than whether they *agreed* to class arbitration…. This Court, like the *Stolt-Nielsen* Court, finds the arbitrator's conclusion 'fundamentally at war' with the principle that arbitration is a matter of consent." *Id*. at *5-6 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1775) (further noting that because the arbitration agreement repeatedly refers to the plaintiff in the singular, it would be unreasonable to interpret the contract as allowing class arbitration).

Here, as in each of the above cases, the Managing Director Agreement provides for arbitration of individual claims, and contains no language that authorizes arbitrating claims on a class basis. Therefore, Goldman Sachs may not be required to arbitrate putative class claims.[6]

---

[5] Otherwise, a party could force class arbitration against an opposing party who never consented to it simply by refusing to stipulate that their agreement was silent on class arbitration.

[6] Pre-*Stolt-Nielsen* cases cannot be followed insofar as they conflict with *Stolt-Nielsen*'s clear prohibition of orders compelling class arbitration when the parties' agreement is silent on the issue.

B. The Arbitration Agreement's Text Confirms The Conclusion That Class Arbitration Is Not Permitted

The lack of any consent to class arbitration in the Managing Director Agreement is dispositive under *Stolt-Nielsen*. In addition, however, the text of the Arbitration Agreement reinforces that the parties did not consent to arbitration of class claims.[7]

The Arbitration Agreement refers only to individual claims. It requires arbitration of "Employment Related Matters," which are defined as "matters arising out of or relating to or concerning … *your* … employment … or the termination thereof, or otherwise concerning any rights, obligations or other aspects of *your* employment relationship." (*See* Ex. C, LaRuffa Dec., ¶ 2, Attachment 1, p. 5 (emphasis added).) Thus, by its very terms, the Arbitration Agreement is limited to claims related to Plaintiff's *own* employment, and not to claims related to other employees' experiences with Goldman Sachs. *See Bandler*, 2010 WL 3617115, at *5 (when arbitration agreement used singular terms such as "I," "me," and "my," the only reasonable interpretation is that it did not cover class claims).

Moreover, the Managing Director Agreement includes an integration clause that precludes reliance on anything outside the body of the document: "This Agreement represents the entire understanding of the parties with respect to the matters set forth herein; provided, however, that your employment will also be subject to various Firm policies and guidelines, including those stated in the applicable Employee Handbook as amended from time to time…. In the event of any conflict between the provisions of this letter and the provisions of the applicable

[7] The *Stolt-Nielsen* Court noted that because the parties to that dispute had stipulated "that there was 'no agreement' on the issue of class-action arbitration," the Court had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration. 130 S. Ct. at 1776 n.10. As the *Jock* court concluded, whatever might be the rule when an arbitration agreement is ambiguous with respect to class-action arbitration, the rule
(continued...)

Employee Handbook or any prior agreement with the Firm, the provisions of this letter will prevail." (*See* Ex. C, LaRuffa Dec., ¶ 2, Attachment 1, p. 7).

Finally, Plaintiff's sophisticated financial background with Goldman Sachs reinforces the conclusion that class arbitration cannot be read into the Arbitration Agreement. At the time Plaintiff signed the Arbitration Agreement, she had an M.B.A. degree and over 15 years of professional experience in the asset management business. The *Jock* court concluded that it was irrelevant that *Stolt-Nielsen* involved "two *commercially* sophisticated parties," rather than an employer and its employees. *Jock*, 2010 WL 2898294, at *6 (emphasis added). That conclusion is even more appropriate here, as Plaintiff was not an unsophisticated lower-level employee, but rather a highly educated investment management professional who was very experienced in the business world. Plaintiff was quite capable of understanding the import of the Arbitration Agreement.[8]

C. The Determination That Plaintiff's Class Action Claims Are Not Arbitrable Is For This Court To Decide

As the parties have agreed, whether class claims may be referred to arbitration is a matter for this Court, not an arbitrator, to decide. In *Rent-a-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the Supreme Court recognized that "[i]f a party challenges the validity … of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement …. 'To immunize an arbitration agreement from judicial challenge … would be to elevate it over other forms of contract.'" *Id.* at 2778 (quoting

---

is straightforward when, as here the parties' arbitration agreement is silent on the issue -- class arbitration cannot be ordered.

[8] Moreover, Plaintiff has a full opportunity to assert her claims, and seek relief for the purported unlawful conduct she alleges, through individual arbitration. Plaintiff was quite highly compensated. Her claim is thus not a so-called "negative value" claim – involving small (continued...)

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)); *accord Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010) ("a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute"); *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ 0118(WM), 2010 WL 3431126, at *8 (S.D.N.Y. Aug. 20, 2010) ("Threshold questions about a dispute's arbitrability are subject to independent review by the courts and no deference is due to an arbitral panel's finding on the matter unless the parties 'clearly agree to submit the question of arbitrability to arbitration.'") (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995)).

## III. THE COURT SHOULD STAY PLAINTIFF'S CLAIMS

Because Plaintiff has contractually agreed to submit all her individual claims against Goldman Sachs to arbitration, this Court must stay litigation of her claims. Indeed, Plaintiff's counsel have agreed that the matter belongs in an arbitral forum. Procedurally, this calls for the Court to stay her claims before it pursuant to 9 U.S.C. § 3. Section 3 provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending … shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA leaves no room for discretion or discussion; it explicitly states that the court "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

---

recoverable damages that are not worth enough to warrant pursuing recovery through individual litigation – for which some courts deem class action litigation to be particularly appropriate.

## IV. CONCLUSION

The parties agree that Plaintiff executed a binding Arbitration Agreement that covers all individual claims she asserts in this case, and that those claims therefore should be referred to arbitration. Goldman Sachs respectfully requests that the Court order Plaintiff to submit her claims to individual arbitration before the AAA and prohibit any putative class claim in that forum. In conjunction with that order of referral, the Court should stay any litigation of Plaintiff's claims in this action.

Dated: New York, New York
November 22, 2010

PAUL, HASTINGS, JANOFSKY & WALKER LLP

BY: /s/ Zachary D. Fasman
BARBARA B. BROWN (*admitted pro hac vice)*
ZACHARY D. FASMAN
C. GEOFFREY WEIRICH (*admitted pro hac vice)*

75 East 55th Street
New York, New York 10022-3205
(212) 318-6000
barbarabrown@paulhastings.com;
zacharyfasman@paulhastings.com;
geoffweirich@paulhastings.com

SULLIVAN & CROMWELL LLP
THEODORE O. ROGERS, JR.
SUHANA S. HAN
JOHN F. FULLERTON, III
125 Broad Street
New York, New York 10004
(212) 558-4000
rogerst@sullcrom.com
hans@sullcrom.com
fullertonj@sullcrom.com

*Attorneys for Defendants*
GOLDMAN, SACHS & CO. and
THE GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,

Plaintiffs,

vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.

Defendants.

10 Civ. 6950 (LBS) (JCF)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2010, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY CLAIMS OF PLAINTIFF PARISI AND COMPEL INDIVIDUAL ARBITRATION was served by the Court's ECF system on:

Adam T. Klein
Cara E. Greene
Jennifer L. Liu
OUTTEN & GOLDEN, LLP
3 Park Avenue, 29th Floor
New York, New York 10016
*Attorneys for Plaintiffs*

Kelly M. Dermody
Anne B. Shaver
Heather H. Wong
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
*Attorneys for Plaintiffs*

Dated: New York, New York
November 22, 2010

By: /s/ Zachary D. Fasman
ZACHARY D. FASMAN