# EXHIBIT B

# AMERICAN ARBITRATION ASSOCIATION
## Class and Employment Arbitration Tribunal

| | |
|---|---|
| HERMAN BENSON, JR., individually and on behalf of all others similarly situated,<br><br>              Claimant,<br><br>vs.<br><br>CSA-CREDIT SOLUTIONS OF AMERICA, INC.,<br><br>              Respondent. | Case No.: 11-160-M-02281-08<br><br>**PARTIAL FINAL CLAUSE CONSTRUCTION AWARD** |

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the parties dated January 9, 2008, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby issue this PARTIAL FINAL CLAUSE CONSTRUCTION AWARD, as follows:

A telephonic hearing was held on June 23, 2010, concerning Claimant's request to obtain a determination that the arbitration agreement executed between

1

the parties authorizes a class arbitration.[1]  Claimant was represented by Lee & Braziel, L.L.P. and The Cochran Firm, PC.  Respondent was represented by Seyfarth Shaw LLP.

## Background

Claimant and potential class members are current and former employees of CSA-Credit Solutions of America, Inc. ("CSA"), a company which provides a variety of debt solution products and services.  Claimant initially brought this case as a collective action under the Fair Labor Standards Act (the "FLSA") in the United States District Court for the Northern District of Texas.  CSA moved to stay the federal court proceeding and to compel arbitration.[2]

The arbitration agreement at issue provides as follows:

> In the event of any dispute or claim relating to or arising out of the employment relationship or the termination of the employment relationship including, but not limited to, any claims of wrongful termination or age, sex, disability, race or other discrimination, you and Credit Solutions agree that all such disputes shall be fully, finally and exclusively resolved by binding arbitration conducted by the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures in Texas and we both waive our rights to have such disputes tried by a court or jury. However, both agree that this arbitration provision shall not apply to any disputes or claims relating to, or arising out of, the misuse or misappropriation of your or the Company's trade secrets or proprietary information.

---

[1] Claimant also has sought a determination that his FLSA collective action may proceed on an opt-out basis rather than on an opt-in basis as provided for under federal law. The resolution of that issue will be reserved for a later time.

[2] In addition to his FLSA collective arbitration, Claimant has also brought a class arbitration under applicable provisions of the Texas Labor Code.

2

Because the arbitration agreement does not make explicit mention of class arbitration it is necessary to interpret the agreement under applicable Texas law, guided by the recent decision of the United States Supreme Court in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010).

### *Stolt-Nielsen*

In *Stolt-Nielsen*, the Court was called upon to consider whether an arbitration agreement entered into between two parties in an arms-length negotiation that made no reference to class arbitration nevertheless was properly found by three arbitrators to permit a class arbitration. In vacating the arbitration award, the Court placed great weight on the fact that the parties stipulated they had reached no agreement on whether their arbitration clause authorized a class arbitration. In light of the significant differences between class arbitration and bilateral arbitration, the Court held that an "implicit agreement to authorize class arbitration" may not be inferred solely from the fact that parties have agreed to arbitrate their disputes. *Id.* at 1774. Finally, the Court took issue with the approach taken by the arbitrators, who, according to the Court, "did [nothing] other than impose [their] own policy preference" for class arbitration. *Id.* at 1770.

Because parties' "mere silence on the issue of class-action arbitration" cannot constitute "consent to resolve . . . disputes in class proceedings," the Court held that it is necessary to determine whether the "parties *agreed to authorize* class arbitration." *Id.* at 1776 (emphasis in original). According to the Court, this is

3

properly done by giving "effect to the contractual rights and expectations of the parties," *id.* at 1774 (citation omitted), and by considering the applicable rule of law which would govern in such situations. It is to this task that I now turn.

### Applicable Texas Law

Although the parties' agreement contains no choice of law provision, the parties executed the arbitration agreement in Texas, agreed to conduct this arbitration in Texas, and both parties are domiciled in Texas. The parties agree that the substantive law of Texas applies to the interpretation of the arbitration agreement.

Because *Stolt-Nielsen* directs that it is not permissible to assume parties agreed to class arbitration merely by entering into an arbitration agreement, it is necessary to consider Texas rules of contract interpretation to answer the question presented in this proceeding. It is safe to assume that in this adhesion arbitration contract, the parties did not discuss whether their arbitration agreement would authorize class arbitration. Indeed, neither party has offered parole evidence on this point.[3]

Under these circumstances, I find that RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981) offers guidance. This section sets forth the rule to be applied where parties have not agreed to a term "essential to a determination of their rights and duties." Texas courts have adopted this section of the Restatement

---

[3] Unlike in *Stolt-Nielsen*, the parties in this case did not stipulate that there was no agreement to authorize a class arbitration.

4

and "will supply missing terms when necessary to effectuate the purposes of the parties under the agreement." *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 731-32 (Tex. App. 2003). "A missing term should be inferred when it is necessary to effectuate the intent of parties." *Woodward v. Liberty Mut. Ins. Co.*, 2010 WL 1186323, at *5 (N.D. Tex. Mar. 26, 2010). In describing Texas law on this point, the Fifth Circuit Court of Appeals wrote that in "order for a court to read additional provisions into the contract, the implication must clearly arise from the language used, or be indispensable to effectuate the intent of the parties." *R.P. Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 658 (5th Cir. 1989).

CSA has suggested that the Texas appellate decision in *Gamma Group, Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203 (Tex. App. 2007) states a different principle of law. In that case, the parties' agreement set forth a specific methodology for how certain losses would be reimbursed. Although neither party contended their agreement was ambiguous, the trial court added a "covenant" that payments must be "reasonable." The appellate court found that the trial court erred by inserting the term reasonable where, among other things, it "was not necessary to effectuate the parties' intent." *Id.* at 213. Unlike the situation in *Gamma Group* where the parties' agreement actually covered the issue in dispute, here the arbitration agreement is completely silent on the question of whether class arbitration is permitted.

5

## Analysis

Applying applicable Texas law to this arbitration agreement, the inquiry which must be made can be stated as follows: Did the parties intend to arbitrate all disputes of every kind, even disputes that might involve a collective or class arbitration? For the following reasons, I conclude the parties in this case agreed to authorize collective and/or class arbitrations.

First, the parties have agreed to arbitrate "any dispute or claim relating to or arising out of the employment relationship." The Fifth Circuit Court of Appeals has held that an arbitration clause using the "any dispute" language is of the "broad type" and that it is "difficult to imagine broader language." *Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (citation omitted). Thus, supplying an omitted term regarding collective or class arbitration is consistent with the intent of the parties which demonstrably was to authorize arbitration in the broadest possible category of cases.

Second, the arbitration agreement specifically excludes one category of disputes—disputes pertaining to trade secrets and proprietary information. Like most jurisdictions, Texas courts recognize the doctrine of *expressio unius est exclusio alterius*, a contract interpretation doctrine that provides that the expression in a contract of one or more things of a class, implies the exclusion of all others not expressed. *Oxy USA, Inc. v. Southwestern Energy Prod. Co.*, 161

S.W.3d 277, 285 (Tex. App. 2005). Thus, the arbitration agreement may be fairly interpreted to include all other categories of disputes, including collective and class arbitrations.

CSA contends that such an interpretation is not proper because the exclusion for trade secret disputes refers to substantive claims, whereas collective or class arbitrations are procedural devices, not substantive ones. Although CSA is correct that there is a difference between a substantive claim and a procedural right, the significance of the exclusion is simply that the drafter of the arbitration agreement, CSA, knew how to exclude certain disputes from the scope of the arbitration agreement, but apparently chose not to exclude collective and class arbitrations.

CSA's decision not to expressly exclude collective or class arbitrations is significant because as of 2008 it was not uncommon for certain employers and others to expressly restrict arbitration to individual claims.[4] *See, e.g., Pleasants v. American Express Co.*, 541 F.3d 853, 855 (8th Cir. 2008) ("Further you and we will not have the right to participate in a representative capacity or as a member of any class of claimants pertaining to any claim subject to arbitration . . . ."); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 634 (4th Cir. 2002) ("There

---

[4] It is the position of CSA that the arbitration agreement not only limits employees' claims to bilateral arbitration, but also prohibits completely collective or class claims whether in arbitration or in court. In light of my interpretation of the arbitration agreement it is unnecessary to consider whether the arbitration agreement interpreted as proffered by CSA is unconscionable. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294 (5th Cir. 2004).

7

shall be no authority for any claims to be arbitrated on a class action basis . . . . An arbitrator can only decide . . . your claim and may not consolidate or join the claims of other persons who may have similar claims . . . .").

Third, CSA filed a motion in federal court to compel arbitration. Claimant brought his complaint in federal court as a FLSA collective action. Although there is nothing in CSA's motion wherein it agreed that a collective action may be brought in arbitration, CSA knew that Claimant had brought a collective action. Nevertheless, CSA sought to compel arbitration of that collective action without making any distinction between Claimant's individual claim and his request to proceed in a collective action under the FLSA. That position strongly suggests it was CSA's view that all of the claims raised in the federal court complaint could be brought in arbitration.

For the foregoing reasons and giving consideration to Texas rules of contract interpretation, I conclude that with the limited exclusion of disputes over trade secrets, it was the intent of the parties to arbitrate all disputes regarding employment, of every kind whatsoever, and therefore I find that the arbitration agreement in this case authorizes a collective and/or class arbitration.

The proceedings shall be stayed for 30 days from the date of this award to permit any party to move a court of competent jurisdiction to confirm or vacate the Clause Construction Award. Once all parties inform the undersigned in writing during the period of the stay that they do not intend to seek judicial review of the

8

Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, this matter shall proceed to a determination of class certification. If any party informs the arbitrator within the period provided that it has sought judicial review, a further stay of the proceedings will be considered.

DATED this 6th day of July, 2010.

_____
Bruce E. Meyerson, Arbitrator

I, Bruce E. Meyerson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Partial Final Clause Construction Award.

DATED this 6th day of July, 2010.

_____
Bruce E. Meyerson, Arbitrator