UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,<br><br>                    Defendants. | No. 10 Civ. 6950 (LBS) (JCF) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**Outten & Golden LLP**
Adam T. Klein
Cara E. Greene
Jennifer L. Liu
Mariko Hirose
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**Lieff, Cabraser, Heimann & Bernstein, LLP**
Kelly M. Dermody (admitted *pro hac vice*)
Anne B. Shaver (admitted *pro hac vice*)
Heather H. Wong (admitted *pro hac vice*)
Alison M. Stocking (admitted *pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................1

FACTUAL BACKGROUND ....................................................1

ARGUMENT ...............................................................3

    I.    Plaintiff Parisi Did Not Agree to Waive Her Substantive Right to Bring Class Claims. ....3

        A.    Pattern-or-Practice Cases Are Brought as Class Actions and Require Statistical and Institutional Evidence Not Readily Available to Individual Litigants......................4

        B.    Class Treatment Enables Plaintiff Parisi and the Putative Class Members to Obtain Relief Not Readily Available to Individual Litigants. .................................5

        C.    Plaintiff Parisi Did Not Knowingly Waive Her Substantive Statutory Rights.. .........8

    II.    Plaintiff Parisi Properly Asserts Her Class Claims In Federal Court. ..............................10

    III.    In The Alternative, The Agreement Authorizes Arbitration of Class Claims. .................12

        A.    Interpreting The Agreement To Include Class Claims Is Consistent With The Supreme Court's Direction In *Stolt-Nielsen*. ..........................................13

        B.    The Relevant Customs, Practices, Usages and Terminology Support a Finding that the Parties Anticipate Class Treatment. ..............................................15

    CONCLUSION.............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett,*
   129 S. Ct. 1456 (2009) ...................................................................................................3, 4

*67 Wall St. Co. v. Franklin Nat. Bank,*
   37 N.Y.2d 245 (1975) ........................................................................................................10

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................................9

*Ameron, Inc., v. U.S. Army Corps of Eng'rs,*
   787 F.2d 875 (3d Cir. 1986) .............................................................................................10

*Bandler v. Charter One Bank,*
   No. 451-7-03, 2010 WL 3617115 (Vt. Super. Ct. Aug. 2, 2010) .......................................14

*Bazzle v. Green Tree Financial Corp.,*
   539 U.S. 444 (2003) ..........................................................................................................16

*Blake v. Bronx Lebanon Hosp. Ctr.,*
   No. 02 Civ. 3827, 2003 WL 21910867 (S.D.N.Y. Aug. 11, 2003) .......................................7

*Butler v. Dowd,*
   979 F.2d 661 (8th Cir. 1992) ...........................................................................................10

*Butler v. Home Depot, Inc.,*
   No. 94 Civ. 4335 & 95 Civ. 2182 (N.D. Cal. Jan. 14, 1998) ...............................................8

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ............................................................................................................9

*Cardwell v. Thermo Fischer Scientific,*
   No. 09 Civ. 7809, 2010 WL 3825711 (S.D.N.Y Sept. 23, 2010) ..........................................4

*Citadel Broad. Corp. v. Dolan,*
   No. 09 Civ. 6914, 2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009) .........................................11

*Cooper v. Fed. Reserve Bank of Richmond,*
   467 U.S. 867 (1984) .........................................................................................................5, 6

*Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   957 F. Supp. 1460 (N.D. Ill. 1997) ...................................................................................15

*Cronas v. Willis Group Holdings Ltd.*,
    No. 06 Civ. 15295, 2007 WL 2739769 (S.D.N.Y. Sept. 7, 2007) ..........................12

*Duling v. Gristede's Operating Corp.*,
    267 F.R.D. 86 (S.D.N.Y. 2010) ..........................................................................8

*E.E.O.C. v. Morgan Stanley & Co.*,
    No. 01 Civ. 8421, 2002 WL 1431685 (S.D.N.Y. July 1, 2002) ...........................15

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
    431 U.S. 395 (1977)...........................................................................................8

*Fensterstock v. Education Finance Partners*,
    611 F.3d 124 (2d Cir. 2010)...............................................................................14

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)...........................................................................................12

*Franks v. Bowman Transp. Co.*,
    424 U.S. 747 (1976)............................................................................................6

*Freeman v. City of Phila.*,
    751 F. Supp. 509 (E.D. Pa. 1990) .......................................................................8

*Garza v. Marine Transp. Lines, Inc.*,
    861 F.2d 23 (2d Cir. 1988)................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)..............................................................................................4

*Guardian Life Ins. Co. of Am., Inc. v. Schaefer*,
    70 N.Y.2d 888 (1987) .......................................................................................10

*Guzman v. N. Ill. Gas Co.*,
    No. 09 Civ. 1358, 2009 WL 3762202 (N.D. Ill. Nov. 6, 2009)...........................7

*Hazelwood Sch. Dist. v. United States*,
    433 U.S. 299 (1977)............................................................................................6

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009)...............................................................................7

*Hollon v. Mathis Indep. Sch. Dist.*,
    491 F.2d 92 (5th Cir. 1974) ..............................................................................10

*Holmes v. Cont'l Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) ..........................................................................8

*In re American Express Merchants' Litig.,*
    554 F.3d 300 (2d Cir. 2009), 130 S. Ct. 2401 (2010)............................................................4

*Jock v. Sterling Jewelers, Inc.,*
    738 F. Supp. 2d 445 (S.D.N.Y. 2010)......................................................................14

*Jock v. Sterling Jewelers, Inc.,*
    725 F. Supp. 2d 444 (S.D.N.Y. 2010)......................................................................14

*Kuklachev v. Gelfman,*
    600 F. Supp. 2d 437 (E.D.N.Y. 2009) ....................................................................11

*Lopez v. Consol. Edison Co. of N. Y.,*
    40 N.Y.2d 605 (1976) ..............................................................................................15

*Martens v. Smith Barney, Inc.,*
    181 F.R.D. 243 (S.D.N.Y. 1998) .......................................................................15, 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
    514 U.S. 52 (1995)................................................................................................5, 10

*Rambarran v. Mount Sinai Hosp.,*
    No. 06 Civ 5109, 2008 WL 850478 (S.D.N.Y. Mar. 28, 2008) ...............................7

*Rent-A-Center, West, Inc. v. Jackson,*
    130 S. Ct. 2772 (Jun. 21, 2010) ..............................................................................12

*Robinson v. Metro-North Commuter R.R. Co.,*
    267 F.3d 147 (2d Cir. 2001)......................................................................................6

*Shain v. Ctr. for Jewish History,*
    No. 04 Civ. 1762, 2006 WL 3549318 (S.D.N.Y.Dec.7, 2006)..................................5

*Sharpe v. Cureton,*
    319 F.3d 259 (6th Cir. 2003) ...................................................................................10

*Skirchak v. Dynamics Research Corp., Inc.,*
    432 F.Supp.2d 175 (D. Mass. 2006) ................................................................4, 5, 14

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.,*
    130 S. Ct. 1758 (2010)..............................................................................12, 13, 15

*Sutherland v. Ernst & Young LLP,*
    No. 10 Civ 3332, slip op. (S.D.N.Y. Mar. 3, 2011).................................................4

*Int'l Bhd. of Teamsters v. United States,*
    431 U.S. 324 (1977)...............................................................................................4, 6

*Tucker v. Gonzales*,
No. 03 Civ. 3106, 2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005) ..............................................7

*United States v. City of N.Y.*,
631 F. Supp. 2d 419 (S.D.N.Y. 2009) ....................................................................................7

*United States v. City of N.Y.*,
No. 07 Civ. 2067, 2010 WL 4137536 (E.D.N.Y. Oct. 19, 2010) ..........................................8

*Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*,
818 F.2d 260 (2d Cir. 1987) ................................................................................................11

*Weigmann v. Glorious Food*,
169 F.R.D. 280 (S.D.N.Y. 1996) ..........................................................................................8

**OTHER AUTHORITIES**

2 *Newberg on Class Actions* § 5:12 .............................................................................................6

8 *Newberg on Class Actions* § 24:62 ...........................................................................................6

Benjamin Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the
Federal Rules of Civil Procedure (I)", 81 Harv. L. Rev. 356, 389 (1967) ................................9

Fed. R. Civ. P. 23 Adv. Comm. Notes, 1966 Amends., Subdiv. (b)(2) ...........................................9

Fed. R. Civ. P. 23(b)(2) ...................................................................................................................9

*Home Depot, Female Employees Report Progress*, http://hr.blr.com/HR-
news/Discrimination/Sex-Discrimination/Home-Depot-Female-Employees-Report-
Progress/ (June 24, 2002) ......................................................................................................9

Nancy Levit, "Megacases, Diversity, and Elusive Goal of Workplace Reform," 49 B.C.
L. Rev. 367, 374-75 (2008) ..................................................................................................15

Public Interest Law Center of Philadelphia, *Law Center Joins Forces with Other Civil
Rights Organizations to Protect Ability to Combat Discrimination With Class Action
Lawsuits,* http://www.pilcop.org/ed.html (Oct. 31, 2007) ......................................................8

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants'
Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration.  Defendants
Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Defendants" or
"Goldman Sachs") seek to compel one of the named plaintiffs, Lisa Parisi, to individual
arbitration based on an employment agreement signed by the parties that requires arbitration of
some, but not all, matters.  Contrary to Defendants' assertions in their opening brief, Plaintiffs do
not agree this matter belongs in arbitration. In signing her employment agreement, Plaintiff
Parisi did not understand it to require a ban on class claims, nor did she waive her substantive
right to challenge systemic discrimination at Goldman Sachs.

If Plaintiff Parisi may not bring her class claims in federal court, the only other
reasonable interpretation is that Defendants intended class claims to be subject to arbitration.
Neither law nor equity allows Defendants to invoke a blanket class waiver (whether in litigation
or arbitration) where no such waiver is ever expressed anywhere in the agreement.

## FACTUAL BACKGROUND

Plaintiffs, including named plaintiff Lisa Parisi, brought this pattern-or-practice gender
discrimination class action against Defendants to eradicate systemic discrimination and obtain
classwide injunctive relief.  Among other things, Plaintiffs alleged that Defendants maintained
discriminatory policies and practices through which it promoted men over equally or more
qualified women; paid women less than similarly-situated men; and utilized a discriminatory
evaluation system that disadvantaged women as compared to male co-workers.  *See* Declaration
of Adam T. Klein ("Klein Dec."), Exh. A (Class Action Complaint), ¶¶ 3-12.  Plaintiffs seek

widespread injunctive relief relating to company-wide policies and practices that is uniquely available in the class action context.

In or about November of 2003, Plaintiff Parisi was promoted to Managing Director. As a condition of her promotion, she signed an employment letter written by Goldman Sachs ("the Agreement") that contained an arbitration provision.[1] *See* Klein Dec., Exh. B (November 3, 2003 Employment Agreement). The Agreement contains the following arbitration terms:

> [A]ny dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration in New York City before, and in accordance with the rules then obtaining of, the New York Stock Exchange, Inc. ("NYSE") or if the matter is not arbitrable before the NYSE, the National Association of Securities Dealers ("NASD"). If both the NYSE and the NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

*Id.* at Exh. B, Section 4, p. 6.

"Employment Related Matters" are defined in Section 3 of the Agreement as those "matters arising out of or relating to or concerning this Agreement, your hire by or employment with the Firm or the termination thereof, or otherwise concerning any rights, obligations or other aspects of your employment relationship in respect of the Firm." Klein Dec., Exh. B, Section 3, p. 5.

Significantly, Section 5 of the Agreement contemplates that some matters will not be arbitrated and provides that those matters are subject to federal jurisdiction in New York:

---

[1] Despite this promotion, Plaintiff Parisi alleges that she was paid substantially less than comparable men. *See* Klein Dec., Exh. A, ¶ 107.

> The parties to this agreement hereby irrevocably submit to the exclusive jurisdiction of any state or federal court located in the city of New York over any suit, action or proceeding arising out of relating to **employment related matters (as defined herein) which is not otherwise arbitrated** or resolved according to the provisions of Section 4 of this Agreement.

Klein Dec., Exh. B, Section 5, p. 6 (emphasis added).  Defendants also expressly excluded from arbitration actions brought by Goldman Sachs for enforcement of the restrictive/confidentiality covenants and arbitration awards, which Defendants may commence in court.  *Id.* at Exh. B, Section 5, p.6.   The Agreement contains a New York choice of law clause.  *Id.* at Exh. B, Section 5, p.7.

**ARGUMENT**

Defendants' motion to compel individual arbitration should be denied for three reasons. First, Defendants' motion is premised on the fundamentally flawed conclusion that the Agreement prohibits Plaintiff Parisi from asserting class claims in any forum.  If that were true, the Agreement would be unenforceable as an unknowing waiver of Plaintiff Parisi's substantive civil rights.  Second, pursuant to Section 5 of the Agreement, Plaintiff Parisi properly filed her claims in federal court.  Third, if the class claims cannot be brought in this Court, then the Agreement must be construed to mean that the parties agreed to arbitrate any class claims.

## I.    Plaintiff Parisi Did Not Agree to Waive Her Substantive Right to Bring Class Claims.

If Plaintiff Parisi is not entitled to bring Title VII class claims in either arbitration or court, as Defendants argue, then the Agreement is unenforceable because it amounts to an unknowing, prospective waiver of substantive Title VII rights.  *See 14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1469 (2009) (noting that federal substantive antidiscrimination rights may not be prospectively waived).  Importantly, Plaintiff Parisi's claim is pled in part as a Title VII

3

pattern-or-practice claim, which allows for greater discovery, more favorable burdens of proof, and broader relief than in an individual case. *See generally Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).

A. Plaintiff Parisi Did Not Knowingly Waive Her Substantive Statutory Rights.

Defendants' suggestion that Plaintiff Parisi's agreement to arbitrate individual claims amounts to a waiver of her right to bring a class action is belied by the Supreme Court's holding that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Pyett*, 129 S.Ct. at 1469-70 (internal quotation marks omitted) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). If Plaintiff Parisi is unable to assert a class claim in either arbitration or federal court, then the Agreement operates impermissibly as an unknowing waiver of her substantive rights to challenge systemic discrimination at Goldman Sachs. *See Skirchak v. Dynamics Research Corp., Inc.*, 432 F.Supp.2d 175, 181 (D. Mass. 2006) ("An arbitration agreement that eliminates the right to a class-wide proceeding may have the substantial effect of contravening the principle behind class action policies and chilling the effective protection of interests common to a group." (internal quotation marks omitted)).[4]

Nor may a class action waiver be inferred under New York law. New York law requires that waivers of substantive claims be clear, unambiguous, and knowingly and voluntarily entered into, contrary to what happened here. *Cf. Cardwell v. Thermo Fischer Scientific*, No. 09 Civ. 7809, 2010 WL 3825711, at *6 (S.D.N.Y Sept. 23, 2010); *Shain v. Ctr. for Jewish History*, No.

---

[4] On the same reasoning, the Court could hold "that enforcement of [a class arbitration] ban" in this case "will deprive [plaintiff] of substantive rights under [Title VII]." *In re American Express Merchants' Litig.*, 554 F.3d 300, 316 (2d Cir. 2009), *cert. granted, vacated and remanded*, 130 S. Ct. 2401 (2010); *see also Sutherland v. Ernst & Young LLP*, No. 10 Civ. 3332, slip op. at 3 (S.D.N.Y. Mar. 3, 2011) (Klein Dec., Exh. C) (stating that *In re American Express Merchants' Litigation* remains persuasive authority).

04 Civ. 1762, 2006 WL 3549318, at *3 (S.D.N.Y.Dec.7, 2006); *see also Skirchak*, 432
F.Supp.2d at 180 (striking employment class waiver, in part, because employees did not have
adequate notice of the waiver, rendering it procedurally unconscionable).

In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Supreme
Court considered whether a party to an arbitration agreement that contained no reference to
punitive damages nonetheless waived the right to a punitive damages award.  Under New York
law, which governed the agreement pursuant to a choice-of-law clause, arbitrators could not
award punitive damages.  *See id.* at 56.  The Court rejected the notion that by signing an
agreement with a New York choice-of-law provision, the parties were expressly agreeing that
punitive damages could not be awarded.  *Id.*  Instead, the Court held that the parties to the
agreement could recover punitive damages, observing that "[a]s a practical matter, it seems
unlikely that petitioners . . . had any idea that by signing a standard-form agreement to arbitrate
disputes they might be giving up an important substantive right.  In the face of such doubt, we
are unwilling to impute this intent to petitioners."  *Id.* at 63.  The same analysis applies here.
Because there is no mention of a waiver of substantive class rights, Plaintiff Parisi's class claims
may proceed.

   B.   Pattern-or-Practice Cases Are Brought as Class Actions and Require Statistical and
        Institutional Evidence Not Readily Available to Individual Litigants.

Plaintiff Parisi has alleged that Defendants have engaged in a company-wide pattern or
practice of discrimination.[2]  Pattern-or-practice claims are distinguished from individual Title VII
claims because of the method of proof and shifting burden of proof.  *See*, *e.g.*, *Cooper v. Fed.
Reserve Bank of Richmond*, 467 U.S. 867, 875-27 (1984); *Int'l Bhd. of Teamsters*, 431 U.S. at

---

[2] This is not a situation where an employee simply used the words "pattern-or-practice" in a
complaint.  Plaintiffs' complaint specifies company-wide practices and policies that they attack
on a class-wide basis with detail. *See* Factual Background section, *supra.*

5

358-60 (1977); *Franks v. Bowman Transp. Co*., 424 U.S. 747, 772 (1976).  Specifically, under

the *Teamsters* model for pattern-or-practice cases, once plaintiffs establish a pattern of

discrimination at trial, individual class members enjoy a rebuttable presumption that they were

victims of discrimination for purposes of determining liability at the damages stage.  *See Cooper*,

467 U.S. at 875-76; *Teamsters*, 431 U.S. at 361-62.

      As a result, to prove a pattern-or-practice claim, "plaintiffs must prove more than

sporadic acts of discrimination; rather, they must establish that intentional discrimination was the

defendant's 'standard operating procedure.'"  *Robinson v. Metro-North Commuter R.R. Co*., 267

F.3d 147, 158 (2d Cir. 2001) (quoting *Teamsters*, 431 U.S. at 336).  In class actions, plaintiffs

typically rely on statistical analysis of company-wide data to establish a discriminatory pattern or

practice.  *See Teamsters*, 431 U.S. at 339 n.20 ("Since the passage of the Civil Rights Act of

1964, the courts have frequently relied upon statistical evidence to prove a violation . . . .  In

many cases the only available avenue of proof is the use of . . . statistics to uncover clandestine

and cover discrimination by the employer or union involved."); *Hazelwood Sch. Dist. v. United

States*, 433 U.S. 299, 307-308 (1977) (noting that "statistics can be an important source of proof

in employment discrimination cases" (internal quotations omitted)).

      It is nearly impossible for an individual employee to marshal the evidence necessary to

prove a pattern of such magnitude, however, because individual litigants generally are not

afforded the broad discovery rights permitted in class action cases.  *See* 2 *Newberg on Class

Actions* § 5:12 ("Whether a class action is brought for injunctive relief, damages, or both, the use

of the class device, in contrast to the individual action, provides the plaintiff with a broader base

for pretrial discovery and presents the court with a more complete record on which to reach its

liability determinations."); 8 *Newberg on Class Actions* § 24:62 ("The broader discovery rights

of the class action device are useful in the employment context when seeking to establish wide-scale discriminatory practices by providing a more complete record on which to reach determinations on either injunctive relief or liability.").

As a result, courts regard pattern-or-practice claims as unique and distinct from individual disparate treatment claims. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 179 (3d Cir. 2009) (recognizing "distinction between an individual claim of discrimination adjudicated under the *McDonnell Douglas* framework, where the focus is on uncovering 'the reason for a particular employment decision,' and a class-based pattern-or-practice claim under the *Teamsters* framework"); *Guzman v. N. Ill. Gas Co.*, No. 09 Civ. 1358, 2009 WL 3762202, at *4 (N.D. Ill. Nov. 6, 2009) (noting "the unique nature of [Title VII] pattern-or-practice claims"). Indeed, it is widely observed in this District that individuals cannot maintain *non*-class, Title VII pattern-or-practice claims for themselves. *See, e.g.*, *United States v. City of N.Y.*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) (collecting cases); *Rambarran v. Mount Sinai Hosp.*, No. 06 Civ. 5109, 2008 WL 850478, at *8 (S.D.N.Y. Mar. 28, 2008) (collecting cases); *Tucker v. Gonzales*, No. 03 Civ. 3106, 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (dismissing individual plaintiff's pattern-or-practice claim); *Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003) (doubting the propriety of a pattern-or-practice claim in a non-class action complaint). Such pattern-or-practice claims are either brought in aggregate litigation, or not at all.

Because of these limits, if Plaintiff Parisi is required to litigate her class claims only on an individual basis, she (and the other Managing Director putative class members) will be at a severe disadvantage and may be unable to muster the evidence required to establish a pattern of

discrimination.  More importantly, she will also be denied the ability to benefit from the

presumption that flows from a pattern-or-practice finding.

C. Class Treatment Enables Plaintiff Parisi and the Putative Class Members to Obtain
   Relief Not Readily Available to Individual Litigants.

Courts have long recognized that suits alleging "discrimination are often by their nature

class suits, involving classwide wrongs." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S.

395, 405 (1977).  To correct such wrongs, employees must be able to demand broad, systemic

changes to their employer's policies and practices in the form of injunctive relief.[3]  *See, e.g.*,

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1152 (11th Cir. 1983) ("Title VII and the class action

rule should be construed so as to further the strong public policy of eradicating all vestiges of

[…] discrimination in employment."); *United States v. City of N.Y.*, No. 07 Civ. 2067, 2010 WL

4137536, at *8 (E.D.N.Y. Oct. 19, 2010) ("In order to meet [Title VII's] sweeping mandate,

'Congress deliberately gave the district courts broad authority under Title VII to fashion the most

complete relief possible'").  Injunctive relief obtained from class actions has produced

tremendous, positive changes in the American workplace.[4]

---

[3] Courts in this circuit have made clear that plaintiffs need not be current employees to seek and
be entitled to company-wide injunctive relief.  *See Weigmann v. Glorious Food*, 169 F.R.D. 280,
288 (S.D.N.Y. 1996) ("Even former employees have an interest in obtaining injunctive relief that
would enable them to return . . . if they so choose."); *Duling v. Gristede's Operating Corp.*, 267
F.R.D. 86 (S.D.N.Y. 2010) (recognizing that former employees have an interest in obtaining
injunctive relief).

[4] *See, e.g.*, *Freeman v. City of Phila.*, 751 F. Supp. 509 (E.D. Pa. 1990) (approving consent
decree enjoining the City from using an examination with unlawful racial disparate impact to
hire police officers, and requiring City to take measures to increase representation of African-
American police officers); Public Interest Law Center of Philadelphia, *Law Center Joins Forces
with Other Civil Rights Organizations to Protect Ability to Combat Discrimination With Class
Action Lawsuits*, (Oct. 31, 2007) (noting the increase in the number of African-Americans in
Philadelphia's police force from 12% to 35% as a result of the *Freeman* consent decree),
http://www.pilcop.org/ed.html (last visited Mar. 8, 2011); *Butler v. Home Depot, Inc.*, No. 94
Civ. 4335 & 95 Civ. 2182 (N.D. Cal. Jan. 14, 1998) (approving consent decree requiring reforms
in promotion practices, compensation standards, monitoring, training, and performance

The drafters of Rule 23 of the Federal Rules of Civil Procedure had precisely this goal in mind when they proposed Rule (b)(2) in 1966.  Rule 23(b)(2) authorizes class certification where an employer "has acted or refused to act on grounds generally applicable to the class."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was born out of a recognition that individual lawsuits cannot achieve the sort of sweeping results that are necessary to combat discrimination.  *See* Fed. R. Civ. P. 23 Adv. Comm. Notes, 1966 Amends., Subdiv. (b)(2) ("actions in the civil-rights field where a party is charged with discriminating unlawfully against a class" are a type of action appropriately maintained under Rule 23);  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 Harv. L. Rev. 356, 389 (1967).  Building on experience in civil rights litigation, the drafters acknowledged that individual lawsuits had been "inadequate" to meet the challenges posed by institutional discrimination and, in any case, were an "inefficient" means to do so.  *Kaplan*, *supra*, at 389 (noting that Rule 23(b)(2) was "built[] on experience mainly, but not exclusively, in the civil rights field").

Injunctive relief is not readily available to individual litigants because, as noted above, it is often impossible for them to muster the evidence necessary to prove a widespread pattern of discrimination.  Even when the evidence reflects a discriminatory policy that affected other workers, courts have held that broad injunctive relief is prohibited if it exceeds what is necessary to give individual relief to the plaintiff.  *See*, *e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (noting the general "rule that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"); *Sharpe v. Cureton*, 319

---

evaluation); *Home Depot, Female Employees Report Progress* (June 24, 2002) (reporting number of female employees in sales floor jobs at Home Depot more than doubled after *Butler* consent decree), http://hr.blr.com/HR-news/Discrimination/Sex-Discrimination/Home-Depot-Female-Employees-Report-Progress/ (last visited Mar. 8, 2011).

F.3d 259, 273 (6th Cir. 2003) ("While district courts are not categorically prohibited from granting injunctive relief benefitting an entire class in an *individual suit*, such broad relief is rarely justified . . . ."); *Butler v. Dowd*, 979 F.2d 661, 674 (8th Cir. 1992); *Ameron, Inc., v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888 (3d Cir. 1986); *Hollon v. Mathis Indep. Sch. Dist*., 491 F.2d 92, 93 (5th Cir. 1974).

## II.     Plaintiff Parisi Properly Asserts Her Class Claims In Federal Court.

Plaintiff Parisi correctly filed her class claims in federal court, as required under the Agreement.  While Section 4 provides that all employment-related matters are subject to mandatory arbitration, Section 5 expressly provides that any suit, action, or proceeding that is not subject to arbitration under Section 4 shall be submitted to the jurisdiction of the state and federal courts of New York.   *See* Klein Dec., Exh. B, Sections 4 & 5, p. 6-7.

On its face, Section 5 anticipates that some matters will not be subject to arbitration and should be brought in court.  Accordingly, if the Agreement is read to reflect a lack of "meeting of the minds" to arbitrate class claims, then those claims must be subject to the jurisdiction of the New York federal and state courts.  There is no statement in the Agreement that Section 5 is limited only to certain, listed carve outs or types of relief.  It is merely a catch-all for those claims that fall outside Section 4.

To the extent that the Agreement is ambiguous, or even conflicting, the ambiguity must be construed against the drafter, Goldman Sachs, and in favor of the non-drafting party, Plaintiff Parisi.  *See Mastrobuono.*, 514 U.S. at 62; *Guardian Life Ins. Co. of Am., Inc. v. Schaefer*, 70 N.Y.2d 888, 890 (1987); *67 Wall St. Co. v. Franklin Nat'l. Bank*, 37 N.Y.2d 245, 249 (1975). As the Supreme Court explained in *Mastrobuono*, drafters of ambiguous documents cannot hide behind their actions to the detriment of the non-drafting party.  *Mastrobuono*, 514 U.S. at 63.

"Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt.  The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result."  *Id.*

A word or phrase is ambiguous when it is capable of more than a single meaning "when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) (quoting *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).  In this case, it is not just the absence of reference to class claims that could give rise to ambiguity in the Agreement, but the fact that Section 4 of the Agreement requires arbitration of all Employment Related Matters while Section 5 anticipates that some Employment Related Matters are subject to the jurisdiction of the courts.

The ambiguities in Sections 4 and 5 should be read to provide Plaintiff Parisi with her forum of choice for class claims – federal district court.  Depriving Plaintiff Parisi of the ability to proceed in court would have the unintended and unfair result of resolving the ambiguity in Defendants' favor.  Furthermore, a lack of agreement solely on the issue of whether to arbitrate class claims does not mean that the class claims disappear, as Defendants suggest.  It simply means that the parties elected a different forum for those claims: federal district court.  *See Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 465-68 (E.D.N.Y. 2009) (claims not included within scope of arbitration agreement allowed to proceed in federal district court); *Citadel Broad. Corp. v. Dolan*, No. 09 Civ. 6914, 2009 WL 4928935, at *5-6 (S.D.N.Y. Dec. 21, 2009) (scope of arbitration limited to issues related to the special severance payment, not other tort claims);

11

*Cronas v. Willis Group Holdings Ltd*., No. 06 Civ. 15295, 2007 WL 2739769, at *11-12 (S.D.N.Y. Sept. 7, 2007).

Importantly, the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp*., 130 S. Ct. 1758 (2010), presents no barrier to this analysis. That decision says nothing about whether a plaintiff may pursue putative class claims in court, notwithstanding an agreement that individual claims will be subject to arbitration.

### III.   In The Alternative, The Agreement Authorizes Arbitration Of Class Claims.

The Agreement bars Plaintiff Parisi from bringing her class claims in court only if it reflects the parties' agreement to submit class claims to arbitration. Interpreting the Agreement to authorize arbitration of class claims is consistent with the Court's recent decision in *Stolt-Nielsen* and is supported by the financial service industry's relevant customs, practices, usages and terminology, as well as the parties' relative bargaining positions.[5]

A reasonable interpretation of the Agreement is that the parties agreed to arbitrate class claims under the broad language of Section 4 of the Agreement.[6] Section 4 states that "any dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration." *See* Klein Dec. at Exh. B, Section 4, p. 6. Employment Related Matters are defined as those "arising out of or relating to or concerning this Agreement, your hire by or employment with the Firm or the termination thereof, or otherwise

---

[5] Plaintiffs sought to compel additional discovery related to Goldman Sachs's customs, practices, usages and terminology, especially in light of the fact that the Agreement is not an integrated document, but that motion was denied. *See* Dkt No. 46, Mar. 1, 2011.

[6] As a threshold matter, the Court decides the question of arbitrability because the arbitration agreement does not clearly and unmistakably delegate that question to the arbitrator. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 n.1 (Jun. 21, 2010) (citing rule that courts should not find that parties have agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (alterations omitted).

concerning any rights, obligations or other aspects of your employment relationship in respect of the Firm." *Id.* at Exh. B, Section 3, p. 5.

A.   Interpreting The Agreement To Include Class Claims Is Consistent With The Supreme Court's Direction In *Stolt-Nielsen*.

The Supreme Court held in *Stolt-Nielsen* that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 130 S. Ct. at 1775 (emphasis in original). In other words, under *Stolt-Nielsen*, the FAA does not require a defendant to submit to class arbitration where an arbitration clause is silent on class claims, but the rules of construction may require the defendant to do so depending on the circumstances of the case. The Court acknowledged that in that case, where the parties had stipulated that there was no agreement to class-wide arbitration, it had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Id.* at 1776 n.10. The Court did not hold, as Defendants now suggest, that an agreement must expressly authorize class arbitration.[7]

Thus, while "mere silence" cannot constitute proof of an agreement to class arbitration, neither does the absence of a class arbitration provision negate such an agreement. Instead, the parties' intent regarding class claims must be ascertained through the circumstances of their relationship. As the Court noted, the parties in *Stolt-Nielsen* were sophisticated business entities involved in a maritime contract that had no industry "tradition" for class litigation. *Id.* at 1775. Therefore, the Court held that it was unreasonable for the arbitrator to read an intent to arbitrate class claims in that particular situation. In contrast, in this case, the solid tradition of civil rights class litigation for Title VII claims in general, and on Wall Street specifically,

---

[7] Had the Supreme Court intended to impose a "plain language" rule, it would have said so explicitly.

13

supports the conclusion that the parties intended to provide a forum for class claims – either in

arbitration or court.  Plaintiff Parisi and Goldman Sachs are also parties with unequal bargaining

power and legal sophistication.  It certainly was not Plaintiff Parisi's understanding that she

would be waiving her right to assert substantive class claims in any forum by signing the

Agreement.  *See Skirchak*, 432 F.Supp.2d at 180.

Defendants erroneously rely on *Jock v. Sterling Jewelers, Inc*., 725 F. Supp. 2d 444

(S.D.N.Y. 2010) to support their argument that class claims may not be arbitrated here.

However, Defendants fail to note that Judge Rakoff cautiously stayed his own order while it is

on appeal to the Second Circuit.  *Jock v. Sterling Jewelers, Inc*., 738 F. Supp. 2d 445 (S.D.N.Y.

2010).  In the stay order, Judge Rakoff noted that there is no definitive guidance on how to apply

the *Stolt-Nielsen* decision, describing the appeal as presenting an "issue of first impression that

relates to the application of a newly minted rule by a sharply divided Supreme Court in *Stolt-

Nielsen* . . . ."  *Id.* at 447.[8]  Therefore, the case provides little to no persuasive value.

The Second Circuit itself has refused to interpret *Stolt-Nielsen* as narrowly as Defendants

urge this Court to do.  In its first post-*Stolt-Nielsen* decision, *Fensterstock v. Education Finance

Partners*, 611 F.3d 124, 141 (2d Cir. 2010), the Second Circuit declined to compel a class

arbitration under a contract that contained an express waiver of class actions. Unlike in this case,

the presence of a class waiver in the contract demonstrated that "the parties plainly did not agree

that arbitration may be conducted on a classwide basis, and we do not see that an order for

---

[8] With regard to the other case cited by Defendants, *Bandler v. Charter One Bank*, No. 451-7-03,
2010 WL 3617115 (Vt. Super. Ct. Aug. 2, 2010), Plaintiffs note that its persuasive value is
severely limited by the fact that the decision is from an out-of-state trial court, and is easily
distinguishable.  While the trial judge there held that the issue required "a non-legally supported
policy choice," in this case Plaintiffs do not urge that the Court apply a "policy choice," but
instead focus on the actual terms of the Agreement, which do not provide for a waiver of
Plaintiff Parisi's class claims.

classwide arbitration can be premised on the Note's severability provision." *Fensterstock*, 611

F.3d at 141.  Notably, the Court also determined that the class waiver itself was unenforceable,

and severed it from the agreement.  *Id.* at 140-41.

> B. The Relevant Customs, Practices, Usages and Terminology Support a Finding that the Parties Anticipated Class Treatment.

When viewed in light of the relevant history and industry custom, the Agreement's broad

arbitration language evinces an intent to include class claims.  The Supreme Court has

recognized that New York law allows application of custom and usage to resolve an ambiguity.

*See Stolt-Nielsen*, 130 S. Ct. at 1769 n.6. (citing, *e.g.*,  *Lopez v. Consol. Edison Co. of N. Y.*, 40

N.Y.2d 605, 609 (1976) (where contract terms were ambiguous, parol evidence of custom and

practice was properly admitted to show parties' intent).

As of 2003, the time when the Agreement was signed, class actions were a regular and

anticipated means of resolving employment discrimination claims.  *See* Nancy Levit,

"Megacases, Diversity, and Elusive Goal of Workplace Reform," 49 B.C. L. Rev. 367, 374-

75 (2008) ("By the mid- to late1990s, courts began to certify [employment discrimination]

classes with increasing frequency.").  In fact, employment class actions challenging systemic

gender discrimination in financial services were widespread in the years leading up to 2003.  *See*,

*e.g.*, *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998); *Cremin v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 957 F. Supp. 1460 (N.D. Ill. 1997); *E.E.O.C. v. Morgan Stanley &*

*Co.*, No. 01 Civ. 8421, 2002 WL 1431685 (S.D.N.Y. July 1, 2002).  Clearly, the relevant

industry custom for allegations of company-wide patterns of discrimination was to bring class

actions.  In light of this, to the extent those claims are not covered in Section 5's catch-all,

Section 4's reference to all "Employment Related Matters" encompasses Plaintiff Parisi's class

claims.

Other relevant industry customs may support interpreting the arbitration clause to include arbitration of class claims.  On October 8, 2003, one month before Plaintiff Parisi signed this Agreement, the AAA adopted rules for the arbitration of class claims.  This was done, in part, as a response to the Supreme Court's June 2003 decision in *Bazzle v. Green Tree Financial Corp.*, 539 U.S. 444 (2003), which addressed the arbitrability of class claims.  At the time Plaintiff Parisi signed the Agreement, neither the NYSE or the NASD provided for the arbitration of class claims; notably, the Agreement states that, "[i]f both the NYSE and the NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA")."

In drafting the Agreement, Defendants may have included the AAA as a potential forum in part to handle employees' class claims, since neither the NYSE or NASD could arbitrate class disputes.  Thus, it is reasonable to infer that Defendants expected the broad arbitration language to encompass class claims.[9]  *Cf. Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 252 (S.D.N.Y. 1998) (concluding that where an arbitration clause referred disputes to the NASD or NYSE, the plaintiffs had a "reasonable expectation that [their agreement] did not cover class actions" since those forums do not consider class claims).

---

[9] In the alternative, given that Defendants did not alter the arbitration section (Section 4) of their form agreement from 2002 to the time Plaintiff Parisi signed her Agreement in 2003, Defendants drafted this Agreement during a time when there was no arbitral forum for class claims, which would show that Defendants always intended for class claims to proceed in litigation.

16

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to compel individual arbitration.

Dated:  March 08, 2011
        New York, New York

By:      /s/ Adam T. Klein
         Adam T. Klein
         **Outten & Golden LLP**
         Adam T. Klein
         Cara E. Green
         Jennifer L. Liu
         Mariko Hirose
         3 Park Avenue, 29th Floor
         New York, New York 10016
         Telephone:  (212) 245-1000

         **Lieff, Cabraser, Heimann & Bernstein, LLP**
         Kelly M. Dermody (admitted *pro hac vice*)
         Anne B. Shaver (admitted *pro hac vice*)
         Heather H. Wong (admitted *pro hac vice*)
         Alison M. Stocking (admitted *pro hac vice*)
         275 Battery Street, 29th Floor
         San Francisco, California 94111-3339
         Telephone: (415) 956-1000

         *Attorneys for Plaintiffs*