UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,<br><br>         Plaintiffs,<br><br>vs.<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.<br><br>         Defendants. | 10 Civ. 6950 (LBS) (JCF) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY PLAINTIFF PARISI'S CLAIMS AND COMPEL INDIVIDUAL ARBITRATION

PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.

I.  INTRODUCTION

Not one of the arguments contained in Plaintiff Parisi's Memorandum of Law in opposition to Defendants' motion (hereinafter "Opp. Br.") [Docket No. 48] undermines the indisputable fact that her commitment to arbitrate was silent concerning class arbitration, and that *Stolt-Nielsen* directly bars her from pursuing arbitration on anything other than an individual basis. Plaintiff's claims are nothing like the claims as to which courts have found class arbitration waivers unenforceable. Similarly, there is no merit to Plaintiff's fallback argument that even if she is compelled to arbitrate her own claims, she must be permitted to proceed as a class representative in that forum. Her other attempts to evade the plain language of the Agreement also lack merit. Plaintiff agreed to arbitrate her claims, and the Court should order her to do so.

II.  ARGUMENT

   A.  **Plaintiff Fails to Distinguish the Plain Applicability of *Stolt-Nielsen* to Her Commitment to Arbitrate**

Plaintiff cannot dispute that the United States Supreme Court, in *Stolt-Nielsen, S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), established that a party seeking to proceed on a class basis in arbitration must provide actual proof that "the parties agreed to authorize class arbitration." *Id.* at 1776. Nor can Plaintiff deny that her Agreement with Goldman Sachs is silent on the issue of class arbitration. Faced with these roadblocks, she simply ignores *Stolt-Nielsen* and asserts that Goldman Sachs must have "anticipated" the possibility of class arbitration based on unrelated events and therefore that the parties intended to allow class actions in arbitration. Opp. Br. at 15-16. This approach, however, is not materially different from arguing that the Agreement *permits* class arbitration simply because it does not *preclude the possibility* of class

arbitration. The Supreme Court directly rejected this sort of speculation and burden-shifting; there must be a showing that the parties affirmatively agreed to class arbitration. *Stolt-Nielsen*, 130 S. Ct. at 1776.

As Judge Rakoff correctly observed in *Jock v. Sterling Jewelers, Inc.*, 725 F. Supp. 2d 444 (S.D.N.Y. 2010), *Stolt-Nielsen* establishes that an agreement to arbitrate on a class basis cannot be inferred when "the contract *itself* provides no reason to believe the parties reached any agreement on that issue." *Id.* at 450 (emphasis added). Plaintiff observes that Judge Rakoff partially stayed the effect of his decision pending appeal, but cannot explain why this means anything about the accuracy of his reading of the Supreme Court's holding in *Stolt-Nielsen*. Try as she may, Plaintiff can point to no passage in her Agreement demonstrating that she and Goldman Sachs reached an agreement to arbitrate on a class action basis.

With absolutely no support for class arbitration, whether in the language of the Agreement or otherwise, Plaintiff argues that the Court should look to industry "custom and usage" as "rules of construction" to resolve "ambiguity" in the Agreement. Opp. Br. at 13, 15. This argument should be rejected out of hand. First, as the Supreme Court has observed, under New York law "custom and usage" is only "relevant to determining the parties' intent when an express agreement is *ambiguous*." *Stolt-Nielsen*, 130 S. Ct. at 1769. Under New York law, "ambiguity does not arise from silence." *Nissho Iwai Europe PLC v. Korea First Bank*, 99 N.Y.2d 115, 121, 782 N.E.2d 55, 59-60 (N.Y. 2002) (internal citation and quotations omitted). As this Court has already held in rejecting the relevance of extrinsic evidence, "the absence of a term in the Employment Agreement addressing class arbitration creates no inherent ambiguity." March 1, 2011 Memorandum & Order [Docket No. 46], at 8. The Agreement, the Court found, is "unambiguous." *Id.* Moreover, as Judge Rakoff noted in *Jock*, there was no "custom and

usage" concerning arbitration of employment class actions: "while many Title VII lawsuits are litigated as class claims (and many are not), there is no basis for asserting that there is any long-standing custom of class *arbitration* of such claims." *Jock*, 725 F. Supp. 2d at 449 (emphasis in the original).[1]

More fundamentally, the question whether class action *litigation* was common in November 2003, when Plaintiff signed the Agreement and the AAA adopted class arbitration rules, Opp. Br. at 15-16, is entirely irrelevant to the real issue at hand here: whether the Agreement at issue contains any affirmative agreement by Goldman Sachs to class arbitration of employment matters with Plaintiff and its other Managing Directors. It simply does not.

In sum, Plaintiff offers no basis upon which the Court could compel arbitration on a class basis in this case. *Stolt-Nielsen*, 130 S. Ct. at 1775 ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so") (emphasis in original).

### B. The Unavailability of Class Action Arbitration Does Not Make the Agreement Unenforceable

Because the Agreement does not say or mean what Plaintiff wants, she argues that the Agreement is unenforceable. This "end run" to avoid her obligation to arbitrate cannot succeed. The cases upon which Plaintiff relies are distinguishable, as those decisions depended entirely on

---

[1] The fact that the AAA promulgated rules for class arbitration in late 2003 in response to *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), does not support Plaintiff's position. The arbitration provision in Plaintiff's Agreement was created well before *Bazzle*, at a time when class arbitration was not contemplated by parties in their employment arbitration agreements and not allowed by the courts. Plaintiff has offered no evidence demonstrating that this alternate forum provision is anything but commonplace in the financial industry. Plaintiff's bare assertion that Goldman Sachs may have included the AAA as a potential forum under the Agreement for the purpose of handling class claims is nothing but wild – and illogical – speculation, which falls far short of the type of evidence from which the Court could infer that there was an actual agreement to arbitrate class claims.

the court's determination that the value of the individual claims at issue was so small that pursuing rights through individual litigation was impractical. Plaintiff's Title VII claims, by contrast, are anything but "negative value" claims.

This Court and the Second Circuit have recently held that arbitration agreements that expressly require waiver of the procedural right to pursue claims on a class action basis may be unenforceable, but only in situations in which the waiver effectively precludes the plaintiff's ability to vindicate her own individual substantive statutory rights. *See* In re *American Express Merchants' Litigation,* Case No. 06-1871-cv, slip op. at 18 (2d Cir. Mar. 8, 2011) (submitted by Plaintiff as supplemental authority) (finding class action waiver unenforceable because individual arbitrations would be cost-prohibitive for the small merchant plaintiffs; "we find ... that the cost of plaintiffs' individually arbitrating their dispute would be prohibitive, effectively depriving plaintiffs of the statutory protection of the antitrust laws"); *Sutherland v. Ernst & Young, LLP*, Case No. 10 Civ. 3332, slip op. at 3-4 (S.D.N.Y. Mar. 3, 2011) (same conclusion with respect to a class action waiver because it would be "prohibitively expensive" for plaintiff to pursue her statutory Fair Labor Standards Act ("FLSA") claims on an individual basis). Essential to the holding of these cases is the fact that the plaintiffs' claims were "negative value claims" – i.e., the value of each plaintiff's claims was negligible compared to the cost of seeking recovery on those claims through individual arbitration. *See* In re *American Express*, slip op. at 18-19 (individual claims for the median volume merchant of $1,751, or even $5,252 when trebled, were negligible compared to the approximate $850,000 cost of individual antitrust arbitration); *Sutherland*, slip op. at 7-8 (individual claim for $1,867.02, or $3,734 when doubled, was negligible when compared to the estimated $166,000 cost of individual FLSA arbitration).

In citing these cases, Plaintiff willfully ignores that fact that in each case there was record

evidence demonstrating that it would be cost-prohibitive for the plaintiff to litigate the claims individually. Here, by contrast, Plaintiff failed to submit any evidence even purporting to establish that individual arbitration would be cost-prohibitive for her, and for good reason. Plaintiff, who earned an average of $ REDACTED annually during her last three years with Goldman Sachs,[2] could certainly pursue her claims individually. In addition, she could pursue compensatory and/or punitive damages of up to $300,000 under Title VII, and potentially even more under the uncapped damages provisions of the NYCHRL.

In addition to the substantial monetary value of Plaintiff's individual claim, a successful Title VII plaintiff is entitled to recover legal costs, including attorney's fees and expenses. 42 U.S.C. § 2000e-5(k) (2006); *see, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust"). This factor alone differentiates Plaintiff's case from In re *American Express* and *Sutherland*, which involved no statutory entitlement to recover fees. In *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), the Eleventh Circuit noted the critical importance of this factor. In finding an arbitration agreement with a class action waiver unconscionable in *Dale*, the Eleventh Circuit distinguished its own prior decision in *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), in which it held that a class action waiver was enforceable:

> In *Caley*, we determined only that under the specific facts of that case, the [agreement] prohibiting class actions was enforceable, not that every class action waiver is enforceable under Georgia law. We did not consider a factual scenario in which a remedy was effectively foreclosed because of the negligible amount of

---

[2] *See* Affidavit of Pricila M. Hidalgo-Liranzo, dated March 21, 2011, ¶ 2. Indeed, Plaintiff and her fellow Extended Managing Directors each received an annual salary of $300,000 in 2008, not including end-of-year bonuses. *Id.* ¶ 3. Beginning in 2009, Goldman Sachs increased the pre-bonus annual salary for EMDs to $500,000. *Id.*

recovery when compared to the cost of bringing an arbitration action. More importantly, a review of the claims in *Caley* shows that each provided for the recovery of attorneys' fees and/or expert costs should the plaintiff prevail.

*Dale*, 498 F.3d at 1221.

Plaintiff's failure – and indeed, inability – to introduce proof that her claims, and the alleged claims of the Managing Directors whom she seeks to represent, are in fact "negative value claims" dooms her assertion that the Arbitration Agreement is unconscionable and unenforceable. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000) ("a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs"), *on remand, Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001) (class action waiver upheld; claims at issue permitted recovery of attorneys' fees and costs).[3]

In re *American Express* and *Sutherland* are simply inapposite. Plaintiff, like any other Managing Director who considers herself aggrieved, has the financial incentive and the access to counsel necessary to assert her claims in arbitration, and thereby to vindicate her substantive Title VII rights if they have been infringed.

C.  **Plaintiff's Claim of An Independent Right to Be A Representative is Groundless**

Plaintiff's argument that she has a purported "substantive right" to be a class representative is a home-made invention unsupported by law. Opp. Br. at 3. A class

---

[3] Plaintiff's argument regarding *Fensterstock* v. *Education Finance Partners*, 611 F.3d 124 (2d Cir. 2010), is incorrect. *Fensterstock* applied California law to a class arbitration waiver in a consumer contract. The holding had nothing to do with the threshold issue of whether the parties had agreed to class arbitration in the first place. Moreover, a vital aspect of *Fensterstock* was the Court's holding that the plaintiffs were consumers who each individually had very little money at stake. *Fensterstock* thus relied heavily on the same inapplicable "negative value" argument discussed above. *Id.* at 138-40.

representative's status derives from the fact that she has individual claims, not vice versa. Plaintiff contracted to bring her individual claims in an arbitration proceeding, thereby waiving her right to bring her claims in court. Under the requirements of Rule 23, there is no such thing as a claim-less class representative.

The Supreme Court has noted that a litigant's right to be a Rule 23 class representative is a "procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980); *see also Belgrave v. Greene,* No. Civ. A. 00-B01523, 2000 WL 35526417, at *4 (D. Colo. Dec. 5, 2000) ("[T]here is no 'right' to a class action. Rather it is a procedural device controlled by Fed. R. Civ. P. 23 with trial court discretion to grant or deny motions to certify a class."). Rule 23 "neither change[s] plaintiffs' separate entitlements to relief nor abridge[s] defendants' rights; [it] alter[s] only how the claims are processed." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1433 (2010).

Title VII likewise confers no substantive right to represent a class. The statute contains no language guaranteeing private litigants a right to pursue class actions to remedy alleged systemic discrimination. *See* 42 U.S.C. § 2000e *et seq.*; *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 817 (11th Cir. 2001) ("[T]here exists a difference between the availability of a class action tool, and possessing a blanket right to that tool under any circumstance." (quoting *Bowen v. First Family Fin. Svcs., Inc.*, 233 F.3d 1331, 1337-38 (11th Cir. 2000)). Although Title VII explicitly grants the Equal Employment Opportunity Commission the power to assert systemic employment discrimination claims, *see* 42 USC § 2000e-5(f)(1), and the Commission therefore is exempt from the Rule 23 class action requirements, there is no such express statutory entitlement for a Title VII private litigant to

represent a class. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 155-56 (1982) ("In exercising [its] enforcement power, the Commission may seek relief for groups of employees or applicants for employment without complying with the strictures of Rule 23. Title VII, however, contains no special authorization for class suits maintained by private parties.").[4]

A class representative must have a viable claim of her own in court, and Plaintiff waived that right.

### D. The Arbitration Agreement Is Internally Consistent and Requires Arbitration of All Employment-Related Matters

Plaintiff argues that Section 5 of the Arbitration Agreement contemplates that some employment-related matters will not be subject to arbitration and may be brought in court. Opp. Br. at 10-12. This argument, which invites the Court to perform unfamiliar feats of contract interpretation gymnastics, fails based on a straightforward reading of the language on the face of the Agreement.

The entire text of the portion of Section 5 to which Plaintiff refers reads as follows:

> THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN THE CITY OF NEW YORK OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO EMPLOYMENT RELATED MATTERS (AS DEFINED HEREIN) WHICH IS NOT OTHERWISE ARBITRATED OR RESOLVED ACCORDING TO THE PROVISIONS OF SECTION 4 OF THIS AGREEMENT. This includes any suit, action or proceeding to compel arbitration or to enforce an arbitration award. The parties acknowledge that the forum designated by this Section 5 has a reasonable relation to this Agreement, and to the parties' relationship with one another.
>
> The Agreement by you and the Firm as to this forum is independent of the law that may be applied in the action, and you

---

[4] The EEOC had the opportunity to investigate, conciliate and litigate systemic claims on a class-type basis with respect to the charges of the named plaintiffs in this action, but did not do so.

> and the Firm agree to this forum even if the forum may under applicable law choose to apply non-forum law. You and the Firm hereby waive, to the fullest extent permitted by applicable law, any objection which you or the Firm now or hereafter have to personal jurisdiction or to the laying of venue of any such suit, action or proceeding brought in such court. You and the Firm undertake not to commence any action arising out of or relating to this Agreement, including any post-employment Employment Related Matters, in a forum other than a forum described in this Section or Section 4. You and the Firm agree that, to the fullest extent permitted by applicable law, a final and non-appealable judgment in any such suit, action, or proceeding brought in any such court shall be conclusive and binding upon the parties.

Defs.' Mem. of Law in Supp. of Mot. to Stay Pl. Parisi's Claims and Compel Individual Arbitration, Ex. C at Ex. 1, pp. 6-7.

Far from the speculative interpretation Plaintiff seeks to apply, Section 5 is a standard contractual choice-of-forum and choice-of-law provision. It contemplates that notwithstanding the broad arbitration provisions contained in Section 4, there may be occasions when the parties may desire judicial intervention—including, for example, arbitration-related motions such as the instant motion. Section 5 simply specifies the courts in which the parties should pursue applicable judicial remedies, and the law that will govern those disputes. Indeed, the illustration included in Section 5 is telling: "This includes any suit, action or proceeding to compel arbitration or to enforce an arbitration award." That Plaintiff has made this highly fanciful Section 5 argument while the parties are before the Court in the *exact* type of dispute that Section 5 expressly contemplates is ironic.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in its moving papers, Goldman Sachs respectfully submits that Plaintiff has established no legitimate basis for evading her contractual commitment to arbitrate any gender discrimination allegations she may have. The Court should

grant Goldman Sachs' motion to compel individual arbitration so that the parties may finally utilize the prompt, efficient and expedient procedural mechanism by which they agreed to resolve any employment related disputes between them.

Dated: New York, New York

March 22, 2011

PAUL, HASTINGS, JANOFSKY & WALKER LLP

BY: _____
BARBARA B. BROWN (*admitted pro hac vice*)
ZACHARY D. FASMAN
C. GEOFFREY WEIRICH (*admitted pro hac vice*)

75 East 55th Street
New York, New York 10022-3205
(212) 318-6000
barbarabrown@paulhastings.com;
zacharyfasman@paulhastings.com;
geoffweirich@paulhastings.com

SULLIVAN & CROMWELL LLP
THEODORE O. ROGERS, JR.
SUHANA S. HAN
125 Broad Street
New York, New York 10004
(212) 558-4000
rogerst@sullcrom.com
hans@sullcrom.com
fullertonj@sullcrom.com

*Attorneys for Defendants*
GOLDMAN, SACHS & CO. and
THE GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.<br><br>Defendants. | 10 Civ. 6950 (LBS) (JCF)<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on March 22, 2011, a copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY CLAIMS OF PLAINTIFF PARISI AND COMPEL INDIVIDUAL ARBITRATION was served by the Court's ECF system on:

> Adam T. Klein
> Cara E. Greene
> Jennifer L. Liu
> OUTTEN & GOLDEN, LLP
> 3 Park Avenue, 29th Floor
> New York, New York 10016
> *Attorneys for Plaintiffs*
>
> Kelly M. Dermody
> Anne B. Shaver
> Heather H. Wong
> LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111-3339
> *Attorneys for Plaintiffs*

Dated: New York, New York
March 22, 2011

By: _____
ZACHARY D. FASMAN

LEGAL_US_E # 92128827.4