UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
H. CRISTINA CHEN-OSTER; LISA    :  10 Civ. 6950 (LBS) (JCF)
PARISI; and SHANNA ORLICH,      :
                                :       MEMORANDUM
              Plaintiffs,        :      AND  ORDER
                                :
     - against -                 :
                                :
GOLDMAN, SACHS & CO. and THE    :
GOLDMAN SACHS GROUP, INC.,      :
                                :
              Defendants.        :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     This is a putative class action in which the plaintiffs allege

that their employer, Goldman, Sachs & Co. and The Goldman Sachs

Group, Inc. (collectively, "Goldman Sachs"), has engaged in a

pattern of gender discrimination against its female professional

employees in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq., and New York City Human Rights

Law, N.Y.C. Admin. Code § 8-107 et seq.  Goldman Sachs has moved to

stay the action with respect to one representative plaintiff, Lisa

Parisi, and to compel arbitration of her claims.

     Ms. Parisi's individual claims are subject to an arbitration

clause signed as part of her employment agreement, and, pursuant to

that agreement, Goldman Sachs cannot be required to arbitrate on a

class basis.  However, because an arbitration clause may not be

enforced if it precludes the vindication of substantive rights, and

1

because a pattern or practice claim under Title VII can only be brought in the context of a class action, Ms. Parisi's Title VII claim cannot be committed to arbitration lest she be deprived of her substantive rights.  Therefore, as discussed more fully below, the defendants' motion to stay this action and compel arbitration is denied.

Background

The plaintiffs are three women who worked for Goldman Sachs between 1997 and 2008.  (Complaint ("Compl."), ¶¶ 13-18). Plaintiff H. Cristina Chen-Oster was hired in March 1997 and promoted to the position of Vice President in June of that year. (Compl., ¶ 70).  She remained in that position for the next eight years, until her resignation from the firm.  (Compl., ¶¶ 70, 102). Plaintiff Shanna Orlich was hired as a Summer Associate by Goldman Sachs in 2006, and then as a full-time Associate in July 2007. (Compl., ¶ 115).  She remained in that position until she was terminated, in November 2008.  (Compl., ¶ 134).  Plaintiff Lisa Parisi (the "plaintiff") was hired by Goldman Sachs as a Vice President in August 2001.  (Compl., ¶ 104).  In 2003, Ms. Parisi was promoted to the position of Managing Director at Goldman Sachs. (Compl., ¶ 104).  As a condition of her promotion, Ms. Parisi signed an employment contract.  (Letter of Henry M. Paulson, Jr., dated Nov. 4, 2003 (the "Employment Agreement"), attached as Exh.

1 to Declaration of Erin E. LaRuffa dated Nov. 22, 2010).   The
Employment Agreement contains an arbitration clause that provides
as follows:

> [A]ny dispute, controversy or claim arising out of or
> based upon or relating to Employment Related Matters will
> be finally settled by arbitration in New York City
> before, and in accordance with the rules then obtaining
> of, the New York Stock Exchange, Inc. ("NYSE") or if the
> matter is not arbitrable before the NYSE, the National
> Association of Securities Dealers ("NASD").  If both the
> NYSE and the NASD decline to arbitrate the matter, the
> matter will be arbitrated before the American Arbitration
> Association ("AAA") in accordance with the commercial
> arbitration rules of the AAA.   You agree that any
> arbitration decision and/or award will be final and
> binding upon the parties and may be entered as a judgment
> in any appropriate court.

(Employment Agreement, § 4).   The Employment Agreement defines
"Employment Related Matters" as "matters arising out of or relating
to or concerning this Agreement, your hire by or employment with
the Firm or the termination thereof, or otherwise concerning any
rights, obligations or other aspects of your employment
relationship in respect of the Firm." (Employment Agreement, § 3).
Ms. Parisi continued as a Managing Director until her employment
was terminated by Goldman Sachs in November 2008.  (Compl., ¶¶ 104,
113).

Following their separation from Goldman Sachs, each of the
plaintiffs filed charges with the Equal Employment Opportunity
Commission (the "EEOC"), alleging gender discrimination and

3

retaliation.  (Compl., ¶¶ 103, 114, 135).  The plaintiffs filed
this suit on September 16, 2010 "on behalf of themselves
individually and all similarly situated female Associates, Vice
Presidents, and Managing Directors in the United States." (Compl.,
¶ 60).  The plaintiffs' complaint asserts eight claims for relief,
including two claims that Goldman Sachs intentionally discriminated
against the plaintiffs and other members of the purported class by
engaging in an "intentional, company-wide, and systematic policy,
pattern, and/or practice of discrimination against its female
Associates, Vice Presidents, and Managing Directors." (Compl., ¶¶
138, 154).  It also asserts two claims that "company-wide policies,
patterns, and/or practices of determining compensation and
eligibility for promotion based on subjective criteria applied by
predominantly male reviewers" and of delegating "unchecked and
standardless discretion to its overwhelmingly male managers to
distribute business opportunities, determine levels of professional
support, evaluate employee performance, set compensation, and
select individuals for promotion, and determine other terms and
conditions of employment" had a disparate impact on putative class
members and on the plaintiffs themselves.  (Compl., ¶¶ 147, 163).

    At the same time that it answered the complaint, on November
22, 2010, Goldman Sachs filed the instant motion to stay Ms.
Parisi's claims and compel individual arbitration.  (Notice of

4

Motion dated Nov. 22, 2010).  In response, the plaintiff sought limited discovery related to Goldman Sachs' custom and practice with respect to arbitration, ultimately filing a motion to compel disclosure of exemplar credit card and employment agreements. (Memorandum and Order dated March 1, 2011 ("3/1/11 Order") at 1-2, 3).  I denied that motion on March 1, 2011, finding that, because there was no ambiguity in Ms. Parisi's employment contract, New York law prohibited consideration of extrinsic evidence in interpreting its provisions, and the requested discovery was therefore irrelevant.  (3/1/11 Order at 5-8).  The parties subsequently completed briefing of Goldman Sachs' motion to stay and compel arbitration, including the filing of a sur-reply by the plaintiff addressing the Second Circuit's decision in In re American Express Merchants' Litigation, 634 F.3d 187 (2d Cir. 2011) ("American Express II"), issued on March 8, 2011.

Discussion[1]

---

[1] There is some disagreement among district courts in this circuit over whether motions to compel arbitration are dispositive, and therefore require that a magistrate judge issue a report and recommendation to a district judge, or are non-dispositive, and may be decided by a magistrate judge by means of a memorandum and order.  Compare Kiewit Constructors, Inc. v. Franbilt, Inc., No. 07 CV 121A, 2007 WL 2461919, at *1 n.1 (W.D.N.Y. Aug. 24, 2007) ("[T]hat portion of the motion relating to arbitration is non-dispositive, and may be determined by [a magistrate judge]."), Zouras v. Goldman Sachs Group, Inc., No. 02 Civ. 9249, 2003 WL 21997745, at *1 (S.D.N.Y. Aug. 22, 2003) ("Because a motion to compel arbitration and stay an action is not a dispositive motion

A.   <u>Proper Decisionmaker</u>

As an initial matter, the defendants note that the arbitrability of Ms. Parisi's claims is for this Court, rather than an arbitrator, to determine. (Memorandum of Law in Support of Defendants' Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration ("Def. Memo.") at 9-10). Indeed, both parties agree that, pursuant to the Supreme Court's holding in <u>Rent-A-Center, West, Inc. v. Jackson</u>, __ U.S. __, 130 S. Ct. 2772 (2010), "the Court decides the question of arbitrability because the arbitration agreement does not clearly and unmistakably delegate that question to the arbitrator." (Plaintiffs' Memorandum of Law in Support of Opposition to Defendants' Motion to Compel Arbitration ("Pl. Memo.") at 12 n.6); <u>see</u> <u>Rent-A-Center, West, Inc.</u>, __ U.S. at __, 130 S. Ct. at 2777 n.1. However, while "any

---

under 28 U.S.C. § 636(b)(1)(A), [the magistrate judge] will decide the defendants' motion pursuant to an opinion and order."), <u>and</u> <u>Herko v. Metropolitan Life Insurance Co.</u>, 978 F. Supp. 141, 142 n.1 (W.D.N.Y. 1997) ("The court has considered whether a motion to compel arbitration is a dispositive motion and has concluded it is not."), <u>with</u> <u>ECOR Solutions, Inc. v. Malcolm Pirnie, Inc.</u>, No. 02 CV 1103, 2009 WL 2424553, at n.1 (N.D.N.Y. Jan. 21, 2009) (finding that "[i]n this circuit, motions to compel arbitration are treated as dispositive motions which may be referred to a magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)" and collecting cases). Because I find persuasive those cases concluding that motions to compel arbitration are not case-dispositive, and because the instant motion was referred to me by the Honorable Leonard B. Sand, U.S.D.J., as a non-dispositive motion, I will address it by memorandum and order.

potentially dispositive gateway question" might be termed a "question of arbitrability," "[t]he Court's case law [] makes clear that, for purposes of applying the interpretive rule, the phrase 'question of arbitrability' has a far more limited scope." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Furthermore, a plurality of the Supreme Court has specifically held that the question of whether a contract "forbid[s] class arbitration [] does not fall into this narrow exception," but rather is an issue of contract interpretation properly left to the arbitrator. Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003).

In this case, part of the dispute centers on whether the contract at issue forbids class arbitration -- precisely the issue deemed to be one of contract interpretation by the plurality in Bazzle. However, the motion is appropriately resolved by this Court for two reasons. First, as both parties are in agreement that the Court is the appropriate forum for resolution of this dispute, it seems plain that the dispute fits into the

> narrow circumstance where contracting parties would
> likely have expected a court to have decided the gateway
> matter, where they are not likely to have thought that
> they had agreed that an arbitrator would do so, and,
> consequently, where reference of the gateway dispute to
> the court avoids the risk of forcing parties to arbitrate
> a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83-84; see also Skirchak v. Dynamics Research Corp., 508 F.3d 49, 56 (1st Cir. 2007) ("An agreement to arbitrate does not divest a court of its jurisdiction."). Second, the balance of the parties' dispute is over "whether [they] have agreed to submi[t] a particular dispute to arbitration," a question that is generally resolved by the courts. Granite Rock Co. v. International Brotherhood of Teamsters, __ U.S. __, __, 130 S. Ct. 2847, 2855 (2010) (second alteration in original) (internal quotation marks omitted). The questions raised by the parties require determination of the scope and enforceability of the arbitration clause, and therefore the issue is appropriately characterized as a dispute over arbitrability. See Rent-A-Center, West, Inc., __ U.S. at __, 130 S. Ct. at 2778 ("If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement."); In re American Express Merchants' Litigation, 554 F.3d 300, 311 (2d Cir. 2009) ("American Express I") ("[I]f there is a challenge to the arbitration clause itself -- an issue which goes to the making of the agreement to arbitrate -- the federal court may proceed to adjudicate it." (internal quotation marks omitted)), vacated sub nom. American Express Co. v. Italian Colors Restaurant, __ U.S. __, 130 S. Ct. 2401 (2010), reaff'd, 634 F.3d 187 (2d Cir. 2011); see also

Stolt-Nielsen S.A. v. AnimalFeeds International Corp., __ U.S. __,
__, 130 S. Ct. 1758, 1772 (2010) (agreeing that Bazzle held
"contract interpretation issue is left up to the arbitrator" but
noting that "only the plurality decided that question").

     B.   Applicable Law

    Arbitration clauses in employment contracts are generally
subject to the provisions set forth in the Federal Arbitration Act
(the "FAA"), 9 U.S.C. §§ 1 et seq.  See Circuit City Stores, Inc.
v. Adams, 532 U.S. 105, 119 (2001) (finding all employment
contracts subject to FAA except those of "transportation workers").
Under the FAA,

> If any suit or proceeding be brought in any of the courts
> of the United States upon any issue referable to
> arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending,
> upon being satisfied that the issue involved in such suit
> or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties
> stay the trial of the action until such arbitration has
> been had in accordance with the terms of the agreement,
> providing the applicant for the stay is not in default in
> proceeding with such arbitration.

9 U.S.C. § 3.  In deciding whether to stay an action and compel
arbitration, four factors are relevant: (1) whether the parties
agreed to arbitrate; (2) the scope of the agreement to arbitrate;
(3) whether Congress intended any asserted federal statutory claims
to be nonarbitrable; and (4) whether a stay is appropriate.
Reynolds v. de Silva, No. 09 Civ. 9218, 2010 WL 743510, at *2

(S.D.N.Y. Feb. 24, 2010) (citing <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 844 (2d Cir. 1987)).

"[W]hen determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'" <u>Sinnett v. Friendly Ice Cream Corp.</u>, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004) (quoting <u>First Options, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)). Nonetheless, "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" <u>Stolt-Nielsen</u>, __ U.S. at __, 130 S. Ct. at 1773 (quoting <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 489 U.S. 468, 479 (1989)). Given the preference for arbitration embodied in the FAA and Supreme Court case law, federal courts construe arbitration clauses broadly and apply a "presumption of arbitrability." <u>Sinnett</u>, 319 F. Supp. 2d at 444; <u>see also</u> 9 U.S.C. § 2 ("An agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

C.   <u>Scope of Arbitration Clause</u>

In opposing the motion to compel arbitration, the plaintiff

argues that, although the Employment Agreement contains an
arbitration clause, that clause does not apply to her class claims
because the Employment Agreement also contains a judicial forum
selection clause that "anticipates that some matters will not be
subject to arbitration and should be brought in court"; she asserts
that these provisions create an ambiguity that "should be read to
provide [the plaintiff] with her forum of choice for class claims."
(Pl. Memo. at 10-11).  This argument depends upon a determination
that there is, in fact, ambiguity on the face of the Employment
Agreement, which would then require construction of the ambiguity
against the defendants, who drafted the Agreement.  (Pl. Memo. at
10-11).

       However, the existence of a judicial forum selection provision
does not render the arbitration clause ambiguous or susceptible to
any alternative interpretation.[2]  See, e.g., Bank Julius Baer & Co.
v. Waxfield Ltd., 424 F.3d 278, 284-85 (2d Cir. 2005) (finding
forum selection clause "complementary to an agreement to
arbitrate"); Applied Energetics, Inc. v. NewOak Capital Markets,

_____

       [2] Any argument that the Employment Agreement is ambiguous
because of its silence regarding the arbitrability of class-based
claims is foreclosed by my earlier determination that "the absence
of a term in the Employment Agreement addressing class arbitration
creates no inherent ambiguity" because "silence with respect to a
particular issue does not generally render a contract ambiguous"
under New York law.  (3/1/11 Order at 5, 8).

11

LLC, No. 10 Civ. 1669, 2010 WL 4968186, at *3 & n.8 (S.D.N.Y. Dec. 3, 2010) (same).  First, the forum selection provision by its own terms applies only to "any suit, action or proceeding arising out of or relating to Employment Related Matters . . . which is not otherwise arbitrated," evidencing a clear preference for arbitration of such claims.  (Employment Agreement, § 5); cf. Bank Julius Baer, 424 F.3d at 285 (finding forum selection clause ambiguous because it "makes no reference to arbitration").  Second, the Employment Agreement expressly identifies motions to compel arbitration and to enforce arbitration awards as the types of court action to which the forum selection clause might be applicable, avoiding the conclusion that the full application of the arbitration clause in Section 4 would render Section 5 superfluous. See Garza v. Marine Transport Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988) (noting that interpretation rendering part of contract superfluous or meaningless "is not preferred and will be avoided if possible"); see also Edgewater Growth Capital Partners, L.P. v. Greenstar North America Holdings, Inc., 69 A.D.3d 439, 439, 891 N.Y.S.2d 278, 278-79 (1st Dep't 2010) (reconciling arbitration clause with "general jurisdiction provision" and granting motion to compel arbitration); Isaacs v. Westchester Wood Works, Inc., 278 A.D.2d 184, 185, 718 N.Y.S.2d 338, 339 (1st Dep't 2000) (enforcing "express provision in the parties' agreement to arbitrate disputes"

although there was "an additional clause in the agreement vesting the courts of this State with exclusive jurisdiction in all actions and proceedings," since "there was no express denial of the agreement to arbitrate" and "conflicting contract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect").

Even if the co-existence of a forum selection clause and an arbitration clause rendered the intent to arbitrate ambiguous under state contract law, both federal and state case law require resolving any such ambiguity in favor of arbitration.  See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) ("'[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" (quoting Volt Information Sciences, 489 U.S. at 475)); Kelso Enterprises Ltd. v. A.P. Moller-Maersk, 375 Fed. Appx. 48, 49-50 (2d Cir. 2010) (resolving facial ambiguity in favor of arbitration and noting that "we cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration" (internal quotation marks omitted)); Applied Energetics, 2010 WL 4968186, at *3 ("'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" (quoting Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008))); Bear Stearns & Co. v. Gordon, Nos. 08 Civ. 8596, 8597, 2009 WL 1904567, at *3 (S.D.N.Y. July 1, 2009)

13

(same); <u>Tong v. S.A.C. Capital Management, LLC</u>, 52 A.D.3d 386, 387, 860 N.Y.S.2d 84, 85 (1st Dep't 2008) ("Even if the arbitration provision were, as plaintiff contends, ambiguous in scope, since its construction is governed by the Federal Arbitration Act, any such ambiguities would be properly resolved in favor of arbitration.").[3]

Thus, in this case there is an operational agreement to arbitrate. Because that agreement applies to all "Employment Related Matters," the plaintiff's claims of gender-based employment discrimination and retaliation are encompassed by the clause.

D.   <u>Availability of Class Arbitration</u>

The plaintiff argues in the alternative that the Employment Agreement allows for the arbitration of her claims on a class

---

[3] Although, as the plaintiff points out, ambiguities should generally be construed against the drafter, (Pl. Memo. at 10); <u>see also</u> <u>Mastrobuono</u>, 514 U.S. at 62-63, this common law rule of contract interpretation cannot overcome the strong preference for arbitrability embodied in the FAA and federal and state case law. <u>See</u> <u>Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.</u>, 155 F. Supp. 2d 1, 33 n.53 (S.D.N.Y. 2001) (noting that this canon of construction "applies only as a tie breaker, when other canons fail to dispel uncertainty"), <u>aff'd in relevant part</u>, 277 F.3d 253 (2d Cir. 2002); <u>Smith Barney, Harris Upham & Co. v. Luckie</u>, 85 N.Y.2d 193, 200-01, 623 N.Y.S.2d 800, 804 (1995) ("In enacting the FAA, Congress established a Federal policy favoring arbitration agreements, which is to be advanced by rigorous judicial enforcement of arbitration agreements and by resolution of any ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." (alteration in original) (internal quotation marks and citations omitted)).

basis.  However, this interpretation of the Agreement is foreclosed

by the Supreme Court's recent holding in <u>Stolt-Nielsen</u> that

> [a]n implicit agreement to authorize class-action
> arbitration [] is not a term that the arbitrator may
> infer solely from the fact of the parties' agreement to
> arbitrate . . . because class-action arbitration changes
> the nature of arbitration to such a degree that it cannot
> be presumed the parties consented to it by simply
> agreeing to submit their disputes to an arbitrator.

__ U.S. at __, 130 S. Ct. at 1775.  In other words, "a party may

not be compelled under the FAA to submit to class arbitration

unless there is a contractual basis for concluding that the party

<u>agreed</u> to do so."  <u>Id.</u>

In this case, the Employment Agreement is undisputedly silent

with respect to the availability of class arbitration.  (Employment

Agreement, § 4; Def. Memo. at 8-9; Pl. Memo. at 13).  The plaintiff

contends that the agreement may nonetheless be interpreted to allow

arbitration of class claims because the majority in <u>Stolt-Nielsen</u>

did not require "that an agreement must expressly authorize class

arbitration," and "the circumstances of [the parties']

relationship" and "the relevant customs, practices, usages and

terminology" indicate class arbitration was intended.  (Pl. Memo.

at 12, 15-16).

Indeed, the Supreme Court in <u>Stolt-Nielsen</u> had "no occasion to

decide what contractual basis may support a finding that the

parties agreed to authorize class-action arbitration" because the

15

parties in that case had stipulated that there was "no agreement" to allow arbitration on a class basis.  __ U.S. at __, 130 S. Ct. at 1776 n.10.  Further, the Court criticized the arbitrator in that case for failing to inquire whether "New York law contains a 'default rule'" for the construction of agreements to arbitrate on a class-wide basis.  Id. at __, 130 S. Ct. at 1768-69; (see also 3/1/11 Order at 4-5).

However, there is no clear "default rule" under New York contract law for determining if the parties intended to submit to class arbitration.[4]  Prior to Rent-A-Center, New York courts generally applied Bazzle and left resolution of this issue to the arbitrators.  See Flynn v. Labor Ready, Inc., 6 A.D.3d 492, 493-94, 775 N.Y.S.2d 357, 359 (2d Dep't 2004) (compelling arbitration under employment contract and finding permissibility of class-action arbitration in face of contractual silence was "for the arbitrator to decide"); Advanced Medical and Alternative Care, P.C. v. New York Energy Savings Corp., 21 Misc. 3d 1145(A), 875 N.Y.S.2d 818, No. 9693/08, 2008 WL 5235390, at *7 (N.Y. Sup. Ct. Dec. 15, 2008)

---

[4] The Employment Agreement provides that it "will be governed by and construed in accordance with the laws of the state of New York," and neither party has contested the application of New York law to this dispute.  (Employment Agreement, § 5; Pl. Memo. at 3; Defendants' Reply Memorandum in Support of Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration ("Def. Reply Memo.") at 2).

(unpublished table decision) ("The Customer Agreement is silent as to whether class action arbitration is permissible, and the question of whether these claims may be submitted to arbitration as a class action is for the arbitrators to decide."). The question has not been addressed by New York courts since Rent-A-Center and Stolt-Nielsen opened the door to judicial determination of the issue, and earlier state court decisions offer limited guidance. See Cheng v. Oxford Health Plans, Inc., 45 A.D.3d 356, 357-58, 846 N.Y.S.2d 16, 18 (1st Dep't 2007) (not "manifest disregard" of the law to find that "defendants could not successfully demonstrate that New York law prohibited class arbitrations").

Additionally, more general principles of New York contract law do not allow the conclusion that the parties in this case intended to submit to class arbitration. As I already determined in denying the plaintiff's motion to compel, there is no ambiguity on the face of the contract; it is simply silent with respect to class arbitration. (3/1/11 Order at 8); see also Wyly v. CA, Inc., No. 05 CV 4430, 2009 WL 3128034, at *9 (E.D.N.Y. Sept. 29, 2009) ("'[S]ilence alone does not equate to ambiguity.'" (quoting Henrich v. Phazar Antenna Corp., 33 A.D.3d 864, 867, 827 N.Y.S.2d 58, 61 (2d Dep't 2006)). Thus, the plaintiff's arguments that industry custom and the relationship between the parties demonstrate an intent to arbitrate on a class basis impermissibly rely on

17

extrinsic evidence, and they therefore fail.  (Pl. Memo. at 13-14, 15-16); Millgard Corp. v. E.E. Cruz/Nab/Fronier-Kemper, No. 99 Civ. 2952, 2003 WL 22741664, at *2 (S.D.N.Y. Nov. 18, 2003) ("'Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent.'" (quoting Curry Road Ltd. v. K Mart Corp., 893 F.2d 509, 511 (2d Cir. 1990)).

Further, to the extent that New York courts have weighed the right to proceed judicially on a class basis against an agreement to arbitrate, they have upheld the arbitration clauses even when doing so effectively foreclosed the ability to proceed as a class. See, e.g., Hayes v. County Bank, 26 A.D.3d 465, 467, 811 N.Y.S.2d 741, 743 (2d Dep't 2006) ("[T]he fact that the arbitration agreements effectively preclude her from pursuing a class action does not alone render them substantively unconscionable."); Tsadilas v. Providian National Bank, 13 A.D.3d 190, 191, 786 N.Y.S.2d 478, 480 (1st Dep't 2004) ("The arbitration provision is enforceable even though it waives plaintiff's right to bring a class action.").  Thus, any argument that class arbitration must be read into a silent contract because the plaintiff did not understand that, by agreeing to arbitrate, she "would be waiving her right to assert substantive class claims in any forum" (Pl. Memo. at 14), must fail, especially in light of the Supreme Court's affirmative statement that "[a]n implicit agreement to authorize

18

class-action arbitration [] is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate," Stolt-Nielsen, __ U.S. at __, 130 S. Ct. at 1775.

Finally, other judges sitting in this district have rejected arguments that rely on the circumstances of the parties' relationship or relevant customs and practices to establish an implied agreement to arbitrate on a class basis. See Jock v. Sterling Jewelers, Inc., 725 F. Supp. 2d 444, 450 (S.D.N.Y. 2010) ("While contextual factors such as the sophistication of the parties, their relative bargaining position with respect to the arbitration clauses, and any pertinent tradition of dispute resolution might aid in construing ambiguous manifestations of the parties' intentions, they cannot establish assent to class arbitration where, as here, the contract itself provides no reason to believe the parties reached any agreement on that issue."). In this case, as in Jock, there is simply no evidence on the face of the contract that the parties agreed to submit to class-based arbitration. See also Fensterstock v. Education Finance Partners, 611 F.3d 124, 141 (2d Cir. 2010) ("[E]xcising the Note's class action and class arbitration waiver clause leaves the Note silent as to the permissibility of class-based arbitration, and under Stolt-Nielsen we have no authority to order class-based arbitration."); Sutherland v. Ernst & Young LLP, __ F. Supp. 2d __,

__, No. 10 Civ. 3332, 2011 WL 838900, at *7 (S.D.N.Y. March 3, 2011) ("In accordance with Stolt-Nielsen, class arbitration may not be imposed on parties whose arbitration agreements are silent on the permissibility of class proceedings."). Therefore, under Stolt-Nielsen and New York contract law, the defendant cannot be compelled to submit to class arbitration; the Employment Agreement's arbitrability clause thus operates as an implied waiver of the plaintiff's class claims in this action.

E.   Vindication of Statutory Rights

It is well established that Congress intended claims under Title VII to be arbitrable. See Circuit City, 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law."); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir. 2004) ("Courts have consistently found that [statutory claims of employment discrimination] can be subject to mandatory arbitration." (citing Desiderio v. National Association of Securities Dealers, Inc., 191 F.3d 198, 206 (2d Cir. 1999))); Henry v. Turner Construction Co., No. 09 Civ. 9366, 2010 WL 2399423, at *2 (S.D.N.Y. June 14, 2010) ("It is well settled that Congress intends Title VII claims to be arbitrable." (citing 14 Penn Plaza

LLC v. Pyett, __ U.S. __, __, 129 S. Ct. 1456, 1467 (2009)).

However, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'"   Circuit City, 532 U.S. at 123 (alteration in original) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)); Desiderio, 191 F.3d at 205-06 ("Moreover, the substantive rights found in the statute are not in any way diminished by our holding that arbitration may be compelled in this case, since only the forum -- an arbitral rather than a judicial one -- is affected, and plaintiff's rights may be as fully vindicated in the former as in the latter."); see also Mastrobuono, 514 U.S. at 63-64 (refusing to enforce choice-of-law clause that would have practical effect of prohibiting arbitrator from awarding punitive damages because "it seems unlikely that petitioners were actually aware . . . that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right"); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985) (noting that if arbitration clause and other contractual provisions "operated in tandem as a prospective waiver of a party's right to pursue statutory remedies," "we would have little hesitation in condemning the agreement as against public policy").  Indeed, "the arbitration of

a statutory claim will be compelled only if that claim can be effectively vindicated in the arbitral forum." Sutherland, 2011 WL 838900, at *2; see also Herrera v. Katz Communications, Inc., 532 F. Supp. 2d 644, 646 (S.D.N.Y. 2008) ("[A] statutory cause of action will not be appropriate for arbitration if 'the prospective litigant [cannot] effectively . . . vindicate [his or her] statutory cause of action in the arbitral forum.'" (alterations in original) (quoting Gilmer, 500 U.S. at 28)); Pyett, __ U.S. at __, 129 S. Ct. at 1474 ("[A] substantive waiver of federally protected civil rights will not be upheld.").

When a plaintiff's statutory rights are not capable of vindication through arbitration, the "federal substantive law of arbitrability," grounded in the FAA, allows federal courts to declare otherwise operative arbitration clauses unenforceable through a "vindication of statutory rights analysis." American Express II, 634 F.3d at 194; see also American Express I, 554 F.3d at 320 ("We do not follow these cases because they all rely on findings of unconscionability under state law, while we have relied here on a vindication of statutory rights analysis, which is part of the federal substantive law of arbitrability."); Sutherland, 2011 WL 838900, at *7 ("[T]he Court finds that the class waiver provision here at issue is unenforceable because it prevents [the plaintiff] from vindicating her statutory rights."); see also

Kristian v. Comcast Corp., 446 F.3d 25, 47-48 (1st Cir. 2006) (severing as unenforceable provision of arbitration agreement limiting availability of treble damages under antitrust statute); Hadnot v. Bay, Ltd., 344 F.3d 474, 478 n.14 (5th Cir. 2003) (severing restriction on available remedies from arbitration agreement after finding that "ban on punitive and exemplary damages is unenforceable in a Title VII case"); Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute, [] the arbitration clause is not enforceable" and finding that insulation of employer from damages and equitable relief rendered clause unenforceable); DeGaetano v. Smith Barney, Inc., 983 F. Supp. 459, 464-65 (S.D.N.Y. 1997) ("[The defendant's] Arbitration Policy -- to the extent that it prevents prevailing plaintiffs from obtaining an award of attorney's fees in employment discrimination cases -- is void as a matter of public policy."); cf. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 15-16 (1st Cir. 1999) (finding possibility of high forum fees or refusal to award statutory attorneys' fees not fatal to arbitration agreement where arbitrator has capacity to award all remedies and court could review arbitrator's imposition of "unreasonable fees" on employee).

In American Express I, the Second Circuit concluded that a

23

class action waiver contained within an arbitration agreement was unenforceable because, given the great expense of pursuing antitrust litigation and the small individual recovery each plaintiff could expect, the waiver would have the practical effect of ensuring no claims would be brought at all, granting the defendant "de facto immunity from . . . liability." 554 F.3d at 320. The court found that this was a "valid ground" for the revocation of the class waiver under Section 2 of the FAA, and as such this provision was unenforceable. Id. at 320. Although the Supreme Court vacated this decision and remanded it for reconsideration in light of its decision in Stolt-Nielsen, __ U.S. __, 130 S. Ct. 2401, on further review the Second Circuit upheld its conclusion that "as the class action waiver in this case precludes plaintiffs from enforcing their statutory rights, we find the arbitration provision unenforceable." 634 F.3d at 199. The court distinguished Stolt-Nielsen, finding that it established "that parties cannot be forced to engage in a class arbitration absent a contractual agreement to do so," but did not render "a contractual clause barring class arbitration [] per se enforceable." Id. at 193-94. The court again cited Supreme Court dicta indicating there might be "instances in which an arbitration agreement contained provisions that would be unenforceable because they would prevent a prospective litigant from vindicating its

24

rights . . . in an arbitral forum," id. at 197 (citing <u>Mitsubishi</u> <u>Motors Corp.</u>, 473 U.S. at 637), and reaffirmed that the prohibitive cost of litigating the plaintiff's claims on an individual basis rendered the class action waiver unenforceable, <u>id.</u> at 197-99.

In fact, the Second Circuit has recently evinced a strong commitment to the vindication of statutory rights analysis, indicating in dicta a willingness to declare unenforceable an arbitration agreement containing a shortened statute of limitations and a fee-shifting provision that would "significantly diminish a litigant's rights under Title VII." <u>Ragone v. Atlantic Video at</u> <u>Manhattan Center</u>, 595 F.3d 115, 125-26 (2d Cir. 2010). The court in that case reiterated that

> a federal court will compel arbitration of a statutory claim only if it is clear that "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum," such that the statute under which its claims are brought "will continue to serve both its remedial and deterrent function."

<u>Id.</u> at 125 (quoting <u>Mitsubishi Motors Corp.</u>, 473 U.S. at 637). The court did not have occasion to apply this rule because the defendants had waived enforcement of the offending provisions of the agreement. <u>Id.</u> Though only dicta, these statements shed light on the Second Circuit's holdings in <u>American Express</u> by demonstrating, first, that the vindication of statutory rights analysis may apply with equal force to enforcement of Title VII

rights as to effectuation of antitrust prohibitions under the Sherman Act. E.g., American Express I, 554 F.3d at 319 (citing "a firm principle of antitrust law" that "an agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy"); see also 14 Penn Plaza LLC, __ U.S. at __, 129 S. Ct. at 1469 ("[F]ederal antidiscrimination rights may not be prospectively waived."). Second, they show that the holdings of American Express not apply only to "negative value" class action claims, that is, claims that are so small in value that it is not economically viable to pursue them as individual claims. (Def. Reply Memo. at 3-6). The Second Circuit is plainly willing to apply the federal substantive law of arbitrability to a variety of claims that fall under the FAA.

In this case, the plaintiff has alleged that the defendants violated Title VII by engaging "in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against its female Associates, Vice Presidents, and Managing Directors." (Compl., ¶ 138). "Disparate treatment claims under Title VII generally are of two types: (1) individual disparate treatment claims . . . and (2) pattern-or-practice disparate treatment claims that center on group-wide allegations of intentional discrimination." Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 158 n.3 (2d Cir. 2001). "Pattern-or-

26

practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" Id. at 158 (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977)).

Although Title VII initially envisioned that pattern or practice claims would be made by the government, 42 U.S.C. § 2000e-6; International Brotherhood of Teamsters, 431 U.S. at 328 n.1, courts have unequivocally granted private individuals the right to vindicate those claims, Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876 n.9 (1984); see also Tucker v. Gonzales, No. 03 Civ. 3106, 2005 WL 2385844, at *3 (S.D.N.Y. Sept. 27, 2005); Melani v. Board of Higher Education, 561 F. Supp. 769, 773 n.5 (S.D.N.Y. 1983). However, there is a consensus among courts in this district that pattern or practice claims may not be brought by a single individual, but rather must be pursued by a class. Houston v. Manheim-New York, No. 09 Civ. 4544, 2010 WL 6121688, at *5-6 (S.D.N.Y. July 7, 2010) ("Pattern or practice discrimination claims . . . must be made as a class action."), report and recommendation adopted, 2011 WL 924199 (S.D.N.Y. March 16, 2011); United States v.

City of New York, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009) ("[T]his
Court holds that individuals cannot maintain a private, non-class,
pattern-or-practice claim."); Marrow v. Potter, No. 06 Civ. 13681,
2010 WL 6334856, at *7 (S.D.N.Y. May 27, 2010) (same); see also
Garrett v. Mazza, No. 97 Civ. 9148, 2010 WL 653489, at *11 n.8
(S.D.N.Y. Feb. 22, 2010) ("While neither the Supreme Court nor the
Second Circuit have specifically addressed the question of whether
an individual plaintiff can maintain a private, non-class action
pattern or practice claim, district courts within this circuit have
suggested that they cannot."); Tucker, 2005 WL 2385844, at *4-5
(finding same and dismissing individual plaintiff's pattern or
practice claim); cf. Davis v. Coca-Cola Bottling Co. Consolidated,
516 F.3d 955, 964-67 (11th Cir. 2008) (finding pattern or practice
claims may be brought by the EEOC or as a class action pursuant to
Rule 23 "by one or more of the similarly situated employees");
Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1106-08
(10th Cir. 2001) (noting differences between pattern or practice
and individualized discrimination claims and finding
decertification of class improper where trial court did not
recognize plaintiffs were making pattern or practice claim).

Under the Supreme Court's initial formulation of the burden-
shifting scheme in pattern or practice claims, plaintiffs need not
establish individual instances of discrimination; they need only

28

establish that a pattern or practice of discrimination exists. International Brotherhood of Teamsters, 431 U.S. at 360 & n.46. Plaintiffs generally rely on statistical evidence and "testimony from protected class members" to meet this burden; even if an employer then rebuts individual instances of discrimination, it must demonstrate that statistical evidence "'is either inaccurate or insignificant'" in order to escape liability.[5]  Robinson, 267 F.3d at 158-59 (quoting International Brotherhood of Teamsters, 431 U.S. at 360).  Once a pattern or practice of discrimination is found, an individual plaintiff carries a rebuttable presumption that she was the victim of discrimination into the second phase of trial at which damages are established.  International Brotherhood of Teamsters, 431 U.S. at 359, n.45, 361-62; see also Robinson, 267 F.3d at 159.  Additionally, the existence of a pattern or practice is sufficient to allow an award of prospective relief, without any evidence related to individual victims of discrimination. International Brotherhood of Teamsters, 431 U.S. at 361.

Thus, the difference between the showings required for individual and pattern or practice discrimination claims is

---

[5] The plaintiff also notes that it is exceedingly difficult to prove a pattern or practice of discrimination as an individual because individuals are not afforded the broad-based discovery that is necessary for development of this statistical proof. (Pl. Memo. at 6-7).

substantive: first, because in establishing a prima facie pattern or practice case a plaintiff may rely entirely on statistical evidence, and, second, because "[t]he effect of the presumption from the liability stage is to substantially lessen each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the <u>McDonnell Douglas</u> framework." <u>Robinson</u>, 267 F.3d at 159; <u>see also</u> <u>Glass v. IDS Financial Services, Inc.</u>, 798 F. Supp. 1411, 1416 (D. Minn. 1992) (finding that "burdens of proof also vary significantly between" individual and pattern or practice discrimination claims). Although a Rule 23 class action alone "neither change[s] plaintiffs' separate entitlements to relief nor abridge[s] defendants' rights," <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.</u>, __ U.S. __, __, 130 S. Ct. 1431, 1443 (2010), and is "ancillary to the litigation of substantive claims," <u>Deposit Guaranty National Bank v. Roper</u>, 445 U.S. 326, 332 (1980); (Def. Reply Memo. at 7), Title VII, as construed in the case law, makes substantively distinct claims available to those victims of alleged discrimination proceeding individually and those proceeding as a class.[6] For this reason, finding that the plaintiff impliedly

---

[6] Although the case law plainly precludes individuals from bringing pattern or practice claims, the theoretical basis for this

30

agreed to waive her right to proceed on a class basis by agreeing

to arbitrate any Employment Related Matters would prevent the

plaintiff from vindicating her statutory cause of action.[7]  Only by

---

is unclear. Most courts simply state the rule as ipse dixit without
further analysis.  See, e.g., Baron v. New York City Department of
Education, No. 06 CV 2816, 2009 WL 1938975, at *6 (E.D.N.Y. July 7,
2009) ("This case, however, is neither a pattern-or-practice nor a
disparate-impact case; rather, it presents an individual claim of
disparate treatment.  As the Court has previously observed,
'[s]tatistics alone are insufficient in a disparate-treatment claim
because an individual plaintiff must prove that he or she in
particular has been discriminated against.'"  (quoting Drake v.
Delta Air Lines, Inc., No. 94 CV 5944, 2005 WL 1743816, at *6
(E.D.N.Y. July 21, 2005)); Krish v. Connecticut Ear, Nose & Throat,
Sinus & Allergy Specialists, P.C., 607 F. Supp. 2d 324, 331 (D.
Conn. 2009) (dismissing plaintiff's pattern or practice
discrimination claim as untenable because "[a]s the case law makes
clear, the nature of proof that a plaintiff must offer in a pattern
and practice claim differs from that in an individual claim").  The
Eleventh Circuit has suggested that permitting individual pattern
or practice claims would create problems of issue preclusion for
other employees who might later seek to sue.  See Davis, 516 F.3d
at 968-69.  In any event, even if there were no jurisprudential bar
to bringing such claims on an individual basis, there are
substantial practical ones.  Specifically, a plaintiff would face
obstacles obtaining discovery broad enough to make the prima facie
showing required in a pattern or practice case.  (Pl. Memo. at 6-
7).  She may also have difficulty marshaling the resources to
prosecute such a complex claim on her own, thus implicating the
same analysis under which the Second Circuit found arbitration to
be precluded in American Express.

    [7] Indeed, the plaintiff's ability to vindicate her statutory
rights appears even more threatened in this case than was the
ability of the plaintiffs in the American Express cases, for whom
the class action waiver had the "practical effect" of ensuring they
would not bring claims against the defendant.  American Express II,
634 F.3d at 196.  Given the case law in this district indicating
the plaintiff may not bring a pattern or practice claim as an
individual, she would have absolutely no recourse for proving her
claim.

proceeding on a class basis can the totality of her substantive claims against the defendants be adjudicated.[8]

F.   Proper Disposition

In most cases where one portion of an otherwise valid agreement is held to be unenforceable, that portion will be severed from the agreement, leaving the remainder of the agreement's terms in place.  Herrera, 532 F. Supp. 2d at 647 ("[T]he proper remedy [for unenforceable attorneys' fees clause] would be to sever the invalid provision of the arbitration clause and compel arbitration of the underlying dispute, rather than to invalidate the entire arbitration clause."); Beletsis v. Credit Suisse First Boston, Corp., No. 01 Civ. 6266, 2002 WL 2031610, at *6 (S.D.N.Y. Sept. 4, 2002) ("When a contract contains both lawful and unlawful

---

[8]  Importantly, this determination does not rest on any suggestion that an arbitrator is less competent than a court, is less able to find facts than a court, or is generally unable to vindicate statutory rights.  See 14 Penn Plaza LLC, __ U.S. at __, 129 S. Ct. at 1471.  Case law from the Supreme Court and this Circuit makes plain that arbitrators are capable of vindicating the bulk of Title VII discrimination claims.  Id. ("At bottom, objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory antidiscrimination claims."); Circuit City, 532 U.S. at 123; Gold, 365 F.3d at 147-48; Desiderio, 191 F.3d at 205-06; Henry, 2010 WL 2399423, at *2.  However, each of these cases involved individualized claims of discrimination, not class-based pattern or practice claims.  It is only in the context of cases raising such claims -- considered in light of the skepticism of allowing class-based arbitration expressed by Stolt-Nielsen -- that arbitration clauses do not fully vindicate the plaintiff's statutory rights.

objectives, courts typically enforce legal components of an agreement where the illegal provisions are incidental to the legal aspects and are not the main objective of the agreement."). However, where, as here, the unenforceability stems from an inability to arbitrate on a class basis, the Supreme Court's determination in Stolt-Nielsen that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so," __ U.S. at __, 130 S. Ct. at 1775, "plainly precludes us from ordering class-wide arbitration," American Express II, 634 F.3d at 200. Thus, the appropriate resolution is to deny the defendants' motion to compel arbitration. See Fensterstock, 611 F.3d at 141 ("[T]he parties plainly did not agree that arbitration may be conducted on a classwide basis, and we do not see that an order for classwide arbitration can be premised on the Note's severability provision . . . . Thus, excising the Note's class action and class arbitration waiver clause leaves the Note silent as to the permissibility of class-based arbitration, and under Stolt-Nielsen we have no authority to order class-based arbitration."); Sutherland, 2011 WL 838900, at *7 ("In accordance with Stolt-Nielsen, class arbitration may not be imposed on parties whose arbitration agreements are silent on the permissibility of class proceedings. The Court must accordingly deny [the

33

defendant]'s motion to compel arbitration." (internal citations omitted)).

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to stay the case and compel arbitration of Ms. Parisi's claims (Docket no. 23) is denied.

SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 28, 2010

Copies mailed this date:

Adam T. Klein, Esq.
Cara E, Greene, Esq.
Jennifer L. Liu, Esq.
Mariko Hirose, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, New York  10016

Kelly Dermody, Esq.
Anne B. Shaver, Esq.
Heather H. Wong, Esq.
Alison M. Stocking, Esq.
275 Battery Street, 30th Floor
San Francisco, CA  94111

Theodore O. Rogers, Jr., Esq.
John F. Fullerton, III, Esq.
Margaret E. Bartlett, Esq.
Suhana S. Han, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, New York  10004

34

Barbara B. Brown, Esq.
Paul, Hasting, Janofsky & Walker, LLP
875  15th Street N.W.
Washington, DC  20005

C. Geoffrey Weirich, Esq.
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Sreet, NE
Suite 2400
Atlanta, GA  30308

Zachary D. Fasman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York  10022