```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
H. CRISTINA CHEN-OSTER; LISA        :   10 Civ. 6950 (LBS) (JCF)
PARISI; and SHANNA ORLICH,          :
                                    :          MEMORANDUM
              Plaintiffs,           :          AND   ORDER
                                    :
       - against -                  :
                                    :
GOLDMAN, SACHS & CO. and THE        :
GOLDMAN SACHS GROUP, INC.,          :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This is a putative class action in which the plaintiffs allege that their employer, Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs"), has engaged in a pattern of gender discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. On November 22, 2010, Goldman Sachs moved to stay the action with respect to one representative plaintiff, Lisa Parisi (the "plaintiff"), and to compel arbitration of her individual claims. On April 27, 2011, the Supreme Court issued an opinion related to the enforcement of arbitration clauses, AT&T Mobility LLC v. Concepcion, 563 U.S. __, 131 S. Ct. 1740 (2011). The next day, I issued a Memorandum and Order denying the defendants' motion. Chen-Oster v. Goldman, Sachs & Co., ___ F. Supp. 2d ___, No. 10 Civ. 6950, 2011 WL 1795297 (S.D.N.Y. April 28, 2011) (the "April 28 Order"). The defendants have filed a motion for reconsideration of that Order in light of

1

the Supreme Court's holding in Concepcion.  For the reasons that follow, the motion for reconsideration is denied.

Background

In the April 28 Order, after finding that this Court was the proper forum to determine the arbitrability of the plaintiff's claims, Chen-Oster, 2011 WL 1795297, at *3, I held that the plaintiff's employment contract included a binding arbitration agreement that encompassed her claims of gender discrimination pursuant to Title VII.  Id. at *4-6.  I further found that, under the Supreme Court's holding in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. __, 130 S. Ct. 1758 (2010), the arbitration clause's silence with respect to class arbitration rendered class arbitration unavailable to the plaintiff.  Chen-Oster, 2011 WL 1795297, at *6-7.  Nonetheless, I held that under Second Circuit precedent as set forth in In re American Express Merchants' Litigation, 634 F.3d 187 (2d Cir. 2011) ("American Express II"), the federal common law of arbitrability precludes enforcement of an arbitration clause when doing so would interfere with a substantive federal statutory right.  Chen-Oster, 2011 WL 1795297, at *8-10.  Upon review of cases in which the plaintiff asserted that the defendant had engaged in a "pattern or practice" of employment discrimination in violation of Title VII, I determined that federal law creates a substantive right to be free from a "pattern or practice" of discrimination by an employer; I further concluded that, absent the ability to arbitrate on a class basis, mandating arbitration would preclude the plaintiff from

2

enforcing this right. Id. at *10-12. I therefore denied the defendants' motion to stay the case and compel arbitration. Id. at *12-13.

On May 12, 2011, the defendants filed the instant motion for reconsideration. They contend that the April 28 Order is "fundamentally incompatible" with the Supreme Court's ruling in Concepcion, which established that "it is contrary to the intent of Congress to decline to enforce per se arbitration agreements that preclude class arbitration." (Defendants' Memorandum of Law in Support of Motion for Reconsideration of Order Denying Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration ("Def. Memo.") at 1). Although recognizing that "the standard for granting a motion for reconsideration in this Court is strict," the defendants note that the decision in Concepcion was issued very shortly before the April 28 Order, which makes no mention of Concepcion, and they therefore suggest that it is a "'controlling decision[] . . . that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court.'" (Def. Memo. at 1-2 (quoting Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)). They argue that Concepcion is controlling even though it "dealt with state law and federal preemption issues, [while] the present case deals with the application of two federal statutes" because it reinforces the broad and consistent commitment of the Supreme Court, under the Federal Arbitration Act (the "FAA"), to allowing enforcement of arbitration agreements, even where enforcement prevents plaintiffs

from proceeding as a class. (Def. Memo. at 3-4). They go on to argue that Ms. Parisi has no substantive right to assert a pattern or practice claim, and that the conclusion that she does is incorrect, "[p]articularly in the wake of Concepcion." (Def. Memo. at 3, 5-9).

Discussion

    A.    Reconsideration

"'Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Anderson News, L.L.C. v. American Media, Inc., 732 F. Supp. 2d 389, 406 (S.D.N.Y. 2010) (quoting Hinds County, Miss. v. Wachovia Bank N.A., 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010)). To prevail, a party "'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'" Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (quoting Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999)); accord Local Civil Rule 6.3 (authorizing motion for reconsideration when there are "matters or controlling decisions which . . . the court has overlooked"); Lesch v. United States, 372 Fed. Appx. 182, 183 (2d Cir. 2010). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Board, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). "A motion for

reconsideration is not an 'opportunity for making new arguments that could have been previously advanced,' nor is it a substitute for appeal." Nieves v. New York City Police Department, 716 F. Supp. 2d 299, 303 (S.D.N.Y. 2010) (quoting Associated Press v. United States Department of Defense, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). Local Civil Rule 6.3, which provides for reconsideration, "'must be narrowly construed and strictly applied.'" John Wiley & Sons, Inc. v. Swancoat, No. 08 Civ. 5672, 2011 WL 165420, at *1 (S.D.N.Y. Jan. 15, 2011) (quoting Newton v. City of New York, 07 Civ. 6211, 2010 WL 329891, at *1 (S.D.N.Y. Jan. 27, 2010)).

    B.   Concepcion

The plaintiff surmises that I examined the Supreme Court's decision in Concepcion prior to issuing the April 28 Order "and found it inapplicable." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration ("Pl. Memo.") at 1). She is correct. Nevertheless, the impact of that decision on the already fluid law of arbitrability in the Second Circuit merits further discussion.

The Supreme Court in Concepcion considered "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." 563 U.S. at __, 131 S. Ct. at 1744. Under the California common law contract rule at issue, arbitration clauses that contained class action waivers were frequently found to be unconscionable, provided that they met certain other requirements,

5

including that the waiver operated in practice to exempt one party from liability for particular wrongs. Id. at __, 131 S. Ct. at 1746. Writing for the Court, Justice Scalia noted that, pursuant to the "'liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary,'" id. at __, 131 S. Ct. at 1749 (emphasis added) (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)), the FAA preempts any state law that "prohibits outright the arbitration of a particular type of claim," id. at __, 131 S. Ct. at 1747. Although the state law at issue in Concepcion was a law of unconscionability "normally thought to be generally applicable," id. at __, 131 S. Ct. at 1747, Justice Scalia held that the rule, which "[r]equir[ed] the availability of classwide arbitration[,] interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA," id. at __, 131 S. Ct. at 1748. Justice Scalia determined that nonconsensual class arbitration was contrary to the goals of the FAA, id. at __, 131 S. Ct. at 1751-53, and held that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons," id. at __, 131 S. Ct. at 1753 (emphasis added). Thus, the California unconscionability rule was preempted as incompatible with both the "'enforcement of private agreements and encouragement of efficient and speedy dispute resolution.'" Id. at __, 131 S. Ct. at 1749, 1753 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

But, Concepcion involved the preemption of state contract law

6

by a federal preference for arbitration embodied in a federal statute, the FAA. The Court's analysis focused on the FAA's savings clause (allowing "arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,'" id. at __, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2)), emphasizing that it did not save the state contract law at issue in the case because "nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 563 U.S. at __, 131 S. Ct. at 1748. This case demands consideration of a separate issue: whether the FAA's objectives are also paramount when, as here, rights created by a competing federal statute are infringed by an agreement to arbitrate.[12] The Court's analysis in

---

[1] The defendants note that "it has long been held that the underlying purposes of Title VII and the FAA are consistent," (Def. Memo. at 4 (citing Desiderio v. National Association of Securities Dealers, Inc., 191 F.3d 198, 205 (2d Cir. 1999)), and that Title VII itself provides for the use of arbitration "'to resolve disputes arising under'" the statute (Def. Memo. at 4 (quoting Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991)). However, the Civil Rights Act provides for arbitration "where appropriate," and the case law establishing the compatibility of the FAA and Title VII -- as laid out in the April 28 Order, Chen-Oster, 2011 WL 1795297, at *8 -- does not consider that compatibility in the context of pattern or practice claims. Furthermore, it is disingenuous for the defendants to assert that the plaintiff's admission that "it is 'widely accepted' that arbitration of Title VII claims does not diminish 'substantive rights found in the statute'" is dispositive, when the plaintiff only did so in the context of pointing out that such holdings have only come outside of the pattern or practice context. (Defendants' Reply Memorandum of Law in Support of Motion for Reconsideration ("Def. Reply Memo.") at 1-2; Pl. Memo. at 4).

[2] The defendants contend that focusing on this distinction "misses the point" because "[f]ederal courts routinely look to preemption cases, and in particular to the federal policies identified in them, for guidance in harmonizing federal statutes."

Concepcion relied in part on the idea that, because class arbitration is an awkward procedure that cannot be read into arbitration contracts, "class arbitration, to the extent it is manufactured by [state common law] rather than consensual, is inconsistent with the FAA," and therefore preempted by it. 563 U.S. at __, 131 S. Ct. at 1750-51 (citing Stolt-Nielsen S.A., 559 U.S. at __, 129 S. Ct. at 1773-76)). In this case, as discussed in the April 28 Order, what is at issue is not a right to proceed, procedurally, as a class, but rather the right, guaranteed by Title VII, to be free from discriminatory employment practices. Chen-Oster, 2011 WL 1795297, at *12. Because arbitrators will apply the same substantive law of Title VII as would be applied by a federal court, see Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 27 (2d Cir. 2000), and the substantive law of Title VII as applied by the federal courts prohibits individuals from bringing pattern or practice claims, Chen-Oster, 2011 WL 1795297, at *11, *12 n.6, this

---

(Def. Reply Memo. at 3). However, even the authorities the defendants cite for this proposition acknowledge that "preemption does not describe the effect of one federal law upon another; it refers to the supremacy of federal law over state law when Congress, acting within its enumerated powers, intends one to displace the other." Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 608 (6th Cir. 2004). Further, both cases cited by the defendants apply a sui generis Supreme Court decision controlling the field of labor relations. See Adkins v. Mireles, 526 F.3d 531, 542 (9th Cir. 2008); Trollinger, 370 F.3d at 607-12. Existing Supreme Court precedent in the field of arbitration, to the extent that it considers the intersection of the FAA with federal statutory rights, suggests that the FAA may be subjugated to competing federal statutory rights, see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985), and existing Second Circuit precedent holds the same, as will be discussed below. Concepcion does not countermand this rule.

case implicates federal statutory (Congressionally-created) rights, not the "judicially-created obstacle[] to the enforcement of agreements to arbitrate" that was at issue in Concepcion. (See Def. Reply Memo. at 4). In other words, the discussion in Concepcion is more analogous to the discussion in the April 28 Order of the plaintiff's desire to proceed as class representative under Rule 23, Chen-Oster, 2011 WL 1795297, at *12 -- which does not create a federal statutory right to proceed on a class basis -- than to the determination of her substantive right under Title VII to bring a pattern or practice claim under Title VII, id. at *10-12. Although the defendants note that the April 28 Order, like the result that was overturned in Concepcion, "invalidat[ed] [] an arbitration agreement because it does not allow for class arbitration," the right at the center of this case is not the right to proceed on a class basis but rather the right to vindicate a claim that an employer has engaged in a pattern or practice of discrimination. (Def. Memo. at 3). Under the law as it currently stands, the plaintiff may not do so individually. Chen-Oster, 2011 WL 1795297, at *11.

Certainly, the Court's opinion in Concepcion raises a question as to whether the Supreme Court, faced squarely with the issue presented here, would protect the full robustness of a federal right -- particularly when that right requires proceeding on a class basis -- or would mandate arbitration provided that some equivalent, individual right would be protected in that sphere. Nonetheless, the Supreme Court has not been presented with that

question, and it has indicated in the past that "statutory claims may be the subject of an arbitration agreement" only because "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" Gilmer, 500 U.S. at 26 (alteration in original) (quoting Mitsubishi Motors Corp., 473 U.S. at 628).  Indeed,

> [j]ust as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.

Mitsubishi Motors Corp., 473 U.S. at 627.

Furthermore, it remains the law of the Second Circuit that an arbitration provision which "precludes plaintiffs from enforcing their statutory rights" is unenforceable. American Express II, 634 F.3d at 199; accord Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 125 (2d Cir. 2010).  This case law is clear, and I remain obligated to follow it.  See D'Antuono v. Service Road Corp., __ F. Supp. 2d __, __, No. 3:11 CV 33, 2011 WL 2175932, at *27, *29 (D. Conn. May 25, 2011) (noting "doubts about the continuing validity" of American Express II and Ragone in light of Concepcion but holding that "[u]nless and until either the Second Circuit or the United States Supreme Court disavows [their holdings], this Court will continue to follow" them).  Indeed, the plaintiff's claims present an even stronger case for application of the federal common law of arbitrability than did the arbitration

10

clause at issue in American Express II. In that case, the class action waiver "effectively" interfered with the vindication of statutory rights because it was unlikely that plaintiffs would bring their "negative-value" claims under the statute except as a class. 634 F.3d at 194-99. In this case, the plaintiff would be foreclosed from bringing her pattern or practice claim not only by the practicality of economic pressures limiting the value of her claim compared with the cost of prosecuting it, but also by the actuality of federal case law interpreting Title VII. To the extent that she has a substantive right under Title VII to bring a pattern or practice claim rather than an individual disparate impact claim, she would be precluded from enforcing that right by the arbitration clause in her employment contract.

The Second Circuit may ultimately determine that Concepcion warrants a further modification in the law of arbitrability in this Circuit; however, no change relevant to this case is clearly mandated.[3] For that reason, Concepcion does not constitute a "controlling decision" that justifies reconsideration. See Lesch,

---

[3] I take note that the Supreme Court has vacated and remanded the Second Circuit's decision in Fensterstock v. Education Finance Partners, 611 F.3d 124 (2010), in light of Concepcion. See Affiliated Computer Services v. Fensterstock, __ S. Ct. __, No. 10-987, 2011 WL 338870 (June 13, 2011). Fensterstock applied the same California rule of unconscionability that was found to be preempted in Concepcion and did not consider the federal common law of arbitrability, nor the intersection between the FAA and federal statutory rights. See Fensterstock, 611 F.3d at 132-38. Therefore, for the same reasons that Concepcion does not dictate a contrary result in this case, the vacatur of Fensterstock also does not.

372 Fed. Appx. at 183.[4]

    C.  <u>Substantive Nature of Pattern or Practice Claims</u>

In arguing this motion, the parties have thoroughly briefed the question of whether the plaintiff has a substantive right to bring a pattern or practice claim under Title VII, rather than solely pursuing an individual disparate impact claim. (Def. Memo. at 5-9; Pl. Memo. at 5-10).[5] However, this issue was raised by the parties in their initial briefs (Plaintiffs' Memorandum of Law in Support of Opposition to Defendants' Motion to Compel Arbitration at 3-10; Defendants' Reply Memorandum in Support of Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration at 3-8). I then addressed it fully in the April 28 Order. <u>Chen-Oster</u>, 2011 WL 1795297, at *10-12. "[A] motion to reconsider should not

---

[4] On June 28, 2011, the defendants submitted a Notice of Supplemental Authority attaching a copy of the Supreme Court's decision in <u>Wal-Mart Stores, Inc. v. Dukes</u>, __ U.S. __, No. 10-277, 2011 WL 2437013 (June 20, 2011). They contend that "the Supreme Court's articulation in <u>Dukes</u> of the standards applicable to class certification under Fed. R. Civ. P. 23(a) and 23(b)(2) is directly relevant to this Court's analysis of whether Plaintiff Parisi has a substantive statutory right to bring claims on behalf of putative class members." (Notice of Supplemental Authority in Support of Defendants' Motion for Reconsideration of Order Denying Defendants' Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration at 1). This authority may be relevant to the substance of the plaintiff's pattern or practice claim and her ability to obtain certification of a class under Rule 23, but it is not pertinent to her ability or right to bring a pattern or practice claim to the court. <u>See</u> <u>Dukes</u>, __ U.S. at __, 2011 WL 2437013, at *9-10.

[5] The related question raised by the defendants in this motion of whether an arbitrator is the proper authority to decide whether or not the plaintiff may utilize the "pattern-or-practice method of proof" is subsumed in the question of whether Title VII and related case law create a substantive pattern or practice claim, or merely a procedural pattern or practice "method of proof."

be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257; accord Hinds County, Miss., 700 F. Supp. 2d at 407. The defendants have not pointed to authority that was overlooked upon initial consideration of the issue, nor am I persuaded that my determination was erroneous. See Anderson News, L.L.C., 732 F. Supp. 2d at 406. The defendants' arguments therefore do not merit employing the "extraordinary remedy" of reconsideration. See Hinds County, Miss., 700 F. Supp. 2d at 407.

Conclusion

For the reasons discussed above, the defendants' motion for reconsideration is denied.

SO ORDERED.

*[signature]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          July 7, 2011

Copies mailed this date:

Cara E, Greene, Esq.
Adam T. Klein, Esq.
Jennier L. Liu, Esq.
Justin M. Swartz, Esq.
Mariko Hirose, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, New York   10016

Paul W. Mollica, Esq.
Outten & Golden, LLP
203 North LaSalle Street.
Suite 2100
Chicago, IL   60603

Alison M. Stocking, Esq.
Anne B. Shaver, Esq.
Heather H. Wong, Esq.
Kelly Dermody, Esq.
Lieff Cabraser Heimann & Bernstein LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111

Theodore O. Rogers, Jr., Esq.
John F. Fullerton, III, Esq.
Margaret E. Bartlett, Esq.
Suhana S. Han, Esq.
Sullivan & Cromwell, LLP
125 Broad Street
New York, New York  10004

Barbara B. Brown, Esq.
Paul, Hasting, Janofsky & Walker, LLP
875  15th Street N.W.
Washington, DC  20005

C. Geoffrey Weirich, Esq.
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Sreet, NE
Suite 2400
Atlanta, GA  30308

Zachary D. Fasman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York  10022