UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH, | 10-Civ. 6950 (LBS) (JCF) |
| Plaintiffs, | **DEFENDANTS' MOTION TO STRIKE ALL CLASS ALLEGATIONS AND FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER TITLE VII** |
| vs. | |
| GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC. | |
| Defendants. | |

## INTRODUCTION

Plaintiffs' class certification allegations — which mimic the allegations made by the

plaintiffs in *Dukes v. Wal-Mart Stores, Inc.*[1] — should be dismissed as a consequence of the

Supreme Court's *Dukes* decision and for the same reasons articulated in *Dukes*. *Dukes* redefined

the employment discrimination class action landscape, and under the *Dukes* Court's controlling

standards Plaintiffs' class allegations cannot survive. No purpose would be served by burdening

Defendants or the Court with the legally insufficient class theory Plaintiffs assert here. Their

class claims should be stricken under Fed. R. Civ. P. 23(d)(1)(D).[2]

The *Dukes* decision requires dismissal of each of Plaintiffs' asserted bases for class

certification. First, the *Dukes* Court held unanimously that, *as a matter of law*, "claims for

*individualized* relief . . . do not satisfy" the requirements of Rule 23(b)(2). 131 S. Ct. at 2557

(emphasis in original). Plaintiffs seek every form of individualized relief theoretically

permissible in a Title VII case — back pay, compensatory damages, and punitive damages.

---

[1] 131 S. Ct. 2541 (2011).

[2] Under Fed. R. Civ. P. 23(d)(1)(D), the Court is authorized to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

Complaint ("Compl.") ¶¶ 65(d), 193-96. In the wake of *Dukes*, Plaintiffs' request for Rule

23(b)(2) certification is therefore untenable and must be stricken.

Second, as *Dukes* makes unmistakably clear, Plaintiffs' allegations could not satisfy the

commonality requirement of Rule 23(a)(2). The Complaint's central thesis is that "Goldman

Sachs grants its managers unbridled discretion" to make compensation, promotion and

assignment decisions.[3] But in *Dukes*, the Supreme Court held that:

> [A] "policy" of allowing [individual managers] discretion . . . over
> employment matters [is] [o]n its face . . . *just the opposite of a*
> *uniform employment practice that would provide the commonality*
> *needed for a class action*; it is a policy against having uniform
> employment practices.

131 S. Ct. at 2554. The consequences of the *Dukes* decision could not be clearer: Plaintiffs'

Complaint fails *as a matter of law* because (1) the relief they seek is incompatible with Rule

23(b)(2); and (2) the Complaint commits Plaintiffs to a legal theory that is, by definition, "the

opposite [of the sort of] uniform employment practice that would provide the commonality

needed for a class action." No discovery could help Plaintiffs in light of these legal deficiencies.

No case-specific proof can possibly transform something that is, as a matter of law, "the opposite

. . . of commonality" into a *demonstration* of commonality.

As this Court has previously observed, it is appropriate to strike class allegations from a

complaint once it becomes clear that those allegations are "untenable."[4] For this case, that time

---

[3] Compl. ¶ 8; *see also, e.g.,* ¶¶ 7, 9, 42, 43, 46, 48, 52, 53, 54, 55, 58.

[4] *Rahman v. Smith & Wollensky Rest. Group Inc.*, No. 06 Civ. 6198 (LAK)(JCF), 2008 WL
161230, at *3 (S.D.N.Y. Jan. 16, 2008) (class allegations can be stricken as soon as it is clear
that they are "untenable") (citing with approval *Evancho v. Sanofil-Aventis U.S. Inc.*, No. 07-
2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007)). Where a defendant's motion to strike poses
the question whether the plaintiff can meet, or has met, the evidentiary burden necessary to
sustain the class, this Court in *Rahman* expressed some skepticism (albeit in *dicta*) about the
right of a defendant to usurp the plaintiff's supposed unilateral "right" to put the class issue
before the court. 2008 WL 161230, at *3 (citing, *inter alia, Beauperthuy v. 24 Hour Fitness*

has come.

Goldman Sachs also seeks partial summary judgment on Plaintiffs' Title VII disparate

impact claim.  Plaintiffs never exhausted that claim — Count II of the Complaint — with the

Equal Employment Opportunity Commission, and exhaustion is a precondition to litigation.

## BACKGROUND

Less than five months after the Ninth Circuit's April 26, 2010 *en banc* decision affirming

class certification in *Dukes* v. *Wal-Mart Stores*,[5] three former Goldman Sachs employees,

Cristina Chen-Oster, Shanna Orlich and Lisa Parisi,[6] filed a putative class action under Title VII

of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law

("NYCHRL) that followed the *Dukes* blueprint — a putative nationwide class asserting gender

bias in, among other things, pay and promotion decisions and alleging commonality based on a

supposed corporate policy of decentralized and discretionary decision-making by individual

---

*USA Inc.*, No. 06-0715, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006)).  *Beauperthuy*, however, was subsequently overruled on this issue in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-941 (9th Cir. 2009) ("Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification."  "Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.  The only requirement is that the certification question be resolved '[a]t an early practicable time.'  The plain language of Rule 23(c)(1)(A) alone defeats Plaintiffs' argument that there is some sort of '*per se* rule' that precludes defense motions to deny certification.").  Moreover, the questions posed here are solely questions of law, akin to those properly raised in a Rule 12(c) motion for judgment on the pleadings, which may be raised at any time "after the pleadings are closed — but early enough not to delay trial."  The legal questions posed by this Motion have now been answered unambiguously and authoritatively by the Supreme Court.  No reason exists to postpone an order striking the Plaintiffs' deficient class allegations.

[5] 603 F.3d 571 (9th Cir. 2010).

[6] Plaintiff Lisa Parisi entered into an arbitration agreement with Goldman Sachs.  On July 7, 2011, Magistrate Judge Francis denied Goldman Sachs' motion for reconsideration of his April 28, 2011 decision denying its motion to compel Plaintiff Parisi to engage in individual arbitration of her claims.  (Docket Nos. 73, 59).  On July 21, 2011, Goldman Sachs filed objections to Magistrate Judge Francis' decisions.

managers.

The claims in the lawsuit followed from charges Plaintiffs filed with the Equal

Employment Opportunity Commission, the first of which was lodged with the EEOC more than

five years before Plaintiffs filed their suit.   Plaintiffs Chen-Oster and Orlich worked in sales and

trading roles in discrete areas in the Securities Division of the firm.   Plaintiff Parisi worked in

Goldman Sachs Asset Management, part of the Investment Management Division.

Although Plaintiffs worked in discrete areas in only two of the revenue divisions at

Goldman Sachs,[7] they filed their lawsuit on behalf of an all-encompassing group of former and

current Goldman Sachs female employees:

> Class of all female financial-services employees who are at the
> Associate, Vice President, and Managing Director corporate level
> and employed by Goldman, Sachs & Co. Inc. and its predecessors;
> and The Goldman Sachs Group, Inc. and its predecessors; in the
> United States at any time from September 10, 2004 through the
> resolution of this action for claims under Title VII.

> Class of all female financial-services employees who are at the
> Associate, Vice President, and Managing Director corporate level
> and employed by Goldman, Sachs & Co. Inc. and its predecessors;
> and The Goldman Sachs Group, Inc. and its predecessors; in the
> City of New York at any time from July 7, 2002 through the
> resolution of this action for claims under the NYCHRL.

(Compl. ¶¶ 61, 62.)

Plaintiffs' class allegations are strikingly similar to those the Supreme Court recently and

definitively rejected in *Dukes*. Indeed, when Plaintiffs' allegations are set side-by-side with

those in *Dukes*, it becomes apparent that the allegations are virtually identical:

---

[7] Although Plaintiffs' Complaint reads broadly enough to encompass the entire firm, they have
confirmed that they do not intend to include in the lawsuit the female former and current
employees in the non-revenue-producing areas of Goldman Sachs.

| Goldman Sachs | Wal-Mart |
|---|---|
| "whether [defendant's] policies or practices discriminate against female Associates, Vice Presidents, and Managing Directors;" (Compl. ¶ 65.) | "whether defendant's common operating practices and procedures discriminate against its female employees;" (Compl. ¶ 16.) |
| "whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted." (Id.) | "whether injunctive and other equitable remedies and punitive damage relief for the class is warranted." (Id.) |
| "[Defendant] gives its managers, the overwhelming majority of whom are men, unchecked discretion to assign responsibilities, accounts, and projects to their subordinates." (Compl. ¶ 7.)<br><br>"[Defendant's] managers enjoy extremely broad discretion in choosing who to nominate for a promotion and the promotion process functions as a tap on the shoulder. Its managers select individuals based on personal preferences, personal relationships, and subjective and biased views of their aptitude and performance." (Compl. ¶ 53.)<br><br>"[Defendant's] managers also have a wide amount of discretion in setting an employee's compensation, which allows and encourages them to take into account personal preferences, personal relationships, and conscious and unconscious bias in making compensation decisions." (Compl. ¶ 48.) | "[Defendant relies] upon unweighted, arbitrary and subjective criteria utilized by a nearly all male managerial workforce in making assignments, training, pay, performance review and promotional decisions. Even where [defendant's] policy states objective requirements, these requirements are often applied in an inconsistent manner and ignored at the discretion of management." (Compl. ¶ 29.)<br><br>"Few objective requirements or qualifications for specific store assignments, promotions, or raises exist. Salaries are supposed to conform to general company guidelines, but store management has substantial discretion in setting salary levels within salary ranges for each employee. Salaries are also adjusted based on performance reviews, which are largely based on subjective judgments of performance." (Compl. ¶ 23.) |

## ARGUMENT

The Supreme Court's decision in *Dukes* clarified and resolved inter-circuit conflicts on a number of legal issues that regularly arise in Title VII class actions. With the governing standards now clearly established, it is apparent that Plaintiffs' claim to class certification is fundamentally defective and thus that the class allegations should be stricken.

I.   **AS A MATTER OF LAW, THE COMMON QUESTIONS PLAINTIFFS ALLEGE CANNOT SATISFY RULE 23(a)(2)**

Under the heading "Class Action Allegations," Plaintiffs' Complaint poses the following

as the "questions of law and fact common to the class" warranting class certification:

- "whether Goldman Sachs' policies and practices discriminate against female Associates, Vice Presidents, and Managing Directors . . . .

- whether Goldman Sachs' policies and practices violate Title VII and/or [New York state law]; and

- whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted."[8]

These purportedly common questions distill to "Did Goldman Sachs violate the law and

if so how much do we recover." As *Dukes* explicitly holds, that does not suffice:

> Any competently crafted class complaint literally raises common "questions." . . . For example: Do all of us plaintiffs indeed work for [the defendant]? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. . . . [T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.[9]

The *Dukes* majority left no doubt that far more is required by Rule 23(a)(2):

> [To satisfy commonality, the plaintiffs'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

---

[8] Compl. ¶ 65. The Complaint also identifies a fourth purportedly common question regarding Goldman Sachs' anti-retaliation policies and practices, but the Complaint does not assert a class-wide retaliation claim. *See* Compl. ¶¶ 170-179 (asserting retaliation claims under federal and state law only "On Behalf of All Plaintiffs Individually").

[9] 131 S. Ct. at 2551.

*Id.* at 2551.

Beyond the excessively general nature of the questions posed by Plaintiffs, there are some other issues implicated by Plaintiffs' Complaint. That Complaint rests on the proposition that Goldman Sachs has

> company-wide policies and practices [that] give[] its managers . . . unchecked discretion to assign responsibilities, accounts, and projects to their subordinates. [These] Goldman Sachs managers exercise this discretion in an ad hoc and/or subjective manner . . . that provides disproportionately greater resources to male associates than their female colleagues. . . . which in turn earns [males] greater compensation and career advancement . . . .[10]

This baseline proposition — that Goldman Sachs routinely uses "unacceptable levels of subjectivity and bias"[11] to make employment decisions — pervades every corner of the Complaint. For example, Plaintiffs allege that:

- managers are *"given wide discretion* to place their employees into quartiles which are forced ranked . . . based entirely on *the manager's subjective feelings"* (Compl. ¶ 43);

- "Goldman Sachs *allows its managers unfettered discretion* to determine how credit is allocated to employees" (*Id.* ¶ 46);

- "Goldman Sachs has *no . . . objective criteria* for promotion[s]" (*Id.* ¶ 52);

- "Goldman Sachs *managers enjoy extremely broad discretion* in choosing who to nominate for a promotion . . . based on . . . *subjective and biased* views"(*Id.* ¶ 53);

- *"managers [have] unchecked discretion* to assign responsibilities, accounts, and projects" (*Id.* ¶ 54);

- "Goldman Sachs . . . *delegate[s] broad discretion* to its mostly male managers to determine the amount of professional support their subordinates receive" (*Id.* ¶ 58);

- "Goldman Sachs' company-wide policies, patterns, and/or practices of

---

[10] Compl. ¶¶ 6-9.

[11] Compl. ¶ 9.

> determining compensation and eligibility for promotion *based on subjective criteria* . . . also have an adverse impact on female Associates, Vice Presidents and Managing Directors" (*Id.* ¶ 147); and

- "Goldman Sachs' company-wide policies, patterns, and/or practices of determining compensation and eligibility for promotion [are] *based on subjective criteria*" (*Id.* ¶ 164) (emphasis added).[12]

But *Dukes* holds, as a matter of law, that even where a plaintiff can prove that an employer delegates managerial discretion, this practice is insufficient as a matter of law to satisfy the commonality requirement of Rule 23(a)(2). The commonality requirement exists to ensure that "a classwide proceeding [will] generate common answers [that will] drive the resolution of the litigation." 131 S. Ct. at 2551 (citation omitted). Plaintiffs' theory, challenging many thousands of individual pay, promotion and assignment decisions by thousands of Goldman Sachs managers, cannot possibly establish a common question under Rule 23(a)(2).

Plaintiffs' theory here seems to have been swallowed whole from *Dukes* — both cases rest on an assertion of bias flowing from the supposedly unchecked exercise of discretion — and like the claim to commonality there, Plaintiffs here fall far short of the Rule 23(a)(2) standard. Whether at Wal-Mart or at Goldman Sachs, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 2554. As the *Dukes* Court explained:

> [A] "policy" of allowing discretion by local supervisors over employment matters [is] [o]n its face . . . *just the opposite of a uniform employment practice that would provide the commonality needed for a class action*; it is a policy against having uniform employment practices.

---

[12] Goldman Sachs denies that it discriminates against women, and if called upon will be able to prove that it has, and has implemented, extremely robust non-discrimination policies and practices. For present purposes, however, the truth or falsity of Plaintiffs' allegations, or Goldman Sachs' commitment to equal employment opportunity, is entirely irrelevant to the legal deficiencies of the Complaint.

> It is also a very common and presumptively reasonable way of doing business—one that we have said "should itself raise no inference of discriminatory conduct." . . . . [L]eft to their own devices most managers in any corporation—and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all.  Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements . . . .  And still other managers may be guilty of intentional discrimination that produces a sex based disparity.  *In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.  A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.*

*Id.* (emphasis added; citations omitted).

The Complaint makes unmistakably clear that Plaintiffs intend to rely on the claim that Goldman Sachs has a "policy" of giving managers discretion to make employment decisions, and skate past any inquiry into the specific merits of the many thousands of decisions made by individual Goldman Sachs managers — decisions made for a constellation of different reasons. "Without some glue holding the alleged reasons for all those decisions together," *Id.* at 2551, the class action mode of litigation cannot operate, and injustice must follow.

The *Dukes* Court concluded that the alleged existence of managerial discretion does not provide that "glue."  The alleged exercise of "subjective" judgment and "discretion" by individual managers is *the opposite of a uniform employment practice that would provide the commonality needed for a class action*" and simply cannot "produce a common answer to the crucial question why was I disfavored." *Id.* at 2552.[13]  Even if the Court were to assume for present purposes that the judgment exercised collectively by Goldman Sachs' managers has

---

[13] Subjective individualized decision-making cannot even "produce a common answer to" the precursor question — *whether* each putative class member was disfavored.

resulted in a statistical disparity adverse to women, "[m]erely showing that [this alleged] policy of discretion has produced an overall sex-based disparity [would] not suffice" to demonstrate commonality. *Id.* at 2556. Because the class allegations are incompatible with the standards enunciated in *Dukes*, they should be stricken.

Even before *Dukes*,[14] the Supreme Court and the courts of appeals had routinely held that subjective decision-making is not unlawful in and of itself.[15] The lesson of *Dukes* is that the use of discretion and judgment by a host of managers cannot satisfy Rule 23 as a matter of law, even if that practice allegedly produces an apparent gender-based disparity. Plaintiffs' theory is flawed at its core because, as a matter of law, the theory cannot unite thousands of individual decisions made for a myriad of reasons into a question common to the class.

## II.   NO EMPLOYMENT CLASS ACTION SEEKING INDIVIDUALIZED MONEY DAMAGES CAN BE CERTIFIED UNDER RULE 23(b)(2)

### A.   Plaintiffs Seek Individualized Relief

Plaintiffs seek back pay and front pay, as well as compensatory and punitive damages for

---

[14] *Id.* at 2554 (giving managers discretion to make subjective evaluations is "a very common and presumptively reasonable way of doing business — one that we have said 'should itself raise no inference of discriminatory conduct.") (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988) ("[a]n employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct").)

[15] *See, e.g., Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002) (subjective, race-neutral comments during interview did not create "an inference of pretext, but instead merely indicate[d] that the candidates were lacking traits needed for the job, which explains why they were not selected by IBP"); *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("[i]t is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation"; indeed, given the increasingly "service-oriented economy," the use of subjective evaluations are becoming even more important and effective evaluation tools); *Chapman v. Al Transport*, 229 F.3d 1012 (11th Cir. 2000) ("subjective evaluations of a job candidate are often critical to the decision making process"); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) ("subjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions").

a class of current and former Goldman Sachs employees. Compl. ¶ 60; *see also* ¶ 197

(requesting back pay, damages for "emotional distress, humiliation, embarrassment, and

anguish," and "exemplary and punitive damages"). Relief of this sort is quintessentially

individualized; even assuming that the "class" as a whole were to prevail at a trial, the propriety

and amount of back pay and damages to which any individual in the class might be entitled

necessarily would depend on individual-specific proof. As the *Dukes* Court explained, in a Title

VII class action (just as in a single plaintiff case), the defendant has an absolute statutory right

> to individualized determinations of each employee's eligibility for
> backpay. . . . [If] the employer can show that it took an adverse
> employment action against an employee for any reason other than
> discrimination, the court cannot order the "hiring, reinstatement, or
> promotion of an individual as an employee, or the payment to him
> of any backpay." [In a pattern or practice case, even after a pattern
> or practice finding, the defendant has] the right to raise any
> individual affirmative defenses it may have, and to "demonstrate
> that the individual applicant was denied an employment
> opportunity for lawful reasons."

*Id.* at 2560-61 (citations omitted).[16]

**B.    Under _Dukes_, As A Matter Of Law, No Employee Class Seeking
        Individualized Relief Can Be Certified Under Fed. R. Civ. P. 23(b)(2)**

Rule 23(b)(2) certification is permitted only where "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." Under this

standard, the *Dukes* Court unanimously held that claims for "monetary relief may [not] be

certified under" Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to

---

[16] Indeed, in this case, where Plaintiffs seek compensatory damages, individualized inquiries are
even more predominant than they were in *Dukes*, where "the named plaintiffs declined to include
employees' claims for compensatory damages in their complaint. That strategy of including only
backpay claims made it more likely [in *Dukes*] that monetary relief would not 'pre-dominate.'"
*Id.* at 2559.

the injunctive or declaratory relief." *Id.* at 2557.  In explaining the boundaries of "incidental"

relief, the Court quoted at some length[17] the test articulated in *Allison v. Citgo Petroleum Corp.*,

151 F.3d 402, 415 (5th Cir, 1998):

> [Incidental] damages should at least be capable of computation by
> means of objective standards and not dependent in any significant
> way on the intangible, subjective differences of each class
> member's circumstances.  Liability for incidental damages should
> not require additional hearings to resolve the disparate merits of
> each individual's case; it should neither introduce new and
> substantial legal or factual issues, nor entail complex
> individualized determinations.

Because the defendant in a Title VII case has the statutory "right to raise any individual

affirmative defenses it may have, and to 'demonstrate that the individual applicant was denied an

employment opportunity for lawful reasons,'" the sort of individualized relief like back pay,

compensatory damages and punitive damages — the very relief Plaintiffs seek here — fails that

test.  The *Dukes* Court explained:

> The key to the (b)(2) class is "the indivisible nature of the
> injunctive or declaratory remedy warranted—the notion that the
> conduct is such that it can be enjoined or declared unlawful only as
> to all of the class members or as to none of them." . . .  In other
> words, Rule 23(b)(2) applies only when a single injunction or
> declaratory judgment would provide relief to each member of the
> class.  It does not authorize class certification when each individual
> class member would be entitled to a different injunction or
> declaratory judgment against the defendant. *Similarly, it does not
> authorize class certification when each class member would be
> entitled to an individualized award of monetary damages.*

*Id.* at 2557 (emphasis added).

Because no class seeking damages or backpay can proceed without allowing for an

inquiry into both liability to, and the measure of any damages owed to, each class member, a

damages class action cannot be certified under Rule 23(b)(2).  The Court expressly held that

---

[17] *Id.* at 2560.

"claims for individualized relief (like the backpay at issue [t]here) do not satisfy" — and as a
matter of law *cannot* satisfy — Rule 23(b)(2). *Id.*

Indeed, there is a constitutional dimension to this rule. The Court previously had held
that in Rule 23(b)(3) classes, where common issues must predominate, the "absence of notice
and opt-out [would] violate[] due process." *Id.* at 2559. Rule (b)(2) classes are "mandatory"
classes, and thus class members are not allowed to opt out. Although the Court had never
previously held that the constitution precludes money damages in a (b)(2) case, where the ability
to opt out is not available, the *Dukes* Court recognized that "the serious possibility that it may be
so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here."
*Id.* Therefore, Plaintiffs' request to certify a class under Rule 23(b)(2) must be rejected and that
claim excised from the Complaint.

Before *Dukes*, many plaintiffs' counsel nonetheless urged employment class
certifications on the premise that backpay, compensatory damages and punitive damages might
be awarded to individuals by formula, without any individual-specific proceedings — *i.e.*,
without any inquiry into whether, or the degree to which, specific individuals were injured.
*Dukes* explicitly "disapproved that novel project." *Id.* at 2561. No class can "be certified on the
premise that [the defendant] will not be entitled to litigate its statutory defenses to individual
claims." *Id.*

### III.   CERTIFICATION OF PLAINTIFFS' PROPOSED "EXCESS SUBJECTIVITY" CLASS UNDER RULE 23(b)(3) ALSO IS FORECLOSED BY *DUKES*

As noted above, Rule 23(a)(2) requires that the class complaint pose common questions
that, when answered, can "drive the resolution of the litigation." *Id.* at 2551. Even if Plaintiffs
could identify questions of this sort in this case, certification under Fed. R. Civ. P. 23(b)(3) —
the only option for Plaintiffs that is not explicitly and directly foreclosed by *Dukes* — would

require, among other things, proof that "questions of law or fact common to the class members

predominate over any questions affecting only individual members." *Id.* at 2552.

No matter what facts Plaintiffs might have been able to adduce through further discovery,

they could never meet this standard. Although the two criteria are qualitatively similar — both

assessing the common features of the class members' claims[18] — the Supreme Court and the

Second Circuit have both held that Rule 23(b)(3)'s "predominance criterion is far more

demanding" than the Rule 23(a)(2) commonality standard. *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 624 (1977); *Moore v. Painewebber, Inc.* 306 F.3d 1247, 1252 (2d Cir. 2002); *see also*

*Kendler v. Federated Dep't Stores, Inc.*, 88 F.R.D. 688, 693 (S.D.N.Y. 1981) ("in the absence of

a showing of identifiable common issues, amenable to proof on a class-wide basis, the Court

concludes that common issues of law and fact do not predominate herein and plaintiffs have not

satisfied the requirements of Rules 23(a)(2) and 23(b)(3)").

If Plaintiffs' "excessive subjectivity and discretion" class cannot satisfy Rule 23(a)(2),

then, it follows, as a matter of law and logic, that it cannot satisfy the far more demanding Rule

23(b)(3) "predominance" standard. Necessarily, if the assertion that "Goldman Sachs managers

exercise discretion in an ad hoc and/or subjective manner" is insufficient "glue" to hold the class

together under the relatively less rigorous Rule 23(a)(2) commonality test — and *Dukes* holds

unambiguously that this is true — that assertion is patently insufficient to meet the far more

demanding "predominance" test. The bottom line is that in this case, class certification under

*either* Rule 23(b)(2) *or* (b)(3) would be impermissible under *Dukes*.

---

[18] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1269 (11th Cir. 2009) ("a [Rule 23(b)(3)]
finding that 'questions of law or fact common to the class members predominate over any
question affecting only individual members' . . . necessarily requires an antecedent finding that
there is at least one common question of law or fact in the first place" under Rule 23(a)(2)).

IV.    **PLAINTIFFS CANNOT ASSERT A TITLE VII DISPARATE IMPACT CLAIM
BECAUSE THEY DID NOT MAKE SUCH A CLAIM IN THEIR EEOC
CHARGES**

Title VII requires a charging party to exhaust her administrative remedies before bringing

litigation in federal court.  This threshold requirement is not a procedural nuisance to be

disregarded or circumvented; it is a statutory precondition to suit — "an essential element of

Title VII's statutory scheme and one with which defendants are entitled to insist that plaintiffs

comply." *Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (quoting

*Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)), *aff'd on other grounds*, 411 F.3d

69 (2d Cir. 2005).  It exists to foster the strong federal policy in favor of conciliation and the

employer's legitimate interest in knowing the nature of the claims against it so that it can make

an informed decision as to whether, and on what terms, a voluntary resolution might be reached.

*See, e.g., McGoffney v. Vigo County Div. of Family & Children, Family & Soc. Servs. Admin.*,

389 F.3d 750, 752 (7th Cir. 2004) (limiting Title VII litigation to claims in EEOC charge serves

important purpose of giving employer notice of conduct as to which plaintiff is aggrieved).

Because notice to the employer is an essential purpose of the exhaustion requirement, the

charging party is obliged to include in the charge all of the claims that he or she intends to pursue

in court.  The scope of an EEOC charge is to be construed liberally, and there are no "magic

words" a charging party must recite to describe adequately a discrimination claim that may later

be pursued in court, but a Title VII plaintiff can only litigate claims expressly raised in the

administrative charge and those that are "like or reasonably related" to those specifically

articulated in the charge — claims that are "so closely related that [requiring] agency action [on

those claims not specifically mentioned] would be redundant." *Brown v. Puget Sound Chapter

National Elec. Contractors Ass'n*, 732 F.2d 726, 730 (9th Cir. 1984).  In determining whether a

particular claim is sufficiently "like or related" to one actually described in a charge, courts often

attempt to determine whether the EEOC's investigation into the actual text of the charge would reasonably have led it to investigate the claims that were not expressly mentioned. *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980).

Plaintiffs' Title VII disparate impact claim does not meet this test.[19] Although the three EEOC charges were each lengthy and detailed and were filed with the involvement of experienced counsel, none of them mentions the disparate impact theory, in name or in substance, or articulates any of the essential characteristics of a disparate impact claim. A "plaintiff alleging disparate impact must begin 'by identifying the specific employment practice that is challenged'" — a facially neutral rule that is alleged to have had a disproportionately negative impact on those in the protected category. *Woodman*, 293 F. Supp. 2d at 390. This is true because the disparate treatment theory (*i.e.*, the allegations that do run through Plaintiffs' EEOC charges) and the disparate impact theory are "largely separate theories of discrimination"; alleging one does not mean the EEOC could reasonably be expected to investigate the other. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).

None of the charges filed by Plaintiffs mentions any practice or facially neutral rule that might operate to the detriment of women — the *sine qua non* of a disparate impact claim. In fact, all that is contained in the charges filed by these Plaintiffs are idiosyncratic facts about alleged *intentional* discrimination by Goldman Sachs. Plaintiff Chen-Oster alleged that she was "assaulted . . . in the fall of 1997" and that after that attack she was "evaluated more harshly than similarly situated men," was given an unfavorable seat assignment, and was given no meaningful work assignments when she returned from maternity leave. Plaintiff Parisi alleged that her pay

---

[19] The Second Claim for Relief in Plaintiffs' Complaint, ¶¶ 144-151, states a disparate impact claim under Title VII.

and promotional opportunities were not commensurate with her contributions. Plaintiff Orlich alleged that she received "positive feedback and praise for [her] work" but not the pay or opportunities that her work should have merited. *See* Exhibits 1-3 to Plaintiffs' Complaint.

None of the allegations made by Plaintiffs to the EEOC even hints at the existence of a disparate impact claim, and the charges therefore cannot support a disparate impact claim in this Court. *See Woodman*, 293 F. Supp. 2d at 390 ("disparate impact claim is not 'reasonably related' to [plaintiff's] disparate treatment claim") (Cote, J.); *accord McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) ("the cornerstone of any EEOC disparate-impact investigation' is a neutral employment policy"; where charge "nowhere refers to any neutral policy," disparate impact claim is not "like or reasonably related" to disparate treatment claim); *Pacheco*, 448 F.3d at 792 (plaintiff failed to exhaust disparate impact claim where charge "facially alleged disparate treatment . . . identified no neutral employment policy [and] complained of past instances of disparate treatment"); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258-59 (7th Cir. 1996) ("[g]iven that a primary purpose of the scope-of-the-charge doctrine is to prevent 'circumvent[ion of] the EEOC's investigatory and conciliatory role,' . . . refusing to allow [plaintiff's] charge of retaliation to support his subsequent disparate impact claim would seem particularly appropriate"); *cf. Brown*, 732 F.2d at 730 (plaintiff failed to exhaust as to allegations of disparate treatment by alleging disparate impact).

In some instances — for example in the Second Circuit's decision in *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) — the court is left to imagine the course of an EEOC investigation that never was. There, the charge failed to mention the phrase "disparate impact" but did allege the existence of a facially neutral employment policy — a tenure rule that candidates for the position in question had to satisfy. Because the charge mentioned this facially

neutral rule and alleged that it disadvantaged the charging party, the court supposed that had the

EEOC continued investigating the charge, it "could . . . reasonably [have been expected to]

inquire [] as to whether this possibly unnecessary [facially neutral] rule had a discriminatory

impact on employees of Portuguese descent." *Id.* at 1335.

No such rule is mentioned in the Plaintiffs' charges here, and no hypothesizing about the

possible course of an EEOC investigation is required. The EEOC charges here *were actually*

*investigated* by the agency *for years*, and we know without any conjecture or hypothesizing the

course that investigation took. Indisputably, in the five years it considered Plaintiff Chen-Oster's

disparate *treatment* allegations and in the year it investigated the disparate *treatment* allegations

by Plaintiffs Orlich and Parisi, the EEOC *never* undertook any disparate *impact* investigation.[20]

The general rule – that a disparate treatment claim and a disparate impact claim are so inherently

different that one will rarely be "like or reasonably related" to the other – applies here, not the

*Gomes* exception.[21] The failure of Plaintiffs to assert expressly in their EEOC charges a

disparate impact claim, or even to identify a challenged neutral employment practice, requires

that judgment be granted to Goldman Sachs on the Second Claim for Relief in the Complaint.

---

[20] *See* Declaration of Theodore O. Rogers, Jr., accompanying this Motion, at ¶¶ 2-7

[21] Goldman Sachs does not urge a rule that would categorically prohibit disparate impact claims
arising from disparate treatment charges. The "like or reasonably related" test requires an
inherently "fact-intensive analysis," *McClain*, 519 F.3d at 273, and, as *Gomes* demonstrates,
sometimes the allegations in a particular disparate treatment charge will satisfy the exhaustion
requirement. But the facts in this case point in the other direction, and *Gomes* is of no help to
Plaintiffs. Neither is *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998). Although the
contents of the *Brown* plaintiff's charge are not reproduced or quoted in the court's opinion, and
although the court's analysis of the "like or related" issue is limited to a single sentence, it
appears that the plaintiff alleged that as a matter of policy the defendant did not post (or at least
rarely posted) notice of position vacancies whenever the position at issue did not require a
college degree; the plaintiff alleged she had been affected by this rule. *See* 163 F.3d at 6-7.
Moreover, as with *Gomes*, the *Brown* court was left to speculate about the course an EEOC
investigation into that charge *might* have taken; here, we know precisely what the EEOC did in
the five years it had this matter, and no disparate impact investigation occurred.

## CONCLUSION

For the forgoing reasons, Plaintiffs' class allegations should be stricken and summary

judgment should be entered on Count IV of their Complaint.

Dated: July 22, 2011                  PAUL, HASTINGS, JANOFSKY & WALKERS, LLP
New York, New York


                              By:       /s/ Zachary D. Fasman
                                      _____
                                      BARBARA B. BROWN *(admitted pro hac vice)*
                                      ZACHARY D. FASMAN
                                      C. GEOFFREY WEIRICH *(admitted pro hac vice)*

                                      875 15th Street, N.W.
                                      Washington, DC  20005
                                      (202) 551-1700
                                      barbarabrown@paulhastings.com;
                                      zacharyfasman@paulhastings.com
                                      geoffweirich@paulhastings.com


                                      SULLIVAN & CROMWELL LLP
                                      THEODORE O. ROGERS, JR.
                                      SUHANA S. HAN
                                      125 Broad Street
                                      New York, New York  10004
                                      (212) 558-4000
                                      rogerst@sullcrom.com
                                      hans@sullcrom.com
                                      fullertonJ@sullcrom.com

                                      *Attorneys for Defendants*
                                      GOLDMAN, SACHS & CO. and THE
                                      GOLDMAN SACHS GROUP, INC.