UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

H. CRISTINA CHEN-OSTER; LISA PARISI; and           <u>10-Civ. 6950 (LBS) (JCF)</u>
SHANNA ORLICH,

                Plaintiffs,

       vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.

                Defendants.
_____


<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE ALL
CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND FOR
PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' DISPARATE IMPACT
CLAIM UNDER TITLE VII</u>


PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 4

ARGUMENT ..................................................................................................... 6

I.      AS A MATTER OF LAW, THE COMMON QUESTIONS PLAINTIFFS
        ALLEGE CANNOT SATISFY RULE 23(a)(2)............................................ 6

II.     THE AMENDED COMPLAINT MAKES CLEAR THAT, AS A MATTER OF
        LAW, PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF
        RULE 23(b). .................................................................................... 10

        A.      As A Matter of Law, Plaintiffs Are Ineligible For Rule 23(b)(2)
                Certification of the "Liability" Phase of This Case. ........................... 11

        B.      Rule 23(c)(4) Does Not Improve Plaintiffs' Claim To Certification Under
                Rule 23(b)(2)................................................................................ 13

        C.      Plaintiffs' Proposed Bifurcated Treatment Of Liability Issues Risks A
                Seventh Amendment Violation......................................................... 16

III.    CERTIFICATION OF PLAINTIFFS' PROPOSED "EXCESS SUBJECTIVITY"
        CLASS UNDER RULE 23(b)(3) ALSO IS FORECLOSED BY *DUKES*. .................... 19

IV.     PLAINTIFFS CANNOT ASSERT A TITLE VII DISPARATE IMPACT CLAIM
        BECAUSE THEY DID NOT MAKE SUCH A CLAIM IN THEIR EEOC
        CHARGES.................................................................................... 21

CONCLUSION............................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ...................................................................................2

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1977)................................................................................................20

*Beauperthuy v. 24 Hour Fitness USA Inc.*,
   No. 06-0715, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) ..................................3

*Blyden v. Mancusi*,
   186 F.3d 252 (2d Cir. 1999).............................................................................17, 19

*Brown v. Coach Stores, Inc.*,
   163 F.3d 706 (2d Cir. 1998)..................................................................................25

*Brown v. Puget Sound Chapter Nat'l Elec. Contractors Ass'n*,
   732 F.2d 726 (9th Cir. 1984) ...........................................................................22, 24

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir.1996) ...................................................................................19

*Chapman v. Al Transport*,
   229 F.3d 1012 (11th Cir. 2000) ..............................................................................9

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011)..................................................................................15

*Clark v. Martinez*,
   543 U.S. 371 (2005)..............................................................................................19

*Denney v. City of Albany*,
   247 F.3d 1172 (11th Cir. 2001) ..............................................................................9

*DeRosa v. Mass. Bay Commuter Rail Co.*,
   694 F. Supp. 2d 87 (D. Mass. 2010) .....................................................................13

*Deshawn E. by Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir.1998)...................................................................................12

*Donaldson v. Microsoft Corp.*,
   205 F.R.D. 558 (W.D.Wash. 2001) ........................................................................1

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Drayton v. W. Auto Supply Co.*,
 No. 01-10415, 2002 WL 32508918 (11th Cir. Mar. 11, 2002)...............................................13

*Dukes v. Wal-Mart Stores, Inc.*,
 603 F.3d 571 (9th Cir. 2010), *rev'd by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.
 2541 (2011) ........................................................................................................................ passim

*Dungan v. Academy at Ivy Ridge*,
 No. 08-3870-cv, 2009 WL 2604356 (2d Cir. Aug. 20, 2009) .................................................14

*Gavalik v. Cont'l Can Co.*,
 812 F.2d 834 (3d Cir. 1987)....................................................................................................12

*General Tel. Co. of the N.W. v. EEOC*,
 446 U.S. 318 (1980)...................................................................................................................21

*Gomes v. Avco Corp.*,
 964 F.2d 1330 (2d Cir. 1992)............................................................................................24, 25

*Grosz v. Boeing Co.*,
 5ACV 02-0071 CJC (MLGx), 2003 WL 25669166 (C.D.Cal. Oct. 23, 2003)........................1

*Gutierrez v. Johnson & Johnson*,
 No. 01-5302, 2007 WL 1101437 (D. N.J. April 10, 2007).......................................................1

*Harper v. Ulta Salon Cosmetics & Fragrance, Inc.*,
 No. 1:05-cv-1285-TWT, 2005 U.S. Dist. LEXIS 38049 (N.D. GA. Dec. 23, 2005) .............13

*Hevesi v. Citigroup Inc.*,
 366 F.3d 70 (2d Cir. 2004)........................................................................................................3

*In re: Emp. Discrimination Litig.*,
 198 F.3d 1305 (11th Cir. 1999) ........................................................................................10, 11

*In re Nassau County*,
 461 F.3d 219 (2d Cir. 2006)................................................................................................13, 14

*In re Rhone-Poulenc Rorer*,
 51 F.3d 1293 (7th Cir. 1995) ...................................................................................................16

*Int'l B'hd of Teamsters v. United States*,
 431 U.S. 324 (1977)...................................................................................................11, 14, 18

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Jackson v. Motel 6 Multipurpose Inc.*,
    130 F.3d 999 (11th Cir. 1997) ............................................12

*Kendler v. Federated Dep't Stores, Inc.*,
    88 F.R.D. 688 (S.D.N.Y. 1981) ...........................................20

*Leuthner v. Blue Cross and Blue Shield of Nw. PA*,
    454 F.3d 120 (3d Cir. 2006)..............................................12

*Lewis v. Casey*,
    518 U.S. 343 (1996)......................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................12

*McClain v. Lufkin Indus., Inc.*,
    519 F.3d 264 (5th Cir. 2008) .........................................23, 25

*McGoffney v. Vigo Cnty Div. of Family & Children, Family & Soc. Servs. Admin.*,
    389 F.3d 750 (7th Cir. 2004) ............................................21

*McKenzie v. Fed. Express Corp.*,
    CV 10-02420 (GAF) (PLAx) 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011)........13

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)......................................2, 3, 14, 16

*Millbrook v. IBP, Inc.*,
    280 F.3d 1169 (7th Cir. 2002) ...........................................9

*Milligan v. Am. Airlines, Inc.*,
    No. 08-55276, 2009 U.S. App. LEXIS 9180 (9th Cir. Apr. 30, 2006)...................13

*Moore v. Painewebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)............................................20

*Noreuil v. Peabody Coal Co.*,
    96 F.3d 254 (7th Cir. 1996) .............................................24

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)......................................................12

*Pacheco v. Mineta*,
    448 F.3d 783 (5th Cir. 2006) .........................................22, 23

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Park v. Forest Serv. of United States*,
    205 F.3d 1034 (8th Cir. 2000) ..................................................................12

*Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*,
    478 F.3d 494 (2d Cir. 2007).......................................................................12

*Price Waterhouse v. Hopkins*,
    109 S. Ct. 1775..........................................................................................12

*Rahman v. Smith & Wollensky Rest. Group Inc.*,
    No. 06 Civ. 6198 (LAK)(JCF),
    2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) ...............................................3

*Remien v. EMC Corp.*,
    No. 04C3727, 2008 WL 4067324 (N.D.Ill. 2008)......................................1

*Risher v. Aldridge*,
    889 F.2d 592 (5th Cir. 1989) ......................................................................9

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)...............................................................16, 19

*Shotz v. Cates*,
    256 F.3d 1077 (11th Cir. 2001) ................................................................12

*Silver v. Mohasco Corp.*,
    602 F.2d 1083 (2d Cir. 1979),
    *rev'd on other grounds*, 447 U.S. 807 (1980).........................................22

*United States v. City of New York*,
    No. 07-cv-2067 (NGG)(RLM) 2011 WL 2680474 (E.D.N.Y. July 8, 2011).............10, 20, 21

*United States v. City of New York*,
    258 F.R.D. 47 (E.D.N.Y. 2009) ................................................................11

*United States. v. Magassouba*,
    544 F.3d 387 (2d Cir. 2008)...............................................................10, 19

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ................................................................20

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ......................................................................3

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011)..........................................................................................passim

*Watson v. Fort Worth Bank & Trust*,
487 U.S. 977 (1988)....................................................................................................9

*Woodman v. WWOR-TV, Inc.*,
293 F. Supp. 2d 381 (S.D.N.Y. 2003),
*aff'd on other grounds*, 411 F.3d 69 (2d Cir. 2005) ......................................21, 22, 23

*Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)), *aff'd on other grounds*,
411 F.3d 69 (2d Cir. 2005)........................................................................................21

*Hilao v. Est. of Marcos*,
103 F.3d 767 (9th Cir. 1996) ....................................................................................16

STATUTES

42 U.S.C. § 2000e-5(g)(2)(A)................................................................................10, 15

RULES

Fed. R. Civ. P. 12(c) ....................................................................................................3

Fed. R. Civ. P. 23 ..............................................................................................passim

## PRELIMINARY STATEMENT

Plaintiffs' initial Complaint, filed only months after the Ninth Circuit had approved

certification of an immense class in *Dukes v. Wal-Mart Stores, Inc.*,[1] mimicked the *Dukes* class

theory, claiming that Rule 23(a)(2) commonality exists when an employer allegedly cedes

"excessive subjectivity and discretion" to its managers.  In June 2011, after the Supreme Court

reversed class certification in *Dukes*, holding that the granting of discretion to individual

managers is the *antithesis* of commonality, and after Goldman Sachs moved to dismiss their

class claims, Plaintiffs asked for consent to amend their Complaint.

Plaintiffs' First Amended Complaint changes the wording of the original Complaint, but

the original defective underlying theory – that a huge class action is an appropriate vehicle to

challenge individual managers' separate decisions as to thousands of individuals – remains

unchanged.  The scenery may be new, but the plot remains the same.

Attempting to scrub the Complaint clean of *Dukes* wording, Plaintiffs have deleted their

prior, repeated accusations that at Goldman Sachs, performance evaluations and pay and

promotion decisions are based on "unacceptable levels of subjectivity."[2]  But having nothing else

to say, they fall back on essentially identical claims that those decisions were "not determined by

any objective measure."  *See* Plaintiffs' First Amended Complaint ("Am. Compl.") ¶ 7, Aug. 11,

2011, ECF No. 95.  Allegations claiming "too much subjectivity" are out; allegations claiming

the absence of "objective measures" are in.  Plaintiffs no longer allege that employee

---

[1] 603 F.3d 571 (9th Cir. 2010), *rev'd by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).
Until *Dukes*, this model for a discrimination class action was regularly used by class action
plaintiffs' lawyers around the country.  *See, e.g., Remien v. EMC Corp.*, No. 04C3727, 2008 WL
4067324 (N.D.Ill. 2008); *Gutierrez v. Johnson & Johnson*, No. 01-5302, 2007 WL 1101437 (D.
N.J. April 10, 2007); *Grosz v. Boeing Co.*, 5ACV 02-0071 CJC (MLGx), 2003 WL 25669166
(C.D.Cal. Oct. 23, 2003); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558 (W.D.Wash. 2001).

[2] *See* Pltfs' Compl. ¶ 9, Sept. 16, 2010, ECF No. 9.

assessments are based on the "manager's subjective feelings"; now, they characterize the same assessments by the same individuals as "standardless."  There is no difference in the import or validity of these claims.

Plaintiffs' word changes do nothing to rectify the defects of their fundamental theory. The theory that doomed the *Dukes* case in the Supreme Court and that compelled the Plaintiffs in this case to amend their Complaint remains the central focus of the Amended Complaint. Plaintiffs' claim to class certification still hinges on the assertion that individual managers have freedom to make employment decisions, and that some number of them supposedly use that freedom to discriminate against particular employees.  As *Dukes* holds, that sort of distributed decision-making *defeats* class certification; it does not *support* it.

*Dukes* prompted Plaintiffs to make one other change in their Amended Complaint.  The original Complaint sought class certification for this damages action, *inter alia*, under Rule 23(b)(2), but the *Dukes* Court held, unanimously, that (b)(2) certification is not possible when the plaintiffs seek individualized monetary relief.  Despite this holding, Plaintiffs still seek all manner of damages, and they still seek certification of this case – or at least a piece of this case – under Rule 23(b)(2).  In the Amended Complaint, however, Plaintiffs ask the Court to break this litigation into pieces, *i.e.*, to certify some portions under Rule 23(b)(2) and others under Rule 23(b)(3) in an attempt to slice-and-dice their way to the possibility of class certification. Plaintiffs urge a sort of gerrymandered certification reflecting a "certification at all costs"[3] approach to Rule 23 that is incompatible with the text of the Rule and with the lessons of *Dukes.*

Indeed, Rule 23 "is not a one-way ratchet," a tool for forcing every case into class litigation.  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 220 (2d Cir. 2008).  It is a rule of

---

[3] *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998), *cited with approval in Dukes*, 131 S. Ct. at 2560.

procedure intended to govern the treatment of class actions when the class action device is

appropriate.  The class action device does not exist for the convenience of counsel or as a handy

way to impose "hydraulic pressure on defendants to settle."  *Hevesi v. Citigroup Inc.*, 366 F.3d

70, 80 (2d Cir. 2004).  It exists, instead, to "promote judicial economy."  *McLaughlin*, 522 F.3d

at 234 (citation omitted).  The tortured certification Plaintiffs suggest would fail that purpose.[4]

Finally, Plaintiffs have made no effort to remedy the fatal deficiency in their disparate

impact claim, as to which Goldman Sachs previously moved for partial summary judgment..

Indeed, there is nothing they could have done to remedy the problem:  Plaintiffs never raised

their Title VII disparate impact claim – Count II of the Amended Complaint – in a charge with

the Equal Employment Opportunity Commission (EEOC).  Exhaustion of the EEOC's

mandatory administrative process is a precondition to litigation.  Accordingly, Goldman Sachs

---

[4] As this Court has previously observed, it is appropriate to strike class allegations from a complaint once it becomes clear that those allegations are "untenable."  *Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198 (LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (class allegations can be stricken as soon as it is clear that they are "untenable") (citing with approval *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 WL 4546100 (D.N.J. Dec. 19, 2007)).  Where a defendant's motion to strike poses the question whether the plaintiff can meet, or has met, the evidentiary burden necessary to sustain the class, this Court in *Rahman* expressed some skepticism (albeit in *dicta*) about the right of a defendant to usurp the plaintiff's supposed unilateral "right" to put the class issue before the court.  2008 WL 161230, at *3 (citing, *inter alia*, *Beauperthuy v. 24 Hour Fitness USA Inc.*, No. 06-0715, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006)).  *Beauperthuy*, however, was subsequently overruled on this issue in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009) ("Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification . . . .  Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.  The only requirement is that the certification question be resolved '[a]t an early practicable time.'  The plain language of Rule 23(c)(1)(A) alone defeats Plaintiffs' argument that there is some sort of '*per se* rule' that precludes defense motions to deny certification.").  Moreover, the questions posed here are solely questions of law, akin to those properly raised in a Rule 12(c) motion for judgment on the pleadings, which may be raised at any time "after the pleadings are closed — but early enough not to delay trial."  The legal questions posed by this Motion have now been answered unambiguously and authoritatively by the Supreme Court.  No reason exists to postpone an order striking the Plaintiffs' deficient class allegations.

seeks partial summary judgment on Count II of the Amended Complaint.

## BACKGROUND

A few months after the Ninth Circuit's *en banc* decision affirming class certification in *Dukes v. Wal-Mart Stores*, *Inc.*,[5] three former Goldman Sachs employees, Cristina Chen-Oster, Shanna Orlich and Lisa Parisi,[6] filed this putative class action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL"). The Complaint duplicated the *Dukes* blueprint – projecting a nationwide class action asserting gender bias in, among other things, performance evaluations and pay and promotion decisions. As in *Dukes*, the Complaint asserted that Rule 23(a)(2)'s commonality requirement was satisfied by a supposed corporate policy of decentralized and discretionary decision-making by individual managers.[7] The Complaint was thick with assertions of "unbridled" or "excessive" subjectivity in employment decision-making, and assertions that Goldman Sachs did too little to guide or monitor the results. In essence, the Complaint rested on the theory that discretionary managerial decisions as such are improper.

That route to class certification ran into a dead end in *Dukes*. As the *Dukes* Court

---

[5] 603 F.3d 571 (9th Cir. 2010).

[6] Plaintiff Lisa Parisi had entered into an arbitration agreement with Goldman Sachs. On July 7, 2011, Magistrate Judge Francis denied Goldman Sachs' motion for reconsideration of his April 28, 2011 decision denying its motion to compel Plaintiff Parisi to engage in individual arbitration of her claims. (Mem. Orders, ECF Nos. 59, 73). On July 21, 2011, Goldman Sachs filed an appeal of Magistrate Judge Francis' decisions, which is pending.

[7] The claims in the lawsuit followed from charges Plaintiffs filed with the EEOC, the first of which was lodged more than five years before Plaintiffs filed their suit. Plaintiffs worked in only two of the revenue divisions at Goldman Sachs: Plaintiffs Chen-Oster and Orlich worked in sales and trading roles in the Securities Division of the firm and Plaintiff Parisi worked in Goldman Sachs Asset Management, part of the Investment Management Division. Nonetheless, they filed their lawsuit on behalf of a broad and widely diverse group of former and current Goldman Sachs female employees. The proposed class definition in the Amended Complaint is only marginally narrower. Plaintiffs still seek a class composed of all women currently or previously working in Goldman Sachs' "revenue" divisions. *See* Am. Compl. ¶¶ 10, 57-59.

explained,

> [A] "policy" of allowing discretion by local supervisors over employment matters [is] [o]n its face . . . *just the opposite of a uniform employment practice that would provide the commonality needed for a class action*; it is a policy against having uniform employment practices.
>
> It is also a very common and presumptively reasonable way of doing business—one that we have said "should itself raise no inference of discriminatory conduct." . . . . [L]eft to their own devices most managers in any corporation—and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all.  Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements . . . .  And still other managers may be guilty of intentional discrimination that produces a sex based disparity.  *In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.  A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.*

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2554 (2011) (citations omitted)(emphasis added).

"Without some glue holding the alleged reasons for all those decisions together," the class action mode of litigation cannot operate, and injustice must follow.  *Id.* at 2552.  The *Dukes* Court explained that the alleged existence of managerial discretion does not provide that "glue."  The exercise of "subjective" judgment and "discretion" by individual managers simply cannot "produce a common answer to the crucial question why was I disfavored."[8]  Even if managerial judgment could be associated with a statistical disparity adverse to women, "[m]erely showing that [this alleged] policy of discretion has produced an overall sex-based disparity [would] not suffice" to demonstrate that commonality exists or that individual, discretionary personnel

---

[8] Subjective individualized decision-making cannot even "produce a common answer" to the precursor question – *whether* each putative class member was disfavored.  *Id.* at 2552.

decisions are discriminatory.  *Id.* at 2556.

Because the class allegations in Plaintiffs' Complaint were incompatible with the standards enunciated in *Dukes*, Goldman Sachs moved to strike them.  *See Def. Motion to Strike*, June 13, 2011, ECF No. 66.  Plaintiffs recognized that the central premise of their Complaint was no longer viable, and filed an Amended Complaint.

However, in their Amended Complaint, Plaintiffs do not – because they cannot – advance a new theory or assert new grounds for showing commonality.  They merely played with the semantics, scrubbing the initial Complaint of *Dukes*-like language but retaining the flawed central premise, hoping that cosmetic changes would suffice.  They also tinkered with their Rule 23(b)(2) allegations in an attempt to evade the *Dukes* Court's unanimous decision that Rule 23(b)(2) cannot be used to maintain cases like this one, in which individualized damages are sought.

## ARGUMENT

### I. AS A MATTER OF LAW, THE COMMON QUESTIONS PLAINTIFFS ALLEGE CANNOT SATISFY RULE 23(a)(2).

Under the heading "Class Action Allegations," Plaintiffs' Amended Complaint poses the following as the "questions of law and fact common to the class":

- "whether Goldman Sachs' policies or practices discriminate against female Associates, Vice Presidents, and Managing Directors;

- whether Goldman Sachs' policies and practices violate Title VII and/or [New York city law]; and

- whether Goldman Sachs' performance evaluation system discriminates against women;

- whether Goldman Sachs' compensation system discriminates against women;

- whether Goldman Sachs' promotion system discriminates against women; and

- whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted."[9]

These purportedly common questions boil down to "Did Goldman Sachs violate Title VII and if so how much do we recover?"  As *Dukes* explicitly holds, that sort of conclusory question does not suffice:

> Any competently crafted class complaint literally raises common "questions." . . .  For example:   Do all of us plaintiffs indeed work for [the defendant]?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification. . . .  *[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once*.

Am. Compl. ¶ 62.[10]  The *Dukes* majority left no doubt that far more is required by Rule 23(a)(2):

> [To satisfy commonality, the plaintiffs'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Dukes*, 131 S.Ct. at 2551.  Plaintiffs' list of "were we mistreated" questions fall well short of the *Dukes* standard.

And all that underlies these conclusory questions are allegations that remain incompatible with *Dukes* and inadequate, as a matter of law, to satisfy the commonality requirement.  Like its predecessor, the Amended Complaint depends on the premise that Goldman Sachs leaves employment decisions in the hands of managers and co-workers, criticizing the firm for allegedly

---

[9] The Amended Complaint also identifies one other purportedly common question regarding Goldman Sachs' anti-retaliation policies and practices, but it does not assert a class-wide retaliation claim.  *See* Am. Compl. ¶¶ 164-68 (asserting retaliation claims under federal and state law only "On Behalf of All Plaintiffs Individually").

[10] 131 S. Ct. at 2551 (emphasis added).

having "no published criteria" for making employment decisions, for supposedly not adequately "ensur[ing] fairness," and for allowing managers to make employment decisions without reference to "any objective measure of performance." *Id.* ¶¶ 6, 7.[11]  Plaintiffs complain that individual managers "can move an employee to a higher or lower quartile [rating] without regard to absolute values of the [employee's] performance evaluations." *Id.* ¶ 41.  According to Plaintiffs, because employment decisions are allegedly "standardless," *id.* ¶ 45, a given manager will "have the discretion to pay" employees in the same quartile different rates of compensation. *Id.* ¶ 46.  Similarly, Plaintiffs allege that a manager at Goldman Sachs need "not employ legitimate . . . or objective criteria" in making promotions.  *Id.* ¶ 50.  Their "common" allegation thus really is no more than: "Many different people can discriminate if they want to."[12]  These are exactly the sort of allegations of individualized decision-making that *Dukes* confirmed do **not** meet the commonality test of Rule 23(a)(2).  Inserting the words "too little objectivity" in place of "too much subjectivity" changes nothing.  Plaintiffs' Amended Complaint *still* depends on the notion that Goldman Sachs gives managers too few "objective" standards for employment decision-making, and thus individual managers can, if they have a mind to, use the discretion allowed them to discriminate.

      *Dukes* unambiguously holds that is not enough.  As a matter of law, even when a plaintiff

---

[11] These allegations are untrue, but because they are legally deficient, the Court need not inquire into them.  Goldman Sachs denies that it discriminates against women, and if called upon will be able to prove that it has implemented extremely robust non-discrimination policies and practices under which women's careers have flourished.  For present purposes, however, the truth or falsity of Plaintiffs' allegations, and Goldman Sachs' commitment to equal employment opportunity, is entirely irrelevant to the legal deficiencies of the Amended Complaint.

[12] Plaintiffs' attempt to obscure the fact that the premise of their Complaint remains unchanged is highlighted by their emphasis on Goldman Sachs' 360 performance review "system."  *See* Am. Compl. ¶¶ 34, 38-42.  But as they allege elsewhere in their Amended Complaint, the element of that "system" that they attack is the use by individual managers of performance–related comments collected through the 360 process.  Nothing about the 360 process itself is alleged to be discriminatory.

can prove that an employer has delegated discretion – even "too much" discretion, whatever that might mean – to individual managers, and thus has allegedly allowed  managers the *opportunity* to discriminate, this is insufficient as a matter of law to satisfy the commonality requirement of Rule 23(a)(2).  That requirement exists to ensure that "a classwide proceeding [will] generate common answers [that will] drive the resolution of the litigation."  131 S. Ct. at 2551 (citation omitted).  Whether at Wal-Mart or at Goldman Sachs, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's."  *Id.* at 2554.

Even before *Dukes*,[13] the Supreme Court and the courts of appeals had routinely held that discretionary decision-making is not only lawful, but critical to proper business operation.[14]  The lesson of *Dukes* is that, as a matter of law, the practice of ceding to individual managers the discretion to make employment decisions cannot satisfy Rule 23(a)(2), even if that practice coexists with an apparent gender-based disparity.  That is because answering the "unbridled discretion" question would do nothing to illuminate the *actual* reason for each of the thousands

---

[13] *Id.* (giving managers discretion to make subjective evaluations is "a very common and presumptively reasonable way of doing business — one that we have said 'should itself raise no inference of discriminatory conduct.'") (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988) ("[a]n employer's policy of leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct")).

[14] *See Watson*, 487 U.S. at 990; *see also Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (subjective, race-neutral comments during interview did not create "an inference of pretext, but instead merely indicate[d] that the candidates were lacking traits needed for the job, which explains why they were not selected by IBP"); *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("[i]t is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation"; indeed, given the increasingly "service-oriented economy," subjective evaluations are becoming even more important and effective evaluation tools); *Chapman v. Al Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000) ("subjective evaluations of a job candidate are often critical to the decision-making process"); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) ("[s]ubjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions").

of individual employment decisions that lie at the heart of the lawsuit.  Plaintiffs' theory is

flawed at its core because, as a matter of law, the theory cannot unite thousands of individual

decisions made for a myriad of reasons into a question common to the class.[15]

## II.  THE AMENDED COMPLAINT MAKES CLEAR THAT, AS A MATTER OF LAW, PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF RULE 23(b).

Plaintiffs seek back pay and front pay, as well as compensatory and punitive damages,

individualized to each and every member of a class of all current and former female Goldman

Sachs employees working in revenue-producing divisions.  *See* Am. Compl. ¶¶ 57, 154, 161,

178, 185, 190-91.  *Dukes* held, unanimously, that such a case cannot be certified under Rule

23(b)(2).  *Id.* at 2557 (claims for "monetary relief may [not] be certified under" Rule 23(b)(2),

"at least where (as here) the monetary relief is not incidental to the injunctive or declaratory

relief").[16]

---

[15] Plaintiffs also dress up their "too little objectivity" claim in disparate impact clothes, but the label attached to the claim is irrelevant.  *Dukes* dealt (among other things) with the commonality requirement of Rule 23(a)(2); that requirement applies with equal force when plaintiffs press a disparate impact claim.  Even if Plaintiffs could show that using "too little objectivity" correlates with numbers suggesting a disparate impact on women at Goldman Sachs, the Company would still be absolutely entitled by the text of Title VII to show that as to each member of the class the same decision would have been made on non-discriminatory grounds.  *See, e.g., In re: Emp. Discrimination Litig.*, 198 F.3d 1305, 1315 (11th Cir. 1999) (in disparate impact case, "the employer must be given an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway"); 42 U.S.C. § 2000e-5(g)(2)(A) ("[n]o order of the court shall require . . .  the payment [] of any back pay, if such individual was [denied an employment opportunity] for any reason other than discrimination on account of race, color, religion, sex, or national origin").

[16] Plaintiffs may cite Judge Garaufis' decision in *United States v. City of New York*, No. 07-cv-2067 (NGG)(RLM), 2011 WL 2680474 (E.D.N.Y. July 8, 2011) ("Vulcan Society"), as authority for permitting a Rule (b)(2) certification of the "liability" phase of this case, but that case and this one share virtually no relevant characteristics.  In *Vulcan Society*, the City argued (among other things) that the court ought *nunc pro tunc* to decertify a liability class in a case in which it had already lost at "phase one."  The case involved the discriminatory use of a fixed cut-off score for a pencil-on-paper employment examination.  That cut-off score established a binary, pass-fail "liability" question:  those who failed to achieve the requisite score on the examination were

In their Amended Complaint, Plaintiffs have responded to this holding by urging that the Court engage in a jury-rigged and legally baseless process of "hybrid" certification. They assert that the Court can certify "liability-phase injunctive and declaratory relief" under Rule "23(a), (b)(2) and (c)(4)" and use Rule 23(b)(3) to certify their claim to "monetary damages and other make-whole relief." Am. Compl. ¶¶ 58-59. Rule 23(c)(4), however, does nothing to simplify the case or produce the efficiencies the class litigation rules were intended to provide. It adds nothing to Plaintiffs' claim to certification and the claim should be stricken.

### A.    As A Matter of Law, Plaintiffs Are Ineligible For Rule 23(b)(2) Certification of the "Liability" Phase of This Case.

*Dukes* confirmed that Rule 23(b)(2) – the portion of the rule pursuant to which Plaintiffs propose that "liability" be determined[17] – applies only when the plaintiffs advance claims for

---

*necessarily* harmed because they could not thereafter be considered for the applicable jobs. Not even Plaintiffs allege that sort of pass-fail situation here. Even if Plaintiffs were able to show that Goldman Sachs' employment decisions were made without "sufficiently objective" standards, "demonstrating the invalidity of one manager's use of [those standards would] do nothing to demonstrate the invalidity of another's." *Dukes*, 131 S. Ct. at 2554.

[17] Plaintiffs' attempt to subdivide this case into "liability" and "damages" phases is flawed. *See* Am. Compl. ¶¶ 58-59. The neat division Plaintiffs suggest between these aspects of the case simply does not exist; indeed, the liability and damages questions are closely intertwined. In the initial phase of a pattern or practice case, for example, the question posed is whether discrimination is the employer's "standard operating procedure," the "regular rather than the unusual" method of employment decision-making. *Int'l B'hd of Teamsters v. United States*, 431 U.S. 324, 336 (1977). If the answer to that question is yes, the court can enter a declaratory judgment and an injunction aimed broadly at the employer's practices, but at that stage of the litigation the employer is not made liable to a single member of the plaintiff class. Similarly, in a disparate impact case, the defendant retains the statutory right to argue that the individual plaintiff would have been treated the same even if the policy had not been in place. *See, e.g.*, *In re: Emp. Discrimination Litig.*, 198 F.3d at 1315 ("the employer must be given an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway"); *United States v. City of New York*, 258 F.R.D. 47, 56-57 (E.D.N.Y. 2009) (once an individual class member shows that she was affected by the challenged facially neutral policy or practice, the employer "in turn can [try to] establish by a preponderance of the evidence that a legitimate non-discriminatory reason existed for the particular adverse action"). Thus, in both disparate impact and pattern or practice cases, the defendant's alleged liability to class members awaits an *individualized* determination of causation and injury made during the second phase — what

prospective injunctive relief, and not individualized remedies.[18]  Although Plaintiffs claim they

will seek prospective injunctive relief during what they call the "liability" phase of this case, they

are all *former* employees of Goldman Sachs and as such have no standing to seek relief of this

sort.  Injunctions regulate future conduct and a party has standing to seek injunctive relief only if

that party faces an "actual or imminent, not conjectural or hypothetical" threat of harm.  *Port*

*Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*, 478 F.3d 494, 498 (2d Cir.

2007); *accord Shotz v. Cates*, 256 F.3d 1077, 1081-82 (11th Cir. 2001).  Moreover, "standing is

to be determined as of the commencement of suit."[19]  To have standing, Plaintiffs "cannot rely

on past injury to satisfy the injury requirement but must show a likelihood that [they] will be

injured in the future."  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

        For that reason, former employees like Plaintiffs have no standing to seek injunctive

relief in discrimination cases; they cannot allege that they have more than a speculative risk of

facing discrimination at any point in the future.[20]  *See, e.g.*, *Jackson v. Motel 6 Multipurpose*

---

Plaintiffs call the "remedy" phase.  Thus, "[i]t is misleading to speak of the additional proof
required by an individual class member for relief as being a part of the damage phase, that
evidence is actually an element of the liability portion of the case."  *Price Waterhouse v.*
*Hopkins*, 109 S. Ct. 1775, 1799 (O'Connor, J., concurring) (quoting *Dillon v. Coles*, 746 F.2d
998, 1004 (3d Cir.1984)); *Gavalik v. Cont'l Can Co*., 812 F.2d 834, 861 (3d Cir. 1987) (same).

[18] Indeed, the Court in *Dukes* suggested that the subdivision may be applicable only where such
relief is the *exclusive* form of relief sought, but it found no reason to reach "that broader
question."  *Dukes,* 131 S. Ct. at 2557.

[19] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992); *O'Shea v. Littleton*, 414 U.S.
488, 494-95 (1974) (same; "if none of the named plaintiffs purporting to represent a class
establishes the requisite of a case or controversy with the defendants, none may seek relief on
behalf of himself or any other member of the class"); *Leuthner v. Blue Cross and Blue Shield of*
*Nw. PA*, 454 F.3d 120, 127 (3d Cir. 2006) (same); *Park v. Forest Serv. of United States*, 205
F.3d 1034, 1038 (8th Cir. 2000) (same).

[20] Even if Plaintiffs could prove their class allegations, they would not be subject to Goldman
Sachs' employment practices unless they had asserted a termination cause of action, won their
individual claims of discrimination, and were reinstated – by definition a speculative matter at
this stage of the litigation.  Indeed, none of the Plaintiffs asserts a termination cause of action in

*Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997).  Moreover, "[t]hat a suit may be a class action . . .

adds nothing to the question of standing."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Thus,

courts routinely deny class certification under Rule 23(b)(2) in employment cases where the

putative class representatives are former employees.[21]

Plaintiffs' claim to class certification hinges on certification of their so-called "liability"

stage under Rule 23(b)(2).  As former employees, they are ineligible to seek the kind of relief

that could be awarded in such a phase and thus, as a matter of law, their class claims should be

stricken.

**B.      Rule 23(c)(4) Does Not Improve Plaintiffs' Claim To Certification Under Rule 23(b)(2).**

Plaintiffs suggest that the defects of their claim to class certification in this case can be

minimized by utilizing a "hybrid" certification under Rule 23(c)(4), which, under appropriate

circumstances, allows the court to certify discrete issues and leave others uncertified.[22]  Rule

23(c)(4) cannot give Plaintiffs standing, nor does it act as a magic potion, making all of the other

requirements of Rule 23 disappear.[23]

---

the Amended Complaint.

[21] *See*, *e.g.*, *Milligan v. Am. Airlines*, *Inc.*, No. 08-55276, 2009 U.S. App. LEXIS 9180 (9th Cir. Apr. 30, 2006) (former employee has no standing to seek injunction as class representative); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918 (11th Cir. Mar. 11, 2002) (denying certification under Rule 23(b)(2) because former employee/class representative had no standing to seek injunctive relief); *McKenzie v. Fed. Express Corp.*, CV 10-02420 (GAF) (PLAx), 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011); *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87 (D. Mass. 2010); *Harper v. Ulta Salon Cosmetics & Fragrance, Inc.*, No. 1:05-cv-1285-TWT, 2005 U.S. Dist. LEXIS 38049 (N.D. GA. Dec. 23, 2005).

[22] The subdivision provides:  "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. Pr. 23(c)(4).

[23] In *In re Nassau County*, 461 F.3d 219 (2d Cir. 2006), the Second Circuit held that Rule 23(c)(4) issue certification is possible even when the case as a whole could not meet the requirements of Rule 23(b).  That case involved a challenge to the county's "blanket strip search policy for newly admitted, misdemeanor detainees" at a penal facility.  *Id.* at 221.  Because the

The question in this (and every other) proposed use of hybrid certification is whether subdividing the case and trying on a class-wide basis the issues arguably amenable to class-wide proof would meaningfully "reduce the range of issues in dispute and promote judicial economy." *McLaughlin*, 522 F.3d 215 at 234 (citations omitted).  If Rule 23(c)(4) certification of some "liability" aspects of the case would leave a substantial "number of questions . . . remain[ing] for individual adjudication" after the "common" questions had been resolved, Rule 23(c)(4) certification would be an abuse of discretion.  *Id.* at 234; *accord Dungan v. Academy at Ivy Ridge*, No. 08-3870-cv, 2009 WL 2604356 (2d Cir. Aug. 20, 2009).

Piecemeal certification of this case through Rule 23(c)(4) would not promote judicial economy but rather would hopelessly complicate matters.  Even if Plaintiffs prevailed at their proposed phase one – what they call the "liability" phase of the case, which they would have the Court certify under Rule 23(b)(2) – nearly every question of consequence would remain "for individual adjudication."  As noted above, during the first phase of a pattern or practice class trial, Plaintiffs would have to prove that discrimination is Goldman Sachs' "standard operating procedure," the "regular rather than the unusual" method of employment decision-making.  *Teamsters*, 431 U.S. at 336.  If Plaintiffs had standing to seek that relief, and if they were actually able to make that showing on the merits, the Court theoretically could enter a declaration to that effect and an injunction modifying certain Goldman Sachs' practices.[24]

---

case dealt with a "blanket" policy – everyone in the class allegedly (indeed, in large part concededly) was handled under precisely the same official, invariable policy – individual liability issues were "*de minimis*," and the court found that a class action limited to questions of liability would be a simple matter to administer.  *In re Nassau County* does not help Plaintiffs.  First, it is likely no longer good law.  *Dukes* expressly held that every class action "must satisfy at least one of the three requirements listed in Rule 23(b)."  *Dukes*, 131 S. Ct. at 2548.  Second, as explained in greater detail above, the threshold predicate for such an issue certification – "that any individualized [liability] inquiries will be few and far between" – is absent here.  *In re Nassau Cnty*, 461 F.3d at 230.

[24] Plaintiffs request a "preliminary and permanent injunction [sic] against Goldman Sachs . . .

But regardless of what the Court did at the hypothetical phase one, a separate liability phase two of the case would be required under Plaintiffs' theory, and during that phase, the Court would have to answer *liability* questions as to each and every member of the class.  As the *Dukes* Court explained, and as the text of Title VII provides, even in a class action, the defendant has an absolute statutory right

> to individualized determinations of each employee's eligibility for backpay. . . . [If] the employer can show that it took an adverse employment action against an employee for any reason other than discrimination, the court cannot order the "hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any backpay."  [Thus, even after a pattern or practice finding, the defendant has] the right to raise any individual affirmative defenses it may have, and to "demonstrate that the individual applicant was denied an employment opportunity for lawful reasons."

131 S. Ct. at 2560-61(citations omitted); *citing* 42 U.S.C. § 2000e-5(g)(2)(A).[25]  This is true whether the claim is pressed under a disparate impact or a disparate treatment theory.  *See supra* note 15, at 11.

Because the defendant in a Title VII case has the statutory "right to raise any individual affirmative defenses it may have and to 'demonstrate that the individual applicant was denied an employment opportunity for lawful reasons,'" the question of liability as to *every* class member

---

from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or the Class because of their gender or participation in this lawsuit," but because they have not identified any such practices, they cannot define what it is they are truly asking.  *See* Am. Compl. ¶ 191(e).  Even if Plaintiffs had standing and prevailed, such an injunction, commanding Goldman Sachs to refrain from Title VII violations, would be impermissible.  "An injunction simply commanding the defendant to obey the law violates [Fed. R. Civ. P.] 65 because it is insufficiently specific and does not inform the defendant what conduct is outlawed."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) (citing cases).

[25] Indeed, in this case, where Plaintiffs seek compensatory damages, individualized inquiries are even more dominant than they were in *Dukes*, where "the named plaintiffs declined to include employees' claims for compensatory damages in their complaint.  That strategy of including only back pay claims made it more likely [in *Dukes*] that monetary relief would not 'pre-dominate.'" *Id.* at 2559.

in the case would remain for a jury to decide.  131 S. Ct. at 2560-61.  Then, questions of

individualized equitable relief like back pay and reinstatement would remain for the Court to

decide.  And because the Second Circuit has instructed that Rule 23(c)(4) simply may not be

used when numerous individual liability questions would remain, Plaintiffs cannot rescue their

doomed attempt to prove the existence of a class by invoking Rule 23(c)(4).[26]

> C.   **Plaintiffs' Proposed Bifurcated Treatment Of Liability Issues Risks A Seventh Amendment Violation.**

The Seventh Amendment's Re-Examination Clause provides that "no fact tried by a jury

shall be otherwise reexamined in any Court of the United States."  Because no single jury could

conceivably sit long enough to consider whether Goldman Sachs might be liable to each of the

thousands of individual proposed class members, this constitutional requirement is implicated.

As Judge Posner observed in *In re Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995),

"[t]he right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right

to have juriable issues determined by the first jury impaneled to hear them . . . and not

reexamined by another finder of fact."  Appellate courts repeatedly have struck down, as

---

[26] In *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), the court concluded that the district court should have certified a discrimination class action under Rule 23(b)(2), or, alternatively, should have considered a hybrid certification under Rule 23(c)(4). Even if *Robinson* could be reconciled with the Second Circuit's more recent analysis of Rule 23(c)(4) standards in *McLaughlin*, 522 F.3d at 234, nothing of substance remains of *Robinson* after *Dukes.*  For example, to smooth the way to class certification, the *Robinson* court held that claims for individualized monetary relief could be certified under Rule 23(b)(2) under a forgiving standard the *Dukes* Court rejected, and it observed that "some cases may require class-wide, rather than individualized, assessments of monetary relief," thus minimizing the number of individualized determinations left to be made after the "liability" phase has been completed. 267 F.3d at 161 n. 6.  The *Dukes* Court, however, explicitly rejected that proposition.  Indeed, the *Dukes* Court expressly repudiated a case (*Hilao v. Est. of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996)) on which the *Robinson* court relied for support.  131 S. Ct. at 2550.  The *Robinson* court also held that "any due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members."  267 F.3d at 166.  Again, *Dukes* explicitly holds that the district court has no such ability.  131 S. Ct. at 2558.

prohibited by the Seventh Amendment, trial schemes where one jury is asked to decide generic

liability issues and subsequent juries are free to apply (or refuse to apply) the presumptions

created by the first jury to individual class members, both within and outside of the employment

discrimination setting.

In this respect, the Second Circuit's decision in *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir.

1999), controls. *Blyden* involved claims of retaliatory treatment made by prisoners involved in

the Attica prison riot. The district judge ordered a two-phase trial: in the first, so-called

"liability," phase the jury was to determine whether "officers" – generically – had engaged in

acts of unlawful reprisal causing injury to "member[s] of the plaintiff class." *Id*. at 266-67.

Presumably because there were too many violent confrontations for any single jury to consider,

however, this first jury was not asked to "specify which acts [proven at trial] were found to be

'reprisals' and which were not." *Id*. at 268. That task was left to jurors in a series of subsequent

"damages" trials; those jurors "were told that there had been 'reprisals' but were asked to

determine for themselves which particular acts constituted such 'reprisals.'" *Id*.

Vacating this trial plan, the Second Circuit observed that the "damages" juries had

actually been asked to decide *liability* as to specific sets of facts "without regard to how the

[first] liability jury viewed that particular act. This of course created the real possibility –

amounting to a probability – that acts found to be 'reprisals' by the liability jury were different

from the acts found to be 'reprisals' by the damages juries. This procedure clearly violated the

Seventh Amendment." *Id*. at 269.

The same would be true here. One jury would be impaneled to determine whether there

had been "discrimination" in the abstract, but (to paraphrase *Blyden*) would be prevented from

determining "which [employment decisions] were found to be [discrimination] and which were

not." *Id*. The latter question would be left to hundreds of juries impaneled to determine whether

specific decisions were discriminatory.  But these "second phase" juries could not decide the questions left to them without re-examining – one-by-one – the "pattern" conclusion presumably reached by the first jury, thus running afoul of the Seventh Amendment.  If these "second phase" juries found no discrimination as to the individual claims, one-by-one, they would cumulatively be rejecting the conclusion of the first jury that discrimination was the "regular rather than the unusual practice."  This Seventh Amendment problem is patent in this case.

Suppose, for example, that in addition to Plaintiffs Chen-Oster, Parisi, and Orlich, Plaintiffs' counsel were to call Goldman Sachs employee Jane Doe to the stand at the "liability" phase of the trial to testify about her "personal experiences with the company [in an effort to bring] the cold numbers convincingly to life."  *Teamsters*, 431 U.S. at 339.  Suppose, further, that after examining the facts, the jury believed that Ms. Doe had been the victim of discrimination, and relied upon that finding, in part, to decide that Plaintiffs had satisfied their phase one burden.

At that stage of the litigation – at the conclusion of phase one – Goldman Sachs would not be liable to Ms. Doe.  Goldman Sachs would be absolutely entitled, as *Dukes* expressly held, to present evidence that Ms. Doe was treated even-handedly and that any adverse actions taken with respect to her employment were based on non-discriminatory factors.  *See Dukes*, 131 S. Ct. at 2560-61.  Goldman Sachs' potential liability to Ms. Doe would have to be examined by a follow-on jury, and this follow-on jury would unavoidably be forced to "reexamine" the "facts" about Ms. Doe's treatment that had already been "examined" by the first jury – precisely what the Seventh Amendment precludes.[27]

---

[27] The same problem would exist if the phase one jury found that Ms. Doe had not been the victim of unlawful discrimination, but nevertheless concluded, based on evidence regarding other witnesses, that Plaintiffs had satisfied their phase one burden.  Ms. Doe presumably would seek relief at phase two, and again, a separate jury would have to re-examine the facts regarding

Even if such a collision with the Seventh Amendment were less certain, when choosing among alternate paths this Court "must consider the necessary consequences of its choice[s].  If one of [those choices] would raise . . . constitutional problems, the other should prevail." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *accord United States. v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir.1996) (constitution only "allows bifurcation of issues [where they] are so separable that the second jury will not be called upon to reconsider findings of fact by the first").[28]

## III.   CERTIFICATION OF PLAINTIFFS' PROPOSED "EXCESS SUBJECTIVITY" CLASS UNDER RULE 23(b)(3) ALSO IS FORECLOSED BY *DUKES.*

As noted above, Rule 23(a)(2) requires that the class complaint pose common questions that, when answered, can "drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551.  The defects in Plaintiffs' allegations of commonality are if anything even more glaring when assessed against the rigorous requirement of Fed. R. Civ. P. 23(b)(3) that "questions of law or fact common to the class members predominate over any questions affecting only individual members." *Id.* at 2552.

No matter what facts Plaintiffs might adduce through further discovery, they could never meet this standard.  Although Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance standard are qualitatively similar – both assessing the homogeneity *vel non* of the

---

Ms. Doe and might reach a contrary conclusion.

[28] Although the issue had apparently not been raised or briefed by the parties, the *Robinson* court acknowledged the Seventh Amendment issue in a footnote.  267 F.3d at 169 n.13.  In what amounted to *dicta* (or, at most, an alternative holding) in that case, the court dismissed as "speculative" the assertion of an *amicus* that a bifurcated trial plan could threaten a Seventh Amendment violation.  The court predicted that the identified problem might be avoided with "sound case management."  The court, however, acknowledged that *Blyden* was the binding standard for application of the Reexamination Clause, and as explained in the text, "sound case management" could not prevent the confrontation with the Seventh Amendment hardwired into Plaintiffs' certification plan in this case.

class members' claims[29] – the Supreme Court and the Second Circuit have both held that Rule 23(b)(3)'s "predominance criterion is far more demanding" than the Rule 23(a)(2) commonality standard. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1977); *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Kendler v. Federated Dep't Stores, Inc.*, 88 F.R.D. 688, 693 (S.D.N.Y. 1981) ("in the absence of a showing of identifiable common issues, amenable to proof on a class-wide basis, the Court concludes that common issues of law and fact do not predominate herein and plaintiffs have not satisfied the requirements of Rules 23(a)(2) and 23(b)(3)").

If Plaintiffs' reconfigured "excessive subjectivity and discretion" class cannot satisfy Rule 23(a)(2), then certainly, as a matter of law and logic, it cannot satisfy the far more demanding Rule 23(b)(3) "predominance" standard. Necessarily, if the assertion that Goldman Sachs managers "exercise too much discretion" is insufficient "glue" to hold the class together under the relatively less rigorous Rule 23(a)(2) commonality test – and *Dukes* holds unambiguously that this is true – that assertion is patently insufficient to meet the far more demanding "predominance" test. The bottom line is that in this case, Plaintiffs' class allegations cannot stand because class certification under *either* Rule 23(b)(2) *or* (b)(3) would be impermissible under *Dukes*.[30]

---

[29] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1269 (11th Cir. 2009) ("a [Rule 23(b)(3)] finding that 'questions of law or fact common to the class members predominate over any question affecting only individual members' . . . necessarily requires an antecedent finding that there is at least one common question of law or fact in the first place" under Rule 23(a)(2)).

[30] The court in *Vulcan Society* held that the remaining individual liability and damages questions in that case did not predominate, but that conclusion was premised largely on the highly unusual context of that case, which involved hard cut-off scores on pencil-on-paper examinations. Because there were more class members than jobs, the facts suggested to the court that individualized relief would involve a hopeless inquiry into which class members would have been placed in open positions. That led the court to the conclusion that it could use an "aggregate backpay" formula to award money to class members *without individualized inquiry* (even though formulaic damages were expressly rejected as a class management strategy in

**IV.     PLAINTIFFS CANNOT ASSERT A TITLE VII DISPARATE IMPACT CLAIM BECAUSE THEY DID NOT MAKE SUCH A CLAIM IN THEIR EEOC CHARGES.**

Title VII requires a charging party to exhaust her administrative remedies before bringing litigation in federal court.  This threshold requirement is not a procedural nuisance to be disregarded or circumvented; it is a statutory precondition to suit – "an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." *Woodman v. WWOR-TV*, *Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)), *aff'd on other grounds*, 411 F.3d 69 (2d Cir. 2005).  It exists to foster the strong federal policy in favor of conciliation and the employer's legitimate interest in knowing the nature of the claims against it so that it can make an informed decision as to whether, and on what terms, a voluntary resolution might be reached. *See, e.g.*, *McGoffney v. Vigo Cnty Div. of Family & Children, Family & Soc. Servs. Admin.*, 389 F.3d 750, 752 (7th Cir. 2004) (limiting Title VII litigation to claims in EEOC charge serves important purpose of giving employer notice of conduct as to which plaintiff is aggrieved).

Because notice to the employer is an essential purpose of the exhaustion requirement, the charging party is obliged to include in the charge all of the claims that he or she intends to pursue in court.  Although there are no "magic words" a charging party must recite in an EEOC charge to describe adequately a discrimination claim that may later be pursued in court, a Title VII plaintiff can only litigate claims expressly raised in the administrative charge and those that are

---

*Dukes*).  2011 WL 2680474, at *25.  Even if that sort of process could be reconciled with *Dukes*, no such facts are present here.  This case involves no pass-fail exam and Plaintiffs challenge *inter alia* performance evaluation scores and pay decisions.  The court also noted there that the City's reliance on *Dukes* was misplaced because doing so "ignored a crucial point that distinguishes this litigation from most other class actions.  The United States [was] the original Plaintiff in th[at] case", *id.* at *27, and because Rule 23 does not apply to the government in Title VII cases, *General Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 327 & n.9 (1980), the *Dukes* Court's detailed discussion of that Rule was simply irrelevant there.  *Vulcan Society*, 2011 WL 2680474, at *27.  It is of central importance here.

"like or reasonably related" to those specifically articulated in the charge – claims that are "so closely related that [requiring] agency action [on those claims not specifically mentioned] would be redundant." *Brown v. Puget Sound Chapter Nat'l Elec. Contractors Ass'n*, 732 F.2d 726, 730 (9th Cir. 1984).  In determining whether a particular claim is sufficiently "like or related" to one actually described in a charge, courts often attempt to determine whether the EEOC's investigation into the actual text of the charge would reasonably have led it to investigate the claims that were not expressly mentioned.  *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980).

Plaintiffs' Title VII disparate impact claim does not meet this test.[31]  Although the three EEOC charges were detailed and were filed with the involvement of experienced counsel, not one of them mentions the disparate impact theory, in name or in substance, or articulates any of the essential elements of a disparate impact claim or the facts underlying such a claim.  A "plaintiff alleging disparate impact must begin 'by identifying the specific employment practice that is challenged'" – a facially neutral rule that is alleged to have had a disproportionately negative impact on those in the protected category.  *Woodman*, 293 F. Supp. 2d at 390.  This is true because the disparate treatment theory (*i.e.*, the allegations that do run through Plaintiffs' EEOC charges) and the disparate impact theory are "largely separate theories of discrimination"; alleging one does not mean the EEOC could reasonably be expected to investigate the other. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).

None of the charges filed by Plaintiffs mentions any practice or facially neutral rule that might operate to the detriment of women – the *sine qua non* of a disparate impact claim. Plaintiffs did not need to use sophisticated legalese in their charges.  They did not need to use

---

[31] The Second Claim for Relief in Plaintiffs' Amended Complaint ¶¶ 144-147, asserts a disparate impact claim under Title VII.

"magic words" such as "disparate" or "impact," but, at a minimum, they were required to put

Goldman Sachs on notice that there were processes or policies that they claimed

disproportionately negatively affected women.   It would have been sufficient for Plaintiffs to

use simple lay terms to describe these processes or policies.  They did not do so.  In fact, all that

is contained in the charges filed by these Plaintiffs are idiosyncratic facts about alleged

*intentional* discrimination by Goldman Sachs.  Plaintiff Chen-Oster alleged that she was

"assaulted . . . in the fall of 1997" and that after that attack she was "evaluated more harshly than

similarly situated men," was given an unfavorable seating assignment, and was given no

meaningful work assignments when she returned from maternity leave.  Plaintiff Parisi alleged

that her pay and promotional opportunities were not commensurate with her contributions.

Plaintiff Orlich alleged that she received "positive feedback and praise for [her] work" but not

the pay or opportunities that her work merited.  *See* Statement of Undisputed Material Facts

("SUMF") ¶ 2, and Declaration of Theodore O. Rogers, Jr., ("Rogers Decl.") ¶ 2, Ex. A,

accompanying this motion.

      None of the allegations made by Plaintiffs to the EEOC even so much as hints at the

existence of a disparate impact claim, and the charges therefore cannot support a disparate

impact claim in this Court.  *See Woodman*, 293 F. Supp. 2d at 390 ("disparate impact claim is not

'reasonably related' to [plaintiff's] disparate treatment claim") (Cote, J.); *accord McClain v.

Lufkin Indus.*, *Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) ("'the cornerstone of any EEOC disparate-

impact investigation' is a neutral employment policy"; where charge "nowhere refers to any

neutral employment policy," disparate impact claim is not "like or reasonably related" to

disparate treatment claim) (internal citations omitted); *Pacheco*, 448 F.3d at 792 (plaintiff failed

to exhaust disparate impact claim where charge "facially alleged disparate treatment . . .

identified no neutral employment policy [and] complained of past [instances] of disparate

treatment"); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258-59 (7th Cir. 1996) ("[g]iven that a primary purpose of the scope-of-the-charge doctrine is to prevent 'circumvent[ion of] the EEOC's investigatory and conciliatory role,' . . . refusing to allow [plaintiff's] charge of retaliation to support his subsequent disparate impact claim would seem particularly appropriate"); *cf. Brown*, 732 F.2d at 730 (plaintiff failed to exhaust as to allegations of disparate treatment by alleging disparate impact).

In some instances – for example in the Second Circuit's decision in *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) – the court is left to imagine the course of an EEOC investigation that never was.  There, the charge failed to mention the phrase "disparate impact" but did allege the existence of a facially neutral employment policy – a tenure rule that candidates for the position in question had to satisfy.  Because the charge mentioned this facially neutral rule and alleged that it disadvantaged the charging party, the court imagined that had the EEOC continued investigating the charge, it "could . . . reasonably [have been expected to] inquire [] as to whether this possibly unnecessary [facially neutral] rule had a discriminatory impact on employees of Portuguese descent."  *Id.* at 1334.

The Plaintiffs' charges in this case do not even leave room for such hypothesizing.  The EEOC charges here *were actually investigated* by the agency *for years*, and we know without any conjecture or hypothesizing the course that investigation took.  Indisputably, in the five years it considered Plaintiff Chen-Oster's disparate *treatment* allegations and in the year it investigated the disparate *treatment* allegations by Plaintiffs Orlich and Parisi, the EEOC *never* undertook any disparate *impact* investigation.[32]  The general rule – that a disparate treatment claim and a disparate impact claim are so inherently different that one will rarely be "like or reasonably

---

[32]  *See* SUMF ¶¶ 2-11; Rogers Decl. ¶¶ 2-7.

related" to the other – applies here, not the *Gomes* exception.[33]  The failure of Plaintiffs to assert

expressly in their EEOC charges a disparate impact claim, or even to identify a challenged

neutral employment practice, requires that judgment be granted to Goldman Sachs on the Second

Claim for Relief in the First Amended Complaint.

## CONCLUSION

For the forgoing reasons, Plaintiffs' class allegations should be stricken and summary

judgment should be entered on Count II of their Amended Complaint.

Dated:  September 8, 2011                     PAUL HASTINGS LLP
New York, New York

                                              By:            /s/ Zachary D. Fasman
                                                     BARBARA B. BROWN *(admitted pro hac vice)*
                                                     ZACHARY D. FASMAN
                                                     C. GEOFFREY WEIRICH *(admitted pro hac vice)*
                                                     75 East 55th Street
                                                     New York, New York  10022
                                                     (212) 318-6000
                                                     barbarabrown@paulhastings.com;
                                                     zacharyfasman@paulhastings.com
                                                     geoffweirich@paulhastings.com

---

[33] Goldman Sachs does not urge a rule that would categorically prohibit a disparate impact claim arising from what appears on its face to be a disparate treatment charge.  The "like or reasonably related" test requires an inherently "fact-intensive analysis," *McClain*, 519 F.3d at 273, and, as *Gomes* demonstrates, sometimes the allegations in a particular disparate treatment charge will satisfy the exhaustion requirement.  But the facts in this case point in the other direction, and *Gomes* is of no help to Plaintiffs.  Neither is *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998).  Although the contents of the *Brown* plaintiff's charge are not reproduced or quoted in the court's opinion, and although the court's analysis of the "like or related" issue is limited to a single sentence, it appears that the plaintiff there alleged that as a matter of policy, the defendant did not post (or at least rarely posted) notice of position vacancies whenever the position at issue did not require a college degree; the plaintiff alleged she had been affected by this facially neutral rule.  *See* 163 F.3d at 706-07.  Moreover, as with *Gomes*, the *Brown* court was left to speculate about the course an EEOC investigation into that charge *might* have taken; here, we know precisely what the EEOC did in the five years it had this matter, and no disparate impact investigation occurred.

SULLIVAN & CROMWELL LLP
THEODORE O. ROGERS, JR.
SUHANA S. HAN
125 Broad Street
New York, New York  10004
(212) 558-4000
rogerst@sullcrom.com
hans@sullcrom.com

Attorneys for Defendants
GOLDMAN, SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. CRISTINA CHEN-OSTER; LISA PARISI; and
SHANNA ORLICH,

                              Plaintiffs,

               vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.

                            Defendants.

10 Civ. 6950 (LBS) (JCF)

**CERTIFICATE OF SERVICE**

---

        I hereby certify that on September 8, 2011, I caused a copy of the foregoing Memorandum in Support of Defendants' Motion to Strike All Class Allegations in Plaintiff's First Amended Complaint and for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII to be served by the Court's ECF system on:

Adam T. Klein
Cara E. Greene
Jennifer L. Liu
OUTTEN & GOLDEN, LLP
3 Park Avenue, 29th Floor
New York, New York 10016
*Attorneys for Plaintiffs*

Kelly M. Dermody
Anne B. Shaver
Heather H. Wong
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
*Attorneys for Plaintiffs*

Dated: New York, New York
      September 8, 2011               By:           /s/ Zachary D. Fasman
                                             ZACHARY D. FASMAN