**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　-against-<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,<br><br>　　　　　　　Defendants. | No. 10 Civ. 6950 (LBS) (JCF) |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALL CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER TITLE VII

**Outten & Golden LLP**
Adam T. Klein
Carmelyn P. Malalis
Cara E. Greene
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**Lieff, Cabraser, Heimann & Bernstein, LLP**
Kelly M. Dermody (admitted *pro hac vice*)
Anne B. Shaver (admitted *pro hac vice*)
Alison M. Stocking
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
*Attorneys for Plaintiffs and the Putative Class*

# TABLE OF CONTENTS

**Page**

I.      Introduction ........................................................................................................... 1

II.     Defendants' Motion To Strike Should Be Denied. .............................................. 2

    A.    Motions To Strike Class Allegations Are Generally Disfavored
         Because They Are "Procedurally Inseparable" From Class
         Certification And Are Therefore Premature and Inefficient. ..................... 2

    B.    Contrary To Defendants' Position, *Dukes* Does Not Render This
         Case *Per Se* Uncertifiable, Nor Is The Case Identical To *Dukes*. .............. 4

         1.    This Proposed Class Is Substantially Smaller And More
              Compact Than *Dukes*. ................................................................... 5

         2.    Plaintiffs Have Identified Specific, Biased Employment
              Practices That Discriminate Against Women, Rather Than
              Just A Culture Of Subjectivity. ...................................................... 5

    C.    Plaintiffs' Class Allegations Satisfy Rule 23 And The Certification
         Standards Clarified In *Dukes*. ................................................................... 7

          1.    Plaintiffs Allege Common Questions And Answers That
              Satisfy Rule 23(a)(2). ................................................................... 7

          2.    Plaintiffs Have Standing To Seek Injunctive Relief, And
              Will Satisfy Rule 23(b)(2). .......................................................... 9

              a.    Plaintiffs have standing to seek injunctive relief. .............. 9

              b.    Plaintiffs may seek certification of Defendants'
                    liability for disparate impact and disparate treatment
                    violations under Rule 23(b)(2). ......................................... 12

              c.    Bifurcated treatment of liability issues does not
                    implicate the Seventh Amendment. ................................... 16

          3.    Plaintiffs Sufficiently Allege Satisfaction Of Rule
              23(b)(3)'s Predominance Standard For All Forms Of
               Monetary Relief. ........................................................................... 18

III.    Defendants' Motion For Partial Summary Judgment As To Plaintiffs'
    Disparate Impact Claim Should Be Denied. ...................................................... 19

IV.     Conclusion .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975)............................................................................................ 12

*Allen v. Int'l Truck and Engine Corp.*,
  358 F.3d 469 (7th Cir. 2004) ............................................................................. 18

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) ......................... 3

*Blyden v. Mancusi*,
  186 F.3d 252 (2d Cir. 1999)......................................................................... 16, 17

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998)........................................................... 19, 21, 23, 24

*Charrons v. Pinnacle Group NY LLC*,
  269 F.R.D. 221 (S.D.N.Y. 2010) ................................................................. 15, 16

*Chenensky v. N.Y. Life Ins. Co.*,
  No. 07 Civ. 11504, 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011)................. 2, 3, 4

*Chen-Oster v. Goldman Sachs*,
  No. 10 Civ. 6950 (S.D.N.Y. Sept. 29, 2011) ..................................................... 23

*Duling v. Gristede's Operating Corp.*,
  267 F.R.D. 86 (S.D.N.Y. 2010) ................................................................... 10, 11

*EEOC v. Sterling Jewelers Inc.*,
  08 Civ. 706A, 2011 WL 1560976 (W.D.N.Y. 2011)........................................... 13

*Ellis v. Costco Wholesale Corp.*,
  No. 07-15838, 2011 WL 4336668 (9th Cir. Sept. 16, 2011) ......................... 6, 17

*Faibisch v. Univ. of Minn.*,
  304 F.3d 797 (8th Cir. 2002) ............................................................................ 10

*Federal Exp. Corp. v. Holowecki*,
  552 U.S. 389 (2008)........................................................................................... 23

*Franks v. Bowman Transp. Co., Inc.*,
  424 U.S. 747 (1976)........................................................................................... 13

*George v. Gen. Motors Corp.*,
  No. 7:05 Civ. 1482, 2007 WL 2973589 (N.D.N.Y. Oct. 9, 2007)....................... 17

*Gomes v. Avco Corp.*,
  964 F.2d 1330 (2d Cir. 1992)........................................................... 19, 20, 23, 24

*In re Emp't Discrimination Litig.*,
  198 F.3d 1305 (11th Cir. 1999) ........................................................................ 13

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Nassau Cnty. Strip Search Cases*,
 461 F.3d 219 (2d Cir. 2006)......................................................................................... 15

*Int'l B'hd of Teamsters v. United States*,
 431 U.S. 324 (1977)............................................................................................. passim

*Jenkins v. N.Y. City Transit Auth.*,
 646 F. Supp. 2d 464 (S.D.N.Y. 2009)........................................................................... 19

*Jermyn v. Best Buy Stores, L.P.*,
 No. 08 Civ. 002140, 2011 WL 4336664 (S.D.N.Y. Sept. 15, 2011)............................... 7, 15

*Kirkland v. Buffalo Bd. of Educ.*,
 622 F.2d 1066 (2d Cir. 1980)...................................................................................... 19

*Levin v. Madigan*,
 697 F. Supp. 2d 958 (N.D. Ill. 2010) ........................................................................... 10

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)................................................................................................... 10

*Maniatas v. N.Y. Hosp.-Cornell Med. Ctr.*,
 58 F. Supp. 2d 221 (S.D.N.Y. 1999)............................................................................. 20

*Mathirampuzha v. Potter*,
 548 F.3d 70 (2d Cir. 2008)......................................................................................... 19

*Nobles v. State Farm Mutual Auto. Ins. Co.*,
 No. 10-cv-04175, 2011 WL 2471584 (W.D. Miss. Aug. 25, 2011) .................................. 7

*Powers v. Grinnell Corp.*,
 915 F.2d 34 (1st Cir. 1990)........................................................................................ 19

*Rahman v. Smith & Wollensky Restaurant Group, Inc.*,
 No. 06 Civ. 6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008)..................................... 2, 3

*Ramos v. SimplexGrinnel LP*,
 No. 07 Civ. 981, 2011 WL 2471584 (E.D.N.Y. June 21, 2011)........................................ 6

*Rios v. Enter. Asso. Steamfitters Local 638*,
 501 F.2d 622 (2d Cir. 1974)....................................................................................... 13

*Robinson v. Metro-North Commuter R.R. Co.*,
 267 F.3d 147 (2d Cir. 2001)....................................................................... 13, 15, 16, 17

*Rogers v. Capital One Servs., LLC*,
 No. 10–398, 2011 WL 873312 (D. Conn. Feb. 19, 2011) ............................................. 2, 4

*Schnellbaecher v. Baskin Clothing Co.*,
 887 F.2d 124 (7th Cir. 1989) ..................................................................................... 24

*Terry v. Ashcroft*,
 336 F.3d 128 (2d Cir. 2003)....................................................................................... 19

*United States v City of N.Y.*,
 No. 07 Civ. 2067, 2010 WL 3709350 (E.D.N.Y. Sept. 13, 2010)...................................... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Brennan*,
   No. 08-5171, 2011 WL 1679850 (2d Cir. 2011) ................................................... 13

*United States v. City of N.Y. ("Vulcan Society II")*,
   No. 07 Civ. 2076, 2011 WL 2680474 (E.D.N.Y. July 8, 2011) ................................. 6, 14, 15

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ....................................................................................... 3, 4

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................. passim

*Watson v. Ft. Worth Bank & Trust*,
   487 U.S. 977 (1988) ...................................................................................................... 9

*Weigmann v. Glorious Food, Inc.*,
   169 F.R.D. 280 (S.D.N.Y. 1996) ............................................................................. 10, 11

*Williams v. N.Y. City Hous. Auth.*,
   458 F.3d 67 (2d Cir. 2006) ........................................................................................ 22

*Woodman v. WWOR-TV, Inc.*,
   293 F. Supp. 2d 381 (S.D.N.Y. 2003) ............................................................... 20, 21, 23

*Wright v. Nat'l Archives & Records Serv.*,
   609 F.2d 702 (4th Cir. 1979) (en banc) ..................................................................... 20

## <u>STATUTES</u>

42 U.S.C. 2000e-5(g)(1) ............................................................................................. 12

## <u>RULES</u>

Fed. R. Civ. P. 23(c)(4) ........................................................................................... 14, 15

I.      <u>**Introduction**</u>

Subsequent to the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ("*Dukes*"), Plaintiffs filed a First Amended Complaint ("FAC") clarifying the allegations in light of certain new legal standards under *Dukes* and evidence developed in this case to date. Defendants Goldman, Sachs & Co. and The Goldman Sachs Group (hereinafter, "Defendants" or "Goldman") now seek to dismiss all of Plaintiffs' class allegations as contrary to *Dukes*, and to dismiss Plaintiffs' disparate impact claim for failure to exhaust administrative remedies. Defendants' arguments are without merit.

Defendants' motion to strike relies on *Dukes* to revive a long-disfavored defense strategy of trying to pre-emptively litigate class certification at the outset of the case or when discovery has barely commenced. Courts have recognized that motions such as this are premature, because they require courts to pre-judge facts not yet before them and to assume how the evidence and arguments for certification will be presented, rather than doing so with a properly developed record. This case must be decided on its own facts, and not on the patently different record in *Dukes*. Defendants' motion should be denied as premature at the outset.

Moreover, contrary to Defendants' arguments, Plaintiffs' allegations fully satisfy the certification standards clarified in *Dukes*. Rather than merely attacking the use of excess subjectivity, Plaintiffs challenge specific employment practices as biased and allege that these common practices are responsible for adverse employment conditions for women at Goldman Sachs. These employment practices are systemic, affecting all class members, and are best challenged on a classwide basis. Defendants simply misapprehend the holding and reach of *Dukes*, and compound the problem by misstating the claims in this case.

Finally, Defendants' motion for partial summary judgment as to Plaintiffs' disparate impact claim is baseless.  Plaintiffs clearly exhausted the administrative process for this claim under governing case law.  Summary judgment should be denied.

## II.     Defendants' Motion To Strike Should Be Denied.

### A.     Motions To Strike Class Allegations Are Generally Disfavored Because They Are "Procedurally Inseparable" From Class Certification And Are Therefore Premature and Inefficient.

Courts strongly disfavor inefficient, tactical attempts to pre-litigate or preempt class certification.  Within this Circuit, "[m]otions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."  *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2011 WL 1795305, *1 (S.D.N.Y. Apr. 27, 2011) (citing cases); *see also Rogers v. Capital One Servs., LLC*, No. 10–398, 2011 WL 873312, at *7-9 (D. Conn. Feb. 19, 2011) (holding that portions of a class complaint should only be struck where "the basis for the motion to strike is distinct from the issues that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b) . . . and it is clear that plaintiffs cannot possibly prove the deleted portions of those claims") (internal citations omitted)).

Defendants' reliance on *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008), to justify their premature motion is misplaced.  *See* Defs' Mot. 3.  In *Rahman*, the court unequivocally held that class certification "may not be circumvented by utilizing a motion to strike … where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification under *Rules 23(a)* and *23(b)*."  The object of the

defendants' motion to strike in *Rahman*, however, was different – defendants sought to remove the portion of the class claims that allegedly had not been exhausted before the EEOC. *Id.* The court held that a motion to strike class claims is procedurally proper "where the basis for the motion to strike is distinct from [the Rule 23(a) and (b)] factors," and allowed the motion to proceed because "the extent to which the claims of absent members of the putative class have been exhausted is an issue separate and apart from the issues that will be decided on a class certification motion." *Id.*

Unlike in *Rahman*, Defendants' motion in this case is plainly not aimed at issues separate and apart from the issues that would be decided on a class certification motion. Instead, Defendants' arguments are aimed squarely at Plaintiffs' ability to satisfy Rules 23(a) and 23(b). As the court noted in *Chenensky*, "the harsh remedy of denial of class certification at this early stage, prior to any class discovery, is premature . . . [and] would be based on assumptions of fact rather than on findings of fact . . ." *Chenensky*, 2011 WL 1795305, at *4; *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006) (a motion to strike class claims is "procedurally inseparable" from a determination whether to certify a class, as evinced by the fact that "the bulk of Defendants' arguments in favor of its motion are actually arguments against class certification.").[1] The same

---

[1] Contrary to Defendants' assertion, *Beauperthuy* was not overruled by *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). Rather, *Vinole* distinguished *Beauperthuy* for exactly the same reason *Vinole* is distinguishable from this case. *Id.* at 941. The *Vinole* court was asked to decide whether a motion to deny class certification was *per se* improper when filed before a plaintiff's motion to certify. It answered that there was no such *per se* rule. *Id.* at 939-940. Either defendants or plaintiffs are entitled to put class certification before the court at a proper time in the development of the case. *Id.* The *Vinole* court found that *Beauperthuy* was inapposite because, as in the instant case, *Beauperthuy* involved a motion to compel an amendment of the class pleadings, rather than a motion to deny certification. "[*Beauperthuy*] held only that it was procedurally improper to consider a motion to compel an amendment of the

is true here.  Moreover, as in *Chenensky* and *Rogers*, discovery in this case is still in an early stage.[2]  At the appropriate time — after the experts analyze the data and information that Goldman Sachs is still producing, and after completion of the class certification record — the parties will present a developed certification record to the Court.  At this time, however, it is premature for the Court to decide whether Plaintiffs' allegations satisfy Rules 23(a) and (b).

**B.      Contrary To Defendants' Position, *Dukes* Does Not Render This Case *Per Se* Uncertifiable, Nor Is The Case Identical To *Dukes*.**

Defendants have overstated the holding and reach of *Dukes*, which provides the purported basis for Defendants' motion, and compounded the problem by misstating the claims in this case.  *Dukes* did not, as Goldman implies, determine that certification is improper any time a challenged employment practice involves any subjective component.

Instead, the majority opinion confirmed anew that an "undisciplined system of subjective decisionmaking" can be the basis of Title VII liability, though holding that the 1.5 million class of Wal-Mart employees in various positions and at multiple levels within the company bringing pay and promotion claims did not identify "a common mode of exercising discretion that pervade[d] the entire company."  *Dukes*, 131 S. Ct. at 2554-55.  *Dukes* also reaffirmed that use of a biased testing procedure, at issue here but not in *Dukes*, was an alternative common vehicle to prove discrimination on a classwide basis.  *Id.* at 2553.

---

pleadings in a class action case where the question of certification was not yet before the court and discovery was ongoing."  *Id*. at 941.

[2] Depositions have barely commenced, with Defendants having taken one named Plaintiff deposition and offering no witnesses yet in response to Plaintiffs' 30(b)(6) Notices.  Defendants have not produced any of the critical personnel and employment data to Plaintiffs, and have stopped producing documents pending the outcome of Defendants' Motion to Compel Arbitration of Lisa Parisi's claims (*see* Dkt. No. 76) and the parties' dispute over the scope of the class (*see* Dkt. No. 66).

### 1.      This Proposed Class Is Substantially Smaller And More Compact Than *Dukes*.

Plaintiffs and the absent class members all have one of three corporate titles —

Associate, Vice President, or Managing Director — and are limited to the revenue-generating

divisions of the company.  This limitation was deliberate, to focus the case on the performance

evaluation, compensation, and promotion systems that Plaintiffs are challenging.  The proposed

class also is orders of magnitude smaller than in *Dukes*, and is different in kind.  *Dukes* involved

a class of 1.5 million women, employed in any of 3,400 different stores across the country.

Here, the class numbers are still to be confirmed but are in the range of the high hundreds to low

thousands, with the vast majority employed in a single location, at Goldman Sachs' New York,

New York office, and all working for a small corps of managers.[3]  Furthermore, the number of

decision makers and the scope of their decision-making ability in relation to performance and

compensation decisions are also dramatically smaller as compared to *Dukes*.

### 2.      Plaintiffs Have Identified Specific, Biased Employment Practices That Discriminate Against Women, Rather Than Just A Culture Of Subjectivity.

Plaintiffs have identified "specific employment practice[s]," *Dukes*, 131 S. Ct. at 2555,

that they challenge as discriminatory.  Plaintiffs have done this in the two ways that the Court

found lacking in *Dukes*.  First, Plaintiffs have alleged that Goldman employs a "company-wide

evaluation method that can be charged with bias."  *Id.* at 2553; FAC ¶ 37 ("Goldman Sachs

employs uniform procedures for evaluating employee performance that systematically underrate

---

[3] *See* http://www.forbes.com/forbes/2009/0316/072_terminated_women_print.html (reporting that 29.4% of 9,244 VPs are women and 16.6% of 1,796 MDs are women); http://money.cnn.com/2008/03/11/news/companies/goldman_women_philanthropy.fortune/index .htm (reporting that 54 out of 383 partners are women).  These figures are company-wide, and include divisions in "the Federation" (non-revenue generating), which employs larger numbers of women than the revenue-generating divisions.  Thus, the size of the class will be substantially smaller than these figures.

female professionals relative to their similarly situated male peers."). The class claims are based on specific, unvalidated mechanisms commonly employed by Goldman to allocate employee ranking, whose effects Goldman magnifies by its reliance on that ranking to allocate other terms and conditions of employment. *See* FAC, ¶¶ 41, 43. Specifically, Goldman's performance evaluation systems systematically underrate female employees relative to male employees through means such as implementing a forced ranking system and allowing managers to improperly influence evaluator lists. *See* FAC, ¶¶ 37-42. These practices directly impact women's compensation and promotion prospects at Goldman Sachs. *See* FAC, ¶ 43.

Second, unlike in the facts described by the *Dukes* majority, Plaintiffs here have alleged that the subjective decision-making in this case operates within these specific common mechanisms. *See*, *e.g.*, FAC ¶ 40 ("Goldman Sachs managers are able to unduly influence the 360-degree evaluation process by requesting or requiring which superior, co-workers, and subordinates will evaluate an employee."). Therefore, Plaintiffs have "identified a common mode of exercising discretion that pervades the entire company." *Dukes*, 131 S. Ct. at 2554.

Notably, several courts have already rejected defendants' attempts to use *Dukes* as a free pass against certification or liability, regardless of differences between *Dukes* and the cases at hand. *See*, *e.g.*, *United States v. City of N.Y.* ("*Vulcan Society II*"), No. 07 Civ. 2076, 2011 WL 2680474 (E.D.N.Y. July 8, 2011) (denying motion to decertify Title VII liability-phase class in light of *Dukes*); *Ellis v. Costco Wholesale Corp.*, No. 07-15838, 2011 WL 4336668 (9th Cir. Sept. 16, 2011) (rejecting argument that Title VII gender discrimination case is not certifiable post-*Dukes*, and remanding to the district court for further proceedings); *Ramos v. SimplexGrinnel LP*, No. 07 Civ. 981, 2011 WL 2471584 (E.D.N.Y. June 21, 2011) (certifying a prevailing wage class action and finding that *Dukes* did not warrant a deviation of the standard

application of the Rule 23 criteria to the specific facts of the case); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 002140, 2011 WL 4336664 (S.D.N.Y. Sept. 15, 2011) (denying defendants' motion to decertify in light of *Dukes* and rejecting argument that *Dukes* changed the standards for class certification); *Nobles v. State Farm Mutual Auto. Ins. Co.*, No. 10 Civ. 04175, 2011 WL 2471584 (W.D. Miss. Aug. 25, 2011) (certifying wage and hour Rule 23 class action and FLSA collective action and distinguishing *Dukes*).

As these courts have recognized, *Dukes* does not warrant a full-scale preemptive rejection of well-pleaded class claims without even the benefit of a full record.  Goldman Sachs is entitled to have, and at the appropriate time will have, a full and fair opportunity to oppose class certification.  However, it must defend itself in the context of the record of this case, not the record in *Dukes*.

**C.  Plaintiffs' Class Allegations Satisfy Rule 23 And The Certification Standards Clarified In *Dukes*.**

**1.  Plaintiffs Allege Common Questions And Answers That Satisfy Rule 23(a)(2).**

Contrary to Defendants' claims, this case meets the commonality standard set out by the Supreme Court in *Dukes*.  Plaintiffs will demonstrate that there are questions of law or fact common to the class, and that these questions "will generate common answers apt to drive the resolution of the litigation."  *Dukes*, 131 S. Ct. at 2551.  The common questions set forth in Plaintiffs' Amended Complaint include:

(a)  whether Goldman Sachs' performance evaluation system discriminates against women;

(b)  whether Goldman Sachs' compensation system discriminates against women; and

(c)  whether Goldman Sachs' promotion system discriminates against women.

FAC ¶ 62.  Significantly, Plaintiffs' common contentions – that these systems discriminate against or further discrimination against women – are capable of classwide resolution, "which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

For example, Plaintiffs contend that Goldman Sachs' performance evaluation system disparately impacts female employees.[4]  This contention is capable of classwide resolution.  The trier of fact must decide whether Goldman's performance evaluation has a disparate impact on female employees.  That determination will apply to all class members' claims, and therefore "will resolve an issue that is central to the validity of each one of the claims in one stroke."  Plaintiffs' common contentions regarding the disparate impact of the compensation and promotion systems can likewise be productively resolved on a classwide basis in the same manner.

Defendants' arguments against Rule 23(a)(2) commonality are unavailing for two reasons, both of which underscore why Defendants' motion to strike is premature.  First, Plaintiffs have not relied solely on unchecked subjectivity as a basis for class certification, but have challenged the very types of employment practices identified in *Dukes* as susceptible of classwide treatment.  *See* § II.B.2., *supra*; *Dukes*, 131 S. Ct. at 2553 (finding that a "testing procedure or other company-wide evaluation method that can be charged with bias" would satisfy the commonality and typicality requirements of Rule 23(a)).

Second, to the extent that Plaintiffs' allegations do involve subjective employment decisions, they are still actionable.  Defendants widely overreach when they claim that "[t]he

---

[4] *See* FAC ¶ 40 ("Goldman Sachs' dual-track performance evaluation procedures systematically underrate female employees relative to male employees – that is, women, on average, receive lower 360-degree review scores, more negative reviews, and lower quartile rankings than men in similar positions who have delivered similar or worse objective performance.")

lesson of *Dukes* is that, as a matter of law, the practice of ceding to individual managers the discretion to make employment decisions cannot satisfy Rule 23(a)(2), even if that practice coexists with an apparent gender-based disparity."  Defs' Mot. 9.  To the contrary, *Dukes* reaffirmed the Supreme Court's consistent position that "an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination." *Dukes*, 131 S. Ct. at 2554 (citing *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 989 (1988)).  Instead, the lesson of *Dukes* is that the plaintiffs there did not "identify a common mode of exercising discretion that pervades the entire company."  *Id.* at 2554-55.  But, as described above, this case is not *Dukes*.  Plaintiffs here have alleged a common mode of exercising discretion,[5] and are entitled to discover the evidence to prove it.

### 2.   Plaintiffs Have Standing To Seek Injunctive Relief, And Will Satisfy Rule 23(b)(2).

Defendants' motion argues that Plaintiffs are ineligible for Rule 23(b)(2) certification for two reasons: first, Plaintiffs lack standing to seek injunctive relief, and second, Rule 23(c)(4) cannot be used to certify a liability-phase (b)(2) class in Title VII cases.  They are mistaken as to both.

### a.   Plaintiffs have standing to seek injunctive relief.

Defendants overstate their case when they assert that former employees, categorically, lack standing to seek injunctive relief in discrimination cases.  Defs' Mot. 12.  Standing depends

---

[5] *See*, *e.g.*, FAC ¶ 51 ("The promotion process is tightly controlled among a small corps of managers whose decisions are based on inaccurate and unvalidated performance measures using a tap on the shoulder system."); ¶ 56 ("Goldman Sachs managers disproportionately select male professionals to be paired with more senior mentors, to receive hands-on training, and to be included in social events where they have access to or visibility among senior management . . . These employment practices are the product of common policies and practices tied to discriminatory performance measures that systematically disadvantage the putative class."); ¶ 46 ("[M]anagers have discretion to pay one employee in a given quartile more than another employee in that same quartile, without reliance on legitimate, validated rationales.").

938934.3

on the facts of the case.  Former employees may have standing to seek injunctive relief if they can show "an injury in fact," and that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs here can make such a showing.  Courts in this circuit have held that former employees may pursue injunctive relief on behalf of a class because they might be re-employed by the defendant in the future.  *See Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280, 286 (S.D.N.Y. 1996) ("[Plaintiff] may wish to return to Glorious Food someday, thus making injunctive relief appropriate for her."); *Duling v. Gristede's Operating Corp*., 267 F.R.D. 86, 99 (S.D.N.Y. 2010) ("[T]he fact that representatives are no longer employed by Gristede's does not make them inadequate, as the relief they seek includes injunctive relief that would open avenues to a greater range of entry level jobs and prospects for promotion should they decide to return to work for Gristede's."); *see also Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (former employee may have standing for prospective injunctive relief if coupled with a "clear intention of seeking reinstatement"); *Levin v. Madigan*, 697 F. Supp. 2d 958, 975 (N.D. Ill. 2010) (where "Plaintiff requests reinstatement, and . . . Plaintiff's employment is reinstated, he may indeed be subject to the same allegedly discriminatory policy that he challenges in this lawsuit," so "[t]o the extent that Plaintiff seeks an injunction requiring Defendants to cease engaging in sex or age discrimination, such relief would remedy a harm that Plaintiff is likely to suffer again").

Furthermore, adopting Goldman Sachs' position would reward bad conduct – Defendants could avoid liability by firing named plaintiffs for discriminatory reasons and then asserting a lack of standing to vindicate class rights.  Named Plaintiffs Lisa Parisi and Shanna Orlich alleged

-10-

that they were terminated in violation of Title VII, and Cristina Chen-Oster alleged that she was constructively discharged.  FAC ¶¶ 99, 110, 131.  The Plaintiffs specifically requested reinstatement in their prayer for relief.  *Id.*, ¶ 191(j).  Thus, they have alleged more than a mere speculation that they might want to return to Goldman Sachs someday.  Likewise, given the small universe of professional jobs and the rapid consolidation of companies in the financial services sector, it is likely that the Plaintiffs will wish to work for Goldman or a successor company in the future or that their subsequent employers may be acquired by Goldman Sachs. For these reasons, Plaintiffs have a real interest in ensuring that Goldman Sachs is free from discrimination.

Plaintiffs also have standing by virtue of the fact that their personal interests will be affected by a favorable (or unfavorable) decision in this case, regardless of whether they ever seek employment at Goldman Sachs again.  Goldman Sachs is an industry leader, and a favorable decision would have repercussions throughout the industry, where named Plaintiffs Parisi and Chen-Oster are currently employed.  Thus, the named Plaintiffs have a vested interest in the subject matter of the litigation, despite the fact that they do not currently work for Goldman Sachs.  *See Weigmann*, 169 F.R.D. at 286; *Duling*, 267 F.R.D. at 99.[6] Moreover, the named Plaintiffs here have stepped forward because they care about correcting the injustices they experienced at Goldman Sachs, and making Wall Street a level playing field for women.  The court in *Weigmann* found this persuasive.  "[B]y coming forth as the sole named plaintiff [she] has demonstrated a desire to have the courts rectify the asserted injustices at Glorious Food

---

[6] The passing reference in *Dukes* (131 S. Ct. at 2559-60) to the Ninth Circuit's holding that former Wal-Mart employees lacked standing to seek injunctive relief *in that case* does not establish a *per se* rule that former employees *never* have standing to pursue injunctive relief under Title VII; that legal issue was not presented to or decided by the Supreme Court, but was merely cited as part of the history of the Wal-Mart case.

regardless of whether she ever returns to work there." 169 F.R.D. at 286. This same factor

supports Plaintiffs' interest in obtaining injunctive relief here.

Plaintiffs' interest in correcting the injustices they experienced at Goldman Sachs is

supported by the scope of injunctive relief authorized by Congress under Title VII, which

permits the Court to "enjoin [defendants from] engaging in [an] unlawful employment practice,

and *order such affirmative action as may be appropriate*" because the defendant *"has" engaged*

or "is" engaging in "an unlawful employment practice charged in the complaint." 42 U.S.C.

2000e-5(g)(1) (emphasis added). Indeed, as the Supreme Court has explained, where a violation

of Title VII has been found "[t]he (district) court has not merely the power *but the duty* to render

a decree which will so far as possible eliminate the discriminatory effects of the past as well as

bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)

(emphasis added).

> **b.** **Plaintiffs may seek certification of Defendants' liability for
> disparate impact and disparate treatment violations under
> Rule 23(b)(2).**

In *Dukes*, the Supreme Court held "that individualized monetary claims belong in Rule

23(b)(3)." 131 S. Ct. at 2558. Based on this ruling, Defendants assert that any Title VII case in

which plaintiffs seek damages and injunctive relief is ineligible for Rule 23(b)(2) certification.

Defs' Mot. 10. This is simply not the law. In fact, Title VII cases remain ideal candidates for

Rule 23(b)(2) injunctive and declaratory relief because the court can resolve the myriad common

issues in one proceeding and leave only the individualized issues for additional proceedings, as

established in *Int'l B'hd of Teamsters v. United States*, 431 U.S. 324 (1977).

The *Teamsters* decision set forth a framework for litigating Title VII pattern-and-practice

cases, which *Dukes* affirmed. *Dukes*, 131 S. Ct. at 2561. At the initial liability stage of the case,

the plaintiffs must establish a prima-facie case of discrimination. *Teamsters*, 431 U.S. at 360. If

938934.3

the employer fails to defeat the prima facie case by showing that plaintiffs' evidence is inaccurate or insignificant, the court may conclude that a violation has occurred and grant declaratory and injunctive relief. *Id.* at 361 ("Without any further evidence from the [plaintiff], a court's finding of [liability under Title VII] justifies an award of prospective relief."); *United States v. Brennan*, No. 08-5171, 2011 WL 1679850, at *18 (2d Cir. 2011); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 161 (2d Cir. 2001); *Rios v. Enter. Asso. Steamfitters Local 638*, 501 F.2d 622, 629 (2d Cir. 1974); *EEOC v. Sterling Jewelers Inc.*, 08 Civ. 706A, 2011 WL 1560976, at *3 (W.D.N.Y. 2011); *United States v City of N.Y.*, No. 07 Civ. 2067, 2010 WL 3709350, at *4 (E.D.N.Y. Sept. 13, 2010). Plaintiffs then can move to the remedial phase of the case with a presumption of discrimination in their favor. *Teamsters*, 431 U.S. at 361. Defendants are entitled to rebut this presumption with evidence supporting individual defenses, but the remedy phase proceedings are made far simpler because the liability question has already been decided. *Id.* "[A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. *Id.*; *see also Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 772 (1976) ("[T]he burden will be upon [the defendant] to prove that individuals . . . were not in fact victims of hiring discrimination."); *id.* at 773 n.32 (defendant may attempt to meet its burden by demonstrating "the individual's lack of qualification for the . . . position[] under nondiscriminatory standards [a]ctually applied by [defendant] to individuals who were . . . hired"); *Robinson*, 267 F.3d at 161-62; *In re Emp't Discrimination Litig.,* 198 F.3d 1305, 1315 (11th Cir. 1999).

Defendants appear to take the position that Title VII cases are ineligible for liability issue certification because Title VII grants defendants a right to raise individual affirmative defenses.

However, following *Dukes*, one court took just such an approach in certifying the liability questions of a Title VII case under 23(b)(2) and 23(c)(4).[7]  *Vulcan Society II*, 2011 WL 2680474. In *Vulcan Society II*, the court found that "[i]ssue certification of bifurcated liability-phase questions is fully consistent with *Wal-Mart's* careful attention to the distinct procedural protections attending (b)(2) and (b)(3)" because "[i]ndividual issues arise in disparate impact and pattern-or-practice disparate treatment cases only if the class establishes the employer's liability and the litigation proceeds to the remedial phase." *Id.* at *10.[8]  The court relied on the Advisory Committee Notes to Rule 23(c)(4), which explicitly suggest that one use of the Rule would be to separate the issue of liability from damages.  *Id.* at *9 (citing Fed. R. Civ. P. 23(c)(4) adv. comm. n. to 1966 amend.).  The court further rejected defendants' arguments that, in the wake of *Dukes*, any Title VII class seeking monetary damages is *per se* ineligible for (b)(2) certification. "[E]ven where class plaintiffs file a complaint seeking non-incidental individual monetary relief, the classwide liability questions raised by their disparate impact and pattern-or-practice disparate treatment claims are properly certified under Rule 23(b)(2) and (c)(4)." *Id.* at *11.

As *Vulcan Society II* illustrates, there is nothing special about Title VII that forecloses liability issue certification.  To the contrary, a liability phase determination of the common question whether Defendants' practice violates Title VII is perfectly suited for Rule 23(b)(2)

---

[7] Rule 23(c)(4) provides for certification of particular issues, when appropriate.  Fed. R. Civ. P. 23(c)(4).  Notably, *Dukes* did not address issue certification under Rule 23(c), because it found that the plaintiffs failed to satisfy Rule 23(a) requirements.

[8] Defendants' attempt to distinguish *Vulcan Society II* on the basis that it involved a "pass-fail" examination misses the point.  Similar to plaintiffs in *Vulcan Society* who alleged that applicants who failed the allegedly discriminatory examination were harmed, Plaintiffs here allege that female employees subjected to Defendants' performance evaluation, compensation, and promotion practices are harmed.  The point is that there is an allegedly discriminatory employment practice that is common to all class members – the specific type of practice at issue in *Vulcan Society* was not the basis of the court's decision and was not discussed at all in the legal analysis.

declaratory and injunctive relief.  Even where plaintiffs in a Title VII case seek damages, the

common liability issue can be decided under Rule(b)(2) and the individualized damages

questions can be reserved for Rule 23(b)(3) or (c)(4).

Issue certification under Rule 23(c)(4) is not a novel approach in this Circuit, and *Vulcan*

*Society II* is not an outlier case.  *See*, *e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219,

225 (2d Cir. 2006) (holding that courts may employ this provision to certify a class on a

particular issue, where "the action as a whole does not satisfy Rule 23(b)(3)'s predominance

requirement."); *Robinson*, 267 F.3d at 167 ("District courts should take full advantage of [Rule

23(c)(4)] to certify separate issues in order to reduce the range of disputed issues in complex

litigation and achieve judicial efficiencies.").[9]  Second Circuit precedent concerning the ability to

bifurcate class actions and the remedial stage of bifurcated class actions is "undisturbed by *Wal–*

*Mart*, and remains the law in this Circuit."  *Vulcan Society II*, 2011 WL 2680474, at *8; *Jermyn*,

No. 08 Civ. 214 at *13 ("the abrogation of *Robinson* does not affect certification" of a bifurcated

class action).

*Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) is particularly

instructive.  In *Charrons*, the court used Rule 23(c)(4) to certify a liability issue class of tenants

suing their landlord for RICO violations.  Though the court found that individualized issues of

injury and causation would preclude Rule 23(b)(3) certification, it found that "[i]ssue

certification is especially appropriate in a RICO case like this one, where Defendants' liability

_____

[9] Defendants are incorrect that "nothing of substance remains of *Robinson* after *Dukes*."  Defs'
Mot. 16.  As the court found in *Vulcan Society II*, "*Robinson's* holding requiring Rule 23(b)(2)
certification of the liability phase of pattern-or-practice disparate treatment cases, is, however,
technically undisturbed by *Wal-Mart* and remains the law in this Circuit.  *Wal-Mart* interpreted
only Rule 23(a)(2) and (b). The Supreme Court did not have occasion to decide whether a district
court may order (b)(2) certification, under Rule 23(c)(4)[.]"  2011 WL 2680474, at *8.
Moreover, this approach "is fully consistent with Wal-Mart's careful attention to the distinct
procedural protections attending (b)(2) and (b)(3)."  *Id.* at *10.

can be determined once, on a class-wide basis, through common evidence." *Id.* at 242.  As with Title VII, the well-established RICO jurisprudence has long held that the question whether RICO was violated (liability) can be separated from the question whether particular intended victims were injured (damages).  *Id.*  Therefore, "[c]ertifying a liability class of damages-seeking tenants will materially advance this litigation by resolving, for all such tenants, the disputed issues of whether Defendants' alleged scheme violated RICO[.]"  *Id.*  This analysis applies with equal force to Title VII cases like this one: certifying a liability class of damages-seeking employees will materially advance this litigation by resolving, for all such employees, the disputed issue of whether Defendants' alleged practices violated Title VII.

Issue certification of bifurcated liability-phase questions is clearly available here.

### c.   <u>Bifurcated treatment of liability issues does not implicate the Seventh Amendment.</u>

Defendants' suggestion that bifurcated treatment of liability issues risks violating the Seventh Amendment is a red herring.  It is typical in Title VII cases to bifurcate liability from damages.  *See Teamsters*, 431 U.S. 324; *Robinson*, 267 F.3d at 161-62.  In such cases, the jury at each phase of the proceedings examines separate issues.  For example, in this case, a liability phase jury would decide whether Goldman's classwide policies discriminate.  The remedial phase jury would decide whether Goldman has shown a non-discriminatory reason for the failure to promote or other adverse employment action of specific class members.  It is simply not the case that a second jury would "unavoidably be forced to reexamine the facts [] already examined by the first jury."  Defs' Mot. 18.

Defendants' only support for this proposition is *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999).  *Blyden*, however, is factually a world apart from this case, and in fact states that issues may be divided and tried separately pursuant to Rule 23(c)(4) as long as any given issue is not

tried by different, successive juries.  *Id.* at 268.  The Seventh Amendment risk in *Blyden* arose because the district court judge erred by issuing a flawed bifurcation order and flawed jury instructions.  *Id.*  Plaintiff prison inmates brought suit against prison officials for the violent reprisals they suffered after an inmate uprising was quelled.  *Id.* at 257.  The judge bifurcated the trial into two phases: a liability phase to determine whether "reprisals" had occurred and whether defendants caused such "reprisals," and a damages phase to determine the extent of harm each particular inmate had suffered.  *Id.* at 259.  However, things went badly wrong when the verdict sheet in the liability phase was so poorly worded that it "could not establish liability of any defendants to either the class or to any individual plaintiff."  *Id.* at 265-66.  Compounding the problem, the judge allowed one defendant to contest his liability – in theory already determined at the liability phase – during damages proceedings, and moreover asked the damages juries to decide which specific acts constituted reprisals.  *Id.* at 267.  In short, *Blyden* is an example of case mismanagement, and does not stand for the proposition that bifurcation of liability from remedies – typical in Title VII cases under *Teamsters* – will "unavoidably" violate the Seventh Amendment.

It is premature at this early stage, before a trial plan has even been developed, to determine whether the Reexamination Clause of the Seventh Amendment would be violated in this case.  *Ellis*, 2011 WL 4336668, at *15 ("[b]ecause the district court has not actually adopted a trial plan yet . . . it is premature for us to address these [constitutional] arguments now"); *George v. Gen. Motors Corp.*, No. 7:05 Civ. 1482, 2007 WL 2973589, at *2 (N.D.N.Y. Oct. 9, 2007) (Seventh Amendment "problems noted by Defendants are raised prematurely" at complaint stage; "[t]hey are much better addressed upon the motion for certification").  In any event, it is not inherently a violation of the Reexamination Clause to try Title VII claims together

as a class by bifurcating liability and individual relief.  *See, e.g., Robinson*, 267 F.3d at 169 n. 13

(rejecting Reexamination Clause argument);  *Allen v. Int'l Truck and Engine Corp*., 358 F.3d

469, 472 (7th Cir. 2004) ("[t]hus a class proceeding for equitable relief vindicates the seventh

amendment as fully as do individual trials, is no more complex than individual trials, yet

produces benefits compared with the one-person-at-a-time paradigm").

 At the appropriate time, Plaintiffs will present the Court with a trial plan illustrating how

this case may be properly handled.

### 3. Plaintiffs Sufficiently Allege Satisfaction Of Rule 23(b)(3)'s Predominance Standard For All Forms Of Monetary Relief.

 Under the standard set forth in *Dukes*, claims for individual monetary relief generally

may not be certified under Rule 23(b)(2), "at least where … the monetary relief is not incidental

to the injunctive or declaratory relief."  *Dukes*, 131 S. Ct. 2557.  However, claims for monetary

relief may still be satisfied under Rule 23(b)(3) when "questions of law or fact common to class

members predominate over any questions affecting only individual members, and a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id*.

at 2558.  Plaintiffs will seek classwide relief in the form of back pay and compensatory and

punitive damages, and will seek appropriate certification under Rule 23(b)(3).

 Here, common issues, including Defendants' common employment practices,

predominate over issues affecting individuals.  Defendants' common conduct also gives rise to a

common claim for punitive damages.  Discovery will show that Defendants have a general

policy of discrimination against women, and that Defendants' core group of executives and

managers adopted the classwide employment practices that are charged with bias.  Plaintiffs also

intend to submit proof in the form of statistical and non-statistical expert reports that will be

common to the class and will productively advance the trial plan.  Under the *Teamsters* trial plan,

class members' liability claims predominate over individual issues.  Individual issues raised by Defendants can be addressed in the remedial phase, so only victims of discrimination will obtain monetary relief.  Superiority can be satisfied.

At this stage, there is no basis for concluding that class certification can not be obtained.

**III.    Defendants' Motion For Partial Summary Judgment As To Plaintiffs' Disparate Impact Claim Should Be Denied.**

To pursue a Title VII claim in federal court, a plaintiff must first exhaust the claim by filing a timely complaint with the EEOC.  *Jenkins v. N.Y. City Transit Auth.*, 646 F. Supp. 2d 464, 470 (S.D.N.Y. 2009).  Plaintiffs are entitled to litigate claims "reasonably related to the allegations in the complaint filed with the EEOC."  *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980).  A claim is reasonably related to allegations in an EEOC charge where the conduct complained of "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted); *see also Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992); *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir. 1990).  "It is the substance of the charge and not its label that controls."  *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (internal quotation marks omitted).

In case after case in this Circuit, courts have determined that a disparate impact claim is exhausted even where an EEOC charge does not expressly articulate a disparate impact theory, provided the charge includes facts that are reasonably related to a disparate impact claim.  *See Gomes*, 964 F.2d at 1334-35 (plaintiff's EEOC charge alleging that he was not promoted despite being qualified and referring to a company policy governing promotions was sufficient to exhaust disparate impact claim); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (concluding that EEOC charge alleging that plaintiff was not promoted due to her race properly

exhausted disparate impact claim); *Jenkins*, 646 F. Supp. 2d at 470 ("Even though the plaintiff

may not have used the term 'disparate impact' in her charge, it is the substance of the charge and

not its label that controls.") (internal quotations, alteration, and citation omitted); *Maniatas v.*

*N.Y. Hosp.-Cornell Med. Ctr.*, 58 F. Supp. 2d 221, 227 (S.D.N.Y. 1999) (considering disparate

impact claim not asserted in EEOC charge because it was "arguably" reasonably related to the

intentional discrimination claim in the charge).

As the *Gomes* Court explained, the key inquiry is not whether the EEOC charge

articulates a disparate impact theory, but whether it includes the basic *facts* underlying such a

theory. *Gomes*, 964 F.2d at 1335 (concluding that where the disparate impact claim "relat[es] to

the precise incident challenged in the EEOC complaint," the claim is not barred by the

exhaustion rule); *see also id.* (favorably citing principle that "[d]isparate impact and disparate

treatment theories are rightly treated simply as alternative theories upon which a right to relief

under Title VII may be established in a given case") (quoting *Wright v. Nat'l Archives &*

*Records Serv.*, 609 F.2d 702, 711 (4th Cir. 1979) (en banc)).  Furthermore, even if the factual

allegations in an EEOC complaint "most naturally support[] a claim of intentional

discrimination," such allegations may still reasonably relate to a claim of disparate impact for the

purposes of Title VII exhaustion. *Gomes*, 964 F.2d at 1334-35.

Citing *Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (*aff'd*,

411 F.3d 69 (2d Cir. 2005)), Defendants argue that an EEOC charge must identify particular

facially neutral policies in order for plaintiffs to later challenge those policies on a disparate

impact theory.  Notwithstanding the outlier district court decision in *Woodman*, however, the law

in this Circuit does not require plaintiffs to discuss specific policies in their EEOC charge in

order to later challenge those policies on disparate impact grounds.  Instead, a court may deem a

disparate impact claim exhausted where the charge is limited to a description of the factual incidents underlying the claim.  In *Brown*, for example, the Second Circuit explained that the plaintiff's EEOC charge stated that "despite repeated requests to be promoted, [the defendant] had refused to promote [the plaintiff] and had instead promoted dozens of non-minority employees and 'scarcely any' minorities."  *Brown*, 163 F.3d at 708.  According to the court, these allegations were sufficient for Title VII exhaustion purposes, because "we would expect that the EEOC, in investigating the complaint, would have assessed Coach's promotion policies and their effect on minority employees."  *Id.* at 712.  Though the opinion does not contain a full recitation of the allegations in the EEOC charge, it clearly does not hold that the charge must pinpoint particular policies alleged to have a disparate impact.[10]

Even if the *Woodman* standard were controlling, the allegations in Plaintiffs' EEOC charges safely exceed it.  Plaintiffs' EEOC charges expressly identify facially neutral compensation and promotion policies that result in discrimination against women at Goldman Sachs.  *See* Parisi EEOC Charge ¶¶ 4-7, 14, Ex. C to Declaration of Adam T. Klein in Opposition to Defendants' Motion to for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII ("Klein Decl."); Orlich EEOC Charge ¶¶ 4-12, 18, 21, Ex. B to Klein Decl.; *see also* Chen-Oster EEOC Charge ¶¶ 2, 5, 8, Ex. A to Klein Decl.  For example,

---

[10] Defendants attempt to distinguish *Brown* on factual grounds by arguing that the EEOC charge in that case "alleged that as a matter of policy, the defendant did not post (or at least rarely posted) notice of position vacancies whenever the position at issue did not require a college degree; the plaintiff alleged she had been affected by this facially neutral rule."  Defs' Mot. at 25 n.33.  But the posting-policy allegations Defendants highlight in their brief are not taken from the EEOC charge in *Brown*; they are outlined in the court's discussion of the Second Amended Complaint in *Brown*, and there is no indication at all that the charge referenced that policy.  *See Brown*, 163 F.3d at 710.  In short, Defendants' effort to distinguish *Brown* on factual grounds fails.

Parisi's charge alleges that Defendants' promotion policies disadvantaged her because she is a woman, explaining:

> There is no clear path or any objective criteria for promotion to partner at Goldman. Rather, to receive a promotion from managing director to partner at Goldman, a current partner must nominate you and the company must approve the promotion.

Parisi EEOC Charge ¶ 7, Ex. C to Klein Decl. Though the words "facially neutral" or "disparate impact" are not used, the charge clearly describes a facially neutral promotion policy – it requires that "a current partner must nominate you and the company must approve the promotion" – that is alleged to be discriminatory in its effect upon Parisi and similarly situated women at the firm.

With respect to compensation, the charges identify the performance review and account assignment policies – both facially neutral processes – as contributing to discriminatory effects for women. *See* Chen-Oster EEOC Charge ¶ 5, Ex. A to Klein Decl. (citing discriminatory effects of performance review and account assignment processes); Parisi EEOC Charge ¶ 5, Ex. C to Klein Decl. (explaining that manager advised that her compensation was lowered due to the results of the 360 review process).

Another policy the Charges describe as facially neutral but nonetheless discriminatory in impact upon female employees is the policy of employing "unvalidated criteria in evaluating the distribution of benefits and opportunities, including base compensation, bonus amounts, promotions, and other terms and conditions of employment." Parisi EEOC Charge ¶ 14, Ex. C to Klein Decl.; Orlich EEOC Charge ¶ 21, Ex. B to Klein Decl.

These and other detailed allegations in Plaintiffs' EEOC charges contain the "factual underpinnings" of Plaintiffs' disparate impact claim. *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (gender discrimination claim exhausted where "factual underpinnings" of that claim were in EEOC charge). It would be reasonable to expect that an

investigation arising out of these allegations would inquire into whether compensation and promotion policies at Goldman Sachs have a disparate impact on women.

Defendants contend, however, that they lacked notice that Plaintiffs were complaining in their EEOC charges that policies at Goldman Sachs had a disparate impact on them.  *See* Defs' Mot. at 22 ("None of the charges filed by Plaintiffs mentions any practice or facially neutral rule that might operate to the detriment of women.").  As noted, however, Plaintiffs' EEOC charges identify facially neutral policies that have a discriminatory impact on women, including the policy of basing promotion decisions on partner nominations, the performance review policy, the account assignment policy, and the policy of using unvalidated criteria to evaluate compensation and promotion decisions.  That Plaintiffs' charges also include references to instances of intentional discrimination they suffered at Goldman Sachs does not negate the fact that the charges support a disparate impact theory of liability.  *See*, *e.g.*, *Gomes*, 964 F.2d at 1334-35 (concluding that EEOC charge supported disparate impact claim even though it "most naturally supports a claim of intentional discrimination").  In contrast to the EEOC charges at issue here, the charge in *Woodman* was limited to allegations that age was a motivating factor in termination decisions; it did not identify a facially neutral policy or practice.  *Id.* at 390.

Defendants cite no authority that supports their attempt to distinguish *Gomes* and *Brown* on the theory that the EEOC's *actual* failure to investigate a claim is dispositive of the exhaustion issue, *see* Defs' Mot. at 24-25, and that theory has been flatly rejected by a host of courts.  *See Chen-Oster v. Goldman Sachs*, No. 10 Civ. 6950, at *8 (S.D.N.Y. Sept. 29, 2011) ("Report and Recommendation") (Dkt. No. 105) (recommending denial of motion to strike Plaintiff Chen-Oster's class allegations and stating that "[i]f a charge gave the EEOC sufficient notice of a claim, the fact that the EEOC thereafter engaged in a narrow investigation, or even

failed to investigate altogether, is immaterial for purposes of judging the scope of the claims that have been exhausted"); *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 403-04 (2008) (discussing ADEA exhaustion and noting "[t]he statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action"); *Schnellbaecher v. Baskin Clothing Co*., 887 F.2d 124, 127 (7th Cir. 1989) ("[A] limited EEOC investigation will not necessarily defeat a complaint where the complaint contains allegations like or reasonably related to the EEOC charge, but which the EEOC failed to investigate.").

Indeed, the *Gomes* Court emphasized that the EEOC "would reasonably have been expected" to investigate a disparate impact theory; it did not inquire as to the scope of the investigation that actually occurred.  *Gomes*, 964 F.2d at 1334.[11]  Even if it were undisputed that the EEOC did not undertake a disparate impact investigation with respect to Plaintiffs' claims, it would not change the fact that Plaintiffs' disparate impact claim is properly exhausted.

Regardless, evidence Defendants submitted related to the scope of the EEOC investigation with regard to Chen-Oster's Charge does not support Defendants' assertion that the EEOC "*never* undertook any disparate *impact* investigation."  *See* Defs' Mot. at 24.  For example, the EEOC's discovery requests related to Chen-Oster's Charge include requests for years' worth of compensation, title, and promotion information regarding employees in Convertible Bond Sales in the United States and London, broken down by sex, that could be equally useful to an investigation of disparate impact and disparate treatment claims.  *See* May

---

[11] Defendants' assertion that the *Gomes* Court was "left to imagine" an investigation that "never was" (*see* Defs' Mot. at 25 n.33) is incorrect.  *See Gomes*, 964 F.2d at 1332 (noting state human rights commission investigated administrative complaints, and EEOC reviewed those investigations).  Likewise, there is no indication in *Brown* as to whether the court in that case had access to a record of investigation, or "was left to speculate as to the course an EEOC investigation *might* have taken," as Defendants contend.

22, 2006 Request for Information ¶¶ 8-9, 16, Ex. C to Rogers Decl. (Dkt. No. 99-4); *see also*

Report and Recommendation at 4, 9 (Dkt. No. 105) (discussing Plaintiff Chen-Oster's discovery

submissions seeking comparative data about male and female employees in several Goldman

Sachs units, and the EEOC's adoption of those requests).  Short of testimony from relevant

EEOC investigators themselves, questions as to the scope of the EEOC's investigations will

remain in dispute.  *See* Plaintiffs' Response to Defendants' Statement of Undisputed Material

Facts Pursuant to Local Civil Rule 56.1 ¶¶ 5, 7, 9, 11.  In any event, the investigation decisions

of – or financially-driven agency limitations on – particular agency personnel do not alter the

fact that the EEOC and Defendants had notice of Plaintiffs' disparate impact claim.

Finally, Defendants' assertion that the charges do not "even so much as hint[] at the

existence of a disparate impact claim" Defs' Mot. at 23, is belied by the fact that Defendants

themselves specifically addressed a disparate impact theory of liability in their responses to

Plaintiffs' Charges.  *See* Position Statement Regarding Orlich Charge at 8, Ex. D to Rogers Decl.

(Dkt. No. 99-5) (asserting that layoff policy had "no disparate impact on women whatsoever"

and discussing the EEOC's method for analyzing disparate impact claims); Position Statement

Regarding Parisi Charge at 8-9, Ex. E to Rogers Decl. (Dkt. No. 99-6) (rebutting notion that

Defendants' facially neutral compensation plan had a disproportionate impact on women by

explaining that 50% of the professional staff who received a year-end bonus in 2008 were

women); Position Statement Regarding Chen-Oster Charge at 3, 5-6, Ex. E. to Klein Decl.

(addressing fairness of the "account assignment process," and the way the compensation policy

affected Chen-Oster and other women in her group).

## IV.   Conclusion

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motion should

be denied in its entirety.

Dated: New York, New York          Respectfully submitted,
      September 29, 2011          By: */s/ Adam T. Klein*_____
                             Adam T. Klein

                             OUTTEN & GOLDEN LLP
                             Adam T. Klein
                             Cara E. Greene
                             Jennifer L. Liu
                             3 Park Avenue, 29th Floor
                             New York, New York 10016
                             Telephone:  (212) 245-1000
                             Facsimile:  (212) 977-4005

                             LIEFF, CABRASER, HEIMANN &
                                BERNSTEIN, LLP
                             Kelly M. Dermody (*admitted pro hac vice*)
                             Anne B. Shaver (*admitted pro hac vice*)
                             Alison M. Stocking (*admitted pro hac vice*)
                             275 Battery Street, 29th Floor
                             San Francisco, CA 94111-3339
                             Telephone:  (415) 956-1000
                             Facsimile:  (415) 956-1008

                             *Attorneys for Plaintiffs and the Putative Class*

938934.3