# OUTTEN & GOLDEN LLP

**MEMO ENDORSED**

Wayne N. Outten
Anne Golden
Adam T. Klein
Laurence S. Moy
Kathleen Peratis
Justin M. Swartz
Jack A. Raisner
Wendi S. Lazar
Carmelyn P. Malalis
Tammy Marzigliano
René S. Roupinian

Allegra L. Fishel
Lewis M. Steel
Nantiya Ruan
Samuel R. Miller
Paul W. Mollica

Delyanne D. Barros
Rachel M. Bien
Katherine Blostein
Molly Brooks
Cara E. Greene
Mariko Hirose
Sonia R. Lin
Jennifer Liu
Seth M. Marnin
Ossai Miazad
Melissa Pierre-Louis
Sandra Pullman
Lauren Schwartzreich
Michael Scimone
Dana Sussman
Juno Turner



*Advocates for Workplace Fairness*

JUN 21 2011

June 21, 2011



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/4/11

**By Hand**
The Hon. James C. Francis
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    ***Chen-Oster, et al. v. Goldman, Sachs & Co., et al.,***
            **No. 10 Civ. 6950 (LBS) (JCF)**

Dear Judge Francis:

      We represent Plaintiffs in the above-captioned gender discrimination putative class action. We write to respond to Defendants' letter dated June 13, 2011 requesting a pre-motion conference with the Court to discuss the scope of discovery.

      Plaintiffs seek discovery regarding the positions of Associate, Vice President, and Extended Managing Director[1] in Goldman Sachs' five revenue-generating divisions for the period July 7, 2000 to the present. This scope has been narrowly tailored to the period of Goldman Sachs' alleged class liability and the range of its challenged policies and practices. This discovery is authorized by Federal Rule of Civil Procedure 26 and is central to class certification and the merits of Plaintiffs' claims.

      Nonetheless, Goldman Sachs attempts to limit its document production obligations on every possible front: (1) time period – by arguing that class discovery should begin on September 15, 2007, 5 years after the start of the liability period; (2) division – by arguing that

---

[1] Full discovery on Extended Managing Directors is not at issue at this time because the parties have voluntarily agreed to stay discovery on the claims of Lisa Parisi, the named Plaintiff who held the position of Extended Managing Director, pending resolution of Goldman Sachs' motion for reconsideration of the Court's order on Goldman Sachs' motion to compel arbitration of Plaintiff Parisi's claims. Plaintiffs are, however, seeking limited discovery as to promotion from Vice President to Extended Managing Director, as that is a claim presented by Cristina Chen-Oster and is not subject to the stay.

3 Park Avenue, 29th Floor New York, NY 10016   Tel 212-245-1000   Fax 212-977-4005
191 Post Road West, Westport, CT 06880   Tel 203-363-7888   Fax 203-363-0333
og@outtengolden.com   www.outtengolden.com

Hon. James C. Francis
June 21, 2011
Page 2 of 7

discovery should be limited to only the Securities Division, even though the same policies and practices that Plaintiffs challenge as discriminatory exist across the other revenue-generating divisions of the firm, the divisions are interconnected, and the employees transfer across divisions; and (3) position – by arguing that discovery should be limited to only certain types of claims of Associates and Vice Presidents, and ignoring that Plaintiff Chen-Oster has asserted a class promotion claim based on the under-promotion of female Vice Presidents to Extended Managing Director. Not one of these limitations has legal support. Accordingly, Plaintiffs oppose Defendants' request for a protective order, and instead seek an order from the Court compelling Goldman Sachs to produce the discovery that Plaintiffs have requested.

**I.     Class Discovery Should Begin On July 7, 2000.**

    **A.     Discovery Beginning Two Years Before The Liability Period Is Relevant To Plaintiffs' Pattern Or Practice Discrimination Claims.**

Goldman Sachs' position that pre-liability discovery is irrelevant and time-barred is simply wrong. Plaintiffs' request for discovery beginning in July 2000, just two years before the start of Defendants' alleged liability to the putative class, is supported by statute and is in fact far narrower than what courts in this Circuit and elsewhere have compelled in other Title VII cases.[2]

As an initial matter, under the Lilly Ledbetter Fair Pay Act ("Fair Pay Act"), back-pay damages for the class compensation discrimination claims begin two years before the filing of the charge. 42 U.S.C. § 2000e-5(e)(3)(B); *see also Russell v. County of Nassau*, 696 F. Supp. 2d 213, 227 (E.D.N.Y. 2010). Discovery beginning two years before the liability period therefore has direct relevance to class damages and should be produced. Moreover, under the Fair Pay Act, Plaintiffs' claims based on discriminatory practices that occurred prior to the charge-filing period but that resulted in pay discrimination during the period are timely. *Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755, 2009 WL 2263795, at *9 (S.D.N.Y. July 29, 2009) (Koeltl, J.); *Gertskis v. N.Y. City Dep't of Health and Mental Hygiene*, 2009 WL 812263, at *4 (S.D.N.Y. Mar. 26, 2009) (Griesa, J.). Discovery relevant to discriminatory compensation decisions and other practices prior to the charge-filing period should therefore also be produced.

Evidence of discriminatory practices beginning before the liability period is also discoverable because it is directly relevant to the existence of such practices during the liability period. Accordingly, in Title VII lawsuits, courts routinely grant requests for discovery beginning several years before the liability period. *See, e.g., James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979) (requests for discovery beginning four years prior to liability period reasonable); *Khan v. Sanofi-Synthelabo, Inc.*, No. 01 Civ. 11423, 2002 WL 31720528, at * 4 (S.D.N.Y. Dec. 3, 2002) (granting discovery three years prior to liability period) (Freeman, Mag.); *EEOC v. Kansas City S. Ry.*, 195 F.R.D. 678, 680 (D. Kan. 2000) (allowing discovery four years prior to alleged discriminatory conduct); *Lyoch v. Anheuser-Busch Cos., Inc.*, 164

---

[2] Notably, Plaintiffs attempted several proposed compromises to this pre-liability date, to no avail.

F.R.D. 62, 67 (E.D. Mo. 1995) (granting discovery four years prior to liability period). Indeed, one court in this Circuit has even granted discovery for a thirty-year period (and twenty-five years prior to the filing of the lawsuit), holding that information pertaining to the defendant's historic practices was relevant to the plaintiffs' pattern or practice discrimination claims. *See Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 42-43 (D. Conn. 2004).

In light of the statutory basis for at least a two-year look-back period and the ample precedent for granting pre-liability discovery for periods far longer than two years, the temporal scope of Plaintiffs' request is wholly reasonable. Goldman Sachs should therefore be compelled to produce discovery beginning two years before July 7, 2002, the beginning of its alleged liability to the putative class.

### B. Defendants' Alleged Liability To The Class Begins On July 7, 2002.

Defendants' alleged liability to the class begins on July 7, 2002 because Chen-Oster's EEOC charge, filed on July 7, 2005, was dually filed that day with the New York City Commission on Human Rights. The dual filing tolled the NYCHRL statute of limitations for the putative class for three years prior to the date of the EEOC filing.

The overwhelming weight of authority in this Circuit holds that an EEOC charge that is dually filed with the New York City Commission on Human Rights tolls the claimant's three-year statute of limitations under the New York City Human Rights Law ("NYCHRL"). *See, e.g., Wilson v. N.Y. City Police Dept.*, No. 09 Civ. 2632, 2011 WL 1215031, at *14 (S.D.N.Y. Feb. 4, 2011) ("[N]umerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under . . . [the] NYCHRL is tolled during the period in which a complaint is filed . . . with the EEOC.") (internal quotations and citation omitted) (Pitman, Mag.), *adopted by* 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011) (Crotty, J.); *Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722, 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) (same) (Sullivan, J.); *Siddiqi v. N.Y. City Health and Hosps. Corp.*, 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008) ("The statute of limitations [under the NYCHRL] is tolled during the period in which a complaint is filed with the EEOC.") (McMahon, J.); *Lee v. Overseas Shipholding Group, Inc.*, No. 00 Civ. 9682, 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001) (same) (Cote, J.); *see also Ritterband v. Hempstead Union Free Sch. Dist.*, No. 06 Civ. 6628, 2008 WL 3887605, at *9 n.9 (E.D.N.Y. Aug. 20, 2008) ("A charge filed with the EEOC should be treated as constructively cross-filed with the NYDHR and the statute of limitations should be tolled during the pendency of a claim filed with the EEOC.") (internal quotations and citations omitted); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (holding that statute of limitations on plaintiff's NYSHRL claims were tolled during pendency of EEOC charge); *Martinez-Tolentino v. Buffalo State Coll.*, 715 N.Y.S.2d 554, 555 (App. Div. 2000) (holding that plaintiff's NYSHRL claim was tolled during pendency of EEOC charge).

Accordingly, Chen-Oster's administrative charge also tolled the NYCHRL statute of limitations for the putative class. *See Sobel v. Yeshiva Univ.*, 477 F. Supp. 1161, 1171 n.17 (S.D.N.Y. 1979) ("[T]he filing of the EEOC complaint served to toll the statute of limitations for

all potential class members relying on the same discriminatory acts or policy as the basis for their rights."); *Hecht v. Coop. for Am. Relief Everywhere, Inc.*, 351 F. Supp. 305, 310 n.9 (S.D.N.Y. 1972) ("[Plaintiff's] filing of charges with the EEOC tolled the statute of limitations for all class members whose claims were not barred at the time of filing.").[3]

Finally, unlike Title VII, the NYCHRL does not require exhaustion of administrative remedies. *Lomako v. N.Y. Inst. of Tech.*, No. 09 Civ. 6066, 2010 WL 1915041, at *7 (S.D.N.Y. 2010) (Baer, J.). This is significant because it means that claims under the NYCHRL are considered to have been tolled on the same date that a charge is filed, but that such claims under the NYCHRL are not constrained by the four corners of the charge itself. As the Second Circuit has recently noted, "under the Local Civil Rights Restoration Act of 2005, . . . analysis of NYCHRL provisions must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's uniquely broad and remedial purposes, which go beyond those of counterpart State or federal civil rights laws." *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks and alterations omitted). Chen-Oster can assert class claims under the NYCHRL without having invoked the NYCHRL or class allegations in her charge. Therefore, Goldman Sachs' argument in its Motion to Strike Plaintiff Chen-Oster's Class Allegations that Chen-Oster cannot assert class claims under the NYCHRL because her EEOC charge did not sufficiently allege class claims is incorrect.

## II. Class Discovery Properly Includes All Revenue-Generating Divisions In Which Goldman Sachs' Challenged Policies And Practices Were Applied.

Discovery on the five revenue-generating divisions of Goldman Sachs is relevant and should be produced because all of these divisions employed the same policies and practices that Plaintiffs challenge as discriminatory.[4] Specifically, Plaintiffs allege that Goldman Sachs'

---

[3] For the same reasons, even if Chen-Oster's charge were held not to have tolled the NYCHRL statute of limitations for members of the putative class because the class allegations were insufficient, the proper scope of class discovery would still begin on January 12, 2005 based on Orlich's EEOC charge. Goldman Sachs concedes that Orlich's EEOC charge, which was filed on January 12, 2010, includes sufficiently pled class allegations. Goldman Sachs' argument that class discovery should not begin until three years before the filing date of the complaint, rather than the date of Orlich's EEOC charge, is without basis in fact or law.

[4] In fact, the scope of business units that Plaintiffs have included in their discovery requests is narrow. Goldman Sachs has six other divisions—Finance, Global Compliance, Human Capital Management, Operations, Services, and Technology—although these divisions do not generate revenues for the firm. Even though Goldman Sachs employs many of the same policies and practices that Plaintiffs challenge as discriminatory in these non-revenue-generating divisions of the firm, Plaintiffs here voluntarily agree to limit the class definition and corresponding scope of discovery to the following five revenue-generating divisions—Securities, Investment Banking, Investment Management, Global Investment Research, and Merchant

policies and practices discriminate against women in: (1) performance evaluations; (2) compensation; (3) promotions; (4) business opportunities; and (5) professional support, including but not limited to administrative support, training, and mentoring. (Compl. ¶ 38, Docket No. 5.) Plaintiffs further allege that these policies and practices, at least as applied to the firm's financial services professionals, are uniform across the entire firm. (Compl. ¶¶ 36-37, 39-59.) For example, all five divisions employ the same 360 degree performance review by which employees are reviewed by a list of their managers, peers, and subordinates, but where managers have authority to add or remove reviewers from a subordinate's list. (Compl. ¶¶ 40-42.) In all five divisions, Goldman Sachs uses the scores from this 360 degree system to produce a forced quartile ranking of all of its financial services professionals, which it then uses to make compensation and promotions decisions. (Compl. ¶¶ 43, 48.) Plaintiffs alleged that these uniform policies and practices, among others, have a discriminatory impact on female financial services professionals across all five revenue-generating divisions of the firm. Goldman Sachs' attempt to limit discovery before Plaintiffs can demonstrate how the positions are similarly situated is premature.

Where, as here, plaintiffs have alleged that the policies they challenge as discriminatory were applied in other business units, courts have granted discovery of those business units even if plaintiffs were never employed within them (and have granted class certification upon evidence of company-wide policies and practices). *See, e.g., Khan*, 2002 WL 31720528, at *4 (granting discovery from other departments of company in which plaintiff never worked, where evidence showed that defendant applied the allegedly discriminatory policy company-wide); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376-77 (N.D.N.Y. 1995) (granting division-wide notice in ADEA case where plaintiffs alleged that the division-wide policy of ranking employees was discriminatory, even though named plaintiffs worked in only one sub-division); *Avagliano v. Sumitomo Shoji Am., Inc.*, 103 F.R.D. 562, 578-79 (S.D.N.Y. 1984) (granting company-wide class certification, even though plaintiffs worked only in one office, where plaintiffs made showing that challenged policy existed in all of defendant's offices); *see also Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. Jun. 23, 2010), *aff'd*, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) (granting company-wide discovery where plaintiff had alleged that defendant's uniform policies and procedures resulted in gender disparities in promotions); *Wynne v. McCormick & Schmick's Seafood Rests., Inc.*, No. 06 Civ. 3153, 2006 WL 3422226, at *1-2 (N.D. Cal. Nov. 28, 2006) (granting motion to compel production of company-wide data and rejecting defendants' attempt to limit discovery to plaintiffs' restaurants); *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613-17 (D. Minn. 2000) (where plaintiffs alleged that the challenged discriminatory policies emanated from the corporate level, granting motion for class certification of class of female technical employees at five television stations, even though named plaintiffs worked only for three of the five stations). As the Second Circuit has recognized, such discovery is relevant because "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees." *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990).

---

Banking/Private Equity. Plaintiffs' attempt to compromise this request further so as to avoid motion practice was unsuccessful.

Unsurprisingly, Goldman Sachs does not cite a single case in support of their argument that discovery should be limited to the smallest business unit in which each Plaintiff worked, even though Plaintiffs have alleged that Goldman Sachs' uniform policies and practices discriminated against women across all of its revenue-generating divisions. Indeed, Goldman Sachs' only apparent rationale for asking the Court to deny discovery on the other revenue-generating divisions of the firm is that such broad discovery in an employment discrimination lawsuit against a securities firm would be "unprecedented." The fact that few such lawsuits have even been filed, however, should not shield Goldman Sachs from producing evidence that is discoverable. As discussed above, in other industries, courts have regularly granted motions to compel discovery of other business units in which plaintiffs did not work where plaintiffs have alleged uniform policies and practices that existed company-wide. The securities industry should be no exception.

Because Plaintiffs have alleged that Goldman Sachs applied the same discriminatory policies and practices in all of its five revenue-generating divisions, discovery from each of these business units is relevant and should be produced.

### III. Defendants Should Produce Discovery Relevant To Chen-Oster's Class-Wide Promotion Claim.

Plaintiffs and Goldman Sachs have already agreed to a temporary stay on discovery relating only to Plaintiff Lisa Parisi's claims—that is, discovery on performance evaluation, compensation, business opportunities, and professional support as they relate to Managing Directors—during the pendency of the motion for reconsideration. However, as Goldman Sachs concedes, Chen-Oster has asserted a class claim based on the promotion (or lack thereof) of female Vice Presidents ("VPs") to Extended Managing Director ("EMD"). At this stage of the case, Plaintiffs do not seek any more discovery than that which is relevant to this class promotion claim. Therefore, to the extent that Goldman Sachs is arguing in their letter that Plaintiffs should not receive discovery relevant to the promotion of VPs to EMD, Plaintiffs object. If, however, they merely ask that the other EMD-specific discovery not go forward at this point, Plaintiffs have already agreed.

However, for the reasons explained above, Plaintiffs do not agree that there is any justification for limiting this discovery to the Securities Division. Additionally, discovery of all information relevant to the promotion of Vice Presidents to Extended Managing Director should be produced (including but not limited to statistical data), not just discovery about the "process" for promoting Vice Presidents.

Respectfully submitted,

Adam T. Klein

cc via email: Kelly M. Dermody, Esq.
Theodore O. Rogers, Jr., Esq.
Barbara B. Brown, Esq.
C. Geoffrey Weirich, Esq.
Zachary D. Fasman, Esq.

10/4/11

Until the ability of plaintiffs Parisi and Chen-Oster to assert class claims is finally determined, discovery shall be limited to the period after January 1, 2007, to the Securities Division, and to the positions of Associate and Vice President. This does not preclude plaintiffs from taking discovery regarding the policies of Goldman Sachs to determine if the same promotion and compensation protocols challenged here are utilized in other divisions and with respect to other levels of employees.

SO ORDERED.

James C. Francis IV
USMJ