UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.<br><br>Defendants. | 10-Civ. 6950 (LBS) (JCF)<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE ALL CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER TITLE VII**

PAUL HASTINGS LLP
75 East 55th Street
New York, NY  10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

*Attorneys for Defendants*
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.

- i -

**TABLE OF CONTENTS**

Page

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE

1. PLAINTIFFS ENJOY NO PREROGATIVE IN JOINING ISSUE ON CLASS QUESTIONS ................................................................................................................ 1

2. *DUKES* CANNOT BE DISTINGUISHED AS PLAINTIFFS CLAIM ............................ 2

3. PLAINTIFFS HAVE NO STANDING TO SEEK INJUNCTIVE RELIEF ..................... 5

4. PIECEMEAL CERTIFICATION IS NOT AVAILABLE TO PLAINTIFFS ................... 7

5. PLAINTIFFS FAILED TO EXHAUST THEIR DISPARATE IMPACT CLAIM .......... 9

CONCLUSION ............................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arch v. Am. Tobacco Co., Inc.*,
   175 F.R.D. 469 (E.D. Pa. 1997)..................................................................................................9

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   2006 WL 3422198 (N.D. Cal. 2006) ...........................................................................................1

*Benner v. Becton Dickinson & Co.*,
   214 F.R.D. 157 (S.D.N.Y. 2003) .............................................................................................8, 9

*Bennett v. Nucor Corp.*,
   2011 WL 4389194 (8th Cir. 2011) ..............................................................................................4

*Blyden v. Mancuso*,
   186 F.2d 252 (2d Cir. 1999)....................................................................................................8, 9

*Cutler v. Perales*,
   128 F.R.D. 39 (S.D.N.Y. 1989) ...................................................................................................6

*Deshawn E. by Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir. 1998).........................................................................................................5

*Dukes v. Wal-Mart Stores, Inc.*,
   222 F.R.D. 137 (N.D. Cal. 2004).................................................................................................3

*Duling v. Gristede's Operating Corp.*,
   267 F.R.D. 86 (S.D.N.Y. 2010) ...................................................................................................6

*Dungan v. The Acad. at Ivy Ridge*,
   249 F.R.D. 413 (N.D.N.Y. 2008), *aff'd*, 344 F. App'x 645 (2d Cir. 2009), *aff'd*, 2009
   WL 2604356 (2d Cir. 2009).........................................................................................................8

*Ellis v. Costco Wholesale Corp.*,
   2011 WL 436668 (9th Cir. 2011) ................................................................................................5

*Fedotov v. Peter T. Roach and Assoc., P.C.*,
   354 F. Supp. 2d 471 (S.D.N.Y. 2005)..........................................................................................1

*Gawry v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 942 (N.D. Ohio 2009).......................................................................................1

*Hohider v. United Parcel Serv., Inc.*,
   574 F.3d 169 (3d Cir. 2009).........................................................................................................7

## **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Katrina Canal Breaches Litig.*,
   401 F. App'x 884 (5th Cir. 2010) ...................................................................................... 1

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
   209 F.R.D. 323 (S.D. N.Y. 2002) ...................................................................................... 9

*In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*,
   2011 WL 3903117 (N.D. Cal. 2011) ................................................................................. 4

*Jimenez v. Allstate Indem. Co.*,
   2010 WL 3623176 (E.D. Mich. 2010) ............................................................................... 1

*Kasalo v. Harris & Harris, Ltd.*,
   2011 WL 3800124 (7th Cir. 2011) .................................................................................... 1

*Kennedy v. Unumprovident Corp.*,
   50 F. App'x 354 (9th Cir. 2002) ........................................................................................ 1

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................................... 6

*Mansfield v. Midland Funding, LLC*,
   2011 WL 1212939 (S.D. Cal. 2011) .................................................................................. 2

*Marshall v. Fed. Exp.*,
   130 F.3d 1095 (D.C. Cir. 1997) ....................................................................................... 10

*McClain v. Lufkin Indus., Inc.*,
   519 F.3d 264 (5th Cir. 2008) ........................................................................................... 10

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) .......................................................................................... 7, 8

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   No. 05 C 6583 (N.D. Ill. 2011) .......................................................................................... 4

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ........................................................................................................... 9

*Pacheco v. Mineta*,
   448 F.3d 783 (5th Cir. 2006) ........................................................................................... 10

*Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*,
   478 F.3d 494 (2d Cir. 2007) .............................................................................................. 5

## **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Rehberger v. Honeywell Int'l, Inc.*,
   2011 WL 780681 (M.D. Tenn. 2011) ...................................................................................1

*Reinhard v. Fairfield Maxwell, Ltd.*,
   707 F.2d 697 (2d Cir. 1983) .................................................................................................9

*Rodriguez v. Nat'l City Bank*,
   2011 WL 4018028 (E.D. Pa. 2011) .....................................................................................4

*Schilling v. Kenton Cnty, Ky.*,
   2011 WL 293759 (E.D. Ky. 2011) ......................................................................................2

*Summers v. Earth Island Inst.*,
   555 U.S. 488, 129 S. Ct. 1142 (2009) ...............................................................................6, 7

*Tolliver v. Xerox Corp.*,
   918 F.2d 1052 (2d Cir. 1990) ...............................................................................................9

*United States v. Brennan*,
   650 F.3d 65 (2d Cir. 2011) .................................................................................................10

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
   454 U.S. 464 (U.S. 1982) ....................................................................................................7

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ...............................................................................................1

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................................ passim

*Weigmann v. Glorious Food, Inc.*,
   169 F.R.D. 280 (S.D.N.Y. 1996) .........................................................................................6

*Woodman v. WWOR-TV*,
   293 F. Supp. 2d 381 (S.D.N.Y. 2003) ...............................................................................10

### OTHER AUTHORITIES

1 *McLaughlin on Class Actions*, § 4:43 (7th ed) ........................................................................8

1. **<u>Plaintiffs enjoy no prerogative in joining issue on class questions.</u>**  Plaintiffs believe that "[w]ithin this Circuit" class plaintiffs possess an inviolable right to be the moving party on the question of class certification and that a defense motion to strike class allegations will always be premature if it precedes discovery and is premised on Rule 23 grounds.  This is wrong.  Plaintiffs cite no Circuit authority for this proposition[1] and are not able to point to any language in the Rule that might mandate that result.  In fact, so far as Defendants have been able to determine, every circuit court to address the question has rejected such a rule.[2]  As the Seventh Circuit has explained:

> [A] court may deny class certification even before the plaintiff files a motion requesting certification . . . .  This is because a court has "an independent obligation to decide whether an action brought on a class basis is to be so maintained even if *neither* of the parties moves for a ruling under subdivision (c)(1)."  It need not delay a ruling on certification if it thinks that . . . discovery would not be useful in resolving the class determination, *id.* § 1785.3, at 470.

*Kasalo v. Harris & Harris, Ltd.*, 2011 WL 3800124, at *5 (7th Cir. 2011) (emphasis added; citations omitted).[3]

---

[1] The assertion is not entirely true even as to this Court's decisions.  *See Fedotov v. Peter T. Roach and Assoc., P.C.*, 354 F. Supp. 2d 471 (S.D.N.Y. 2005) ("The defendant need not wait for the plaintiff to act, however.  The defendant may move for an order denying class certification . . . .  Hence, defendant's 'preemptive strike' [based on Rule 23(a)(4)] against this purported class action is properly before this court.").

[2] Plaintiffs incorrectly claim that their "plaintiffs' prerogative" rule, for which they cite *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198 (N.D. Cal. 2006), survives *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009).  In fact, *Vinole* expressly held that a defendant may file a "preemptive" motion to strike class allegations on grounds identical to those that would otherwise be argued in the context of a plaintiff's motion for class certification.  It is thus incompatible with the proposition for which Plaintiffs cite the earlier district court decision in *Beauperthuy*.

[3] *See also Vinole*, 571 F.3d at 939–41 ("Rule 23 does not preclude a defendant from bringing a preemptive motion to deny certification"); *In re Katrina Canal Breaches Litig.*, 401 F. App'x 884 (5th Cir. 2010) (affirming grant of defendant's "preemptive" motion to strike on Rule 23(b)(3) superiority grounds); *Kennedy v. Unumprovident Corp.*, 50 F. App'x 354 (9th Cir. 2002) (same on typicality grounds); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942 (N.D. Ohio 2009) (granting motion to strike for lack of adequate representative); *see also Rehberger v. Honeywell Int'l, Inc.*, 2011 WL 780681 (M.D. Tenn. 2011); *Jimenez v. Allstate Indem. Co.*, 2010

The argument that class complaints should be exempt from early scrutiny and that class plaintiffs are inherently entitled to access to costly and possibly wasteful discovery makes a mockery of the underlying intent of Rule 23, to promote economy and efficiency.[4]  Indeed, at one point in their Opposition, Plaintiffs acknowledge that "[e]ither defendants or plaintiffs are entitled to put class certification before the court at a proper time in the development of the case."  Opp'n at 3, n.1.  Because no factual development is required to conclude that Plaintiffs' claims are not susceptible to class treatment, this is a "proper time" to address the issue.

**2. *Dukes* cannot be distinguished as Plaintiffs claim.**  After *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), Plaintiffs realized that their complaint could not stand, and they amended it.  They now insist that their complaint is not "merely" about claims of excessive subjectivity.  Opp'n at 1.  They try to distance themselves from *Dukes*, asserting that their complaint involves "biased testing procedures" and "specific employment practices."[5]  *Id*. at 4.  Elsewhere Plaintiffs concede that the case *is* still about "subjective decision-making," albeit they assert that this case is different from *Dukes* because that decision-making "operates within these specific common mechanisms."  Opp'n at 6.

---

WL 3623176 (E.D. Mich. 2010); *Schilling v. Kenton Cnty, Ky.*, 2011 WL 293759 (E.D. Ky. 2011); *Mansfield v. Midland Funding, LLC*, 2011 WL 1212939 (S.D. Cal. 2011).

[4] A simple example suffices to illustrate the point.  Suppose that a purported class complaint alleged that the entire class is no larger than a handful of people.  As Plaintiffs would have it, the defendant in such an instance could not move to strike the patently inadequate class allegations; it would have to bide its time, acquiesce in discovery, and wait until the *plaintiff* decided it was time to seek certification.  Nothing in the Rule requires such a result.

[5] Plaintiffs also try to distinguish the class they seek to represent as narrower than the one in *Dukes* and claim that the decisions they challenge are made by "a small corps of managers," Opp'n at 6, but their First Amended Complaint alleges a class of every single revenue producing professional female employee in the United States in disparate business divisions over the past 10 years, a population which crosses over function, business, tenure, success level, management function, and every other relevant characteristic. This is hardly a limited class.

This case in fact does not involve any test. One will search the First Amended Complaint ("FAC") in vain for the words "test" or "testing," for the very good reason that Goldman Sachs does not administer tests in making promotions or setting compensation. Indeed, Plaintiffs' FAC makes clear that, just like *Dukes*, this case is about the very *antithesis* of a "testing procedure" — *i.e.*, it is allegedly about decisions based on the discretion of individual managers and the performance-related comments of co-workers, which may be compiled in "performance reviews" but nevertheless embody the judgments of thousands of separate individuals.

While it is true that Defendants have "specific employment [*i.e.*, promotion and compensation] practices," so too did Wal-Mart. Indeed, the district court there expressly based its commonality finding on the company's "policies governing compensation and promotions [that were] similar across all stores." *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 145 (N.D. Cal. 2004). But there, as here, the supposed *bias* stemmed from allegedly excessive discretion; plaintiffs there alleged that Wal-Mart's company-wide policies "buil[t] in a common feature of excessive subjectivity which provide[d] a conduit for gender bias." *Id.*

Plaintiffs' semantic transformations aside, all they allege here is what was alleged in *Dukes* and found wanting: that the employer's policies provided a "conduit" for the individual judgments of many different individuals. Although Defendants *have* a performance evaluation system, a compensation decision-making process, and a process for making promotion decisions, according to Plaintiffs, *the alleged bias* comes from the "subjective decision-making in this case" — from "improper managerial influence," Opp'n at 6, managers who "are able to unduly influence" performance systems, who "underrate female employees" and can do so because the "processes" are "standardless" and are "not determined by any objective measure." FAC ¶¶ 7, 37-38, 40, 45. Although Plaintiffs seem to concede that after *Dukes*, it is insufficient for commonality purposes merely to allege (or even show) that managers have free rein to make

- 3 -

decisions based on subjective criteria, that is really all that the FAC does. Their claim that a plaintiff could fix this commonality deficiency merely by pasting on an assertion that the "subjective decision-making . . . operates within . . . specific common mechanisms," *id.* at 6, is nonsense. To be positioned for class treatment, the case must present questions that can be resolved, for each member of the class, in a way that answers "the crucial question why was I disfavored." *Dukes*, 131 S. Ct. at 2552. As *Dukes* explained:

> [L]eft to their own devices most managers . . . would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all. Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements . . . . And still other managers may be guilty of intentional discrimination that produces a sex based disparity. *In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions. Id.* at 2554.

Finally, Plaintiffs' argument that *Dukes* is not a "free pass against certification or liability" and that it is incorrect to "argu[e] that [a] Title VII gender discrimination case is not certifiable post-*Dukes*," Opp'n at 6, is a strawman; Defendants never urged such a construction. What the post-*Dukes* cases show is that the commonality requirement cannot be satisfied merely by claiming that the employer gives individual managers "too much" freedom to make decisions.[6] Plaintiffs' Opposition makes even clearer that that is precisely the theory on which Plaintiffs seek to proceed.

---

[6] *Bennett v. Nucor Corp.*, 2011 WL 4389194 (8th Cir. 2011) (affirming denial of "subjective promotion practices" class on commonality grounds); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 05 C 6583 (N.D. Ill. 2011) (rejecting class certification in disparate impact "excessive subjectivity" case); *cf Rodriguez v. Nat'l City Bank*, 2011 WL 4018028 (E.D. Pa. 2011) (same in "excessive subjectivity" lending discrimination disparate impact case); *In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*, 2011 WL 3903117 (N.D. Cal. 2011) (same; "evidence that a 'policy of discretion' . . . produces a disparity is insufficient, by itself, to establish commonality for purposes of Rule 23(a)").

**3. Plaintiffs have no standing to seek injunctive relief.**  Plaintiffs cannot deny that they seek certification of this case, or at least parts of this case, under Rule 23(b)(2) and that they seek substantial monetary relief.  Nor do they dispute that *Dukes* held that Rule 23(b)(2) certification is available only in cases in which injunctive relief is the dominant form of relief sought.  *Dukes*, 131 S. Ct. at 2557.  That alone should require dismissal of the Rule 23(b)(2) allegations.  Moreover, as Defendants explained in their opening brief, a party does not have standing to seek injunctive relief unless that party faces an "actual or imminent, not conjectural or hypothetical" threat of harm.  *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*, 478 F.3d 494, 498 (2d Cir. 2007).[7]  To have standing to seek injunctive relief (and thus Rule 23(b)(2) certification), then, Plaintiffs "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).

*Dukes* affirmed these black letter principles, observing that those "no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices." *Dukes*, 131 S. Ct. at 2560.  Thus, in discussing whether injunctive relief was the dominant form of relief sought there, the Court noted that "about half the members of the class approved by the Ninth Circuit [*i.e.*, the former employees] have no claim for injunctive or declaratory relief at all." And since *Dukes*, the Ninth Circuit has reaffirmed this principle: "Plaintiffs not employed . . . throughout this case do not have standing to seek injunctive relief.  As former employees, [they] would not share an interest with class members whose primary goal is to obtain injunctive relief." *Ellis v. Costco Wholesale Corp.*, 2011 WL 436668 (9th Cir. 2011), slip op. at 17718.

In the face of these unequivocal Supreme Court and appellate decisions, Plaintiffs cite two decisions for the proposition that in this circuit former employees should be allowed to pursue

---

[7] *See also* cases cited in Defendants' Opening Br. at pp. 12-13.

injunctive relief because they might be re-employed. *See* Opp'n at 10. Neither lends them much support. The first, *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 99 (S.D.N.Y. 2010), devotes but one sentence to the subject, cites no supporting authority, and does not mention, much less distinguish, any of the Supreme Court or other authority cited in Defendants' opening brief. The second decision, *Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280 (S.D.N.Y. 1996), itself cites only one case for support, *Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989), but that decision is simply irrelevant in this context. The plaintiff in *Cutler* was suing for social services benefits. *Id.* at 41. Although she had already received these benefits by the time the court considered the standing question, the court reasoned that as a 77-year old woman in need of constant medical assistance, "'[e]ven if the named plaintiff has [already] been granted [the specific relief requested, it] is quite probable that [she] might find herself in similar situations with [defendants] in the future.'" *Id.* at 45.

Plaintiffs' speculation that they may some day be employed by Goldman Sachs, or that one of their subsequent employers "may be acquired by Goldman Sachs," is not comparable. "Maybe" or "some day" cannot amount to the *actual* or *imminent* injury needed to establish standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1150-51 (2009) ("vague desire to return is insufficient to satisfy the requirement of imminent injury."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("'some day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require").

Plaintiffs also claim standing on the ground that "they care about correcting . . . injustices" and they hypothesize "favorable" industry-wide ramifications if the class prevails. Opp'n at 11. But the alleged vague desire to "do good" (recited here as a tool to obtain monetary award) clearly does not convey standing. Standing demands a "*concrete* application [of Defendants' policies]

that threatens *imminent* harm to" Plaintiffs; a contrary holding "would fly in the face of Article III's injury-in-fact requirement." *Summers*, 129 S. Ct. at 1150; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 ("The federal courts were simply not constituted as ombudsmen of the general welfare.").

    **4. <u>Piecemeal certification is not available to Plaintiffs.</u>**  Plaintiffs suggest that the Court employ divided certification using Rule 23(c)(4) — Rule 23(b)(2) certification for "liability" and Rule 23(b)(3) for "relief." Implicit in Plaintiffs' plan is the desire to try so-called "class" liability now, pursuant to Rule 23(b)(2), and leave for a later day questions of individual recovery — a day they may hope will be obviated by a certification-induced settlement. Plaintiffs ask the Court to resort to this extraordinary and contorted device solely to allow them to circumvent the *Dukes* holding prohibiting monetary recovery in Rule 23(b)(2) class actions and thus avoid the standards of 23(b)(3) for their monetary class claims. But Rule 23(c)(4) was not designed to nullify Rule 23(b) and offers Plaintiffs no refuge.

    "[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis," and Plaintiffs' plan does not withstand such scrutiny. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200–01 (3d Cir. 2009). The question in each case proposed for 23(c)(4) treatment is whether separating for class trial those issues allegedly amenable to class-wide proof would meaningfully "reduce the range of issues in dispute and promote judicial economy." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008) (citations omitted). If separate certification of some "liability" aspects of the case would leave a substantial "number of questions . . . remain[ing] for individual adjudication" after the "common" questions had been resolved, Rule 23(c)(4) certification would be an abuse of discretion. *Id.* at 234. "The problem is that this kind of bifurcation frequently does not materially advance the overall disposition of the case because the 'liability' issue rarely is

amenable to a neat package that can be created without consideration of plaintiff-specific matters such as fact of injury, causation, reliance and extent of damage." 1 *McLaughlin on Class Actions*, § 4:43 (7th ed).  Thus, "issue certification is inappropriate if the issues left behind for individual determinations are so significant that common proceedings will not materially advance the conclusion of the litigation."  *Id.*[8]

In this case, a verdict in Plaintiffs' favor following the first phase of a divided class case would have virtually no impact on the "number of questions . . . remain[ing] for individual adjudication."  As Plaintiffs concede, such a decision would mean only that individual "Plaintiffs [could] then move to the [next] phase of the case with a presumption in their favor."  Opp'n at 13.  Although that shift in the burden of proof might make things easier for some individuals to prevail on subsequent individual *liability* determinations, it would not materially affect the "number of [such] questions remaining for individual adjudication."  "The intractable problem is that regardless of whether general liability . . . is established, the defendant is entitled to present evidence rebutting the existence or cause of any particular claimant's alleged injuries, thereby dissipating any economies achieved through class-wide adjudication."  *McLaughlin on Class Actions*, *supra*.[9]  When that is true, application of Rule 23(c)(4) is unwarranted.

---

[8] *Accord McLaughlin*, 522 F.3d at 235 (denying issue certification; "[c]ertifying, for example, the issue of defendants' scheme to defraud, would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages"); *Dungan v. The Acad. at Ivy Ridge*, 249 F.R.D. 413, 417 (N.D.N.Y. 2008), *aff'd*, 344 F. App'x 645 (2d Cir. 2009) ("severing various elements of Plaintiffs' claims for purposes of class-action adjudication and leaving the remainder for individualized adjudication (*i.e.*, issue certification) would not meaningfully reduce the range of issues in dispute [or] promote judicial economy and will lead to potential confusion and redundancy in the presentation of proof"), *aff'd*, 2009 WL 2604356 (2d Cir. 2009); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003) (denying (c)(4) certification; "[t]he sheer number of issues left for the individual stage of this litigation is emblematic of the futility of issue certification on design defect and negligent design.").

[9] Plaintiffs also deny that the Seventh Amendment is implicated by their certification proposal, but they do so largely by denying that *Blyden v. Mancuso*, 186 F.2d 252 (2d Cir. 1999), means what it says.  They also insist that it is "premature" to address these dangers.  Defendants discussed

**5. Plaintiffs failed to exhaust their disparate impact claim.** The parties largely agree on several points: (a) a plaintiff may not bring a Title VII disparate impact lawsuit without having first exhausted that claim before the EEOC; (b) to exhaust such a claim, the charge need not use any particular words but (c) it must actually identify the allegedly offending practice so that the employer will know what it is expected to defend or conciliate,[10] because the "particular purpose of the filing requirement [is] to give prompt notice to the employer."[11]

Plaintiffs' charges fail to meet this standard. Their Opposition snatches bits of isolated language from their EEOC charges, but a reading of the charges in their totality confirms that none even approximates a claim that some practice of Defendants have unintended discriminatory consequences. For example:[12]

- Chen-Oster cites ¶¶ 2 and 8 of her charge as "expressly identify[ing]" the "facially neutral" policies she purportedly intends to attack, but the *text* of those paragraphs merely gives Chen-Oster's biographical data and a single sentence indicating that she brings the charge on behalf of others. The paragraphs mention no Goldman Sachs policy whatsoever.
- Chen-Oster *characterizes* ¶ 5 as supposedly "identify[ing] . . . facially neutral policies [that] contribute[e] to discriminatory impact for women," but the *text* of the charge identifies only alleged disparities in *her* pay, *her* claims of sexual assault, *her* poor "seat assignment," *her* maternity leave and, more generally, the claim that *she* was treated "less favorabl[y] [than] similarly situated men."

---

*Blyden* at length in their opening brief and will not repeat that argument here, but there are many decisions, from this Court and elsewhere, that recognize the insurmountable problems posed by the sort of bifurcated process Plaintiffs envision. *See*, *e.g., In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D. 323, 351–52 (S.D. N.Y. 2002) (denying issue certification as to general liability because proposal that litigation be divided between generic and specific liability implicated reexamination of issues); *Benner*, 214 F.R.D. 157 (denying issue certification because issues of negligence and comparative negligence were too interrelated and thereby certification would lead to violation of the Seventh Amendment); *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 493 (E.D. Pa. 1997) (using a "'second' jury or juries hear . . .individual issues . . . would surely violate defendants' constitutional rights").

[10] *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990); *Reinhard v. Fairfield Maxwell, Ltd.*, 707 F.2d 697, 701 & n. 6 (2d Cir. 1983).

[11] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002).

[12] Space does not allow Defendants to examine Plaintiffs' every cite, but we encourage the Court to do so.

- Parisi cites ¶¶ 4-7 and 14 as "expressly identifying" a disparate impact claim, but those paragraphs allege only that she was "paid . . . less than similarly situated males," that she suffered for her team's poor performance when her male peers did not, that Defendants treat males who start families better than similarly situated females, and, more globally, that they discriminate against women, *inter alia*, by "disproportionately select[ing] [them] for reductions in force," — a disparate *treatment* claim she does not even pursue in this litigation.

- Orlich cites ¶¶ 4-12, 18 and 21 of her charge, but only ¶ 21 even hints at discrimination against anyone but herself, referring to an alleged "pattern and practice of discrimination" — explicitly a *disparate treatment* claim.[13]

In short, "it [is] not enough for the plaintiff to have alleged that other colleagues were affected." *Pacheco v. Mineta*, 448 F.3d 783, 790 (5th Cir. 2006) (quoting *Woodman v. WWOR-TV*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003)). Rather, she must "'identify a specific, facially neutral employment practice'" that has had an adverse impact on others. *Id*. "A neutral employment practice is the cornerstone of any EEOC disparate-impact investigation," *id.* at 792, and absent such an allegation, exhaustion has not occurred. Although no magic language is required, a "vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." *Marshall v. Fed. Exp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997).[14]

## CONCLUSION

For the forgoing reasons, Plaintiffs' class allegations should be stricken and summary judgment should be entered on Count II of their Amended Complaint.

---

[13] *United States v. Brennan*, 650 F.3d 65 (2d Cir. 2011) ("pattern-and-practice claims . . . require[s] proof of intentional discrimination").

[14] Plaintiffs claim that the scope of the EEOC's actual investigation alone is not "dispositive" as to the scope of the charge. Although that may be true, it is highly relevant to the inquiry. *See*, *e.g.*, *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) (scope of actual investigation "confirmed" limited nature of charge's language).

Dated:  October 11, 2011         PAUL HASTINGS LLP
       New York, NY

                                            By:       /s/ Zachary D. Fasman
                                                     BARBARA B. BROWN *(admitted pro hac vice)*
                                                     ZACHARY D. FASMAN
                                                   C. GEOFFREY WEIRICH *(admitted pro hac vice)*
                                                   75 East 55th Street
                                                 New York, NY  10022
                                                 (212) 318-6000
                                                 barbarabrown@paulhastings.com
                                                 zacharyfasman@paulhastings.com
                                                 geoffweirich@paulhastings.com

                                                 SULLIVAN & CROMWELL LLP
                                                 THEODORE O. ROGERS, JR.
                                                 SUHANA S. HAN
                                                 125 Broad Street
                                                 New York, NY  10004
                                                 (212) 558-4000
                                                 rogerst@sullcrom.com
                                                 hans@sullcrom.com

                                                 Attorneys for Defendants
                                                 GOLDMAN, SACHS & CO. and THE
                                                 GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,<br><br>          Plaintiffs,<br><br>    vs.<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.<br><br>          Defendants. | 10 Civ. 6950 (LBS) (JCF)<br><br>**CERTIFICATE OF SERVICE** |

  I hereby certify that on October 11, 2011, I caused a copy of the foregoing Reply Memorandum in Support of Defendants' Motion to Strike All Class Allegations in Plaintiffs' First Amended Complaint and for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII to be served by the Court's ECF system on:

Adam T. Klein
Cara E. Greene
Jennifer L. Liu
OUTTEN & GOLDEN, LLP
3 Park Avenue, 29th Floor
New York, NY  10016
*Attorneys for Plaintiffs*

Kelly M. Dermody
Anne B. Shaver
Heather H. Wong
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
*Attorneys for Plaintiffs*

Dated: New York, NY
   October 11, 2011       By:  /s/ Zachary D. Fasman
                       ZACHARY D. FASMAN