UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————

H. CRISTINA CHEN-OSTER; LISA PARISI; and
SHANNA ORLICH,

                Plaintiffs,

          vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.

                Defendants.

————————————————————

**10-Civ. 6950 (LBS) (JCF)**

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO STRIKE ALL CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' DISPARATE IMPACT CLAIM UNDER TITLE VII

PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

I.      AS A MATTER OF LAW, THE COMMON QUESTIONS PLAINTIFFS
        ALLEGE CANNOT SATISFY RULE 23(a)(2) ........................................................... 6

II.     AS A MATTER OF LAW, PLAINTIFFS CANNOT SATISFY THE
        REQUIREMENTS OF RULE 23(b). ........................................................................... 10

        A.      As A Matter Of Law, Plaintiffs Are Ineligible For Rule 23(b)(2)
                Certification Of The "Liability" Phase of This Case. .......................................... 13

        B.      Rule 23(c)(4) Does Not Improve Plaintiffs' Claim To Certification Under
                Rule 23(b)(2). ...................................................................................................... 16

        C.      Plaintiffs' Proposed Bifurcated Treatment Of Liability Issues Risks A
                Seventh Amendment Violation. ............................................................................ 19

III.    CERTIFICATION OF PLAINTIFFS' PROPOSED "EXCESS SUBJECTIVITY"
        CLASS UNDER RULE 23(b)(3) ALSO IS FORECLOSED BY *DUKES*. ................... 20

IV.     PLAINTIFFS CANNOT ASSERT A TITLE VII DISPARATE IMPACT CLAIM
        BECAUSE THEY MADE NO SUCH A CLAIM IN THEIR EEOC CHARGES .......... 22

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ...................................................................3

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1977)...............................................................................20

*Bell v. Lockheed Martin Corp.*,
  No. 08-6292, 2011 WL 6256978 (D.N.J. Dec. 14, 2011)...................9, 11

*Bennett v. Nucor Corp.*,
  656 F.3d 802 (8th Cir. 2011) ...................................................................9

*Blyden v. Mancusi*,
  186 F.3d 252 (2d Cir. 1999)...................................................................20

*Brown v. Puget Sound Chapter Nat'l Elec. Contractors Ass'n*,
  732 F.2d 726 (9th Cir. 1984) .................................................................22

*Chapman v. Al Transport*,
  229 F.3d 1012 (11th Cir. 2000) ...............................................................9

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011)...................................................................18

*Clark v. Martinez*,
  543 U.S. 371 (2005)...............................................................................20

*Denney v. City of Albany*,
  247 F.3d 1172 (11th Cir. 2001) ...............................................................9

*DeRosa v. Mass. Bay Commuter Rail Co.*,
  694 F. Supp. 2d 87 (D. Mass. 2010) ......................................................15

*Deshawn E. by Charlotte E. v. Safir*,
  156 F.3d 340 (2d Cir.1998).....................................................................14

*Donaldson v. Microsoft Corp.*,
  205 F.R.D. 558 (W.D.Wash. 2001) ..........................................................1

*Drayton v. W. Auto Supply Co.*,
  No. 01-10415, 2002 WL 32508918 (11th Cir. Mar. 11, 2002).................15

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010), *rev'd by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.
  2541 (2011)................................................................................... passim

**TABLE OF AUTHORITIES – cont.**

*Dungan v. Acad. at Ivy Ridge*,
    249 F.R.D. 413 (N.D.N.Y. 2008), *aff'd,* 344 F. App'x 645 (2d Cir. 2009)............................17

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................15

*Gavalik v. Cont'l Can Co.*,
    812 F.2d 834 (3d Cir. 1987)..................................................................................13

*General Tel. Co. of the N.W. v. EEOC*,
    446 U.S. 318 (1980)..............................................................................................21

*Gomes v. Avco Corp.*,
    964 F.2d 1330 (2d Cir. 1992)..........................................................................24, 25

*Grosz v. Boeing Co.*,
    No. 5ACV 02-0071 CJC (MLGx), 2003 WL 25669166 (C.D.Cal. Oct. 23, 2003)..................1

*Gutierrez v. Johnson & Johnson*,
    No. 01-5302, 2007 WL 1101437 (D.N.J. April 10, 2007).......................................1

*Harper v. Ulta Salon Cosmetics & Fragrance, Inc.*,
    No. 1:05-cv-1285-TWT, 2005 U.S. Dist. LEXIS 38049 (N.D. Ga. Dec. 23, 2005) ..............15

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004).....................................................................................3

*Hilao v. Est. of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ................................................................................19

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009)..................................................................................16

*In re Employment Discrimination Litig.*,
    198 F.3d 1305 (11th Cir. 1999) .....................................................................10, 13

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)..................................................................................16

*In re Rhone-Poulenc Rorer*,
    51 F.3d 1293 (7th Cir. 1995) ................................................................................19

*In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*,
    No. 08-MD-01930, 2011 WL 3903117 (N.D. Cal. Sept. 6, 2011) ...........................9

*Int'l B'hd of Teamsters v. United States*,
    431 U.S. 324 (1977)........................................................................................13, 18

**TABLE OF AUTHORITIES – cont.**

*Jackson v. Motel 6 Multipurpose Inc.*,
    130 F.3d 999 (11th Cir. 1997) ........................................................................15

*Leuthner v. Blue Cross and Blue Shield of Nw. PA*,
    454 F.3d 120 (3d Cir. 2006) ...........................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................14

*McClain v. Lufkin Indus., Inc.*,
    519 F.3d 264 (5th Cir. 2008) .....................................................................23, 25

*McGoffney v. Vigo Cnty Div. of Family & Children, Family & Soc. Servs. Admin.*,
    389 F.3d 750 (7th Cir. 2004) ..........................................................................22

*McKenzie v. Fed. Express Corp.*,
    CV 10-02420 (GAF) (PLAx) 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011)........15

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)...................................................................3, 17, 19

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    No. 05 C 6583 (N.D. Ill. Sept. 19, 2011) .........................................................9

*Milligan v. Am. Airlines, Inc.*,
    No. 08-55276, 2009 U.S. App. LEXIS 9180 (9th Cir. Apr. 30, 2006)...................................15

*Moore v. Painewebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)..........................................................................21

*Noreuil v. Peabody Coal Co.*,
    96 F.3d 254 (7th Cir. 1996) ............................................................................23

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................................14

*Pacheco v. Mineta*,
    448 F.3d 783 (5th Cir. 2006) ..........................................................................23

*Perry v. Village of Arlington Heights*,
    186 F.3d 826 (7th Cir. 1999) ..........................................................................14

*Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*,
    478 F.3d 494 (2d Cir. 2007).............................................................................14

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989)........................................................................................13

**TABLE OF AUTHORITIES – cont.**

*Rahman v. Smith & Wollensky Rest. Group Inc.*,
 No. 06 Civ. 6198 (LAK)(JCF), 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008)............................3

*Remien v. EMC Corp.*,
 No. 04C3727, 2008 WL 4067324 (N.D. Ill. 2008).................................................................1

*Risher v. Aldridge*,
 889 F.2d 592 (5th Cir. 1989) ...............................................................................................9

*Robinson v. Metro-North Commuter R.R. Co.*,
 267 F.3d 147 (2d Cir. 2001)................................................................................................19

*Rodriguez v. Nat'l City Bank*,
 277 F.R.D. 148 (E.D. Pa. 2011)............................................................................................9

*Scott v. Family Dollar Stores*,
 No. 3:08CV540, 2012 WL 113657 (W.D.N.C. Jan. 13, 2012)................................................9

*Shotz v. Cates*,
 256 F.3d 1077 (11th Cir. 2001) ..........................................................................................14

*Silver v. Mohasco Corp.*,
 602 F.2d 1083 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980).......................23

*United States v. City of New York*,
 258 F.R.D. 47 (E.D.N.Y. 2009).............................................................................................13

*United States v. City of New York*,
 276 F.R.D. 22 (E.D.N.Y. 2011).................................................................................11, 21, 22

*United States. v. Magassouba*,
 544 F.3d 387 (2d Cir. 2008)................................................................................................20

*Vega v. T-Mobile USA, Inc.*,
 564 F.3d 1256 (11th Cir. 2009) ...........................................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S.Ct. 2541 (2011).................................................................................................. passim

*Watson v. Fort Worth Bank & Trust*,
 487 U.S. 977 (1988)..............................................................................................................9

*Woodman v. WWOR-TV, Inc.*,
 293 F. Supp. 2d 381 (S.D.N.Y. 2003), *aff'd on other grounds*, 411 F.3d 69 (2d Cir.
 2005) ..............................................................................................................................22, 23

**STATUTES**

42 U.S.C. § 2000e-5(g)(2)(A)....................................................................................................10

**TABLE OF AUTHORITIES – cont.**

**RULES**

Fed. R. Civ. P. 23(c)(4)................................................................................16

**OTHER AUTHORITIES**

1 *McLaughlin on Class Actions*, § 4:43 (7th ed.) ........................................................17

## PRELIMINARY STATEMENT

On January 19, 2012, Magistrate Judge Francis issued his Report and Recommendation [Docket No. 134] suggesting that this Court deny in its entirety Defendants' Motion to Strike All Class Allegations in Plaintiffs' Amended Complaint and for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claims Under Title VII [Docket No. 98]. Defendants respectfully assert that Judge Francis' Report runs counter to the fundamental import of the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*.[1] The Supreme Court has made clear that such claims cannot support class certification. Yet the result of the Magistrate's Report will be to catapult Defendants into an immediate discovery process of terrific and damaging cost. The Magistrate's Recommendation would also authorize plaintiffs to pursue disparate impact claims even though they have not alleged such claims in any charge of discrimination. Defendants accordingly request that this Court not accept the Report and that it instead grant Defendants' Motion.

Plaintiffs' initial Complaint ("Compl.") [Docket No. 5], filed shortly after the Ninth Circuit approved certification of an immense class in *Dukes v. Wal-Mart Stores, Inc.*,[2] mimicked the *Dukes* class theory, claiming that Rule 23(a)(2) commonality exists when an employer allegedly cedes "excessive subjectivity and discretion" to its managers. In June 2011, the Supreme Court reversed the *Dukes* certification, holding that granting discretion to individual managers is the *antithesis* of commonality. Plaintiffs soon filed their First Amended Complaint ("Am. Compl.") [Docket No. 104].

---

[1] 131 S. Ct. 2541 (2011).

[2] 603 F.3d 571 (9th Cir. 2010), *rev'd by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *Dukes* appeared to deal a fatal blow to the series of "excessive discretion" discrimination class actions being filed around the country. *See*, *e.g.*, *Remien v. EMC Corp.*, No. 04C3727, 2008 WL 4067324 (N.D. Ill. Aug. 28, 2008); *Gutierrez v. Johnson & Johnson*, No. 01-5302, 2007 WL 1101437 (D.N.J. Apr. 10, 2007); *Grosz v. Boeing Co.*, No. 5ACV 02-0071 CJC (MLGx), 2003 WL 25669166 (C.D. Cal. Oct. 23, 2003); *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558 (W.D. Wash. 2001).

Plaintiffs' Amended Complaint merely changed some of the wording of the original Complaint; it did not alter the defective underlying theory.  Plaintiffs continue to assert that a company-wide class action under Fed. R. Civ. P. 23 is an appropriate vehicle to challenge the individual decisions by hundreds of individual managers regarding thousands of individual employees over a span of a decade.

Ducking to avoid wording identical to *Dukes*, Plaintiffs deleted from their Amended Complaint their repeated accusations that at Goldman Sachs, performance evaluations and pay and promotion decisions are based on "unacceptable levels of subjectivity."[3]  But the changes Plaintiffs made are ones of form, not substance.  They now claim that those decisions were "not determined by any objective measure."  *See* Am. Compl. ¶ 7.  Allegations claiming "too much subjectivity" are replaced by a claimed lack of "objective measures."  An assessment previously challenged as based on the "manager's subjective feelings" now is attacked as "standardless." There is no meaningful difference.

The same theory that doomed the *Dukes* case in the Supreme Court remains the central focus of the Amended Complaint.  Plaintiffs' request for class certification still hinges on the assertion that Goldman Sachs permits individual managers unbridled freedom to make employment decisions regarding their subordinates, and that so many of them use that freedom to discriminate against female employees that it has become routine practice.  As the Supreme Court held quite clearly in *Dukes*, such manager-by-manager, employee-by-employee decision-making is not an appropriate basis for class certification.

The Supreme Court's seminal decision in *Dukes* prompted Plaintiffs to make one other change in their Amended Complaint.  The original Complaint sought class certification for this damages action, *inter alia*, under Rule 23(b)(2), but the *Dukes* Court unanimously held that

---

[3] *See* Compl. ¶ 9.

(b)(2) certification is not possible when the plaintiffs seek individualized monetary relief. Despite this holding, Plaintiffs still seek all manner of damages, and they still seek certification of this case – or at least a piece of this case – under Rule 23(b)(2). In the Amended Complaint, however, Plaintiffs ask the Court to solve their problem by breaking this litigation into pieces – to certify some portions under Rule 23(b)(2) and others under Rule 23(b)(3), in an attempt to slice-and-dice their way to the possibility of class certification. What Plaintiffs urge, again and again, is a sort of gerrymandered "certification at all costs"[4] approach to Rule 23 that is incompatible with the text of the Rule, with *Dukes*, with judicial efficiency and with fundamental fairness.

Rule 23 "is not a one-way ratchet," a tool for forcing every case into class litigation. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 220 (2d Cir. 2008). Rather, it is a rule of procedure intended to govern the treatment of claims for which the class action device is appropriate. Rule 23 does not exist for the convenience of counsel or as a handy way to impose "hydraulic pressure on defendants to settle." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 80 (2d Cir. 2004). It exists, instead, to "promote judicial economy." *McLaughlin*, 522 F.3d at 234 (citation omitted). The tortured certification Plaintiffs request undercuts that purpose.[5]

Plaintiffs Amended Complaint also contains a flawed disparate impact claim that should be summarily dismissed. Plaintiffs never asserted their Title VII disparate impact claim – Count

---

[4] *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (cited with approval in *Dukes*, 131 S. Ct. at 2560).

[5] It is appropriate to strike class allegations from a complaint once it becomes clear that those allegations are "untenable." *Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198 (LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (citing with approval *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 WL 4546100 (D.N.J. Dec. 19, 2007)). The questions posed here are solely questions of law, akin to those properly raised in a Rule 12(c) motion for judgment on the pleadings, which may be raised at any time "after the pleadings are closed — but early enough not to delay trial." These questions have been answered decisively by the Supreme Court. There is no reason to postpone striking the deficient class allegations.

II of the Amended Complaint – in a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which is a precondition to litigation.

This Court should overrule the Magistrate's Report, grant partial summary judgment to Goldman Sachs on Count II of the Amended Complaint, and strike the class allegations contained in the remainder of the Amended Complaint.

## FACTUAL BACKGROUND

Shortly after the Ninth Circuit's *en banc* decision affirming class certification in *Dukes v. Wal-Mart Stores*, *Inc.*,[6] three former Goldman Sachs employees, Cristina Chen-Oster, Shanna Orlich and Lisa Parisi,[7] filed this putative class action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL"). The Complaint duplicated the *Dukes* approach – alleging a nationwide class action asserting gender bias in, among other things, performance evaluations and pay and promotion decisions, across all its revenue divisions and across multiple job titles. As in *Dukes*, the Complaint asserted that a supposed corporate policy of decentralized and discretionary decision-making by individual managers satisfies Rule 23(a)(2)'s commonality requirement.[8] The Complaint was replete with assertions of "unbridled" or "excessive" subjectivity in employment decision-making, with little guidance or monitoring, thereby purportedly allowing a pattern of discriminatory discretionary decisions by individual managers.

---

[6] 603 F.3d 571 (9th Cir. 2010).

[7] Plaintiff Lisa Parisi had entered into an arbitration agreement with Goldman Sachs. This Court denied Goldman Sachs' motion to compel Plaintiff Parisi to engage in individual arbitration of her claims. *See* Order Denying Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration [Docket No. 120]. That Order is on appeal to the Second Circuit. *See* Notice of Appeal of Order Denying Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration [Docket No. 126].

[8] Although the Plaintiffs worked in only two of Goldman Sachs' revenue divisions, they seek a class composed of all women currently or previously working in Goldman Sachs' "revenue" divisions. *See* Am. Compl. ¶¶ 10, 57-59.

This route to class certification, however, ran into a dead end in *Dukes*.

> [A] "policy" of allowing discretion by local supervisors over employment matters [is] [o]n its face . . . *just the opposite of a uniform employment practice that would provide the commonality needed for a class action*; it is a policy against having uniform employment practices.
>
> It is also a very common and presumptively reasonable way of doing business—one that we have said "should itself raise no inference of discriminatory conduct." . . . .  [L]eft to their own devices most managers in any corporation—and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all.  Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements . . . .  And still other managers may be guilty of intentional discrimination that produces a sex based disparity.  *In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.  A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.*

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011) (citations omitted) (emphasis added).

"Without some glue holding the alleged reasons for all those decisions together," the class action mode of litigation is inappropriate, and leads to injustice.  *Id.* at 2552.  The *Dukes* Court explained that the alleged existence of managerial discretion does not provide that "glue." The exercise of "subjective" judgment and "discretion" by individual managers simply cannot "produce a common answer to the crucial question why was I disfavored."[9]  Even if the exercise of managerial judgment could be associated with a statistical disparity adverse to women, "[m]erely showing that [this alleged] policy of discretion has produced an overall sex-based disparity [would] not suffice" to demonstrate that commonality exists or that individual,

---

[9] Subjective individualized decision-making cannot even "produce a common answer" to the precursor question – *whether* each putative class member was disfavored.  *Id.* at 2552.

- 5 -

discretionary personnel decisions are discriminatory.  *Id.* at 2556.

Based upon these clear standards laid down by the Supreme Court in *Dukes*, Goldman Sachs moved to strike the class claims in the Complaint.  *See* Defs.' Motion to Strike [Docket No. 66].  Plaintiffs responded by filing a First Amended Complaint.  But Plaintiffs' Amended Complaint does not advance a new theory or assert a new basis for commonality.  Plaintiffs merely played with semantics, scrubbing the initial Complaint of *Dukes*-like language but retaining the same fatally flawed central premise, hoping that cosmetic changes would suffice. They also tinkered with their Rule 23(b)(2) allegations in an attempt to evade the *Dukes* Court's unanimous decision that Rule 23(b)(2) cannot be used to maintain cases like this one, in which individualized damages are sought.

## **ARGUMENT**

### I.      **AS A MATTER OF LAW, THE COMMON QUESTIONS PLAINTIFFS ALLEGE CANNOT SATISFY RULE 23(a)(2).**

Under the heading "Class Action Allegations," Plaintiffs' Amended Complaint poses the following as the "questions of law and fact common to the class":

- "whether Goldman Sachs' policies or practices discriminate against female Associates, Vice Presidents, and Managing Directors;

- whether Goldman Sachs' policies and practices violate Title VII and/or [New York city law];

- whether Goldman Sachs' performance evaluation system discriminates against women;

- whether Goldman Sachs' compensation system discriminates against women;

- whether Goldman Sachs' promotion system discriminates against women; and

- whether equitable remedies, injunctive relief, compensatory damages, and punitive damages for the Class are warranted."[10]

---

[10] The Amended Complaint also identifies one other purportedly common question regarding Goldman Sachs' anti-retaliation policies and practices, even though Plaintiffs do not assert a

Am. Compl. ¶ 62.[11]  These purportedly common questions boil down to nothing more than "Did Goldman Sachs violate Title VII and if so how much do we recover?"  As *Dukes* explicitly holds, that sort of conclusory question does not suffice:

> Any competently crafted class complaint literally raises common "questions." . . .  For example:  Do all of us plaintiffs indeed work for [the defendant]?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification. . . .  *[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.*

*Dukes*, 131 S. Ct. at 2551.  The *Dukes* majority left no doubt that Rule 23(a)(2) requires more:

> [To satisfy commonality, the plaintiffs'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id*. at 2551.  Plaintiffs' "were we mistreated" questions fall well short of the *Dukes* standard.

Underlying these conclusory questions are factual allegations that are simply incompatible with *Dukes.*  As a matter of law, these questions are inadequate to satisfy the commonality requirement.  Like its predecessor, the Amended Complaint depends on the accusation that Goldman Sachs leaves employment decisions in the hands of employees' managers, has "no published criteria" for making those decisions, fails to adequately "ensure fairness," and allows managers to make employment decisions without reference to "any objective measure of performance."  *Id.*  ¶¶ 6, 7.[12]  Plaintiffs complain that individual managers

---

class-wide retaliation claim.  *See* Am. Compl. ¶¶ 164-68 (asserting retaliation claims under federal and state law only "On Behalf of All Plaintiffs Individually").

[11] 131 S. Ct. at 2551 (emphasis added).

[12] These allegations are untrue, but because they are legally deficient, the Court need not inquire

"can move an employee to a higher or lower quartile [rating] without regard to absolute values of the [employee's] performance evaluations." *Id.* ¶ 41.  Plaintiffs claim that because employment decisions allegedly are "standardless," *id.* ¶ 45, a given manager will "have the discretion to pay" employees in the same quartile different rates of compensation. *Id.* ¶ 46.  Similarly, Plaintiffs allege that a manager at Goldman Sachs need "not employ legitimate . . . or objective criteria" in making promotions. *Id.* ¶ 50.  At its core, Plaintiffs purportedly "common" question is simply whether Goldman Sachs operates a workplace in which "many different managers can discriminate against women if they choose to do so."[13]  Plaintiffs allege nothing more than the same type of individualized decision-making that *Dukes* confirmed does <u>not</u> meet the commonality test of Rule 23(a)(2).  Replacing the words "too much subjectivity" with "too little objectivity" changes nothing.  The Amended Complaint *still* depends on the notion that Goldman Sachs gives managers too few "objective" standards for employment decision-making, and thus individual managers may and do use the discretion afforded them to discriminate against women.

The Supreme Court's opinion in *Dukes* establishes quite clearly that such a claim cannot support a class under Rule 23.  As a matter of law, even when a plaintiff can prove that an employer has delegated discretion – even "too much" discretion, whatever that might mean – to individual managers, and thus has allegedly allowed managers the *opportunity* to discriminate (or not), this is insufficient as a matter of law to satisfy the commonality requirement of Rule 23(a)(2).  That requirement exists to ensure that "a classwide proceeding [will] generate common

---

into their merits.  Goldman Sachs has implemented extremely robust non-discrimination policies and practices, under which women's careers have flourished.  For present purposes, however, the truth or falsity of Plaintiffs' allegations is entirely irrelevant to this Motion.

[13] Plaintiffs' newfound emphasis on Goldman Sachs' 360° performance review "system" does not alter the crux of their claim.  *See* Am. Compl. ¶¶ 34, 38-42.  The element of the 360° "system" that they attack is the exercise of managerial discretion – the way in which individual managers allegedly selectively use or ignore performance-related comments collected through the 360° process, or purportedly manipulate the determination of who gets to submit a review of an individual employee.  Nothing about *the 360° process itself* is alleged to be discriminatory.

answers [that will] drive the resolution of the litigation." 131 S. Ct. at 2551 (citation omitted).

Whether at Wal-Mart or at Goldman Sachs, the Supreme Court's admonition carries equal

power: "demonstrating the invalidity of one manager's use of discretion will do nothing to

demonstrate the invalidity of another's." *Id.* at 2554.[14]

Even before *Dukes*,[15] the Supreme Court and the courts of appeals had routinely held that

discretionary decision-making is not only lawful, but critical to proper business operation.[16]

*Dukes* confirms that, as a matter of law, the practice of ceding to individual managers the

---

[14] *See also Bell v. Lockheed Martin Corp.*, No. 08-6292 (RBK/AMD), 2011 WL 6256978
(D.N.J. Dec. 14, 2011) (granting defendant' motion to deny class certification before discovery
closed and without the need to wait for statistical evidence to be presented; allegations regarding
Lockheed's discretionary policies were similar to those in *Dukes*, and plaintiffs' claimed proofs
were substantially similar to the proofs rejected by *Dukes*); *Bennett v. Nucor Corp.*, 656 F.3d
802, 815 (8th Cir. 2011) (affirming denial of "subjective promotion practices" class on
commonality grounds); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 05 C
6583 (N.D. Ill. Sept. 19, 2011) (rejecting class certification in disparate impact "excessive
subjectivity" case); *Scott v. Family Dollar Stores*, No. 3:08CV540, 2012 WL 113657 (W.D.N.C.
Jan. 13, 2012) (granting motion to strike class allegations before close of discovery; where
complaint alleged that plaintiffs were discriminated against based on gender as result of
subjective decisions made at local store level, plaintiffs cannot satisfy 23(a) commonality
requirement; class certification under 23(b)(2) for equitable relief, including individualized
monetary relief, foreclosed by *Dukes*); *cf. Rodriguez v. Nat'l City Bank*, 277 F.R.D. 148 (E.D.
Pa. 2011) (same in "excessive subjectivity" lending discrimination disparate impact case); *In re
Wells Fargo Residential Mortgage Lending Discrimination Litig.*, No. 08-MD-01930, 2011 WL
3903117 (N.D. Cal. Sept. 6, 2011) (same; "evidence that a 'policy of discretion' . . . produces a
disparity is insufficient, by itself, to establish commonality for purposes of Rule 23(a)").
[15] *Id.* (giving managers discretion to make subjective evaluations is "a very common and
presumptively reasonable way of doing business — one that we have said 'should itself raise no
inference of discriminatory conduct.'") (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S.
977, 990 (1988) ("policy of leaving promotion decisions to the unchecked discretion of lower
level supervisors should itself raise no inference of discriminatory conduct")).
[16] *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988); *see also Denney v. City of
Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("[i]t is inconceivable that Congress intended anti-
discrimination statutes to deprive an employer of the ability to rely on important criteria in its
employment decisions merely because those criteria are only capable of subjective evaluation";
subjective evaluations are important and effective evaluation tools); *Chapman v. Al Transport*,
229 F.3d 1012, 1033 (11th Cir. 2000) ("subjective evaluations of a job candidate are often
critical to the decision-making process"); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989)
("[s]ubjective criteria necessarily and legitimately enter into personnel decisions involving
supervisory positions").

discretion to make employment decisions cannot satisfy Rule 23(a)(2), even if that practice coexists with an apparent gender-based disparity.  That is because answering the "unbridled discretion" question would do nothing to illuminate the *actual* reason for each of the thousands of individual employment decisions that lie at the heart of the lawsuit.  Plaintiffs' theory, even as articulated in their Amended Complaint, is flawed at its core because, as a matter of law, the theory cannot unite thousands of individual decisions made for a myriad of reasons into a question common to the class, the answer to which would either establish or disprove an essential element of the liability case.[17]

## II.    AS A MATTER OF LAW, PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF RULE 23(b).

Plaintiffs seek back pay and front pay, as well as compensatory and punitive damages, individualized to each and every member of a class of all female current and former Goldman Sachs financial services employees working in revenue-producing divisions.  *See* Am. Compl. ¶¶ 57, 154, 161, 178, 185, 190-91.  *Dukes* held, unanimously, that such a case cannot be certified under Rule 23(b)(2).  *Id.* at 2557 (claims for "monetary relief may [not] be certified under" Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief").  Plaintiffs responded to this holding by urging the Court to engage in a

---

[17] Plaintiffs also dress up their "too little objectivity" claim in a disparate impact disguise, but the label attached to the claim is irrelevant.  *Dukes* dealt (among other things) with the commonality requirement of Rule 23(a)(2); that requirement applies with equal force when plaintiffs press a disparate impact claim.  Even if Plaintiffs could show that using "too little objectivity" correlates with numbers suggesting a statistically significant adverse impact on women at Goldman Sachs, the Company would still be absolutely entitled by the text of Title VII to show that as to each member of the class the same decision would have been made on non-discriminatory grounds. *See, e.g.*, *In re Employment Discrimination Litig.*, 198 F.3d 1305, 1315 (11th Cir. 1999) (in disparate impact case, "the employer must be given an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway"); 42 U.S.C. § 2000e-5(g)(2)(A) (2006) ("[n]o order of the court shall require . . .  the payment [] of any back pay, if such individual was [denied an employment opportunity] for any reason other than discrimination on account of race, color, religion, sex, or national origin").

- 10 -

legally baseless process of "hybrid" certification.  In accepting this flawed construct, which is central to the Amended Complaint, the Magistrate Judge disregarded the clear teachings of *Dukes*.  This Court should decline to follow the Magistrate's erroneous recommendation.[18]

Plaintiffs contend that the Court can certify "liability-phase injunctive and declaratory relief" under Rule "23(a), (b)(2) and (c)(4)" and use Rule 23(b)(3) to certify their claim to "monetary damages and other make-whole relief."  Am. Compl. ¶¶ 58-59.  Rule 23(c)(4), however, does nothing to simplify this case or produce the class litigation efficiencies for which it is designed.  It adds nothing to Plaintiffs' claim to certification, which should be stricken.

Subsequent to the landmark decision in *Dukes*, numerous courts have denied certification of putative employment law class actions, like this one, that seek to litigate claims whose true foundation challenges the exercise of discretion by numerous managers.  These cases have denied certification regardless which portion of Rule 23(b) the plaintiffs seek to invoke.

In *Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292, 2011 WL 6256978 (D.N.J. Dec. 14, 2011), the court granted defendant's motion to deny certification, over the plaintiffs' objection that discovery was not yet complete.  The court concluded that the Supreme Court's decision in Dukes established that the plaintiffs cannot obtain certification of their putative disparate

---

[18] As Goldman Sachs predicted, Plaintiffs cited Judge Garaufis' decision in *United States v. City of New York*, 276 F.R.D. 22 (E.D.N.Y. 2011) ("*Vulcan Society*"), as authority for permitting a Rule 23(b)(2) certification of the "liability" phase of this case, and Magistrate Judge Francis relied heavily upon the *Vulcan Society* opinion.  This reliance is ill-founded, however, as *Vulcan Society* is readily distinguishable from this case.  *Vulcan Society* involved a post-liability request for decertification, in a case regarding the discriminatory use of a fixed cut-off score for a pencil-and-paper employment test, a situation that epitomizes the proper use of Rule 23 in an employment case.  The cut-off score established a binary, pass-fail "liability" question: those who failed to achieve the requisite score on the examination were *necessarily* harmed because they could not thereafter be considered for the applicable jobs.  There is no such pass-fail situation at issue here.  Even if Plaintiffs were able to show that one or more employment decisions at Goldman Sachs were made without "sufficiently objective" standards, or even that a particular individual decision was made for a discriminatory reason, "demonstrating the invalidity of one manager's use of [those standards would] do nothing to demonstrate the invalidity of another's."  *Dukes*, 131 S. Ct. at 2554.

treatment class claims under Rule 23(b)(2), or of their putative disparate impact class claims under Rule 23(b)(3).

Even though the plaintiffs in *Lockheed Martin* disclaimed any interest in obtaining compensatory or punitive damages on their disparate treatment claims – as had the plaintiffs in *Dukes*, but not the Plaintiffs here – the court concluded that certification of their "claims for individualized monetary relief under Rule 23(b)(2) is barred as a matter of law." Slip op. at *4. "Plaintiffs' requested individualized salary judgment is precisely the type of individualized monetary claim in a Rule 23(b)(2) action that has been barred by *Dukes*." *Id.* (citing *Dukes,* 131 S. Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.")). This same conclusion applies in the instant case, notwithstanding that Plaintiffs here have not completed as much discovery as the plaintiffs had in *Lockheed Martin*. There is no reason to permit the Plaintiffs to impose massive discovery burdens on Goldman Sachs where the outcome is predetermined – Rule 23(b)(2), as conclusively interpreted in *Dukes*, cannot be the basis for certifying the claims for monetary relief that Plaintiffs assert.

The *Lockheed Martin* court was also required to address the plaintiffs' allegation that multiple processes utilized by the defendant resulted in an adverse impact upon women's compensation and promotion opportunities – just as the Plaintiffs allege herein. The court concluded, again based on the analysis in *Dukes*, that certification of the disparate impact claim under Rule 23(b)(3) – just as Plaintiffs seek here – was inappropriate.

> Plaintiffs are correct to note that *Dukes* did not address the applicability of Rule 23(b)(3) to the *Dukes* plaintiffs. . . . However, the *Dukes* Court did not need to address the applicability of Rule 23(b)(3) precisely because the Court held "that the plaintiffs c[ould] not cross the 'commonality' line set by Rule 23(a)(2)." *Dukes,* 131 S.Ct. at 2562 (Ginsburg, J., dissenting); *see id.* at 2556 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate,* but in order to determine

> (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common]
> question.' And there is not here.") (emphasis in original) (Scalia, J.).
> Therefore, the Court's analysis of whether Plaintiffs have satisfied their
> burden of demonstrating that class certification is appropriate under Rule
> 23(b)(3) must begin with an analysis of whether a common question exists as
> required by Rule 23(a)(2). For the reasons discussed below, the Court holds
> that Plaintiffs have failed to establish the existence of a common question.

Slip op. at 5.  Just as the *Lockheed Martin* court concluded, the Plaintiffs' inability to identify a

common question under Rule 23(a) in this lawsuit dooms their request for certification of a

disparate impact claim under Rule 23(b)(3).

A.   **As A Matter Of Law, Plaintiffs Are Ineligible For Rule 23(b)(2) Certification Of The "Liability" Phase Of This Case.**

*Dukes* confirmed that Rule 23(b)(2) – the portion of the rule pursuant to which

Plaintiffs propose that "liability" be determined[19] – applies only when the plaintiffs advance

---

[19] Plaintiffs' attempt to subdivide this case into "liability" and "damages" phases is flawed.  *See*
Am. Compl. ¶¶ 58-59.  The neat division Plaintiffs suggest between these aspects of the case
simply does not exist; indeed, the liability and damages questions are closely intertwined.  In the
initial phase of a pattern or practice case, for example, the question posed is whether
discrimination is the employer's "standard operating procedure," the "regular rather than the
unusual" method of employment decision-making.  *Int'l B'hd of Teamsters v. United States*, 431
U.S. 324, 336 (1977).  If the answer to that question is yes, the court can enter a declaratory
judgment and an injunction aimed broadly at the employer's practices, but at that stage of the
litigation the employer is not made liable to a single member of the plaintiff class.  Similarly, in a
disparate impact case, the defendant retains the statutory right to argue that the individual
plaintiff would have been treated the same even if the policy had not been in place.  *See*, *e.g.*, *In
re Emp. Discrimination Litig.*, 198 F.3d at 1315 ("the employer must be given an opportunity to
demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the
individual plaintiff would not have been awarded the job or job benefit at issue anyway"); *United
States v. City of New York*, 258 F.R.D. 47, 56-57 (E.D.N.Y. 2009) (once an individual class
member shows that she was affected by the challenged facially neutral policy or practice, the
employer "in turn can [try to] establish by a preponderance of the evidence that a legitimate non-
discriminatory reason existed for the particular adverse action").  Thus, in both disparate impact
and pattern or practice cases, the defendant's alleged liability to class members awaits an
*individualized* determination of causation and injury made during the second phase—what
Plaintiffs disingenuously call the "remedy" phase.  Thus, "[i]t is misleading to speak of the
additional proof required by an individual class member for relief as being a part of the damage
phase, that evidence is actually an element of the liability portion of the case."  *Price Waterhouse
v. Hopkins*, 490 U.S. 228, 266 (1989) (O'Connor, J., concurring) (quoting *Dillon v. Coles*, 746
F.2d 998, 1004 (3d Cir.1984)); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 861 (3d Cir. 1987)

claims for prospective injunctive relief, rather than individualized remedies.[20]  Although Plaintiffs claim they will seek prospective injunctive relief during what they call the "liability" phase of this case, they have no standing to seek relief of this sort, as none is a current employee of Goldman Sachs.  Injunctions regulate future conduct, and a party has standing to seek injunctive relief only if that party faces an "actual or imminent, not conjectural or hypothetical" threat of harm.  *Port Washington Teachers' Ass'n v. Bd. of Educ. of Port Washington*, 478 F.3d 494, 498 (2d Cir. 2007); *accord Shotz v. Cates*, 256 F.3d 1077, 1081-82 (11th Cir. 2001).  "[S]tanding is to be determined as of the commencement of suit."[21]  At the outset of a case, prior to any proof of harm, an individual plaintiff cannot be assumed to have a right to reinstatement, and therefore any threat to the plaintiff from the employer's policies and procedures is decidedly hypothetical.  To have standing, Plaintiffs "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future."  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).   This fundamental legal principle cannot be upheld, however, if a class can be certified on the basis of a request for injunctive relief, by a litigant who is no longer an employee, on the theory that she *might* later get reinstated, following

_____

(same).
[20] Indeed, the Court in *Dukes* suggested that the subdivision may be applicable only where such relief is the *exclusive* form of relief sought, although it found no reason to expressly reach "that broader question."  *Dukes,* 131 S. Ct. at 2557.
[21] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.5 (1992) (stating this rule); *O'Shea v. Littleton*, 414 U.S. 488, 493-945 (1974) (to establish standing, the plaintiff must have "a personal stake in the outcome such as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions" (internal quotations and citation omitted); "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"); *Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120, 127 (3d Cir. 2006) ("For constitutional and prudential standing it is well established that standing must exist at the time the suit is commenced and throughout the suit."); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("It is not enough for [the plaintiff] to attempt to satisfy the requirements of standing as the case progresses. The requirements of standing must be satisfied from the outset.").

an individualized determination of her personal non-class claims, which just as likely may show that reinstatement is inappropriate, in which case she had no judicial standing to seek injunctive relief in the first place.  This is the fallacious circular logic underlying the Magistrate's acceptance of Plaintiffs' hybrid certification proposal.

Courts therefore routinely hold that former employees like Plaintiffs have no standing to seek injunctive relief in discrimination cases, as they have no more than a speculative risk of facing discrimination at any point in the future, *see*, *e.g.*, *Jackson v. Motel 6 Multipurpose Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997), and cannot obtain class certification under Rule 23(b)(2) in employment cases.[22]  Here, the speculation is even more extreme, as none of the Plaintiffs has asserted a cause of action in the Amended Complaint alleging discriminatory termination.

The *Dukes* Court affirmed these principles, observing that those "no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices."  131 S. Ct. at 2560; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) ("Plaintiffs not employed . . . throughout this case do not have standing to seek injunctive relief.").  Magistrate Francis erred by not following the substantial case law on this issue, and this Court should not affirm that erroneous decision.

---

[22] *See*, *e.g.*, *Milligan v. Am. Airlines*, *Inc.*, 327 F. App'x 694 (9th Cir. 2006) (former employee has no standing to seek injunction as class representative); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918 (11th Cir. Mar. 11, 2002) (denying certification under Rule 23(b)(2) because former employee/class representative had no standing to seek injunctive relief); *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 298-99  (C.D. Cal. 2011) (23(b)(2) certification inappropriate because former employees lacked standing to sue for injunctive relief); *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 102 (D. Mass. 2010) (former employee an "inadequate representative" for a Rule 23(b)(2) class action "because an injunction is the primary relief requested and, because she would not benefit from such relief, she may not ardently advocate for it"); *Harper v. Ulta Salon Cosmetics & Fragrance, Inc.*, No. 1:05-cv-1285-TWT, 2005 U.S. Dist. LEXIS 38049, at *3 (N.D. Ga. Dec. 23, 2005) (former employees "lack standing to pursue a claim for injunctive relief").

**B.**    **Rule 23(c)(4) Does Not Improve Plaintiffs' Claim To Certification Under Rule 23(b)(2).**

Plaintiffs suggest that the defects of their claim to class certification in this case can be minimized by utilizing a "hybrid" certification under Rule 23(c)(4), which, under appropriate circumstances, allows the court to certify discrete issues and leave others uncertified.[23]  Rule 23(c)(4), however, does not permit a plaintiff to avoid the legal standards applicable to the predominant portion of their case.  A "court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200-01 (3d Cir. 2009).[25]

---

[23] The subdivision provides:  "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

[24] In *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), the Second Circuit held that Rule 23(c)(4) issue certification is possible even when the case as a whole could not meet the requirements of Rule 23(b).  That case involved a challenge to the county's "blanket strip search policy for newly admitted, misdemeanor detainees" at a penal facility.  *Id.* at 221.  Because the case dealt with a "blanket" policy – everyone in the class allegedly (indeed, in large part concededly) was handled under precisely the same official, invariable policy – individual liability issues were "*de minimis*," and the court found that a class action limited to questions of liability would be a simple matter to administer.  *In re Nassau County* does not help Plaintiffs.  First, it is likely no longer good law.  *Dukes* expressly held that every class action "must satisfy at least one of the three requirements listed in Rule 23(b)."  *Dukes*, 131 S. Ct. at 2548.  Second, even if its principle survived *Dukes*, the threshold predicate that *In re Nassau County* establishes for such an issue certification – "that any individualized [liability] inquiries will be few and far between," 461 F.3d at 230 – is absent here, where Title VII expressly permits the defendant to demonstrate as to each class member that individual relief is inappropriate.

[25] In *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006), the Second Circuit held that Rule 23(c)(4) issue certification is possible even when the case as a whole could not meet the requirements of Rule 23(b).  That case involved a challenge to the county's "blanket strip search policy for newly admitted, misdemeanor detainees" at a penal facility.  *Id.* at 221.  Because the case dealt with a "blanket" policy – everyone in the class allegedly (indeed, in large part concededly) was handled under precisely the same official, invariable policy – individual liability issues were "*de minimis*," and the court found that a class action limited to questions of liability would be a simple matter to administer.  *In re Nassau County* does not help Plaintiffs.  First, it is likely no longer good law.  *Dukes* expressly held that every class action "must satisfy at least one of the three requirements listed in Rule 23(b)."  *Dukes*, 131 S. Ct. at 2548.  Second, even if its principle survived *Dukes*, the threshold predicate that *In re Nassau County* establishes for such an issue certification – "that any individualized [liability] inquiries will be few and far between," 461 F.3d at 230 – is absent here, where Title VII expressly permits the defendant to demonstrate as to each class member that individual relief is inappropriate.

The question in this (and every other) proposed use of hybrid certification is whether subdividing the case and trying on a class-wide basis the issues arguably amenable to class-wide proof would meaningfully "reduce the range of issues in dispute and promote judicial economy." *McLaughlin*, 522 F.3d 215 at 234 (citations omitted). If Rule 23(c)(4) certification of some "liability" aspects of the case would leave a substantial "number of questions . . . remain[ing] for individual adjudication" after the "common" questions had been resolved, Rule 23(c)(4) certification would be an abuse of discretion. *Id.* at 234; *accord Dungan v. Acad. at Ivy Ridge*, 249 F.R.D. 413, 417 (N.D.N.Y. 2008) ("severing various elements of Plaintiffs' claims for purposes of class-action adjudication and leaving the remainder for individualized adjudication (i.e., issue certification) would not meaningfully reduce the range of issues in dispute [or] promote judicial economy and will lead to potential confusion and redundancy in the presentation of proof"), *aff'd,* 344 F. App'x 645 (2d Cir. 2009); 1 *McLaughlin on Class Actions*, § 4:43 (7th ed.) ("The problem is that this kind of bifurcation frequently does not materially advance the overall disposition of the case because the 'liability' issue rarely is amenable to a neat package that can be created without consideration of plaintiff-specific matters such as fact of injury, causation, reliance and extent of damage.").

Piecemeal certification of this case through Rule 23(c)(4) would not promote judicial economy but rather would hopelessly complicate matters. Even if Plaintiffs could establish that a Rule 23(b)(2) class asserted by three former employees could be certified, and even if they prevailed at their proposed phase one – what they call the "liability" phase of the case, which they would have the Court certify under Rule 23(b)(2) – nearly every question of consequence would remain "for individual adjudication." As noted above, during the first phase of a pattern or practice class trial, Plaintiffs would have to prove that discrimination is Goldman Sachs' "standard operating procedure," the "regular rather than the unusual" method of employment

decision-making.  *Int'l B'hd of Teamsters v. United States*, 431 U.S. 324, 336 (1977).  If

Plaintiffs had standing to seek that relief, and if they were actually able to make that showing on

the merits, the Court theoretically could enter a declaration to that effect and an injunction

modifying certain Goldman Sachs' practices.[26]

      But what Plaintiffs actually propose is a second *liability* phase, at which *liability*

questions must be resolved as to each class member.  As the *Dukes* Court explained, however,

Title VII explicitly provides the defendant, even in a class action, the absolute statutory right

> to individualized determinations of each employee's eligibility for
> backpay. . . . [If] the employer can show that it took an adverse
> employment action against an employee for any reason other than
> discrimination, the court cannot order the "hiring, reinstatement, or
> promotion of an individual as an employee, or the payment to him
> of any backpay."  [Thus, even after a pattern or practice finding,
> the defendant has] the right to raise any individual affirmative
> defenses it may have, and to "demonstrate that the individual
> applicant was denied an employment opportunity for lawful
> reasons."

131 S. Ct. at 2560-61(citations omitted) (citing 42 U.S.C. § 2000e-5(g)(2)(A)).[27]

      Thus, under the Plaintiffs' proposal, even if a jury found pattern-or-practice liability in

the first stage, the question of liability as to *every* class member in the case would remain for a

jury to decide in their hypothesized second phase.  131 S. Ct. at 2560-61.  Then, under Plaintiffs'

fatuous proposal, questions of individualized equitable relief like back pay and reinstatement still

would remain for the Court to decide.  The conflict with *Dukes* is apparent, and this proposal

---

[26] Plaintiffs request a "preliminary and permanent injunction [sic] against Goldman Sachs . . . from
engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or the Class
because of their gender or participation in this lawsuit," with no definition of what such practices are.
*See* Am. Compl. ¶ 191(e).  This is impermissible.  "An injunction simply commanding the defendant
to obey the law violates [Fed. R. Civ. P.] 65 because it is insufficiently specific and does not inform
the defendant what conduct is outlawed."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d
114 (2d Cir. 2011) (citing cases).

[27] Indeed, because Plaintiffs seek compensatory damages, individualized inquiries are even more
dominant here than in *Dukes*, where "the named plaintiffs declined to include employees' claims for
compensatory damages in their complaint.  That strategy of including only back pay claims made it
more likely [in *Dukes*] that monetary relief would not 'pre-dominate.'"  *Id.* at 2559.

also conflicts with the Second Circuit's instruction that Rule 23(c)(4) simply may not be used when numerous individual liability questions would remain.  Plaintiffs cannot rescue their doomed attempt to prove the existence of a class by invoking Rule 23(c)(4).[28]

### C.    Plaintiffs' Proposed Bifurcated Treatment Of Liability Issues Risks A Seventh Amendment Violation.

The Magistrate Judge's Report ignores the serious constitutional issues presented by the Plaintiffs' two-stage liability determination scheme.  The Seventh Amendment's Re-Examination Clause provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States."  Because no single jury could conceivably sit long enough to consider whether Goldman Sachs might be liable to each of the thousands of individual proposed class members, and because the same facts adduced in the first-stage liability determination will be relevant to the second liability phase that Plaintiffs propose, their scheme is not permissible. *See In re Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) (the "right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them . . . and not reexamined by another finder of fact.").  Appellate courts repeatedly have struck down, as prohibited by the Seventh Amendment,

---

[28] In *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001), the court concluded that the district court should have certified a discrimination class action under Rule 23(b)(2), or, alternatively, should have considered a hybrid certification under Rule 23(c)(4).  Contrary to the Magistrate's R&R, even if *Robinson* could be reconciled with the Second Circuit's more recent analysis of Rule 23(c)(4) standards in *McLaughlin*, 522 F.3d at 234, nothing of substance remains of *Robinson* after *Dukes*.  For example, to smooth the way to class certification, the *Robinson* court held that claims for individualized monetary relief could be certified under Rule 23(b)(2) under a forgiving "formula-relief" standard that the *Dukes* Court expressly rejected.  *Compare Robinson*, 267 F.3d at 161 n. 6 ("some cases may require class-wide, rather than individualized, assessments of monetary relief," thus minimizing the number of individualized determinations left to be made after the "liability" phase has been completed) *with Dukes*, 131 S. Ct. at 2550 (expressly repudiating *Hilao v. Est. of Marcos*, 103 F.3d 767, 782-87 (9th Cir. 1996), on which *Robinson* relied for support).  Similarly, the *Robinson* court's statement that "any due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members," 267 F.3d at 166, is no longer good law after *Dukes*.  131 S. Ct. at 2558.

- 19 -

trial schemes where one jury is asked to decide generic liability issues and subsequent juries are free to apply (or refuse to apply) the presumptions created by the first jury to individual class members. *See Blyden v. Mancusi*, 186 F.3d 252, 266-67, 269 (2d Cir. 1999) (7th Amendment violation to have two-stage trial of prisoners' retaliatory treatment claims, where both juries will address whether officers engaged in unlawful reprisals; the "damages" juries had actually been asked to decide *liability* as to specific sets of facts "without regard to how the [first] liability jury viewed that particular act. This of course created the real possibility – amounting to a probability – that acts found to be 'reprisals' by the liability jury were different from the acts found to be 'reprisals' by the damages juries. This procedure clearly violated the Seventh Amendment."). Plaintiffs' proposed two-stage liability plan has the same fatal flaw.[29]

### III.   CERTIFICATION OF PLAINTIFFS' PROPOSED "EXCESS SUBJECTIVITY" CLASS UNDER RULE 23(b)(3) ALSO IS FORECLOSED BY *DUKES.*

The Magistrate's Report and Recommendation also errs in accepting Plaintiffs' argument that a class could be certified under Rule 23(b)(3). Rule 23(a)(2) requires that a class complaint pose common questions that, when answered, can "drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. The defects in Plaintiffs' allegations are even more glaring when assessed against Rule 23(b)(3)'s more rigorous requirement that "questions of law or fact common to the class members predominate over any questions affecting only individual members." *Id.* at 2552; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1977) (Rule 23(b)(3)'s

---

[29] Suppose Plaintiffs call a Goldman Sachs employee – Ms. Doe – to testify at the stage one trial. The stage one jury would reach conclusions about whether Ms. Doe had been the subject of discriminatory conduct, but would render no verdict as to her individual claim. Regardless of what the jury concludes about Ms. Doe's treatment, her claim would be determined by a second-stage jury, which would be called upon to reassess the same conduct, with the real risk that it could reach the diametrically opposite conclusion about whether Ms. Doe had been discriminated against. This clearly violates the Seventh Amendment, and the Court is obliged to avoid such "constitutional problems" in the "necessary consequences" of its choices among alternate litigation paths. *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *accord United States. v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) (applying "rule of constitutional avoidance").

"predominance criterion is far more demanding" than the Rule 23(a)(2) commonality standard);

*accord Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

No matter what facts Plaintiffs might adduce through further discovery, they could never

meet this standard.  If Plaintiffs' reconfigured "excessive subjectivity and discretion" class

cannot satisfy Rule 23(a)(2), then certainly, as a matter of law and logic, it cannot satisfy the far

more demanding Rule 23(b)(3) "predominance" standard.[30]  Because the Plaintiffs' fundamental

assertion that Goldman Sachs managers "exercise too much discretion" is insufficient "glue" to

hold the class together under the relatively less rigorous Rule 23(a)(2) commonality test – and

*Dukes* holds unambiguously that this is true – that assertion is patently insufficient to meet the

far more demanding "predominance" test.  Plaintiffs' class allegations cannot stand because class

certification under *either* Rule 23(b)(2) *or* (b)(3) would be impermissible under *Dukes*.[31]

---

[30] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1269 (11th Cir. 2009) ("a [Rule 23(b)(3)] finding that 'questions of law or fact common to the class members predominate over any question affecting only individual members' . . . necessarily requires an antecedent finding that there is at least one common question of law or fact in the first place" under Rule 23(a)(2)).

[31] The court in *Vulcan Society* held that the remaining individual liability and damages questions in that case did not predominate, but that conclusion was premised largely on the highly unusual context of that case, which involved hard cut-off scores on paper-and-pencil tests.  Because there were more class members than jobs, the facts suggested to the court that individualized relief would involve a hopeless inquiry into which class members would have been placed in open positions.  That led the court to the conclusion that it could use an "aggregate backpay" formula to award money to class members *without individualized inquiry* (even though formulaic damages were expressly rejected as a class management strategy in *Dukes*).  276 F.R.D. at 47-48.  Even if such formulaic relief in those unusual circumstances could be reconciled with *Dukes* – and Defendants contend that *Vulcan Society* is flatly wrong on that point – no such facts are present here.  This case involves no pass-fail exam; Plaintiffs challenge *inter alia* the results of multi-rater, multi-factor 360° performance evaluation scores, individual managers' use of those scores and other performance factors, to arrive at an assessment of each subordinate employee's overall performance, and pay and promotion decisions that take all of these factors, and others, into account.  This is vastly different from the single-score system in *Vulcan Society*.

The *Vulcan Society* decision also is readily distinguishable because of the very different parties who had been before the court.  As the district court there opined, the City's reliance on *Dukes* was misplaced because doing so "ignored a crucial point that distinguishes this litigation from most other class actions.  The United States [was] the original Plaintiff in th[at] case," *id.* at 49-50, and because Rule 23 does not apply to the government in Title VII cases, *General Tel. Co. v. EEOC*, 446 U.S. 318, 327 & n.9 (1980), the *Dukes* Court's detailed discussion of that Rule was simply

**IV.  PLAINTIFFS CANNOT ASSERT A TITLE VII DISPARATE IMPACT CLAIM BECAUSE THEY MADE NO SUCH A CLAIM IN THEIR EEOC CHARGES.**

The Magistrate's Report also disregards the extensive case law establishing that an individual who does not allege a Title VII disparate impact claim in her EEOC charge of discrimination cannot later litigate that claim in court.  This threshold requirement to exhaust administrative remedies is not a procedural nuisance to be disregarded or circumvented; it is a statutory precondition to suit – "an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply."  *Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)), *aff'd on other grounds*, 411 F.3d 69 (2d Cir. 2005).  It exists to foster the strong federal policy in favor of conciliation and the employer's legitimate interest in knowing the nature of the claims against it so that it can make an informed decision as to whether, and on what terms, a voluntary resolution might be reached.  *See, e.g.*, *McGoffney v. Vigo Cnty. Div. of Family & Children, Family & Soc. Servs. Admin.*, 389 F.3d 750, 752 (7th Cir. 2004) (limiting Title VII litigation to claims in EEOC charge serves important purpose of giving employer notice of conduct as to which plaintiff is aggrieved).

The charging party is obliged to include in the charge all of the claims that he or she may wish to pursue in court.  Although there are no "magic words" a charging party must recite in an EEOC charge to describe adequately a claim of discrimination, a Title VII plaintiff can litigate only those claims expressly raised in the charge and those that are "like or reasonably related" to those specifically articulated – claims that are "so closely related that [requiring] agency action [on those claims not specifically mentioned] would be redundant."  *Brown v. Puget Sound Chapter Nat'l Elec. Contractors Ass'n*, 732 F.2d 726, 730 (9th Cir. 1984).  Courts addressing

irrelevant there. *Vulcan Society*, 276 F.R.D. at 47-48.  By contrast, the Rule 23 standards conclusively established in *Dukes* are of central importance here.

this issue often attempt to determine whether the EEOC's investigation into the actual text of the charge would reasonably have led it to investigate other claims that were not expressly mentioned.  *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980).

Plaintiffs' Title VII disparate impact claim, Am. Complaint ¶¶ 144-147, does not meet this test.  Although the three EEOC charges were quite detailed, and were filed with the involvement of experienced counsel, not one of the charges mentions the disparate impact theory, in name or in substance; nor does even one of those charges articulate any of the essential elements of a disparate impact claim, or the facts underlying such a claim.  A "plaintiff alleging disparate impact must begin 'by identifying the specific employment practice that is challenged'" – a facially neutral rule or standard that is alleged to have had a disproportionately negative impact on those in the protected category.  *Woodman*, 293 F. Supp. 2d at 390.  The disparate treatment theory and the disparate impact theory are "largely separate theories of discrimination"; alleging one does not mean the EEOC could reasonably be expected to investigate the other.  *Pacheco v. Mineta*, 448 F.3d 783, 787, 792 (5th Cir. 2006) (plaintiff failed to exhaust disparate impact claim where charge "facially alleged disparate treatment . . . identified no neutral employment policy [and] complained of past [instances] of disparate treatment"); *see also McClain v. Lufkin Indus.*, *Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) ("'the cornerstone of any EEOC disparate-impact investigation' is a neutral employment policy"; where charge "nowhere refers to any neutral employment policy," disparate impact claim is not "like or reasonably related" to disparate treatment claim) (internal citations omitted); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258-59 (7th Cir. 1996) ("[g]iven that a primary purpose of the scope-of-the-charge doctrine is to prevent 'circumvent[ion of] the EEOC's investigatory and conciliatory role,' . . . refusing to allow [plaintiff's] charge of retaliation to support his

- 23 -

subsequent disparate impact claim would seem particularly appropriate").

　　None of the charges filed by Plaintiffs mentions any practice or facially neutral rule that operated to the detriment of women – the *sine qua non* of a disparate impact claim.  Plaintiffs did not need to use sophisticated legalese in their charges.  They did not need to use "magic words" such as "disparate" or "impact," but, at a minimum, they were required to put Goldman Sachs on notice that there were certain processes or policies that they claimed disproportionately negatively affected women.   It would have been sufficient for Plaintiffs to use simple lay terms to describe these processes or policies, but in each charge they failed to do so.

　　All that is contained in the charges filed by these Plaintiffs are idiosyncratic facts about alleged *intentional* discrimination by Goldman Sachs.  Plaintiff Chen-Oster alleges that she was "assaulted . . . in the fall of 1997" and that after that attack she was "evaluated more harshly than similarly situated men," was given an unfavorable seating assignment, and was given no meaningful work assignments when she returned from maternity leave.  Plaintiff Parisi alleges that her pay and promotional opportunities were not commensurate with her contributions.  Plaintiff Orlich alleges that she received "positive feedback and praise for [her] work" but not the pay or opportunities that her work merited.  *See* Statement of Undisputed Material Facts ("SUMF") [Docket No. 100] ¶ 2, and Declaration of Theodore O. Rogers, Jr., ("Rogers Decl.") [Docket No. 99] ¶ 2, Ex. A.

　　None of the allegations made by Plaintiffs to the EEOC even so much as hints at the existence of a disparate impact claim, and the charges therefore cannot support a disparate impact claim in this Court.  In some instances – for example in the Second Circuit's decision in *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992) – the court is left to imagine the course of an EEOC investigation that never was.  There, the charge failed to mention the phrase "disparate impact" but did allege the existence of a facially neutral employment policy – a tenure rule that

candidates for the position in question had to satisfy.  Because the charge mentioned this facially

neutral rule and alleged that it disadvantaged the charging party, the court hypothesized that had

the EEOC continued investigating the charge, it "could . . . reasonably [have been expected to]

inquire [] as to whether this possibly unnecessary [facially neutral] rule had a discriminatory

impact on employees of Portuguese descent."  *Id.* at 1334.  The Plaintiffs' charges in this case do

not even leave room for such hypothesizing.  The EEOC charges here *were actually investigated*

by the agency *for years*, and we know the course that investigation took.  Indisputably, in the

five years it considered Plaintiff Chen-Oster's disparate *treatment* allegations, and in the year it

investigated the disparate *treatment* allegations by Plaintiffs Orlich and Parisi, the EEOC *never*

undertook any disparate *impact* investigation.[32]  The general rule – that a disparate treatment

claim and a disparate impact claim are so inherently different that one will rarely be "like or

reasonably related" to the other – applies here, not the *Gomes* exception.[33]  The failure of

Plaintiffs to assert expressly in their EEOC charges a disparate impact claim, or even to identify

a specific challenged neutral employment practice, requires that judgment be granted to

Goldman Sachs on the Second Claim for Relief in the First Amended Complaint.

## CONCLUSION

For the forgoing reasons, notwithstanding the Report and Recommendation of the

Magistrate Judge, Plaintiffs' class allegations should be stricken and summary judgment should

be entered on Count II of their Amended Complaint.

---

[32]  *See* SUMF ¶¶ 2-11; Rogers Decl. ¶¶ 2-7.

[33]  Goldman Sachs does not urge a rule that would categorically prohibit a disparate impact claim
arising from what appears on its face to be a disparate treatment charge.  The "like or reasonably
related" test requires an inherently "fact-intensive analysis," *McClain*, 519 F.3d at 273, and, as
*Gomes* demonstrates, sometimes the allegations in a particular disparate treatment charge will satisfy
the exhaustion requirement.  But the facts in this case point in the other direction, and *Gomes* is of no
help to Plaintiffs.

Dated:  February 2, 2012             PAUL HASTINGS LLP
New York, New York

By:          /s/ Zachary D. Fasman
             BARBARA B. BROWN *(admitted pro hac vice)*
             ZACHARY D. FASMAN
             C. GEOFFREY WEIRICH *(admitted pro hac vice)*
             75 East 55th Street
             New York, New York  10022
             (212) 318-6000
             barbarabrown@paulhastings.com;
             zacharyfasman@paulhastings.com
             geoffweirich@paulhastings.com

             SULLIVAN & CROMWELL LLP
             THEODORE O. ROGERS, JR.
             SUHANA S. HAN
             125 Broad Street
             New York, New York  10004
             (212) 558-4000
             rogerst@sullcrom.com
             hans@sullcrom.com

             Attorneys for Defendants
             GOLDMAN, SACHS & CO. and THE
             GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH, | 10 Civ. 6950 (LBS) (JCF) |
| Plaintiffs, | |
| vs. | **CERTIFICATE OF SERVICE** |
| GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC. | |
| Defendants. | |

---

I hereby certify that on February 2, 2012, I caused a copy of the foregoing Defendants' Objections to Magistrate's Report and Recommendation on Defendants' Motion to Strike All Class Allegations in Plaintiffs' First Amended Complaint and for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII to be served by the Court's ECF system on:

Adam T. Klein
Cara E. Greene
Jennifer L. Liu
OUTTEN & GOLDEN, LLP
3 Park Avenue, 29th Floor
New York, New York 10016
*Attorneys for Plaintiffs*

Kelly M. Dermody
Anne B. Shaver
Heather H. Wong
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
*Attorneys for Plaintiffs*

Dated: New York, New York
  February 2, 2012                By:  ____/s/ Zachary D. Fasman____
                                          ZACHARY D. FASMAN