C5MLCHEA                         Argument

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   H. CHRISTINA CHEN-OSTER, et
    al.,
4
                    Plaintiffs,
5
            v.                          10 CV 6950 (LBS)(JCF)
6
    GOLDMAN, SACHS & CO., et al.,
7
                    Defendants.
8
    ------------------------------x
9                                       New York, N.Y.
                                        May 22, 2012
10                                      11:07 a.m.

11  Before:

12                     HON. LEONARD B. SAND,

13                                        District Judge

14                          APPEARANCES

15  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
         Attorneys for Plaintiffs
16  BY:  KELLY M. DERMODY
         -and-
17  OUTTEN & GOLDEN, LLP
    BY:  ADAM T. KLEIN
18
    PAUL HASTINGS LLP
19       Attorneys for Defendants
    BY:  BARBARA B. BROWN
20       CARSON H. SULLIVAN
         -and-
21  SULLIVAN & CROMWELL, LLP
    BY:  THEODORE O. ROGERS, JR.
22

23

24

25

C5MLCHEA                          Argument

1            (Case called)

2            THE COURT:  This is a motion to set aside the report

3    and recommendation of the magistrate on the grounds that --

4    well, why don't I let the movant state the grounds.

5            MS. BROWN:  Thank you, your Honor.

6            Before I begin, your Honor, if I may approach the

7    bench, I'd like to provide the Court and my opponents with a

8    few excerpts from the record that I'm going to be referring to.

9            May I do so?

10           THE COURT:  Yes.

11           MS. BROWN:  Thank you.

12           Your Honor, this case is a misuse of the class action

13   process post *Wal-Mart v. Dukes*.  There may be some valid class

14   actions after *Wal-Mart*, but this is not one of them.

15           What the plaintiffs are claiming here -- when they

16   originally filed the case, it was just an undisguised copy of

17   the *Wal-Mart* complaint.  After the Supreme Court's decision,

18   they came up and filed an amended complaint which tries to

19   dress up their allegations in certifiable clothing, but they

20   can't.

21           And as we look at what the plaintiffs have testified

22   to that their complaints are with the personnel processes at

23   Goldman Sachs, you will see that essentially what they're

24   saying is that the exercise of discretion by first- and

25   second-level managers has resulted in an adverse impact against

C5MLCHEA                    Argument

1    women.

2              THE COURT:  Now, forgive me for interrupting --

3              MS. BROWN:  That's fine.

4              THE COURT:  -- I'm sure your well-prepared

5    presentation.  But the gist of the controversy, as I understand

6    it, is whether prior to discovery it is so clear that the

7    plaintiffs cannot allege facts and circumstances which would

8    take this case out of the *Wal-Mart* ruling.

9              MS. BROWN:  Right.

10             THE COURT:  That's a very heavy burden, isn't it?

11             MS. BROWN:  It may be a heavy burden, your Honor, but

12   I don't shrink from the burden at all because let's look at

13   what they're actually alleging here.  This is a case --

14             THE COURT:  What it is that they are alleging prior to

15   discovery.

16             MS. BROWN:  Well, the depositions of the named

17   plaintiffs have been taken, and I want to read you just some

18   short excerpts from their testimony because they talked about

19   what they were concerned with.

20             THE COURT:  Yes.

21             MS. BROWN:  And what we have here is a case that

22   involves all jobs except the entry level, all personnel

23   decisions.  It's not just promotions, it's not one rule, it's

24   not one policy; it's all the divisions, the revenue divisions,

25   essentially, four different businesses, companies, almost, at

C5MLCHEA                          Argument

Goldman Sachs.  So you're starting off here with a case that is much more sprawling in its supposed reach than anything the plaintiffs have cited in any of the cases, except the *Bell* case where the court denied certification.

So we're dealing here with a very unusual set of allegations, that's No. 1, much broader than typical.

Second thing is they have a disparate treatment claim. What did the Supreme Court say in *Wal-Mart* about disparate treatment?  It said unless the plaintiffs can show significant proof of a general policy of discrimination, they can't have a disparate treatment class action.

And what did plaintiff Christina Chen-Oster say?  If you turn to tab 1C in the notebook, she was asked at her deposition, on page 489, and the question was:  And your belief is that the grant of discretion to managers is intentionally done to discriminate against women?

And her answer was:  I don't think that the performance review system was designed to be discriminatory, but I think the impact and the practice has resulted in a discriminatory result.

Then she was asked the same sort of question about the promotion process at page 516:  And the element that you testified to about the MD promotion process that incorporates a nomination having to be made by a managing director -- which is the plaintiff's complaint here -- do you believe that's

1   discriminatory?

2              And the answer was:  I don't think that the notion of

3   the action of a manager nominating their employee to be

4   managing director is in and of itself discriminatory, but I

5   think the impact has been because there are far fewer women

6   nominated than men.

7              And the other named plaintiff, Shanna Orlich, behind

8   tab 1D, at pages 511 and 512, was asked question at line 15:

9   What is the corporate policy that you claim affects the class

10  adversely because of their sex?

11             And the answer was:  The discretion that managers have

12  over someone's incoming career.  They can be placed or not

13  placed in a role that will affect them long term career-wise,

14  compensation, continued employment, business opportunities.

15             So what these plaintiffs themselves are saying is

16  there is no intent to discriminate in the promotion, feedback,

17  and compensation processes.  It may have an impact, and I'm

18  going to talk about that in a bit, but let's just talk about

19  the disparate treatment claim here.  So, they're saying there

20  is no general policy of discrimination.

21             The way that they claim that bias has crept into some

22  decisions is because first-level managers have been given the

23  discretion to make decisions about how someone will be paid,

24  what people will be on their feedback list, who will be

25  nominated for promotion.

1          So the reality is that these are exactly the types of

2    claims that the *Wal-Mart* court said wouldn't satisfy

3    Rule 23(a).  The mere claim by employees of the same company

4    that they have suffered a Title VII injury gives no cause to

5    believe that all of their claims can productively be litigated

6    at once.  And here there is no single policy that they are

7    attacking.  So as to the disparate treatment claim, your Honor,

8    yes, let's just say there is nothing alleged by and sworn to by

9    these named plaintiffs that would satisfy *Wal-Mart*.

10          And I think one thing your Honor has to do here, and I

11    know the plaintiffs don't want to do it, and I think for courts

12    that have operated under a pre-*Wal-Mart* Rule 23 body of law for

13    decades, it's difficult to step back and realize that this is a

14    completely different legal landscape.  The court laid down

15    principles of law about what plaintiffs could do to bridge the

16    gap between their individual claims and class claims, and, at

17    least as to disparate treatment, there is nothing here that

18    would bridge that gap.  So, as a matter of law, they can't

19    pursue that claim.

20          THE COURT:  Isn't there a procedure which would split

21    the difference, that is, suppose the Court agreed with the

22    magistrate that this is premature because there had been no

23    discovery and said, therefore, the motion is denied because we

24    agree with Magistrate Judge Francis that the plaintiffs are

25    entitled to discovery on the sole issue of whether there is any

1    aspect of the procedures which take the case out of *Wal-Mart*,

2    that discovery would be limited to a very brief period of time

3    and that would be the sole area of question, then what would

4    happen, what would happen if they would strike out because the

5    inferences which you're drawing from this is all there is,

6    there isn't any more; your task in defending that outcome in

7    the appellate court would be a much simpler, easier one, and

8    the case would go away.

9           The alternative, which is what you're proposing now,

10   imposes on you the burden of satisfying an appellate court that

11   there is no conceivable result that that limited discovery

12   would permit that would bring the case outside the scope of

13   *Wal-Mart*.

14          MS. BROWN:  Your Honor, I actually think that if you

15   are inclined to deny our motion as premature, I think that's a

16   very good way for us to proceed.

17          And, in fact, we are proceeding and we have discovery

18   ongoing.  We've produced over a hundred thousand pages, maybe

19   close to 200, of policy documents.  And it's exactly what you

20   said, it's aimed at is there a common policy that affects the

21   entire class in a common way so that litigating it together

22   will give a common answer.

23          So I think that kind of focused discovery is, if

24   you're not going to grant the motion outright, is the right way

25   for us to proceed because it will focus on this question that I

1   think really is dramatically different about whether they can

2   meet this standard of a common question and a common procedure

3   that actually yields a common answer.  Because our view is, of

4   course, the exercise of discretion by the managers yields

5   all -- you have to look into each individual decision, as the

6   Supreme Court said, to figure out whether there's bias working

7   or not.

8         So should your Honor be so inclined, I think that kind

9   of a phase is exactly the right approach post *Wal-Mart* in cases

10  where it isn't clear on the pleadings or with the discovery so

11  far.  And that's in fact what the court in the *Bell v. Lockheed*

12  *Martin* case did.  They looked at the policy and process

13  discovery, didn't need full discovery, didn't need *Daubert*

14  motions, didn't need any of that and said can these plaintiffs

15  show that there's a policy here that produces common answers,

16  and they couldn't there so the Court denied it.

17        So if that's your Honor's inclination, I think that

18  makes a great deal of sense.

19        I do think before we get to that there is one other

20  aspect of the case that you could rule on as a matter of law

21  where I think the magistrate went wrong, with all due respect,

22  and that's the question of whether they can seek individualized

23  monetary damages under 23(b)(2).  I think the Supreme Court

24  made it crystal clear you cannot do that because you have to

25  have individualized hearings, and that's not appropriate for

C5MLCHEA                          Argument

 1   the type of injunctive relief they're seeking.

 2          And here we have former employees, which the Supreme

 3   Court said also under a very crystal clear statement cannot

 4   pursue injunctive relief.  They make the point they ask for

 5   reinstatement, but the reinstatement request would ultimately

 6   be stricken because these plaintiffs did not challenge their

 7   termination or resignation from the company.  They are

 8   challenging only incumbent employee issues.  They don't have a

 9   claim for wrongful discharge here or discriminatory discharge.

10          So that piece, 23(b)(2), could be ruled on right now

11   and there is no -- the magistrate's holding, as I say, is just

12   contrary to the clear holding in *Wal-Mart* and in the *Bell v.*

13   *Lockheed Martin* case.  And none of the cases that plaintiffs

14   cite have anything to do with these kinds of situations.

15   They're all disparate impact cases having to do with tests and

16   they don't say a thing about this kind of circumstance.

17          So I would ask your Honor to reject the magistrate's

18   recommendation with respect to that 23(b)(2) issue on damages,

19   and also with respect to the right of or the standing of former

20   employees to seek injunctive relief.

21          THE COURT:  Suppose I hear from the plaintiffs.

22          MS. BROWN:  Certainly.

23          MS. DERMODY:  Good morning, your Honor.  Kelly Dermody

24   for the plaintiffs.

25          So your Honor is exactly correct that this motion to

1   strike is procedurally premature and that is clearly the rule

2   in this district and it's been articulated in a number of cases

3   in the circuit as well:  the *Chenensky* case, *Rahman*, *Barghout*

4   *v. Bayer*.

5              It's clear that the issues that the defendants are

6   raising will all be addressed in the context of a Rule 23

7   motion that will be based on an actual presentation of the

8   facts and the evidence to support a class definition in a class

9   that is framed by that evidence.

10             We're not anywhere close to that right now, your

11  Honor.  In fact, this case has really been hampered by

12  stonewalling by the defendants.  We have not received any data,

13  no data at all.  We have very, very few documents from the

14  defendant, other than what they produced about the named

15  plaintiffs.  We've been fighting with them to get things as

16  basic as organizational charts.  We haven't had any depositions

17  scheduled because of the stonewalling of discovery.  It's been

18  a very, very slow process out of the gate in this case.

19             So there's really only hypotheticals about what the

20  class motion will look like, what the trial plan will be, and

21  it would be improper at this stage for the Court to be asked to

22  guess the scope of the case.

23             With respect to the deposition testimony that's been

24  cited, I would just say I think it's somewhat out of context

25  and misleading.  It's not at all part of the complaint.  So the

C5MLCHEA                          Argument

1   Court is being asked to infer that out-of-context comments in a

2   deposition that lasted for two days somehow should be

3   considered to be the plaintiffs' core allegations and that's

4   just not what the law would provide.

5         Notwithstanding our assertion that that testimony is

6   out of context and not proper for this motion, even if Goldman

7   Sachs is correct about the meaning of that testimony, and we

8   don't think they are, but even if they were, and the plaintiffs

9   did allege that one of the core allegations here is that

10  low-level managers exercised some discretion in a

11  discriminatory manner, that would not itself make

12  classification unavailable in this case.

13        In fact, your Honor, I would point the Court to the

14  Seventh Circuit's recent decision in *McReynolds v. Merrill*

15  *Lynch*.  I think it's very helpful in this regard to understand

16  really the limits of *Dukes* because I think in this instance

17  Goldman Sachs has dramatically overstated that holding.  In the

18  Seventh Circuit case, Judge Posner, writing for the circuit,

19  reversed a denial of Rule 23 certification by the district

20  court in a case where managers exercised discretion through

21  common practices involving assignments and compensation.  And

22  the Court recognized that some discretion existed, but those

23  core company practices were the mode through which the manager

24  discretion existed and that can satisfy commonality.

25        I'll note that the defendants themselves actually

1   characterized the *McReynolds* case earlier when it was a

2   district court decision denying cert, and they said that

3   *McReynolds* was a case of disparate impact excess subjectivity.

4   But the Seventh Circuit nevertheless believed that that case

5   was appropriate for certification and rejecting the idea that

6   any discretion somehow makes the case incompatible with

7   Rule 23.

8        We're concerned about defendant's what we think is

9   sort of a tangent going off about phase discovery here.  The

10  plaintiffs have no interest in doing unnecessary or unduly

11  costly or front loading discovery that won't be needed until

12  after class certification.  We have been very, very focused on

13  tailoring discovery at this stage to get what we need to meet

14  our high burden under IPO, and that includes getting the

15  personal databases so we can do a proper analysis of the common

16  practices that will show up when you analyze apples-to-apples

17  people in the compensation, promotion, and performance systems.

18  We still waiting for that data, and that's the subject of

19  another motion before the magistrate judge.

20        We need to have some basic 30(b)(6) depositions about

21  the core practices that are being challenged.  The core

22  practices will be the subject of our Rule 23 motion as required

23  under *Dukes*.  And we have really identified three things that

24  are the critical pieces we're going after, and we're not using

25  any superfluous time to chase after things that aren't covering

1    these practices.  And they are the performance review system,

2    including the 360-degree review and the forced ranking, the tap

3    on the shoulder promotion system, and the compensation system,

4    which is infected by problems with the performance management

5    system and a failure to pay based on actual performance.

6            Now, I'll just point out that in the *Dukes* case, a

7    class challenge to performance management was expressly

8    approved as an appropriate type of system to challenge at a

9    company, and that's at the Supreme Court's cite 2553.  We have

10   asked common questions in our complaint at paragraph 62.  They

11   include whether Goldman Sachs' performance evaluation system

12   discriminates against women, whether its compensation system

13   discriminates against women, and whether its promotion system

14   discriminates against women.  And 23(a)(2) commonality can be

15   met because there are common answers to these common questions

16   that will resolve common claims.

17           As for the (b)(2) standing issue, I think it's quite

18   clear from the case law that when former employees seek

19   reinstatement, they have an actual interest and a true threat

20   of being harmed if an injunctive isn't issued to remedy the

21   problems.  This is much like a hiring situation where an

22   applicant is seeking an injunction to change a biased hiring

23   practice.  If that applicant would be hired, that injunction

24   would solve the problems the company has with discrimination.

25           So this is really no different.  Here we have

C5MLCHEA                         Argument

employees who have filed allegations of unlawful termination in
their EEOC charges.  They seek reinstatement in their prayer
for relief.  This was not raised in *Dukes*.  It wasn't an issue
in *Dukes*.  It wasn't an issue in that circuit in *Ellis v.
Costco*.  In the cases where it has been an issue, the *Levin*
case in particular, the court has recognized the propriety of
letting a person seeking reinstatement pursue an injunction to
cure the problems in the company.

          THE COURT:  If I were to agree with Judge Francis that
the motion is premature because there has not been discovery,
would you be amenable to a subject matter timetable of
discovery in which the first order of business would be
discovery relevant to the -- I forget the term you use for the
type of discovery, the type of processing which takes place,
but obviously be geared to the defendant's principal contention
that the *Wal-Mart* holding precludes the case and permit that
issue to be the subject of a new application by the plaintiffs
to the magistrate rather than go through a great deal of other
matters which might become irrelevant?

          MS. DERMODY:  Thanks, your Honor.  So, two things.
First, plaintiffs would urge the Court to not only reach the
issue of prematurity but to also reach the other issues that
the magistrate judge addressed.  They're we believe very useful
in clarifying some of the issues that are going to come up on
class certification and I think would be a great benefit in the

1    district to have that reasoning adopted to give clarity going

2    forward.

3              The second thing is with respect to the discovery,

4    your Honor, I'm not sure what that proposal would get us

5    because right now we're operating really as a functioning phase

6    discovery approach.  We are really focused on class-related

7    discovery.  That's what we need right now and that's all that

8    we're seeking.  And in order for us to understand the limits or

9    the applicability of *Dukes*, one has to understand that in the

10   context of a Rule 23 motion based on evidence and a record.

11             So the way to go at deciding whether or not *Dukes* has

12   any bearing on the viability of certification here is for

13   plaintiffs to be allowed to meet their burden under IPO to get

14   the evidence they need to demonstrate the requirements of

15   Rule 23.  Defendants can raise whatever arguments they have

16   about how *Dukes* applies.  We will rely on *Dukes* as well because

17   we think *Dukes* helps us and that *Dukes* supports this case going

18   forward and being certified.  But each side will have a chance

19   to frame their arguments under *Dukes* in the context of a real

20   classification motion with a real record.

21             Otherwise, we'll be back here piecemeal arguing about

22   whether we have enough information for the Court to make a

23   determination out of context about *Dukes* when *Dukes* isn't the

24   only case law that governs classification in this district, in

25   this circuit, and in this country.  *Dukes* is one piece.  It's

1    very important, but we have a whole classification record to

2    make here.  And I think it would be inefficient and not really

3    useful to the ultimate process and wouldn't really be, we don't

4    think, any cost savings to do it that way, your Honor, because

5    the very same discovery we need to do to show we meet *Dukes* is

6    the same kind of discovery that we need to show that we meet

7    class certification or Rule 23.  It's going to be quite

8    overlapping, and it should happen at the appropriate time for

9    our Rule 23 motion.

10          We would be absolutely supportive, your Honor, if you

11   wanted to set a schedule for when the motion should be filed

12   and to get the parties moving forward on that being decided.

13   That would be we think appropriate here.  But piecemeal

14   decisions about parts of discovery and fitting into parts of

15   cases, that doesn't seem like it would help the Court at all

16   and it certainly wouldn't help the parties, your Honor.

17          THE COURT:  Wouldn't Magistrate Francis be the person

18   to deal with that in the first instance to set that timetable?

19          MS. DERMODY:  Yes, your Honor.  I think that would be

20   appropriate to keep looking at the discovery and he can

21   understand the practical limitations of the calendar.

22          THE COURT:  All right.

23          MS. DERMODY:  Thank you, your Honor.

24          MS. BROWN:  Your Honor, if I may, just a couple brief

25   points about Ms. Dermody's argument, but then I want to get

1    back to your idea of phase discovery which I think plaintiffs

2    are being very disingenuous in their response.

3            The phase discovery that your Honor is talking about

4    is exactly what the Supreme Court in *Dukes* said should be done.

5    And all the old cases that they want to talk about don't have

6    any significance anymore.  The *Robinson* case, the other cases,

7    those are if not overruled certainly discredited.

8            Let me just go back to a couple of the points she

9    made.  The *McReynolds* case in no way has anything to do with

10   this case.  That case in the Seventh Circuit involved one job.

11   It involved a hard and fast rule, a formula about how accounts

12   were to be distributed.  The court there held -- I don't think

13   correctly, but it doesn't matter for our purposes here -- the

14   court there held that it could look at the legality of that

15   rule and then that would move forward the individual hearings

16   that might later take place.

17           Here we have a completely different set of

18   allegations.  Here we have an attack, broad attack on every

19   personnel practice, every job, every business, every criteria

20   for success, every decision by hundreds of managers.  So the

21   *McReynolds* case says nothing about whether ultimately this case

22   should be properly certified.

23           But what we do have here is exactly the kinds of

24   allegations that would benefit from phase discovery because

25   what the plaintiffs are saying is, well, there's a tap on the

C5MLCHEA                      Argument

shoulder promotion process -- exactly what the court in

*Wal-Mart* said.  If you look back at the allegations in

*Wal-Mart*, the district court decision in 222 F.R.D., there

wasn't, it wasn't an absence of standards.  They had standards

for promotion.  You had to be in the job a year, you had to

have a good evaluation, you had to be on a management training;

and then the manager could pick from those people.

So what the court said wasn't enough in *Wal-Mart* is

strikingly similar to here.  The manager picks from those

qualified.  It's very much the same, and there isn't any other

case law that tells judges at this point in time and parties

what's enough.

So what we think the first phase should be -- and I

think it's analogous in a sense to when the Court would have

discovery about is there jurisdiction or is the venue issue

appropriate -- is that we look at is there a general policy of

discrimination.  And we have produced, despite what Ms. Dermody

said, hundreds of thousands of pages of policy and process

documents.  Let's see if they say that any of those are

discriminatory.  Let's have testimony about whether there's a

process that's common over the years, over the divisions.

The thought of getting into data makes no sense at all

at this point or individualized discovery because that is

exactly what will bring what your Honor is trying to avoid.

That will bring material that, first of all, the Supreme Court

C5MLCHEA                          Argument

1   said is utterly irrelevant.  The fact that the processes have a

2   statistical disparity against women tells us nothing about

3   whether there's a common question that can efficiently be

4   litigated here.  So let's leave *Daubert* motions, discovery

5   motions, data, individualized discovery out of it.

6            Let's look at processes, policies, and procedures and

7   see if there is, your Honor, as you said, a common method of

8   direction about how to exercise discretion, a common policy of

9   discrimination or nondiscrimination or inclusion or diversity,

10  and then let's come back and see, your Honor, and see if they

11  can get over this hurdle because the world has changed.  They

12  don't want to acknowledge it.  We don't need a full Rule 23

13  record here to determine this preliminary question that will in

14  fact clarify the issues for all of us going forward because

15  your Honor might conclude -- we don't think you will -- but you

16  might conclude, as to this particular process, you can take

17  further discovery and see about it.  But as to the other things

18  you're claiming, this attack on the entire method of personnel

19  decision-making, no, we're not going to get into that.

20           So that's what I would urge your Honor to do.

21           THE COURT:  Well, I will --

22           MS. DERMODY:  Your Honor, a few quick points.

23           Just a point in favor of *McReynolds*, your Honor, I

24  think that perhaps defense counsel misunderstands some part of

25  the case because the case included a couple of different

1    practices, one of which involved teaming and the decision of

2    what people could be included in partnerships.  And the court

3    recognized that that particular practice involved many

4    decisions by many, many, many individuals to choose who would

5    be on their teams, whether to be on a team or not, rife with

6    discretion, and the court found that to be an appropriate claim

7    to be certified.

8         The concept of phase discovery is not actually a new

9    concept really.  It's a concept that's been around in recent

10   years in class action practice to get parties to focus on cost

11   efficient ways to move the case along appropriately, and it's

12   absolutely the right thing to do.

13        And the phasing goes like this.  Before class

14   certification, the parties shouldn't waste a lot of time

15   focusing on damages because you don't know what case is going

16   to be tried.  So before class certification, you've got to

17   focus on what are the common practices and how to meet the

18   Rule 23 requirements.  After certification, you focus on some

19   of the merits, proof, and the damages issues.  And that's

20   exactly the process that we've been going through here and we

21   think that's appropriate.

22        There is no case, not one anywhere in this country

23   that has held that there should be phasing to focus on whether

24   the plaintiffs have identified a policy that uses the words

25   treat women differently in it before they can have any

1  discovery about the data that would show an adverse impact from

2  a neutral policy or anything else in the case.  That's not the

3  law.  It's not the law in this district.  It would be

4  absolutely turning Title VII upside down.  That would just be

5  inappropriate here.

6          The last thing we'll say is that we think that

7  defendants have really overstated *Dukes*' effect on the *Robinson*

8  *v. Metro North* Second Circuit case and the line of cases that

9  follow that.  While *Dukes* did address certain aspects of

10 *Robinson*, it left intact the *Robinson* holding about bifurcating

11 phases of a case.

12         So the notion that you can bifurcate for liability

13 claims under (b)(2) and for damages under (b)(3) using 23(c)(4)

14 to separate issues was approved in *McReynolds*.  It wasn't

15 disturbed by *Dukes*.  It was approved in the *McReynolds* case by

16 the Seventh Circuit after *Dukes*.  It was also approved after

17 *Dukes* by *Vulcan Society* in this district and -- in the Eastern

18 District and by *Easterling*.  It is still the law in this

19 country involving how you try these cases, and we would urge

20 the Court in moving forward to be thinking of this case as a

21 (b)(2) liability case and (b)(3) damages case.

22         Thank you, your Honor.

23         THE COURT:  All right.  I'm going to reserve decision.

24 I think the argument has been very helpful.  And I'll try to

25 give the matter as expeditious a processing as my calendar will

C5MLCHEA                        Argument

1    permit.

2           I also am keenly aware of what my role is and what the

3    magistrate's role is, and I know a lot of things that we talked

4    about this afternoon really deal with day-to-day processing of

5    the case and will be happy to leave those to Judge Francis.

6           Thank you all and we're adjourned.

7                                o0o

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25