# EXHIBIT 5

# PAUL
# HASTINGS

1(404) 815-2221
geoffweirich@paulhastings.com

May 21, 2012                                                                                    21166-00050

**VIA E-MAIL**

Adam T. Klein, Esq.
Outten & Golden LLP
3 Park Avenue
29th Floor
New York NY 10016

Re:     Chen-Oster et al. v. Goldman Sachs

Dear Adam:

I write to continue our ongoing discussions about the data production burden issues.

First, the starting point for any discussion about database production is that defendants' discovery obligations are limited to relevant data. Despite our view that statistical proof cannot satisfy Rule 23 after *Wal-Mart v. Dukes*, we have worked cooperatively and in good faith to identify data regarding relevant topics, and stand prepared to produce that data *to the extent that production is not unduly burdensome*.

Plaintiffs' recent suggestion that Goldman simply give them a raw "data dump" is inconsistent with those fundamental principles of discovery. A "data dump" that would include highly confidential and commercially sensitive information about thousands of employees who are not even remotely at issue in this lawsuit – such as (a) Participating Managing Directors ("PMDs") and Extended Managing Directors ("EMDs") in the revenue divisions, (b) PMDs, EMDs, Vice Presidents and Associates in the various non-revenue divisions, and (c) Analysts and administrative and technical employees across the entire firm – is highly invasive and goes far beyond what is relevant to class certification in this litigation. The fact that the parties have entered into a Consent Protective Order does not change that standard; that Order sets forth guidelines for material that is properly discoverable in the first instance. Plaintiffs' suggestion that Goldman Sachs resolve this discovery dispute by agreeing to produce a raw data dump of its entire series of databases is inconsistent with data discovery jurisprudence, and is not an acceptable basis for discussion.

Second, you asked how much time would be saved by utilizing the "export" function to obtain data as compared to extracting data through the methods described in the Affidavits of Cathy Obradovich and Ankur Pathak. As set forth in my letter of May 11, 2012, we believe that the premise underlying your question is flawed. Even after incurring the substantial time and expense of (a) deriving the relevant employee IDs through a series of SQL queries, (b) iteratively creating many hundreds of spread sheets by duplicating each and every table of the current PeopleSoft database, the predecessor PeopleSoft database, the CRS, the FRS and the EMD Selection databases, and then (c) deleting from each of these spread sheets the data fields that are not being produced, we would not be left with a usable analytical platform that each party's expert witnesses could use for their studies. Many more steps would be required.

First, this voluminous collection of spreadsheets would be largely undecipherable without extensive additional work that would not be required by using the query-derived data described in the Obradovich



**PAUL**
**HASTINGS**

Adam T. Klein, Esq.
May 21, 2012
Page 2

and Pathak Affidavits. Each spreadsheet must be "related to" one or more different companion sheets in order to arrive at just one key data element, and does not stand alone. Using such exported spread sheets would relegate to each party's expert witnesses the time-consuming task of writing specific queries to "relate" the data pulled from multiple tables and create their own analytical database. Second, although this may represent a burden your expert willingly will undertake, that process will establish two disparate databases, even before the substantive statistical analyses begin; the inevitable result is that each side will have to expend significant resources attempting to verify and confirm the accuracy of the opponent's newly created database. Ultimately, this approach would significantly increase the overall burden and expense for both parties, and may result in analyses being proffered to the Court that do not accurately reflect Goldman Sachs' business practices. It does not contribute to a constructive compromise of our data dispute.

We do believe that there are constructive and workable approaches to these issues, and are ready to discuss them with you.

Very truly yours,

/s/

C. Geoffrey Weirich
of PAUL HASTINGS LLP

cc:    Theodore O. Rogers, Jr.
       Barbara Brown
       Carson Sullivan