UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER, LISA PARISI, and SHANNA ORLICH, <br><br> Plaintiffs, <br><br> v. <br><br> GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., <br><br> Defendants. | 10 Civ. 6950 (LBS) (JCF) <br><br> OPINION & ORDER |

APPEARANCES

For Plaintiffs:

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
ADAM T. KLEIN
CYRUS E. DUGGER
JENNIFER L. LIU

LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
KELLY M. DERMODY
ANNE B. SHAVER
ALISON M. STOCKING

For Defendants:

PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
BARBARA B. BROWN
ZACHARY D. FASMAN
C. GEOFFREY WEIRICH

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
THEODORE O. ROGERS, JR.
SUHANA S. HAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

H. CRISTINA CHEN-OSTER,
LISA PARISI, and SHANNA ORLICH,

                    Plaintiffs,          10 Civ. 6950 (LBS) (JCF)

              v.                         OPINION & ORDER

GOLDMAN, SACHS & CO. and
THE GOLDMAN SACHS GROUP, INC.,

                    Defendants.
_____

SAND, J.

     Defendants Goldman, Sachs & Co. and The Goldman Sachs

Group, Inc. (collectively, "Goldman") object to Magistrate

Judge James C. Francis's January 19, 2012, Report and

Recommendation ("R&R") denying Defendants' motion to strike

all class allegations as well as their motion for partial

summary judgment.

     For the reasons that follow, Judge Francis's R&R is

affirmed in part and reversed in part.

I.   BACKGROUND

     The Court assumes familiarity with the facts of the

case, which are laid out in detail in the R&R.  See R&R (Dkt.

No. 134) 2-8.

II.  STANDARD OF REVIEW

     A district court reviewing a magistrate judge's report

and recommendation "may accept, reject, or modify [it] in

whole or in part."  28 U.S.C. § 636(b)(1)(C).  The court

reviews de novo any portions of a report and recommendation

to which a party has objected; all else is reviewed for clear

                              1

error.   Gary Friedrich Enters., LLC v. Marvel Enters., 713 F.
Supp. 2d 215, 219 (S.D.N.Y. 2010).

III. DISCUSSION

    a.   Rule 23(a)(2) Commonality

Goldman moves the Court to strike Plaintiffs' class
allegations on the grounds that Plaintiffs cannot, as a
matter of law, satisfy Federal Rule of Civil Procedure 23(a)
(2), which requires that plaintiffs seeking class
certification establish that "there are questions of law or
fact common to the class."   Defs.' Objections (Dkt. No. 135)
6.

    In Wal-Mart Stores, Inc. v. Dukes, the United States
Supreme Court ("Supreme Court") held that, in order to
satisfy commonality, a plaintiff's claims "must depend on a
common contention...of such a nature that it is capable of
classwide resolution--which means that determination of its
truth or falsity will resolve an issue that is central to the
validity of each of the claims in one stroke."   131 S. Ct.
2541, 2551 (2011).   As Goldman construes them, Plaintiffs'
class allegations are based on the "assertion that Goldman
Sachs permits individual managers unbridled freedom to make
employment decisions regarding their subordinates." Defs.'
Objections 2.   Dukes, Defendants argue, foreclosed
certification based on managerial discretion of this sort
because such discretion is "just the opposite of a uniform
employment practice that would provide the commonality needed
for a class action."   Dukes, 131 S. Ct. at 2554.

    This argument is unpersuasive for two reasons.   First,
Goldman's motion is procedurally premature; second, Dukes is

distinguishable on the facts.  Pls.' Resp. to Defs.'
Objections (Docket No. 140) 2-9.  Judge Francis denied
Goldman's motion on both grounds.

      1.   <u>Procedure</u>

"Motions to strike are generally looked upon with
disfavor [and] a motion to strike class allegations...is even
more disfavored because it requires a reviewing court to
preemptively terminate the class aspects of...litigation,
solely on the basis of what is alleged in the complaint and
before plaintiffs are permitted to complete the discovery to
which they would otherwise be entitled on questions relevant
to class certification."  <u>Chenensky v. New York Life Ins.</u>
<u>Co.</u>, No. 07 Civ. 11504, 2011 U.S. Dist. LEXIS 48199, at *3-4
(S.D.N.Y. Apr. 27, 2011) (citations and internal quotation
marks omitted).  <u>See also</u> <u>Barghout v. Bayer Healthcare</u>
<u>Pharms.</u>, No. 11 Civ. 1576, 2012 U.S. Dist. LEXIS 46197, at
*30 (D.N.J. Mar. 30, 2012) (denying pre-discovery motion to
strike class allegations).  Generally speaking, then, motions
of this kind are deemed procedurally premature.

    There is an exception to this general rule, but it does
not apply to this case.  The exception is this: a motion to
strike that addresses issues "separate and apart from the
issues that will be decided on a class certification motion"
is not procedurally premature.  <u>Rahman v. Smith & Wollensky</u>
<u>Rest. Group, Inc.</u>, 06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932,
at *11 (S.D.N.Y. Jan. 16, 2008).  As Judge Francis noted in
the R&R, "all of the defendants' arguments are
indistinguishable from the issues that would be decided in
the context of a motion for class certification."  R&R at 10.

3

The Court agrees: Goldman's objections address Rule 23(a)
(2)'s commonality requirement, which is exactly the sort of
issue that would be litigated and decided in the context of a
motion for class certification.

This ought to settle the matter, at least for the time
being, but Goldman is adamant that Plaintiffs' class
allegations fail as a matter of law.  Goldman asserts, in
essence, that no discoverable facts exist that might
distinguish this case from Dukes.  Defs.' Objections 6; see
also Mot. to Strike Hr'g Tr. 3, May 22, 2012.  We are,
therefore, obligated to address this issue because "when a
claim cannot succeed as a matter of law, the Court should not
certify a class on the issue."  McLaughlin v. Am. Tobacco
Co., 522 F.3d 215, 228 (2d Cir. 2008) (quoting Velez v.
Novartis Pharms. Corp., 244 F.R.D. 243, 257 (S.D.N.Y. 2007)).

   2. Substance

In Dukes, the Supreme Court suggested at least two ways
in which a plaintiff alleging employment discrimination on
behalf of a putative class might satisfy commonality.  It
could (1) show that an "employer used a biased testing
procedure" or (2) present "[s]ignificant proof that an
employer operated under a general policy of discrimination
[that] manifested itself in hiring and promotion practices in
the same general fashion, such as through entirely subjective
decisionmaking processes."  Dukes, 131 S. Ct. at 2553
(quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 159 n.
15 (1982)).

The Dukes plaintiffs were unable to show that Wal-Mart
used a biased testing procedure because, quite simply, there

was "no testing procedure or other companywide evaluation."
Id.   The Dukes plaintiffs were also unable to point to a
specific companywide corporate policy apart from supervisors'
total discretion over employment decisions.   But this
discretion, the Supreme Court determined, was "just the
opposite of a uniform employment practice that would provide
commonality."   Id. at 2554.

      Not so Plaintiffs in this case.   As Judge Francis found
--correctly, we believe--Plaintiffs have identified a number
of specific, companywide "employment practices" and "testing
procedure[s]."   These include the "360-degree review"
process, the forced-quartile ranking of employees, and the
"tap on the shoulder" system for selecting employees for
promotion.   R&R at 13.   As opposed to hiring and promotion at
Wal-Mart, which was committed to "local managers' broad
discretion," based on managers' "own subjective criteria,"
and "exercised in a largely subjective manner," Dukes, 131 S.
Ct. at 2547, the employment practices in this case, together
or individually, might well--with the benefit of discovery--
comprise a "common mode of exercising discretion that
pervades the entire company," id. at 2554-2555.

      What was missing in Dukes, but is present here, are
"specific employment practice[s]" (the 360-degree review, for
example) that "tie[] all [of Plaintiffs'] claims together."
Id. at 2555-2556.   It is true that an individual manager's
decision might be more or less discretionary, but this, as
the Supreme Court made clear in Dukes, does not doom a class,
since this discretion would have been exercised under the
rubric of a company-wide employment practice.   Id. at 2554.

See also <u>McReynolds v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.</u>, 672 F.3d 482, 489 (7th Cir. 2012) (Posner, J.)
(permitting class certification in employment discrimination
case where managerial discretion was "influenced by []
company-wide policies.").

Goldman's reliance on <u>Bell v. Lockheed Martin Corp.</u>, No.
08 Civ. 6292, 2011 U.S. Dist. LEXIS 143657 (D.N.J. Dec. 14,
2011), is unavailing.  In <u>Bell</u>, as in <u>Dukes</u>, the proposed
class was not united by any "common contention" because
Lockheed Martin did not make employment decisions based on a
companywide evaluation procedure akin to Goldman's 360-degree
review.  Rather, each of Lockheed Martin's "Business Areas
and Business Units" was given "discretion to implement
[employment] policies, practices, and procedures ...."  <u>Bell
v. Lockheed Martin Corp.</u>, 270 F.R.D. 186, 190 (D.N.J. 2010).
It is true that Lockheed Martin set minimum qualifications
for each employment level, <u>Bell</u>, 270 F.R.D. at 192 n.8., but
this is largely true of any employer, including Wal-Mart,
<u>Dukes</u>, 131 S. Ct. at 2547.  What characterized Lockheed
Martin's (and Wal-Mart's) employment procedures was
fragmented discretion untethered to any companywide policy
and procedure.  This is, we find, readily distinguishable
from the case at bar.

On this basis alone, Goldman has failed to show that,
with the benefit of discovery, Plaintiffs would be unable to
allege facts and circumstances that would take this case out
of the <u>Dukes</u> ruling.

Yet <u>Dukes</u> is distinguishable in another way.  Time after
time the Supreme Court circled back to the issue of scale.

6

"We are," the majority opinion begins, "presented with one of the most expansive class actions ever." Id. at 2547.  The Supreme Court suggested (when not explicitly stating) that the sheer size of the class and the vast number and diffusion of challenged employment decisions was key to the commonality decision.  This makes a great deal of sense when the purpose of the commonality enquiry is to identify "some glue holding the alleged reasons for all of [the challenged] employment decisions together."  Dukes, 131 S. Ct. at 2552 (emphasis omitted).

Thus the Supreme Court observed that the Dukes plaintiffs numbered in the millions.  Dukes, 131 S. Ct. at 2547.  These plaintiffs, moreover, "held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed."  Id. at 2557 (quoting Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010) (Kozinski, J., dissenting)).  In addition, plaintiffs brought suit about "literally millions of employment decisions."  Id. at 2552, 2556 n. 9.  Thus, wrote Justice Scalia, the members of the class in Dukes had "little in common but their sex and this lawsuit."  Id. at 2557 (quoting Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010) (Kozinski, J., dissenting)).

Not so Plaintiffs in this case.  Plaintiffs do not number in the millions; Plaintiffs all worked at--and the allegations all center around--Goldman's New York office;

7

Plaintiffs were all members of a circumscribed category of
Goldman employees; and Plaintiffs do not challenge literally
millions of employment decisions.  These factual distinctions
are critical.  Here, in contrast to the scattershot claims in
Dukes, the possibility exists that class members' claims will
be based on a "common contention," id. at 2551, thereby
meeting the commonality requirement.  See Cronas v. Willis
Group Holdings, Ltd., No. 06 Civ. 15295, 2011 U.S. Dist.
LEXIS 122736, at *9 (S.D.N.Y. Oct. 18, 2011) (distinguishing
Dukes based on, inter alia, small size of class and
consolidated employment location).

For the reasons above, both of which are independently
adequate to support this Court's holding, Goldman's motion to
strike is denied.

b.   Rule 23(b)(3) Predominance

Goldman also argues that, in light of its objections
regarding commonality, Plaintiffs cannot meet Rule 23(b)(3)'s
"far more demanding" predominance requirement.  Defs.'
Objections 20-21 (quoting Amchem Products, Inc. v. Windsor,
521 U.S. 591, 624 (1994)).  The predominance requirement, to
be clear, requires that "the court find[] that the questions
of law and fact common to class members predominate over any
questions affecting only individual members...."  Fed. R.
Civ. P. 23(b)(3).

Goldman is correct that if Plaintiffs cannot meet the
Rule 23(a)(2) commonality requirement, they cannot meet the
Rule 23(b)(3) predominance requirement.  R&R at 22-23; see
also Kendler v. Federated Dep't Stores, Inc., 88 F.R.D. 688,
693 (S.D.N.Y. 1981) ("[I]n the absence of a showing of

8

identifiable common issues, amenable to proof on a class-wide
basis, ... common issues of law and fact not predominate
herein and plaintiffs have not satisfied the requirements of
Rules 23(a)(2) and 23(b)(3).").   But Goldman's argument
succeeds if (but only if) the Court agrees that Plaintiffs
have failed as a matter of law to meet Rule 23(a)(2)'s
commonality requirement.   We do not.   See supra IIIa2.
Goldman's motion to strike is denied as premature.

    c.   23(b)(2) Standing

In the context of its discussion (and ultimate
invalidation) of the Ninth Circuit's "predominance test,"[1]
the Dukes majority noted that "[t]he Ninth
Circuit...concluded that those plaintiffs no longer employed
by Wal-Mart lack standing to seek injunctive or declaratory
relief against its employment practices."   Dukes, 131 S. Ct.
at 2560.   The Dukes majority agreed, finding that "about half
the members of the class approved by the Ninth Circuit[,
i.e., those who left their jobs after the complaint was
filed,] have no claim for injunctive or declaratory relief at
all."   Id.   The remainder of the Supreme Court, dissenting

---

[1] The Ninth Circuit's "predominance test" is not to be confused with
the identically named Rule 23(b)(3) predominance test.   The Ninth
Circuit's "predominance test" was, before Dukes struck it down, applied
in class certification analyses involving both injunctive relief and
monetary relief.   The rule held that certification of a 23(b)(2) class
seeking mixed remedies was appropriate unless the "monetary relief sought
[was] 'predominant' over injunctive or declaratory relief."   Dukes v.
Wal-Mart, 603 F.3d 571, 617 (9th Cir. 2010).   Prior to Dukes, the Second
Circuit applied a similar rule.   See Robinson v. Metro-North Commuter
R.R., 267 F.3d 147, 164 (2d Cir. 2001) (a district court could use Rule
23(b)(2) to certify a class seeking both injunctive and monetary relief
so long as, first, the value to plaintiff of the injunctive relief was
predominant over the value of the monetary relief and, second, class
treatment was efficient and manageable).

with respect to much of the majority's opinion, appeared
agreed on this particular point, at least on the facts in
Dukes.  See id. at 2561 (Ginsburg, J., concurring) ("The
class in this case...should not have been certified under
Federal Rule of Civil Procedure 23(b)(2).") (emphasis
supplied).

Goldman seizes on this language to argue that
Plaintiffs, none of whom are currently employed by Goldman,
are barred from certification under 23(b)(2) for lack of
standing.  Defs.' Objections 13-15.  Plaintiffs respond that
this rule does not apply to them because they specifically
requested reinstatement in their prayer for relief.  Pls.'
Resp. to Defs.' Objections 9-11.  Judge Francis, citing
authority predating Dukes, agreed with Plaintiffs.  R&R 13-
16.

> 1.   Procedure

Goldman's motion to strike Plaintiffs' Rule 23(b)(2)
class allegations on the grounds that Plaintiffs lack
standing is not procedurally premature because one way in
which a claim for class certification can fail as a matter of
law is lack of standing.  See Gen. Tel. Co. of the Sw. v.
Falcon, 457 U.S. 147, 156 (1982) (noting that courts may not
certify a class whose representatives have no standing to
sue).  Indeed, standing is so basic a requirement that even
if Goldman had not raised the issue, this Court would have
been obligated to address it sua sponte.  See FW/PBS, Inc. v.
Dallas, 493 U.S. 215, 231 (1990) (asserting federal courts'
"independent obligation to examine their own jurisdiction,"
standing in particular).

2.    Substance

Before Dukes, federal courts took opposing positions on the question of ex-employee standing to sue for injunctive and declaratory relief.  Compare Levin v. Madigan, 697 F. Supp. 2d 958, 975 (ex-employee plaintiffs who seek reinstatement and for whom such request is possible have standing to sue for injunctive or declaratory relief), with Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1007 (11th Cir. 1997) (ex-employees have no standing to sue for injunctive relief because they cannot show a likelihood of future discrimination by former employer).  Parties have not brought to our attention Second Circuit case law that is directly on point, although we note, for the record, that courts in this circuit have certified classes consisting of former and current employees under 23(b)(2) and, significantly, have done so since Dukes was handed down. E.g., Cronas v. Willis Group Holdings, Ltd., No. 06 Civ. 15295, 2011 U.S. Dist. LEXIS 122736 (S.D.N.Y. Oct. 18, 2011).

The question of ex-employee standing after Dukes appears, then, to be one of first impression in this circuit. Upon due consideration, this Court holds, with significant reservations, that Dukes forecloses certification under 23(b) (2).

Our holding is based on the following.  First, like the Plaintiffs here, the plaintiffs in Dukes sought reinstatement.  See Plaintiffs' Third Amended Complaint at 25, Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137 (N.D. Cal. 2004) (No. C 01-02252) (plaintiffs sought an "order restoring class members to their rightful positions at Wal-Mart").  In

11

this respect, then, the facts of this case cannot be meaningfully differentiated from the facts in <u>Dukes</u>.  Second, the issue of ex-employee standing was fully briefed and, we presume, fully considered by the Supreme Court.  <u>See</u> Brief for Petitioner at 51-52, Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) (No. 10-277), 2011 WL 201045.  Third, the Supreme Court's analysis of this issue, and its blanket denial of standing to ex-employees, is not dictum: it was necessary to the resolution of this case insofar as it undergirded the invalidation of the Ninth Circuit's "predominance test" and foreclosed certification under 23(b)(2).  <u>See</u> <u>Dukes</u>, 131 S. Ct. at 2559-2560.  We are therefore obligated to follow the rule, notwithstanding misgivings about its wisdom, which we turn to now.

Rule 23(b)(2) certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The <u>Dukes</u> majority found that because some class members were no longer employed by Wal-Mart, injunctive relief was not appropriate to the class "as a whole."  <u>Dukes</u>, 131 S. Ct. at 2560 (emphasis omitted).  The Supreme Court's reasoning, simply put, is that ex-employees have no material stake in whether their former employer is or is not enjoined from continuing the allegedly discriminatory employment practices since they are no longer there.

With all due respect, this is true only sometimes.  Where ex-employees do not seek (or cannot seek) reemployment

with their former employer, they have no real (though they
may have a moral or metaphysical) interest in an injunction.
But where class members seek reinstatement, as Plaintiffs do
here, it is certainly possible that "final injunctive relief
or corresponding declaratory relief is appropriate respecting
the class as a whole."  Fed R. Civ. P. 23(b)(2).  The reason,
as Judge Francis wrote, is that a specific request for
"reinstatement absent a corresponding injunction would expose
plaintiffs to the immediate threat of further
discrimination."  R&R at 15.  In other words, should
plaintiffs prevail, and should a court grant them
reinstatement, they have a very real interest in a court-
issued injunction preventing their employer from engaging in
the same or substantially identical discriminatory behavior.
See Levin, 697 F. Supp. 2d 958, 975 ("Plaintiff requests
reinstatement .... If Plaintiff's employment is reinstated,
he may indeed be subject to the same allegedly discriminatory
policy that he challenges in this lawsuit.  To the extent
that Plaintiff seeks an injunction requiring Defendants to
cease engaging in sex or age discrimination, such relief
would remedy a harm Plaintiff is likely to suffer again.")
(emphasis omitted).  In this sense, the Dukes majority's
blanket rule that always denies standing to ex-employees cuts
too broad a swath.

     Furthermore, 23(b)(2) specifies that an injunction is
appropriate where "the party opposing the class has acted or
refused to act on grounds that apply generally to the class."
Or, in the Supreme Court's rendering, "[t]he key to the (b)
(2) class is the indivisible nature of the injunctive or

13

declaratory remedy warranted--the notion that the conduct is such that is can be enjoined or declared unlawful only as to all of the class members or as to none of them."  Dukes, Dukes, 131 S. Ct. at 2557 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

In Dukes the Court found that Wal-Mart had no companywide employment policy, but instead granted individual managers total discretion to make employment decisions. Logically, then, Wal-Mart could not be said to have "acted or refused to act on grounds that apply generally to the class," since each decision by each manager was arguably unique. But, as we explain above, Plaintiffs allege--and might well succeed in proving--that Goldman does have a companywide employment policy.  And if the evidence bears this out, it is certainly possible that Goldman's "conduct is such that it can be enjoined or declared unlawful...as to all of the class members," in which case injunctive relief would be appropriate.  The Supreme Court's sweeping rule, however, deprives Plaintiffs of any opportunity to prove this.

One need not engage in freewheeling "slippery slope" analyses to foresee some potential consequences of the Court's new rule.  Plaintiffs who wish to certify a class under 23(b)(2) will be forced to remain employed, sometimes under very difficult conditions, to ensure standing. Employers who wish to forestall employees from certifying a class under the otherwise defendant-unfriendly Rule 23(b)(2), see Dukes, 131 S. Ct. at 2558, will be encouraged to terminate them.  Neither outcome is desirable.

14

In sum, while we disagree with the Supreme Court's reasoning we are oathbound to abide by its commands.  We hold, therefore, that Dukes strips Plaintiffs of standing to seek 23(b)(2) certification.

c.   23(b)(2) and Monetary Damages

Because we hold that Plaintiffs do not have standing to seek 23(b)(2) certification, we need not (and do not) decide whether Plaintiffs claims for monetary relief are incidental to the injunctive or declaratory relief.  Dukes, 131 S. Ct. at 2557.

d.   Failure to Exhaust

Goldman's final argument is that Plaintiffs have failed to exhaust their administrative remedies because, Goldman contends, they have failed to identify, in their respective EEOC charges, "the disparate impact theory, in name or in substance [or] any of the essential elements of a disparate impact claim."  Defs.' Objections 23.

A plaintiff may sue in federal court under Title VII only after she has exhausted her administrative remedies by filing a timely complaint with the EEOC and obtaining a Dismissal and Notice of Rights, colloquially known as a "right-to-sue letter."  See Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006).  Exhaustion only occurs if a plaintiff's "Title VII claims...either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."  Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

15

It is positively not the case that a plaintiff must use the words "disparate impact" or "facially neutral" to exhaust available administrative remedies.  Deravin v. Kerik, 335 F. 3d 195, 202 (2d Cir. 2003) (holding that "precise pleading is not required for Title VII exhaustion purposes ....").  The Second Circuit, moreover, has declined to find that a "plaintiff's failure, in an EEOC complaint, to properly identify a theory of discrimination barred a subsequent suit in federal court relating to the precise incident challenged in the EEOC complaint."  Gomes v. AVCO Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

As the Gomes court makes clear, the exhaustion inquiry is factual.  Courts must determine whether the facts alleged support the various theories of relief sought.  Id.; see also Woodman v. WWOR-TV, Inc., 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (citation omitted), aff'd on other grounds, 411 F.3d 69 (2d Cir. 2005) ("[I]t is necessary to focus on the factual allegations of discrimination to ensure that the substance of the charge, and not the label controls.").  Hence the "reasonably related" exception, which "allow[s] claims not raised in the charge to be brought in a civil action where the conduct complained of would fall with the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Butts, 990 F.2d at 1402. (citations and internal quotation marks omitted).

We agree with Judge Francis that Plaintiffs' EEOC charges identify facially neutral policies sufficient "to give the administrative agency the opportunity to investigate, mediate, and take remedial action."  Stewart v.

16

United States Immigration & Naturalization Serv., 762 F.2d
193, 198 (2d Cir. 1985).  Thus:

> Ms. Parisi's charge describes a facially neutral
> policy for promotions to partner level whereby a
> "current partner must nominate you and the company
> must approve the promotion" and alleges that the
> policy had a discriminating effect on her and
> similarly situated women at Goldman Sachs.  (Parisi
> Charge, ¶¶ 4-7).  With regard to compensation, both
> Ms. Chen-Oster's and Ms. Parisi's charges refer to
> the role of Goldman Sachs' facially neutral, but
> allegedly discriminatory, performance review and
> account assignment practices and make clear that
> those charges are brought on behalf of similarly
> situated women at the firm.  (Parisi ¶¶ 4-12; Chen-
> Oster Charge, ¶¶ 2, 5, 8).

R&R at 24-25.

Goldman's argument that Plaintiffs have failed to
exhaust their administrative remedies with respect to their
disparate impact claim is without merit.

IV.  CONCLUSION

For the foregoing reasons, Goldman's motion to strike
Plaintiffs 23(b)(2) class allegations is GRANTED.  Goldman's
motions are DENIED in all other respects.


SO ORDERED.

July 16, 2012
New York, NY

_____
U.S.D.J.

17