# PAUL HASTINGS

1(202) 551-1717
barbarabrown@paulhastings.com



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/9/12

November 5, 2012

21166.00050

**VIA EMAIL (FURMAN_NYSDCHAMBERS@NYSD.USCOURTS.GOV)**
**CONFIDENTIAL**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

   Re:   *Chen-Oster et al. v. Goldman, Sachs & Co. and The Goldman Sachs Group, Inc.*,
         No. 10 Civ. 6950 (LBS) (JCF)

Dear Judge Furman:

Paul Hastings LLP, together with Sullivan & Cromwell LLP, represent Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs") in this matter. We write pursuant to the Court's October 22, 2012 Order, to provide information concerning the status of the case. Because of the confidential nature of the "Status of Settlement Negotiations" section below, we respectfully request that the Court treat this letter as confidential, including by not posting it on the Court's CM/ECF system.

## 1. Corrections to Names and Contact Information of Counsel

The docket contains correct information concerning the individuals at Paul Hastings LLP and Sullivan & Cromwell LLP, except for the following updates: C. Geoffrey Weirich's address recently changed to the following: 1170 Peachtree Street, N.E., Suite 100, Atlanta, GA 30309. Additionally, John Francis Fullerton, III and Margaret Elizabeth Bartlett filed notices of withdrawal as counsel; their names are still on the docket as counsel for Goldman Sachs, and we would appreciate their being removed.

## 2. Statement of the Case and Principal Defenses

This putative class action alleging sex discrimination was brought by three named plaintiffs, all of whom are former employees of Goldman Sachs. Two worked their entire time at the firm in its Securities Division, and the other worked exclusively within the firm's Investment Management Division. Plaintiffs purport to represent all current and former female Associates, Vice Presidents, and Extended Managing Directors ("EMDs") in all four of the firm's revenue generating divisions – Securities, Investment Banking, Investment Management, and Merchant Banking (the "four revenue divisions"), from 2002 on. They allege sex discrimination with respect to compensation, promotions, and performance evaluations, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law ("NYCHRL").

The specifics of the named plaintiffs' experience at Goldman Sachs are as follows. Plaintiff Cristina Chen-Oster joined the firm in 1997 and resigned in March 2005. She worked as a sales person in the Convertible Sales Department in the Equities unit of the Securities Division throughout almost all of her employment with Goldman Sachs; she worked briefly in another related area of Equities. Shanna Orlich worked as a summer intern at the firm in 2006 and then as an entry-level Associate in the Capital Structure Franchise Trading Department, within the Fixed Income, Currencies, and Commodities ("FICC") unit of the Securities Division, from mid-2007 until November 2008, when her employment was terminated in connection with workforce reductions resulting from the economic crisis. Lisa Parisi worked in the



Hon. Jesse M. Furman
November 5, 2012
Page 2

Investment Management Division. She joined the firm in 2003 as a Vice President and was subsequently promoted to EMD. Her employment was terminated on the recommendation of her female superior, in 2008.

Goldman Sachs has asserted in its defenses that Plaintiffs' claims are not suitable for class treatment, as Plaintiffs cannot satisfy the commonality and typicality requirements of Fed. R. Civ. P. Rule 23(a) or 23(b)(3) or the other prerequisites to class certification. Among other reasons, there are significant differences within and among the four revenue divisions with respect to the skills, duties, and job functions that employees perform and thus a trial would not yield a common answer to the question "why was I disfavored," as the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) makes clear is required.[1] There is no evidence of intentional bias against women so as to warrant certifying a disparate treatment class claim; on the contrary the firm has a strong record of embracing equal employment opportunity for women. Also, the firm's primary level managers exercise significant discretion in making decisions related to compensation, promotions, and performance evaluations, a fact which makes class treatment inappropriate under *Dukes*. Nor can Plaintiffs prove that class certification of a disparate impact claim is appropriate with respect to the personnel processes at issue in this case. Moreover, and as set forth in the Answer, Goldman Sachs will prevail on the merits of any claims that survive after determination of the motion for class certification.

### 3.    Existing Deadlines, Due Dates, and Cut-off Dates

On December 23, 2010, Judge Sand entered the Joint Discovery Plan proposed by the parties. *See* Joint Discovery Plan entered on December 23, 2010 (ECF No. 38). Due to the motion practice to date, including interim dispositive motions by Goldman Sachs (which are described below), as well as a motion to compel data and documents filed by Plaintiffs, the dates set forth in the Joint Discovery Plan are in need of revision. These motions have now been decided by this Court and the time is ripe for entry of a revised Scheduling Order. The parties are now discussing a proposed updated schedule, which we will present to the Court pursuant to Magistrate Judge Francis's direction (see below).

### 4.    Previously Scheduled Conference Dates with the Court

At Magistrate Judge Francis's request,[2] a telephone conference with the parties took place today, November 5. Magistrate Judge Francis has requested that the parties confer regarding scheduling and present a revised proposed Scheduling Order to him by Friday, November 9, 2012. There are no other scheduled conference dates.

### 5.    Motions Made to Date

To date, the parties have made the following motions:

a.    On November 22, 2010, Goldman Sachs filed a Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration, on the ground that when she was promoted to Managing Director of the

---

[1] The four revenue divisions are as different from one another as are wholly separate companies. Within each division, there are many stand-alone financial services businesses exclusively performing functions that are different from one another. As a result, the jobs performed by Vice Presidents and Associates in these divisions, and in each business in each division, are numerous and diverse – and inappropriate for class treatment.

[2] Judge Sand referred the case to Magistrate Judge Francis for general pretrial matters (including scheduling, discovery, non-dispositive pretrial motions, and settlement) and dispositive motions. (ECF Nos. 35, 71, & 129.)

PAUL
HASTINGS

Hon. Jesse M. Furman
November 5, 2012
Page 3

firm, Plaintiff Parisi signed an agreement to arbitrate any claims she might have against Goldman Sachs.[3] (ECF Nos. 23 & 24.) Magistrate Judge Francis denied the motion by decision dated April 28, 2011 and denied Goldman Sachs' motion for reconsideration on July 7, 2011. (ECF Nos. 59 & 73.) (Goldman Sachs moved for reconsideration in light of the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), which was issued the day before Magistrate Judge Francis' original decision. (ECF Nos. 62 & 63.)) Defendants appealed those decisions to Judge Sand, who denied the motion to compel arbitration without an opinion on November 15, 2011. (ECF No. 120.) Oral argument on Defendants' appeal of this ruling to the Second Circuit is scheduled for November 7, 2012.

b.      On January 21, 2011, Plaintiffs filed a Motion to Compel Discovery seeking documents Plaintiffs claimed were related to Goldman Sachs' motion to compel arbitration. (ECF Nos. 41 & 42.) On March 1, 2011, Magistrate Judge Francis denied the motion. (ECF No. 46.)

c.      On June 13, 2011, Defendants filed a Motion to Strike Plaintiff Cristina Chen-Oster's Class Allegations, on the grounds that her EEOC charge did not exhaust class claims, let alone the expansive class she seeks to certify. (ECF No. 66-70.) On September 29, 2011, Magistrate Judge Francis issued his Report and Recommendation that the motion be denied. (ECF No. 105.) Defendants objected on October 17, 2011 (ECF No. 114), and Judge Sand affirmed the Report and Recommendation on January 10, 2012. (ECF No. 133.)

d.      On July 22, 2011, Defendants filed a Motion to Strike All Class Allegations and for Partial Summary Judgment as to Plaintiffs' Disparate Impact Claim Under Title VII, based on the ground that Plaintiffs' class allegations were essentially identical to those that the Supreme Court rejected in *Dukes*, 131 S. Ct. at 2541. (ECF Nos. 82 & 88.) Plaintiffs then notified Defendants of their intention to amend their Complaint. The parties filed a Joint Stipulation Regarding First Amended Complaint on August 16, 2011, which provided for Plaintiffs to file their Amended Complaint and for Defendants to withdraw their pending motion and file a new Motion to Strike and for Partial Summary Judgment, which Defendants did on September 8, 2011. (ECF Nos. 96, 98, & 101.) On January 19, 2012, Magistrate Judge Francis issued a Report and Recommendation that the motion be denied. (ECF No. 134.) Defendants filed an objection on February 2, 2012. (ECF No. 135.) On July 17, 2012, Judge Sand partially granted Defendants' motion, striking Plaintiffs' class claims under Federal Rule of Civil Procedure 23(b)(2), on the grounds that under *Dukes*, Plaintiffs, as former employees of Goldman Sachs, did not have standing to seek class-wide injunctive relief. The remainder of the relief Goldman Sachs requested with respect to striking the class allegations was denied as premature. (ECF No. 158.)

e.      On May 2, 2012, Plaintiffs filed a Motion to Compel data and documents. (ECF No. 145 & 146.) Until that time, pursuant to Magistrate Judge Francis' order of October 4, 2011, discovery (other than with respect to the named Plaintiffs) had been limited to the Securities Division back to 2007. (ECF No. 109.) On September 10, 2012, Magistrate Judge Francis granted Plaintiffs' motion, in part, with respect to certain data related to the revenue-generating divisions and denied the motion to compel documents as premature and "abstract," given that Plaintiffs did not identify specifically any documents that Goldman Sachs had failed to produce. (ECF No. 159.)

Currently, there are no outstanding motions pending before this Court.

---

[3] Additionally, on March 25, 2011, Plaintiffs filed a Motion for Leave to File Surreply in Opposition to Defendants' Motion to Compel Arbitration; Magistrate Judge Francis granted the motion on March 30, 2011. (ECF Nos. 55 & 57.)

PAUL
HASTINGS

Hon. Jesse M. Furman
November 5, 2012
Page 4

### 6. Pending Appeals

As noted above, Defendants have appealed to the Second Circuit the denial of their Motion to Stay Plaintiff Parisi's Claims and Compel Individual Arbitration. Oral argument is scheduled for November 7, 2012. Both Magistrate Judge Francis and Judge Sand recognized that Plaintiff Parisi's arbitration agreement encompasses her individual Title VII and NYCHRL claims and that the arbitration agreement did not authorize class arbitration. Magistrate Judge Francis and Judge Sand ruled, however, that Plaintiff Parisi need not arbitrate based on their conclusion that there is a "substantive" statutory right under Title VII to pursue disparate treatment claims through the "pattern or practice" method of proof and that because the "pattern or practice" method of proof is only available in class actions, the arbitration agreement could not be enforced.

On appeal, Goldman Sachs argues that there is nothing in Title VII that gives a statutory right to pursue the pattern or practice method of proof, that the Second Circuit in July 2012 has affirmed that pattern or practice allegations are not statutory claims but rather simply one means of proving a Title VII claim and that the decision conflicts with recent Supreme Court precedent, including *CompuCredit v. Greenwood*, 132 S. Ct. 665, 669 (2012) (affirming that the Federal Arbitration Act ("FAA") "requires courts to enforce agreements to arbitrate according to their terms. . . . unless the FAA's mandate has been 'overridden by a contrary congressional command'") (citation omitted).

### 7. Discovery Undertaken to Date[4]

*General:* The parties agreed that there was no reason to bifurcate discovery strictly into "class" and "merits" phases but instead agreed to engage in discovery relevant to the Court's resolution of Plaintiffs' anticipated motion for class certification. On March 18, 2011, Magistrate Judge Francis signed the parties' stipulated Protective Order and Confidentiality Agreement. (ECF No. 51.)

*Depositions:* Defendants have deposed Plaintiffs Chen-Oster and Orlich. Plaintiffs have taken three Rule 30(b)(6) depositions of Goldman Sachs employees, on the organizational structure of the firm overall and for two of the four revenue divisions; they have not requested dates for the other two divisions' witnesses. Nor have they pursued dates for depositions on the other 30(b)(6) topics, on the understanding that the organizational structure depositions logically came first. Plaintiffs also deposed two Goldman Sachs employees and a third-party vendor regarding certain databases that Goldman Sachs uses. Both parties intend to take further depositions.

*Document Discovery:* Plaintiffs have requested a wide range of documents, in many cases going back to 2000, concerning the personnel processes at issue in the lawsuit, demographic data and other information. To date, Goldman Sachs has produced well over 100,000 pages of documents, including organizational charts, policy documents, training materials, job descriptions, and review forms, in addition to personnel documents and emails related to Plaintiffs Chen-Oster and Orlich. Now that the Court has ruled on motions related to the scope of this case, Goldman Sachs has begun producing documents for all four divisions back to 2000, and will continue to produce such documents on a rolling basis. Additionally, Plaintiffs have said that they will provide Goldman Sachs with a list of custodians (beyond Plaintiffs Chen-Oster and Orlich) whose emails they would like to have searched. Goldman Sachs has not yet received that list from Plaintiffs.

---

[4] The parties have agreed to stay discovery with respect to the Managing Director position until the issue of the scope of Plaintiff Parisi's arbitration commitment with the firm is resolved by the Second Circuit. Nonetheless, Goldman Sachs has agreed that it will provide discovery related to the process for promotions from Vice President to EMD in the four revenue divisions – and indeed already has produced numerous documents related to this process.



Hon. Jesse M. Furman
November 5, 2012
Page 5

*Data Discovery:* The parties have approached data discovery in two phases. First, Goldman Sachs provided Plaintiffs with samples of the sorts of data it maintains on personnel. Second, the time period and divisional scope of the data production was decided by Magistrate Judge Francis on September 10, 2012. Thereafter the parties negotiated a data handling agreement that was signed on November 3, 2012, and Goldman Sachs now plans to produce promptly extensive data from its PeopleSoft database, consistent with the Magistrate's order. Plaintiffs have recently demanded production of data fields that Defendants believe go beyond what was previously agreed and represented to Magistrate Judge Francis. Goldman Sachs is working with Plaintiffs to try to resolve this change in their position about the fields to be produced.

*Expert Discovery:* The parties intend to exchange expert reports and conduct expert depositions. We will include a schedule for expert discovery in our proposal for a revised scheduling order.

*Additional Discovery for Purposes of Settlement:* The extensive amount of documents and some statistical data analyses that Goldman Sachs have already provided to Plaintiffs has allowed for the parties to begin engaging in meaningful settlement negotiations (as discussed below). The upcoming database productions likely will be important to those discussions as well.

### 8. Status of Settlement Negotiations

Throughout 2012, the parties have had several in-person and telephonic meetings to discuss possible settlement. While the parties are not close to a resolution, we intend to continue these discussions, including by participation in mediation, as ordered by the Court on October 10, 2012. (*See* ECF 162.)

### 9. Estimated Length of Trial

The length of a trial would depend on whether Plaintiffs' motion for class certification is granted or denied. If the motion is denied, we estimate a trial in this case would take approximately 5 to 10 trial days. If a class along the lines sought by Plaintiffs were certified, we estimate trial would take 10 to 12 weeks.

### 10. Additional Information

Goldman Sachs is available to answer any questions the Court may have or to provide any additional information to the Court.

Respectfully,

Barbara Berish Brown
of PAUL HASTINGS LLP

Theodore O. Rogers, Jr. /BBB
SULLIVAN & CROMWELL LLP

cc: Adam T. Klein, Esq.
Kelly M. Dermody, Esq.

LEGAL_US_E # 100984395

```
In light of the common law right of access to
judicial documents, Defendants' request to
keep this letter confidential is DENIED, as
there is nothing confidential or sensitive
about the information disclosed herein.
```

SO ORDERED.

November 9, 2012