UNITED STATES DISTRICT COURT          **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
H. CRISTINA CHEN-OSTER; LISA    :   10 Civ. 6950 (AT) (JCF)
PARISI; and SHANNA ORLICH,     :
                    :       MEMORANDUM
           Plaintiffs,    :     <u>AND   ORDER</u>
                    :
    - against -          :
                    :
GOLDMAN, SACHS & CO. and THE    :
GOLDMAN SACHS GROUP, INC.,     :
                    :
           Defendants.   :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Privileged information can be communicated in myriad ways: orally, in writing, by e-mail, with text messages, or even through social media. This opinion addresses the circumstances under which information contained in a database may be protected from disclosure by either the attorney-client privilege or the work product doctrine.

<u>Background</u>

     The plaintiffs allege that their employers, Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs"), engaged in a pattern of gender discrimination against female professional employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 <u>et</u> <u>seq.</u> In particular, the plaintiffs contend that they have been

discriminated against in evaluation, compensation, and promotion. They seek to represent "a Class of all female financial-services employees who are at the Associate, Vice President, and Managing Director corporate level" at Goldman Sachs. (First Amended Class Action Complaint ("Am. Compl."), ¶ 58).

In a prior opinion, I determined that information from certain of Goldman Sachs' human resources databases was relevant to the issues in this case and that the cost and burden of producing that information was generally not disproportionate to its importance to the litigation. Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294 (S.D.N.Y. 2012). Two of the databases within Goldman Sachs' data management system are particularly relevant to the current dispute. The PeopleSoft database is the company's comprehensive repository for human resources information. Id. at 296. The Compensation Recommendation System, or "CRS," database has a more specific function: it contains the results of the annual year-end compensation review process. Id.

In the course of complying with my prior order and producing information from the CRS database, Goldman Sachs disclosed the names of thousands of data "fields," each of which refers to a category of data elements. (E-mail of Geoff Weirich dated Dec. 29, 2012 ("Weirich E-mail"), attached as Exh. B to Letter of Adam T. Klein dated April 11, 2013 ("Klein 4/11/13 Letter"); List of

2

fields, attached as Exh. A to Klein 4/11/13 Letter). These categories can be linked to generate reports containing information relevant to business decisions. To give a simple example, one field may consist of employee names, while another comprises current job titles. A report drawing from just these two fields would list every Goldman Sachs employee together with his or her title.

After producing a spreadsheet of CRS fields, defendants' counsel discovered that they had inadvertently disclosed the names of a group of fields collectively referred to as the "Diversity Objects." (Weirich E-mail). Arguing that these fields were created at the behest of counsel, Goldman Sachs maintained that their "very existence" is "privileged and reflects attorney work product" and demanded that the spreadsheet be returned for redaction. (Weirich E-mail). The plaintiffs agreed to sequester the spreadsheet and refrain from making use of it until its legal status was resolved, as required by Rule 502(b) of the Federal Rules of Evidence and Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. (Letter of Adam T. Klein dated Jan. 4, 2013 ("Klein 1/4/13 Letter"), attached as Exh. C to Klein 4/11/13 Letter, at 1). They also requested that Goldman Sachs provide an affidavit establishing the basis for any asserted privilege. (Klein 1/4/13 Letter at 1-2).

In response, Goldman Sachs proffered a declaration from Gena Palumbo, an employment attorney in the firm's legal department since 2001, who became head of the Employment Law Group in 2012. (Declaration of Gena Palumbo dated Feb. 8, 2013 ("Palumbo Decl."), attached as part of Exh. D to Klein 4/11/13 Letter, at 1). According to Ms. Palumbo, the legal department was often asked "for advice about the legal risks that might be posed by the tentative compensation decisions that the managers within [the revenue division] had proposed." (Palumbo Decl. at 2). The legal department ultimately formulated a system for responding to such inquiries:

> In approximately 2003 or 2004, the Employment Law Group decided to establish a set of data fields to assist us in providing such legal advice when requested to do so. Therefore, I asked the Human Capital Management Division ("HCM") to create reports for the lawyers from data in the Compensation Recommendation System ("CRS") database. HCM created special data fields for this purpose and housed them in a data category called Diversity Objects in the CRS database. We identified several categories of information for these reports that would identify certain tentative decisions (e.g., absolute or relative increases or decreases in tentative compensation for an individual) on which we wanted to focus in assessing risk. [The then-head of the Employment Law Group] and I were the ones who decided on the parameters for the Diversity Objects data fields when we began these analyses; they were based on our mental impressions about the manner in which the data could help us identify circumstances in which the legal department could provide useful advice to the divisions. The field names reflect the criteria and parameters that we set for the requested reports, and they reveal our thinking about the factual circumstances we consider most important to identify for further

investigation and assessment of legal risk.
(Palumbo Decl. at 2).   In reviewing tentative compensation
decisions, the lawyers in the Employment Law Group begin with
reports that are generated from the Diversity Objects fields and
may then solicit additional information about particular
individuals in connection with providing legal advice.  (Palumbo
Decl. at 3).  They engage in a similar process in order to evaluate
legal risks involved in the designation of managers by quartile.
(Palumbo Decl. at 4).  The lawyers' role is confined to the
provision of legal advice; they do not make compensation or other
personnel decisions.  (Palumbo Decl. at 3).

There are, then, effectively three types of information
related to the CRS database.  First, there are the names of the
fields of data, such as the Diversity Objects.  Then there are the
data elements themselves, the information that populates the
fields.  And, finally, there are reports generated from the
database.  The current dispute involves the Diversity Objects
fields and the data elements contained in them.  Goldman Sachs
maintains that both are protected from discovery by the work
product doctrine and the attorney-client privilege.

<u>Discussion</u>

A. <u>Work Product</u>

The burden of establishing any right to work product

5

protection is on the party asserting it.  In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (party asserting work product protection faces "heavy" burden).  The protection claimed must be narrowly construed and its application must be consistent with the purposes underlying the asserted immunity.  Id.

The work product doctrine "shields from disclosure materials prepared 'in anticipation of litigation' by a party or the party's representative, absent a showing of substantial need."  United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed R. Civ. P. 26(b)(3).  It is designed to protect "mental impressions, conclusions, opinions or theories concerning [] litigation."  United States v. Adlman, 134 F.3d 1194, 1194 (2d Cir. 1998).  A document is prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation."  Id. at 1202 (internal quotation marks omitted).  Although a document "does not lose protection . . . merely because it is created in order to assist with a business decision," id., "[i]f, regardless of the prospect of litigation, the document would have been prepared anyway, in the ordinary course of business . . . , it is not entitled to work product protection," Clarke v. J.P. Morgan Chase

6

& Co., No. 08 Civ. 2400, 2009 WL 970940, at *7 (S.D.N.Y. April 10, 2009) (citing Adlman, 134 F.3d at 1202).

While legal risks may ripen into litigation, not all risk management qualifies as anticipation of litigation. Generalized steps to avoid non-specific litigation are not accorded work product protection. See Montgomery County v. MicroVote Corp., 175 F.3d 296, 305 (3d Cir. 1999) (Greenberg, J., concurring) ("A party must show that there existed an identifiable specific claim or impending litigation when the materials were prepared." (internal quotation marks and citation omitted)); Prowess, Inc. v. Raysearch Laboratories AB, No. WDQ-11-1357, 2013 WL 509021, at *7 (D. Md. Feb. 11, 2013) ("The work product protection only extends to documents created because a specific litigation is anticipated, and [i]t is not enough . . . that the mere possibility of litigation exists." (alterations in original) (internal quotation marks and citations omitted)); In re Grand Jury Proceedings, No. M-11-189, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001) ("[A] generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement."); see also Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C., No. 08 Civ. 1565, 2011 WL 5008571, at *2 (N.D. Ohio Oct. 20, 2011) (quoting In re Grand Jury Proceedings, 2001 WL 1167497, at *15).

The point at which the threat of litigation becomes

sufficiently concrete to trigger work product protection is not always obvious, but the Second Circuit has provided some guidance:

> If, for example, a party expects to be sued by a particular adverse claimant in the event it undertakes to trade under a disputed mark or publishes a book the copyright of which is contested, we see no reason why work-product protection should not apply to preparatory litigation studies undertaken by that party (or its representatives) before it begins to trade under the contested mark or publishes the book.  Nor should the answer be different for a party that prepares to initiate the lawsuit in the expectation that another is about to begin trade under the party's mark, or about to publish a work to which the party claims the copyright.

Adlman, 68 F.3d at 1501.  Although in these illustrations there may be many contingencies that would need to be met before a litigation were actually commenced, there is at a minimum an identifiable potential adversary and a defined legal claim.

In this case, Goldman Sachs has proffered no such specifics. Ms. Palumbo states that the Diversity Objects data fields are utilized to provide advice concerning "the legal risk that might be imposed by [] tentative compensation decisions." (Palumbo Decl. at 2).  Tellingly, she does not characterize the risk as the prospect of litigation.  Nor does she specify the nature of the potential claim or identify any individual or group of individuals who might file a lawsuit.  As the court observed in In re Grand Jury Proceedings, "[T]o find that avoidance of litigation without more constitutes 'in anticipation of litigation' would represent an

insurmountable barrier to normal discovery and could subsume all compliance activities by a company as protected from discovery." 2001 WL 1167497, at *15 (internal quotation marks and citations omitted).  Wherever the precise boundary between general risk management and anticipation of litigation may lie, the information at issue here falls outside the protection of the work product doctrine.

This conclusion does not, however, preclude a determination that the information at issue is protected from discovery by the attorney-client privilege.  "The attorney-client privilege and the work product rule serve different objectives."  Adlman, 134 F.3d at 1200 n.4; accord Prowess v. Raysearch Laboratories AB, No. WDQ-11-1357, 2013 WL 1856348, at *2 (D. Md. April 30, 2013) ("[T]he work product protection . . . arises from different circumstances and protects different interests than the attorney-client privilege." (internal quotation marks and citations omitted)); Trustees of Electrical Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 13-14 (D.D.C. 2010); Stoffels v. SBC Communications, Inc., 263 F.R.D. 406, 412 (W.D. Tex. 2009).  I will therefore turn to the privilege.

B. Attorney-Client Privilege

The attorney-client privilege protects from disclosure "(1) a communication between client and counsel that (2) was intended to

9

be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (citing United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)); accord United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011); United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012); National Immigration Project of the National Lawyers Guild v. United States Department of Homeland Security, 842 F. Supp. 2d 720, 728 (S.D.N.Y. 2012).[1]  The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice. See Upjohn Co. v. United States, 449 U.S. 383, 390 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir. 1992); Oak-

---

[1] An alternative and more detailed articulation of the attorney-client privilege provides that:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997) (quotation marks and citation omitted); see also Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2007 WL 473726, at *7 (S.D.N.Y. Feb. 14, 2007); In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 73-74 (S.D.N.Y. 2006); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995).

<u>Jin Oh v. Sim & Park, LLP</u>, No. 12 MC 66, 2012 WL 1193755, at *1
(S.D.N.Y. April 10, 2012).  "It is axiomatic that the burden is on
a party claiming the protection of a privilege to establish those
facts that are the essential elements of the privileged
relationship, a burden not discharged by mere conclusory or ipse
dixit assertions."  <u>In re Grand Jury Subpoena Dated Jan. 4, 1984</u>,
750 F.2d 223, 224-25 (2d Cir. 1984) (citations and internal
quotation marks omitted); <u>accord</u> <u>von Bulow by Auersperg v. von
Bulow</u>, 811 F.2d 136, 144 (2d Cir. 1987); <u>Ghavami</u>, 882 F. Supp. 2d
at 536; <u>Schanfield v. Sojitz Corp. of America</u>, 258 F.R.D. 211, 214
(S.D.N.Y. 2009).

      1. <u>Database Information as Communication</u>

      The plaintiffs contend that Goldman Sachs' assertion of
privilege fails in several respects.  At the outset, they note that
the privilege protects only <u>communications</u> and argue that "[t]he
CRS Diversity Objects fields . . . are not communications -- they
are database fields -- that are 'not shared with anyone other than
members of the [Employment Lawyers Group],' and, therefore, not
provided to the firm's business managers when the ELG provides
legal advice." (Klein 4/11/13 Letter at 5-6 (quoting Palumbo Decl.
at 3)).

      This analysis is flawed.  Communication is very simply "a
process by which information is exchanged between individuals

through a common system of symbols, signs, or behavior." Merriam-Webster's Collegiate Dictionary 251 (11th ed. 2003).   In this instance, when the Human Capital Management Division populates the database with information in the Diversity Objects fields, it is taking the initial step in communicating that information to counsel for the purpose of obtaining legal advice.   That the information then resides in the database for some period of time before being passed on to the attorneys is of no moment. Likewise, the Diversity Objects fields -- the names of the data categories -- are communications.   They are the organizational principles, dictated by counsel, that the client uses to sort and package the information provided to the attorneys.   In effect, they are the syntactical structure for the communication of privileged information, and syntax is an indispensable aspect of the way verbal communication transmits meaning.  Were the Diversity Objects fields to be disclosed, the ability of the client to seek legal advice would be chilled, which is precisely the result that the privilege is intended to avoid.

Furthermore, the plaintiffs' observation that the Diversity Objects fields are not provided to Goldman Sachs' business people when the lawyers are giving advice is immaterial.  As noted above, the privilege protects certain communications between attorney and client regardless of the direction in which the information flows.

12

See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).
Here, the Diversity Objects fields are an integral part of the
exchange of information between in-house counsel and their business
clients at Goldman Sachs.

The plaintiffs also argue that the Diversity Objects fields
and their contents are simply "facts" and, as such, cannot be
subject to the privilege.  (Klein 4/11/13 Letter at 6).   The
plaintiffs are correct about the legal principle: "[t]he privilege
only protects disclosure of communications; it does not protect
disclosure of the underlying facts by those who communicated with
the attorney."  Upjohn, 449 U.S. at 395; accord Federal Housing
Finance Agency v. UBS Americas, Inc., Nos. 11 Civ. 5201, 11 Civ.
6188, 11 Civ. 6189, 11 Civ. 6190, 11 Civ. 6192, 11 Civ. 6193, 11
Civ. 6195, 11 Civ. 6196, 11 Civ. 6198, 11 Civ. 6200, 11 Civ. 6201,
11 Civ. 6202, 11 Civ. 6203, 11 Civ. 6739, 11 Civ. 7010, 2013 WL
1700923, at *1 (S.D.N.Y. April 16, 2013); Gucci America, Inc. v.
Guess?, Inc., 271 F.R.D. 58, 70 (S.D.N.Y. 2010).  But the facts
here are the attributes of Goldman Sachs employees, not the
collection and communication of those facts through the Diversity
Objects fields.  The attributes -- the facts -- are available in
the PeopleSoft database, which is not cloaked by the attorney-
client privilege, and which has been disclosed to the plaintiffs.

2. <u>Confidential Legal Advice</u>

Of course, identifying something as a communication is only the first step in establishing the applicability of the attorney-client privilege.   The communication must have been made in confidence for the purpose of providing legal advice.   Here, Goldman Sachs has made a <u>prima facie</u> showing that these two prerequisites are met.   It has represented that the information at issue is "not shared with anyone other than members of the Employment Law Group and those in [Human Capital Management] who work at [the lawyers'] direction to collect facts relevant to [the lawyers'] review."   (Palumbo Decl. at 3).   This satisfies the requirement of confidentiality.   Similarly, Goldman Sachs has characterized counsel as utilizing the information from the Diversity Objects fields exclusively to provide legal advice, meeting the second requirement.   (Palumbo Decl. at 3).

The plaintiffs challenge these representations, arguing that the Diversity Objects fields contain "information that is used for the business operations of Goldman Sachs."   (Tr. at 7).[2]   But this contention, unsupported by evidence, does not overcome the sworn testimony of a witness with personal knowledge.   Should evidence obtained during the course of discovery undermine the

---

[2] "Tr." refers to the transcript of the oral argument held on May 31, 2013.

representations made by Goldman Sachs, these issues may be revisited.   The plaintiffs are entitled, for example, to test whether managers have access to the CRS database, and specifically to the Diversity Objects fields, a fact that could militate in favor of finding that these fields are maintained for business purposes and would not be privileged.   But until such evidence comes to light, the privilege must be respected.

   3. <u>Forfeiture</u>

   Finally, the plaintiffs contend that even if the information related to the Diversity Objects fields is privileged, Goldman Sachs has forfeited any protection by placing it at issue in this litigation.   It is well-established that "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991).   The plaintiffs' theory is that by denying corporate liability under the New York City Human Rights Law (the "NYCHRL"), Goldman Sachs has placed at issue its corporate knowledge, including that of its attorneys.   Specifically, section 8-107(1)(a) of the NYCHRL prohibits discrimination on the basis of gender, and section 8-107(13)(b) imposes vicarious liability on an employer for discriminatory acts by its employees or agents where:

   (1) the employee or agent exercised managerial or

15

supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

According to the plaintiffs, Goldman Sachs' Forty-Fourth Affirmative Defense, addressed to the NYCHRL claims, implicates the Diversity Objects information.  That defense states:

If any employee of Goldman Sachs engaged in any unlawful discriminatory practice, which Goldman Sachs expressly denies, Goldman Sachs is not liable with respect to any and/or all of Plaintiffs' purported NYCHRL claims because: (1) Goldman Sachs did not know of or acquiesce to any employee's or agent's discriminatory conduct; (2) Goldman Sachs did not fail to take immediate and appropriate corrective action upon learning of any discriminatory conduct; (3) there is no basis for concluding that Goldman Sachs should have known of the employee's or agent's discriminatory conduct; and (4) Goldman Sachs did not fail to exercise reasonable diligence to prevent such discriminatory conduct.

(Answer to First Amended Class Action Complaint, ¶ 236).

The Second Circuit has made clear that "[t]he key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or

16

defense.  County of Erie, 546 F.3d at 228.  Assertion of an advice of counsel defense is the "quintessential example" of an implied waiver.  Id. (internal quotation marks and citation omitted).  On the other hand, the fact that a privileged communication may simply be relevant to a claim or defense is insufficient to effect forfeiture of the privilege.  Id. at 229; accord Aiossa v. Bank of America, N.A., No. 10 CV 1275, 2011 WL 4026902, at *2 (E.D.N.Y. Sept. 12, 2011).

Here, the plaintiffs contend that Goldman Sachs has asserted a good faith defense that implicates its state of mind.  (Klein 4/11/13 Letter at 6-7).  When a defendant places at issue what it knew or believed regarding the conduct in question, it implicitly waives the privilege because its adversary, in fairness, must be allowed inquiry into the basis of that knowledge or belief.  See County of Erie, 546 F.3d at 228-29; Bilzerian, 926 F.2d at 1292; Xuedan Wang v. Hearst Corp., No. 12 Civ. 793, 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012); MBIA Insurance Corp. v. Patriarch Partners VIII, LLC, No. 09 Civ. 3255, 2012 WL 2568972, at *6-7 (S.D.N.Y. July 3, 2012); Arista Records, LLC v. Lime Group, LLC, No. 06 Civ. 5936, 2011 WL 1642434, at *2-3 (S.D.N.Y. April 20, 2011); Leviton Manufacturing Co. v. Greenberg Traurig LLP, No. 09 Civ. 8083, 2010 WL 4983183, at *3-5 (S.D.N.Y. Dec. 6, 2010).

But the claim that the plaintiffs advance under the NYCHRL

simply does not allow for a good faith defense. They assert that Goldman Sachs has systematically discriminated against its female employees in compensation and promotion based on their gender. Thus, the illegal conduct alleged is that of its management personnel. This falls within the first subdivision of NYCHRL section 8-107(13)(b), which imposes liability on the employer for the discriminatory acts of an employee where the employee "exercised managerial or supervisory responsibility." By its terms, this is a strict liability provision that holds the employer legally responsible without regard to whether the employer knew or should have known of the conduct of the managerial employee. Zakrzewska v. New School, 14 N.Y.3d 469, 479-80, 902 N.Y.S.2d 838, 841-42 (2010); see also Caravantes v. 53rd Street Partners, LLC, No. 09 Civ. 7821, 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012); Chisholm v. Memorial Sloan-Kettering Cancer Center, 824 F. Supp. 2d 573, 579 (S.D.N.Y. 2011); Zakrzewska v. New School, 598 F. Supp. 2d 426, 434 (S.D.N.Y. 2009).

The other two paths to liability under the NYCHRL -- that the employer "knew of the . . . discriminatory conduct," NYCHRL § 8-107(13)(b)(2), or "should have known of the . . . discriminatory conduct," NYCHRL § 8-107(13)(b)(3) -- do require a showing of knowledge and could lead to an implied waiver of privilege in appropriate circumstances. But these provisions relate to

18

discriminatory conduct by co-workers, not by managers. The legislative history as set forth in the report of the New York City Council's Committee on General Welfare makes this clear; it characterized section 8-107(13) as providing for "[s]trict liability in employment context for acts of managers and supervisors; also liability in employment context for acts of co-workers where employer knew of act and failed to take prompt and effective remedial action or should have known and had not exercised reasonable diligence to prevent." (1991 N.Y. City Legis. Ann. at 187 (quoted in Zakrzewska, 14 N.Y.3d at 480, 902 N.Y.S.2d at 842-43). In this case, the discrimination alleged is that of managerial personnel, and the knowledge or good faith of Goldman Sachs is not at issue.[3]

Thus, the Diversity Objects information is protected by the attorney-client privilege and that privilege has not been waived.

---

[3] The plaintiffs cite Johnston v. Apple, Inc., No. 11 Civ. 3321, 2011 WL 4916305, at *5 (S.D.N.Y. Oct. 14, 2011), for the proposition that "vicarious liability under NYCHRL 'require[s] showing some level of [actual or constructive] knowledge on the part of the employer.'" (Klein 4/11/13 Letter at 6 (alterations in original)). The plaintiffs' quotation of Johnston, however, is incomplete in a significant respect. The court there referred to the requirement of "some level of knowledge on the part of the employer (implicitly when the employee is a manager)." Id. (emphasis supplied). In other words, when the discriminatory conduct is that of a manager, knowledge is automatically and irrebuttably attributed to the employer, establishing vicarious liability.

Conclusion

      For the reasons discussed above, the plaintiffs' application for an order compelling Goldman Sachs to disclose information relating to the Diversity Objects fields is denied without prejudice to renewal if and when the plaintiffs are able to proffer evidence that would negate Goldman Sachs' claim of privilege.

                SO ORDERED.

                JAMES C. FRANCIS IV
                UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      June 18, 2013

Copies mailed this date:

Adam T. Klein, Esq.
Carmelyn Malalis, Esq.
Cara E. Greene, Esq.
Cyrus E. Dugger, Esq.
Jennier L. Liu, Esq.
Dana G. Sussman, Esq.
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, New York  10016

Kelly Dermody, Esq.
Anne B. Shaver, Esq.
Alison M. Stocking, Esq.
Lief, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111

Theodore O. Rogers, Jr., Esq.
Suhana S. Han, Esq.
Michael P. Reis, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, New York  10004

Barbara B. Brown, Esq.
Paul, Hastings, Janofsky & Walker LLP
875  15th Street N.W.
Washington, DC  20005

C. Geoffrey Weirich, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Sreet, NE
Suite 2400
Atlanta, GA  30308

Zachary D. Fasman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York  10022