UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
H. CRISTINA CHEN-OSTER; LISA      :  10 Civ. 6950 (AT) (JCF)
PARISI; and SHANNA ORLICH,        :
                                  :       MEMORANDUM
           Plaintiffs,            :       AND   ORDER
                                  :
     - against -                  :
                                  :
GOLDMAN, SACHS & CO. and THE      :
GOLDMAN SACHS GROUP, INC.,        :
                                  :
           Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     In this putative class action, the plaintiffs allege that

their employers, Goldman, Sachs & Co. and The Goldman Sachs Group,

Inc. (collectively, "Goldman Sachs"), engaged in a pattern of

gender discrimination against female professional employees in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq., and the New York City Human Rights Law, N.Y.C.

Admin. Code § 8-107 et seq. Specifically, the plaintiffs contend

that they have been discriminated against with respect to

compensation, promotion, and performance evaluation.  The

plaintiffs seek to represent "a Class of all female financial-

services employees who are at the Associate, Vice President, and

Managing Director corporate level" at Goldman Sachs in one of the

four revenue-generating divisions: Securities, Investment Banking,

Investment Management, and Merchant Banking.  Chen-Oster v.

1

Goldman, Sachs & Co., 285 F.R.D. 294, 295, 297 (S.D.N.Y. 2012) (internal quotation marks omitted).

On July 28, 2013, the plaintiffs submitted a letter motion pursuant to Rule 37 of the Federal Rules of Civil Procedure seeking an order to compel Goldman Sachs to produce (1) all internal complaints made by putative class members during the discovery period that relate to compensation, promotion, or performance evaluation, (2) unredacted copies of all discoverable complaints, and (3) internal complaints made by female employees who are not in the putative class. (Letter of Kelly M. Dermody, dated July 29, 2013 ("Dermody 7/29/13 Letter") at 1). Goldman Sachs opposed the application. (Letter of Barbara Berish Brown and Theodore O. Rogers, Jr., dated August 15, 2013 ("Brown 8/15/13 Letter")). For the reasons set forth below, the plaintiffs' motion is granted in part and denied in part.

Background

Much of the factual and procedural background to this case was laid out in a prior discovery order. Chen-Oster, 285 F.R.D. at 295-99. A brief summary follows; otherwise, familiarity with the issues is assumed. I will address additional facts as they are pertinent to the legal analysis.

The plaintiffs filed their original complaint on September 16, 2010, and an amended complaint on September 19, 2011. In

2

anticipation of discovery, a protective order was entered on March 18, 2011, limiting use of any disclosed materials to the purposes of this lawsuit and establishing mechanisms for the protection of confidential information.   (Protective Order and Confidentiality Agreement dated March 18, 2011 ("Protective Order")).   In September 2012, I granted a motion to compel pre-certification discovery of Goldman Sachs' computerized data on employees' compensation, promotions, and performance evaluations.   Chen-Oster, 285 F.R.D. at 308.   At that time, I rejected Goldman Sachs' request to bifurcate discovery prior to class certification because "class-related discovery . . . often overlaps substantially with the merits."   Id. at 298-300 (collecting cases "illustrat[ing] the need to develop the record fully before a class motion is considered").

Among other things, the plaintiffs have sought discovery of Goldman Sachs' records of internal employee complaints.   After an extended discussion between the parties, the plaintiffs amended their original discovery request for complaints "referring or relating to gender discrimination" to a request for any complaints that were made by female employees "referring or relating to unfair treatment."   (Dermody 7/29/13 Letter at 1-2 & n.2).   Though Goldman Sachs has already produced some complaints, the parties have not been able to agree on the scope of this discovery, giving rise to the instant motion.   Oral argument was held on September 12, 2013.

Discussion

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Nunez v. City of New York, No. 11 Civ. 5845, 2013 WL 2149869, at *2 (S.D.N.Y. May 17, 2013). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The burden of demonstrating relevance is on the party seeking discovery. See, e.g., Trilegiant Corp. v. Sitel Corp., 272 F.R.D. 360, 363 (2010); Mandell v. Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). Once relevance has been shown, it is up to the responding party to justify curtailing discovery. AIU Insurance Co. v. TIG Insurance Co., No. 07 Civ. 7052, 2008 WL 5062030, at *9 (S.D.N.Y. Nov. 25, 2008) (citing Condit, 225 F.R.D. at 106). "[T]he objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive."

4

Tourtelotte v. Anvil Place Master Tenant, LLC, No. 3:11 CV 1454, 2012 WL 5471855, at *1 (D. Conn. Nov. 9, 2012) (quoting In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005)).

Even when the requested information sought is relevant, "the court must limit the frequency or extent of discovery" where it is "unreasonably cumulative or duplicative" or when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i),(iii). Courts have "significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 294 (2010); accord Federal Housing Finance Agency v. UBS Americas Inc., No. 11 Civ. 5201 et al., 2013 WL 3284118, at *12 (S.D.N.Y. June 28, 2013); Chen-Oster, 285 F.R.D. at 303.

Against this general discovery backdrop, courts typically apply more "liberal civil discovery rules" in employment discrimination cases, giving plaintiffs "broad access to employers' records in an effort to document their claims." Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989), superseded by statute on

other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.  "As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad." Mitchell v. National Railroad Passenger Corp., 208 F.R.D. 455, 459 (D.D.C. 2002); see also Chan v. New York University Downtown Hospital, No. 03 Civ. 3003, 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004) ("[T]he imposition of unnecessary discovery limitations [in employment discrimination cases] is to be avoided." (internal quotation marks omitted)).  Broader discovery is warranted when a plaintiff's claims are premised on a pattern or practice of discrimination at the organization-wide level, as opposed to specific allegations of discrimination made against an individual supervisor. See, e.g., Sinni v. Forest Hills Hospital, No. 09-CV-4572, 2011 WL 1004817, at *3 (E.D.N.Y. March 18, 2011) (denying discovery of internal complaints from other departments because the plaintiff had not alleged a pattern or practice of discrimination); Bellinger v. Astrue, No. 06-CV-321, 2010 WL 1268063, at *1 (E.D.N.Y. April 2, 2010).

A.  Putative Class Member Complaints

The plaintiffs seek discovery of all internal complaints, made by all putative class members, that relate to compensation, promotion, or performance evaluation, regardless of whether such

6

complaints expressly allege gender discrimination. These complaints are discoverable, they argue, because an alleged pattern or practice of discrimination creates an environment in which "[a] female employee may experience . . . the disparate impact of a neutral policy or practice and may complain about the effect of that policy or practice . . . without asserting that her gender or discrimination are to blame." (Dermody 7/29/13 Letter at 4). The plaintiffs express concern that Goldman Sachs has turned over only those complaints that contain "magic language" indicating gender discrimination was at issue. (Dermody 7/29/13 Letter at 4).

Without disclosing precisely how it determines which complaints are gender-related,[1] Goldman Sachs claims that it does not rely on "magic words" and that it has already produced "information about all complaints in which the complainant's gender had some conceivable relationship to the complaint." (Brown 8/15/13 Letter at 4 (emphasis added)).[2] Goldman Sachs opposes the plaintiffs' request for all complaints by female employees as beyond the scope of relevant discovery, arguing that many of these

---

[1] Defense counsel has asserted that this information is immune from disclosure pursuant to the work product doctrine. (Transcript of Oral Argument dated Sept. 12, 2013 ("Tr.") at 27-28).

[2] At oral argument, this was alternatively phrased as "any complaint that has gender as a reason or basis for the complaint" and "anything that could have suggested that gender was a factor in the [complainant's] issue." (Tr. at 25-26).

complaints "have nothing to do with gender concerns". (Brown 8/15/13 Letter at 3). According to Goldman Sachs, such a request amounts to a "'general "fishing expedition" into areas unrelated to [plaintiffs'] claims . . . [including] discrimination claims based on factors other than sex.'" (Brown 8/15/13 Letter at 3 (quoting Zahorik v. Cornell University, 98 F.R.D. 27, 31 (N.D.N.Y. 1983))); see also Vuona v. Merrill Lynch, 10 Civ. 6529, 2011 WL 5553709, at *7 (S.D.N.Y. Nov. 15, 2011) ("Plaintiffs fail to satisfactorily explain how the discovery of non-gender-based complaints . . . is likely to reveal documents or information relevant to their [gender discrimination] claim."); Walker v. Metropolitan Life Insurance Co., No. 92 Civ. 8054, 1993 WL 452611, at *2 (S.D.N.Y. Nov. 1, 1993) (denying discovery of employees' gender in age discrimination case where there was "no suggestion of gender discrimination"); but see Bell v. Lockheed Martin Corp., Civil No. 08-6292, 2010 WL 3724271, at *10 (D.N.J. Sept. 15, 2010) (plaintiff entitled to limited anecdotal information concerning other forms of discrimination because she "presented a coherent and plausible theory as to how that information is relevant to the alleged gender discrimination")).

Goldman Sachs' reliance on Zahorik misconstrues the nature of the present dispute. The plaintiffs do not seek discovery of non-gender-related complaints, such as those alleging race or age

8

discrimination.  Cf. Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 197 (D.N.J. 2010) (permitting discovery of unrelated complaints to determine how defendant "identifies and assesses other forms of discrimination vis-a-vis gender and what, if any, steps they take to remedy the other forms of discrimination they find" (internal quotation marks omitted)).  Rather, they seek discovery of all complaints made by female employees regarding compensation, promotion, or performance evaluation, including those complaints that appear to be based primarily on race or age, because they believe that these complaints are related to a disparate impact felt by female employees resulting from a pattern or practice of gender discrimination.  In other words, the parties disagree about whether the complaints are gender-related, not whether discovery of non-gender-related complaints is also appropriate.

In order to provide additional guidance to the parties for the remainder of discovery, a brief discussion is warranted regarding what qualifies as a "gender-related" complaint.  Retaliation doctrine provides a helpful starting point.

A plaintiff alleging retaliation as the basis for an employment discrimination claim must show that her employer was aware of her complaint and that it "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Galdieri-Ambrosini v. National

Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998); see also Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011) (collecting cases). Courts must therefore determine whether an employer had sufficient notice that an employee's complaint raised the issue of gender discrimination. "[T]here are no magic words that must be used when complaining" about the alleged discrimination in order to satisfy this requirement. Ramos v. City of New York, No. 96 Civ. 3787, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997); see also Brown v. United Parcel Service, Inc., 406 F. App'x 837, 840 (5th Cir. 2010); Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006); Sitar v. Indiana Department of Transportation, 344 F.3d 720, 727 (7th Cir. 2003); Kelley v. Sun Microsystems, Inc., 520 F. Supp. 2d 388, 403 (D. Conn. 2007). However, if an employee does not use key words such as "discrimination" or "gender," the complaint must "lend itself to a reasonable inference of unlawful discrimination." Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010).

Applying these principles to the present dispute, any complaints containing relevant "buzzwords" -- language such as "sex discrimination," "male" or "female," "gender," "glass ceiling," or "women's work," for example -- are clearly gender-related complaints. Goldman Sachs could and should have reasonably

understood them to be gender-related at the time they were made, and should now know that they are relevant for discovery purposes.

However, "buzzwords" are not required for retaliation claims, nor should they be required at the discovery stage in a disparate treatment case.  Given the broader scope of discovery in pattern-or-practice cases, together with the benefit of hindsight, complaints that were insufficient to alert Goldman Sachs to gender discrimination at the time they were made may be sufficiently related to gender to make them discoverable now.  For example, "complaints from a female high-level manager about having to perform secretarial work," while arguably failing to support a retaliation claim, International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007), could reasonably lead to evidence of gender discrimination and thus meet the broader relevance standard for discovery.  See, e.g., Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 285 (1979) (Marshall, J., dissenting); Rodriguez v. City of New York, 644 F. Supp. 2d 168, 191-92 (E.D.N.Y. 2008) (requiring female employee to pick up employer's meals and answer his phone was evidence of gender discrimination); Giannone v. Deutsche Bank Securities, Inc., 392 F. Supp. 2d 576 (S.D.N.Y. 2005) (holding that delegation of secretarial tasks not within the scope of plaintiff's position and not assigned to similarly situated men was sufficient

to establish a prima facie case of gender discrimination).

On the other hand, while the scope of discoverable complaints in disparate impact or disparate treatment cases is broader than that required to establish retaliation and encompasses more than just complaints with "magic words," the plaintiffs' demand for <u>all</u> complaints by female employees regarding compensation, promotion, or performance evaluation goes too far.  When a female employee complains that she "feel[s] [she] should be paid more," this may simply be an expression of personal job dissatisfaction unrelated to disparate treatment or gender discrimination.  (Brown 8/15/13 Letter at 3).  The likelihood that such a complaint would lead to anecdotal evidence of a disparate impact is outweighed by the burden of production.  <u>But see</u> <u>EEOC v. Outback Steakhouse of Florida, Inc.</u>, 251 F.R.D. 603, 608-09, 612 (D. Col. 2008) (granting discovery of "all complaints of unfair treatment by female employees").

The appropriate balance between these extremes rests on the concept of "disparity" at the heart of the present discrimination claims.  Determining whether a disparity exists in the employment discrimination context inherently involves comparing at least two individuals: the complainant and another employee.  When a female employee complains not simply that she "should be paid <u>more</u>," as in the previous example, but rather that she "should be paid <u>as much</u>

12

<u>as or more than</u>" somebody else, the nature of the complaint transforms into an allegation of disparity.  And when that comparison involves employees of different genders, it is reasonable to conclude that gender-related disparity may be at issue.

For the purposes of the present dispute, Goldman Sachs must provide the plaintiffs any internal complaints regarding compensation, promotion, or performance review where a female employee who is a member of the putative class drew a comparison between herself or another putative class member and one or more of her male colleagues.  <u>See, e.g.</u>, <u>Gates v. Caterpillar, Inc.</u>, 513 F. 3d 680, 687 (7th Cir. 2008) (plaintiff complained that it was "unfair that . . . a male in another work unit within the division, whom she believed had job duties similar to hers, was at a higher salary classification" and told her employer that "you wouldn't expect a man to remain in that type of job for so long").  These comparisons are sufficiently gender-related that such complaints could reasonably lead to admissible evidence of value to the plaintiffs, and are thus discoverable.[3]

---

[3] While complaints with "buzzwords" or explicit comparisons are the clearest examples, other non-explicit and non-comparative complaints may still have a "conceivable relationship" to gender, making them discoverable as well.  For instance, the defendants have produced information about sexual harassment and pregnancy complaints even though they are not asserted as class claims.

B.   Redaction of Names

In addition to expanding the pool of discoverable complaints, the plaintiffs seek unredacted summaries and copies of the complaints that Goldman Sachs has already turned over and from which it redacted the names of complainants, managers, and other employees.  (Dermody 7/29/13 Letter at 4).  These names, they argue, are needed to obtain anecdotal evidence from potential witnesses that can be used to establish common questions of law or fact at the class certification stage, establish pretext at the merits stage, and answer potential affirmative defenses raised by Goldman Sachs.  (Dermody 7/29/13 Letter at 4-5).  Goldman Sachs counters that these names are not relevant during class certification discovery, that it has already provided the names of those complainants who subsequently initiated proceedings with the Equal Employment Opportunity Commission, and that any further disclosure of names would breach its duty to protect the privacy interests of employees.  (Brown 8/15/13 Letter at 2, 4-5).

Plaintiffs are generally permitted to discover and introduce anecdotal evidence in order to supplement statistical evidence in pattern-or-practice gender discrimination cases.  See Teamsters v. United States, 431 U.S. 324, 338-39 (1977) (statistics used to

---

(Brown 8/15/13 Letter at 2).

14

prove a pattern or practice of discrimination were brought "convincingly to life" by individual testimony and anecdotes); United States v. City of New York, 717 F.3d 72, 103-04 (2d Cir. 2013) (Pooler, J., dissenting in part) ("'[Pattern-or-practice claims] usually rel[y] heavily on statistical evidence, bolstered as necessary with anecdotal evidence'" (quoting Arthur Larson et al., Employment Discrimination § 8.02, at 8-15 (2d ed. 2012)). Such anecdotal evidence is relevant at both the class certification and merits stages. Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, __, 131 S. Ct. 2541, 2556 (2011)(anecdotal evidence can support an inference of class-wide discrimination at the certification stage). Discovery of class member names may therefore be warranted where it either relates to "issues relevant to class certification such as numerosity or where contact with members of the class could yield information relevant to issues in the case." Dziennik v. Sealift, No. 05-CV-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006).

Here, unredacted names are required in order for the plaintiffs to contact potential witnesses and develop anecdotal evidence of the alleged gender discrimination, and are thus relevant to their claims. Wiginton v. CB Richard Ellis, No. 02 C 6832, 2003 WL 22232907, at *4 (N.D. Ill. Sept. 16, 2003) ("The identities of these [putative class members] are clearly relevant."); see also EEOC v. Sterling Jewelers, No. 08-CV-706,

2012 WL 1680811, at *9–11 (W.D.N.Y. May 14, 2012).   Under Rule
26(b), this interest must be balanced against the burden of
production.   The burden of removing the redactions is
insignificant, but Goldman Sachs protests that doing so would
violate the privacy interests of its current and former employees,
and therefore undermine the integrity and effectiveness of its
internal complaint process.   (Brown 8/15/13 Letter at 4).

Goldman Sachs admittedly does not promise its employees that
their internal complaints will be kept confidential, though it does
provide assurances that complaints will be treated "with
sensitivity."[4]   (Brown 8/15/13 Letter at 5, n. 5; Tr. at 20).
Goldman Sachs' employees do have a privacy interest in their
personal information.   See, e.g., Duling v. Gristedes Operating
Corp., 266 F.R.D. 66, 73–74 (S.D.N.Y. 2010) ("The court generally
regards personnel files of employees to be confidential by their
nature." (quoting Dahdal v. Thorn Americas, Inc., No. Civ. A 97-
2119, 1997 WL 599614, at *1 (D. Kan. Sept. 15, 1997)).   But this
privacy interest is not absolute.   Lytle v. JPMorgan Chase & Co.,

---

[4] Presumably, this sensitivity is largely aimed at keeping the
complaints confidential within the company, and with respect to the
subjects of the employees' grievances, not at limiting disclosure
of complaints to litigants who have raised similar grievances.
Indeed, defense counsel acknowledged that part of the reason for
such privacy assurances is to prevent "retaliation[, which] is
strictly prohibited."   (Tr. at 20).

16

810 F. Supp. 2d 616, 625 (S.D.N.Y. 2010) (allowing strict confidentiality of employee personnel files would encourage "every private employer accused of employment discrimination in federal court . . . [to] seek to have the names of any involved non-party employees redacted from its court filings").

Goldman Sachs attempts to balance these competing interests by redacting sensitive information from the files and complaints it has turned over, including employee names.  It cites <u>EEOC v. ABM Industries, Inc.</u>, No. 1:07-cv-01428, 2010 WL 1267346, at *5 (E.D. Cal. March 31, 2010), as an example of how redacting names protects the privacy interests of third parties.  (Brown 08/15/13 Letter at 5).  But the court's decision to permit the redaction of complainant names in that case was based on the plaintiffs' failure to demonstrate a need for that information and on the "defendants [having already] produced to the EEOC the names and addresses of more than 4,000 current and former employees to allow contact with these individuals to determine whether they claimed that they had suffered sexual harassment."  <u>Id</u>. at *1 n.1.  There is no reason to burden the plaintiffs here with the task of randomly selecting employees to determine if they had gender-related grievances; a set of relevant complaints has already been produced, and the individuals identified in these complaints are the persons most likely to have information relevant to the plaintiffs' case.

17

The privacy concerns raised by Goldman Sachs are best addressed by the Protective Order and Confidentiality Agreement already guiding discovery in this case, which clearly anticipated the disclosure of confidential employee information. (Protective Order at 2 (covering "private employee information identifiable in connection with particular individuals"). Such an order can "adequately balance" the "potential privacy interests of putative class members" with the discovery interests of the plaintiffs. Artis v. Deere & Co., 276 F.R.D. 348, 352-53 (N.D. Cal. 2011) (subject to protective order, "[p]laintiff is entitled to contact information of putative class members" who "may possess relevant discoverable information concerning issues dealing with Plaintiff's gender discrimination claims, as well as other class certification issues"); see also Dzanis v. JPMorgan Chase & Co., No. 10 Civ. 3384, 2011 WL 5979650, at *2 (S.D.N.Y. Nov. 30, 2011) ("[D]isclosure of personnel files, which can include confidential information, is generally subject to a protective order"); Babbitt v. Albertson's, Inc., No. C-92-1883, 1992 WL 605652, *6 (N.D. Cal. 1992) ("Disclosure of [employee names] could be invasive of the privacy rights of nonparties" but "these concerns could be adequately addressed through a well-crafted protective order").

In addition to the security provided by the protective order, disclosure of the unredacted names can be limited to plaintiffs'

counsel in order to further guard employee privacy, as suggested by counsel at oral argument.  (Tr. at 9; Letter of Kelly Dermody dated Aug. 20, 2013 at 2 ("Dermody 8/20/13 Letter") (citing <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 601 (2d Cir. 1986) (limiting disclosure to plaintiff's counsel to balance "the plaintiffs' desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employees"))).  This limitation is consistent with the terms of the protective order: parties may designate sensitive materials containing private employee information as "Confidential - Attorneys' Eyes Only" (Protective Order at 2), but such a designation does not preclude counsel from "locat[ing] or contact[ing] any potential witness or class member" (Protective Order at 5).

Given the potential relevance of complainants' stories, the "plaintiff[s] should have the same access" as Goldman Sachs to these potential witnesses.  <u>Babbitt</u>, 1992 WL 605652 at *6.  The protective order sufficiently addresses Goldman Sachs' privacy concerns, and tips the balance in favor of disclosure of complaints in which the names of complainants, managers, and other employees have not been redacted.

C.  <u>Complaints of Employees Outside the Class</u>

Finally, in addition to the complaints described in section A above, the plaintiffs move to compel discovery of internal

complaints made by employees who are not putative class members. Specifically, this request covers complaints made by two other categories of Goldman Sachs employees: (1) female associates, vice presidents, and managing directors in the non-revenue divisions (such as human resources or information technology), and (2) female employees of the revenue-generating divisions who are not associates, vice presidents, or managing directors. (Dermody 7/29/13 Letter at 7; Tr. at 15). Of these two subgroups, the plaintiffs have indicated that "the most important discovery . . . [pertains to] non-putative class members within the divisions that are at issue in this lawsuit." (Tr. at 34). They argue that these complaints are relevant to proving a culture of gender bias at Goldman Sachs and assessing the company's response to gender-related complaints. (Dermody 7/29/13 Letter at 7-8). The defendants again assert an interest in protecting the privacy of their employees, and they challenge the request as outside the scope of relevant discovery. (Brown 8/15/13 Letter at 6-7).

With respect to complaints outside of the plaintiffs' divisions, relevance is not subject to a per se rule but rather "is fact based and depends on many factors, including how closely related the evidence is to the plaintiffs circumstances and theory of the case." Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 388 (2008). Evidence of company-wide patterns of

20

discrimination "may reveal discrimination against a particular group of employees" and thus be relevant. Mitchell v. Metropolitan Life Ins. Co., No. 03 Civ. 10294, 2004 WL 2439704, at *1 (S.D.N.Y. Nov. 2, 2004) (allowing broader discovery in an individual disparate impact case).

However, discovery is often limited to a plaintiff's employment department or unit. See, e.g., Sasikumar v. Brooklyn Hospital, No. 09-CV-5632, 2011 WL 1642585, at *4 (E.D.N.Y. May 2, 2011) ("[C]ourts in this circuit have frequently narrowed broad discovery requests for past complaints to those made by employees in a particular department or division." (citing Curtis v. Citibank, N.A., 70 F. App'x 20, 24 (2d Cir. 2003) ("[T]he district court acted within its discretion in rejecting plaintiffs' sweeping discovery request for all formal and informal complaints of racial and sexual harassment and discrimination throughout the company, and in limiting discovery to the plaintiffs' supervisors and to their division."))); Glen v. Williams, 209 F.R.D. 279, 281-82 (D.D.C. 2002) ("[D]iscovery in Title VII actions may appropriately be limited to employment units, departments, and sections in which there are employees who are similarly situated to the plaintiff."). This limitation is commonly imposed in cases where an individual plaintiff does not allege a company-wide pattern or practice of discrimination, or where the allegations focus on a particular

employment action in which decision-making was limited to that
plaintiff's employment unit.    Compare, e.g., Sinni, 2011 WL
1004817, at *2-3 (limiting discovery because plaintiff alleged
specific instance of retaliation and not pattern or practice of
discrimination), with Jhirad v. TD Securities USA, Inc., No. 02
Civ. 7509, 2003 WL 1872654, at *2-3 (S.D.N.Y. April 10, 2003)
(allowing broader discovery based on evidence that individuals
other than plaintiff's supervisors were consulted in connection
with employment decisions affecting plaintiff), and Hollander v.
American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990) (allowing
company-wide discovery where pattern or practice of discrimination
was alleged).  Courts have allowed broader discovery of complaints
if there is "evidence that there were hiring or firing practices
and procedures applicable to all employing units" or if "the
requested information is particularly cogent to the matter or if
the plaintiff can show a more particularized need for, and the
likely relevance of, broader information."    Zelaya v. UNICCO
Service Co., 682 F. Supp. 2d 28, 32 (D.D.C. 2010) (internal
quotation marks omitted).

In this case, the likelihood that discovery of complaints by
employees in the non-revenue divisions will be overly burdensome
outweighs the scant possibility of uncovering admissible evidence.
The plaintiffs have not demonstrated that these complaints are

relevant to their allegations of a pattern or practice of discrimination allegedly impacting women in the revenue-generating divisions.  It is unclear what additional value would be gained from anecdotal evidence derived from these complaints, as these employees are not the subject of the statistical pattern-or-practice analysis.  There is no indication that putative class members were affected by policies or managerial decisions in the non-revenue generating divisions.  And, according to Goldman Sachs, the compensation and evaluation models in the other divisions are significantly different from those in the revenue-generating divisions in which the plaintiffs worked.  (Tr. at 28-29, 37).

The plaintiffs argue that Goldman Sachs' use of the 360-degree review policy and forced quartile ranking system is company-wide, and that female employees outside the revenue divisions may also feel that their work is undervalued or under-compensated as a result of these policies.  (Tr. at 15).  Whether the complaints from employees in those divisions implicate discrimination that actually stems from these common systems is another matter.  Even if the complaints from the non-revenue divisions did express a sense of undervaluation or a "disconnect" between performance and compensation, it is doubtful that the plaintiffs could attribute this impact to bias that stems from the company-wide review systems, as opposed to managers or policies unique to the non-

revenue divisions.  (Tr. at 34-35).

Turning to the second category of complaints, the same balancing analysis that justifies limiting discovery to the four revenue-generating divisions supports disclosure of complaints made by women within these divisions who are not members of the putative class.  Complaints made by analysts or administrative assistants, for example, are more clearly and directly related to the plaintiffs' case because these individuals have worked closely with putative class members.  They may be able to provide anecdotes and information regarding their interactions with common managers, experiences utilizing the same internal complaint process, or the general culture of these divisions.  Some employees may have first raised gender-related concerns when they were analysts, before they became members of the putative class as associates or vice presidents.  And, although they are outside the class, these employees may also have felt, either directly or indirectly, the negative impact of a pattern or practice of discrimination against their putative class member coworkers.  These complaints are reasonably likely to lead to additional evidence pertinent to the claims of the putative class employees, and Goldman Sachs has not argued that producing these complaints from the same divisions already under examination would be unreasonably burdensome.

24

Conclusion

For the reasons stated above, Goldman Sachs shall provide plaintiffs' counsel with all internal complaints that are "conceivably related" to gender discrimination made by female employees in the four revenue-generating divisions, regardless of whether the complainant is a member of the putative class.   In accordance with the discussion above, "conceivably related" shall include, but is not limited to, any complaints that contain explicit gender discrimination language as well as any complaints that pertain to compensation, promotion, or performance evaluation where a female employee compared herself or a female colleague to one or more male colleagues.

All complaints shall be turned over to plaintiffs' counsel subject to the protective order guiding discovery in this case, without the redaction of names.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 15, 2013

Copies mailed this date:

Adam T. Klein, Esq.
Carmelyn Malalis, Esq.
Cara E. Greene, Esq.
Cyrus E. Dugger, Esq.
Jennier L. Liu, Esq.
Dana G. Sussman, Esq.
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, New York  10016

Kelly Dermody, Esq.
Anne B. Shaver, Esq.
Alison M. Stocking, Esq.
Lief, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111

Theodore O. Rogers, Jr., Esq.
Suhana S. Han, Esq.
Michael P. Reis, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, New York  10004

Barbara B. Brown, Esq.
Paul, Hastings, Janofsky & Walker LLP
875  15th Street N.W.
Washington, DC  20005

C. Geoffrey Weirich, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Sreet, NE
Suite 2400
Atlanta, GA  30308

Zachary D. Fasman, Esq.
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, New York  10022