# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

**MEMO ENDORSED**

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/14
```

August 1, 2014

By E-Mail

The Honorable James C. Francis, IV,
    U.S. District Court for the
        Southern District of New York,
            500 Pearl Street,
                New York, NY 10007-1312.

    Re: *Chen-Oster et ano. v. Goldman, Sachs & Co. et ano.*,
        No. 10 Civ. 6950

Dear Judge Francis:

On behalf of Defendants, we respectfully request an in-person conference at the Court's earliest convenience to address additional submissions and scheduling warranted by Plaintiffs' recent "reply" submissions, including a 59-page Reply Memorandum, in connection with their class certification motion.

On May 19, 2014, Plaintiffs submitted their opening papers on their motion for class certification. On June 16, 2014, Your Honor held a telephone conference with counsel to discuss the schedule for opposition and reply papers, as well as the length of the opposition and reply submissions. During that call, we noted that Plaintiffs' 51-page opening memorandum presented scant argument in support of class certification. We expressed concern that Plaintiffs intended to submit the bulk of their class certification arguments in reply papers and to put Defendants to the unfair disadvantage of not being able effectively to respond.

The Honorable James C. Francis, IV                                    -2-

    Defendants therefore requested 75 pages for our Opposition Brief and asked that Plaintiffs be limited to 25 pages for their reply. Your Honor granted Defendants' requested page length and, although declining to impose a specific page limit on the reply memorandum, noted that 25 pages should be the "presumptive" length. Your Honor directed Plaintiffs to inform Defendants if they intended to submit a reply memorandum substantially in excess of that amount, presumably so that Defendants received sufficient notice to discuss the matter with Plaintiffs and potentially seek relief from the Court.

    We heard nothing from Plaintiffs concerning their reply papers until the afternoon of July 28, the day before the papers were due. At that time, Plaintiffs informed us that they intended to submit a reply memorandum of between 55 and 60 pages—a length even longer than their opening brief. A few minutes before midnight on July 28, we received Plaintiffs' 59-page "reply" memorandum making their actual arguments in support of certifying what would be an unprecedented Title VII class, as well as a related motion to strike portions of Defendants' evidence and three *Daubert* motions directed at Defendants' experts. This letter addresses various scheduling and briefing issues raised by Plaintiffs' tactics and proposes a reasonable course forward.

  **A. To Try To Overcome Controlling Law Barring Certification of Their Proposed Class, Plaintiffs Have Manufactured Fact Disputes.**

    In opposing class certification, Goldman Sachs explained that federal courts have repeatedly refused to certify Title VII classes consisting of employees performing disparate functions across many departments or facilities, particularly where the challenged practices are subjective and discretionary. Opp. 1 (citing cases). By contrast, federal courts have permitted certification in certain cases involving a single job or a small number of similar jobs, particularly where the challenged practices are static or binary (*e.g.*, a standardized test). *Id.* at 1-2 (citing cases). In their Reply Memorandum,

The Honorable James C. Francis, IV                                                    -3-

Plaintiffs do not disagree with this statement of the law. Thus, Plaintiffs do not claim that certification is permissible for a class of employees performing a multitude of different jobs across a multitude of different businesses.

Instead, Plaintiffs simply claim that, as a purported factual matter, the proposed class members here held a small number of similar jobs. Specifically, Plaintiffs contend that the putative class is limited to "just two job titles (Associate and Vice President)," Reply 1; "most employees have a common set of skills," *id.* at 13; Business Units "are akin to teams in a single law firm working on a particular litigation," *id.* at 17; and all of those businesses are subject to "a highly centralized organization," *id.* at 6. In other words, Plaintiffs argue that this case is about employees holding a small number of similar jobs, all subject to a highly centralized decisionmaking process for compensation and promotion. Nothing could be further from the truth. Because they cannot rely on the record to make their case, Plaintiffs have resorted to briefing and motion tactics to obscure that record.

     **B.**  **Plaintiffs' Briefing Tactics Seek To Obscure the Factual Record Showing the Wide Variation of Different Jobs and Businesses Within Goldman Sachs.**

As Defendants demonstrated in their Opposition Brief and supporting declarations, the members of Plaintiffs' proposed class did not perform approximately the same job or handful of jobs. The terms Associate and Vice President are *corporate job levels*, not *functional job titles*. Within each of those two general levels, Goldman Sachs professionals held literally hundreds of positions that varied widely in their functions and responsibilities. That same diversity is reflected across different businesses, which is why Goldman Sachs created a demonstrative chart that shows the 140 Business Units

The Honorable James C. Francis, IV                                              -4-

across the three Divisions where putative class members worked. *See* Opp. Appendix A.\*
Nor were these professionals all subject to some top-down, highly centralized
decisionmaking process for performance evaluation, compensation, and promotion, and
the 360 performance review, quartiling, and promotion processes were merely procedural
frameworks for collecting the input of thousands of individuals.

Because that is what the facts show, Plaintiffs have done two things. First,
they have held back the bulk of their substantive arguments until their reply brief—in an
effort to deprive Goldman Sachs of the opportunity to address their actual class
certification arguments. Plaintiffs' counsel are seasoned employment lawyers, and this
has been a repeat tactic: their experts' "rebuttal" reports were far more complete than
their original reports. Second, Plaintiffs have put forward baseless objections to the
declarations of Goldman Sachs managers that make clear the substantial differences
between various jobs and businesses.

        1. **Plaintiffs' "Reply" Memorandum Seeks To Sandbag Goldman Sachs By Raising a Host of New Cases, Arguments, and Exhibits.**

It is black-letter law that "plaintiffs wishing to proceed through a class
action must actually *prove*—not simply *plead*—that their proposed class satisfies each
requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398,
2412 (2014) (emphasis added); *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432
(2013) (party seeking to maintain a class action must "be prepared to prove that there are
*in fact* sufficiently numerous parties, common questions of law or fact, typicality of
claims or defenses, and adequacy of representation, as required by Rule 23(a)")
(emphasis in original).

---

    \* The names of those Business Units were set forth in our expert's report and have been known to Plaintiffs for many months; there is no basis to strike a demonstrative exhibit displaying factual information exchanged in discovery.

The Honorable James C. Francis, IV                                            -5-

        Plaintiffs thus bear the burden of establishing that, *as a matter of fact*, the putative class members occupied common jobs, all subject to a highly centralized decisionmaking process for compensation and promotion. *See St. Stephen's Sch. v. PricewatershouseCoopers Accountants N.V.*, Nos. 13-cv-2340, 13-cv-2345, 2014 WL 2766174, at *1 (2d Cir. June 19, 2014) (vacating class certification where the district court did not "provide sufficient factual findings" to show that plaintiffs "affirmatively demonstrate[d]" compliance with Rule 23); *Shayler v. Midtown Investigations, Ltd.*, No. 12-cv-4685, 2013 WL 772818, at *3 (S.D.N.Y. Feb. 27, 2013) ("the burden is at all times on the party proposing the class" to prove that "each of the required elements under [Rule 23]" is "satisfied by a preponderance of the evidence").

        Having failed to compile a factual record that would meet their burden, Plaintiffs have instead held in reserve a number of their arguments, exhibits, and authorities. *More than half* of the authorities in their reply brief—28 cases total—were not even cited in *any* of the parties' earlier briefs (and only one of those decisions was issued after Plaintiffs' opening brief was filed). Plaintiffs also submitted *two declarations with new material*, including an attorney's declaration describing a *previously undisclosed expert's work*. Moreover, in "reply," Plaintiffs rely on an expert report by Dr. David Yermack that was never mentioned in their opening brief (giving Defendants no opportunity to address the flaws in Dr. Yermack's analysis in their Opposition). And that does not even count the *21 new exhibits* (totaling 228 pages) that are among the 33 exhibits appended to Plaintiffs' reply memorandum.

        **2.   Plaintiffs' Motion To Strike the Testimony of Goldman Sachs Managers Is Baseless.**

        In its Opposition to class certification, Goldman Sachs submitted the testimony of managers demonstrating that the proposed class consists of women professionals performing many different roles across 140 different businesses, and that hundreds of individual managers have broad discretion over the performance evaluation,

The Honorable James C. Francis, IV -6-

compensation, and promotion of those professionals. Notably, Plaintiffs have not attempted to come forward with a contrary version of the facts. Instead, Plaintiffs have manufactured baseless objections to try to exclude the bulk of this powerful testimony.

*First*, Plaintiffs claim that Defendants did not identify these managers prior to the submission of their declarations—*but that was by Plaintiffs' own choice*. Nine months ago, we informed Plaintiffs' counsel that we expected that both parties would submit declarations as part of class briefing. We also proposed agreeing on a procedure for identifying and deposing declarants in an orderly fashion. Plaintiffs declined. Accordingly, Plaintiffs themselves did not identify their own class certification witnesses before submitting their declarations on May 19, 2014, even though their declarations were signed three months earlier in February.

*Second*, Defendants have bent over backwards to cooperate with Plaintiffs' reasonable discovery requests. Defendants made the personnel files of *all* of its class certification fact witnesses available to Plaintiffs for inspection on the extremely expedited schedule they unilaterally set. Defendants provided records of training and employee identification numbers for each of these witnesses and, in response to Plaintiffs' request, informed Plaintiffs that no Employee Relations complaint had ever been made either by or about any of these witnesses. When Plaintiffs identified eight witnesses whom they actually wished to depose, Defendants made arrangements to make them available within days and proposed a schedule for the depositions that would have concluded by the due date for Plaintiffs' reply brief. Plaintiffs declined to take those depositions. Goldman Sachs' offer to make those declarants available for deposition remains open.

Unfortunately, Plaintiffs' demands for discovery kept escalating beyond what reasonably could or should be done without extending the litigation of this motion for many months. It now is clear that Plaintiffs' goal was to create a pretext for a motion

The Honorable James C. Francis, IV                                              -7-

to strike the depositions of the Goldman Sachs managers whose testimony dooms their certification motion. Thus, Plaintiffs demanded that Defendants run the same electronic search protocol for the declarants as was used during years of class discovery. We informed Plaintiffs that they were asking for the unreasonable; the prior search protocol, which used 93 items and extended for 10 years, would take many months to complete. In an effort to accommodate Plaintiffs, we proposed to use a 2-year period and offered to negotiate a set of search terms generating documents that could be reviewed and produced in a reasonable time. Plaintiffs did not even try to negotiate, but instead cancelled the depositions and have now moved to strike the declarations. We are left to conclude that Plaintiffs do not want discovery; they want to erase the record on the differences between various jobs and businesses at Goldman Sachs.

### C. Your Honor Should Set the Briefing Schedule In a Fair And Equitable Way.

It is hard to imagine a clearer case of gamesmanship in the briefing of an important motion. We respectfully request that the Court allow Defendants to file a sur-reply of 25 pages to allow them an opportunity to respond to Plaintiffs' belated presentation of their actual class certification arguments. Such briefing plainly will assist the Court in deciding Plaintiffs' motion on a complete record. Defendants also request that the deadlines for the remaining briefs be set to allow that same opportunity.

#### 1. Defendants Should Be Permitted To File a Sur-Reply.

This Court has "broad discretion to consider arguments in a sur-reply. This is particularly so when new arguments are put forth in a reply brief." *American S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. American Boat Co., LLC*, 2012 WL 32352, at *1 (S.D.N.Y. Jan. 6, 2012) (granting leave to file sur-reply) (internal citations and quotations omitted). Courts frequently permit sur-replies when a party has raised new factual or legal issues in reply papers that in fairness should be addressed. *See Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 143 (E.D.N.Y. 2012) (allowing sur-reply in

The Honorable James C. Francis, IV                                              -8-

opposition to class certification where plaintiffs' reply brief included "new factual assertions, legal claims and exhibits not contained in their initial moving papers"); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (Francis, J.) (allowing sur-reply); *In re Arb. Westchester Fire Inc. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (Chin, J.) (allowing sur-reply). We have conferred with the Plaintiffs, who do not consent to the filing of a sur-reply.

### 2. A Schedule For The Remaining Briefs Should Be Set To Allow Defendants a Fair Opportunity To Respond.

With their "reply" papers, Plaintiffs submitted five new motions: (1) a motion to strike certain of Defendants' declarations; (2) a companion motion to strike an entirely permissible demonstrative exhibit appended to Defendants' opposition brief identifying the 140 Business Units where putative class members worked; and (3 to 5) three *Daubert* motions seeking to strike opinions offered by Defendants' experts.

Goldman Sachs has no interest in delaying these proceedings unnecessarily. We therefore propose the following expedited deadlines:

- Defendants to respond to the motion to strike the Business Unit declarants and the motion to strike the demonstrative exhibit by August 12, 2014.

- Defendants to file their *Daubert* motion to strike any testimony of Dr. David Yermack by August 15, 2014.

- Defendants to file their responses to Plaintiffs' *Daubert* motions by September 8, 2014.

- Defendants to file their final 25-page sur-reply by September 19, 2014.

This schedule would allow Defendants a fair opportunity to respond with an absolute minimum of delay in the proceedings. We proposed this schedule to Plaintiffs. As noted, they informed us that they will not agree to a sur-reply, and are still considering the other

The Honorable James C. Francis, IV                                           -9-

aspects of the proposed schedule. Given the importance of the sur-reply, we thought it appropriate to ask for a conference now.

               \*     \*     \*

We respectfully request an in-person conference to discuss the timing of these various submissions and related issues. We are available at Your Honor's convenience. We thank Your Honor for your consideration.

                                              Respectfully,

*Barbara B. Brown /TOR*                                 *Theodore O. Rogers, Jr.*
Barbara B. Brown                                        Theodore O. Rogers, Jr.
of Paul Hastings LLP                                    of Sullivan & Cromwell LLP

cc: Plaintiffs' counsel (By E-Mail)

                                         8/11/14

This letter is accepted as a sur-reply. No further submissions are appropriate at this time. Counsel can expand on their arguments at oral argument on all pending motions, which will be held on October 1, 2014, at 9:30 a.m. If, after reviewing the class certification papers, I consider further briefing necessary to afford the parties due process, I will request it. SO ORDERED.

                                                       James C. Francis IV
                                                       USMJ