UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; LISA PARISI; and
SHANNA ORLICH,

         Plaintiffs,

vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.

         Defendants.

10 Civ. 6950 (AT) (JCF)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE REPORTS, OPINION, AND ANY TESTIMONY OF PLAINTIFFS' EXPERT DR. WAYNE F. CASCIO

Plaintiffs retained Dr. Wayne F. Cascio, an industrial and organizational psychologist, to offer opinions about Goldman Sachs's performance evaluation and compensation practices.[1] Dr. Cascio's reports and deposition testimony make clear, however, that he has no admissible opinion to offer. Instead of providing expert opinions arguably relevant to the class certification requirements — for example, on the subject of causation — he merely observes that Goldman Sachs's facially gender-neutral processes fall short of ensuring what he calls "procedural justice" (which he defines as "perceived fairness"), and that they fail to meet the "best practices" in his field.

An expert opinion is not admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), unless it is "relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citation omitted). The Court "*must* . . . exclude proffered . . . evidence under Rules 702 and

---

[1] Plaintiffs submitted Dr. Cascio's Initial Report on October 30, 2013, and his Rebuttal Report on January 28, 2014. *See* Brown Decl. Exs. 1 and 2. On February 18, 2014, Dr. Cascio also submitted a Supplemental Expert Report listing certain additional documents that he claimed related to his opinions. *See* Brown Decl. Ex. 3.

1

403 unless [it is] *convinced* that it speaks clearly and directly to an issue in dispute in the case[.]" *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (emphasis added) ("Daubert II").

Here, Dr. Cascio has not opined that the alleged deficiencies he has identified can be linked to any gender differences, and he has neither performed nor cited work in his field that might support such a view. He may well believe that Goldman Sachs's processes could be improved, but courts hearing suits under Title VII and the New York City Human Rights Law are not authorized to police employer personnel practices for "procedural justice" or "fairness" or to ensure that all employers conform to some expert-derived set of "best practices." As the Second Circuit has said many times, the courts "do[] not sit as a super-personnel department that reexamines an entity's business decisions." *Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997) (citation omitted).[2]

This Motion, then, rests on two indisputable propositions: (a) the details of Goldman Sachs's performance evaluation and compensation processes — whether state-of-the-art or flawed in some respect — are of no relevance in this case *unless* they can be *causally* tied to gender disparities; and (b) Dr. Cascio admits that he cannot provide that link — that he has no opinion to offer as to whether the handful of "defects" he claims to have identified can be linked to any perceived gender disparities in outcomes. His opinions are therefore not "relevant to the task at hand" and should be stricken.

---

[2] *See, e.g., Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (courts do not act as "superpersonnel department[s] that second guess[] employers' business judgments") (citation omitted); *DiGirolamo v. MetLife Group, Inc.*, No. 10 Civ. 1537, 2011 U.S. Dist. LEXIS 62104, at *22-23 (S.D.N.Y. June 6, 2011) ("[t]his Court does not sit as a super-personnel department that reexamines an entity's business decisions") (citation omitted).

I.  **DR. CASCIO'S LIMITED OPINIONS**

Plaintiffs retained Dr. Cascio "to evaluate the performance-assessment and compensation-recommendation processes at Goldman Sachs." *See* Brown Decl. Ex. 1 at ¶ 12. In his Initial Report, Dr. Cascio describes what he claims to be certain evaluation and compensation "best practices" in his field and compares Goldman Sachs's processes to those standards.[3] He then opines that Goldman Sachs's performance-assessment and compensation-recommendation processes "lack key safeguards to ensure procedural justice[.]" *See* Brown Decl. Ex. 1 at ¶ 19.

Critically, Dr. Cascio does not claim that these alleged "deficiencies" (*see* Brown Decl. Ex. 1 at ¶ 16) are gender-linked. Quite to the contrary:

> Q. Dr. Cascio, if you'd look back at paragraph 55. This is where you identify the three elements of procedural justice that you found lacking?
>
> A. Yes, sir.
>
> Q. Are you offering an expert opinion that the absence of any one of those items would have — would result in gender bias or gender differences?
>
> A. I am not.

*See* Brown Decl. Ex. 4 at 181:19-182:4. For example, while Dr. Cascio (inaccurately) claims that Goldman Sachs employees should, but do not, have access to their appraisal results (*see* Brown Decl. Ex. 1 at ¶ 19), he expressly acknowledged at his deposition that he draws no causal connection between the access to appraisal results and any gender differences in outcomes in evaluation or compensation:

> Q. Do you have an expert opinion to offer in this case, that failing to give employees access to review their appraisal results has a disparate impact on women?

---

[3] Oddly, in his Rebuttal Report Dr. Cascio retreats from this position, claiming that evaluating "best practices" is not actually the proper approach. *See, e.g.*, Brown Decl. Ex. 2 at ¶¶ 9(e), 35, 41.

3

>    ...
>    A. I do not.

*See* Brown Decl. Ex. 4 at 149:5-10. Similarly, while he claims that "thorough and consistent documentation" should, but does not, exist in Goldman Sachs's employment processes (*see* Brown Decl. Ex. 1 at ¶ 19), he admitted that he draws no causal connection between this alleged flaw in Goldman Sachs's processes and gender differences:

>    Q. Do you have an expert opinion to offer in this case that failing to provide thorough and consistent documentation across raters, that includes specific examples of performance based on personal knowledge, has a disparate impact on women?
>    . . .
>    A. I can't say that that caused any disparate impact, that's for sure.

*See* Brown Decl. Ex. 4 at 149:11-19.

Plaintiffs had the option to look for an expert who might be able to offer an opinion, based on that expert's "scientific, technical, or other specialized knowledge," that appearances are deceiving — that these facially gender-neutral aspects of the Firm's processes are, in fact, linked to gender differences. Fed. R. Evid. 702(a). Dr. Cascio, however, is not that expert.

## II. ARGUMENT

Even if Dr. Cascio were correct in his view that Goldman Sachs's processes could be improved by "fixing" the problems he claims to have identified, his troubleshooting would be simply irrelevant to the issues in this case. Instead of offering *evidence* of a connection between these alleged deficiencies and gender differences, Plaintiffs appear to be relying on a sort of *res ipsa loquitur* approach:

- Plaintiffs' statistical expert (Dr. Henry S. Farber) claims to have found statistical disparities;

- Dr. Cascio claims to have found aspects of Goldman Sachs's practices that he considers wanting; and

4

- Plaintiffs hope *the Court* will uncritically provide the link between the two.

Plaintiffs, however, bear the burden of "evidentiary proof" on all of the Rule 23 requirements. *See, e.g.*, *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Dr. Cascio does not provide the needed proof. Rather, he acknowledges that *he* has no opinion to offer as to whether the problems he found with the Firm's practices could have caused the statistical differences allegedly identified by Dr. Farber. *See* Brown Decl. Ex. 4 at 85:10-15; 86:19-24. In fact, Dr. Cascio took pains to make clear that he is not rendering an opinion that these differences actually exist at all; he expressly disclaimed any suggestion that he was in a position to endorse or otherwise comment on Dr. Farber's results. *See* Brown Decl. Ex. 4 at 24:2-13; 108:3-8; Brown Decl. Ex. 2 at ¶ 113 ("I also am not drawing an independent statistical conclusion about the extent to which the common policies I discuss in my report explain some of the pay differences between men and women[.]").[4]

That leaves each of the experts on whom Plaintiffs rely pointing to the other. Dr. Cascio's admission that he cannot provide the causal link Plaintiffs must prove means that his opinions "will [not] help the [Court] . . . determine a[ny] fact in issue[.]" Fed. R. Evid. 702(a). His opinions, therefore, should be excluded. *Id.*

---

[4] *See also* Brown Decl. Ex. 4 at 24:2-13 ("Q: Have you independently reached an expert opinion on whether the regressions used by Dr. Farber, in fact, control for sufficient number of factors to make the folks similarly situated? A: I . . . defer to [Dr. Farber's] judgment. Q. You're not rendering an expert opinion on that subject at this point? A. That's correct"); Brown Decl. Ex. 4 at 79:16-25 ("A: [A]ll I can say is we know that the -- there was an adverse impact against women in every year of the analysis from the beginning of this case to the present. Q. And you know that because Dr. Farber told you that, correct? A. Correct . . . . I have his data to rely on"); Brown Decl. Ex. 4 at 85:20-86:25 ("Q: [W]hat I'm asking you is if you have an expert opinion on causation. That is, [is] the problem you identify [with Goldman Sachs's quartile process] the cause of the discrepancies that Dr. Farber found . . . . I take it then that you can't have any expert opinion as to the degree to which this perceived problem resulted in gender differences as identified by Dr. Farber? A. Impossible to say, yes.")

5

A. The *Daubert* Standard Requires That District Judges Ensure That Expert Testimony Is Relevant and Reliable.

"[T]he Supreme Court has made clear that the district court has a 'gatekeeping' function under Rule 702 — it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos*, 303 F.3d at 265 (quoting *Daubert,* 509 U.S. at 597). To be "relevant to the task at hand," the expert's opinion testimony must address directly issues that need to be resolved in the case; the opinions must provide "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92; *In re Rezulin Prods Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (*Daubert* analysis "goes beyond mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry") (citation omitted). Unlike many evidentiary matters, the district court's gatekeeping function is not a discretionary power but a mandatory duty; "[f]ederal judges *must* . . . exclude proffered . . . evidence under Rules 702 and 403 unless they are *convinced* that it speaks clearly and directly to an issue in dispute in the case[.]" *Daubert II*, 43 F.3d at 1321 n.17 (emphasis added).

The Court's "gatekeeping" function must be performed before expert opinion testimony is considered for any purpose. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-52 (1999). In putative class actions, the district court must determine whether all of the Rule 23 requirements have been met *before* certification. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied") (citation omitted). As part of this analysis, the court must assess "all of the relevant evidence admitted at the class certification stage," including any expert opinions. *Initial Pub. Offering*, 471 F.3d at 42. A

6

prerequisite to this analysis, then, is determining what evidence is relevant and admissible with respect to class certification.[5]

When expert opinions are irrelevant — that is, when they are not "sufficiently tied to the facts of the case [so that that they] will aid the [fact-finder] in resolving a factual dispute" (*Daubert*, 509 U.S. at 591 (citation omitted)) — they must be excluded by the district court as a result of the required *Daubert* scrutiny, in every context including putative class actions. *See, e.g., Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357, 362, 368-69 (4th Cir. 2008) (disparate impact putative class action; affirming district court's exclusion of expert epidemiologist's testimony because, although he may have been qualified to conclude that black employees "had higher radiation exposures than white employees," the "limited issue in [the] case" was whether discriminatory job assignments (as opposed to employee choices) *caused* the different radiation exposures); *EEOC v. Bloomberg L.P.*, No. 07 CIV. 8383, 2010 WL 3466370, at *17 (S.D.N.Y. Aug. 31, 2010) (in EEOC "pattern or practice" case alleging intentional discrimination, excluding expert testimony regarding gender stereotyping because although the expert concluded that stereotypes "*more likely than not*

---

[5] In *Dukes*, the Ninth Circuit had held that a district judge should apply something less than the full *Daubert* analysis at the class certification stage. The Supreme Court expressed great skepticism about the Ninth Circuit's view, 131 S. Ct. 2541, 2553-54 (2011), but found it unnecessary to decide that question. After *Dukes*, courts have regularly held that district courts must apply an undiluted *Daubert* analysis before considering expert testimony at the class certification stage. *See, e.g., Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 812-14 (7th Cir. 2012) (*Daubert* ruling required before ruling on class certification when expert's testimony could be critical to class certification); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (post-*Dukes*, *Daubert* analysis is appropriate at class certification stage); *In re AutoZone, Inc.*, 289 F.R.D. 526, 545 (N.D. Cal. 2012) (relying on *Costco* to apply *Daubert* analysis and striking expert opinion); *York v. Starbucks Corp.*, No. CV 08-07919 GAF, 2011 WL 8199987, at *11 (C.D. Cal. Nov. 23, 2011) ("U.S. Supreme Court in *Dukes* recently suggested that [*Daubert*] should be applied to expert testimony at the class certification stage;" applying *Daubert* to strike expert declarations) (internal citations omitted); *Peterson v. Seagate U.S. LLC*, 809 F. Supp. 2d 996, 1006 (D. Minn. 2011) (applying *Daubert* analysis to strike expert testimony).

influenced employment decisions," he could not determine whether managers were intentionally discriminating) (emphasis added).

B. Dr. Cascio's Expert Opinions Are Not "Relevant To The Task At Hand."

Plaintiffs offer Dr. Cascio's opinions to support their motion seeking class certification. They claim that the members of the putative class are commonly disadvantaged by Goldman Sachs's evaluation and compensation processes. Accordingly, evidence tying some feature of those processes to alleged gender differences in outcomes is an essential, threshold component of their class claims. That is, evidence of causation is necessary for Plaintiffs to satisfy the commonality requirement of Rule 23(a)(2) — to determine whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Absent such evidence, there would be no common question as to whether a challenged practice has caused any gender differences. It would be an abuse of discretion to certify a class absent evidence "that some causal connection exists between the alleged practice and alleged effect." *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 97 (S.D.N.Y. 2006) (plaintiffs failed to establish commonality where they failed to show that defendant-union's job assignment practice actually resulted in minority union members receiving fewer jobs); *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 468 (N.D. Ill. 2009) (rejecting psychologist's opinion "on the issue of commonality" because analysis did not show that managers applied their discretion "in a uniform way that *caused* . . . gender disparities") (emphasis added).

This Court's decision in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), is illuminating. There, the plaintiffs sought to certify a class of individuals who allegedly suffered "silent liver injury" because of the "manufacturing, labeling, and marketing" of Rezulin, a prescription drug manufactured by the defendant. *Id.* at 544. The plaintiffs offered testimony from two experts who claimed that the "defendant

8

acted in an unethical manner, especially with respect to its presentation of, or reaction to, Rezulin clinical data and the conduct of Rezulin clinical trials." *Id.* at 542. This Court excluded the testimony, observing that "[w]hile the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant to these lawsuits."[6] *Id.* at 544.

Dr. Cascio's opinions should be excluded for similar reasons. Dr. Cascio says that Goldman Sachs could have done better in designing its evaluation and compensation practices. Goldman Sachs disagrees, of course, but Dr. Cascio's opinions on the subject are *irrelevant* to the class certification question unless Dr. Cascio can connect the supposed deficiencies to alleged gender differences in outcomes.

He cannot, as he candidly admits. Causation was not merely a neglected subject for Dr. Cascio's reports; he repeatedly conceded that he has no opinion to offer on the possible connection between his own preferences for evaluation and compensation processes and *the issues in this case*. He has not offered an expert opinion on the question "whether Goldman Sachs's common policies are discriminatory, intentionally or in impact, against women," (*see* Brown Decl. Ex. 2 at ¶ 113), and, as he admitted, he "can't say that [the deficiencies he perceives] caused any disparate impact, that's for sure." *See* Brown Decl. Ex. 4 at 149:5-19.

---

[6] Even if Dr. Cascio had opined on causation, this Court would still have to scrupulously examine his reports, opinions, and testimony before they could be admitted. In *General Electric Company v. Joiner*, 522 U.S. 136 (1997), the Supreme Court rejected as "speculative" experts' statements regarding their belief that the respondent's exposure to certain chemicals caused cancer. *Joiner*, 522 U.S. at 143-44. The experts in question relied on animal studies showing that infant mice developed cancer after being exposed to these chemicals. The Court characterized this study as "seemingly far-removed" from the question at issue in the case (whether the respondent, an adult human, developed cancer from the chemical exposure), and ultimately concluded that the studies "were so dissimilar to the facts presented in [the] litigation that it was not an abuse of discretion for the District Court to have rejected the experts' reliance on them." *Id.* at 144. Here, even if Dr. Cascio *claimed* that a causal link existed between the defects he allegedly identified and gender differences, he never cited professional literature, empirical evidence or any work he had conducted that might support that hypothesis. Indeed, as noted above, he disclaimed any opinion at all as to whether gender differences, in fact, exist with respect to Goldman Sachs's processes.

This is "the essential question on which [Plaintiffs'] theory of commonality depends," *Dukes*, 131 S. Ct. at 2554, and because Dr. Cascio admits that has no opinion on that subject, the Court "can safely disregard what he has to say." *Id.*

### III. CONCLUSION

For the reasons set forth above, Dr. Cascio's reports, opinion and any testimony offered must be excluded from the record.

June 13, 2014                           PAUL HASTINGS LLP

BY: _____
BARBARA B. BROWN *(admitted pro hac vice)*
NEAL D. MOLLEN *(admitted pro hac vice)*
CARSON H. SULLIVAN *(admitted pro hac vice)*

875 15th Street NW
Washington, D.C. 20005
(202) 551-1700
barbarabrown@paulhastings.com;
nealmollen@paulhastings.com;
carsonsullivan@paulhastings.com

THEODORE O. ROGERS, JR.
ROBIN D. FESSEL
SUHANA A. HAN
SULLIVAN & CROMWELL, LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
rogersto@sullcrom.com;
fesselr@sullcrom.com;
hans@sullcrom.com

*Counsel for Defendants*
GOLDMAN, SACHS & CO. AND
THE GOLDMAN SACHS GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH,<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.<br><br>Defendants. | 10 Civ. 6950 (AT) (JCF)<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on June 13, 2014, I caused the foregoing Memorandum of Law in Support of Motion to Strike Reports, Opinion, and Any Testimony of Plaintiffs' Expert Dr. Wayne F. Cascio to be served on the following attorneys of record, by electronic mail and by U.S. Mail:

>Adam T. Klein
>OUTTEN & GOLDEN, LLP
>3 Park Avenue, 29th Floor
>New York, New York 10016
>
>Kelly M. Dermody
>Anne B. Shaver
>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
>275 Battery Street, 29th Floor
>San Francisco, CA 94111-3339

BY: _/s/ Barbara B. Brown_
BARBARA B. BROWN