UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; LISA PARISI; and SHANNA ORLICH, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,

Defendants.

10 Civ. 6950 (AT) (JCF)

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiffs in this employment discrimination action allege that their former employers, defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs" or the "defendants"), denied them equal compensation and opportunity for promotion on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. Two motions are currently pending before the Court. In the first, the plaintiffs seek reconsideration of certain aspects of my recommendation advising that class certification should be denied. In the second, two individuals, Allison Gamba and Mary De Luis, move to intervene. For the reasons that follow, the motion for reconsideration is denied and the motion to intervene is granted.

Background[1]

This case was filed in September 2010 by H. Christina Chen-Oster, Lisa Parisi, and Shanna Orlich as a putative class action, challenging Goldman Sachs' personnel evaluation procedures as well as its "corporate culture" as discriminatory against women. Early in the course of the litigation, the defendants moved to strike the class allegations. In a report and recommendation dated January 19, 2012, I recommended that the motion be denied. Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950, 2012 WL 205875 (S.D.N.Y. Jan. 19, 2012). The Honorable Leonard B. Sand, U.S.D.J., adopted my recommendation in all respects, with one exception: he concluded, as a matter of first impression in this Circuit, that persons not currently employed by a defendant-employer lack standing to seek injunctive and declaratory relief and so may not seek to certify a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 120-22 (S.D.N.Y. 2012). Although he voiced disagreement with its reasoning, Judge Sand felt compelled to follow what he understood to be the Supreme Court's conclusion in Wal-Mart Stores,

[1] A more complete discussion of the factual background of this case may be found in my report and recommendation on the plaintiffs' motion for class certification, Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950, 2015 WL 1566722 (S.D.N.Y. March 10, 2015).

Inc. v. Dukes, __ U.S. __, __, 131 S. Ct. 2541, 2559-60 (2011). Chen-Oster, 877 F. Supp. 2d at 121-22.

In the meantime, the defendants moved to stay this action as to Ms. Parisi and compel her to arbitrate her claims pursuant to an arbitration clause contained in her employment agreement. I denied the motion, finding that the arbitration clause was not enforceable because Ms. Parisi would be precluded from asserting a pattern-or-practice claim under Title VII in the arbitral forum. Chen-Oster v. Goldman, Sachs & Co., 785 F. Supp. 2d 394, 403-11 (S.D.N.Y. 2011). Judge Sand affirmed that ruling (Memorandum Endorsement dated Nov. 14, 2011), but the Second Circuit reversed, holding that because Ms. Parisi could vindicate her Title VII rights in arbitration, even if she could not do so using the pattern-or-practice form of proof, the arbitration clause was enforceable, Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 487-88 (2013). Accordingly, the plaintiffs no longer proffer Ms. Parisi as a potential class representative.

Following this motion practice, the parties conducted class discovery, and the plaintiffs ultimately moved for certification of a class under Rule 23(b)(2) for injunctive relief and under Rule 23(b)(3) for back pay and punitive damages or, alternatively, certifying a class solely for purposes of establishing liability under Rule 23(c)(4). On March 10, 2015, I issued a report and

recommendation advising that the motion be denied. Chen-Oster, 2015 WL 1566722, at *18. With respect to Rule 23(b)(3), I found that common questions did not predominate, as required to satisfy the requirements of the rule. Id. at *16-18. And, despite the plaintiffs' request that I "alter" Judge Sands' ruling and hold that the named plaintiffs have standing to assert claims for injunctive relief, I found that the law of the case doctrine applied and that a class could therefore not be certified under Rule 23(b)(2) with Ms. Chen-Oster and Ms. Orlich as class representatives. Id. at *15-16. Finally, I found that certification under Rule 23(c)(4) was unwarranted in light of the unavailability of injunctive relief and the highly individualized causation and damages issues. Id. at *18. I concluded as follows:

> This is a close case. But for the fact that the law of the case doctrine dissuades me from revisiting the appropriateness of injunctive relief, I would recommend that the plaintiff class be certified pursuant to Rules 23(b)(2) and 23(c)(4) in order to obtain a final determination as to the allegedly discriminatory impact of Goldman Sachs' employee evaluation processes. But, because such relief has been held to be unavailable, I recommend that the plaintiffs' motion for class certification . . . be denied.

Id.

That brings us to the instant motions. First, the plaintiffs seek reconsideration of those portions of my report and recommendation on class certification in which I (1) found that the

law of the case doctrine counseled against contravening Judge Sand's conclusion that the named plaintiffs lack standing to seek injunctive relief and (2) recommended against certification of a liability class under Rule 23(c)(4). Second, Ms. Gamba and Ms. De Luis, who purportedly do have standing to request an injunction, seek to intervene. I will address each motion in turn.

Motion for Reconsideration

A motion for reconsideration is committed to the sound discretion of the court. Idowu v. Middleton, No. 12 Civ. 1238, 2013 WL 371657, at *1 (S.D.N.Y. Jan. 31, 2013). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Space Hunters, Inc. v. United States, 500 F. App'x 76, 81 (2d Cir. 2012) (quoting Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "A party seeking reconsideration may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the Court.'" Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). Generally, reconsideration "requires 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Capitol Records, Inc. v. MP3tunes, LLC, No. 07 Civ. 9931, 2013 WL 1987225, at *1 (S.D.N.Y. May 14, 2013) (quoting Virgin Atlantic Airways Ltd. v. National Mediation Board, 95 F.2d 1245, 1255 (2d Cir. 1992)). Reconsideration is an "extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." Hinds County, Mississippi v. Wachovia Bank N.A., 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (quoting In re Health Management Systems, Inc. Securities Litigation, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

A. Standing

The plaintiffs contend that I should reconsider my recommendation that class certification under Rule 23(b)(2) should be denied to the extent it was predicated on Judge Sand's holding that the named plaintiffs lacked standing to seek injunctive relief. The plaintiffs argue that I should not have applied the law of the case doctrine to a ruling on jurisdiction and that, in any event, Judge Sand's determination should be overridden because it is clearly erroneous.

The plaintiffs misunderstand how the law of the case doctrine applies to jurisdictional determinations. It is true that the law of the case generally does not apply to a finding that the court

has jurisdiction. "The federal courts are under an independent obligation to examine their own jurisdiction," FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), and "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause," Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)). Thus, a court is obligated to reverse a prior finding that it has jurisdiction if it subsequently determines that it does not, notwithstanding the law of the case doctrine. That is the principle that most of the cases cited by the plaintiffs stand for.[2] See Cunney v. Board of

---

[2] The one exception to this pattern is Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002). There, the Second Circuit merely held that:

> the district court's application of the law of the case doctrine is irrelevant to our review of subject-matter jurisdiction. Even if the district court applied the doctrine correctly -- a point upon which we express no opinion -- it would make no more difference to our determination of subject-matter jurisdiction than if the district court had determined the issue de novo. Moreover, even if our special obligation to review subject-matter jurisdiction were not implicated, a district court's adherence to law of the case cannot insulate an issue from appellate review.

Id. at 47 (quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988)). The instant case does not yet implicate

Trustees of Grand View, 56 F. Supp. 3d 470, 490 n.17 (S.D.N.Y. 2014) (holding court has independent duty to determine standing despite appellate mandate to enter judgment for plaintiff); Schulz v. Kellner, No. 07-CV-943, 2011 WL 2669456, at *3-4 (N.D.N.Y. July 7, 2011) (holding that prior decision, if it found plaintiffs had standing, not subject to law of the case); Canadian St. Regis Band of Mohawk Indians v. New York, 388 F. Supp. 2d 25, 36-37 (N.D.N.Y. 2005) (finding law of the case doctrine would not bar reexamination of finding that court had jurisdiction); Allah v. Juchnewioz, No. 93 Civ. 8813, 2003 WL 1535623, at *3 (S.D.N.Y. March 24, 2003) (holding ruling allowing plaintiff to add defendants did not prevent later challenge to court's jurisdiction over those defendants); Walsh v. McGee, 918 F. Supp. 107, 112 (S.D.N.Y. 1996) ("[A] federal court cannot assert jurisdiction over a claim that is outside the scope of the court's jurisdiction merely by relying on the court's own prior decision that jurisdiction over such claim was proper.").

By contrast, a ruling that the court lacks jurisdiction is no different from any other decision subject to law of the case: it forecloses certain claims and leaves the party adversely affected

---

the relationship between application of the law of the case doctrine by the trial court and appellate review of jurisdictional issues.

to seek appellate review. Of course, there is no absolute bar to revisiting decisions, and a court may reverse a prior decision that is shown to have been clearly erroneous or manifestly unjust. But the doctrine, even if flexible, applies here with full force.

The plaintiffs also contend that even if the doctrine applies, I should reconsider my recommendation because Judge Sand's decision was clearly erroneous and would work a manifest injustice. However, they offer no new grounds for reconsideration that they did not already present in briefing the class certification motion. The application to reconsider my determination that the law of the case doctrine counsels adhering to Judge Sand's determination is therefore denied.

B. Rule 23(c)(4) Certification

Similarly, the plaintiffs' arguments for reconsideration of my recommendation that certification of a liability class be denied are identical to those they previously raised during briefing of the class motion. As they have pointed to no new controlling authority and no facts or law that I overlooked, reconsideration of this aspect of my recommendation is also denied.

Motion to Intervene

The proposed intervenors move to intervene both as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure and, alternatively, as a matter of discretion under Rule 24(b). Under

Rule 24(a), an application to intervene must be granted when the applicant

> claims an interest relating to the property or transaction which is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the [applicant's] ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2); see United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994) (noting intervention as of right granted "when an applicant: (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by other parties"). As the plaintiffs note, intervention is commonly granted to absent class members "since members of a class are normally bound by the judgment in the class action." Diduck v. Kaszycki & Sons Contractors, Inc., 149 F.R.D. 55, 58 (S.D.N.Y. 1993). As the court observed in New Jersey Carpenters Health Fund v. Residential Capital, LLC, Nos. 08 Civ. 8781, 08 Civ. 5093, 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010), "[a]ny disposition on the merits would inevitably affect [absent class members'] claims since they arise from the same course of conduct and assert the same legal theories as the current

plaintiffs."

However, the impact on absent class members is only inevitable once the class is certified; here, in the current posture of the case, certification is uncertain at best. But I need not decide whether the interests of absent class members are sufficiently at risk to compel intervention as of right, because permissive intervention is warranted in this case. See Jamie Music Publishing Co. v. Roc-A-Fella Records, LLC, No. 05 Civ. 9922, 2007 WL 1129333, at *1 (S.D.N.Y. April 12, 2007) (finding ruling on intervention as of right unnecessary where permissive intervention appropriate); International Design Concepts, LLC v. Saks Inc., No. 05 Civ. 4754, 2007 WL 945099, at *2 (S.D.N.Y. March 27, 2007) (same).

Permissive intervention is governed by Rule 24(b), which provides in part that

> [o]n timely motion the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact . . . . In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights.

In exercising discretion under this rule, courts consider factors that include

> "the nature and extent of the intervenors' interests," the degree to which those interests are "adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of

the legal questions presented."

Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) (alteration in original) (quoting H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc., 797 F.2d 85, 89 (2d Cir. 1986)). Rule 24(b)(2) should be construed liberally. See Lovely H. v. Eggleston, No. 05 Civ. 6920, 2006 WL 3333084, at *3 (S.D.N.Y. Nov. 16, 2006); Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006). This is equally true of Rule 23(d)(1)(B)(iii), which authorizes the court to issue orders in class cases relating to intervention. See Foe v. Cuomo, 892 F.2d 196, 198 (2d Cir. 1989). Indeed, it is common to permit intervention in a class action in order to cure some deficiency in the ability of the named plaintiffs to represent the class. See Rogers v. Paul, 382 U.S. 198, 199 (1965) (per curiam) (allowing new class members to join action where original plaintiffs' claims were, or would shortly be, moot); Rodriguez v. It's Just Lunch, International, No. 07 Civ. 9227, 2013 WL 1749590, at *1, 3 (S.D.N.Y. April 23, 2013) (allowing intervention where original named plaintiff barred by statute of limitations from asserting one claim); New Jersey Carpenters Health Fund, 2010 WL 5222127, at *2, 7 (permitting intervention where original plaintiff lacked standing as to some claims because he had not purchased securities in certain offerings).

A. Timeliness

An application for intervention may be granted only if it is promptly made: "a threshold consideration under Rule 24(b), as under Rule 24(a), is timeliness." Pitney Bowes, 25 F.3d at 74.

> Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.[3]

Id. at 70; see also Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 182 (2d Cir. 2001); In re Holocaust Victim Assets Litigation, 225 F.3d 191, 198 (2d Cir. 2000). I now turn to an analysis of these factors in the context of the instant case.

1. Notice of Affected Interest

Designating the point in time when an intervenor had notice that her interests would potentially be affected by the litigation requires analysis of two separate issues. First, it is necessary to identify with precision the interest that will be deemed sufficient to trigger the obligation to seek to intervene. Second,

[3] This definition is somewhat anomalous in that "timeliness" implies simply a lapse of time, while prejudice is identified as a separate factor in Rule 24(b). Ultimately, however, this makes little difference, as courts must consider the same factors, regardless of where they appear in the analytic framework.

it must be determined when the intervenor had the requisite knowledge of that interest.

a. Triggering Event

In some cases, the very filing of the complaint is the event that alerts an intervenor to the possibility that the lawsuit will affect her interests. But, "the date on which the party seeking intervention became aware of the litigation itself is not always relevant." Legal Aid Society of Alameda County v. Dunlop, 618 F.2d 48, 50 (9th Cir. 1980). In cases where the potential intervenor's interest is, at least at the outset, subsumed by that of a representative litigant, the trigger requiring intervention does not occur until it is apparent that the representative no longer protects the intervenor's interest. "[T]he relevant circumstance [] for determining timeliness is when the intervenor became aware that its interest would no longer be adequately protected by the parties . . . ." Id. This has particular significance in the class action context, for as long as the interests of class members are fully represented by the named plaintiffs, there is no incentive, and therefore no obligation, to intervene. In American Pipe & Construction Co. v. Utah, 414 U.S. 538, 552 (1973), the Supreme Court characterized potential class members, during the pre-certification period, as "mere passive beneficiaries of the action brought in their behalf." The Court held that "[n]ot until

the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case." Id. Indeed, it would undermine the efficiencies of class litigation to require absent class members who learn of nothing more than the existence of the litigation to intervene immediately in order to avoid the risk that, at some later stage in the case, the class representatives may no longer be able to protect their interests. Cf. Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53 (1983) ("Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims."). Thus, in United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977), the Supreme Court allowed post-judgment intervention by a class member when the named plaintiffs declined to appeal denial of class certification. The Court found the motion to be timely because "as soon as it became clear to the [intervenor] that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests." Id. Similarly, in Floyd v. City of New York, 302 F.R.D. 69, 84-85 (S.D.N.Y. 2014), "the intervention clock started

to run" when the intervenors had notice "that they had interests in the subject matter of the litigation not otherwise protected by the existing parties to the lawsuit."

Here, then, the triggering event was Judge Sand's decision holding that the named plaintiffs lacked standing to seek an injunction. At that point in time, any absent class member with notice of the determination would understand that her interest in obtaining injunctive relief could not be advanced by the current plaintiffs. The plaintiffs agree that "it is reasonable for absent class members to intervene only when the court rejects or denies one of their claims because of a problem with the class representative," but they contend that the relevant date is March 10, 2015, when I issued my report and recommendation counseling denial of class certification. (Plaintiffs' Memorandum of Law in Support of Motion to Intervene ("Pl. Memo.") at 9). They advance three rationales in support of this conclusion, none of which is compelling.

Two of the plaintiffs' arguments are related and address what they view as the contingent nature of Judge Sand's ruling. They contend that challenges to standing are always timely and may be revisited at any time. (Pl. Memo. at 9). They also maintain that they were entitled to rely on ample subsequent case law that casts doubt on the continuing viability of Judge Sand's decision. (Pl.

Memo. at 10-11). As discussed above in connection with the plaintiffs' reconsideration motion, these arguments are insufficient to warrant reversing Judge Sand's determination. Nor do they alter analysis of the trigger date. Judge Sand's decision was unconditional. The fact that it might later be undone does not diminish its significance as a warning to absent class members that their interest in injunctive relief may no longer be adequately protected. "Rule 24 does not require that an applicant's interest be crystallized or that an applicant wait until there is no doubt that his or her interests will be impacted." Floyd, 302 F.R.D. at 87 (alteration omitted). If the rule were otherwise, an intervenor could argue that, notwithstanding a ruling seemingly fatal to her interests, she could defer intervening until judgment was entered, an appeal taken and decided, and certiorari denied, merely because she had predicted that the ruling would be reversed at some stage.

The plaintiffs' third argument is that "as a practical matter, [p]laintiffs had no knowledge of any current employee willing to serve as a class representative until the Court recommended denying [p]laintiffs' motion in March 2015." (Pl. Memo. at 9-10). This contention goes not to identification of the triggering event, but to the intervenors' knowledge of that event, which I will now address.

b. Intervenors' Knowledge

An intervenor is deemed to be on notice when he "knew or should have known of his interest." Hnot v. Will Group Holdings, Ltd., 234 F. App'x 13, 14 (2d Cir. 2007) (quoting Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)). Thus, constructive as well as actual knowledge is sufficient. See Floyd, 302 F.R.D. at 84-85 (holding timeliness clock commenced when proposed intervenor "became aware or should have become aware" of risk to its interests). "Delay is not measured solely subjectively because, if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion." Butler, Fitzgerald & Potter, 250 F.3d at 182.

But constructive knowledge is not imputed to absent class members merely because counsel representing a putative class become aware that the interests of some class members have been placed at risk. Unnamed class members need not monitor class litigation to ensure that the class representatives maintain standing and otherwise remain suitable, see New Jersey Carpenters Health Fund, 2010 WL 5222127, at *2; cf. McBean v. City of New York, No. 02 Civ. 5426, 2007 WL 473711, at *2 (S.D.N.Y. Feb. 13, 2007) (permitting intervention by absent class members more than two years after case filing which identified their interest in case), and imposing on counsel an obligation to contact absent class members about every

potentially material development in a case would be inconsistent with this principle.

The defendants' argument with respect to the intervenors' knowledge is twofold: they contend that the intervenors had constructive knowledge by virtue of the publication of Judge Sand's decision and actual knowledge of the lawsuit based on its filing and on their receipt of periodic litigation hold notices. (Defendants' Memorandum of Law in Opposition to Intervene ("Def. Memo.") at 13). Neither position has merit.

It is true, as the defendants urge, that "[t]he litigation of important motions and other significant case developments have . . . been held to provide notice." Floyd, 302 F.R.D. at 91. But whether these events are sufficient to provide notice in any particular case depends upon both the characteristics of the potential intervenor and the extent of publicity generated by the litigation. By these measures, the cases cited by the defendants are distinguishable. Floyd, for example, was a challenge to the New York City Police Department's stop-and-frisk policy, a case that garnered almost unparalleled notoriety in this district, and the proposed intervenors were police unions asserting an interest in the proposed settlement between the City of New York and the plaintiffs at the remedial phase of the litigation. Id. at 76-77. Here, while the instant case has attracted some coverage in the

business press, it pales in comparison to the publicity in Floyd. More importantly, the individual employees here cannot be expected to track litigation in which they have some interest in the same way that a union is obligated to monitor a case that clearly affects its members. Similarly, in MasterCard International, Inc. v. Visa International Service Association, Inc., 471 F.3d 377, 379-80 (2006), Visa was rebuffed in its effort to intervene in a case brought by its competitor, Mastercard, which was seeking to enforce a contractual provision allegedly giving it a "first right to acquire" sponsorship rights to World Cup events organized by FIFA, the governing body for world soccer. In that case, the court found that

> Visa has known of MasterCard's position that it has prior claim to the sponsorship rights since the time this litigation began in April 2006. Visa has been in contact with FIFA throughout the course of this litigation, and MasterCard's complaint and other filings, including its motion for preliminary injunctive relief filed in June, are publicly available for anyone to access. Nevertheless, Visa did not file its motion to intervene until the eve of the preliminary injunction hearing.

Id. at 390. Visa is a highly sophisticated business with an overwhelming interest in following litigation concerning a potential multimillion dollar sponsorship. The individual employees here cannot be charged with having either a similar incentive to monitor this case nor comparable resources or legal expertise to do so. There is thus no basis for imputing

constructive knowledge of Judge Sand's order to Ms. Gamba or Ms. De Luis.

Nor is there evidence of actual knowledge. Neither the assertion that they knew of the filing of the litigation as early as 2010 nor the fact that they were provided with litigation hold notices says anything about their knowledge of the critical event: Judge Sand's determination that the original named plaintiffs lack standing to seek injunctive relief. On the contrary, each of the intervenors has submitted a declaration attesting that she became aware of Judge Sand's ruling only upon learning of my class certification recommendation. (Declaration of Allison Gamba dated July 23, 2015, ¶ 2; Declaration of Mary De Luis dated July 23, 2015, ¶ 2). Thereafter, Ms. Gamba and Ms. De Luis promptly moved to intervene. This factor therefore supports their contention that their motion is timely.[4]

[4] The defendants note that, although both proposed intervenors assert that they first became aware of Judge Sand's decision in March 2015, Ms. Gamba admits that she discussed this case with plaintiffs' counsel prior to that date, and Ms. De Luis fails to assert that she had not been contacted by plaintiffs' counsel prior to that date. (Letter of Robert J. Giuffra, Jr. dated July 28, 2015, at 2 n.*). While in other circumstances contact with counsel might have functioned as some evidence of actual knowledge of Judge Sand's ruling -- although it would never be treated as a proxy for such knowledge -- here, the declarations made under penalty of perjury flatly contradict the implication that either intervenor had actual knowledge prior to March 2015.

2. <u>Prejudice to the Defendants</u>

The defendants maintain that allowing intervention would delay resolution of the plaintiffs' existing damages claims. (Def. Memo. at 15). They also contend that "permitting a Rule 23(b)(2) injunction claim to proceed would require an entirely new factual record, new expert analyses, and substantial additional briefing. That process would take many months at a minimum and, more realistically, years, to complete." (Def. Memo. at 15).

The defendants are correct on the first point. The damage claims of Ms. Chen-Oster and Ms. Orlich would likely be deferred while certification of a Rule 23(b)(2) class is litigated. But the cost to the <u>defendants</u> of delaying a determination of two individual damages claims is trivial, and those plaintiffs themselves have voiced no complaints about the consequences of intervention.

The defendants' second argument is overblown and, ultimately, largely irrelevant at this juncture. The defendants contend, for instance, that it would be necessary to conduct a further round of expert analysis to create a record on which to evaluate whether injunctive relief is warranted. (Def. Memo. at 16-23). Similarly, they argue that Goldman Sachs' personnel evaluation processes have changed, thereby rendering the current record stale. (Def. Memo. at 17-20). But this case has always involved a potential class for

whom damages are sought up to the present date, so that the incentive to establish a complete and accurate record has not changed.

More importantly, the defendants have not identified with any specificity a burden that would be imposed upon them as a consequence of intervention that they would not also face when Ms. Gamba and Ms. De Luis, if denied intervention, file a new action seeking classwide injunctive relief, as they would inevitably do. At that point, the parties would engage in precisely the same additional discovery that the defendants now assert would be necessary if intervention were permitted.

Even if there were such a burden, it is largely of the defendants' own making. Early in the case they were successful in having the classwide claims for injunctive relief stricken. The plaintiffs, however, had no right to an immediate appeal from that order. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 464-65, 477 (1978). Indeed, any decision granting or denying class status is subject to later revision and, being "inherently tentative," is not a final order. Id. at 469 & n.11. That is particularly true where, as here, the determination is that the class representative is for some reason inadequate, not that a class may never be certified. See Falcon v. Philips Electronics North America Corp., 489 F. Supp. 2d 367, 368-69 (S.D.N.Y. 2007). Following Judge

Sand's decision, the plaintiffs pursued the case as if a Rule 23(b)(2) class were still viable, and they moved for certification in part on that basis. To the extent that the defendants chose to treat the striking of the class allegations as immutable, they cannot now assert prejudice based on their own decision to defer development of evidence related to an injunctive class.[5]

Finally, much of the defendants' argument goes not to intervention, but to the merit of motions not yet before the Court. They contend, for example, that an injunctive class could not meet the cohesiveness requirement of Rule 23(b)(2). (Def. Memo. at 21-22). But there is no motion pending to certify such a class with the intervenors as class representatives. Similarly, although the defendants argue that no injunctive relief is warranted under Rule 65(d) (Def. Memo. at 22-23), it is premature to be considering the remedial phase of this case.[6]

---

[5] This is not to say there was anything inappropriate about the defendants' decision following Judge Sand's ruling to focus exclusively on defeating the putative damages class. They may have rationally assessed their risk and concluded that, since a named plaintiff capable of representing a 23(b)(2) class might never come forward, they should not devote resources to addressing an issue that might never reemerge in the litigation. But having made that calculation, they cannot now complain about the consequences of having made an incorrect prediction.

[6] Ms. Gamba was a Goldman Sachs employee at the time of the filing of the original complaint but is no longer. (Proposed Second Amended Complaint, ¶ 16). The defendants argue that this means she has no standing to seek injunctive relief. (Def. Memo. at 5-6). That question need not be decided now and, in any event,

3. Prejudice to the Plaintiffs

The named plaintiffs, Ms. Chen-Oster and Ms. Orlich, would suffer no prejudice if intervention were denied, since their case would simply proceed on its present course. Nor would they be disadvantaged if intervention were granted except to the extent that this may delay resolution of their individual damages claims, which, as noted, is not a consequence that they have complained of. As far as they are concerned, then, the prospect of intervention is largely neutral.

So, too, with respect to absent class members. Until certification of a damages class is definitively denied, the statute of limitations is tolled as to their claims. See Crown, Cork & Seal, 462 U.S. at 353-54; American Pipe & Construction Co., 414 U.S. at 552-54; Choquette v. City of New York, 839 F. Supp. 2d 692, 700-01 (S.D.N.Y. 2012); DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 871 F. Supp. 2d 143, 150 (E.D.N.Y. 2012). At that point, they could file individual damage actions, regardless of whether claims for injunctive relief were being pursued in this action on the basis of intervention or in a separate action.

4. Prejudice to the Intervenors

There is, however, some danger of prejudice to the intervenors

---

would not affect her entitlement to intervene in order to seek individual damages.

if they are required to commence a separate action. That prejudice is minimized, of course, by the defendants' stipulation that any discovery taken in this case could be used in a new action filed by Ms. Gamba and Ms. De Luis. (Def. Memo. at 24 n.17). And, if the new case were consolidated with the pending action, the costs associated with coordinating the two proceedings would be reduced. But there is no guarantee that this would occur. If, instead, the new action were assigned to a different judge, additional resources would be expended by the intervenors as well as by the court to familiarize that judge with the issues. See Haddock v. Nationwide Financial Services, Inc., 262 F.R.D. 97, 103 (D. Conn. 2009) (permitting intervention by party with standing to seek injunctive relief because "[f]orcing him and other injunction-eligible plaintiffs to file a separate action would be unduly costly, repetitive, and inefficient"), vacated on other grounds, 460 F. App'x 26 (2d Cir. 2012). Furthermore, there would be a risk of inconsistent determinations if multiple cases were assigned to different judges.

The intervenors' motion is timely, then, as they moved promptly after learning that their interests could no longer be adequately represented by the named plaintiffs; neither the defendants nor the plaintiffs will be prejudiced by allowing intervention; and there is some risk of prejudice to the

intervenors if they are denied intervention.

B. Common Questions

Rule 24(b) requires that the proposed intervenors' claims "share with the main action a common question of law or fact." The defendants contend that "[c]ommonality among the damages claims of the current [p]laintiffs, based on processes and data only as of year-end 2011, says nothing about commonality between the claims of the current [p]laintiffs and those of the putative intervenors." (Def. Memo. at 25). But the central questions of law and fact presented in the instant case are identical to those raised by the intervenors: do Goldman Sachs' personnel evaluation processes discriminate against women in promotion and compensation? These core issues remain common both to the instant case, even to the extent it is limited to individual damage claims, and to the intervenors' claims for injunctive relief. See Haddock, 262 F.R.D. at 103 (permitting intervention where "[intervenor] is a class member who shares the same questions of law and fact with the other plaintiffs, except that [intervenor] still has standing to sue for an injunction in addition to monetary relief"). Moreover, it is immaterial that the evidence presented on class certification was limited in time. For purposes of intervention, the intervenors share common issues with the plaintiffs in the current action; whether there are questions of law and fact common to the class

that the intervenors seek to represent will be determined at the appropriate time.

C. Other Considerations

Although this case is not young, it is still at an early stage: no final determination has yet been made with respect to class certification, and merits discovery is still to be conducted. Thus, this action stands in stark contrast to cases like Floyd, 302 F.R.D. at 98, and In re Holocaust Victim Assets Litigation, 225 F.3d 191, 198, 202 (2000), where intervention threatened to upset settlements among the original parties and revive litigation that had effectively been resolved.

Finally, "[i]n considering a motion for intervention, the Court must balance two competing objectives: 'efficiently administering legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand.'" Rodriguez v. Pataki, 211 F.R.D. 215, 217 (S.D.N.Y. 2002) (quoting Pitney Bowes, 25 F.3d at 69); see also Doe I v. Karadzic, No. 93 Civ. 878, 2000 WL 763851, at *2-3 (S.D.N.Y. June 13, 2000) ("Resolving these common questions in a single proceeding will advance the expeditious and efficient resolution of the Intervenors' claims without unduly hampering the existing plaintiffs' pursuit of justice."). Here, the central issue out of

which the intervenors' claims arise is identical to the core question underlying the claims of the current plaintiffs, and efficiency will therefore be served by maintaining a single lawsuit.

In sum, because the intervenors filed their motion in a timely manner, because the parties to the current litigation would not be unduly prejudiced by intervention, because the intervenors would risk prejudice if intervention were denied, because the intervenors present the same core legal and factual issues as have been raised in the present case, because the case has not progressed to a point where intervention would be disruptive, and because it will be more efficient to proceed with a single case, the motion for intervention is granted.

Conclusion

For the reasons set forth above, the plaintiffs' motion for reconsideration (Docket no. 368) is denied. The motion of Allison Gamba and Mary de Luis to intervene (Docket no. 377) is granted, and the plaintiffs may therefore file the Second Amended Class Action Complaint.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
August 3, 2015

Copies transmitted this date:

Adam T. Klein, Esq.
Cara E. Greene, Esq.
Justin M. Swartz, Esq.
Melissa L. Stewart, Esq.
Outten & Golden, LLP (NYC)
3 Park Avenue, 29th Floor
New York, NY 10016

Alison M. Stocking, Esq.
Anne B. Shaver, Esq.
Heather H. Wong, Esq.
Kelly Dermody, Esq.
Lisa J. Cisneros, Esq.
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Robert J. Giuffra, Jr., Esq.
Theodore O. Rogers, Jr., Esq.
Margaret E. Bartlett, Esq.
Michael P. Reis, Esq.
Suhana S. Han, Esq.
Robin D. Fessel, Esq.
Sullivan and Cromwell, LLP
125 Broad Street
New York, NY 10004

Barbara B. Brown, Esq.
Neal D. Mollen, Esq.
Paul Hastings LLP
875 15th Street N.W.
Washington, DC 20005

C. Geoffrey Weirich, Esq.
Paul Hastings LLP
1170 Peachtree Street, NE
Suite 2400
Atlanta, GA 30308