**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                           :
H. CRISTINA CHEN-OSTER; LISA PARISI;                       :
and SHANNA ORLICH,                                         :
                                                           :
                                    Plaintiffs,            :
                                                           :
                                                           :          10 Civ. 6950 (AT) (JCF)
              v.                                           :
                                                           :     **ORAL ARGUMENT REQUESTED**
GOLDMAN, SACHS & CO. and THE                               :
GOLDMAN SACHS GROUP, INC.,                                 :
                                                           :
                                    Defendants.            :
                                                           :
-----------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**APPEAL OF THE MAGISTRATE JUDGE'S ORDER GRANTING INTERVENTION**

Barbara B. Brown *(admitted pro hac vice)*        Robert J. Giuffra, Jr.
Neal D. Mollen *(admitted pro hac vice)*          Theodore O. Rogers, Jr.
Carson H. Sullivan *(admitted pro hac vice)*      Robin D. Fessel
PAUL HASTINGS LLP                                 Suhana S. Han
875 15th Street, NW                               Jeffrey B. Wall *(admitted pro hac vice)*
Washington, DC  20005                             SULLIVAN & CROMWELL LLP
                                                  125 Broad Street
                                                  New York, New York  10004
                                                  (212) 558-4000

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

August 17, 2015

# TABLE OF CONTENTS

*Page(s)*

**PRELIMINARY STATEMENT** ................................................................................................ 1

**BACKGROUND** ................................................................................................................. 4

    1.    After Judge Sand Struck Plaintiffs' Claims for Injunctive and Declaratory Relief, They Sat on Their Hands for Nearly Three Years. ...................................4

    2.    Without Notice, Ms. Gamba and Ms. De Luis Belatedly Come Forward To Intervene. ............................................................................................................5

    3.    Ms. Gamba and Ms. De Luis Had Actual Notice of this Lawsuit and Constructive Notice of Judge Sand's Ruling for Many Years.................................6

    4.    While Plaintiffs and the Putative Intervenors Sat on Their Hands, the Parties Compiled a Record Focused Exclusively on Damages. ...........................................8

    5.    Judge Francis Permits Ms. Gamba and Ms. De Luis To Intervene and Restart This Now Five-Year-Old Litigation. ....................................................................9

**STANDARD OF REVIEW** .................................................................................................... 11

**ARGUMENT** .................................................................................................................. 13

**I.**    **THE MAGISTRATE JUDGE APPLIED THE WRONG LEGAL STANDARD IN ASSESSING MS. GAMBA'S AND MS. DE LUIS'S THREE-YEAR DELAY IN INTERVENING IN THIS FIVE-YEAR-OLD LAWSUIT.** ....................................13

    A.    Ms. Gamba and Ms. De Luis Had Constructive Notice of Judge Sand's July 2012 Ruling When It Was Issued on This Court's Public Docket, Reported in the Media, and Posted on Plaintiffs' Website for This Case. ............................................................................................14

    B.    The Magistrate Judge Misapplied the Law in Evaluating Constructive Notice. ..................................................................................17

**II.**    **THE MAGISTRATE JUDGE IGNORED THE PREJUDICE TO EXISTING PARTIES AND OVERSTATED THE PREJUDICE TO INTERVENORS.** ............21

    A.    The Magistrate Judge Ignored the Prejudice that Delay Would Cause to Defendants in the Form of Accumulated Damages and Stale Evidence on Individual Claims.....................................................................21

    B.    The Magistrate Judge Ignored the Prejudice that Delay Would Cause to Putative Class Members..........................................................................23

*Page(s)*

C.    The Magistrate Judge Incorrectly Blamed Defendants for the
      Prejudice from Plaintiffs' Intervention Motion. ...................................................24

D.    The Magistrate Judge Overstated the Prejudice that Intervenors
      Would Suffer if They Filed Their Own Action. ...................................................25

**CONCLUSION** ................................................................................................................ 26

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Aguilar* v. *ICE*,
  2012 WL 1344417 (S.D.N.Y. Apr. 16, 2012) (Forrest, J.) .................................................... 21

*American Pipe & Construction Co.* v. *Utah*,
  414 U.S. 538 (1974) ....................................................................................................... 23

*Butler, Fitzgerald & Potter* v. *Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ......................................................................................... 2, 13, 15

*Catanzano* v. *Wing*,
  103 F.3d 223 (2d Cir. 1996) ......................................................................................... 15, 16, 17

*Chen-Oster* v. *Goldman, Sachs & Co.*,
  2015 WL 1566722 (S.D.N.Y. March 10, 2015) (Francis, J.) ......................................... *passim*

*Chen-Oster* v. *Goldman, Sachs & Co.*,
  2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015) (Francis, J.) .............................................. *passim*

*Chen-Oster* v. *Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) (Sand, J.) .................................................................. 4, 24

*Fabkom, Inc.* v. *R.W. Smith & Assocs., Inc.*,
  1996 WL 531873 (S.D.N.Y. Sept. 19, 1996) (Mukasey, J.) ..................................................... 18

*Floyd* v. *City of New York*,
  302 F.R.D. 69 (S.D.N.Y. 2014) (Torres, J.) ................................................................... *passim*

*Grewal* v. *Cuneo*,
  2014 WL 2095166 (S.D.N.Y. May 20, 2014) (Pitman, J.) ....................................................... 12

*Harris* v. *Vector Mktg. Corp.*,
  2010 WL 3743532 (N.D. Cal. Sept. 17, 2010) ...................................................................... 19

*Hnot* v. *Willis Grp. Holdings Ltd.*,
  234 F. App'x 13 (2d Cir. 2007) ........................................................................................ 15

*Hnot* v. *Willis Grp. Holdings Ltd.*,
  2006 WL 3476746 (S.D.N.Y. Nov. 30, 2006) (Lynch, J.) ..................................... 16, 18, 22, 25

*Hosp. Assoc.* v. *Toia*,
  577 F.2d 790 (2d Cir. 1978) ............................................................................................ 22

*Page(s)*

*In re Bank of N.Y. Deriv. Litig.*,
  320 F.3d 291 (2d Cir. 2003)...........................................................................16

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000)...........................................................................25

*In re IPO Secs. Litig.*,
  2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004) (Scheindlin, J.)...............................16

*In re IPO Secs. Litig.*,
  499 F. Supp. 2d 415 (S.D.N.Y. 2007) (Scheindlin, J.) ......................................23

*Marshall* v. *Milberg LLP*,
  2009 WL 5177975 (S.D.N.Y. Dec. 23, 2009) (Preska, J.) ..................................18

*MasterCard Int'l, Inc.* v. *Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006)...........................................................................15

*Medina* v. *Fischer*,
  2013 WL 1294621 (S.D.N.Y. Mar. 29, 2013) (Cott, J.)......................................12

*Miller* v. *Ghirardelli Chocolate Co.*,
  2013 WL 6776191 (N.D. Cal. Dec. 20, 2013) ...................................................19

*N.Y. Chinese TV Programs, Inc.* v. *U.E. Enters., Inc.*,
  996 F.2d 21 (2d Cir. 1993).............................................................................11

*New York* v. *Jewell*,
  2013 WL 7853439 (N.D.N.Y. Sept. 11, 2013) ..................................................12

*Republic of the Philippines* v. *Christie's*,
  2000 WL 1056300 (S.D.N.Y. Aug. 1, 2000) (Patterson, J.)................................16

*Ricci* v. *DeStefano*,
  2010 WL 9113871 (D. Conn. May 12, 2010) ....................................................18

*Sidari* v. *Orleans Cnty.*,
  174 F.R.D. 275 (W.D.N.Y. 1996)....................................................................26

*United States* v. *Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994)..........................................................................13, 17

*Wal-Mart Stores, Inc.* v. *Dukes*,
  131 S. Ct. 2541 (2011)..............................................................................4, 22

*World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007) (Karas, J.) .............................................18

*Page(s)*

*XL Specialty Ins. Co.* v. *Lakian*,
    2015 WL 273660 (S.D.N.Y. Jan. 15, 2015) (Torres, J.)....................................17, 21

**Statutes and Rules**

28 U.S.C. § 636.........................................................................................................11, 12

28 U.S.C. § 1292...............................................................................................................4

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Fed. R. Civ. P. 24 ...............................................................................................5, 12, 13

Fed. R. Civ. P. 72 ...................................................................................................11, 12

**Other Authorities**

Peter Lattman, *3 Women Claim Bias at Goldman*, N.Y. Times (Sept. 15, 2010),
    http://www.nytimes.com/2010/09/16/business/16bias.html?_r=0 ...........................7

Victor Li, *Goldman Loses Bid to Shake Proposed Bias Class Action*, Am. Lawyer (July 18,
    2012), http://www.americanlawyer.com/id=1202563557953?slreturn=20150503105541.......7

Karen Gullo, *Goldman Must Turn Over Female Employee Complaints in Suit*,
    BloombergBusiness (Oct. 16, 2013), http://www.bloomberg.com/news/articles/2013-10-
    15/goldman-must-turn-over-female-employee-complaints-in-suit............................................7

Chen-Oster *v.* Goldman Sachs*: Court Distinguishes Dukes, Denies Motion to Strike Class
    Allegations*, Impact Litigation Journal (Aug. 1, 2012),
    http://www.impactlitigation.com/2012/08/01/chen-oster-v-goldman-sachs-court-
    distinguishes-dukes-denies-motion-to-strike-class-allegations/ ................................7

Kevin Dugan, *Goldman Sach's differentiating stats dominate sex suit*, N.Y. Post (Oct. 24, 2014),
    http://nypost.com/2014/10/24/goldman-sachs-differentiating-stats-dominate-sex-suit/ ...........7

*Goldman Sachs Gender Discrimination Class Action Lawsuit*, www.goldmangendercase.com
    (last visited Aug. 15, 2015) ..........................................................................................2, 8

Nathan Koppel, *Goldman Sachs Hit With Sex Discrimination Suit*, Wall St. J. LawBlog (Sept.
    15, 2010), http://blogs.wsj.com/law/2010/09/15/goldman-hit-with-sex-discrimination-suit/...7

Robert Rachal & Page Griffin, *Labor and Employment and ERISA Class Actions After* Wal-Mart
    *and* Comcast—*Practice Points for Defendants (Part II-Rule 23(b))*, Bloomberg BNA (Oct.
    24, 2013) .................................................................................................................7

Patrick Dorrian, *Proposed Class of Female Goldman Workers Survives Challenge on
    Commonality Grounds*, Bloomberg BNA – Daily Labor Report (July 27, 2012)....................7

*Page(s)*

Restatement (Third) of the Law Governing Lawyers § 28 ............................................................20

*United States: The ERISA Litigation Newsletter*, Mondaq Business Briefing (Dec. 18, 2013) ......7

## PRELIMINARY STATEMENT

Through this appeal, Defendants ask this Court to reverse Magistrate Judge Francis's erroneous order allowing two new intervenors—Allison Gamba, a former Goldman Sachs employee, and Mary De Luis, a current employee—to enter this five-year-old gender discrimination action against Defendants ("Goldman Sachs" or the "Firm"). Three years ago, in July 2012, Judge Sand explicitly struck Plaintiffs' claims for injunctive and declaratory relief, ruling that the named Plaintiffs, as former Goldman Sachs employees, did not have standing to seek injunctive relief. In reliance on Judge Sand's ruling, the parties then proceeded to litigate only Plaintiffs' damages claims for nearly three years, until Judge Francis issued his lengthy Report and Recommendation in March 2015 recommending against certifying any class. *See Chen-Oster* v. *Goldman, Sachs & Co.*, 2015 WL 1566722 (S.D.N.Y. March 10, 2015) (Francis, J.) ("R&R"). Then, just two weeks after Judge Francis issued his R&R, Plaintiffs put forward Ms. Gamba and Ms. De Luis to try to salvage their effort to certify some class here.

In allowing intervention, Judge Francis erroneously excused Ms. Gamba's and Ms. De Luis's three-year delay in moving to intervene and minimized the substantial prejudice to Goldman Sachs and absent putative class members. He rested his decision on Ms. Gamba's and Ms. De Luis's bare-bones declarations—tactically submitted *after* oral argument and devoid of any details about their knowledge of the case or interactions with Plaintiffs' counsel—stating simply that they did not know of Judge Sand's ruling striking Plaintiffs' injunctive claim for three years. *See Chen-Oster* v. *Goldman, Sachs & Co.*, 2015 WL 4619663, at *9 & n.4 (S.D.N.Y. Aug. 3, 2015) (Francis, J.) ("Op."). Because Judge Francis's ruling cannot be squared with controlling Second Circuit law, this Court should reverse for two reasons.

*First*, Judge Francis clearly applied the wrong legal standard in evaluating the timeliness of Plaintiffs' intervention motion. The Second Circuit requires that parties move to

intervene as soon as they receive "constructive notice," *Floyd* v. *City of New York*, 302 F.R.D. 69, 86 (S.D.N.Y. 2014) (Torres, J.)—*i.e.*, when they "should have known" that their interests in a litigation "might not be adequately represented," *Butler, Fitzgerald & Potter* v. *Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001). Here, the time for Ms. Gamba and Ms. De Luis to intervene was in July 2012, when Judge Sand struck Plaintiffs' Rule 23(b)(2) claims for injunctive and declaratory relief from this case. Ms. Gamba and Ms. De Luis had actual notice of this lawsuit from its inception and, therefore, constructive notice of Judge Sand's decision, which was published on this Court's docket and covered in the press, as a matter of law. In fact, Plaintiffs' counsel even posted an update about it on their website devoted specifically to this case. *See Goldman Sachs Gender Discrimination Class Action Lawsuit*, www.goldmangendercase.com (last visited Aug. 15, 2015) (stating that "[o]n July 17, 2012, the Court issued an order concerning defendants' motions to strike class allegations and for partial summary judgment," and linking to Judge Sand's decision).

In stretching the law to allow intervention, Judge Francis applied his own subjective notice standard. He held, contrary to multiple decisions in this Circuit, that "no basis" existed for imputing constructive knowledge to Ms. Gamba and Ms. De Luis because, unlike a union or corporation, they lacked a sufficient "incentive to monitor this case []or comparable legal resources or legal expertise to do so." Op. at *9. In doing so, Judge Francis ignored that courts in this Circuit have repeatedly held individual intervenors, including in Title VII actions, to the same objective standard applied to institutional parties. *See* cases cited *infra* p. 18. Without an objective standard, intervenors could claim that they lacked the sophistication to monitor litigation, even when, as here, they are well-educated professionals who were indisputably aware of the litigation and their potential interest in it. By transforming the

-2-

constructive notice standard into a standard turning on a court's evaluation of the intervenors' personal characteristics, Judge Francis effectively applied an actual notice standard. Indeed, he acknowledged as much when he denied Defendants' application for depositions to test the intervenors' purported lack of knowledge of Judge Sand's July 2012 decision. (Memo Endorsement, Aug. 7, 2015, Dkt. No. 415, at 3 ("The intervenors' declarations are clear with respect to *actual notice*.") (emphasis added).) Making matters worse, Judge Francis also ignored the dilatory tactics and gamesmanship of Plaintiffs' counsel, who obviously had knowledge of Judge Sand's July 2012 decision, but took no steps to try to address it until Judge Francis issued his R&R recommending that no class be certified here.

    *Second*, Judge Francis erred in minimizing the clear prejudice that intervention would cause to existing parties, while Ms. Gamba and Ms. De Luis would not be prejudiced at all because they unquestionably could bring their own action against Defendants in this Court. Although recognizing that intervention might delay the resolution of *Plaintiffs'* pending damages claims, Judge Francis ignored that the damages claims of *absent class members* (which arguably are tolled for the duration of class proceedings) would continue to accumulate while Ms. Gamba and Ms. De Luis sought to certify a Rule 23(b)(2) class seeking injunctive and declaratory relief—a process likely to take many months, if not years. Thus, as a result of intervention, Defendants face expanded liability and the risk of having to defend against the damages claims of absent class members based on ever staler evidence.[1] Judge Francis also ignored the prejudice

---

[1]    To mitigate that prejudice, this Court could grant Defendants' separate request, also made today, to move forward with reviewing Judge Francis's recommendation against certification of a Rule 23(b)(3) damages class.

to the absent class members themselves, who have a strong interest in this Court's prompt determination of whether a Rule 23(b)(3) damages class can be certified, so that they may either obtain such relief as part of the class or elect to file their own individual actions.  Finally, Judge Francis improperly criticized Defendants for not spending the substantial time and resources necessary to develop a record regarding the impact of Goldman Sachs's current practices on the Firm's current population of employees, even though they had no obligation to do so after Judge Sand explicitly struck Plaintiffs' claims for injunctive and declaratory relief three years ago.

## BACKGROUND

1. **After Judge Sand Struck Plaintiffs' Claims for Injunctive and Declaratory Relief, They Sat on Their Hands for Nearly Three Years.**

Five years ago, in September 2010, several former employees filed this gender discrimination class action against Goldman Sachs.  Plaintiffs sought to certify a class seeking injunctive and declaratory relief under Rule 23(b)(2), as well as a class for damages under Rule 23(b)(3) stretching back eight years to 2002.  On July 17, 2012, Judge Sand expressly struck Plaintiffs' claims for injunctive and declaratory relief, ruling that the Supreme Court's decision in *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2559-60 (2011), "forecloses certification under [Rule] 23(b)(2)," because Plaintiffs are former, rather than current, employees.  *Chen-Oster* v. *Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 121, 124 (S.D.N.Y. 2012) (Sand, J.).  Plaintiffs did not seek reconsideration, request an interlocutory appeal pursuant to 28 U.S.C. § 1292, or seek a stay to try to locate any current Goldman Sachs employees willing to join their suit.  As a result, beginning in July 2012, the parties exclusively litigated whether a damages class could be certified in this case pursuant to Rule 23(b)(3).

On March 10, 2015, after nearly three years of discovery and briefing, Judge Francis recommended that this Court deny Plaintiffs' motion for class certification in its entirety.

(Dkt. No. 364.)  Judge Francis confirmed that Judge Sand's decision barring certification of a class seeking injunctive and declaratory relief was law of the case.  Judge Francis then recommended that a damages class could not be certified, because "evidence of the individualized factors that inform Goldman Sachs' compensation and promotion decisions . . . would effectively swamp the common question of whether the evaluative policies have, on average a discriminatory impact."  R&R at *15, 17.  Shortly thereafter, the parties agreed to a schedule for resolving objections to the R&R, which provided for briefing before this Court to conclude by June 12.  The Court approved this schedule on March 16.  (Memo Endorsement, Mar. 16, 2015, Dkt. No. 367.)

> **2.    Without Notice, Ms. Gamba and Ms. De Luis Belatedly Come Forward To Intervene.**

On March 24, 2015, just two weeks after Judge Francis issued his R&R and one week after this Court approved the schedule for objections to that decision, Plaintiffs' counsel put forward Ms. Gamba and Ms. De Luis to serve as class representatives for their previously dismissed claims for injunctive and declaratory relief.  The intervenors themselves did not move to intervene, nor did they file a pleading (as required by Rule 24) notifying Defendants of their claims and allegations.  A month later, at Judge Francis's direction (*see* Memo Endorsement, Apr. 28, 2015, Dkt. No. 386), the intervenors submitted a proposed complaint that contains only the most basic, bare-bones facts about the intervenors and their allegations.

In fact, as Ms. Gamba's complaint makes clear, she is not a current Goldman Sachs employee and, thus, has no standing to pursue injunctive or declaratory relief under Judge

Sand's decision.  (Second Am. Compl., Dkt. No. 411 ("SAC") ¶ 16.)[2]  Her employment ended in

August 2014, when Goldman Sachs sold her entire business unit and Ms. Gamba's employment

was transferred to the new owner.  (*Id.*)  Ms. De Luis is a current employee; she works as a Vice

President in Goldman Sachs's Investment Management Division in Dallas.  (*Id.* ¶¶ 137-38.)

Tellingly, even though she alleges that she has been paid less than her male colleagues, she does

not attribute this outcome to the policies that Plaintiffs challenged in their Amended Complaint.

(*Id.* ¶ 139; *see* First Am. Class Action Compl., Sept. 19, 2011, Dkt. No. 104.)

### 3.   Ms. Gamba and Ms. De Luis Had Actual Notice of this Lawsuit and Constructive Notice of Judge Sand's Ruling for Many Years.

Both Ms. Gamba and Ms. De Luis have had actual knowledge of this litigation

since Plaintiffs filed their complaint in 2010, because they received document retention notices at

the outset and have received periodic reminders ever since.  (Ex. 1 (Yanagisawa Decl.) ¶ 3.)[3]

They have never denied such knowledge.   Ms. Gamba has been in contact with Plaintiffs'

counsel since *at least January 2014* and even submitted a declaration supporting Plaintiffs'

motion for class certification in February 2014.  (Ex. 2 (Gamba Dep.) at 12:4-10; Dkt. No. 254.)

Moreover, in late 2013, Judge Francis directed Defendants to produce a list of female

professionals at Goldman Sachs—including Ms. Gamba and Ms. De Luis—who had registered

gender-related complaints.  Plaintiffs' counsel sought that information for the express purpose of

---

[2]     Because Ms. Gamba lacks standing to pursue injunctive relief as a former employee, Defendants intend to seek dismissal of her claims for injunctive and declaratory relief.

[3]     All exhibit citations are to the Declaration of Robert J. Giuffra, Jr., dated August 17, 2015, in Support of Defendants' Appeal of the Magistrate Judge's Order Granting Intervention, filed concurrently with this brief.

contacting other female professionals at Goldman Sachs, and counsel did in fact use the list to contact current employees.  (*See* Ex. 3 (Reider Decl.) ¶¶ 2-3; Ex. 4 (O'Keeffe Decl.) ¶¶ 2-3, 6; Ex. 5 (Cisneros Letter) at 4-5 (requesting information regarding complainants on the ground that "[a] female employee who complains . . . may provide relevant testimony when questioned directly").)

Having known of this lawsuit, and having spoken with Plaintiffs' counsel (in the case of Ms. Gamba) or likely been solicited by counsel (in the case of Ms. De Luis), Ms. Gamba and Ms. De Luis easily could have kept themselves informed of its progression.  The press reported on the commencement of this action and significant case developments,[4] including Judge Sand's July 2012 decision, which was publicly available.  (*See, e.g.*, Ex. 12 (Chen-Oster *v.* Goldman Sachs*: Court Distinguishes* Dukes*, Denies Motion to Strike Class Allegations*, Impact Litigation Journal (Aug. 1, 2012), http://www.impactlitigation.com/2012/08/01/chen-oster-v-goldman-sachs-court-distinguishes-dukes-denies-motion-to-strike-class-allegations/)   ("Judge Leonard B. Sand . . . [held] that, under *Dukes*, only current employees would have standing to pursue injunctive relief as a remedy . . . .").)[5]

---

[4]    *See, e.g.*, Ex. 13 (Peter Lattman, *3 Women Claim Bias at Goldman*, N.Y. Times (Sept. 15, 2010), http://www.nytimes.com/2010/09/16/business/16bias.html?_r=0); Ex. 14 (Nathan Koppel, *Goldman Sachs Hit With Sex Discrimination Suit*, Wall St. J. LawBlog (Sept. 15, 2010), http://blogs.wsj.com/law/2010/09/15/goldman-hit-with-sex-discrimination-suit/); Ex. 15 (Karen Gullo, *Goldman Must Turn Over Female Employee Complaints in Suit*, BloombergBusiness (Oct. 16, 2013), http://www.bloomberg.com/news/articles/2013-10-15/goldman-must-turn-over-female-employee-complaints-in-suit); Ex. 16 (Kevin Dugan, *Goldman Sach's differentiating stats dominate sex suit*, N.Y. Post (Oct. 24, 2014), http://nypost.com/2014/10/24/goldman-sachs-differentiating-stats-dominate-sex-suit/).

[5]    *See* Ex. 17 (Victor Li, *Goldman Loses Bid to Shake Proposed Bias Class Action*, Am. Lawyer                    (July                    18,                    2012),

Indeed, Ms. Gamba and Ms. De Luis had an even simpler way to monitor developments in this case. Plaintiffs' counsel posted regular case updates on their own website devoted specifically to this action, including an update on Judge Sand's ruling that was posted no later than September 2012. *See Goldman Sachs Gender Discrimination Class Action Lawsuit*, www.goldmangendercase.com (last visited Aug. 15, 2015) (stating that "[o]n July 17, 2012, the Court issued an order concerning defendants' motions to strike class allegations and for partial summary judgment," and linking to Judge Sand's decision). The website expressly solicits inquiries from Goldman Sachs employees. *Id.* ("Current and former female Associates and Vice Presidents of Goldman Sachs who wish to report their experiences at the company or submit a complaint should click here to contact plaintiffs' counsel or call Lieff Cabraser toll-free at 1 800 541-7358 and ask to speak to attorney Anne Shaver.").

4.  **While Plaintiffs and the Putative Intervenors Sat on Their Hands, the Parties Compiled a Record Focused Exclusively on Damages.**

In reliance on Judge Sand's July 2012 decision, the parties litigated solely Plaintiffs' backward-looking damages claims. As a result, the current record is limited to data for the period from 2002 to 2011; the parties' experts based their opinions solely on that data. In fact, only 17 percent of the professionals in the pre-2012 database on which the parties' experts previously relied are still in Associate or Vice-President positions in the relevant Goldman Sachs

---

http://www.americanlawyer.com/id=1202563557953?slreturn=20150503105541); Ex. 18 (*United States: The ERISA Litigation Newsletter*, Mondaq Business Briefing (Dec. 18, 2013)) at 10 n.3; Ex. 19 (Patrick Dorrian, *Proposed Class of Female Goldman Workers Survives Challenge on Commonality Grounds*, Bloomberg BNA – Daily Labor Report (July 27, 2012)) at 1; Ex. 20 (Robert Rachal & Page Griffin, *Labor and Employment and ERISA Class Actions After* Wal-Mart *and* Comcast—*Practice Points for Defendants (Part II-Rule 23(b))*, Bloomberg BNA (Oct. 24, 2013)) at 2 n.3.

Divisions. (Ex. 6 (Ginsberg Decl.) ¶ 6, Exs. B-C.)   Moreover, since 2011, Goldman Sachs's processes have changed in material ways that impact Plaintiffs' claims.   For instance, Plaintiffs have asserted that Defendants relied on "poorly defined" factors to set compensation and that managers were inadequately trained to consistently apply these factors.   (Mem. in Support of Pls.' Mot. for Class Cert., July 1, 2014, Dkt. No. 247, at 10.)   But Plaintiffs' complaints were predicated on pre-2012 criteria, definitions, and training, which in many cases no longer exist or have changed.   (Ex. 7 (Landman Decl.) ¶¶ 7, 13; Ex. 8 (Perloff Decl.) ¶¶ 12-13.)   Similarly, Plaintiffs' expert, Dr. Wayne Cascio, criticized Defendants for not providing 360 Review feedback reports to all rated employees, a practice that Defendants have since adopted.   (Ex. 7 (Landman Decl.) ¶ 8.)

**5.    Judge Francis Permits Ms. Gamba and Ms. De Luis To Intervene and Restart This Now Five-Year-Old Litigation.**

After briefing was completed on the intervention motion, Plaintiffs claimed at oral argument that the putative intervenors lacked actual notice of Judge Sand's July 2012 decision until issuance of Magistrate Judge Francis's R&R.   (Ex. 9 (Tr.) at 17:14-21.)   Judge Francis then allowed Ms. Gamba and Ms. De Luis to submit declarations on that issue.   (*Id.* at 17:19-24; Dkt. Nos. 406, 407.)   In those three-sentence declarations, both intervenors stated only that in early March 2015 they "learned for the first time that Judge Sand had issued an order in this case in 2012 denying standing to the current class representatives to represent a class seeking injunctive relief, and that that order had been re-affirmed in the Magistrate Judge's March 10, 2015 opinion recommending that class certification be denied."   (Ex. 10 (De Luis Supp. Decl.) ¶ 2; Ex. 11 (Gamba Supp. Decl.) ¶ 2.)

Although Ms. Gamba and Ms. De Luis denied actual notice, Ms. Gamba admitted that she first contacted Plaintiffs' counsel in January 2014.   Plaintiffs' counsel have never said

whether they sought to make Ms. Gamba aware of Judge Sand's July 2012 ruling at that time. Ms. De Luis maintained that she "first contacted Plaintiffs' Counsel on March 6, 2015" and "had never spoken with any lawyer or employee of Lieff Cabraser Heimann & Bernstein, LLP or Outten & Golden, LLP prior to this date." (*See* Ex. 11 (Gamba Supp. Decl.) ¶ 1; Ex. 10 (De Luis Supp. Decl.) ¶ 1.)  Notably, however, Ms. De Luis did not disclose whether Plaintiffs' counsel had attempted to contact her before March 2015.[6]

On August 3, 2015, Judge Francis granted Plaintiffs' motion to allow Ms. Gamba and Ms. De Luis to intervene.  (Dkt. No. 410.)  Judge Francis agreed that the relevant question was when Ms. Gamba and Ms. De Luis had "constructive" or "actual knowledge" of Judge Sand's July 2012 ruling.  Op. at *7.  But despite the intervenors' knowledge of this suit, the press coverage of Judge Sand's decision, and Plaintiffs' own website, Judge Francis concluded that "[t]here is . . . no basis for imputing constructive knowledge of Judge Sand's order to Ms. Gamba or Ms. De Luis."  *Id.* at *9.  He reasoned that the putative intervenors—two seasoned professionals who work in the financial services industry—did not have sufficient "incentive," "resources" or "legal expertise" to monitor this case.  *Id.*  He further concluded, based on the intervenors' declarations, that Ms. Gamba and Ms. De Luis lacked "actual knowledge" of Judge Sand's July 2012 ruling until March 2015, when the R&R was issued.  Because they moved to intervene shortly thereafter, Judge Francis deemed intervention timely.  *Id.*

---

[6]     In a responsive letter, Defendants identified the many unanswered questions left by the intervenors' sparse declarations, including when Plaintiffs' counsel first contacted them.  (Letter from R. Giuffra to J. Francis, July 28, 2015, Dkt. No. 408.)  Plaintiffs replied that any request for information regarding the date of the first communications between Plaintiffs' counsel and the intervenors represented "a clear attempt to invade the attorney-client privilege."  (Letter from K. Dermody to J. Francis, July 28, 2015, Dkt. No. 409, at 2.)

Judge Francis also ruled that intervention would not prejudice Defendants. He concluded that any prejudice stemming from the delay in resolution of the named Plaintiffs' damages claims was "trivial," though he did not address the delay in resolution of the claims of the absent putative class members, who number in the thousands. He deemed "largely irrelevant" the prejudice flowing from the need to compile a new record on injunctive relief. *Id.* Thus, notwithstanding Judge Sand's ruling striking Plaintiffs' injunctive claims from this action, Judge Francis characterized the "burden" of additional discovery as "largely of the [D]efendants' own making," because they had not gone to the substantial expense of submitting fact and expert evidence *on a dismissed claim. Id.* at *10. Finally, Judge Francis found that there was "some danger" of prejudice to the putative intervenors should intervention be denied, because filing a second action might entail such additional costs as those associated with familiarizing a new judge with the case, even though Defendants had advised that they had no objection to Judge Francis continuing in his role if the intervenors filed their own action in this Court. *Id.*

In light of Judge Francis's reliance on the intervenors' declarations in his actual notice analysis, *see id.* at *9, Defendants asked to conduct short, one-hour depositions of both Ms. Gamba and Ms. De Luis to explore the unanswered questions left by those declarations. (Letter from R. Giuffra to J. Francis, Aug. 5, 2015, Dkt. No. 412.) Judge Francis denied this request on the ground that "[t]he intervenors' declarations are clear with respect to *actual notice*." (Memo Endorsement, Aug. 7, 2015, Dkt. No. 415, at 3 (emphasis added).)

## STANDARD OF REVIEW

This Court reviews dispositive legal rulings by a magistrate judge *de novo.* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b). The Second Circuit has indicated that a motion to intervene represents a dispositive legal issue. *See N.Y. Chinese TV Programs, Inc.* v. *U.E.*

-11-

*Enters., Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) (without the parties' and intervenors' consent, "the magistrate judge's order has the effect only of a report and recommendation to the district judge, who upon the filing of objections must review *de novo* the recommendation"), and several district courts within the Circuit have reached the same conclusion, *see, e.g.*, *Medina* v. *Fischer*, 2013 WL 1294621, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (Cott, J.), *report and recommendation adopted by* 2013 WL 3186932 (S.D.N.Y. June 24, 2013) (Preska, J.) ("Second Circuit case law holds that a motion to intervene is dispositive, at least insofar as it is brought 'as of right' under Rule 24(a).").

Some other district courts, however, have held that a magistrate judge's ruling on an intervention motion is not a dispositive legal issue. *See, e.g.*, *Grewal* v. *Cuneo*, 2014 WL 2095166, at *1 n.1 (S.D.N.Y. May 20, 2014) (Pitman, J.); *see also New York* v. *Jewell*, 2013 WL 7853439, at *4 (N.D.N.Y. Sept. 11, 2013), *report and recommendation rejected by* 2014 WL 841764 (N.D.N.Y. Mar. 4, 2014) (Kahn, J.) (surveying conflict). If the ruling is non-dispositive, then this Court must determine whether it is "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

Under either standard, Judge Francis's order permitting Ms. Gamba and Ms. De Luis to intervene in this five-year-old action constitutes reversible error, because his order was contrary to settled Second Circuit law.[7]

---

[7]     In a March 30, 2015 letter to Judge Francis in advance of a conference call the next day to discuss Plaintiffs' intervention request, Defendants stated in a footnote their belief that an intervention motion would be non-dispositive; however, on further review, it is clear that courts in the Second Circuit have come to different conclusions on the point, and that many courts consider this issue subject to *de novo* review. Regardless, whichever standard of review applies, Judge Francis's Order should be reversed.

## ARGUMENT

### I.   THE MAGISTRATE JUDGE APPLIED THE WRONG LEGAL STANDARD IN ASSESSING MS. GAMBA'S AND MS. DE LUIS'S THREE-YEAR DELAY IN INTERVENING IN THIS FIVE-YEAR-OLD LAWSUIT.

Permissive intervention is appropriate only if (i) the motion is "timely," (ii) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," and (iii) the putative intervenor possesses "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). On timeliness, the Second Circuit has instructed district courts to consider four factors: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States* v. *Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The applicant bears the burden of proving that intervention is warranted. Here, Ms. Gamba and Ms. De Luis utterly failed to carry their burden to support intervention. Thus, in allowing them to intervene, Judge Francis made two critical legal errors.

*First*, Judge Francis did not correctly apply the governing standards for notice. As this Court has held, under Second Circuit precedent, parties must move to intervene as soon as they receive "constructive notice," *Floyd*, 302 F.R.D. at 86, that their interests in a litigation "might not be adequately represented," *Butler*, 250 F.3d at 182. Here, Ms. Gamba and Ms. De Luis had constructive notice of Judge Sand's ruling when it was issued in July 2012, because they were aware of this lawsuit, and because the decision was publicly available and reported in the media. Ms. Gamba and Ms. De Luis easily could have learned of it, including through Plaintiffs' own website. Judge Francis concluded otherwise by holding, contrary to the law of this Circuit, that Ms. Gamba and Ms. De Luis—who are seasoned professionals in the financial

-13-

services industry—lacked sufficient "incentive," "resources," or "legal expertise" to monitor this action. Op. at *9. By treating the personal characteristics of the intervenors as dispositive in his analysis, Judge Francis erred in transforming the constructive notice standard into one of actual notice. He then compounded his error by relying exclusively on the intervenors' declarations to find a lack of actual notice without allowing Defendants to test their claims.

*Second*, Judge Francis misapplied the standard for prejudice. He ignored that this Court's delay in resolving whether a Rule 23(b)(3) damages class can be certified here would result in accumulating damages claims, which would prejudice Goldman Sachs, and require those claims to be litigated on increasingly stale evidence, which would prejudice both Goldman Sachs and putative absent class members. That prejudice may be mitigated if this Court, as requested by Defendants in a letter filed concurrently with this brief, separately reviews Judge Francis's recommendation that no Rule 23(b)(3) class seeking damages may be certified here. Judge Francis also impermissibly minimized the clear prejudice inflicted on Defendants, who have spent years litigating over the certification of a Rule 23(b)(3) class, by the need to create from scratch a Rule 23(b)(2) certification record, including fact discovery, experts, and briefing. Finally, Judge Francis overstated the prejudice that would accrue to the intervenors should they file their own suit in this Court, as they unquestionably can do.

A.    **Ms. Gamba and Ms. De Luis Had Constructive Notice of Judge Sand's July 2012 Ruling When It Was Issued on This Court's Public Docket, Reported in the Media, and Posted on Plaintiffs' Website for This Case.**

In order to determine whether a putative intervenor has unduly delayed in moving to intervene, courts in this Circuit consider two threshold elements: (1) when the obligation to intervene arose (*i.e.*, when the triggering event occurred); and (2) when the intervenor received actual or constructive notice of that triggering event. Op. at *6. "An intervenor is deemed to be

-14-

on notice when he 'knew or should have known'" that the triggering event had occurred. *Id.* at

\*7 (quoting *Hnot* v. *Willis Grp. Holdings, Ltd.*, 234 F. App'x 13, 14 (2d Cir. 2007)). In other

words, "constructive as well as actual knowledge is sufficient." *Id.* If delay were "measured

solely subjectively," "a putative intervenor could always claim it did not know it needed to

intervene until the eve of its motion." *Id.* (quoting *Butler*, 250 F.3d at 182) (internal quotation

marks omitted).

On the first point, the obligation to intervene arises once it becomes clear that the

intervenors' interest in the litigation "might not be adequately represented." *Butler*, 250 F.3d at

182. Here, the triggering event occurred in July 2012, when Judge Sand struck Plaintiffs' claims

for injunctive and declaratory relief because, as former employees, they lacked standing to bring

such claims. Op. at \*7. Judge Sand's decision made clear that the intervenors' interests in

injunctive and declaratory relief "might not be adequately represented"—and, in fact, were not

represented at all—by the existing named Plaintiffs. The Second Circuit does not permit an

intervenor to hold back until her "interest [has] crystallized" or until there is "no doubt

that . . . her interests will be impacted." *Floyd*, 302 F.R.D. at 87 (internal quotation marks and

alteration omitted). Instead, she must move to intervene as soon as it "becomes apparent that

[her] interests *might* not be protected." *Id.* (emphasis in original). Ms. Gamba and Ms. De Luis

plainly violated this rule.

On the second point, Ms. Gamba and Ms. De Luis were on constructive notice of

Judge Sand's ruling as soon as it was issued in July 2012. As this Court has held, "[t]he

litigation of important motions and other significant case developments"—such as the motion to

strike—"have . . . been held to provide notice." *Id.* at 91 (citing, *e.g.*, *Catanzano* v. *Wing*, 103

F.3d 223, 233 (2d Cir. 1996)). Judge Sand's decision was published and thus publicly available

for the intervenors to access. *See MasterCard Int'l, Inc.* v. *Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (putative intervenor had constructive notice in part because opposing party's "complaint and other filings, including its motion for preliminary injunctive relief," were "publicly available for anyone to access"); *Catanzano*, 103 F.3d at 233 (holding that the district court's "published opinion" notified the putative intervenors of their interest in the litigation).

Courts also routinely find press coverage of case developments sufficient to provide constructive notice. *See, e.g.*, *In re Bank of N.Y. Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (finding motion to intervene untimely where litigation "garnered no small amount of media attention") (internal quotation marks omitted). Here, there has been extensive press coverage of this litigation in general, and the press covered Judge Sand's July 2012 decision in particular. *See supra* p. 7 & nn. 3-4. Plaintiffs' counsel even maintained a public website that featured contemporaneous updates on case developments, including Judge Sand's decision, so Ms. Gamba and Ms. De Luis were just one mouse click away from learning of Judge Sand's decision.

In sum, even if Ms. Gamba and Ms. De Luis lacked actual notice of Judge Sand's ruling,[8] they clearly "had constructive notice of facts sufficient to create a duty to inquire further into [the] matter," *In re IPO Secs. Litig.*, 2004 WL 3015304, at *2 (S.D.N.Y. Dec. 27, 2004) (Scheindlin, J.), and "a low level of inquiry" "would have yielded knowledge," *Republic of the Philippines* v. *Christie's*, 2000 WL 1056300, at *3 (S.D.N.Y. Aug. 1, 2000) (Patterson, J.); *see Hnot* v. *Willis Grp. Holdings Ltd.*, 2006 WL 3476746, at *3 (S.D.N.Y. Nov. 30, 2006) (Lynch,

---

[8]     Judge Francis erroneously denied Defendants' request for depositions on that issue. *See* Memo Endorsement, Aug. 7, 2015, Dkt. No. 415, at 3.

J.) (once putative intervenor "knew of this litigation," she "could and should have learned through reasonable diligence" about "publicly available" court orders).   Courts have found constructive notice on the basis of significantly fewer contacts with pending litigation than are present in this case.  *See, e.g.*, *Pitney Bowes*, 25 F.3d at 71 (finding constructive notice on the grounds that the putative intervenors supposedly had a monetary incentive to monitor the litigation and the triggering event was published in the Federal Register).[9]

## B.      The Magistrate Judge Misapplied the Law in Evaluating Constructive Notice.

After reciting the traditional constructive notice standard, Judge Francis erroneously applied an actual notice standard.  In trying to distinguish *Floyd* and *Mastercard*, Judge Francis cited the press coverage and the sophistication of the intervenors in those cases—a police union and the Visa credit card company.  Op. at *8-9.  Thus, Judge Francis held that "the individual employees here cannot be expected to track litigation in which they have some interest in the same way that a union is obligated to monitor a case that clearly affects its members."  *Id.* at *8.  And, unlike Visa, Judge Francis held that "[t]he individual employees here cannot be charged with having either a similar incentive to monitor this case nor comparable resources or legal expertise to do so."  *Id.* at *9.

---

[9]      Plaintiffs have never argued that even if Ms. Gamba and Ms. De Luis had constructive notice of Judge Sand's decision, their motion to intervene—filed after a three-year delay—was timely.  *See, e.g.*, *Catanzano*, 103 F.3d at 233 (denying intervention where proposed intervenors were aware for at least eighteen months of their interest in the case); *Pitney Bowes*, 25 F.3d at 71 (constructive knowledge for fifteen months; actual knowledge for eight months); *Floyd*, 302 F.R.D. at 97 (intervenors "should have known for years," but undoubtedly knew for at least six months; *cf. XL Specialty Ins. Co.* v. *Lakian*, 2015 WL 273660, at *5 (S.D.N.Y. Jan. 15, 2015) (Torres, J.) (finding motions to intervene timely on the basis that they were filed prior to the answer and before any discovery had taken place).

In so ruling, Judge Francis erroneously turned the constructive notice standard into one that effectively requires actual knowledge for some, supposedly less sophisticated, intervenors.   But the correct inquiry is whether circumstances were sufficient to put *an objectively reasonable person* on constructive notice. [10]   The standard is not whether circumstances put *the particular would-be intervenors* on constructive notice.   Under Judge Francis's approach, a published opinion or reported decision might provide constructive notice to some individuals, but not others, depending on each individual's "incentive[s] to monitor th[e] case," financial "resources," or "legal expertise."   *Id.*

Judge Francis did not cite any authority in support of his subjective notice standard.   To the contrary, courts in this Circuit frequently have held individual intervenors, including in Title VII cases, to the same objective constructive notice standard applied in *Floyd* and *Mastercard*.   *See, e.g.*, *Hnot*, 2006 WL 3476746, at *1, 4 (individual Title VII intervenor); *Ricci* v. *DeStefano*, 2010 WL 9113871, at *4-5 (D. Conn. May 12, 2010) (same).   The reason is simple, as this case illustrates:  a putative intervenor who is on notice of a litigation that could affect her interests should not be able to stick her head in the sand and ignore ongoing

---

[10]   *See Marshall* v. *Milberg LLP*, 2009 WL 5177975, at *3 (S.D.N.Y. Dec. 23, 2009) (Preska, J.) ("Whether a plaintiff has [] 'inquiry notice' or 'constructive notice' is judged under an objective standard . . . ."); *World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007) (Karas, J.) (holding that constructive notice is present in the fraud context "if there are circumstances sufficient to alert a reasonable person to the probability that he or she has been defrauded") (internal quotation marks omitted); *Fabkom, Inc.* v. *R.W. Smith & Assocs., Inc.*, 1996 WL 531873, at *12 (S.D.N.Y. Sept. 19, 1996) (Mukasey, J.) (holding, in a trade secret case, that "[a] defendant is on constructive notice of a breach when from the information which he has, a reasonable man would infer [a breach of confidence], or if, under the circumstances, a reasonable man would be put on inquiry and an inquiry pursued with reasonable intelligence and diligence would disclose the breach") (internal quotation marks omitted).

developments.  Indeed, the intervenors' professed ignorance is particularly troubling because *Plaintiffs' own counsel had a website that explicitly discussed Judge Sand's ruling.*

In any event, even assuming (incorrectly) that the constructive notice standard is a subjective one, Plaintiffs' intervention motion still should have been denied, because Ms. Gamba and Ms. De Luis are not unsophisticated parties.  To the contrary, Ms. Gamba and Ms. De Luis are seasoned financial professionals, one of whom has an MBA.  They worked in an industry that, by its very nature, requires them to stay alert to issues in the media.  Simply put, the notion that Ms. Gamba and Ms. De Luis lacked the wherewithal to monitor this litigation—especially with the assistance of Plaintiffs' counsel and their website—is baseless.

Judge Francis also erred in failing to consider the gamesmanship and dilatory tactics employed by Plaintiffs' counsel, who waited years before moving to address Judge Sand's July 2012 ruling that only current employees can seek injunctive relief.  Courts have held that when an intervenor is represented by counsel to the named plaintiff in a class proceeding, delay on counsel's part represents an independent factor militating against intervention.  *See, e.g.*, *Harris* v. *Vector Mktg. Corp.*, 2010 WL 3743532, at *3-4 (N.D. Cal. Sept. 17, 2010) ("[T]he diligence of counsel for the proposed intervenors, even before the proposed intervenors learned of the lawsuit, should be taken into consideration because counsel for the proposed intervenors has represented [the named plaintiff] from the inception of this case. . . . [I]t is also fair to take into account the diligence of counsel because counsel has a fiduciary duty to the putative class even prior to class certification."); *Miller* v. *Ghirardelli Chocolate Co.*, 2013 WL 6776191, at *6 n.7 (N.D. Cal. Dec. 20, 2013) (same).

In their declarations submitted July 24, both intervenors declined to say when Plaintiffs' counsel first contacted them.  (*See* Ex. 10 (De Luis Supp. Decl.) ¶ 1; Ex. 11 (Gamba

-19-

Supp. Decl.) ¶ 1.)  When Defendants pointed out this strategic omission, Plaintiffs objected that "Goldman's demand that Intervenor's supplemental declarations 'should identify when class counsel spoke to them about any subject for the first time' is a clear attempt to invade the attorney-client privilege." (Letter from K. Dermody to J. Francis, July 28, 2015, Dkt. No. 409, at 2.)  Defendants responded by seeking depositions of the putative intervenors in order to probe counsel's strategically crafted statements and to determine precisely when the attorney-client relationships were formed.  (Letter from R. Giuffra to J. Francis, Aug. 5, 2015, Dkt. No. 412.) Because an attorney's knowledge is automatically imputed to his client, the intervenors would have received notice of Judge Sand's decision as soon as they entered an attorney-client relationship with Plaintiffs' counsel.[11]  Judge Francis denied Defendants' request, however, on the ground that "[t]he intervenors' declarations are clear with respect to *actual notice*."  (Memo Endorsement, Aug. 7, 2015, Dkt. No. 415, at 3 (emphasis added).)

Judge Francis's post-judgment discovery ruling confirms that he treated only actual knowledge—not constructive or imputed knowledge—as relevant to his inquiry regarding whether intervention here was timely.  In fact, Plaintiffs themselves have confirmed that Judge Francis incorrectly applied an actual notice standard.   In their letter opposing Defendants' request for deposition of the intervenors, Plaintiffs pointed out that "[t]he Court has already held that the applicable standard is *actual knowledge*."  (*See* Letter from K. Dermody to J. Francis, Aug. 5, 2015, Dkt. No. 413, at 1 (emphasis added).)  The parties are thus in agreement that Judge

---

[11]    *See* Restatement (Third) of the Law Governing Lawyers § 28 ("Information imparted to a lawyer during and relating to the representation of a client is attributed to the client for the purpose of determining the client's rights and liabilities in matters in which the lawyer represents the client.").

Francis applied an actual notice standard.[12]  His failure to apply the governing standards for

constructive notice was contrary to settled Second Circuit precedent.

## II.    THE MAGISTRATE JUDGE IGNORED THE PREJUDICE TO EXISTING PARTIES AND OVERSTATED THE PREJUDICE TO INTERVENORS.

### A.    The Magistrate Judge Ignored the Prejudice that Delay Would Cause to Defendants in the Form of Accumulated Damages and Stale Evidence on Individual Claims.

In allowing intervention, Judge Francis also erred in ignoring the degree of

prejudice that intervention would inflict on the existing parties to this lawsuit.  As Judge Francis

recognized, intervention would mean that—after already completing years of discovery—the

parties would have to compile a new record to assess the propriety of the certification of a Rule

23(b)(2) class to seek injunctive and declaratory relief.  Op. at *9 (if the intervenors filed a

separate action, "the parties would engage in precisely the same additional discovery that the

defendants now assert would be necessary if intervention were permitted").  The existing record

does not extend past 2011, and a class could be certified under Rule 23(b)(2) only on the basis of

a current record.  *See, e.g.*, *Aguilar* v. *ICE*, 2012 WL 1344417, at *8-9 (S.D.N.Y. Apr. 16, 2012)

(Forrest, J.) (declining to find commonality for purposes of a Rule 23(b)(2) class because the

---

[12]    Judge Francis treated Ms. Gamba's and Ms. De Luis's declarations as dispositive on the issue of actual notice.  This was entirely unwarranted, particularly given that the intervenors bear the burden on this motion.  *See XL Specialty*, 2015 WL 273660, at *4.  Both declarations conspicuously avoid the key issues.  Neither intervenor states when Plaintiffs' counsel first contacted her.  Furthermore, neither declaration identifies the point in time when the putative intervenors knew that the injunctive relief claims were no longer in the case.  (*See* Ex. 10 (De Luis Supp. Decl.) ¶¶ 1-2; Ex. 11 (Gamba Supp. Decl.) ¶¶ 1-2.)  And Defendants have not been able to put the relevant facts in the record, because Judge Francis denied them the ability to depose Ms. De Luis and Ms. Gamba on these unanswered questions.  (Memo Endorsement, Aug. 7, 2015, Dkt. No. 415, at 3.)

expert statistics were based on five-year-old data); *Hosp. Assoc.* v. *Toia*, 577 F.2d 790, 798 (2d Cir. 1978) ("The [record] to be tested for prospective purposes should be the current, not an outdated, one."). Thus, litigating the intervenors' Rule 23(b)(2) claims would require new factual discovery, revised and updated expert analyses, and substantial additional briefing— particularly in light of Defendants' changed practices. *See supra* pp. 8-9.[13]

Unless this Court promptly reviews Judge Francis's recommendation that no damages class can be certified here, as Defendants have requested, intervention effectively would place those claims—some of which stretch back to 2002—on hold for months, if not years, while the parties develop the required Rule 23(b)(2) record. *See Floyd*, 302 F.R.D. at 98 ("Having prevailed to this extent, plaintiffs face significant prejudice if previously uninterested late-comers are permitted to prolong the legal wrangling and further delay plaintiffs' hard-won relief."). And the delay is likely to be substantial. Document and email production in this case took almost three years. Expert discovery lasted nine months, and fact depositions took over two years. Class certification briefing and argument took five months. Judge Francis issued his R&R nearly five months later. Litigation on this intervention motion so far has already stretched out close to five months. *See Hnot*, 2006 WL 3476746, at *5 (finding prejudice where "a final resolution of the claims pertaining to the 1998-2001 period would likely be delayed for many more months, if not years").

---

[13]     As discussed *supra* p. 8, the existing expert data sets include both current and former employees; current employees alone, however, represent the relevant population for Rule 23(b)(2) purposes. *See Wal-Mart*, 131 S. Ct. at 2560. Only 17 percent of the professionals in the pre-2012 database are still in Associate or Vice-President positions in the relevant Divisions. Ex. 6 (Ginsberg Decl.) ¶ 6, Exs. B-C. Furthermore, the professionals comprising this 17 percent represent only half of the current (b)(2) population. *Id.* ¶ 5, Exs. A, C.

Although Judge Francis indicated that "[t]he damage claims of Ms. Chen-Oster and Ms. Orlich would likely be deferred while certification of a Rule 23(b)(2) class is litigated," he nevertheless held that "the cost to the [D]efendants of delaying a determination of two individual damages claims is trivial." Op. at *9 (emphasis omitted). But that overlooks Defendants' central point: it is not merely the damage claims of the *named Plaintiffs* that could be held in abeyance during the delay caused by intervention, but also the damage claims of the *putative class members*, who number in the thousands. Plaintiffs maintain that those claims are tolled for the duration of class proceedings under *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538, 553-54 (1974). *See* Op. at *10. Thus, if Plaintiffs prevail on their tolling argument, damages would continue to accumulate during this period of delay, and evidence pertaining to individual claims would grow increasingly stale. Despite Defendants' repeated arguments that these effects represent a major source of prejudice (*see* Defs.' Mem. of Law in Opp. to Mot. to Intervene, June 5, 2015, Dkt. No. 392, at 16; Ex. 9 (Tr.) at 24:21-22), Judge Francis did not address them at all.

**B.     The Magistrate Judge Ignored the Prejudice that Delay Would Cause to Putative Class Members.**

Judge Francis also did not account for the prejudice to the putative Rule 23(b)(3) class members themselves. *See In re IPO Secs. Litig.*, 499 F. Supp. 2d 415, 419 (S.D.N.Y. 2007) (Scheindlin, J.) (denying intervention in part because it would prejudice putative class members). The vast majority of those putative class members have no interest in (or standing to seek) injunctive relief. (*See* Ex. 6 (Ginsberg Decl.) ¶ 6 (of the employees included in the damages class as of 2011, only 17 percent remain currently employed in relevant positions and thus eligible to seek injunctive relief).) They thus have no interest in sitting on the sidelines for years while Ms. Gamba and Ms. De Luis litigate their claims for injunctive and declaratory relief.

-23-

Judge Francis attempted to deal with this concern by saying that damages claims were likely to be tolled in the interim, and unnamed Plaintiffs could bring individual actions if this Court accepts his recommendation against certification of a damages class.  Op. at *10. Again, however, that overlooks Defendants' key point:  absent putative class members presumably want prompt resolution of their claims, especially as the evidence they would use to support those claims grows ever staler.  Intervention thus puts putative Rule 23(b)(3) class members to an unnecessary choice:  remain attached to the pending putative class action and suffer significant delay, or forsake the class action by filing individual complaints.  Ms. Gamba and Ms. De Luis could obviate that prejudice to absent putative class members simply by bringing their own action for injunctive and declaratory relief in this Court.

### C. The Magistrate Judge Incorrectly Blamed Defendants for the Prejudice from Plaintiffs' Intervention Motion.

Because Ms. Gamba and Ms. De Luis did not seek to intervene in a timely manner, Defendants can no longer litigate both the Rule 23(b)(2) and (b)(3) claims at the same time.  Briefing, expert analysis, and fact discovery will have to be done twice, rather than only once.  Remarkably, Judge Francis charged that prejudice to *Defendants*, not the intervenors.  In his view, the prejudice was "largely of the [D]efendants' own making," because Defendants treated Judge Sand's *striking of Plaintiffs' injunctive and declaratory claims* as if it removed those claims from the case.  Op. at *10.  According to Judge Francis, "[t]o the extent that the [D]efendants chose to treat the striking of the class allegations as immutable, they cannot now assert prejudice based on their own decision to defer development of evidence related to an injunctive class." *Id.*

Once Judge Sand granted Defendants' motion to strike, however, Plaintiffs' claims for injunctive and declaratory relief were in fact *no longer in the case. See Chen-Oster*,

-24-

877 F. Supp. 2d at 117 (Sand, J.) (holding that a motion to strike "preemptively terminate[s]" the claims at issue). There was no reason whatsoever for Defendants to treat those claims as if they still were pending. Simply put, the prejudice to Defendants flows not from their own litigation choices, but rather from the putative intervenors' extreme and unwarranted delay. Judge Francis's misunderstanding on this basic point skewed his entire prejudice analysis.

### D. The Magistrate Judge Overstated the Prejudice that Intervenors Would Suffer if They Filed Their Own Action.

Finally, Judge Francis held that there was "some danger" of prejudice to the intervenors if they filed their own action, because they might have to expend some "additional resources" to assist a new judge in familiarizing himself with the case. Op. at *10. The Second Circuit and this Court have squarely held, however, that untimely intervenors cannot point to the costs associated with bringing a separate lawsuit as prejudice.[14] And even assuming such costs are relevant, Defendants have erased them by stipulating that discovery in this litigation may be used in the intervenors' new case to the extent relevant, *see id.*, and that the new case may be referred to Judge Francis. (Ex. 9 (Tr.) at 26:19-24.)

Judge Francis also believed that the existence of two simultaneous proceedings would pose the risk of "inconsistent determinations," Op. at *10, but that is simply incorrect. He did not explain why this would occur, nor did he address the fact that this risk was minimal in

---

[14]   *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied."); *Hnot*, 2006 WL 3476746, at *5 ("Though Cronas claims that bringing a separate action would impose unnecessary costs and burdens on her, defendants, and the Court, the Court does not find, in light of all the circumstances, that the alleged costs and burdens outweigh the prejudice that defendants would suffer if the Court were to further delay resolution of the [original claims] pending against them.").

-25-

light of Defendants' stipulation that they would not oppose a referral of the new case to him. Moreover, the intervenors' claims for prospective relief raise separate legal issues than those raised by the current Plaintiffs' damages claims. *See, e.g.*, *Sidari* v. *Orleans Cnty.*, 174 F.R.D. 275, 285 (W.D.N.Y. 1996) (denying intervention because "there is no interdependence between the claims asserted by Sidari, and those asserted by Fowlks. Whether or not Sidari prevails in the instant action has no bearing on Fowlks['] legal rights."). There is no valid reason why the intervenors should not file their own action.

## CONCLUSION

For the foregoing reasons, this Court should reverse Magistrate Judge Francis's order granting the motion to intervene.

Respectfully,

Barbara B. Brown *(admitted pro hac vice)*
Neal D. Mollen *(admitted pro hac vice)*
Carson H. Sullivan *(admitted pro hac vice)*
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC  20005

Robert J. Giuffra, Jr.
Theodore O. Rogers, Jr.
Robin D. Fessel
Suhana S. Han
Jeffrey B. Wall *(admitted pro hac vice)*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

August 17, 2015

-26-