UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER, LISA PARISI, SHANNA
ORLICH, ALLISON GAMBA, and MARY DE LUIS,

Plaintiffs,

-against-

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4 / 12 / 14

10 Civ. 6950 (AT) (JCF)

**MEMORANDUM
OPINION AND ORDER**

ANALISA TORRES, District Judge:

In this employment discrimination case, Plaintiffs, H. Christina Chen-Oster, Lisa Parisi,

Shanna Orlich, Allison Gamba, and Mary De Luis, allege that their former employer, Defendants

Goldman, Sachs & Co. and the Goldman Sachs Group, Inc. (collectively, "Goldman Sachs"),

violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and

the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), by

systematically disfavoring female employees and denying them equal compensation and

advancement opportunities based on their gender. Defendants move to dismiss Gamba's and De

Luis' claims for injunctive and declaratory relief. Plaintiffs move to file a supplemental

complaint. For the reasons stated below, both motions to dismiss are DENIED, and Plaintiffs'

motion to file a supplemental complaint is GRANTED.

## BACKGROUND

I.    Relevant Procedural History

The Court assumes familiarity with facts of the case and recites only briefly the

procedural history relevant to these motions. On September 16, 2010, Plaintiffs Chen-Oster,

Parisi, and Orlich brought this putative class action alleging intentional discrimination, disparate

impact discrimination, retaliation, and pregnancy discrimination under Title VII and the

NYCHRL. ECF No. 5. On April 13, 2015, Plaintiffs Gamba and De Luis moved to intervene, ECF No. 377, which the Honorable James C. Francis granted on August 3, 2015, ECF No. 410. Defendants appealed Magistrate Judge Francis' order and, on June 6, 2016, this Court affirmed the order. ECF No. 450.

Plaintiffs filed a second amended complaint on August 3, 2015, which included allegations regarding Gamba and De Luis. ECF No. 411. On September 28, 2015, Defendants moved to dismiss Gamba's claims for injunctive and declaratory relief. ECF No. 441. By letter dated May 9, 2016, Defendants notified the Court that De Luis no longer worked for Goldman Sachs, ECF No. 446, and subsequently moved to dismiss De Luis' claims for injunctive and declaratory relief, ECF No. 457.

On July 1, 2016, Plaintiffs filed a motion to file a supplement to the second amended complaint pursuant to Federal Rule of Civil Procedure 15(d) to add factual allegations and causes of action related to De Luis' departure from Goldman Sachs. ECF No. 455. Finally, on March 9, 2017, Plaintiffs requested to amend their proposed supplement to include that De Luis received a right to sue letter from the Equal Employment Opportunity Commission. ECF No. 477; *see also* ECF No. 477-1 ("Am. Suppl. Compl."). Defendants oppose the initial motion to file a supplement to the second amended complaint, ECF No. 456, but do not oppose the substitution of the new proposed supplement for the old, ECF No. 478.

II.     Gamba

Gamba worked for Goldman Sachs in New York from 2001 to August 2014. Second Am. Compl. ¶ 16. In 2003, Gamba joined the New York Stock Exchange Equities Department. *Id.* ¶ 125. That year, she was promoted to Vice President. *Id.* Although she was eligible to be promoted to Managing Director in 2005, she was never promoted again. *Id.* ¶ 133.

Gamba claims that Goldman Sachs "evaluated her performance more harshly than it did similarly performing males, paid her less in base compensation and bonuses than it paid similarly situated men, and promoted equally or less qualified men instead of her to positions she was qualified to hold." *Id.* ¶ 126. For instance, she states that in 2007, her manager "indicated that Gamba would be nominated for promotion to Managing Director, but suggested that she consider 'adopting' instead of becoming pregnant." *Id.* ¶ 127. Gamba took maternity leave for part of 2008. *Id.* ¶ 129. That same year, Goldman considered and rejected Gamba for a promotion to Managing Director, promoting a male trader whose "trading performance was not as good as" hers, *id.* ¶ 130, despite the fact that Gamba's revenue from her stock portfolio rose from $1.2 million in 2005 to over $6 million in 2007 and to $9.5 million in 2008, *id.* ¶¶ 127, 129. In August 2014, her employment with Goldman Sachs ended when Goldman Sachs "divested itself of the department in which she worked." *Id.* ¶¶ 16. Among other remedies, Gamba seeks reinstatement to her "rightful position[] at Goldman Sachs." *Id.* ¶ 205(j).

III.  <u>De Luis</u>

De Luis began working at Goldman Sachs in June 2010 as a Senior Analyst in the Investment Management Division. *Id.* ¶¶ 18, 137. She worked first out of Miami, Florida and then in Dallas, Texas, but regularly "travel[ed] to and works from the Goldman Sachs's New York, New York office." *Id.* ¶ 18. In 2012, she was promoted to the position of Associate. *Id.* ¶ 137. In 2014, she was made a Vice President. *Id.* However, De Luis alleges that she has been evaluated unfairly based on her gender, *id.* ¶ 139, and paid less than her male colleagues throughout her employment, *id.* ¶ 140.

In March 2016, De Luis requested a transfer from Goldman Sachs' Dallas office to its Miami office, due to the relocation of her significant other. Am. Suppl. Compl. ¶ 5. Prior to her

participation in the present lawsuit, De Luis "had been assured by Goldman Sachs in March 2012 and September 2014 . . . that relocation to Miami in 2016 would be possible." *Id.* ¶ 6. However, after requesting the transfer, De Luis was informed that she could work in Dallas or New York "or apply and be considered for an inferior position in Miami." *Id.* ¶¶ 5-6. De Luis claims that Goldman Sachs denied her transfer request because "her supervisory function could not be carried out remotely," even though coordination of her team was being done remotely "as many members of the team were located in New York or regional offices." *Id.* ¶ 8. De Luis claims that Goldman Sachs denied her transfer request in retaliation for her role as a plaintiff in this case. *Id.* ¶¶ 9, 10. De Luis resigned on May 2, 2016. *Id.* ¶ 11. The amended supplemental complaint states causes of action for retaliation under Title VII and the NYCHRL. *Id.* ¶¶ 12-21. She seeks reinstatement. *Id.* ¶¶ 16, 21, 22.

## DISCUSSION

I. <u>Legal Principles</u>

Defendants have moved to dismiss Gamba's and De Luis' claims for injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 12(b)(1). Before turning to each motion, the Court addresses certain legal issues raised in both motions.

A. <u>12(b)(1) Motion</u>

In resolving a motion to dismiss for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to

evidence outside the pleadings, such as affidavits." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)).

B.    Standing

A central issue to both motions to dismiss is an opinion issued by the Honorable Leonard B. Sand, dated July 12, 2012. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012), ECF No. 158. Judge Sand held that, under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), a former employee lacks standing to bring claims against her former employer for injunctive and declaratory relief. *See Chen-Oster*, 877 F. Supp. 2d at 121-22. Plaintiffs contend that former employees, such as Gamba or De Luis, may have standing for injunctive and declaratory relief if they seek reinstatement, and ask this Court to reconsider Judge Sand's ruling. The parties agree that this request implicates the law of the case doctrine, which applies when a court "reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

The law of the case doctrine instructs "'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent' and 'compelling' reasons militate otherwise." *Id.* (citation omitted) (first quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); and then quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Reconsideration of a prior decision may be "justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009). The doctrine is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *Id.* However, "the efficiency concerns that underlie the doctrine do not support its application in

cases where the original ruling is clearly erroneous." *Strauch v. Demskie*, 892 F. Supp. 503, 506 (S.D.N.Y. 1995); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1254-55 (2d Cir. 1992) ("[A] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ." (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990))).

With "significant reservations" and "misgivings," Judge Sand held, as a matter of "first impression in this circuit," that *Dukes* serves as a "blanket denial of standing to ex-employees." *Chen-Oster*, 877 F. Supp. 2d at 121-22. Despite his "disagree[ment] with the Supreme Court's reasoning," he concluded that "[t]he Supreme Court's reasoning, simply put, is that ex-employee have no material stake in whether their former employer is or is not enjoined from continuing the allegedly discriminatory employment practices since they are no longer there." *Id.*

At issue in *Dukes*, a gender discrimination class action brought by current and former Wal-Mart employees who sought backpay as well as injunctive and declaratory relief, was the applicability of Rule 23(b)(2) and (b)(3) to plaintiffs' backpay claim. 564 U.S. at 360.[1] The Court held that claims for backpay were improperly certified under Rule 23(b)(2), "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 360. The Court focused on the fact that the claims for monetary relief were individualized, stating that this individual review is "precisely why [Rule 23](b)(3) requires the judge to make findings about predominance and superiority before allowing the class." *Id.* at 363.

---

[1] Rule 23(b)(2) allows certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) allows certification of a class "when the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The *Dukes* plaintiffs argued for the application of the Ninth Circuit's "predominance test," which finds that a Rule 23(b)(2) class is appropriate for backpay claims as long as the money damages claims "do not 'predominate' over [plaintiffs'] requests for injunctive and declaratory relief." *Id.* In rejecting this predominance test, the Supreme Court stated:

> The predominance test would also require the District Court to reevaluate the roster of class members continually. The Ninth Circuit recognized the necessity for this when it concluded that those plaintiffs no longer employed by Wal-Mart lack standing to seek injunctive or declaratory relief against its employment practices. The Court of Appeals' response to that difficulty, however, was not to eliminate *all* former employees from the certified class, but to eliminate only those who had left the company's employ by the date the complaint was filed. That solution has no logical connection to the problem, since those who have left their Wal-Mart jobs *since* the complaint was filed have no more need for prospective relief than those who left beforehand. As a consequence, even though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*," Rule 23(b)(2) (emphasis added), about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court's time. Which indeed it is, since if a backpay action were properly certified for class treatment under *(b)(3)*, the ability to litigate a plaintiff's backpay claim as part of the class would not turn on the irrelevant question whether she is still employed at Wal-Mart. What follows from this, however, is not that some arbitrary limitation on class membership should be imposed but that the backpay claims should not be certified under Rule 23(b)(2) at all.

*Id.* at 364-65.

Judge Sand, interpreting this paragraph, concluded that the Supreme Court created a blanket prohibition of former employees seeking injunctive and declaratory relief under Rule 23(b)(2). *Chen-Oster*, 877 F. Supp. 2d at 121-22.

Judge Sand read *Dukes* too broadly. The Supreme Court did not itself reach the conclusion that the former employees lacked standing—agreeing, instead, with the Ninth Circuit's determination that the former employees, as a group, did not have standing—but wanted to show the ineffective nature of the predominance test. *See Dukes*, 564 U.S. at 364-65.

The Court's conclusion was primarily that Rule 23(b)(2) was incorrectly applied, not that the former employees lacked standing. *See id.*

Although Judge Sand found that "the Supreme Court's analysis of this issue, and its blanket denial of standing to ex-employees, is not dictum," *Chen-Oster*, 877 F. Supp. 2d at 121, other judges in this district have disagreed. The Honorable Jesse M. Furman, examining the same passage in *Dukes*, concluded that "the [Supreme] Court did not need to reach the question of whether a former employee seeking reinstatement would have standing to seek injunctive relief for its point—that some members of the class in *Dukes* lacked such standing—to be valid. . . . [T]he Court's point about class members' standing was not necessary to its conclusion that claims for monetary relief may not generally be certified under Rule 23(b)(2)." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 468 (S.D.N.Y. 2013). *Dukes* did not address the impact of a request for reinstatement on standing: even though reinstatement was pleaded by the plaintiffs in *Dukes*, this question was "not part of the questions on which the Court granted *certiorari*." *Id.* (citing Petition for a Writ of Certiorari, *Dukes*, 564 U.S. 338 (No. 10-277), 2010 WL 3355820, at *1). As "it is not substantive discussion of a question or lack thereof that distinguishes holding from dictum, but rather whether resolution of the question is necessary for the decision of the case," *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011), the Court find that this language in *Dukes* is not controlling precedent here.

Other judges in this district have similarly disagreed with Judge Sand's conclusion. *See, e.g.*, *Robinson v. Blank*, No. 11 Civ. 2849, 2013 U.S. Dist. Lexis 72068, at *17 n.3 (S.D.N.Y. Feb. 22, 2013) ("Despite *Chen-Oster*'s reading of *Dukes* as precluding injunctive relief for any former employees (even those seeking reinstatement), this Court does not agree that *Dukes* reached so far."), *adopted by* 2013 U.S. Dist. Lexis 71471, at *3 (S.D.N.Y. May 20, 2013);

*Kubicek v. Westchester Cty.*, No. 08 Civ. 372, 2013 WL 5423961, at *8 (S.D.N.Y. Sept. 27,

2013) (summarizing *Kassman* in dicta); *see also, e.g., Levin v. Madigan*, 697 F. Supp. 2d 958,

975 (N.D. Ill. 2010) ("If Plaintiff's employment is reinstated, he may indeed be subject to the

same allegedly discriminatory policy that he challenges in this lawsuit. To the extent that

Plaintiff seeks an injunction requiring Defendants to cease engaging in sex or age discrimination,

such relief *would* remedy a harm that Plaintiff is likely to suffer again." (citing *City of Los

Angeles v. Lyons*, 461 U.S. 95, 103 (1983))). Judge Francis has made his disagreement with

Judge Sand's conclusion clear. *Chen-Oster*, 2012 WL 205875, at *8 (S.D.N.Y. Jan. 19, 2012);

*id.*, 2015 WL 1566722, at *15-16 (S.D.N.Y. Mar. 10, 2015); *id.*, 2015 WL 4619663, at *2-4

(S.D.N.Y. Aug. 3, 2015). Moreover, despite the years since *Dukes* and Judge Sand's 2012

opinion, Defendants have not pointed to any other authority in this circuit that has read *Dukes* as

broadly as Judge Sand did.[2]

And as Judge Sand recognized, a former employee's request for reinstatement opens the

door to the possibility that a plaintiff may be injured in the future by the employer's

discriminatory policy or practice. *Chen-Oster*, 877 F. Supp. 2d at 121-22 ("[W]here class

members seek reinstatement, as Plaintiffs do here, it is certainly possible that 'final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"

(quoting Fed. R. Civ. P. 23(b)(2))). Indeed, Judge Sand observed that the rule he adopted has

significant policy ramifications:

---

[2] The Honorable Colleen McMahon's opinion in *Oakley v. Verizon Communications Inc.* is not to the contrary. No. 09 Civ. 9175, 2012 WL 335657 (S.D.N.Y. Feb. 1, 2012). In *Oakley*, the class included former employees and sought to "enjoin policies and practices that the company discontinued several years ago." *Id.* at *15. On that basis, Judge McMahon stated that the "[f]ormer employees lack standing to obtain injunctive relief because they are no longer affected by the challenged policies, and an injunction would do nothing to remedy their past injuries." *Id.* Judge McMahon did not discuss whether the former employees sought reinstatement; but even if the plaintiffs were seeking reinstatement, the former employees would lack standing to seek injunctive relief because they would not be injured by the challenged practice if reinstated.

One need not engage in freewheeling "slippery slope" analyses to foresee some potential consequences of the Court's new rule. Plaintiffs who wish to certify a class under 23(b)(2) will be forced to remain employed, sometimes under very difficult conditions, to ensure standing. Employers who wish to forestall employees from certifying a class under the otherwise defendant-unfriendly Rule 23(b)(2), *see Dukes*, 131 S. Ct. at 2558, will be encouraged to terminate them. Neither outcome is desirable.

*Id.* at 122.

Accordingly, the Court now finds that Judge Sand's determination that *Dukes* categorically foreclosed former employees from seeking injunctive and declaratory relief is clearly erroneous, and that cogent and compelling reasons exist that require this Court to exercise its discretionary power to revisit Judge Sand's ruling. *See Quintieri*, 306 F.3d at 1225. "[C]onsiderations of fairness to the parties, judicial economy, and the societal interest in finality" do not outweigh this Court's interest in correcting the law and preventing manifest injustice. *Carr*, 557 F.3d at 102. The Court, therefore, joins the chorus of opinions in this district that hold that a former employee seeking reinstatement has standing to seek injunctive and declaratory relief.

Standing is generally determined when the complaint is filed. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 175(2000). The parties dispute whether an intervenor's standing is determined at the time of intervention, as Defendants suggest, or whether standing can relate back to the time of filing of the original complaint, as Plaintiffs argue. As the Second Circuit has made clear, an intervenor's standing is determined as of the date the motion to intervene was filed. *See Comer v. Cisnero*, 37 F.3d 775, 801 (2d Cir. 1994) ("[T]he intervenors certainly had standing at the time they filed their motions to intervene."); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) ("[T]he original plaintiff at the time the complaint was filed, and each intervenor at the time of her motion to intervene, was

suffering . . . injury capable of being redressed by declaratory or injunctive relief."); *see also, e.g., Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1339 (11th Cir. 2007) (citing *Comer*, 37 F.3d at 801).

The Court rejects Plaintiffs' argument that the intervenors' standing should be evaluated at the time of the filing of the original complaint, when Gamba and De Luis worked at Goldman Sachs, under the relation back doctrine. Although the relation back doctrine is typically applied in the context of Rule 15, which governs a party's amended pleadings, some courts have interpreted Rule 24 to "provide that an intervenor's claim may relate back to the case's original complaint *for purposes of the statute of limitations.*" *ACORN v. County of Nassau*, 270 F.R.D. 123, 125-26 (E.D.N.Y. 2010) (emphasis added) (citing *New York v. Gutierrez*, No. 08 Civ. 2503, 2008 WL 5000493, at *13 (E.D.N.Y. Nov. 20, 2008)). The relation back doctrine, however, does not apply to standing. *Cf. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111-12 (2d Cir. 2013) (holding that relation back doctrine cannot rescue an intervenor's claim brought outside the statute of repose); *Dupree v. Prudential Ins. Co. of America*, No 99 Civ. 8337, 2007 WL 2263892, at *33 (S.D. Fla. Aug. 10, 2007) ("Standing does not 'relate back' to an earlier complaint: '[t]he only significance of relation back is avoidance of the bar of the statute of limitations.'" (alteration in original) (quoting *Morlan v. Universal Guar. Life Ins. Co*, 298 F.3d 609, 617 (7th Cir. 2002))); 6A Wright, Miller, et al., *Federal Practice & Procedure* § 1496 (3d ed.) ("Rule 15(c) is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations . . . ."). Plaintiffs cite no authority in this circuit where the relation back doctrine has been applied to establish standing, and the Court

declines to do so here. Accordingly, the Court will measure each intervenor's standing from the date of her motion to intervene.

C.  Mootness

"While the standing doctrine evaluates a litigant's personal stake at the onset of a case, 'the mootness doctrine ensures that the litigant's interest in the outcome continues throughout the life of the lawsuit.'" *Comer*, 37 F.3d at 797-98 (citation omitted) (quoting *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)). Whether an "injunctive relief [claim] can continue . . . is a question of mootness, not standing." *Jones v. Goord*, 435 F. Supp. 2d 221, 255 (S.D.N.Y. 2006). "[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.' 'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citation omitted) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)). "[T]he party seeking to have the case dismissed bears the burden of demonstrating mootness and that burden is a heavy one." *Robinson v. Blank*, No. 11 Civ. 2480, 2013 WL 2156040, at *13 (S.D.N.Y. May 20, 2013) (alteration in original) (quoting *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1997)).

D.  Reinstatement

The Second Circuit has long expressed its "overarching preference in employment discrimination cases for reinstatement" as a remedy for Title VII violations. *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 230 (2d Cir. 2006) (citing *NLRB v. Thalbo Corp.*, 171 F.3d 102, 110 (2d Cir. 1999)). "Reinstatement advances the policy goals of make-whole relief and deterrence in a way which money damages cannot." *Id.* (quoting *Squires v. Bonser*, 54 F.3d 168,

172-73 (3d Cir. 1995)).  Congress intended that Title VII "make the victims of unlawful discrimination whole, and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 582 n.15 (1984) (quoting 118 Cong. Rec. 7168 (1972)).  "Mindful of this admonition, courts have ordered the reinstatement of employees in different positions for which they are qualified where their original position was eliminated, or to positions in different geographic locations." *Robinson*, 2013 U.S. Dist. Lexis 71471, at *13.

"Reinstatement, however, may not always be possible." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984).  To determine if reinstatement is appropriate, courts conduct a fact-based assessment of feasibility.  *See Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973, 986 (S.D.N.Y. 1997) (Reinstatement "is an equitable remedy whose appropriateness depends upon the discretion of the court in the light of the facts of each individual case." (quoting *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F. Supp. 919, 926-27 (S.D.N.Y. 1976); *see also Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp. 2d 555, 570 (S.D.N.Y. 2008) ("[R]einstatement may be denied where the plaintiff's employment term would have already ended by the time of judgment, where reinstatement would displace an innocent third party, or where the[] employer-employee relationship may have been irreparably damaged." (internal quotation marks and citations omitted)).

Defendants argue that allegations of unlawful discharge are required for a plaintiff to be eligible for reinstatement.  The Court cannot identify any such requirement.  Reinstatement is, of course, most commonly employed to remedy unlawful discharge.  However, courts in this circuit

have granted reinstatement in a variety of other circumstances. *See e.g.*, *Muller v. Costello*, 187 F.3d 298, 315 (2d Cir. 1999) (finding that "reinstatement and back pay may be ordered to remedy unlawful retaliation"); *Carrero v. N.Y.C Hous. Auth.*, 890 F.2d 569, 579 (2d Cir. 1987) (affirming district court's award of reinstatement after plaintiff was wrongfully demoted); *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2003 WL 22271223, at *13 (S.D.N.Y. Sept. 30, 2003) (awarding reinstatement to plaintiff who had been transferred to a less desirable position but retained the same title and salary); *Shea v. Icelandair*, 925 F. Supp. 1014, 1033-34 (S.D.N.Y. 1996) (ordering reinstatement following unlawful demotion, even where plaintiff voluntarily resigned thereafter); *Nobler v. Beth Israel Med. Ctr.*, 715 F. Supp. 570, 574 (S.D.N.Y. 1989) (finding front pay appropriate to remedy discrimination claim only because reinstatement was impossible as unique position had been filled). Defendants repeatedly cite *McPartland v. Am. Broadcasting Companies, Inc.* for the proposition that "[r]einstatement is appropriate, however, only upon a finding that the plaintiff was unlawfully or retaliatorily discharged." No. 83 Civ. 0471, 1987 WL 14907, at *1 (S.D.N.Y. July 21, 1987). However, in light of the Second Circuit's decisions in *Muller*, which allowed reinstatement based on a retaliation cause of action where the plaintiff's "retaliation claim was not limited to his discharge but could include any adverse actions throughout his employment", 187 F.3d at 315, and *Carrero*, which affirmed an award of reinstatement following discriminatory demotion, 890 F.2d at 579, *McPartland* clearly can no longer be considered good law.[3]

\*       \*       \*

With these legal principles in mind, the Court now turns to the parties' motions.

---

[3] *McPartland* cites only out-of-district case law for this proposition and, indeed, this *McPartland* opinion does not appear to have ever been cited by any court since being issued nearly thirty years ago.

II.   De Luis

A.   Defendants' Motion to Dismiss

Defendants have moved to dismiss De Luis' claims for injunctive and declaratory relief. De Luis intervened in April 2015, ECF No. 377, and her last day of employment at Goldman Sachs was May 13, 2016, ECF No. 446. As a current employee at the time of her intervention, De Luis had standing to seek injunctive and declaratory relief. *See Comer*, 37 F.3d at 801. Defendants contend that De Luis' claim became moot when she resigned from her position at Goldman Sachs. Defendants are incorrect.

First, in the second amended complaint, De Luis plausibly pleaded unlawful discrimination sufficient to support a request for reinstatement. To prove that De Luis' claim is moot, Defendants must satisfy a "heavy" burden, which they have not, to show that it would be "impossible" to grant De Luis reinstatement. *Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2014 WL 3298884, at *10 (S.D.N.Y. July 8, 2014) ("[I]n order to demonstrate that [plaintiffs'] claims for injunctive relief are moot, Defendant must show, . . . that at the time of class certification, it would be 'impossible' for [plaintiffs] to be seeking reinstatement . . . [or] to be eligible for rehire."). Although De Luis was employed by Goldman Sachs at the time the second amended complaint was filed, De Luis alleged that she was consistently denied equal pay and fair performance evaluations, Second Am. Compl. ¶ 139, and the complaint states that Plaintiffs, including De Luis, seek an "order restoring Plaintiffs and Class Members to their rightful positions at Goldman Sachs," *id.* ¶ 205(j). A former employee may seek reinstatement—and, therefore, also have standing to seek declaratory and injunctive relief—even after voluntarily resigning. *See Shea*, 925 F. Supp. at 1018-19, 1033-34. On the basis of the second amended

complaint, the Court cannot find that it is "impossible" that De Luis could be entitled to reinstatement, and her claims are, therefore, not moot.

Second, De Luis' proposed supplemental complaint, which addresses her departure from Goldman Sachs, also supports a potential remedy of reinstatement. De Luis states that she was "assured" that relocation to Miami would be possible in both March 2012 and September 2014, prior to her participation in the lawsuit. Am. Suppl. Compl. ¶ 6. De Luis claims that "[c]oordination of [her] team . . . was already being done remotely, as many members of the team were located in New York or regional offices," *id.* ¶ 8, and that "Goldman Sachs's reason for denying [her] transfer is pretext for its retaliatory conduct," *id.* ¶ 9. Thus, De Luis resigned from Goldman Sachs "due to the consistent and systematic discrimination she had suffered over her nearly six years at Goldman Sachs, and faced with the choice of being separated from her significant other or sidelining her own career." *Id.* ¶ 11. On that basis, De Luis seeks reinstatement to her rightful position at Goldman Sachs, *id.* ¶¶ 16, 21, 22, for which she may be entitled. Therefore, if the Court grants Plaintiffs' motion to file a supplemental complaint, then De Luis would have an additional basis to seek reinstatement. The Court now turns to Plaintiffs' motion.

B.     Plaintiffs' Motion to Supplement

Federal Rule of Civil Procedure 15(d) "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A district court may grant a motion to file a supplemental pleading "in the exercise of its discretion, upon reasonable notice and upon such terms as may be just." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). "Absent undue delay, bad faith, dilatory tactics, and undue prejudice to the party to be served with the proposed pleading, or

futility, the motion should be freely granted." *Id.* The claims in the proposed supplemental pleading arose after Plaintiffs filed their second amended complaint, and Plaintiffs have not engaged in undue delay, bad faith, or dilatory tactics. Because discovery has not yet taken place on De Luis' claims, and because Defendants address the proposed supplemental pleading in their motion to dismiss, the proposed supplemental pleading will not cause undue prejudice. *See Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). In opposition, Defendants contend that the supplemental pleading is futile. A supplemental pleading is futile when the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d. Cir. 2008).

Defendants first argue that De Luis has failed to state a claim for retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) participation in a protected activity, (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). De Luis has met the first and second elements. *See* Am. Suppl. Compl. ¶¶ 4-6, 8-11. Defendants argue that De Luis' retaliation claim cannot satisfy the second two elements.

On what constitutes an adverse employment action, the Second Circuit has explained:

> The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: "[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment."

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (alterations in original) (citation omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," and can include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (alteration in original) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). De Luis satisfies this standard. After being "assured" that her transfer to Miami—where, indeed, she was hired initially—was possible, she was instead informed only that she would be "considered for an inferior position" there. Am. Suppl. Compl. ¶¶ 1, 6. Drawing all inferences in her favor, De Luis would suffer, at the least, a "less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" in this inferior position. *Chung*, 605 F. App'x at 22. Accordingly, De Luis has plausibly alleged an adverse employment action.

As to causation, on a motion to dismiss, a plaintiff need only "suggest[] a plausible causal connection between two events." *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011). It is true that the Supreme Court has ruled that "temporal proximity cannot support an inference of causal connection unless the alleged retaliatory action and the protected activity were 'very close' in time." *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). However, unlike the complaint in *Perry*, De Luis pleads additional facts to support an inference of a causal connection, and need not rely solely on the temporal proximity: she pleads that other employees have been granted transfers or flexible work arrangements, that she received multiple assurances over multiple years that she would be allowed to transfer back to Miami, and that Goldman Sachs' purported reason for denying the request is undermined by the fact that other team members worked remotely. *Compare* Am. Suppl. Compl. ¶¶ 6-9, *with* Complaint, *Perry*,

10 Civ. 6337 (W.D.N.Y. June 22, 2010), ECF No. 1, ¶¶ 27. 29. Accordingly, De Luis has adequately pleaded retaliation under Title VII.

Finally, Defendants contend that De Luis cannot state a claim for retaliation under the NYCHRL because she neither works in New York City nor alleges that the discriminatory conduct impacted her in New York City. *See Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (2010). The "impact" requirement "does not exclude all nonresidents from its protection; rather, it expands those protections to nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection." *Id.* at 290. "Under the NYCHRL the impact of the employment action must be felt *by the plaintiff* in NYC." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (NYCHRL claim properly dismissed where plaintiff worked, was supervised, and was terminated outside New York City and did not allege that she ever went to New York City for work). To succeed on a motion to dismiss, a defendant must show "that there is no possibility that there was an impact in New York." *Chin v. CH2M Hill Companies, Ltd.*, No. 12 Civ. 4010, 2012 WL 4473293, at *3 (S.D.N.Y. Sept. 28, 2012). They have not. De Luis pleaded that she "regularly travels to and works from the Goldman Sachs's New York, New York office," serves clients in New York, and that she had at least one meeting to discuss her career advancement at Goldman Sachs while in the New York office. Second Am. Compl. ¶¶ 138, 143. Such facts are sufficient, on a motion to dismiss, to plausibly suggest that she felt Goldman Sachs' alleged retaliation in New York. *See, e.g., Regan v. Benchmark Co. LLC*, No. 11 Civ. 451, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012) (denying motion to dismiss where plaintiff worked out of the New York office for part of her employment, "service[d] New York City-based clientele and remained under the management and supervision of [defendants'] New York City office"); *see also Anderson v.*

*HotelsAB, LLC*, No. 15 Civ. 712, 2015 WL 5008771, at *3 (S.D.N.Y. Aug. 24, 2015) (denying motion to dismiss "where Plaintiff's employment responsibilities would have brought her within the boundaries of New York City"). Because it is plausible that De Luis felt Goldman Sachs' alleged retaliation, at least in part, in New York, her NYCHRL retaliation claim is not futile.

*    *    *

For the reasons stated above, Plaintiffs' motion to file a supplemental complaint, as amended, is GRANTED, and Defendants' motion to dismiss De Luis' claims for injunctive and declaratory relief is DENIED.

III.    Gamba

Defendants, relying on Judge Sand's opinion, move to dismiss Gamba's claims for injunctive and declaratory relief on the ground that Gamba does not have standing to bring a claim for injunctive and declaratory relief as a former employee. Gamba was employed at Goldman Sachs until August 2014, Second Am. Compl. ¶ 16, and her motion to intervene was filed in April 2015, ECF No. 377. Because Gamba was no longer employed by Goldman Sachs at the time her motion to intervene was filed, the Court turns to whether Gamba had standing under the reinstatement exception described above. *See Kassman*, 925 F. Supp. 2d at 466.

Defendants argue that reinstatement is not feasible because Gamba's division, where she currently works, is no longer a part of Goldman Sachs. However, Gamba seeks reinstatement to her "rightful position[]" at Goldman Sachs. Second Am. Compl. ¶ 205(j). Gamba claims that Goldman Sachs' discriminatory policies included denying women opportunities to lateral into other areas of the firm, *id.* ¶ 56, disfavoring women in the distribution of business opportunities, *id.* ¶¶ 156, 172, and providing women with less training and mentorship, *id.* ¶ 59. It is "the responsibility of a court that finds a [Title VII] violation . . . to fashion equitable relief to make

the claimant whole." *Reiter*, 457 F.3d at 230 (first alteration in original) (quoting *Thalbo Corp.*, 171 F.3d at 110). "A court can grant reinstatement where a comparable job exists even if it bears a different title." *Shea*, 925 F. Supp. at 1030. As reinstatement "is an equitable remedy whose appropriateness depends upon the discretion of the court in the light of the facts of each individual case," *Greenbaum*, 979 F. Supp. at 986 (quoting *Kallir*, 420 F. Supp. at 926-27), and drawing all inferences in her favor, it is premature to foreclose the possibility that Gamba may be entitled to reinstatement at Goldman Sachs. Similarly, the Court cannot find that reinstatement is "impossible," and thus cannot find Gamba's claims moot. *See Kassman*, 2014 WL 3298884, at *10.

Accordingly, Defendants' motion to dismiss Gamba's claims for injunctive and declaratory relief is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion seeking to file a supplemental complaint is GRANTED, and Defendants' motions to dismiss Gamba's and De Luis' injunctive and declaratory relief are DENIED.

By **April 26, 2017**, the parties shall jointly write to the Court with a proposal on how to proceed regarding Judge Francis' memorandum and order on the parties' *Daubert* motions, and regarding Judge Francis' report and recommendation on Plaintiffs' motion for class certification, both dated March 10, 2015. ECF Nos. 363, 364.

The Clerk of Court is directed to terminate the motions at ECF Nos. 441 and 457.

SO ORDERED.

Dated: April 12, 2017
New York, New York

_____
ANALISA TORRES
United States District Judge