**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
t 415.956.1000
f 415.956.1008

December 12, 2018

Kelly M. Dermody
Partner
kdermody@lchb.com

<u>**VIA CM/ECF**</u>

The Honorable Robert W. Lehrburger
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, NY 10017

  RE: *Chen-Oster, et al. v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL)

Dear Judge Lehrburger:

  On behalf of Plaintiffs, we respectfully write to request a pre-motion conference regarding a discovery dispute.[1]  Specifically, with respect to the employee data already produced by Goldman, Plaintiffs seek supplemental production of one field—the "employee name" field—for male employees in the data.  Goldman previously produced the names of women in the data, but refuses to do so for male employees in the data.  Goldman argues that male names are irrelevant and that disclosure would constitute a violation of privacy.  *See* Ex. A (Goldman's Responses and Objections to Plaintiffs' Eleventh Set of Requests for Production of Documents) at 5-6.[2]  To meet their burden of proof at trial, Plaintiffs will be required to compare the experiences of female witnesses to the experiences of comparable male employees—including through information in the data.  Without access to the male employees' names, Plaintiffs cannot do that.  Goldman's position is meritless and should be rejected.

  *First*, Plaintiffs have broad discovery rights that unquestionably cover the requested information.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."); *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.").  Indeed, "courts typically apply more 'liberal civil discovery rules' in employment discrimination cases, giving plaintiffs 'broad access to employers' records in an effort to

---

[1] The parties met and conferred telephonically on December 4, 2018, and were unable to resolve the dispute.  If the Court would like to address this issue at the December 20, 2018 status conference, Plaintiffs will be prepared to do so.  *See* ECF No. 640.

[2] Goldman also objects that the terms "databases" and "reports" are vague and ambiguous.  Ex. A at 5.  Following the parties' meet and confer, there does not actually appear to be any confusion about which data is at issue in Plaintiffs' request.

The Honorable Robert W. Lehrburger
December 12, 2018
Page 2

document their claims.'" *Id*. at 562 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)); *see also* Fed. R. Civ. P. 26 advisory committee notes (1983 and 2015) ("[M]any cases in public policy spheres, such as employment practices . . . may have importance far beyond the monetary amount involved."). Here, the requested discovery is not only relevant but vital to Plaintiffs' case—without male names, Plaintiffs cannot match the data to the discovery produced on male comparators or witnesses (which Goldman does not challenge as being relevant), understand the employment circumstances of these male comparators or witnesses, determine which witnesses (male or female) to call at trial, or effectively cross-examine potential Goldman witnesses.

*Second*, the information Plaintiffs seek is readily available to Goldman, given that Goldman has already produced data for men in the relevant databases (without names) and provided names for all women in the relevant databases.[3] Goldman also offered to "meet and confer with Plaintiffs concerning . . . targeted requests for specific, individual names," which demonstrates that Goldman has ready access to the information. Ex. A at 5. This meet and confer process would require substantially more back-and-forth and burden than a single production of names and would inevitably leave large gaps in the production. It is therefore clear that Goldman's concern is not with the burden of producing this relevant information, but rather with controlling (and limiting) Plaintiffs' access to it. Goldman's position creates informational asymmetry that runs counter to the federal rules. *See* Fed. R. Civ. P. 26(b)(1) advisory committee note (2015) (explaining that the plaintiff often "may have very little discoverable information" but the "other party may have vast amounts of information").

*Third*, Goldman's proposal that Plaintiffs may request from Goldman the names of specific male employees (presumably by reference to employee ID), is a blatant attempt to access Plaintiffs' attorneys' protected work product. The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (citing Fed. R. Civ. P. 26(b)(3)); *see also* Fed. R. Civ. P. 26(b)(3)(B) (stating that courts "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"). The work product doctrine extends to counsel's deliberations about which witnesses to call at trial. *Cf. In re Veeco Instruments, Inc. Sec. Litig.*, No. 05MD1695 CMGAY, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) ("[I]nformation [that] would demonstrate which witnesses that Lead Plaintiff deems important . . . is protected from disclosure by the work-product privilege.").

---

[3] On September 5, 2018, Goldman produced a Class list including both the full name of each Class member and the Class member's employee ID, which enables Plaintiffs to locate each Class member in the relevant databases. That is the same information Plaintiffs now seek for male employees who worked in Class positions (*i.e.*, Associate or VP) and Class divisions (*i.e.*, Investment Banking, Investment Management, or Securities) during the Class liability period.

The Honorable Robert W. Lehrburger
December 12, 2018
Page 3

    Moreover, Goldman's proposed process is unworkable in practice. Notably, when Plaintiffs recently requested the employee IDs that correspond to a discrete list of male employees, Goldman refused to produce the information until Plaintiffs provided specific justifications for each employee that Goldman deemed "acceptable." Even after the parties met and conferred, however, Goldman refused to produce the employee IDs associated with six of these men. Applying such a "request and justification" process to every male employee in the relevant databases would require Plaintiffs to contact Goldman every time they evaluate a witness for trial, meet and confer with Goldman about the relevance of that potential trial witness, wait for Goldman to determine whether Plaintiffs' rationale is acceptable to Goldman, and then either wait again to get the requested information or raise any objection with the Court. Beyond the severe invasion of Plaintiffs' attorneys' work product, this process would also add cost and inefficiency to Plaintiffs' merits discovery efforts, undermine Plaintiffs' trial preparation, and burden the Court, all while there is no legitimate reason Goldman cannot provide this information in a single production.

    *Fourth*, Goldman's concerns about employee privacy are completely mitigated by the Protective Order and Confidentiality Agreement ("Protective Order") governing this matter. ECF No. 51. The databases at issue are already designated "Attorneys' Eyes Only" pursuant to the Protective Order, which means Plaintiffs' counsel cannot disclose the data to anyone—including Plaintiffs—absent written consent by Goldman. *Id.* at 4. This protection eliminates Goldman's privacy objection. *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 566 (S.D.N.Y. 2013) ("The privacy concerns raised by Goldman Sachs are best addressed by the Protective Order and Confidentiality Agreement already guiding discovery in this case, which clearly anticipated the disclosure of confidential employee information."); *S.E.C. v. Galleon Mgmt., LP*, 274 F.R.D. 120, 124 (S.D.N.Y. 2011) ("The weight of [privacy] interests is diminished considerably . . . by the fact that all discovery in this case is subject to [a] Protective Order."); *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (ordering, in gender discrimination class action, entry of a protective order to address employer's privacy interest in personnel files).

    Accordingly, the Court should order Goldman to produce the requested name data for the male employees who worked in Class positions (*i.e.*, Associate or VP) in the Class divisions (*i.e.*, Investment Banking, Investment Management, or Securities) during the Class liability period and appear in the relevant databases. We appreciate the Court's attention to this matter.

Respectfully submitted,

Kelly M. Dermody

Adam Klein

cc: all counsel (via ECF)
1673743.3