## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

H. CRISTINA CHEN-OSTER; SHANNA     :
ORLICH; ALLISON GAMBA; AND MARY DE  :
LUIS,     :
     :
                      Plaintiffs,  :
     :
v.     :  10 Civ. 6950 (AT) (RWL)
     :
GOLDMAN, SACHS & CO. and THE GOLDMAN :
SACHS GROUP, INC.,     :
     :
             Defendants.  :
     :
     :
     :

------------------------------------------------------------ x

## JOINT STATUS REPORT

The parties submit this "joint status report" pursuant to the Court's October 24, 2018 (ECF No. 630) and December 3, 2018 (ECF No. 640) scheduling orders in advance of the December 20, 2018 status conference.

**I.        CLASS NOTICE**

On November 30, 2018, class notice issued, and the opt-out period will expire on January 14, 2019.

**II.        DOCUMENT & INFORMATION PRODUCTION**

**A.        Plaintiffs' Position**

Plaintiffs have served three sets of merits discovery requests and asked that Goldman supplement its document productions responsive to certain of Plaintiffs' pre-certification discovery requests.  Starting in November 2018, the parties met and conferred telephonically almost every week about Plaintiffs' requests and exchanged several letters.

Despite these conferences and letters, Goldman has not produced any additional document discovery (with the exception of certain arbitration and severance agreements, organizational charts, and affirmative action documents, much of which was first produced *today*)[1] since the parties' last status report on September 20, 2018 (ECF No. 624).  Since the parties' first meet and confer on November 7, 2018, Plaintiffs have raised at least eight separate disputes as to Goldman's objections and responses to Plaintiffs' information requests.  In addition to the matters that Plaintiffs have already brought to the Court's attention for resolution, these include disputes over Plaintiffs' requests for information regarding demand letters brought against Goldman, severance agreements relevant to the individuals who were subjects of complaints, disciplinary files of relevant employees, and information regarding managers with negative comments or low scores on diversity questions in the 360 review.

While the parties have been working in good faith to resolve these disputes, Plaintiffs are concerned with the growing delay.  Accordingly, to keep the parties on track for the June 21, 2019 merits discovery deadline, and avoid a rush of disputes in June, Plaintiffs propose that by January 10, 2019, the parties complete their meet and conferring over these pending issues and, to the extent any disputes remain after this process, Plaintiffs will submit a letter requesting the Court's intervention by January 17, 2019.

Instead, Goldman raises overblown and generic concerns about the scope of discovery Plaintiffs seek, which are not ripe for the Court to determine because the parties are not at impasse.  Perplexingly, Goldman also retreads areas where the parties *reached agreement* in the meet and confer process, such as which of Plaintiffs' pre-certification requests Goldman

---

[1]     These productions largely relate to procedural arguments that Goldman may seek to make, not the merits discovery that Plaintiffs propounded.

will supplement.  Respectfully, the Court should ignore Goldman's attempt to raise issues where the parties are still working in good faith and have not reached impasse.

### B.      Defendant's Position

Since Judge Torres' March 30, 2018 class certification decision, Plaintiffs have requested a massive volume of discovery.  Specifically, Plaintiffs have served three sets of document requests covering 17 topics, many of which seek individualized information about hundreds of current and former Goldman Sachs employees listed in four accompanying tables.  For example, Plaintiffs seek individual complaints made by persons outside of the three Divisions at issue in this case and records of disciplinary actions against almost 100 individuals, none of which is relevant to Plaintiffs' operative claims.  In addition, although Defendants have already produced over 270,000 pages of documents in this action, Plaintiffs have demanded that Defendants "update" their responses to eight sets of prior documents requests covering over 100 topics.  Many of these requests also seek highly individualized information, such as individual 360 reviews that contain low scores or negative comments on diversity questions.  Defendants have already produced more than 7,596 pages of responsive documents since this Court's October 24, 2018 scheduling Order (ECF No. 630), including 5,868 pages of arbitration agreements, separation agreements and releases, 1,580 pages of affirmative action plan documents and 148 pages of organizational charts.

Defendants have been conferring with Plaintiffs on a weekly basis to attempt to arrive at an agreement on a scope of discovery that can be practically accomplished within the existing fact discovery period, which currently ends on June 21, 2019.  Plaintiffs initially represented to this Court that "this case can be trial ready on or after June 2019" (ECF No. 625 at 3), with fact discovery ending well before then.  Plaintiffs then realized the impossibility of their position, and

instead asked this Court for an "eight-month merits discovery period" ending on June 21, 2019—far shorter than had been needed at the class certification stage—representing to this Court that the "upcoming discovery process" would "efficient and targeted." (ECF No. 629 at 2, 3 n.7.) This Court adopted a "merits fact discovery" period along the lines of what Plaintiffs requested, which it limited to "generalized proof." (ECF No. 630 at 2.) Notwithstanding their prior representations and this Court's Order, Plaintiffs served or demanded that Defendants "update" over 100 broad and burdensome requests like those discussed above. Defendants continue to work with Plaintiffs to try to reach an agreement on the scope of Plaintiffs' document requests and to avoid burdening the Court with discovery disputes. For example, Plaintiffs initially requested documents evidencing discipline or complaints about hundreds of Goldman Sachs current and former employees for any reason at all, including disciplinary actions for regulatory issues unrelated to gender. After discussion, Plaintiffs agreed to limit those requests to gender-related complaints. Defendants also prevailed upon Plaintiffs to withdraw several of their demands to "update" prior discovery, but Plaintiffs have nonetheless refused to withdraw their requests for internal complaints.[2]

## III.        ELECTRONICALLY STORED INFORMATION

### A.    Plaintiffs' Position

Plaintiffs are also concerned at the slow speed of ESI negotiations to date.

Specifically, on November 13, 2018, Plaintiffs proposed a set of custodians and a comprehensive search protocol. The parties agreed to discuss custodians and search protocol in parallel.

---

[2]    Plaintiffs' proposal to impose an arbitrary cutoff date for the meet-and-confer process will not result in a shorter discovery process. For example, as discussed above, Plaintiffs eventually agreed to narrow the scope of several of their overbroad requests, which enabled the parties and the Court to avoid motion practice. There is no basis to think there will be a "rush of disputes in June" given the weekly meet and confers and Court conferences already ordered.

In response to Plaintiffs' custodian proposal, Goldman agreed to produce, on a rolling basis, the names and dates-in-position for custodial roles that the parties agreed to for pre-certification ESI discovery.  Goldman also agreed to respond to the substance of Plaintiffs' custodian proposal, including identifying the custodians whom it does not plan to challenge, and those to whom it objects, and identifying their dates in positions, as relevant.

On Sunday, December 16, 2018, Goldman provided an incomplete response that did not provide sufficient information for Plaintiffs to evaluate the basis or extent of Goldman's objections to custodians, or to propose areas of further compromise.  As initial review shows that of Plaintiffs' initial 201-custodian proposal,[3] Goldman objected to just 22 proposed custodians by name, incorporated 34 of Plaintiffs' proposed custodians into a counter-proposal of 41 individuals, and provided no information about 145 proposed custodians.

Thus, to keep the parties on track for the June 21, 2019 merits discovery deadline, and ensure Plaintiffs are provided with the information they require to move the process forward, Plaintiffs propose that the Court set the following interim deadlines for custodial discovery:

i.   No later than December 27, 2019, Goldman will provide: (1) all updated names and dates-in-position for the pre-certification custodial roles; and (2) for all proposed custodians to whom it objects, information sufficient to support its objections, including as to relevance and burden (if any).

ii.  No later than January 10, 2019, the parties will meet and confer regarding any disputes or counter-proposals regarding custodians.

---

[3]   As Plaintiffs explained, this proposal was necessarily larger than what the parties would ultimately agree to because of the information asymmetries present when a plaintiff seeks information from a defendant.  *See* Fed. R. Civ P. 26(b)(1) advisory committee note (2015) (explaining that the plaintiff often "may have very little discoverable information" but the "other party may have vast amounts of information").  Further, Goldman previously agreed to 83 custodians as reasonable for pre-certification discovery; Plaintiffs' custodians proposal for merits discovery is a thus a reasonable starting point and consistent with prior negotiations.

To the extent any disputes remain, Plaintiffs may submit a letter no later than January 17, 2019, requesting the Court's intervention.

Below, rather than respond to Plaintiffs' request regarding process and timing (set forth above), Goldman argues about the substance of Plaintiffs' custodian proposal. However, the question of which custodians should be selected, or the merits of specific custodians, is not ripe for the Court to decide. The parties are in the thick of the meet and confer process on those questions, given that Plaintiffs only received Goldman's custodian proposal yesterday (on Sunday). Plaintiffs are digesting it and will provide a response soon. Plaintiffs also continue to await other information to allow them to narrow and tweak their custodian proposal (as described above).[4] The interim deadlines proposed by Plaintiffs will ensure that this process proceeds in an orderly and efficient manner.

## B.    Defendants' Position

Defendants have been actively trying to work with Plaintiffs on identification and production of a proportionate and reasonable scope of electronically stored information ("ESI"). Plaintiffs are wrong in claiming that Defendants have been dragging their feet. In fact, Plaintiffs have not yet even identified the specific search terms that they propose. Despite representing to this Court that they would work with Defendants to narrow the scope of their proposed document custodians (*see* ECF No. 629 at 2 n.5), on November 13, 2018, Plaintiffs proposed that Defendants search the emails of more than 200 custodians, such as an employee who testified purely about database configuration, but with no explanation of why they considered those individuals relevant. On November 20, after the parties met and conferred about this issue,

---

[4]    Plaintiffs are continuing to work on a search term proposal, but have focused to date on the custodian discussion because it may, in part, determine search terms.

Plaintiffs provided categories purporting to explain the rationale behind their list of more than 200 proposed custodians.  Defendants immediately reviewed these many proposed custodians on an individual-by-individual basis, and learned that many simply have nothing to do with Plaintiffs' claims.  For example, Plaintiffs' list includes multiple custodians who are within the Merchant Banking Division, which is no longer part of this case.  Many proposed custodians ceased employment years ago, well before the cutoff date for prior discovery and thus to the extent Plaintiffs thought they had anything to add, they had the chance to seek discovery about them then.  Just as they were not relevant to prior discovery, they have not become relevant now even later in time.   On December 16, 2018, Defendants provided a detailed written counterproposal to Plaintiffs providing the specific information Plaintiffs requested regarding individuals in various roles at Goldman Sachs, and agreeing to search the emails of 41 proposed custodians, provided that the parties can agree on reasonable search terms.[5]  On November 13, 2018, Plaintiffs provided what they termed a "broad sketch of a search process proposal," proposing technology-assisted reviewed based on "search terms samples to seed" or "search term hit reporting," but still have not yet provided any details or proposed search terms.

One open issue that affects the scope of ESI is the scope of discovery as to supposed "boy's club" claims regarding Goldman Sachs' culture—which encompasses many of Plaintiffs' document requests, such as requests for internal complaints, and many prior search

---

[5]      Plaintiffs offer contradictory positions as to document custodians.  They claim that any dispute as to document custodians is not yet ripe for the Court to decide because the parties are conferring, yet at the same time they criticize Defendants' detailed proposal—which they concede they have not yet fully reviewed—as "incomplete."  Plaintiffs also seek to impose artificial cutoffs to the discovery process, while claiming that "[t]he parties are in the thick of the meet and confer process on those questions."  In additional, the "interim deadlines proposed by Plaintiffs" for the first time in this report are not reasonable, and include a date two days after Christmas.

terms (which Defendants presume Plaintiffs will try to resurrect), such as so-called "bad words"—which, as described below, is currently the subject of pre-motion conference briefing before the Court.  The Court's resolution of this issue will also affect the scope of absent class member discovery.   Plaintiffs represented to this Court that they "can't imagine any individualized issues at the phase one trial other than if the plaintiffs are testifying" (Oct. 22, 2018 Hr'g at 53:18–54:4), yet they now seek substantial discovery into individual internal complaints.  Such "individualized inquiries into each incident" with "overwhelm the common issues" on which Judge Torres certified a class, and will require decertification.  (ECF No. 578 at 47.)

IV.        **PENDING DISCOVERY-RELATED MOTIONS**

On December 10, 2018, Plaintiffs filed a pre-motion letter requesting a conference regarding the discoverability of documents relating to alleged misconduct, such as gender discrimination or harassment that did not include a direct reference to pay, promotions, or evaluations.  (*See* ECF No. 641.)  On December 13, 2018, Defendants filed their response.  (ECF No. 643.)  The parties will be prepared to discuss Plaintiffs' pre-motion letter at the December 20, 2018 status conference.

On December 12, 2018, Plaintiffs filed a pre-motion letter requesting a conference concerning the scope of discovery concerning the specific identification of non-class member employee names in performance and compensation data previously produced after the parties reached impasse on the issue.  (ECF No. 642.)  By letter dated December 15, 2018, Defendants responded, agreeing to produce this data provided that Plaintiffs agree to provide advance written notice to Defendants prior to seeking to disclose this information in any public court filing or during any trial of this action, so that Defendants have an opportunity to object to

such disclosure or to seek measures to protect the substantial privacy interests of affected employees, such as removing their names from this data before its public disclosure.  (ECF No. 645 at 1.)

Plaintiffs are internally conferring and will provide Goldman with a response before the status conference.

## V.        SUBSEQUENT STATUS CONFERENCES

In its October 24, 2018 Order, the Court directed the parties to "coordinate with each other and this Court's Deputy to set dates for a status conference to be held approximately every 2 months."  (ECF No. 630 at 3.)  On December 3, 2018, the parties scheduled the December 20, 2018 status conference with the Court's Deputy and provided the Court's Deputy the following proposed dates for subsequent status conferences:  February 25, 2019; April 25, 2019; June 20, 2019; August 13, 2019; and October 16, 2019.

## IV.       PLAINTIFFS' REQUEST FOR WEEKLY STATUS LETTERS TO THE COURT AND DEFENDANTS' REQUEST FOR EXCHANGE OF PRELIMINARY TRIAL PLAN

### A.    Plaintiffs' Position

To ensure that the parties stay on track to meet the June 21, 2019 merits discovery deadline, Plaintiffs respectfully request an order directing the parties to submit weekly status reports on Thursdays by 5:00 p.m. ET, beginning on December 27, 2018 (i.e. one week after the upcoming status conference).  As shown by Goldman's Sunday, December 16 response to Plaintiffs' custodian proposal, and Goldman's production of documents *today*, status letters are helpful to keep the parties on task.[6]

---

[6]     In fact, Goldman's last document productions (on October 17 and 26, 2018, and limited to arbitration agreements), bookended the parties' last October 22, 2018 status hearing.

Below, Goldman seeks to re-litigate trial plan questions that this Court already decided (after Goldman sought the Court's intervention regarding trial plans in an October 17, 2018 joint letter (ECF No. 629 at 18-19), and which the Court addressed in its October 24, 2018 scheduling order (ECF No. 630)).  There is no need for the Court to revisit this issue at this time.

**B.      Defendants' Position**

Defendants believe that Plaintiffs' request for weekly joint status reports, as opposed to the current monthly reports, will create unnecessary make-work and distract counsel from discovery work.  As detailed above, the parties have been conferring weekly, and communicating even more frequently, about these issues.  The parties have met and conferred on October 10, October 30, November 7, November 13, November 20, December 4, and December 13, and will continue to do so, as needed.  Either party of course can also bring issues to the Court, as the parties have done.

Plaintiffs claim that the fact that Defendants produced documents and sent letters this week somehow supports imposing weekly letters to the Court.  Defendants' ongoing correspondence and productions in fact demonstrate that discovery is proceeding in the ordinary course.

Rather than create unnecessary work with weekly letters, Defendants believe the parties should be required to submit preliminary trial plans to assist the Court with managing the pretrial discovery process.  Plaintiffs' prior assertions that they rely on generalized proof run contrary to their discovery demands for individual information.  Nor have they ever explained how their proposal can be squared with the Seventh Amendment.  Defendants therefore respectfully request that the Court order Plaintiffs to submit a preliminary trial plan by a date

convenient for the Court, and Defendants to submit their proposed trial plan in response one week thereafter.

*          *          *

The parties thank the Court for its consideration and are available to answer any questions or provide more details at the December 20, 2018 status conference or at the Court's convenience.

Respectfully submitted,

_/s/ Adam T. Klein_                                         _/s/ Robert J. Giuffra, Jr._

Adam T. Klein                                              Robert J. Giuffra, Jr.
Cara E. Greene                                             Theodore O. Rogers, Jr.
Melissa L. Stewart                                         Ann-Elizabeth Ostrager
OUTTEN & GOLDEN LLP                                        Joshua S. Levy
685 Third Avenue, 25th Floor                               SULLIVAN & CROMWELL LLP
New York, New York  10017                                  125 Broad Street
Telephone: (212) 245-1000                                  New York, New York  10004
Facsimile: (646) 509-2060                                  Telephone: (212) 558-4000
                                                           Facsimile: (212) 558-3588

Kelly M. Dermody (admitted _pro hac vice_)                 Barbara B. Brown (_admitted pro hac vice_)
Anne B. Shaver (admitted _pro hac vice_)                   Carson H. Sullivan (_admitted pro hac vice_)
Tiseme G. Zegeye                                           PAUL HASTINGS LLP
LIEFF CABRASER HEIMANN &                                   875 15th Street, NW
       BERNSTEIN, LLP                                      Washington, DC  20005
275 Battery Street, 29th Floor                             Telephone: (202) 551-1700
San Francisco, California  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008                                  Patrick W. Shea
                                                           PAUL HASTINGS LLP
Rachel Geman                                               200 Park Avenue
250 Hudson Street, 8th Floor                               New York, NY  10166
New York, New York  10013-1413                             Telephone: (212) 318-6405
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

_Attorneys for Plaintiffs_                                 _Attorneys for Defendants_