# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

———

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 22, 2019

Via ECF

The Honorable Robert W. Lehrburger,
  United States District Court for the
    Southern District of New York,
      500 Pearl Street,
        New York, New York  10007-1312.

      Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano*.
              No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

        On behalf of Defendants, and in accordance with Rule III.G.2 of Your Honor's Individual Practices in Civil Cases ("Individual Practices"), I request that the Court permit redaction of personally identifying information contained in letters demanding that class members honor their agreements to arbitrate the disputes in this case (the "Demand Letters"), appended as Exhibits A, B, C, and F to Plaintiffs' February 11, 2019 letter ("Letter"; ECF No. 667).  The parties met and conferred on February 19 and 21, 2019, and Plaintiffs join in this request.

        Defendants further request that the Court maintain under seal agreements between Goldman Sachs and certain class members related to the termination of their employment, which were appended as Exhibits D and E to the Letter (the "Severance Agreements").  Plaintiffs agree only to the redaction of class member names and contact information from the Severance Agreements.  As set forth more fully below, the Severance Agreements implicate substantial privacy interests of class members and reflect Goldman Sachs's commercially sensitive information.  Accordingly, the public interest would not be served by the disclosure of the Severance Agreements.[1]

        As to the Demand Letters, the parties respectfully request that the Court permit redaction of class members' names and contact information.  These redactions are consistent with the Protective Order in this case.  (*See* ECF No. 51 ¶ 2 ("private employee information identifiable in connection with particular individuals," such as "personal contact information," may be designated as confidential).)  The proposed redactions are also consistent with this District's ECF Privacy Policy, which requires redaction of "personal identifiers" such as name and home addresses, and with Rule III.G.1 of the Individual Practices, directing parties to comply with this policy.  Courts in this district routinely permit similar redactions.  *See*, *e.g.*, *United States* v. *Silver*, 2016 WL 1572993,

---

[1]    The parties' letters (ECF Nos. 667–68) also contained redactions, but the parties agree that these letters should be publicly re-filed without redactions.

The Honorable Robert W. Lehrburger                                                                    -2-

at *7 (S.D.N.Y. Apr. 14, 2016) (Caproni, J.) ("[P]rivacy interests . . . warrant redactions to protect [individuals'] identities."); *Dodona I, LLC* v. *Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (Marrero, J.) (permitting redaction of "sensitive personal information of current and former employees of the parties . . . including home addresses, biographical information, telephone numbers and compensation").

As to the Severance Agreements, Defendants respectfully request that the Court maintain these highly sensitive, confidential documents under seal. As a threshold matter, there is no presumed right of public access to the information contained in these exhibits. The Second Circuit has repeatedly held that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States* v. *Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Rather, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process," *id.*, such as "pleadings in civil litigation (other than discovery motions and accompanying exhibits)," *Bernstein* v. *Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (internal quotation marks omitted). Here, Plaintiffs merely seek "an appropriate schedule" for Defendants' forthcoming motions to compel certain class members to arbitration. (Letter at 3.) Because Plaintiffs have raised only a scheduling request, which does not require adjudication of a dispute related to these documents, the public right of access does not apply.

Even if a presumption of access applied to the Severance Agreements, such a presumption would be weak and would be outweighed by both the privacy and commercial interests in the documents, as well as the harm to Goldman Sachs and the absent class members who signed these agreements that would result from disclosure. *See Lugosch*, 435 F.3d at 120 ("[A]fter determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" (quoting *United States* v. *Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995))); *Silver*, 2016 WL 1572993, at *7 (privacy interests "should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted" (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987))).

*First*, as to privacy interests, the Severance Agreements contain personal identifying information about absent class members, including their names and addresses. As discussed above, this information is routinely kept under seal. *Silver*, 2016 WL 1572993 at *7. Beyond that information, the agreements reveal that these class members were severed from Goldman Sachs, which is itself a sensitive, private fact, militating in favor of the requested sealing. *See, e.g.*, S.D.N.Y. Notice Regarding Privacy & Public Access to Electronic Civil & Criminal Case Files (parties must "exercise caution when filing documents that contain . . . employment history"). Finally, the agreements reveal the economic terms of the class members' severance payments, in which they also have a privacy interest. *See, e.g.*, *SEC* v. *Ahmed*, 2018 WL 4266079, at *3 (D. Conn. Sept. 6,

The Honorable Robert W. Lehrburger                                                                -3-

2018) (sealing employment agreements containing confidential business information, including "compensation and bonus structure").

*Second*, as to commercial harm, the Severance Agreements contain detailed information about discretionary severance benefits offered to former employees who are now class members. These class members ███████████████████████████ ███████████████████████████ (ECF No. 667, ███████████████████████████ ███████████████████████████. Moreover, with limited exceptions for boilerplate provisions in which the public has no interest, the Severance Agreements set out confidential, non-public and commercially sensitive information describing, for these particular class members, the economic and other terms of their separation. Indeed, whether to provide severance benefits and the terms of those benefits may vary depending on any number of economic circumstances and the circumstances of the separation, and these decisions are solely within Goldman Sachs's discretion. These confidential and private commercial arrangements should remain under seal, as their disclosure could hamper Goldman Sachs's ability to orderly manage reductions in force and other separations in the future, and further will disclose to competitors details of Goldman Sachs's approach to these highly sensitive arrangements. Other courts have recognized the sensitivity of separation agreements and have maintained them under seal.[2]

For the foregoing reasons, Defendants respectfully request that this Court permit the Demand Letters (Exhibits A, B, C, and F) to be filed with redactions and the Severance Agreements (Exhibits D and E) to remain under seal.

---

[2]   *See, e.g.*, *Cancro* v. *Credit Agricole Indosuez Severance Pay Program*, 2009 WL 8573475, at *5 (S.D.N.Y. Mar. 24, 2009) (Sullivan, J.) (permitting party to file separation agreements marked confidential "on their face" under seal); *Ahmed*, 2018 WL 4266079, at *3 (sealing employment agreements where "interest in confidentiality of internal business practices substantially outweigh[ed] the public's right of access" and access would help "[c]ommercial competitors seeking an advantage over rivals"); *Dauska* v. *Green Bay Packaging*, 291 F.R.D. 251, 260–61 (E.D. Wisc. 2013) (issuing protective order to protect "sensitive information related to the agreements signed by terminated employees," because severance agreements contained "confidential material"); *Globalrock Networks, Inc.* v. *MCI Commc'ns Servs., Inc.*, 2012 WL 13028650, at *1 (N.D.N.Y. May 7, 2012) (permitting party to file "employment termination agreement" under seal); *Weber* v. *FUJIFILM Med. Sys., U.S.A.*, 2011 WL 3163597, at *9 (D. Conn. July 27, 2011) (granting motion to seal separation agreements of former employees "contain[ing] confidential and sensitive information"); *EEOC* v. *Thorman & Wright Corp.*, 243 F.R.D. 426, 430 (D. Kan. 2007) (issuing protective order to "safeguard any potential harm associated with disclosure of the severance agreement").

The Honorable Robert W. Lehrburger                                                                 -4-

                                                          Sincerely,

                                                          */s/ Ann-Elizabeth Ostrager*

                                                          Ann-Elizabeth Ostrager
                                                          of Sullivan & Cromwell LLP

cc:      All parties of record (by ECF)