## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS, <br><br> Plaintiffs, <br><br> -against- <br><br> GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., <br><br> Defendants. | No. 10-cv-6950-AT-RWL |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(d)

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A. This Case Has Been Prosecuted as a Class Action Since its Inception in 2010................................................................................................................2

    B. More Than Eight Years Into the Litigation, Goldman Served Nearly 2,000 Demands for Individual Class Member Arbitration for the First Time..................2

    C. Contrary to the Established Rules, Goldman Never Informed Class Members of the Existence of This Pending Class Action or Their Rights at Stake in its Agreements. ........................................................................4

    D. Goldman's Unlawful Procurement of Misleading Waivers Continued Even After Class Certification. ..................................................................5

    E. Goldman Recently Attempted to Impose Sweeping Arbitration Obligations to Exclude the Discrimination Claims of Currently Employed Associates and Vice Presidents From This Case. ............................5

    F. Plaintiffs Now Move to Void Agreements Under Rule 23(d). .............................8

III. LEGAL STANDARD..........................................................................................8

IV. ARGUMENT ....................................................................................................10

    A. This Court Should Void the Post-Filing Agreements at Issue..............................11

        1. The Court May Invalidate the Waiver of Rights in the Agreements on the Basis of Their Post-Filing Execution. ................................................12

        2. Goldman's Failure to Disclose the Existence of This Pending Class Action Also Warrants Voiding All of the Waivers of Rights at Issue..........12

        3. Goldman's Failure to Provide Class Counsel's Contact Information Also Justifies Voiding the Waivers of Rights....................................14

        4. Goldman Secured Misleading Agreements to Arbitrate From Incumbent Employees in an Inherently Coercive Employment Relationship. ..............................................................15

        5. Goldman's Inclusion of Waivers of Rights to Participate in This Class Action Hidden in Stock Award "Signature Cards" Was Misleading and Deceptive..............................................................16

    B. Goldman Should Cease Any Further Unilateral, *Ex Parte* Efforts to Restrict Class Members' Participation in This Case.............................17

V. CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Balasanyan v. Nordstrom, Inc.,*
No. 11-2609, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ................................................ passim

*Belt v. Emcare, Inc.,*
299 F. Supp. 2d 664 (E.D. Tex. 2003) ................................................................................ 15

*Billingsley v. Citi Trends, Inc.,*
560 F. App'x 914 (11th Cir. 2014) ..................................................................................... 11

*Camp v. Alexander,*
300 F.R.D. 617 (N.D. Cal. 2014) ........................................................................................ 14

*Cheverez v. Plains All Am. Pipeline, L.P.,*
15-4113, 2016 WL 861107 (C.D. Cal. Mar. 3, 2016) ............................................. 11, 13, 14

*Cnty. of Santa Clara v. Astra USA, Inc.,*
No. 05-3740, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ........................................... 11, 14

*DeGidio v. Crazy Horse Saloon & Restaurant, Inc.,*
No. 13-2136, 2017 WL 5624310, (D.S.C. 2017) .................................................................. 11

*Garber v. Legg Mason, Inc.,*
347 F. App'x 665 (2d Cir. 2009) ........................................................................................... 6

*Gonzalez v. Preferred Freezer Servs. LBF, LLC,*
No. 12-3467, 2012 WL 4466605 (C.D. Cal. Sep. 27, 2012) ................................................ 13

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981) ................................................................................................................. 9

*Hinds Cnty. v. Wachovia Bank, N.A.,*
790 F. Supp. 2d 125 (S.D.N.Y. 2011) ................................................................................... 9

*In re Currency Conversion Antitrust Fee Litig.,*
361 F. Supp. 2d 237 (S.D.N.Y. 2005) ................................................................................. 11

*In re Currency Conversion Fee Antitrust Litig.,*
224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................... 9, 10, 12

*In re Sch. Asbestos Litig.,*
842 F.2d 671 (3d Cir. 1988) ................................................................................................ 10

*Jimenez v. Menzies Aviation, Inc.*,
No. 15-2392, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ............................................ 11, 13

*Kleiner v. First Nat'l Bank*,
751 F.2d 1193 (11th Cir. 1985) ............................................................................... 10, 15

*Li v. A Perfect Day Franch., Inc.*,
270 F.R.D. 509 (N.D. Cal. 2010) .................................................................................... 15

*Marino v. CACafe, Inc.*,
No. 16-6291, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) .............................................. 11

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
No. 05-1175, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ............................................ 13

*O'Connor v. Uber Techs., Inc.*,
No. 13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 12, 2013) ......................................... 9, 11

*Piekarski v. Amedisys Ill., LLC*,
4 F. Supp. 3d 952 (N.D. Ill. 2013) ................................................................................... 11

*Tomkins v. Amedisys, Inc.*,
No. 12-1082, 2014 WL 129401 (D. Conn. Jan. 13, 2014) ................................................ 11

*Urtubia v. B.A. Victory Corp.*,
857 F. Supp. 2d 476 (S.D.N.Y. 2012) .............................................................................. 17

*Weight Watchers, Inc. v. Weight Watchers Int'l, Inc.*,
53 F.R.D. 647 (E.D.N.Y. 1971) ......................................................................................... 9

*Williams v. Securitas Sec. Servs. USA, Inc.*,
No. 10-7181, 2011 WL 2713741 (E.D. Pa. 2011) ...................................................... 11, 17

**RULES**

Fed. R. Civ. P. 23 .................................................................................................................. 9

**TREATISES**

2 McLaughlin on Class Actions § 11:1 (14th ed. 2018) ...................................................... 10

Fed. Jud. Ctr., Manual for Complex Litig. § 21.12 (4th ed. 2004) ....................................... 9

# I.    INTRODUCTION

Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman") have engaged in years of misleading communications with Class Members in order to obtain 1,291 unlawful agreements to waive Class Members' rights to participate in this case. Under Federal Rule of Civil Procedure 23(d) and supporting case law, which prohibit a defendant from circumventing class action protections in exactly this way, the Court should void the waivers of rights to participate in this case (including obligations to arbitrate) contained in these agreements.

After Plaintiffs filed this case more than eight years ago, Goldman engaged in myriad *ex parte* communications with Class Members to obtain 1,291 improper waivers of their rights to participate in this class action.  These communications manifested in various putative agreements to arbitrate, waive class litigation, and/or release discrimination claims.  Goldman has only recently advised Class Counsel that it seeks to enforce these 1,291 agreements, all executed *after* Plaintiffs filed their initial Complaint, covering approximately 39 percent of the Class (*i.e.*, 1,291 of the 3,322 Class Members).  Goldman's actions violate Rule 23(d) by uniformly failing even to alert Class Members to the *existence* of this case, much less provide them with contact information for Class Counsel or basic information about the dispositive effect of these agreements on Class Members' rights.

Goldman has coordinated this multi-year effort without the supervision of the Court or input from Class Counsel to obtain unknowing waivers of rights.  Goldman's conduct is tactical; it waited until after class certification was finally decided and the Court-supervised notice and opt-out period ran before deploying this arbitration gambit to blunt or negate the practical consequences of the certification decision.  Accordingly, this Court can and should exercise its discretion under Rule 23(d) to void the misleading waiver of rights to participate in this case

1

contained in the post-filing agreements, as other courts have routinely done when faced with the exact same conduct by employers.

## II.    BACKGROUND

### A.    This Case Has Been Prosecuted as a Class Action Since its Inception in 2010.

On September 15, 2010, Plaintiffs filed a complaint alleging that Goldman engages in disparate impact and disparate treatment discrimination against a class of female employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* Class Action Compl., ECF No. 5. After years of hard-fought litigation, the District Court granted Plaintiffs' motion for class certification on March 30, 2018, certifying a Class of female Associates and Vice Presidents who have worked in the United States in the Investment Banking, Investment Management, and/or Securities Divisions of Goldman since September 10, 2004, and in New York City from July 7, 2002, to the present. Op. & Or., ECF No. 578.

A 45-day, Court-supervised class certification notice program began in November 2018 to ensure that absent Class Members would learn about the class certification and be afforded an opportunity to opt out of the Class by January 14, 2019. Notice was sent to 3,487 Class Members, and as of the deadline, 165 individuals had opted out, fixing the Class size at 3,322 members. J. Status Rep., at 1, ECF No. 674.

### B.    More Than Eight Years Into the Litigation, Goldman Served Nearly 2,000 Demands for Individual Class Member Arbitration for the First Time.

On February 5, 2019 and in the days that followed, Goldman served Class Counsel with 1,900[1] demands for either individual arbitration of Class Members' claims or individual arbitration to enforce purported releases of Class Members' claims. Declaration of Michael

---

[1] Goldman served 1,902 individual arbitration demands but later withdrew two of them.

Levin-Gesundheit ¶ 4.  Of these 1,900 arbitration demands, 1,291[2] were based on agreements Goldman had procured *after* September 15, 2010—that is, while this action was pending.  These 1,291 agreements are the subject of this motion.[3]  349 of these women purportedly signed severance agreements (enforceable through arbitration) releasing gender claims, while 942 were subject to agreements containing arbitration clauses covering ongoing employment disputes.[4]

It is now clear that Goldman waited for years to see whether the Class would be certified, relying on the entire class size as a basis for opposing class certification while attempting to keep in its pocket an undisclosed back-up plan to enforce preemptive agreements that would narrow the class size via waivers of participation should Goldman lose.  The charts below illustrate the gravity of Goldman's attack on Class membership.

| Class Members with No Agreement | Class Members with Pre-Complaint Agreements | Class Members with Post-Complaint Agreements | Total Number of Class Members |
|---|---|---|---|
| 1,422 | 609 | **<u>1,291</u>** | 3,322 |

---

[2] For 89 agreements upon which the arbitration demands are based, the date of the agreement is illegible.  Levin-Gesundheit Decl. ¶ 4 n.1.  These 89 arbitration demands are included within the 1,291 figure.

[3] This motion is limited to Plaintiffs' challenge to the validity of *post-filing* agreements under Rule 23(d).  Goldman's demand to arbitrate the claims of 609 of the Class Members who Goldman asserts signed agreements prior to the filing of the Complaint in this case on September 15, 2010 will be addressed in Plaintiffs' Opposition to Goldman's Motion to Compel Arbitration.

[4] Goldman asserts that 690 of these agreements containing arbitration clauses covering ongoing employment disputes were electronically signed.  To date, Goldman has not responded to Plaintiffs' request for documentary evidence verifying that these agreements were, in fact, electronically signed.  Decl. of Michael Levin-Gesundheit ¶ 8.  Plaintiffs reserve the right to challenge these agreements on the additional ground of lack of contract formation.



**Goldman Claims Nearly 40 Percent of Class Members
Are Subject to Post-Filing Agreements**



No
Agreements
43%

Post-Filing
Agreements
39%

Pre-Filing*
Agreements
18%

**Portions of Class Membership Covered by Purported Agreements**

*Not subject to challenge in this Rule 23(d) motion*

C.    **Contrary to the Established Rules, Goldman Never Informed Class Members
      of the Existence of This Pending Class Action or Their Rights at Stake in its
      Agreements.**

Goldman did not identify this pending class action in a single one of the post-filing

agreements at issue, let alone provide a summary of the underlying factual allegations and claims

at issue.[5]  Further, none of the agreements informed Class Members that signing would eliminate

their opportunity to participate in this case or any case like it, and none provided contact

information for Class Counsel so that Class Members could seek advice and reach an informed

choice as to whether they would elect to waive their rights at issue here.

---

[5] While Goldman disclosed the existence of this case in three post-certification severance
agreements, those three agreements are not among the 1,291 at issue in this motion.  Levin-
Gesundheit Decl. ¶ 6 n.2.

**D.      Goldman's Unlawful Procurement of Misleading Waivers Continued Even After Class Certification.**

Goldman continued to solicit waivers of participation from Class Members without disclosing the existence of this case even *after* the class was certified.  Of the 1,291 post-filing agreements that are the subject of this Rule 23(d) motion, 30 were executed after the Court's March 30, 2018 class certification.  *See* Levin-Gesundheit Decl. ¶ 4.  Goldman has provided no indication that it has ceased this practice, which may be ongoing.

**E.      Goldman Recently Attempted to Impose Sweeping Arbitration Obligations to Exclude the Discrimination Claims of Currently Employed Associates and Vice Presidents From This Case.**

From 2016 to 2019, while the parties in this litigation were engaged in rounds and rounds of briefing over whether former employees could represent a Rule 23(b)(2) class for injunctive relief, Goldman secretly sought to remove all current employee class members from the case. Indeed, Goldman buried a sweeping arbitration clause covering all variety of gender discrimination claims, along with class action waivers, within its routine stock award agreements for currently-employed female Associates and Vice Presidents.  Goldman inserted the clause in fine print within the "Signature Card" for acceptance of stock awards for 695 Class Members. Levin-Gesundheit Decl. ¶ 7.  Within these Signature Cards, there is no indication that this class action is pending, no description of the facts or claims at issue, and no contact information for Class Counsel.

As with the other agreements at issue, Goldman provided no mechanism to opt out of arbitration but rather provided the agreements on a take-or-leave basis as a condition of receiving equity compensation for ongoing employment.  Notably, these stock awards are an integral component of annual compensation at Goldman, a publicly traded company.

Further, Goldman's communications about the claims subject to arbitration via acceptance of the stock award are highly misleading. For each stock award during this 2016 to 2019 time period, Goldman provided Class Members lengthy documentation. However, in the Award Agreement of approximately 20 pages, there is no mention that Class Members may be waiving or releasing rights, whether in this pending class action or any litigation. Instead, the text describes a limited scope of arbitration in paragraph 16, on page 9:

> By accepting this Award, you are indicating that you understand and agree that the arbitration . . . provisions set forth in *Section 3.17 of the [Stock Incentive] Plan* will apply to this award. These provisions . . . provide . . . that any dispute, controversy or claim between the Firm and you *arising out of or relating to or concerning the [Stock Incentive] Plan or this Award Agreement* will be finally settled by arbitration . . . .

Levin-Gesundheit Decl., Ex. A, at 9 (emphasis modified). Thus, the arbitration clause within the Award Agreement only mentions disputes "arising out of relating to or concerning the [Stock Incentive] Plan" or the "Award Agreement." Other employment disputes—like the gender discrimination claims at issue in this case—are not covered. The Award Agreement also references "Section 3.17 of the [Stock Incentive] Plan," a separate document, for further detail on the arbitration agreement. Section 3.17 of the referenced Stock Incentive Plan describes the topics subject to arbitration in the same terms as the Award Agreement: "[I]t shall be a condition of each Award that any dispute, controversy or claim between the Firm and a Grantee, *arising out of or relating to or concerning the Plan or applicable Award Agreement*, shall be finally settled in arbitration . . . ."[6] Thus, both the Award Agreement and Stock Incentive Plan explicitly *limit* arbitration to disputes about the stock awards.

---

[6] *See* U.S. S.E.C. Schedule 14A Proxy Statement of The Goldman Sachs Grp., Inc., Annex B (Apr. 10, 2015), *available at* https://www.sec.gov/Archives/edgar/data/886982/000119312515125238/d904615ddef14a.htm#t oc904615_48 (last accessed Apr. 7, 2019) (emphasis added). This document is properly subject

It is only in the "Signature Card" for stock award acceptance—a separate and subsidiary document—that Goldman includes language, buried in the middle of a paragraph, that purports to *expand* arbitration beyond the express terms of the stock awards documentation to "disputes concerning Employment-Related Matters."  Levin-Gesundheit Decl., Ex. B.  Once again, there is no notice that Class Members may be waiving or releasing rights, whether in this pending class action or any litigation.  The graphic below illustrates Goldman's placement of this information within the Signature Cards of 695 Class Members.



Two sentences later, Class Members purport to agree that "no arbitrator shall have the authority to consider class, collective or representative claims."  *Id.*  Despite the inclusion of this consequential language, the only relatively prominent text on the face of the Signature Card suggests the purpose of the Signature Card is merely to accept the terms contained in the

_____

to judicial notice.  *See, e.g.*, *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (affirming taking judicial notice of SEC filings).

previous two documents: the Award Agreement and Stock Incentive Plan.  Specifically, the text appears as follows:

> **IMPORTANT:  PLEASE REVIEW, EXECUTE AND RETURN THIS FORM TO: EQUITY COMPENSATION (DIVISION OF HCM), 200 WEST STREET, 25TH FLOOR, NEW YORK, NY 10282.**
> **YOU MUST PROPERLY EXECUTE THIS FORM TO ACKNOWLEDGE ACCEPTANCE OF THE TERMS AND CONDITIONS OF YOUR AWARD(S) AND RELATED MATTERS.**

Levin-Gesundheit Decl., Ex. B (emphasis added).

By indicating that Class Members "must properly execute this form to acknowledge acceptance of the terms and conditions of your award(s) and related matters," Goldman instructs Class Members that the Signature Card reflects the terms set forth in the other two documents, while adding sweeping new terms not found in those documents that purportedly deprive employees of the opportunity to file gender discrimination and harassment claims in court or advocate for change through collective action.

### F. Plaintiffs Now Move to Void Agreements Under Rule 23(d).

Plaintiffs now seek an order from this Court, under Rule 23(d), invalidating the waiver of rights to participate in this case (including obligations to arbitrate) contained in the agreements of 1,291 Class Members that were obtained after the filing of this case.  To the extent Goldman is now moving to compel arbitration as to these 1,291 Class Members based on these agreements, Plaintiffs respectfully submit that Goldman's motion will be mooted as to these agreements as a result of the Rule 23(d) violations that have occurred.[7]

## III. LEGAL STANDARD

A key feature of class action litigation is Court supervision to ensure fairness to absent class members.  This is because until class certification, absent class members are not parties to

---

[7] To the extent Goldman seeks to enforce any other agreements besides those post-filing agreements related to the 1,291 Class Members at issue in this Rule 23(d) motion, Plaintiffs will oppose this request in their forthcoming Opposition to Goldman's Motion to Compel Arbitration.

the action, and—unless and until a successful class certification and completion of a notice program—they are presumptively unaware of the existence of the class action and their related rights. Thus, Federal Rule of Civil Procedure 23(d) vests the court with "supervisory authority over a defendant's communications with putative class members." *In re Currency Conversion Fee Antitrust Litig.* (hereinafter, *In re Currency I*), 224 F.R.D. 555, 569 (S.D.N.Y. 2004).

Rule 23(d)'s mandate is broad: "In conducting an action under this rule, the court may issue orders that," *inter alia*, "impose conditions on the representative parties." Fed. R. Civ. P. 23(d)(1)(C). In evaluating the scope of this authority, the Supreme Court has held that "[b]ecause of the potential for abuse, a district court has both the *duty* and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (emphasis added).

Rule 23(d) specifically empowers the court at any point after the filing of a class action to enjoin a defendant's communications with absent class members and also to *correct* the effect of prior communications. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 12, 2013) ("This discretion includes requiring the issuance of corrective notices and action to ameliorate confusing or misleading communications."); *Weight Watchers, Inc. v. Weight Watchers Int'l, Inc.*, 53 F.R.D. 647, 650 (E.D.N.Y. 1971) (holding that Rule 23 "confide[s] in the federal judiciary a *wide range of discretion* to prevent abuse in class actions or to issue remedial orders where abuse has already occurred") (emphasis added). As the Manual for Complex Litigation notes, "Rule 23(d) authorizes the court to regulate communications with potential class members, even before certification." Fed. Jud. Ctr., Manual for Complex Litig. § 21.12 (4th ed. 2004); *see also Hinds Cnty. v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011).

"[T]o protect the integrity of the class and the administration of justice generally," a court's authority under Rule 23(d) extends to "communications that mislead or otherwise threaten to influence the threshold decision whether to remain in the class," as well as to those that "seek or threaten to influence [one's] choice of remedies." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). *Accord Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests. Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule.") (citation omitted); *In re Currency I*, 224 F.R.D. at 569 ("[E]xerc[ing] supervisory authority over a defendant's communications with putative class members . . . is particularly apt where a defendant attempts to alter the contours of the litigation or the availability of remedies."). When evaluating the propriety of a defendant's communications with absent class members that secure waivers of rights, a court's discretion is broad. It may consider simply the timing and purpose of the defendant's communication. Courts also consider whether the defendant informed class members of the pending case, accurately summarized the claims and rights at issue, or provided plaintiffs' counsel's contact information, the failure to do any one of which may render a communication misleading. *See, e.g.*, 2 McLaughlin on Class Actions § 11:1 (14th ed. 2018) (collecting cases).

## IV.    **ARGUMENT**

Goldman's efforts to obtain waivers of Class Members' participation in this case *after* Plaintiffs filed this action on September 15, 2010 have subverted the protections of Rule 23(d). Consistent with the broad authority granted to the Court under Rule 23(d) to protect Class Members and fairly conduct a class action, the Court should correct the harm Goldman has

caused by invalidating the waiver of rights to participate in this case contained in the post-filing agreements.

## A.     This Court Should Void the Post-Filing Agreements at Issue.

Courts across the nation routinely invalidate releases, arbitration agreements, and class action waivers secured by a defendant's unsupervised communication with class members. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights . . . . [T]hose arbitration clauses may not be enforced because [defendants] added them, without notice, after this litigation commenced."); *Tomkins v. Amedisys, Inc.*, No. 12-1082, 2014 WL 129401, at *2 (D. Conn. Jan. 13, 2014) (same); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 923-24 (11th Cir. 2014) (same); *Marino v. CACafe, Inc.*, No. 16-6291, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (same); *DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*, No. 13-2136, 2017 WL 5624310, at *7-8 (D.S.C. 2017) (same), *aff'd*, 880 F.3d 135 (4th Cir. 2018); *Cheverez v. Plains All Am. Pipeline, L.P.*, 15-4113, 2016 WL 861107, at *7 (C.D. Cal. Mar. 3, 2016) (same); *Jimenez v. Menzies Aviation, Inc.*, No. 15-2392, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (same); *O'Connor*, 2013 WL 6407583, at *7 (same); *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (same); *Balasanyan v. Nordstrom, Inc.,* No. 11-2609, 2012 WL 760566, at *1–2, 4 (S.D. Cal. Mar. 8, 2012) (same); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 WL 2713741, at *2 & ECF No. 35 (E.D. Pa. 2011) (same); *Cnty. of Santa Clara v. Astra USA, Inc.*, No. 05-3740, 2010 WL 2724512, at *6 (N.D. Cal. July 8, 2010) (same).

The same result is compelled here. Goldman's improper conduct provides multiple *separate* grounds for invalidating the waiver of rights contained in the 1,291 agreements under Rule 23(d).

1.   **The Court May Invalidate the Waiver of Rights in the Agreements on the Basis of Their Post-Filing Execution.**

Goldman sought undisclosed waivers of rights from 1,291 Class Members after this case was filed.  This alone provides the Court with sufficient reason to strike the waiver of rights in the agreements at issue.   *In re Currency I*, from this District, provides a persuasive example of how courts exercise this authority.  There, the court held that, "the arbitration clauses [could] not be enforced because [d]efendants modified the cardholder agreements after this [litigation] commenced."  224 F.R.D. at 570.  "*Regardless of* any cardholders' *knowledge* of this action," under Rule 23(d), the agreements were unenforceable specifically because of the suspect timing. *Id.* (emphasis added).  *In re Currency I*'s reasoning applies with equal force here: Regardless of whether the agreements are for arbitration, waiver of class litigation, or release of claims, all agreements at issue were obtained after Plaintiffs filed the Complaint on September 15, 2010 for the purpose of eliminating class liability.  The Court need not engage in any further analysis.

2.   **Goldman's Failure to Disclose the Existence of This Pending Class Action Also Warrants Voiding All of the Waivers of Rights at Issue.**

Beyond timing alone, Goldman's failure to disclose the existence of this litigation in any of the agreements at issue is a misleading and improper attempt to secure unknowing waivers of rights.  This provides an additional, independent basis for the Court to void the waivers.

Courts routinely strike agreements (or problematic clauses) where the defendant fails to apprise class members of the pending case in which they would be forfeiting participation.  For example, in *Balasanyan*, the defendant employer provided employees with a four-page document with a section entitled "Dispute Resolution Agreement," which mandated arbitration, and sought employee signatures directly underneath.  2012 WL 760566, at *2.  While that defendant included a much clearer expression of the dispute resolution mechanism than Goldman did here,

the court nonetheless invalidated the arbitration agreements because of the post-filing timing *and* because the defendant "did not alert putative class members of the litigation." *Id.*, at *3.

Other courts have similarly invalidated agreements—whether they are for arbitration or a release of claims—based on a defendant's failure to inform class members of the existence of pending litigation. *See Jimenez*, 2015 WL 4914727, at *5 (finding unenforceable a post-litigation agreement where the defendant did not inform "putative class members of the pending litigation"); *Cheverez*, 2016 WL 861107, at *4 ("The First Release was misleading because it failed to notify victims that these class actions existed.").

In other cases where there have been minimal disclosures regarding a pending class case, courts have voided agreements because the defendants provided *insufficient* or *inaccurate* information. *See, e.g.*, *Cheverez*, 2016 WL 861107, at *4 ("Although the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as an explanation of the Plaintiffs' claims."); *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, No. 12-3467, 2012 WL 4466605, at *1 (C.D. Cal. Sep. 27, 2012) (finding waivers solicited from employees were misleading where they "did not include any information regarding this class action, except that a former employee had brought a lawsuit against" the defendant); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175, 2005 WL 4813532, at *4-5 (N.D. Cal. Nov. 17, 2005) (finding an employer's communications with class members misleading and improper where the employer provided an inaccurate description of the potential effect of the employment lawsuit on the compensation system in the workplace). These cases underscore the gravity of Goldman's improper *ex parte* communications. Here, Goldman provided no information *whatsoever* about the pending case to Class Members.

"To allow defendants to induce putative class members into forfeiting their rights by . . . failing to disclose the existence of litigation would create an incentive to engage in misleading behavior." *Balasanyan*, 2012 WL 760566, at *3. The Court should not countenance this type of gamesmanship. This Court should follow the guidance in the case law and invalidate the objectionable waivers of rights.

### 3. Goldman's Failure to Provide Class Counsel's Contact Information Also Justifies Voiding the Waivers of Rights.

The Court should also void the waivers of rights because Goldman did not provide Class Members an opportunity to consult with Class Counsel to make an informed choice as to whether to waive their participation in this case.

Following Rule 23(d), courts routinely hold that agreements "are misleading where they do not permit a putative class member to fully evaluate his [or her] likelihood of recovering through the class action." *Cheverez*, 2016 WL 861107, at *4. Consulting with attorneys for the plaintiff class aids class members in considering how to act when presented with an agreement that will waive their rights. But here, just as Goldman never even listed the name of this pending case in any of its agreements, it likewise never provided Class Counsel's contact information. The omission of Class Counsel's contact information also stands as a ground to strike all of the waivers at issue here. *See id.* ("Although the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as . . . the contact information for Plaintiffs' counsel."); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014) (striking pre-certification waivers of participation where "key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint" was missing); *Astra USA*, 2010 WL 2724512, at *4 (invalidating release under Rule 23, because, "[w]hile there were not any alleged misstatements," it "omit[ted] a summary of the plaintiffs' complaint," and "it did

not even provide an explanation of the claims of the plaintiffs, the *plaintiffs' counsel's contact information*, or the current status of the case") (emphasis added).  The waivers at issue in this motion should be invalidated for the same reasons.

4. **Goldman Secured Misleading Agreements to Arbitrate From Incumbent Employees in an Inherently Coercive Employment Relationship.**

With respect to the 942 Class Members who purportedly executed agreements containing arbitration clauses covering ongoing employment disputes, Goldman abused its inherently coercive employment relationship to obtain a misleading waiver of rights.  This is a *separate*, additional reason to strike these 942 Class Member arbitration agreements.

"A unilateral communication scheme . . . is rife with potential for coercion," especially if "the class and the class opponent are involved in an ongoing business relationship."  *Kleiner*, 751 F.2d at 1202 (affirming district court's prohibition, under Rule 23(d), on solicitation of exclusion requests from customers).  This is especially true with an "employer-employee" relationship, where "any communications are more likely to be coercive."  *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (enjoining the defendant from communicating with absent class members about pending case).  Employees rely on their employers both to sustain their livelihoods in the present and to offer positive recommendations to prospective employers in the future.  Therefore, "in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when the employer solicits opt-outs from its workers."  *Li v. A Perfect Day Franch., Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010) (ruling on 23(d) motion and invalidating preemptive opt-out forms).

Here, for each and every employee arbitration agreement that it imposed on Class Members, Goldman conditioned ongoing employment or a valuable portion of annual compensation on agreeing to arbitration and a waiver of rights to participate in a class action.

*See, e.g.*, Levin-Gesundheit Decl., Ex. C (GS0385548, 51) (conditioning █████████ ████████████████ on arbitration and waiver of class litigation). Highlighting the coercive nature of these agreements, Class Members were *never* afforded *any* opportunity to opt out of these provisions.

Goldman's efforts to obtain waivers of rights from current employees were coercive, and corrective action is warranted.

> **5.** **Goldman's Inclusion of Waivers of Rights to Participate in This Class Action Hidden in Stock Award "Signature Cards" Was Misleading and Deceptive.**

Finally, for 695 Class Members, Goldman hid waivers of participation in this case within their annual stock awards. As explained in Part II above, from 2016 to 2019, Goldman appears to have required then-currently employed Class Members to agree to arbitration and a waiver of class litigation to receive annual stock awards. However, both the Award Agreement and the Stock Incentive Plan (to which the Award Agreements cross-reference) make clear that the arbitration agreement only applies to disputes *about the stock awards themselves*—and not employment-related matters generally. It is only in the fine print of the separate "Signature Card" for stock award acceptance that Goldman buried what it claims is a broad *expansion* of the scope of the arbitration agreement to include "disputes concerning Employment-Related Matters." Levin-Gesundheit Decl. Ex B (GS0396134). Additionally, the Signature Card advises Class Members in bolded text to review the Agreement and Plan documents for the material terms, when, in fact, it is in the fine print of the Signature Card that new and much different arbitration terms are surreptitiously added.

This constitutes a highly misleading communication that may be remedied under Rule 23(d). *See Balasanyan*, 2012 WL 760566, at *4 n.3 (holding, under Rule 23(d), that post-filing arbitration agreements "invited confusion" because rather than sign arbitration agreements

themselves, employees signed documents acknowledging receipt of these agreements);

*Securitas*, 2011 WL 2713741, at *2-3 (same in context of FLSA collective action). Pursuant to its Rule 23(d) authority, the Court should also void the language expanding the scope of arbitration from disputes arising from the grant of stock awards to all employment-related disputes.

**B.**       **Goldman Should Cease Any Further Unilateral, *Ex Parte* Efforts to Restrict Class Members' Participation in This Case.**

Since Judge Torres certified the class, Goldman has continued to solicit improper waivers of rights to participate in this case from Class Members in violation of the New York Rules of Professional Conduct and American Bar Association Model Rules. *See* N.Y. Rules of Prof'l Conduct 4.2 (barring communication "with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer"); Model Rules of Prof'l Conduct R. 4.2 (2011). As of February 2019, Goldman had informed Plaintiffs that it sought to enforce at least 30 *ex parte* agreements executed after the Court certified the class on March 30, 2018. In fact, one of these agreements is dated as recently as January 14, 2019. Should Plaintiffs become aware that Goldman is continuing to procure waivers, Plaintiffs reserve the right to seek an injunction. *See, e.g.*, *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) (enjoining the defendants, under Rule 23(d) from "communicating with any potential class member regarding this lawsuit and its subject matter other than through the class member's counsel, if any, absent prior permission from the Court").

**V.**       **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court invalidate the waivers of rights contained in the post-filing agreements that are the subject of 1,291 demands by

Goldman to arbitrate the claims of absent Class Members. Further, if the Court grants the requested relief, Plaintiffs respectfully request that the Court deny any prospective motion to compel arbitration with respect to these 1,291 absent Class Members as moot.

Dated: April 12, 2019                    By:

_____/s Kelly M. Dermody_____
Kelly M. Dermody

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Michelle Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Adam T. Klein
Cara E. Greene
Melissa L. Stewart
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Class Counsel*