# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
___

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

May 21, 2019

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the
     Southern District of New York,
      500 Pearl Street,
       New York, New York 10007-1312.

        Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*
             No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

     Plaintiffs' May 14, 2019 letter ("Letter"; ECF No. 735) does not comply with this Court's April 30, 2019 Order. It does not, as the Court directed, "explain[] the relevance of the comparator evidence they seek *to the policies and procedures to be tried in Phase 1* and how that evidence *is consistent with the scope of the class certified* and to be tried in Phase 1." (ECF No. 731 ("Order") ¶ 2) (emphasis added).)

     Judge Torres certified a class only for three specific employment processes—"360 review, quartiling, and cross-ruffing" (ECF No. 578 at 25)—and only found predominance for Plaintiffs' disparate treatment claim "predicated on the statistical evidence of disparate impact" (*id.* at 41).[1] The certification order rested on the premise, advanced by Plaintiffs, that a trial of classwide issues would be manageable, because this trial would be about only the application of the challenged processes to the class as a whole and statistical evidence. Your Honor subsequently confirmed that the trial of this case would "proceed in phases," with Phase 1 limited to "generalized proof." (Oct. 24, 2018 Order ¶ 1, ECF No. 630.) In keeping with this phased trial plan, Your Honor has limited Plaintiffs to discovery of anecdotal evidence *"related to the practices and procedures* that form the basis for the Phase 1 trial." (Dec. 21, 2018 Order ¶ 1, ECF No. 657 (emphasis added).) Plaintiffs do not explain how the highly individualized discovery that they now seek about 55 so-called "comparators" is consistent with a Phase 1 trial based on "generalized proof." (Order ¶ 2.) As shown below, such highly

---

[1]     Plaintiffs continue to mischaracterize Judge Torres' class certification decision as including unspecified "compensation" processes, which Judge Torres referred to only in summarizing Plaintiffs' claims, not in ordering certification. (*Compare* ECF No. 578 at 4 (summarizing "Plaintiffs['] claim[s]"), *with id.* at 26–27 (finding commonality for "the 360 review and quartiling processes" and "cross-ruffing process"), *and id.* at 44 (finding predominance for "the 360 review and quartiling processes").)

individualized proof has no place in any Phase 1 trial.

*First*, Plaintiffs' demand for discovery about their 55 "comparators" reflects their interest in impermissibly turning the planned Phase 1 trial into a series of mini-trials involving highly individualized evidence over how the challenged processes were applied to the Named Plaintiffs and unspecified trial witnesses. Specifically, Plaintiffs claim that they need evaluation, compensation and promotion records "to ascertain whether the Named Plaintiffs and trial witnesses experienced similar evaluation, compensation, and promotion opportunities and outcomes" as their male peers, and personnel files to "evaluate who are the most appropriate comparators to present at trial." (Letter at 2–3.) This sort of individualized evidence would be relevant to a Phase 2 trial to determine whether the processes were applied to discriminate against a particular class member. But Plaintiffs may not cherry-pick anecdotal evidence about the application of the challenged processes to the Named Plaintiffs and their trial witnesses to show during a Phase 1 trial that those processes had a disparate impact on *all* female professionals in the class, or that Goldman Sachs had a "standard operating procedure" to discriminate against *all* female professionals based on Plaintiffs' cherry-picked evidence. *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 336 (1977) (in pattern-or-practice disparate theory case, plaintiff must prove that "discrimination was the company's standard operating procedure the regular rather than the unusual practice").[2]

*Second*, any anecdotal evidence permitted during Phase 1 must be "specifically tied to the policies." (Apr. 30, 2019 Conf. Tr. ("Tr.") at 52:6–20.) For example, Defendants agree that the parties may seek discovery from Goldman Sachs's Human Capital Management personnel to explain how the challenged processes work in practice, and from Goldman Sachs managers to determine whether they "selected or reaffirmed" the challenged processes not just with "awareness of consequences," but "*because of*, not merely *in spite of*, its adverse effect upon [women]." *United States* v. *City of New York*, 717 F.3d 72, 93–94 (2d Cir. 2013) (emphasis added) (quoting *Personnel Adm'r* v. *Feeney*, 442 U.S. 256, 279 (1979)). But the parties may not seek discovery for use in a Phase 1 trial into how the processes were *applied* to Plaintiffs' cherry-picked witnesses and alleged "comparators."

*Third*, Plaintiffs acknowledge that "a majority of the comparator evidence they seek" is relevant only to Named Plaintiffs' "*individual* Title VII disparate treatment claims." (Letter at 1 n.1 (emphasis added).) Indeed, Plaintiffs rely on irrelevant cases involving *individual* Title VII claims to support their demands for "comparator" evidence. *See, e.g.*, *Diaz* v. *Local 338*, 2014 WL 12778840, at *2 (E.D.N.Y. Aug. 21, 2014) (Locke, J.) (alleged comparators "held the same position as Plaintiff"). But Your Honor has expressed your "inclination . . . that we're *not* going to be trying the four

---

[2]   The Named Plaintiffs themselves have testified that Goldman Sachs did not apply the challenged processes in a uniform way across the class. (*Compare* Gamba Dep. at 99:10–23 (trading profit and loss "was very heavily weighted" by managers in assessing employees' "ability and how they are performing"), *with* De Luis Dep. at 109:14–17 (performance evaluation based on "urgency and commitment to clients and being able to commit to the transaction in a timely manner").)

named plaintiffs['] individual cases" during any Phase 1 trial (Tr. at 52:9–12 (emphasis added)), and Defendants respectfully submit that Your Honor's inclination is consistent with a Phase 1 trial based on "generalized proof." If Your Honor allows Plaintiffs discovery into their 55 "comparators," then the Court will have to open the floodgates of discovery regarding the application of the challenged processes to individuals across the class to give Goldman Sachs a fair opportunity to show, person-by-person, that no discrimination occurred. This includes witnesses to rebut plaintiffs' own assertions, as well as discovery about other class members. In such a circumstance, Defendants would need access to absent class members in order to rebut Plaintiffs' cherry-picked "comparator" evidence.

*Fourth*, this Court's December 21, 2018 Order bars Plaintiffs' demand for additional discovery into "whether a comparator male who was the subject of a complaint—for sexual harassment or any other proscribed conduct—was treated more favorably than a woman who was not subject to a similar complaint." (Letter at 3.) As Your Honor has held, Defendants "need not produce 'boy's club' evidence for incidents that do not relate to the practices and procedures that form the basis for the Phase 1 trial of certified class claims." (Dec. 21, 2018 Order ¶ 1.) And, in any event, Defendants have produced complaint files through 2017, and, in compliance with this Court's December 21 Order, have produced additional complaint files "related to the practices and procedures." (Dec. 21, 2018 Order ¶ 1.) Plaintiffs' request for additional "complaints" related to "comparators" is nothing more than "a back door way of getting in the boy[']s club evidence" that this Court has already warned Plaintiffs will not be permitted. (Tr. at 57:16–17.)

*Finally*, as this Court recognized, the proposed "comparators" "may not be adequate." (Tr. at 67:23–24.) Plaintiffs make no effort to show to which Named Plaintiff each alleged "comparator" should be compared, let alone to justify the adequacy of their purported comparators. Tellingly, Plaintiffs withdrew their request for "comparator" discovery about Named Plaintiff De Luis's manager, who is plainly not a valid comparator. (*See* Letter at 1 n.2.) Plaintiff Chen-Oster did not mention any of the 55 men as a potential "comparator" during her depositions, and the remaining Named Plaintiffs each referred to only two of the 55 "comparators." (*See* Orlich Dep. at 361:2–24; Gamba Dep. at 152:2–16; De Luis Dep. at 187:25–189:14.) Based on the incomplete information received from Plaintiffs thus far, many other "comparators" are not comparators for the Named Plaintiffs, as the illustrative examples in Appendix A show. For example, Plaintiff Gamba has a B.S., while "comparators" from the same Business Unit have Ph.D.s. *See DeJesus* v. *Starr Technical Risks Agency, Inc.*, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004) (Holwell, J.) (granting summary judgment for employer in Title VII case where plaintiff had "less education" than "the other employees with whom [he] compares himself"). And the alleged "comparators" in Plaintiffs De Luis's and Orlich's Business Units were more experienced. *See Simpson* v. *Metro-N. Commuter R.R.*, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) (Crotty, J.) (dismissing Title VII claims because alleged comparators "have far greater seniority").

The Honorable Robert W. Lehrburger -4-

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.
of Sullivan & Cromwell LLP

cc: All parties of record (by ECF)

## Appendix A

1.      **Work Duties.**  Data produced to Plaintiffs regarding "job function" show that "alleged comparators were not similarly situated because they held different job functions from [named] plaintiff[s]." *Goldman* v. *Admin. for Children's Servs.*, 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007) (Lynch, J.) (citing *White* v. *Fuji Photo Film USA, Inc.*, 434 F. Supp. 2d 144, 154 (S.D.N.Y. 2006) (McMahon, J.)).

| Name | Job Function | Potential Alleged Comparator | Job Function |
|---|---|---|---|
| Scott Albert | Mortgages | Mary De Luis | Financial Investment Professional / Underwriting[3] |
| Somdip Datta | Strats[4] | Allison Gamba | Trading / NYSE Specialist |
| Pavol Gvozdjak | Strats | Allison Gamba | Trading / NYSE Specialist |
| Vahagn Minasian | Strats | Allison Gamba | Trading / NYSE Specialist |
| Shannon Nelson | Mortgages | Mary De Luis | Financial Investment Professional / Underwriting |
| Aaron Robertson | Mortgages | Mary De Luis | Financial Investment Professional / Underwriting |
| Prasannaa Thati | Strats | Allison Gamba | Trading / NYSE Specialist |

2.      **Education.**  Data produced to Plaintiffs regarding "Advanced Degrees" show that Named Plaintiffs have "less education" than "the other employees with whom [she] compares h[er]self." *DeJesus* v. *Starr Technical Risks Agency, Inc.*, 2004 WL 2181403, at *9

---

[3]     During her tenure at Goldman Sachs, Plaintiff De Luis held different job functions in different years, all of which differ from her alleged comparators.  She initially worked as a "financial investment professional," and was "responsible for rebalancing portfolios, getting clients an indication of interest on initial public offerings," and "propos[ing] different types of structures" and investment ideas to the team.  (De Luis Dep. at 17:18–20, 25:22–25; 26:5–18.)  She then moved to an "underwriting" role where she "evaluat[ed] lending opportunities that were presented to clients and help[ed] them find solutions."  (*Id.* at 44:9–24; *see id.* at 45:22–46:18).

[4]     "Strats" are both "product and client-specific experts" who "partner with sales and trading desks across FICC to answer specialized questions and develop quantitative and technological solutions for various businesses and their clients."  (Kirk Decl., ECF No. 279 ¶¶ 3, 7).  Many of the Strats have "highly-developed skills for specific roles" often including advanced degrees.  (*Id.* ¶ 6.)

(S.D.N.Y. Sept. 27, 2004) (Holwell, J.) (granting summary judgment for employer in Title VII case).

| Name | Highest Degree | Potential Alleged Comparator | Highest Degree |
|---|---|---|---|
| Avanish Bhavsar | MBA | Christina Chen-Oster | B.S. |
| Sergei Dzhosyuk | Ph.D. | Alison Gamba | B.S. |
| Vahagn Minasian | Ph.D. | Alison Gamba | B.S. |
| Somdip Datta | Ph.D. | Alison Gamba | B.S. |
| Pavol Gvozdjak | Ph.D. | Alison Gamba | B.S. |
| Prasannaa Thati | Ph.D. | Alison Gamba | B.S. |
| Christopher Viscardi | MBA | Alison Gamba | B.S. |

3. **Seniority.** Data produced to Plaintiffs regarding "Lateral Hire" and "Associate Date" show that alleged comparators "have far greater seniority" than Named Plaintiffs. *Simpson*, 2006 WL 2056366, at *7 (dismissing Title VII action).

   a. Laterals

| Name | Lateral Hire? | Potential Alleged Comparator | Lateral Hire? |
|---|---|---|---|
| Maxim Grudin | Yes | Shanna Orlich | No |
| Kapil Kamdar | Yes | Shanna Orlich | No |

   b. Tenure

| Name | Tenure | Potential Alleged Comparator | Tenure |
|---|---|---|---|
| David Casner | Became Associate in 2005 | Shanna Orlich | Started as Associate in 2007 |
| Maxim Grudin | Started as Associate in 2004 | Shanna Orlich | Started as Associate in 2007 |

| Name | Tenure | Potential Alleged Comparator | Tenure |
|---|---|---|---|
| John Nixon | Started as Associate in 2008 | Mary De Luis | Started as Associate in 2013 |
| Robert Palazzi | Started as Associate in 2002 | Shanna Orlich | Started as Associate in 2007 |

4. **Performance History.** Data produced to Plaintiffs regarding "Production" show that various production metrics affected alleged comparators' compensation while Named Plaintiffs have no such data. *See DeJesus*, 2004 WL 2181403, at *9 (alleged comparators invalid because "the other employees appear to have performed better").

| Name | Production Metrics? | Potential Alleged Comparator | Production Metrics? |
|---|---|---|---|
| Edson Barton | Yes | Shanna Orlich | No |
| Leonard Chung | Yes | Shanna Orlich | No |
| Issam El Chammah | Yes | Shanna Orlich | No |
| Joseph Femenia | Yes | Shanna Orlich | No |
| Matthew Knopman | Yes | Shanna Orlich | No |
| Brian Pasquinelli | Yes | Shanna Orlich | No |
| Abraham Shulman | Yes | Christina Chen-Oster; Shanna Orlich | No[5] |

---

[5]  Plaintiff Chen-Oster did not have production during 2004–2005.

A-3