UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/7/2019

------------------------------------------------------------X

H. CRISTINA CHEN-OSTER, SHANNA : 
ORLICH, ALLISON GAMBA, and MARY DE :         10-cv-6950 (AT) (RWL)
LUIS, individually and on behalf of others :
similarly situated, :
 :
                                 Plaintiffs, :         **ORDER**
 :
                    - against - :
 :
GOLDMAN, SACHS & CO. and THE :
GOLDMAN SACHS GROUP, INC., :
 :
                                 Defendants. :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This addresses class-action Plaintiffs' demand for production of certain materials

relating to potential comparator employees.  The purpose of comparator evidence is to

assess the extent to which comparably positioned and qualified employees may have

been treated differently based on improper criteria, such as in this case, gender.  Plaintiffs

specifically seek materials for male comparators of the four female named Plaintiffs.  The

materials sought include (1) personnel files, (2) documents related to evaluation,

compensation and promotion, and (3) complaint and disciplinary records.  Defendants

oppose discovery of comparator materials, arguing among other things, that while

comparator evidence may be pertinent to individual issues, it is not relevant to or

appropriate in a Phase 1 trial based on generalized proof.  This issue has been the subject

of letter briefing, including Dkt. 735, 738, 742.  As explained below, the Court grants

limited discovery of comparator evidence.

Typically, comparator evidence is used in individual cases of alleged discriminatory conduct. This case, in contrast, is a class-action in which certification of the class is premised on Defendants' use of three processes to make employment-related decisions, specifically "360 reviews," "quartiling" and "cross-ruffing". *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D.55, 74-77 (S.D.N.Y. 2018). In certifying the class, the Court emphasized the availability of "generalized proof" that would be presented through statistical evidence. *Id.* at 81-82. Even as to disparate treatment (as distinct from disparate impact), the Court emphasized that proof would be based on statistical data, while also noting Plaintiffs' offer of proof that Defendants were aware of gender disparities but did not adjust their policies or practices. *Id.* at 77, 82-83. In contrast, the Court denied certification of a disparate treatment class based on so-called "boy's-club" evidence of individual incidents of alleged misconduct and discrimination because such evidence would be highly individualized and not susceptible to class-action treatment. *Id.* at 80-81.

In some sense, statistical proof provides comparator evidence at a broad, generalized level as it is generated from data reflecting groups of employees with certain common characteristics. But the availability and use of statistical evidence does not obviate the use of individual comparator evidence. *See, e.g., Richardson v. City of New York,* No. 17 Civ. 9447, 2019 WL 1512646, at *5 (S.D.N.Y. April 8, 2019) (recognizing plausible allegation of discriminatory intent based on allegations about comparator groups to named class-action plaintiff); *Hill v. City of New York*, 136 F. Supp.3d 304, 336-37 (E.D.N.Y. 2015) (same). Comparator evidence may lead to discovery of individual anecdotes that bring "cold numbers convincingly to life." *International Brotherhood of Teamsters v. United* States, 431 U.S. 324, 339 (1977); *see also Reynolds v. Barrett*, 685

F.3d 193, 203 (2d Cir. 2012) (while statistics alone can make out a prima facie case of pattern-or-practice disparate treatment, "[a]necdotal evidence of discrimination may be highlighted to bring 'the cold numbers convincingly to life.'") (quoting *Teamsters*); *Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2018 WL 6264835, at *22 (S.D.N.Y. Nov. 30, 2018) ("A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally") (internal quotations omitted).  To be sure, anecdotal evidence in this class action will be limited to anecdotes of how the three challenged processes have impacted the employment of particular class members.   Providing evidence of how those processes affected comparable male employees may exemplify disparities, if they exist.

Defendants agree that "[t]his sort of individualized evidence would be relevant . . . to determine whether the processes were applied to discriminate against a particular class member."  (Dkt. 738 at 2.)  Their objection essentially is less about relevancy than it is about timing: Defendants contend that comparator evidence should not be introduced at the Phase 1 trial devoted to generalized proof but rather only at Phase 2 trials of individual issues.  As Defendants would have it, Plaintiffs "may not cherry-pick anecdotal evidence about the application of the challenged processes to the named Plaintiffs and their trial witnesses to show during a Phase 1 trial that those processes had a disparate impact on *all* female professionals in the class."  (Dkt. 738 at 2 (emphasis in original).)  That argument, however, ignores the well-recognized practice of allowing anecdotal evidence to provide real-world examples reflected in statistics.

Defendants argue that while anecdotal evidence is permitted in Phase 1, that evidence must be specifically tied to the challenged policies.  Indeed, this Court has so previously stated.  But that requirement, and the use of comparator evidence, are not mutually exclusive.  Nor is the Court persuaded by Defendants' argument that allowing comparator discovery will require "the Court to open the floodgates of discovery" of absent class members so that Defendants can "show, person-by-person, that no discrimination occurred."  (Dkt. 738 at 3.)  One does not follow from the other for a Phase 1 trial. Defendants would have a Phase 1 trial solely based on statistics and Phase 2 trials devoted solely to individualized issues.  That cuts too finely.  Phase 2 trials will be necessary to address individualized defenses and damages.  But that does not mean that relevant anecdotal and comparator evidence tied to application of the challenged processes is not appropriate to Phase 1.

It bears keeping in mind that Plaintiffs may not claim just any male employee is a comparator and introduce evidence about that employee.  Rather, the standard for comparators is rather stringent:  though a comparator and plaintiff need not be identical, a comparator must be "similarly situated to the plaintiff in all material respects."  *Ruiz v. County of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010) (internal citation omitted); *Graham v. Long Island Railroad*, 230 F.3d 34, 39 (2d Cir. 2000); *Ortiz v. City of New York*, No. 18 Civ. 10869, 2019 WL 2174238, at *3 (S.D.N.Y. May 20, 2019); *Vitale v. Equinox Holdings, Inc.*, No. 17 Civ. 1810, 2019 WL 2024504, at *7 (S.D.N.Y. May 7, 2019). Whether Plaintiffs will be able to meet that standard for any of the male employees for which they seek comparator materials remains to be seen.  Only then would such evidence pass the threshold to admission (unless excluded for other reasons).  Denying

4

all discovery of comparators, however, would prevent Plaintiffs from even attempting to make that showing.

The Court is mindful that Plaintiffs not be permitted to use comparator evidence as a "back door" to obtaining and using boy's-club evidence.  The Court denied class certification premised on boy's-club allegations because individualized proof would "overwhelm" common issues.  *Chen-Oster*, 325 F.R.D at 83-84.  But, again, Defendants make an argument that encompasses too much.  While boy's-club evidence will not be a subject at trial, Plaintiffs are still entitled to the employment records of relevant comparators.

Finally, the Court notes that Defendants make no argument that producing the requested materials would be particularly burdensome.  Personnel files are discrete, and Defendants acknowledge they already "have produced complaint files through 2017." (Dkt. 738 at 3.)   Plaintiffs characterize all the documents as centrally stored, and Defendants have not said otherwise.  (Dkt. 735 at 2.)

At the same time, the Court has some concern about the number of comparators for which discovery is sought.  Plaintiffs seek the records for 55 purported comparators. There are, however, only four named Plaintiffs.  While there is no rule of how many comparators may be considered, Plaintiffs have not provided any rationale for why or how they arrived at the purported comparators they have selected.   In the interest of proportionality, the Court believes it appropriate to reduce the number to eight comparators per named Plaintiff for a total of 32.  Again, the Court emphasizes that whether or not the individuals identified by Plaintiffs as comparators meet the threshold for comparator status remains to be determined in advance of trial.

In sum, and having considered relevancy, proportionality, and all other pertinent factors, the Court orders that: (1) Plaintiffs shall reduce the number of comparators for which they seek discovery to 32; (2) for those 32 individuals, Defendants shall produce centrally stored (a) personnel files, (b) evaluation, compensation and promotion documents, and (c) complaint and disciplinary files if separate from the individuals' personnel files.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:       June 7, 2019
             New York, New York

Copies transmitted to all counsel of record.