# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  x
                                                              :
H. CRISTINA CHEN-OSTER; SHANNA                                :
ORLICH; ALLISON GAMBA; AND MARY DE                            :
LUIS,                                                         :
                                                              :
                                      Plaintiffs,             :
                                                              :
v.                                                            :   10 Civ. 6950 (AT) (RWL)
                                                              :
GOLDMAN, SACHS & CO. and THE GOLDMAN                          :
SACHS GROUP, INC.,                                            :
                                                              :
                                      Defendants.             :
                                                              :
------------------------------------------------------------  x
```

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 23

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166

Robert J. Giuffra, Jr.
Theodore O. Rogers, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006

*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

June 11, 2019

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................4

      A.    The Challenged Agreements.............................................................4

            1.    Separation Agreements ......................................................... 4

            2.    MD Agreements ..................................................................... 5

            3.    PWA Agreements .................................................................. 7

            4.    Equity Agreements................................................................. 7

      B.    Extensive Actual or Constructive Notice to Class Members of This Action Prior to the Execution of the Agreements ................................................8

      C.    Goldman Sachs's Arbitration Demands....................................................9

      D.    Plaintiffs' Motion To Void Arbitration Clauses or Releases in the Agreements ............................................................................9

ARGUMENT ..................................................................................................11

I.    THIS COURT SHOULD REJECT PLAINTIFFS' RELIANCE ON RULE 23 TO OVERRIDE THE FAA AND CONTRACT LAW. ..............................11

      A.    The Rules Enabling Act Prohibits Plaintiffs' *Per Se* Rule That *All* Post-Filing Agreements Are Void Under Rule 23(d). ....................................11

      B.    Courts Deny Named Plaintiffs' Motions to "Void" Agreements Under Rule 23(d). ....................................................................13

II.    PLAINTIFFS HAVE NOT SUBMITTED ANY EVIDENCE AND RELY ON INAPPOSITE LAW. ..............................................................17

      A.    *Gulf Oil* Imposes an Exacting Standard Requiring a "Clear Record" and "Specific Findings" for an Order Under Rule 23(d)..............................17

      B.    Plaintiffs Have Submitted No Evidence in Contravention of *Gulf Oil*..................18

      C.    The Only Evidence Before the Court Supports Enforcement of the Agreements and Precludes an Order Under Rule 23(d)........................21

       D.     Plaintiffs Cite Inapposite Cases Where Courts Had an Adequate Record of "Abuse" Amounting to a Contract-Based Defense...............................................22

**III.**    **CORRECTIVE NOTICE IS NOT WARRANTED HERE.** ........................................24

**CONCLUSION** ........................................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re A2P SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2016).....................................................................................11

*Am. Express Co.* v. *Italian Colors Rest.*,
  570 U.S. 228 (2013)............................................................................................... *passim*

*AT&T Mobility LLC* v. *Concepcion*,
  563 U.S. 333 (2011)..................................................................................................11, 12, 23

*Balasanyan* v. *Nordstrom, Inc.*,
  2012 WL 760566 (S.D. Cal. Mar. 8, 2012) .................................................................22, 23

*Bernhardi* v. *Lowe's Cos., Inc.*,
  2005 WL 8165980 (W.D.N.Y. Apr. 11, 2005)......................................................................14

*Bobryk* v. *Durand Glass Mfg. Co., Inc.*,
  2013 WL 5574504 (D.N.J. Oct. 9, 2013).........................................................................19, 20

*Burrell* v. *Crown Cent. Petroleum, Inc.*,
  176 F.R.D. 239 (E.D. Tex. 1997).............................................................................................18

*Cellular Tel. Co.* v. *210 E. 86th St. Corp.*,
  839 N.Y.S.2d 476 (1st Dep't 2007) ........................................................................................13

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2011).....................................................................................................18

*Crosby* v. *Stage Stores, Inc.*,
  2019 WL 1976480 (M.D. Tenn. May 3, 2019)........................................................................18

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) (Pauley, J.) .........................................................................23

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) (Pauley, J.) .................................................................23

*Doctor's Assoc., Inc.* v. *Casarotto*,
  517 U.S. 681 (1996).............................................................................................................1, 12

*Dodona I, LLC* v. *Goldman, Sachs & Co.*,
  300 F.R.D. 182 (S.D.N.Y. 2014) (Freeman, J.) ......................................................................17

*Epic Sys. Corp.* v. *Lewis*,
   138 S. Ct. 1612 (2018)...............................................................................12, 23

*Fengler* v. *Crouse Health Sys., Inc.*,
   634 F. Supp. 2d 257 (N.D.N.Y. 2009) ..................................................................18

*Gauzza* v. *Prospect Med. Holdings, Inc.*,
   2018 WL 4853294 (E.D. Pa. Oct. 4, 2018)...........................................................19

*Gold* v. *Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004)..................................................................................13

*Griffin* v. *Aldi*,
   2017 WL 1957021 (N.D.N.Y. May 11, 2017)................................................15, 24

*Gulf Oil Co.* v. *Bernard*,
   452 U.S. 89 (1981) ...................................................................................... *passim*

*Holl* v. *United Parcel Serv. Inc.*,
   No. 16 Civ. 5856, slip op. (N.D. Cal. Sept. 18, 2017), *aff'd* 2019 WL 2293441
   (9th Cir. May 30, 2019) ........................................................................................20

*Jimenez* v. *Menzies Aviation, Inc.*,
   2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ......................................................23

*Johnson* v. *Equinox Holdings, Inc.*,
   2014 WL 1677117 (S.D.N.Y. Apr. 28, 2014) (Cott, J.) ........................................17

*Kerce* v. *W. Telemarketing Corp.*,
   575 F. Supp. 2d 1354 (S.D. Cal. 2008)..................................................................19

*Lamps Plus, Inc.* v. *Varela*,
   139 S. Ct. 1407 (2019)....................................................................................12, 23

*Licensed Practical Nurses, Technicians & Home Health
Care Workers of N.Y., Inc.* v. *Ulysses Cruises, Inc.*,
   131 F. Supp. 2d 393 (S.D.N.Y. 2000) (Lynch, J.) .................................................12

*Lillehagen* v. *Alorica, Inc.*,
   2014 WL 12768156 (C.D. Cal. Dec. 18, 2014) ...........................................*passim*

*MetLife Inv'rs USA Ins. Co.* v. *Zeidman*,
   734 F. Supp. 2d 304 (E.D.N.Y. 2010) (Spatt, J.).....................................................3

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...................................................................................................11

*O'Callaghan* v. *Uber Corp. of Cal.*,
    2018 WL 3302179 (S.D.N.Y. July 5, 2018) (Ramos, J.)........................................21

*O'Connor* v. *Uber Techs., Inc.*,
    2013 WL 6407583 (N.D. Cal. Dec. 6, 2013)...................................................22, 23

*Piekarski* v. *Amedysis Illinois LLC*,
    4 F. Supp. 3d 952 (N.D. Ill. 2013) .........................................................23

*Ralph Oldsmobile, Inc.* v. *Gen. Motors Corp.*,
    2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001) (Schwartz, J.)........................... *passim*

*Stevenson* v. *Great American Dream, Inc.*,
    2014 WL 3519184 (N.D. Ga. July 15, 2014)............................................14, 19, 20

*Tomkins* v. *Amedisys, Inc.*,
    2014 WL 129401 (D. Conn. Jan. 13, 2014)................................................24

*Uniroyal, Inc.* v. *Home Ins. Co.*,
    707 F. Supp. 1368 (E.D.N.Y. 1988) (Weinstein, J.) ...................................12

*In re Visa Check/MasterMoney Antitrust Litig.*,
    2005 WL 8158402 (E.D.N.Y. Nov. 4, 2005) (Wilcox, Special Master) .................16

*Williams* v. *Securitas Security Services USA, Inc.*,
    2011 WL 2713741 (E.D. Pa. July 13, 2011)...............................................23

**Statutes**

9 U.S.C. § 2 ...............................................................................1

28 U.S.C. § 2072(b) .....................................................................2, 11

**Other Authorities**

Federal Rule of Civil Procedure 23(d).............................................. *passim*

FINRA Code of Arbitration Procedure for Industry Disputes Rule 13201 ................4, 6

Manual for Complex Litig. § 21.12 (4th ed. 2004).....................................17, 18

## PRELIMINARY STATEMENT

In moving to void 1,291 arbitration and release agreements (the "Agreements") entered into after the September 15, 2010 filing of the initial Complaint, named Plaintiffs ignore the Federal Arbitration Act ("FAA"), basic principles of contract law, and the evidentiary requirements to obtain an order under Federal Rule of Civil Procedure 23(d).  Named Plaintiffs, who are not themselves parties to any of the Agreements, do not claim that a single class member seeks to void her Agreement.  Indeed, no class member has come forward to establish—as she must—a contract-based defense, such as fraud or unconscionability, if she wishes to void her Agreement with Goldman Sachs.  The Court should deny Plaintiffs' motion for the following reasons.

*First*, named Plaintiffs cannot shift to Goldman Sachs the burden of individual class members[1] by claiming that those class members were "presumptively unaware" of this action, because the Agreements did not expressly reference this then-putative class action, and, as a result, the Court should void *all* Agreements executed after the Complaint's filing under Rule 23(d) "without the need for further analysis."  (Pls.' Br. at 8–9, 12.)  Plaintiffs' *per se* rule would eliminate the presumption of validity under contract law and the FAA's mandate that agreements to arbitrate "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, unless a party to the agreement proves a "generally applicable contract defense[]," such as fraud or unconscionability.  *Doctor's Assoc., Inc*. v. *Casarotto*, 517 U.S. 681, 687 (1996).  Plaintiffs' overbroad and unsupported interpretation of Rule 23(d) to "invalidat[e] private arbitration

---

[1]      "Class member" is used in herein to refer to persons who purportedly entered into the Agreements, but who were *putative* class members or had no class status at all (*e.g*., they signed agreements *before* starting employment at Goldman Sachs) when the Agreements were executed.

agreements" and release agreements entered after the filing of a putative class action "would be an abridgement or modification of a 'substantive right' forbidden" by the Rules Enabling Act, 28 U.S.C. § 2072(b). *Am. Express Co*. v. *Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (brackets omitted).

Thus, in keeping with both the FAA and contract law, courts deny motions under Rule 23(d) by named plaintiffs seeking to void agreements between defendants and other class members. Instead, courts require the party to the agreement to present a fully-developed record establishing their entitlement to this extreme remedy. *See Ralph Oldsmobile, Inc.* v. *Gen. Motors Corp.*, 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (Schwartz, J.) (declining to void release agreements where "no [class member] that has signed a release has asked the [c]ourt to void" it, and where "there [was] nothing in the record indicating, one way or the other, what most of the [class members] did or did not know about th[e] action" when they executed releases); *Lillehagen* v. *Alorica, Inc*., 2014 WL 12768156, at *7 (C.D. Cal. Dec. 18, 2014) (enforcing arbitration agreement where "nothing in the record" showed agreements were invalid, and concluding that Rule 23(d) did not "trump the federal policy in favor of enforcing arbitration agreements").

*Second*, named Plaintiffs make no effort to meet the exacting standard required for a Rule 23(d) order. Under *Gulf Oil Co.* v. *Bernard*, 452 U.S. 89 (1981), Rule 23(d) remedial orders must be based on "a clear record and specific findings" of abusive communications with class members and provide "the narrowest possible relief" to "protect the respective parties." *Id.* 101–102. Plaintiffs have submitted *no record evidence at all*, but seek the *most extreme possible relief*—to void every post-filing Agreement.

*Third*, Plaintiffs rely on inapposite cases where courts made specific findings of

-2-

abusive communications in circumstances involving (i) vulnerable class members; (ii) who received little or no consideration; (iii) for entering into agreements intended to end-run a class action.  By contrast, Defendants have submitted the only evidence on this motion, establishing that the then-putative class members who entered into the Agreements (1) were highly sophisticated and compensated; (2) had actual and constructive notice of this class action when entering the Agreements through document hold notices to over 90% of class members and the extensive press coverage of this action; and (3) received substantial consideration in exchange for the Agreements, which, in most cases, have been standard business practices of Goldman Sachs for nearly 20 years.

*Finally*, class counsel has refused to reach out to any class members to discuss the facts and circumstances surrounding their Agreements, even though the voiding of the Agreements could have financial consequences for those class members.  *See MetLife Inv'rs USA Ins. Co.* v. *Zeidman*, 734 F. Supp. 2d 304, 315 (E.D.N.Y. 2010) (Spatt, J.) ("[T]he ordinary result of the rescission of a contract is that each party return the other to its pre-contract condition.").  For example, the Agreements providing severance benefits expressly state that Goldman Sachs can seek the return of financial consideration paid to class members if the release of claims is found to be "unlawful or unenforceable."  (*See*, *e.g.*, Declaration of Robert J. Giuffra, Jr., dated June 11, 2019 ("Giuffra Decl." or "Giuffra Declaration"), Ex. 6 at § 8.1.)[2] Plaintiffs nevertheless ask this Court to void the Agreements *en masse*, even though no class member has stated her support of this drastic remedy, and propose no alternative remedies other than voiding the Agreements.

---

[2]     References herein to "App." or "Ex." are to Appendices or Exhibits to the Giuffra Declaration, unless otherwise noted.

## FACTUAL BACKGROUND

### A.     The Challenged Agreements

Named Plaintiffs challenge bilateral Agreements that were substantially similar to those that Goldman Sachs and its professionals have entered for many years.  In doing so, Plaintiffs also ignore that arbitration of employment disputes has long been a standard business practice across the financial services industry.  *See* FINRA Code of Arbitration Procedure for Industry Disputes Rule 13201 (requiring arbitration of most employment disputes between registered representatives and employers).   In the Agreements, sophisticated financial professionals accepted highly valuable consideration from the Firm: (i) promotion to Extended Managing Director ("EMD") or Participating Managing Director ("PMD"); (ii) employment in the highly sought-after role of Private Wealth Advisor ("PWA"); (iii) valuable discretionary severance benefits (in some cases ███████████████████); and (iv) discretionary equity-based compensation ("Equity-Based Awards").  In return, Goldman Sachs received class members' promise to arbitrate any claims they might have against the Firm, and, in exchange for severance benefits, a release of claims.  The Firm has asked its professionals, regardless of gender, to enter into each of these forms of agreement.  The Agreements did not expressly reference any pending putative class action litigation, including this action.

### 1.     Separation Agreements

Goldman Sachs, at its discretion, has long offered generous severance benefits to departing male and female professionals.  (*See*, *e.g.*, Exs. 5, 10, 12.)  In exchange, Goldman Sachs requests a full release of all claims.  The Firm has used a substantially similar standard Separation Agreement since at least 2002, eight years before the filing of this action.  (*Compare* Ex. 10 *with* Ex. 12.)   These valuable benefits have included, for example, ███████████ ███████████████████████████████████████████████████████████████████



class members' individual counsel (which, in two agreements, was Outten & Golden, counsel for the class here).[3]

The broad release in Separation Agreements expressly covered ███████ (*Id.*, Ex. 6 at § 3.1 (emphasis added).)  The Separation Agreements further provided that if ███

(*Id.* § 10.1 (emphasis added).)  Finally, the Separation Agreements provided that ████████

(*Id.* at § 7.1 (emphasis added).)

### 2.    MD Agreements

Plaintiffs seek to void all arbitration clauses in any post-filing Agreement in which class members agreed to arbitration in exchange for promotion to the senior and select

---

[3]      (*See*, *e.g.*, Ex. 4 (███████████████████████████████ Outten & Golden in exchange for release of claims and agreement to arbitrate disputes); Ex. 12 (class member agreeing to release claims and arbitrate disputes in exchange for ███████████████████).)

ranks of EMD and PMD[4]—the highest corporate titles at the Firm ("MD Agreements").

Goldman Sachs has used a substantially-identical form of MD Agreement since at least 2003, seven years before the filing of this action. (*Compare* Ex. 13 *with* Ex. 14.) Promotion to EMD represents the culmination of an intensive vetting process and, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Declaration of David Landman, dated June 6, 2019 ("Landman Decl."), ¶ 4.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. ¶ 5.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All EMDs and PMDs are highly educated, experienced, and sophisticated financial professionals. (*Id*. ¶¶ 4–6); FINRA Rule 13201.

For at least the past 17 years, in exchange for promotion to EMD and PMD, all professionals, regardless of gender, have agreed, as a material term, to arbitrate ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 13 at §§ 8, 10.) In addition to promotion to the senior ranks of EMD or PMD and continued employment, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Landman Decl. ¶ 7.) EMDs and PMDs continue to be eligible for

---

[4]   Of the 1,291 Agreements at issue, Plaintiffs identify 349 as Separation Agreements and 695 as "stock award agreements," without further particulars about the remaining 247 Agreements. (Declaration of Michael Levin-Gesundheit, dated April 12, 2018 ("Levin-Gesundheit Decl.") (ECF No. 719), ¶¶ 5–8.) Plaintiffs assert that these 247 Agreements were included in Goldman Sachs's arbitration demands (*id*. ¶ 4), and because those demands included MD Agreements and PWA Agreements, Defendants assume that such Agreements represent some portion of the remaining 247 Agreements at issue.

discretionary annual bonuses, which may be very substantial.  (*Id.*)

  **3.**  **PWA Agreements**

   Plaintiffs seek to void arbitration clauses in all agreements in which class members agreed to arbitrate disputes with the Firm in exchange for employment as a Private Wealth Advisor after the filing of the Complaint ("PWA Agreements").

    Since at least 1998, again, long before the filing of this action, Goldman Sachs has required male and female PWAs, often prior to the commencement of employment, to enter into a substantially similar PWA Agreement, regardless of gender.  (*See* Declaration of Kathleen Cupertino, dated June 7, 2019 ("Cupertino Decl."), ¶ 7.)  The PWA role is highly sought-after, and Goldman Sachs currently hires around ▮ new PWAs each year from, on average, ▮▮▮▮▮ (*Id.* ¶ 5.) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (*id.* ¶¶ 8–11), PWAs agreed, as a material term, that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (Ex. 15 at § 7 (emphasis added).)  PWAs are highly educated and sophisticated financial professionals, and all are registered with FINRA, which requires arbitration of most employment-related disputes.  (*See* Cupertino Decl. ¶¶ 4, 6.)

  **4.**  **Equity Agreements**

   Plaintiffs seek to void arbitration clauses in 695 agreements in which class members received Equity-Based Awards, in exchange for which *all* employees, regardless of gender, agreed, as a material term, to arbitrate "*all claims arising out of or relating to [their] employment* with the Firm or the termination thereof, or otherwise concerning any rights, obligations or other aspects of [their] employment relationship with the Firm" ("Equity

Agreements").   (Levin-Gesundheit Decl., Ex. B at ¶ 1 (emphasis added).).



(Declaration of Eric Dias, dated June 10, 2019 ("Dias Decl."), ¶ 4.)

(*Id.*)   The approximate value of all Equity-Based Awards for the time period at issue in Defendants' Motion to Compel Arbitration, based on the stock price on the date of grant,

[5]   (*Id.* ¶ 13, Ex. 1.)

(*Id.* ¶ 5.)

### B. Extensive Actual or Constructive Notice to Class Members of This Action Prior to the Execution of the Agreements

The sophisticated, highly educated, and highly compensated class members who entered into Agreements after the filing of the Complaint were on actual or constructive notice of this lawsuit.   Over 90% of class members employed by Goldman Sachs after the filing of the Complaint received individual document retention notices ("Hold Notices") specifically alerting them to this action.   (*See* App. B.)   As described in the sub-part to Part C of Defendants' Motion to Compel Brief (ECF No. 726) at 15–16, which is hereby incorporated by reference, this action has received extensive press coverage since it was filed on September 15, 2010.   (*See* Exs. 27–140.)

---

[5]   This approximate value is calculated by                                        (*See* Dias Decl. ¶ 13, Ex. 1.)                                        (*id.* ¶ 3),

### C.     Goldman Sachs's Arbitration Demands

Promptly following the January 14, 2019 close of the opt-out period, Goldman Sachs served on class counsel individual demands for arbitration, each of which included contact information for the class member.  (*See*, *e.g.*, Exs. 16–22.)  Goldman Sachs repeatedly urged class counsel to confer with class members regarding the demands and their obligations under the Agreements, and offered "to consider any reasonable request for additional time" to do so. (*See*, *e.g.*, ECF No. 668 at 1.)  To Defendants' knowledge, class counsel has never conferred with class members about the Agreements.[6]

### D.     Plaintiffs' Motion To Void Arbitration Clauses or Releases in the Agreements

In their motion, Plaintiffs seek an order under Rule 23(d) that (i) "*[a]rbitration clauses* contained in 942 [A]greements . . . that were purportedly executed after the filing of this lawsuit . . . are **VOID**"; and (ii) "*[r]eleases of claims* contained in 349 [Separation Agreements] or other settlement agreements . . . executed after the filing of this lawsuit . . . are **VOID**."  (Pls.' Proposed Order (ECF No. 720) ¶¶ 1, 2 (bold emphasis only in original).)  Plaintiffs do not seek an order voiding the *arbitration clauses* in the 349 Separation Agreements (*see id.* ¶ 2), and recognize that these Agreements are "enforceable through arbitration."  (Pls.' Br. at 3.)

In support of their motion, Plaintiffs submit a single lawyer's declaration of just over two pages.  (*See* Levin-Gesundheit Decl..)  Except for one exemplar PWA Agreement, (*id.*, Ex. C), none of the 1,291 Agreements was submitted to the Court or is otherwise identified in the

---

[6]     *See*, *e.g.*, Ex. 16 (exemplar arbitration demand requesting that class counsel "consult with [their client] and confirm that she understands and will comply with her obligations under the Agreement. . . ."); Feb. 25, 2019 Conf. Tr. at 8:8–11 (ECF No. 688) (Mr. Giuffra:  "I think [class counsel] have certain responsibilities . . . to go and speak to [their clients] particularly the ones that gave us releases."); Ex. 23 ("[W]e write concerning class counsel's apparent failure to reach out to class members to discuss the arbitration demands . . . .").

record on the motion.[7]   Plaintiffs' counsel asserts that 30 unidentified Agreements were "purportedly executed" after the Court's March 30, 2018 Certification Order (*id*. ¶ 4), but Defendants' Motion to Compel Arbitration  included only 15 agreements dated after the Certification Order, consisting of one Separation Agreement where the class member was represented by her own counsel; six PWA Agreements executed *pre-hiring* (*i.e.*, when the prospective employee was not yet a putative class member); and eight Equity Agreements where the class member was granted her award *before* the Certification Order (at the same time as all other eligible employees), but chose to accept the award electronically after the Firm's initial acceptance deadline.  (*See* App. A; Dias Decl., Ex. 1.).

Though conceding in the class notice sent to all class members in November 2018 ("Notice") that a class member's right to participate in this action turns on the "terms and circumstances of [her] . . . agreement" (Ex. 24 at 3), Plaintiffs have submitted no evidence establishing the "circumstances" surrounding the formation of any Agreement, such as any affidavit or other evidence from a class member establishing a contract-based defense of duress, fraud, coercion or unconscionability, or that she even wants her Agreement voided.

---

[7]     Plaintiffs include in their motion 89 Agreements for which "the date [of the agreement] is illegible." (Levin-Gesundheit Decl. ¶ 4 n.1.)   Plaintiffs include no particulars for these Agreements, such as the names of the class members who allegedly executed them, or the "date" that is allegedly "illegible."  On their Motion to Compel Arbitration (ECF No. 715), Defendants determined whether the agreements at issue were executed before or after the filing of the Complaint, even where the date on the signature page was illegible, by examining other indicia in those documents.  (*See* Exs. 1–3, 7–11 (exemplar agreements with illegible signature where cover page or other indicia show agreements were executed before the filing of the Complaint).)

## ARGUMENT

I. **THIS COURT SHOULD REJECT PLAINTIFFS' RELIANCE ON RULE 23 TO OVERRIDE THE FAA AND CONTRACT LAW.**

   A. **The Rules Enabling Act Prohibits Plaintiffs' *Per Se* Rule That *All* Post-Filing Agreements Are Void Under Rule 23(d).**

In their motion, Plaintiffs propose that Rule 23(d) be interpreted to impose a *per se* rule voiding *all* arbitration or release agreements executed after the filing of a putative class action unless the agreements expressly reference the litigation.  In support of their interpretation of Rule 23(d), which is not supported by the terms of the Rule itself, Plaintiffs assert that: (i) class members "are presumptively unaware of the existence of [a] class action and their related rights" (Pls.' Br. at 9); and (ii) the timing of the Agreements "alone provides . . . sufficient reason to strike" them without "any further analysis" (*id*. at 12).  Plaintiffs cite no authority for their interpretation of Rule 23(d), which would contravene Defendants' substantive rights under the FAA and contract law.

Under the Rules Enabling Act, a procedural rule may not "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  The FAA enacted "a body of federal substantive law of arbitrability" affording parties the right to have their arbitration agreements enforced as written.  *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011) (FAA's "primary substantive provision" deems agreements to arbitrate to be "valid, irrevocable, and enforceable," unless a contract-based defense is proven) (internal citations omitted).  Thus, this Court's adoption of Plaintiffs' *per se* rule under Rule 23(d) to "invalidat[e] private arbitration agreements . . . would be an abridgement or modification of a substantive right forbidden to the Rules."  *Italian Colors*, 570 U.S. at 234 (internal citations omitted); *see In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 496 (S.D.N.Y. 2016) (Nathan, J.) (Supreme Court "concluded that

-11-

there was no 'contrary congressional command' in . . . [Rule 23] that would override Congress' command in the FAA" to "'rigorously enforce' arbitration agreements") (quoting *Italian Colors*, 570 U.S. at 233)).[8]  Similarly, Plaintiffs' request to invalidate other contractual rights—such as a release of claims in the Separation Agreements—under the guise of Rule 23 would abridge substantive rights and is "forbidden."  *Licensed Practical Nurses, Technicians & Home Health Care Workers of N.Y., Inc.* v. *Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 397 (S.D.N.Y. 2000) (Lynch, J.) ("[S]tate law . . . governs substantive questions involving the making and enforcement of contracts"); *Uniroyal, Inc.* v. *Home Ins. Co.*, 707 F. Supp. 1368, 1372–78 (E.D.N.Y. 1988) (Weinstein, J.)  (considering conflict between Rule 56 and substantive state law applicable to insurance contracts and holding that "[w]hen confronted with the clear edicts" of substantive state law, the Federal Rules of Civil Procedure "must yield").

Plaintiffs' proposed interpretation of Rule 23(d) as creating a *per se* rule that class members were "unaware" of this action when they entered into the Agreements conflicts with the established presumptions that do apply here.  Under the FAA, arbitration agreements must be presumed "*valid, irrevocable and enforceable.*"  *Doctor's Assocs. Inc.*, 517 U.S. at 686 (citing 9

---

[8]      Moreover, the Supreme Court has reiterated, multiple times, that policy considerations "unrelated to the FAA"—which would include those underlying Rule 23(d)—cannot "trump" enforcement of valid arbitration agreements.  *Italian Colors*, 570 U.S. at 234, 238 n.5 (enforcing arbitration agreement notwithstanding adverse impact on vindication of federal antitrust claims and emphasizing that Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights"); *see also Lamps Plus, Inc.* v. *Varela*, 139 S. Ct. 1407, 1415 (2019) (holding state law of contract construction preempted where it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA") (internal citation omitted); *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1623, 1627 (2018) (rejecting argument "that a contract is unenforceable just because it requires bilateral arbitration" and stressing "in many cases over many years" that the Supreme Court has "rejected efforts to conjure conflicts between the [FAA] and other federal statutes") (collecting cases) (emphasis in original); *Concepcion*, 563 U.S. at 351 (striking down state law prohibiting class waivers in consumer contracts as "inconsistent with the FAA, even if it is desirable for unrelated reasons").

U.S.C. § 2) (emphasis added).  And under contract law, "a party who signs and accepts a written contract . . . *is conclusively presumed to know its contents and assent to them*."  *Gold* v. *Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (emphasis added) (internal quotations omitted).  This presumption "appl[ies] with even greater force" where, as here, the parties are "sophisticated."  *Cellular Tel. Co.* v. *210 E. 86th St. Corp.*, 839 N.Y.S.2d 476, 480 (1st Dep't 2007).  Plaintiffs do not suggest that the language of any Agreement is ambiguous. As a result, when class members agreed to arbitrate all employment-related disputes or to release "known and unknown" claims, they must be presumed to have understood these obligations and are bound by them.  *Gold*, 365 F.3d at 144.[9]  These bedrock presumptions cannot be displaced by a procedural rule.

### B.  Courts Deny Named Plaintiffs' Motions to "Void" Agreements Under Rule 23(d).

Rule 23(d) provides, in pertinent part, that in a class action, "the court may issue orders that: . . . *impose conditions on the representative parties or on intervenors*" or "deal with similar *procedural matters*."  Fed. R. Civ. P. 23(d)(1)(C), (E) (emphasis added).  The Rule nowhere contemplates automatically voiding arbitration or release agreements entered into by absent class members simply if those agreements do not reference a pending putative class action.  Courts have accordingly denied motions brought by named plaintiffs under Rule 23(d)

---

[9]      The scope of the release in the Separation Agreements, which covers both ██████████ ███████████ effectively renders class members' "awareness" of this case irrelevant to enforcement of the release.  And in any event, the enforcement of the releases is not properly before this Court, and the Court should not rule on this issue.  Under the plain terms of the Separation Agreements, *an arbitrator* must decide ███████████ ███████████████████████ (Ex. 6 at § 7.1) (emphasis added), and Plaintiffs have not moved to void the arbitration clauses in those agreements.  (*See* Pls.' Proposed Order at ¶ 2.)  Defendants address Plaintiffs' claims over the releases in the Separation Agreements for the sake of completeness.

seeking to void such post-filing agreements between class members and defendants.

For example, in *Stevenson* v. *Great American Dream, Inc.*, an FLSA collective action, the court "reject[ed] [plaintiff's] arguments for why the Court, pursuant to its inherent authority to manage a collective action, ought to disregard the arbitration agreement."[10]  2014 WL 3519184, at *2 (N.D. Ga. July 15, 2014).  The court rebuffed the same claims asserted here that "an otherwise permissible arbitration agreement is unconscionable if it was executed during the pendency of a collective action," and that all such agreements are "presumptively [] impermissible."  *Id.*, at *1, *2.  The court noted that the defendant "did not communicate with [the collective action member] *about this case*.  The [d]efendant simply did what it was allowed to do: it required its employees to arbitrate, rather than litigate, rights under various federal statutes."  *Id.* at *2 (brackets omitted and emphasis added).  The court thus found that even if the collective member "was unaware of this litigation when she signed the arbitration agreement, . . . the text of the arbitration agreement made it clear to her that she could not participate in [a] FLSA collective action suit, *pre-existing or not*."  *Id.* at *3 (emphasis added).

In *Lillehagen*, the court similarly rejected the notion that post-filing arbitration agreements are *per se* "unenforceable as products of improper communications" under Rule 23(d).  2014 WL 12768156, at *3.  The court emphasized that, as here, "[p]laintiffs ha[d] not attempted to argue that the [a]greements were unconscionable" and "ha[d] not provided any admissible evidence," and thus "nothing in the record potentially show[ed] that the [collective members] did not understand that they were agreeing to arbitrate their disputes . . . or that the

---

[10]  "[C]ommunications between parties to a[n] [FLSA] collective action are evaluated in the same manner as communications between parties to a Rule 23 class action," notwithstanding the "substantial procedural differences between" the two.  *Bernhardi* v. *Lowe's Cos., Inc.*, 2005 WL 8165980, at *2 n.1 (W.D.N.Y. Apr. 11, 2005) (citing *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103–04 (S.D.N.Y. 2003) (Smith, J.)).

agreements [were] otherwise invalid." *Id*. at *7.  The court thus was "not persuaded that the federal policy against improper communications should trump the federal policy in favor of enforcing arbitration agreements." *Id*.

In *Ralph Oldsmobile, Inc.* v. *General Motors Corp.*, the defendant "offered [car] dealers . . . certain transition payments" in exchange for a release "without referring to th[e] action and without informing dealers . . . that . . . signing the release may have waived or limited their rights in th[e] action."  2001 WL 1035132, at *1 (S.D.N.Y. Sept. 7, 2001) (Schwartz, J.). Because, unlike here, class members did not have actual or constructive notice of the pending action, the court found  the releases could be "*potential[ly]*" coercive or unknowing, *id*., at *3, but stressed that, as here, "no [class member] that has signed a release has asked the [c]ourt to void" it, and that "there [was] nothing in the record indicating, one way or the other, what most of the [class members] did or did not know about th[e] action" when they signed the releases.  *Id*. at *7.  The court further emphasized that "even if a [class member] knew nothing about th[e] action when it signed the release, [it] might wish to ratify the release even after it learns of this action."  *Id.*   The court thus "decline[d] . . . to void the releases that ha[d] already been executed," and instead found the "appropriate solution" was to provide a supplemental notice to class members in the form of a statement stating that the Court would consider an *individual* application to void a release by a class member so that "the Court can consider this issue *with knowledge of the applicable facts* and law."  *Id*. (emphasis added).

And in *Griffin* v. *Aldi*, plaintiff sought an order under Rule 23(d) to bar use of releases included in separation agreements executed by departing grocery store managers after the FLSA collective action was filed.  2017 WL 1957021 (N.D.N.Y. May 11, 2017).  Again, unlike here, the departing employees did not receive actual or constructive notice of the pending

action.  Plaintiff also presented evidence showing that the employer "threatened [managers] with a challenge to their otherwise legitimate unemployment claims unless they sign[ed]," and that collective members were confused about the effect of their agreements.  *Id*. *2, *3.  Even after finding that these agreements were misleading, the court concluded it was "not currently in a position to declare unenforceable any separation agreements," because "[p]laintiffs have failed to provide a 'clear record' of threatened or actual abuses."  *Id*. at *6.  The court emphasized that the named plaintiffs "ha[d] not pointed to a single former store manager who signed the release and now want[ed] the [c]ourt to void it," and that "there [was] no evidence one way or the other" concerning class members' knowledge of the lawsuit."  *Id*. at *7.  Without that showing, the court did not "prevent [defendant] from enforcing the releases it ha[d] already obtained."  As in *Ralph Oldsmobile*, the court ordered a corrective notice to inform collective members that they could "get in touch with plaintiffs' counsel" if they had a basis to challenge their agreements. *Id*.; *see In re Visa Check/MasterMoney Antitrust Litig*., 2005 WL 8158402, at *15 (E.D.N.Y. Nov. 4, 2005) (Wilcox, Special Master) (finding third-party claim-filing service provider misled class members, but recommending that "[a]bsent an individual finding with respect to every [c]lass [m]ember who contracted," an "assumption" that class members will want to end their contractual relationship was "[not] warranted").

In sum, these cases make clear that agreements cannot be "voided" *en masse* under Rule 23(d), as Plaintiffs propose.  Instead, in keeping with the FAA, contract law, and the Supreme Court's decision in *Gulf Oil*, class members must be before the Court and must establish, through admissible evidence, a "contract-based defense" to void their Agreements. Unless that burden is met, *all* the Agreements are enforceable.  As shown below, Plaintiffs have submitted *no* evidence to meet class members' burden, and thus their motion should be denied.

II.   **PLAINTIFFS HAVE NOT SUBMITTED ANY EVIDENCE AND RELY ON INAPPOSITE LAW.**

    A.   ***Gulf Oil* Imposes an Exacting Standard Requiring a "Clear Record" and "Specific Findings" for an Order Under Rule 23(d).**

Beyond improperly seeking to evade the FAA and contract law, Plaintiffs fail to meet the requirements for any order under Rule 23(d).   Indeed, because of the "potential interference with the rights of the parties"—which include not only First Amendment rights, but the substantive rights afforded by the FAA and state contract law—the Supreme Court in *Gulf Oil*, 452 U.S. at 101, imposed an exacting standard for an order under Rule 23(d).

*First*, this Court "may not exercise [its] power" under Rule 23(d) "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id*. at 102 (citation omitted); *see Dodona I, LLC* v. *Goldman, Sachs & Co*., 300 F.R.D. 182, 185, 186 (S.D.N.Y. 2014) (Freeman, J.) (order under Rule 23 "must be 'based on a clear record'" and finding it "difficult to see how Defendants' communications with sophisticated, institutional class members . . . would create any risk of actual abuse") (citations omitted); *Johnson* v. *Equinox Holdings, Inc*., 2014 WL 1677117, at *1 (S.D.N.Y. Apr. 28, 2014) (Cott, J.) ("Judicial intervention" under Rule 23(d) "is justified only upon a clear record") (internal quotation marks omitted).

*Second*, based on the "clear record" submitted with this motion—which, as shown below, is completely missing here—this Court must make "specific findings" that result in a "carefully drawn order . . . giving explicit consideration to *the narrowest possible relief* which would protect the respective parties."   *Gulf Oil*, 452 U.S. at 101–02 (emphasis added) (citation omitted).   Thus, courts "are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent *serious misconduct*," and "[e]ven if the court finds . . . abuse, less burdensome remedies may suffice."   Manual for

-17-

Complex Litig. § 21.12 (4th ed. 2004) (emphasis added).  District courts are reversed where the required "specific findings" are not made.[11]

Plaintiffs ignore the standards imposed by Rule 23(d) and *Gulf Oil*.  Rather than "the narrowest relief possible" based on a "clear record," Plaintiffs seek the most extreme remedy—the *voiding* of *all* 1,291 Agreements—and, as shown below, submit no evidence at all.

### B. Plaintiffs Have Submitted No Evidence in Contravention of *Gulf Oil*.

In their motion, Plaintiffs rest entirely on a two-page lawyer's declaration and do not offer *any* first-hand evidence from class members concerning the execution of the Agreements—indeed, *they do not even offer the Agreements as part of their proof*.  Courts have denied motions under Rule 23(d) where, as here, plaintiffs submitted only a lawyer's declaration "attest[ing] to generalizations" that did not allow the court to issue an order based on "a clear record and specific findings."  *Burrell* v. *Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D. Tex. 1997) (internal citations omitted); *see Crosby* v. *Stage Stores, Inc.*, 2019 WL 1976480, at *5 (M.D. Tenn. May 3, 2019) (denying motion under Rule 23(d) where "bulk of [p]laintiffs' evidentiary support" was in their counsel's declaration "recit[ing] four complaints [of] anonymous employees," and finding *Gulf Oil* required "clear and direct" evidence, "not the second and third-hand accounts of counsel"); *Lillehagen*, 2014 WL 12768156, at *7 (denying motion where "[p]laintiffs ha[d] not provided any admissible evidence" and "nothing in the record . . . show[ed] that . . . Plaintiffs did not understand that they were agreeing to arbitrate

---

[11]    *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 311 (3d Cir. 2011) (reversing district court's order under Rule 23 where court "never specified which portions of the solicitation letters were objectionable" and conducted "no evidentiary hearing"); *Fengler* v. *Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 260–61 (N.D.N.Y. 2009) (vacating magistrate judge's order prohibiting "unsolicited communication" between parties and putative plaintiffs where "the [o]rder [lack[ed] any specific weighing of competing interests"; "[t]here was no hearing"; and the moving party did not make "any showing of threatened abuses").

-18-

their disputes").

Without submitting any evidence, Plaintiffs rely on baseless presumptions and invoke the bare fact of the employment relationship between class members and Goldman Sachs to claim that all "942 [Agreements] containing arbitration clauses" (but not the 349 Separation Agreements) were "coercive." (Pls.' Br. at 15–16.) But Plaintiffs do not, and cannot, explain how any class member was "coerced" into a prestigious promotion to Managing Director, sought-after employment as a PWA, or valuable Equity-Based Awards. *See Stevenson*, 2014 WL 3519184, at *3 (rejecting claims under Rule 23(d) where plaintiff "point[ed] to nothing" that was "suspect" about arbitration agreement and relied on "inherent bargaining power asymmetry found in any employer-employee relationship"); *Kerce* v. *W. Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366–67 (S.D. Cal. 2008) (declining to strike allegedly coerced employee declarations absent evidence that employer "misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined . . . confidence in . . . class counsel"). Plaintiffs also ignore that those Agreements executed before the employment relationship had even begun preclude any finding of "coercion." (*See* Cupertino Decl. ¶ 7 ("NPWAs often execute their agreement at the . . . time they are extended a full-time offer to return to the Firm"); *Gauzza* v. *Prospect Med. Holdings, Inc.*, 2018 WL 4853294, at *2 (E.D. Pa. Oct. 4, 2018) ("continu[ing] [] preexisting policy of requiring new hires to sign arbitration agreements as a condition for employment" is "not inherently abusive" under Rule 23(d)).[12]

---

[12]      Plaintiffs also invoke the "failure to provide class counsel's contact information" as a standalone basis to void an agreement. (Pls.' Br. at 14-15.) This is incorrect. Courts "examine[] the entirety of defendant's conduct and communications" under *Gulf Oil*, and there is no "statutory rule or case law that requires defense counsel to give specific information and instructions to putative class members, nor [are there] any 'magic words' that must be disclosed." *Bobryk* v. *Durand Glass Mfg. Co., Inc.*, 2013 WL 5574504, at *6 (D.N.J. Oct. 9,

Plaintiffs' only discussion of the Agreements focuses exclusively on the "Signature Cards" executed in connection with valuable Equity-Based Awards, which, as shown on Defendants' Motion to Compel Arbitration, class members specifically assented to in an electronic agreement of the type that courts routinely enforce.[13]  (*See* ECF No. 726 at 13, 21.) Plaintiffs provide no evidence of duress, coercion, or unconscionability, let alone "abuse," and principally contend that these agreements included a "buried" arbitration clause in the "fine print."  (Pls.' Br. at 5, 7, 16.)  But the arbitration clause appears on the first page and first column and in the same size and font as the rest of the document, and states in plain language (that Plaintiffs do not contend is ambiguous) that class members agreed to arbitrate "all claims" with the Firm.  (Levin-Gesundheit Decl., Ex. B at 1.)  Not a single class member who executed a Signature Card has come forward to prove a contract-based defense, and, in fact, Plaintiffs do not even challenge the Signature Cards "on the . . . ground of lack of formation," and "reserved the right" to do that at some later point.  (Pls.' Br. at 3 n.4.)[14]  This hardly constitutes a "clear

---

2013); *see Stevenson*, 2014 WL 3519184, at *3 (enforcing arbitration agreement that did not mention case name or class counsel contact information and rejecting argument that "the [d]efendant ought to have informed [opt-in plaintiff] of the current litigation").

[13]     Plaintiffs claim that the inclusion of a different arbitration clause in a completely separate document (*see* Gesundheit-Levin Decl., Ex. A), was "highly misleading" without even attempting to establish that anyone was actually misled.  (Pls.' Br. at 6.)  In any event, courts routinely enforce agreements—even those involving multiple sets of terms and conditions accessed through multiple hyperlinks—where, as here, parties indicate their assent by clicking checkboxes.  *See*, *e.g.*, *Holl* v. *United Parcel Serv. Inc.*, No. 16 Civ. 5856, slip op. at 5, 7–8 (N.D. Cal. Sept. 18, 2017) (where user was required to assent to two hyperlinked agreements and service terms—which incorporated by reference multiple other documents, one of which included an arbitration provision—by clicking on "I agree" checkbox, court held that "[w]hile . . . Defendant did not make it particularly easy for users to access the [service terms], Plaintiff's assent" "was unambiguous"), *aff'd* 2019 WL 2293441 (9th Cir. May 30, 2019).

[14]     Defendants object to Plaintiffs' reservation of the right to re-litigate the validity of the Signature Cards.  Defendants identified which class members had executed their equity award agreements electronically in individual arbitration demands sent to Plaintiffs on February 5,

record" on which this Court can make the "specific findings" required under *Gulf Oil*.

      **C.**    **The Only Evidence Before the Court Supports Enforcement of the Agreements and Precludes an Order Under Rule 23(d).**

      Unlike Plaintiffs, only Defendants have presented admissible evidence on this motion, which shows that class members were highly sophisticated and compensated financial professionals (*see* Declaration of Michael Becker, dated June 6, 2019 ("Becker Decl."), Ex. 1; Cupertino Decl. ¶¶ 3–6; Dias Decl. ¶ 4; Landman Decl. ¶¶ 4–7), who received both actual and constructive notice of the litigation (*see* App. C; Becker Decl., Ex. 1). Goldman Sachs sent Hold Notices describing this litigation to over 90% of class members employed after the filing of the Complaint. This case has also received widespread press attention. (*See* Exs. 27–140; Part B, *supra*.) This evidence defeats any presumption that class members were "unaware" of this case. (Pls.' Br. at 9.) Because Plaintiffs have introduced no evidence that, notwithstanding actual or constructive notice, class members were defrauded, subject to duress, or coerced in connection with their Agreements, their motion must be denied. *See O'Callaghan* v. *Uber Corp. of Cal.*, 2018 WL 3302179, at \*5, \*6–7 (S.D.N.Y. July 5, 2018) (Ramos, J.) (rejecting "bare assertion that [plaintiff] never assented to [] arbitration," and holding that party resisting arbitration "must come forward with admissible evidence to raise a genuine issue of fact" and "may not rely on

---

2019. (*See*, *e.g.*, Exs. 19–21 (exemplar arbitration demands).) Plaintiffs are wrong in claiming that "Goldman has not responded to Plaintiffs' request for documentary evidence" of electronic acceptance. In fact, Defendants produced on April 9, 2019—in advance of the deadline for the parties' motions—extensive evidence establishing the electronic acceptance process and class members' acceptance of the terms in the Signature Cards. (*Id.*, Ex. 25 at 4, 12 (April 9, 2019 Amended Initial Disclosures identifying witness with knowledge of "processes and practices" related to the acceptance of Equity Agreements and documents concerning "agreement[s] to release and/or arbitrate"); Ex. 26 (April 9, 2019 letter producing documents in the record here as Exhibits 1 and 2 to the Dias Declaration, and other data related to electronic acceptance).) If Plaintiffs did not understand the electronic acceptance process or believed they needed further discovery, they could have sought additional time to move. (*See* Pls.' Br. at 3 n.2.) Instead, they elected to file their motion without any evidence.

unsupported assertions, conjecture, or surmise").

> **D.    Plaintiffs Cite Inapposite Cases Where Courts Had an Adequate Record of "Abuse" Amounting to a Contract-Based Defense.**

The cases cited by Plaintiffs do not support a finding of "serious abuse" sufficient to warrant a remedial order under Rule 23(d) here.  As shown below, "cases finding improper communications in employment class or collective actions" involve "misleading or coercive behavior" by the employer, and indeed, consistent with the FAA and contract law, "courts generally use [Rule 23] . . . to invalidate arbitration agreements when there is some reason to believe that the agreement may be unenforceable *under contract law*."  *Lillehagen*, 2014 WL 12768156, at *7 (emphasis added).  But where, as here, "nothing in the record [] show[s] that [class members] did not understand that they were agreeing to arbitrate their disputes" or to release all known and unknown claims, and there is no evidence to support a contract-based defense, the motion should be denied.  *Id.*

Plaintiffs' cases—all but two of which are from outside this Circuit (predominantly district courts in California) (*see* Pls.' Br. at 11–17)—typically involved all or most of the following factors and conduct amounting to "serious abuse" not alleged here:

- ***Vulnerable class members and no additional consideration***.  Plaintiffs' cases largely arose under the FLSA and involve vulnerable workers susceptible to coercion, who had agreements to arbitrate imposed on them as a condition of continued employment, with no additional consideration offered in exchange.  *See*, *e.g.*, *O'Connor* v. *Uber Techs., Inc.*, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (new licensing agreement with arbitration clause sent electronically to new and existing Uber drivers in order to continue as Uber drivers, where court found many Uber drivers did not speak English as "their native language," after filing of class actions, was coercive); *Balasanyan* v. *Nordstrom, Inc.*, 2012 WL 760566, at *1–2

-22-

(S.D. Cal. Mar. 8, 2012) (coercive for retail department store to require salespersons to execute new arbitration agreement after FLSA case was filed).[15]

- **Intention to thwart class participation.** In several cases, courts found that defendant had purposefully introduced an arbitration program to thwart class participation. *See*, *e.g.*, *Balasanyan*, 2012 WL 760566, at *1–2 (new arbitration program "rolled out" by mail "two months after" case was filed); *Jimenez* v. *Menzies Aviation, Inc.*, 2015 WL 4914727, at *1, *6 n.5 (N.D. Cal. Aug. 17, 2015) (new "ADR Policy" imposed unilaterally on airport security guards after filing of class action).

- **No access to information.** Courts also found that class members had "no other realistic source of information regarding th[e] litigation" other than communication from the defendant. *In re Currency Conversion Fee Antitrust Litig.* ("*Currency Conversion II*"), 361 F. Supp. 2d 237, 244 (S.D.N.Y. 2005) (Pauley, J.); *O'Connor*, 2013 WL 6407583, at *6 (finding Uber drivers, many of whom were not native English speakers, "ha[d] no meaningful way of learning of the current lawsuit" other than from defendant).[16]

- **Agreements were self-executing or required complex opt-out procedures.** In *Piekarski* v. *Amedysis Illinois LLC*, 4 F. Supp. 3d 952, 953–54 (N.D. Ill. 2013), the court declined to enforce arbitration agreements featuring "self-executing waivers" for home healthcare workers introduced after filing of complaint, and in *Williams* v. *Securitas Security Services USA, Inc.*, 2011 WL 2713741, at *1, *2 (E.D. Pa. July 13, 2011), the court did not enforce a "Dispute Resolution Agreement" with security

---

[15]     *See also Jimenez*, 2015 WL 4914727, at *1, *6 n.5 (new "ADR Policy" imposed on airport employees as "condition of employment" following class action); *Williams*, 2011 WL 2713741, at *1, *2 (security guards required to agree to arbitration after FLSA action filed).

[16]     Plaintiffs mislead in claiming that the court in *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004) (Pauley, J.). found "the agreements were unenforceable specifically because of the suspect timing." (Pls.' Br. at 12.) In fact, in ruling on a motion for reconsideration in that case, Judge Pauley made specific findings, including that the agreement was "unilateral," was aimed at limiting class participation, and that class members "depend[ed] on" defendants for "information regarding th[e] litigation." *Currency Conversion II*, 361 F. Supp. 2d at 254. Both decisions were issued long before the Supreme Court's decisions in *Lamps Plus*, *Epic Systems*, *Italian Colors*, and *Concepcion*. (*See supra* note 8.)

guards that required them to "opt out by calling a phone number," contrary to "common[] understand[ing]" that agreements are "not binding" until parties "affix[] their signatures." *See also Tomkins* v. *Amedisys, Inc.*, 2014 WL 129401, at *1–2 (D. Conn. Jan. 13, 2014) (new "Dispute Resolution Agreement" imposed after FLSA collective action filed required employees to "affirmatively opt[] out" and provided no additional consideration).

In sum, courts in Plaintiffs' cases made specific and supported findings of "abuse" based on clear records.  Unlike those cases, the circumstances here do not support the "mass" voiding of the Agreements, which were bilateral contracts entered into with sophisticated class members who had multiple means to learn about the lawsuit through the Hold Notices and extensive press coverage.  Class members also received highly valuable consideration in the Agreements, in some cases amounting to hundreds of thousands or millions of dollars.  (*See*, *e.g.*, Ex. 6.)  And the Agreements were not aimed at defeating class participation: instead, the MD, PWA, and Separation Agreements have been part of Goldman Sachs's standard business practices for at least 17 years, and all employees, regardless of gender, position, or putative class membership, agreed to arbitrate employment-related disputes in exchange for substantial Equity-Based Awards.

## III.   CORRECTIVE NOTICE IS NOT WARRANTED HERE.

Courts have imposed the narrower remedy of a corrective notice in some cases to allow class members to apply to the court to void their agreements individually.[17]  But class

---

[17]     *See Ralph Oldsmobile, Inc.*, 2001 WL 1035132, at *1, *7 (declining to void releases and ordering "corrective notice . . . to the effect that the [c]ourt will consider an application [by individual class members] to void [their] release" so that court could assess "this issue with knowledge of the applicable facts and law"); *Griffin*, 2017 WL 1957021, at * 7 (ordering court-approved corrective notice to inform collective members that they could contact plaintiffs' counsel if they were "confused" about their right to participate in litigation or contend they were "misled or coerced" in connection with their agreement).

members here were already advised in the Court-approved Notice sent in November 2018 that, in Goldman Sachs's view, "*those who have signed a release* of claims . . . and *those who have signed agreements to arbitrate . . . should be excluded from the Class*." (Ex. 24 at 3 (emphasis added).)  The Notice included class counsel's contact information and made clear that "[c]lass [c]ounsel do not agree with Goldman Sachs . . ." and that, in their view, "whether [a class member is] entitled to participate in any recovery *depends on the terms and circumstances of [her] separation agreement, release and/or arbitration agreement*." (*Id*. at 3 (emphasis added).)

After Goldman Sachs served its arbitration demands, it repeatedly encouraged class counsel to confer with class members concerning their Agreements, but class counsel declined to do so.  Class members and their counsel have had a full opportunity to confer and decide whether to seek to void any Agreement, with its attendant risks (which may include return of the consideration received), but not a single class member has come forward, and class counsel apparently elected not to reach out to any of them.  On this record, even the narrower remedy of a corrective notice is not warranted.

If this Court concludes that class members had insufficient notice of the parties' dispute or opportunity to present their contract-based defenses, the blame rests squarely with class counsel, who chose not to confer with any class members.  At most, the Court could require Plaintiffs to make a Court-approved supplemental notice and afford class members the opportunity to make *individual* applications for relief on a fully developed record.

## CONCLUSION

Without the required evidentiary showing or the support of a single absent class member, named Plaintiffs ask the Court to disregard the FAA, contract law and Supreme Court precedent and to announce a *per se* rule that 1,291 Agreements entered into after the filing of a class action complaint are "void" under Rule 23(d).  Plaintiffs' motion should be denied.

Respectfully,

/s/ Robert J. Giuffra, Jr.

Barbara B. Brown (*admitted pro hac vice*)        Robert J. Giuffra, Jr.
Carson H. Sullivan (*admitted pro hac vice*)       Theodore O. Rogers, Jr.
PAUL HASTINGS LLP                                 Sharon L. Nelles
875 15th Street, NW                               Ann-Elizabeth Ostrager
Washington, DC  20005                             Hilary M. Williams
                                                  Joshua S. Levy
                                                  SULLIVAN & CROMWELL LLP
Patrick W. Shea                                   125 Broad Street
PAUL HASTINGS LLP                                 New York, NY  10004
200 Park Avenue                                   (212) 558-4000
New York, NY  10166

                                                  Amanda Flug Davidoff
                                                  Elizabeth A. Cassady
                                                  SULLIVAN & CROMWELL LLP
                                                  1700 New York Avenue, N.W., Suite 700
                                                  Washington, D.C. 20006

                         *Attorneys for Defendants*
                         *Goldman, Sachs & Co. and*
                         *Goldman Sachs & Co. LLC*

June 11, 2019