UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS,<br><br>Plaintiffs,<br><br>-against-<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,<br><br>Defendants. | No. 10-cv-6950-AT-RWL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR RECONSIDERATION**

1803140.4

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL STANDARD ..................................................................................................... 2
III. ARGUMENT ................................................................................................................... 3
    A. The Court Exceeded Its Authority in Two Material Ways ....................... 3
        1. The Court Violated Rule 23 by Altering Judge Torres's Class Certification Order ........................................................................ 3
        2. The Court Issued an Unauthorized Dispositive Ruling ................... 8
    B. The Court Prematurely Disposed of Pending Substantive Claims Prior to the Close of Discovery and Without the Benefit of Briefing ................... 9
    C. The Court's Proposal for Trial of Plaintiffs' Compensation Claim Contravenes Title VII's Burden-Shifting Framework ............................. 9
IV. CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

Page

### CASES

*Bell v. City of New York*,
  No. 13-CV-5447 RRM CLP, 2015 WL 5437306 (E.D.N.Y. Sept. 15, 2015) ............................ 8

*Chin v. Port Auth. of New York & New Jersey*,
  685 F.3d 135 (2d Cir. 2012) .................................................................................................. 10

*Cohen v. Schroeder*,
  No. 15-CV-6881 (RJS), 2016 WL 1070851 (S.D.N.Y. Mar. 16, 2016) .................................... 9

*Kolel Beth Techiel Mechil v. YLL Irrevoc. Tr.*,
  729 F.3d 99 (2d Cir. 2013) ....................................................................................................... 2

*Lugo v. Keane*,
  15 F.3d 29 (2d Cir. 1994) ......................................................................................................... 9

*Pressley v. City of New York*,
  No. 11CV03234PKCRER, 2016 WL 1271480 (E.D.N.Y. Mar. 31, 2016) ............................... 1

*Richardson v. City of New York*,
  No. 17 Civ. 9447, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) .......................................... 10

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) .................................................................................................. 10

*Schoolcraft v. City of New York*,
  No. 10 CIV. 6005 RWS, 2015 WL 5542770 (S.D.N.Y. Sept. 18, 2015) .................................. 2

*United States v. City of New York*,
  717 F.3d 72 (2d Cir. 2013) .................................................................................................... 10

*United States v. City of New York*,
  731 F. Supp. 2d 291 (E.D.N.Y. 2010) ................................................................................... 10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) .................................................................................................. 2

### STATUTES

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 3

N.Y.C. Admin. Code § 8-107 ................................................................................................... 2, 11

### RULES

F.R.C.P. 23 .................................................................................................................................. 1, 3

Local Rule 6.3 ............................................................................................................................. 1, 8

I.      **INTRODUCTION**

Pursuant to Local Rule 6.3, Plaintiffs respectfully request that this Court reconsider the portion of its June 25, 2019 Order concerning "Compensation Policies and Practices." ECF No. 767 ("June 25 Order").[1] Specifically, Plaintiffs respectfully submit that the Court's holding that "compensation may be a topic addressed in Phase I [only] insofar as it is connected" to other performance and promotion policies should be reversed. June 25 Order at 2.

Unfortunately, the challenged language in the Court's June 25 Order represents the culmination of a sustained effort by Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. ("Goldman") to undercut and extinguish Judge Torres's Class Certification Order. As the record indicates, Goldman was never confused about the scope of Plaintiffs' challenge to its compensation policy, but manufactured a discovery dispute as a vehicle to re-litigate Judge Torres's certification of Plaintiffs' challenge to that policy. The Court's decision to adopt Goldman's flawed position was made in error, and should be reconsidered, for three reasons.

*First*, the June 25 Order exceeds this Court's authority in two material ways: (1) Rule 23 states that Judge Torres's Class Certification Order—and only that Order—defines the class claims in this case; those claims cannot be redefined without a formal amendment to Judge Torres's Order, an act that can only be taken by Judge Torres herself; and (2) in issuing a dispositive ruling, this Court exceeded the bounds of its referral authority. *Second*, the Court's elimination of Plaintiffs' claim that Goldman's compensation policy caused a discriminatory disparate impact against Plaintiffs and the Class—before the close of discovery and without the

---

[1] This Motion for Reconsideration tolls Plaintiffs' fourteen-day deadline to object to the June 25 Order under Federal Rule of Civil Procedure ("Rule") 72. If the Court denies this Motion for Reconsideration, then Plaintiffs will raise their objections directly to Judge Torres within fourteen days of that denial. *See, e.g.*, *Pressley v. City of New York*, No. 11CV03234PKCRER, 2016 WL 1271480, at *2 (E.D.N.Y. Mar. 31, 2016) ("Plaintiff waived any right to a review of Judge Reyes's denial of counsel when she did not object within fourteen days of his September 13, 2013 Order denying her Motion for Reconsideration of his original denial.").

benefit of either briefing or oral argument—amounts to a premature and procedurally improper summary adjudication of that claim. *Third*, the Court's suggestion that Goldman "is the master of its own fate" with respect to which policies are at issue upends decades of undisputed case law establishing Title VII's burden-shifting framework. June 25 Order at 2. Under the appropriate, legally-mandated framework, it is the *plaintiffs*—not defendants—who identify the policies that they allege have a disparate impact.

The Court's errors have pronounced implications for the thousands of class members who received notice in November 2018 that their compensation claims had been certified, only for those claims to be trimmed under the guise of a discovery dispute.[2] Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Reconsideration and withdraw the portion of the June 25 Order concerning "Compensation Policies and Practices."

## II.  LEGAL STANDARD

A motion for reconsideration "should be granted . . . to correct a clear error or prevent manifest injustice." *Kolel Beth Techiel Mechil v. YLL Irrevoc. Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2015 WL 5542770, at *2 (S.D.N.Y. Sept. 18, 2015) (same).

---

[2] The June 25 Order implicates only Plaintiffs' Title VII disparate impact claims, as only those claims require Plaintiffs to identify a specific discriminatory policy or practice. *See* ECF No. 578 ("Class Cert. Order") at 24 n.10 ("Disparate treatment claims concern 'allegations of widespread acts of intentional discrimination.' Disparate impact claims, by comparison, involve 'employment policies . . . that are neutral on their face and were not intended to discriminate' but that 'have nevertheless had a disparate effect on the protected group.'") (citations omitted); *id*. at 24 ("The question of a 'common mode' is irrelevant, however, for the purposes of pattern-or-practice disparate treatment claims."). Plaintiffs' certified disparate treatment claims and certified disparate impact NYCHRL claims are therefore unaffected by the June 25 Order and this Motion for Reconsideration. *Id*.; *see also* N.Y.C. Admin. Code § 8-107(17)(a)(1) (allowing plaintiffs to identify a "group of policies or practices" that have impact).

### III.   ARGUMENT

#### A.   The Court Exceeded Its Authority in Two Material Ways

##### 1.   **The Court Violated Rule 23 by Altering Judge Torres's Class Certification Order**

This Court's determination that "compensation may be a topic addressed in Phase I [only] insofar as it is connected" to Goldman's evaluation and promotion policies creates a limitation on Plaintiffs' disparate impact claim that did not exist in—and indeed contradicts—Judge Torres's Class Certification Order. June 25 Order at 2. Under Rule 23, it is the Class Certification Order that "*must* define the class and the class claims, issues, or defenses." F.R.C.P. 23(c)(1)(B) (emphasis supplied). Changes to the class definition, claims, issues, or defenses can only be made by amendment of the Class Certification Order and only by Judge Torres. F.R.C.P. 23(c)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or to permit maintenance of a class action[.]"); ECF No. 364 ("R&R on Class Cert.") at 36 (prior Magistrate Judge Francis noting that he lacked authority to revisit or modify prior District Judge Sand's rulings). This Court's June 25 Order is therefore an improper amendment of Judge Torres's Class Certification Order.[3]

Contrary to the June 25 Order, Judge Torres repeatedly recognized that this case concerns Plaintiffs' challenge to three, distinct policies: Goldman's "evaluation, compensation, and promotion" policies. *E.g.*, Class Cert. Order at 4, 19, 29, 31. This has been true since the outset of this case. Indeed, Plaintiffs' independent challenge to Goldman's uniform compensation policy appears in the operative Complaint, which Goldman answered. *See* ECF No. 411

---

[3] Plaintiffs previewed this very concern in the June 17, 2019 Joint Status Report. *See* ECF No. 766 ("J. Status Rep.") at 4 ("Goldman's request for an 'order clarifying that there is no certified, independent claim based on any purported compensation practice or policy at Goldman Sachs,' amounts to a request that this Court amend Judge Torres's Class Certification Order.").

("Second Am. Compl."), ¶¶ 46-51 (summarizing Plaintiffs' challenge to Goldman's compensation policy, as distinct from their challenges to Goldman's performance and promotion policies); ECF No. 426 ("Answer to Second Am. Compl."), ¶¶ 46-51 (denying Plaintiffs' allegations).

Judge Torres recognized this independent claim in the Class Certification Order, where she summarized the challenged compensation system separately from the challenged performance evaluation and promotion systems, as follows:

> The process of determining compensation begins with Goldman Sachs allocating a budget to each division in the company. Managers at the division level, typically the Chief Operating Officer and Chief Financial Officer, then further divide the budget among the various business units. Managers then recommend compensation for specific employees. Compensation recommendations then wind their way back up the chain, with compensation proposals reviewed by the business unit head, then reviewed by a division-wide compensation committee, and finally, by the firm-wide compensation committee.")

Class Cert. Order at 8 (citations omitted). Judge Torres then separately certified Plaintiffs' challenge to that policy. *See, e.g., id.* at 44 ("Defendants' rebuttal of [Plaintiffs' prima facie case] would require Defendants to explain the business necessity *of the processes*, and, therefore, require proof on a general level, rather than individualized proof on a claim-by-claim basis to support its *company-wide pay*, promotion, and performance evaluation systems.") (emphasis modified).

While it is true that Judge Torres also discussed the interrelationship between Goldman's compensation and performance evaluation policies, this did not amount to a *sub silentio* elimination of Plaintiffs' challenge to Goldman's compensation policy.[4] Rather, Judge Torres

---

[4] In fact, Judge Torres specifically noted—with a separate heading and discussion—the *only portion* of Plaintiffs' motion for class certification that she denied. *See* Class Cert. Order at 47 (denying certification only of a "boy's club" theory of disparate treatment).

merely recognized that evaluation "is just one input into compensation determinations," *id*. at 8, and accounts for some but not all of the pay differences she found "sufficient to meet the 'significant proof' standard at the class certification stage of litigation," *id*. at 32.  *See also id.* ("As to statistical evidence, Dr. Farber's report shows that Defendants pay female Vice Presidents 21% less and Associates 8% less, on average, than their male counterparts.  The report explains that approximately 22% and 50% of the observed pay differences, respectively, can be explained by the differences in female and male 360 review and quartile ratings.") (citations omitted).  Accordingly, Judge Torres explicitly acknowledged that Plaintiffs' challenge to Goldman's compensation policy is not limited by Plaintiffs' challenge to Goldman's performance evaluation policies.[5]

Judge Torres's expert rulings confirm the existence and certification of Plaintiffs' independent challenge to Goldman's compensation policy.  First, Judge Torres denied Goldman's motion to strike the expert report of Dr. Wayne F. Cascio, the industrial and organizational psychologist who "evaluate[d] the performance assessment *and compensation recommendation processes* at Goldman Sachs, [and] ultimately conclude[ed] that the *processes* were deficient for a number of reasons."  Class Cert. Order at 22 (emphasis supplied). Specifically, Judge Torres affirmed Magistrate Judge Francis's decision to consider Dr. Cascio's conclusion that Goldman's performance *and* compensation measures "lack reliability" and "proper accountability systems," and "that the *processes* lacked procedural safeguards."  ECF

---

[5] Indeed, in assessing Plaintiff De Luis's typicality, Judge Torres rejected Goldman's argument that Plaintiffs' compensation challenge rises and falls with their performance evaluation challenge.  *See* Class Cert. Order at 39 ("Defendants argue that De Luis' claims 'are entirely individualized and in no way typical' because her 'compensation allegations are unrelated to the 360 review and manager quartile processes.'  The Court is not persuaded.  De Luis participated in the 360 review and quartile processes *and alleges being compensated less than her male peers*.") (citation omitted; emphasis supplied).

No. 363 ("R&R on *Daubert* Mots.") at 30 (citation omitted; emphasis supplied).  Dr. Cascio, in turn, analyzed the same firm-wide compensation metrics and guidelines that Plaintiffs recently re-identified for Goldman and the Court.  *Compare* ECF No. 248-27 ("Feb. 18, 2014 Cascio Rep.") at 14-17 (analyzing Goldman's firmwide compensation policy, including the makeup of "per-annum total compensation," the factors included within the "firm-wide manager compensation guidelines," and the firm-wide "compensation rounds process") *with* ECF No. 766-6 ("Pls.' Suppl. Objs. and Resps. to Goldman's Third Set of Interrogs.") at 5-7 (providing Bates citations for Goldman's policy documents regarding same).

Second, Judge Torres considered and rejected Goldman's argument that Plaintiffs' statistical expert Dr. Henry S. Farber should be excluded because he *failed to account* for certain *non-performance* metrics from Goldman's compensation policy.  In other words, before Goldman developed its current plan to undercut Plaintiffs' disparate impact claim, Goldman attempted to fault Dr. Farber for not modeling *more* of Goldman's compensation system.  *See* ECF No. 505 ("Goldman's Objs. to Order Den. Mot. to Strike Pls.' Expert Henry S. Farber") at 8-9 ("Dr. Farber's regression analysis omitted the key variables that drove evaluation, *compensation*, and promotion decisions at Goldman Sachs.") (emphasis supplied).  Judge Torres rejected this argument.  *See* Class Cert. Order at 21 ("Defendants next repeat that Dr. Farber's [statistical] analysis violates *Daubert* because it did not properly account for 'key' variables: business units, job function, and employee productivity.  The Court disagrees.") (citation omitted).

Third, although Judge Torres rejected Goldman's attempt to offer Michael P. Curran as an expert due to the vague and unhelpful nature of his opinions, Goldman offered Mr. Curran precisely so he could opine on financial industry *compensation at large*, belying any argument

that either Goldman or Judge Torres was unaware that Goldman's compensation system is at issue in this case or that Goldman's compensation policy is not subject to challenge irrespective of its function as an output of Goldman's performance and promotion polices.  *See* Class Cert. Order at 15 ("In his report, Curran 'expressed opinions about the structure of compensation in the financial services industry' at large."); *see also* ECF No. 293 ("Dec. 11, 2013 Curran Rep.") at 3-4 ("Counsel for Goldman Sachs asked me to provide my opinions on . . . [t]he impact of lateral hiring on compensation within financial services firms; . . . [t]he practice in the financial services industry of manager discretion in setting employee compensation and the reasons for that practice; and . . . [t]he importance in the financial services industry of setting appropriate compensation.").

Moreover, since joining the litigation this Court has itself endorsed the existence and certification of Plaintiffs' independent challenge to Goldman's compensation policy, including through Court-approved communications with the class.  Significantly, the certification notice issued to the class on November 30, 2018—the text of which this Court approved—reads as follows: "The lawsuit alleges that Goldman Sachs discriminated against female Associates and Vice Presidents in the Investment Banking, Investment Management, and Securities Divisions in *pay*, promotions, and performance reviews, including that it *maintained policies which caused an adverse impact on the pay* and promotions of these female Associates and Vice-Presidents[.]" ECF No. 610-1 at 3 ("Proposed Class Notice") (emphasis supplied); ECF No. 618 ("Order on Class Notice").[6]  Further to this point, the Court-approved certification notice instructed class members that "[t]o obtain more information about the claims in this lawsuit, you can view the complaint" on the class notice website.  Proposed Class Notice at 3.  As set forth above, the

---

[6] The quoted language from the Proposed Class Notice on the Court's docket is identical to the language from the Class Notice that ultimately issued on November 30, 2018.

Complaint made available to class members included Plaintiffs' independent challenge to Goldman's compensation policy. *See, e.g.*, Second Am. Compl., ¶¶ 46-51. By eliminating Plaintiffs' challenge to Goldman's compensation policy after notifying the class that this challenge had been certified, the Court invites a Due Process violation against each absent class member who received this notice.

The Court seemingly overlooked this factual record and Judge Torres's findings when it summarily eliminated Plaintiffs' challenge to Goldman's compensation policy. This was in error. *See* Local Rule 6.3 (requiring the moving party to set forth "the matters . . . which counsel believes the Court has overlooked").

### 2. The Court Issued an Unauthorized Dispositive Ruling

Summary adjudication of Plaintiffs' compensation challenge exceeded the bounds of this Court's referral authority. Judge Torres referred this matter to Magistrate Judge Francis only for "scheduling, discovery, non-dispositive pretrial motions, [] settlement," and a "Report and Recommendation [on] Plaintiffs' Motion for Class Certification." ECF No. 240. The Court's dispositive ruling regarding Plaintiffs' class compensation claim therefore exceeds that referral, which provides an independent basis for reconsideration. *See Bell v. City of New York*, No. 13-CV-5447 RRM CLP, 2015 WL 5437306, at *3 (E.D.N.Y. Sept. 15, 2015) (denying motion for reconsideration where movants "failed to offer anything to suggest that the Magistrate Judge['s] . . . orders are clearly erroneous, or exceed the bounds of her authority or the proper exercise of her discretion").

Even if the Court disagrees with Plaintiffs' reading of Judge Torres's Class Certification Order, there can be no doubt that Plaintiffs' independent challenge to Goldman's compensation policy was pending in the case and never dismissed. *See, e.g.*, Second Am. Compl., ¶¶ 46-51.

Accordingly, the Court's summary dismissal of the compensation claim was procedurally improper and outside this Court's authority.

### B. The Court Prematurely Disposed of Pending Substantive Claims Prior to the Close of Discovery and Without the Benefit of Briefing

Discovery in this matter is ongoing. Under the operative schedule, non-expert discovery is set to close on December 2, 2019 and expert discovery on May 15, 2020. June 25 Order at 2-3. Summary judgment motions are not due for nearly a year. *Id*. at 3. Nevertheless, this Court summarily dismissed Plaintiffs' challenge to Goldman's compensation policy well before completion of this schedule. This summary adjudication constitutes grounds for reconsideration. *See Cohen v. Schroeder*, No. 15-CV-6881 (RJS), 2016 WL 1070851, at *5 (S.D.N.Y. Mar. 16, 2016) (holding that it is "well-established" that summary adjudication is "premature . . . prior to the close of discovery"); *Lugo v. Keane*, 15 F.3d 29, 30 (2d Cir. 1994) ("No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him.").

This pivotal substantive ruling was also decided in the context of a discovery dispute, on an incomplete record, where the Court was deprived of *any* briefing or argument as to the precise issue decided. This was in error.

### C. The Court's Proposal for Trial of Plaintiffs' Compensation Claim Contravenes Title VII's Burden-Shifting Framework

The Court's suggestion that Goldman "is the master of its own fate with respect to the extent to which policies and practices affecting compensation are encompassed in the Phase I trial," *i.e.*, that whether or not the compensation policy that *Plaintiffs* challenge is tried depends only on how *Goldman* chooses to defend the case, upends decades of undisputed case law establishing Title VII's burden-shifting framework. June 25 Order at 2.

As Judge Torres recognized, "[u]nder Title VII, the three-step *McDonnell Douglas* burden-shifting framework governs disparate impact and disparate treatment claims." Class Cert. Order at 41 (citing *United States v. City of New York*, 731 F. Supp. 2d 291, 299 (E.D.N.Y. 2010); *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013)). For the purposes of a disparate impact claim, step one of this framework requires that *plaintiffs*—not defendants— "identify a specific employment practice or policy" that causes a disparate impact. Class Cert. Order at 42 (citing *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)).

It is only *after* plaintiffs identify any policies having a disparate impact that, "under *McDonnell Douglas*, the burden would shift[] to the defendant[s] to demonstrate that the challenged practice or policy is job related for the position in question and consistent with business necessity." Class Cert. Order at 43 (citing *City of New York*, 731 F. Supp. 2d at 299) (internal quotation marks omitted). Plaintiffs may still prevail if they prove a less discriminatory alternative to the challenged practice. *Id*. at 44.

The Court's proposal that "*Goldman may choose*" which components of its compensation policy are tried at Phase I—and notably, the Court is transparent about the implications of its ruling, acknowledging that Plaintiffs' compensation challenge would not be part of Phase I *at all* unless Goldman says so—improperly reverses the governing burden-shifting framework. June 25 Order at 2 (emphasis supplied). It also cannot be squared with the statutory language governing Plaintiffs' New York City Human Rights Law disparate impact claim, which explicitly states that when establishing impact, a plaintiff need not even "demonstrate which specific policies or practices within the group [of policies or practices] results in such disparate impact." N.Y.C. Admin. Code § 8-107(17)(a)(2); *see also Richardson v. City of New York*,

1803140.4                              10

No. 17 Civ. 9447, 2018 WL 4682224, at *10 (S.D.N.Y. Sept. 28, 2018) ("To the extent the City argues that Plaintiffs were obliged to select one from among the four alleged human resource deficiencies as the source of the disparate impact, the argument is foreclosed by NYCHRL's text, which provides that a plaintiff who 'demonstrates that a group of policies or practices results in a disparate impact . . . shall not be required to demonstrate which specific policies or practices within the group results in such disparate impact.'") (quoting N.Y.C. Admin. Code § 8-107(17)(a)(2)).

The Court's proposed process is also unworkable in practice. Requiring Plaintiffs to wait until the burden has shifted to Goldman to learn which aspects of Goldman's compensation policies are at issue would prevent Plaintiffs from seeking expert analysis of those aspects until *the middle of the Phase I trial*, which is wholly impractical. It would also allow Goldman a prejudicial pass on its discovery obligations, including as to those requiring Goldman to produce discovery related to its defenses.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Reconsideration and enter an Order withdrawing the portion of the June 25 Order concerning "Compensation Policies and Practices."

| | |
|---|---|
| Dated:  July 9, 2019 | By:  /s  Kelly M. Dermody<br>       Kelly M. Dermody |

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Michelle Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Adam T. Klein
Cara E. Greene
Melissa L. Stewart
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Class Counsel*

1803140.4

12