UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                                   :
H. CRISTINA CHEN-OSTER, SHANNA                     :
ORLICH, ALLISON GAMBA and MARY                     :
DE LUIS,                                           :
                                                   :
                              Plaintiffs,          :            10 Civ. 6950 (AT) (RWL)
                                                   :
                    v.                             :          ORAL ARGUMENT REQUESTED
                                                   :
GOLDMAN SACHS & CO. and THE                        :
GOLDMAN SACHS GROUP, INC.,                         :
                                                   :
                              Defendants.          :
                                                   :
------------------------------------------------- x
```

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THEIR MOTION TO STAY THE CLAIMS OF
CERTAIN CLASS MEMBERS, TO EXCLUDE THEM FROM THE CLASS,
AND TO COMPEL THEM TO ARBITRATION**

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005


Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

July 11, 2019

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...............................................................................1

**I.      PLAINTIFFS ASSERT NO VIABLE CONTRACT-BASED DEFENSES**..................3

      A.      The Equity Agreements Are Not Procedurally Unconscionable. ...........................3

      B.      Plaintiffs Ignore the Valuable Consideration in the Equity Agreements................5

      C.      The Equity Agreements Are Not Ambiguous..........................................................7

**II.     DEFENDANTS DID NOT WAIVE THEIR RIGHT TO COMPEL
      ARBITRATION.**.............................................................................................................7

      A.      Defendants Did Not Delay In Asserting Their Arbitration Rights. .........................7

      B.      The Parties Have Not Litigated Any Individual Claims. .......................................11

      C.      Defendants' Manageability Arguments at Class Certification Do Not
           Constitute Waiver. ................................................................................................11

**III.    THE FAA DOES NOT PERMIT THIS MOTION TO BE DEFERRED**. .................13

**CONCLUSION** .....................................................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Application of Whitehaven S.F., LLC* v. *Spangler*,
    45 F. Supp. 3d 333 (S.D.N.Y. 2014)......................................................................13

*AT&T Mobility LLC* v. *Concepcion*,
    563 U.S. 333 (2011)..........................................................................................5

*Bailey Shipping Ltd.* v. *Am. Bureau of Shipping*,
    2013 WL 5312540 (S.D.N.Y. Sept. 23, 2013) ...............................................14

*Bailey* v. *Chase Sec., Inc.*,
    2002 WL 826816 ...............................................................................................7

*Bernardino* v. *Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) .................................................4

*Brady* v. *Williams Capital Grp.*,
    878 N.Y.S.2d 693 (1st Dep't 2009) ..................................................................6

*Buchanan* v. *Tata Consultancy Servs., Ltd.*,
    2018 WL 3537083 (N.D. Cal. July 23, 2018)..........................................10, 11, 13

*Camilo* v. *Uber Techs., Inc.*,
    2018 WL 2464507 (S.D.N.Y. May 31, 2018) ..................................................5

*Canada Life Assur. Co.* v. *Guardian Life Ins. Co. of Am.*,
    242 F. Supp. 2d 344 (S.D.N.Y. 2003)...............................................................7

*China Agritech, Inc.* v. *Resh*,
    138 S. Ct. 1800 (2018).....................................................................................15

*Clinton* v. *Oppenheimer & Co.*,
    824 F. Supp. 2d 476 (S.D.N.Y. 2011) ..............................................................4

*In re Citigroup, Inc.*,
    376 F.3d 23 (1st Cir. 2004).........................................................................10, 12

*In re Currency Conversion Fee Antitrust Litig.*,
    361 F. Supp. 2d 237 (S.D.N.Y. 2005).............................................................12

*Dean Witter Reynolds Inc.* v. *Byrd*,
    470 U.S. 213 (1985) ....................................................................................2, 13

*Doctor's Assocs., Inc.* v. *Casarotto*,
   517 U.S. 681 (1996) ........................................................................................1

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*,
   2016 WL 5508843 (D.N.J. Sept. 28, 2016) .........................................................9

*E.E.O.C.* v. *Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*,
   186 F.3d 110 (2d Cir. 1999)...............................................................................15

*Edwards* v. *First Am. Corp.*,
   289 F.R.D. 296 (C.D. Cal. 2012) .......................................................................12

*Ellis* v. *Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) .......................................................................12

*Epic Sys. Corp.* v. *Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................................13

*In re Evanston Nw. Corp. Antitrust Litig.*,
   2013 WL 6490152 (N.D. Ill. Dec. 10, 2013) .......................................................9

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840, 846 (D. Md. 2013) ............................................................9

*Feuerman* v. *Sears, Roebuck & Co.*,
   1996 WL 648966 (S.D.N.Y. Nov. 6, 1996) .........................................................9

*Figueroa* v. *RSquared NY, Inc.*,
   2015 WL 3936256 (E.D.N.Y. June 26, 2015) ......................................................8

*Forbes* v. *A.G. Edwards & Sons, Inc.*,
   2009 WL 424149 (S.D.N.Y. Feb. 18, 2009) ........................................................4

*Francis* v. *Ideal Masonry, Inc.*,
   2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) .....................................................15

*Gillman* v. *Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) .........................................................................................3, 5

*Gov't Emps. Ins. Co.* v. *Grand Med. Supply, Inc.*,
   2012 WL 2577577 (E.D.N.Y July 4, 2012)........................................................13

*Greenberg* v. *Ameriprise Fin. Servs., Inc.*,
   2016 WL 3526025 (E.D.N.Y Mar. 31, 2016) .................................................3, 15

*Gutierrez* v. *Wells Fargo Bank, NA*,
   889 F.3d 1230 (11th Cir. 2018) ...........................................................................9

*Jensen* v. *Cablevision Sys. Corp.*,
    372 F. Supp. 3d 95 (E.D.N.Y. 2019) ......................................................................9

*Katsoris* v. *WME IMG, LLC*,
    237 F. Supp. 3d 92 (S.D.N.Y. 2017)......................................................................2

*Lamps Plus, Inc.* v. *Varela*,
    139 S. Ct. 1407 (2019) .........................................................................................7

*S&R Co. of Kingston* v. *Latona Trucking, Inc.*,
    159 F. 3d 80 (2d Cir. 1988) .................................................................................10

*Mallh* v. *Showtime Networks Inc.*,
    2017 WL 5157247 (S.D.N.Y. Nov. 7, 2017) .........................................................4

*Martens* v. *Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ..........................................................................5

*McReynolds* v. *Merrill Lynch, Pierce, Fenner & Smith*,
    672 F.3d 482 (7th Cir. 2012) ...............................................................................12

*Meridien Autonomous Inc.* v. *Coast Autonomous LLC*,
    2018 WL 4759754 (S.D.N.Y. Sept. 30, 2018) ...............................................10–11

*Meyer* v. *Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)................................................................................1, 4

*Milbourne* v. *JRK Residential Am., LLC*,
    2016 WL 1071564 (E.D. Va. Mar. 15, 2016) ......................................................12

*Mora* v. *Harley-Davidson Credit Corp.*,
    2012 WL 1189769 (E.D. Cal. Apr. 9, 2012).........................................................9

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...........................................................................................2, 14

*Nat'l Union Fire Ins. Co.* v. *Advanced Micro Devices, Inc.*,
    2016 WL 4204066 (S.D.N.Y. Aug. 4. 2016) .........................................................2

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Seneca Family of Agencies*,
    255 F. Supp. 3d 480 (S.D.N.Y. 2017)..................................................................14

*PacifiCare Health Sys., Inc.* v. *Book*,
    538 U.S. 401 (2003) .............................................................................................6

*Paladino* v. *Avnet Computer Techs., Inc.*,
    134 F.3d 1054 (11th Cir. 1998) ............................................................................5

*Parisi* v. *Goldman Sachs & Co.*,
    710 F.3d 483 (2d Cir. 2013)................................................................15

*Rent-A-Center, West, Inc.* v. *Jackson*,
    561 U.S. 63 (2010) ............................................................................6

*Rush* v. *Oppenheimer & Co.*,
    779 F.2d 885 (2d Cir. 1985)..............................................................13

*Sablosky* v. *Edward S. Gordon Co.*,
    73 N.Y.2d 133 (1989) ......................................................................1, 5

*Scott* v. *District of Columbia*,
    87 F. Supp. 3d 291 (D.D.C. 2015) ....................................................15

*Smith* v. *Bayer Corp.*,
    564 U.S. 299 (2011)............................................................................9

*Thyssen, Inc.* v. *Calypso Shipping Corp.*,
    310 F.3d 102 (2d Cir. 2002)...........................................................7, 11

*Wright* v. *SFX Ent. Inc.*,
    2001 WL 103433 (S.D.N.Y. Feb. 7, 2011) ........................................6

## Other Authorities

Fed. Arbitration Act ................................................................... *passim*

Fed. R. Civ. P. 23 ....................................................................6, 9

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ignores that the Federal Arbitration Act ("FAA") requires this Court to enforce—at this time—the broad arbitration agreements that ███ class members entered into with Goldman Sachs (the "Agreements") covering their Title VII and NYCHRL claims. Plaintiffs do not dispute that, under the FAA, the Agreements are presumptively valid and must be enforced unless Plaintiffs put forward sufficient evidence, to satisfy a summary judgment standard, establishing a "generally applicable contract defense[], such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc*. v. *Casarotto*, 517 U.S. 681, 687 (1996). Because Plaintiffs do not assert any contract-based defense to any of the 1,157 MD, PWA, or Separation Agreements—whether the 647 entered into prior to this action's filing, or the 510 executed afterwards—the Court must compel those class members to arbitration.

Plaintiffs' *only* contract-based defense is their claim that the Equity Agreements executed by 694 class members after this lawsuit's filing are unconscionable, but Plaintiffs fail to establish the required procedural and substantive unconscionability. As to procedure, Plaintiffs ignore that courts "routinely uphold" the enforceability of agreements entered through the electronic process followed to execute the Equity Agreements. *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). As to substance, there is no basis for finding the Equity Agreements were "unreasonably favorable," as class members indisputably received valuable equity-based awards in exchange for their agreement to arbitrate. *See Sablosky* v. *Edward S. Gordon Co.*, 73 N.Y.2d 133, 137–38 (1989) (holding arbitration agreements valid where "consideration supports the arbitration option" and rejecting claim of substantive unconscionability).

Without any viable contract-based defense under the FAA, Plaintiffs claim that Defendants' motion to compel arbitration is either too late because Defendants waived their rights to arbitrate *or* too early because Defendants' motion is premature and should be deferred to Phase

Two.  But Plaintiffs cannot escape the black-letter law that waiver is "not to be lightly inferred," with "any doubts" to be "resolved in favor of arbitration."  *Katsoris* v. *WME IMG, LLC*, 237 F. Supp. 3d 92, 100–01 (S.D.N.Y. 2017) (Abrams, J.) (citations omitted).  The record here permits no doubt:  Defendants (i) repeatedly put Plaintiffs on notice of their arbitration rights since filing their first Answer *in 2010*; (ii) moved to compel at the earliest possible time; and (iii) have not litigated the merits of any absent class members' individual claims or caused Plaintiffs to expend any unnecessary costs.  Plaintiffs thus have made no showing of the procedural or substantive prejudice necessary for a finding of waiver.

In urging deferral of this motion to a "Phase Two," Plaintiffs ignore that the FAA does not permit courts to refuse to enforce arbitration agreements for their own efficiency reasons.  *See Dean Witter Reynolds Inc*. v. *Byrd*, 470 U.S. 213, 217 (1985) (FAA's "strong federal policy" in favor of arbitration "requires courts to enforce the bargain of the parties to arbitrate, and not substitute its own views of economy and efficiency for those of Congress" (citations omitted)).  As the Supreme Court has held, deferral would violate the FAA's mandate to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp*. v. *Mercury Constr. Corp*., 460 U.S. 1, 22 (1983).  In fact, delay would irreparably injure Defendants by allowing class members with arbitration agreements to remain parties to this litigation—all while the statute of limitations governing their claims remain tolled and their claims for backpay and prejudgment interest continue to accrue.  *See Nat'l Union Fire Ins. Co.* v. *Advanced Micro Devices, Inc.*, 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) (Koeltl, J.) ("it is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm" (citations omitted)).  The time is now for this Court to grant Defendants' motion to compel arbitration as to all ▮▮▮ Agreements.

-2-

I.      **PLAINTIFFS ASSERT NO VIABLE CONTRACT-BASED DEFENSES.**

        This Court must, as Plaintiffs acknowledge (*see* Opp. at 14), decide Defendants'
motion on a summary judgment standard.  *See Greenberg* v. *Ameriprise Fin. Servs., Inc.*, 2016
WL 3526025, at *5 (E.D.N.Y Mar. 31, 2016) (Spatt, J.) (where, as here, "the party seeking
arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing
may not rest on a denial but *must submit evidentiary facts showing that there is a dispute of fact
to be tried*" (citations omitted) (emphasis added)).  Yet not a single class member has come forward
to dispute her obligation to arbitrate, and, fatally, Plaintiffs offer no evidence—whether on a
categorical or individual basis—that any class member has a defense of fraud, coercion, or
unconscionability sufficient to void her Agreement.  Instead, Plaintiffs raise only their claim that
the Equity Agreements are unconscionable, but cannot establish either the required procedural or
substantive unconscionability, as shown below.

        A.      **The Equity Agreements Are Not Procedurally Unconscionable.**

        Plaintiffs recognize (Opp. at 25) that procedural unconscionability "requires an
*examination of the contract formation process* and the alleged *lack of meaningful choice*."  *Gillman*
v. *Chase Manhattan Bank, N.A*, 73 N.Y.2d 1, 10–11 (1988) (emphasis added).  But Plaintiffs do
not "examine" the formation process at all, whether for the 689 class members who accepted
Signature Cards electronically or the five who executed in hard copy.  Instead, Plaintiffs pin their
claim of procedural unconscionability on the fact that Defendants "expand[ed] arbitration to all
employment-related disputes" in the Signature Cards, and that class members were not specifically
"alert[ed]" to this change.  (Opp. at 27–28 (emphasis omitted).)  Plaintiffs cannot establish
procedural unconscionability based on the mere modification of a contractual term, or by claiming
that class members were not aware of the terms of Agreements that they specifically assented to
electronically or physically signed.  *See Gillman*, 73 N.Y.2d at 11 (written agreement not

procedurally unconscionable even where plaintiff "unaware of the terms"); *Bernardino* v. *Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *5, *11 (S.D.N.Y. Nov. 20, 2017) (Parker, J.) (no procedural unconscionability where plaintiff required "to click on a hyperlink" and "read through [the agreement] to learn of the arbitration clause," notwithstanding that plaintiff "did not recall seeing" hyperlink and "never read" agreement).   Indeed, as the Second Circuit has recognized, "[c]ourts routinely uphold clickwrap agreements," such as the Equity Agreements, "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  *Meyer*, 868 F.3d at 75; *see also Mallh* v. *Showtime Networks Inc.*, 2017 WL 5157247, at *4 (S.D.N.Y. Nov. 7, 2017) (Cote, J.) (plaintiff bound by electronic arbitration agreement where, as here, "plaintiff [did] not dispute that he checked a box indicating that he had read and agreed to" terms of agreement).[1]

Nor have Plaintiffs established a "lack of meaningful choice" by showing an "inequality in bargaining power . . . *coupled with high pressure tactics* that *coerce a signatory's acceptance* of onerous terms."  *Clinton* v. *Oppenheimer & Co.*, 824 F. Supp. 2d 476, 483–84 (S.D.N.Y. 2011) (Rakoff, J.) (emphasis added).  Courts have rejected the notion that "inequality in bargaining power alone" supports voiding arbitration clauses in employment agreements, *Forbes* v. *A.G. Edwards & Sons, Inc.*, 2009 WL 424146, at *6 (S.D.N.Y. Feb. 18, 2009) (Griesa, J.), and Plaintiffs do not dispute that class members here were sophisticated and were permitted

---

[1]    As Plaintiffs acknowledge, the Signature Card included bold text at the top alerting class members to the "**TERMS AND CONDITIONS OF YOUR AWARD(S)** *AND RELATED MATTERS*," (Opp. at 10, citing Levin-Gesundheit Decl., Ex. B (italics added)), and class members who accepted electronically were specifically required to check a box "███████████████████" "███████████████████████████████" (Dias Decl. ¶ 22, Ex. 39 (emphasis added).)  Plaintiffs also misstate the timing of the modification of the arbitration clause in the Signature Cards, which first occurred in January 2014, before the Equity Agreements challenged here.  (*See* Opp. at 27.)

up to *one year* to accept the terms of the Equity Agreements (*see* Dias Decl. ¶ 30).

      **B.**     **Plaintiffs Ignore the Valuable Consideration in the Equity Agreements.**

Because Plaintiffs cannot show procedural unconscionability, the court "need not address . . . substantively unconscionab[ility]." *See Camilo* v. *Uber Techs., Inc.*, 2018 WL 2464507, at *3 n.8 (S.D.N.Y. May 31, 2018) (Hellerstein, J.). In any event, Plaintiffs fail to establish substantive unconscionability because they do not evaluate the parties' bargain objectively "in the light of the mores and business practices of the time and place." *See Gillman*, 73 N.Y.2d at 10. Indeed, far from establishing that the Equity Agreements were an "unreasonably favorable" bargain for Defendants, *id.*, Plaintiffs do not dispute that class members received valuable equity-based awards in exchange for their agreements to arbitrate. This precludes a finding of substantive unconscionability. *See Sablosky*, 73 N.Y.2d at 137–38 (agreement enforceable and not unconscionable where "consideration support[ed] the arbitration option").

Instead, Plaintiffs erroneously claim that the Signature Cards unconscionably "eliminat[e] access to injunctive and declaratory relief" (Opp. at 28), when the Signature Cards simply limit a claimant to "relief on an individual basis." (Dias Decl., Exs. 14–25.) This limitation amounts to no more than a waiver of class claims, which plainly is not unconscionable. *See AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 352 (2011) (striking down law prohibiting class arbitration waivers as unconscionable).[2] In any event, as the Supreme Court has held, only "challenges specifically [to] the validity of the agreement to arbitrate," as opposed to "the illegality

---

[2]     Plaintiffs rely on inapposite cases (*see* Opp. at 29): *Paladino* v. *Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998), involved an arbitration agreement that "completely proscribe[d] . . . Title VII damages" and did not even address unconscionability. *Martens* v. *Smith Barney, Inc.*, 181 F.R.D. 243, 256 (S.D.N.Y. 1998) (Motley, J.), simply repeats the unremarkable proposition that "arbitration must allow remedies central to the statutory scheme," and in fact recognized that arbitration "need not provide exactly the same remedies as adjudication."

of one of the contract's provisions," are "relevant to the court's determination whether the arbitration agreement at issue is enforceable." *Rent-A-Center, West, Inc.* v. *Jackson*, 561 U.S. 63, 71 (2010) (citations omitted).  Thus, "whether the remedial limitations at issue here prohibit a[] [statutory] award . . . is not a question of arbitrability," but is just one of many issues Plaintiffs raise that are for an arbitrator to decide.  *PacifiCare Health Sys., Inc.* v. *Book*, 538 U.S. 401, 407 n.2 (2003); *see Wright* v. *SFX Ent. Inc.*, 2001 WL 103433, at *3, *4 (S.D.N.Y. Feb. 7, 2011) (Scheindlin, J.) (challenge to enforceability to be decided by arbitrator where "'nexus' between the allegedly unconscionable provision and the arbitration clause" is lacking).[3]

Finally, Plaintiffs speculate that the broadened arbitration clause in the Signature Cards—which was presented to male and female professionals alike—was somehow "intended to provide Goldman with an unfair advantage" in this then-putative class action by "depriv[ing] current employee class members of the opportunity to step forward and represent a Rule 23(b)(2) class."  (Opp. at 28.)  This makes no sense because hundreds of incumbent employees *without* arbitration agreements were free to "step forward" until Plaintiffs abandoned their effort to seek Rule 23(b)(2) certification.  Regardless, Plaintiffs' strained theory of motive is irrelevant to assessing unconscionability, which must be evaluated objectively, and Plaintiffs offer nothing to show "the mores and practices" surrounding the grant of equity-based awards in the financial services industry to impugn the Equity Agreements here.

---

[3]   For this reason, Plaintiffs' claims of unconscionability based on the notion that the definition of "employment-related matters" in the Signature Cards could encompass non-employment-related disputes or that the scope of Goldman Sachs's intervention rights is too broad, are reserved to an arbitrator (and are also irrelevant to this motion, as the claims here are indisputably employment-related, and Defendants do not seek to intervene in anything).  (*See* Opp. at 31–32.)  And, in any event, even if these irrelevant provisions could ever be "unconscionable" (and they could not), "the appropriate remedy is to sever" such provisions "rather than void the entire agreement."  *Brady* v. *Williams Capital Grp.*, 878 N.Y.S.2d 693, 701 (1st Dep't 2009).

C.      **The Equity Agreements Are Not Ambiguous.**

Separate from their claims of unconscionability, Plaintiffs claim that the Equity Agreements are ambiguous on the basis that "different, contradictory arbitration clauses" in the Equity Agreements "create[]" ambiguity and that "this conflict must be resolved against Goldman Sachs."[4]  (Opp. at 32.)  But ambiguity "alone does not void contracts," *Canada Life Assur. Co.* v. *Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 358 (S.D.N.Y. 2003) (Marrero, J.), and, in any event, there is no conflict between the narrower arbitration provision in the Equity Award Agreements (which covers disputes related to the grant of equity-based awards) and the provision in the Signature Card (which covers all employment-related disputes).  *See Bailey* v. *Chase Sec., Inc.*, 2002 WL 826816, at *3 (S.D.N.Y. May 1, 2002) (Schwartz, J.) (finding no conflict where "the U-4 agreement covers a smaller subset of disputes than the employment notice").

II.     **DEFENDANTS DID NOT WAIVE THEIR RIGHT TO COMPEL ARBITRATION.**

"The key to a waiver analysis is prejudice," which may consist of "substantive prejudice" where a litigant seeks a 'do-over' in arbitration, or procedural prejudice "due to excessive cost and time delay."  *Thyssen, Inc.* v. *Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002).  Plaintiffs here cannot establish either form of prejudice.[5]

A.      **Defendants Did Not Delay In Asserting Their Arbitration Rights.**

This Court should reject Plaintiffs' baseless claims of procedural prejudice based

---

[4]      Plaintiffs ignore that the Supreme Court recently found the concept of *contra proferentem* to be "flatly inconsistent with the foundational FAA principle that arbitration is a matter of consent."  *Lamps Plus, Inc.* v. *Varela*, 139 S. Ct. 1407, 1418–19 (2019) (citations omitted).

[5]      Plaintiffs contend that Defendants also waived their right to enforce the releases in the Separation Agreements.  (Opp. at 17, n.10.)  This is not only wrong on the record, but is outside this Court's authority to decide.  The Separation Agreements provide that any "████████████ ███████████████████████" such as the enforceability of the releases, is "████████ █████████████" (*See* Giuffra Decl., Ex. 693 at § 7.1.)  And Plaintiffs have not even challenged the arbitration provisions in the Separation Agreements.  (*See* ECF No. 758 at 13, n.9.)

on delay.  *First*, the record makes clear that Defendants have asserted their arbitration rights early and often.  Though Plaintiffs dismissively refer to "various pro forma discovery responses or pleadings" (Opp. at 12), as though these legally binding filings somehow do not matter, Defendants plainly put Plaintiffs on notice *many years prior to class certification* that Defendants would assert their rights as to *any executed arbitration agreements* at the appropriate time, including in *three* Answers filed in 2010, 2012, and 2015, and in objections to discovery.  (*See* Giuffra Decl., App. F); *see Figueroa* v. *RSquared NY, Inc.*, 2015 WL 3936256, at *3 (E.D.N.Y. June 26, 2015) (Spatt, J.) ("affirmative defenses" provide plaintiff with "fair notice" (citation omitted)). [6]  Plaintiffs' new complaint that Defendants did not explicitly state their "intention to compel arbitration" (*see, e.g.*, Opp. at 12) prior to or at class certification has it exactly backward.  Defendants repeatedly reserved their arbitration rights so that they could move to compel arbitration *if* the Court obtained jurisdiction over class members who refused to abide by their agreements to arbitrate.  Defendants had no way to know whether any motion would be necessary or even which class members to move against until class members with arbitration agreements failed to exclude themselves from the class by the January 14, 2019 opt-out deadline.  Defendants promptly served individual arbitration demands just three weeks later on February 5, 2019.[7]

---

[6]     *See, e.g.*, Answer (ECF No. 29) ¶ 235 ("Litigation in this Court is precluded with respect to claims by those Plaintiffs . . . or on behalf of those members of the putative Class of persons they purport to represent, *who have executed arbitration agreements that require employment-related disputes to be submitted to arbitration*" (emphasis added)); Answer to First Amended Complaint (ECF No. 161) ¶ 229 (same); Answer to Second Amended Complaint (ECF No. 426) ¶ 246 (same); Giuffra Decl., Ex. 1459 at 5–6 (Defendants' Responses and Objections to Plaintiffs' Fourth Set of Requests for Production ("Goldman Sachs objects to the Requests in their entirety on the grounds that . . . they seek documents pertaining in any way to the terms, conditions and/or privileges of employment of Goldman Sachs' employees *who are parties to a binding agreement to submit any employment-related claims to individual arbitration*" (emphasis added))).

[7]     Plaintiffs complain that Defendants did not specifically identify "the number of each type of Agreement" that might be at issue (Opp. at 7), but cite no authority for the notion that this could

*Second*, as courts have repeatedly held, the earliest time to move to compel arbitration is *after* class certification, when previously putative class members first become subject to the court's jurisdiction.  *See Jensen* v. *Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (Spatt, J.) (before certification, court cannot "compel absent putative class members who are not before this [c]ourt to binding arbitration or issue a ruling regarding the enforceability of the provision," because "[a]ny such ruling is procedurally improper and analogous to an advisory opinion"); *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, 2016 WL 5508843, at *2 (D.N.J. Sept. 28, 2016) (finding "[i]t is not appropriate for the Court to exclude potential class members from this class action [based on arbitration agreements] . . . prior to their being made a party in this case").[8]  Plaintiffs also fail to distinguish *Gutierrez* v. *Wells Fargo Bank, NA*, 889 F.3d 1230, 1237 (11th Cir. 2018).  (*See* Opp. at 21.)  As in this case, defendants in *Guttierez* reserved their rights "well before any discovery had been conducted," and, as the court held, "it would have been impossible in practice to compel arbitration against speculative plaintiffs" prior to certification.  *Id.* at 1238.[9]

---

be a basis for waiver.  Plaintiffs also ignore that they did not even propound discovery requests seeking all Agreements until May 25, 2018 (*see* Giuffra Decl., Ex. 1475), which Defendants thereafter produced with no objection from Plaintiffs over timeliness.

[8]    *See also In re Evanston Nw. Corp. Antitrust Litig.*, 2013 WL 6490152, at *4 (N.D. Ill. Dec. 10, 2013) ("putative class members are not parties . . . before class certification" and "could not even be bound by an order to arbitrate"); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 846 (D. Md. 2013) (enforcing arbitration "should await the expiration of the class opt-out period, when the parties to this action would be known"); *Mora* v. *Harley-Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012) ("until . . . the opt-out period has expired," absent class members "are not parties" and defendant "does not have a right to compel arbitration").  *See Smith* v. *Bayer Corp.*, 564 U.S. 299, 315 (2011) ("in the absence of a certification under [Rule 23], the precondition for binding" an absent class member "was not met"); *Feuerman* v. *Sears, Roebuck & Co.*, 1996 WL 648966, at *5 (S.D.N.Y. Nov. 6, 1996) (Chin, J.) (due process to bind absent class members requires, *inter alia*, "adequate notice" and "opportunity to opt out").

[9]    Plaintiffs' attempt to distinguish *Guttierez* because defendants there raised a numerosity argument at class certification is irrelevant, as the class here indisputably meets Rule 23's numerosity requirement regardless of Defendants' arbitration rights.  (*See* Opp. at 21.)

*Third*, Plaintiffs rely on cases bearing no resemblance to the facts here, such as where class action defendants (i) had *never mentioned their arbitration rights* until after class certification was granted, including in an answer, discovery response, expert report or otherwise; and (ii) had engaged in extensive discovery and motion practice *on the merits of absent class members' claims* both before and after class certification, resulting in substantive prejudice to plaintiffs (which, as shown in Part II.B, *infra*, is entirely missing here).  (*See, e.g.*, Opp. at 18 (citing *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115 (10th Cir. 2015) (finding waiver where defendant first raised its arbitration rights "shortly before trial was set to begin" following "extensive discovery" on the merits and moved for summary judgment and to compel arbitration at the same time)).)[10]  None of Plaintiffs' cases supports a finding of prejudicial "delay" here.

*Finally*, as to costs, Plaintiffs are not prejudiced where, as here, "all the parties' litigation actions would have had to occur in any event."  *Buchanan* v. *Tata Consultancy Servs., Ltd.*, 2018 WL 3537083, at *7 (N.D. Cal. July 23, 2018) (granting motion to compel arbitration after certification of Title VII class action).  Because Plaintiffs concede that the class trial "will proceed with or without" class members with arbitration agreements (Opp. at 17), they do not (and cannot) contend their litigation costs to date would be any different.  *See Meridien Autonomous*

---

[10]     *See also* Opp. at 18 (citing *In re Citigroup, Inc.*, 376 F.3d 23, 27–29 (1st Cir. 2004) (waiver where the defendant first raised arbitration rights six months after class was certified, discovery had begun, and defendant had previously moved for summary judgment); *S&R Co. of Kingston* v. *Latona Trucking, Inc.*, 159 F. 3d 80 (2d Cir. 1988) (waiver in non-class, individual action where arbitration was not raised in answer, parties engaged in "extensive" merits discovery and arbitration rights raised for first time shortly before trial).  Plaintiffs also miscite *Latona Trucking* for the proposition that the "time elapsed" from the complaint to "the request for arbitration" is relevant to delay (Opp. at 18), but that case involved an individual plaintiff over whom the court always had jurisdiction such that the defendant could have made its "request" at any time—unlike here where Defendants could not have demanded arbitration before the Court obtained jurisdiction over absent class members when the opt-out period ended.

*Inc.* v. *Coast Autonomous LLC*, 2018 WL 4759754, at *7 (S.D.N.Y. Sept. 30, 2018) (Broderick, J.) ("incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice" to find waiver of arbitration (citations and quotation marks omitted)).

> **B.     The Parties Have Not Litigated Any Individual Claims.**

The inquiry into substantive prejudice considers whether a party, having "'los[t] a motion on the merits . . . attempts, in effect, to relitigate the issue by invoking arbitration.'" *Thyssen, Inc.*, 310 F.3d at 105 (quoting *Kramer* v. *Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)). Tellingly, Plaintiffs devote only *a single sentence* in their Opposition to substantive prejudice, claiming that Goldman Sachs is "unhappy with the Court's Certification Order" and "seeks to undo that Order through arbitration."   (Opp. at 24.)   But this motion will have *no effect* on the Certification Order, as Plaintiffs have acknowledged multiple times, including in their Opposition. (*See* Opp. at 17 ("Phase [One] [] trial will proceed with or without the ███ implicated class members").)[11]   Instead, as Plaintiffs recognize, granting this motion "would merely reduce the size of the class, not derail the litigation in its entirety."  *Buchanan*,  2018 WL 3537083, at *7.   The salient point is that class members' individual claims have not yet been litigated, and Defendants have taken no discovery on the merits of their claims.  (*See, e.g.*, Oct. 17, 2018 Joint Ltr. (ECF No. 629) at 3.)  As such, class members will not be prejudiced by enforcing their Agreements now.

> **C.     Defendants' Manageability Arguments at Class Certification Do Not Constitute Waiver.**

Plaintiffs are wrong in claiming that courts "consistently hold" that a defendant

---

[11]     *See also* Oct. 17, 2018 Joint Ltr. (ECF No. 629) at 8 (Plaintiffs stating that "the class trial will proceed regardless of the outcome of" a motion to compel arbitration); Feb. 25, 2019 Conf. Tr. at 14:20-23 (MS. GEMAN: "the stage one trial will be the same whether it's [the] four named plaintiffs, none of whom have an arbitration agreement, plus 45 percent of the class or those folks plus 100 percent of the class").

"waives the right to arbitrate" unless the defendant raised arbitration "concurrently with class certification." (Opp. at 19.) Once again, Plaintiffs rely on inapposite cases where, unlike here, defendants "never even hint[ed] that they planned to exercise their arbitration rights" until after class certification or engaged in extensive discovery or litigation on the merits of the claims to be arbitrated. *Edwards* v. *First Am. Corp.*, 289 F.R.D. 296, 306 (C.D. Cal. 2012) (denying motion to compel arbitration where arbitration rights raised *for first time* after Ninth Circuit reversed district court's second denial of class certification).[12]

Nor, as Plaintiffs contend, did Defendants make "the strategic choice" to "abandon" their arbitration rights at class certification. (Opp. at 20.) Plaintiffs claim that Defendants made a "tactical decision" not to raise their arbitration rights because the "reduced class size would have fallen well within the range" of other certified Title VII class actions. (Opp. at 1.) But the numbers confirm why Plaintiffs' claim makes no sense: even if all 922 class members who had signed arbitration agreements when Plaintiffs moved for class certification on May 19, 2014 were excluded from the then-class size of 2,223, the remaining 1,301 employees still would have dwarfed the class size in the other Title VII class actions that Plaintiffs cite. (*See* Opp. at 1 (citing *McReynolds* v. *Merrill Lynch, Pierce, Fenner & Smith*, 672 F.3d 482 (7th Cir. 2012) (approximately 700 employees); and *Ellis* v. *Costco Wholesale Corp.*, 285 F.R.D. 492, 500 (N.D.

---

[12]    *See* Opp. at 19–23 (citing *Edwards*; *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 258 (S.D.N.Y. 2005) (Pauley, J.) (waiver where parties engaged in "[e]xtensive nationwide discovery [after certification] involving nearly one hundred depositions and the review of tens of thousands of documents" and arbitration was raised for the first time "seven months" before trial); *In re Citigroup, Inc.*, 376 F.3d 23, 27–29 (1st Cir. 2004) (defendants first raised arbitration rights six months after class was certified, had previously moved for summary judgment, and merits "[d]iscovery that implicated the class ha[d] begun"); *Milbourne* v. *JRK Residential Am., LLC*, 2016 WL 1071564, at *8 (E.D. Va. Mar. 15, 2016) (defendant "repeatedly sought rulings on the merits of Plaintiffs' claims" through motion practice, the parties "conducted extensive discovery" on the merits after certification, and parties "engaged in extensive preparation for trial," including jury instructions, voir dire questions, and "numerous motions *in limine*")).

Cal. 2012) (same).)  And Plaintiffs ignore that this class period has no end date, and thus the class has continued to grow since certification—as such, once the ████ class members here are compelled to arbitration, the remaining class of approximately ████ employees will still be larger than it was in 2014.

## III.    THE FAA DOES NOT PERMIT THIS MOTION TO BE DEFERRED.

As the Supreme Court has held, the FAA reflects the "unmistakably clear congressional purpose that the arbitration procedure . . . be speedy and not subject to delay and obstruction in the courts." *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation marks omitted).  In keeping with the FAA's mandate, this Court must reject Plaintiffs' effort to delay this motion for at least three reasons.  *First*, in claiming that deferring Defendants' arbitration rights to "Phase Two" would be "efficient" and "sensible" (Opp. at 16), Plaintiffs ignore the Supreme Court's admonition that the FAA "requires district courts to compel arbitration . . . *even where the result would be the possibly inefficient maintenance of separate proceedings in different forums*." *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 217 (1985) (emphasis added).  *See Rush* v. *Oppenheimer & Co.*, 779 F.2d 885, 891 (2d Cir. 1985) ("reemphasiz[ing]" that "district court may not, on considerations of judicial economy, refuse to stay the proceedings before it in favor of arbitration").[13]  Plaintiffs do not cite a single Title VII class action where motions to compel arbitration have been deferred, whether to a "Phase Two" or otherwise.  To the contrary, in *Buchanan*, 2018 WL 3537083, at *7, after certification of Title VII claims, the court granted a

---

[13]    *See also Application of Whitehaven S.F., LLC* v. *Spangler*, 45 F. Supp. 3d 333, 353 (S.D.N.Y. 2014) (Ramos, J.) (rejecting that "piecemeal litigation" could defeat motion to compel arbitration (citations omitted)), *aff'd* 633 F. App'x 544 (2d Cir. 2015)); *Gov't Emps. Ins. Co.* v. *Grand Med. Supply, Inc*., 2012 WL 2577577 (E.D.N.Y July 4, 2012), at *7 (court "cannot deny" right to arbitration "because [it] believe[s] considerations of efficiency . . . should take precedence" and has "no power to deny" arbitration "based on these alternative considerations").

motion to compel 569 class members to arbitration, out of total estimated class size of between 896 and 1,116 individuals (*i.e.*, at least 51% and up to 63% of the class).[14]  This Court must do the same here.

      *Second*, Plaintiffs blithely contend that "there is no prejudice to Goldman [Sachs]" by deferring resolution of Defendants' motion to compel arbitration to Phase Two, because Defendants "will never be forced to litigate" the merits of class members' individual claims in Phase One, as though this ends the matter.  (Opp. at 16–17.)  But class members *are parties* to this class action, and allowing class members who agreed *not to litigate* to remain *in this litigation* will nullify Defendants' bargained-for right to arbitration.  *See Bailey Shipping Ltd.* v. *Am. Bureau of Shipping*, 2013 WL 5312540, at *16 (S.D.N.Y. Sept. 23, 2013) (Failla, J.) ("[c]ourts have indeed found that losing a right to arbitration constitutes irreparable harm" (collecting cases));  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Seneca Family of Agencies*, 255 F. Supp. 3d 480, 490 (S.D.N.Y. 2017) (Koeltl, J.) ("[l]osing the ability to enforce an arbitration agreement is a form of irreparable harm" (citation omitted)).  And *any* delay "frustrate[s] the statutory policy of rapid and unobstructed enforcement of arbitration agreements."  *Moses H. Cone*, 460 U.S. at 22.

      More specifically, for so long as class members with arbitration agreements improperly remain parties, they will continue to benefit from the tolling of the statute of limitations—which has now lasted almost *nine years* on claims accruing as early as *2002*—while memories continue to fade, prejudgment interest continues to accrue, and claims for backpay

---

[14]     *See id.*, No. 15 CV 1696, ECF. No. 372 (Pls' Opp. to Defs' Motion to Compel Arbitration) at 2 (showing list of "569 individuals" subject to motion); ECF No. 244 (Certification Order) at 35 (noting plaintiffs' expert's finding that class consisted of between 896 and 1,116 employees and that defendants "[did] not challenge plaintiffs' calculations. . . ." (internal citation omitted)).

continue to accrue for current Associates and Vice Presidents.[15]  And Plaintiffs have proposed that "[w]hether Phase II individualized *Teamsters* hearings occur before the Court . . . or . . . an arbitrator, each Class Member *would benefit from having class liability determined first by the Court* . . . ."  (Pls.' Feb. 21, 2019 Ltr. (ECF No. 675) at 2 (emphasis added).)  But the Second Circuit in this very case has made clear that class members who agreed to individual arbitration cannot avail themselves of the *Teamsters* method of proof in arbitration.  *Parisi* v. *Goldman Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013) ("non-government plaintiffs can use the pattern-or-practice method only in class actions").

   *Third*, Plaintiffs fail to show that there is anything to defer.  Instead, Plaintiffs simply assert the right to reserve for class members the ability to make "arguments about []enforceability" at some later time (Opp. at 15–16, 26), even though courts have rejected this very gambit, which undermines the FAA's purpose, prejudices Defendants, and evades the summary judgment standard governing this motion.  *See Greenberg*, 2016 WL 3526025, at *5 (where plaintiff attempted to "reserve the right to challenge" arbitration agreement until "after discovery," court held it was "not sufficient" under FAA for party opposing arbitration "to utter general denials of the facts on which the right to arbitration depends" (citations omitted)).

## CONCLUSION

   For the foregoing reasons, this Court should grant Defendants' motion to compel to arbitration all ▮▮▮ class members who agreed to arbitrate their claims in the Agreements.

---

[15] *See E.E.O.C.* v. *Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 124 (2d Cir. 1999) (under Title VII, backpay "runs from the date of the discriminatory action to the date of judgment"); *Francis* v. *Ideal Masonry, Inc.*, 2018 WL 4288625, at *1 (E.D.N.Y. Sept. 7, 2018) (Garaufis, J.) (granting back pay and prejudgment interest "up to the date of judgment" under Title VII and the NYCHRL); *see also China Agritech, Inc.* v. *Resh*, 138 S. Ct. 1800, 1804 (2018) (class action filing tolls statute of limitations for all putative class members); *Scott* v. *District of Columbia*, 87 F. Supp. 3d 291, 296 (D.D.C. 2015) (class action defendants may be "prejudice[d]" by "unreasonably protracted tolling").

Respectfully,

/s/ Robert J. Giuffra, Jr.

Barbara B. Brown (*admitted pro hac vice*)          Robert J. Giuffra, Jr.
Carson H. Sullivan (*admitted pro hac vice*)         Sharon L. Nelles
PAUL HASTINGS LLP                                    Ann-Elizabeth Ostrager
875 15th Street, N.W.                                Hilary M. Williams
Washington, D.C.  20005                              Joshua S. Levy
                                                     SULLIVAN & CROMWELL LLP
                                                     125 Broad Street
Patrick W. Shea                                      New York, New York  10004
PAUL HASTINGS LLP                                    (212) 558-4000
200 Park Avenue
New York, New York  10166                            Amanda Flug Davidoff
                                                     Elizabeth A. Cassady
                                                     SULLIVAN & CROMWELL LLP
                                                     1700 New York Avenue, N.W., Suite 700
                                                     Washington, D.C. 20006

*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

July 11, 2019

-16-