UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
H. CRISTINA CHEN-OSTER, SHANNA          :
ORLICH, ALLISON GAMBA and MARY          :
DE LUIS,                                :
                                        :
                 Plaintiffs,            :       10 Civ. 6950 (AT) (RWL)
                                        :
         v.                             :
                                        :
GOLDMAN, SACHS & CO. and THE            :
GOLDMAN SACHS GROUP, INC.,              :
                                        :
                 Defendants.            :
------------------------------------------------------ x

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION**

Barbara B. Brown (*admitted pro hac vice*)      Robert J. Giuffra, Jr.
Carson H. Sullivan (*admitted pro hac vice*)    Sharon L. Nelles
PAUL HASTINGS LLP                               Ann-Elizabeth Ostrager
875 15th Street, N.W.                           Hilary M. Williams
Washington, D.C.  20005                         Joshua S. Levy
                                                Hannah Lonky
                                                SULLIVAN & CROMWELL LLP
Patrick W. Shea                                 125 Broad Street
PAUL HASTINGS LLP                               New York, New York  10004
200 Park Avenue
New York, New York  10166
                                                Amanda Flug Davidoff
                                                Elizabeth A. Cassady
                                                SULLIVAN & CROMWELL LLP
                                                1700 New York Avenue, N.W., Suite 700
                                                Washington, D.C.  20006

*Attorneys for Defendants
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.*

July 23, 2019

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................4

I.    THIS COURT ACTED WITHIN ITS AUTHORITY IN CONFIRMING
      JUDGE TORRES'S RULINGS IN THE CERTIFICATION ORDER.......................4

      A.    Judge Torres Did Not Certify the Individual "Compensation" Claims of
            Class Members for Classwide Treatment. .............................................4

      B.    Plaintiffs Cannot Escape the Plain Terms of the Certification Order. ...................6

      C.    In Light of the Clear Language of Judge Torres's Certification Order, This
            Court Was Well Within Its Authority To Confirm Its Meaning............................11

II.   THE JUNE 25 ORDER DOES NOT IMPLICATE PLAINTIFFS'
      SUBSTANTIVE THEORIES OF LIABILITY UNDER TITLE VII OR THE
      NYCHRL. ..................................................................................................12

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Audio Emotion S/A* v. *McIntosh Grp., Inc.*,
2017 WL 6492506 (S.D.N.Y. Jan. 11, 2017) .........................................................................2

*Bell* v. *City of New York*,
2015 WL 5437306 (E.D.N.Y. Sept. 15, 2015) ...................................................................12

*Cohen* v. *Schroeder*,
2016 WL 1070851 (S.D.N.Y. March 16, 2016) .................................................................11

*Fuchsberg & Fuchsberg* v. *Galizia*,
300 F.3d 105 (2d Cir. 2002) .................................................................................................5

*Hammond* v. *Toy Indus. Ass'n., Inc.*,
8 F. Supp. 3d 484 (S.D.N.Y. 2014) ...................................................................................13

*Lugo* v. *Keane*,
15 F.3d 29 (2d Cir. 1994) ...................................................................................................12

*Oehne* v. *United States*,
2017 WL 6626373 (D. Conn. Mar. 16, 2017) .....................................................................5

*Richardson* v. *City of New York*,
2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) ...................................................................14

*United States* v. *Asare*,
2018 WL 2465378 (S.D.N.Y. June 1, 2018) ........................................................................5

*Wal-Mart Stores, Inc.* v. *Dukes*,
564 U.S. 338 (2011) .............................................................................................................6

**Statutes**

42 U.S.C. § 2000e-2(k)(1) ......................................................................................................13

N.Y.C. Admin. Code § 8–107(17)(a)(2) ...............................................................................13

**Other Authorities**

Local Civil Rule 6.3 for the Southern and
Eastern Districts of New York ................................................................................................2

# PRELIMINARY STATEMENT

There is no reason for this Court to reconsider or withdraw any portion of its June 25, 2019 Order. ("June 25 Order," ECF No. 767.)   This Order simply construed the plain language of the March 30, 2018 Class Certification Order ("Certification Order" or "Cert. Order," ECF No. 578) to address discovery and other issues raised in the parties' June 17, 2019 Joint Status Report (ECF No. 766), including Plaintiffs' response to one of Defendants' interrogatories.  Far from "exceed[ing] the Court's authority" (Pls.' Br. at 1, ECF No. 773), the June 25 Order reaffirmed that "as Judge Torres repeatedly emphasized in her opinion certifying the class, Phase I will be devoted to generalized proof of the alleged discriminatory impact and treatment of women through *three employment practices*: *360 Reviews, Quartiling, and Cross-Ruffing*" (June 25 Order at 1 (emphasis added)).[1]  And, the Court's June 25 Order was consistent with its prior confirmatory ruling that this "class-action . . . is premised on Defendants' use of *three processes* to make employment-related decisions, specifically *'360 reviews,' 'quartiling' and 'cross-ruffing.'"*   (June 7, 2019 Order ("June 7 Order") at 2, ECF No. 753 (emphasis added).)

In the Certification Order, Judge Torres certified class claims under Rule 23(b)(3) premised on three employment processes, holding that: "[w]hether Goldman Sachs discriminated against the class via its use of *360 reviews, quartiling, or cross-ruffing* raises yes-or-no questions that can each be answered 'in one stroke.'" (Cert. Order at 28 (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011)) (emphasis added).)  In determining whether common issues of

---

[1]     Defendants respectfully disagree with Judge Torres's findings of fact and conclusions of law in the Certification Order insofar as she found that Goldman Sachs's subjective and decentralized 360 review, quartiling and cross-ruffing processes constitute a "common mode" of exercising discretion, and intend to move for decertification, as contemplated in the current pre-trial schedule.  (*E.g.*, Cert. Order at 28, 31.)

fact exist sufficient to certify a Rule 23(b)(3) class, Judge Torres identified as "critical" that "*each of the class members* was subject to the *360 review and quartiling processes*," and that "*all promotions* from Vice President were awarded *through the cross-ruffing process*." (*Id.* at 27 (emphasis added and alterations and internal citations omitted).)  Judge Torres did not reference any other evaluation, compensation or promotion-related processes.

   In light of these clear rulings, Plaintiffs cannot meet the "strict" standard for reconsideration of this Court's June 25 Order, which requires Plaintiffs to point to "matters or controlling decisions" that the Court "overlooked."  Local Civ. R. 6.3; *see Audio Emotion S/A* v. *McIntosh Grp., Inc.*, 2017 WL 6492506, at \*3 (S.D.N.Y. Jan. 11, 2017) (Torres, J.) (denying motion for reconsideration where "[p]laintiff cite[d] no new law" and did not contend that the court "overlooked the controlling decisions or factual matters").  Indeed, here the *only* relevant authority is the Certification Order itself.  As a result, in seeking "reconsideration" of this Court's correct reading of Judge Torres's rulings, Plaintiffs effectively seek reconsideration of the Certification Order, but the time for such a motion has long since passed.  This Court should deny Plaintiffs' motion for the following reasons.

   *First*, Plaintiffs are wrong that *this Court* "redefined" or "eliminat[ed]" anything in reaffirming that Plaintiffs' certified class claims are for "discriminatory impact and treatment of women through three practices: 360 Reviews, Quartiling, and Cross-Ruffing"—rather than through other "compensation policies and practices."  (June 25 Order at 1; *see* Pls.' Br. at 1, 8.)  To the contrary, it was *Judge Torres's* ruling in the Certification Order which rejected Plaintiffs' effort to certify for classwide treatment any purported process consisting of highly individualized

compensation decisions impacting a then-class size of over 2,200 members.[2]  In claiming that Judge Torres did certify for class treatment a freestanding "compensation" claim unconnected to the three processes, Plaintiffs misleadingly cite their own pleadings, the "Background" section of the Certification Order, the Class Notice, and snippets of expert testimony.  But review of these sources makes clear that Judge Torres certified no such claim.  Thus, in confirming the scope of Judge Torres's Certification Order, this Court did not exceed its authority by "summarily adjudicating," "altering," or "amending" that Order.  (Pls.' Br. at 3–8.)

*Second*, Plaintiffs are incorrect in claiming that the June 25 Order contravenes Title VII's burden-shifting framework or the New York City Human Rights Law ("NYCHRL"). (Pls.' Br. at 9–11.)  In its June 25 Order, this Court merely confirmed that Plaintiffs' class claims are limited to those certified by Judge Torres pursuant to Rule 23, which has nothing to do with burden shifting or the NYCHRL's substantive terms.  In reaching that result, the June 25 Order explained that if Defendants rely on some specific compensation "policy or practice" in their defense at Phase I, "then compensation policies and practices beyond 360 Reviews, Quartiling and Cross-Ruffing would become relevant to Phase I," and Plaintiffs could respond to Defendants' arguments.  (June 25 Order at 2.)  This principle of procedural fairness also has nothing to do with Title VII or burden-shifting.

In sum, because this Court's June 25 Order does nothing more than confirm Judge Torres's rulings in the Certification Order in the context of a dispute over the scope of discovery in advance of a Phase I trial, there is nothing for this Court to "reconsider," and Plaintiffs' motion should be denied.

---

[2]      The putative class is now made up of more than 3,300 class members, including those who agreed to arbitration or otherwise released any claims against Goldman Sachs and should have opted out.

**ARGUMENT**

I.    **THIS COURT ACTED WITHIN ITS AUTHORITY IN CONFIRMING JUDGE TORRES'S RULINGS IN THE CERTIFICATION ORDER.**

   A.    **Judge Torres Did Not Certify the Individual "Compensation" Claims of Class Members for Classwide Treatment.**

In moving for reconsideration, Plaintiffs ignore that Judge Torres refused to certify for classwide treatment claims based on the application of highly individualized "compensation processes" by hundreds of managers across different individual Business Units over nearly twenty years. Instead, Judge Torres granted certification only for claims based on *three* specific employment processes, "360 reviews, quartiling, or cross-ruffing," which the Court found (erroneously, in Defendants' view) raise "yes-or-no questions that can each be answered 'in one stroke.'" (Cert. Order at 28 (quoting *Wal-Mart*, 564 U.S. at 350).)

Judge Torres plainly did not certify the "compensation" claims of every class member for classwide treatment, despite Plaintiffs' repeated requests that she do so. For example, in their objections to Judge Francis's Report and Recommendation ("R&R"), Plaintiffs spent pages of their briefing faulting Judge Francis for his denial of certification of claims based on "compensation setting and promotion processes" separate and apart from the two evaluation processes. (*See*, *e.g.*, Pls.' Objs. to R&R at 48, ECF No. 511 (objecting that "Plaintiffs challenge the compensation setting and promotions processes *separately* from the performance review process") (emphasis added).) Plaintiffs also claimed that Judge Francis's "factual findings" made it "abundantly clear that commonality is satisfied as to *Goldman's compensation* and promotion practices as well" as the Firm's 360 review and quartiling evaluation processes. (Pls.' Resps. to Defs.' Objs. to R&R at 13, ECF No. 525 (emphasis added).)

-4-

Judge Torres necessarily considered—and rejected—all of these arguments in support of certifying a standalone "compensation" claim.[3]  Judge Torres found commonality for only three specific evaluation and promotion processes:   "[w]hether Goldman Sachs discriminated against the class via its use of *360 reviews, quartiling, or cross-ruffing* raises yes-or-no questions that can each be answered 'in one stroke.'"  (Cert. Order at 28 (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis added); *see also id.* at 27 (finding as "critical facts" for commonality that "*each of the class members* was subject to the *360 review and quartiling processes,*" and that "*all promotions* from Vice President were awarded *through the cross-ruffing process*") (emphasis added and internal alterations omitted); *id.* at 28 (finding that "Plaintiffs' disparate impact claims are predicated on express company policies," including "*the job evaluation processes*" and "*the cross-ruffing process*") (emphasis added; internal citations omitted).)  The fact that Judge Torres did not make any finding of commonality for any *other* process confirms that class certification was not granted for other "compensation policies."  This Court's June 25 Order thus accurately reflects and confirms the scope of the Certification Order, as did its June 7 Order, which Plaintiffs did not challenge. (*See* June 7 Order at 2 (this "class-action . . . is premised on Defendants' use of *three processes* to make employment-related decisions, specifically *'360 reviews,' 'quartiling' and 'cross-ruffing'*") (emphasis added).)

---

[3]      *See United States* v. *Asare*, 2018 WL 2465378, at *1 n.1 (S.D.N.Y. June 1, 2018) (Torres, J.) ( "To the extent the . . . Opinion does not appear to address an argument, it is because the Court concluded that the argument was without merit."); *see also Fuchsberg & Fuchsberg* v. *Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (holding that opinion that is silent on briefed issue has "preclusive effect with regard to that issue" and finding that "if the Appellate Division had agreed" with defendant's argument, it would have . . . ruled in [defendant's] favor"); *Oehne* v. *United States*, 2017 WL 6626373, at *4 (D. Conn. Mar. 16, 2017) (court "did not explicitly address" arguments in opinion that are "plainly without merit").

Although the merits of Judge Torres's Certification Order are not at issue on this motion, there is indeed no certifiable firm-wide compensation-setting process, as the very documents that Plaintiffs cite make clear.  (*See* Pls.' Suppl. Resps. & Objs. to Defs.' Third Set of Interrogs. at 5–6, ECF No. 766-6; Defs.' June 14, 2019 Ltr. at 3 & App'x A, ECF No. 766-7.) Instead, these Division-specific documents emphasize that individual performance, job function, Business Unit and manager discretion, among many other factors, bear on individualized compensation decisions—and expressly state that ███████████████████████ ████████████████████████████████████████████████████ (GS0458554 (2011 Investment Management Decision Compensation Guidelines) (emphasis added); *see also* GS0400008 (October 2018 Investment Banking Division Compensation Guidelines) (describing ████████████████████████████████ ████████████ ;  GS0113896  (2011  Securities  Division  Compensation  Guidelines) █████████████████████████████████████████████████████.)  These compensation-setting policies represent precisely the sort of "'policy' of *allowing discretion* by local supervisors . . . that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action."  *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 355 (2011) (emphasis in original).

**B.**   **Plaintiffs Cannot Escape the Plain Terms of the Certification Order.**

In trying to rewrite Judge Torres's Certification Order, Plaintiffs reference summary descriptions in the "Background" or "Expert Testimony" sections of the Order, their own pleadings, and even the Class Notice.  (Pls.' Br. at 3–7.)  Indeed, Plaintiffs have repeatedly relied on these same misleading, extraneous and out-of-context citations in correspondence, interrogatory responses and joint status reports, even after Defendants pointed out that Plaintiffs

are not citing to any of Judge Torres's rulings on Rule 23 requirements.[4]  None of these tactics can change Judge Torres's ruling.

*First*, Plaintiffs invoke the first few pages of the Certification Order, where Judge Torres described Plaintiffs' *allegations* "that Goldman Sachs has discriminated against class members in evaluation, compensation, and promotion," or summarized "the process of determining compensation," but made no Rule 23 findings.  (*See* Pls.' Br. at 3–4 (citing Cert. Order at 4, 8).)   Plaintiffs then contend that Judge Torres separately "certified Plaintiffs' challenge to" Defendants' compensation policy, because a single paragraph about the business necessity defense mentions "company-wide pay, promotion and performance evaluation systems."  (Pls.' Br. at 4 (quoting Cert. Order at 44).)  This grossly misreads the paragraph at issue,[5] which states clearly—like the rest of Judge Torres's Order—that "the challenged processes" are "the 360 review and quartiling processes," and that Plaintiffs can try to "prove that the processes produce statistically significant gender disparities."  (Cert. Order at 44.)  Judge Torres finishes with the unremarkable comment that Defendants can respond by demonstrating

---

[4]   (*See*, *e.g.*, (i) Pls.' Suppl. Resps. & Objs. to Defs.' Third Set of Interrogs. at 5 (citing *Plaintiffs' own brief* (ECF No. 247) at 9–10; Cert. Order at 4 ("Background" section describing what "Plaintiffs allege"), Cert. Order at 7–8 ("Background" section describing "the process of determining compensation")); (ii) Pls.' statement in June 17, 2019 Joint Status Report at 5 (citing Cert. Order at 31 (describing Dr. Farber's analysis)); and (iii) Pls.' Feb. 15, 2019 Ltr. at 2, ECF No. 674-4 (citing Cert. Order at 7–8 ("Background" section describing "the process of determining compensation"); Cert. Order at 18–21 ("Expert Testimony" section describing Dr. Farber's testing for disparities in compensation)).)

[5]   The paragraph reads in full: "Whether *the challenged processes* are job related or consistent with business necessity is a question of generalized proof.  Defendants applied **the 360 review and quartiling processes** to each and every member of the class, and, as discussed above, Dr. Farber's generalized statistical proof may well prove that *the processes* produce statistically significant gender disparities. Defendants' rebuttal of that proof would require Defendants to explain the *business necessity of the processes*, and, therefore, require proof on a general level, rather than individualized proof on a claim-by-claim basis to support its company-wide pay, promotion, and performance evaluation systems."  (Cert. Order at 44 (emphasis added).)

"business necessity of the processes" through "general" proof, including about any "company-wide pay, promotion, and performance evaluation systems." (*Id.*) None of this comes close to certifying a standalone "compensation" claim.

      *Second*, Plaintiffs cite Judge Torres's decisions affirming Judge Francis's *Daubert* rulings (Pls.' Br. at 5–7), and then Plaintiffs ignore that those rulings did not decide any Rule 23 requirement. (*See* Cert. Order at 13–22.) The fact that Judge Torres found no "clear error" in Judge Francis's rulings on the *admissibility* of expert evidence (Cert. Order at 16) has no bearing on Judge Torres's consideration of that evidence, much less on her finding of commonality only for the three evaluation and promotion processes that were certified for classwide treatment.

      *Third*, Plaintiffs' wrongly claim that Judge Torres's reference to Dr. Farber's opinion that the evaluation processes "account[] for some but not all of the pay differences" somehow means that Judge Torres certified for classwide treatment all processes that could account for the "pay differences." (*See* Pls.' Br. at 5 (quoting Cert. Order at 32).) This strained reading of the Certification Order does not bear scrutiny and, again, the full context speaks for itself, confirming that Judge Torres was specifically referring to the 360 reviews and quartiling processes in the passage that Plaintiffs cite:

> Dr. Farber's report shows that Defendants pay female Vice Presidents 21% less and Associates 8% less, on average, than their male counterparts. Farber Report ¶ 7(a). The report explains that *approximately 22% and 50% of the observed pay differences, respectively, can be explained by the differences in female and male 360 review and quartile ratings*. *Id.* ¶ 7(d). *These pay differences* are statistically significant by several standard deviations, *see* Farber Report, Tables 10, 14, 15, and are sufficient to meet the "significant proof" standard at the class certification stage of litigation.

(Cert. Order at 32 (emphasis added).) [6]

---

[6]    Defendants dispute the percentage pay differences and statistical significance found by Dr. Farber because, among other reasons, his analysis improperly aggregates statistics across

Judge Torres explicitly relied on "Tables 10, 14, 15" of the Farber Report, which set forth a regression analyses of male and female Associate and Vice President *quartile and 360 review scores*, in finding that "these pay differences" were "statistically significant." (*See* Expert Report of Henry S. Farber, dated Feb. 17, 2014 at 46, 50, 51, ECF No. 358-8.) Thus, when considering whether Plaintiffs had shown "significant proof" of discrimination for purposes of certifying a disparate impact claim, Judge Torres cited to Plaintiffs' expert's opinion that claimed pay disparities were *attributable to the 360 reviews and quartiling*. (Cert. Order at 32.)

*Fourth*, this Court did not "endorse" Plaintiffs' "independent challenge to Goldman's compensation policy" for classwide treatment by approving the Class Notice distributed in November 2018. (Pls.' Br. at 7.) In response to the question "What is this lawsuit about," the Notice provided two paragraphs of "Basic Information" on Plaintiffs' allegations: "The lawsuit alleges that Goldman Sachs discriminated against female Associates and Vice Presidents . . . in pay, promotions, and performance reviews, *including that it maintained policies which caused an adverse impact* on the pay and promotions of . . . female Associates and Vice Presidents." (ECF No. 610-1 at 3 (emphasis added).) That was perfectly consistent with Judge Torres's Certification Order, which had identified those "policies" as "360 reviews, quartiling, or cross-ruffing." (Cert. Order at 28.) And the fact that the Class Notice followed the near-universal practice of referencing the Complaint, which included Plaintiffs' generalized

---

Business Units and fails to control for key variables that drive evaluation, compensation and promotion decisions at Goldman Sachs.

"challenge to Goldman's compensation policy" along with numerous other abandoned claims, is irrelevant for purposes of certification.  (Pls.' Br. at 8.)[7]

      *Finally*, Plaintiffs erroneously claim that "[t]he June 25 Order implicates only Plaintiffs' Title VII disparate impact claims" and not their (i) NYCHRL disparate impact claims or (ii) any disparate treatment claims.  (Pls.' Br. at 2 n.2.)  Plaintiffs are wrong on both counts. Both Judge Torres's Certification Order and this Court's June 25 Order address certification of "disparate impact" claims generally, without distinguishing between the underlying Title VII and NYCHRL theories of liability.  (*See* Cert. Order at 1, 49; June 25 Order at 1.)  And both rulings therefore govern all of Plaintiffs' disparate impact claims, not the just the Title VII claims Plaintiffs seek to pick off.  Similarly, the June 25 Order expressly addresses disparate treatment claims, holding that "Phase I will be devoted to generalized proof of the alleged discriminatory impact *and treatment* of women through three practices."   (June 25 Order at 1 (emphasis added).)  This Court's decision to address both types of claims reflects the linkage that Judge Torres identified when she found predominance for Plaintiffs' disparate treatment claim only "predicated on the statistical evidence of disparate impact."  (Cert. Order at 41.)  As a result, Plaintiffs' disparate treatment and disparate impact claims are limited, under either statute, to the three processes for which Judge Torres found commonality (360 reviews, quartiling, and cross-ruffing).

---

[7]    (*Compare, e.g.*, First Am. Compl. ¶ 191, ECF No. 104 (identifying sixteen claims, including injunctive relief, frontpay and "damages for emotional distress"), *with* Pls.' Class Cert. Br. at 45, ECF No. 247 (seeking certification of claims for backpay and punitive damages only).)

**C.  In Light of the Clear Language of Judge Torres's Certification Order, This Court Was Well Within Its Authority To Confirm Its Meaning.**

This Court did nothing more in its June 25 ruling than resolve a dispute manufactured by Plaintiffs over the meaning of the Certification Order, which, as set forth above, could not be more clear, and its effect on the scope of Phase I merits discovery.  As a result, nothing about the June 25 Order exceeded this Court's authority.

This Court did not "summarily" adjudicate anything.  The June 25 Order was based on Judge Torres's Certification Order, with the benefit of (i) three joint status reports, which attached ten letters exchanged by the parties on the scope of that Order, and (ii) argument at two status conferences about Plaintiffs' failure to identify any specific compensation-related practice in response to Defendants' interrogatories.[8]  This is more than sufficient process for a discovery dispute.

Plaintiffs also rely on irrelevant authority in claiming that the June 25 Order was " "summary adjudication," or that this Court was "premature" or somehow exceeded its referral authority in faithfully construing the Certification Order in resolving discovery disputes.  Plaintiffs cite *Cohen* v. *Schroeder*, 2016 WL 1070851, at *5 (S.D.N.Y. March 16, 2016) (Sullivan, J.) (Pls.' Br. at 9), but the court there simply held that a court "may deny a summary

---

[8]     (*See*, *e.g.*, ECF Nos. 674-1, 674-2, 674-3, 674-4, 677-1, 679-1 (correspondence between the parties about "[w]hich specific alleged discriminatory employment practices [] Plaintiffs contend will be at issue at any Phase One trial").)  Defendants raised Plaintiffs' inadequate interrogatory response at the April 25, 2019 Joint Status Report (ECF Nos. 730, 730-1, 730-2), and in the June 17, 2019 Joint Status Report, Defendants noted that "Plaintiffs' supplemental interrogatory response (and their position in this Joint Status Report) confirms that Judge Torres did not certify a class based on any compensation-setting process and that there is no basis to certify such a class."  (ECF No. 766 at 7; *see also* Apr. 30, 2019 Conf. Tr. at 38:12–21 (THE COURT: "Compensation, that answer is totally roundabout and uninformative, it just says basically that what we're challenging is how you set compensation, period.  And there is nothing that identifies what it is you are challenging, how it is that they go about setting compensation.").)

-11-

judgment motion 'as premature' when it is *brought by a defendant* prior to the close of discovery." (emphasis added).  Defendants have not moved for summary judgment; rather this Court merely applied the Certification Order in the context of clarifying the scope of Phase I discovery.  *Lugo* v. *Keane*, 15 F.3d 29, 30 (2d Cir. 1994) (cited in Pls.' Br at 9)—where the Second Circuit held that a court may not *sua sponte* dismiss a pro se petition for a writ of habeas corpus "without having provided the petitioner with notice and an adequate opportunity to respond"—is equally off point.  To the extent Plaintiffs cite *Lugo* for the notion that they have not had an adequate opportunity to address certification of claims based on "compensation processes," the parties filed *twelve briefs* related to class certification before Judge Francis and Judge Torres.  And in *Bell* v. *City of New York*, 2015 WL 5437306 (E.D.N.Y. Sept. 15, 2015) (Mauskopf, J.) (cited in Pls.' Br. at 8), the district court in fact found that the magistrate judge had *not* exceeded its referral authority because, as here, the judge had properly ruled on a discovery dispute.

## II.     THE JUNE 25 ORDER DOES NOT IMPLICATE PLAINTIFFS' SUBSTANTIVE THEORIES OF LIABILITY UNDER TITLE VII OR THE NYCHRL.

Plaintiffs claim that the June 25 Order "contravenes Title VII's burden-shifting framework" and the substantive terms of the NYCHRL by allowing Defendants to "'*choose*' which components of its compensation policy are tried at Phase I."  (Pls.' Br. at 9–10 (emphasis in original).)  Not so.  This Court's June 25 Order simply confirmed which claims Judge Torres had certified for classwide treatment in her Certification Order.

In moving for reconsideration, Plaintiffs cite cases (Pls.' Br. at 10) describing the basic *McDonnell Douglas* framework, which has never been in dispute.  In a Rule 23(b)(3) class action, the court applies the three-step *McDonnell Douglas* burden-shifting framework only to

-12-

certified claims.[9]  Thus, following Judge Torres's decision *not* to certify a standalone claim about the compensation process unconnected to 360 reviews and quartiling, the June 25 Order simply states, unremarkably and as a matter of basic fairness, that Plaintiffs may not try uncertified claims at Phase I, but if Defendants put other specific compensation processes at issue as part of their defense, Plaintiffs have the right to respond.  *See Hammond* v. *Toy Indus. Ass'n, Inc.*, 8 F. Supp. 3d 484, 499 (S.D.N.Y. 2014) (Koetl, J.) ("It would be unfair to [a party] to consider an argument to which [the party] had no opportunity to reply.")[10]  Simply put, the Court's ruling has nothing to do with Title VII or burden-shifting.

Plaintiffs also claim that the fact that Defendants' compensation policies are not at issue during Phase I "cannot be squared with the statutory language" of the NYCHRL, because where a plaintiff asserts a disparate impact claim under that law based on a "group of policies or practices," she does not need to "demonstrate which specific policies or practices within the group" caused the disparity.  (Pls.' Br. at 10 (quoting N.Y.C. Admin. Code § 8–107(17)(a)(2).)  According to Plaintiffs, this provision relieves them, and the District Court, of the limitations imposed by Rule 23.  Plaintiffs cite no authority that supports this proposition, which would upend Rule 23.   Indeed, Plaintiffs' only NYCHRL authority makes clear that the statute is not a

---

[9]      Under the "three-step *McDonnell Douglas* burden-shifting framework," Plaintiffs will have the opportunity at trial to show that the certified processes cause a disparate impact and, if they do so, Defendants can demonstrate that the challenged processes are job related, which would require  Plaintiffs to show the availability of less discriminatory alternative processes.  42 U.S.C. §§ 2000e-2(k)(1)(A) & (C).

[10]      The June 25 Order also is not "unworkable" because Plaintiffs will not be forced to wait "until *the middle of the Phase I trial*" to "learn which aspects of Goldman's compensation policies are at issue."  (Pls.' Br. at 11 (emphasis in original).)  If Defendants intend to raise a compensation-related employment process in connection with their defense to the alleged discriminatory 360 review, quartiling and cross-ruffing processes during Phase I, Plaintiffs will have ample advance notice through fact and expert discovery on Goldman Sachs's defenses and pretrial motions.

free pass for all claims to proceed on a classwide basis in federal court without regard to the requirements of Rule 23.  (*See* Pls.' Br. at 10 (citing *Richardson* v. *City of New York*, 2018 WL 4682224, at *10 (S.D.N.Y. Sept. 28, 2018) (Oetken, J.) (dismissing NYCHRL disparate impact "compensation-based claims" for lack of independently statistically-significant evidence, even though plaintiffs had "stated a viable disparate-impact claim under NYCHRL" for "hiring and job-placement decisions" based on a group of four "identified human resource practices")).)  The out-of-context language of the NYCHRL cited by Plaintiffs cannot override Judge Torres's Certification Order, which certified claims only based on the three evaluation and promotion processes.

-14-

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to reconsider its June 25 Order.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

| | |
|---|---|
| Barbara B. Brown (*admitted pro hac vice*) | Robert J. Giuffra, Jr. |
| Carson H. Sullivan (*admitted pro hac vice*) | Sharon L. Nelles |
| PAUL HASTINGS LLP | Ann-Elizabeth Ostrager |
| 875 15th Street, N.W. | Hilary M. Williams |
| Washington, D.C.  20005 | Joshua S. Levy |
| | Hannah Lonky |
| | SULLIVAN & CROMWELL LLP |
| Patrick W. Shea | 125 Broad Street |
| PAUL HASTINGS LLP | New York, New York  10004 |
| 200 Park Avenue | (212) 558-4000 |
| New York, New York  10166 | |
| | Amanda Flug Davidoff |
| | Elizabeth A. Cassady |
| | SULLIVAN & CROMWELL LLP |
| | 1700 New York Avenue, N.W., Suite 700 |
| | Washington, D.C. 20006 |

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

July 23, 2019

-15-