```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-8-19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
H. CRISTINA CHEN-OSTER, SHANNA
ORLICH, ALLISON GAMBA, and MARY DE
LUIS,

                    Plaintiffs,

    - against -

GOLDMAN, SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

                    Defendants.
------------------------------------------------------------X

10-cv-6950 (AT) (RWL)

**DECISION AND ORDER DENYING MOTION TO RECONSIDER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On June 25, 2019, this Court issued an order (Dkt. 767, the "Order"), a part of which addressed whether and to what extent the compensation policies and practices of Defendants (collectively "Goldman") are among the policies and practices encompassed by what will be the Phase I trial of this class action. Plaintiffs have moved for reconsideration of that aspect of the Order. (Dkt. 772.) For the reasons stated below, Plaintiffs' motion is DENIED.

## Background

**Class Certification**

In 2010, Plaintiffs filed a putative class action on behalf of women claiming that Goldman engaged in gender discrimination with respect to evaluation, compensation and promotion. After a circuitous procedural history and extensive briefing before multiple judges, The Honorable Analisa Torres certified a damages class pursuant to Fed. R. Civ.

1

P. 23(a) and 23(b)(3). (Dkt. 578, the "Certification Order".) The class consists of current and former female Associates and Vice Presidents employed by Goldman in certain revenue-generating divisions from July 7, 2002, for employees in New York City, and September 10, 2004, for employees in the United States outside of New York City, through resolution of this action.

The Certification Order established important parameters defining the class and governing the way this case will be managed and tried. First, the Certification Order rejected class treatment of Plaintiffs' "boy's club" theory based on individual incidents of discriminatory behavior such as sexual harassment and other male misconduct. As the Court explained, the predominance requirement for class certification could not be met for this theory because "individualized proof on rebuttal . . . would overwhelm the common issues." (Dkt. 578 at 47.)

Second, the Certification Order grounded class certification on three processes used by Goldman: 360 Reviews, Quartiling and Cross-Ruffing. The Certification Order expressly recites these processes as the "common policies" on which the class action is based and distinguishes it from the Supreme Court's rejection of class certification in *Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338, 350 (2011). As Judge Torres explained, "Whether Goldman Sachs discriminated against the class via its use of 360 reviews, quartiling, or cross-ruffing raises yes-or-no questions that can be answered 'in one stroke.'" (Dkt. 578 at 28, quoting *Dukes*, 56 U.S. at 350 ; *see also* Dkt. 578 at 27, 30, 42-43.)

Third, the Certification Order made abundantly clear that class certification was premised on being able to conduct a trial as to both disparate impact and disparate

treatment with statistical evidence of a generalized nature. (Dkt. 578 at 41-47.) The Court emphasized that both Plaintiffs' prima facie case and Defendants' rebuttal would turn on "generalized proof of statistical evidence." (Dkt. 578 at 42, 44, 46.) Some anecdotal evidence would be permitted, particularly as to whether there is evidence of Goldman's discriminatory intent vis-à-vis the challenged processes (see Dkt. 578 at 34), but generalized statistical evidence would predominate.

**This Court's Order Addressing Compensation**

For some time, the parties have been skirmishing over discovery and the scope of a "Phase 1" trial addressing generalized evidence, as distinct from individual issues such as damages to be addressed in Phase 2 trials. The issue relevant to this particular dispute concerns the extent to which a Phase 1 trial will include a challenge to Goldman compensation policies that extend beyond the influence of 360 Reviews, Quartiling and Cross-Ruffing.

The issue arose out of a discovery dispute in which Goldman challenged the sufficiency of Plaintiffs' responses to interrogatories asking Defendants to identify any specific compensation-related policy or practice being challenged. (See Dkt. 674 at 2-7; Dkt. 766 at 4-11 (joint status reports addressing the issue).) As this Court commented during a status conference addressing the issue, Plaintiffs' initial answer was "totally roundabout and uninformative" and failed to sufficiently identify which compensation policies are being challenged. (Dkt. 748, April 30, 2019 Conference Transcript at 38:12-21.) Defendants subsequently filed an amended interrogatory answer providing more specificity. (Dkt. 766-6.) Goldman then framed the following issue for the Court in the parties June 17, 2019 joint status report:

3

> Defendants also need to know what claims will be at issue at trial in order to conduct discovery and prepare for a trial based on generalized proof. For example, many of the documents Plaintiffs identified, such as manager communication guides, would not be relevant to a Phase 1 trial limited to the 360 reviews, quartiling and cross-ruffing processes. Defendants thus ask the Court to clarify what Judge Torres has already decided-that she did not certify an independent claim based on Goldman Sachs's compensation-setting processes for class treatment.

(Dkt. 766 at 11.)

Plaintiffs disagreed with Goldman's characterization of what Judge Torres had decided and argued that Goldman was instead seeking to amend the Certification Order. (Dkt. 766 at 4.) This Court's ensuing Order resolved the dispute, guided strictly by the Certification Order. This Court's Order reasoned as follows:

> As has been established in this case, and as Judge Torres repeatedly emphasized in her opinion certifying the class, Phase I will be devoted to generalized proof of the alleged discriminatory impact and treatment of women through three practices: 360 Reviews, Quartiling, and Cross-Ruffing. These practices are alleged to be instruments of discrimination with respect to evaluation, compensation and promotion. Accordingly, compensation may be a topic addressed in Phase I insofar as it is connected to one or more of the three challenged practices. *See* Class Certification Order, Dkt. 578 at p. 32 (describing statistical evidence that some portion of pay differences can be explained by differences in 360 Review and Quartile ratings).

Dkt. 767 at 1-2.

The Order further provided that compensation policies and practices beyond 360 Reviews, Quartiling and Cross-Ruffing could find their way into the Phase I trial depending on how Goldman responded to Plaintiffs' prima facie case of discrimination:

> Goldman may choose to counter such proof by attributing allegedly disparate compensation to factors other than the three practices at issue. To the extent Goldman does so on a policy or practice level, then compensation policies and practices beyond 360 Reviews, Quartiling and Cross-Ruffing would become relevant to Phase I. If Goldman elects not to present such evidence to rebut generalized evidence presented by Plaintiffs in Phase I, then examination of other compensation-related policies would

4

not be relevant. Goldman thus is the master of its own fate with respect to the extent to which policies and practices affecting compensation are encompassed in the Phase I trial. In contrast, specific factors affecting an individual class member's compensation would be addressed in Phase II. As Goldman recognizes, "In order to prove their damages, Plaintiffs must show that the challenged practices caused them injury in compensation or promotion." (Joint Status Report at p.8.)

Dkt. 767 at 2.

Plaintiffs now ask the Court to reconsider the Order. They advance three main arguments: that this Court (1) exceeded its authority by altering Judge Torres' Certification Order, (2) exceeded its authority by rendering an unauthorized dispositive ruling and, even if authorized, doing so prematurely; and (3) violated the requisite framework for shifting burdens of proof in employment discrimination cases.

## Legal Standard

The standard for a motion for reconsideration in this district is well-established. The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also* S.D.N.Y. Local Rule 6.3 (requiring the movant to "set[ ] forth concisely the matters or controlling decisions which counsel believes the court has overlooked"). Such a motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Department of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Federal Reserve Bank of N.Y.*, No. 12 Civ. 3859, 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). Rather, reconsideration is appropriate "only when the [moving

party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

In this instance, reconsideration is not warranted. Plaintiffs have not presented any controlling law or evidence that the Court overlooked, and there is no need to correct a clear error or prevent manifest injustice.

## Discussion

### A. This Court Did Not Alter Judge Torres' Certification Order

Plaintiffs fault this Court's Order for "altering" Judge Torres' Certification Order. (Pl. Mem. at 3-8.) This Court does not agree. To the contrary, this Court's Order is based squarely on the Certification Order, which consistently and repeatedly invokes the three processes – 360 Reviews, Quartiling and Cross-Ruffing – and their susceptibility to generalized evidence in the form of statistical proof.

The Certification Order does at times refer to Goldman's compensation policies in general. For instance, in describing Goldman's processes, Judge Torres set forth a description of evaluation by way of 360 Review and Quartiling; compensation through iterative budgeting and recommendations made on an employee-by-employee basis, along with various inputs including but not limited to Quartiling; and promotion as determined by Cross-Ruffing. (Dkt. 578 at 5-10.) But in analyzing whether class certification is appropriate, Judge Torres repeatedly focused on 360 Reviews, Quartiling and Cross-Ruffing. This Court's Order hews to that determination. In contending

otherwise, Plaintiffs allude to their own allegations as well as rulings on admissibility of expert evidence, neither of which bear on what the Certification Order actually says.

Plaintiffs also stray by zeroing in on the Certification Order's reference to the opinion of an expert, Dr. Farber, that the evaluation processes, in Plaintiffs' words, "account[] for some but not all of the pay differences." (Pl. Mem. at 5.) As Plaintiff's would have it, this reference demonstrates that Judge Torres certified class treatment for all policies that could contribute to pay differences.  Taken in context, however, the Certification Order cited to Dr. Farber's analyses not to suggest the relevance of other policies but rather to show that statistically significant pay differences between males and females could be attributed specifically to 360 Reviews and Quartile ratings and thus were "sufficient to meet the 'significant proof' standard at the class certification stage of litigation."[1] (Dkt. 578 at 32.)

In reply, Plaintiffs posit that this Court must have erred because only two alternatives are possible: "if Judge Torres granted certification of the compensation claim, thenthe June 25 Order violated Rule 23 by amending the Class Certification Order; and if Judge Torres denied certification of the compensation claim, then the Order exceeded this Court's referral authority (and violated due process) by dismissing the Named

---

[1] Plaintiffs also suggest that the Class Notice distributed in November 2018 somehow "endorse[d]" a challenge to Goldman's compensation policy untethered to 360 Reviews, Quartiling or Cross-Ruffing. (Pl. Mem. at 7-8.) The Notice describes Plaintiffs' allegations of discrimination in "pay, promotions, and performance reviews, including that [Goldman] maintained policies which caused an adverse impact on the pay and promotions of . . . female Associates and Vice Presidents." (ECF. 610-1 at 3; see also Dkt. 618.) This is entirely consistent with the Certification Order, which focuses on "[w]hether Goldman Sachs discriminated against the class via its use of 360 reviews, quartiling, or cross-ruffing." (Dkt. 578 at 28.) Plaintiffs stretch to impute a meaning to the Class Notice that is not there.

Plaintiffs' individual compensation discrimination claims on the merits." (Dkt. 800 at 2; see also id. at 5.) But that is a false dichotomy. Rather, there is a third alternative, which is the correct one: the Certification Order certifies a class that alleges discrimination with respect to compensation as well as evaluation and promotion "via [Goldman's] use of 360 reviews, quartiling, or cross-ruffing." (Dkt. 578 at 28.)

In short, this Court's Order was intended to be and was faithful to the Certification Order.

B.   **This Court Did Not Make A Dispositive Ruling, Prematurely or Otherwise**

Plaintiffs also characterize this Court's Order as "prematurely" making a "dispositive" ruling on "pending substantive claims." (Pl. Mem. at 8-9.) That too is incorrect. This Court merely construed the Certification Order in the context of resolving a Phase I discovery dispute. This Court's Order did not dispose of the Plaintiffs' challenge to disparate compensation. To the contrary, the Order recognizes that compensation is very much in play as an indicia of discrimination to be addressed in a Phase I stage insofar as compensation is influenced by 360 Reviews, Quartiling or Cross-Ruffing.[2] (Dkt. 767 at 1-2.)

As for Plaintiffs' claim that this issue was decided on an "incomplete record" (Pl. Mem. at 9), suffice to say the issue of compensation policies relevant to Phase 1 was

---

[2] The cases cited by Plaintiffs on this issue are inapt. See *Lugo v. Keane,* 15 F.3d 29 (2d Cir. 1994) (holding that court may not *sua sponte* dismiss pro se petition for writ of habeas corpus without affording notice and adequate opportunity to respond); *Cohen v. Schroeder,* No. 15-CV-6881, 2016 WL 1070851 (S.D.N.Y. March 16, 2016) (holding that a court may deny as premature a summary judgment motion prior to the end of discovery); *Bell v. City of New York,* No. 13-CV-5447, 2015 WL 5437306 (E.D.N.Y. Sept. 15, 2015) (finding magistrate judge did not exceed authority where the magistrate judge properly ruled on a discovery dispute).

addressed by both parties separately in two joint status reports (Dkt. 674 at 2-7 and Dkt. 766 at 4-11) and discussed at length during two case management conferences (Dkt. 688 at 38-61 and Dkt. 748 at 18-49). The parties had ample opportunity to address and argue the issue.

## C.   The Order Is Consistent With the Applicable Burden-Shifting Framework

Finally, Plaintiffs argue that this Court's Order transgresses the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Pl. Mem. at 9-11.) Specifically, Plaintiffs point to the Order's stating that Goldman ultimately will determine the extent to which policies affecting compensation other than 360 Reviews, Quartiling and Cross-Ruffing will be at issue at the Phase 1 stage. Plaintiffs contend that the *McDonnell-Douglas* framework affords Plaintiffs the opportunity to identify which policies are at issue in their prima facie case, at which point the burden shifts to Goldman to demonstrate if those policies are consistent with business necessity.

Again, this Court disagrees. The Certification Order already has identified the policies and practices that are the basis for certification: 360 Reviews, Quartiling and Cross-Ruffing. This Court's Order merely acknowledges that Goldman conceivably could open the door to other policies affecting compensation if it relied on them in rebuttal. Nothing about that contravenes the requisite shifting burdens of proof.

Plaintiffs also contend that this scheme is "unworkable" because Plaintiffs would learn only in the middle of trial whether broader compensation policies are at issue, thereby allowing Goldman a "prejudicial pass" on discovery related to its defenses and preventing Plaintiffs from seeking expert analysis of Goldman's policies until the middle of trial. Plaintiffs are mistaken. The Court Order did not proscribe discovery concerning

9

Goldman's compensation policies and practices; indeed, Goldman already has produced a variety of compensation policy documents. (*See, e.g.,* Dkt. 766-6 at 5 n. 1-4.)

To the extent not discussed above, the Court has considered all of Plaintiffs' other arguments and finds them to be without merit.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:     August 8, 2019
           New York, New York

Copies transmitted to all counsel of record.