

Advocates for Workplace Fairness

August 19, 2019

<u>Via CM/ECF</u>
The Honorable Robert W. Lehrburger
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, NY 10017

Re:     *Chen-Oster, et al. v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL)

Dear Judge Lehrburger:

        We write to request a pre-motion conference regarding Plaintiffs' anticipated motion to quash the harassing, duplicative, and grossly overbroad subpoenas Goldman, without meeting and conferring, served on the Named Plaintiffs' current and former employers.[1]  Goldman's subpoenas seek cumulative mitigation-related information that it has already requested, and received, from the Named Plaintiffs.  Further, they seek an extraordinary volume of irrelevant documents related to every conceivable aspect of Plaintiffs' post-Goldman employment history.

        Plaintiffs attempted to meet and confer with Goldman on this issue, but Goldman refused.  Plaintiffs also requested, twice, that Goldman refrain from serving the subpoenas before the parties could meet and confer, but Goldman ignored those requests—highlighting that the true purpose of the subpoenas is not information but to intimidate and punish the Plaintiffs.

**I.      Background**

        On August 15 and 16, 2019, Goldman served Plaintiffs with notices of third-party subpoenas for five separate companies.  *See* Exs. 1-5.  Plaintiffs informed Goldman within hours of service that the subpoenas requested cumulative and irrelevant information and requested a meet and confer.  Plaintiffs also requested that Goldman refrain from serving the subpoenas until after the parties were able to meet and confer.  Goldman did not respond until today, August 19, well after serving the subpoenas.

        Each of the five subpoenas is addressed to companies where Plaintiffs worked, or presently work, following their employment with Goldman.  The subpoenas seek information Plaintiffs already produced to Goldman—including documents relating to Plaintiffs' efforts to secure employment at these specific companies and their compensation while employed there— as well as a sweeping volume of additional documents related to every detail of their employment history with these companies.

---

[1]  Though authority to quash a subpoena rests with the court where compliance is required, Fed. R. Civ. P. 45(d)(3), Plaintiffs propose that this Court hear all five motions to quash to ensure consistent rulings and judicial economy.

**New York**  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
**Chicago**  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
**San Francisco**  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
**Washington DC**  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410

www.outtengolden.com

August 19, 2019
Page 2 of 4

## II.    Goldman's Exceedingly Broad Subpoenas Seek Irrelevant Information.

As the party issuing the subpoena, Goldman bears the burden of proof to demonstrate relevance.  *Neogenix Oncology, Inc. v. Gordon*, No. 14 Civ. 4427, 2017 WL 1207558, at *7 (E.D.N.Y. Mar. 31, 2017).  Courts "examine" if the subpoena "is overly broad or seek[s] irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."  *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

Goldman's subpoenas are incredibly broad, seeking irrelevant documents relating to any and all aspects of Plaintiffs' subsequent employment, including "*all* documents and communications" in the possession of these companies broadly concerning each Plaintiff's "performance" and "position."  Exs. 1-5, Request Nos. 2, 4.[2]  Goldman's subpoenas also contain a broad catch-all for "*all* personnel files concerning" each Plaintiff.  *Id.*, Request Nos. 5-6.  Such broad subpoenas are routinely quashed.  *See, e.g.*, *Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing subpoenas to plaintiff's former employers where defendant requested "all" documents because "[t]he scope of the subpoenas themselves is problematic, to say the least[,] . . . [and] [b]lanket requests of this kind are plainly overbroad and impermissible").

Goldman has refused to articulate a proper basis for these requests.  It is clear on their face that these requests have no relevance to any party's claims or defenses.  This case concerns the Class-wide discriminatory policies and practices of Goldman Sachs regarding evaluations, compensation-setting, and promotions, as well as the specific instances of discrimination and retaliation experienced by the Named Plaintiffs while employed at Goldman.  To defend its *own* policies, practices, and actions, Goldman does not require information regarding the practices of *other* employers in evaluating their employees, determining promotions, investigating internal complaints, assigning job responsibilities, or determining changes in job status.  The actions and personnel decisions of other employers likewise do not bear on the discriminatory policies and practices of Goldman Sachs.[3]

## III.    Goldman's Subpoenas Request Cumulative and Duplicative Information.

The duplicative and cumulative nature of these requests, which Plaintiffs have already responded to, provides an independent basis for quashing.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  With respect to mitigation-related information, Plaintiffs previously produced to Goldman all documents in their possession relating to their efforts to secure employment following their departures from Goldman, at these and other companies, as well as documents reflecting their mitigation-related income.  Although Plaintiffs in July 2019 objected on relevance grounds to

---

[2]  For example, Goldman requests performance evaluations, any and all reprimands, warnings, discipline, or complaints regardless of the issue, "complaints made by or about" each Plaintiff, any "complaints that involved [each Plaintiff] *as a witness*," any investigations or threats of termination, and any and all documents regarding "changes in job status," job assignments, job responsibilities, job requirements, placements, promotions, and transfers.  *Id.*
[3]  Further, to the extent Goldman argues that the information it seeks "might be marginally relevant to [Plaintiffs'] credibility, . . . its production would not be proportional to the needs of th[e] case" in light of the real harm to Named Plaintiffs.  *Shirlaw v. N.Y.S. Unified Court Sys. Office of Court Admin.*, No. 17 Civ. 4489, 2018 WL 3007927, at *1 (S.D.N.Y. May 16, 2018) (citation omitted).

August 19, 2019
Page 3 of 4

Goldman's wide-ranging list of requests concerning all other aspects of Plaintiffs' employment with other employers, Goldman failed to meet and confer on Plaintiffs' objections.  Goldman never addressed these objections, adequately articulated why such documents are relevant to this litigation, or sought to compel the information from Plaintiffs.  *See* Ex. 6 (July 19, 2019 Ltr.).  Among other vices, Goldman now seeks an end run around this Court's recent admonition that the parties meet and confer on disputes, seeking to export its poor discovery behavior to other jurisdictions where the courts may not focus as closely as this one.

## IV.   Goldman's Subpoenas Will Harm Plaintiffs' Employment and Are Harassing.

Serving subpoenas on current or former employers causes intimidation, embarrassment, or other harm, including interference with employment relationships, which provides yet another basis for quashing.  *See, e.g.*, *Henry*, 2016 WL 303114, at *2 (granting motion to quash subpoenas to former employers and finding that they were not proportional to the needs of the case given the prejudicial harm to the plaintiff); *Guercia v. Equinox Holdings, Inc.*, No. 11 Civ. 6775, 2013 WL 2156496, at *4 (S.D.N.Y. May 20, 2013) (quashing subpoenas because they created an "undue burden on [plaintiff] by souring her reputation in what she describes as an insular business community"); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010) ("[B]ecause of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort."); *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, 2003 WL 115221, at *2 (S.D.N.Y. Jan. 10, 2003) (quashing subpoenas on job search firm for fear that subpoena "would subject plaintiff to unnecessary annoyance and embarrassment" and "might cause a search firm with a good 'lead' to offer it to another client").

Here, Goldman's subpoenas unnecessarily risk harming Plaintiffs' reputation and economic well-being, especially given the insular and competitive nature of the financial industry in which the Plaintiffs all still work or may seek to return.  *Gambale*, 2003 WL 115221, at *1.  In fact, Goldman's refusal to meet and confer over the relevance of the subpoenaed information before serving the subpoenas illustrates that this was the intended effect.  *See Henry*, 2016 WL 303114, at *1-2 (finding defendant violated Rule 45's notice requirement by serving subpoenas the same day it provided notice to plaintiff, which prejudiced plaintiff).  To be clear, there was no urgency: 3.5 months remain in the discovery period.  Goldman nonetheless went forward with its unnecessary subpoenas without engaging with Plaintiffs.  While regrettably much damage may already have been done, the Court can prevent further damage by granting the request to quash.[4]

*         *         *

For these reasons, Plaintiffs respectfully request that the Court quash Goldman's subpoenas or, in the alternative, stay the subpoena process until a hearing can be held on this matter.  We appreciate the Court's continued attention to this matter.

---

[4] Plaintiffs respectfully observe that it may assist the discovery process if the Court were to issue a stronger admonition that Goldman comply with the meet and confer requirements of this Court and the applicable Federal and Local Rules.

August 19, 2019
Page 4 of 4

Respectfully submitted,

Kelly M. Dermody                         Adam T. Klein