# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

August 22, 2019

Via ECF

The Honorable Robert W. Lehrburger,
    United States District Court for the
        Southern District of New York,
            500 Pearl Street,
                New York, New York 10007-1312.

      Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
            No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

        Defendants oppose Plaintiffs' "anticipated motion to quash" ("Letter"; ECF No. 811) subpoenas seeking targeted discovery from Named Plaintiffs' subsequent employers. The limited requests served on Named Plaintiffs' current and former employers seek relevant documents and impose limited burden, and thus constitute reasonable and proportional discovery.

        In 2010 and 2017, Defendants served discovery requests seeking "documents that evidence or concern any and all employment of You by any employer, or self-employment, subsequent to Your employment by Goldman Sachs." (Ex. A (Defs.' June 26, 2019 Ltr.) at 3.) Defendants asked Plaintiffs to update their document productions during merits discovery, but on July 19, 2019, Plaintiffs stated that they would not produce any documents in response to Defendants' request. (*See* Letter Ex. 6 at 2.) Defendants therefore subpoenaed these documents from Named Plaintiffs' subsequent employers after serving notice on Plaintiffs. Plaintiffs responded by asking to confer; Defendants promptly provided multiple available days and times for a call. (Ex. B.) Plaintiffs never replied, instead filing their Letter in violation of the conference requirement in Rule II.D of Your Honor's Individual Practices.[1]

        Plaintiffs' "anticipated motion to quash" (Letter at 1) lacks merit. *First*, Defendants seek relevant documents regarding Named Plaintiffs' evaluations, compensation, and personnel files. In their individual and class claims, Plaintiffs challenge the fairness and validity of Goldman Sachs's 360 review, quartiling, and cross-ruffing processes. (Second Am. Compl. ¶¶ 40–45, ECF No. 411 ("SAC"); Pls.' Class Cert. Br., ECF No. 247 at 4–7, 12–14.) Named Plaintiffs' receipt of similar evaluations from subsequent employers would undermine their claims. *See Roth* v. *Cty. of*

---

[1]     The Court previously admonished Plaintiffs for violating its Individual Practices. (*See* May 2, 2018 Conf. Tr. at 4:25–5:2, 5:18–20 (THE COURT: "Let me ask the plaintiff[s], first of all, why was there no meet and confer or premotion letter? . . . I would have no doubt that you would not get agreement on th[is], that doesn't excuse meet and conferring . . . .").) Plaintiffs similarly refused to confer regarding their Amended Initial Disclosures before the July 17, 2019 conference, despite Defendants' repeated requests. (*See* July 17, 2019 Conf. Tr. at 33:6–24.)

*Nassau*, 2017 WL 75753, at *5 (E.D.N.Y. Jan. 6, 2017) (Shields, J.) (denying in part motion to quash subpoena to current employer seeking information and documents Plaintiff submitted regarding "his [job] application," because such documents "may belie the Plaintiff's argument that NCPD's determination was based on discrimination"). Named Plaintiffs' subsequent compensation and promotion records are also relevant because Plaintiffs allege that Goldman Sachs's evaluation processes resulted in lower compensation and promotion rates for women—and Plaintiffs Christina Chen-Oster and Allison Gamba allege that they should have been promoted to Managing Director. (*See* June 25, 2019 Order, ECF No. 767 at 1 (Goldman Sachs's "360 Reviews, Quartiling, and Cross-Ruffing" processes are "alleged to be instruments of discrimination with respect to evaluation, compensation and promotion"); SAC ¶¶ 70–103, 125–36.)

For example, in 2014, Goldman Sachs sold the business unit in which Ms. Gamba worked to IMC Financial Markets, where she continued to perform the same job. (Ex. C (Gamba Dep.) at 18:5–15, 20:16–18.) IMC's records therefore may show whether Goldman Sachs's processes fairly assessed Ms. Gamba's performance. *See Abdelsayed* v. *New York Univ.*, 2019 WL 2336533, at *4 (S.D.N.Y. June 3, 2019) (Parker, J.) (denying in part motion to quash subpoena seeking employment records in discrimination action because "the position Plaintiff was offered by Wycoff was substantially similar to the job Plaintiff held at NYU" and "given the close temporal proximity of Plaintiff's departure from NYU"); *Roth*, 2017 WL 75753, at *5 (subpoenaed employment records relevant because current and former employers used "almost identical" processes).

Plaintiffs also acknowledge that the information Defendants seek may be "relevant to Plaintiffs' credibility." (Letter at 2 n.3 (internal quotation marks and alterations omitted).) If any of the Named Plaintiffs have "lodged similar complaints of discrimination with a [subsequent] employer, courts have held that information concerning those complaints is relevant to her pending claims of employment discrimination." *Ghonda* v. *Time Warner Cable Inc.*, 2017 WL 395111, at *4 (E.D.N.Y. Jan. 27, 2017) (Mann, J.) (denying motion to quash subpoena to former employer in Title VII action) (collecting cases). Plaintiffs' only response to this well-settled law is that the subpoenas are not "proportional" in light of the purported harm to Named Plaintiffs (Letter at 2 n.3) but, as shown below, there is no basis for this argument.

*Second*, the subpoenas impose no burden that should impede their enforcement. Plaintiffs mischaracterize the subpoenas as "incredibly broad" (Letter at 2), but they actually seek the same information Your Honor ordered Defendants to produce for Named Plaintiffs' alleged "comparators": "centrally stored (a) personnel files, (b) evaluation, compensation and promotion documents, and (c) complaint and disciplinary files if separate from the individuals' personnel files." (June 7, 2019 Order, ECF No. 753 at 6.)[2] Plaintiffs' assertion that requests using the phrase "all documents and communications" are overbroad (Letter at 2) is belied by their own document requests, which seek "all documents, including any communications." (Ex. D at 7.)

Plaintiffs' assertion of personal burden—that merely "[s]erving subpoenas on current or former employers . . . risks[s] harming Plaintiffs' reputation" (Letter at 3)—is also

---

[2]   Defendants' subpoenas thus bear no resemblance to the "blanket requests" in *Henry* v. *Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (Cott, J.).

without merit.  *See*, *e.g.*, *Ghonda*, 2017 WL 395111, at *3 ("Plaintiff's contention that the mere service of the challenged subpoena would cause her harm is conclusory and speculative.").[3]  In fact, this action has received widespread media coverage—and Named Plaintiffs have given interviews publicizing this litigation (*see* Giuffra Decl. Exs. 1304–1415, ECF No. 716)—which "already alerted the industry to th[is] lawsuit and injured [their] reputation[s], so any additional information disclosed through discovery would likely have little impact on a prospective employer."  *Johnson*, 2017 WL 3055098, at *4 (citing *Ghonda*, 2017 WL 395111, at *3).

Courts also consider "whether the subpoena targets a current or former employer." *Abdelsayed*, 2019 WL 2336533, at *2 (collecting cases).  Here, three of the five subpoenaed entities—Deutsche Bank Securities, Element Pointe Advisors, and IMC Financial Markets—are former employers of Ms. Chen-Oster, Plaintiff Mary De Luis, and Ms. Gamba, respectively, so these subpoenas cannot "interfere[] with employment relationships."  (Letter at 3.)  Plaintiffs' reference to the purportedly "insular and competitive nature of the financial industry" (*id.*) is misplaced.  Both Ms. Gamba and Plaintiff Shanna Orlich have left the financial industry (Ex. C (Gamba Dep.) at 29:4–34:16, 203:24–204:2; Ex. E), and Jennings, Strouss & Salmon, PLC is not part of the financial industry.

*Finally*, Plaintiffs' assertion that Defendants must confer with Plaintiffs "*before* serving the subpoenas" (Letter at 3 (emphasis added)) is wrong.  Defendants served "a notice and a copy of the subpoena" on Plaintiffs prior to serving the subpoenas (in compliance with Fed. R. Civ. P. 45(a)(4)), and offered to confer the business day after the subpoenas were served.  And Plaintiffs' own citation recognizes that "courts require the objecting party also to demonstrate prejudice," and there is no prejudice where, as here, Plaintiffs "filed [a] motion to quash and [the] subpoenaed part[ies] produced no documents."  *Henry*, 2016 WL 303114, at *1–2.  Indeed, Plaintiffs have notified at least one subpoenaed entity of their anticipated motion to quash.[4]

---

[3]  *See also Johnson* v. *J. Walter Thompson U.S.A., LLC*, 2017 WL 3055098, at *4 (S.D.N.Y. July 17, 2017) (Francis, J.) (rejecting Title VII plaintiff's argument that subpoena "would provide ammunition for the defendants to 'target other potential employers' and 'sabotage Ms. Johnson's career,'" because "[t]his purported danger is too nebulous to justify denying discovery"); *Mirkin* v. *Winston Resources LLC*, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008) (Freeman, J.) (denying motion to quash employer subpoena in gender discrimination action, because "the burden imposed on Plaintiff . . . is slight" and "Plaintiff could have reasonably expected that matters related to her employment performance would be disclosed in this litigation").

[4]  The cases cited by Plaintiffs (Letter at 3) concern fact patterns not present here.  *See Henry*, 2016 WL 303114, at *2 (subpoena to restaurant may affect future job applications to "other restaurants in New York City . . . under the same ownership"); *Guercia* v. *Equinox Holdings, Inc.*, 2013 WL 2156496, at *4 (S.D.N.Y. May 20, 2013) (Griesa, J.) (quashing subpoenas because "the revelation that Guercia is participating in a lawsuit against her former employer could . . . become widely known in the construction industry"); *Warnke* v. *CVS Corp.*, 265 F.R.D. 64, 66–67 (E.D.N.Y. 2010) (Tomlinson, J.) (defendant sought only documents "relevant to its mitigation defense"); *Gambale* v. *Deutsche Bank AG*, 2003 WL 115221, at *1 (S.D.N.Y. Jan. 10, 2003) (Eaton, J.) (precluding subpoenas to "executive search firms").

The Honorable Robert W. Lehrburger                                                                                    -4-

                                                                               Respectfully,

                                */s/ Nathaniel P.T. Read*        */s/ Ann-Elizabeth Ostrager*

                                Nathaniel P.T. Read           Ann-Elizabeth Ostrager
                                of Cohen & Gresser LLP   of Sullivan & Cromwell LLP

cc:     Counsel of Record (via ECF)