

August 27, 2019

**Via CM/ECF**
The Honorable Robert W. Lehrburger
U.S. District Court for the Southern District of New York
500 Pearl Street, New York, NY 10017

      Re:    *Chen-Oster, et al. v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL)

Dear Judge Lehrburger:

      Plaintiffs submit this reply in connection with Plaintiffs' August 19, 2019 request that the Court quash Goldman's overbroad subpoenas, served on the Named Plaintiffs' post-Goldman employers before any good faith attempt to meet and confer. *See also* ECF No. 811 ("Letter"); ECF No. 816 ("Opp.").

**I.    Goldman Has Failed to Demonstrate Relevance of the Materials.**

      First, Goldman argues that "similar evaluations from subsequent employers would undermine [Plaintiffs'] claims." Opp. at 1. But Plaintiffs' treatment at other employers is not relevant to whether Goldman's implementation of its own policies was discriminatory. *See Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) ("The issue presented here is whether Defendant's actions directed toward Henry were based on valid considerations or violated the discrimination laws. Henry's prior employment has little if any bearing on that issue."); *Moussouris v. Microsoft Corp.*, No. 16 MC 80170, 2016 WL 5870010, at *4 (N.D. Cal. Oct. 7, 2016) (quashing subpoena as to subsequent employer of a named plaintiff in a gender discrimination class action, "find[ing] [her] performance at [the subsequent employer] is not relevant to her performance when she was earlier employed by [the defendant]").[1]

      Second, Goldman asserts that "Named Plaintiffs' subsequent compensation and promotion records are also relevant because Plaintiffs allege that Goldman's [] evaluation processes resulted in lower compensation and promotion rates for women." Opp. at 2. But, again, Plaintiffs' legal theory does not depend on comparing the employment policies of their current or former employers to Goldman's practices: rather it is established by proving that

---

[1] By contrast, Goldman cites to in *Roth v. County of Nassau*, where the plaintiff specifically put discovery as to a current employer, the N.Y.C. Police Department ("NYPD"), at issue by arguing that the NYPD found him "medically fit" and thus the Nassau County Police Department ("NCPD"), who used an "almost identical . . . process," should have also found him medically fit when he applied to the NCPD. No. 15 Civ. 6358, 2017 WL 75753, at *5–6 (E.D.N.Y. Jan. 6, 2017).

New York  685 Third Avenue  25th Floor  New York, NY 10017  Tel (212) 245-1000  Fax (646) 509-2060
Chicago  161 N Clark Street  Suite 1600  Chicago, IL 60601  Tel (312) 809-7010  Fax (312) 809-7011
San Francisco  One California Street  12th Floor  San Francisco, CA 94111  Tel (415) 638-8800  Fax (415) 638-8810
Washington DC  601 Massachusetts Ave NW  Suite 200W  Washington, DC 20001  Tel (202) 847-4400  Fax (202) 847-4410
www.outtengolden.com

women are paid and promoted less than men *at Goldman*.[2] Whether Plaintiffs Christina Chen-Oster and Allison Gamba "should have been promoted to Managing Director" at Goldman, Opp. at 2, is a question internal to Goldman.

Third, Goldman argues that subsequent complaints of discrimination could be relevant to Plaintiffs' credibility. Opp. at 2.[3] Not so. While Goldman's argument is based entirely "on wholesale speculation" that Plaintiffs complained of discrimination elsewhere,[4] even if they had been discriminated against elsewhere, "it is not remotely apparent what difference that would make regarding the allegations of discriminations and retaliation . . . in this case." *Henry*, 2016 WL 303114, at *3 (discussed in context of allegations of untruthfulness).

## II.    Goldman's Requests are Duplicative.

Plaintiffs have already produced or objected to requests for substantially the same information Goldman now seeks, which provides an independent basis to quash the subpoenas as cumulative and duplicative. *See* Pls.' Ltr. § III.

Goldman does not substantively engage with this point. Instead, it notes that it served its subpoenas after "Plaintiffs stated that they would not produce any documents in response to Defendants' request." Opp. at 1. But before subpoenaing third-party employers, Goldman was required to seek the information from Plaintiffs first. *Cf. Abdelsayed*, 2019 WL 2336533, at *2 (courts "typically require relevant information about subsequent employment to be obtained through less intrusive means; usually, through the plaintiff"); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) ("[C]ontrary to Defendant's assertion, it is not entitled to obtain this information directly from Plaintiff's employers, but rather, must obtain the information from less intrusive means where possible."); *see also* Fed. R. Civ. P. 26(c) (conferring discretion to "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Here, if Goldman thought that certain categories of withheld information were relevant, it should have conferred with Plaintiffs and, if necessary, filed a motion to compel with the Court. The fact that Goldman instead chose to immediately subpoena third-parties again highlights that the true purpose of these subpoenas is harassment.

---

[2] By contrast, in both *Roth* and *Abdelsayed v. New York University*, the courts only permitted subpoenas of third-party employers when Plaintiffs had specifically used their experiences at those employers to help establish their claims. *See supra* note 1; *Abdelsayed*, No. 17 Civ. 9606, 2019 WL 2336533, at *4 (S.D.N.Y. June 3, 2019) (explaining that the plaintiff requested the same accommodations at third-party employer that he was seeking from defendant).

[3] Contrary to Goldman's characterization, Plaintiffs never acknowledged that the information Goldman seeks was relevant to their credibility, but rather argued that if Goldman were to make that argument it would be without merit. *See* Opp. at 2 (citing Pls.' Ltr. at 2 n.3).

[4] In *Ghonda v. Time Warner Cable, Inc.*, relied on by Goldman, the court had been "present[ed] [with] independent evidence that provides a reasonable basis for it to believe that [plaintiff] has filed complaints . . . thereby overcoming plaintiff's professed concern that the subpoena is simply a tool for harassment that will impede her job search." No. 16 Civ. 2610, 2017 WL 395111, at *4 (E.D.N.Y. Jan. 27, 2017) (collecting cases) (alterations in original and internal citations removed). Goldman has made no such showing here. Rather, the fact that Goldman has subpoenaed current and former employers, instead of pursuing the information it believes relevant first from Plaintiffs, highlights that the true purpose of the subpoenas is to be "a tool for harassment[.]" *Id.*

Even if Goldman could demonstrate some attenuated, non-duplicative relevance, it is outweighed by the direct and negative impact to Plaintiffs, and thus the subpoenas are not proportional.  *See Warnke*, 265 F.R.D. at 69–70 ("[B]ecause of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort.") (collecting cases).[5]

### III.   Goldman's Subpoenas *Have* Caused Plaintiffs' Prejudice.

Despite Goldman's attempt to minimize the "personal burden" to Plaintiffs, its premature serving of subpoenas has caused them real harm.  *Cf.* Opp. at 2–3.  Service of subpoenas forces an employer to, at a minimum, hire lawyers, review the subpoenas, and potentially move to quash or narrow them and appear in Court.  All of this could cause former and current employers to view Plaintiffs in a negative light.  While Goldman "makes light of this argument, it is a legitimate concern."  *Henry*, 2016 WL 303114, at *2.  As the *Henry* court noted, it "would hardly be surpris[ing] that, if [the defendant] (or any other establishment) knew that an applicant for employment had brought a lawsuit against another [employer] for discrimination, it might take that into account in the hiring process."  *Id.* (collecting cases); *see also Moussouris*, 2016 WL 5870010, at *4 (holding "that any marginal relevance [the named plaintiff's] post-[employment] performance might have is outweighed by proportionality concerns").

### IV.   Goldman Failed to Meet and Confer, Not Plaintiffs.

Within hours of receiving Goldman's e-mail to Plaintiffs attaching the subpoenas at issue, Plaintiffs responded, asking that Goldman meet and confer *before* serving them.  Goldman did not respond to Plaintiffs' request to meet and confer until *after* it served the subpoenas.  At that point, Plaintiffs had no choice but to move to quash the subpoenas to avoid further harm.

\* \* \*

For these reasons, Plaintiffs respectfully renew their request that the Court quash Goldman's subpoenas or, in the alternative, stay compliance deadlines until a hearing can be held on this matter.  The two subjects of subpoenas not domiciled in the Southern District of New York have consented to litigation of the motion to quash in this forum, and Plaintiffs understand from Goldman's letter that it has agreed to abide by the decision of this Court with respect to all five of the substantially identical subpoenas.

Respectfully submitted,

Kelly M. Dermody          Adam T. Klein

---

[5] Goldman's analogy to comparators is inapt because Plaintiffs are only seeking comparator evidence from employees at Goldman for their times of employment *with* Goldman.  Opp. at 2