## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

------

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

September 9, 2019

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the
      Southern District of New York,
         500 Pearl Street,
           New York, New York 10007-1312.

           Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
                No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

      Defendants briefly reply to Plaintiffs' September 6, 2019 response ("Resp."; ECF No. 837) to Defendants' September 3, 2019 letter ("Letter"; ECF No. 832) regarding Plaintiffs' refusal to produce documents relevant to Plaintiff Allison Gamba's claims. Contrary to Plaintiffs' mischaracterizations, the parties exchanged nine letters about the deficiencies in Ms. Gamba's document productions over *eight months*, in which Plaintiffs firmly refused four times to produce the tax documents at issue, and ignored Defendants' four offers to confer by phone. The requested documents (if they exist) bear directly on Ms. Gamba's promotion claim, credibility as a trial witness, and adequacy to serve as a class representative. Plaintiffs cannot avoid producing documents by offering to provide whatever attorney-drafted response they unilaterally deem appropriate.

      *First*, Plaintiffs' assertion that Defendants have not "completed a meet-and-confer with Plaintiffs" (Resp. at 1) is incorrect. From December 2018 to July 2019, the parties exchanged nine letters about the deficiencies in Plaintiffs' document productions, including Ms. Gamba's failure to produce relevant tax documents, and Defendants offered to meet and confer four times, which Plaintiffs ignored. (*See*, *e.g.*, Letter Ex. A (Defs.' Apr. 2, 2019 Ltr.) at 3 ("We are available to meet and confer if Plaintiffs would like to discuss these topics."); *id.* (Defs.' May 7, 2019 Ltr.) at 2 (same); *see also* Resp. at 1 (discussing correspondence "in December 2018" and "letter dated July 19, 2019").) Plaintiffs instead refused to produce the requested documents, asserting that they "have already produced documents reflecting this income," and "[t]here is no legitimate basis for Goldman's requests for additional documents related to financial information." (Letter Ex. D at 2–3.) This plainly satisfied the requirement to confer.[1]

---

[1] Plaintiffs' accusation that Defendants have engaged in a "pattern" of not conferring (Resp. at 2) is baseless. To the contrary, it is Plaintiffs who engage in a pattern of holding discovery issues hostage by refusing to meet and confer by telephone. Last year, Plaintiffs failed to confer before

The Honorable Robert W. Lehrburger                                                                                          -2-

Plaintiffs appear to claim that Defendants were required to confer about their attempt to convert Defendants' document request into "a tailored interrogatory." (Letter Ex. D at 2; *see* Resp. at 2.) But Plaintiffs cannot decide how Defendants conduct discovery. Plaintiffs cite no authority to support their unilateral attempt to draft an interrogatory on Defendants' behalf instead of simply producing documents. Plaintiffs must either produce the requested documents or certify that they do not exist; they cannot withhold discovery for months under the guise of conferring.

Plaintiffs' assertion that "the matter was dropped" from 2017 to 2018 (Resp. at 1; *see also id.* at 2 n.2) is misleading. Defendants initially served discovery requests on Ms. Gamba in November 2017 during discovery into Plaintiffs' attempt to certify a Rule 23(b)(2) injunctive class. (Letter Ex. B.) Midway through class discovery, however, Plaintiffs abandoned these claims (*see* Pls.' Sept. 27, 2018 Ltr., ECF No. 625), so no further discovery was needed. Thus, there was no reason to raise any discovery issues as to Ms. Gamba until the parties began merits discovery in late 2018, at which point Defendants promptly requested Ms. Gamba's tax documents.

*Second*, Plaintiffs mischaracterize Defendants' document request as limited to "mitigation-related evidence" (Resp. at 2),[2] but the requested documents are also relevant because, if Ms. Gamba set up a side business while employed full time at Goldman Sachs—or immediately thereafter—that undermines her claim that she should have been a managing director at Goldman Sachs. (*See* Letter at 3.) In response, Plaintiffs try to minimize Ms. Gamba's interior design business as a "hobb[y]" or "side project[]" (Resp. at 2, 3 n.3), but admit—for the first time—that Ms. Gamba in fact earned over $█████ from this business in 2015 and 2016 alone (*id.* at 1 n.1).[3] Plaintiffs also disparage Defendants' theory of relevance as "shameless[]" and "silly" (Resp. at 3) but do not otherwise meaningfully respond to it.

Plaintiffs likewise mischaracterize Defendants' positions regarding Ms. Gamba's credibility and adequacy to serve as a class representative. (Resp. at 3.) Defendants do not claim that "financial documents," in of themselves, "bear on Plaintiff Gamba's credibility." (*Id.* at 2–3)

---

seeking to "cut short" discovery on their now-abandoned attempt to certify a Rule 23(b)(2) class. (May 2, 2018 Conf. Tr. at 4:21–5:2, 5:18–20 (THE COURT: "Let me ask the plaintiff[s], first of all, why was there no meet and confer or premotion letter? . . . I would have no doubt that you would not get agreement on th[is], that doesn't excuse meet and conferring . . . .").) Earlier this year, Defendants requested to confer three times about deficiencies in Plaintiffs' Initial Disclosures, but Plaintiffs refused to respond. (July 17, 2019 Conf. Tr. at 33:6–8, 33:21–24.) And, most recently, Plaintiffs refused Defendants' offer of multiple days and times to confer about subpoenas. (Defs.' Aug. 22, 2019 Ltr. at 1, 3, ECF No. 816; Pls. Aug. 27, 2019 Ltr. at 3, ECF No. 825.)

[2] Contrary to Plaintiffs' assertion that they have provided "robust productions" (Resp. at 2), Ms. Gamba has in fact produced only 19 documents.

[3] Plaintiffs also assert for the first time that, contrary to Ms. Gamba's sworn deposition testimony, "Ms. Gamba did not receive any revenue for design projects in 2014." (Resp. at 1 n.1.) Plaintiffs offer no explanation for their failure to correct Ms. Gamba's purportedly inaccurate testimony at any point during the past year. In light of this belated disclosure, Defendants are now seeking only documents concerning 2015 and 2016.

Rather, if the tax documents (or lack thereof) show that Ms. Gamba failed to disclose income from her interior design business in 2015 and 2016 (and therefore did not pay taxes on that income), that plainly bears on her credibility. As Plaintiffs acknowledge, such "a factual basis for believing that prior acts of deception will be revealed" is sufficient grounds to obtain discovery. (Resp. at 3 (quoting *Davidson Pipe Co.* v. *Laventhol & Horwath*, 120 F.R.D. 455, 462 (S.D.N.Y. 1988) (Francis, J.)).) And, contrary to Plaintiffs' assertions, Ms. Gamba's credibility and trustworthiness also bear on her "fitness [to serve] as a class representative" (Resp. at 3 n.3); *see*, *e.g.*, *Hendricks* v. *J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 88 n.9 (D. Conn. 2009) ("the Court is concerned that Hendricks and Minzie would be inadequate class representatives," because, "[a]s the Second Circuit has stated, 'to judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff'") (quoting *Savino* v. *Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)) (denying class certification).

In their July 19, 2019 letter, Plaintiffs refused to respond to any of these issues, stating only that they were "unsubstantiated" while withholding all relevant documents that could substantiate or disprove them. (Letter Ex. D at 3 n.1.) Despite refusing to meaningfully confer, Plaintiffs now claim, for the first time, that "[t]hese amounts were reported to the IRS." (Resp. at 2.) Plaintiffs' letter, however, is ambiguous as to which "amounts were reported to the IRS"—the money she received for "design projects in 2015–2016," or her salary from her "full-time employment at IMC Financial Markets." (*Id.*) Ms. Gamba's tax documents, if they exist, will resolve this issue, so no there is no reason they should not be produced now. Plaintiffs may designate such documents as "Confidential" or "Attorneys' Eyes Only" under the Court-ordered protective order (ECF Nos. 51, 712), or enter into a stipulation to protect Ms. Gamba's privacy (ECF No. 666 (agreeing to "redact and/or use employee ID numbers in lieu of names")).

*Third*, Plaintiffs do not appear to dispute that there is no burden to complying with Defendants' discovery request. Instead, Plaintiffs mischaracterize Defendants' targeted request, claiming that Defendants seek to "rifle through Plaintiffs' unrelated financial records, including tax returns or other filings." (Resp. at 2.) To the contrary, Defendants seek only documentation of the income Ms. Gamba earned from her interior design business in 2015 and 2016. (Letter at 1–3.) Ms. Gamba has produced Schedule K-1s for 2017 and 2018 showing such income, and should therefore be able to produce Schedule K-1s for 2015 and 2016 or certify that they do not exist. If Ms. Gamba disclosed her interior design business income on different forms, then there is likewise no burden to producing them.[4] To extent such tax forms do not exist, Defendants also requested that Plaintiffs produce documents sufficient to show her interior design business income from those years. (*Id.*) Because Plaintiffs provide the exact "gross revenue" Ms. Gamba earned from her interior design business in 2015 to 2016 (Resp. at 1 n.1), Plaintiffs appear to have already collected the requested documents can therefore easily produce them. Defendants are willing to confer with Plaintiffs about any proposed privacy or relevance redactions to such documents.

Defendants respectfully request that the Court order Ms. Gamba to produce the requested documents or certify that they do not exist.

---

[4] Plaintiffs' citation to *Gattegno* v. *Pricewaterhousecoopers, LLP*, 205 F.R.D. 70 (D. Conn. 2001) is irrelevant. In *Gattegno*, the court applied a heightened standard for obtaining discovery of "*all* the confidential information contained in a joint tax return," *id.* at 74 (emphasis in original), whereas here Defendants seek only limited tax documentation.

The Honorable Robert W. Lehrburger                                                                                        -4-

                                                               Respectfully,

                                                               */s/ Ann-Elizabeth Ostrager*

                                                               Ann-Elizabeth Ostrager
                                                              of Sullivan & Cromwell LLP

cc:      Counsel of Record (via ECF)