# Exhibit 1

Goldman, Sachs & Co. | 180 Maiden Lane | New York, New York 10038



█████████, 2007



Re: Departure Arrangements

Dear ████████,

     This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively, "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

     As part of the separation package, you will continue to be paid at your current base salary rate, less applicable deductions, through █████ 2007 ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

     A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

GS0386662



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and it may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting

2

Confidential

GS0386663

these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that on or before the last day of your active employment, you will return to Goldman Sachs all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provisions of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse

3

Confidential

GS0386664

you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the New York Stock Exchange, Inc., or, if the matter is not arbitrable before the New York Stock Exchange, Inc., the National Association of Securities Dealers. If both the New York Stock Exchange, Inc. and the National Association of Securities Dealers decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

The preceding five paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮▮▮▮, 2007, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,

I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

▮▮▮▮/07

Date

4

Confidential

GS0386665

# Exhibit 2

Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005



█████, 2009



Re: Departure Arrangements

Dear █████

    This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

    This constitutes written notice of the termination of your employment. You will have a notice period of ███ ████, 2009 (hereinafter "Notice Period"). During your Notice Period, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

    This Notice Period also constitutes any notice that may be required under the federal Worker Adjustment and Retraining Notification Act and New York State Worker Adjustment and Retraining Notification Act as the result of a number of employment separations that are expected to occur at or around the time of your termination. There are no bumping rights applicable to you in connection with the termination of your employment.

    Following the expiration of your Notice Period, and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above █████ ██ ██, 2009 █████████████████████████ ██ 2009 ███████████████████████████████████████████████

GS0390849



A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). In addition, pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period.

As a result of your loss of employment, you may be eligible to receive unemployment insurance benefits, job retraining, re-employment services, or other assistance with obtaining new employment upon your termination. The New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. You can also access reemployment information and apply for unemployment insurance benefits on the Department's website, www.labor.state.ny.us, or you may use the contact information provided on the website to contact the Department for further information and assistance.



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of

GS0390850

ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof. Your signature below will also constitute confirmation that you have been given at least 45 days within which to consider this release and its consequences, that you have been advised prior to signing this agreement to consult with any attorney and any personal or financial advisor you choose, and that any changes to this agreement (irrespective of materiality) did not restart the running of the 45-day period. For a period of seven days following the execution of this agreement, you may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired. The Older Worker Benefit Protection Act requires that the firm provide you with certain information concerning the employees being offered similar separation agreements. The required information is provided in Attachment A to this document.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. In addition, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant,

attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮▮ 2009, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me, or GS HR Direct at 877-454-7426, if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:



Employee's Signature

Employee's Name (Print)

Date

Confidential

# Exhibit 3

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

**Goldman
Sachs**

2018

Re:   Departure Arrangements

Dear

1.   **Introduction**

1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan, The Goldman Sachs Amended and Restated Stock Incentive Plan (2013) (collectively, and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2.   **Active Employment Period and Severance Period**

2.1.   This constitutes written notice of the termination of your employment. You will remain an active employee of the firm through ████ 2018 ("Active Employment Period"). Your notice period of ██ ████ will commence tomorrow and run concurrently with your Active Employment Period. During your Active Employment Period.

2.2.   Following the expiration of your Active Employment Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ████████ 2018 ████████ 2018

2.3.

2.4.

2.5. ███████████████████████████████████████████

3. **Benefits, Vacation and Firm Policies**

3.1. ████████████████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3. ██████████████████████████████████████████

4. ████████████████████████████

4.1. Following the conclusion of your Active Employment Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that ██████████████████████████

4.2. ██████████████████████████████████████████

4.3. ██████████████████████████████████████████

GS0386667

5. **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims for vested benefits to which you are entitled under the terms of any employee pension benefit plan covered by ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), including claims for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")), or for any violation of the provisions of Title I of ERISA. This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. **Return of Firm Property and Outstanding Expenses**

6.1. You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████████████

6.2. ████████████████████████████████████████████

7. **Confidentiality Obligations**

7.1. In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2. In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors,

officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.    You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing in this section shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

7.5.    Nothing herein, or in any other Goldman Sachs agreement or policy, shall limit your right under applicable law to provide truthful information to the appropriate governmental authority, including any regulatory, judicial, administrative or other governmental entity, or preclude you from filing a charge with or participating in any investigation or proceeding conducted by a governmental authority. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in connection with any charge, complaint, or lawsuit filed by you or by anyone else on your behalf (whether involving a governmental authority or not); provided that you are not agreeing to waive, and this agreement shall not be read as requiring you to waive, any right you may have to receive an award for information provided to any governmental authority.

7.6.    You also may have immunity from civil or criminal liability for the confidential disclosure of a trade secret as set forth in 18 U.S.C. § 1833 and the Confidentiality of Firm Information policy. In particular, under current law an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to federal, state or local government officials, either directly or indirectly, or to an attorney, and is solely for the purpose of reporting or investigating a suspected violation of the law, (ii) under seal in a complaint or other document filed in a lawsuit or other proceeding, or (iii) to your attorney in connection with a lawsuit for retaliation for reporting a suspected violation of law (and the trade secret may be used in the court proceedings for such lawsuit) as long as any document containing the trade secret is filed under seal and the trade secret is not disclosed except pursuant to court order.

8.   **Non-Disparagement and Cooperation with the Firm**

8.1.    You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.    You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

                                                                                                      GS0386669

9. Arbitration

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10. Severability and Survival of Provisions

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11. Tax Consequences and Entirety of the Agreement

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

12. Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

Confidential                                                                                                      GS0386670

13. <u>Letter Due Date</u>

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2018, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

Employ

Employee's Name (Print)

Date

GS0386671

# Exhibit 4

Goldman, Sachs & Co. | 200 West St. | New York, New York 10262

**Goldman Sachs**

████ 2013

Re:  Departure Arrangements

Dear ████

1.  **Introduction**

    1.1.  This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2.  **Active Employment Period and Severance Period**

    2.1.  This constitutes written notice of the termination of your employment. You will remain an active employee of the firm through ████ 2013 ("Active Employment Period"). During your Active Employment Period ████
    ████ . Your notice period of ████ will commence on ████ 2013 and will run concurrently with your Active Employment Period through ████ 2013. The notice period will apply regardless of whether you agree to the terms of this agreement.

    2.2.  Following the expiration of your Active Employment Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ████ 2013 ████ 2013 ████

    2.3.

    2.4.

GS0386672

2.5. 

## 3. Benefits, Vacation and Firm Policies

3.1. ████████████████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ██████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3. 

4. ████████████████████████████████████

4.1. 

4.2. 

4.3. 

## 5. Release of Claims

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the

GS0386673

termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. **Return of Firm Property and Outstanding Expenses**

6.1.    You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who ▮▮▮▮▮▮▮▮▮▮▮▮▮ ∏ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7. **Confidentiality Obligations**

7.1.    In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.    In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.    You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other

GS0386674

governmental auth    es, including the filing of a charge with    participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

8. **Non-Disparagement and Cooperation with the Firm**

8.1.    You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.    You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

9. **Arbitration**

9.1.    Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.    You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10. **Severability and Survival of Provisions**

10.1.    In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.    Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11. **Tax Consequences and Entirety of the Agreement**

11.1.    The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.    This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be

GS0386675

modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by                    2013, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours.



I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

# Exhibit 5

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

**Goldman Sachs**

████ 2011

████████
████████
████████████

Re:   <u>Departure Arrangements</u>

Dear ██████

1. **Introduction**

   1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2. **Notice Period and Severance Period**

   2.1.   This constitutes written notice of the termination of your employment. Your notice period of ██████ will commence tomorrow and run through ████████ 2012 (hereinafter "Notice Period"). During your Notice Period, ███████████████████████████████████████████████████████████████



   2.2.

   2.3.

   2.4.

2.5. ████████████████████████████████████████████████
████████████████████████████████████████

### 3. Benefits, Vacation and Firm Policies

3.1. ████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Notice Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ██████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Notice Period.

3.3. 

4. ████████████████████

4.1. Following the conclusion of your Notice Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that ████████████████████████


4.2. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

4.3. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

### 5. Release of Claims

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the

GS0386678

termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. <u>Return of Firm Property and Outstanding Expenses</u>

6.1.    You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████

7. <u>Confidentiality Obligations</u>

7.1.    In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.    In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.    You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other

GS0386679

governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

8. Non-Disparagement and Cooperation with the Firm

8.1. You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2. You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

9. Arbitration

9.1. Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2. You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10. Severability and Survival of Provisions

10.1. In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2. Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11. Tax Consequences and Entirety of the Agreement

11.1. The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2. This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be

GS0386680

modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.  In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.  You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act.  Pursuant to that Act, we advise you that the firm does not expect this process to result in the closure of any of its offices or operating units and there are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.  You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

11.3.  You should also be aware that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the expiration of your Notice Period.  If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

## 12.  **Legal Effect of Section Headings**

12.1.  The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13.  **Letter Due Date**

13.1.  Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2011, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date.  Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

████████████████

Employee's Signature

████████████████

Employee's Name (Print)

███████ | 2011

Date

Confidential

# Exhibit 6

Goldman, Sachs & Co. | 180 Maiden Lane | New York, New York 10038
Tel: 212-902-1000

████ , 2002

████████████████

Re: Departure Arrangements

Dear ████

    This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with Goldman, Sachs & Co. or one of its affiliates ("Goldman Sachs" or the "firm").   These arrangements are being offered to you on the understanding that you are in compliance with your legal obligations toward the firm, that you remain in good standing, and that, until such time as your salary continuation payments cease, you do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan ("SIP")).

    In order to receive the separation package, you must sign and return to us a copy of this letter.  As part of the separation package, ████████ 2002 █████████████████████
███████████████

    A summary of the benefits to which you are entitled after termination is set out in the attached memorandum from the Benefits Group dated ████ 2002. ███████████

GS0386682



In exchange for these arrangements, the firm requires that you follow certain procedures designed to resolve all employment issues. We ask that you cooperate fully with the members of the Human Resources Department with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You must also reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages paid to employees who have ████████████████████████████████████████████

You also agree that you will cooperate with the firm (and its respective counsel, if applicable) in connection with any client matter, investigation, administrative proceeding or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

In addition, the firm requires your acknowledgment that you have no remaining, unresolved claims with respect to your employment. Consequently, your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, which you ever had, now have, or hereafter may have against Goldman Sachs, its parents, subsidiaries or affiliates, or any of their predecessor or successor entities (collectively, the "Group") and any of its or their present and former partners, managing directors, shareholders,

employees, agents, directors, and officers, through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed or your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights as a former employee under any employee benefit plan in which you were a participant while employed). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance. This release and waiver also includes, without limitation, any claims you have or might have had in connection with the firm's equity-based award programs including, without limitation, the SIP.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the Group, or its or their present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of the Group's partners or employees ("Confidential Information and Materials"). You agree to hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials relating to the Group or containing or derived from Confidential Information and Materials, which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information about the Group or any of its or their present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and you will receive no further amounts which would otherwise be payable to you hereunder. In addition, Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and should not be disclosed by you to any other person or entity except as may be required by law, or to an immediate family member, or your accountant or attorney or personal or financial advisor; provided that you first give notice of this provision to each such person to whom disclosure is to be made and obtain their consent to abide by the terms of this provision.

Confidential

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment at Goldman Sachs or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the New York Stock Exchange, Inc., or, if the matter is not arbitrable before the New York Stock Exchange, Inc., the National Association of Securities Dealers. If both the New York Stock Exchange, Inc. and the National Association of Securities Dealers decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") (in accordance with the commercial arbitration rules of the AAA). You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

The preceding three paragraphs will survive the termination or expiration of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm by returning to me the enclosed copy of this letter by ███████ 2002 signed where indicated, that you have voluntarily decided to accept and agree to this arrangement. The proposal will expire if you have not returned the executed letter by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

I SO AGREE AND CONFIRM:

_____
Employee's Signature

_____
Employee's Name (Print)

_____
Date

GS0386685

# Exhibit 7



Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

Goldman
Sachs

Private and ☐☐☐☐☐☐☐ 2016

☐☐☐☐☐ 2016

☐☐☐☐☐☐☐☐

Re:   Departure Arrangements

Dear ☐☐☐☐☐

1.   **Introduction**

1.1   This ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ in connection with the termination of ☐☐☐☐☐☐☐☐ The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ that until such ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ the firm ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ (as that ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ The Goldman Sachs 1999 Stock ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ and/or ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ (the "SIP")).

2.   ☐☐☐☐☐☐☐☐☐☐☐☐ **Severance Period**



GS0386686



### 3. Benefits, Vacation and Firm Policies

3.1.  ██████████████████████████████  A summary of those benefits will be
provided to you separately at the conclusion of your Notice Period. You will be sent information regarding the
██████████ file and any conversion options approximately two weeks after the ██████████
██████. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM
(17426).

3.2.  Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions,
for ████████ through the last day of your Notice Period.

3.3.


limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")), as well as claims under the WARN Acts (as defined below in section 11.3). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6.  **Return of Firm Property and Outstanding Expenses**

    6.1.   You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who

    6.2.

7.  **Confidentiality Obligations**

    7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

    7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

    7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

8.   **Non-Disparagement and Cooperation with the Firm**

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

9.   **Arbitration**

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration.   Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA").  If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis.   It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10.   **Severability and Survival of Provisions**

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11.   **Tax Consequences and Entirety of the Agreement**

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly.   Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt

forgiveness is otherwise permitted by Code Section 409A).  Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.  In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.  The amounts paid hereunder, even if paid in a lump sum, satisfy any payment requirement under the non-solicit agreement that you have with the firm.  Please refer to your "Employee Agreement Regarding Confidential and Proprietary Information and Materials and Non-Solicitation" for the terms and conditions of that agreement.  You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act.  You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.  You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

11.3.   You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act and any similar applicable law (collectively, the "WARN Acts").  Pursuant to the WARN Acts, we advise you that the firm does not expect this process to result in the closure of any of its offices or operating units and there are no bumping rights applicable to you in connection with the termination of your employment.  You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.  You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

11.4.   You should also be aware that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination.  You may also be eligible for unemployment insurance benefits after your last day of employment.  Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the expiration of your Notice Period.  If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

12.  Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

Confidential

13. <u>Letter Due Date</u>

13.1.  Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2016, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date.  Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

GS0386691

# Exhibit 8

# EMPLOYEE AGREEMENT REGARDING CONFIDENTIAL AND PROPRIETARY INFORMATION AND MATERIALS AND NON-SOLICITATION

In connection with your candidacy for employment or any future employment by Goldman, Sachs & Co. or any of its subsidiaries or affiliates (collectively called "Goldman Sachs"), you may have access to non-public or other proprietary information and materials, including but not limited to (a) the names, addresses, phone numbers, accounts and other information concerning clients and prospective clients of Goldman Sachs; (b) other information and materials describing or relating to the business and financial affairs, personnel matters, products, operating procedures, organizational responsibilities, marketing matters, or policies or procedures of Goldman Sachs or its partners, employees, clients or other third parties (including, without limitation, portfolio structure, tax information, investment techniques and trading strategies used in, and the performance records of, client accounts, or other investment products); and (c) information and materials concerning the personal affairs of partners or employees of Goldman Sachs (all information and materials referred to in this sentence shall constitute "Confidential and Proprietary Information and Materials"). In consideration of Goldman Sachs' considering you for employment and, in the event Goldman Sachs employs you, in consideration of that employment and as a condition precedent to your continued employment with Goldman Sachs and in consideration of other employment-related benefits provided to you, including, without limitation, the fact that Goldman Sachs will be making available to you trade secrets or proprietary information not previously made available, you agree as follows:

1. Confidential and Proprietary Information and Materials shall be used only for Goldman Sachs' benefit and only as authorized and for the purposes intended by Goldman Sachs.

2. You will hold all Confidential and Proprietary Information and Materials in strict confidence and, except for the above authorized uses, will not, nor will you permit any agent or person under your control to use, give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential and Proprietary Information and Materials to any person, firm or corporation outside Goldman Sachs or to give or disclose Confidential and Proprietary Information and Materials to any partner or employee of Goldman Sachs who does not have a need to know or see the Confidential and Proprietary Information and Materials. This provision applies without limitation to unauthorized writings of any kind containing such information or materials, including books and articles.

3. a) During your employment with Goldman Sachs





While employed by Goldman Sachs, you may develop business with individuals you knew or were familiar with prior to joining Goldman Sachs. In developing such business, you will be acting as a representative of Goldman Sachs and will be utilizing and benefiting from Goldman Sachs' goodwill, reputation, name recognition, and other assets and resources. You therefore agree that such people (excepting only your direct relatives) will be subject to the provisions of this paragraph 3.

b) During your employment with Goldman Sachs



c) As additional and specific consideration for

4. Upon the termination of your employment (or earlier if requested by Goldman Sachs), you will return to Goldman Sachs all originals and copies of documents and other materials, including handwritten materials and electronically stored data, containing or derived from Confidential and Proprietary Information and Materials that are in your possession or control, at or away from Goldman Sachs' premises, accompanied, if requested, by a certificate signed by you and satisfactory to Goldman Sachs to the effect that all such Confidential and Proprietary Information and Materials have been returned.

(US____/06)

Confidential

GS0385526

5. Unless you have prior written authorization from Goldman Sachs, you will not publicize, disclose or allow disclosure of any information about Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, its or their business and financial affairs, personnel matters, operating procedures, organizational responsibilities, marketing matters, products and policies or procedures (including, without limitation, techniques and trading and other strategies used therein) and/or any aspects of your candidacy for employment or your tenure as an employee of Goldman Sachs or of the termination of such employment, (a) with any reporter, author, producer or similar person or entity, or (b) take any other action seeking to publicize or disclose any such information in any way likely to result in such information being (i) made available to the general public in any form, including books, articles or writings of any other kind, or film, videotape, audiotape or any other medium, or (ii) used for solicitation or marketing for any product other than a product that is solely a Goldman Sachs product.

6. Upon termination of your employment, you will not disclose or allow disclosure of financial and/or investment performance information of or concerning Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, or the portfolios, accounts, or funds it manages, in connection with the solicitation of business or marketing by or on behalf of yourself or any entity other than Goldman Sachs, with which you may become associated.

7. While employed by Goldman Sachs, you will not disclose or use without authorization any information concerning persons or entities other than Goldman Sachs that is confidential or proprietary to them, nor will you use information in any manner that would constitute a violation of any undertaking or agreement with a prior employer or other third party. Except as noted below or as otherwise disclosed to Goldman Sachs in writing, you represent and warrant that you are not subject to any understanding, undertaking or agreement that would preclude your employment with Goldman Sachs or that would limit your ability to undertake particular assignments on behalf of Goldman Sachs.

Exceptions: ___

_____   _____

_____   _____

8. You affirm that you have all necessary rights, authorizations and licenses to provide the services contemplated by this Agreement and otherwise in connection with your employment by Goldman Sachs, and to provide all related materials and that the provision of such services and materials or any component thereof, and Goldman Sachs' use of concepts, materials or information provided by you, will not constitute a breach of any agreement to which you are a party, or constitute an infringement of any patent or copyright, or constitute an unauthorized use of proprietary information or trade secrets of a third party.

9. You hereby irrevocably assign to Goldman Sachs, its successors and assigns, and Goldman Sachs shall have exclusive ownership rights, including, without limitation, all patent, copyright and trade secret rights, with respect to any work or product, including, but not limited to, (a) any invention, discoveries, concepts, performance record, investment technique, trading or other strategy, ideas or information, conceived by you or with which you have become familiar or worked on in the course of

your employment with Goldman Sachs, and (b) all documents, data and other information of any kind including, incorporating, based upon or derived from the foregoing, including, without limitation, reports and notes prepared by you.  Such work will be the property of Goldman Sachs, shall be considered a work made for hire and may not be used for any purposes other than the benefit of Goldman Sachs.  Any and all such property and material containing such property shall be delivered to Goldman Sachs on request and in any event at the termination of your employment by Goldman Sachs, and no copies thereof shall be retained by you unless the prior written consent of Goldman Sachs is obtained with respect thereto.  You will cooperate fully with Goldman Sachs to establish, protect or confirm Goldman Sachs' exclusive rights in such work or to enable it to transfer legal title together with any patents that may be issued.  A certificate evidencing compliance with this provision shall, if requested, be provided to Goldman Sachs.

10.  The obligations created by this Agreement shall survive the termination of your candidacy for employment and your employment.  You acknowledge that any violation, breach or other failure on your part to comply with this Agreement will materially and irreparably injure Goldman Sachs in a manner inadequately compensable in damages and that Goldman Sachs shall be entitled to injunctive relief against the breach or threatened breach of this Agreement.  In the event that you breach of any of the covenants of paragraphs 1, 2, 3 or 4, in addition to any other remedies or relief to which Goldman Sachs may be entitled, including other equitable relief and money damages, you agree and consent to the issuance of a temporary restraining order, a preliminary injunction and a permanent injunction, ordering:

(a) that you immediately return to Goldman Sachs all Confidential and Proprietary Information and Materials in any form whatsoever, at or away from Goldman Sachs' premises, and that you be enjoined from using or disclosing any information contained in such records;

You agree to submit to the jurisdiction of and agree that venue is proper in the federal and state courts located in the State of New York, New York County, in connection with any application for temporary or preliminary injunctive relief concerning the breach or threatened breach of this Agreement.  You acknowledge that this choice of forum is fair and reasonable because of the substantial relationship your employment will have or has with the operational, managerial, and regulatory functions and activities affecting you which are conducted through or from Goldman Sachs' headquarters in New York City.

Confidential

GS0385527

11. Except as otherwise provided in paragraph 10, any dispute or claim arising out of, based upon or relating in any way to this Agreement, or to your employment at Goldman Sachs or the termination of your employment, will be settled and finally determined by arbitration. Any such arbitration will be conducted in New York City before the American Arbitration Association or any other organization referred to in the arbitration provisions of any uniform application for Securities Industry Registration you have signed. You also agree that any arbitration award may be entered as a judgment in any appropriate court and that this Agreement is enforceable by the particular Goldman Sachs entity with whom you are employed as well as by an affiliate thereof as a third party beneficiary.

12. You acknowledge that you have read and reviewed this Agreement in its entirety, that you have been given an opportunity to ask Goldman Sachs questions about it, and that you have been given an opportunity to consult with an attorney or other advisor of your choice prior to entering into the Agreement. You acknowledge that you understand the terms of this document and knowingly and freely agree to abide by them. You acknowledge and agree that the temporal restrictions in paragraph 3 are reasonable under the circumstances of your employment or contemplated employment with Goldman Sachs and that the consideration to be received thereunder is adequate. You agree that you will execute such further documents and/or to take such further steps as may be required, in the judgment of Goldman Sachs, by any applicable foreign or local law in order to effectuate the terms of this Agreement.

13. This Agreement shall become effective when you sign it. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

14. In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions or portions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law and the affected provisions shall be deemed modified to the extent necessary to be valid and enforceable.

15. This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements and understandings with respect thereto and cannot be modified, amended or waived in whole or in part, except in a writing signed by the party to be charged. The obligations set forth herein shall be in addition to, and not in derogation of, any legal or other obligations which you may have whether by statute, common law, contract or otherwise, and any other agreements or understandings that you currently have or that you may hereafter have with Goldman Sachs. A waiver by Goldman Sachs of any breach by you of any provision or condition in this Agreement to be performed by you shall not be deemed a waiver of any other provisions or conditions in this Agreement.



Signature

Print Name

Date

GS0385528

# Exhibit 9

Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005

**Goldman Sachs**

█████ 2008



Re: <u>Departure Arrangements</u>

Dear █████

   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

   This constitutes written notice of the termination of your employment. Your notice period of ████ ████ 2009 (hereinafter "Notice Period"). During your Notice Period, ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████

   Following the expiration of your Notice Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above████ ██ ██ █ ██████████████████ , 2009 (███████████████████████████████████████ 2009 ██████████████████████████████████████████████████████████████ .

██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

   A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). In addition, pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period. ████████ ████████████████████████████████████████████ ████

Confidential

GS0386692



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████████ ██ █████████

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits

GS0386693

(including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and it may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding,

Confidential

arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▆▆▆▆▆▆ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

Employee's Name (Print)

Date

GS0386695

# Exhibit 10

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

Goldman
Sachs

███ 2016

████████

Re:  Departure Arrangements

Dear ███

1.  **Introduction**

    1.1.  This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan, The Goldman Sachs Amended and Restated Stock Incentive Plan, and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (2013) (collectively, the "SIP")).

2.  **Active Employment Period and Severance Period**

    2.1.  This constitutes written notice of the termination of your employment. You will remain an active employee of the firm through ███ 2016 ("Active Employment Period"). During your Active Employment Period you will ████████████████ Your notice period of ███ will commence on ████ 2016 ████████████████████████

    2.2.  Following the expiration of your Active Employment Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ████████ 2017 ████████ 2017 ████████

    2.3.  ████████

    2.4.  ████████

Confidential

2.5. ████████████████████████████████████████████████

3.  **Benefits, Vacation and Firm Policies**

3.1. ████████████████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3. ████████████████████████████████████████████████

4.  ████████████████████████████████

4.1. Following the conclusion of your Active Employment Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that ████████████████████████████████

4.2. ████████████████████████████████████████████████

4.3. ████████████████████████████████████████████████

5.  **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the

GS0386697

termination of your en. .yment (other than claims you may have bɛ.   upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA).   This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")).   This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6.   **Return of Firm Property and Outstanding Expenses**

   6.1.   You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies.   Severance packages offered to employees who have



   6.2.

7.   **Confidentiality Obligations**

   7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf.   Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

   7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium.   Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

   7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

GS0386698

7.4   You agree that the ex____ nce, terms and conditions of this agreeme____ e fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

## 8.   Non-Disparagement and Cooperation with the Firm

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

## 9.   Arbitration

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration.   Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA").   If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein.   This agreement does not include an agreement to arbitrate claims on a collective or class basis.   It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10.   Severability and Survival of Provisions

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11.   Tax Consequences and Entirety of the Agreement

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly.   Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt

Confidential

GS0386699

forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2. This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.   In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act.   You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.   You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1. The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1. Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▓▓▓ ▓▓ 2016, the enclosed copy of this agreement, signed where indicated.  The proposal will expire if you have not returned the executed agreement by this date.  Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

E▊▊▊▊▊▊▊▊

_____

▊▊▊▊▊▊▊

_____
Employee's Name (Print)

▊▊ /ᴗ
_____
Date

GS0386700

# Exhibit 11

<u>████████████ AGREEMENT AND RELEASE</u>

AGREEMENT, made as of ███████ 2017 (the "Agreement"), by and among ███████████ The Goldman Sachs Group, Inc. and ██████████ ██████████

WHEREAS, ██████ has been employed by Goldman, Sachs & Co. (now Goldman Sachs & Co. LLC), an affiliate of The Goldman Sachs Group, Inc. (collectively referred to herein as "Goldman Sachs"); and

WHEREAS, on ████████ ████ ███ ███████████ █████████ ████████████████████████████████████████████████████████ ████████████████████████████████ ██████████████ and

WHEREAS, Goldman Sachs and ███████ deny claims of wrongdoing or liability of any kind; and

WHEREAS, the parties are desirous of settling all matters between them without further proceedings or delay.

NOW, THEREFORE, in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, ██████Goldman Sachs and ██████ agree as follows:

1.   ██████████████

████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████

2.   <u>Employment Termination, Payments and Benefits</u>.

(a)   ██████ active employment with Goldman Sachs will end as of
████████ 2017 ("active employment period"). ████ will ████████████
██████████████████████████████████████████████
██████████████████████████████████████ 2017, at which time her
employment will end. ████████████████████████
████████████████████████ 2017 ████████████████ 2017.
Pursuant to the firm's Termination Vacation Pay policy, ████ will receive a payment,
less applicable deductions, for qualifying vacation time accrued, but unused, through the
last day of her active employment period.

(b)   Within seven days after full execution of this Agreement, Goldman
Sachs will ████████████████████████████████████████
████████████████████████████ Goldman Sachs will ████████
██████████████████████████████████████████████
████████████████

3.   ████ expressly understands and agrees that, except as otherwise
provided in this Agreement, the payments to and benefits received by her pursuant to
this Agreement shall be in lieu of any and all other amounts to which ████ might be, is
now or may become entitled from Goldman Sachs based upon any matter, cause or
thing occurring at any time prior to and including the date of this Agreement, and

-2-

████████

GS0390858

without limiting the generality of the foregoing, ███ hereby expressly waives any right

or claim that she may have or assert to payment for back pay, front pay, interest,

bonuses for ███ or any other year, damages, accrued vacation, accrued sick leave,

pension plan contributions, 401-k plan contributions, education benefits, life insurance

benefits, compensatory time, severance pay and/or attorneys' fees.

     4.     ███ expressly agrees, to the greatest extent permissible by

applicable law, not to file or initiate any legal action, arbitration, mediation, charge or

complaint against Goldman Sachs in any forum whatsoever with respect to events

occurring prior to the date of this Agreement.

     5.     <u>Releases</u>.

     (a)     ███, for herself and her heirs, executors, administrators,

successors and assigns, knowingly and voluntarily waives and releases forever whatever

claims, whether known or unknown, she ever had, now has or hereafter may have against

The Goldman Sachs Group, Inc., its predecessor or successor entities, including without

limitation Goldman, Sachs & Co. (collectively, the "Group"), and each of its or their

present and former partners, managing directors, employees, directors, officers, attorneys,

representatives and agents, based upon any matter, cause or thing occurring through the

date of her signature on this Agreement, including but not limited to claims based upon or

relating to ███ hire by the Group, any aspect of the work she performed, her

employment relationship with the Group, or the termination of her employment.  This

release and waiver includes, without limitation and to the greatest extent permitted by

law, any rights or claims under United States federal, state or local law and the national

or local law of any foreign country (statutory or decisional), for wrongful or abusive

-3-

GS0390859

discharge, for retaliation of any kind, for breach of any contract or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance, for emotional distress or for attorney's fees, and all claims that were or could have been asserted ███████ ███████ ███ agrees not to seek, and hereby waives any right to seek, reemployment with Goldman Sachs.

(b) ███████ waives and releases forever whatever claims she ever had, now has or hereafter may have, whether known or unknown, against ███████ ███ her heirs, executors, administrators, successors and assigns based upon any matter, cause or thing occurring at any time prior to and including the date hereof.

(c) The Goldman Sachs Group, Inc., on behalf of itself, any parent, subsidiary or affiliate and any predecessor or successor in interest, waives and releases forever whatever claims it ever had, now has or hereafter may have, whether known or unknown, against ███████, her heirs, executors, administrators, successors and assigns based upon any matter, cause or thing occurring at any time prior to and including the date hereof, except for claims of crime, fraud or gross misconduct.

(d) ███████ waives and releases forever whatever claims she ever had, now has or hereafter may have, whether known or unknown, against ███████ ███, her heirs, executors, administrators, successors and assigns based upon any matter, cause or thing occurring at any time prior to and including the date hereof.

-4-

███████

GS0390860

6.   <u>Confidentiality</u>.

The existence, terms and conditions of this Agreement are fully confidential and may not be disclosed to any other person or entity and except as provided herein, neither ███ nor Goldman Sachs nor ███ shall, without prior written approval of the other party, disclose to anyone the facts of this Agreement or any of its terms and provisions other than to their spouses.  Nothing in this paragraph shall prohibit disclosure of such information (i) to the attorneys or accountants of ███ and ███ but only provided that any such persons are informed that they must not disclose the same to any other person or entity and they agree in writing to that condition, (ii) as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), including disclosure of information to the Internal Revenue Service, (iii) in connection with a proceeding to enforce this Agreement, or (iv) by or within Goldman Sachs in the ordinary course of its business, as determined by Goldman Sachs.  This paragraph constitutes a material provision of this Agreement, and Goldman Sachs shall be entitled to obtain injunctive relief to enforce ███ obligations under this paragraph as well as to recover reasonable attorneys' fees and costs incurred by it in any proceeding commenced by it in connection with the breach of this paragraph, in addition to the remedies set forth in paragraph 11.

7.   <u>Confidential Information</u>.  In connection with ███ employment with Goldman Sachs, she has had access to non-public information and materials concerning the business affairs of Goldman Sachs, or its or their present or former partners, managing directors, shareholders, employees, agents, directors, officer, clients, or other third parties or the personal affairs of such individuals ("Confidential

-5-

GS0390861

Information and Materials"), as well as other information and materials relating to

Goldman Sachs or its people that ████ is expected to handle discreetly.  ████ agrees

that she will hold all Confidential Information and Materials in strict confidence and

agrees that she will not give, disclose, copy, reproduce, sell, assign, license, market or

transfer Confidential Information and Materials to any person, firm or corporation, nor

allow anyone to do so on her behalf.  ████ has returned to Goldman Sachs all originals

and copies of documents and other materials (in hard or electronic form) relating to the

firm or containing or derived from Confidential Information and Materials which are in

her possession or control.  ████ also undertakes immediately to return to the firm any

property belonging to the firm (or any affiliate) which subsequently comes into her

possession, custody or control.  In addition, without prior written authorization from

Goldman Sachs, ████ acknowledges that she may not discuss any information (whether

or not Confidential Information and Materials) about Goldman Sachs, ████ or any of

its present or former partners, managing directors, shareholders, employees, agents,

directors, officers or clients or ████ or any aspects of ████ tenure as an

employee of Goldman Sachs or of the termination of such employment, with any

reporter, author, producer, or similar person or entity, or take any other action seeking to

publicize or disclose any such information in any way likely to result in such

information being made available to the general public in any form, including books,

newspapers, articles, electronic mail or writings of any kind, as well as film, videotape,

audiotape, the Internet or any other medium (other than biographical information that

would traditionally be included on a resume or discussed during a job interview).

-6-

████

GS0390862

Goldman Sachs and ████ will be entitled to obtain injunctive relief to enforce ████ obligations under this paragraph. ████ representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs's promises under this Agreement. ████ agrees that in the event of a breach of any of her obligations under this paragraph, Goldman Sachs will have no further obligations to her under this Agreement and, to the extent permissible by law, ████ will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach, including those set forth in paragraph 11.

8. <u>Advertising and Publicity</u>.

(a) ████████████████████████ herein) agree not to disclose the terms of this Agreement or any other non-public information (whether or not Confidential Information and Materials) ████████ any non-public aspects of ████ tenure as an employee of Goldman Sachs or any non-public aspects of the termination of such employment to anyone, including any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such non-public information in any way likely to result in such information being made available to the general public in any form, including books, newspapers, articles, electronic mail or writings of any kind, as well as film, videotape, audiotape, the Internet or any other medium.

9. <u>Cooperation and Nondisclosure</u>.

(a) ████ agrees that she will cooperate with the Group and their respective counsel in connection with any internal, governmental or regulatory

-7-

████████

GS0390863

investigation or regulatory and any regulatory or judicial or administrative proceeding, arbitration or litigation relating to any matter that occurred during her employment with Goldman Sachs in which she was involved or of which she has knowledge.  Goldman Sachs will reimburse ███ for reasonable expenses (other than attorney's fees) incurred by her in complying with this provision.

(b)   ████████████████████████████████ ████████████████████████████████████ ████████████████████████ Nothing in this Agreement, or in any other Goldman Sachs agreement or policy, shall limit the right of any party under applicable law to provide truthful information to the appropriate governmental authority, including any regulatory, judicial, administrative or other governmental entity, or preclude any party from filing a charge with or participating in any investigation or proceeding conducted by a governmental authority.  Notwithstanding the foregoing, ███ agrees to waive her right to recover monetary damages in connection with any charge, complaint, or lawsuit filed by her or by anyone else on her behalf (whether involving a governmental authority or not); provided that ███ is not agreeing to waive, and this agreement shall not be read as requiring her to waive, any right she may have to receive an award for information provided to any governmental authority.

(c)   ███ may have immunity from civil or criminal liability for the confidential disclosure of a trade secret as set forth in ████████ and the Confidentiality of Firm Information policy.  In particular, under current law an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to federal, state or local

-8-

███████

GS0390864

government officials, either directly or indirectly, or to an attorney, and is solely for the

purpose of reporting or investigating a suspected violation of the law, (ii) under seal in a

complaint or other document filed in a lawsuit or other proceeding, or (iii) to the

individual's attorney in connection with a lawsuit for retaliation for reporting a suspected

violation of law (and the trade secret may be used in the court proceedings for such

lawsuit) as long as any document containing the trade secret is filed under seal and the

trade secret is not disclosed except pursuant to court order.

(d) ██████████████████████████



██████████████████████ acknowledges that she has no personal

knowledge of anything ██████████████████████ nor does she

have any personal knowledge that ██████ ████████████████ ██████

████████████████████████████████████

██████████████████████████████████

██████████

10. <u>Nondisparagement</u>.

(a) ██████ will not make any oral or written negative, derogatory or

disparaging statement (whether or not such statement legally constitutes libel or slander)

about the Group or ██████ about the termination of her employment, or about any of the

Group's present or former partners, managing directors, shareholders, employees, agents,

directors, officers, or clients.

(b) ██████ will not make any oral or written negative, derogatory or

disparaging statement (whether or not such statement legally constitutes libel or slander)

-9-

██████

Confidential

GS0390865

about ████

      (c)      Goldman Sachs agrees to counsel ██████████████████ ██████ not to make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander)  about ████ and to follow the firm's policy regarding employment verification and references in the event they receive requests for verification or references with respect to ████ or otherwise engage in any conversation about you.  Under the employment verification and references policy any requests for information regarding ████ are to be forwarded to Human Capital Management and, in response to such inquiries, Human Capital Management will provide only ████ last held title, department, dates of employment and, where appropriate, compensation history.

      (d)      ████████████ and ██████████████ agree that they will not make any oral or written negative, derogatory or disparaging statements (whether or not such statement legally constitutes libel or slander) to the media (whether print, broadcast or otherwise) or in any other public forum, regarding (i) non-public aspects of ████ employment with Goldman Sachs, or (ii) any non-public aspects of ████ claims or assertions of any nature regarding Goldman Sachs or any of the Group's present, former partners, managing directors, shareholders, employees, agents, directors, officers, or clients. ████████ ██████████████ ████████ not to make any oral or written negative, derogatory or disparaging statements (whether or not such statement legally constitutes libel or slander) to the media (whether print, broadcast or otherwise) or in any other public forum, regarding (i) non-public aspects of ████ employment with Goldman Sachs, or (ii) any non-public aspects of ████ claims or

-10-

████████

Confidential

assertions of any nature regarding Goldman Sachs or any of the Group's present, former partners, managing directors, shareholders, employees, agents, directors, officers, or clients. ███████████ ██████████████████████ ███████████████ ████ not to make any oral or written negative, derogatory or disparaging statements (whether or not such statement legally constitutes libel or slander) to the media (whether print, broadcast or otherwise) or in any other public forum, regarding (i) non-public aspects of █████ employment with Goldman Sachs, or (ii) any non-public aspects of █████ claims or assertions of any nature regarding Goldman Sachs or any of the Group's present, former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

11.  <u>Breach of Agreement</u>. █████ agrees that, without limiting Goldman Sachs's remedies, should she commence, continue, join in, or in any other manner attempt to assert any claim released in connection herewith, or otherwise violate in a material fashion any of the terms of this Agreement, Goldman Sachs will not have any further obligation to her pursuant to this Agreement and Goldman Sachs shall be entitled to recover all payments already made to her (including interest thereon), in addition to all damages, attorneys' fees and costs incurred in connection with █████ breach of this Agreement. █████ further agrees that Goldman Sachs shall be entitled to the repayments and recovery of damages described above without waiver of or prejudice to the releases granted by her in connection with this Agreement, and that her violation or breach of any provision of this Agreement shall forever release and discharge Goldman Sachs from the performance of its obligations arising from the Agreement.

███████

Confidential

GS0390867

12.  <u>No Liability</u>.  This Agreement does not constitute an admission by Goldman Sachs, any of its parents, subsidiaries, affiliates, predecessors or successors in interest, officers, managing directors, shareholders, present and former partners, employees, agents, or officers, or by ██████ of any unlawful acts or of any violations of federal, state or local laws.  The parties agree that this Agreement may not be introduced in any action or proceeding by anyone for any purpose except to enforce its terms and that in any such action or proceeding the parties agree to treat the Agreement as confidential, agree not to seek to disclose any term of the Agreement other than the particular term or terms being sought to be enforced, and agree to seek an order sealing the record of any term or terms of the Agreement or any evidence relating thereto that they may seek to disclose.

13.  <u>Counsel</u>.  ██████ Goldman Sachs and ██████ acknowledge having been represented by counsel in connection with their decision to enter into this Agreement.

14.  <u>Scope</u>.  This Agreement embodies the entire agreement and understanding among the parties and supersedes all prior agreements and understandings related to the subject matter hereof.  This Agreement may not be changed, modified or amended except by a written instrument signed by the parties hereto.

15.  <u>Severability</u>.  In the event that one or more of the provisions, or portions thereof, of this Agreement are determined to be unlawful or unenforceable, the remainder of this Agreement will not be affected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or

-12-

GS0390868

arbitrator were to find that the waiver and release of claims (or any part thereof) by ███ set forth herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, ███ agrees, at Goldman Sachs's option, either to return the consideration provided for in paragraph 1 herein or to execute a waiver and release in a form satisfactory to Goldman Sachs that is lawful and enforceable.

16.   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of laws principles.

17.   <u>Disputes</u>.  Any dispute or claim arising out of, based upon or relating in any way to this Agreement or to ███ employment or other association with Goldman Sachs, or to the termination of ███ employment, will be settled by confidential arbitration.  Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA").  If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in New York City, in accordance with the commercial arbitration rules of the AAA, and any party may invoke the AAA's Optional Rules for Emergency Measures of Protection.  The parties agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

███ is agreeing to arbitrate all claims described above, in accordance with the arbitration procedure set forth therein.  This agreement does not include an agreement to arbitrate claims on a collective or class basis.  It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or

-13-

GS0390869

grant relief other than on an individual basis to the individual claimant involved.

      18.   Counterparts.  This Agreement may be executed in any number of counterparts, which together shall be effective as if they were a single document.

     IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date and year stated above.



The Goldman Group, Inc.

By:

-14-

Confidential

Agreed as to paragraphs 8 and 10 and approved otherwise as to form:



Confidential

GS0390872



Confidential



Confidential



# Exhibit 12

**EMPLOYEE AGREEMENT REGARDING CONFIDENTIAL AND
PROPRIETARY INFORMATION AND MATERIALS
AND NON-SOLICITATION**

In consideration of your employment with Goldman, Sachs & Co. and/or its subsidiaries or affiliates (collectively "Goldman Sachs"), and in consideration of other employment-related benefits provided or to be provided to you by Goldman Sachs, including, without limitation, trade secrets or confidential or proprietary information not previously made available to you, you agree as follows:

## 1. Definitions



## 2. Confidential and Proprietary Information and Materials

a) In connection with your candidacy for employment or any future employment by Goldman Sachs you may have access to non-public or other proprietary information and materials, including but not limited to (a) the names, addresses, phone numbers, accounts and other information concerning clients and prospective clients of Goldman Sachs; (b) other information and materials describing or relating to the business and financial affairs, personnel matters, products, operating procedures, organizational responsibilities, marketing matters, or policies or procedures of Goldman Sachs or its partners, employees, clients or other third parties (including, without limitation, portfolio structure, tax information, investment techniques and trading strategies used in, and the performance records of, client accounts, or other investment products); and (c) information and materials concerning the personal affairs of partners or employees of Goldman Sachs (all information and materials referred to in this sentence shall constitute "Confidential and Proprietary Information and Materials").

b) Confidential and Proprietary Information and Materials shall be used only for Goldman Sachs' benefit and only as authorized and for the purposes specified by Goldman Sachs.

c) You will hold all Confidential and Proprietary Information and Materials in strict confidence. Except as authorized by Goldman Sachs, you will not directly or indirectly use, give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential and Proprietary Information and Materials to any person, firm or corporation outside Goldman Sachs. You also will not directly or indirectly give or disclose Confidential and Proprietary Information and Materials to any partner or employee of Goldman Sachs who does not have a need to know or see the Confidential and Proprietary Information and Materials. This provision applies without limitation to unauthorized writings of any kind containing such information or materials, including books and articles.

d) Upon the termination of your employment (or earlier if requested by Goldman Sachs), you will return to Goldman Sachs all originals and copies of documents and other materials, including handwritten materials and electronically stored data, containing or derived from Confidential and Proprietary Information and Materials that are in your possession or control, at or away from Goldman Sachs' premises, accompanied, if requested, by a certificate signed by you and satisfactory to Goldman Sachs to the effect that all such Confidential and Proprietary Information and Materials have been returned.

Revised ██/10

1

## 3. Goodwill

a)



b) In consideration of Goldman Sachs' promise in §3a above, you agree to use the resources provided by Goldman Sachs to acquire clients, to solicit prospective clients, to build relationships and goodwill with Goldman Sachs' clients on behalf of Goldman Sachs and to render financial services to Goldman Sachs' clients to the best of your ability on behalf of Goldman Sachs. You further agree not to misappropriate or otherwise use Goldman Sachs' goodwill for the benefit of any entity or individual other than Goldman Sachs.

## 4. Non-Solicitation

a) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs



This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination.

b) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs

This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination.

c) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs



This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination.

d)

## 5. Disclosure

a) Unless you have prior written authorization from Goldman Sachs, you will not publicize, disclose or allow disclosure of any information about Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, its or their business and financial affairs, personnel matters, operating procedures, organizational responsibilities, marketing matters, products and policies or procedures (including, without limitation, techniques and trading and other strategies used therein) and/or any aspects of your candidacy for employment or your tenure as an employee of Goldman Sachs or of the termination of such employment, (a) with any reporter, author, producer or similar person or entity, or (b) take any other action seeking to publicize or disclose any such information in any way likely to result in such information being (i) made available to the general public in any form, including books, articles or writings of any other kind, or film, videotape, audiotape or any other medium, or (ii)

Revised███10

2

GS0385539

used for solicitation or marketing for any product other than a product that is solely a Goldman Sachs product.

b) Upon termination of your employment, you will not disclose or allow disclosure of financial and/or investment performance information of or concerning Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, or the portfolios, accounts, or funds it manages, in connection with the solicitation of business or marketing by or on behalf of yourself or any entity other than Goldman Sachs, with which you may become associated.

c) While employed by Goldman Sachs, you will not disclose or use without authorization any information concerning persons or entities other than Goldman Sachs that is confidential or proprietary to them, nor will you use information in any manner that would constitute a violation of any undertaking or agreement with a prior employer or other third party. Except as otherwise disclosed to Goldman Sachs in writing, you represent and warrant that you are not subject to any understanding, undertaking or agreement that would preclude your employment with Goldman Sachs or that would limit your ability to undertake particular assignments on behalf of Goldman Sachs.

d) You affirm that you have all necessary rights, authorizations and licenses to provide the services contemplated by this Agreement and otherwise in connection with your employment by Goldman Sachs, and to provide all related materials, and that the provision of such services and materials or any component thereof, and Goldman Sachs' use of concepts, materials or information provided by you, will not constitute a breach of any agreement to which you are a party, or constitute an infringement of any patent or copyright, or constitute an unauthorized use of proprietary information or trade secrets of a third party.

6. **Inventions and Intellectual Property**

You hereby irrevocably assign to Goldman Sachs, its successors and assigns, and Goldman Sachs shall have exclusive ownership rights, including, without limitation, all patent, copyright and trade secret rights, with respect to any work or product, including, but not limited to, (a) any invention, discoveries, concepts,

performance record, investment technique, trading or other strategy, ideas or information, conceived by you or with which you have become familiar or worked on in the course of your employment with Goldman Sachs, and (b) all documents, data and other information of any kind including, incorporating, based upon or derived from the foregoing, including, without limitation, reports and notes prepared by you. Such work will be the property of Goldman Sachs, shall be considered a work made for hire and may not be used for any purposes other than the benefit of Goldman Sachs. Any and all such property and material containing such property shall be delivered to Goldman Sachs on request and in any event at the termination of your employment by Goldman Sachs, and no copies thereof shall be retained by you unless the prior written consent of Goldman Sachs is obtained with respect thereto. You will cooperate fully with Goldman Sachs to establish, protect or confirm Goldman Sachs' exclusive rights in such work or to enable it to transfer legal title together with any patents that may be issued. A certificate evidencing compliance with this provision shall, if requested, be provided to Goldman Sachs.

7. **Disputes/Remedies**

a) The obligations created by this Agreement shall survive the termination of your candidacy for employment and your employment. You acknowledge that any violation, breach or other failure on your part to comply with this Agreement will materially and irreparably injure Goldman Sachs in a manner inadequately compensable in damages and that Goldman Sachs shall be entitled to injunctive relief against the breach or threatened breach of this Agreement. In the event that you breach of any of the covenants of §§ 2,3,4 or 5, in addition to any other remedies or relief to which Goldman Sachs may be entitled, including other equitable relief and money damages, you agree and consent to the issuance of a temporary restraining order, a preliminary injunction and a permanent injunction, ordering:

(i) that you immediately return to Goldman Sachs all Confidential and Proprietary Information and Materials in any form whatsoever, at or away from Goldman Sachs' premises, and that you be enjoined from using or disclosing any information contained in such records;

Revised ▆▆10                    3



b) Except as otherwise provided in § 7(a), any dispute or claim arising out of, based upon or relating in any way to this Agreement, or to your employment at Goldman Sachs or the termination of your employment, will be settled and finally determined by arbitration. Any such arbitration will be conducted in New York City before the American Arbitration Association or any other organization referred to in the arbitration provisions of any uniform application for Securities Industry Registration you have signed. You also agree that any arbitration award may be entered as a judgment in any appropriate court and that this Agreement is enforceable by the particular Goldman Sachs entity with whom you are employed as well as by an affiliate thereof as a third party beneficiary. You agree to submit to the jurisdiction of and agree that venue is proper in the federal and state courts located in the State of New York, New York County, in connection with any application for provisional relief in aid of arbitration concerning the breach or threatened breach of this Agreement. You acknowledge that this choice of forum is fair and reasonable because of the substantial relationship your employment will have or has with the operational, managerial, and regulatory functions and activities affecting you which are conducted through or from Goldman Sachs' headquarters in New York City. You understand and acknowledge that you are agreeing to arbitrate all claims described above in accordance with the arbitration procedure set forth in this agreement. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 8. Miscellaneous

a) You acknowledge that you have read and reviewed this Agreement in its entirety, that you have been given an opportunity to ask Goldman Sachs questions about it, and that you have been given an opportunity to consult with an attorney or other advisor of your choice prior to entering into the Agreement. You acknowledge that you understand the terms of this document and knowingly and freely agree to abide by them. You acknowledge and agree that the restrictions in §§ 2, 3, 4 and 5 are reasonable under the circumstances of your employment or contemplated employment with Goldman Sachs and that the consideration to be received thereunder is adequate to support such restrictions. You agree that you will execute such further documents and/or take such further steps as may be required, in the judgment of Goldman Sachs, in order to effectuate the terms of this Agreement.

b) This Agreement shall become effective when you sign it. By signing this Agreement, you agree to be legally bound to all the terms and conditions of this Agreement. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

c) In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions or portions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law and the affected provisions shall be deemed modified to the extent necessary to be valid and enforceable.

d) This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements and understandings with respect thereto and cannot be modified, amended or waived in whole or in part, except in a writing signed by the party to be charged. The obligations set forth herein shall be in addition to, and not in derogation of, any legal or other obligations which you may have whether by statute, common law, contract or otherwise, and any other agreements or understandings that

Revised ▆▆/10                                        4

you currently have or that you may hereafter have with Goldman Sachs.   A waiver by Goldman Sachs of any breach by you of any provision or condition in this Agreement to be performed by you shall not be deemed a waiver of any other provisions or conditions in this Agreement.



Print Name

Date

Revised ██/10

5

Confidential

GS0385542

# Exhibit 13

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282



█████, 2013

██████████████
████████████████
█████████████

Re:   Departure Arrangements

Dear ██████

1.   **Introduction**

  1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2.   **Severance Period**

  2.1.   This constitutes written notice of the termination of your employment. Following the effective date of this agreement, and subject to your abiding by the conditions above, ████████████ ██ █████████████████████████████ 2013 ███████████████████████████ ████████████████████████████████████████████████████████████ ████████   ████

  2.2.   ████████████████████████████ ██ ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ ██ █████████████████████

  2.3.   ████████████████████████████ ██ ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████

3.   **Benefits, Vacation and Firm Policies**

  3.1.   ████████████████████████████████. A summary of those benefits will be provided to you separately. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

  3.2.   Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through your last active day of employment.

Confidential



3.3. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████

4.   ████████████████████████████████████

4.1.  Following the effective date of this agreement, Goldman Sachs agrees that it ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

4.2.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

4.3.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

5.   **Release of Claims**

5.1.  Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6.   **Return of Firm Property and Outstanding Expenses**

6.1.  You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and

GS0386702

expense policies.  Severance packages offered to employees who ██████████████████████████████
████████████████████████████████████████████████████████████████ ▄ ▟ ██████
████████████████████

7.   **Confidentiality Obligations**

7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly.  You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf.  Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control.  You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium.  Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section.  Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement.  You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder.  Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision.  Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities.  Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf.  Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

8.   **Non-Disparagement and Cooperation with the Firm**

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.  The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

GS0386703

9   <u>Arbitration</u>

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10.   <u>Severability and Survival of Provisions</u>

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11   <u>Tax Consequences and Entirety of the Agreement</u>

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. The amounts paid hereunder, even if paid in a lump sum, satisfy the payment requirement under the non-solicit agreement that you have with the firm. Please refer to your "Employee Agreement Regarding Confidential and Proprietary Information and Materials and Non-Solicitation" for the terms and conditions of that agreement. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

12.   <u>Legal Effect of Section Headings</u>

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

GS0386704

13. **Letter Due Date**

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2013, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

███████████████████

Employee's Signature

████████████████

Employee's Name (Print)

████████ /.3

Date

GS0386705

# Exhibit 14

**EMPLOYEE AGREEMENT REGARDING CONFIDENTIAL AND
PROPRIETARY INFORMATION AND MATERIALS
AND NON-SOLICITATION**

In consideration of your employment with Goldman, Sachs & Co. and/or its subsidiaries or affiliates (collectively "Goldman Sachs"), and in consideration of other employment-related benefits provided or to be provided to you by Goldman Sachs, including, without limitation, trade secrets or confidential or proprietary information not previously made available to you, you agree as follows:

**1.  Definitions**



**2.  Confidential and Proprietary Information and Materials**

a) In connection with your candidacy for employment or any future employment by Goldman Sachs you may have access to non-public or other proprietary information and materials, including but not limited to (a) the names, addresses, phone numbers, accounts and other information concerning clients and prospective clients of Goldman Sachs; (b) other information and materials describing or relating to the business and financial affairs, personnel matters, products, operating procedures, organizational responsibilities, marketing matters, or policies or procedures of Goldman Sachs or its partners, employees, clients or other third parties (including, without limitation, portfolio structure, tax information, investment techniques and trading strategies used in, and the performance records of, client accounts, or other investment products); and (c) information and materials concerning the personal affairs of partners or employees of Goldman Sachs (all information and materials referred to in this sentence shall constitute "Confidential and Proprietary Information and Materials").

b) Confidential and Proprietary Information and Materials shall be used only for Goldman Sachs' benefit and only as authorized and for the purposes specified by Goldman Sachs.

c) You will hold all Confidential and Proprietary Information and Materials in strict confidence. Except as authorized by Goldman Sachs, you will not directly or indirectly use, give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential and Proprietary Information and Materials to any person, firm or corporation outside Goldman Sachs. You also will not directly or indirectly give or disclose Confidential and Proprietary Information and Materials to any partner or employee of Goldman Sachs who does not have a need to know or see the Confidential and Proprietary Information and Materials. This provision applies without limitation to unauthorized writings of any kind containing such information or materials, including books and articles.

d) Upon the termination of your employment (or earlier if requested by Goldman Sachs), you will return to Goldman Sachs all originals and copies of documents and other materials, including handwritten materials and electronically stored data, containing or derived from Confidential and Proprietary Information and Materials that are in your possession or control, at or away from Goldman Sachs' premises, accompanied, if requested, by a certificate signed by you and satisfactory to Goldman Sachs to the effect that all such Confidential and Proprietary Information and Materials have been returned.

Confidential                                                        GS0385543

## 3. Goodwill



b) In consideration of Goldman Sachs' promise in §3a above, you agree to use the resources provided by Goldman Sachs to acquire clients, to solicit prospective clients, to build relationships and goodwill with Goldman Sachs' clients on behalf of Goldman Sachs and to render financial services to Goldman Sachs' clients to the best of your ability on behalf of Goldman Sachs. You further agree not to misappropriate or otherwise use Goldman Sachs' goodwill for the benefit of any entity or individual other than Goldman Sachs.

## 4. Non-Solicitation

a) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs



This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination,

b) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs

This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination.

c) In consideration of the reciprocal promises in §3a and §3b you agree that during your employment with Goldman Sachs



This provision applies whether the termination of your employment is initiated by you or by Goldman Sachs, and irrespective of the reason for termination.

d)

## 5. Disclosure

a) Unless you have prior written authorization from Goldman Sachs, you will not publicize, disclose or allow disclosure of any information about Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, its or their business and financial affairs, personnel matters, operating procedures, organizational responsibilities, marketing matters, products and policies or procedures (including, without limitation, techniques and trading and other strategies used therein) and/or any aspects of your candidacy for employment or your tenure as an employee of Goldman Sachs or of the termination of such employment, (a) with any reporter, author, producer or similar person or entity, or (b) take any other action seeking to publicize or disclose any such information in any way likely to result in such information being (i) made available to the general public in any form, including books, articles or writings of any other kind, or film, videotape, audiotape or any other medium, or (ii)

Confidential

GS0385544

used for solicitation or marketing for any product other than a product that is solely a Goldman Sachs product.

b) Upon termination of your employment, you will not disclose or allow disclosure of financial and/or investment performance information of or concerning Goldman Sachs, its present or former partners, directors, officers, employees, agents or clients, or the portfolios, accounts, or funds it manages, in connection with the solicitation of business or marketing by or on behalf of yourself or any entity other than Goldman Sachs, with which you may become associated.

c) While employed by Goldman Sachs, you will not disclose or use without authorization any information concerning persons or entities other than Goldman Sachs that is confidential or proprietary to them, nor will you use information in any manner that would constitute a violation of any undertaking or agreement with a prior employer or other third party. Except as otherwise disclosed to Goldman Sachs in writing, you represent and warrant that you are not subject to any understanding, undertaking or agreement that would preclude your employment with Goldman Sachs or that would limit your ability to undertake particular assignments on behalf of Goldman Sachs.

d) You affirm that you have all necessary rights, authorizations and licenses to provide the services contemplated by this Agreement and otherwise in connection with your employment by Goldman Sachs, and to provide all related materials, and that the provision of such services and materials or any component thereof, and Goldman Sachs' use of concepts, materials or information provided by you, will not constitute a breach of any agreement to which you are a party, or constitute an infringement of any patent or copyright, or constitute an unauthorized use of proprietary information or trade secrets of a third party.

6. **Inventions and Intellectual Property**

You hereby irrevocably assign to Goldman Sachs, its successors and assigns, and Goldman Sachs shall have exclusive ownership rights, including, without limitation, all patent, copyright and trade secret rights, with respect to any work or product, including, but not limited to, (a) any invention, discoveries, concepts,

performance record, investment technique, trading or other strategy, ideas or information, conceived by you or with which you have become familiar or worked on in the course of your employment with Goldman Sachs, and (b) all documents, data and other information of any kind including, incorporating, based upon or derived from the foregoing, including, without limitation, reports and notes prepared by you. Such work will be the property of Goldman Sachs, shall be considered a work made for hire and may not be used for any purposes other than the benefit of Goldman Sachs. Any and all such property and material containing such property shall be delivered to Goldman Sachs on request and in any event at the termination of your employment by Goldman Sachs, and no copies thereof shall be retained by you unless the prior written consent of Goldman Sachs is obtained with respect thereto. You will cooperate fully with Goldman Sachs to establish, protect or confirm Goldman Sachs' exclusive rights in such work or to enable it to transfer legal title together with any patents that may be issued. A certificate evidencing compliance with this provision shall, if requested, be provided to Goldman Sachs.

7. **Disputes/Remedies**

a) The obligations created by this Agreement shall survive the termination of your candidacy for employment and your employment. You acknowledge that any violation, breach or other failure on your part to comply with this Agreement will materially and irreparably injure Goldman Sachs in a manner inadequately compensable in damages and that Goldman Sachs shall be entitled to injunctive relief against the breach or threatened breach of this Agreement. In the event that you breach of any of the covenants of §§ 2,3,4 or 5, in addition to any other remedies or relief to which Goldman Sachs may be entitled, including other equitable relief and money damages, you agree and consent to the issuance of a temporary restraining order, a preliminary injunction and a permanent injunction, ordering:

(i) that you immediately return to Goldman Sachs all Confidential and Proprietary Information and Materials in any form whatsoever, at or away from Goldman Sachs' premises, and that you be enjoined from using or disclosing any information contained in such records;

Revised ▮▮/10

3

GS0385545



b) Except as otherwise provided in § 7(a), any dispute or claim arising out of, based upon or relating in any way to this Agreement, or to your employment at Goldman Sachs or the termination of your employment, will be settled and finally determined by arbitration. Any such arbitration will be conducted in New York City before the American Arbitration Association or any other organization referred to in the arbitration provisions of any uniform application for Securities Industry Registration you have signed. You also agree that any arbitration award may be entered as a judgment in any appropriate court and that this Agreement is enforceable by the particular Goldman Sachs entity with whom you are employed as well as by an affiliate thereof as a third party beneficiary. You agree to submit to the jurisdiction of and agree that venue is proper in the federal and state courts located in the State of New York, New York County, in connection with any application for provisional relief in aid of arbitration concerning the breach or threatened breach of this Agreement. You acknowledge that this choice of forum is fair and reasonable because of the substantial relationship your employment will have or has with the operational, managerial, and regulatory functions and activities affecting you which are conducted through or from Goldman Sachs' headquarters in New York City. You understand and acknowledge that you are agreeing to arbitrate all claims described above in accordance with the arbitration procedure set forth in this agreement. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 8. Miscellaneous

a) You acknowledge that you have read and reviewed this Agreement in its entirety, that you have been given an opportunity to ask Goldman Sachs questions about it, and that you have been given an opportunity to consult with an attorney or other advisor of your choice prior to entering into the Agreement. You acknowledge that you understand the terms of this document and knowingly and freely agree to abide by them. You acknowledge and agree that the restrictions in §§ 2, 3, 4 and 5 are reasonable under the circumstances of your employment or contemplated employment with Goldman Sachs and that the consideration to be received thereunder is adequate to support such restrictions. You agree that you will execute such further documents and/or take such further steps as may be required, in the judgment of Goldman Sachs, in order to effectuate the terms of this Agreement.

b) This Agreement shall become effective when you sign it. By signing this Agreement, you agree to be legally bound to all the terms and conditions of this Agreement. This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

c) In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions or portions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law and the affected provisions shall be deemed modified to the extent necessary to be valid and enforceable.

d) This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements and understandings with respect thereto and cannot be modified, amended or waived in whole or in part, except in a writing signed by the party to be charged. The obligations set forth herein shall be in addition to, and not in derogation of, any legal or other obligations which you may have whether by statute, common law, contract or otherwise, and any other agreements or understandings that

Revised ■ 10

4

Confidential

GS0385546

you currently have or that you may hereafter have with Goldman Sachs.   A waiver by Goldman Sachs of any breach by you of any provision or condition in this Agreement to be

performed by you shall not be deemed a waiver of any other provisions or conditions in this Agreement.

███████████████████████████

Signature

███████████████████████

Print Name

███████████ 2010

Date

Revised ███/10                              5

Confidential

GS0385547

# Exhibit 15

Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005



█████ 2008



Re: Departure Arrangements

Dear █████:

    This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

    This constitutes written notice of the termination of your employment. You will have a notice period of ███████████████████████████████████████████, 2009 (hereinafter "Notice Period"). During your Notice Period, ███████████████████████████████████

    Following the expiration of your Notice Period, and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above,



    A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). In addition, pursuant to the firm's Termination Vacation Pay policy, you

Confidential

will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period.



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United

Confidential

States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that on or before the last day of your employment, you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory,

Confidential

GS0391238

judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.



Very truly yours,

I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

Confidential

# Exhibit 16

Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005

**Goldman Sachs**

████████ 2008

████████████
████████████

Re:  Departure Arrangements

Dear ██████

This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

This constitutes written notice of the termination of your employment. You will have a notice period of ████ which will commence tomorrow and will expire on ████████ 2009 (hereinafter "Notice Period").  During your Notice Period, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Following the expiration of your Notice Period, and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ████████████████████████████ 2009 █████████████████████████████████████████████████ 2009 █████████████████████████████████████████████████████████████████████████████████████████████████

████████████  ██  ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

A summary of the benefits to which you are entitled after termination will be sent to you under separate cover.  If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). In addition, pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period. ████████████

Confidential



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ██████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

Confidential

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and it may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that on or before the last day of your employment, you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Confidential

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮▮▮ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,

I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

# Exhibit 17

Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005

**Goldman
Sachs**

███████2008

███████████
███████
███████

Re: Departure Arrangements

Dear ███████

    This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

    This constitutes written notice of the termination of your employment. Your notice period of will commence tomorrow and will expire on ███████ 2009 (hereinafter "Notice Period"). ███████
████████████████████████████████████
████████████████████████████████████
████████████████████

    Following the expiration of your Notice Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ███████
████████████████████████ 2009 ███████
███████ 2009 ████████████████
████████████████

███████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████

    A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426). In addition, pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period. ████████████████████████████████
███████

onfidential



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████████████████████████████████████████████████████████████████████████████████████████████████████████

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits

GS0390877

(including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and it may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding,

Confidential

arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ████████ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.



Very truly yours,

I ___

Employee's Signature

Employee's Name (Print)

Date

# Exhibit 18

Goldman, Sachs & Co. | 32 Old Slip |        York, New York 10005



**Goldman Sachs**

---

████████ 2008

████████

Re:  Departure Arrangements

Dear ████████

This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm").  These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

This constitutes written notice of the termination of your employment.  Your notice period of ██ ████████ 2009 (hereinafter "Notice Period").  During your Notice Period, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Following the expiration of your Notice Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ████████████████████████████████████ 2009 ████████ ██ ██ ████████ 2009 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Confidential

A summary of the benefits to which you are entitled after termination will be sent to you under separate cover.  If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).  In addition, pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for any vacation time accrued, but unused, through the last day of your Notice Period.



You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like.  You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies.  Severance packages offered to employees who have

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested

2

GS0390881

rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit

3

Confidential

GS0390882

your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ████████ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,

I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

4

GS0390883

# Exhibit 19

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

**Goldman
Sachs**

████ 2011

Re:  <u>Continuation of Employment/Departure Arrangements</u>

Dear ████

1.  **Introduction**

1.1.  This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm").  These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you conduct yourself professionally and maintain your status as an employee in good standing, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2.  **Severance Period**

2.1.  This constitutes written notice of the termination of your employment.  You will remain an active employee of the firm through ████ 2011 ("Active Employment Period").  During your Active Employment Period, ███████████████████████████████████████████████████████████████████████████████████████████████

2.2.  ████████████████████████████████████████████████████████████████████████████████████████████, 2011 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2.3.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

GS0386710

2.4. 

3. **Benefits, Vacation and Firm Policies**

3.1. ███████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3.

4.

4.1. Following the effective date of the Confirming Agreement, Goldman Sachs agrees that

4.2.

4.3.

5. **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees,

GS0386711

directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. <u>Return of Firm Property and Outstanding Expenses</u>

6.1.   You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

7. <u>Confidentiality Obligations</u>

7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the Firm any property belonging to the Firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent

Confidential

permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

## 8.   Non-Disparagement and Cooperation with the Firm

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

## 9.   Arbitration

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10.   Severability and Survival of Provisions

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Confidential

## 11. Tax Consequences and Entirety of the Agreement

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2011, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

_____
Employee's Signature

_____
Employee's Name (Print)

████████ 2011
Date

# Exhibit 20

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282



████ 2011

████████████
██░████████
██████████

Re: <u>Departure Arrangements</u>

Dear ████████

1. <u>Introduction</u>

    1.1.    This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2. <u>Notice Period and Severance Period</u>

    2.1.    This constitutes written notice of the termination of your employment. Your notice period of ████ will commence tomorrow and run through ████████ 2011 (hereinafter "Notice Period"). During your Notice Period, ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

    2.2.    ██████████████████████████████████████████████ ████████████████████████ 2012 ████████████ ██████ 2012 ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████ ██ ██████████████████

    2.3.    ██████████████████ ██ ██████████████████████ ██████████████████████████████

    2.4.    ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████ ██ ██████████████████████ ██

    2.5.    ████████████████████████████████████████████████

Confidential

███████████████████████████████████████████████
██████████

3. **Benefits, Vacation and Firm Policies**

3.1. ██████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Notice Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ██████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Notice Period.

3.3. 

4. ██████████████████████████

4.1. Following the conclusion of your Notice Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that ████████████████████████████████████


4.2. ████████████████████████████████████████████

4.3. ████████████████████████████████████████████

5. **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This

GS0386716

release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law (including but not limited to the New Jersey Conscientious Employee Protection Act (CEPA)) and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6.  **Return of Firm Property and Outstanding Expenses**

   6.1.   You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ███████████████████████████

███████████████████████████████████████████████████████████████

7.  **Confidentiality Obligations**

   7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

   7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

   7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

   7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your

Confidential

right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

8.  **Non-Disparagement and Cooperation with the Firm**

8.1.  You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.  You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

9.  **Arbitration**

9.1.  Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.  You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

10.  **Severability and Survival of Provisions**

10.1.  In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.  Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

11.  **Tax Consequences and Entirety of the Agreement**

11.1.  The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

GS0386718

11.2.  This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.  In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.  You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act.  There are no bumping rights applicable to you in connection with the termination of your employment.  You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.  You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.  The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1.  Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮▮▮ 2011, the enclosed copy of this agreement, signed where indicated.  The proposal will expire if you have not returned the executed agreement by this date.  Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

▮▮▮ 2011

Date

GS0386719

# Exhibit 21

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

**Goldman Sachs**

█████ 2018

████████████

Re:   Departure Arrangements

Dear █████

1. **Introduction**

   1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm").  These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan, The Goldman Sachs Amended and Restated Stock Incentive Plan (2013) (collectively, and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2. **Severance Period**

   2.1.   This constitutes written notice of the termination of your employment.  Your active employment at the firm will continue through █████ 2018.  Following the effective date of this agreement, and subject to your abiding by the conditions above, ███████████████████████████████████████ 2018 ████████████ 2019 ███████████████████████████████████████████████████████████████████

   2.2.   ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

   2.3.   ████████████████████████████████████████████████████████████████████████████████████████

3. **Benefits, Vacation and Firm Policies**

   3.1.   █████████████████████████████████████████ A summary of those benefits will be provided to you separately.  You will be sent information regarding the termination of your

GS0386720

benefits and any conversion options approximately two weeks after the ▮▮▮▮▮▮▮▮▮▮ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2.   Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through your last active day of employment.

3.3.   

4.   

4.1.   Following the effective date of this agreement, Goldman Sachs agrees that

4.2.   

4.3.   

## 5.  **Release of Claims**

5.1.   Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims for vested benefits to which you are entitled under the terms of any employee pension benefit plan covered by ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), including claims for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")), or for any violation of the provisions of Title I of ERISA. This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's

Confidential

equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof. Your signature below will also constitute confirmation that you have been given at least 45 days within which to consider this release and its consequences, that you have been advised prior to signing this agreement to consult with any attorney and any personal or financial advisor you choose, and that any changes to this agreement (irrespective of materiality) did not restart the running of the 45-day period.  For a period of seven days following the execution of this agreement, you may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired. The Older Worker Benefit Protection Act requires that the firm provide you with certain information concerning the employees being offered similar separation agreements.   The required information is provided in Attachment A to this document.

6.  **Return of Firm Property and Outstanding Expenses**

6.1.   You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like.  You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies.  Severance packages offered to employees who have █████████

6.2. ████████████████████████████████████████████████

7.  **Confidentiality Obligations**

7.1.   In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control.  You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.   In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium.  Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.   You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this

Confidential

agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing in this section shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

7.5.   Nothing herein, or in any other Goldman Sachs agreement or policy, shall limit your right under applicable law to provide truthful information to the appropriate governmental authority, including any regulatory, judicial, administrative or other governmental entity, or preclude you from filing a charge with or participating in any investigation or proceeding conducted by a governmental authority. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in connection with any charge, complaint, or lawsuit filed by you or by anyone else on your behalf (whether involving a governmental authority or not); provided that you are not agreeing to waive, and this agreement shall not be read as requiring you to waive, any right you may have to receive an award for information provided to any governmental authority.

7.6.   You also may have immunity from civil or criminal liability for the confidential disclosure of a trade secret as set forth in 18 U.S.C. § 1833 and the Confidentiality of Firm Information policy. In particular, under current law an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to federal, state or local government officials, either directly or indirectly, or to an attorney, and is solely for the purpose of reporting or investigating a suspected violation of the law, (ii) under seal in a complaint or other document filed in a lawsuit or other proceeding, or (iii) to your attorney in connection with a lawsuit for retaliation for reporting a suspected violation of law (and the trade secret may be used in the court proceedings for such lawsuit) as long as any document containing the trade secret is filed under seal and the trade secret is not disclosed except pursuant to court order.

8.   **Non-Disparagement and Cooperation with the Firm**

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

9.   **Arbitration**

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective

GS0386723

claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10. Severability and Survival of Provisions

10.1.    In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.    Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11. Tax Consequences and Entirety of the Agreement

11.1.    The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly.  Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A.  Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A).  Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.    This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.  In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.  You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.    The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

Confidential

13. <u>**Letter Due Date**</u>

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮ 2018 , the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,





Employee's Name (Print)

▮▮▮▮ 2018

Date