# Exhibit 22

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

Goldman
Sachs

2017

Re:   Departure Arrangements

Dear

1.  **Introduction**

    1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm").  These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan, The Goldman Sachs Amended and Restated Stock Incentive Plan (2013) (collectively, and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2.  **Active Employment Period and Severance Period**

    2.1.   This constitutes written notice of the termination of your employment.  You will remain an active employee of the firm through         2017 ("Active Employment Period").  Your notice period of         will commence tomorrow and run concurrently with your Active Employment Period.  During your Active Employment Period,

    2.2.   Following the expiration of your Active Employment Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above,

    2.3.

    2.4.

GS0386726

2.5.

3. **Benefits, Vacation and Firm Policies**

3.1.    A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ▮▮▮▮▮▮ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2.    Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3.

4.

4.1.    Following the conclusion of your Active Employment Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that

4.2.

4.3.

GS0386727

5. **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. **Return of Firm Property and Outstanding Expenses**

6.1. You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ▮▮▮▮▮

6.2.

7. **Confidentiality Obligations**

7.1. In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2. In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination

GS0386728

of such employment,    .h any reporter, author, producer, or simi.   person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.     You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.     You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing in this section shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

7.5.     Nothing herein, or in any other Goldman Sachs agreement or policy, shall limit your right under applicable law to provide truthful information to the appropriate governmental authority, including any regulatory, judicial, administrative or other governmental entity, or preclude you from filing a charge with or participating in any investigation or proceeding conducted by a governmental authority. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in connection with any charge, complaint, or lawsuit filed by you or by anyone else on your behalf (whether involving a governmental authority or not); provided that you are not agreeing to waive, and this agreement shall not be read as requiring you to waive, any right you may have to receive an award for information provided to any governmental authority.

7.6.     You also may have immunity from civil or criminal liability for the confidential disclosure of a trade secret as set forth in 18 U.S.C. § 1833 and the Confidentiality of Firm Information policy. In particular, under current law an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to federal, state or local government officials, either directly or indirectly, or to an attorney, and is solely for the purpose of reporting or investigating a suspected violation of the law, (ii) under seal in a complaint or other document filed in a lawsuit or other proceeding, or (iii) to your attorney in connection with a lawsuit for retaliation for reporting a suspected violation of law (and the trade secret may be used in the court proceedings for such lawsuit) as long as any document containing the trade secret is filed under seal and the trade secret is not disclosed except pursuant to court order.

## 8.   Non-Disparagement and Cooperation with the Firm

8.1.     You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.     You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

## 9.   Arbitration

9.1.     Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by

arbitration. Any suc. .bitration will be conducted before the Fi.. .cial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.    You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10. Severability and Survival of Provisions

10.1.    In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.    Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11. Tax Consequences and Entirety of the Agreement

11.1.    The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.    This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.    The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

GS0386730

13. **Letter Due Date**

    13.1.  Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮ 2017, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:



_____ / 7
Date

# Exhibit 23



Goldman, Sachs & Co. | 200 West St. | New York, New York 10282

Goldman
Sachs

, 2013

Re:   Continuation of Employment/Departure Arrangements

Dear

1. **Introduction**

   1.1.   This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, during your Active Employment Period (as defined below) you conduct yourself professionally and maintain your status as an employee in good standing and, until your Severance Period ceases, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement), and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2. **Active Employment Period and Severance Period**

   2.1.   This constitutes written notice of the termination of your employment. You will remain an active employee of the firm through ▓▓▓▓ 2013 ("Active Employment Period"). Your notice period of ▓▓▓ will commence on ▓▓▓▓, 2013 and run concurrently with your Active Employment Period. During your Active Employment Period, ▓▓▓▓▓▓▓▓▓▓ 2013,
   ▓▓▓▓ 2013 ▓▓▓ 2013,

   2.2.
   2014
   2014
   2014

   2.3.

Confidential

2.4. 

2.5.

### 3. Benefits, Vacation and Firm Policies

3.1. ████████████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Active Employment Period. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

3.3. 

### 4.

4.1. Following the effective date of the Confirming Agreement, Goldman Sachs agrees that it


4.2. 

4.3.

GS0386733

5. **Release of Claims**

5.1.    Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. **Return of Firm Property and Outstanding Expenses**

6.1.    You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who ███████████████████

7. **Confidentiality Obligations**

7.1.    In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.    In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further

GS0386734

obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.   You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

## 8.   Non-Disparagement and Cooperation with the Firm

8.1.   You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

## 9.   Arbitration

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein. This agreement does not include an agreement to arbitrate claims on a collective or class basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10.   Severability and Survival of Provisions

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11.   Tax Consequences and Entirety of the Agreement

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly. Each payment hereunder (e.g., each salary

GS0386735

payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A. Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.   In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act.   You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.   You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

## 12. Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ██████2013, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date.   Please do not hesitate to call your Employee Relations representative or me if you have any questions.



Very truly yours,

CONFIRM:

████████re

Employee's Name (Print)

██ 13

Date

Confidential

Goldman, Sachs & Co. | 200 West St | New York, New York 10282

**Goldman Sachs**

███████ 2013

Re: Departure Arrangements

Dear ███

1. **Introduction**

   1.1. Pursuant to the letter to you from ████████ dated ██████ 2013, your Active Employment Period has continued through ████████ 2013. This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

2. **Severance Period**

   2.1. Following the effective date of this agreement, and subject to your abiding by the conditions above, ████████



3. **Benefits, Vacation and Firm Policies**

   3.1. ████████████████████████████████████ A summary of those benefits will be provided to you separately. You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

   3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Active Employment Period.

GS0386737

3.3.

4.

4.1.   Following the effective date of this agreement, Goldman Sachs agrees that it

4.2.

4.3.



5.   **Release of Claims**

5.1.   Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

GS0386738

## 6. Return of Firm Property and Outstanding Expenses

6.1.    You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## 7. Confidentiality Obligations

7.1.    In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.    In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.    You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

## 8. Non-Disparagement and Cooperation with the Firm

8.1.    You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.   You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

## 9.   Arbitration

9.1.   Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration.  Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA").  If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.   You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein.  This agreement does not include an agreement to arbitrate claims on a collective or class basis.  It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10.  Severability and Survival of Provisions

10.1.   In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.   Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11.  Tax Consequences and Entirety of the Agreement

11.1.   The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly.  Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A.  Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A). Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.  In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.  You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act.  You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.  You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

   GS0386740

12. **Legal Effect of Section Headings**

    12.1.  The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

13. **Letter Due Date**

    13.1.  Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ███████ 2013, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.



Employee's Signature

Employee's Name (Print)

Date

GS0386741

# Exhibit 24

Goldman, Sachs & Co. | 200 West St. | New York, New York 10282



Goldman
Sachs

 2011



Re: Departure Arrangements

Dear

### 1. Introduction

1.1. This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your severance payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

### 2. Notice Period and Severance Period

2.1. This constitutes written notice of the termination of your employment. Your notice period of ▮▮▮▮ will commence tomorrow and run through ▮▮▮▮ 2011 (hereinafter "Notice Period"). During your Notice Period, ▮▮▮▮



GS0386742

2.5. 

## 3. **Benefits, Vacation and Firm Policies**

3.1. ████████████████████████████████████████ A summary of those benefits will be provided to you separately at the conclusion of your Notice Period.  You will be sent information regarding the termination of your benefits and any conversion options approximately two weeks after the ████████████ ends. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).

3.2. Pursuant to the firm's Termination Vacation Pay policy, you will receive a payment, less applicable deductions, for qualifying vacation time accrued, but unused, through the last day of your Notice Period.

3.3. 

4. ████████████████████████

4.1. Following the conclusion of your Notice Period and the effective date of this agreement, whichever is the later, Goldman Sachs agrees that ████████████████████████

4.2.

4.3.

## 5. **Release of Claims**

5.1. Your signature below will constitute your agreement that, in consideration of the payments and other arrangements provided for herein, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment

GS0386743

relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes, without limitation and to the greatest extent permitted by law, any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

6. **Return of Firm Property and Outstanding Expenses**

6.1.    You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have ▮▮▮▮▮▮▮▮▮▮

7. **Confidentiality Obligations**

7.1.    In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"), as well as other information and materials relating to Goldman Sachs or its people that you are expected to handle discreetly. You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials (in hard or electronic form) relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. You also undertake immediately to return to the firm any property belonging to the firm (or any affiliate) which subsequently comes into your possession, custody or control.

7.2.    In addition, you acknowledge that, unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this section would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume.

7.3.    You acknowledge that Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this section. Your representations with respect to and adherence to the terms of this section are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this section, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

7.4.    You agree that the existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding section to each such person to whom disclosure is to be

GS0386744

made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities, including the filing of a charge with or participation in any investigation or proceeding conducted by federal, state or local authorities. Notwithstanding the foregoing, you agree to waive your right to recover monetary damages in any charge, complaint, or lawsuit filed by you or by anyone else on your behalf. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

## 8. **Non-Disparagement and Cooperation with the Firm**

8.1.    You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

8.2.    You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

## 9. **Arbitration**

9.1.    Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration.   Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA").   If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

9.2.    You understand and acknowledge that you are agreeing to arbitrate all claims described in section 9.1 above, in accordance with the arbitration procedure set forth therein.   This agreement does not include an agreement to arbitrate claims on a collective or class basis.   It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class or collective claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved.

## 10. **Severability and Survival of Provisions**

10.1.    In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

10.2.    Sections 6, 7, 8 and 9 will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

## 11. **Tax Consequences and Entirety of the Agreement**

11.1.    The parties have structured this agreement with the intention that the payments and benefits provided hereunder will not give rise to tax under Section 409A of the Internal Revenue Code of 1986 ("Code Section 409A"), and this agreement shall be interpreted accordingly.  Each payment hereunder (e.g., each salary payment, each lump sum payment and each severance payment) shall be considered a separate payment for purposes of Code Section 409A.  Any debt forgiveness that is applied to payments hereunder may be applied only to the extent that such payment is not subject to Code Section 409A (or the application of debt forgiveness is otherwise permitted by Code Section 409A).  Any payment hereunder may be accelerated due to employment with a new employer or self-employment only if and to the extent permitted by Code Section 409A.

GS0386745

11.2.   This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official.   In accepting these arrangements, you acknowledge that the payments and other benefits offered pursuant to this agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees.   You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act.   Pursuant to that Act, we advise you that the firm does not expect this process to result in the closure of any of its offices or operating units and there are no bumping rights applicable to you in connection with the termination of your employment.   You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement.   You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

11.3.   You should also be aware that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the expiration of your Notice Period.   If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance.

## 12. Legal Effect of Section Headings

12.1.   The headings of sections contained in this agreement are for convenience only and shall not be deemed to control or affect the meaning or construction of any provision of this agreement.

## 13. Letter Due Date

13.1.   Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by ▮▮▮▮▮ 2011, the enclosed copy of this agreement, signed where indicated.   The proposal will expire if you have not returned the executed agreement by this date.   Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:

_____
Employee's Signat▮▮▮

_____
Employee's Name (Print)

_____
Date

GS0386746

# Exhibit 25



Goldman, Sachs & Co. | 32 Old Slip | New York, New York 10005



Revised as of ▇▇▇▇▇, 2008
At the request of ▇▇▇▇▇



Re: Departure Arrangements

Dear ▇▇▇▇▇

This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with The Goldman Sachs Group, Inc., or a subsidiary or affiliate thereof (collectively "Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement) and do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan and/or The Goldman Sachs Amended and Restated Stock Incentive Plan (the "SIP")).

This constitutes written notice of the termination of your employment.  Your notice period of ▇▇▇▇▇ , 2009 (hereinafter "Notice Period").  During your Notice



Following the expiration of your Notice Period and the effective date of this agreement, whichever is the later, and subject to your abiding by the conditions above, ▇▇▇▇▇

Confidential



A summary of the benefits to which you are entitled after termination will be sent to you under separate cover. If you have any questions about your benefits, please contact GS HR Direct at 1-877-45-GSHCM (47426).



2

Confidential

You agree that you will cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You further agree that you will reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages offered to employees who have

Your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had or now have against Goldman Sachs, its predecessor or successor entities, and any of its or their present and former partners, managing directors, employees, directors, officers, attorneys, representatives and agents, based upon any matter, cause or thing occurring through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed, your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance (including rights or claims under the Age Discrimination in Employment Act of 1967 ("ADEA")). This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof.

This agreement is the entire understanding between you and the firm relating to the termination of your employment and the subject matter of this agreement, and, after its effective date, the agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by both you and an authorized firm official. In accepting these arrangements, you acknowledge that the payments provided pursuant to this agreement are in addition to any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the firm and/or any agreement between you and the firm, and you expressly waive any right or claim that you may have to payment for back pay, front pay, interest, bonuses, accrued vacation and/or attorneys' fees. You also acknowledge that the above payments include any amounts that may be payable under the Worker Adjustment and Retraining Notification Act or the New York State Worker Adjustment and Retraining Notification Act. There are no bumping rights applicable to you in connection with the termination of your employment. You represent that you have not filed any action, complaint, charge, grievance or arbitration against the firm with respect to events occurring prior to the date of this agreement. You understand and agree that you are responsible for any taxes resulting from any payment made or benefit provided hereunder.

3

Confidential

GS0386749

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the firm, or its present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of such individuals ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you will return to Goldman Sachs immediately all originals and copies of documents and other materials relating to the firm or containing or derived from Confidential Information and Materials which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the firm or any of its present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Nothing in this paragraph would prevent you from disclosing information concerning your work at the firm that is of the sort that would customarily be contained on a resume. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts hereunder. Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and may not be disclosed by you to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), or to an immediate family member, or your accountant, attorney or personal or financial advisor; provided that you first give notice of this provision and the provision of the preceding paragraph to each such person to whom disclosure is to be made and obtain his or her consent to abide by the terms of this provision. Nothing herein shall limit your right under applicable law to provide truthful information to regulatory, judicial, administrative or other governmental authorities. Nothing herein shall limit your right to describe to your prospective or current employer, on a need to know basis, any limitations applicable to you regarding solicitation of clients or employees, competition, and confidentiality.

You agree that you will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

You also agree that you will cooperate with the firm and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. The firm will reimburse you for reasonable expenses (other than attorney's fees) incurred by you in complying with this provision.

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment or other association with the firm, or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the Financial Industry Regulatory Authority ("FINRA"). If the matter is not arbitrable before FINRA, it will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA. You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

4

GS0386750

In the event that one or more of the provisions, or portions thereof, of this agreement are determined to be invalid or unenforceable for any reason, the remainder of this agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, you agree, at the firm's option, either to return the consideration provided for herein or to execute a waiver and release in a form satisfactory to the firm that is lawful and enforceable.

The preceding six paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm that you have voluntarily decided to accept and agree to this arrangement by returning to me by _____ 2008, the enclosed copy of this agreement, signed where indicated. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,



I SO AGREE AND CONFIRM:



Date

5

Confidential

GS0386751

# Exhibit 26

Goldman, Sachs & Co. | 180 Maiden Lane | New York, New York 10038

 2003

Re: Departure Arrangements

Dear █████

This confirms the arrangements that are being offered to you voluntarily in connection with the termination of your employment with Goldman, Sachs & Co. or one of its affiliates ("Goldman Sachs" or the "firm"). These arrangements are being offered to you on the condition that, until such time as your salary continuation payments cease, you remain in compliance with your legal obligations toward the firm (including abiding by the terms of this agreement), and that you do not engage in conduct constituting "Cause" (as that term is used in the various equity award agreements issued pursuant to The Goldman Sachs 1999 Stock Incentive Plan ("SIP")).



As part of the separation package, █████████ 2003 █████████

A summary of the benefits to which you are entitled after termination is set out in the attached memorandum from ██████ dated ██████ 2003.

GS0386752



In exchange for these arrangements, the firm requires that you follow certain procedures designed to resolve all employment issues. We ask that you cooperate fully with the members of the Human Capital Management Division with respect to their procedures, which include collecting identification cards, certain firm documents, and the like. You must also reconcile all outstanding travel and expense items and pay the firm for any charge or advance that is personal or otherwise not properly chargeable to the firm under its travel and expense policies. Severance packages paid to employees who

You will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally constitutes libel or slander) about the firm, about the termination of your employment, or about any of the firm's present or former partners, managing directors, employees, officers, directors, shareholders, or agents.

In addition, the firm requires your acknowledgment that you have no remaining, unresolved claims with respect to your employment. Consequently, your signature below will constitute your agreement that, in consideration of the payments and benefits provided, you knowingly and voluntarily waive and release forever whatever claims, whether known or unknown, you ever had, now have, or hereafter may have against Goldman Sachs, its parents, subsidiaries or affiliates, or any of their predecessor or successor entities (collectively, the "Group") and any of its or their present and former partners, managing directors, shareholders, employees, agents, directors, and officers, through the date of your signature on this agreement, including but not limited to claims based upon or relating to your hire by Goldman Sachs, any aspect of the work you performed or your employment relationship with the firm, or the termination of your employment (other than claims you may have based upon your vested rights under any employee pension benefit plan under section 3(2) of ERISA). This release and waiver includes but is not limited to any rights or

GS0386753

claims under United States federal, state or local law and the national or local law of any foreign country (statutory or decisional), for wrongful or abusive discharge, for breach of any contract, or for discrimination based upon race, color, ethnicity, sex, age, national origin, religion, disability, sexual orientation, or any other unlawful criterion or circumstance. This release and waiver also includes, without limitation, any claims you have or might have had concerning the delivery of any awards made to you under the firm's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims you have or might have had that additional awards should have been made to you under such programs.

In connection with your employment with Goldman Sachs, you have had access to non-public information and materials concerning the business affairs of the Group, or its or their present or former partners, managing directors, shareholders, employees, agents, directors, officers, clients, or other third parties or the personal affairs of the Group's partners or employees ("Confidential Information and Materials"). You agree that you will hold all Confidential Information and Materials in strict confidence and that you will not give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential Information and Materials to any person, firm or corporation, nor allow anyone to do so on your behalf. Your signature below will confirm that you have returned to Goldman Sachs all originals and copies of documents and other materials relating to the Group or containing or derived from Confidential Information and Materials, which are in your possession or control. Unless you have prior written authorization from Goldman Sachs, you may not discuss any information (whether or not Confidential Information and Materials) about the Group or any of its or their present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients or any aspects of your tenure as an employee of Goldman Sachs or of the termination of such employment, with any reporter, author, producer, or similar person or entity, or take any other action seeking to publicize or disclose any such information in any way likely to result in such information being made available to the general public in any form, including books, articles or writings of any kind, as well as film, videotape, audiotape or any other medium. Goldman Sachs will be entitled to obtain injunctive relief to enforce your obligations under this paragraph. Your representations with respect to and adherence to the terms of this paragraph are a significant element of the consideration for Goldman Sachs' promises under this agreement. You agree that in the event of a breach of any of your obligations under this paragraph, Goldman Sachs will have no further obligations to you under this agreement, and, to the extent permissible by law, you will receive no further amounts which would otherwise be payable to you hereunder. In addition, Goldman Sachs retains its right to pursue additional remedies for such a breach.

The existence, terms and conditions of this agreement are fully confidential and should not be disclosed by you to any other person or entity except as may be required by law (including in response to governmental, regulatory, judicial or administrative regulatory inquiry or process), or to an immediate family member, or your accountant or attorney or personal or financial advisor; provided that you first give notice of this provision to each such person to whom disclosure is to be made and obtain their consent to abide by the terms of this provision.  Nothing herein shall limit your right under applicable law to provide truthful information to judicial, regulatory, administrative or other governmental authorities.

You also agree that you will cooperate with the firm (and its respective counsel, if applicable) in connection with any client matter, investigation, administrative proceeding or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge.

Confidential

Any dispute or claim arising out of or based upon or relating in any way to this agreement, or to your employment at Goldman Sachs or the termination of your employment, will be settled by arbitration. Any such arbitration will be conducted before the New York Stock Exchange, Inc., or, if the matter is not arbitrable before the New York Stock Exchange, Inc., the National Association of Securities Dealers. If both the New York Stock Exchange, Inc. and the National Association of Securities Dealers decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") (in accordance with the commercial arbitration rules of the AAA). You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

The preceding four paragraphs will survive the termination of this agreement and will remain in effect even if, for any reason, other parts of this agreement are not enforceable.

Please confirm by returning to me the enclosed copy of this agreement by ▮▮▮ 2003, signed where indicated, that you have voluntarily decided to accept and agree to this arrangement. The proposal will expire if you have not returned the executed agreement by this date. Please do not hesitate to call your Employee Relations representative or me if you have any questions.

Very truly yours,

I SO AGREE AND CONFIRM:

Employee's Signature

Employee's Name (Print)

Date

Confidential