# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 10, 2019

Via ECF

The Honorable Robert W. Lehrburger,
    United States District Court for the
    Southern District of New York,
        500 Pearl Street,
            New York, New York 10007-1312.

Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*
      No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

On behalf of Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. ("Defendants"), I respond to Your Honor's October 4, 2019 Order to "identify[] the specific information [Defendants] propose[] be provided in a 'trial plan.'" (ECF No. 870 at ¶ 6.)

Unable to cite a single post-*Wal-Mart* Title VII case as precedent,[1] Plaintiffs' trial plan must provide sufficient detail to confirm that the Phase I trial will be manageable, as required by Rule 23, and to allow Defendants to conduct appropriate discovery and to prepare their defense. *See Mazzei* v. *Money Store*, 829 F.3d 260, 270 (2d Cir. 2016 (plaintiffs "retain[] the burden" at all times "to demonstrate that [Rule 23's] requirements [a]re satisfied"). Specifically, the trial plan must include: (i) a description of the anecdotal evidence that Plaintiffs seek to use; (ii) which aspects of the three challenged employment processes that Plaintiffs allege were discriminatory and caused disparate impact; (iii) whether Plaintiffs seek to introduce evidence concerning post-2015 time period; (iv) the type and timing of their proposed remedies; and (v) when the Named Plaintiffs' claims should be heard. In response to Plaintiffs' trial plan, the Court can then provide needed guidance to the parties on the scope of Phase I.

---

[1] All Title VII cases tried post-*Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011) have involved standardized tests or binary, objective employment policies applied in a uniform manner to the entire class. (*See* ECF 730 at 7, n.3 (summarizing cases).)

The Honorable Robert W. Lehrburger                                                                                                -2-

## BACKGROUND

1. **Plaintiffs' Motion for Class Certification and Abandonment of Injunctive Relief Claims**

In moving for class certification, Plaintiffs repeatedly represented to Judge Torres that (i) Phase I would be for "class liability" (Class Cert. Br., ECF No. 247 at 49); (ii) class claims could be adjudicated based on "generalized proof"; and (iii) individual remedies would be addressed in Phase II.  For example:

- "[T]his case may proceed along a well-recognized path, with a class trial focused on, *in the first phase*, (1) *Class liability* findings regarding a pattern and practice of discrimination, (2) *Class liability* findings of adverse impact, and (3) Goldman's presentation of affirmative defenses to a *Class liability* finding of adverse impact, and then *a second, remedial phase*, consistent with *Teamsters*." (Class Cert. Br. at 49–50 (emphasis added));

- "In Stage One of the proceedings, . . . the Court [will] decide . . . adverse impact *on the class* . . .; [and] a jury [will] decide liability on Plaintiffs' *pattern or practice* (disparate treatment) claims," while "[i]n Stage Two, Plaintiffs *propose individual hearings to adjudicate individual defenses to monetary relief,* if any, and *set individual monetary awards*" (Pls.' Obj. to R&R, ECF No. 511 at 47–48) (emphasis added);

- Plaintiffs' disparate treatment claims "can be determined on a classwide basis *with common proof of statistical and expert evidence*."  (Class Cert. Br. at 46 (emphasis added)); and

- "In the liability stage [of a disparate impact class claim] *no individual trials are required*; to the contrary, *the entire focus is on class-wide evidence*." (Pls.' Resp. to Defs.' Obj. to R&R, ECF No. 525 at 32) (emphasis added); *see also* Pls.' Obj. Reply to R&R, ECF No. 514 at 19, 24).

In the *five* briefs Plaintiffs' submitted on class certification, Plaintiffs suggested *only once* that Phase I could include "whether Goldman is liable to the named Plaintiffs for gender discrimination," without ever suggesting that this includes the Named Plaintiffs' individual claims as well as class claims.  (Pls.' Reply at 52.)

In September 2018, following Judge Torres's decision granting certification of Plaintiffs' class claims under Rule 23(b)(3), Plaintiffs' abandoned their effort to obtain certification of injunctive or declaratory relief claims under Rule 23(b)(2).  (*See* ECF No. 625.)  As Judge Torres recognized, certifying these latter claims would require "an extensive discovery process," because "[t]he parties have not completed meaningful discovery of Defendants' current policies and practices," which had changed substantially beginning in 2016 (the "2016 Process Changes").  (June 14, 2017 Order, ECF No. 500 at 6.)  Plaintiffs never completed discovery into the 2016 Process Changes, and the record before Judge Torres concerned only the processes as they existed prior to 2016.

The Honorable Robert W. Lehrburger                                                                                          -3-

### 2. Judge Torres's Class Certification Order

Several aspects of Judge Torres's rulings on certification dictate how this case will be tried. *First*, it is now beyond dispute that Judge Torres certified claims based only on three multi-faceted employment processes: (i) the annual 360 review process; (ii) the annual manager quartiling process; and (iii) cross-ruffing for promotion from Vice President to Managing Director. (*See* Mar. 30, 2018 Order, ECF No. 578 ("Certification Order" or "Cert. Order") at 28; *see* Oct. 7, 2019 Order, ECF No. 873 ("Oct. 7 Order") at 2 (class claims relate only to three processes).)

*Second*, Judge Torres denied certification of disparate treatment claims based on Plaintiffs' "boys' club" theory, concluding that "[i]ndividual issues would predominate" for such claims. Judge Torres found predominance only for disparate treatment claims "predicated on the statistical evidence of disparate impact" of the three challenged employment processes. (Cert. Order at 47; Oct. 7 Order at 2.)

*Third*, as Judge Torres recently confirmed, and as this Court has reiterated multiple times, the Phase I trial contemplated here will "*consist only of generalized proof*." (Oct. 7 Order at 2 (emphasis added); Cert. Order at 43–47; Oct. 24, 2018 Order (ECF No. 630) ¶ 1 ("Judge Torres contemplated a trial that would consist only of generalized proof to address [] common issues").)

*Fourth*, Judge Torres has never suggested that the Named Plaintiffs' individual claims would be tried in Phase I. Judge Torres affirmed this week that "through bifurcation, subclasses, and other approaches, *individualized issues such as damages, would later be separately considered*" after Phase I. (Oct. 7 Order at 2 (emphasis added).)

*Finally*, Judge Torres never certified claims for injunctive or declaratory relief.

### 3. Plaintiffs' Shifting Positions on the Phase I Trial

Notwithstanding the clear rulings in the Certification Order and Plaintiffs' representations to Judge Torres that their class claims could be manageably tried based "only" on "generalized proof" (Oct. 7 Order at 2), Plaintiffs' approach to Phase I has been shifting since Judge Torres granted certification in March 2018.

#### a. Plaintiffs' Evolving Position on Anecdotal Evidence of Individualized "Culture" Incidents and Individual Class Member "Experiences"

At class certification, Plaintiffs stated unequivocally that they "advanced two theories of disparate treatment: (1) that *Goldman is aware of the discriminatory impact of its employment practices* and continues to use them, and (2) that *Goldman maintains a 'boys' club' culture* of bias and sexualization of women, and retaliation against those who complain." (Pls.' Objs. to R&R (ECF No. 511) at 52 (emphasis added).)

Since then, Plaintiffs have stated generally that they will offer an unspecified amount of anecdotal evidence at Phase I of "an awareness of the problems in the company and not adequate intervention." (Apr. 30, 2019 Conf. Tr. at 63:5–6.) But Plaintiffs also claim that they seek to "bring th[e disparate impact] statistics to life" by

showing that the challenged processes "are operating within a system that's rife with gender bias." (*Id.* at 53:19–22.) Thus, even though Judge Torres has held that Phase I must be tried based "only" on "generalized proof" and rejected a class trial based on their "boy's club" theory, Plaintiffs propose to present "individual incidents" as a "culture issue," and posit that such "incidents" are "related to the [challenged] policies and practices," because "if a person has disciplinary issues, particularly harassment issues, and is getting promoted, then it tells you something about the culture of the organization." (*Id.* at 54:5–6; 56:18–57:3.) Plaintiffs contend that "in order to put the culture on trial" and establish "a standard operating procedure," they must "show things beyond just the policies," and "*that there were managers that did things that were bad*." (*Id.* at 62:23–63:5 (emphasis added).)

Plaintiffs' plan to introduce some number of cherry-picked "anecdotes" of "bad things" during Phase I is no different from the rejected boys' club theory. It plainly would require "individualized inquiries into each incident" and has no place in this class action, as Judge Torres ruled (Cert. Order at 47), and as Your Honor recently reiterated (Oct. 3, 2019 Conf. Tr. at 72:21–22 (THE COURT: "there will be no evidence in phase one about boys' club issues")). Indeed, the notion that such anecdotes constitute evidence of a "standard operating procedure" of discrimination for a class of more than 3,300 women and a class period of almost 18 years runs directly counter to *Wal-Mart*. 564 U.S. at 358 & n.9 ("a few anecdotes selected from literally millions of employment decisions prove nothing at all"). Other courts have similarly concluded that such cherry-picked anecdotal evidence is meaningless.[2]

Plaintiffs have also recently claimed that the Named Plaintiffs' anecdotal testimony of their own "experiences" (presumably with the challenged processes) is somehow representative of the experience of each of the more than 3,300 class members over almost 18 years working in over 100 separate Business Units. Thus, in a remarkable leap, Plaintiffs contend that because the Named Plaintiffs "have been found to be typical of claims of the class," they "will come to trial to testify *about the typical experience of a class member* at Goldman Sachs."[3] (Oct. 3 Conf. Tr. at 55:17–21 (emphasis added).) Without citing any legal support, Plaintiffs assert that this "happens all the time," even where there are "variations in how that company's conduct affected people." (*Id.* at 66:1–

---

[2]   *See Callari* v. *Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 76 (E.D.N.Y. 2015) (Spatt, J.) ("anecdotes of illegal conduct" by two witnesses "not sufficient to establish . . . a company-wide policy or practice [for Rule 23] . . . where the proposed class members [were] spread out across twenty branches and three different states"); *Moussouris* v. *Microsoft Corp,*, 2018 WL 3328418, at *25 (W.D. Wash. June 25, 2018) (anecdotal evidence "too weak" to establish commonality where it "relate[d] to only 5 of the 41 states in which Microsoft has offices" and where witnesses did not "represent sufficiently the multitude of positions throughout the company").

[3]   The class size should in fact be 1,470, as 1,850 class members agreed to arbitrate the class claims here. (*See* ECF Nos. 779 & 879.) The Named Plaintiffs are not "typical" of the particular 360 review, quartiling or cross-ruffing experiences of even the smaller class size.

The Honorable Robert W. Lehrburger                                                                                              -5-

20.)  Plaintiffs' position makes no sense for at least the following reasons.

*First*, "the test for typicality is not demanding."  7 Wm. B. Rubenstein, Newberg on Class Actions §§ 3:29, 3:31 (5th ed. 2018); *see Karvaly* v. *eBay, Inc.*, 245 F.R.D. 71, 82 (E.D.N.Y. 2007) (Glasser, J.) ("the typicality prong of Rule 23(a) sets a relatively low threshold").  Judge Torres's preliminary, non-binding Rule 23 findings thus cannot transform four Named Plaintiffs' unique experiences into an evidentiary proxy during the Phase I trial for the unique experiences of more than 3,300 other class members.  Here, the lack of any representativeness is obvious: the Named Plaintiffs worked (a) in only two out of three Divisions at issue; (b) in only a handful out of the more than 100 Business Units within Goldman Sachs over the class period; (c) in only three of 25 offices in the United States; and (d) in only some years of the almost 18-year class period.  (*See* App. A.)  *See Boyd* v. *Interstate Brands Corp.*, 256 F.R.D. 340, 365 (E.D.N.Y. 2009) (Mauskopf, J.) (named plaintiffs' anecdotes failed to show commonality where "putative class members worked in disparate facilities with different supervisors").)[4]

*Second*, Plaintiffs claim that "*on average*, [female Associates and Vice Presidents] receive[d] lower 360-degree review scores, more negative reviews, and lower quartile rankings than men in similar positions" with "similar or worse objective performance."  (Second Am. Compl., ECF No. 411 ("SAC") ¶ 45 (emphasis added).)  In support, Plaintiffs propose to present anecdotes only from a cohort who believes their "below average" scores and rankings were unfair and discriminatory (*i.e.*, the Named Plaintiffs and perhaps others).  But if anecdotal evidence is intended to "bring statistics to life," then *all* the statistics should come to life, including those anecdotes supporting Defendants' position that there was no class-wide discrimination against the Firm's female professionals.  Defendants have the right to rebut Plaintiffs' anecdotal evidence through the testimony of absent class members who believe the processes, and their scores and rankings, were entirely fair.  *See United States* v. *City of New York*, 717 F.3d 72, 87 (2d Cir. 2013) (defendants must be afforded "broad opportunity to present in rebuttal any relevant evidence that shows that it lacked [] an intent" to discriminate).

---

[4]  *See also Espenscheid* v. *DirectSat USA, LLC*, 705 F.3d, 770774 (7th Cir. 2013) (rejecting plaintiffs' proposal to have 42 class members testify to "get around the problem of variance" among class members' unique traits where plaintiffs failed to show that witnesses were selected using proper "sampling methods"); *Lindsley* v. *Omni Hotels Mgmt. Corp.*, 2019 WL 2743892, at *13 (N.D. Tex. July 1, 2019) (finding anecdotal evidence "unconvincing" where plaintiff produced only "one account of pay and/or promotion discrimination on the part of Defendants—her own"); *Campbell* v. *Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 323 (D.D.C. 2018) (finding under Rule 23 that "testimony of one former employee who worked . . . for less than two years" does not raise inference of "general policy of discrimination over the entire sixteen-year class period"); *Frazier* v. *PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 871 (S.D. Iowa 2018) (finding "[a]necdotes of illegal conduct" insufficient to establish company-wide practice, "especially where the proposed class members are spread out across twenty-one stores"); *Ross* v. *Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 199 (D.D.C. July 28, 2017) (finding "two anecdotes in a class of over 5,500" insufficient to constitute "substantial proof" of discrimination).

The Honorable Robert W. Lehrburger                                                                                          -6-

### b.  Plaintiffs' Flip-Flop on Trying the Named Plaintiffs' Individual Claims in Phase I

After Judge Torres certified their class claims for a Phase I trial based "only" on "generalized proof," Plaintiffs claimed that "efficiency" requires that Named Plaintiffs' individual, *non-class* claims be tried during Phase I. (*See* Pls.' Jan. 16, 2019 Ltr. (ECF No. 674-2) at 1–2 (emphasis added); Feb. 25, 2019 Conf. Tr. at 77:20-24 (MR. KLEIN: "we think that it makes logical sense to include the named plaintiffs' non-class claims before the jury just as a matter of judicial efficiency").)  But unlike other recent pattern-or-practice trials,[5] each of the Named Plaintiffs brings entirely distinct individual discrimination claims—ranging from pregnancy discrimination, to retaliation, to specific compensation claims—that have no bearing on the resolution of the certified class claims and that are subject to an entirely different burden-shifting framework. (*See* App. A.)  The Named Plaintiffs contend that resolving their individual claims will require evidence concerning potentially dozens of individual so-called male comparators. (*See* July 17, 2019 Conf. Tr. at 12:9-12.)  Plaintiffs have never explained how this can be done at a manageable Phase I trial that would also include Defendants' rebuttal comparators.

### c.  Plaintiffs' Repeated Flip-Flops on Remedies

Plaintiffs sought certification under Rule 23(b)(3) only for their claims for "backpay and punitive damages." (Pls.' Class Cert. Br. at 47.)  Plaintiffs have since flip-flopped repeatedly on the relief they seek and when they plan to seek it.

#### (i) Damages

Plaintiffs initially claimed that "it is appropriate to measure [backpay] damages in the aggregate" at the end of Phase I, "with individual hearings reserved for a later stage." (Class Cert. Br. at 46).  Plaintiffs later reversed course. (*See* Dec. 20, 2018 Conf. Tr. at 46:25–47:2 (MR. GIUFFRA: "Are we doing damages at phase [one]?" MS. GEMAN: "No.").)  Judge Torres has now confirmed that "through bifurcation, subclasses, and other approaches, individualized issues, *such as damages*" would *not* be tried during Phase I, but would "later be separately considered." (Oct. 7 Order at 2 (emphasis added).)

In *Wal-Mart*, the Supreme Court made clear that liability for backpay must be determined during Phase II because of Defendants' right "to individualized determinations of each employee's eligibility for backpay." 564 U.S. at 366–67.  And because punitive damages in a class action cannot be determined prior to individual liability determinations, claims for punitive damages must equally be assessed on an individual basis after Phase I.  *See Robinson* v. *Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 158 n.4, 161 (2d Cir. 2001) (second stage of disparate treatment and impact claims implicates "liability to each individual class member rather than to the class as a whole"); *Johnson* v. *Nextel Commc'ns Inc.*, 780 F.3d 128, 148–49 (2d Cir. 2015) ("punitive damages must be

---

[5]  *See, e.g.*, *Velez* v. *Novartis*, No. 04-cv-09194-CM (S.D.N.Y.) (named plaintiffs asserting only class claims); *Slaight* v. *Tata Consultancy Servs., Ltd.*, No. 15-cv-01696-YGR (N.D. Cal.) (same).

tethered to compensatory damages in order to comply with due process") (citing *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 419 (2003)); *EEOC* v. *Mavis Discount Tire, Inc.*, 129 F. Supp. 3d 90, 120 (S.D.N.Y. 2015) (Failla, J.) (in pattern-or-practice case, "prudent course is to address the issue of punitive damages during Phase II").

### (ii) Injunctive Relief

Because Plaintiffs abandoned Rule 23(b)(2) certification of their claims for injunctive and declaratory relief before Judge Torres could consider whether to certify these claims, Plaintiffs cannot now pursue such relief on a class-wide basis at trial. *See* Newberg on Class Actions § 23:30 ("[A]n employment suit seeking primarily monetary damages cannot make itself into a hybrid case artificially—it must actually comply with the requirements of Rule 23(b)(2) to be certified."); *All Star Carts & Vehicles, Inc.* v. *BFI Canada Income Fund*, 280 F.R.D. 78, 83 (E.D.N.Y. 2012) (Wexler, J.) (in certifying claims under Rules 23(b)(2) and (b)(3), "Rule 23(b)(2) governs class-wide injunctive relief"). Plaintiffs conceded as much at a status conference, only to later backtrack at the very same conference without explaining when or how this relief could be sought.[6]

### INFORMATION PLAINTIFFS
### SHOULD INCLUDE IN THEIR TRIAL PLAN

This Court should direct Plaintiffs to include the following information in their Trial Plan:

**1.  The Trial Plan Should Explain How Plaintiffs Intend to Use Anecdotal Evidence of Intent at a Manageable Class Trial.**

In keeping with the Certification Order and applicable law, Plaintiffs should confirm that trying Goldman Sachs's "culture" through anecdotal evidence is not part of their trial plan. If Plaintiffs nevertheless insist that cherry-picked anecdotal "culture incidents" should be part of a Phase I trial, they must explain (i) how such a trial plan accords with Judge Torres's rejection of the "boys' club" theory, her generalized proof ruling, and her Rule 23 findings; (ii) how each purported "incident" will not devolve into a trial within a trial; and (iii) how such cherry-picked "incidents" constitute "generalized proof" of a "standard operating procedure" of intentional discrimination in more than 100 Business Units within Goldman Sachs over the past almost 18 years.

As to Plaintiffs' alternate theory that "Goldman Sachs" was aware of "problems" (Apr. 30 Conf. Tr. at 63:5–6)—the only theory that was certified—Plaintiffs should explain which "problems" they refer to, and how "awareness" of those problems

---

[6]   *Compare* Feb. 25 Conf. Tr. at 63:17–65:7 (THE COURT: "[T]o what extent would [claims for injunctive relief] affect any proof or evidence coming in in phase one?" MR. KLEIN: "It would have absolutely no impact on phase one"), *with id.* at 74:12–18 (MR. KLEIN: "We didn't waive our right to an injunction that's impossible by virtue of what subpart of Rule 23 we decided to certify the class under."), *and id.* at 76: 11–14 (MR. KLEIN: "[C]ompliance relief, [] basically addresses how to change the challenged practices if there's a finding of liability.").

The Honorable Robert W. Lehrburger                                                                                                -8-

constitutes proof of standard operating procedure of intentional discrimination across all Business Units and the entire class period.

Anecdotal testimony from Named Plaintiffs about their unique experiences with the challenged processes cannot be extrapolated to the entire class of more than 3,300 other class members, nor could such selective evidence establish intentional discrimination as a "standard operating procedure." If Plaintiffs plan to introduce such anecdotal evidence, Plaintiffs must explain how the testimony of four Named Plaintiffs is adequately representative of the experiences of more than 3,300 other class members and constitutes "generalized proof." The trial plan must also make clear the proposed scope of absent class member testimony at a Phase I trial. In any event, if Plaintiffs are allowed to introduce their preferred anecdotal evidence, Defendants have the right to do the same, and Phase I will not be based "only" on "generalized proof," as Judge Torres directed.

2. **The Trial Plan Should Explain the Aspects of the Challenged Processes Alleged to Be Discriminatory and Describe Plaintiffs' Theory of Causation.**

Plaintiffs challenge the application by hundreds of managers of multi-step, discretionary processes to more than 3,300 class members. The trial plan should (i) identify which aspect or aspects of each of these processes Plaintiffs claim resulted in a discriminatory disparate impact; and (ii) describe generally how Plaintiffs intend to establish, through generalized proof, a causal connection between the alleged discriminatory aspect or aspects of these processes and an adverse impact on more than 3,300 class members.

In addition, Judge Torres found that cross-ruffing—*not* the nomination process prior to cross-ruffing—was a "process applied to every single possible promotion from Vice President" and concluded that cross-ruffing was thus a "common mode" of decision-making for purposes of Rule 23 commonality. (Cert. Order at 28; 42–46.) Plaintiffs' trial plan should (i) confirm that the cross-ruffing process itself is the basis for Plaintiffs' claims of disparate impact discrimination over promotions, not the selection of who is cross-ruffed; (ii) explain which aspect of cross-ruffing supposedly caused gender discrimination (*e.g.*, because the cross-ruffing process "does not employ legitimate, validated and/or objective criteria" or because this process is based on "inaccurate and unvalidated performance measures" (SAC ¶¶ 53, 54)); and (iii) state whether Plaintiffs will seek to prove that cross-ruffing caused disparate impact discrimination for any time period beyond the 2004 to 2007 time period that Judge Torres considered at class certification.

3. **The Trial Plan Should Explain Whether Plaintiffs Will Offer Evidence for the Time Period After the 2016 Processes Changes.**

Judge Torres never considered the 2016 Process Changes, and Plaintiffs abandoned further discovery of these changes. The trial plan should confirm that the post-2015 processes will not be at issue at the Phase I trial.

The Honorable Robert W. Lehrburger -9-

### 4. The Trial Plan Should Confirm That Class-Wide Remedies Are No Longer Available in this Action.

Plaintiffs' trial plan should confirm that (i) class-wide injunctive relief will not be sought in this case because Judge Torres never certified a class with respect to such relief; (ii) Plaintiffs will not seek an aggregate award of backpay or punitive damages at the close of Phase I; and (iii) individualized liability for backpay and punitive damages will be considered only on an individualized basis at a "later" stage. (Oct. 7 Order at 2.)

### 5. The Trial Plan Should Confirm that the Named Plaintiffs' Individual Claims Will Be Tried During Phase Two Proceedings.

In keeping with the Certification Order, Named Plaintiffs' individual non-class claims are properly tried in Phase II. If Named Plaintiffs seek to have their claims heard in Phase I, they should explain (i) approximately how many comparators they intend to present for each Named Plaintiff; (ii) how evidence related to each comparator will not devolve into a series of mini-trials in a Phase I trial that is supposed to be focused "only" on "generalized proof"; (iii) approximately how many absent class member witnesses will testify "about [the] [N]amed [P]laintiffs' experience" (Oct. 3 Conf. Tr. at 48:5-6); (iv) the general topics of their testimony; and (v) how the *McDonnell Douglas* burden-shifting framework for the Named Plaintiffs' individual claims will co-exist alongside the *Teamsters* framework for pattern- or-practice cases. *Parisi* v. *Goldman, Sachs & Co.,* 710 F.3d 483, 488 (2d Cir. 2013) ("private plaintiffs do not have a right to bring a pattern-or-practice claim of discrimination").

\* \* \*

As this Court recognized, "the time has come" for Plaintiffs to provide a trial plan showing how, consistent with the Certification Order and Rule 23, they propose to try the Phase I trial. (Oct. 3 Conf. Tr. at 89:2.) Such a trial plan will facilitate a fair discovery process and satisfy Plaintiffs' continuing obligation under Rule 23 to show that a class trial remains a manageable and superior method of adjudicating their claims.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

cc:   All parties of record (via ECF)

# Appendix A

| Name | Role | Division | Term of Employment | Non-Class Claim |
|---|---|---|---|---|
| Chen-Oster | Salesperson in Convertible Bonds group | Securities | 1997–2005 | Retaliation for making internal complaint; pregnancy discrimination (SAC ¶¶ 77–78, 177–200) |
| De Luis | Private banking underwriter | IMD | 2010–2016 | Denied relocation to the Miami office in retaliation for raising compensation concerns. (Suppl. Compl., ECF No. 486 ¶¶ 4–21) |
| Gamba | New York Stock Exchange trading specialist | Securities | 2000–2014 | Not promoted in retaliation for complaining about manager's comment on her pregnancy; pregnancy discrimination (SAC ¶¶ 127–133, 177–200) |
| Orlich | Desk analyst on Capital Structure Franchise Trading desk | Securities | 2007–2008 | Denied opportunity to work in trading position in retaliation for complaining about her then-current role (SAC ¶¶ 108–117, 177–187) |