UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
H. CRISTINA CHEN-OSTER, SHANNA :
ORLICH, ALLISON GAMBA and MARY :
DE LUIS, :
                                               Plaintiffs,   :     10 Civ. 6950 (AT) (RWL)
                      v. :
GOLDMAN, SACHS & CO. and THE :
GOLDMAN SACHS GROUP, INC., :
                                   Defendants. :
---------------------------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION OF
THE COURT'S NOVEMBER 25, 2019 ORDER**

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
Hannah Lonky Fackler
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman, Sachs & Co. and
The Goldman Sachs Group, Inc.*

December 23, 2019

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................................ 1

**FACTUAL BACKGROUND** ................................................................................................ 4

    A.    The Multiple Orders Excluding "Boy's Club" Evidence From This Class Action ................................................................................................................. 4

    B.    The *Systemax* Decision ..................................................................................... 5

    C.    Plaintiffs' Motion for Reconsideration ............................................................... 6

**LEGAL STANDARD** ............................................................................................................ 7

**ARGUMENT** ......................................................................................................................... 8

I.    **THE SECOND CIRCUIT'S FACT-BOUND RULING IN *SYSTEMAX* DID NOT ANNOUNCE A NEW RULE GOVERNING THE USE OF ANECDOTAL EVIDENCE IN TITLE VII CLASS ACTIONS** ................................ 8

    A.    *Systemax* Concerned an Individual Disparate Treatment Claim, Not a "Challenged Practice" ....................................................................................... 9

    B.    *Systemax* Did Not Announce a Special Evidentiary Rule for Anecdotal Evidence Involving Senior Management in Title VII Cases .............................. 10

    C.    The Approach to Anecdotal Evidence in *Systemax* Could Not Be Manageably Applied in a Class Action ............................................................ 10

II.   **THE COURT SHOULD REJECT PLAINTIFFS' LATEST ATTEMPT TO END-RUN ITS DECEMBER 21, 2018 ORDER** ........................................................ 12

**CONCLUSION** ...................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Beckles* v. *City of New York*,
  2010 WL 1841714 (S.D.N.Y. May 10, 2010) ..........................................................................8

*Bonilla* v. *City of New York*,
  2019 WL 6050757 (S.D.N.Y. Nov. 15, 2019) ........................................................................10

*Caidor* v. *Onondaga Cty.*,
  517 F.3d 601 (2d Cir. 2008).....................................................................................................8

*Germain* v. *Cty. of Suffolk*,
  2009 WL 1514513 (E.D.N.Y. May 29, 2009) .........................................................................9

*Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013).................................................................................................7, 8

*Lenzi* v. *Systemax, Inc.*,
  944 F.3d 97, 2019 WL 6646630 (2d Cir. 2019) ............................................................... *passim*

*Madera* v. *Rabsatt*, *Bradley* v. *Milliken*,
  2017 WL 6729452 (S.D.N.Y. Dec. 11, 2017) ..................................................................1, 7, 8

*Pressley* v. *City of New York*,
  2016 WL 1271480 (E.D.N.Y. Mar. 31, 2016) .........................................................................8

*Raytheon Co.* v. *Hernandez*,
  540 U.S. 44 (2003)...............................................................................................................1, 9

*Schreiber* v. *Worldco, LLC*,
  324 F. Supp. 2d 512 (S.D.N.Y. 2004)....................................................................................11

*U.S. Postal Serv. Bd. of Governors* v. *Aikens*,
  460 U.S. 711 (1983)..................................................................................................................9

*Wal-Mart Stores, Inc.* v. *Dukes*,
  564 U.S. 338 (2011)................................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 72...........................................................................................................................8

## PRELIMINARY STATEMENT

In its November 25, 2019 Order, this Court unequivocally—and correctly—ruled: "Phase 1 will not include . . . any 'boy's club' claims or anecdotes," and "the only permissible anecdotes will be those related specifically to application of the three processes," *i.e.*, 360 reviews, manager quartiling, and cross-ruffing. (Nov. 25, 2019 Order (ECF No. 888) ¶ 8.) In seeking reconsideration, Plaintiffs have latched onto the Second Circuit's recent decision in *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 2019 WL 6646630 (2d Cir. 2019), and, based on their misreading of this opinion, claim that they "*must* be able" to present at trial and seek discovery into "boy's club" evidence "attributable to someone in senior leadership," which Plaintiffs expansively define to encompass hundreds of professionals over this almost 20-year class period. (Pls.' Mem. of Law In Support of Motion for Reconsideration ("Pls.' Br.") (ECF No. 901) at 1, 2 n.2 (emphasis in original).) Plaintiffs are grasping at straws: *Systemax* addressed the probative value of specific proof in an *individual* disparate treatment claim brought by a single plaintiff—this decision does not apply to the class claims here to be tried based on "generalized proof" (Oct. 7, 2019 Order (ECF No. 873) at 2), and does not support the "extraordinary remedy" of reconsideration. *Madera* v. *Rabsatt*, 2017 WL 6729452, at *1 (S.D.N.Y. Dec. 11, 2017) (Torres, J.).

*First*, Plaintiffs grossly mischaracterize *Systemax* as "*binding authority* on the *exact issue* of *how to prove a disparate treatment claim* in the context of *a similar challenged practice*." (Pls.' Br. at 2 (emphasis added).) *Systemax* did not involve a "challenged practice" at all—an individual plaintiff claiming disparate treatment is not required to identify a discriminatory employment practice and instead must prove only that an employer "treats some people [in a protected group] less favorably than others . . . ." *Raytheon Co.* v. *Hernandez*, 540 U.S. 44, 52 (2003) (quoting *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 434, 335 n.15 (1977)). The plaintiff in *Systemax* established her individual "less favorable" treatment by showing that (i) male

comparators were consistently paid above market rates, while she was always paid below; and (ii) her direct supervisor made "pervasive" disparaging comments about women, including comments directed specifically at her. 2019 WL 6646630, at *2 n.5, *7. The Second Circuit concluded that this evidence was sufficient to establish a *prima facie* case of discrimination. *Id*. at *9. This ruling on the adequacy of one plaintiff's proof of intentional disparate treatment based on her unique circumstances does not constitute "binding authority" on "how to prove a disparate treatment claim" (Pls.' Br. at 2) in a class trial that will "consist only of generalized proof" (Oct. 7, 2019 Order at 2) for claims "predicated on the statistical evidence of disparate impact" of three specific employment processes. (March 30, 2018 Order ("Cert. Order") (ECF No. 578) at 41.)

*Second*, Plaintiffs misleadingly claim that *Systemax* "explicitly holds that ***all forms of gender animus exhibited by senior management*** are probative of intentional discrimination relating to pay (and promotion) outcomes." (Pls.' Br. at 2–3 (emphasis added).) This supposed holding is nowhere in the opinion, explicitly or otherwise. In any event, the Second Circuit did not find the plaintiff's direct supervisor's "consistent[]" demeaning remarks about women and about plaintiff herself probative of individual disparate treatment simply because he happened to be Systemax's CFO. *Systemax*, 2019 WL 6646630, at *7. Those remarks were probative because they reflected the supervisor's discriminatory intent, regardless of his corporate rank. There is no basis for Plaintiffs' attempt to wrench out of *Systemax* some kind of broad pronouncement supporting the introduction of random anecdotes, having no connection to the three challenged processes, of supposed senior management misconduct at a Phase I trial here.

*Third*, the Second Circuit's assessment of the anecdotal evidence in *Systemax* makes clear precisely why—as Judge Torres and this Court have ordered no less than six times— cherry-picked, individualized anecdotal evidence has no place in a Phase I trial of class claims

based "only" on "generalized proof."[1]  In *Systemax*, the Second Circuit applied the same fact-intensive test used for at least 15 years to weigh the probative value of plaintiff's anecdotal evidence taking into account "who made the remark"; "when the remark was made"; and the "content" and precise "context" of the remark.  2019 WL 6646630, at *7.  This sort of highly individualized evaluation in a class action would "overwhelm the common issues" and render trial completely unmanageable.  (Cert. Order at 47.)

*Finally*, through their motion for reconsideration, Plaintiffs once again try to revisit this Court's December 21, 2018 Order, which (resting on Judge Torres's certification rulings) ordered that "Defendants need not produce 'boys' club' evidence for incidents that do not relate to the practices and procedures that form the basis for the Phase 1 trial of certified class claims." (Dec. 21, 2018 Order ¶ 1; *see* Nov. 25, 2019 Order ¶ 8.)  Plaintiffs tried the same tack in objecting to this Court's June 25, 2018 Order confirming that stand-alone compensation claims are not in this case, and Judge Torres correctly rejected Plaintiffs' objections to the December 21, 2018 Order as "untimely."  (Oct. 7, 2019 Order at 8.)

In sum, Plaintiffs' motion is yet another belated attempt to try to inject irrelevant and highly individualized issues into this class action.  Judge Torres and this Court have rejected this tactic time and again, and *Systemax* provides no basis to reconsider the Court's latest ruling

---

[1] *See* Cert. Order at 47 (rejecting "boy's club" theory of disparate treatment as too "individualized"); Dec. 21, 2018 Order (ECF No. 657) ¶ 1 (ordering production of "'boy's club' anecdotal evidence" only if "related to" the challenged processes "that form the basis for the Phase 1 trial" based on generalized proof); June 7, 2019 Order (ECF No. 753) at 2 (emphasizing that Judge Torres "denied certification . . . based on so-called 'boy's-club' evidence of individual incidents of alleged misconduct and discrimination because such evidence would be highly individualized and not susceptible to class-action treatment"); June 25, 2019 Order (ECF No. 767) at 1 (reiterating that "Phase I will be devoted to generalized proof of the alleged discriminatory impact and treatment of women" through the three challenged practices); Oct. 7, 2019 Order at 2 (Phase I trial will "consist only of generalized proof"); Nov. 25, 2019 Order ¶ 8 ("Phase 1 will not include . . . any 'boys' club' claims or anecdotes").

that "Phase 1 will not include . . . any 'boy's club' claims or anecdotes."  (Nov. 25, 2019 Order ¶ 8.)

## FACTUAL BACKGROUND

A.  **The Multiple Orders Excluding "Boy's Club" Evidence From This Class Action**

On March 30, 2018, Judge Torres held that Plaintiffs failed to establish predominance for their "boy's club theory" of disparate treatment because the required "individualized inquiries" into each alleged incident of misconduct would "overwhelm the common issues."  (Cert. Order at 47; *see also* June 7, 2019 Order at 2 (same).)  Consistent with these rulings, Judge Torres recently confirmed that "[t]he Phase I trial would *consist only of generalized proof* to address the common issues that justified certifying the class."  (Oct. 7, 2019 Order at 2; *see also* Cert. Order at 42–47; Oct. 24, 2018 Order (ECF No. 630) ¶ 1 ("Judge Torres contemplated a trial that would consist only of generalized proof to address [] common issues").)

Following Judge Torres's rejection of Plaintiffs' "boy's club" theory, this Court ordered that "Defendants need not produce 'boy's club' evidence for incidents that do not relate to the practices and procedures that form the basis for the Phase 1 trial of certified class claims."  (Dec. 21, 2018 Order ¶ 1.)[2]  On November 25, this Court again reaffirmed that "Phase 1 of the trial will address on a class-wide basis . . . the discriminatory impact of, and treatment related to Quartiling, 360-Reviews and Cross-Ruffing," and "Phase 1 will not include . . . any 'boys' club'

---

[2]  Pursuant to this Court's December 21, 2018 Order and other orders, Defendants produced (i) complaint files from the three relevant divisions from 2002 through 2017 of all complaints "'conceivably related' to gender discrimination" (Oct. 15, 2013 Order (ECF No. 196) at 25); (ii) additional files through 2019 of complaints related to the three challenged processes (Dec. 21, 2018 Order ¶ 1); and (iii) all "complaint and disciplinary files" of the Named Plaintiffs' alleged "comparators" and "supervisors."  (June 7, 2019 Order at 6; Oct. 3, 2019 Order ¶ 4.)

claims or anecdotes (rather, the only permissible anecdotes will be those related specifically to application of the three processes) . . . ." (Nov. 25, 2019 Order ¶ 8.)

### B. The *Systemax* Decision

On December 6, 2019, the Second Circuit issued its decision in *Systemax*, a case involving an individual plaintiff's claims under Title VII, the Equal Pay Act, the Consumer Product Safety Improvement Act, and related state laws. 2019 WL 6646630, at *1.

To make out her Title VII disparate treatment claim, the plaintiff in *Systemax* relied on "benchmarking data" used by her employer "to determine its employees' salaries." *Id*. at *2 n.5, *7. The plaintiff did not challenge the company's practice of using benchmarking data, or any other employment practice. Plaintiff simply showed, based on the data, that she was consistently paid below the benchmark rate for her position while comparable male executives were compensated above the benchmark rate for their positions. *Id*. at *2.[3]

The plaintiff also offered evidence that Systemax's Chief Financial Officer, "to whom [plaintiff] reported directly," "made graphic comments about his dating and sex life," and commented to plaintiff on her physical appearance. *Id*. at *1, *7. The Second Circuit evaluated this anecdotal evidence based on four fact-intensive and context-dependent factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Id*. at *7

---

[3] The Second Circuit concluded that "these statistical differences" between plaintiff's pay and the pay of male comparators "permit an inference of discrimination," 2019 WL 6646630, at *7, when in fact plaintiff's analysis was not "statistical" and was instead a basic arithmetic comparison between herself and three male comparators based on the benchmarking data used by her employer.

(quoting *Henry* v. *Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).  Based on these facts, the Second Circuit concluded that the supervisor's comments were probative of discrimination and not "stray remarks," as the district court had found, and that "[t]aken together, the fact that Systemax paid [plaintiff] below the market rate for her position while paying her three male peers above market rate, along with [her supervisor's] pervasive disparagement of women, are enough to carry [plaintiff] past the prima facie stage."  *Id*. at *9.  The Second Circuit did not announce a broad rule governing the use of anecdotal evidence involving senior management in Title VII cases generally, much less at a Phase I trial over the impact of specific challenged employment processes to an entire class of employees.

      C.      **Plaintiffs' Motion for Reconsideration**

On December 9, 2019, in moving for reconsideration of this Court's November 25 Order, Plaintiffs claim that, under *Systemax*, "Plaintiffs must be able to present (and therefore to seek discovery into) certain 'boy's club' evidence in Phase I" as part of their "disparate treatment" claim.  (Pls' Br. at 1 (emphasis omitted).)  Based on their misreading of *Systemax*, Plaintiffs ask the Court to amend the November 25 Order as shown in bold below: "Phase I will not include . . . (b) any 'boys' club' claims or anecdotes (rather, the only permissible anecdotes will be those related specifically to application of the three processes), ***except insofar as such claims or anecdotes relate to senior leadership, where any such evidence with respect to senior leadership may be admissible so long as it satisfies evidentiary standards*** . . . ."  (Pls.' Br. at 1–2 (emphasis in original).)  Plaintiffs define "senior leadership" to include "individuals employed at the corporate level (firm-wide) or in the Securities, Investment Management, or Investment Banking Divisions at either (1) the Participating Managing Director [("PMD")] title or higher," or "(2) the Extended Managing Director [("EMD")] title to the extent that the EMD (a) served on

-6-

division- or firm-wide committees concerning women's issues, diversity and inclusion, promotions/cross-ruffing, or performance, or (b) reviewed the Named Plaintiffs." (*Id*. at 2 n.2.)

To try to minimize the scope of the discovery they seek, Plaintiffs claim that they seek "boy's club" discovery about "a small set of employees." (*Id*.) Not so. In fact, Plaintiffs' proposed definition of "senior leadership" encompasses hundreds of senior professionals over the almost 20-year class period. In 2018 alone, Goldman Sachs announced 69 new PMDs, which the Firm acknowledged as "smaller than in recent years," *Goldman Sachs Announces Partner Class of 2018*, Nov. 7, 2018, https://www.goldmansachs.com/media-relations/press-releases/archived/2018/gs-partner-class-2018.html. From 2012–2016, the Firm announced an additional 232 new PMDs. *See Goldman Sachs Press Releases Archives*, Dec. 23, 2019, https://www.goldmansachs.com/media-relations/press-releases-and-comments/archive/. And in their interrogatory responses, Defendants identified dozens of current and former EMDs and PMDs who served on the committees that Plaintiffs identified.[4]

## LEGAL STANDARD

It is black-letter law that reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Madera*, 2017 WL 6729452, at *1 (internal quotation marks omitted). "A motion for reconsideration should be granted only when the [movant] identifies an intervening change of

---

[4] *See, e.g.*, Defs.' July 2, 2018 Resps. & Objs. to Pls.' Fifth Set of Interrogs. at 6–14; Defs.' Apr. 2019 Suppl. Resps. & Objs. to Pls.' Fifth Set of Interrogs. at 5–8 (identifying 2003 to 2017 divisional compensation committee members, current executive committee members, and cross-ruffers in the three divisions from 2002 to present); Defs.' Feb. 14, 2019 Resps. & Objs. to Pls.' Sixth Set of Interrogs. at 4–11 (identifying leadership of the Americas Women's Network; IMD Women's Network; IBD/MBD Women's Network; Securities Women's Network; Americas Global Leadership Diversity Committee; Global Diversity Committee; Diversity Task Force; Americas Diversity Committee; and Global Diversity Working Group from 2002 to the present).

controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). "Reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Madera*, 2017 WL 6729452, at *1 (quoting *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).[5]

## ARGUMENT

I. **THE SECOND CIRCUIT'S FACT-BOUND RULING IN *SYSTEMAX* DID NOT ANNOUNCE A NEW RULE GOVERNING THE USE OF ANECDOTAL EVIDENCE IN TITLE VII CLASS ACTIONS.**

*Systemax* does not constitute a "change of controlling law," *Kolel*, 729 F.3d at 104, and provides no basis for reconsideration of the November 25 Order. *Systemax* is an individual disparate treatment claim not premised on any "challenged practice." The Second Circuit announced no special rule governing the use of anecdotal evidence involving senior management in Title VII cases, but merely applied the same four-factor test long used in this Circuit to weigh the probative value of anecdotal evidence in an *individual* discrimination claim

---

[5] Plaintiffs cite *Pressley* v. *City of New York*, 2016 WL 1271480, at *2 (E.D.N.Y. Mar. 31, 2016) (Chen, J.), in support of their claim that their 14-day deadline under Fed. R. Civ. P. 72 to object to the November 25 Order is tolled until this Court resolves the motion for reconsideration, but *Pressley* does not announce any such tolling rule. The court in *Pressley* held that a *pro se* plaintiff's objections, brought almost two years too late, were untimely because they should have been brought within "fourteen days of . . . [the Magistrate Judge's] Order denying her Motion for Reconsideration of his original denial." *Id*. at *2. But the *Pressley* court's cited authority for this conclusion consists of Fed. R. Civ. P. 72 and the Second Circuit's decision in *Caidor* v. *Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008), both of which emphasize that a party waives objections not timely brought, and make no mention of any tolling where a party moves for reconsideration. Courts that have squarely considered this issue have instead ruled that no such tolling applies. *See Beckles* v. *City of New York*, 2010 WL 1841714, at *1, *6 (S.D.N.Y. May 10, 2010) (Holwell, J.) (holding that motion for reconsideration on single issue in magistrate judge's order did not alter Fed. R. Civ. P. 72's 14-day deadline to file objections and declining to consider objections "over two weeks late").

that could never manageably be applied to Plaintiffs' class claims.

> A. *Systemax* Concerned an Individual Disparate Treatment Claim, Not a "Challenged Practice."

A plaintiff asserting an individual disparate treatment claim must establish that her employer "'discriminated against her with respect to her compensation because of her sex.'" *Systemax*, 2019 WL 6646630, at *1 (quoting 42 U.S.C. § 2000e-2(a)(1)) (internal alterations omitted). She may adduce any probative evidence of the discrimination that she individually experienced. *U.S. Postal Serv. Bd. of Governors* v. *Aikens*, 460 U.S. 711, 714 n.3 (1983) ("As in any lawsuit, the plaintiff [in a Title VII disparate treatment action] may prove his case by direct or circumstantial evidence.") An individual plaintiff asserting a disparate treatment claim is not required to identify or challenge any specific employment practice as discriminatory. *See Raytheon*, 540 U.S. at 52 (disparate treatment claim involves employer "simply treat[ing] some people [in protected group] less favorably than others" whereas "disparate-impact claims 'involve employment practices'" (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15); *Germain* v. *Cty. of Suffolk*, 2009 WL 1514513 (E.D.N.Y. May 29, 2009) (Spatt, J.) ("Disparate treatment occurs where an employer 'treats some people less favorably than others'. . . [d]isparate impact claims, on the other hand, 'involve employment practices.'" (internal quotations omitted)).

Plaintiffs nevertheless claim that *Systemax* is "*binding authority* on the exact issue of *how to prove a disparate treatment claim* in the context of *a similar challenged practice*." (Pls.' Br. at 2 (emphasis added).) But the *Systemax* plaintiff did not challenge the company's benchmarking practice or attempt to show that any other practice had a statistically significant adverse impact on a protected group. She showed only that "Systemax paid [her] significantly less than other, male department heads," and that her direct supervisor made "pervasive" negative comments about women and the plaintiff's appearance. *Id*. at *2, *7, *9. The Second Circuit

merely held that this was sufficient to establish a *prima facie* case of *individual* discrimination. As an individual claim involving individualized evidence, *Systemax* provides no guidance, much less "binding authority," for trial of class claims here based on "generalized proof" and premised on the statistical disparate impact of three specific challenged employment processes. (Cert. Order at 46.)

      **B.**    *Systemax* **Did Not Announce a Special Evidentiary Rule for Anecdotal Evidence Involving Senior Management in Title VII Cases.**

Plaintiffs further claim that *Systemax* "explicitly holds that *all forms of gender animus exhibited by senior management* are probative of intentional discrimination relating to pay (and promotion) outcomes—not just evidence that relates to a particular challenged policy." (Pls.' Br. at 2–3.) Tellingly, Plaintiffs provide no citation for this "explicit" holding, yet rely on it to propose a special carveout from the November 25 Order for any "boys' club anecdotes . . . relate[d] to senior leadership," whether tethered to the three challenged processes or not. (Pls.' Br. at 1–2.) But *Systemax* says nothing whatsoever about anecdotal evidence involving senior management "animus." The Second Circuit noted that plaintiff's direct supervisor was Systemax's CFO, 2019 WL 6646630, at *8, but nowhere holds that his disparaging remarks were relevant *because* of his role as a senior executive. Had plaintiff adduced evidence of the same disparaging remarks from a supervisor who was *not* senior management, that evidence equally would have been probative of disparate treatment. *See Bonilla* v. *City of New York,* 2019 WL 6050757, at *14 (S.D.N.Y. Nov. 15, 2019) (Failla, J.) (disparaging nickname used by plaintiff police officer's supervisor—a sergeant, who ranked below precinct lieutenant and was not a member of NYPD senior leadership—supported inference of discrimination).

      **C.**    **The Approach to Anecdotal Evidence in** *Systemax* **Could Not Be Manageably Applied in a Class Action.**

In *Systemax*, the Second Circuit applied the same four-factor test that courts in this Circuit have used for at least 15 years to assess the probative value of allegedly discriminatory remarks in individual disparate treatment cases: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." 2019 WL 6646630, at *8 (quoting *Henry*, 616 F.3d at 149 (endorsing four-factor test and noting that "district courts in this circuit have developed a standardized approach for applying these [four factors] to *individual* cases") (emphasis added)); *see also Schreiber* v. *Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004) (Chin, J.) (first application of four-factor test in this District).

Plaintiffs have cited no case applying this four-factor test in a disparate treatment class action. And for good reason: any attempt to apply such a highly individualized, fact-specific analysis in a class action would not only be completely unmanageable, but would undermine the notion that the class trial will be tried based on "generalized proof." (Cert. Order at 46–47.) Moreover, such a test would be meaningless here because cherry-picked anecdotes from a class of thousands of women, hundreds of managers, dozens of business units, and three separate divisions across an almost 20-year class period have *no* probative value. *See Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 358 n.9 (2011) ("[W]hen the claim is that a company operates under a general policy of discrimination, a few anecdotes selected from literally [thousands] of employment decisions prove nothing at all."). Indeed, if the Court were to adopt Plaintiffs' proposed revisions to the November 25 Order (purportedly based on *Systemax*) and allow "'boy's club' claims or anecdotes" that "relate to senior leadership" in a Phase I trial (Pls.' Br. at 2), the Court would necessarily

"need to make individual inquiries into each incident" and into the probative value of the Plaintiffs' evidence of each alleged incident, which is why Judge Torres denied certification of Plaintiffs' "'boy's club' disparate treatment claim" in the first place. (Cert. Order at 47.)

## II. THE COURT SHOULD REJECT PLAINTIFFS' LATEST ATTEMPT TO END-RUN ITS DECEMBER 21, 2018 ORDER.

In moving for reconsideration, Plaintiffs once again seek to obtain discovery about and to introduce at trial "boys' club" evidence untethered to the challenged processes and related to a broad swath of senior Goldman Sachs professionals. (Pls.' Br. at 2 & n.2; *see supra* Part C.)[6] Plaintiffs cannot use a motion for reconsideration of an order issued on November 25, *2019* to revisit an order issued more than a year ago on December 21, *2018*. That earlier order limited discovery of "boy's club" evidence to anecdotal evidence "related to the practices and procedures that form the basis for the Phase I trial." (Dec. 21, 2018 Order ¶ 1.) Plaintiffs raised no objection to the order at the time, and just as Judge Torres ruled the last time Plaintiffs tried to revisit the December 21, 2018, any objections are untimely. (Oct. 7, 2019 Order at 8.)

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to reconsider the November 25 Order.

---

[6] Plaintiffs' request for discovery from every EMD that "reviewed the Named Plaintiffs" is duplicative of the Court's October 3, 2019 Order (ECF No. 870), which required Defendants to produce any complaint and disciplinary files (to the extent not already produced) for Named Plaintiffs' "supervisors" listed on their 360 reviews. In the November 14, 2019 joint status letter, Plaintiffs proposed that supervisors of the Named Plaintiffs be defined as: "i) individuals listed as managers or co-managers on the Named Plaintiffs' 360-Degree Reviews; ii) individuals holding a higher title than the Named Plaintiffs who provided them with 360-Degree Review feedback; and iii) individuals identified as supervisors during the Named Plaintiffs' depositions." (Nov. 14, 2019 Ltr. (ECF No. 887) at 6.) The Court subsequently ordered Goldman Sachs to produce documents for 31 "supervisors" under Plaintiffs' definition of "manager or co-manager." (Nov. 19, 2019 Conf. Tr. at 38:10–40:19; Nov. 25, 2019 Order ¶ 4.)

-13-

|  | Respectfully, |
|---|---|
|  | */s/ Robert J. Giuffra, Jr.* |
| Barbara B. Brown (*admitted pro hac vice*) | Robert J. Giuffra, Jr. |
| Carson H. Sullivan (*admitted pro hac vice*) | Sharon L. Nelles |
| PAUL HASTINGS LLP | Ann-Elizabeth Ostrager |
| 875 15th Street, N.W. | Hilary M. Williams |
| Washington, D.C. 20005 | Joshua S. Levy |
|  | Hannah Lonky Fackler |
|  | SULLIVAN & CROMWELL LLP |
| Patrick W. Shea | 125 Broad Street |
| PAUL HASTINGS LLP | New York, New York 10004 |
| 200 Park Avenue | (212) 558-4000 |
| New York, New York 10166 |  |
|  | Amanda Flug Davidoff |
|  | Elizabeth A. Cassady |
|  | SULLIVAN & CROMWELL LLP |
|  | 1700 New York Avenue, N.W., Suite 700 |
|  | Washington, D.C. 20006 |

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

December 23, 2019