# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

December 27, 2019

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the
     Southern District of New York,
      500 Pearl Street,
       New York, New York 10007-1312.

    Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano*.
          No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

       Defendants respectfully respond to Plaintiffs' Notice of Supplemental Authority ("Notice") (ECF No. 917) in Support of their Motion for Relief Under Federal Rule of Civil Procedure 23(d) ("Motion") (ECF No. 717), appending *Kater* v. *Churchill Downs, Inc.*, 2019 WL 6130844 (W.D. Wash. Nov. 19, 2019). As shown below, Plaintiffs mischaracterize the facts and the court's rulings in *Kater*, which actually support Defendants' position that arbitration agreements cannot be "voided" under Rule 23(d), and that, at most, corrective notice is the only permitted remedy.

       The parties in *Kater*, a class action against the owners of a gambling website seeking to recover payment for lost "chips" purchased on the site, are litigating over a "generic" arbitration agreement ("Generic Agreement") appearing at all times on the website in the Terms of Use and requiring users to arbitrate disputes. 2019 WL 6130844, at *1–2. The decision appended to Plaintiffs' Notice does not address the enforceability of that agreement, which is the "subject of pending motions" under the Federal Arbitration Act. *Id*. at *2; *see Kater*, No. 2:15-cv-00612-RBL (W.D. Wash.) (ECF No. 100). Rather, this decision concerns (i) revised terms to the Generic Agreement added in August 2019 expressly preventing users from participating in the class action unless they opted out of the Generic Agreement within 30 days, and (ii) the introduction of a "pop-up" window several weeks later that made clear that disputes would be subject to the mandatory arbitration provision, and that users could not participate in the class action, but did not mention the opt-out procedure and forced users to accept the terms before accessing the site. *Kater*, 2019 WL 6130844, at *2.

       In response to plaintiffs' motion to invalidate the pop-up agreements and "restore the Terms of Use" to the Generic Agreement, *see Kater*, No. 2:15-cv-00612-RBL (W.D. Wash) (ECF No. 122) at 13, the court rejected all of the requested relief except for a limited corrective notice. In doing so, the court expressly recognized that, in addressing communications with class members under Rule 23(d), "the Court's task . . . is to fashion a narrow remedy to these problems." 2019 WL 6130844, at *6. Thus, the court granted the motion only in part, ordering the defendant

The Honorable Robert W. Lehrburger                                                                                                -2-

to issue a corrective notice within the "pop-up" providing (for those users who were class members) further information about the case, the opt-out provision, and the option of contacting an attorney. *Id.*

As in *Kater*, if this Court has concerns about class members' understanding of the communications they received (and it should not), the *only* appropriate remedy under Rule 23(d) is a corrective communication, not the voiding of arbitration agreements. As explained in Defendants' briefs, Rule 23(d) is not a vehicle for the adjudication of substantive contractual rights, particularly where, as here, there is no indication that any class member wants the extreme outcome of voiding her agreement, and the rescissionary consequences it would entail. (*See* Defendants' Opposition and Sur-reply in Opposition to Plaintiffs' Motion for Relief under Rule 23(d) (ECF Nos. 758; 807).)

In addition to claiming wrongly that the *Kater* court "voided the arbitration agreements" (Notice at 2), Plaintiffs ignore that, like the many other Rule 23 cases relied on by Plaintiffs in their briefing, the facts in *Kater* bear no resemblance to this case:

- ***Vulnerable class members.*** The putative class members in *Kater* were "addicted gamblers" who had to agree to the pop-up to access a virtual casino. 2019 WL 6130844, at *3. Here, class members are sophisticated, highly educated and highly compensated professionals who were given ample time to review the terms of their Equity Agreements.

- ***Intention to thwart class participation.*** Unlike here, the changes to the Terms of Use in *Kater* were "expressly directed at [the pending] lawsuit." 2019 WL 6130844, at *2.

- *No additional consideration.* The defendant in *Kater* amended its arbitration agreement unilaterally as a condition of continued use of its site, forcing users who had already purchased chips to forfeit those chips if they declined the new Term of Use. *Id.* Here, class members received valuable equity-based awards for their agreements to arbitrate.

- *No access to information.* The court in *Kater* was concerned that "putative class members . . . have likely never even heard of these cases" and were "pressured to click away their rights to participate in these cases." *Id.* at *4–5. Here, class members had multiple means to learn about the lawsuit through hold notices directly from Defendants and from extensive press coverage about this case, and had ample time to ask questions or seek advice.

Moreover, to the extent that the *Kater* court found the agreement in the pop-up to be coercive in the specific context of that case, this Court should reject Plaintiffs' claim that class members here were similarly "coerc[ed]" into accepting arbitration "in order to receive their earned compensation for [] work performed." (Notice at 2.) As the record makes clear, equity-based awards at Goldman Sachs are not "earned compensation" like an annual salary—these awards are, and always have been, entirely discretionary incentive payments used to "attract, retain, and motivate" current and prospective employees; "to compensate them for their contributions to [] long-term growth and profits"; to "encourage them to acquire a proprietary interest in the success of the Firm"; and "to align the[ir] interests . . . with those of shareholders." Goldman Sachs Amended and Restated Stock Incentive Plan ("SIP") (2015) at §§ 1.1; 3.11.2. Thus, unlike the "chips" in *Kater*, class members here were not forfeiting something that they

The Honorable Robert W. Lehrburger -3-

already owned, nor were class members forfeiting any claims against Defendants in agreeing to proceed individually in an arbitral forum.

                                                                             Respectfully,

                                                                             */s/ Robert J. Giuffra, Jr.*

                                                                             Robert J. Giuffra, Jr.
                                                                             Sullivan & Cromwell LLP

cc:     All parties of record (by e-mail)