UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; AND MARY DE LUIS,

    Plaintiffs,

v.

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,

    Defendants.

---

10 Civ. 6950 (AT) (RWL)

## JOINT STATUS REPORT

In accordance with the Court's October 3, 2019 Order (ECF No. 870), the parties submit this Joint Status Report in advance of the April 2, 2020 Status Conference. The parties' respective sections follow. The parties respectfully request leave to appear at the Status Conference by telephone, consistent with the Court's COVID-19 Protocols.

## PLAINTIFFS' POSITIONS

**I.     PLAINTIFFS' REQUEST FOR ADDITIONAL DEPOSITIONS**

On April 19, 2019, Plaintiffs initiated a meet and confer regarding an extension for Plaintiffs of the presumptive limit of ten depositions under Federal Rule of Civil Procedure 30(a)(2)(A)(i). Despite making significant progress over the last year, the parties were ultimately unable to reach agreement on all issues and now seek Court intervention.

The parties agree that Plaintiffs should be permitted to take, at a minimum, 20 additional depositions concerning class and named plaintiff merits issues. The only dispute is whether that number should be increased modestly—by six depositions—to account for Plaintiffs' need to develop evidence of knowledge of disparate impact within Goldman Sachs's senior leadership, pursuant to direction from the Court at the January 23, 2020 status conference. Goldman Sachs also asserts that it should automatically be granted the same number of depositions as Plaintiffs, despite having made no showing of need, being in possession of the overwhelming bulk of class merits discovery (making equivalence a non-starter), and in defiance of prior Court orders rejecting Goldman Sachs's requests to conduct absent class member discovery at this stage.

**A.     Plaintiffs Require a Small Number of Depositions Beyond the 20 to which Goldman Sachs Agrees, in Light of Recent Case Developments.**

Through the January 17, 2020 Joint Status Report, the parties informed the Court that they were close to reaching an agreement that Plaintiffs be permitted to take 20 additional depositions in this matter. ECF No. 935 (Jt. Status Rpt.) at 14-15. And on February 11, 2020, Goldman Sachs finally agreed that Plaintiffs should be permitted to take at least 20 additional depositions. Ex. 1 (Feb. 11, 2020 Email from J. Levy). However, a limit of 20 additional depositions for Plaintiffs is no longer appropriate, in light of the Court's reaction to the parties' briefing on *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019).

Specifically, at the January 23, 2020 status conference, the Court considered Plaintiffs' request for discovery regarding evidence of discriminatory animus towards women by senior executives of Goldman Sachs. The Court granted Plaintiffs the opportunity to identify a "discrete group, whether it be five, six, maybe even ten people" who are high-level executives within Goldman Sachs who had knowledge of disparate impact caused by the challenged processes, at which time the Court will consider whether to grant Plaintiffs discovery regarding evidence of discriminatory animus towards women by these individuals. Jan. 23, 2020 Hr'g Tr. at 65:23; *see also id.* at 71:5-10 (The Court: "[I]t's got to relate to the three processes, and if you have such evidence and believe you have such evidence and think that that should then justify the discovery you're seeking from persons that fall within that category, you can make an application by letter in the first instance.").

Given the Court's recent ruling that additional discovery regarding these "five, six, maybe even ten" individuals may be warranted, on February 13, 2020 Plaintiffs proposed a modest increase of the prior proposal of 20 depositions total to 26 depositions total. Ex. 2 (Feb. 13, 2020 Ltr. from M. Lamy). This extension accounts for only the bottom of the range proposed by the Court, and the total still represents a significant reduction from Plaintiffs' April 2019 proposal of 37 depositions. Ex. 3 (Apr. 19, 2019 Ltr. from A. Shaver). And Plaintiffs need these six additional depositions *now*—rather than later, as Goldman proposes—to finish developing the evidence they need to make their application to the Court under *Lenzi*. Goldman is wrong to speculate that Plaintiffs intend to use these six depositions "as fishing expeditions to explore those individuals' states of mind." *Infra* at 11. To the contrary, Plaintiffs need the depositions to further develop the factual record that the Court instructed Plaintiffs they need to support their forthcoming application under *Lenzi*. *See also* Jan. 23, 2020 Hr'g Tr. at 72:13-15 (The Court: "But I think it would do a

disserve to not explore such evidence if it existed in connection with the powers that be that made those decisions."). Unfortunately, Goldman Sachs has been unwilling to recognize that any adjustment is warranted, and is attempting to pretend that numbers discussed (and not yet agreed to) before the January 23, 2020 status conference somehow tie the parties' hands with respect to discovering evidence necessary to satisfy recent Second Circuit authority. *See Lenzi*, 944 F.3d 97.

Importantly, Plaintiffs do not seek to "renege[] on the parties' agreement," as Goldman Sachs suggests. *Infra* at 9. During the February 3, 2020 telephonic conference to which Goldman Sachs refers below, there was no agreement as to number. Plaintiffs confirmed only that they still envision that Plaintiffs' depositions will be split roughly evenly between class and named plaintiff witnesses (give or take a few depositions).[1] When Plaintiffs received Goldman Sachs's offer that the parties reach final agreement at 20 total depositions on February 11, 2020, Plaintiffs responded *only two days later* and requested that this number be increased to 26 to account for the Court's discussion of *Lenzi* at the January 23, 2020 conference. Ex. 2 (Feb. 13, 2020 Ltr. from M. Lamy).

### B. Whatever the Court Decides on Plaintiffs' Depositions, There Is No Basis for a Reciprocal Deposition Order for Goldman Sachs.

Goldman Sachs attempts in this Joint Status Report to make yet another run at the Court's many instructions limiting or prohibiting absent class member discovery at this stage of the case. But there is no basis for Goldman Sachs's request that the 20 or 26 deposition extension that Plaintiffs require automatically be extended to Goldman Sachs as well.

First, the Court has already considered *and rejected* Goldman Sachs's request to take depositions of absent class members, instead limiting Goldman Sachs to deposing the seven

---

[1] Notably, there is no confirmatory letter memorializing Goldman Sachs's account of the telephone call, which Plaintiffs do not share.

4

absent class members identified on Plaintiffs' Initial Disclosures solely for their knowledge of the named plaintiffs' individual claims. *See* Oct. 3, 2019 Hr'g Tr. at 68:4-8 (denying Goldman Sachs's request to take absent class member discovery and ordering that "Goldman can depose the seven unnamed plaintiffs as witnesses for the issues surrounding what they have observed in relation to the plaintiffs, the named plaintiffs"). The Court should not revisit this ruling.

Second, an extension of the limit for Goldman Sachs is not warranted by any discovery need. Goldman Sachs has already deposed all four of the named plaintiffs, and the parties have already stipulated that both parties "shall have the right to depose any witness designated by the opposing Party to testify at trial who has not been previously deposed in this Action." ECF No. 859. Unlike in litigation between two company-parties, all other information regarding the claims in this case is already (and exclusively) in Goldman Sachs's possession.[2] Though Goldman Sachs refers vaguely to potential "third party" depositions below, it has never *even speculated* about which "third parties" it may need to depose to defend its claims, despite Plaintiffs' repeated requests that it make such a showing. And none of the cases Goldman Sachs cites actually stand for the proposition that deposition extensions under Rule 30 should necessarily be reciprocal. *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016), does not even concern discovery; the quoted language concerns application of the same state of mind requirement in assessing different First Amendment claims. *Albany Medical Center v. United States*, No. 1:04-CV-1399 FJS/RFT, 2006 WL 4573714, at *7 (N.D.N.Y. Oct. 17, 2006), is a tax refund suit where

---

[2] *See, e.g.*, Fed. R. Civ. P. 26(b)(1), advisory committee note to 2015 amendment ("Some cases involve what often is called 'information asymmetry.' One party – often an individual plaintiff – may have very little discoverable information. The other party may have vast amounts of information, including information that can be readily retrieved and information that is more difficult to retrieve. In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so.").

5

neither the number nor reciprocity of depositions was at issue; the issue was whether counsel for the medical center plaintiff also represented former medical residents, such that it was improper for the United States to contact them *ex parte* in advance of their depositions.  In *E.E.O.C. v. SVT, LLC*, 297 F.R.D. 336, 348 (N.D. Ind. 2014), the number of depositions was not in dispute; rather, because the EEOC agreed that the defendant-employer should be permitted to depose the 33 individuals represented by the EEOC, the court merely adopted the EEOC's proposal that the presumptive limit be increased from 10 to 30 *so that these depositions could be taken*.  And *Halleen v. Belk, Inc.*, No. 4:16-CV-00055, 2017 WL 1495085, at *2-3 (E.D. Tex. Apr. 26, 2017), concerned the scope of discovery in a FLSA collective action, where the only question was whether defendants would be able to depose 179 opt-in plaintiffs (defendants' proposal) or 10 opt-in plaintiffs (plaintiffs' proposal) and the court took a "middle approach" in permitting 25.  Here, as discussed above, all four named plaintiffs have already been deposed and the Court has already determined that absent class member discovery is not warranted or appropriate.

Third, at no point in the parties' nearly year-long negotiation on this issue did Goldman Sachs ever request *its own* extension of the presumptive limit of ten depositions under Rule 30.  As Goldman now concedes, the parties' many letters and meet and confers on this topic have always—and only—concerned the number and identity of *Plaintiffs'* upcoming depositions.[3]

---

[3] *See, e.g.*, Ex. 4 (Apr. 29, 2019 Ltr. from A. Ostrager) (referring three times to "Plaintiffs' demand" for additional depositions and focusing on the number of depositions Plaintiffs had purportedly taken to date); Ex. 5 (June 11, 2019 Ltr. from A. Ostrager) (same, and making specific arguments about the propriety of "Plaintiffs' . . . proposed deponents"); Ex. 6 (Sept. 3, 2019 Ltr. from A. Ostrager) (responding to "Plaintiffs' proposal to take 27 depositions"); Ex. 7 (Oct. 15, 2019 Ltr. from A. Davidoff) ("respond[ing] to [Plaintiffs'] October 11, 2019 letter . . . proposing that Plaintiffs take an additional '20 depositions total (covering both class and named plaintiff witnesses.'"). In prior correspondence with the Court, the parties have therefore (and correctly) identified this negotiation as one concerning *Plaintiffs'* request for additional depositions.  *See, e.g.*, ECF No. 935 (Jan. 17, 2020 Jt. Status Rpt.) at 23 (Goldman Sachs characterizing this

*See infra* at 11 ("[D]iscussions naturally focused on the number of depositions that 'Plaintiffs' were requesting and that 'Plaintiffs' should be permitted to take."). It was not until February 11, 2020 that Goldman Sachs even *suggested* Plaintiffs' deposition extension should automatically apply to Goldman Sachs as well, a suggestion that Plaintiffs immediately rejected.

The Court should deny Goldman Sachs's entirely unsupported request to revisit its prior orders.

## II. DEFENDANT'S RE-REVIEW OF PRIVILEGE LOGS

On January 23, 2020, the Court ordered Goldman Sachs to "conduct a rereview of any documents on its privilege logs that have not previously been rereviewed" and "produce a revised log or revised logs, identify[ing] whether the entry has been de-designated in full or in part, Bates numbers, and the number of documents reflected in each entry of the logs." Jan. 23, 2020 Hr'g Tr. at 50:25-51:5. On March 11, 2020, Plaintiffs requested that Goldman Sachs provide a deadline by which it would complete this re-review, produce revised logs, and produce any improperly withheld and redacted documents. Goldman Sachs has since informed Plaintiffs that it expects to complete productions of revised privilege logs and improperly withheld or redacted documents by April 24, 2020. *See infra* at 13. However, the parties must complete fact discovery by June 2, 2020 (ECF No. 943, Amended Pre-Trial Schedule), a mere five weeks after Goldman Sachs's proposed production deadline. This is far from enough time for Plaintiffs to meet their discovery obligations, particularly because Plaintiffs are unable to notice and take the depositions of crucial fact witnesses, virtually all of whom appear numerous times on the privilege logs under review, until production of these documents is completed.

---

negotiation as "Plaintiffs' premature demand for additional depositions," and stating that "the parties had been conferring for months about Plaintiffs' request for additional depositions").

7

Goldman downplays the impact of this delay on Plaintiffs' discovery obligations, claiming that "[t]here is always the possibility that a party may obtain additional discovery." *See infra* at 13. But the volume of the productions at issue is far from trivial. Goldman's first rolling production of improperly withheld or redacted documents on March 24, 2020 included 4,607 documents with at least 25,575 pages. That is in addition to the approximately 835 documents with 10,080 pages previously withheld or redacted on the basis of CSI, produced on March 6, 2020 (9,993 pages) and February 27, 2020 (89 pages).

Moreover, while Plaintiffs have no idea what will remain on the revised privilege logs, history indicates it is highly likely that Plaintiffs will not agree that the revised logs are sufficient to confirm that Goldman Sachs has complied fully with its obligations to produce non-privileged materials, and thus further proceedings on these issues may be warranted. Plaintiffs do not want to be prejudiced from raising such concerns merely because Goldman Sachs did not complete this project promptly.

The parties agree that an extension of the fact discovery deadline is warranted. Moreover, due to the coronavirus pandemic, the parties will need to meet and confer on the scheduling of video depositions for the months of May and June 2020 (or beyond). Plaintiffs propose that, once the parties reach agreement on new dates, they submit an amended schedule for the Court's consideration.

## DEFENDANTS' POSITIONS

**I. PLAINTIFFS' REFUSAL TO HONOR THE PARTIES' AGREEMENT REGARDING ADDITIONAL DEPOSITIONS**

On a February 3, 2020 meet-and-confer call, Plaintiffs confirmed that they were seeking to take 20 fact depositions, including current and former Goldman Sachs employees, during merits discovery. On February 11, 2020, Defendants accepted "Plaintiffs' proposal to take

8

up to 20 fact depositions during merits discovery, including all depositions of current and former Goldman Sachs employees, and reserve[d] all rights to object to particular deponents." (Ex. A at 1.)[4] The parties thus reached agreement on Plaintiffs' request for additional fact depositions during merits discovery. Two days later, Plaintiffs reneged on the parties' agreement and demanded "26 depositions total" supposedly "in light of the Court's reaction to the parties' briefing on *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019), . . . at the January 23, 2020 status conference." (Ex. B at 1–2.) But Plaintiffs had confirmed their request for 20 depositions on February 3—*two weeks after* the January 23, 2020 court conference—and Defendants accepted Plaintiffs' proposal on February 11.

The January 23 conference changed nothing about the number of depositions appropriate for this case. At that hearing, the Court considered Plaintiffs motion, based on *Systemax*, seeking reconsideration of the Court's November 25, 2019 Order (ECF No. 888) prohibiting Plaintiffs from obtaining "boys club" evidence as to senior management. (ECF No. 901 at 2.) The Court denied Plaintiffs' motion because "there are issues that . . . distinguish [*Lenzi v.*] *Systemax* and which if we apply here would be directly contrary to the contours of the class that has been certified," stating that it would "consider an application in the future if the plaintiff is able to show evidence of disparate treatment on particular individuals in regard to the processes that are at issue." (Jan. 23 Conf. Tr. at 70:6–15.) The Court cautioned that it was "not saying" it

---

[4] Plaintiffs' claim that "there is no confirmatory letter memorializing Goldman Sachs's account of the telephone call" on February 3, 2020 is puzzling; Defendants sent Plaintiffs such a an email on February 11, 2020, expressly noting that "Plaintiffs confirmed their proposal to seek 20 fact depositions, including current and former Goldman Sachs employees, during merits discovery." (Ex. A at 1.) Plaintiffs responded to that email on February 13 by making a new proposal—but, tellingly, did not dispute Defendants' account of Plaintiffs' position or any later meet and confer discussions. Instead, Plaintiffs have indicated for the first time in this joint status report that they "do not share" Defendants' memorialized understanding.

9

would grant such a motion, only that it would "entertain it" (*Id.* at 70:15–16) if plaintiffs "show evidence of disparate treatment" by "high level" Goldman Sachs employees "who can approve [and] change" the "three processes" (*Id.* at 70:13–14, 70:25–71:12).

Despite Plaintiffs' unwarranted refusal to abide by the parties' agreement, Defendants are willing to stand by it and even offered a slight modification: Plaintiffs may take up to 20 fact depositions during merits discovery (excluding experts), except that, should the Court grant a later application by Plaintiffs to obtain additional "boys club" discovery into senior Goldman Sachs employees—an application that was denied on January 23 and should be rejected again if it is made in the future—Defendants would confer regarding this issue.

Plaintiffs now argue that the parties' agreement, even with this modification, is insufficient because "Plaintiffs need these six additional depositions *now*—rather than later, as Goldman proposes—to finish developing the evidence they need to make their application to the Court under *Lenzi*." (*See supra* at 3.) This is a complete re-write of the Court's January 23 ruling, which required Plaintiffs *first* to come forward with "evidence of disparate treatment" by "high level" Goldman Sachs employees "who can approve [and] change" the "three processes" (Jan. 23, Conf. Tr. at 70:13–14, 70:25–71:6), *after which* the Court would "entertain" an application to obtain evidence as to any supposed "discriminatory animus" by those individuals. (*Id.* at 70:16; 71:3.) There was never any suggestion that depositions of senior management could be used as fishing expeditions to explore those individuals' states of mind. To the contrary, Plaintiffs asserted that supposed evidence of senior management's "knowledge of problems with the processes" might exist in documents produced from Defendants' "privilege log." (*Id.* at 69:15–17.) Plaintiffs can use the thousands of documents produced to them, as well as depositions within the parties' agreed upon limit of 20, to attempt to support their case for additional depositions under *Lenzi* v.

10

*(continued)*
*Systemax*. They are not entitled to additional depositions simply to try to make out a case for yet more depositions.

The increased limit of 20 fact depositions during merits discovery should apply to both sides equally. The parties' negotiations regarding this issue have been driven by Plaintiffs' desire to take additional depositions, and, as a result, those discussions naturally focused on the number of depositions that "Plaintiffs" were requesting and that "Plaintiffs" should be permitted to take. (*See supra* at 2.) But Defendants were never negotiating a solely one-sided increase in the deposition limit which should, as a matter of basic fairness, apply to both parties. *See Heffernan* v. *City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016) ("[I]n the law, what is sauce for the goose is normally sauce for the gander."); *Halleen* v. *Belk, Inc.*, 2017 WL 1495085, at *2 (E.D. Tex. Apr. 26, 2017) (ordering that the parties may take "an equal number of depositions"); *E.E.O.C.* v. *SVT, LLC*, 297 F.R.D. 336, 348 (N.D. Ind. 2014) (authorizing "30 depositions for each party"); *Albany Med. Ctr.* v. *United States*, 2006 WL 4573714, at *6–7 (N.D.N.Y. Oct. 17, 2006) (plaintiff permitted to take "an equal number" of depositions as defendant).

Plaintiffs' only response is to assert that Defendants do not need additional depositions, which supposedly could be used only to obtain "absent class member discovery" beyond the seven absent class member depositions currently permitted by the Court. (*See supra* at 4–5.) But as Defendants have explained repeatedly to Plaintiffs, Defendants may also depose third parties, and, now that the Court has excluded from the class individuals who have released or agreed to arbitrate their claims against Goldman Sachs (*see* ECF No. 983), Defendants may depose those excluded individuals as well. (*See* Ex. C at 2; Ex. D at 2.) In addition, ongoing discovery—including depositions that Defendants will take—may reveal others with relevant information whom Defendants should have the opportunity to depose, or may warrant absent class

member discovery beyond the seven individuals previously addressed by the Court. Plaintiffs' only rejoinder is that Defendants have not disclosed exactly who they will seek to depose, but that should not be a prerequisite for Defendants to obtain equal discovery.

Defendants therefore respectfully ask that the Court adopt the parties' initial agreement permitting both parties to take up to 20 fact depositions during merits discovery, with the slight modification that the parties would confer on additional depositions if permitted by a later order of this Court.

## II. PRIVILEGE LOGS AND RE-REVIEW

Pursuant to the Court's December 16, 2019 Order (ECF No. 910), Defendants submitted proposed redactions to certain documents to the Board of Governors of the Federal Reserve ("Federal Reserve"). On February 14, 2020, the Federal Reserve provided feedback regarding Defendants' proposed redactions, which Defendants then applied in re-reviewing previously withheld documents for Federal Reserve confidential supervisory information. In accordance with the Court's rulings during the January 23 conference, to the extent these documents could be produced with redactions, Defendants produced them to Plaintiffs on a rolling basis and completed such productions on March 6, 2020.

Pursuant to the Court's rulings during the January 23 status conference and the Court's January 27 and February 7, 2020 Orders (ECF Nos. 950, 968), which provided guidance needed to assess privilege and revise privilege logs, Defendants have re-reviewed all documents listed on their merits privilege logs and certain documents listed on their class certification privilege logs. To the extent Defendants no longer assert privilege over certain documents, or documents previously withheld as privileged can be produced with redactions, Defendants have begun producing these documents to Plaintiffs and will continue to do so on a rolling basis. Defendants have also already begun serving revised privilege logs next week and will continue to

12

do so on a rolling basis. Although the Court has not set any deadlines, Defendants expect to complete such productions by April 24, or earlier if possible.

Defendants do not oppose a reasonable, defined extension for fact discovery, nor do they oppose Plaintiffs' proposal that the parties to meet and confer regarding a revised discovery schedule for the Court's consideration, particularly in light of the current public health crisis. (*See supra* at 8.) Defendants do, however, dispute Plaintiffs' characterization of the reason for the need for an extension. Plaintiffs inaccurately attribute the need for an extension to Defendants' privilege review, claiming that they "are unable to notice and take the depositions" of any witnesses who appear on privilege logs. (*See supra* at 7.) But Plaintiffs have received hundreds of thousands of documents after years of discovery, providing more than enough information to identify who they wish to depose. Indeed, Plaintiffs have previously identified to Defendants a number of individuals whom they intend to depose. There is always the possibility that a party may obtain additional discovery, but this does not prevent parties from noticing or taking depositions in the ordinary course. Given the valid and serious reasons for a reasonable extension of discovery in the face of the current public health situation, Plaintiffs' attempts to blame Defendants for the delay are even more misplaced.

*   *   *

The parties thank the Court for its consideration and are available to answer any questions or provide more details at the April 2, 2020 status conference or at the Court's convenience.

13

Respectfully submitted,

| | |
|---|---|
| <u>*/s/ Kelly M. Dermody*</u> | <u>*/s/ Robert J. Giuffra, Jr.*</u> |

| | |
|---|---|
| Adam T. Klein<br>Cara E. Greene<br>Melissa L. Stewart<br>OUTTEN & GOLDEN LLP<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>Telephone: (212) 245-1000<br>Facsimile: (646) 509-2060<br><br>Paul W. Mollica<br>161 North Clark Street, Suite 4700<br>Chicago Illinois 60601<br>Telephone: (212) 809-7010<br>Facsimile: (312) 809-7011<br><br>Kelly M. Dermody (*admitted pro hac vice*)<br>Anne B. Shaver (*admitted pro hac vice*)<br>Tiseme G. Zegeye<br>LIEFF CABRASER HEIMANN &<br>    BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br><br>Rachel Geman<br>250 Hudson Street, 8th Floor<br>New York, New York 10013-1413<br>Telephone: (212) 355-9500<br>Facsimile: (212) 355-9592<br><br>*Attorneys for Plaintiffs* | Robert J. Giuffra, Jr.<br>Sharon L. Nelles<br>Ann-Elizabeth Ostrager<br>Hilary M. Williams<br>Joshua S. Levy<br>Hannah Lonky Fackler<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br><br>Amanda Flug Davidoff<br>Elizabeth A. Cassady<br>SULLIVAN & CROMWELL LLP<br>1700 New York Avenue, N.W. Suite 700<br>Washington, District of Columbia<br>20006-5215<br>Telephone: (202) 956-7500<br><br>Barbara B. Brown (*admitted pro hac vice*)<br>Carson H. Sullivan (*admitted pro hac vice*)<br>PAUL HASTINGS LLP<br>875 15th Street, NW<br>Washington, DC 20005<br>Telephone: (202) 551-1700<br><br>Patrick W. Shea<br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6405<br><br>*Attorneys for Defendants* |

14