**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS, | No. 10-cv-6950-AT-RWL |
| Plaintiffs, | |
| -against- | |
| GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER GRANTING IN PART AND**
**DENYING IN PART PLAINTIFFS' MOTION FOR RELIEF UNDER RULE 23(d) AND**
**GRANTING IN PART AND CONDITIONALLY GRANTING IN PART DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  BACKGROUND ................................................................................... 2

    A.  Goldman strategically delayed enforcing arbitration. ..................................2

    B.  Goldman waited even longer to disclose new, highly misleading Agreements. ..........3

III.  STANDARD OF REVIEW ................................................................ 6

IV.  ARGUMENT .......................................................................................... 7

    A.  The Court should invalidate Goldman's deceptive, post-filing waivers of class participation under Rule 23(d). ...........................................................7

        1.  The Magistrate Judge wrongly concluded that only the Equity Award Agreements merit Rule 23(d) relief .................................................9

        2.  An opt-out remedy does not adequately address the harm. ..............................10

    B.  The Court should deny Goldman's extraordinarily late and unduly prejudicial attempt to upend this certified class action through arbitration. ...............................12

        1.  Goldman waived arbitration against 1,159 absent class members. ...................12

            a.  Goldman waited eight years to make arbitration demands. .................12

            b.  Goldman did not raise arbitration in opposition to certification. ..........13

            c.  Goldman's delay has caused substantial prejudice to plaintiffs. .........16

        2.  The Equity Award Agreements are unconscionable. ........................................17

        3.  Ambiguity regarding the scope of the Equity Award Agreements must be resolved against Goldman. ...........................................................19

V.  CONCLUSION ..................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*151 W. Assocs. v. Printsiples Fabric Corp.*,
   61 N.Y.2d 732 (1984) ........................................................................................... 20

*Am. Pipe & Const. Co. v. Utah*,
   414 U.S. 538 (1974) ............................................................................................... 8

*Balasanyan v. Nordstrom, Inc.*,
   2012 WL 760566 (S.D. Cal. Mar. 8, 2012) .......................................................... 9, 11

*Billingsley v. Citi Trends, Inc.*,
   560 F. App'x 914 (11th Cir. 2014) ........................................................................ 11

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) .......................................................................... 11

*Chen-Oster v. Goldman, Sachs & Co.*,
   325 F.R.D. 55 (S.D.N.Y. 2018) ........................................................................... 6, 17

*Cheverez v. Plains All Am. Pipeline, L.P.*,
   2016 WL 861107 (C.D. Cal. Mar. 3, 2016) .......................................................... 10, 11

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (N.D. Cal. July 8, 2010) ......................................................... 10, 11

*DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*,
   2017 WL 5624310 (D.S.C. Jan. 26, 2017) ........................................................... 11

*DuBois v. Macy's E.*,
   2007 WL 4224781 (E.D.N.Y. Nov. 27, 2007) ...................................................... 7

*ECOR Solutions v. Malcolm Pirnie*,
   2009 WL 2424553 (N.D.N.Y. Jan. 21, 2009) ....................................................... 7

*Edwards v. First Am. Corp.*,
   289 F.R.D. 296 (C.D. Cal. 2012) .......................................................................... 13

*First Options, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................................... 18

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) ............................................................................................. 18, 19

*Guifu Li. v. A Perfect Day Franch.*,
   270 F.R.D. 509 (N.D. Cal. 2010) .......................................................................... 11

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ................................................................................................. 8

*Gutierrez v. Wells Fargo Bank*,
   889 F.3d 1230 (11th Cir. 2018) ............................................................................. 15

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Citigroup, Inc.*,
   376 F.3d 23 (1st Cir. 2004) ............................................................................. 12, 13

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*,
   790 F.3d 1112 (10th Cir. 2015) ....................................................................... 12, 13

*In re Currency Conversion*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ......................................................................... 8, 9

*In re Currency*,
   361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................... 11, 13

*In re Ductile Iron Pipe Fittings*,
   2016 WL 5508843 (D.N.J. Sept. 28, 2016) ............................................................ 14

*In re Sch. Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) ..................................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 1753784 (N.D. Cal. May 9, 2011) .......................................................... 15

*Jensen v. Cablevision Systems*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ...................................................................... 14

*Jimenez v. Menzies Aviation, Inc.*,
   2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ....................................................... 11

*Kleen Prods. v. Int'l Paper*,
   306 F.R.D. 585 (N.D. Ill. 2015) .............................................................................. 15

*Manolov v. Manhattan Cmty. Coll.*,
   952 F. Supp. 2d 522 (S.D.N.Y. 2013) ...................................................................... 6

*Marino v. CACafe, Inc.*,
   2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) ........................................................ 11

*Milbourne v. JRK Residential Am., LLC*,
   2016 WL 1071564 (E.D. Va. Mar. 15, 2016) .................................................... 14, 16

*O'Conner v. Agilant Solutions, Inc.*,
   2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) ..................................................... 9, 11

*Parisi v. Goldman, Sachs & Co.*,
   710 F.3d 483 (2d Cir. 2013) .................................................................................... 16

*PFRMF Inv. Holdings, LLC v. Interpublic Grp. of Companies, Inc.*,
   2012 WL 2849771 (S.D.N.Y. July 10, 2012) ......................................................... 12

*Piekarski v. Amedisys Ill., LLC*,
   4 F. Supp. 3d 952 (N.D. Ill. 2013) .......................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page

*PPG Industries, Inc. v. Webster Auto Parts, Inc.*,
  128 F.3d 103 (2d Cir. 1997) ................................................................. 16, 17

*Ragone v. Atl. Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ...................................................................... 18

*S&R Co. v. Latona Trucking, Inc.*,
  159 F.3d 80 (2d Cir. 1998) ................................................... 12, 13, 16, 17

*Sinnett v. Friendly Ice Cream Corp.*,
  319 F. Supp. 2d 439 (S.D.N.Y. 2004) ...................................................... 18

*Slavkov v. Fast Water Heaters*,
  2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ........................................... 11

*State v. Wolowitz*,
  468 N.Y.S.2d 131 (1983) .......................................................................... 18

*Tomkins v. Amedisys, Inc.*,
  2014 WL 129401 (D. Conn. Jan. 13, 2014) ............................................. 11

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ................................................................................. 17

*Whittington v. Taco Bell of Am.*,
  2011 WL 1772401 (D. Colo. May 10, 2011) ........................................... 15

*Williams v. Securitas Sec. Servs. USA, Inc.*,
  2011 WL 2713741 & ECF No. 35 (E.D. Pa. July 13, 2011) .................... 11

**STATUTES**

28 U.S.C. § 636(b)(1) ...................................................................................... 6

28 U.S.C. § 636(b)(1)(A) ................................................................................ 6

28 U.S.C. § 636(b)(1)(B) ................................................................................ 6

Fed. R. Civ. P. 72(b)(3) ................................................................................... 6

**TREATISES**

2 McLaughlin on Class Actions § 11:1 (14th ed. 2018) ................................. 8

Restatement 2d of Contracts § 206 ............................................................... 19

## I.  __INTRODUCTION__

Pursuant to Federal Rule of Civil Procedure ("Rule") 72, Plaintiffs submit the following objections to the Magistrate Judge's Order granting in part and denying in part Plaintiffs' Motion for Relief Under Rule 23(d) and conditionally granting Goldman Sachs's Motion to Compel Arbitration. ECF No. 983 ("Order"). Respectfully, this Order would upend contract law and incentivize employers to break rules in an effort to limit their liability in certified class actions.

*First*, as to 1,220 post-filing waivers of case participation obtained from class members in Equity Award, Managing Director ("MD"), Private Wealth Advisor ("PWA"), or Separation Agreements, the Magistrate Judge correctly concluded that courts have a duty under Rule 23(d) to protect class members from misleading efforts to excise them after a class action is filed. The Magistrate Judge also correctly concluded that Goldman engaged in such misconduct. The remedy failed, however, in that it: (i) was limited only to those 694 class members with Equity Award Agreements; and (ii) would encourage, not deter, similar misconduct in the future, by allowing a notice program to "cure" Goldman's misconduct. The law is clear that the appropriate remedy for waivers secured through misleading communications is invalidation. If this Court agrees, Goldman's motion to compel arbitration as to 1,194 waivers will be moot.[1]

*Second*, the Magistrate Judge separately granted Goldman's request to exclude 1,850 class members (or 57 % of the class), through a motion to compel arbitration made more than eight years into this litigation and only after this Court granted certification. Plaintiffs seek review of this Order as to 1,159 Agreements[2] for three independent reasons: (i) Goldman waived any right to compel arbitration under PWA, Separation, and Equity Award Agreements at this

---

[1] This figure is less than 1,220 because Goldman did not ultimately move to compel as to all post-filing Agreements.
[2] The 1,159 for which Plaintiffs submit Objections is less than the original 1,850 in the Motion because: (1) Plaintiffs do not now seek review of the Order with respect to 200 MD Agreements; and (2) Plaintiffs previously withdrew opposition to 491 Separation Agreements obtained before the case filing. Notably, the universe of arbitration Agreements at issue here, or for which opposition or objections have been submitted, has no bearing on the number of Agreements impacted by the Rule 23(d) issues.

late stage; (ii) the 694 Equity Award Agreements are unconscionable and thus unenforceable; and (iii) an inherent ambiguity about the scope of the Equity Award Agreements must be resolved against Goldman. The Order should therefore be reversed in part, as set forth below.[3]

## II.   BACKGROUND

### A.   Goldman strategically delayed enforcing arbitration.

More than eight years elapsed between the case filing in 2010 and Goldman's request to arbitrate the claims of 56% of the class. In the meantime, the parties engaged in extensive litigation, including 44 motions resulting in an order; over 100 letters from counsel to the Court; 26 appearances before the Court, including a 2-day class certification hearing; 2 Second Circuit appearances; 33 days of deposition; and 20 expert reports. Lamy Decl. ¶¶ 7-8, ECF No. 757.

Plaintiffs moved for certification on July 1, 2014. ECF No. 247. By then, Goldman had known for three years that Plaintiffs would move to certify a class including all of the members Goldman now seeks to exclude through arbitration. *See* Lamy Decl., Ex. 1 (Jan. 26, 2011 letter memorializing the parties' negotiations regarding "composition of the putative class"). Goldman had ample opportunity in opposing class certification to raise its intent to compel absent class members to arbitration, or to even reference arbitration, yet Goldman has not identified a single instance where it did so. *See* Giuffra Decl., App. F, ECF No. 716.[4] Instead, Goldman made the tactical decision to argue that the size of the full putative class rendered the case unsuitable for class certification. Throughout all five briefs Goldman submitted in opposition to class certification, Goldman referenced the full size of the putative class on 28 separate occasions, including 22 references to the *precise number* of potential class members. *See* Lamy Decl., App.

---

[3] Within this brief, all emphasis within quotations has been added.

[4] Of the purported "references in the record to agreements to arbitrate" Goldman was able to locate, only one is related to certification, and that reference: (1) is buried in a footnote to an expert report *not authored by Goldman*; (2) does not mention any intent to compel arbitration; and (3) concerns only the PWA Agreements.  *See* Giuffra Decl., App. F at 11 (No. 30). To the extent this bears on waiver at all, it would be limited to 187 PWA Agreements.

A. By comparison, and by Goldman's own admission, the word "arbitration" does not appear *even once* in this briefing. Giuffra Decl., App. F.

Following the March 30, 2018 Certification Order, the parties began negotiating class notice. Giuffra Decl., App. F. During this process, Goldman stated *for the first time* its intent to compel arbitration—but solely against class members who had signed MD and Separation Agreements. *Id*. Ultimately, notice was sent to all 3,487 certified class members in November 2018, informing them of the Certification Order and January 14, 2019 opt-out deadline. Ultimately, 165 individuals opted out, fixing the class size at 3,322 members. ECF No. 674 at 1.

On February 5, 2019, Goldman served individual arbitration demands on the 1,850 class members who are the subject of its motion to compel arbitration: 200 are based on MD Agreements, 769 on Separation Agreements, 187 on PWA Agreements, and 694 on Equity Award Agreements. Order at 7-10. Crucially, approximately 1,200 of the demands are based on Agreements obtained after this case was filed in 2010, but Goldman did not identify this pending class action or Class Counsel in a single one of the post-filing Agreements at issue. *See* ECF No. 957, at 2. Further, none of the Agreements informed class members of the underlying factual allegations and claims or that signing would waive their claims in this case or any case like it. *See* Levin-Gesundheit Decl. ¶ 6, ECF No. 719.

**B.**   **Goldman waited even longer to disclose new, highly misleading Agreements.**

Goldman's belated arbitration demands also represent the first time Goldman disclosed the existence of an arbitration clause purportedly affecting rights in this case in the 694 Equity Award Agreements. *See* Giuffra Decl., App. F (reflecting the absence of any reference to the Equity Award Agreements in the case's eight-year history).

Goldman employees execute an Equity Award Agreement to receive the stock they earn as part of their annual compensation. From the start of this litigation, an arbitration clause in the

3

Equity Award Agreements was expressly limited to claims regarding the award itself. Beginning in 2016, however, Goldman buried a new and sweeping arbitration clause covering gender discrimination claims, along with a class action waiver, in the fine print of the electronic "Signature Card" for the awards. Goldman added this new clause at the same time it was attempting to obtain a ruling from this Court that only current employees could represent a Rule 23(b)(2) class for injunctive relief. Order at 10; ECF No. 442. Like the other challenged Agreements, these Signature Cards contain no indication this class action is pending, no description of the facts or claims, and no contact information for Class Counsel. *Id.*

The arbitration clauses in the Equity Award Agreement, on the one hand, and newly on its corresponding Signature Card, on the other, are inherently contradictory. The Equity Award Agreement, which employees must click through to accept, states that "[a]ny dispute, controversy or claim between the Firm and you arising out of or relating to or concerning the [Stock Incentive] Plan or this [Equity] Award Agreement will be finally settled by arbitration."[5] Dias Decl., Ex. 6, ECF No. 723. The provision does not extend to any other employment disputes. *Id.* It is only in the electronic Signature Card—a separate and subsidiary document— that employees do not have to click through, that Goldman buried language purporting to *expand* arbitration beyond the terms of the Equity Award Agreement to "disputes concerning Employment-Related Matters." Levin-Gesundheit Decl., Ex. B.

Goldman further obscured this expansion via an online acceptance process. Employees received an email informing them that "the firm granted you a Year-End Equity-Based Award," and directing them to a website "to review and accept the terms of your compensation." Dias Decl., Ex. 51. The email made no reference to arbitration, let alone a new expanded clause and

---

[5] The Award Agreement references "Section 3.17 of the [Stock Incentive] Plan," a separate document, for further detail on the arbitration agreement.  Section 3.17 contains the same arbitration clause as the Award Agreement." Order at 35.  Both explicitly *limit* arbitration to disputes about the award.

its effect on participation in this pending action. On the Equity Award acceptance website, after clicking through multiple screens, employees were asked to agree to the aforementioned Signature Card. Neither the Equity Award acceptance website nor the Signature Card indicates that employees may be waiving rights in this pending class action. The Signature Card is contained within a small box, and the arbitration clause is not visible.



Pls.' Rule 23(d) Demonstratives at 13, ECF No. 949. Employees are not required to scroll through this Signature Card to click their acceptance. But to find the arbitration clause there, an employee "would need to scroll or print the document, which spans six single-spaced frames." Order at 37. The highlighted image below shows the arbitration clause buried in fine print.



Pls.' Rule 23(d) Demonstratives at 14.

Were an employee to opt to scroll further, she would find that she is also required to arbitrate any and all *non-employment* disputes with any Goldman employee or affiliate, "irrespective of whether such actions or inactions occurred in the ordinary course of employment." Levin-Gesundheit Decl., Ex. B. Employees are also required to arbitrate "irrespective of whether the Firm is or would be a party to any such arbitration." *Id*. Finally, employees must agree to the following non-mutual term: Goldman "may intervene in any arbitration concerning an Employment-Related Matter to which the Firm is not a party if the Firm determines, *in its judgment*, that the Firm has an interest in the outcome of the arbitration." *Id.* That is, Goldman, at its election, may intervene in any *personal* dispute to defend a Goldman affiliate. The Magistrate Judge found that the Equity Award Agreements were affirmatively misleading and procedurally unconscionable. Order at 40.

## III.  STANDARD OF REVIEW

A magistrate judge's dispositive orders are reviewed *de novo*. Fed. R. Civ. P. 72(b)(3). Upon receiving objections, a district court should "arrive at its own, independent conclusions." *Manolov v. Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 526 (S.D.N.Y. 2013). The court may then "accept, reject, or modify," the order "in whole or in part." 28 U.S.C. § 636(b)(1).

Congress has also prescribed that a magistrate may determine pretrial matters pending before the court, but subject to the district court's reversal if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). However, Congress excepted specific civil pre-trial proceedings deemed extraordinarily consequential, including any motion "to dismiss or to permit maintenance of a class action." *Id.* These orders are considered "dispositive," in the language of Rule 72(b), and must be reviewed *de novo*. 28 U.S.C. § 636(b)(1)(B). *See also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 81 (S.D.N.Y. 2018) (reviewing certification *de novo*).

Both motions here are dispositive because, in Congress's words, both concern whether

6

"to permit maintenance of a class action": (1) Plaintiffs' Rule 23(d) motion seeks to *preserve* individuals' membership in a certified Rule 23 class; and (2) Goldman's motion to compel arbitration seeks to *exclude* individuals from the class. *See* Defs.' Mot. at 1, ECF No. 715 ("[Goldman] move[s] this Court for an Order . . . *excluding them from the class*, and compelling them to arbitration."). Indeed, the Magistrate Judge ordered that numerous "individuals are excluded from the class." Order at 87. The Order must therefore be reviewed *de novo*.

The Magistrate Judge suggested that Goldman's motion to compel arbitration is non-dispositive. Order at 2 n.1.[6] While some courts in this Circuit have held that motions to compel arbitration are generally non-dispositive, others have reached the opposite conclusion. *ECOR Solutions v. Malcolm Pirnie*, 2009 WL 2424553, at *1 n.1 (N.D.N.Y. Jan. 21, 2009); *DuBois v. Macy's E.*, 2007 WL 4224781 (E.D.N.Y. Nov. 27, 2007). Further, none of the authorities the Magistrate Judge relied on address the appropriate standard of review *here*, where a motion to compel arbitration collides with the contours of class membership under Rule 23. Indeed, Plaintiffs are aware of no authority addressing the standard of review on a motion to compel arbitration (or a motion for Rule 23(d) relief) occurring *after* a class has been certified (especially given the tardiness of such motions). The Order thus should be considered dispositive and subject to *de novo* review, because it is aimed squarely at whether "maintenance of a class action" may proceed with respect to more than 1,200 members of the class this Court certified.[7] Regardless, Plaintiffs' objections should be sustained under either standard.

IV.   **ARGUMENT**

    A.   **The Court should invalidate Goldman's deceptive, post-filing waivers of class participation under Rule 23(d).**

The Magistrate Judge correctly concluded that the Court has a duty to protect class

---

[6] The Magistrate Judge did not opine on the standard of review with respect to Plaintiffs' Rule 23(d) motion.
[7] *See supra*, n.1, n.2.

members from efforts to excise them from a class action. Order at 78. A key feature of class action litigation is court supervision to ensure fairness to absent class members. This is because, until class certification, "class members are mere passive beneficiaries of the action brought in their behalf," with no "duty to take note of the suit or to exercise any responsibility." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552 (1974). Thus, Rule 23(d) vests the Court with "supervisory authority over a defendant's communications with putative class members." *In re Currency Conversion*, 224 F.R.D. 555, 569 (S.D.N.Y. 2004).

This mandate is broad: "Because of the potential for abuse, a district court has both the *duty* and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "[T]o protect the integrity of the class and the administration of justice," the Court's authority extends to "communications that mislead or otherwise threaten to influence the threshold decision whether to remain in the class," as well as to those that "seek or threaten to influence [one's] choice of remedies." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988); *accord In re Currency*, 224 F.R.D. at 569 ("[E]xerc[ing] supervisory authority over a defendant's communications with putative class members . . . is particularly apt where a defendant attempts to alter the contours of the litigation or the availability of remedies."). When evaluating a defendant's communications with absent class members, a court may consider the timing and purpose of the defendant's communication. It may also consider whether the defendant informed class members of the pending case, accurately summarized the claims and rights at issue, or provided plaintiffs' counsel's contact information—and may determine that the failure to take one of these actions renders a communication misleading. *See, e.g.*, 2 McLaughlin on Class Actions § 11:1 (14th ed. 2018) (collecting cases).

The bedrock principle of Rule 23(d) precedent is that a defendant cannot unilaterally solicit waivers of case participation without providing fair notice of both the pending class action and the waivers' effect on class members' rights. If a defendant breaks this rule, the solution is invalidation of the waiver. *See, infra,* § IV.A.2. A recent decision in this district confirms that "[n]either the agreement nor [] management disclose[s] that [] litigation was pending or that putative plaintiffs would forfeit their right to participate in th[e] case by agreeing to arbitrate disputes," those agreements are "unenforceable" under the court's "supervisory authority." *O'Conner*, 2020 WL 1233749, at *6.

The Agreements at issue here were obtained after the case was filed. They did not inform class members of the pending case, provide a summary of the claims or Class Counsel's contact information, or describe the waiver of rights that the Agreements entailed. Invalidation of *all* of the post-filing Agreements, and not a new class member notice, is the only appropriate remedy.

### 1. The Magistrate Judge wrongly concluded that only the Equity Award Agreements merit Rule 23(d) relief.

The Magistrate Judge concluded that only the Equity Award Agreements warrant relief because the other Agreements were misleading by omission rather than affirmatively misleading. This is a distinction without a difference; in every agreement, Goldman provided incomplete information. Faced with the *same* omissions, other courts have invalidated waivers. *Compare In re Currency*, 224 F.R.D. at 570 ("Regardless of any [class members]' knowledge of this action, Defendants' communication . . . was improper because they sought to alter the status of this litigation and the available remedies."), and *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, *4 n.3 (S.D. Cal. Mar. 8, 2012) ("The imposition of the agreement combined with [defendant]'s failure to disclose the existence of the litigation is sufficient for the court to find an improper communication."), *with* Order at 78 ("[O]mission of any reference to the pending class action" in

any Agreements is "of some concern."), and *id.* ("[E]mployees would not have complete

information on which to base their decision to accept, reject or negotiate unless the agreement

provided information about the class action[.]").The Magistrate Judge also found that the

omissions in the Separation Agreements, PWA Agreements, and MD Promotion Agreements did

not require correction because class members are "well-educated and experienced professionals."

*Id.* at 80. To be sure, employer misconduct may be most egregious when workers are more

vulnerable, but this does not mean employer misconduct is permissible when workers are not.

Rule 23(d) imposes a *duty* to protect the class action mechanism itself, and it is agnostic to class

member education or income. *See, e.g.*, *Cnty. of Santa Clara v. Astra USA, Inc.*, 2010 WL

2724512, *1 (N.D. Cal. July 8, 2010) (invalidating under Rule 23 post-filing releases obtained

from a putative class of medical facility businesses with separate private ownerships and access

to counsel); *Cheverez v. Plains All Am. Pipeline, L.P.*, 2016 WL 861107, *1 (C.D. Cal. Mar. 3,

2016) (invalidating releases under Rule 23(d) sought from, *inter alia*, putative class member

*businesses* affected by an oil spill). Likewise, the Magistrate Judge's speculation that some class

members may have had sufficient notice of the pending class action is immaterial—what matters

is the content of the agreement. This also contradicts this Court's holding that knowledge of the

case cannot be imputed to absent class members. *See* ECF No. 410, 19-20 ("[W]hile the instant

case has attracted some coverage in the business press, it pales in comparison to the publicity of"

other cases, and "individual employees here cannot be charged with . . . monitor[ing] this case.").

Accordingly, the Court should reverse the Order, insofar as it only applied to 694 Equity

Award Agreements, and provide relief for all 1,220 post-filing waivers of case participation.

### 2.    An opt-out remedy does not adequately address the harm.

With respect to the 694 Equity Award Agreements for which the Magistrate properly

found misconduct, he provided a wholly inadequate "remedy" through which affected class

members would merely receive a second notice with an opportunity to *opt out* of arbitration. Order at 83. This remedy trivializes deterrence, and places the onus on absent class members to act to protect their rights threatened by Goldman's misconduct. Instead, at least fifteen courts across the nation and in this District have invalidated releases, arbitration agreements, and class action waivers secured by similar misleading communication with class members. *See, e.g.*, *In re Currency*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights . . . . [T]hose arbitration clauses may not be enforced because [defendants] added them, without notice, after this litigation commenced."); *O'Conner v. Agilant Solutions, Inc.*, 2020 WL 1233749, at *1 (S.D.N.Y. Mar. 12, 2020); *Tomkins v. Amedisys, Inc.*, 2014 WL 129401, at *2 (D. Conn. Jan. 13, 2014) (same).[8] The overwhelming weight of authority demands invalidation.

Class members have just recently completed the certification notice program, with an opportunity to opt out. A second class notice—this time, requiring class members to opt-*in* to case participation by opting *out* of arbitration—will confuse recipients, who had been told they need not do anything to participate in the case, yet would now be told that if they do nothing, they will be excluded. Further, allowing Goldman to excise class members from this litigation with no meaningful penalty will incentivize other defendants to follow in Goldman's footsteps, since there would be no downside to getting caught. *See, e.g.*, *Balasanyan*, 2012 WL 760566, at *3 ("To allow defendants to induce putative class members into forfeiting their right by . . .

---

[8] *See also Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 923-24 (11th Cir. 2014) (same); *Marino v. CACafe, Inc.*, 2017 WL 1540717, *3 (N.D. Cal. Apr. 28, 2017) (same); *DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*, 2017 WL 5624310, *7-8 (D.S.C. Jan. 26, 2017) (same), *aff'd*, 880 F.3d 135 (4th Cir. 2018); *Cheverez*, 2016 WL 861107, *7 (same); *Slavkov v. Fast Water Heaters*, 2015 WL 6674575, *7 (N.D. Cal. Nov. 2, 2015) (same); *Jimenez v. Menzies Aviation, Inc.*, 2015 WL 4914727, *6 (N.D. Cal. Aug. 17, 2015) (same); *Camp v. Alexander*, 300 F.R.D. 617, 627 (N.D. Cal. 2014) (same); *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (same); *Balasanyan*, 2012 WL 760566, *1-2, 4 (same); *Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 WL 2713741, *2 & ECF No. 35 (E.D. Pa. July 13, 2011) (same); *Astra USA, Inc.*, 2010 WL 2724512, *6 (same); *Guifu Li v. A Perfect Day Franch.*, 270 F.R.D. 509, 519 (N.D. Cal. 2010) (same). *See also* Pls.' Rule 23(d) Dems. 3-4.

failing to disclose the existence of litigation would create an incentive to engage in misleading behavior."). All 1,220 post-filing arbitration clauses and releases should be invalidated under Rule 23(d), including the 694 Equity Award Agreements.

> **B.    The Court should deny Goldman's extraordinarily late and unduly prejudicial attempt to upend this certified class action through arbitration.**

> **1.    Goldman waived arbitration against 1,159 absent class members.**

Litigants seeking to compel arbitration must do so promptly. A party waives its right to compel arbitration if it "engages in protracted litigation that results in prejudice to the opposing party." *S&R Co. v. Latona Trucking, Inc*., 159 F.3d 80, 83 (2d Cir. 1998) (citation omitted). Courts consider: "(1) the time elapsed from the commencement of the litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense." *Id.* All three of these factors warrant a finding that Goldman waived its ability to enforce the arbitration clauses and/or releases within the 1,159 PWA, Equity Award, and Separation Agreements.[9],[10]

> **a.    Goldman waited eight years to make arbitration demands.**

"[T]he time elapsed from the commencement of the litigation to the *request* for arbitration" counsels in favor of waiver. *Latona Trucking*, 159 F.3d at 83. Courts routinely find that defendants that wait between one and three years waive the right to arbitrate. *See, e.g.*, *id.* at 82 (15 months between complaint and request to compel arbitration); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115 (10th Cir. 2015) (two years); *In re Citigroup, Inc.*, 376 F.3d 23, 24 (1st Cir. 2004) (three years).

---

[9] As described in note 2, Plaintiffs do not request review as to 691 of the 1,850 Agreements in the Motion.

[10] For the same reasons that Goldman waived the right to compel arbitration, contract law principles dictate that Goldman waived the right to enforce the releases contained in the Separation Agreements, be it in a judicial or arbitral forum.  *See PFRMF Inv. Holdings, LLC v. Interpublic Grp. of Cos.*, 2012 WL 2849771, at *8 (S.D.N.Y. July 10, 2012) (rights obtained by a release can be waived, "including the right to enforce the terms of a release").

Here, Goldman waited much longer. Goldman did not make a request for arbitration against absent class members—under any of the Agreements—until February 2019, more than eight years after this case was filed and after its arguments against class certification had failed. The Magistrate Judge dismissed this "significant time [that had] elapsed since the Complaint was filed" on the basis that Goldman moved to compel arbitration "as soon as it was practicable and possible to do so." Order at 16. But this conflates the first *Latona* factor (which focuses solely on time elapsed) with the second (which focuses on litigation conduct). The first *Latona* factor unquestionably favors denying Goldman's motion to compel arbitration.

### b.    Goldman did not raise arbitration in opposition to certification.

"[T]he amount of litigation (including exchanges of pleadings, any substantive motions, and discovery)" counsels in favor of waiver. *Latona Trucking*, 159 F.3d at 83. Reviewing this factor in the context of class actions, courts consistently hold that a defendant waives the right to arbitrate if it fails to raise any intent to compel arbitration *concurrently with class certification*. *See, e.g.*, *In re Cox*, 790 F.3d at 1119 (holding that defendant waived right to arbitrate by failing to "assert[] its right to arbitrate against the absent class members as a possible defense against class certification"); *In re Citigroup, Inc.*, 376 F.3d at 26-27 (same, by waiting until after class was certified); *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 306-308 (C.D. Cal. 2012) (same); *In re Currency*, 361 F. Supp. 2d at 258 ("This Court rejects Chase's and Citibank's argument that prior to the class certification order, the instant motion to stay the trial of their claims would not have been ripe.").

The Magistrate Judge erred by adopting Goldman's argument that this issue is "jurisdictional." Order at 16. It is not. The proper inquiry is not whether Goldman could have successfully compelled a specific absent class member to arbitration prior to class certification; it is whether Goldman sufficiently preserved its ability to do so in the event of class certification.

13

*Milbourne v. JRK Residential Am., LLC*—a case the Magistrate Judge failed to address—is particularly instructive on this point. There, the court held that the touchstone is not whether absent class members are parties subject to the court's jurisdiction, but whether the defendant "failed to mention the arbitration issue in its opposition to Plaintiffs' motion for class certification." 2016 WL 1071564, at *8 (E.D. Va. Mar. 15, 2016). The court explained that the class certification process is a particularly important moment in the waiver analysis because "[i]t is well-settled that the class certification decision is generally the most important aspect of a class action case," and "[i]f a court certifies the case to proceed as a class action, the case's dynamics change dramatically." *Id.* (internal quotation marks and citations omitted).

Even the cases the Magistrate Judge cited in support of a purported jurisdictional bar support a finding of waiver here, by illustrating the many instances when Goldman could have raised arbitration and did not. Order at 16-18. In *Jensen v. Cablevision Systems*, the defendant raised absent class member arbitration *at class certification*, which is the same standard Plaintiffs advocate here. 372 F. Supp. 3d 95, 125 (E.D.N.Y. 2019). In *In re Ductile Iron Pipe Fittings*, prior to class certification the defendant brought a motion to exclude absent class members subject to arbitration from the class definition, unequivocally putting the plaintiffs and court on notice of an intent to compel arbitration as to absent class members, should the class be certified. 2016 WL 5508843, at *1 (D.N.J. Sept. 28, 2016). And in *Gutierrez v. Wells Fargo Bank*, the court identified numerous steps the defendant took to put both the court and plaintiffs on notice that it intended to compel arbitration against absent class members following class certification, including arguing *in opposition to class certification* that "a lack of numerosity existed because [class members were] bound by enforceable arbitration provisions [and] would have to be excluded from the class," and filing "conditional motions to compel arbitration against the

14

unnamed class members" at the same time as its class certification opposition. 889 F.3d 1230, 1235 (11th Cir. 2018). Goldman took none of these steps, opting instead to rely on the total class size—including every class member Goldman now seeks to exclude—in opposition to class certification. This context is crucial: Goldman used the class size when convenient for opposition, then reversed course and tried to trim it after a class was certified. In the words of the *Gutierrez* court, Goldman's conduct "smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime," and constitutes clear grounds for waiver. *Id.* at 1236.[11]

It is irrelevant that Goldman made generic references to a subset of the Agreements—in discovery or pleadings—prior to class certification, without ever identifying the specific Agreements at issue or the number of class members subject to those Agreements. If anything, this actually underscores Goldman's *knowing* waiver of arbitration at class certification: By acknowledging the existence of arbitration Agreements early in the case, but not seeking to enforce them, and counting individuals purportedly subject to these Agreements to argue unmanageability at certification briefing, argument, and appeal, Goldman made the strategic choice to abandon any effort to exclude these class members from the case if it were to lose at certification. Moreover, as set forth above, Goldman *did not even disclose* the existence of the Equity Award Agreements until after the opt-out period. *See, supra*, § II.B.  Plaintiffs learned of these Agreements only in connection with motions to compel.

The Magistrate Judge placed too much emphasis on the fact that Goldman successfully compelled a prior Named Plaintiff to arbitration earlier in this case, concluding that this decision rendered Plaintiffs "wholly aware of Goldman's strategy to compel arbitration." Order at 21

---

[11] The Magistrate Judge's remaining citations likewise do not support a "jurisdictional" bar.  Neither *Kleen Prods. v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015) nor *Whittington v. Taco Bell of Am.*, 2011 WL 1772401 (D. Colo. May 10, 2011) contained any discussion of the waiver doctrine.  And in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *3-4 (N.D. Cal. May 9, 2011), the court noted that waiver law in the Ninth Circuit is "slightly less clear" and still found the waiver issue to be "extremely close" in circumstances less prejudicial than here.

(citing *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013)). The Parisi matter

concerned only Ms. Parisi's individual MD Agreement. At *most*, this would have put Plaintiffs

on notice that Goldman *may* someday attempt to compel other, unnamed class members to

arbitration pursuant to the provisions of the MD Agreement—but Goldman did not even raise

this argument in the class certification context. Even if the *Parisi* motion weighs against waiver,

it would only apply to 200 MD Agreements, about which Plaintiffs have not sought review.

At bottom, the suggestion that the Court had no jurisdiction over absent class members

prior to certification misconstrues the relevant authority. The inquiry is not jurisdictional; if that

were the beginning and end of the analysis, there would be no law of waiver in class actions.

Rather, the relevant inquiry is *Goldman*'s conduct throughout the litigation and during class

certification in particular. It was *Goldman* that elected to abandon arbitration at class

certification, and *Goldman* that waived its opportunity to compel arbitration.

### c.    Goldman's delay has caused substantial prejudice to plaintiffs.

The Second Circuit's "proof of prejudice" factor also counsels in favor of waiver. *Latona*

*Trucking*, 159 F.3d at 83-84. As the Magistrate Judge acknowledged, this factor refers to

"inherent unfairness," including "delay, expense, or damage to a party's legal position," caused

by a party's delay in compelling arbitration. Order at 21 (quoting *PPG Indus., Inc. v. Webster*

*Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997)).

Here, Plaintiffs and the class face enormous prejudice from Goldman's strategic delay.

Goldman's failure to raise the specter of individual arbitrations *in connection with class*

*certification briefing* alone qualifies as substantial prejudice. *See, e.g.*, *Milbourne*, 2016 WL

1071564, at *8 (holding that "Plaintiffs were significantly prejudiced by not being able to

appropriately address [arbitration] at that time [of briefing class certification]"). Goldman's tardy

actions also would increase costs and delay: "[T]he current litigation has already been ongoing

for 8 years and the parties have already litigated numerous issues that would arise in any new case." *Chen-Oster*, 325 F.R.D. at 84. Indeed, as this Court has recognized, "it would be nonsensical to disaggregate the claims into hundreds or thousands of individual proceedings," because such an action "would only waste 'time, effort, and expense' and increase the likelihood of conflicting outcomes for Plaintiffs." *Id*. This is precisely the prejudice that would result if the Court compels arbitration at this late date, and prevents absent class members from benefiting from the time, effort, and expense of this litigation. Courts have found prejudice in far less extreme circumstances. *See Latona Trucking*, 159 F.3d at 84 (finding prejudice where the moving party sought arbitration after "3 depositions, 19 detailed interrogatories, and the production of more than 2100 pages in documents").

Further, permitting Goldman's late-stage attempt to cut this certified class *in half* would create precisely the sort of "inherent unfairness" that the prejudice factor is designed to prevent. *PPG Indus.*, 128 F.3d at 107. If Goldman's conduct is condoned, then any employer could disseminate an arbitration agreement years after litigation commenced, rely on class size as a barrier to certification with no mention that the class might be reduced through arbitration, and invoke the agreement only if (and after) a class is certified to escape or limit the litigation and avoid the forum or judge involved. This "heads I win, tails you lose" litigation conduct is wrong.

### 2.    The Equity Award Agreements are unconscionable.

If a litigant waives the right to compel arbitration, a court need not address whether the agreement would otherwise be enforceable. *Id.* at 110 n.4. Should this Court decline to find waiver, then it must consider whether the Equity Award Agreements are otherwise unenforceable. The Supreme Court cautioned that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[W]hen determining whether a contract to

arbitrate has been established . . . federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'" *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004) (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Accordingly, state-law grounds for contract revocation apply with full force to arbitration. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). New York's unconscionability doctrine, "which is rooted in equitable principles, is a flexible one," and is therefore "intended to be sensitive to the realities and nuances of the bargaining process." *Id.*

Here, the Magistrate Judge correctly concluded that the Equity Award Agreements are procedurally unconscionable, and Plaintiffs do not object to that portion of the Order. Order 40-44.[12] The Magistrate Judge erred, however, in concluding that the Agreements are not even *minimally* substantively unconscionable, such that they are unenforceable under New York's "sliding scale" approach. *See State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (1983) ("[P]rocedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated[.]").

The Equity Award Agreements are substantively unconscionable because they require employees to arbitrate *any and all non-employment* disputes with *any Goldman employee or affiliate*. The Signature Card defines "Employment-Related Matter" to mean all disputes,

---

[12] The Magistrate found the process by which Goldman secured these Equity Award Agreements to be so troubling that he asked defense counsel, "If your daughter or son worked at Goldman Sachs and was confronted with the equity package and process that started with the waiver as to the plan and then in this other place has it buried, wouldn't you be concerned about whether your daughter or son really knew what they were agreeing to?" Jan. 16, 2020 Hr'g Tr. 68:10-14.

"irrespective of whether such actions or inactions occurred in the ordinary course of employment." Levin-Gesundheit Decl., Ex. B. Employees must also arbitrate "irrespective of whether the Firm is or would be a party," including "if I elect to pursue a claim against another employee," meaning even *personal disputes between employees* must be submitted to arbitration. *Id.* Finally, employees must agree Goldman "may intervene in any arbitration concerning an Employment-Related Matter *to which the Firm is not a party* if the Firm determines, *in its judgment*, that the Firm has an interest in the outcome of the arbitration." *Id.*

Goldman's insertion of itself into employees' personal disputes "is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable." *Gillman*, 537 N.Y.2d at 10. For example, the Agreement would require a Goldman employee to arbitrate civil claims for sexual assault against a fellow employee—even for abuse that did not occur in the workplace—and would give Goldman the right to intervene in the matter if, for example, it deemed the outcome to be a public relations risk. The Magistrate Judge did not disagree that such an outcome would be unconscionable, but instead declared that Plaintiffs' interpretation of these provisions is "dubious." Order at 47. That is, respectfully, not the law. The relevant inquiry is whether the "literal terms" of an agreement are substantively unconscionable. *Gillman*, 537 N.Y.2d at 10. And the "literal terms" of the Equity Award Agreement extends arbitration to such a "grossly unreasonable" swath of personal claims as to render the Agreement substantively unconscionable and unenforceable.

### 3. Ambiguity regarding the scope of the Equity Award Agreements must be resolved against Goldman.

The Equity Award Agreement and Signature Card contain different arbitration clauses. Under common law rules of contract interpretation, this ambiguity must be resolved against Goldman. Restatement 2d of Contracts § 206; *see also 151 W. Assocs. v. Printsiples Fabric*

19

*Corp.*, 61 N.Y.2d 732, 734 (1984) (ambiguities in contract resolved against the preparer).

The Equity Award Agreement's arbitration provision has long been limited to disputes "arising out of or relating to or concerning the [Stock Incentive] Plan or this Award Agreement." Levin-Gesundheit Decl., Ex. A at 9. Beginning in 2016, however, the accompanying Signature Card added a different, more expansive provision covering "all claims arising out of or relating to my employment with the Firm or the termination thereof." *Id.*, Ex. B. In the unlikely event that any class member looked beyond the Equity Award Agreement and Stock Incentive Plan to understand the scope of her agreement to arbitrate, the Signature Card would have, at a minimum, created confusion about the scope of Goldman's arbitration provision. Indeed, the Magistrate Judge agreed that "the specific manner in which Goldman chose to implement the acceptance procedure for the far broader provision of the Signature Card lends itself to potential confusion." Order at 44 n.25. Accordingly, the narrower provision in the Equity Award Agreement is the only clause that should apply to the 694 affected class members. Per the terms of this provision, these class members' discrimination claims are not subject to arbitration, providing an additional ground to reject Goldman's attempt to compel arbitration as to them.

## V.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court: (1) invalidate all 1,220 post-filing waivers of case participation under Rule 23(d); and (2) to the extent not invalidated, deny Goldman's motion to arbitrate and enforce 1,159 Equity Award, PWA, and Separation Agreements for which Plaintiffs submit Objections.

Dated: April 16, 2020            By: _____
                                      */s Kelly M. Dermody*
                                      Kelly M. Dermody

                                 Kelly M. Dermody (admitted *pro hac vice*)
                                 Anne B. Shaver (admitted *pro hac vice*)
                                 Michael Levin-Gesundheit (admitted *pro hac vice*)
                                 Michelle Lamy (admitted *pro hac vice*)
                                 Valerie Comenencia Ortiz (admitted *pro hac vice*)
                                 **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                 275 Battery Street, 29th Floor
                                 San Francisco, CA 94111-3339
                                 Telephone: (415) 956-1000
                                 Facsimile: (415) 956-1008

                                 Rachel J. Geman
                                 **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                 250 Hudson Street, 8th Floor
                                 New York, NY 10013-9592
                                 Telephone: (212) 355-9500
                                 Facsimile: (212) 355-9592

                                 Adam T. Klein
                                 Cara E. Greene
                                 Melissa L. Stewart
                                 Christopher M. McNerney
                                 Michael C. Danna
                                 Sabine Jean
                                 **OUTTEN & GOLDEN LLP**
                                 685 Third Avenue, 25th Floor
                                 New York, NY 10017
                                 Telephone: (212) 245-1000
                                 Facsimile: (646) 509-2060

                                 *Class Counsel*

1981236.2

21