**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS, | No. 10-cv-6950-AT-RWL |
| Plaintiffs, | |
| -against- | |
| GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO GOLDMAN SACHS'S
CONDITIONAL OBJECTIONS TO THE MAGISTRATE JUDGE'S
MARCH 26, 2020 ORDER**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 1

III. STANDARD OF REVIEW ................................................................................ 4

IV.  ARGUMENT ...................................................................................................... 4

   A.   The Order correctly recognizes that the Equity Award Agreements are
        procedurally unconscionable. .......................................................................4

   B.   Rule 23(d) requires the Court to remediate Goldman's misleading Equity
        Award Agreements. ........................................................................................7

        1.   The Federal Arbitration Act does not bar Rule 23(d) relief. ..............7

        2.   Rule 23(d) imposes a duty to remedy misleading communications...................9

        3.   The factual record supports a class-wide Rule 23(d) remedy. .........12

        4.   The Rules Enabling Act does not and cannot divest the Court of its duty
             to remedy misleading communications. ...........................................16

V.   CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................................... 15

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) ................................................................................................... 16

*Amochaev v. Citigroup Glob. Mkts, Inc.*,
    No. 05-1298, ECF No. 195 at 3 (N.D. Cal. Aug. 13, 2008) ...................................... 11

*Balasanyan v. Nordstrome, Inc.*,
    No. 11-2609, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ..................................... 8, 14

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................................................... 5

*Billingsley v. Citi Trends, Inc.*,
    560 F. App'x 914 (11th Cir. 2014) ............................................................................... 8

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) .................................................................................... 10

*Daly v. Citigroup, Inc.*,
    939 F.3d 415 (2d Cir. 2019) ........................................................................................ 8

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ..................................................................................................... 8

*DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*,
    No. 13-2136, 2017 WL 5624310 (D.S.C. Jan. 26, 2017), *aff'd*, 880 F.3d 135 (4th Cir. 2018).. 8

*Gillman v. Chase Manhattan Bank, N.A.*,
    73 N.Y.2d 1 (1988) .................................................................................................. 5, 7

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004) ...................................................................................... 17

*Griffin v. Aldi*,
    No. 16-354, 2017 WL 1957021 (N.D.N.Y. May 11, 2017) ...................................... 11

*Gulf Oil v. Bernard*,
    452 U.S. 89 (1981) .................................................................................................. 7, 13

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ................................................................................................... 16

*Holl v. United Parcel Serv., Inc.*,
    No. 16-05856, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) ................................. 6

*In re Currency Conversion I*,
    224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re Currency Conversion II*,
   361 F. Supp. 2d 237 (S.D.N.Y. 2005) ................................................................. 8, 16

*Jimenez v. Menzies Aviation, Inc.*,
   No. 15-2392, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ................................... 8

*Keena v. Groupon, Inc.*,
   192 F. Supp. 3d 630 (W.D.N.C. 2016) .................................................................... 7

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ........................................................................................ 6

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
   460 U.S. 1 (1983) .................................................................................................... 17

*O'Conner v. Agilant Solutions, Inc.*,
   No. 18-6937, 2020 WL 1233749 (S.D.N.Y. Mar. 12, 2020) .................................... 8

*Piekarski v. Amedisys Ill., LLC*,
   4 F. Supp. 3d 952 (N.D. Ill. 2013) ..................................................................... 8, 12

*Ragab v. Howard*,
   841 F.3d 1134 (10th Cir. 2016) ................................................................................ 5

*Ralph Oldsmobile, Inc. v. General Motors Corp.*,
   No. 99-4567, 2001 WL 1035132 (S.D.N.Y. Sep. 7, 2001) .................................... 10

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ...................................................................................... 17

*Slavkov v. Fast Water Heaters*,
   No. 14-4324, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ..................................... 8

*Tomkins v. Amedisys, Inc.*,
   No. 12-1082, 2014 WL 129401 (D. Conn. Jan. 13, 2014) ....................................... 8

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
   No. 14-8678, 2015 WL 2152703 (S.D.N.Y. May 6, 2015) ...................................... 6

*Williams v. Securitas Sec. Servs. USA, Inc.*,
   No. 10-7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011) ...................................... 8

**STATUTES**

28 U.S.C. § 2072(b) ....................................................................................................... 16

28 U.S.C. § 636(b)(1)(A)-(B) ......................................................................................... 4

**TREATISES**

2 McLaughlin on Class Actions § 11:1 (16th ed. 2019) ............................................... 12

## I.      <u>INTRODUCTION</u>

Plaintiffs hereby respond to Goldman Sachs's "conditional" objections to the March 26, 2020 Order ("Order").  ECF No. 983.  Goldman objects to the Order insofar as it (1) found that Goldman's Equity Award Agreements, which contained two separate and inherently contradictory arbitration clauses, were procedurally unconscionable; and (2) provided a limited opt-out remedy under Federal Rule of Civil Procedure 23(d).  Goldman's objections do not address, and cannot be squared with, the black-letter law recognizing the authority of courts to remedy a defendant's misleading communications with class members under Rule 23(d).  Likewise, the objections cannot erase the critical fact that Goldman "employ[ed] a means of securing" the Equity Award Agreements "that obfuscated the scope of arbitration to which employees assented."  Order at 40.

Goldman's objections and efforts to eviscerate Rule 23(d) are misplaced and should be overruled for the reasons stated below.  Consistent with Plaintiffs' objections, the Court should, invalidate the arbitration agreements contained within misleading post-filing waivers of case participation under Rule 23(d), mooting Goldman's motion to compel arbitration for the majority of agreements at issue.  ECF No. 1005.

## II.     <u>BACKGROUND</u>

Goldman's conditional objections pertain solely to the arbitration clause contained within Goldman's Equity Award Agreements.  As explained more fully in Plaintiffs' Objections, it is undisputed that, beginning in 2016, Goldman buried a new and sweeping arbitration clause covering gender discrimination claims, along with a class action waiver, in the fine print of the electronic "Signature Card" for Equity Award acceptance.  Order at 10.  The Signature Card contains no indication that this class action is pending, no description of the facts allegations or claims, and no contact information for Class Counsel.  *Id.* at 48-49.

The Signature Card conflicts with the Equity Award Agreement itself.  The Equity Award Agreement states that "any dispute, controversy or claim between the Firm and you arising out of or relating to or concerning the [Stock Incentive] Plan or this [Equity] Award Agreement will be finally settled by arbitration."  Dias Decl., Ex. 6 at 9, ECF No. 723.  In other words, the arbitration clause in the Equity Award Agreement itself only applies to disputes about the stock award.  It is in the Signature Card that Goldman buried language purporting to *expand* arbitration to "disputes concerning Employment-Related Matters."  Levin-Gesundheit Decl., Ex. B, ECF No. 719.

Goldman further obscured this expansion via an online acceptance process.  On the Equity Award acceptance website, after clicking through multiple screens, employees were asked to agree to the terms of the Signature Card.  The screen displayed to class members reflects only partial text from the Signature Card, contained within a small box, and the expanded arbitration clause is not displayed.  An image of this screen is shown below.



Pls.' Rule 23(d) Demonstratives at 13, ECF No. 949.

2

To find the conflicting arbitration clause in the box, an employee would need to search for it (though she would not know to look).  As the Order describes, the employee "would need to scroll or print the [Signature Card] document," "which spans six single-spaced frames."  Order at 37.  The highlighted image below shows the arbitration clause buried in fine print.



Pls.' Rule 23(d) Demonstratives at 14.  This Signature Card text, which employees are not required to open or scroll through, conflicts with the much narrower arbitration clause contained within the Equity Award Agreement itself, which, by contrast, employees must open before they are permitted to indicate acceptance of their Equity Award.  In fact, "[a] 'pop-up' error message appears if an employee clicks 'Go to Next Step' . . . without opening [the Award Agreement]."  Dias Decl. ¶ 20.  For the Signature Card with the new, expansive arbitration clause, however, employees were invited to check a box indicating acceptance of the terms laid out in the Equity Award Agreement without the requirement that they open or scroll through the box containing the Signature Card itself.

III.  **STANDARD OF REVIEW**

Goldman misstates the standard of review applicable to the Order.  *See* Goldman's Objections ("Objs.") at 1 n.2, ECF No. 1004.  A magistrate judge's order regarding "maintenance of a class action" is reviewed *de novo*.  28 U.S.C. § 636(b)(1)(A)-(B).  The Order addresses two motions regarding "maintenance of a class action": (1) Plaintiffs' Rule 23(d) motion to preserve individuals' membership in a certified Rule 23 class; and (2) Goldman's motion to exclude individuals from that class.  Therefore, review is *de novo*.  *See also* Pls.' Objs. at 6-7, ECF No. 1005.[1]

IV.  **ARGUMENT**

A.  **The Order correctly recognizes that the Equity Award Agreements are procedurally unconscionable.**

After thoroughly examining the factual record, the Magistrate Judge correctly concluded that the Equity Award Agreements are "procedurally unconscionable due to the way in which Goldman implemented and presented" the underlying arbitration clause.  Order at 40.  Specifically, the Magistrate Judge determined that Goldman "employ[ed] a means of securing agreement that obfuscated the scope of arbitration to which employees assented," in a manner that runs afoul of New York contract law.  *Id*.  Nothing in Goldman's Objections warrants a reversal of this conclusion.

First, the Magistrate Judge did not, as Goldman suggests, "overlook[] that all Goldman Sachs professionals who accepted Equity Award Agreements . . . 'represent[ed]' and 'warrant[ed]' that they had in fact 'read and understood' all terms incorporated into that Agreement."  Objs. at 2.  This objection requires that the Court ignore the actual language of the Magistrate Judge's opinion.  The Magistrate Judge explicitly considered that "Goldman required

---

[1] Notably, earlier in this case, Goldman argued that *all* motions to compel arbitration, whether or not they concern maintenance of a class action, are reviewed *de novo*.  ECF No. 76 at 10.

employees to acknowledge that they had reviewed the provisions of the Signature Card." He

then concluded that this fact is irrelevant because "the particular transgression here is that

Goldman did not indicate in any way to employees that the scope of the arbitration provision in

the Signature Card's terms was far broader than the limited arbitration provision associated with

the equity program agreements." Order at 43. Such deceptive conduct sets this case apart from

*Gillman v. Chase Manhattan Bank, N.A.*, where "the claim of procedural unconscionability [was]

based solely on . . . testimony that [the plaintiff] was unaware of the terms in the security

agreement." 73 N.Y.2d 1, 11 (1988). The Magistrate Judge therefore correctly concluded that

Goldman's conduct—which amounted to a misleading "bait-and-switch"—rendered the Equity

Award Agreements procedurally unconscionable. *See also, e.g.*, *Berkson v. Gogo LLC*, 97 F.

Supp. 3d 359, 385 (E.D.N.Y. 2015) ("Traditional contract law recognizes . . . unconscionability

as [a] contract defense[] to bait-and-switch tactics.") (citation omitted); *Ragab v. Howard*, 841

F.3d 1134, 1138 (10th Cir. 2016) (affirming denial of motion to compel arbitration where "the

conflicting details in the multiple arbitration provisions indicate that there was no meeting of the

minds with respect to arbitration"). Tellingly, Goldman's brief does not even mention, much

less address, this principled basis for the Magistrate Judge's finding.

  Second, and for similar reasons, Goldman is wrong to insist that class members' degree

of education or experience has any bearing on the Magistrate Judge's finding of procedural

unconscionability. Objs. at 8. While the *Gillman* court did identify experience and education as

*among* the "matters" a court may consider, it did not establish a rule that procedural

unconscionability can only be found where a party claims to lack one or both. *Gillman*, 73

N.Y.2d at 10-11. Moreover, as the Magistrate Judge acknowledged, this *Gillman* consideration

has been effectively written out of existence in subsequent cases. *Cf.* Order at 41, n.24 (noting

that Plaintiffs do not "claim that a lack of experience or education prevented them from understanding the agreements" and citing *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-8678, 2015 WL 2152703, at *13 (S.D.N.Y. May 6, 2015), where an arbitration agreement was enforced "despite plaintiffs' claims that they could not read English and did not understand the agreements' implications").  It would no doubt be advantageous for Goldman to create a rule requiring a lack of experience and/or education to trigger procedural unconscionability.  But that is simply not the law.

Finally, Goldman incorrectly implies that the Magistrate Judge's finding of procedural unconscionability rests upon the fact that the Equity Award Agreements were executed in an "electronic context."  Objs. at 8.  Plaintiffs did not argue—and the Magistrate Judge did not hold—that the Equity Award Agreements are unconscionable because they involved an electronic (or "clickwrap") signature.  Rather, the Agreements are unconscionable because the manner through which Goldman obtained them—by burying a new contract term, and expanding arbitration from stock-related disputes to all employment disputes, inside a separate and subsidiary Signature Card which employees are not directed to open for additional material terms—"obfuscated the scope of arbitration to which employees assented."  Order at 40.  Such conduct would be unconscionable whether it occurred in electronic or paper form.  Goldman's authorities declining to invalidate agreements solely on the basis that they are "clickwrap" (*i.e.* electronic acceptances) are therefore inapposite.  *See* Objs. at 8-9, n.5; *cf. Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (enforcing electronic arbitration agreement where there was no bait-and-switch, the "entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service"); *Holl v. United Parcel Serv., Inc.*, No. 16-05856, 2017 WL 11520143, at *5 (N.D. Cal. Sept. 18, 2017)

(enforcing electronic arbitration agreement where the plaintiff unambiguously assented to a single "Terms and Conditions" containing a single arbitration clause); *Keena v. Groupon, Inc.*, 192 F. Supp. 3d 630, 636 (W.D.N.C. 2016) (same).

In short, the Magistrate Judge correctly concluded that this case has something *Gillman* was missing: "deception." *Gillman*, 73 N.Y.2d at 11. This Court should therefore affirm the Magistrate Judge's conclusion that the Equity Award Agreements are "tainted by procedural unconscionability." Order at 44.[2]

**B.    Rule 23(d) requires the Court to remediate Goldman's misleading Equity Award Agreements.**

Goldman attacks the Magistrate Judge's Rule 23(d) remedy for its misleading Equity Award Agreements on four fronts. First, Goldman argues that the Federal Arbitration Act ("FAA") precludes Rule 23(d) relief. Second, Goldman argues that courts have no authority under Rule 23(d) to order an opt-out remedy for misleading communications, or even if they do, Plaintiffs should have introduced individual facts to support such a remedy. Third, Goldman argues there is no factual record warranting relief here. Fourth, Goldman argues that the Rules Enabling Act bars Rule 23(d) relief. As explained below, all of Goldman's arguments are legally unsupported and must fail.

**1.    The Federal Arbitration Act does not bar Rule 23(d) relief.**

The FAA does not prohibit courts from granting relief under Rule 23(d). As the Supreme Court held in *Gulf Oil*, courts have both a "*duty* and the broad authority to exercise control over a class action." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981) (emphasis added). There is no arbitration exception to the Federal Rules of Civil Procedure.

---

[2] However, Goldman's motion to compel arbitration as to the Equity Award Agreements will be moot if the Court separately invalidates the arbitration clauses contained within them as improper class member communications under Rule 23(d).

Given this, it is unsurprising that the cases Goldman cites for its proposition that the FAA precludes courts from regulating communications with class members do not actually support its argument, or even engage at all with Rule 23(d). Goldman quotes *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), not for any Second Circuit principle regarding the relationship between the FAA and Rule 23(d), but for its direct quotation of the Supreme Court's opinion in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). Objs. at 9-10. In *Byrd*, the Supreme Court explained that, per the FAA, courts should generally enforce otherwise valid arbitration agreements. 470 U.S. at 218. This is true, but irrelevant. An arbitration agreement is not immune to a finding of misleading conduct under Rule 23(d) simply because it is an arbitration agreement. Otherwise, there would not be a mountain of precedent invalidating arbitration provisions under Rule 23(d). *See O'Conner v. Agilant Solutions, Inc.*, No. 18-6937, 2020 WL 1233749, at *1 (S.D.N.Y. Mar. 12, 2020) (invalidating post-filing arbitration agreements under Rule 23(d)); *In re Currency Conversion II*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (same); *Tomkins v. Amedisys, Inc.*, No. 12-1082, 2014 WL 129401, at *2 (D. Conn. Jan. 13, 2014) (same); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 923-24 (11th Cir. 2014) (same); *DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*, No. 13-2136, 2017 WL 5624310, at *7-8 (D.S.C. Jan. 26, 2017) (same), *aff'd*, 880 F.3d 135 (4th Cir. 2018); *Slavkov v. Fast Water Heaters*, No. 14-4324, 2015 WL 6674575, at *7 (N.D. Cal. Nov. 2, 2015) (same); *Jimenez v. Menzies Aviation, Inc.*, No. 15-2392, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (same); *Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (same); *Balasanyan v. Nordstrome, Inc.*, No. 11-2609, 2012 WL 760566 at *1-2, 4 (S.D. Cal. Mar. 8, 2012) (same); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 WL 2713741, at *2 & ECF No. 35 (E.D. Pa. July 13, 2011) (same).

In a pattern that plays out throughout its Objections, Goldman completely ignores the overwhelming weight of authority, likely because it contradicts its (legally unsupported) argument.

### 2. Rule 23(d) imposes a duty to remedy misleading communications.

This Court should reject Goldman's attempt to rewrite Rule 23(d) to eviscerate the Court's authority to fulfill the Court's own *duty* under Rule 23(d) to protect class members from misleading communications like those at issue here.  Specifically, Goldman argues that the Magistrate Judge could not provide *any* relief under Rule 23(d) to correct Goldman's effort to excise class members from this case because Rule 23(d) "is aimed exclusively at 'procedural matters.'"  Objs. at 10 (quoting Fed. R. Civ. P. 23(d)(1)(E)).  Goldman suggests that the only remedy a court could impose to address the misconduct the Magistrate Judge identified here is a "notice to some or all class members," providing individual opportunities "to intervene and present claims or defenses."  *Id.* at 10-11.  This, too, is a novel argument, unsupported by case law.  It again requires that the Court ignore the wealth of authorities cited by Plaintiffs and the Magistrate Judge.

To be sure, Rule 23(d) is "procedural," insofar as it is found within the Federal Rules of Civil *Procedure*.  That does not render it unenforceable.  At adoption, the Federal Rules Advisory Committee described Rule 23(d) as "concerned with the *fair* and efficient conduct of the action."  Fed. R. Civ. P. 23(d) advisory committee's note (1966) (emphasis added).  Consequently, Rule 23(d)'s mandate—to ensure fairness in the litigation of a class action—is broad.  Rule 23(d) authorizes courts, without qualification, to "impose conditions on the representative parties."  Fed. R. Civ. P. 23(d)(1)(C).  Further, under Second Circuit precedent, Rule 23(d) is construed "liberally" to accomplish the goal of "fair and efficient conduct," with such authority extending—as applicable here—to determination of whether to permit a class

9

member to leave a certified class action. *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir. 1990). Thus, Rule 23(d) undoubtedly vests in this Court the authority—and, in fact, duty—to remedy Goldman's attempt to unfairly exclude from this certified class action the 694 class members who received Equity Awards. As noted above, Goldman does not so much as acknowledge the chorus of authorities providing such relief and invalidating arbitration agreements under Rule 23(d).

By contrast, Goldman's suggestion that the Court may only authorize notice to class members of an opportunity to present individualized evidence of confusion or coercion is radical and not found anywhere in the case law. Goldman cites two cases, but neither involved an attempt by a defendant to exclude class members from a certified class action. Instead, both Rule 23(d) orders were issued prior to class certification, and both addressed wholly different conduct. *Ralph Oldsmobile, Inc. v. General Motors Corp.* concerned a release of claims offered not to individuals, but to Oldsmobile dealerships—*i.e.*, incorporated commercial entities. No. 99-4567, 2001 WL 1035132 (S.D.N.Y. Sep. 7, 2001). The lawsuit alleged that General Motors had not properly reimbursed the dealerships for warranty repairs. *Id.* at *1. While the case was pending—and prior to class certification—GM announced plans to discontinue the Oldsmobile line and offered dealerships "transition payments" in exchange for a "termination and release agreement." *Id.* GM had not informed the dealerships that the warranty class action was pending, and the court found that remedial action was required under Rule 23. *Id.* at *5. When discussing what form of relief was appropriate, the court explicitly noted that only 15 releases had been executed and no class had been certified; accordingly, an individualized notice and an opportunity for these *independent businesses* to negotiate the contract was appropriate. *Id.* at *6. Here, on the other hand, Goldman deployed misleading communications in an attempt to

10

exclude hundreds of *current employee* class members *after* class certification.  Goldman's

conduct frustrates the purpose of a class action and thus warrants a different response.

      Likewise, the court in *Griffin v. Aldi, Inc.* faced conduct of far lesser consequence to the

proper functioning of a class action.  No. 16-354, 2017 WL 1957021 (N.D.N.Y. May 11, 2017).

There, counsel for the plaintiffs—within months of filing suit—learned that the defendant

grocery chain was offering departing store managers severance packages waiving their claims

within the lawsuit.  *Id.* at *1.  It also appears that fewer than 20 agreements were at issue.  *Id.* at

*2.  After the plaintiffs brought the matter to the defendant and the court's attention, the

defendant agreed—prior to Rule 23 class certification—that all severance agreements going

forward would carve out the lawsuit.  *Id.* at *6.  Crucially, neither *Ralph Oldsmobile* nor *Griffin*

holds that a court is somehow limited only to such remedies, as Goldman would have the Court

believe.  The fact that two courts ordered lesser remedies as a result of lesser (and earlier)

misconduct by a defendant does not limit the Court's ability here to remedy Goldman's much

more egregious acts.

      Goldman is also wrong to suggest that absent class members are *individually* required to

file declarations on the public docket—at potentially great expense to their professional

reputations—stating they were misled by Goldman's underhanded arbitration gambit.  *Cf.* Objs.

11.[3]  A court's focus in Rule 23(d) cases is properly on the conduct of the party issuing

---

[3] Further, class members reasonably fear retaliation not only from Goldman, the most prestigious
investment bank on Wall Street, but also other potential or current employers in finance who are
connected to Goldman, as Goldman clients, alumni, or otherwise.  This is unsurprising in an
industry where perceived loyalty—even years after leaving a firm—is a precious commodity
with silence its reserve currency.  *See Amochaev v. Citigroup Glob. Mkts, Inc.*, No. 05-1298,
ECF No. 195 at 3 (N.D. Cal. Aug. 13, 2008) (holding that because the plaintiffs "continue to
work in the *financial services industry*, they have sufficiently described reasonable fears of
workplace retaliation" for coming forward to vindicate claims) (emphasis added); Vivian Norris,
*The Omerta Surrounding Goldman Sachs*, Huffington Post (Nov. 3, 2012),

misleading communications, and not on the individual circumstances of each recipient.  *See, e.g.*, *Piekarski*, 4 F. Supp. 3d at 956 (finding the defendant's communication was "likely to confuse and mislead potential class members and prevent them from participating in this litigation" without referencing evidence of individual class member confusion).  Requiring individual class member testimony at this stage—from potentially hundreds of people—is contrary to both class action practice generally and the two-phase, staged process mandated under *Teamsters v. United States* for class Title VII claims.  431 U.S. 324 (1977).

The rights of 694 class members who already have chosen to participate in this class action are at issue.  Goldman's argument turns class actions upside down and should be rejected.

### 3. The factual record supports a class-wide Rule 23(d) remedy.

When evaluating a defendant's communications with absent class members, courts consider the timing, nature, and purpose of the defendant's communication and whether the defendant informed class members of the pending case, accurately summarized the claims and rights at issue, or provided plaintiffs' counsel's contact information.  A court may determine that any one of these factors renders a communication misleading.  *See, e.g.*, 2 McLaughlin on Class

---

https://m.huffpost.com/us/entry/us_1852253 (in attempting to author a book and direct a documentary about Goldman, finding that "a kind of silence or 'omerta'" exists because "[e]ither someone had once been part of [Goldman] and would not speak . . . or they did not work with Goldman Sachs — but might need to one day," and stating that even the "former head of the European Central Bank . . . simply would not speak of [Goldman] on camera"); Katie Brenner, *Who's who in the Goldman Sachs power struggle*, Fortune (Apr. 16, 2012), https://fortune.com/2012/04/16/whos-who-in-the-goldman-sachs-power-struggle/ ("Former Goldman employees" describe "what is known on the Street as the Goldman Way—a strict cone of silence that surrounds the firm."); Rebecca Jarvis, *Critique of Goldman Sachs questioned, applauded*, CBS News (Mar. 15, 2012), https://www.cbsnews.com/news/critique-of-goldman-sachs-questioned-applauded/ (describing a "Rule of Silence" pervading Goldman Sachs); Jake Bernstein, *Margin Call: A Small Movie Unveils Big Truths About Wall Street*, ProPublica (Nov. 23, 2011), https://www.propublica.org/article/margin-call-a-small-movie-unveils-big-truths-about-wall-street ("Journalists investigating the Street have to pierce a code of omertà . . . .  No one wants to have the reputation of being a snitch in an industry where *hiring and bonuses are based on relationships* as much as quarterly results.") (emphasis added).

Actions § 11:1 (16th ed. 2019) (collecting cases).  Goldman's claim that the Magistrate Judge acted without a "specific record" showing entitlement to Rule 23(d) relief is incorrect.  Objs. at 10 (quoting *Gulf Oil*, 452 U.S. at 102).

At the outset, it is important to recognize the context of the "specific record" instruction in *Gulf Oil*.  As the Magistrate Judge aptly summarized, *Gulf Oil* concerned an attempt by a defendant to obtain an order from the court imposing "a complete ban on all [pre-class-certification] communications concerning the class action" between plaintiffs' counsel and a putative class of African-American employees bringing race discrimination claims.  Order at 50-51 (quoting *Gulf Oil*, 452 U.S. at 94-95).  The defendant's aim was to muzzle plaintiffs' counsel from advising putative class members on whether to accept settlement agreements with the defendant.  *Id.* at 92.  The relief sought was extreme: a complete ban on speech.  Thus, the Supreme Court made clear that, to avoid First Amendment concerns, a Rule 23(d) order prohibiting communication should be "carefully drawn," "limit[ing] speech as little as possible, consistent with the rights of the parties under the circumstances."  *Id.* at 102.  Here, Plaintiffs have not sought to entirely limit Goldman's speech.  Instead, Plaintiffs have sought Rule 23(d) relief to correct Goldman's misleading solicitations of waivers of case participation from class members presented without the required notice of the rights they are waiving.  A class-wide Rule 23(d) remedy in this case does not implicate the First Amendment concerns animating *Gulf Oil*.

Moreover, the undisputed factual record amply supports a class-wide Rule 23(d) remedy.  Goldman seeks to enforce approximately 1,200 waivers of case participation it obtained from class members after this case was filed in 2010.  In not a single one of the post-filing Agreements at issue did Goldman identify this pending class action or Class Counsel.  None of the Agreements informed class members of the underlying factual allegations and claims or that

signing would waive their claims in this case or any case like it.  Levin-Gesundheit Decl. ¶ 6.

This is precisely the "specific record" that supports a Rule 23(d) remedy.  *See, e.g.*, *In re*

*Currency Conversion I*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004) ("Regardless of any [class

members]' knowledge of this action, Defendants' communication . . . was improper because they

sought to alter the status of this litigation and the available remedies."); *Balasanyan*, 2012 WL

760566, at *4 n.3 ("The imposition of the agreement combined with [defendant]'s failure to

disclose the existence of the litigation is sufficient for the court to find an improper

communication.").

    The context in which the misleading communications were made also supports a Rule

23(d) remedy.  First, the timing and purpose of the second and more expansive arbitration clause

in the Equity Award Agreements is suspect.  Goldman added this new clause at the same time

that it was attempting to obtain a ruling from this Court that only current employees could

represent a Rule 23(b)(2) class for injunctive relief.  Order at 10; ECF No. 442.  Meanwhile,

Goldman sought to ensure that current employees waived their right to participate in the class

action, without the knowledge of Class Counsel or supervision of the Court.

    Second, the newly-expanded arbitration term in the Signature Card of the Equity Award

Agreements was secured by means of Goldman's unconscionable conduct.  *See, supra*, Section II

(summarizing the tainted process by which Goldman obtained the Equity Award Agreements).

As the Magistrate Judge correctly found, these facts support a broadly applicable Rule 23(d)

remedy for *all* class members who received Equity Awards.  Order at 83.  This is a class action,

and a class remedy (not individual-by-individual relief) is appropriate.

    Finally, even if true (for the sake of argument), Goldman's claim that "all professionals

had 'multiple means available to learn' about the case" does not change the outcome here.  Objs.

at 11 n.6.  Goldman alludes to generic litigation hold emails and media articles.  But the emails did *not* inform Class Members that their rights may be affected by this lawsuit.  The subject line of the initial litigation hold—"Document Retention"—does nothing to alert any class member to the personal importance of the subject.  Yanagisawa Decl., Ex. 1, ECF No. 764.  The text in the body of the email references "three former employees" who "sued the firm asserting claims concerning their"—not *your*—"employment."  *Id.*  Plaintiffs Cristina Chen-Oster and Shanna Orlich are identified by name, but, critically, they are *not* identified as putative representatives of other employees or other email recipients, and the word "class" does not appear in the initial email or any of the seven document retention notices emails to various recipients from 2010 to 2016.  *See* Yanagisawa Decl., Exs. 1-8.  In no email is there a reference to the case name, number, or jurisdiction, and counsel for the plaintiffs are never identified.  *Id.*  Simply put, these routine document retention emails at the start of the case cannot be construed as informing Class Members of their rights at stake in a pending class action.

Nor did the Magistrate Judge "misconstrue[]" the press coverage of this case, which Goldman claims supports an inference of "constructive notice."  Objs. at 11 n.6.  "Earlier in this case, Judge Francis issued an order . . . holding that there is no basis for imputing constructive knowledge to putative Class Members on the basis of public information or media coverage of this case."  Order 79 at n.49.  The Magistrate Judge correctly concluded that "Goldman has not presented any basis to revisit that holding."  *Id.  See also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552 (1974) (holding that, until class certification, "class members are mere passive beneficiaries of the action brought in their behalf," with no "duty to take note of the suit or to exercise any responsibility").  While Goldman submitted 114 articles to the Court, only 12 articles published in non-legal media outlets between 2010 and 2019 mentioned class positions

and divisions.  Giuffra Decl. at pages 117-24, ECF No. 716.

In sum, the factual record supports a class-wide Rule 23(d) remedy.

> ### 4. The Rules Enabling Act does not and cannot divest the Court of its duty to remedy misleading communications.

Neither the Order nor the relief Plaintiffs seek runs afoul of the Rules Enabling Act.  *Cf.*

Objs. at 12.  The Rules Enabling Act states that the Federal Rules of Civil Procedure "shall not

abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  But there is no collision

between the FAA or New York contract law, on the one hand, and Rule 23(d), on the other.  As

the court succinctly put it in *In re Currency Conversion II*:

> [Defendants] advance the new argument that their arbitration agreements embody
> substantive contractual rights that cannot be impaired by Rule 23.  In essence,
> they argue that the Rules Enabling Act, 28 U.S.C. § 2072, limits the Court's
> authority to restrict enforcement of the arbitration clauses.  This Court disagrees.
> . . .  A finding that [Defendants] did not give fair notice of this litigation to
> cardholders does not restrict [Defendants'] contractual rights under Delaware law.
> [Defendants are] free to amend [their] revolving credit agreements under
> Delaware law, so long as [their] actions do not impair the integrity of this
> litigation.

*In re Currency Conversion II*, 361 F. Supp. 2d at 255-56.  *See also Hanna v. Plumer*, 380 U.S.

460, 473-74 (1965) ("To hold that a Federal Rule of Civil Procedure must cease to function

whenever it alters the mode of enforcing state-created rights would be to disembowel either the

Constitution's grant of power over federal procedure or Congress' attempt to exercise that power

in the Enabling Act.").

Likewise, Goldman again provides no case law support for its radical Rules Enabling Act

argument.  The Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*,

570 U.S. 228 (2013), makes no reference to improper communications or Rule 23(d) at all.

*Italian Colors* simply holds that the existence of Rule 23 does not prevent enforcement of a class

action waiver contained within an arbitration agreement in an antitrust class action.  *Id.* at 234-

35.  Thus, the Magistrate Judge correctly observed that "Goldman's reliance on *Italian Colors* is misguided."  Order at 86.[4]

Goldman misleadingly represents *Seijas v. Republic of Argentina*, 606 F.3d 53 (2d Cir. 2010), as instructing that "when a court orders Rule 23(d) relief, as here," it cannot be "'disconnect[ed]' from substantive law," such that "it 'offends the Rules Enabling Act.'"  Objs. 14.  *Seijas* states no such thing.  Rule 23(d) is not referenced in the opinion whatsoever.  In *Seijas*, which involved bondholder litigation against the government of Argentina, the Second Circuit instead took issue with a failure to employ "appropriate procedures to ensure that the damages awards roughly reflect[ed] the aggregate amount owed to class members," finding that this failure "enlarge[ed] plaintiffs' rights."  606 F.3d at 58-59.  Simply put, the Rules Enabling Act is not a "Rules Disabling Act."  The Court's authority under Rule 23(d) is clear.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court overrule Goldman's objections to the Magistrate Judge's March 26, 2020 order.

---

[4] Similarly, Goldman cites *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) for the uncontroversial proposition that there is "a body of federal substantive law of arbitrability," and *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004), for basic principles of contract formation.  Objs. at 13.  These principles are not in dispute, but they are also immaterial because there is no inherent collision between Rule 23(d) and Goldman's contract rights here.

17

Dated: April 30, 2020          By:
                               _/s Kelly M. Dermody_
                                   Kelly M. Dermody

                               Kelly M. Dermody (admitted *pro hac vice*)
                               Anne B. Shaver (admitted *pro hac vice*)
                               Michael Levin-Gesundheit (admitted *pro hac vice*)
                               Michelle Lamy (admitted *pro hac vice*)
                               Valerie Comenencia Ortiz (admitted *pro hac vice*)
                               **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                               275 Battery Street, 29th Floor
                               San Francisco, CA 94111-3339
                               Telephone: (415) 956-1000
                               Facsimile: (415) 956-1008

                               Rachel J. Geman
                               **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                               250 Hudson Street, 8th Floor
                               New York, NY 10013-9592
                               Telephone: (212) 355-9500
                               Facsimile: (212) 355-9592

                               Adam T. Klein
                               Cara E. Greene
                               Melissa L. Stewart
                               Christopher M. McNerney
                               Michael C. Danna
                               Sabine Jean
                               Maya Jumper
                               **OUTTEN & GOLDEN LLP**
                               685 Third Avenue, 25th Floor
                               New York, NY 10017
                               Telephone: (212) 245-1000
                               Facsimile: (646) 509-2060

                               *Class Counsel*

1984019.9

18