**Lieff**
**Cabraser**
**Heimann &**
**Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

May 5, 2020

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court
  for the Southern District of New York
500 Pearl Street,
New York, NY 10007-1312

        RE:    *Chen-Oster, et al. v. Goldman Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

        Plaintiffs respond to Goldman Sachs's April 28, 2020 letter in advance of the parties' May 6 teleconference with the Court.  Goldman's Letter, ECF No. 1015.  As explained below, Plaintiffs respectfully submit that it is appropriate and necessary, under principles of both professional responsibility and class action representation, for the attorney-client relationship between Class Counsel and those members of the certified class who received Equity Awards to remain unencumbered at this time. Accordingly, Plaintiffs ask that the Court not restrain Class Counsel's ability to provide legal advice to clients concerning their rights in this litigation.

        As court-appointed Class Counsel with the attendant ethical responsibilities that entails, we are obligated to communicate with our clients about what it means to exclude oneself from this case and pursue an individual arbitration instead.  Foundational to the attorney-client relationship is the principle that "attorneys must zealously advocate for their clients."  *Bill Birds, Inc. v. Stein Law Firm, P.C.*, No. 19, 2020 WL 1521903, at *3, – N.E. 3d – (N.Y. Mar. 31, 2020).  *See also* N.Y. Rule of Prof'l Conduct 1.3(a) ("A lawyer shall act with reasonable diligence[.]").  At bottom, "[t]he role of class counsel is akin to that of a fiduciary for the class members." *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992).  To that end, Class Counsel must keep "client[s] reasonably informed about the status of the matter" and also "explain a matter to the extent reasonably necessary to permit [] client[s] to make *informed decisions* regarding the representation."  N.Y. Rule of Prof'l Conduct 1.4(a)(3), (b) (emphasis added).

        Class member-clients who received Equity Awards may face the *decision* of continuing with class litigation or individual arbitration.  Under the ethical rules described above, it then follows that Class Counsel, who, by court order must "represent the interests of the class,"

May 5, 2020
Page 3

should provide information about that decision in the form of professional legal advice. Fed. R. Civ. P. 23(g)(2).[1]  This is what Class Counsel did, notwithstanding Goldman's false accusations of mischaracterizing the Court's order or the terms of the Equity Awards.  *Cf.* Goldman's Letter at 3.  Fulfilling Class Counsel's ethical duties requires the continued ability to respond to inquiries from class member-clients.  Class Counsel, for example, must be allowed to explain the differences between class litigation as an absent class member and individual arbitration—whether in terms of filing fees, the right to a jury trial, the discovery available (and the work done to date), and the potential for Goldman to seek to re-litigate pleading stage issues.  Class member-clients should also be informed that Goldman's counsel has stated publicly on its website that the goal of arbitration in this case is not resolution of claims on the merits in an alternate forum, but rather "eliminate[ing] a very substantial amount of Goldman's financial exposure in a case stretching back as far as 2002."  Sullivan & Cromwell, *S&C Wins Arbitration Ruling in Closely Watched Employment Class Action* (Apr. 14, 2020), *available at* https://www.sullcrom.com/wins-arbitration-ruling-in-closely-watched-employment-class-action (last accessed May 4, 2020), attached as **Exhibit A**.

Goldman provides no authority for its extreme request to ban Class Counsel's post-certification client communications, and Plaintiffs are aware of no court ever having imposed such a ban.  Notably, the Federal Judicial Center, the research and education arm of the federal judiciary, makes clear in its Manual for Complex Litigation that "[o]nce a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."  Federal Judicial Center, Manual for Complex Litigation, fourth, § 21.33 at 300.  Leading treatises on class action and federal practice indicate the same.  *See* Rutter Group Practice Guides, Federal Civil procedure Before Trail (National Edition), Ch. 10-C (2020) ("Moreover, after class certification and expiration of the 'opt-out' period, class members who have not opted out are represented by plaintiff's counsel, and they are entitled to communicate with each other accordingly."); William B. Rubenstein, 3 Newburg on Class Actions § 9:8 (5th ed. 2019) ("Following class certification, class counsel may seek to communicate with class members . . . to inform them of the status of the litigation.  These communications are unproblematic since class counsel and class members enjoy a full attorney-client relationship with one another following class certification.").  Indeed, this Court has already noted that "[t]he majority of courts recognize that an attorney-client relationship with class counsel arises at the time the class is certified"—that is, prior to the expiration of the notice period, which ended in January 2019.  *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-6950, 300 F.R.D. 182, 187 (S.D.N.Y. June 2, 2014).  Moreover, such a communications ban would constitute an unconstitutional prior restraint, as articulated by this Court in its March 26 Order.  *See* Order at 51-53.

---

[1] Moreover, from a professional risk management perspective, Class Counsel had no choice but to—at a minimum—advise class member-clients that their legal rights in this case may be significantly altered by inaction and post the Court's March 26 order in full on Class Counsel's client-facing website, which Class Counsel did 10 days *prior* to sending the case status update at issue.

May 5, 2020
Page 3

      Goldman is also wrong in asserting that individuals who received Equity Awards are not class members and thus not Class Counsel's clients. Goldman's Letter at 1. The class certified and fixed at the end of the notice period in January 2019 is defined as all "female current and former Associates and Vice Presidents," without qualification as to whether a class member received an Equity Award. *See, e.g.*, Class Cert. Order, ECF No. 578; Class Cert. Notice. Contrary to Goldman's claim, the Court did not exclude individuals who received Equity Awards from the certified class in its March 26, 2020 order. Rather, the Court ordered that "Class Members who executed only Equity Award Agreements" would have "the opportunity to opt out of arbitration." Order at 88, ECF No. 983. Thus, at this time all such individuals remain class members. To be sure, the parties dispute whether exclusion of class members after class certification *would be* subject to a magistrate judge's order or report and recommendation and the standards of review applicable to each. *See* Pls.' Objections at 6, ECF No. 1005 (By statute, "any motion 'to dismiss or to permit maintenance of a class action" is reviewed *de novo* and "considered 'dispositive,' in the language of Rule 72(b)."). But that dispute is not material to class membership, because, regardless of the standard of review, the process described in the Court's March 26 order has not occurred and may or may not be affirmed.

      Finally, Plaintiffs note that, to the extent Goldman is frustrated that there is not final resolution to whether Equity Award recipients may recover in this lawsuit, the situation is entirely one of Goldman's making by never previously seeking to exclude Equity Award recipients from the class definition. In July 2014, Plaintiffs moved to certify a class comprising "female current and former Associates and Vice Presidents in the Investment Banking, Investment Management, or Securities Divisions." ECF No. 247 at 1. In opposing class certification in 2014, Goldman could have argued that individuals who would later receive Equity Awards containing an arbitration clause should be excluded from this class definition. But Goldman did not. *See* ECF No. 264. In responding to Plaintiffs' objections to the Magistrate Judge's report and recommendation denying class certification in 2017—by which time Goldman had disseminated a substantial portion of the Equity Awards at issue—Goldman could have argued to the District Court for exclusion of these individuals from the class definition. Once again, Goldman did not. *See* ECF No. 513. After the District Court granted Plaintiffs' motion for class certification in March 2018, Goldman could have sought reconsideration as to those individuals who received Equity Awards. Again, Goldman did not. Then, in negotiating the class notice, Goldman could have argued that individuals who received Equity Awards should not receive the notice. Yet again, Goldman did not. *See* ECF No. 610 at 10 (arguing only that current Managing Directors "may not properly be class members" by virtue of their arbitration agreement). Ultimately, notice was distributed to Equity Award recipients, and 694 stayed in this class action.

      In conclusion, there is no basis for restricting Class Counsel from providing legal advice to class member-clients about their rights. After all, this is Class Counsel's required role in a certified class action. Therefore, Plaintiffs respectfully request that the Court deny Goldman's request to restrain Class Counsel from communicating with Equity Award recipients about the March 26, 2020 order.

May 5, 2020
Page 3

                                                  Respectfully submitted,

| Kelly M. Dermody | Adam T. Klein |
|---|---|

1984782.2