# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; AND MARY DE LUIS,

                Plaintiffs,

v.

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,

                Defendants.

------------------------------------------------------------- x

10 Civ. 6950 (AT) (RWL)

## JOINT STATUS REPORT

In accordance with the Court's October 3, 2019 Order (ECF No. 870) and July 14, 2020 Order (ECF No. 1041), the parties submit this Joint Status Report in advance of the July 30, 2020 Status Conference. The parties' respective sections follow.

## JOINT REQUEST FOR EXTENSION OF THE DISCOVERY SCHEDULE

The parties agree that a discovery extension is necessary and warranted. Accordingly, the parties jointly request a three-month extension of fact discovery with proportional extensions to the remaining pretrial schedule, with appropriate adjustments for year-end holidays.[1] The parties will submit a Joint Stipulation and Proposed Order to that effect in advance of the June 30, 2020 status conference.

## PLAINTIFFS' POSITIONS

### I. REMOTE DEPOSITIONS

#### A. Goldman Sachs's Scheduling Delays Have Held Up Depositions.

Plaintiffs have been attempting to begin remote depositions since May. For example, Plaintiffs noticed the remote deposition of ▬▬▬ on May 18, 2020 to be held on June 4, 2020. Though Goldman Sachs immediately rejected this date, it did not provide an alternate date for Ms. ▬▬ until July 6, 2020—almost two months later—and even then offered only that Ms. ▬▬ would be available on some unspecified date in September—four months after Plaintiffs initially noticed her deposition and a month after the close of the current fact discovery deadline.[2] Ex. 9, July 6, 2020 Ltr. from A. Ostrager, at 2. Though Plaintiffs repeatedly requested that Ms.

---

[1] Fact discovery is currently set to close on August 17, 2020. (ECF No. 1002.)

[2] On May 18, 2020, Plaintiffs also noticed the depositions of ▬▬▬ (to be taken June 8, 2020) and ▬▬▬▬▬ (to be taken June 12, 2020), and have identified an additional five witnesses by name to Goldman Sachs. Goldman Sachs immediately rejected these dates, as well. Ms. ▬▬▬ is set to be deposed on August 13, 2020, and Goldman Sachs did not offer a date for Ms. ▬▬ deposition until *yesterday*—the day prior to the filing of this Joint Status Report—which Plaintiffs immediately accepted, although Plaintiffs object to waiting another two months for this deposition to go forward and Goldman Sachs has offered no reason for such extraordinary delay, beyond generically citing "personal and professional obligations" that apparently have extended for months. Ms. ▬▬ is now set to be deposed on September 30, 2020. No other depositions have been taken to date.

███ deposition occur earlier, Goldman Sachs has insisted, without any justification, that she is completely unavailable until September. Ex. 10, July 14, 2020 Ltr. from M. Lamy, at 2-3; Ex. 11, July 20, 2020 Ltr. from A. Ostrager, at 2. And Goldman Sachs has *still not offered* dates for Ms. ███ deposition.

Goldman Sachs's assertion that Plaintiffs waited until they provided a draft of this Report to request specific dates for Ms. ███ or Ms. ███ is wrong. *Infra* at 18. Plaintiffs specifically requested dates for both deponents on many occasions dating back to early June. *See* Ex. 2, June 4, 2020 Ltr. from M. Lamy, at 2 ("Plaintiffs remain willing to negotiate dates and procedures for the remote depositions of ███ and ███."); Ex. 3, June 9, 2020 Email from M. Lamy ("You have not responded to Plaintiffs' most recent letter regarding the depositions of ███ and ███[.]"); Ex. 7, June 24, 2020 Ltr. from M. Lamy, at 2 ("Plaintiffs request that Goldman Sachs promptly—and no later than July 1, 2020—propose dates for the remote depositions of Ms. ███, Ms. ███, and Ms. ███"); Ex. 8, July 2, 2020 Email from M. Lamy ("In Plaintiffs' June 24, 2020 correspondence (attached again here), we requested that by July 1, 2020 you provide, for the first time, dates for the remote depositions of ███ (originally noticed for June 4, 2020), ███ (originally noticed for June 8, 2020), and ███ (originally noticed for June 12, 2020). However, we have still not heard from you regarding these depositions."); Ex. 10, July 14, 2020 Ltr. from M. Lamy, at 3 ("[W]e request that you confer with Ms ███ about her availability to be deposed during the first two weeks of August, and that you respond with her availability no later than July 20, 2020."); *id.* ("We . . . request that you confer with Ms ███ about her availability in either of the following two weeks—the weeks of August 3 and August 10—and that you respond with her availability no later than July 20, 2020."); Ex. 12, July 20, 2020

Email from M. Lamy ("Plaintiffs request that you provide specific deposition dates in September for the depositions of ▉▉▉ and ▉▉▉."). Plaintiffs have been diligently trying *for months* to get these depositions scheduled.

Ms. ▉▉▉ deposition remains unscheduled. As Goldman Sachs obviously understands, Ms. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—is a foundational witness, and her testimony will inform Plaintiffs' final selection of deponents (*i.e.*, in addition to those either already noticed or already identified by name to Goldman Sachs). Plaintiffs therefore respectfully request that the Court order Goldman Sachs to produce Ms. ▉▉▉ in August 2020, or offer substantial justification for refusing to schedule this deposition for four months.

Plaintiffs reject Goldman Sachs's false assertion that Plaintiffs "refused . . . weeks of availability" for the depositions of Ms. ▉▉▉ and Ms ▉▉▉ "without explanation." *Infra* at 17. Indeed, the only actual dates that Goldman Sachs has ever offered for Ms. ▉▉▉ were responsive to Plaintiffs' submission in this pleading, and Goldman Sachs has still never offered dates for Ms. ▉▉▉. Plaintiffs, on the other hand, have demonstrated an eagerness to begin remote depositions, and indeed immediately accepted the first—and until yesterday, *the only*—deposition date that Goldman Sachs has ever offered: the August 13, 2020 deposition of Ms ▉▉▉. Ex. 10, July 14, 2020 Ltr. from M. Lamy, at 3. For Ms ▉▉▉, Goldman initially suggested a single week in July, for which Plaintiffs' counsel quickly indicated they were not available, *id.*, then refused to produce Ms ▉▉▉ during the entire month of August, Ex. 11, July 20, 2020 Ltr. from A. Ostrager, at 2, and finally offered a date (which Plaintiffs immediately accepted) on the very last day in September, Ex. 14, July 26, 2020 Email from J. Levy. The record is clear: Goldman Sachs has caused the delay in scheduling these depositions. Goldman Sachs's suggestion that any delay is

the result of Plaintiffs' failure to raise discovery disputes, such as "unspecified attacks on Goldman Sachs's privilege logs," is not true. *Infra* at 17. In fact, Plaintiffs' first draft of this Joint Status Report contained a section detailing the status of the parties' remaining disputes regarding Goldman Sachs's privilege logs, but Goldman Sachs *requested that Plaintiffs remove this section*, which Plaintiffs agreed to do. Ex. 13, July 22, 2020 Email from J. Levy.

To avoid future delay,[3] Plaintiffs therefore propose that the Court instruct the parties that requested depositions must be scheduled within 10 days of a request for dates, and that depositions may not be delayed for more than 30 days without a written submission setting forth substantial justification.

---

[3] Plaintiffs have also been severely prejudiced in beginning depositions by Goldman Sachs's belated production of thousands of relevant documents that were wrongly withheld on an invalid claim of privilege. For example, after significant litigation over Goldman Sachs's privilege logs, Goldman Sachs's May 8, 2020 revised log lists more than 17,371 documents, including 9,702 documents that were independently listed *for the first time*, and 9,180 de-designated documents now listed as not privileged (at least 4,733 of which had been previously withheld in their entirety, and 4,444 of which had been previously redacted for privilege). These previously withheld documents contain information relevant to Plaintiffs' final selection of witnesses (*i.e.*, in addition to those already noticed or named to Goldman Sachs), and, in reviewing the many thousands of brand new entries, Plaintiffs are not confident that Goldman Sachs has at this point de-designated everything it is required to de-designate.

These numbers are not "inaccurate or misleading," as Goldman Sachs suggests. *Infra* at 18, n.13. Plaintiffs requested—and the Court ordered—that each document within a document family be individually identified on the revised log precisely because each must be individually evaluated. *See* ECF No. 950 (The Court: "Each document, not document 'family,' must be evaluated on its own merits."). The fact remains that Goldman Sachs's revised log contains 9,702 new entries that Plaintiffs must evaluate, which is a time-intensive process given the volume. And Goldman Sachs's assertion that "many of the documents listed on the log are not privileged because, for example, they are the nonprivileged or nonresponsive cover email for a privileged, responsive attachment" is both unsupported and contradicted by Plaintiffs' own ongoing review of this new material. *Infra* at 18, n.13.

### B.     Goldman Sachs Has Refused to Agree to a Reasonable Remote Deposition Protocol, Requiring the Court's Intervention.

Similarly, though Plaintiffs first shared (and expressed a preference for adopting) this Court's Sample Remote Deposition Protocol on June 4, 2020, Goldman Sachs did not propose edits to this protocol until July 6, 2020.  And as set forth below, two related disputes (in addition to Goldman Sachs's scheduling delays) have delayed the start of remote depositions: first, Goldman Sachs's insistence that a witness can *choose* whether to participate in a remote deposition; and second, Goldman Sachs's insistence that a witness can *choose* to have counsel present in the room during any remote deposition.  Both arguments contradict this Court's Sample Remote Deposition Protocol, and numerous other legal and public health authorities, and should be rejected.  Plaintiffs believe the parties should instead adopt this Court's Sample Remote Deposition Protocol, as it was drafted, and immediately commence remote depositions.

*First*, it should be well-settled by now that discovery—including depositions—*must* proceed throughout the duration of the COVID-19 pandemic.  Nevertheless, Goldman Sachs refuses to agree that it *must* produce witnesses for remote deposition at a mutually agreed upon time, insisting instead that whether a deposition proceeds remotely should be left to the *election of the witness*.  *See, e.g.,* Ex. 4, June 12, 2020 Ltr. from A. Ostrager, at 1 (asserting that "[a]fter consultation with Ms ██████ and Ms. ████, we are willing to proceed with those depositions on a remote basis," but not answering whether Ms ████████ was "willing to proceed" on a remote basis and arguing instead that "the issue of which depositions can proceed remotely must be decided on a witness-by-witness basis"); Ex. 9, July 6, 2020 Ltr. from A. Ostrager, at 2 (finally confirming, after almost four additional weeks of delay, that Ms ████████ "is also willing to proceed with her deposition on a remote basis," and arguing again that whether a deposition

proceeds remotely will depend upon "whether a witness wants to or not").[4]  Goldman Sachs has maintained this position despite the fact that Plaintiffs have, over the course of four letters spanning six weeks, cited more than a dozen authorities supporting the validity and necessity of remote depositions, including numerous court orders specific to the COVID-19 pandemic and this Court's own Sample Remote Deposition Protocol.  *See, e.g.*, *Djurdjevich v. Flat Rate Movers, Ltd.*, No. 17CV261AJNBCM, 2020 WL 2319119, at *2 (S.D.N.Y. May 8, 2020) ("It is further ORDERED . . . that for the duration of the COVID-19 national emergency *all depositions* in this action (unless specifically exempted by the Court) *shall* be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means.") (emphasis supplied); *Julian v. Metro. Life Ins. Co.*, No. 17CV957AJNBCM, 2020 WL 1699983, at *1 (S.D.N.Y. Apr. 7, 2020) (noting that "the ongoing COVID-19 national health emergency . . . requires that arrangements be made to conduct depositions remotely"); District Judge Lewis J. Liman's COVID-19 Emergency Individual Practices in Civil and Criminal Cases (Mar. 19, 2020) ("[A]ll depositions may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means."); *Soler et al. v. Fresh Direct, LLC et al.*, No. 20-cv-3431 (AT), ECF No. 8 (S.D.N.Y. May 6, 2020) (Torres, J.) ("[I]t is ORDERED pursuant to Rules 30(b)(3) and 30(b)(4) of the Federal Rules of Civil Procedure that all depositions in this action may be taken via telephone, videoconference, or other remote means."); *Astor Chocolate Corp. v. Elite Gold Ltd.*, No. 18 CIV. 11913 (PAE), 2020 WL 2130680, at *12 n.8 (S.D.N.Y. May

---

[4] Goldman Sachs's assertion that "Defendants have *never* stated that 'a witness can choose whether to participate in a remote deposition,'" *infra* at 13, is flatly contradicted by these statements from Goldman Sachs's correspondence.  Goldman Sachs's position on this topic is therefore unclear, but appears to have softened under the Court's eye.  Nevertheless, because Goldman Sachs has repeatedly asserted that whether a deposition proceeds remotely is a "witness-by-witness" determination, the parties would benefit from the finality of a Court order on this topic.

5, 2020) ("The Court expects that, given the challenges presented by the current COVID-19 pandemic, such deposition likely will be conducted remotely.").[5]

As this Court has made clear: "*All depositions shall be conducted remotely*" throughout the COVID-19 pandemic.  Judge Lehrburger's Sample Remote Deposition Protocol ¶ 1 (emphasis supplied).  Were the Court to instead permit *witnesses to decide* whether a remote deposition is appropriate, it would be impossible for the parties to propose a new date for the close of fact discovery because it is impossible to know when the parties will be able to safely resume in-person depositions.  Accordingly, Plaintiffs respectfully request that the Court order that *all* depositions must proceed remotely through the duration of the COVID-19 pandemic.

*Second*, Goldman Sachs argues that *if* a witness *elects* to be deposed remotely, then counsel for Goldman Sachs may also be present in the room when the witness is deposed.  This argument also contradicts this Court's Sample Remote Deposition Protocol, which (consistent with the position taken by other courts and public health experts) states that "[t]he deponent, court reporter, and counsel for the Parties will each participate in the videoconference deposition *remotely and separately*."  Sample Remote Deposition Protocol ¶ 4 (emphasis supplied).

Multiple courts have considered and rejected a party's attempt to fashion protocols that would permit individuals who are not members of the same household to be in the same room during a deposition, citing public health concerns.  In *Joffe v. King & Spalding LLP*, for example,

---

[5] These recent, pandemic-specific authorities are consistent with the Federal Rules of Civil Procedure and a long line of cases holding that remote depositions are a valid means of discovery. *See, e.g.*, Fed. R. Civ. P. 30(b)(4) (granting courts the authority to order "that a deposition be taken by telephone or other remote means"); *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. Feb. 10, 2006) (holding that remote depositions are a "presumptively valid means of discovery"); *Packard v. City of New York*, 326 F.R.D. 66 (S.D.N.Y., June 18, 2018) (granting motion for remote deposition); *Alpha Capital Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177 (S.D.N.Y., Dec. 6, 2017) (same); *Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385 (S.D.N.Y., Mar. 17, 2011) (same).

Judge Caproni of the Southern District of New York rejected a party's request to be physically present with the witness—despite diligent efforts to fashion safe procedures—because "evidence continues to accumulate that, depending on the length of time for which individuals share an indoor space, merely maintaining a distance of six feet is likely insufficient to prevent transmission." No. 17 Civ. 3392 (VEC)(SDA) (S.D.N.Y June 4, 2020), ECF No. 239 at 6.  The court observed that "[t]he fact that certain jurisdictions are beginning to relax their restrictions, a process based in part on political or economic considerations, does not mean that community spread has ceased or that individuals need not be concerned about potential exposure." *Id*.  *See also, e.g.*, *Sonrai Systems, LLC v. Anthony M. Romano et al.*, No. 16 CV 3371 (N.D. Ill. July 13, 2020), ECF No. 412 at 7 (holding that the party's "offer to provide a conference room large enough for six feet of social distancing" was not sufficient to guarantee the safety of both witness and counsel).  Indeed, studies released within the last several weeks suggest that the coronavirus may be carried by airborne aerosols, such that even masks and six feet of distance would not guarantee the safety of both witness and counsel throughout the deposition.[6]

Even if masks were a sufficient protective measure, it would also be unfair to require Plaintiffs' counsel to conduct depositions of masked witnesses just so that defense counsel can be present in the room.  As one court recently observed, a party's "ability to assess witness credibility might actually be impeded . . . given the face mask" because "masks . . . would 'eliminate many of the advantages of observing [them] at an in-person deposition.'" *Sonrai Systems*, ECF No. 412

---

[6] *See, e.g.*, Apoorva Mandavilli, *The Coronavirus Can Be Airborne Indoors, W.H.O. Says*, NEW YORK TIMES (July 9, 2020), *available at* https://www.nytimes.com/2020/07/09/health/virus-aerosols-who.html; Dyani Lewis, *Mounting Evidence Suggests Coronavirus Is Airborne*, NATURE (July 8, 2020), *available at* https://www.nature.com/articles/d41586-020-02058-1; World Health Organization, *Transmission of SARS-CoV-2: Implications For Infection Prevention Precautions* (July 9, 2020), *available at* https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions.

at 7.  See also, e.g., *Reynard v. Washburn Univ. of Topeka*, No. 19-4012-HLT-TJJ, 2020 WL 3791876, at *6 (D. Kan. July 7, 2020) (same).  Tellingly, Goldman Sachs does not address this legitimate concern below.

Courts have likewise rejected the argument that a witness' preference for *in-person* counsel trumps the realities of the COVID-19 pandemic.  *See, e.g.*, *Wilkens v. ValueHealth, LLC*, 2020 WL 2496001, at *1 (D. Kan. May 14, 2020) (holding that defendants do not have an absolute right to "prepare and defend their witness depositions in person, rather than remotely" during the pandemic).  Despite Goldman Sachs's assertions to the contrary, Plaintiffs have no desire to impede Goldman Sachs's ability to counsel its witnesses during remote depositions, and in fact intend to adopt a protocol—the one drafted by this Court—that specifically permits for such private consultation.  *See* Sample Remote Deposition Protocol ¶ 6 ("During breaks in the deposition, the Parties may use the breakout room feature . . . which simulates a live breakout room through videoconference.  Conversations in the breakout rooms shall not be recorded.").

None of the examples Goldman Sachs attaches below support the proposition that the physical presence of counsel at a remote deposition is "common," as Goldman Sachs asserts, to say nothing of it being appropriate over the objections of another party.  All three of the examples—*Reynolds*, *EMC Mortgage*, and *Persian Gulf*—were *joint stipulations*, not court orders, and all three were negotiated by the same law firm (Sullivan & Cromwell LLP) that represents Goldman Sachs in this matter.  *See infra*, Goldman Sachs's Exs. E, F, G.  The fact that counsel for Goldman Sachs was able to, on three occasions, convince opposing counsel to adopt unsafe and unfair procedures has no bearing on what is appropriate in this case.

Accordingly, Plaintiffs respectfully request that the Court order the parties to adopt a remote deposition protocol requiring that *all* depositions be conducted remotely throughout the

COVID-19 pandemic, and requiring that *all* individuals appear remotely and separately at remote depositions. Plaintiffs respectfully submit that because this Court's Sample Remote Deposition Protocol accomplishes both of these ends, while also setting forth reasonable procedures for the conduct of remote depositions, it should be adopted in its entirety, as written.

Goldman Sachs did not, as it suggests below, send Plaintiffs a "detailed remote deposition protocol" to which "Plaintiffs never responded." *Infra* at 16. On June 4, 2020, Plaintiffs sent Goldman Sachs a copy of this Court's Sample Remote Deposition Protocol and expressed a preference for adopting it. Ex. 2, June 4, 2020 Ltr. from M. Lamy, at 2. Goldman Sachs never responded. Plaintiffs again sent Goldman Sachs a Word copy of the Court's Sample Remote Deposition Protocol on June 24, 2020, adapted for this case, and requested that Goldman provide any proposed edits no later than July 1, 2020. Ex. 7, June 24, 2020 Ltr. from M. Lamy, at 2. Goldman did not respond until July 6, 2020, and even then offered only redlines to the Court's Protocol that reflect the disagreements set forth above. Despite Goldman Sachs's assertion to the contrary, *infra* at 16, Plaintiffs *did respond* to this redline, explaining that "Goldman Sachs's edits to the protocol—which leave to the election of the witness both whether a deposition will be remote and whether it will be attended in-person by counsel—are unacceptable," and asking Goldman Sachs to confirm within six days whether it would reconsider these positions or whether the parties were in fact at impasse on an appropriate protocol. Ex. 10, July 14, 2020 Ltr. from M. Lamy, at 2.

After months of delays and failed negotiations, the parties are at impasse. Plaintiffs therefore respectfully request that the Court order the entry of its Sample Remote Deposition Protocol, so that the parties can immediately commence remote depositions.

**DEFENDANTS' POSITIONS**

**I.      REMOTE DEPOSITIONS**

For nearly two months, Defendants have agreed to Plaintiffs' request to take depositions through remote means while preserving witness' *option* to choose to have their counsel physically present. (Exs. A–D.)[7] Defendants have *never* stated that "a witness can choose whether to participate in a remote deposition" or "insiste[d] that a witness can choose whether to have counsel present in the room during any remote deposition." (*See supra* at 6.)  To the contrary, Defendants have agreed that the only three depositions noticed to date by Plaintiffs can proceed entirely remotely, with no counsel for either side present, and have offered dates for those depositions.[8]

In the future, other witnesses may want the benefit of in-person counsel, so Plaintiffs should not be able to force "*all* individuals [to] appear remotely and separately at remote depositions." (*Id.* at 11 (emphasis in original).)  This Court should not set a blanket rule.  Remote depositions where the witness has the option to have his or her counsel physically present are common in this District and around the country.  As Plaintiffs acknowledge, on at least "three

---

[7]     Plaintiffs selectively quote from Defendants' letters (*see supra* at 6–7 & n.4), which in fact state that "Plaintiffs are free to *take* depositions remotely," but that determinations about whether Defendants "*defend* depositions remotely . . . must be made on a witness-by-witness basis." (Ex. A (Defs.' June 12, 2020 Ltr.) at 1–2 (emphasis in original); *see also* Ex. C (July 6, 2020 Ltr.) at 2 ("[W]hile courts routinely permit depositions to be taken remotely and defended in person, the issue of which depositions can proceed entirely remotely must be decided on a witness-by-witness basis, preserving witnesses' *option* to choose to have their counsel physically present.") (emphasis in original).)

[8]     Plaintiffs wrongly insinuate that Defendants have "not answer[ed] whether Ms. ███████ was willing to proceed on a remote basis." (*See supra* at 6 (internal quotation marks omitted).)  Not so.  On July 6, Defendants informed Plaintiffs that they "have conferred with Ms. ███████████████, who is also willing to proceed with her deposition on a remote basis." (Ex. C (July 6, 2020 Ltr.) at 2.)

occasions," the parties entered into "joint stipulations" permitting "the physical presence of counsel at a remote deposition." (*Id.* at 10.)  For example, in *Reynolds Consumer Products LLC* v. *Glencore AG*, an antitrust class action in this District pending before Judge Engelmayer, "the Parties have agreed to conduct certain depositions remotely," and that each witness may permit "[a]ny Participant"—which includes "the Defending Attorney, other attorneys or client representatives appearing on behalf of one of the Parties, [and] paralegals or other individuals providing support to the attorneys"—to "be in the same room as the Witness during a Remote Deposition," or "[a] witness may refuse in-person Participant attendance." (Ex. E (*Reynolds* Proposed Stipulated Order Regarding Remote Depositions) at 1–2, 5.)

Similarly, in *EMC Mortgage LLC* v. *Pulte Mortgage, LLC*, a commercial contract dispute, the parties stipulated that "depositions in this action are permitted to be conducted remotely," and "counsel for the witness may participate in any deposition from the same location as the witness, at the election of the witness and his/her counsel." (Ex. F (*EMC Mortgage* Stipulation for Remote Depositions) ¶¶ 1, 4.)  And in *Persian Gulf Inc.* v. *BP West Coast Products LLC*, an antitrust class action, the parties stipulated that "[t]o the extent a witness permits his/her own lawyers to be physically present in the same room as the witness during a remote deposition, the deposing attorney shall have the option of attending the deposition in person as well." (Ex. G (*Persian Gulf* Remote Deposition Protocol) ¶ 1.)  Thus, while "the *taking* of remote depositions" is the "new normal" "in the wake of the COVID-19 pandemic," witnesses and their counsel "can choose how they want to prepare witnesses for depositions and whether or not they want to be with the witness in person when the witness gives a deposition by remote means." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *4–5 (N.D. Ill. June 25, 2020) (emphasis added; internal quotation marks omitted).

Plaintiffs' authorities (*see supra* at 7–8) state only that Plaintiffs can *take* depositions remotely—which Defendants have never disputed—but there is no requirement in the Federal Rules (or elsewhere) that Defendants be forced to defend depositions remotely. *See*, *e.g.*, Fed. R. Civ. P. 30(b)(4) (depositions may "be *taken* by telephone or other remote means") (emphasis added); Order at 1, *Soler* v. *Fresh Direct, LLC*, No. 20 Civ. 3431, ECF No. 8 (S.D.N.Y. May 5, 2020) (Torres, J.) ("depositions in this action *may be taken* via telephone, videoconference, or other remote means," and "encourag[ing]" the parties "to engage in discovery through remote means") (emphasis added).[9] In Plaintiffs' remaining authorities (*see supra* at 8–10), the examining attorneys sought to take in-person depositions over the witness's and counsel's objections. *See*, *e.g.*, *Joffe* v. *King & Spalding LLP*, 2020 WL 3453452, at *6 (S.D.N.Y. June 24, 2020) (Caproni, J.) ("the non-party witnesses are understandably wary of being exposed to COVID-19 by [plaintiff], their attorneys, the court reporters, or others").[10]  Here, by contrast, defense counsel

---

[9]    *See also* J. Liman COVID-19 Emergency Indiv. Prac. in Civ. & Crim. Cases 3.A ("Pursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), all depositions may be *taken* via telephone, videoconference, or other remote means . . . .") (emphasis added); *Djurdjevich* v. *Flat Rate Movers, Ltd.*, 2020 WL 2319119, at *2 (S.D.N.Y. May 8, 2020) (Moses, J.) ("It is further ORDERED, pursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), that for the duration of the COVID-19 national emergency all depositions in this . . . action shall be *taken* via telephone, videoconference, or other remote means . . . .") (emphasis added); *Julian* v. *Metro. Life Ins. Co.*, 2020 WL 1699983, at *1 n.1 (S.D.N.Y. Apr. 7, 2020) (Moses, J.) (same); *Astor Chocolate Corp.* v. *Elite Gold Ltd.*, 2020 WL 2130680, at *12 n.8 (S.D.N.Y. May 5, 2020) (Engelmayer, J.) (noting that a "deposition likely will be conducted remotely" and, if so, directing counsel to "agree on the mechanics").  Plaintiffs' older authorities (*see supra* at 8 n.5) likewise permit only "*taking* these depositions telephonically" or by videoconference. *Zito* v. *Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. Feb. 10, 2006) (Francis, J.) (emphasis added); *see also Packard* v. *City of New York*, 326 F.R.D. 66, 68 (S.D.N.Y. 2018) (Aaron, J.) (granting witness "the option of having his deposition *taken* by videoconference from Taiwan") (emphasis added); *Alpha Capital Anstalt* v. *Real Goods Solar, Inc.*, 323 F.R.D. 177, 179 (S.D.N.Y. Dec. 6, 2017) (Aaron, J.) ("the Court authorizes Alpha Capital to *take* the deposition of Mr. Lacey remotely by telephone or videoconference") (emphasis added); *Estate of Gerasimenko* v. *Cape Wind Trading Co.*, 272 F.R.D. 385, 386 (S.D.N.Y. 2011) (Cott, J.) (permitting depositions to "be *taken* by telephone or other remote means") (emphasis added).

[10]   *See also Sonrai Sys., LLC* v. *Romano*, 2020 WL 3960441, at *1 (N.D. Ill. July 13, 2020) (defending attorney "who would be traveling for the experts' depositions, explains that he has

would be physically present *only* if both witness and defense counsel consent.

Although Plaintiffs selectively quote from the Court's "Sample Protocol for Remote Depositions" (*see supra* at 8), that Sample Protocol states in the very first paragraph only that "[t]his form is an example of a stipulated order," and "[t]he parties are of course permitted to agree on whatever terms they see fit." There is no basis for Plaintiffs' claim that "it would be impossible for the parties to propose a new date for the close of fact discovery" if witnesses can choose whether their depositions are defended remotely or in-person. (*See supra* at 8.) Defense counsel's physical location will have no effect on the schedule.

In sum, the issue of which depositions can proceed entirely remotely and which can be defended in-person should be decided on a witness-by-witness basis. As Plaintiffs acknowledge (*see supra* at 11), Defendants sent Plaintiffs a detailed remote deposition protocol codifying this principle on July 6, 2020 (Ex. H)—to which Plaintiffs never substantively responded.[11] If Plaintiffs disclosed their full list of deponents (*see* Section II, *infra*), then Defendants could confer with those individuals and determine which, if any, wish to have their counsel appear in-person. But because Plaintiffs refuse to do so, Defendants seek to preserve witnesses' option to have their depositions defended in-person. Accordingly, Defendants respectfully request that the Court adopt

---

regular contact with family members who are in a high-risk category if exposed to COVID-19 due to age and underlying health conditions"); *Reynard* v. *Washburn Univ. of Topeka*, 2020 WL 3791876, at *1 (D. Kan. July 7, 2020) (plaintiff sought to be deposed remotely because "her age (73 years old), multiple underlying health conditions, and her husband's age (71 years old) and stage 4 cancer make appearing in person for her deposition dangerous because of the ongoing COVID-19 pandemic"). *Wilkens* v. *ValueHealth, LLC*, 2020 WL 2496001 (D. Kan. May 14, 2020), is irrelevant. The *Wilkens* court did not make any rulings about remote depositions but instead "extend[ed] all unexpired deadlines 90 days." *Id.* at *2.

[11]   Plaintiffs admit that they merely asked Defendants to "reconsider these positions" after sending "Goldman Sachs a copy of this Court's Sample Remote Deposition Protocol"—which is publicly available on the Court's website—and did not substantively respond to Defendants' redline. (*See supra* at 11.)

Defendants' proposed protocol.

## II. PLAINTIFFS' UNNECESSARY DEPOSITION SCHEDULING PROPOSAL

There is no dispute over the need to extend fact discovery or the length of that extension, so Defendants proposed removing the parties' opposing sections on this issue from this Status Report. Because Plaintiffs devote half their section of this Report (*see supra* at 2–5, 11) to a misleading recitation of the parties' back and forth on deposition scheduling, Defendants have no choice but to respond briefly.

Plaintiffs have no one else to blame but themselves for any delays. Plaintiffs have repeatedly refused to disclose the witnesses they will seek to depose, much less to notice those depositions. Plaintiffs have raised various discovery disputes, including (i) unspecified attacks on Goldman Sachs's privilege logs, and (ii) demands for belated document discovery from eight current and former members of Goldman Sachs's most senior management, an issue on which the parties reached impasse on June 9, 2020. (Ex. C (Defs.' July 6, 2020 Ltr.) at 1.) But Plaintiffs have not yet raised these disputes with the Court.[12]

Plaintiffs' own tactics have delayed the three depositions that they did notice. Although the parties have been conferring about depositions and deponents for over a year, Plaintiffs never included ▮▮▮▮▮—who they now claim is a so-called "foundational witness" (*see supra* at 4)—or ▮▮▮▮▮ on any proposed list of deponents. After Plaintiffs identified them as deponents for the first time in 13 months, Defendants provided an entire *week* of availability for Ms. ▮▮'s deposition in July and an entire *month* of availability for Ms. ▮▮'s and Ms. ▮▮'s depositions in September. (*Id.* at 2–3.) Plaintiffs initially refused all of these weeks of availability

---

[12] As Plaintiffs acknowledge (*see supra* at 5), they previously sought to raise these unripe issues to the Court, which is why Defendants proposed removing them. Plaintiffs did not actually remove them but simply moved the same language to a footnote (*id.* at 5 n.3).

without explanation, demanding that both depositions of these former employees occur in August, when the witnesses had other personal and professional commitments. (*Id.*; Ex. D (Defs.' July 20, 2020 Ltr.) at 2.) Plaintiffs waited until they provided a draft of this Report to request that Defendants identify specific dates in September for Ms. ▉ or Ms. ▉, to which Defendants promptly responded.[13] Ms. ▉'s deposition is now scheduled for September 30 and Ms. ▉'s deposition will be scheduled shortly for September.[14]

The Court should reject Plaintiffs' proposal to require Defendants to schedule depositions "within 10 days of a request for dates" by Plaintiffs, and to require each deposition to occur within 30 days of such initial notice or make "a written submission setting forth substantial justification" for why a particular witness is not available in that period. (*See supra* at 5.) Indeed, consistent with federal court practice,[15] the Court has already held that it "does not see the need to

---

[13]  Plaintiffs misleadingly remove the word "September" in their selective quotation of this sentence (*see supra* at 4), ignoring that they rejected weeks of availability for both witnesses.

[14]  Plaintiffs claim that their delay in noticing depositions is somehow due to Defendants' reproduction of their privilege log on May 8, 2020 ("May 8 Log"), but this claim rests on inaccurate or misleading figures about Defendants' privilege log and re-review (*see supra* at 5 n.3). To be clear, Defendants' October 2, 2019 merits privilege logs listed 7,773 document families. Defendants' May 8 Log lists the same number of privileged documents plus 29 additional documents. The May 8 Log contains 17,371 entries because, at Plaintiffs' insistence (*see, e.g.*, Jan. 17, 2020 Joint Status Report at 5–6 & n.6, ECF No. 935; Pls.' Jan. 22, 2020 Ltr. at 2–3 & n.6, ECF No. 937), Defendants separated document families such that each email and each attachment are now a separate entry. The Court did *not* adopt Plaintiffs' position, but ordered only that each document "be evaluated on its own merits" (Jan. 27, 2020 Order at 2, ECF No. 950), which Defendants had already done in their initial privilege logs. Because Defendants went beyond the Court's Order to accommodate Plaintiffs, many of the documents listed on the log are not privileged because, for example, they are the nonprivileged or nonresponsive cover email for a privileged, responsive attachment. Thus, Defendants did not list 9,702 documents "for the first time" on their May 8 Log and did not de-designate 9,180 documents "now listed as not privileged." (*See supra* at 5 n.3.)

[15]  *See Scott-Iverson* v. *Indep. Health Ass'n, Inc.*, 2016 WL 3444226, at *3 (W.D.N.Y. June 23, 2016) (the "salutary purposes" of deposition stipulations are "to facilitate discovery and avoid unnecessary and unproductive judicial micromanagement of the litigation process."); *United*

micromanage" discovery. (May 24, 2019 Order at 2, ECF No. 745; *see also* Mar. 19, 2019 Order at 4, ECF No. 708 ("the parties are in the best position to evaluate the details" of discovery); Mar. 6, 2019 Order at 2, ECF No. 693 (same).) After Plaintiffs have withheld their list of planned deponents for over a year, there is no reason to curtail Defendants' and witnesses' preparation or commandeer the schedules of witnesses, many of whom are likely to be former employees. The parties have jointly requested a three-month extension, and Plaintiffs should be ordered to identify their full witness list within a week from the July 30 Conference so that all depositions can be efficiently scheduled during that period.

*     *     *

The parties thank the Court for its consideration and are available to answer any questions or provide more details at the July 30, 2020 status conference or at the Court's convenience.

Respectfully submitted,

| | |
|---|---|
| */s/ Kelly M. Dermody* | */s/ Robert J. Giuffra, Jr.* |
| Adam T. Klein<br>Cara E. Greene<br>Melissa L. Stewart<br>Christopher McNerney<br>OUTTEN & GOLDEN LLP<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>Telephone: (212) 245-1000<br>Facsimile: (646) 509-2060<br><br>Kelly M. Dermody (*pro hac vice*)<br>Anne B. Shaver (*pro hac vice*)<br>Michael Levin-Gesundheit (*pro hac vice*)<br>Michelle A. Lamy (*pro hac vice*) | Robert J. Giuffra, Jr.<br>Sharon L. Nelles<br>Ann-Elizabeth Ostrager<br>Hilary M. Williams<br>Joshua S. Levy<br>Hannah Lonky Fackler<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br><br>Amanda Flug Davidoff<br>Elizabeth A. Cassady |

---

*States* v. *Jenkins*, 2017 WL 3283859, at *5 (W.D.N.Y. Aug. 2, 2017) ("[T]here is no reason for the Court to step in and micromanage the discovery in this case.").

-19-

| | |
|---|---|
| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br><br>Rachel Geman<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>250 Hudson Street, 8th Floor<br>New York, New York 10013-1413<br>Telephone: (212) 355-9500<br>Facsimile: (212) 355-9592<br><br>*Attorneys for Plaintiffs and the Certified Class* | SULLIVAN & CROMWELL LLP<br>1700 New York Avenue, N.W. Suite 700<br>Washington, District of Columbia<br>20006-5215<br>Telephone: (202) 956-7500<br><br>Barbara B. Brown (*pro hac vice*)<br>Carson H. Sullivan (*pro hac vice*)<br>PAUL HASTINGS LLP<br>875 15th Street, NW<br>Washington, DC 20005<br>Telephone: (202) 551-1700<br><br>Patrick W. Shea<br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6405<br><br>*Attorneys for Defendants* |