October 12, 2020

**VIA ECF**

The Hon. Robert W. Lehrburger
United States District Court for the
  Southern District of New York
500 Pearl Street
New York, NY 10007-1312

        RE:    *Chen-Oster, et al. v. Goldman, Sachs & Co., et al.*
                  No. 10 Civ. 6950 (AT) (JCF)

Dear Judge Lehrburger:

    We write on behalf of Plaintiffs and the Class in response to Goldman's unauthorized October 9, 2020 letter to the Court regarding the depositions of Lloyd Blankfein, Gary Cohn, and David Solomon. ECF No. 1083 ("Reply").[1]

                              Respectfully submitted,

Kelly M. Dermody                              Adam T. Klein
Lieff Cabraser Heimann & Bernstein, LLP        Outten & Golden, LLP

cc:    All counsel (via ECF)

---

[1] This Court's Individual Practice Rule II.D permits only a Rule 37.2 letter and a response, and explicitly states that the parties must make a request for additional briefing. Goldman did not.

The Hon. Robert W. Lehrburger
October 12, 2020
Page 1

Goldman's Reply contains several misstatements regarding the law and the record, to which Plaintiffs respond briefly below.

### A.  Goldman Inverts the Legal Standard for a Protective Order.

"To establish good cause for a protective order under Federal Rule of Civil Procedure 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *see also Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (same).[2]

Goldman would have this Court believe that executives are excused from this requirement. Reply at 1. They are not. Courts repeatedly find that the so-called "apex" doctrine does not erase or undermine the requirements of Rule 26. In *Serrano v. Cintas Corp.*, for example, the Sixth Circuit held that the "magistrate judge erred as a matter of law in relying on 'apex doctrine' to grant the protective order." 699 F.3d 884, 902 (6th Cir. 2012). The court explicitly "declined to assume that [one's] role as a corporate officer warranted the assumption that the deposition would be unduly burdensome," and faulted the magistrate for "fail[ing] to analyze, as required by Rule 26(c)(1), what harm [the CEO] would suffer by submitting to the deposition." *Id.* And in *Conti v. American Axle and Manufacturing, Inc.*, the same court rejected a CEO's "bald assertion that being deposed would present a substantial burden," and reversed the district court's order denying plaintiff's request to depose the CEO in an employment discrimination case. 326 F. App'x 900, 907 (6th Cir. 2009).

Bald assertions are all that Goldman offers here. Indeed, Goldman now admits that it has *not even attempted* to offer "witness-specific 'evidence of burden imposed by the depositions.'" Reply at 1. As set forth above, however, the "apex" doctrine is not "axiomatic," *id.*, and does not excuse Goldman from abiding by Rule 26. The fact remains: Goldman's failure to *even argue* that deposing these witnesses would be unduly burdensome is fatal to its application for a protective order.

### B.  The Witnesses' Individual Knowledge of Disparities Is Relevant and Unique.

To prevail on their disparate treatment claim, Plaintiffs must establish that discrimination was Goldman's "standard operating procedure." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Where, as here, a disparate treatment claim is rooted in the employer's failure to correct disparities resulting from employment policies, success will hinge on demonstrating that "at the highest levels of the corporation," the employer knew that discrimination was occurring but "did nothing or not enough to remedy the problem." *Williams v. Boeing Co.*, 225 F.R.D. 626, 636 (W.D. Wash. 2005).[3] *See also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 77 (S.D.N.Y. 2018) (Judge Torres certifying Plaintiffs' disparate treatment claim because whether "Defendants were aware of gender disparities and gender bias at Goldman Sachs, but did not adjust their policies or practices to account for the discrimination women faced" is a common question that will be answered through common proof). Such a showing can be made both through statistical disparities and through evidence that the company's most senior leaders were aware of disparities and took no action to correct them. EEOC Guidance, *Theories of Discrimination*, § 604.3(b)-(c).[4] *See also, e.g., Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 515 (N.D. Cal. 2012) (noting evidence that "Costco's senior

---

[2] Unless noted, quotations, citations, and alterations have been omitted and emphasis supplied throughout.
[3] Tellingly, Goldman did not address this point or authority in its Reply.
[4] *Available at* https://www.eeoc.gov/laws/guidance/cm-604-theories-discrimination.

The Hon. Robert W. Lehrburger
October 12, 2020
Page 2

management had knowledge of the gender disparity in the . . . promotion processes"); *United States v. City of New York*, 683 F. Supp. 2d 225, 266 (E.D.N.Y. 2010), *vacated on other grounds*, 717 F.3d 72 (2d Cir. 2013) ("The fact that the City's top officials exhibited an attitude of deliberate indifference to the discriminatory effects of the hiring policies that they were charged with overseeing raises a strong inference that intentional discrimination was the City's 'standard operating procedure.'").

In *Serrano*, for example, the Sixth Circuit reversed a magistrate judge's order barring the deposition of Cintas's CEO in a gender discrimination case, and specifically noted that the CEO's testimony was relevant in the "*Teamsters* pattern-or-practice framework."  699 F.3d at 902.  There, the EEOC had cited only a *single statement* by the CEO at an annual management meeting that attendees should "put the myth that females cannot be SSRs out of your mind and hire more women SSRs," and the Sixth Circuit deemed this enough to warrant his deposition.  *Id.* at 900.  Here, Plaintiffs have already cited much more.  *See* ECF No. 1082 ("Opp'n") at 2 (sampling evidence that Blankfein, Cohn, and Solomon "each had multiple unique roles in managing diversity" at Goldman Sachs).

*Brown v. Nucor Corp.* likewise still supports Plaintiff's need to depose Blankfein, Cohn, and Solomon.  The *Nucor* "protective order" that Goldman attached to its Reply was nothing more than a text-only docket entry issued *nearly a decade before* the Fourth Circuit faulted the district court for "inappropriately discount[ing], and often ignor[ing], evidence that establishes discrimination," and held that "tolerance of discrimination from top management . . . supports the workers' contention of a class-wide injury."  785 F.3d 895, 910 (4th Cir. 2015).

### C. Goldman Misstates the Testimony of Other Relevant Witnesses.

Incredibly, Goldman faults Plaintiffs for attempting to obtain this unquestionably relevant evidence from other employees before seeking it from Blankfein, Cohn, and Solomon.  Reply at 2-3.  Even more problematically, Goldman misstates the testimony Plaintiffs obtained from these other witnesses, which, in fact, confirms the need to depose Blankfein, Cohn, and Solomon.

Goldman's former head of Human Capital Management, Edith Cooper, and successive former Chief Diversity Officers, Edith Hunt and Anilu Vazquez-Ubarri, did *not* testify that they had never "discussed with these three senior executives 'how women perform compared to men' in the 360 and manager quartiling processes."  Reply at 2.  To the contrary, all three testified that they had one or more relevant conversations (or standing engagements) with Blankfein, Cohn, and/or Solomon on these topics, but *could not recall* the content of those conversations.  For example, Cooper testified that [redacted], but that she *did not know* whether "[redacted]," and stated that her recollection was strained because this was "[redacted]." Ex. 1 (Cooper Tr.) at 72:12-73:14.  When asked the same question about Blankfein, Cooper testified: "[redacted]." *Id.* at 73:15-21.  Even more specifically, Cooper testified, "[redacted]" when asked whether a November 2014 document that detailed "[redacted]" and noted [redacted] had been shared with Blankfein or Cohn.  *Id.* at 234:2-235:12.  Similarly, Cooper testified that she had "[redacted]" with Solomon, but could not recall "[redacted]" around the reporting he received on these topics.  *Id.* at 57:21-23.  And, again, though Cooper testified that "[redacted]" at Goldman "[redacted]

2049940.1

The Hon. Robert W. Lehrburger
October 12, 2020
Page 3

██████████████" *id.* at 53:15-23, and that gender demographic data was something she "████ ████████████████████," *id.* at 54:20-55:8, Cooper *could not recall* specifics from these conversations, *id.* at 56:14-15.  Plaintiffs received similar testimony—regarding all three executive witnesses—from Hunt and Vazquez-Ubarri.  *See, e.g.,* ECF No. 1082-10 (Ubarri Tr.) at 279:12-280:1 (when asked whether she had "████████████████████████████████████████ ████████████████," Vazquez-Ubarri responded: "████████████████████ ████████████████████████"); ECF No. 1082-2 (Hunt Tr.) at 178:9-179:3 (when asked what reports were sent to Cohn regarding Goldman's stated effort to "████████████████████ ████████," Hunt responded, "████████████████████████████████ ████████████████████████████████").[5]

In light of this testimony, Plaintiffs must be permitted to question Blankfein, Cohn, and Solomon themselves about the data and reporting they received on gender disparities at Goldman.

### D.     Goldman Ignores Evidence Beyond "Mere" Committee Membership.

Even if evidence of what Goldman's most senior leaders knew about gender disparities was not independently relevant (it is), and even if Plaintiffs had not attempted to obtain this evidence from other employees (they have), Goldman's application *still* fails because Blankfein, Cohn, and Solomon possess relevant evidence beyond their "mere membership" in committees.

Contrary to Goldman's assertions, Plaintiffs do not seek to depose Blankfein, Cohn, and Solomon solely because they received data and reporting on diversity as "member[s] of the firmwide diversity committee and the management committee."  Reply at 3.  While this is true—and is reason enough under *Teamsters* to warrant their depositions—Plaintiffs have amassed (and already previewed for the Court) substantial evidence that all three were directly and uniquely involved in monitoring diversity at Goldman.  *See* Opp'n at 2 (summarizing evidence).

Because of the unique role(s) each executive had, Goldman's "mere membership" authorities remain inapposite.  In *Assured Guaranty Municipal Corp.*, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013), the plaintiff cited only "the positions of Mr. Cochran [CEO] and Mr. McCarthy [COO] as senior executives" to justify their depositions, and therefore had not "demonstrated why Mr. Cochran and Mr. McCarthy would be likely to have non-cumulative relevant documents."  Not so here.  And in *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *13 (S.D.N.Y. May 15, 2018), the court denied discovery *without prejudice to renewal* if the "universe of documents collected from the Existing Custodians" did not provide the evidence plaintiffs needed.  As set forth above, Plaintiffs here have already attempted to obtain testimony from other employees about what Blankfein, Cohn, and Solomon knew, and it is now clear that they must question Blankfein, Cohn, and Solomon themselves to get the answers.

---

[5] These examples are only illustrative.  Were the Court to review the entirety of all three transcripts, it would see more instances of Plaintiffs questioning these witnesses regarding their conversations with and reporting to Blankfein, Cohn, and Solomon, and being met time after time with testimony that—while these topics were *generally* discussed with the executives—the witnesses could not recall *specifically* which data and/or reporting Blankfein, Cohn, and Solomon received.