November 3, 2020

**VIA ECF**

The Hon. Robert W. Lehrburger
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> RE:     *Chen-Oster, et al. v. Goldman, Sachs & Co., et al.*
>             No. 10 Civ. 6950 (AT) (JCF)

Dear Judge Lehrburger:

      Plaintiffs respectfully submit this reply to Goldman's November 2, 2020 letter regarding Plaintiffs' proposed motion to compel production of documents from senior leaders under *Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2nd Cir. 2019).

                            Very truly yours,

Kelly M. Dermody
Lieff Cabraser Heimann & Bernstein, LLP

Adam T. Klein
Outten & Golden, LLP

cc:     All counsel (via ECF)

The Hon. Robert W. Lehrburger
November 3, 2020
Page 1

## I.      The Motion Is Timely

Plaintiffs moved promptly upon completion of foundational depositions, which Goldman knew (and agreed) Plaintiffs needed to take before making the application. *See* Ex. A (June 24, 2020 Letter: "Plaintiffs' application under *Systemax* [ ] will be submitted after Plaintiffs take the first three depositions.").[1]  The timing of this motion is the result of Goldman's delay in deposition scheduling.

Plaintiffs filed their first motion under *Systemax* in December 2019, which the Court addressed at a hearing on January 23, 2020.  ECF No. 901.  Between then and May 8, following a Court-ordered re-review of its privilege logs, Goldman produced thousands of previously withheld documents, which Plaintiffs needed to review before taking merits depositions.  Plaintiffs noticed their first three merits depositions—Ms. Vasquez-Ubarri, Ms. Cooper, and Ms. Hunt—only ten days later, on May 18.  As the Court will recall from the July 27 Joint Status Report (ECF No. 1047) and the July 30 Status Conference, Goldman did not offer dates for these witnesses until ordered to do so, and did not make these witnesses available until August 13, September 9, September 30, respectively.  Plaintiffs deposed the witnesses on those dates, and then deposed Ms. Cooper's successor on October 22.  Plaintiffs notified Goldman of their intent to file the current motion that same day.[2]  Plaintiffs have therefore operated in good faith and with transparency to complete merits discovery in a timely and orderly fashion, and brought this motion as soon as practicable.  The timing of the motion is a product of Goldman waiting four months to schedule the first foundational witnesses for deposition.[3]

Moreover, and critically, *the discovery deadline has not passed*.  Goldman incorrectly characterizes this as a request to reopen discovery, when, in fact, discovery *is* open.  Under these circumstances, the application is clearly timely.  *See In re Enron Corp.*, 349 B.R. 115, 125 (Bankr. S.D.N.Y. 2006) ("A motion to compel filed during the discovery period would rarely be considered untimely.") (quotations omitted); *ESI Montgomery Cty., Inc. v. Montenay Int'l Corp.*, 899 F. Supp. 1061, 1068–69 (S.D.N.Y. 1995) ("Since the discovery deadline has not passed and no depositions have been closed, the defendants are not precluded from conducting discovery.").  Indeed, courts have granted motions to compel even *after* the discovery deadline has passed (unlike here).[4]  Nor would an extension of the discovery deadline to allow for production of the *Systemax* evidence disrupt the consideration of a dispositive motion or trial, which courts have cited as "the dispositive factor."  *See In re Enron*, 349 B.R. at 125 (citing cases).  The parties are not scheduled to brief summary judgment

---

[1] Plaintiffs first sought to meet and confer with Goldman regarding production of ESI from specific senior leaders under *Systemax* on June 3, 2020.  Ex. B.  Goldman contested the sufficiency of Plaintiffs' evidence.  Plaintiffs then informed Goldman that they would make their *Systemax* motion after the first three foundational depositions.  Ex. A.

[2] Following Ms. Hunt's deposition on September 30, Plaintiffs were preparing a motion seeking (1) depositions of the three so-called "apex" witnesses, and (2) *Systemax* discovery from the broader group, but Goldman preempted Plaintiffs by seeking a protective order on October 2, which the Court resolved on October 20.

[3] It is immaterial that the documents Plaintiffs cited in their motion were produced before January 2020.  Plaintiffs did not have the benefit of the Court's direction as to the showing needed to secure this discovery until the January 23 conference.  Plaintiffs also could not take the foundational depositions necessary to this application until Goldman completed its production of previously withheld documents, which did not occur until May. Plaintiffs noticed the foundational depositions within days of that deadline.

[4] *See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 339–40 (S.D.N.Y. 2005) (reopening discovery where relevance of discovery sought was learned in depositions taken just prior to discovery closing, and "in the case of two witnesses, [plaintiff] had already issued subpoenas but was unable to schedule depositions before discovery closed").

The Hon. Robert W. Lehrburger
November 3, 2020
Page 2

until July 2021, and there is no trial date set.  ECF No. 1050.

## II.      Plaintiffs Are Not Required to Show Animus Now

Goldman's argument that Plaintiffs' application fails because they have not *already* shown gender animus by the fifteen relevant witnesses is exactly backwards.  Finding evidence of gender animus (or tolerance thereof in others) is the point of this exercise, not a prerequisite.

In *Systemax*, the Second Circuit addressed the type of evidence that is probative of disparate treatment (intentional discrimination) in a pay discrimination case, finding that the district court erred in dismissing non-statistical evidence as only "stray remarks" and that the CFO's general remarks about women and sex were probative of pay discrimination.  *Lenzi v. Systemax*, 944 F.3d 97, 111-12 (2d Cir. 2019).  Here, Plaintiffs seek evidence of these kinds of remarks by Goldman's senior leaders, because they would be probative of discrimination in the employment practices that they oversee.  Your Honor understood this well when responding to Goldman's counsel's assertion that stray remarks by Goldman leaders are irrelevant if not directly about one of the challenged processes:

> MR. GIUFFRA: So let's think about it, let's just assume theoretically there's one bad email that someone wrote or two bad e-mails, it's a big company, over 19 years.  What is the relevance of any of that in Phase I?
>
> THE COURT: I explained what the relevance is, potentially.  If there are people who are responsible for implementing the processes, and they discuss these processes, and they're responsible for approving them, and they have . . . and there are people who are responsible for that and they harbor an animus towards women that is evidenced in whatever.  They're the ones pulling the strings.  So, isn't it relevant?"

Jan. 23, 2020 Hr'g Tr. at 67:25-68:12.  Goldman now twists the Court's remarks to argue that showing animus is required to obtain the animus discovery.  But that is completely illogical: a party cannot be required to show the very evidence its motion seeks, in order to justify the motion.

Though not required, there is indicia that the evidence exists.  The records of formal internal complaints lodged with the HR department include a complaint that it was "███████████████ ██████████████████████████████████████████████████████████████" ECF No. 247 at 25.[5]  Edith Hunt also testified that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. C at 184:21-185:15.  The complaint files also show that over ██████ other members of the Management Committee ("MC"), Partnership Committee, and

_____

[5] Formal internal complaint files are no substitute for discovery directly from leadership itself, for several reasons.  First, it is well-documented that sexual harassment is under-reported in the workplace due to well-founded fears of retaliation.  *See* Lilia M. Cortina & Jennifer L. Berdahl, *Sexual Harassment in Organizations: A Decade of Research in Review*, *in* The SAGE Handbook of Organizational Behavior 469, 484 (Julian Barling & Cary L. Cooper eds., 2008).  Second, Goldman has repeatedly argued that internal complaint files do not show that discrimination actually occurred and are impermissible hearsay.  *See, e.g.*, ECF. No. 264 at 51.  Third, the internal complaint files Goldman produced in merits discovery are limited to complaints of gender discrimination specifically in the challenged processes, meaning that for a substantial portion of the class period Goldman has not produced internal complaints regarding (for example) sexual harassment.

The Hon. Robert W. Lehrburger
November 3, 2020
Page 3

diversity committees were the subject of gender discrimination complaints, and the *Systemax* witnesses' knowledge of and tolerance of such conduct is relevant to intentional discrimination.

### III.    The Discovery Is Proportional and Goldman's Claims of Burden Are Unreliable

First, Goldman's assertion of burden cannot be assessed in a vacuum.  Under Rule 26(b)(1), burden must be weighed against benefit and importance to determine whether the discovery is "proportional to the needs of the case."  Here, the relevance of this evidence is extremely high: as this Court acknowledged, if the persons responsible for overseeing and implementing the challenged practices harbor gender animus, or tolerated it in others, that is probative of intentional discrimination.  Jan. 23, 2020 Hr'g Tr. at 67:25-68:12.

Second, Goldman's estimations of burden do not add up.  To start with, its calculations are based on the total number of hits from **all** class certification search terms, most of which addressed the challenged processes generally and are irrelevant to the current searches.  The search terms were narrowed in merits discovery in many different respects and would be further narrowed here to target animus evidence.  Similarly, Goldman's estimate of the number of documents assumes that the volume of senior leader animus documents would be the same as that of the average pre-class-certification custodian—this is highly unlikely, given the substantially narrower focus of this discovery.  Romero Decl. ¶¶ 13-16, ECF No. 1097-4.  Finally, the document hit counts do not appear to account for either a) de-duplication across custodians, or b) email threading.  Should the Court weigh cost considerations in its proportionality analysis, it should be based on an accurate and reasonable accounting of review volume, which Goldman has not provided.

Goldman's cost estimates are also far outside the norm.  Using conservative estimates, document review on average is approximately one dollar per document.  *See* Nicholas Pace & Laura Zakaras, *Where the Money Goes* 44 tbl. 4.1 (RAND Corp. 2012).  This assumes basic benchmarks for review speed and average industry costs (and does not account for Goldman's likely market advantages that further lower costs).  Goldman's estimate was based on an average cost of over eight dollars per page. Romero Decl. ¶16.  Regardless, Plaintiffs remain open to conferring with Goldman over ways to make the review more efficient and less costly, such as technology-assisted review ("TAR"), which significantly reduces the number of attorney-hours.  *See* ECF No. 857.[6]

### IV.    Goldman's Denial of the Management Committee's Role Is Not Credible

Goldman argues that the challenged processes are not overseen by the MC, but rather by HCM; this is true only in an administrative sense.  Review of Goldman's Appendix B shows the HCM witnesses testifying that their work involved, *e.g.*, identifying timelines, helping with the technology to run the processes, and generating reports about the percentage completion of the work.  By contrast, decisions about changes to the processes had to go through the "key stakeholders" (as one HCM staff called the MC when compiling their feedback on review changes). *See* Pl. Ltr. Ex. 18; *id.* at ns. 5, 13, 14.  Goldman does not engage with the bulk of Plaintiffs' evidence on this point, because it cannot evade the fact that ███████████████████████████████████
████████████████████████████████████████████████████████████████ "
Pl. Ltr. at 2, n.5.

---

[6] Goldman could also stop redacting for relevance, which is unnecessary and inflates costs.