**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

November 2, 2020

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the Southern District of New York,
      500 Pearl Street,
         New York, New York 10007-1312.

Re: *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

On behalf of Defendants, I respond to Plaintiffs' letter-motion ("Letter"; ECF No. 1095), filed less than one month before the close of fact discovery, asking the Court to authorize a speculative, expensive and time-consuming search for so-called "boy's club" emails from 13 of the most senior current and former Goldman Sachs executives over an 18-year period. Plaintiffs have already received nearly 10,000 documents from these 13 executives, and Defendants have already searched extensively for "boy's club" emails as part class certification discovery and, to the extent "boy's club" terms were referenced in connection with the challenged processes, during merits discovery. In the wake of the Court's order authorizing two "apex" depositions, Plaintiffs now ask to extend document discovery by months to try to find what they speculate or hope might be "boy's club" comments through still more searches of files of the Firm's senior leaders. (Letter at 1.) At the January 23, 2020 conference, the Court made clear that it would authorize such discovery only if Plaintiffs could show that these executives designed or implemented the challenged processes *and* harbored animus against women. Because Plaintiffs have not made either required showing, the Court should deny their application.

**Background**

Defendants have not "withheld" anything (Letter at 1, 3 n.19) but undertook the discovery required at each stage of the case using search terms agreed by the parties or ordered by the Court. During class certification discovery, Defendants conducted extensive searches for "boy's club" discovery from 62 document custodians, including former President Gary Cohn, former co-head of the Investment Management Division Ed Forst, and current CEO David Solomon, covering 2003 to 2012, using agreed search terms such as "babe," "bimbo*" and "harass*." (Ex. A (class certification search terms).) After Judge Torres denied class certification of Plaintiffs' "boy's club' disparate treatment claim" (Class Cert. Order at 47, ECF No. 578), the Court held that "Defendants need not produce 'boy's club' evidence that do[es] not relate to the" three challenged "practices and procedures." (Dec. 21, 2018 Order ¶ 1, ECF No. 657; *see* Oct. 7, 2019 Order at 8, ECF No. 873 (overruling objections).) In response, the parties negotiated new merits search terms connecting "boy's club" terms to the challenged processes (*e.g.*, "evaluate /35 babe*"). (Ex. A (merits search terms).) Plaintiffs next tried to reopen "boy's club" discovery by proposing a trial plan contemplating such discovery, but on November 25, 2019, this Court rejected the effort because, as Judge Torres held, "Phase 1 will not include . . . any 'boys' club' claims or anecdotes." (Nov. 25, 2019 Order at 3, ECF No. 888.)

Plaintiffs then moved to reconsider that ruling, pointing to the Second Circuit's fact-bound decision in *Lenzi* v. *Systemax, Inc.*, where because plaintiff's direct supervisor, who was the CFO, "made graphic comments" directly to her, his attitudes toward women were directly relevant to her individual discrimination suit. 944 F.3d 97, 111–12 (2d Cir. 2019). This Court correctly held that *Systemax* did not support Plaintiffs' open-ended desire for "boy's club" discovery because of "clear differences between *Systemax* and this case," including that "this is a class action" while "*Systemax* involved an individual claim of discrimination." (Jan. 23, 2020 Conf. Tr. at 53:22–54:8.) In so ruling, the Court made clear that it would entertain (though not necessarily grant) an application for additional discovery *only if* Plaintiffs identified a core group of individuals that "maintained and implemented" the three challenged processes at issue in this case *and* showed that those individuals "harbored discriminatory animus towards women." (*Id.* at 54:19–21.) Even though Plaintiffs had all the evidence cited in their Letter as of January 23,[1] Plaintiffs did not then claim—as they do now—that mere membership on the Firm's Management Committee justified reopening document discovery.

Over the past 10 months, Plaintiffs failed to obtain the proof the Court said would be necessary to justify more "boy's club" discovery. Nevertheless, just three weeks before the fact discovery deadline, Plaintiffs made this motion, relying on previously produced documents and testimony taken years ago, in a last-ditch effort to upend the schedule. Plaintiffs wrongly claim that Defendants have "already identified" nonresponsive "boys' club" documents unrelated to challenged processes and "withheld" those documents. (Letter at 3 n.19.) To the contrary, Defendants conducted extensive searches to identify "boy's club" emails during class certification review and turned over any responsive emails that they found. For merits review, as the Court directed, Defendants did not run standalone "boy's club" search terms and, as a result, would have to start their review from scratch for all 13 custodians, including five entirely new custodians and additional years of data for class certification custodians.[2] Defendants have already spent over $▮ million on merits document review alone and, based on prior search term hits and costs, estimate that Plaintiffs' proposal for still more discovery will require reviewing up to 3 million documents, which would take 17 months and cost over $24 million. (Romero Decl. ¶¶ 16–20.)

## Argument

This Court agreed to entertain a limited application for additional discovery *only if* Plaintiffs could demonstrate that (i) a "small" "core" group of executives "are responsible for implementing the processes, and they discuss these processes, and they're responsible for approving them," *and* (ii) "they harbor an animus towards women." (Jan. 23, 2020 Conf. Tr. at 66:2, 68:4–21, 71:23–25.) Plaintiffs do not satisfy either requirement.

*First*, as the testimony identified by *Plaintiffs* confirms, the Management Committee is not the "core" group of "people who implement those processes or design them." (*Id.* at 54:24–55:1, 66:2.) In

---

[1]   Of the 27 documents cited by Plaintiffs, 26 (or exact duplicates were produced) were produced prior to the January 23, 2020 conference—many years earlier—and thus were not "previously withheld as privileged." (Letter at 1.) The remaining document (Ex. 7) was produced in April 2020—six months ago—and states only that Firm employees consulted with the Managing Committee on "diversity efforts and initiatives" (Letter at 2), something Plaintiffs have known for years (Ex. B (GS0255526) at -529)).

[2]   Defendants cannot shortcut this process because five of the 13 individuals were merits custodians. Even if some documents hit on "boy's club" search terms previously reviewed, those documents would have to be reviewed again. As in every document review, Defendants (i) coded documents responsive or nonresponsive, and (ii) only withheld responsive documents if they were privileged. (Romero Decl. ¶¶ 6–9.)

June 2012, Plaintiffs deposed Sally Boyle—a senior Human Capital Management ("HCM") executive and Rule 30(b)(6) designee for the Firm's "corporate organization" and "managerial structure"—who testified that "the purpose of the [management] committee" is to "share[]" "information about our businesses across the world." (Letter Ex. 3 at 81:23–82:4; Ex. C (Boyle Dep.) at 12:11–13:18.) Plaintiffs asked Ms. Boyle whether the Management Committee "make[s] decisions about compensation," "make[s] decisions about promotions," "make[s] decisions about the process by which candidates are selected for promotion," or "make[s] decisions about the . . . 360 review system," and she testified "No" to every question. (Letter Ex. 3 at 82:13–83:15.) Ms. Boyle further testified that the Management Committee does not "monitor" or give any "input to the people making the promotion decisions for vice president to managing director." (Ex. C (Boyle Dep.) at 87:3–10.) As shown in Appendix A, every witness provided the same testimony about the Management Committee. As this Court has already recognized, it is HCM—not the Management Committee—that "developed, managed and oversaw the challenged processes" (Oct. 20, 2020 Conf. Tr. at 23:25–24:3), and Plaintiffs acknowledged that HCM's "talent assessment group" ("TAG") was "the group responsible for the . . . performance reviews" (*id.* at 5:5–6). Appendix B summarizes the testimony of every witness on the roles of HCM and TAG.

Plaintiffs wrongly claim that the Management Committee was told of a purported "adverse impact" and then directed "changes to the performance review processes." (Letter at 2.) In support, Plaintiffs rely on a single slide presented in 2014 to the Americas Diversity Committee and the Board (*not* the Management Committee) showing "**slight[] differences** across 360 reviews, Manager Quartile and Manager Effectiveness" scores that "have narrowed since 2007." (Letter Ex. 12 at -257 (emphasis in original); *see id.* Exs. 14–15.) Plaintiffs showed this slide to Goldman Sachs's former Chief Diversity Officer, who testified that "this was a slight difference" based on "a snapshot," and the Firm "had initiatives to continue to foster the development and retention of our diverse employees." (Ex. D (Vazquez-Ubarri Dep.) at 63:5–20, 67:14–20; *see* Ex. E (Cooper Dep.) at 240:19–241:4 ("it's a good thing that the difference is declin[ing]," and "[i]t takes more rigor and work to understand the drivers of" "a 1 percent number or 4 percent move").) The record is clear that "a recommendation" to change the processes in 2013 to 2014 came from "[a] group of people [within] HCM," working with the "engineering team, compliance," and "legal," not the Management Committee, for reasons unrelated to any supposed disparate impact of those processes. (Ex. F (4/3/2018 Landman Dep.) at 68:3–25.)

*Second*, Plaintiffs have not adduced any evidence of animus by any of the 13 executives. Privately and publicly, every member of the Management Committee was highly supportive of diversity. (*See, e.g.*, Ex. G (Hunt Dep.) at 170:1–3 ("Lloyd [Blankfein] was very involved with diversity efforts. I would describe him as a champion."); *id.* at 175:6–9 ("Gary [Cohn] was also a champion" of "diversity efforts at Goldman Sachs."); Ex. D (Vazquez-Ubarri Dep.) at 128:5–129:12 (Lloyd Blankfein "supported our efforts" "on diversity"); *see also* App'x C (listing evidence of commitment to diversity).)

*Third*, beyond failing to meet this Court's two-part requirement for more "boy's club" discovery, there is no other basis for such discovery. Given the millions and years already spent, Plaintiffs' burdensome request for additional months of discovery that would cost over $24 million plainly is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs have been aware of the membership and role of the Management Committee *since 2012* and have had all the evidence cited in their Letter since the January 23 conference or before. In these circumstances, they cannot show "good cause" to reopen discovery. *Gucci Am., Inc.* v. *Guess?, Inc.*, 790 F. Supp. 23d 136, 139–40 (S.D.N.Y. 2011) (Cott, J.) (collecting cases).

Because the Court has already rejected Plaintiffs' applications for "boy's club" discovery at least *four times*, and Plaintiffs rely entirely on evidence they could have submitted in earlier applications to the Court, Defendants do not believe a conference is needed to deny Plaintiffs' fifth bite at the apple.

The Honorable Robert W. Lehrburger  -4-

                                                    Respectfully submitted,

                                                    */s/ Robert J. Giuffra, Jr.*

                                                    Robert J. Giuffra, Jr.
                                                    Sullivan & Cromwell LLP

cc:      All parties of record (by ECF)