# Exhibit D
## *Excerpted*

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
1              UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF NEW YORK

3

4      _____

5      H. CRISTINA CHEN-OSTER; SHANNA

       ORLICH; ALLISON GAMBA; and MARY

6      DE LUIS,

7                      Plaintiffs,    Case No. 10-cv-6950-

8              v.                               AT-RWL

9      GOLDMAN, SACHS & CO. and THE

       GOLDMAN SACHS GROUP, INC.,

10

                       Defendants.

11     _____

12

13                 CONFIDENTIAL

14             ATTORNEYS' EYES ONLY

15

16       REMOTE VIDEOCONFERENCED AND

17         VIDEOTAPED DEPOSITION OF

18           ANILU VAZQUEZ-UBARRI

19         DATE TAKEN: AUGUST 13, 2020

20

21

22

23     REPORTED BY: PAUL J. FREDERICKSON, CSR

24     JOB NO. 4206133

25     PAGES 1-344
```

Page 1

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1          UNITED STATES DISTRICT COURT

 2          SOUTHERN DISTRICT OF NEW YORK

 3

 4      _____

 5      H. CRISTINA CHEN-OSTER; SHANNA

        ORLICH; ALLISON GAMBA; and MARY

 6      DE LUIS,

 7                      Plaintiffs,    Case No. 10-cv-6950-

 8              v.                            AT-RWL

 9      GOLDMAN, SACHS & CO. and THE

        GOLDMAN SACHS GROUP, INC.,

10

                        Defendants.

11      _____

12

13

14          Remote Videoconferenced and

15      Videotaped Deposition of ANILU

16      VAZQUEZ-UBARRI, the witness herein, at

17      7:53 a.m. Pacific Time, pursuant to

18      notice, reported by certified court

19      reporter Paul J. Frederickson, CSR.  All

20      parties appeared remotely and the witness

21      was sworn remotely.

22

23

24

25
```

Page 2

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1              A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFFS:

 4       LIEFF CABRASER HEIMANN & BERNSTEIN

 5       275 Battery Street

 6       29th Floor

 7       San Francisco, CA 94111-3339

 8       415.956.1000

 9       BY: ANNE B. SHAVER, ESQ.

10       ashaver@lchb.com

11       BY: KELLY M. DERMODY, ESQ.

12       kdermody@lchb.com

13       BY: MICHELLE A. LAMY, ESQ.

14       mlamy@lchb.com

15

16    FOR THE DEFENDANTS:

17       SULLIVAN & CROMWELL LLP

18       1700 New York Avenue, NW

19       Suite 700

20       Washington, DC 20006-5215

21       202-956-7500

22       BY: AMANDA FLUG DAVIDOFF, ESQ.

23       davidoffa@sullcrom.com

24

25
```

Page  3

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1    FOR THE DEFENDANTS:

 2      SULLIVAN & CROMWELL LLP

 3      125 Broad Street

 4      New York, NY 10004-2498

 5      212.558-7357

 6      BY: ANN-ELIZABETH OSTRAGER, ESQ.

 7      ostragerae@sullcrom.com

 8      212.558.4000

 9      BY: LEILA R. SIDDIKY, ESQ.

10      siddikyl@sullcrom.com

11

12    ALSO PRESENT:

13      ADAM HEFT, ESQ.

14      Goldman Sachs

15

16    ALSO PRESENT:

17      ROBERT VELASCO

18      Videographer

19      ISRAEL REYES

20      Videographer

21

22

23

24

25
```

Page 4

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | form. | 09:04:44 |
| 2 | A.    So what I -- what I recall is | 09:04:54 |
| 3 | that in preparation for any discussions my | 09:04:58 |
| 4 | team and I would try to set frameworks of | 09:05:04 |
| 5 | discussions that would help us move forward | 09:05:09 |
| 6 | with our strategy.  And as part of that we | 09:05:12 |
| 7 | would identify potential explanations for a | 09:05:16 |
| 8 | number of things, including why certain data | 09:05:20 |
| 9 | may look a certain way.  We also debated a | 09:05:25 |
| 10 | lot whether the data itself was the best way | 09:05:33 |
| 11 | to look at a particular topic.  We might be | 09:05:34 |
| 12 | missing -- there might be additional context | 09:05:37 |
| 13 | that was not readily identifiable in the | 09:05:38 |
| 14 | particular number that we were looking at. | 09:05:42 |
| 15 | And, again, for this, for the | 09:05:44 |
| 16 | slight differences that we noticed, we would | 09:05:47 |
| 17 | have -- we would have normally identified | 09:05:51 |
| 18 | different reasons why we thought it could be | 09:05:55 |
| 19 | and what we needed to do to find out more. | 09:05:58 |
| 20 | So there was a lot of | 09:06:03 |
| 21 | brainstorming that happened in our team. | 09:06:04 |
| 22 | Q.    Okay. | 09:06:06 |
| 23 | And with respect to female | 09:06:08 |
| 24 | underrepresentation in top quartiles and | 09:06:12 |
| 25 | overrepresentation in bottom quartiles, what | 09:06:15 |

Page 62

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | reasons did you identify for why that could | 09:06:20 |
| 2 | be? | 09:06:24 |
| 3 | MS. FLUG DAVIDOFF:  Objection, | 09:06:26 |
| 4 | misstates testimony. | 09:06:28 |
| 5 | A.    So just again this -- any given | 09:06:33 |
| 6 | piece of data would be a snapshot of a | 09:06:40 |
| 7 | particular point in time.  And as I | 09:06:43 |
| 8 | mentioned, this was a slight difference in | 09:06:46 |
| 9 | representation for the population.  The | 09:06:52 |
| 10 | things that could impact that would be a | 09:06:56 |
| 11 | number a things.  As you said, that's a | 09:07:00 |
| 12 | global firm-wide stat.  So you would need to | 09:07:04 |
| 13 | look at the specifics of each group and each | 09:07:09 |
| 14 | region.  And, I mean, there could be a | 09:07:14 |
| 15 | number of factors, and also including -- so, | 09:07:15 |
| 16 | like, what was the population?  What roles | 09:07:19 |
| 17 | they were in?  How valuable those roles | 09:07:21 |
| 18 | would be.  So all kinds of things that could | 09:07:24 |
| 19 | impact the -- you know, the particular | 09:07:28 |
| 20 | person and where they landed. | 09:07:32 |
| 21 | So we would look at all of that. | 09:07:35 |
| 22 | Q.    So the value of the role could | 09:07:38 |
| 23 | impact their performance evaluation score? | 09:07:41 |
| 24 | MS. FLUG DAVIDOFF:  Objection to | 09:07:44 |
| 25 | form. | 09:07:44 |

Page 63

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | was a little different. | 09:10:09 |
| 2 | My question was whether you | 09:10:10 |
| 3 | could point to any specific initiative that | 09:10:12 |
| 4 | you undertook as a result of the analysis | 09:10:16 |
| 5 | that you performed on gender differences in | 09:10:22 |
| 6 | quartile distribution. | 09:10:27 |
| 7 | A.   So -- | 09:10:30 |
| 8 | MS. FLUG DAVIDOFF:  Objection. | 09:10:30 |
| 9 | A.    -- again, yeah, I don't -- I | 09:10:32 |
| 10 | don't recall -- it's a little bit hard to | 09:10:34 |
| 11 | say that it's tied to one way or another. | 09:10:36 |
| 12 | We had an overall strategy to impact the | 09:10:39 |
| 13 | performance and the retention, as I said of | 09:10:44 |
| 14 | everyone, but a specific focus on diversity. | 09:10:48 |
| 15 | So there were a number, you know, of | 09:10:50 |
| 16 | initiatives specifically focused on that | 09:10:54 |
| 17 | that I would hope had an impact on the | 09:10:57 |
| 18 | retention and the development.  If you want | 09:11:01 |
| 19 | me to name some of those initiatives, they | 09:11:03 |
| 20 | were at all levels.  So I'm happy to give | 09:11:05 |
| 21 | you examples. | 09:11:08 |
| 22 | Q.   No, thank you.  I'm sure we'll | 09:11:10 |
| 23 | have time to get into that.  But my question | 09:11:12 |
| 24 | is more targeted. | 09:11:15 |
| 25 | My question is whether, as a | 09:11:16 |

Page 66

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | result of the analysis that you did on | 09:11:19 |
| 2 | performance results by gender, you undertook | 09:11:25 |
| 3 | any specific initiative that were aimed | 09:11:28 |
| 4 | at -- at that issue, the issue of quartile | 09:11:35 |
| 5 | distribution by gender. | 09:11:38 |
| 6 | MS. FLUG DAVIDOFF:  Objection to | 09:11:41 |
| 7 | form and objection, asked and | 09:11:41 |
| 8 | answered. | 09:11:43 |
| 9 | THE WITNESS:  Sorry, I couldn't | 09:11:55 |
| 10 | hear it, your objection. | 09:11:56 |
| 11 | MS. FLUG DAVIDOFF:  I'm sorry. | 09:11:59 |
| 12 | I said "objection to form, objection, | 09:11:59 |
| 13 | asked and answered." | 09:12:02 |
| 14 | A.    So, again, as I said before, | 09:12:08 |
| 15 | that's -- that data is a data point in time. | 09:12:11 |
| 16 | That was not a conclusion.  That was a data | 09:12:14 |
| 17 | point, as there were many other points.  We | 09:12:21 |
| 18 | had initiatives to continue to foster the | 09:12:23 |
| 19 | development and retention of our diverse | 09:12:27 |
| 20 | employees at the firm. | 09:12:31 |
| 21 | Q.    Okay. | 09:12:32 |
| 22 | So, in other words, is it fair | 09:12:44 |
| 23 | to say that you didn't have a specific | 09:12:45 |
| 24 | initiative responsive directly to this | 09:12:48 |
| 25 | analysis? | 09:12:52 |

Page 67

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1              MS. FLUG DAVIDOFF:  Objection to      09:12:56
 2         form, foundation, and misstates           09:12:56
 3         testimony.                                 09:12:58
 4              MS. SHAVER:  And I apologize,         09:13:00
 5         Amanda.  I didn't mean to talk over        09:13:01
 6         you.                                       09:13:03
 7    BY MS. SHAVER:                                  09:13:03
 8         Q.    In other words, you -- did you       09:13:07
 9    look at this analysis and say, okay, we --      09:13:09
10    because of this we need to do X                 09:13:14
11    specifically?                                   09:13:18
12              MS. FLUG DAVIDOFF:  Objection to      09:13:22
13         form.                                      09:13:22
14         A.    What I recall -- what I recall       09:13:23
15    is that we would have looked at this data       09:13:24
16    point and other data points and do further     09:13:29
17    research on how to retain.  This -- again,      09:13:33
18    this is just one slide into what goes into     09:13:39
19    retaining and developing diverse               09:13:43
20    professionals.  So it would be inclusive to    09:13:47
21    act on just one data point.                     09:13:51
22              MS. FLUG DAVIDOFF:  Anne,             09:14:00
23         whenever there is a good break, and it     09:14:02
24         doesn't have to be now, I think we --      09:14:04
25         we're ready for a break whenever you       09:14:06
```

Page 68

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. FLUG DAVIDOFF:  Objection to | 11:13:54 |
| 2 | form. | 11:13:55 |
| 3 | A.    Do I agree that it's important | 11:14:00 |
| 4 | to what?  That CEO involvement is important | 11:14:02 |
| 5 | to what specifically? | 11:14:06 |
| 6 | Q.    To progress on diversity and | 11:14:07 |
| 7 | inclusion. | 11:14:09 |
| 8 | A.    It's important, yes. | 11:14:12 |
| 9 | Q.    And were you satisfied with the | 11:14:13 |
| 10 | efforts that Goldman Sachs' chairman, Lloyd | 11:14:25 |
| 11 | Blankfein -- | 11:14:25 |
| 12 | A.    Sorry, did you complete your | 11:14:38 |
| 13 | question? | 11:14:39 |
| 14 | Q.    I'm sorry, it looks like it | 11:14:40 |
| 15 | cut -- I got cut off there. | 11:14:41 |
| 16 | A.    Yeah. | 11:14:43 |
| 17 | MS. SHAVER:  Sorry, my realtime | 11:14:48 |
| 18 | is off.  Give me one second. | 11:14:49 |
| 19 | THE WITNESS:  Okay. | 11:14:52 |
| 20 | THE COURT REPORTER:  You can try | 11:14:56 |
| 21 | refreshing. | 11:14:58 |
| 22 | [Pause.] | 11:15:01 |
| 23 | MS. FLUG DAVIDOFF:  Mine went | 11:15:05 |
| 24 | off a little while back and I just | 11:15:06 |
| 25 | went back to the original link and got | 11:15:09 |

Page 127

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | it again. | 11:15:11 |
| 2 | MS. SHAVER:  Okay.  I think it | 11:15:12 |
| 3 | looks like I'm up.  Okay. | 11:15:13 |
| 4 | BY MS. SHAVER: | 11:15:13 |
| 5 | Q.   And how did Goldman Sachs' | 11:15:15 |
| 6 | chairman, Lloyd Blankfein, take an active | 11:15:19 |
| 7 | role on diversity? | 11:15:22 |
| 8 | A.   There are things he spoke.  He | 11:15:28 |
| 9 | was vocal about it internally and | 11:15:29 |
| 10 | externally.  He supported our efforts.  The | 11:15:32 |
| 11 | firm funded our efforts.  Again, he was an | 11:15:37 |
| 12 | active participant. | 11:15:47 |
| 13 | Q.   And were you satisfied with the | 11:15:50 |
| 14 | efforts he made? | 11:15:52 |
| 15 | A.   Yes. | 11:15:52 |
| 16 | Q.   Did he ever host a Chairman's | 11:15:54 |
| 17 | Forum on Diversity at Goldman Sachs? | 11:15:58 |
| 18 | A.   Again, I don't recall if that | 11:15:59 |
| 19 | happened.  He hosted other forums on | 11:16:02 |
| 20 | diversity. | 11:16:06 |
| 21 | Q.   Did he ever host a round table | 11:16:06 |
| 22 | with high-performing diverse VPs and MDs? | 11:16:17 |
| 23 | A.   I'm pretty sure he did. | 11:16:23 |
| 24 | Q.   Okay. | 11:16:26 |
| 25 | Did he ever host a recognition | 11:16:28 |

Page 128

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | dinner for managers and sponsors of | 11:16:29 |
| 2 | diversity he promotes? | 11:16:34 |
| 3 | A.   I know he hosted dinners for | 11:16:35 |
| 4 | managers.  I don't recall the specifics of | 11:16:38 |
| 5 | the rest of your question. | 11:16:40 |
| 6 | Q.   Okay. | 11:16:42 |
| 7 | Do you recall how many times he | 11:16:44 |
| 8 | hosted a round table with high-performing | 11:16:46 |
| 9 | diversity VPs and MDs?  Was that a regular | 11:16:52 |
| 10 | thing? | 11:16:56 |
| 11 | A.   It definitely happened more than | 11:16:56 |
| 12 | once.  I don't recall the specific number. | 11:16:58 |
| 13 | Q.   Do you know if it was a regular | 11:17:00 |
| 14 | basis?  Yearly or semiannually or so forth? | 11:17:02 |
| 15 | A.   I don't recall. | 11:17:04 |
| 16 | Q.   Okay. | 11:17:05 |
| 17 | What about recognition dinners | 11:17:06 |
| 18 | for managers and sponsors of diverse | 11:17:09 |
| 19 | employees? | 11:17:13 |
| 20 | A.   I recall him hosting events like | 11:17:14 |
| 21 | that. | 11:17:18 |
| 22 | Q.   When? | 11:17:19 |
| 23 | A.   I don't recall the dates. | 11:17:19 |
| 24 | MS. FLUG DAVIDOFF:  Objection to | 11:17:21 |
| 25 | form. | 11:17:21 |

Page 129

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MS. FLUG DAVIDOFF:  Objection to | 13:09:35 |
| 2 | form. | 13:09:35 |
| 3 | A.    What I recall is that I was not | 13:09:38 |
| 4 | personally responsible for that, but I know | 13:09:41 |
| 5 | that there was reporting on a number of | 13:09:44 |
| 6 | human capital topics that would go to the | 13:09:48 |
| 7 | Management Committee. | 13:09:50 |
| 8 | Q.    Was your team responsible for | 13:09:51 |
| 9 | providing any data reports on a scheduled | 13:09:55 |
| 10 | basis to the Management Committee? | 13:09:57 |
| 11 | A.    I don't recall my team being | 13:10:02 |
| 12 | responsible for that task. | 13:10:04 |
| 13 | Q.    Okay. | 13:10:05 |
| 14 | And when you said that there was | 13:10:10 |
| 15 | a reporting an a number of human capital | 13:10:12 |
| 16 | topics that would go to the Management | 13:10:16 |
| 17 | Committee, can you tell me specifically what | 13:10:18 |
| 18 | you are referring to? | 13:10:20 |
| 19 | A.    I recall that our reporting | 13:10:21 |
| 20 | function provided course of business | 13:10:24 |
| 21 | reporting to the Management Committee. | 13:10:27 |
| 22 | Q.    Okay. | 13:10:30 |
| 23 | Are you aware of whether or not | 13:10:33 |
| 24 | the Management Committee received regular | 13:10:35 |
| 25 | reporting on diversity representation in the | 13:10:38 |

Page 188

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | The third item says: | 15:24:19 |
| 2 | "Provide quarterly updates to | 15:24:21 |
| 3 | Management Committee on diversity" | 15:24:23 |
| 4 | Is it fair to say that that is | 15:24:26 |
| 5 | not a solution that was implemented? | 15:24:28 |
| 6 | A.   So I don't recall if it was -- | 15:24:30 |
| 7 | if that specifically was implemented or if | 15:24:38 |
| 8 | it became part of other data provided to | 15:24:43 |
| 9 | Management Committee. | 15:24:47 |
| 10 | Q.   What other data provided to the | 15:24:49 |
| 11 | Management Committee? | 15:24:51 |
| 12 | A.   What I said earlier is that my | 15:24:54 |
| 13 | recollection is that HCM provided data to | 15:24:56 |
| 14 | Management Committee from time to time. | 15:25:01 |
| 15 | Q.   Okay. | 15:25:03 |
| 16 | Which teams within HCM are you | 15:25:04 |
| 17 | referring to? | 15:25:07 |
| 18 | A.   My recollection is that it would | 15:25:10 |
| 19 | have been the solutions team or the people | 15:25:13 |
| 20 | analytics team.  It might have been other | 15:25:20 |
| 21 | data teams or other teams I might have owned | 15:25:24 |
| 22 | a particular data.  I don't know the full | 15:25:31 |
| 23 | scope of what could have been provided. | 15:25:33 |
| 24 | Q.   Sure. | 15:25:35 |
| 25 | What -- what's your basis for | 15:25:37 |

Page 255

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | knowing that those teams did from time to | 15:25:39 |
| 2 | time provide data to the Management | 15:25:40 |
| 3 | Committee? | 15:25:44 |
| 4 | MS. FLUG DAVIDOFF:  Objection, | 15:25:45 |
| 5 | misstates the testimony. | 15:25:45 |
| 6 | A.   I recall that those teams | 15:25:51 |
| 7 | provided data.  That was their job, to | 15:25:55 |
| 8 | provide data.  And I believe that there | 15:25:58 |
| 9 | were, you know, business -- in normal course | 15:26:04 |
| 10 | of business data that they would have | 15:26:08 |
| 11 | provided.  I just don't know the specific | 15:26:11 |
| 12 | data. | 15:26:13 |
| 13 | Q.   And do you know who would know | 15:26:19 |
| 14 | what data reporting was provided to | 15:26:20 |
| 15 | Management Committee from HCM? | 15:26:23 |
| 16 | A.   I may know -- I would assume | 15:26:31 |
| 17 | that Edith, having sat in the Management | 15:26:33 |
| 18 | Committee, would have known. | 15:26:37 |
| 19 | Q.   Edith Cooper? | 15:26:39 |
| 20 | A.   Correct. | 15:26:40 |
| 21 | Q.   Okay. | 15:26:40 |
| 22 | With respect to the divisional | 15:26:50 |
| 23 | Operations Committees or Executive | 15:26:57 |
| 24 | Committees, even if you did not provide -- | 15:26:59 |
| 25 | your team did not provide data to them on a | 15:27:03 |

Page 256

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Time.] | 16:12:03 |
| 2 | [Resuming at 4:19 p.m. Pacific | 16:12:04 |
| 3 | Time.] | 16:12:11 |
| 4 | THE VIDEOGRAPHER:  We are back | 16:12:11 |
| 5 | on the record.  The time is 4:19 p.m. | 16:19:04 |
| 6 | EXAMINATION CONTINUING | 16:19:04 |
| 7 | BY MS. SHAVER: | 16:19:04 |
| 8 | Q.  Okay.  Was there any | 16:19:09 |
| 9 | recommendations that you made regarding | 16:19:12 |
| 10 | talent management processes at Goldman Sachs | 16:19:15 |
| 11 | that Lloyd Blankfein did not support? | 16:19:17 |
| 12 | A.  I don't recall that. | 16:19:34 |
| 13 | Q.  You -- sorry.  You can't think | 16:19:42 |
| 14 | of a recommendation that you made to improve | 16:19:43 |
| 15 | talent processes at Goldman Sachs, top | 16:19:47 |
| 16 | management processes at Goldman Sachs that | 16:19:49 |
| 17 | Lloyd Blankfein did not support? | 16:19:51 |
| 18 | A.  I don't recall that. | 16:19:53 |
| 19 | Q.  You don't recall that happening? | 16:19:54 |
| 20 | A.  I don't recall that happening. | 16:19:56 |
| 21 | Q.  Okay. | 16:19:57 |
| 22 | Thank you. | 16:19:59 |
| 23 | Putting 15 into your folders. | 16:20:08 |
| 24 | [Deposition Exhibit 15 marked | 16:20:15 |
| 25 | for identification.] | 16:20:16 |

Page 288

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | that's his words.  But if they were, I -- | 16:24:20 |
| 2 | I'm not offended by the statement.  I | 16:24:23 |
| 3 | believe that the networks are for community. | 16:24:28 |
| 4 | Q.    Okay. | 16:24:28 |
| 5 | Do you believe that -- | 16:24:32 |
| 6 | A.    And for celebrating. | 16:24:34 |
| 7 | Q.    Did you ever have a concern that | 16:24:34 |
| 8 | Lloyd Blankfein didn't take seriously the | 16:24:38 |
| 9 | network's requests regarding better | 16:24:41 |
| 10 | representation of their membership in | 16:24:44 |
| 11 | leadership? | 16:24:46 |
| 12 | MS. FLUG DAVIDOFF:  Objection, | 16:24:48 |
| 13 | foundation, form. | 16:24:51 |
| 14 | A.    I -- I don't remember having | 16:24:55 |
| 15 | that concern. | 16:24:58 |
| 16 | Q.    Did you ever get the sense that | 16:25:00 |
| 17 | Lloyd Blankfein thought that affinity | 16:25:03 |
| 18 | networks were just for celebrating the | 16:25:05 |
| 19 | culture and nothing more? | 16:25:08 |
| 20 | MS. FLUG DAVIDOFF:  Objection to | 16:25:12 |
| 21 | form, argumentative. | 16:25:12 |
| 22 | A.    In fact I did not think that | 16:25:16 |
| 23 | because this was a meeting with the networks | 16:25:18 |
| 24 | leadership.  So evidently he felt that it | 16:25:22 |
| 25 | was important for him to meet with them in | 16:25:27 |

Page 291

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | that role. | 16:25:29 |
| 2 | Q.   On the first page it says: | 16:25:49 |
| 3 | "Networks highlighted areas that | 16:25:52 |
| 4 | need additional attention from the firm...." | 16:25:54 |
| 5 | And then it lists those areas. | 16:25:56 |
| 6 | Do you see that? | 16:26:02 |
| 7 | A.   I am trying to go back to that | 16:26:06 |
| 8 | page. | 16:26:07 |
| 9 | In the -- "networks" -- yeah. | 16:26:09 |
| 10 | Okay.  Yeah. | 16:26:09 |
| 11 | Q.   And, again, this -- these were | 16:26:20 |
| 12 | things that the networks highlighted to | 16:26:25 |
| 13 | Lloyd Blankfein; correct? | 16:26:28 |
| 14 | A.   Correct. | 16:26:29 |
| 15 | Q.   Moving on. | 16:26:36 |
| 16 | When -- did David Solomon take | 16:26:41 |
| 17 | over as chairman while you were still at | 16:26:45 |
| 18 | Goldman Sachs? | 16:26:50 |
| 19 | A.   No, I believe it happened after | 16:26:53 |
| 20 | I left. | 16:26:54 |
| 21 | Q.   Okay. | 16:26:55 |
| 22 | So as chief diversity officer & | 16:26:56 |
| 23 | head of talent, did you have any meetings | 16:27:00 |
| 24 | with David Solomon regarding gender | 16:27:04 |
| 25 | diversity at the firm? | 16:27:09 |

Page 292

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1              * * * * * * * * * * * * * * * * * * * * * *

 2              C E R T I F I C A T E

 3              * * * * * * * * * * * * * * * * * * * * * *

 4         I,  PAUL  J.  FREDERICKSON,

 5    California  Certified  Shorthand

 6    Reporter  No.  13164,  do  hereby  certify:

 7         That  prior  to  being  examined,

 8    the  witness  named  in  the  foregoing

 9    deposition  was  by  me  remotely  sworn  or

10    affirmed  to  testify  to  the  truth,  the

11    whole  truth  and  nothing  but  the  truth;

12         That  said  deposition  was  taken

13    down  by  me  remotely  in  shorthand  at,

14    and  thereafter  reduced  to  print  by

15    means  of  computer-aided  transcription;

16    and  the  same  is  a  true,  correct  and

17    complete  transcript  of  said  proceedings.

18         I  further  certify  that  I  am  not

19    interested  in  the  outcome  of  the  action.

20         Witness  my  hand  this  30th  day  of

21    August  2020.

22

23    PAUL  J.  FREDERICKSON,  CSR

24    CA  CSR  13164

25    Expiration  date  January  31,  2021
```

Page  344