**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 25, 2020

Via ECF

The Honorable Robert W. Lehrburger,
    United States District Court for the
    Southern District of New York,
        500 Pearl Street,
            New York, New York 10007-1312.

        Re:    *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
               No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

On behalf of Defendants, I respond to Plaintiffs' November 20, 2020 letter ("Letter"; ECF No. 1116) seeking documents created after the agreed-upon February 1, 2019 document collection cutoff and relating to presentations to Goldman Sachs's Board on diversity generally—*not* the three processes being challenged in this action. Because Plaintiffs belatedly seek irrelevant documents through a request made on the last day of fact discovery to provide a pretext for still more discovery, this Court should deny their request. If the Court considers ordering production of these documents, and it should not, Defendants respectfully ask that the Court decide that issue after ruling on Defendants' motion to end the class period on November 30, 2018, the date class notice issued in this action. Defendants have filed a pre-motion letter seeking that relief herewith.

**Background**

Almost two years ago, the parties agreed that Defendants would collect documents in merits discovery *through February 1, 2019* and would produce personnel data through December 31, 2018. (Ex. 1 (Defs.' Mar. 4, 2019 Ltr.) at 4.)[1] As a result, Defendants have produced no documents post-dating early 2019, and the parties' statistical experts will not analyze periods after year-end 2018.

In an abrupt turnabout, at the October 20, 2020 conference, in pressing for the "apex deposition" of Goldman Sachs's current CEO, who did not assume his position until October 2018, Plaintiffs tried to justify discovery from later periods because "[t]he relevant time period is ongoing," so "[w]e are in the relevant time period . . . 2018, 2019, 2020, the relevant time period continues." (Oct. 20, 2020 Conf. Tr. at 40:21–24.) Then, at a November 13, 2020 deposition of Erika Irish Brown, Goldman Sachs's Chief Diversity Officer since mid-2018, Plaintiffs asked

---

[1]    (*See* Ex. 2 (Defs.' Feb. 15, 2019 Ltr.) at App'x A; (Ex. 3 (Pls.' Feb. 22, 2019 Ltr.) at 4).)

numerous questions about "diversity presentations" to Goldman Sachs's Board of Directors in 2019 and 2020. (Ex. 4 (Brown Dep.) at 110:21–119:19.) Presumably Plaintiffs seek these documents as part of their efforts to seek the current CEO's deposition.

Ms. Brown's testimony makes clear that these Board presentations—like the deposition of Goldman Sachs's current CEO—bear little or no relevance to this lawsuit. Not only do they relate to 2019 and 2020, a period for which no document discovery has occurred, and no statistical expert analysis can take place, but—the one time she was asked—Ms. Brown confirmed that those presentations do *not* contain information comparing the outcomes for men and women under the challenged processes. (*Id.* at 117:9–11 (Q: "Was any presentation made regarding gender outcomes in 360 review?" A. "No.") Ms. Brown's testimony makes clear that these Board presentations *did not* address supposed gender differences under the challenged processes.[2]

On November 12, claiming not to know of the 2019 and 2020 Board presentations on diversity until Ms. Brown's deposition—something that would be true of every document outside the agreed-upon document discovery period—Plaintiffs demanded production of the 2019 and 2020 Board presentations on diversity. After the parties failed to reach agreement, on the last day of fact discovery, Plaintiffs asked this Court to order production of diversity-related "presentation[s]," "meeting minutes," and even "supporting data packet[s]" from Board meetings in "2019 and 2020." (Letter at 1.)

**Argument**

Fact discovery is now over. The Court should deny Plaintiffs' last-minute demands for still more document discovery for at least four reasons.

*First*, "[t]he burden of demonstrating relevance is on the party seeking discovery," *Blackrock Allocation Target Shares: Series S Portfolio* v. *Bank of N.Y. Mellon*, 2018 WL 2215510, at *6 (S.D.N.Y. May 14, 2018) (Pitman, J.) (quotation omitted; collecting cases), and Plaintiffs have not met their burden. Ms. Brown's testimony makes clear that the 2019 and 2020 Board presentations are not relevant to whether the three challenged processes adversely impact women. Nor do those presentations pertain to time periods for which any evidence exists in the record that could be the basis for proving a claim in this case. And even if Plaintiffs could somehow establish relevance to the claims and time periods at issue in this case, at the end of fact discovery, Defendants should not have to engage in additional piecemeal collections every time Plaintiffs spot another document that they think they should have, not to mention the burden "necessary to put [such documents] in context" from a period for which no record evidence exists. *Fed. Hous. Fin. Agency* v. *HSBC N. Am. Holdings Inc.*, 2014 WL 584300, at *2 (S.D.N.Y. Feb. 14, 2014)

---

[2] (*See* Ex. 4 (Brown Dep.) at 117:17–118:3 (describing 2019 Board presentation as concerning "aspirational goals for at that point entry-level hiring, other inclusion efforts," "the progress that we made," and the "efficacy of the programs that we've put in place"); *id.* at 116:12–119:4 (describing 2020 Board presentation as concerning "forward strategy," "the framework for our new global people strategy," "our newly proposed aspirational VP representation goals," "our desire to double our hiring from H[B]CUs," "our aspirations to train all of our managers as coaches and inclusive leaders over the next year," and "to be the employer of choice . . . for the LGBTQ-plus community").)

(Cote, J.) ("The production of a category of documents, or even at times a single document, can add significantly to the burden on all parties to evaluate the documents and to undertake additional discovery. . . .").

*Second*, this Court should reject Plaintiffs' attempt to subvert the agreed-upon "February 1, 2019 final collection date" by drawing a false distinction between "custodial ESI" and other types of documents. (Letter at 2.) The fact that "[m]erits discovery runs through November 20, 2020" (Letter at 3) does *not* mean that Defendants must produce documents created through November 2020. Parties ordinarily do not even collect or include on a privilege log documents "created after charges have been brought or a lawsuit has been filed." *United States* v. *Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) (Carter, J.). At the very least, parties agree on a reasonable cutoff date for document collection, which occurred here, with Defendants producing *eight years* of documents created *after* this lawsuit was filed in 2010.

*Third*, Plaintiffs' request comes too late. "[D]iscovery-related issues ha[ve] to be raised in a timely fashion." *Colon* v. *City of New York*, 2014 WL 4100607, at *3 (S.D.N.Y. Aug. 20, 2014) (Furman, J.) (collecting cases). In August and September 2019, *over one year* ago, Defendants produced Board diversity materials "for the years 2015, 2016, and 2017." (Letter at 1 & Exs. A–B.) Plaintiffs now claim they did not "notice[] what appeared to be a deficiency" until "final reviews" on "November 5, 2020." (*Id.* at 1.) If Plaintiffs believed they should have received documents created after the "February 1, 2019 final collection date" (*id.* at 2), they should have raised this issue at any point in the past year instead of waiting until the last day of fact discovery. *See Joseph* v. *Sikorsky Aircraft Corp.*, 2015 WL 5304177, at *3 (D. Conn. Sept. 9, 2015) ("After many months of discovery, a motion to compel should not be served at the last minute," and many "courts have found that motions to compel filed days before the discovery deadline [a]re untimely") (quotation omitted; collecting cases).[3]

*Finally*, if the Court has any doubt, Defendants respectfully request that it defer ruling on the production of these post-February 1, 2019 Board documents until after deciding Defendants' motion to modify the class definition; Defendants are filing herewith a pre-motion letter seeking that relief. (*See* Class Cert. Order at 49 (contemplating "alteration of the class definition"), ECF No. 578.) To the extent Judge Torres certified a class running "through the resolution of this action" (*id.* at 4), discovery has confirmed that a class without an end date does not satisfy the ascertainability and manageability requirements of Rule 23(b)(3), and risks violating the due process rights of class members, who were notified that the class ran only through November 30, 2018 (ECF No. 716-13).

For the foregoing reasons, the Court should deny Plaintiffs' belated request for post-February 1, 2019 Board diversity documents.

---

[3] *See also Lillbask ex rel. Mauclaire* v. *Sergi*, 193 F. Supp. 2d 503, 516 (D. Conn. 2002) (denying as "untimely" motion to compel served at close of discovery after seven months of discovery and three extensions); *Babcock* v. *CAE–Link Corp.*, 878 F. Supp. 377, 387 (N.D.N.Y. 1995) (denying motion to compel served at close of discovery after discovery "was extended four times").

The Honorable Robert W. Lehrburger                                                                                      -4-

                                                Respectfully,

                                                */s/ Robert J. Giuffra, Jr.*

                                                Robert J. Giuffra, Jr.
                                                of Sullivan & Cromwell LLP

cc:      All parties of record (by ECF)