# EXHIBIT 1

## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 4, 2019

By E-mail

Melissa L. Stewart, Esq.,
  Outten & Golden LLP,
    685 Third Avenue, 25th Floor,
      New York, NY 10017.
        Re: *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*
            No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Melissa:

        On behalf of Defendants, I respond to your February 22, 2019 letter setting out Plaintiffs' revised proposal regarding document collection date ranges. The parties have now reached complete agreement on collection date ranges for 46 of 62 (74%) custodians, and partial agreement on collection date ranges for the remaining 16 custodians. We believe the parties are making substantial progress toward an agreed-upon scope of electronic discovery, and set out below are further proposed compromises and Defendants' positions on the remaining issues where the parties have disagreement, which we remain willing to discuss with you and hope to resolve cooperatively and expeditiously.

**Scope of Discovery for 16 Remaining Custodians**

        During the parties' extensive meet-and-confer process regarding document custodians, roles, and date ranges, Defendants agreed to collect and review approximately ***300 years*** of electronically stored information ("ESI") for 62 custodians. Despite this significant volume of proposed data, Plaintiffs seek an additional *50 years* of ESI encompassing roles beyond the scope of the previously agreed-upon framework.[1] In the

---

[1] As Defendants explained in their February 15 letter, the parties' custodian negotiations centered entirely around Plaintiffs' proposed categories, and Defendants agreed to 62 custodians based on each custodian's specific role or roles. (Defs.' Feb. 15 Letter at 1–4.) Plaintiffs' assertion that Defendants somehow "concede[d] this point" because a custodian could fall within "one or more categories" (Pls.' Feb. 22 Letter at 2 n.3) misreads Defendants' letters. To the contrary, the fact that the parties specified a particular category or categories for each custodian demonstrates the limited nature of the parties' agreement as to custodians.

spirit of compromise, however, Defendants will agree to "very specific roles, in specific time periods, that were not covered by prior custodial searches" (Pls.' Feb. 22 Letter at 2) for particular custodians as follows:

- ***Compensation Committee Members*** (Edward Eisler, David Heller, Pablo Salame). Plaintiffs seek a custodian on the Securities Compensation Committee "during the period of 2004-2007." (Pls.' Feb. 22 Letter App'x A at 4, 6, 12.) Plaintiffs identified Edward Eisler, David Heller, and Pablo Salame as committee members during this period, and agreed "to limit the date range" for these custodians if "the years 2004-2007" are "included in Goldman's [new] custodial data export." (*Id.*) Although Defendants agreed to Mr. Heller only as a custodian in his role as Americas Diversity Committee ("ADC") Chair (Defs.' Jan. 30 Letter at A-2), Defendants will agree to include 2005–2007 when he served on the Securities Compensation Committee (Pls.' Feb. 22 Letter App'x A at 6). Similarly, although Defendants agreed to Mr. Eisler only as a custodian in his role as Division Head of Securities (Defs.' Jan. 30 Letter at A-1; *see also* Pls.' Jan. 15 Letter App'x A at 4), Defendants will agree to include 2004 when he served on the Securities Compensation Committee (Pls.' Feb. 22 Letter App'x A at 4). Plaintiffs agreed to withdraw their request for Mr. Salame "[i]f Goldman will agree" to include the years 2004–2007. (*Id.* at 12.) Defendants agree to run "Compensation Committee" category search terms over Messrs. Heller's and Eisler's ESI for this additional time period. (Defs.' Feb. 13 Letter at A-22 to -23.)

- ***Americas Diversity Committee*** (Christopher Kojima). Although Defendants agreed to Christopher Kojima only as a custodian in his roles on the Executive Committee (IMD) and as a cross-ruffer in 2013 (Defs.' Jan. 30 Letter at A-2; *see also* Defs.' Feb. 15 Letter at A-7), Defendants will agree to run "Diversity Committees" category search terms over Mr. Kojima's ESI for 2013 (Defs.' Feb. 13 Letter at A-27 to -30).

- ***Search Term Proposal*** (Gary Cohn, John Willian, Tucker York). Plaintiffs propose a "compromise" seeking either nearly *30 years* of additional ESI for three custodians (Gary Cohn, John Willian, and Tucker York), or adding a search term containing their last names "within 50" of terms such as "complain*," "bias*", and "hate*". (Pls.' Feb. 22 Letter App'x A at 2, 16; Pls.' Feb. 27 Proposal at 6.) Plaintiffs have no basis to seek this discovery, which is an impermissible attempt to seek so-called "boy's club" evidence untethered to the challenged processes, and is thus squarely foreclosed by Judge Lehrburger's December 21 Order. (*See* ECF No. 657 ¶ 1 (rejecting Plaintiffs' application for "'boy's club' evidence").) Defendants likewise will not agree to the massive expansion of ESI Plaintiffs are seeking for these custodians—4 years for Mr. Cohn, nearly 10 years for Mr. Willian, and 15 years for Mr. York. The bare fact that each of these custodians worked in an unspecified "role as a senior

Melissa L. Stewart, Esq.                                                                                                           -3-

> firm leader" or unspecified "senior leadership roles" does not "indicate[] he is likely to have discoverable information." (Pls.' Feb. 22 Letter App'x A at 2, 16.)

- ***Cross-Ruffing Team Members***. Plaintiffs' demand for 15 additional years of ESI covering every cross-ruffing team for every year and every relevant Division pre-2012 (Pls.' Feb. 22 Letter App'x A at 1–3, 7, 9, 10, 13–15) is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Defendants have already produced ESI covering membership of cross-ruffing teams prior to 2012 (if not every Division in every year). Defendants have also agreed to produce an additional five years of ESI across five custodians covering membership of cross-ruffing teams across relevant Divisions.[2] And this ESI is relevant only to Plaintiffs' promotion claim, which they allege affected 19 women. (*See* ECF No. 511 at 33 n.91.) Thus, "the burden or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P. 26(b)(1); *see also Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Trust Co.*, 2018 WL 1088020, at *8 (S.D.N.Y. Feb. 12, 2018) (Moses, J.) ("Proportionality focuses on the marginal utility of the discovery sought.") (internal quotation marks omitted). In addition, the discovery Plaintiffs have already received regarding cross-ruffing, and will continue to receive in merits discovery, is more than adequate "to present generalized proof relating to [Goldman Sachs's] practices and policies." (ECF No. 630 ¶ 1.) For example, Defendants have produced multiple documents explaining the cross-ruffing process (*see*, *e.g.*, GS0375264-GS0375276; GS0375294-GS0375317; GS0375517-GS0375540; GS0375741-GS0375754), and have provided the name of every individual who served as a cross-ruffer in each of the three relevant Divisions since 2002 (s*ee* Defs.' July 2, 2018 Resp. & Objs. to Pls.' Fifth Set of Interrog. No. 10). To the extent Plaintiffs seek additional discovery regarding particular individuals subject to the cross-ruffing process, that is Phase Two discovery. (*See* Feb. 25, 2019 Conf. Tr. at 65:8–10 (Plaintiffs' counsel proposed "substantial additional discovery" at Phase Two).)

- ***Previously Searched and Reviewed Custodians*** (Toni Infante, Alex Lowen). In their February 15, 2019 letter, Defendants explained that both Toni Infante's and Alex Lowen's e-mails were previously searched for all relevant time

---

[2]     Specifically, Defendants agreed to Avanish Bhavsar (Equities – 2013), Dan Dees (IMD – 2013), Christopher Kojima (FICC – 2013), Jeff Nedelman (IMD – 2012), and Susie Scher (Equities – 2017).

Melissa L. Stewart, Esq. -4-

periods. (Defs.' Feb. 15 Letter at 6.) As discussed below, Plaintiffs have no basis to re-run searches over this prior discovery.[3]

In total, Defendants agree to collect *over 300 additional years* of ESI in addition to the nearly 250 years of prior ESI reviewed during class certification. As to "Goldman's proposed cut-off date for collection" of certain e-mail custodians (Pls.' Feb. 22 Letter App'x A at 1), Defendants propose February 1, 2019, which will also be the applicable cut-off date for expert data discovery. This is a substantial compromise and Defendants hope it enables the parties to reach agreement.

### Running Searches on Previously Collected Data

Plaintiffs' continued demand that Defendants *re-run* searches for "previously collected pre-2012 data" (Pls.' Feb. 22 Letter at 2; *see also* Pls.' Feb. 11 Letter at 1–2; Pls.' Feb. 6 Letter at 2) is squarely foreclosed by the Federal Rules. Rule 26(b)(2)(C) expressly provides that "the court *must* limit the frequency or extent of discovery" where "the discovery sought is unreasonably cumulative or duplicative," or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" (emphasis added). Defendants have already reviewed approximately 4.3 million documents and produced over 350,000 pages of pre-2012 ESI for 64 custodians who held the *same roles* as many of the merits custodians and, indeed, include many of the *same custodians*.[4] And any merits discovery must be *narrower* than class certification discovery because the Court refused to certify Plaintiffs' so-called "boy's club" claim. (ECF No. 578 at 47, 49; *see also* Dec. 20, 2018 Conf. Tr. at 33:4–23 (evidence "untethered" to the challenged processes need not be produced).) Courts in this District routinely deny discovery where, as here, "plaintiffs have not provided sufficient justification for this additional discovery," which would "provide *less* information" than prior discovery. *MacNamara* v. *City of New York*, 2007 WL 3238679, at *1 (S.D.N.Y. Nov. 2, 2007) (Francis, J.) (emphasis added) (denying motion to compel because "the requested discovery is cumulative, and the burden that it would impose on the defendants outweighs its likely benefit"); *see also Treppel* v. *Biovail Corp.*, 249 F.R.D. 111, 117 (S.D.N.Y. 2008) (Francis, J.) ("the additional discovery requested is likely to be duplicative of discovery already conducted" because plaintiff "failed to identify any reason to believe that the other

---

[3]  In their February 22, 2019 letter, Plaintiffs appear to have inadvertently agreed to 1/1/2012 – 2/1/2019 as the date range for Gargi Banerjee, when Defendants in fact proposed 1/1/2013 – 12/31/2015. (Defs.' Feb. 15 Letter at A-1.) Because this appears to be a typographical error, Defendants will treat the agreed-upon range for Ms. Banerjee as 1/1/2013 – 12/31/2015.

[4]  Plaintiffs' quibbles over whether they received 373,518 or over 375,000 pages of ESI (Pls.' Feb. 22 Letter at 2 n.2) appear to turn on how they define ESI (as opposed to non-ESI document discovery) and, in any event, are irrelevant.

Melissa L. Stewart, Esq.                                                                                                          -5-

backups . . . would contain any documents relevant to the litigation not already recovered").

    To avoid the cumulativeness of their discovery request, Plaintiffs adopt an interpretation of the phrase "unreasonably cumulative or duplicative" that is far too narrow. In Plaintiffs' reading, discovery is only "cumulative" if it consists of literally the same documents from the prior review such that a "vendor's tool" can remove them. (Pls.' Feb. 22 Letter at 3.) That is not correct. Courts routinely limit discovery from different sources, particularly when the sources "overlap[] to a large extent," because such discovery "would be cumulative." *Royal Park Invs. SA/NV* v. *U.S. Bank Nat'l Assoc.*, 2017 WL 2266983, at *3 (S.D.N.Y. Apr. 26, 2017) (Francis, J.) (limiting depositions from "six witnesses who have been noticed" to "a single member of the Impairment Committee"); *Morgan* v. *City of New York*, 2002 WL 31812698, at *2 (S.D.N.Y. Dec. 12, 2002) (limiting depositions to "four of the eight other girls in plaintiff's class" because "plaintiff's proposals for depositions are unreasonably cumulative"); *see also Janki Bai Sahu* v. *Union Carbide Corp.*, 528 F. App'x 96, 104 (2d Cir. 2013) ("[A] court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative.") (internal quotation marks omitted).

    We look forward to your response and hope to reach agreement on custodian date ranges soon.

                              Sincerely,

                              */s/ Ann-Elizabeth Ostrager*
                              Ann-Elizabeth Ostrager

cc:  GoldmanSachs-Attysonly@outtengolden.com (via e-mail)
    Carson Sullivan, Esq. (Paul Hastings LLP) (via e-mail)