# Exhibit 12

# PAUL
# HASTINGS

1(202) 551-1717
barbarabrown@paulhastings.com

February 21, 2012                                                                                         21166-00050

**VIA E-MAIL**

Anne B. Shaver, Esq.
Lieff Cabraser Heimann & Bernstein
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Re:   Chen-Oster et al. v. Goldman Sachs

Dear Anne:

As I said in my February 2 letter, and again in my email of February 15, we have been working to put together a comprehensive response to your January 27 letter. We were very surprised that you did not wait for this or alert us before sending your letter to Magistrate Judge Francis, since it was planned that the parties would have at least one more meeting to discuss our positions and attempt to resolve any differences without the Court's intervention.

Before addressing each of the individual requests, I want again to reiterate the extreme burden Plaintiffs seek to place on Defendants with Plaintiffs' discovery demands. Your demand that Defendants search, locate and produce hard copy and electronic documents going back *twelve years* is unfair and unnecessary, and we look forward to discussing this issue with Magistrate Judge Francis. That said, we are willing to compromise in many respects as to categories of documents. To the extent that documents are maintained in a systematic or centralized fashion, either in a hard copy filing system or electronically, we will agree to search for documents in the four revenue divisions named in Plaintiffs' Amended Complaint (the "four revenue divisions") back *seven years*, to 2005. However, if we locate older documents that fall into the categories below, even back to 2000, while we are searching for hard copy documents in the possession of individual employees, we will gather and produce them if responsive. We believe this plan, and our proposals set forth below, are more than reasonable and will allow Plaintiffs more than ample discovery at the class certification stage. Our positions, which track the order of your January 27 letter, are as follows:

1. We agree with your summary. We have already produced many of the documents that were provided to the EEOC, including position statements and exhibits. Although we believe that the documents are equally available to Plaintiffs through a FOIA request, we will produce to Plaintiffs everything, including data, that was provided to the EEOC relating to Ms. Chen-Oster and Ms. Orlich.

2. We agreed that we will produce documents of the same type we have already produced for the Securities Division for the other three revenue divisions, if they exist. We will produce them in unredacted form as to operations in the United States,[1] although we do not see the point of having names on these documents when your stated goal is to ascertain how the firm is organized. We object to producing telephone directories, or what you call "employee directories." You are not entitled to lists of all employee names and we do not see how directories bear any relationship to organizational structure.

---

[1] To the extent names are included on any of the documents produced, we will continue to redact such information related to individuals outside the United States as well as individuals who do not work in one of the four revenue divisions.

# PAUL
# HASTINGS

Anne B. Shaver, Esq.
February 21, 2012
Page 2

3. As you know, and as Adam mentioned during our call, manager and co-manager information will be reflected in the FRS database. We explained that to locate other documents showing reporting relationships on a desk or in a small group going back years and years would be inordinately burdensome as these are not created or maintained on a centralized basis, or frankly, on any organized basis at all. However, if we come across such documents while searching for other materials, we will produce them. We see no value in a broad search for such documents, however, because even if a chart was created at one point in time, those affiliations are loose and change frequently, and we do not see their value here, particularly when you will receive information of this sort electronically.

4. We will expand our search for job descriptions for Associates and Vice Presidents in the other three revenue divisions. We will conduct a reasonable search for job descriptions, including pre-2007 job descriptions, and will produce them if they exist and are reasonably accessible.

5. As set forth in our February 2 letter, we agree that the parties were negotiating a separate production plan regarding data; it appears now that you do not wish to continue our dialogue.

6. The representation rates of employees, by gender, will be apparent in the data. However, we will conduct a good faith search for documents that, as you have clarified, contain self-critical reviews, studies or audits related to the number of female Associates, Vice Presidents or EMDs in the four revenue divisions. As we have discussed, we cannot commit to producing notes or minutes from every meeting in which representation rates may have been discussed, but we do commit to searching for any non-privileged summaries, presentations, reports or similar documents that are reasonably accessible.

7. We agree that we will look for documents concerning how and/or why compensation practices were adopted in the four revenue divisions. If we are able to locate documents describing changes in the principles governing compensation or quartiling in these divisions, we will produce them. We will also produce any guidelines relating to quartiling. The burden of searching for individual manager quartile proposals *far* outweighs the value of that information. The manager quartiles are, as you know, contained in the data. If you have a question about a specific individual or even a specific desk during a particular time period, however, we will enter into a discussion with you and endeavor to search for manager quartiling information that is not, as you say, captured by the final data output.

8. We agree with your summary.

9. It is difficult to respond to Request 9 given all of the different topics covered in that request. Assignments, as you know are addressed elsewhere. As to the other topics listed in this request, we will agree to search for and produce policy documents, training materials and guidelines, to the extent they exist. Consistent with what we have said above in response to Request 7, we will look for documents describing changes in principles governing compensation. We have already agreed to work with key individuals who are responsible for dissemination of current policy and process documents relating to performance, pay and promotions, and to the extent we learn about formal meetings in which notes were taken or presentations made, even back to 2002, we will endeavor to conduct a reasonable search for those documents. In response to your latest letter, we clarify that to the extent we learn of other individuals who were responsible for older policy or process documents covering any portion of the period since 2000, if they are still employed by the firm, we will also inquire of them as to the existence of formal meetings or presentations. Of course, we anticipate starting with individuals who are responsible for the current policy or process documents.

10. We agree with your summary.

# PAUL
# HASTINGS

Anne B. Shaver, Esq.
February 21, 2012
Page 3

11. With respect to studies concerning gender and performance evaluations, compensation or assignments, we agree to search for them if they pertain to the four revenue divisions and were conducted by formal groups at the firm such as diversity-related task forces or groups within HCM. Whether informal groups around the firm have looked at their own data or circumstances we do not know, but it would be extremely burdensome to search for such materials. That said, if we come across such documents as we are searching for other documents, we will produce them.

12 -14. We agree with your summaries.

15. We agree to search for and produce documents concerning gender-related initiatives at the recruiting and hiring stages. We do not agree to produce data about hiring. We think that such data is entirely irrelevant to the issues in the case and will only serve to create more expense and burden.

16. We did not state that Goldman Sachs does not maintain records of reimbursement for corporate expenses; we did state that the burden of searching for and producing such documents seems to us to greatly outweigh any possible relevance to the issues in the case. Please let us know if there is any particular issue you want us to look into with respect to expense reimbursement.

17. We agree with your summary.

18-21. We agree with your summary and note that if there are generally applicable documents concerning how to complete and score reviews and how to quartile individuals, as well as concerning the manner in which review scores and/or quartiles are used, we will produce them. We also note, however, that we have produced already hundreds and hundreds of pages of documents related to the review process.

22. We agree with your summary.

23. It appears we are in agreement that this request will be limited to documents related to promotions to EMD, as opposed to Vice President. We have produced numerous documents related to the cross-ruffing process, and we will continue to conduct a reasonable search for additional policy and/or process documents. As we have stated, we simply cannot commit to searching for minutes or notes from every meeting where promotion processes were discussed; however, if we come across such documents while searching for other documents, we will produce them.

24. We can confirm that no systematic or centralized system for maintaining seating charts or assignments exists. If you have specific questions on this topic, please let us know.

25. We can confirm that no systematic or centralized records of assignment of analysts and other support staff allocation are kept; these are decisions made at the individual manager or desk level.

26. We agree with your summary.

27. We will produce the EEO-1s that correspond to the scope of discovery to which we ultimately agree or are ordered to adopt. We will produce the workforce analysis and other sections of the affirmative action plans to the extent they pertain to data on gender composition of jobs in the four revenue divisions at the Associate, VP or EMD level. We do not believe there are any findings of issues pertaining to gender resulting from any OFCCP evaluation of these divisions at any Goldman Sachs office since 2002; we are double checking and will confirm this is the case.

28. We agree with your summary and will arrange for a separate meet and confer if needed.

# PAUL HASTINGS

Anne B. Shaver, Esq.
February 21, 2012
Page 4

29 and 30. We will produce documents concerning the complaint process to the extent we have not already done so. With respect to complaints by women in the four revenue divisions concerning gender bias in compensation, evaluation, or promotion, we will produce such information with names redacted.

31 and 38. I do not believe we agreed to provide an index of all lawsuits and administrative complaints, but we are willing to do so with respect to suits or proceedings concerning allegations of gender bias in compensation, evaluation or promotion with respect to Associates or VPs in the four revenue divisions, or pertaining to promotion to EMD.

32. We will look into whether gender issues of the type you describe in this request were considered at meetings of formal groups such as the Board of Directors or the Diversity Task Force. We agreed that we will not search for small group meetings that might have taken place informally.

33. We agree with your summary and to the extent responsive documents are discovered, they will be produced.

35. We are following up on this request as agreed.

36. We agree with your summary.

37. We agree with your summary.

Our agreement to search for and produce documents in any of the above categories does not waive any objections we have to overall scope in terms of division and time frame, nor to specific objections we have made to Plaintiffs' requests – including objections based on the attorney/client privilege or work product doctrine – or will make to additional discovery in any of these categories. Please let me know if you would like to talk further about our positions.

Very truly yours,

Barbara Berish Brown
of PAUL HASTINGS LLP

cc: Adam Klein
Kelly Dermody
Theodore Rogers, Jr.
Suhana Han
Geoff Weirich
Carson Sullivan

LEGAL_US_E # 96915804