UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
H. CRISTINA CHEN-OSTER, SHANNA        :
ORLICH, ALLISON GAMBA and MARY        :
DE LUIS,                              :
                                      :
                    Plaintiffs,       :        10 Civ. 6950 (AT) (RWL)
                                      :
           v.                         :
                                      :
GOLDMAN SACHS & CO. and THE           :
GOLDMAN SACHS GROUP, INC.,            :
                                      :
                    Defendants.       :
------------------------------------------------------ x
```

**DEFENDANTS' RESPONSES TO PLAINTIFFS' OBJECTIONS TO
MAGISTRATE JUDGE LEHRBURGER'S MULTIPLE ORDERS DENYING
ADDITIONAL DISCOVERY UNRELATED TO THE CHALLENGED PROCESSES**

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

January 4, 2021

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................3

    A.    Goldman Sachs's Extensive Searches for "Boy's Club" Documents
        During Class Certification Discovery....................................................3

    B.    The Court Refuses To Certify Class Claims Based on Plaintiffs' "Boy's
        Club" Allegations..................................................................................4

    C.    Plaintiffs' Failed Attempts to Obtain "Boy's Club" Discovery Unrelated to
        the Challenged Processes......................................................................4

        1.    Judge Lehrburger's Initial Discovery Ruling ............................ 4

        2.    Plaintiffs' Trial Plan .................................................................. 5

        3.    Plaintiffs Invoke *Systemax* To Try To Revisit the Scope of the
            Phase I Trial and Broaden Document Discovery........................ 5

        4.    Plaintiffs Seek "Boy's Club" Evidence From the Goldman Sachs
            Management Committee ............................................................. 7

    D.    Plaintiffs' Objections ............................................................................9

ARGUMENT ........................................................................................................10

I.    PLAINTIFFS CANNOT SATISFY THEIR "HEAVY BURDEN" OF
    SHOWING THAT JUDGE LEHRBURGER'S CORRECT REFUSAL TO
    REOPEN SO-CALLED "BOY'S CLUB" DOCUMENT DISCOVERY WAS
    "CLEAR ERROR." ....................................................................................10

    A.    Judge Lehrburger Correctly Ruled that the Management Committee Does
        Not Directly Control the Three Challenged Processes. .........................11

    B.    Judge Lehrburger Correctly Rejected Plaintiffs' Fallback Request for Still
        More Senior Executive Discovery. .......................................................15

II.    PLAINTIFFS WAIVED THEIR OBJECTIONS TO JUDGE
    LEHRBURGER'S 2019 TRIAL PLAN RULING AND, IN ANY EVENT,
    DO NOT SATISFY THEIR "HEAVY BURDEN" OF ESTABLISHING
    "CLEAR ERROR." ....................................................................................17

    A.    Plaintiffs' Objection to the November 2019 Order Comes Far Too Late.............18

    B.    The November 2019 Order Properly Limited the Scope of the Phase I
        Trial.......................................................................................................18

III.    JUDGE LEHRBURGER CORRECTLY REJECTED PLAINTIFFS'
    BASELESS THEORY THAT *SYSTEMAX* "CONTROLS HERE." ..........19

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Adams* v. *Suozzi*,
 393 F. Supp. 2d 175 (E.D.N.Y. 2005) ......................................................................17

*Am. Broad. Cos., Inc.* v. *Aereo, Inc.*,
 2013 WL 12328764 (S.D.N.Y. Oct. 17, 2013)...........................................................17

*Bd. of Trs.* v. *Bank of N.Y. Mellon Corp.*,
 2011 WL 1118718 (S.D.N.Y. Mar. 24, 2011) ...........................................................10

*CapLOC, LLC* v. *McCord*,
 2020 WL 1030965 (S.D.N.Y. Mar. 3, 2020) .......................................................10, 18

*Joffe* v. *King & Spalding LLP*,
 2019 WL 4722673 (S.D.N.Y. Sept. 25, 2019).............................................................11

*Lenzi* v. *Systemax, Inc.*,
 944 F.3d 97 (2d Cir. 2019)........................................................................... *passim*

*Wood* v. *Mut. Redev. Hous., Inc.*,
 2020 WL 4548079 (S.D.N.Y. Aug. 5, 2020)..........................................................10, 17

**Rules**

Fed. R. Civ. P. 72 ..................................................................................... *passim*

## PRELIMINARY STATEMENT

In March 2018, this Court correctly rejected Plaintiffs' so-called "boy's club" theory of disparate treatment because that theory was not susceptible of "generalized proof." Instead, the Court limited class certification to claims based solely on Goldman Sachs's use of three specific employment processes—360 reviews, quartiling and cross-ruffing for promotions. (Mar. 30, 2018 Order at 47, ECF No. 578 (the "Certification Order" or "Cert. Order").) Over the past 33 months, Plaintiffs have refused to accept the Court's ruling and tried and failed *six times* to obtain additional discovery into "boy's club" claims that the Court refused to certify.

Plaintiffs seek to revisit this issue yet again in their latest Objections (ECF No. 1142) to Judge Lehrburger's entirely correct rulings that (i) there is no basis to reopen fact discovery so Plaintiffs can force Defendants to spend massive sums searching for "boy's club" emails unrelated to the three challenged processes;[1] and (ii) anecdotal "boy's club evidence" cannot be introduced during any Phase I trial, which must be based on "generalized evidence" unless, like the discovery Plaintiffs already have obtained, that evidence is "related specifically to application of the three processes."[2] Plaintiffs offer no basis for this Court to conclude that Judge Lehrburger's rulings were incorrect, much less "clearly erroneous" or "contrary to law," as required to reverse those rulings under Federal Rule of Civil Procedure 72(a)'s heightened standard of review.

*First*, fact discovery ended on November 20, 2020 and should not be reopened. Over 10 years of litigation, including two rounds of class discovery and full merits discovery, Defendants have produced more than 1.2 million pages of documents covering an 18-year time

---

[1]     Nov. 5, 2020 Order at 3, ECF No. 1100 (the "November 5 Order"); Nov. 27, 2020 Order at 4, ECF No. 1129 (the "November 27 Order" and, collectively, the "November 2020 Orders").

[2]     Nov. 25, 2019 Order ¶ 8, ECF No. 888 (the "November 2019 Order").

period, including nearly 10,000 documents from the same thirteen members of the Goldman Sachs Management Committee whose emails Plaintiffs seek through their Objections.  Judge Lehrburger correctly denied Plaintiffs' request, made at the end of fact discovery, that Defendants conduct still more searches for "boy's club" emails to or from these senior executives.  Plaintiffs acknowledge that these searches might be warranted only if the Management Committee was "responsible for approving, revising, or implementing the allegedly discriminatory policies at issue."  (Objections at 12.)  But Plaintiffs offer no basis for upsetting as clearly erroneous Judge Lehrburger's entirely correct factual finding that the Management Committee did not fill this direct oversight role for the three challenged processes.  Plaintiffs similarly offer no basis to overturn that factual finding for three of Goldman Sachs's most senior executives (current CEO David Solomon, former CEO Lloyd Blankfein, and former President Gary Cohn), when deposition testimony from every witness asked about the topic (including Mr. Blankfein and Mr. Cohn) *confirms* that these senior executives did not approve, revise or implement changes to these processes.  Having no evidence of the required level of direct control by these executives of the 360 review, quartiling and cross-ruffing processes, it is clear that Plaintiffs are simply on a fishing expedition into hypothetical "animus" untethered to the certified processes in this class action.

*Second*, Plaintiffs have waived their challenge to Judge Lehrburger's year-old "trial planning" ruling that "any 'boy's club' claims or anecdotes" at the Phase I trial must be "related specifically to application of the three processes" (Nov. 2019 Order ¶ 8), because Plaintiffs did not raise that objection within 14 days as required by Rule 72(a).  In any event, the November 2019 Order's limitation on "boy's club" evidence was fully consistent with this Court's Certification Order limiting any Phase I trial on the impact of the three challenged processes to "generalized proof."  (Cert. Order at 46, 49.)

*Third*, there is no conflict between Judge Lehrburger's November 2019 trial planning and November 2020 discovery Orders and the Second Circuit's decision in *Lenzi* v. *Systemax, Inc.*  Plaintiffs ignore that *Systemax*, an *individual* action, did not announce a broad rule governing the use of anecdotal evidence involving senior management in Title VII cases generally. In fact, as Plaintiffs acknowledge (Objections at 1), *Systemax* merely "affirm[s]" decades-old law that discriminatory animus by a plaintiff's *direct* manager (who, in *Systemax*, also happened to be the company's CFO) may be relevant to discrimination claims.  That basic rule has no bearing on the discovery and use of general anecdotes in this class action litigation about three specific employment processes.

## BACKGROUND

### A.   Goldman Sachs's Extensive Searches for "Boy's Club" Documents During Class Certification Discovery

For years, and at substantial expense, Defendants have conducted extensive searches for so-called "boy's club" evidence, particularly emails.  During the initial round of class certification discovery, Defendants "searched for, and produced to the extent responsive and not privileged," discovery "covering 2003 to 2012 from among sixty-two document custodians, including certain [Management Committee] members."  (Nov. 5 Order at 1.)  Defendants reviewed the files of four of the thirteen Management Committee members at issue in the Objections, including Messrs. Cohn and Solomon.   (ECF No. 1097-4 ¶ 11.)   At Plaintiffs' request, the negotiated search terms included words like "bimbo" and "babe" to try to ferret out any evidence of gender animus in these executives' files.  (ECF No. 1097-5.)  None was found.  Defendants also produced "all internal complaints" from 2000 to 2012 "that are 'conceivably related' to gender discrimination made by female employees in the [three] revenue-generating divisions, regardless

of whether the complainant is a member of the putative class." (Oct. 15, 2013 Order at 25, ECF No. 196.)

**B.      The Court Refuses To Certify Class Claims Based on Plaintiffs' "Boy's Club" Allegations**

After considering this extensive class certification discovery, this Court found that Plaintiffs "failed to prove predominance on their disparate treatment claim predicated on their 'boy's club' theory." (Cert. Order at 41.) The Court properly concluded that, for such a claim, it "would likely need to make individualized inquiries into each [alleged] incident" and assess "the considerations and intentions of individual managers." (*Id.* at 47.) As a result, the Court permitted only two of Plaintiffs' class claims to proceed: their "disparate impact claims" based on "the 360 review, quartiling, and cross-ruffing processes" and their "disparate treatment claim predicated on the statistical evidence of disparate impact." (*Id.* at 25, 41.) This Court later explained that, under this ruling, the "Phase I trial [will] consist only of generalized proof to address the common issues that justified certifying the class"—*i.e.*, the 360 review, quartiling and cross-ruffing processes. (Oct. 7, 2019 Order at 2, ECF No. 873.)

**C.      Plaintiffs' Failed Attempts to Obtain "Boy's Club" Discovery Unrelated to the Challenged Processes**

For the past two years, Plaintiffs have tried and failed *six times* to end-run this Court's class certification decision by—directly or through a proposed trial plan that would admit such evidence—seeking generalized "boy's club" discovery.

**1.      Judge Lehrburger's Initial Discovery Ruling**

On December 21, 2018, in reliance on this Court's Certification Order and after full briefing and oral argument (ECF Nos. 641, 643, 648, 653), Judge Lehrburger held that (a) "Defendants shall produce to Plaintiffs what has been referred to as supplemental 'boys' club' anecdotal evidence that is related to the [three challenged] practices and procedures," but

(b) "Defendants need not produce 'boy's club' evidence . . . that do[es] not relate to the" three challenged "practices and procedures."  (Dec. 21, 2018 Order ¶ 1, ECF No. 657; *see* Dec. 20, 2018 Conf. Tr. at 33:4–23 (denying discovery of "boy's club incidents" "untethered" to "the processes and procedures that are being challenged").)   This Court denied Plaintiffs' objections to the December 21 Order.  (Oct. 7, 2019 Order at 8, ECF No. 873.)

### 2.      Plaintiffs' Trial Plan

Next, Plaintiffs tried to reopen generalized "boy's club" discovery by proposing a trial plan contemplating the introduction of such evidence at a possible Phase I trial.  (ECF No. 884.)  On November 25, 2019, Judge Lehrburger correctly rejected Plaintiffs' proposed trial plan because, under this Court's rulings: "Phase 1 of the trial will address on a class-wide basis . . . the discriminatory impact of, and treatment related to Quartiling, 360-Reviews and Cross-Ruffing (the 'three challenged processes').  Phase 1 will not include . . . any 'boy's club' claims or anecdotes (rather, the only permissible anecdotes will be those related specifically to application of the three processes)."  (Nov. 2019 Order ¶ 8.)  Plaintiffs *never* filed objections to this Order with this Court until their current Objections, which come more than a year too late under Rule 72(a) (providing 14 days to object to a Magistrate Judge's ruling).

### 3.      Plaintiffs Invoke *Systemax* To Try To Revisit the Scope of the Phase I Trial and Broaden Document Discovery

On December 9, 2019, Plaintiffs moved to reconsider Judge Lehrburger's November 2019 Order (ECF No. 900), contending that his ruling on anecdotal evidence at a Phase I trial needed to be amended in light of the Second Circuit's December 6, 2019 decision in *Lenzi* v. *Systemax, Inc.*, which concerned an individual plaintiff's claims under Title VII, the Equal Pay Act, the Pregnancy Discrimination Act, the Consumer Product Safety Improvement Act, and related state laws.   944 F.3d 97, 103 (2d Cir. 2019).   There, the plaintiff relied on salary

"benchmarking data" used by her employer to make out her *individual* Title VII disparate treatment claim.  *Id*. at 104 n.5, 111–12.  The plaintiff did not challenge the company's practice of using benchmarking data or any other employment practice, policy or process.  Instead, the plaintiff showed that the practice was not actually followed with respect to her—she was consistently paid below the benchmark rate for her position while comparable male executives were compensated above the benchmark rate.  *Id*. at 111–12.

Of critical importance to the Second Circuit's analysis, in establishing her individual case of discrimination the plaintiff offered evidence that her *direct supervisor*, Systemax's CFO, "made graphic comments about his dating and sex life," and commented to plaintiff on her physical appearance.  *Id*. at 103, 111.  The Second Circuit evaluated the relevance of this evidence based on four fact-intensive factors long-used in *individual* discrimination cases: "(1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)."  *Id*. (quoting *Henry* v. *Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)).  Based on this fact-bound analysis, the Second Circuit concluded that the supervisor's comments were probative of discrimination.  *Id*. at 112.  The Second Circuit did not announce or even suggest a broad rule governing the use of anecdotal evidence involving senior management in Title VII cases generally—indeed, the fact that the plaintiff's manager was the CFO of the company was completely irrelevant to the stray remark analysis—much less at a Phase I class action trial over the impact of specific challenged employment processes on an entire class of employees.

Plaintiffs' motion for "reconsideration" of the November 2019 Order in fact sought both (i) to modify Judge Lehrburger's ruling excluding anecdotal evidence untethered to the challenged processes at a Phase I trial and (ii) to obtain additional document discovery from senior executives.  On January 23, 2020, after full briefing and oral argument (ECF Nos. 901, 918, 922–24), Judge Lehrburger denied Plaintiffs' motion, holding that "[t]here are clear differences between *Systemax* and this case," including that "this is a class action" while "*Systemax* involved an individual claim of discrimination."  (Jan. 23, 2020 Conf. Tr. at 53:22–24, 54:7–8, 70:6–7.)  As Judge Lehrburger explained, "[i]n *Systemax*, the Second Circuit reaffirmed use of the four-factor test to assess the relevance and probity of specific comments or actions by individual actors," which is "precisely the type of analysis of individual claims the Court held was not appropriate for class treatment."  (*Id.* at 54:2–6.)

Despite declining to modify the November 2019 trial planning Order or to permit additional document discovery from senior executives (*id.* at 70:6–7, 71:2–10), Judge Lehrburger stated that—independent of *Systemax*—he would "consider an application" for discovery from a "core" group of "people who implement th[e] [challenged] processes or design them," if "a discrete group of persons. . . could be identified" (*id.* at 54:24–55:1, 63:8–9, 66:2, 70:12–16; *see* Nov. 5 Order at 2 (considering discovery into "senior personnel responsible for approving, revising, or implementing the allegedly discriminatory policies at issue")).  Although this ruling amounted to a flat "no" on modifications to the November 2019 trial planning Order, Plaintiffs raised no objections with this Court—thus waiving the right to do so in the future.

### 4.   Plaintiffs Seek "Boy's Club" Evidence From the Goldman Sachs Management Committee

Plaintiffs then waited over 10 months, until the final weeks of discovery, to submit an application seeking "boy's club" discovery, again purportedly based on *Systemax*, from thirteen

current and former members of Goldman Sachs's Management Committee.  (ECF No. 1095.) Plaintiffs claimed that they were entitled to reopen discovery because "the Management Committee . . . is the discrete group of persons responsible for considering the firm's performance evaluation and promotion processes." (*Id.* at 1.)  But Plaintiffs' own exhibits to their application demonstrated that the Management Committee was *not* responsible for approving, revising or implementing the challenged processes.  For example, Plaintiffs appended the deposition transcript of Sally Boyle—a senior executive in Goldman Sachs's Human Capital Management ("HCM") division and Rule 30(b)(6) designee for Goldman Sachs's "corporate organization" and "managerial structure"—who testified (years earlier) that "the purpose of the [management] committee" is to "share[]" "information about our businesses across the world."  (Boyle Dep. at 12:11–13:18, 81:23–82:4, ECF No. 1097-7.)  Plaintiffs asked Ms. Boyle whether the Management Committee "make[s] decisions about compensation," "make[s] decisions about promotions," "make[s] decisions about the process by which candidates are selected for promotion," or "make[s] decisions about the . . . 360 review system," and she answered "No" to every question.  (*Id.* at 82:13–83:15.)  Ms. Boyle further testified that the Management Committee does not "monitor" or give any "input to the people making the promotion decisions for vice president to managing director."  (*Id.* at 87:3–10.)  Plaintiffs' application did not seek any amendment to Judge Lehrburger's November 2019 Order barring the use of anecdotal evidence untethered to the three challenged processes during a Phase I trial.

Based on the parties' extensive submissions—including 55 exhibits, three appendices and a sworn declaration (ECF Nos. 1095–97, 1099)—Judge Lehrburger properly concluded that "[t]he evidence Plaintiffs have submitted does not" show a "nexus regarding" the Management Committee's "role in approving, revising, implementing, or ignoring disparities

linked to the three processes." (Nov. 5 Order at 3.) At most, Management Committee members "were involved in Goldman's *diversity initiatives at a general level*"—which are not at issue in this action—but "the deposition testimony and exhibits Plaintiffs put forward to justify the additional discovery they seek do not sufficiently demonstrate that the [Management Committee] made decisions with respect to the three processes at issue, let alone in the context of considering their application and effect on gender disparity." (*Id.* (emphasis added).)

After deposing Goldman's former CEO, Lloyd Blankfein, and former President, Gary Cohn, Plaintiffs moved to reconsider Judge Lehrburger's November 5 Order declining to order additional document discovery for Messrs. Blankfein and Cohn and the Firm's current CEO, David Solomon. (ECF No. 1103.) But Plaintiffs could "not come forward with any 'controlling decisions or data that the Court overlooked,'" because "the Court got it right." (Nov. 27 Order at 1, 3 (quoting *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).) Judge Lehrburger carefully analyzed the documents and testimony cited by Plaintiffs and found that this evidence confirmed his conclusion that none of "the Executives in fact had" "relevant knowledge" or "played any role with respect to the three processes." (*Id.* at 2.) Again, Plaintiffs failed to raise or challenge the November 2019 Order.

### D. Plaintiffs' Objections

Plaintiffs now submit Objections to Judge Lehrburger's November 2020 Orders, claiming that, under *Systemax*, they "*must* be able to present (and therefore to seek discovery into) certain evidence of gender animus . . . in Phase I as part of their intentional discrimination claim." (Objections at 1, 10.) The Objections ask the Court to (i) reopen fact discovery and order new searches for "boy's club" evidence untethered to the challenged processes in the files of thirteen Management Committee members (or, in the alternative, the files of Lloyd Blankfein, Gary Cohn, and David Solomon); and (ii) amend Judge Lehrburger's November *2019* Order holding that

"boy's club" anecdotes unrelated to the challenged processes will not be admitted at the Phase I trial.  (*Id.* at 13.)  Plaintiffs do not acknowledge that their challenge to the November 2019 Order is out of time and long-waived.

## ARGUMENT

I.    **PLAINTIFFS CANNOT SATISFY THEIR "HEAVY BURDEN" OF SHOWING THAT JUDGE LEHRBURGER'S CORRECT REFUSAL TO REOPEN SO-CALLED "BOY'S CLUB" DOCUMENT DISCOVERY WAS "CLEAR ERROR."**

Under Fed. R. Civ. P. 72(a), "[a] magistrate's resolution of pretrial discovery disputes is entitled to substantial deference and may not be disturbed by a District Court in the absence of a finding that the magistrate's determination was clearly erroneous or contrary to law." *Bd. of Trs.* v. *Bank of N.Y. Mellon Corp.*, 2011 WL 1118718, at *1 (S.D.N.Y. Mar. 24, 2011) (Berman, J.) (internal quotation marks omitted); (*see* Objections at 10 (identifying "Standard of Review" as "clearly erroneous" or "contrary to law") (quoting Fed. R. Civ. P. 72(a))).  As this Court has stressed, Plaintiffs bear a "heavy burden of proof" to satisfy this "highly deferential standard." *CapLOC, LLC* v. *McCord*, 2020 WL 1030965, at *2 (S.D.N.Y. Mar. 3, 2020) (Torres, J.) (internal quotation marks omitted) (overruling objections to Judge Lehrburger's discovery order); *see Wood* v. *Mut. Redev. Hous., Inc.*, 2020 WL 4548079, at *1 (S.D.N.Y. Aug. 5, 2020) (Torres, J.) ("[A] pretrial discovery ruling is reviewed under this highly deferential standard.") (internal quotation marks omitted); (Oct. 7, 2019 Order at 3 (same)).

Judge Lehrburger's repeated holdings that Plaintiffs are not entitled to "boy's club" discovery unrelated to the three challenged processes—based on five rounds of briefing, dozens of exhibits and two court conferences—are more than fully supported by this Court's Orders, the law and the facts.  Plaintiffs admit that "Judge Lehrburger correctly understood the legal relevance" of "'boy's club' evidence" (Objections at 10; *see id.* at 12), namely, that such evidence would be relevant only if it exists for "senior personnel responsible for approving, revising, or

-10-

implementing the allegedly discriminatory policies at issue" (Nov. 5 Order at 2). Plaintiffs claim only that "Judge Lehrburger's *factual* findings were clear error" (Objections at 12 (emphasis added; capitalization omitted))—*i.e.*, his findings that neither the Management Committee generally nor its three most senior executives specifically control the challenged processes. Judge Lehrburger's conclusions were correct, and Plaintiffs do not come close to demonstrating clear error, the most demanding standard of review in the law. *See Joffe* v. *King & Spalding LLP*, 2019 WL 4722673, at *2 (S.D.N.Y. Sept. 25, 2019) (Caproni, J.) ("To be clearly erroneous, a decision must strike the reviewing court as more than just maybe or probably wrong; it must strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.") (internal quotation marks and alterations omitted) (overruling objections to magistrate judge's order in employment action).

Notably, even though over thirteen years of files from four of the thirteen executives at issue in this motion, including David Solomon and Gary Cohn, were searched at the class certification stage for "boy's club" evidence, as were communications between the nine other executives and the parties' agreed-upon email custodians, Plaintiffs identify *no such evidence in their motion*—because none was uncovered. In other words, the burdensome and unwarranted exercise Plaintiffs ask this Court to order would be nothing more than an expensive and time-consuming fishing expedition, requiring the reopening of fact discovery.

### A. Judge Lehrburger Correctly Ruled that the Management Committee Does Not Directly Control the Three Challenged Processes.

Plaintiffs object to Judge Lehrburger's "factual finding" (Objections at 12) that the Management Committee had no "nexus" to a "role in approving, revising, implementing, or ignoring disparities linked to the three processes." (Nov. 5 Order at 3.) Plaintiffs cite the *exact same exhibits* that they appended to their applications to Judge Lehrburger (ECF No. 1095), none of which show that the Management Committee was responsible for directly approving, revising

-11-

or implementing the three challenged processes.[3]   Instead, as Judge Lehrburger correctly concluded, "the deposition testimony and exhibits Plaintiffs put forward to justify the additional discovery they seek do not sufficiently demonstrate that the [Management Committee] made decisions with respect to the three processes at issue, let alone in the context of considering their application and effect on gender disparity."  (Nov. 5 Order at 3.)

      The record contradicts Plaintiffs' claim that the Management Committee "was the entity in charge" and "was literally *the* decision-making body." (Objections at 5, 13 (emphasis in original).)  Goldman Sachs's corporate representative, as well as HCM executives and members of the Management Committee, all testified that that the committee did *not* make decisions about Goldman Sachs's 360 review, quartiling or cross-ruffing processes (*see supra* at 8; *see also* Apps. A & B.), and that its "purpose" was simply "to discuss things that were occurring at the firm." (Cooper Dep. at 35:4–12, ECF No. 1097-9; *see also* Holmes Dep. at 142:14-24, ECF No. 1097-13 (Management Committee was "a collective group of leaders in the firm").)  The evidence makes clear that the HCM Division and the Talent Assessment Group ("TAG") directly oversee the 360 review, quartiling and cross-ruffing processes.  (*See* Oct. 20, 2020 Conf. Tr. at 23:25–24:3; *see also* App. B.)

      None of the snippets of evidence Plaintiffs cite out of context undermines Judge Lehrburger's factual finding.   *First*, Plaintiffs rely on the unremarkable fact that certain Management Committee members were also members of various diversity committees and discussed "diversity efforts and initiatives."   (Objections at 6–7 (internal quotation marks

---

[3]      Defendants submitted to Judge Lehrburger uncontested appendices summarizing the testimony every witness provided about the roles of the Management Committee, HCM and TAG (ECF Nos. 1097-1 to -2), which Defendants have appended hereto for the Court's convenience as Appendix A & Appendix B.

omitted).)[4]  But this case is *not* about diversity initiatives; it is limited to the Firm's "three specific policies: 360 reviews, quartiling, and cross-ruffing."  (Oct. 7, 2019 Order at 5 (citing Cert. Order at 28).)  As a result, Judge Lehrburger correctly concluded that evidence that certain Management Committee members "were involved in Goldman's diversity initiatives at a general level" does "not sufficiently demonstrate that the [Management Committee] made decisions with respect to three processes at issue."  (Nov. 5 Order at 3.)

     *Second*, Plaintiffs are flat wrong that the Management Committee was presented with information showing that the challenged processes "disadvantage women."  (Objections at 7–8.)  Plaintiffs cannot show that the Management Committee *even received* the 2001 Diversity Task Force presentation cited by Plaintiffs.  In any event, this Task Force did not conclude that the challenged processes "disproportionately affect[] women" negatively (*id.* at 7); it found that improving the quality of multiple employment processes beyond the three challenged processes would particularly *benefit* underrepresented groups.[5]  The Management Committee also did not learn of a supposed "gender gap" in performance review or career advancement "scores." (Objections at 7–8.)  In making this claim, Plaintiffs cite certain "People Survey results" from 2005 and 2009 where women on average reported *less positive perceptions* of some aspects of their work than men—results that have nothing to do with whether the challenged processes

---

[4]     Plaintiffs are wrong that the Management Committee oversaw the 2001 Diversity Task Force.  (Objections at 6.)  The Management Committee had no role in that Task Force (other than that its members were interviewed, along with many other employees).  (*See, e.g.*, ECF No. 1095-4 at 18.)

[5]     *See* Blankfein Dep. at 43:19–44:1, ECF No. 1117-1 (Task Force found that improving training "has a disproportiona[te]ly more favorable effect on underrepresented groups, because overrepresented groups have other ways of accessing that same . . . investment from other people"); *id.* at 44:19–21 ("[D]iverse people will benefit more from the processes, if they're done rigorously and well."); *id.* at 44:10–13 ("[I]f you improve the process by which mentors are given to everyone, that would have a disproportiona[te]ly beneficial effect on the underrepresented community.").

actually affect men and women differently.[6] Plaintiffs also cite a slide prepared by the America's Diversity Committee in 2014 (Objections at 8), but this document, too, was *never sent* to the Management Committee. This slide provides summary data for professionals in *all* regions, titles, and divisions of the Firm—not the population at certified in this class action—and even so, reflects only "***slight[] differences*** across 360 Reviews, Manager Quartile and Manager Effectiveness" scores for men and women that "have narrowed since 2007." [7] (*Id.* Ex. 12 at -257 (emphasis in original); *id.* Ex. 13 at -971 (emphasis in original); *see id.* Exs. 14–15, 34.) After considering these same documents in connection with Plaintiffs' November 2020 motion for reconsideration, Judge Lehrburger found that they "do not draw a direct connection to any of the three processes at issue sufficient to justify further production of 'boys-club' evidence." (Nov. 27 Order at 2–3.)

*Third*, Plaintiffs are wrong that "[p]roposed changes to the 360 review and manager quartiling processes" in 2013 and 2014 were "vetted by" the Management Committee. (Objections at 8.) The record is clear that this "recommendation" to change the processes came from "[a] group of people [within] HCM," working with the "engineering team, compliance," and "legal," not the Management Committee. (Apr. 3, 2018 Landman Dep. at 68:3–16, ECF No. 1097-10.) This group "interviewed and [requested] feedback" from over 75 Goldman Sachs executives. (Objections at 8; *id.* Ex. 19 at -231; *id.* Ex. 35 at -451.) The unsurprising fact that this group

---

6 In any event, the survey results from 2005 and 2009 show that the majority of employees, men and women, view their experience at Goldman Sachs favorably, consider the performance review processes fair, and "recognize the firm's focus on diversity" (Objections Ex. 21 at -078; *id.* Ex. 22 at -067).

7 Moreover, as Goldman Sachs's former Head of HCM testified, differences like a "1 percent number or 4 percent move" are too small to interpret without "rigor and work to understand the drivers." (Cooper Dep. at 240:25–241:4; *see* Vazquez-Ubarri Dep. at 63:5–20, 67:14–20, ECF No. 1097-8 ("this was a slight difference" based on "a snapshot").

included "several [Management Committee] members" (*id.* at 8) in no way demonstrates that the Committee oversaw the process, and in fact it did not.  (*See* App. B.)

    *Fourth*, Plaintiffs' assertion that "the Management Committee decides who is promoted from Vice President to Extended Managing Director" (Objections at 8 (capitalization omitted)) is directly contradicted by the record (*see*, *e.g.*, Boyle Dep. at 82:16–18, 89:1–14 (Q. "Does the management committee make decisions about promotions?"  A. "No.")).[8]  Indeed, except for this conclusory assertion, Plaintiffs do not even try to tie the Management Committee to the cross-ruffing process.  Instead, Plaintiffs cite irrelevant documents and testimony about "female attrition rates" and "female representation" (Objections at 8–9) that do not even mention cross-ruffing.

    In short, the facts here—which Plaintiffs misconstrue to satisfy their faulty narrative—show clearly that Goldman Sachs's HCM Division, *not* the Management Committee, was responsible for approving, revising and implementing the challenged processes.

## B. Judge Lehrburger Correctly Rejected Plaintiffs' Fallback Request for Still More Senior Executive Discovery.

    Perhaps recognizing the burden of their request for another round of document discovery from thirteen executives after a 24-month long merits discovery period, Plaintiffs repeat

---

[8] *See also* Boyle Dep. at 56:11–21 ("We don't have committees that are responsible for promotions. . . . Each business division is responsible for the process of promoting its managing directors and its participating managing directors, and the business managers in each of those divisions will decide who should be promoted, with the assistance of the HCM generalists who are helping facilitate that process for each of the business divisions, the ones that they are responsible for."); Kung Dep. at 453:7–23, ECF No. 265-21 (Q. "Isn't it true that the firm wide management committee needs to approve the final list of candidates for promotion to MD?"  A. "Once the list is finalized, it's shared with TAG who shares it with the firm or the management committee and they get to see who's been prioritized for IMD for the year.  I would say it's more of a posting."); Objections Ex. 25 (Larson Dep.) at 248:9–15 (Q. "And that management committee or the subcommittee has the final decision-making authority [for promotions]; is that correct?"  A. "The final list that gets created reflects the input of all of those meetings.").

their fallback position of seeking "boy's club" discovery from Goldman Sachs's "three top leaders—Lloyd Blankfein, Gary Cohn, and David Solomon." (*Id.* at 9.)  Although he permitted Plaintiffs to depose two of these three executives after finding that they "have potentially relevant knowledge" (*id.*), [9] Judge Lehrburger later found—after their depositions—that  no evidence existed in the record connecting these executives "to the three processes at issue . . . that would justify further production of 'boys-club' evidence." (Nov. 30 Order at 2–3.)  To the contrary, Mr. Blankfein testified—consistent with the extensive documentary record and the *nineteen* depositions of HCM professionals that Plaintiffs have taken to date (*see*, *e.g.*, Apps. A & B)—that he did not have any first-hand knowledge of the details of the challenged processes, because the processes were "squarely within the province of HCM," and "I wouldn't have been involved in it really." (Blankfein Dep. at 74:8–20, 75:12–16, ECF No. 1117-1; *see also* Cohn Dep. at 72:10–13, 142:14–16, ECF No. 1117-2 (noting it is the "HCM department that monitored" performance evaluation data, and "HCM would do some correlation work on the data," which "was held in pretty strict confidence within each group").)  Messrs. Blankfein, Cohn and Solomon were, at most, participants in "big group discussions with lots of people involved," but were not responsible for "designing" or "modifying" these processes. (Cohn Dep. at 23:24–25:24.)

Tellingly, Plaintiffs cite no testimony from Messrs. Blankfein or Cohn in support of their Objections.  Instead, Plaintiffs' sole basis for seeking to reopen discovery to require more searches through their email is Judge Lehrburger's statement *before* the depositions that Messrs.

---

[9]     Contrary to Plaintiffs' mischaracterizations (Objections at 10 n.23), Judge Lehrburger held that, because "Mr. Solomon is the currently acting CEO" of Goldman Sachs and only started serving in this role since the 2018 "timeframe[]," "plaintiffs are allowed to depose Mr. Blankfein and Mr. Cohn" and then "can come back and revisit the issue with regard to whether there's any need or justification for Mr. Solomon" (Oct. 20, 2020 Conf. Tr. at 40:7–15).  Plaintiffs did not "come back," and fact discovery is now closed.

Blankfein, Cohn and Solomon "each have *potentially* relevant knowledge" (Objections at 9 (quoting Oct. 20, 2020 Conf. Tr. at 28:18–19) (emphasis added).)  But Judge Lehrburger made clear that he "did not conclude that the Executives in fact had such knowledge," and he then denied Plaintiffs' request for yet more discovery *after* reviewing the deposition transcripts.  (Nov. 27 Order at 2.)

The Court must  affirm Judge Lehrburger's factual findings "if any reasonable view of the record supports the factfinder's conclusions." *Am. Broad. Cos., Inc.* v. *Aereo, Inc.*, 2013 WL 12328764, at *3 (S.D.N.Y. Oct. 17, 2013) (Nathan, J.) (internal quotation marks omitted) (overruling objections to discovery orders).  Here, Judge Lehrburger's conclusions rejecting Plaintiffs' effort to reopen fact discovery by requiring a fishing expedition for "boy's club" email from the Management Committee or from Goldman Sachs's most senior executives are overwhelmingly supported by the record.  Judge Lehrburger's findings also "are the product of extensive briefing by and lengthy discovery conferences with the parties" and "reflect consideration of the arguments made by the parties." *Id.* at *4.  Indeed, Judge Lehrburger "has been exceptionally patient and generous with [the parties] in h[is] administration of general pretrial matters." *Wood*, 2020 WL 4548079, at *1 (overruling objections to magistrate order closing discovery).  Simply put, this Court should "decline[] to second guess the Magistrate Judge's discretion on a nondispositive pretrial matter regarding discovery." *Adams* v. *Suozzi*, 393 F. Supp. 2d 175, 178 (E.D.N.Y. 2005) (Spatt, J.).

## II.  PLAINTIFFS WAIVED THEIR OBJECTIONS TO JUDGE LEHRBURGER'S 2019 TRIAL PLAN RULING AND, IN ANY EVENT, DO NOT SATISFY THEIR "HEAVY BURDEN" OF ESTABLISHING "CLEAR ERROR."

Plaintiffs' implicit objection to the November 2019 Order setting a trial plan (which they try, unsuccessfully, to frame as an objection to the November 2020 Orders) is both untimely and without merit.

### A.     Plaintiffs' Objection to the November 2019 Order Comes Far Too Late.

Rule 72 makes clear that the consequence of delay is waiver, expressly providing that "[a] party *may not assign as error* a defect in the order *not timely objected to*." Fed. R. Civ. P. 72(a) (emphasis added).  Plaintiffs waived any challenge to Judge Lehrburger's November 25, 2019 Order that "Phase 1 will not include . . . any 'boys' club' claims or anecdotes" aside from anecdotes "related specifically to application of the three processes" (Nov. 2019 Order ¶ 8) by waiting *over a year*, until December 14, 2020, to raise their objections—well past Rule 72(a)'s 14-day limit.  This is not the first time Plaintiffs have filed untimely objections in violation of the clear language of Rule 72(a).  (*See* Oct. 7, 2019 Order at 8 (overruling "as untimely" Plaintiffs' August 23, 2019 objection to December 21, 2018 order).)

None of Plaintiffs' later applications under *Systemax* somehow salvage their out-of-time Objections.  Plaintiffs' December 9, 2019 motion for reconsideration of the November 2019 Order, at best, means that Plaintiffs should have sought review of Judge Lehrburger's January 23, 2020 denial of their request to amend the trial plan by February 6.  Nor did Plaintiffs' latest applications under *Systemax* resuscitate that objection.  Plaintiffs' October 28, 2020 application sought only "to compel production of documents from senior leaders." (ECF No. 1095 at 1.) Likewise, on November 9, 2020, Plaintiffs merely asked Judge Lehrburger to reconsider his November 5 Order denying the October 28 application which, as Plaintiffs explained, "sought targeted discovery from a subset of Goldman's Management Committee." (ECF No. 1104 at 1.) Neither motion sought any amendment to the November 2019 Order regarding the Phase I trial. The Court should overrule Plaintiffs' objection to the November 2019 Order on this basis alone.

### B.     The November 2019 Order Properly Limited the Scope of the Phase I Trial.

Because the November 2019 Order is nondispositive, that Order is subject to the "highly deferential standard" of clearly erroneous or contrary to law review.  *CapLOC*, 2020 WL

1030965, at *2.  As with their challenge to Judge Lehrburger's November 2020 Orders, Plaintiffs

cannot meet this "heavy burden."  *Id.*  Indeed, in limiting any anecdotal "boy's club" evidence at

the Phase I trial to that "related specifically to application of the three processes" (Nov. 2019 Order

¶ 8), Judge Lehrburger reached the only outcome consistent with this Court's Certification Order,

which found predominance *only* for disparate treatment claims "predicated on the statistical

evidence of disparate impact" of the three challenged employment processes, and denied

certification of claims based on Plaintiffs' "boy's club" theory because "[i]ndividual issues would

predominate" for such claims. (Cert. Order at 41, 47; Oct. 7, 2019 Order at 2.)  As this Court has

explained, any Phase I trial will "consist only of generalized proof to address the common issues

that justified certifying the class"—*i.e.*, "three specific policies: 360 reviews, quartiling, and cross-

ruffing" (Oct. 7, 2019 Order at 2, 5 (citing Cert. Order at 28)).

Judge Lehrburger's November 2019 Order faithfully applied this Court's limits to

the scope of any Phase I trial in order to guide the remainder of fact discovery through an orderly

process.  There is no way, consistent with the Certification Order, that Plaintiffs could present

individual anecdotes of generalized "animus" in the context of a Phase I trial of class claims about

three challenged processes that will be based on "generalized proof."  (*Id.* at 2.)  Indeed, as Judge

Lehrburger rightly recognized in the November 5 Order, without a connection to the 360 review,

quartiling or cross-ruffing processes, any evidence of "animus" would be "tangential at best to the

specific issues being tried in Phase I of this action."  (Nov. 5 Order at 3.)

## III.   JUDGE LEHRBURGER CORRECTLY REJECTED PLAINTIFFS' BASELESS THEORY THAT *SYSTEMAX* "CONTROLS HERE."

As Judge Lehrburger correctly recognized, the Second Circuit's fact-bound

decision in *Systemax* does not impact any of the trial planning or discovery orders before this

Court.  Plaintiffs misleadingly claim that "*Systemax* addressed the exact issue of 'boy's club'

evidence in a pay discrimination case." (Objections at 10 (capitalization omitted).)  But *Systemax* is an individual disparate treatment case, not premised on any "challenged practice" (*id.* at 11) and has never been cited in a class action case.

Specifically, *Systemax* does not announce any special rule governing the use of anecdotal evidence involving senior management in Title VII cases.   The Second Circuit considered comments by "Systemax's CFO" because the plaintiff "reported directly" to him, not because of his role as a senior executive.  944 F.3d at 103.  As Plaintiffs admit on page one of their brief, *Systemax* merely "affirmed" the same four-factor test used in this Circuit for "decades" to weigh the probative value of anecdotal evidence in *individual* discrimination claims—a test that could never manageably be applied to Plaintiffs' class claims.  *Id.* at 112; *see Henry*, 616 F.3d at 149 (endorsing four-factor test that "district courts in this circuit have developed [as] a standardized approach for applying these concepts to *individual* cases") (emphasis added).  Judge Lehrburger thus correctly distinguished *Systemax* as "an *individual* claim of discrimination" applying a "four-factor test to assess the relevance and probity of specific comments or actions by *individual* actors," which is "precisely the type of analysis of *individual* claims the Court held was not appropriate for class treatment."  (Jan. 23, 2020 Conf. Tr. at 53:23–24, 54:2–6 (emphasis added).)

## CONCLUSION

This Court should uphold Judge Lehrburger's entirely correct and repeated determinations that (i) Plaintiffs are not entitled to further "boy's club" discovery unrelated to the three challenged processes, and (ii) any such anecdotes would not play a role at a Phase I trial. Because Plaintiffs have not met their burden of showing that any of Judge Lehrburger's findings were "clearly erroneous" or "contrary to law,"  Fed. R. Civ. P. 72(a), the Court should overrule their latest Objections.

Respectfully submitted,

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005

/s/ Robert J. Giuffra, Jr.
Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
(202) 956-7500

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

January 4, 2021