UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

H. CRISTINA CHEN-OSTER, SHANNA
ORLICH, ALLISON GAMBA and MARY
DE LUIS,

                    Plaintiffs,

          v.

GOLDMAN SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

                    Defendants.

------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

10 Civ. 6950 (AT) (RWL)


**DEFENDANTS' RESPONSES TO PLAINTIFFS' OBJECTIONS TO
MAGISTRATE JUDGE LEHRBURGER'S ORDER DENYING DISCOVERY
OF PRIVILEGED COMPENSATION ANALYSIS**

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, NW
Washington, D.C.  20005


Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
Joshua S. Levy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004


Amanda Flug Davidoff
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006


*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

January 7, 2021

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................3

    A.    Paul Hastings Commissions the Welch Analysis To Inform Its Legal Advice to Goldman Sachs's Employment Law Group..............................3

    B.    Goldman Sachs's Production to Plaintiffs of Relevant Compensation Data and Documents Concerning the Firm's Public Statements.....................4

    C.    Plaintiffs Mischaracterize the Deposition Testimony of Goldman Sachs's Chief Diversity Officer To Manufacture a Discovery Dispute Over the Analysis....................................................................................................6

    D.    Plaintiffs' Belated Request for Privileged and Irrelevant Information at the Close of Fact Discovery.....................................................................7

ARGUMENT ...........................................................................................................................8

I.    Plaintiffs Do Not Satisfy Their "Heavy Burden" of Establishing that Judge Lehrburger's Entirely Correct Discovery Ruling Was "Clearly Erroneous" or "Contrary to Law."..........................................................................................8

    A.    Judge Lehrburger Correctly Concluded that the Statistical Analysis Requested and Directed by Paul Hastings To Facilitate Its Legal Advice Was Privileged...................................................................................9

        1.    Plaintiffs Cite No Controlling Law Contrary to Judge Lehrburger's Holding that the Analysis Is Privileged. ...............................9

        2.    Plaintiffs' Critique of Ms. Irish Brown's Deposition Is a Red Herring. .......................................................................12

    B.    Goldman Sachs's Publication of the Existence of and End Result of the Analysis Did Not Waive Privilege..........................................13

II.    Even If the Analysis Sought Were No Longer Privileged, the Court Should Overrule Plaintiffs' Objections. ......................................................16

    A.    The Analysis Is Not Covered by the Parties' Agreed-Upon Discovery Parameters and Is Not Relevant. ....................................................16

    B.    Plaintiffs' Last Minute Request for the Analysis Was Far Too Late.....................17

CONCLUSION .....................................................................................................................18

# TABLE OF AUTHORITIES

*Page(s)*

*Abel* v. *Merrill Lynch & Co., Inc.*,
 1993 WL 33348, at *3 (S.D.N.Y. Feb. 4, 1993) ........................................................10

*Bd. of Trs.* v. *Bank of N.Y. Mellon Corp.*,
 2011 WL 1118718 (S.D.N.Y. Mar. 24, 2011) ...........................................................8

*Berkley Custom Ins. Managers* v. *York Risk Servs. Grp., Inc.*,
 2020 WL 5439636 (S.D.N.Y. Sept. 10, 2020) ......................................................2, 14

*CapLOC, LLC* v. *McCord*,
 2020 WL 1030965 (S.D.N.Y. Mar. 3, 2020) ......................................................1, 3, 8

*In re Cty. of Erie*,
 473 F.3d 413 (2d Cir. 2007) ....................................................................................11

*Colon* v. *City of New York*,
 2014 WL 4100607 (S.D.N.Y. Aug. 20, 2014) ......................................................3, 17

*In re Gen. Motors LLC Ignition Switch Litig.*,
 80 F. Supp. 3d 521 (S.D.N.Y. 2015) ...............................................................1, 9, 14

*Harris* v. *Comput. Assoc. Int'l, Inc.*,
 204 F.R.D. 44 (E.D.N.Y. 2001) ..............................................................................17

*Joffe* v. *King & Spalding LLP*,
 2019 WL 4722673 (S.D.N.Y. Sept. 25, 2019) ......................................................9, 16

*Joseph* v. *Sikorsky Aircraft Corp.*,
 2015 WL 5304177 (D. Conn. Sept. 9, 2015) ...........................................................17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
 336 F.R.D. 400 (S.D.N.Y. 2020) ..............................................................................9

*In re Kidder Peabody Sec. Litig.*,
 168 F.R.D. 459 (S.D.N.Y. 1996) .............................................................................15

*Moussouris* v. *Microsoft Corp.*,
 No. 2:15 Civ. 1483 (W.D. Wash. July 27, 2017) ....................................................15

*Pearlstein* v. *BlackBerry Ltd.*,
 2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) .........................................................11

*Peterson* v. *Katonah Lewisboro Sch. Dist.*,
 2014 WL 3891253 (S.D.N.Y. June 27, 2014) ........................................8, 10, 14, 15

*Podell* v. *Citicorp Diners Club*,
    112 F.3d 98 (2d Cir. 1997)......................................................................13

*In re Rivastigmine Patent Litig.*,
    237 F.R.D. 69 (S.D.N.Y. 2006) .............................................................11

*Scott* v. *Chipotle Mexican Grill, Inc.*,
    94 F. Supp. 3d 585 (S.D.N.Y. 2015)......................................................11

*U1IT4LESS, Inc.* v. *FedEx Corp.*,
    2015 WL 13663398 (S.D.N.Y. Jan. 23, 2015) .........................................8

*Urban Box Off. Network, Inc.* v. *Interfase Managers, L.P.*,
    2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006)..........................................11

*Voelker* v. *Deutsche Bank AG*,
    2014 WL 4473351 (S.D.N.Y. Sept. 11, 2014).....................................9, 11

*Wellnx Life Scis. Inc.* v. *Iovate Health Scis. Research Inc.*,
    2007 WL 1573913 (S.D.N.Y. May 24, 2007) ...........................................9

*Westmoreland* v. *CBS, Inc.*,
    97 F.R.D. 703 (S.D.N.Y. 1983) ..............................................................14

*Winfield* v. *City of New York*,
    2017 WL 5054727 (S.D.N.Y. Nov. 2, 2017)..............................................8

*Wood* v. *Mut. Redev. Hous., Inc.*,
    2020 WL 4548079 (S.D.N.Y. Aug. 5, 2020)...............................................8

*Zhao* v. *Deutsche Bank AG*,
    2014 WL 12526256, at *2 (S.D.N.Y. June 14, 2014).................................10

## PRELIMINARY STATEMENT

Plaintiffs offer no basis to disturb Judge Lehrburger's December 3, 2020 Order correctly applying settled law to find that the attorney-client privilege protects a statistical analysis of 2017 compensation (the "Analysis") for Goldman Sachs employees far outside the scope of the class certified in this action.  ("Dec. 3 Order"; ECF No. 1133.)  This Analysis is plainly privileged because Paul Hastings LLP retained Welch Consulting ("Welch") to undertake it for a legal purpose:  to inform Paul Hastings's privileged advice about compensation practices to Goldman Sachs's Employment Law Group ("ELG").  (Declaration of Barbara B. Brown ("Brown Decl.") ¶¶ 5, 6, ECF No. 1131.)  Because Plaintiffs do not come close to meeting their "heavy burden of proof" that Judge Lehrburger's decision was "clearly erroneous" or "contrary to law," *CapLOC, LLC* v. *McCord*, 2020 WL 1030965, at *2 (S.D.N.Y. Mar. 3, 2020) (Torres, J.), the Court should overrule their Objections.  There is no need to drag out fact discovery in this 10-year old case.

*First*, Judge Lehrburger correctly applied this Circuit's law in holding that the Analysis is privileged.  Indeed, "[s]o long as obtaining or providing legal advice was one of the significant purposes . . . the attorney-client privilege applies."  *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) (Furman, J.) (internal quotation marks omitted).  Paul Hastings "directed, supervised, and managed Welch's statistical analysis . . . for the purpose of providing legal advice to Goldman Sachs regarding its compensation practices." (Brown Decl. ¶ 7.)  The Analysis was kept strictly confidential, with review limited to Paul Hastings, Welch, and attorneys in Goldman Sachs's ELG.  (*Id.* ¶ 8.)  Plaintiffs cite no facts or law, much less controlling law, compelling this Court to overturn Judge Lehrburger's finding that the Analysis is privileged.  In support of their Objections, Plaintiffs mischaracterize routine clarifications that Goldman Sachs's current Chief Diversity Officer, Erika Irish Brown, made to her deposition testimony.  In fact, Ms. Irish Brown's clarifications concerned the Firm's annual

privileged compensation review, which is distinct from the Analysis and not at issue on this motion.  Ms. Irish Brown had no responsibility for or direct knowledge of the Analysis; she was not even employed by Goldman Sachs when it was prepared.

*Second*, Judge Lehrburger correctly ruled that Goldman Sachs did not waive its privilege over the Analysis through "publication of the existence of the Equal Pay Study and its end result."  (Objections ("Objs.") at 12, ECF No. 1151.)  "[I]n this Circuit, the publication of a non-confidential attorney-client communication does not create an inference that related communications or earlier drafts were similarly not intended to be confidential." *Berkley Custom Ins. Managers* v. *York Risk Servs. Grp., Inc.*, 2020 WL 5439636, at *5 (S.D.N.Y. Sept. 10, 2020) (Liman, J.) (internal quotation marks omitted).  Here, Goldman Sachs did not waive privilege by revealing in its 2017 Environmental, Social and Governance Report ("ESG Report") the ultimate conclusion drawn from the Analysis:  that the worldwide group of employees studied were paid equally for equal work.  Having no "controlling law" to support their waiver claims, Plaintiffs are left to cite inapposite decades-old and out-of-circuit district court cases.

*Third*, the Court should reject the Objections for the independent reason that the Analysis is neither responsive to the parties' agreed-upon discovery parameters nor relevant to Plaintiffs' claims.  In 2012, the parties agreed that Defendants would produce "studies concerning . . . compensation" only if "they pertain to the [three] revenue divisions and were conducted by formal groups *at the firm* such as diversity-related task forces or groups within HCM."  (Declaration of Michael Levin-Gesundheit Decl. ("Levin-Gesundheit Decl."), Ex. 12 at 3, ECF No. 1151-13 (emphasis added).)  The Analysis, which was conducted by Welch at the request of Paul Hastings, does not meet this criteria.  Further, Plaintiffs—who already possess 16 years of compensation and other personnel data for the employees who actually are pertinent

here—do not explain how an analysis of one particular year of compensation data for a broad population of irrelevant employees "based outside the U.S." and "in the Merchant Banking Division and non-revenue divisions" of all corporate titles (July 25, 2019 Order ¶ 3, ECF No. 796), has any relevance to their claims, which pertain only to U.S.-based Vice Presidents and Associates in revenue-producing roles in the Investment Banking, Investment Management and Securities Divisions.  As Judge Lehrburger previously found, Plaintiffs have all relevant data for the class and "are able to crunch and assess the data just the same as Goldman can."  (Aug. 24, 2020 Order at 2, ECF No. 1068.)

*Finally*, Plaintiffs elected to bring their motion to compel production of the data underlying the Analysis far too late—on the second-to-last day of fact discovery—even though they have been, or should have been, aware of the existence of this Analysis for more than two years, including from receiving documents in discovery referencing the statement in the ESG Report about the Analysis's non-privileged conclusion.  In this District, courts routinely deny such "eleventh hour" motions when Plaintiffs have "known about [the documents] for at least [a] few months," let alone for several years.  *Colon* v. *City of New York*, 2014 WL 4100607, at *2–3 (S.D.N.Y. Aug. 20, 2014) (Furman, J.).

Because Plaintiffs have not met their "heavy burden" of showing that Judge Lehrburger's December 3 Order was "clearly erroneous" or "contrary to law," *CapLOC, LLC*, 2020 WL 1030965, at *2, this Court should reject Plaintiffs' latest Objections.

## BACKGROUND

A.   **Paul Hastings Commissions the Welch Analysis To Inform Its Legal Advice to Goldman Sachs's Employment Law Group**

Starting in early 2017, the United Kingdom began requiring large employers, including Goldman Sachs, to report raw compensation figures by gender, *i.e.*, without regard to

any employee's qualifications, experience, or role.  In response, Goldman Sachs's ELG retained Paul Hastings to advise on the Firm's compensation practices.  (Brown Decl. ¶ 5.)  Paul Hastings then retained Welch to provide statistical analyses to be used by counsel to provide legal advice to Goldman Sachs's management.  (*Id.* ¶ 6.)

Between February 2017 and mid-2018, Paul Hastings attorneys directed, supervised, and managed Welch's work, including data collection, methodology, and reporting. (*Id.* ¶ 7.)  The Analysis sought by Plaintiffs—which covered compensation for just one year, 2017—included Goldman Sachs employees globally, including in non-revenue roles.  (*Id.*)  These employees included those from revenue and non-revenue divisions outside of the class, and *all* corporate titles, not just Associates and Vice Presidents.  (*Id.*)

All underlying data and interim analyses were kept confidential and reviewed only by Welch, Paul Hastings, and ELG attorneys, and no written report was prepared about Welch's work.  (*Id.* ¶ 8.)[1]  Rather, Paul Hastings attorneys used the Analysis to provide legal advice to ELG attorneys, who then provided legal advice to the Firm's Environmental, Social and Governance function concerning the Analysis, allowing them to make a statement in Goldman Sachs's public 2017 ESG Report, which has been public since spring 2018, that the Firm had "conducted an analysis that shows women at the firm on average make 99 percent of what men earn."  (Objs. at 1 (quoting ESG Report at 24).)

### B.  Goldman Sachs's Production to Plaintiffs of Relevant Compensation Data and Documents Concerning the Firm's Public Statements

During fact discovery, which ended on November 20, 2020, Goldman Sachs

---

[1]      (*See* Declaration of Robert J. Giuffra, Jr., dated Jan. 7, 2021 ("Giuffra Decl."), Ex. 1 (Blankfein Dep.) at 84:10–12 ("[I]f I had gotten an explanation [about the Analysis] -- any explanation I had would have come from -- would have come from a privileged side.").)

produced millions of pages of documents and voluminous data in response to Plaintiffs' dozens of document requests.  One such request sought "[a]ll documents or correspondence related to all gender-related statistical audits, analysis, studies or reports regarding compensation . . . for Associates, Vice Presidents, Managing Directors, Participating Managing Directors, and Partners that Defendants have performed, including but not limited to the underlying data for such audits, analyses, studies or reports."  (ECF No. 1130-3 at 17.)  Goldman Sachs objected to this request and, after negotiations, the parties agreed—in February 2012, nearly nine years ago—that Goldman Sachs would search for "studies concerning . . . compensation" only if "they pertain to the [three] revenue divisions and were conducted by formal groups *at the firm* such as diversity-related task forces or groups within HCM [the Firm's Human Capital Management Division]." (Levin-Gesundheit Decl., Ex. 12 at 3 (emphasis added).)  Goldman Sachs already has produced any such non-privileged studies and all relevant data, including compensation information, for the class, including *all* Associates and Vice Presidents in revenue-generating roles in the Investment Banking, Investment Management, and Securities Divisions in the U.S. from 2003 to 2018.

   During discovery, Goldman Sachs produced non-privileged emails and talking points expressly referencing the ESG Report's non-privileged statement that "[we] have conducted an analysis that shows women at the firm on average make 99% of what men earn."  (ECF No. 1130-1 at -238 (produced July 10, 2019); *see* ECF No. 1130-2 at -190 (same; produced August 29, 2019).)  Yet between July 10, 2019, when they Plaintiffs received these documents, and November 13, 2020, Plaintiffs did not ask any deponent about these statements or seek production of the Analysis.  Plaintiffs offer no explanation for the delay in their supposed "discovery" of the existence of the Analysis, nor any valid justification for now seeking its

production, particularly because Goldman Sachs already has produced (as previously agreed to by Plaintiffs) all relevant data, including compensation information, for *all* class members.

### C. Plaintiffs Mischaracterize the Deposition Testimony of Goldman Sachs's Chief Diversity Officer To Manufacture a Discovery Dispute Over the Analysis

On November 13, 2020, Plaintiffs deposed Erika Irish Brown, the Firm's current Chief Diversity Officer. Although Ms. Irish Brown did not join Goldman Sachs until July 2018, *after* the ESG Report was released (Giuffra Decl., Ex. 3 (Irish Brown Dep.) at 26:8–14, 30:24– 31:3), Plaintiffs asked a series of questions about the Analysis and ESG Report. Ms. Irish Brown did not know the answers to most of these questions because, as she emphasized repeatedly, "this all predates me." (*Id.* at 125:13–14; *see, e.g., id.* at 154:5 ("Again, [the 2017 review process] predates me. I don't want to misspeak.").) As such, Ms. Irish Brown's testimony about the ESG Report rested entirely on her reading of the ESG Report *after* it was published and HCM talking points about the ESG Report; she had no involvement in or access to the privileged Analysis sought by Plaintiffs, nor any responsibility for the ESG Report.[2]

In their Objections, Plaintiffs inaccurately assert that Goldman Sachs modified Ms. Irish Brown's testimony "to add references to counsel's involvement" in the Analysis in order "[t]o support [Goldman Sachs's] invocation" of the attorney-client privilege. (Objs. at 8.) Ms. Irish Brown's corrections to her testimony concerned the Firm's annual compensation review,

---

[2]     (*See, e.g., id.* at 129:4–130:6 (Q. "Have you seen any documents explaining the 99 percent figure in any greater detail than what we've looked at right now?" A. "*No.*" Q. "Have you seen any documents explaining the methodology underlying the pay equity analyses?" A. "*No.*" Q. "Have you ever asked for any writings describing the pay equity analysis -- analyses?" A. "*No.*" Q. "Are you aware of the methods by which the 99 percent figure has been disseminated within Goldman Sachs?" A. "Again, it was done before I arrived. It was clearly published in a public report that's also shared with the firm. You know, when we publish the sustainability reports, it is distributed all throughout the firm. So *those are the only fact-based answers I can offer.*") (emphasis added).)

which is ***not*** at issue on this motion, and which Plaintiffs concede "the Court has ruled is privileged." (*Id.* at 6 (citing Jan. 14, 2014 Order, ECF No. 216).) Specifically, after stating that "the compensation team" was responsible for conducting this annual review (Giuffra Decl., Ex. 3 at 142:4–8; *id.* at 145:6–7), Ms. Irish Brown clarified in her errata that she was referring to ELG attorneys who conduct this process (*see id.* at 10 (changing "compensation team" to "ELG team")). This type of correction is permitted by Rule 30(e) and had nothing to do with the privileged Analysis.

### D. Plaintiffs' Belated Request for Privileged and Irrelevant Information at the Close of Fact Discovery

From December 2018 to July 2020, Judge Lehrburger held ten conferences, preceded by extensive written submissions, giving the parties multiple opportunities to raise any discovery disputes ripe for adjudication. Just one week before the close of fact discovery, Plaintiffs asked Goldman Sachs to produce materials related to the Analysis referenced in the publicly available 2017 ESG Report. (Giuffra Decl., Ex. 2.) Then, on November 19, 2020, the day before the close of fact discovery, Plaintiffs filed a pre-motion letter seeking production of "data file(s)," and "any final report describing the methodology and/or results of the" Analysis conducted by Welch at the direction and supervision of Paul Hastings. (Pls.' Ltr. at 1, ECF No. 1111.)

On December 3, 2020, Judge Lehrburger correctly denied Plaintiffs' request, concluding "that Goldman has established that the analysis is protected by the attorney-client privilege, while Plaintiffs have not provided a sufficient basis to establish waiver." (Dec. 3 Order at 1.)

## ARGUMENT

**I.     PLAINTIFFS DO NOT SATISFY THEIR "HEAVY BURDEN" OF ESTABLISHING THAT JUDGE LEHRBURGER'S ENTIRELY CORRECT DISCOVERY RULING WAS "CLEARLY ERRONEOUS" OR "CONTRARY TO LAW."**

Under Federal Rule of Civil Procedure 72(a), "[a] magistrate's resolution of pretrial discovery disputes is entitled to substantial deference and may not be disturbed by a District Court in the absence of a finding that the magistrate's determination was clearly erroneous or contrary to law." *Bd. of Trs.* v. *Bank of N.Y. Mellon Corp.*, 2011 WL 1118718, at *1 (S.D.N.Y. Mar. 24, 2011) (Berman, J.) (internal quotation marks omitted).  This Court has stressed that Plaintiffs bear a "heavy burden of proof" to satisfy this "highly deferential standard." *CapLOC, LLC* v. *McCord*, 2020 WL 1030965, at *2 (S.D.N.Y. Mar. 3, 2020) (Torres, J.) (internal quotation marks omitted) (overruling objections to Judge Lehrburger's discovery order).[3]

"The 'contrary to law' prong [of the test] is concerned with the magistrate judge's legal conclusions, which are 'contrary to law' if they 'run counter to controlling authority.'" *Peterson* v. *Katonah Lewisboro Sch. Dist.*, 2014 WL 3891253, at *1 (S.D.N.Y. June 27, 2014) (Briccetti, J.) (citation omitted); *see Winfield* v. *City of New York*, 2017 WL 5054727, at *3 (S.D.N.Y. Nov. 2, 2017) (Swain, J.) (discovery ruling not "contrary to law" where "Plaintiffs have not pointed to any binding authority" contrary to the magistrate judge's decision).

"[T]o be clearly erroneous, a decision must strike the reviewing court as more than

---

[3]     *See Wood* v. *Mut. Redev. Hous., Inc.*, 2020 WL 4548079, at *1 (S.D.N.Y. Aug. 5, 2020) (Torres, J.) ("[A] pretrial discovery ruling is reviewed under this highly deferential standard.") (internal quotation marks omitted); (Oct. 7, 2019 Order at 3, ECF No. 873 ("As a non-dispositive matter, a pretrial discovery ruling is reviewed under this highly deferential standard.") (internal quotation marks omitted)); *U1IT4LESS, Inc.* v. *FedEx Corp.*, 2015 WL 13663398, at *1 (S.D.N.Y. Jan. 23, 2015) (Seibel, J.) ("The issue is not whether I would have decided the matter differently, but whether [the magistrate judge's] decision was so unreasonable as to fall outside the range of his broad discretion.").

just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish." *Joffe* v. *King & Spalding LLP*, 2019 WL 4722673, at *2 (S.D.N.Y. Sept. 25, 2019) (Caproni, J.) (internal quotation marks omitted).[4]

### A. Judge Lehrburger Correctly Concluded that the Statistical Analysis Requested and Directed by Paul Hastings To Facilitate Its Legal Advice Was Privileged.

In correctly holding that the Analysis is protected by the attorney-client privilege, Judge Lehrburger followed settled Second Circuit law.  As Plaintiffs have previously conceded, where a document is "both business and legal in nature," the document is privileged if "the predominant purpose" of the document is "legal."  (ECF No. 1071 at 8 (citing *Pearlstein* v. *BlackBerry Ltd.*, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (Parker, J.)).)[5]  The Analysis, which Paul Hastings requested, directed, and supervised to facilitate its legal advice concerning Goldman Sachs's compensation practices, clearly satisfies this standard.

### 1. Plaintiffs Cite No Controlling Law Contrary to Judge Lehrburger's Holding that the Analysis Is Privileged.

In this District, it is settled that analyses of "demographic and employment statistics" "created at the direction of counsel in order to facilitate the provision of legal advice" are "covered by the attorney-client privilege."  *Voelker* v. *Deutsche Bank AG*, 2014 WL 4473351,

---

[4]    "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403–04 (S.D.N.Y. 2020) (Broderick, J.) (internal quotation marks omitted). Three of the twelve documents on which Plaintiffs rely (*see* Levin-Gesundheit Decl., Exs. 5, 6, 7) were not presented to Judge Lehrburger.

[5]    *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) (Furman, J.) ("So long as obtaining or providing legal advice was one of the significant purposes . . . the attorney-client privilege applies, even if there were also other purposes."); *Wellnx Life Scis. Inc.* v. *Iovate Health Scis. Research Inc.*, 2007 WL 1573913, at *2 (S.D.N.Y. May 24, 2007) (Castel, J.) ("The issue is not whether any business considerations were also under discussion . . . but 'whether the predominant purpose of the communication is to render or solicit legal advice.'") (quoting *In re Cty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)).

-9-

at *2–3 (S.D.N.Y. Sept. 11, 2014) (Caproni, J.).   The Brown Declaration explained that the Analysis was created "in connection with Paul Hastings' legal advice to Goldman Sachs regarding its compensation practices."   (Brown Decl. ¶ 6.)   This sworn testimony provides more than sufficient support for Judge Lehrburger's conclusion that the Analysis is privileged.

Unable to point to any "legal conclusions[] which . . . 'run counter to controlling authority," *Peterson*, 2014 WL 3891253, at *1, Plaintiffs cite a grab bag of cases, none of which supports their argument that the Analysis is not privileged.   For example, in *Zhao* v. *Deutsche Bank AG*, the Court rejected the argument that "analyses of [a reduction in force] that were generated by the Human Resources department" were privileged where the record made clear that the "bank's central group" ran the analyses to be "presented to Legal for approval."   2014 WL 12526256, at *2 (S.D.N.Y. June 14, 2014) (Freeman, J.) (internal quotation marks omitted).   Here, the outside counsel directed and supervised the Analysis, which was undertaken to "be used by counsel to provide legal advice."   (Brown Decl. ¶¶ 6, 7.)

In *Abel* v. *Merrill Lynch & Co., Inc.*, the Court ordered production of reports subject to a claim of privilege where the defendant "ha[d] eliminated any record of the underlying facts other than the communications prepared for counsel."   1993 WL 33348, at *3 (S.D.N.Y. Feb. 4, 1993) (Patterson, J.).   By contrast, Defendants "already ha[ve] produced all relevant [compensation] data," such that "Plaintiffs are able to crunch and assess the data just the same as Goldman can."   (Aug. 24, 2020 Order at 2.)   Plaintiffs' remaining cases are distinguishable on

-10-

their face,[6] support Judge Lehrburger's decision,[7] or state general legal principles.[8]

Plaintiffs inaccurately assert that the Analysis was undertaken to "[m]anag[e]" public relations."  (Objs. at 8–9.)  This argument rests entirely on a single email written by an HCM professional in February 2018—long after Paul Hastings retained Welch to perform the Analysis—who referenced a "debate" at a meeting of the Goldman Sachs European Management Committee concerning "how we want to use" results from a pay analysis in "public disclosures," noting that the decision would be made by the Firm's Executive Office and Investor Relations functions.  (Levin-Gesundheit Decl., Ex. 4 at -620, ECF No. 1151-5.)  As the face of this email makes clear, the email concerns what might be done with *non-privileged* information, that is, any public statement the Firm may decide to make based on a pay equity analysis.  Plaintiffs have submitted *no* evidence calling into question Ms. Brown's sworn statement that the Analysis was intended to "be used by counsel to provide legal advice" and was never disclosed outside Paul Hastings, Welch and ELG.  (Brown Decl. ¶¶ 6–8.)  To the contrary, the record confirms

---

[6]    *See Pearlstein*, 2019 WL 1259382, at *13 (granting motion to compel production of draft press releases and emails "sharing factual information" or discussing "timing of the publication of [a] press release and subsequent news reports" made for predominantly business purposes).

[7]    *See Scott* v. *Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 596 (S.D.N.Y. 2015) (Netburn, J.) ("The mere fact that business was *one* purpose of the [attorney's] advice, however, does not vitiate any actual legal nature."); *Voelker*, 2014 WL 4473351, at *2 (denying motion to compel production of employment statistics subject to privilege claim where, as here, defendant had already produced the same statistics, "raising the question of what relevant information, apart from privileged communications, Plaintiff hopes to obtain"); *Urban Box Off. Network, Inc.* v. *Interfase Managers, L.P.*, 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006) (Katz, J.) ("[E]ven where there is a business transaction which is being considered, such transactions might have legal consequences on which legal advice is needed.").

[8]    *See In re Cty. of Erie*, 473 F.3d at 421 ("When an attorney is consulted in a capacity other than as a lawyer . . . that consultation is not privileged."); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006) (Francis, J.) ("[A] document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications.").

Ms. Brown's sworn statement.  When asked, "What do you know about [the] analysis" "showing that women at the firm on average make 99 percent of what men earn," Mr. Blankfein testified that "any explanation I had" of the Analysis "would have come from a privileged side."  (Giuffra Decl., Ex. 1 at 83:18–84:12.)[9]

## 2. Plaintiffs' Critique of Ms. Irish Brown's Deposition Is a Red Herring.

Grasping at straws, Plaintiffs try to make much of the fact that "[d]uring Plaintiffs' questioning of Ms. Irish Brown regarding the 2017 Equal Pay Study, Goldman Sachs's counsel never raised an attorney-client privilege objection."  (Objs. at 6–7.)  But Ms. Irish Brown testified that the Analysis *predated her employment* with Goldman Sachs, and that she had *no personal knowledge* of its development.  (*See supra* at 6.)  There was no need to object to questions on this topic as seeking privileged information, because Ms. Irish Brown had made clear that she had no privileged information to provide—and Plaintiffs' counsel made clear numerous times that their questions were not intended to elicit any privileged information.[10]

Plaintiffs cite a handful of Ms. Irish Brown's routine errata clarifications as an "attempt to change unfavorable testimony," claiming that "Goldman Sachs made 10 different substantive alterations to Ms. Irish Brown's testimony to add references to counsel's involvement

---

[9]    Plaintiffs claim that Defendants "conceded" that the Analysis "served no compliance purpose" by arguing before Judge Lehrburger that the information sought is "irrelevant," because "it includes employees that [Goldman Sachs] contends should not be compared on an employment law basis."  (Objs. at 10.)  In fact, Defendants argued (and argue, *see infra* Section II.A) that the Analysis is irrelevant *to this litigation* because "it included data about non-class employees." (Defs.' Ltr. at 2, ECF No. 1130.)  The data's lack of relevance says nothing about the privileged nature of the Analysis, which reflects "outside counsel's view of how to compare employee compensation for purposes of assessing legal compliance."  (*Id.* at 3.)

[10]    (*See* Giuffra Decl., Ex. 3 at 15:23–24 ("I'm not asking for any conversations with counsel about anything."); *see also*, *e.g.*, *id.* at 16:9–10 ("I'm not asking for any communications with counsel."); *id.* at 53:15–16 ("I'm not asking her for what ELG told her."); 55:24–25 ("I'm not asking for any conversations with the witness and ELG."); 64:4–5 ("I'm not asking for any communications with counsel.").)

in the Equal Pay Study." (Objs. at 8 & n.6.)  Respectfully, these assertions are wrong.  All of these changes Ms. Irish Brown made to her testimony were to clarify that *the annual compensation review process*—which is separate from the pay equity analysis at issue here and in which she was not involved—is conducted by the ELG in the Legal Division.  (*See* Giuffra Decl., Ex. 3 at 10 (changing the "compensation team" to the "ELG team"); *see, e.g.*, *id.* at 125:24–126:2 ("Part of [ELG's] processes is [that] [e]ach year there is a review done between men and women in similar roles with similar performance[.]") (reflecting errata changes).)[11]  To be clear, Ms. Irish Brown did not clarify any of her (quite limited) testimony that she believed "the compensation team" conducted the privileged Analysis at issue here; no such corrections were necessary because, as Ms. Irish Brown made clear, she was merely reporting her secondhand understanding based on what she remembered being "told."  (*See, e.g.*, *id.* at 125:11–17.)[12]

### B.   Goldman Sachs's Publication of the Existence of and End Result of the Analysis Did Not Waive Privilege.

Judge Lehrburger correctly rejected Plaintiffs' assertion that privilege over the Analysis was waived by "publication of the existence of the Equal Pay Study and its end result." (Objs. at 12.) [13]  "[I]n this Circuit, the publication of a non-confidential attorney-client communication does not create an inference that related communications or earlier drafts were

---

[11]   Plaintiffs have been aware of the separate annual compensation review conducted by ELG since at least 2013 (*see* Palumbo Decl. at 6–9 (ECF No. 925-2) (Head of ELG describing ELG's annual compensation review process)) and conceded in their Objections that "the Court has ruled" that "the [ELG's] annual review process" is "privileged" (Objs. at 6 (internal quotation marks omitted) (citing Jan. 14, 2014 Order)).

[12]   In any event, "Rule [30(e)] places no limitations on the type of changes that may be made." *Podell* v. *Citicorp Diners Club*, 112 F.3d 98, 103 (2d Cir. 1997).

[13]   Judge Lehrburger left open the possibility that Plaintiffs may renew their motion "in the event Goldman relies on the analysis in this litigation or otherwise waives privilege."  (Dec. 3 Order at 1.)  But Plaintiffs do not claim that Goldman Sachs has "relie[d] on the analysis in this litigation," nor does Goldman Sachs intend to do so.

similarly not intended to be confidential." *Berkley Custom Ins. Managers* v. *York Risk Servs. Grp., Inc.*, 2020 WL 5439636, at *5 (S.D.N.Y. Sept. 10, 2020) (Liman, J.) (citation omitted). "Were it otherwise, any attorney-client communications relating to the preparation of publicly filed legal documents—such as court pleadings—would be unprotected, which is plainly not the law." *In re Gen. Motors LLC*, 80 F. Supp. 3d at 529. Judge Francis *twice* reached a similar conclusion in this very case, holding that ELG analyses and advice concerning employee compensation and quartiling decisions were privileged even though the outcome of that advice (each employee's compensation or quartile, as informed by legal advice) was not. (*See* Jan. 14, 2014 Order at 1, ("[I]nformation linking [non-privileged] decisions to input from the ELG . . . is protected by the attorney-client privilege."); June 18, 2013 Order at 14, ECF No. 183 (data fields designed by ELG were privileged where Plaintiffs failed to "overcome the sworn testimony of a witness with personal knowledge" that the data fields were used to facilitate legal advice about compensation decisions).)

Citing three non-binding cases, Plaintiffs insist that publication of "the existence of the Equal Pay Study and its end result" alone constituted waiver of privilege. (Objs. at 12.) But none of these authorities—two of which Judge Lehrburger found unpersuasive and one (the *Kidder Peabody* decision cited below) that Plaintiffs did not bother to put before him—come close to providing the "controlling authority" necessary to establish that Judge Lehrburger's finding was contrary to law. *Peterson*, 2014 WL 3891253, at *1.

*First*, Plaintiffs cite a *nearly forty-year-old* case that does not address the attorney-client privilege and is plainly distinguishable. *See Westmoreland* v. *CBS, Inc.*, 97 F.R.D. 703, 704–06 (S.D.N.Y. 1983) (Leval, J.) ("self-evaluative analysis" privilege over report containing investigation findings waived where defendant had "proclaim[ed] the thoroughness and

professionalism" of investigation and "summarize[d] evidence").

*Second*, Plaintiffs cite a 1996 case finding that public disclosure of "very specific purported paraphrase[s] of statements made by witnesses" waived privilege over documents reflecting those statements. *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469–70 (S.D.N.Y. 1996) (Dolinger, J.). But as Plaintiffs concede, at most, "Goldman Sachs published the *end result* of its Equal Pay Study" (Objs. at 12 (emphasis added)), which is not privileged and does not disclose the substance of the Analysis sought by Plaintiffs.

*Third*, Plaintiffs cite an out-of-circuit district court case, *Moussouris* v. *Microsoft Corp.*, which is plainly distinguishable and in no way "controll[ed]" Judge Lehrburger's decision. *See Peterson*, 2014 WL 3891253, at *1. In *Moussouris*, a special master recommended finding that a pay analysis and the methodology used were not privileged because, as Microsoft acknowledged, the analysis was "prompted by [a shareholder] request to Microsoft to provide more transparency with respect to its pay data." R&R at 13–15, *Moussouris*, No. 2:15 Civ. 1483 (W.D. Wash. July 27, 2017), ECF No. 201–1. But here Paul Hastings was retained to "provide legal advice regarding Goldman Sachs's compensation practices in light of the impending effective date of the United Kingdom's pay gap legislation" (Brown Decl. ¶ 5), a legal purpose that Judge Lehrburger found established that "the analysis is protected by the attorney-client privilege" (Dec. 3 Order at 1). By contrast, Microsoft *conceded* that it had waived privilege over the pay analysis on the particular facts before the court, which thus never had to rule on whether waiver had occurred in the first place. Order at 4, *Moussouris*, No. 2:15 Civ. 1483 (W.D. Wash. July 27, 2017), ECF No. 225-1.

## II.     EVEN IF THE ANALYSIS SOUGHT WERE NO LONGER PRIVILEGED, THE COURT SHOULD OVERRULE PLAINTIFFS' OBJECTIONS.

Because "[t]he court may affirm on any basis supported by the record, including grounds upon which the [magistrate judge] did not rely," the Court could, alternatively, reject Plaintiffs' last-minute attempt to obtain compensation data on grounds of responsiveness, relevance and timeliness. *Joffe*, 2019 WL 4722673, at *5 (internal quotation marks omitted).  No compensation claim has been certified here, Plaintiffs have the relevant underlying data, and Plaintiffs' request comes far too late in the day.

### A.  The Analysis Is Not Covered by the Parties' Agreed-Upon Discovery Parameters and Is Not Relevant.

Production of the Analysis is not called for by the parties' 2012 agreement to produce "studies concerning . . . compensation" only if "they pertain to the [three] revenue divisions and were conducted by formal groups *at the firm* such as diversity-related task forces or groups within HCM."  (Levin-Gesundheit Decl., Ex. 12 at 3 (emphasis added).)  The Analysis, which was performed by Welch at the request of Paul Hastings, was not "conducted by [a] formal group[] at the firm."  (*Id.*)

Moreover, the Analysis is not relevant to this litigation.  Plaintiffs argue that the Analysis is pertinent to (i) "whether Goldman Sachs's challenged performance evaluation processes indeed have a disparate impact" on class members and (ii) whether Goldman Sachs engaged in disparate treatment because it knew of their supposed impact "'but did not adjust its policies or practices'" in response.  (Objs. at 14 (quoting ECF No. 578 at 34).)  But the Analysis— a single-year study of compensation results for all of Goldman Sachs's employees around the world, in all divisions, titles and functions—is of no relevance or probative value in establishing either of these points.  In any event, Plaintiffs do not contest that Defendants "already ha[ve] produced all relevant [compensation] data" to measure supposed disparate impact (Aug. 24, 2020

-16-

Order at 2) and do not identify how additional *irrelevant* data about employees *not in the class* may shed light on whether disparities affected *class members*.

### B. Plaintiffs' Last Minute Request for the Analysis Was Far Too Late.

In their Objections, Plaintiffs try to gloss over the fact that they waited until November 19, 2020, just *one day* before the close of fact discovery, to seek the Analysis. Courts routinely deny such "eleventh hour" motions to compel when Plaintiffs had "known about [the documents] for at least [a] few months," let alone years. *Colon* v. *City of New York*, 2014 WL 4100607, at *2–3 (S.D.N.Y. Aug. 20, 2014) (Furman, J.) (denying requests for additional discovery filed one day before discovery deadline where plaintiff "ha[d] known about [the issue] for at least a few months" because "it was incumbent upon Plaintiff to raise the issues with the Court before the proverbial eleventh hour").[14]

Plaintiffs claim that they first learned about "an independent study of pay equity," distinct from ELG's "annual review process," during the November 13, 2020 deposition of Ms. Irish Brown. (Objs. at 6.) But Plaintiffs were on notice of the ESG Report and Analysis for well over two years. As Plaintiffs concede, the ESG Report statement that Goldman Sachs "conducted an analysis that shows women at the firm on average make 99 percent of what men earn" was made publicly available in spring 2018. (Objs. at 3 (quoting ESG Report at 24).) Defendants also produced documents *more than one year ago* that clearly referenced the Analysis and the final (non-privileged) result of it. (*See*, *e.g.*, ECF No. 1130-1 at -238 ("[W]e have conducted an analysis that shows women at the firm on average make 99% of what men earn,"

---

[14]    *See also Joseph* v. *Sikorsky Aircraft Corp.*, 2015 WL 5304177, at *3 (D. Conn. Sept. 9, 2015) ("After many months of discovery, a motion to compel should not be served at the last minute.") (citing cases); *Harris* v. *Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) (Boyle, J.) ("Discovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery.") (citing cases).

produced July 10, 2019); ECF No. 1130-2 at -190 (same, produced August 29, 2019).)  And Plaintiffs did not inquire about the Analysis at the August 13, 2020 deposition of Anilu Vazquez-Ubarri, who was Goldman Sachs's Chief Diversity Officer when the ESG Report was published. Plaintiffs simply cannot excuse their failure to seek what they now claim to be important information until the eve of the close of fact discovery.

## CONCLUSION

This Court should overrule Plaintiffs' latest Objections.  Plaintiffs have not met their high burden of showing that Judge Lehrburger's Order finding that the attorney-client privilege protects the Analysis, and that no privilege has been waived, was "clearly erroneous" or "contrary to law."  And, in any event, this Analysis is irrelevant to Plaintiffs' claims, as confirmed by Plaintiffs' own delay in seeking its production.

Respectfully submitted,

/s/ Robert J. Giuffra, Jr.

| | |
|---|---|
| Barbara B. Brown (*admitted pro hac vice*) | Robert J. Giuffra, Jr. |
| Carson H. Sullivan (*admitted pro hac vice*) | Sharon L. Nelles |
| PAUL HASTINGS LLP | Ann-Elizabeth Ostrager |
| 875 15th Street, N.W. | Hilary M. Williams |
| Washington, D.C.  20005 | Joshua S. Levy |
| | SULLIVAN & CROMWELL LLP |
| | 125 Broad Street |
| Patrick W. Shea | New York, New York  10004 |
| PAUL HASTINGS LLP | (212) 558-4000 |
| 200 Park Avenue | |
| New York, New York  10166 | |
| | Amanda Flug Davidoff |
| | Elizabeth A. Cassady |
| | SULLIVAN & CROMWELL LLP |
| | 1700 New York Avenue, N.W., Suite 700 |
| | Washington, D.C.  20006 |
| | (202) 956-7500 |

*Attorneys for Defendants*
*Goldman, Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

January 7, 2021

-18-