# Exhibit 29

# Reference Manual on Scientific Evidence

*Third Edition*

Committee on the Development of the Third Edition of the
Reference Manual on Scientific Evidence

Committee on Science, Technology, and Law
Policy and Global Affairs

FEDERAL JUDICIAL CENTER

NATIONAL RESEARCH COUNCIL
*OF THE NATIONAL ACADEMIES*

THE NATIONAL ACADEMIES PRESS
Washington, D.C.
**www.nap.edu**

**THE NATIONAL ACADEMIES PRESS 500 Fifth Street, N.W. Washington, DC 20001**

The Federal Judicial Center contributed to this publication in furtherance of the Center's statutory mission to develop and conduct educational programs for judicial branch employees. The views expressed are those of the authors and not necessarily those of the Federal Judicial Center.

NOTICE: The project that is the subject of this report was approved by the Governing Board of the National Research Council, whose members are drawn from the councils of the National Academy of Sciences, the National Academy of Engineering, and the Institute of Medicine. The members of the committee responsible for the report were chosen for their special competences and with regard for appropriate balance.

The development of the third edition of the *Reference Manual on Scientific Evidence* was supported by Contract No. B5727.R02 between the National Academy of Sciences and the Carnegie Corporation of New York and a grant from the Starr Foundation. The views expressed in this publication are those of the authors and do not necessarily reflect those of the National Academies or the organizations that provided support for the project.

International Standard Book Number-13: 978-0-309-21421-6
International Standard Book Number-10: 0-309-21421-1

Library of Congress Cataloging-in-Publication Data

Reference manual on scientific evidence. — 3rd ed.
p. cm.
Includes bibliographical references and index.
ISBN-13: 978-0-309-21421-6 (pbk.)
ISBN-10: 0-309-21421-1 (pbk.)
1. Evidence, Expert—United States. I. Federal Judicial Center.
KF8961.R44 2011
347.73′67—dc23
2011031458

Additional copies of this report are available from the National Academies Press, 500 Fifth Street, N.W., Lockbox 285, Washington, DC 20055; (800) 624-6242 or (202) 334-3313 (in the Washington metropolitan area); Internet, http://www.nap.edu.

Copyright 2011 by the National Academy of Sciences. All rights reserved.

Printed in the United States of America

# Summary Table of Contents

A detailed Table of Contents appears at the front of each chapter.

Introduction, 1
Stephen Breyer

The Admissibility of Expert Testimony, 11
Margaret A. Berger

How Science Works, 37
David Goodstein

Reference Guide on Forensic Identification Expertise, 55
Paul C. Giannelli, Edward J. Imwinkelried, & Joseph L. Peterson

Reference Guide on DNA Identification Evidence, 129
David H. Kaye & George Sensabaugh

Reference Guide on Statistics, 211
David H. Kaye & David A. Freedman

Reference Guide on Multiple Regression, 303
Daniel L. Rubinfeld

Reference Guide on Survey Research, 359
Shari Seidman Diamond

Reference Guide on Estimation of Economic Damages, 425
Mark A. Allen, Robert E. Hall, & Victoria A. Lazear

Reference Guide on Exposure Science, 503
Joseph V. Rodricks

Reference Guide on Epidemiology, 549
Michael D. Green, D. Michal Freedman, & Leon Gordis

Reference Guide on Toxicology, 633
Bernard D. Goldstein & Mary Sue Henifin

Reference Guide on Medical Testimony, 687
John B. Wong, Lawrence O. Gostin, & Oscar A. Cabrera

Reference Guide on Neuroscience, 747
Henry T. Greely & Anthony D. Wagner

Reference Guide on Mental Health Evidence, 813
Paul S. Appelbaum

Reference Guide on Engineering, 897
Channing R. Robertson, John E. Moalli, & David L. Black

Appendix A. Biographical Information of Committee and Staff, 961

# Reference Guide on Multiple Regression

DANIEL L. RUBINFELD

*Daniel L. Rubinfeld, Ph.D., is Robert L. Bridges Professor of Law and Professor of Economics Emeritus, University of California, Berkeley, and Visiting Professor of Law at New York University Law School.*

CONTENTS

I. Introduction and Overview, 305
II. Research Design: Model Specification, 311
  A. What Is the Specific Question That Is Under Investigation by the Expert? 311
  B. What Model Should Be Used to Evaluate the Question at Issue? 311
    1. Choosing the dependent variable, 312
    2. Choosing the explanatory variable that is relevant to the question at issue, 313
    3. Choosing the additional explanatory variables, 313
    4. Choosing the functional form of the multiple regression model, 316
    5. Choosing multiple regression as a method of analysis, 317
III. Interpreting Multiple Regression Results, 318
  A. What Is the Practical, as Opposed to the Statistical, Significance of Regression Results? 318
    1. When should statistical tests be used? 319
    2. What is the appropriate level of statistical significance? 320
    3. Should statistical tests be one-tailed or two-tailed? 321
  B. Are the Regression Results Robust? 322
    1. What evidence exists that the explanatory variable causes changes in the dependent variable? 322
    2. To what extent are the explanatory variables correlated with each other? 324
    3. To what extent are individual errors in the regression model independent? 325
    4. To what extent are the regression results sensitive to individual data points? 326
    5. To what extent are the data subject to measurement error? 327

IV. The Expert, 328
  A. Who Should Be Qualified as an Expert? 328
  B. Should the Court Appoint a Neutral Expert? 329
V. Presentation of Statistical Evidence, 330
  A. What Disagreements Exist Regarding Data on Which the Analysis Is Based? 330
  B. Which Database Information and Analytical Procedures Will Aid in Resolving Disputes over Statistical Studies? 331
Appendix: The Basics of Multiple Regression, 333
  A. Introduction, 333
  B. Linear Regression Model, 336
    1. Specifying the regression model, 337
    2. Regression line, 337
  C. Interpreting Regression Results, 339
  D . Determining the Precision of the Regression Results, 340
    1. Standard errors of the coefficients and *t*-statistics, 340
    2. Goodness-of-fit, 344
    3. Sensitivity of least squares regression results, 345
  E. Reading Multiple Regression Computer Output, 346
  F . Forecasting, 348
  G. A Hypothetical Example, 350
Glossary of Terms, 352
References on Multiple Regression, 357

of regression analyses, i.e., seeing the extent to which the results are sensitive to changes in the underlying assumptions of the regression model. Section IV briefly discusses the qualifications of experts and suggests a potentially useful role for court-appointed neutral experts. Section V emphasizes procedural aspects associated with use of the data underlying regression analyses. It encourages greater pretrial efforts by the parties to attempt to resolve disputes over statistical studies.

Throughout the main body of this guide, hypothetical examples are used as illustrations. Moreover, the basic "mathematics" of multiple regression has been kept to a bare minimum. To achieve that goal, the more formal description of the multiple regression framework has been placed in the Appendix. The Appendix is self-contained and can be read before or after the text. The Appendix also includes further details with respect to the examples used in the body of this guide.

# II. Research Design: Model Specification

Multiple regression allows the testifying economist or other expert to choose among alternative theories or hypotheses and assists the expert in distinguishing correlations between variables that are plainly spurious from those that may reflect valid relationships.

## *A. What Is the Specific Question That Is Under Investigation by the Expert?*

Research begins with a clear formulation of a research question. The data to be collected and analyzed must relate directly to this question; otherwise, appropriate inferences cannot be drawn from the statistical analysis. For example, if the question at issue in a patent infringement case is what price the plaintiff's product would have been but for the sale of the defendant's infringing product, sufficient data must be available to allow the expert to account statistically for the important factors that determine the price of the product.

## *B. What Model Should Be Used to Evaluate the Question at Issue?*

Model specification involves several steps, each of which is fundamental to the success of the research effort. Ideally, a multiple regression analysis builds on a theory that describes the variables to be included in the study. A typical regression model will include one or more dependent variables, each of which is believed to be causally related to a series of explanatory variables. Because we cannot be certain that the explanatory variables are themselves unaffected or independent of the influence of the dependent variable (at least at the point of initial study), the explanatory

variables are often termed *covariates*. Covariates are known to have an association with the dependent or outcome variable, but causality remains an open question.

For example, the theory of labor markets might lead one to expect salaries in an industry to be related to workers' experience and the productivity of workers' jobs. A belief that there is job discrimination would lead one to create a model in which the dependent variable was a measure of workers' salaries and the list of covariates included a variable reflecting discrimination in addition to measures of job training and experience.

In a perfect world, the analysis of the job discrimination (or any other) issue might be accomplished through a controlled "natural experiment," in which employees would be randomly assigned to a variety of employers in an industry under study and asked to fill positions requiring identical experience and skills. In this observational study, where the only difference in salaries could be a result of discrimination, it would be possible to draw clear and direct inferences from an analysis of salary data. Unfortunately, the opportunity to conduct observational studies of this kind is rarely available to experts in the context of legal proceedings. In the real world, experts must do their best to interpret the results of real-world *"quasi-experiments*," in which it is impossible to control all factors that might affect worker salaries or other variables of interest.[25]

Models are often characterized in terms of parameters—numerical characteristics of the model. In the labor market discrimination example, one parameter might reflect the increase in salary associated with each additional year of prior job experience. Another parameter might reflect the reduction in salary associated with a lack of current on-the-job experience. Multiple regression uses a sample, or a selection of data, from the population (all the units of interest) to obtain estimates of the values of the parameters of the model. An estimate associated with a particular explanatory variable is an estimated regression coefficient.

Failure to develop the proper theory, failure to choose the appropriate variables, or failure to choose the correct form of the model can substantially bias the statistical results—that is, create a systematic tendency for an estimate of a model parameter to be too high or too low.

### *1. Choosing the dependent variable*

The variable to be explained, the dependent variable, should be the appropriate variable for analyzing the question at issue.[26] Suppose, for example, that pay dis-

25. In the literature on natural and quasi-experiments, the explanatory variables are characterized as "treatments" and the dependent variable as the "outcome." For a review of natural experiments in the criminal justice arena, see David P. Farrington, *A Short History of Randomized Experiments in Criminology*, 27 Evaluation Rev. 218–27 (2003).

26. In multiple regression analysis, the dependent variable is usually a continuous variable that takes on a range of numerical values. When the dependent variable is categorical, taking on only two or three values, modified forms of multiple regression, such as probit analysis or logit analysis, are

crimination among hourly workers is a concern. One choice for the dependent variable is the hourly wage rate of the employees; another choice is the annual salary. The distinction is important, because annual salary differences may in part result from differences in hours worked. If the number of hours worked is the product of worker preferences and not discrimination, the hourly wage is a good choice. If the number of hours worked is related to the alleged discrimination, annual salary is the more appropriate dependent variable to choose.[27]

### 2. *Choosing the explanatory variable that is relevant to the question at issue*

The explanatory variable that allows the evaluation of alternative hypotheses must be chosen appropriately. Thus, in a discrimination case, the variable of interest may be the race or sex of the individual. In an antitrust case, it may be a variable that takes on the value 1 to reflect the presence of the alleged anticompetitive behavior and the value 0 otherwise.[28]

### 3. *Choosing the additional explanatory variables*

An attempt should be made to identify additional known or hypothesized explanatory variables, some of which are measurable and may support alternative substantive hypotheses that can be accounted for by the regression analysis. Thus, in a discrimination case, a measure of the skills of the workers may provide an alternative explanation—lower salaries may have been the result of inadequate skills.[29]

appropriate. For an example of the use of the latter, see EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 325 (7th Cir. 1988) (EEOC used logit analysis to measure the impact of variables, such as age, education, job-type experience, and product-line experience, on the female percentage of commission hires).

27. In job systems in which annual salaries are tied to grade or step levels, the annual salary corresponding to the job position could be more appropriate.

28. Explanatory variables may vary by type, which will affect the interpretation of the regression results. Thus, some variables may be continuous and others may be categorical.

29. In *James v. Stockham Valves,* 559 F. 2d 310 (5th Cir. 1977), the Court of Appeals rejected the employer's claim that skill level rather than race determined assignment and wage levels, noting the circularity of defendant's argument. In *Ottaviani v. State University of New York,* 679 F. Supp. 288, 306–08 (S.D.N.Y. 1988), *aff'd,* 875 F.2d 365 (2d Cir. 1989), *cert. denied,* 493 U.S. 1021 (1990), the court ruled (in the liability phase of the trial) that the university showed that there was no discrimination in either placement into initial rank or promotions between ranks, and so rank was a proper variable in multiple regression analysis to determine whether women faculty members were treated differently than men.

However, in *Trout v. Garrett,* 780 F. Supp. 1396, 1414 (D.D.C. 1991), the court ruled (in the damage phase of the trial) that the extent of civilian employees' prehire work experience was not an appropriate variable in a regression analysis to compute back pay in employment discrimination. According to the court, including the prehire level would have resulted in a finding of no sex discrimination, despite a contrary conclusion in the liability phase of the action. *Id. See also* Stuart v. Roache, 951 F.2d 446 (1st Cir. 1991) (allowing only 3 years of seniority to be considered as the result of prior

Not all possible variables that might influence the dependent variable can be included if the analysis is to be successful; some cannot be measured, and others may make little difference.[30] If a preliminary analysis shows the unexplained portion of the multiple regression to be unacceptably high, the expert may seek to discover whether some previously undetected variable is missing from the analysis.[31]

Failure to include a major explanatory variable that is correlated with the variable of interest in a regression model may cause an included variable to be credited with an effect that actually is caused by the excluded variable.[32] In general, omitted variables that are correlated with the dependent variable reduce the probative value of the regression analysis. The importance of omitting a relevant variable depends on the strength of the relationship between the omitted variable and the dependent variable and the strength of the correlation between the omitted variable and the explanatory variables of interest. Other things being equal, the greater the correlation between the omitted variable and the variable of interest, the greater the bias caused by the omission. As a result, the omission of an important variable may lead to inferences made from regression analyses that do not assist the trier of fact.[33]

discrimination), *cert. denied*, 504 U.S. 913 (1992). Whether a particular variable reflects "legitimate" considerations or itself reflects or incorporates illegitimate biases is a recurring theme in discrimination cases. *See, e.g.,* Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 677 (4th Cir. 1996) (en banc) (suggesting that whether "performance factors" should have been included in a regression analysis was a question of material fact); *id.* at 681–82 (Luttig, J., concurring in part) (suggesting that the failure of the regression analysis to include "performance factors" rendered it so incomplete as to be inadmissible); *id.* at 690–91 (Michael, J., dissenting) (suggesting that the regression analysis properly excluded "performance factors"); *see also* Diehl v. Xerox Corp., 933 F. Supp. 1157, 1168 (W.D.N.Y. 1996).

30. The summary effect of the excluded variables shows up as a random error term in the regression model, as does any modeling error. *See* Appendix, *infra,* for details. *But see* David W. Peterson, *Reference Guide on Multiple Regression*, 36 Jurimetrics J. 213, 214 n.2 (1996) (review essay) (asserting that "the presumption that the combined effect of the explanatory variables omitted from the model are uncorrelated with the included explanatory variables" is "a knife-edge condition . . . not likely to occur").

31. A very low *R*-squared ($R^2$) is one indication of an unexplained portion of the multiple regression model that is unacceptably high. However, the inference that one makes from a particular value of $R^2$ will depend, of necessity, on the context of the particular issues under study and the particular dataset that is being analyzed. For reasons discussed in the Appendix, a low $R^2$ does not necessarily imply a poor model (and vice versa).

32. Technically, the omission of explanatory variables that are correlated with the variable of interest can cause biased estimates of regression parameters.

33. *See* Bazemore v. Friday, 751 F.2d 662, 671–72 (4th Cir. 1984) (upholding the district court's refusal to accept a multiple regression analysis as proof of discrimination by a preponderance of the evidence, the court of appeals stated that, although the regression used four variable factors (race, education, tenure, and job title), the failure to use other factors, including pay increases that varied by county, precluded their introduction into evidence), *aff'd in part, vacated in part*, 478 U.S. 385 (1986).

Note, however, that in *Sobel v. Yeshiva University,* 839 F.2d 18, 33, 34 (2d Cir. 1988), *cert. denied*, 490 U.S. 1105 (1989), the court made clear that "a [Title VII] defendant challenging the validity of

Omitting variables that are not correlated with the variable of interest is, in general, less of a concern, because the parameter that measures the effect of the variable of interest on the dependent variable is estimated without bias. Suppose, for example, that the effect of a policy introduced by the courts to encourage husbands to pay child support has been tested by randomly choosing some cases to be handled according to current court policies and other cases to be handled according to a new, more stringent policy. The effect of the new policy might be measured by a multiple regression using payment success as the dependent variable and a 0 or 1 explanatory variable (1 if the new program was applied; 0 if it was not). Failure to include an explanatory variable that reflected the age of the husbands involved in the program would not affect the court's evaluation of the new policy, because men of any given age are as likely to be affected by the old policy as they are the new policy. Randomly choosing the court's policy to be applied to each case has ensured that the omitted age variable is not correlated with the policy variable.

Bias caused by the omission of an important variable that is related to the included variables of interest can be a serious problem.[34] Nonetheless, it is possible for the expert to account for bias qualitatively if the expert has knowledge (even if not quantifiable) about the relationship between the omitted variable and the explanatory variable. Suppose, for example, that the plaintiff's expert in a sex discrimination pay case is unable to obtain quantifiable data that reflect the skills necessary for a job, and that, on average, women are more skillful than men. Suppose also that a regression analysis of the wage rate of employees (the dependent variable) on years of experience and a variable reflecting the sex of each employee (the explanatory variable) suggests that men are paid substantially more than women with the same experience. Because differences in skill levels have not been taken into account, the expert may conclude reasonably that the

a multiple regression analysis [has] to make a showing that the factors it contends ought to have been included would weaken the showing of salary disparity made by the analysis," by making a specific attack and "a showing of relevance for each particular variable it contends . . . ought to [be] includ[ed]" in the analysis, rather than by simply attacking the results of the plaintiffs' proof as inadequate for lack of a given variable. *See also* Smith v. Virginia Commonwealth Univ., 84 F.3d 672 (4th Cir. 1996) (en banc) (finding that whether certain variables should have been included in a regression analysis is a question of fact that precludes summary judgment); Freeland v. AT&T, 238 F.R.D. 130, 145 (S.D.N.Y. 2006) ("Ordinarily, the failure to include a variable in a regression analysis will affect the probative value of the analysis and not its admissibility").

Also, in *Bazemore v. Friday,* the Court, declaring that the Fourth Circuit's view of the evidentiary value of the regression analyses was plainly incorrect, stated that "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility. Importantly, it is clear that a regression analysis that includes less than 'all measurable variables' may serve to prove a plaintiff's case." 478 U.S. 385, 400 (1986) (footnote omitted).

34. *See also* David H. Kaye & David A. Freedman, Reference Guide on Statistics, Section V.B.3, in this manual.

wage difference measured by the regression is a conservative estimate of the true discriminatory wage difference.

The precision of the measure of the effect of a variable of interest on the dependent variable is also important.[35] In general, the more complete the explained relationship between the included explanatory variables and the dependent variable, the more precise the results. Note, however, that the inclusion of explanatory variables that are irrelevant (i.e., not correlated with the dependent variable) reduces the precision of the regression results. This can be a source of concern when the sample size is small, but it is not likely to be of great consequence when the sample size is large.

### *4. Choosing the functional form of the multiple regression model*

Choosing the proper set of variables to be included in the multiple regression model does not complete the modeling exercise. The expert must also choose the proper form of the regression model. The most frequently selected form is the linear regression model (described in the Appendix). In this model, the magnitude of the change in the dependent variable associated with the change in any of the explanatory variables is the same no matter what the level of the explanatory variables. For example, one additional year of experience might add $5000 to salary, regardless of the previous experience of the employee.

In some instances, however, there may be reason to believe that changes in explanatory variables will have differential effects on the dependent variable as the values of the explanatory variables change. In these instances, the expert should consider the use of a nonlinear model. Failure to account for nonlinearities can lead to either overstatement or understatement of the effect of a change in the value of an explanatory variable on the dependent variable.

One particular type of nonlinearity involves the interaction among several variables. An interaction variable is the product of two other variables that are included in the multiple regression model. The interaction variable allows the expert to take into account the possibility that the effect of a change in one variable on the dependent variable may change as the level of another explanatory variable changes. For example, in a salary discrimination case, the inclusion of a term that interacts a variable measuring experience with a variable representing the sex of the employee (1 if a female employee; 0 if a male employee) allows the expert to test whether the sex differential varies with the level of experience. A significant negative estimate of the parameter associated with the sex variable suggests that inexperienced women are discriminated against, whereas a significant

35. A more precise estimate of a parameter is an estimate with a smaller standard error. *See* Appendix, *infra,* for details.

negative estimate of the interaction parameter suggests that the extent of discrimination increases with experience.[36]

Note that insignificant coefficients in a model with interactions may suggest a lack of discrimination, whereas a model without interactions may suggest the contrary. It is especially important to account for interaction terms that could affect the determination of discrimination; failure to do so may lead to false conclusions concerning discrimination.

### *5. Choosing multiple regression as a method of analysis*

There are many multivariate statistical techniques other than multiple regression that are useful in legal proceedings. Some statistical methods are appropriate when nonlinearities are important;[37] others apply to models in which the dependent variable is discrete, rather than continuous.[38] Still others have been applied predominantly to respond to methodological concerns arising in the context of discrimination litigation.[39]

It is essential that a valid statistical method be applied to assist with the analysis in each legal proceeding. Therefore, the expert should be prepared to explain why any chosen method, including multiple regression, was more suitable than the alternatives.

36. For further details concerning interactions, see the Appendix, *infra*. Note that in *Ottaviani v. State University of New York,* 875 F.2d 365, 367 (2d Cir. 1989), *cert. denied*, 493 U.S. 1021 (1990), the defendant relied on a regression model in which a dummy variable reflecting gender appeared as an explanatory variable. The female plaintiff, however, used an alternative approach in which a regression model was developed for men only (the alleged protected group). The salaries of women predicted by this equation were then compared with the actual salaries; a positive difference would, according to the plaintiff, provide evidence of discrimination. For an evaluation of the methodological advantages and disadvantages of this approach, see Joseph L. Gastwirth, *A Clarification of Some Statistical Issues in* Watson v. Fort Worth Bank and Trust, 29 Jurimetrics J. 267 (1989).

37. These techniques include, but are not limited to, piecewise linear regression, polynomial regression, maximum likelihood estimation of models with nonlinear functional relationships, and autoregressive and moving-average time-series models. *See, e.g.*, Pindyck & Rubinfeld, *supra* note 23, at 117–21, 136–37, 273–84, 463–601.

38. For a discussion of probit analysis and logit analysis, techniques that are useful in the analysis of qualitative choice, see *id.* at 248–81.

39. The correct model for use in salary discrimination suits is a subject of debate among labor economists. As a result, some have begun to evaluate alternative approaches, including urn models (Bruce Levin & Herbert Robbins, *Urn Models for Regression Analysis, with Applications to Employment Discrimination Studies*, Law & Contemp. Probs., Autumn 1983, at 247) and, as a means of correcting for measurement errors, reverse regression (Delores A. Conway & Harry V. Roberts, *Reverse Regression, Fairness, and Employment Discrimination*, 1 J. Bus. & Econ. Stat. 75 (1983)). *But see* Arthur S. Goldberger, *Redirecting Reverse Regressions*, 2 J. Bus. & Econ. Stat. 114 (1984); Arlene S. Ash, *The Perverse Logic of Reverse Regression*, *in* Statistical Methods in Discrimination Litigation 85 (D.H. Kaye & Mikel Aickin eds., 1986).