## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 8, 2021

Via ECF

The Honorable Analisa Torres,
 United States District Court for the
  Southern District of New York,
   500 Pearl Street,
    New York, New York 10007-1312

The Honorable Robert W. Lehrburger,
 United States District Court for the
  Southern District of New York,
   500 Pearl Street,
    New York, New York 10007-1312

    Re: *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
      No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Torres and Judge Lehrburger:

    In their October 1 letter motion, Plaintiffs seek to toll the applicable statutes of limitations for two sets of claimants: (1) the approximately 1,150 current and former Goldman Sachs professionals excluded from the class ("Excluded Class Members") pursuant to Judge Lehrburger's March 26, 2020 order (ECF No. 983 ("Arbitration Order" or "Arb. Order")); and (2) any of the approximately 690 class members who executed Equity Award Agreements ("Equity Agreement Employees") and who choose to leave the class after notice of the opportunity to opt out of arbitration. (See ECF No. 1273 ("Ltr. Motion").) Plaintiffs ask to toll the limitations periods "until 90 days following a class liability determination" or in the alternative "for eight months." (*Id.* at 1.) Plaintiffs also ask to stay distribution of any notice to the Equity Agreement Employees "so that tolling information can be included . . . if needed." (*Id.* at 1.) Plaintiffs' counsel want to use this lengthy period to "contact[] individuals," resolve "scheduling conflicts," and draft "retainer agreements and complaints." (*Id.* at 4.)

    Plaintiffs' request is remarkable: they want a free option for the Excluded Class Members, and any Equity Agreement Employees who do not opt out of arbitration, to sit on the sidelines while the class action moves ahead to see if the litigation gives them a leg up in arbitration. If Goldman Sachs suffers an adverse judgment in the class action, Plaintiffs want any former class members who wish to pursue claims in arbitration to be able to use that class judgment against Goldman Sachs in their proceedings. But if Goldman Sachs prevails and there is no adverse judgment, those former class members can get a second bite at the apple: they can just press the same claims in arbitration on a clean slate and ignore a judgment they are not bound to as former

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger -2-

class members. Suffice it to say, Plaintiffs cite no authority—from this Court or any other—supporting their unprecedented approach. Defendants are not aware of any court ever equitably tolling statutes of limitations in similar circumstances. This Court should not be the first for several reasons.

1. As a threshold matter, Plaintiffs' request must be directed to an arbitrator, not this Court. The Arbitration Order compels the Excluded Class Members to arbitration. They are no longer members of the class, and they have no claims before this Court for which it could toll limitations periods. This Court and the Second Circuit have squarely held that, once arbitration is compelled, "the court must refrain from deciding the validity of any asserted defenses," and "[i]f a claim is untimely, plaintiff's remedy is to defend the arbitration action on timeliness grounds, not . . . to seek other equitable relief from [the] court." *Thyssen, Inc.* v. *M/V Markos N*, 1999 WL 619634, at *8–9 (S.D.N.Y. Aug. 16, 1999) (Mukasey, J.) (internal quotation marks omitted), *aff'd sub nom. Thyssen, Inc.* v. *Calypso Shipping Corp., S.A.*, 310 F.3d 102 (2d Cir. 2002); *see Goldberg* v. *Sovereign Bancorp, Inc.*, 2011 WL 13261837, at *4 (S.D.N.Y. Aug. 19, 2011) (Batts, J.) (compelling arbitration and denying equitable tolling because "[o]nce a court has determined that a dispute is subject to arbitration, . . . the Court [must] refrain[] from determining whether equitable tolling is available to defeat any statute of limitations defense"). If the Excluded Class Members want to equitably toll the time periods for their claims while the class here proceeds, they must direct that request to an arbitrator, not this Court.

The same is true for the Equity Agreement Employees, though for a slightly different reason. Judge Lehrburger conditionally granted Defendants' motion to compel the Equity Agreement Employees to arbitration, but ordered that those individuals be given "45-days['] notice of the opportunity to opt out of arbitration" ("Notice"). (Arb. Order at 88.) In a subsequent order, Judge Lehrburger confirmed that the "Arbitration Order did not remove the Equity Agreement Employees from the class," but if "they do not opt out of arbitration" after receiving notice, "they will be removed . . . at that juncture." (May 8, 2020 Order (ECF No. 1026) at 4 n.2.) If the Equity Agreement Employees do *not* opt out of arbitration, then they must present any equitable-tolling argument to the arbitrator, just like the Excluded Class Members. And if the Equity Agreement Employees *do* opt out of arbitration, then they were never removed from the class and have no need of equitable tolling. Either way, there is no reason for this Court to consider equitable tolling. The Arbitration Order allows the Equity Agreement Employees to decide whether they would prefer to arbitrate or pursue a class action: it does not allow them to sit on the sidelines indefinitely and observe how the class fares before making their choice.

2. Even if Plaintiffs' request were properly before this Court, they cannot satisfy the test for equitable tolling. As explained above, their request is not even ripe as to the Equity Agreement Employees. Those employees are still in the class, and pending their decision whether to opt out of their arbitration obligation, their claims are tolled under *American Pipe*. Accordingly, there is no current need for equitable tolling or need to delay the Notice in order to include tolling information.

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger                                                                                        -3-

The real focus here is on the Excluded Class Members. To justify equitable tolling under settled Supreme Court precedent, they must demonstrate both "(1) that [they have] been pursuing [their] rights diligently," and "(2) that some extraordinary circumstance stood in the way" of timely asserting their rights. *Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005). The Excluded Class Members cannot satisfy either prong of that test.

Plaintiffs acknowledge that equitable tolling requires "reasonable diligence." (Ltr. Motion at 2 (citing *Chapman* v. *ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).) They claim to meet this standard because their tolling request was filed "just 16 days after" Judge Torres's September 15, 2021 order. (*Id*.) But that is the wrong ruling. Judge Torres's Order resolved *objections* to the Arbitration Order entered on March 26, 2020, and "the law in the Second Circuit is clear: the filing of Rule 72(a) objections . . . does not excuse a party from complying with [the underlying] order." *Michelo* v. *Nat'l Collegiate Student Loan Tr. 2007-2*, 2021 WL 1080673, at *2 (S.D.N.Y. Mar. 5, 2021) (Moses, J.); *see Vaigasi* v. *Solow Mgmt. Corp.*, 2016 WL 616386, at *21 (S.D.N.Y. Feb. 16, 2016) (Pitman, J.) ("filing objections . . . does not operate to automatically stay the magistrate judge's order"). Instead, "the objecting party must request and obtain a stay of the [] order"—which Plaintiffs' counsel never did. *Michelo*, 2021 WL 1080673, at *2. Plaintiffs only sought and were granted a stay of "*that part of the [Arbitration] Order* requiring the parties to meet and confer and propose a form of notice." (ECF No. 998 (emphasis added).) Plaintiffs thus "*waited a year and a half* before requesting equitable tolling," which "alone provides a basis to deny Plaintiff's untimely motion." *Adami* v. *Cardo Windows, Inc.*, 2016 WL 1241798, at *12 (D.N.J. Mar. 30, 2016) (emphasis added); *see Samo* v. *Keyser*, 305 F. Supp. 3d 551, 561 n.40 (S.D.N.Y. 2018) (Gorenstein, J.) (denying tolling where plaintiff "waited nearly 3 months"). Moreover, Plaintiffs do not even attempt to explain what "extraordinary circumstance" prevented Excluded Class Members from pursuing claims in arbitration in the last 18 months. That too provides a sufficient basis for denying their motion.

3.       In addition to the fact that the Excluded Class Members' request comes far too late, this Court lacks the authority to grant it. There is no established form of tolling that covers the circumstances here. Plaintiffs say that their tolling request "is consistent with" *American Pipe*. (Ltr. Motion at 3.) As this Court knows, *American Pipe* tolling protects putative class members *while they are in a class*. *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007) (The "limitations period was tolled under the doctrine of *American Pipe* until such time as [appellants] *ceased to be members of the asserted class*.") (emphasis added). By tolling applicable limitations periods while plaintiffs are putative members of a class, *American Pipe* ensures that individual claims do not become time-barred pending a decision on class certification (or decertification). The Excluded Class Members received the benefit of *American Pipe* tolling for almost a decade in this case. But there is no comparable form of tolling once putative class members *have been excluded from the class* because they agreed to arbitrate their claims.

To put it another way, what Plaintiffs are seeking is an *extension* of *American Pipe* for plaintiffs who are excluded from a class. There is no support in logic or law for that extension. As a matter of logic, once plaintiffs are excluded from a class, they no longer depend on the class to advance their claims. The excluded members may pursue their individual claims (at least absent

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger                                                                                          -4-

extraordinary circumstances), and the limitations clock on those claims therefore begins running again.  As a matter of law, Plaintiffs correctly do not ground their request in Rule 23.  Plaintiffs do not want tolling to protect the class—they want it to get two bites at the liability apple.  Plaintiffs seem to ground their request in courts' inherent equitable authority—a red flag that there is no genuine basis for their request.  It is settled law that courts may not dispense "equitable tolling as a matter of some independent authority to reconsider the fairness of legislative judgments" in statutes of limitations.  *Lozano* v. *Montoya Alvarez*, 572 U.S. 1, 18 (2014).  The Excluded Class Members are eligible for equitable tolling only if they satisfy equity's two-prong test, and as explained above, they neither acted with reasonable diligence nor were prevented from doing so by some extraordinary circumstance.  That is the end of the matter as far as equity is concerned.

      Not surprisingly, Plaintiffs have no authority that supports their request.  In *McGlone* v. *Contract Callers, Inc.*, Judge Sweet granted tolling because he expressly found the test for equitable tolling was met: (i) "class representatives and their counsel [were] diligently and timely pursuing the claims," and (ii) "the time required for a court to rule on" conditional certification was "an 'extraordinary circumstance' justifying" equitable tolling in order to avoid "penaliz[ing]" class representatives" by having claims lapse "due to the courts' heavy dockets and understandable delays in rulings."  867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).  In *Scott* v. *Chipotle Mexican Grill, Inc.*, class counsel, Outten & Golden—who are co-counsel here—sought equitable tolling just over a week after Judge Carter decertified an opt-in class under the Fair Labor Standards Act.  2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017) (Carter, J.).  As in this case, "counsel [] argued, *without citing support from this district*, that courts 'routinely' toll the claims of opt-in plaintiffs after dismissal."  *Id*. (emphasis added); (*see* Ltr. Motion at 2 (misstating that "[c]ourts in this Circuit routinely grant requests for tolling").)  Despite the lack of authority, Judge Carter tolled the statute of limitations for 90 days (21 days of which had elapsed by the time he ruled) without applying the Supreme Court's two-part test for equitable tolling.  That thin reed does not support a wholesale expansion of *American Pipe*, let alone Plaintiffs' request for tolling of eight months or longer.  Plaintiffs do not even attempt to address as an equitable matter the prejudice that would result to Defendants by extending their exposure for months and potentially years while evidence is lost.  *See Scott* v. *District of Columbia*, 87 F. Supp. 3d 291, 296 (D.D.C. 2015) (finding prejudice to class action defendants from "unreasonably protracted tolling").

      4.     Plaintiffs fall back on two policy arguments: first, that tolling will be more efficient because, if the class obtains a judgment against Goldman Sachs, the Excluded Class Members will be able to invoke that judgment and thereby avoid the need to relitigate certain issues in their arbitration proceedings; and, second, that class counsel need time to form attorney-client relationships with the Excluded Class Members.  Those policy arguments are beside the point for the reasons given above: class counsel have brought their motion to the wrong forum and they cannot satisfy the test for equitable tolling.  But in any event the policy arguments are wrong at every step.

      a.     Judge Lehrburger has already twice rejected this same attempt to trump the FAA with "efficiency" concerns.  In February 2019, Plaintiffs sought to have Goldman Sachs's motion to compel deferred to individual "Phase II" proceedings so that "each Class Member would benefit

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger -5-

from having class liability determined first by the Court." (Pls.' Feb. 21, 2019 Ltr. (ECF No. 675) at 2.) After Judge Lehrburger ruled that Goldman Sachs's motion to compel should proceed, Plaintiffs again opposed the motion on the basis that the Court should "defer any ruling on these matters until Phase II, after the class liability trial is complete." (Pls.' Opp. (ECF No. 756) at 4.) Plaintiffs have now simply dressed up the exact same request in the language of tolling: they seek an order permitting Excluded Class Members sit on the sidelines indefinitely so that they may "benefit from having class liability determined first by the Court." (Pls.' Feb. 21, 2019 Ltr. (ECF No. 675) at 2.)

   Judge Lehrburger correctly rejected Plaintiffs' two earlier attempts because compelling arbitration inevitably leads to parallel proceedings. It is no answer for Plaintiffs to say that arbitration would be more efficient, if only they could free-ride on the class action for a while longer. The Supreme Court has been clear that the FAA's "strong federal policy" in favor of arbitration "requires courts to enforce the bargain of the parties to arbitrate, and not substitute its own views of *economy and efficiency* for those of Congress." *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 217 (1985) (internal quotation marks and citations omitted; emphasis added); *Gov't Emps. Ins. Co.* v. *Grand Med. Supply, Inc.*, 2012 WL 2577577, at *7 (E.D.N.Y July 4, 2012) (Cogan, J.) (court "cannot deny" right to arbitration "because [it] believe[s] considerations of efficiency . . . should take precedence"). Indeed, class counsel have not cited a single case where equitable tolling was granted in aid of making arbitration more "efficient."

   b.  In addition, the class proceedings will have no preclusive effect in arbitration. *First*, there will not be a classwide "liability determination" in Phase I of the class action, and absent a final judgment, "the collateral estoppel doctrine has no application." *McTerrell* v. *New York City Health & Hosps. Corp.*, 2020 WL 5947270, at *3 n.5 (S.D.N.Y. Sept. 17, 2020) (Aaron, J.), *report and recommendation adopted*, 2020 WL 5940140 (S.D.N.Y. Oct. 7, 2020) (Engelmayer, J.). The only certified claims are for backpay, and under the plain language of Title VII and the Supreme Court's decision in *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 366 (2011), Goldman Sachs is "entitled to individualized determinations of each employee's eligibility for backpay." This Court has accordingly made clear, at least five times, that backpay damages are for Phase II, where Goldman Sachs has "the right to raise any individual affirmative defenses it may have" *to liability*. *Id.* at 367; (*see, e.g.*, ECF 888 at 3 ("Phase I will not include . . . damages (including back pay) and punitive damages."); ECF 578 at 41; ECF 753 at 4; ECF 804 at 3; ECF 983 at 6). At most, a Phase I trial could result in an evidentiary finding of average differences in the application of the challenged processes, not a "final judgment" on liability for backpay claims. Offensive non-mutual collateral estoppel is thus out of reach.

   *Second*, collateral estoppel applies only where "the identical issue" was decided in a prior action, and issues "are not identical if the legal standards governing their resolution are significantly different." *Weizmann Inst. of Sci.* v. *Neschis*, 421 F. Supp. 2d 654, 676-77 (S.D.N.Y. 2005) (Berman, J.) (internal citations omitted). As the Second Circuit has held, the legal frameworks governing class claims in court and the individual claims in arbitration "differ in important respects." *Reynolds* v. *Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). The sequencing and

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger -6-

substantive burdens are so different, in fact, that the Second Circuit *in this very case* ruled that former class members compelled to individual arbitration cannot rely on the *Teamsters* method of proof in arbitration. *Parisi* v. *Goldman Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013) ("[N]on-government plaintiffs can use the pattern-or-practice method *only in class actions*." (emphasis added)). Arbitral rules also typically afford greater "flexibility and informality to parties adducing relevant evidence." *Id.*; *see Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 331 (1979) (collateral estoppel cannot be used offensively where "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result"). The Excluded Class Members are simply wrong that they can leverage a class judgment to streamline their individual arbitrations.

5. Finally, class counsel may not move this Court on their own behalf for time to sign up clients. As a result of the Arbitration Order, class counsel no longer represent the Excluded Class Members who are no longer part of the class. *See, e.g.*, *Daniels* v. *City of New York*, 138 F. Supp. 2d 562, 564–65 (S.D.N.Y. 2001) (Scheindlin, J.) (upon decertification, "[t]he attorney-client relationship . . . would end" and former class members "would revert to non-part[ies]"). In fact, class counsel request tolling precisely so that they may assess Excluded Class members' individual claims and "draft individual retainer agreements." (Ltr. Motion at 4.) But where an attorney-client relationship has ended, counsel "has no power" to litigate on "his own initiative." *Giles* v. *Campbell*, 698 F.3d 153, 158 (3d Cir. 2012) (internal citations and quotation marks omitted). Class counsel may not bring this motion on behalf of Excluded Class Members they do not currently represent—and they may not bring this motion on their own behalf and invoke equitable tolling as a business-development tool.

For all the foregoing reasons, class counsel's tolling request should be denied.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.
Sullivan & Cromwell LLP

cc: All parties of record (by ECF)