USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_11/03/2021_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
H. CRISTINA CHEN-OSTER, SHANNA
ORLICH, ALLISON GAMBA, and MARY DE
LUIS,

                           Plaintiffs,

            - against -

GOLDMAN, SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

                        Defendants.
-----------------------------------------------------------------X

10-cv-6950 (AT) (RWL)


**DECISION AND ORDER:
EQUITABLE TOLLING**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Following this Court's decision compelling or conditionally compelling approximately 1,840 class members to individually arbitrate their employment discrimination claims against Defendants ("Goldman"), Plaintiffs have moved for an order tolling the statute of limitations. Specifically, Plaintiffs request that the limitations period for class members compelled to arbitrate be tolled until 90 days following a class liability determination, or, alternatively, for a period of eight months.

The primary reason given for the request is that class members who are compelled to arbitrate may not even know that they have been subject to such a ruling and, in any event, they need time to obtain legal advice and determine whether and how to proceed with arbitration on an individual basis.[1] Goldman opposes the request, arguing that the

---

[1] Another reason offered by Plaintiffs is that deferring up to 1,800 individual arbitrations while the class action proceeds is efficient and avoids the prospect of inconsistent rulings. Goldman disagrees whether and to what extent concerns for efficiency and economy are

Court does not have authority to grant tolling for now-excluded members, and that, in any event, Plaintiffs have not established the diligence and extraordinary circumstances required to invoke equitable tolling.  For the reasons provided below, the Court grants Plaintiffs' request in part, denies it in part, and tolls the statute of limitations until 240 days from the date of entry of this order.

### Relevant Background

Plaintiffs filed this employment discrimination action on September 16, 2010.  (Dkt. 5.)  On March 30, 2018, the Court certified a class of present and former Goldman Sachs Associates and Vice-Presidents.  (Dkt. 578.)  Notice was sent to putative class members on November 30, 2018.  (*See* Dkt. 647 at 1.)  After expiration of the opt-out period, the class included approximately 3,320 members.  (Dkt. 983 at 5.)  Trial, although not yet scheduled, will occur in two phases; the first phase – Phase I – will focus on certain liability issues common to the class.  (*See* Dkt. 888 at ¶ 8.)

On April 12, 2019, Goldman filed a motion to compel individual arbitration with class members who had executed any of four categories of agreements containing arbitration clauses.  (Dkt. 715.)  On March 26, 2020, the Court issued a decision and order (the "Arbitration Decision") that (1) granted the motion with respect to approximately 1,150 class members who were parties to three categories of agreements  (the "Fully Excluded Members"), and (2) conditionally granted the motion with respect to approximately 690 class members who were parties to a category of agreements known

relevant to determining the tolling doctrine as presented here – i.e., equitable tolling. Without deciding that question, the Court does not base this decision on those considerations.

as Equity Award Agreements (the "Conditionally Excluded Members", and together with the Fully Excluded Members, the "Excluded Members").  (Dkt. 983.)  The Arbitration Decision provided the Conditionally Excluded Members with a 45-day period – which will not begin until they are notified of the Arbitration Decision – during which they may opt out of arbitration and remain in this class action.  (Dkt. 983 at 88.)

Both parties filed objections to the Arbitration Decision.  On September 15, 2021, District Judge Torres overruled the objections and adopted the Arbitration Decision in full. (Dkt. 1264 at 8.)   On October 1, 2021, Plaintiffs requested tolling of the Excluded Members' claims.  (Dkt. 1273.)

On October 18, 2021, the Court ruled on the form and notice that will be sent to the Conditionally Excluded Members to apprise them of the Arbitration Decision and their opportunity to opt out of arbitration and remain in this action.  (Dkt. 1303.)  The Court stayed issuance of that notice, however, until after the decision on the instant tolling question.  (Dkt. 1304.)

The parties have submitted extensive correspondence addressing Plaintiffs' tolling request.  (*See* Dkt. 1273, 1274, 1276, 1277, 1279, 1300, 1302.[2])  The Court finds no need for additional briefing, and the parties have not requested any.

## Discussion

Plaintiffs' request, together with Goldman's opposition, give rise to three distinct issues:  (1) whether the tolling issue may be decided by the Magistrate Judge or instead

---

[2] The last filed letter is a request from Goldman to file a sur-reply, a copy of which is attached to the request.  (Dkt. 1302.)  The Court grants the request and has considered the sur-reply in conjunction with all other relevant material.

by the District Judge; (2) regardless of the particular judge, whether the Court has authority to rule on the tolling issue with respect to class members who have been compelled to arbitrate or instead must leave that issue to be resolved in arbitration; and (3) in the event the Court has authority to rule on the issue, whether the requirements for equitable tolling are met.  The Court addresses each issue in turn.

**A.      The Magistrate Judge May Rule On The Tolling Issue**

Plaintiffs argue that their tolling application should be decided by the District Judge, Judge Torres.  Goldman argues that the Magistrate Judge, Judge Lehrburger, may decide the application.

The scope of a federal magistrate judge's authority is defined by statute.  *See* 28 U.S.C. § 636.  Where, as here, a matter has been referred by the district judge to the magistrate judge for general pre-trial purposes, the magistrate judge may decide non-dispositive issues but must issue reports and recommendations for dispositive issues absent consent of the parties.  *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); Fed. R. Civ. P. 72 (providing different standards of review for a magistrate judge's ruling on dispositive and non-dispositive matters).  The question of whether an issue is dispositive is sometimes easily answered.  Summary judgment motions are a good example and are expressly carved out of a magistrate judge's direct decision-making authority by statute.  *See* 28 U.S.C. § 636(b)(1)(A) (also carving out, in civil matters, motions for injunctive relief, for judgment on the pleadings, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action).

4

Sometimes the question is not so clear cut.  For instance, courts within the Second Circuit have reached varied conclusions with respect to ruling on motions to amend. *Tardif v. City of New York*, No. 13-CV-4056, 2016 WL 2343861, at *2 (S.D.N.Y. May 3, 2016) (stating that the Second Circuit "has not clearly stated whether a denial of leave to amend a pleading should be treated as dispositive or non-dispositive for Rule 72 purposes" and citing cases treating the issue as non-dispositive and a case treating the issue as dispositive); *compare, e.g., Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, No. 11-CV-726, 2012 WL 3306612, at *1 (E.D.N.Y. Aug. 13, 2012) (treating motion to amend as non-dispositive), with *Children First Foundation, Inc. v. Martinez*, No. 1:04-CV-0927, 2007 WL 4618524, at *4 (N.D.N.Y. Dec. 27, 2007) ("some district courts in this circuit have held that a denial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions").

Like motions to amend, a motion for equitable tolling falls into the more ambiguous category.  *Compare, e.g.*, *Contrera v. Langer*, 278 F. Supp.3d 702, 723-26 (S.D.N.Y. 2017) (issuing decision in a non-consent case that equitable tolling did not apply to opt-in plaintiffs in an employee wage-and-hour dispute), with *McDermott v. Federal Savings Bank*, 14-CV-6657, 2018 WL 6718599, at *1 n.1 (E.D.N.Y. Sept. 28, 2018) (issuing report and recommendation on equitable tolling following expiration of statute of limitations because "there is a reasoned argument that a decision on a motion for equitable tolling

could, depending on a number of circumstances, be viewed as claim dispositive"), *R&R adopted*, 2019 WL 1305992 (E.D.N.Y. March 22, 2019).

A decision that equitable tolling does not apply can be dispositive, as recognized in *McDermott*, depending on the circumstances.  The statute of limitations is an affirmative defense typically raised in dispositive motions such as motions to dismiss and for summary judgment.  A ruling that a litigant's claim is not entitled to tolling and is barred by the statute of limitations would be dispositive.  *See, e.g.*, *In re Payment Card Interchange Fee & Merchandise Discount Antitrust Litigation*, No. 05-MD-1720, 2018 WL 4158290, at *7 (E.D.N.Y. Aug. 30, 2018) ("A ruling that a claim is time-barred is dispositive").  But neither the issue presented here, nor the Court's determination that a limited tolling period should apply, is dispositive.  The Court is not deciding whether any named or absent class member's claims are barred by the statute of limitations.  Rather, the Court is deciding whether the statute of limitations should be tolled prospectively for a period of time for those class members who have been compelled to arbitrate even though they have long been class members and have not yet received formal notice that they have been excluded from the class.

Whether the issue is dispositive or not, however, the parties can seek review of the Magistrate Judge's decision by the District Judge.  The only difference will be the standard of review applied, clear error or de novo review.  *Compare United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) ("If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must make a de novo determination") (citation and internal quotation marks omitted), with *Fielding*, 510 F.3d at

178 (the district judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law") (quoting Fed. R. Civ. P. 72(a)).  Even that distinction will be of no consequence in determining whether the Magistrate Judge's ruling is contrary to law.  *In re Payment Card*, 2018 WL 4158290, at *7 ("In reviewing issues of law, as is the case here, there is also no practical difference between a court's application of the 'contrary to law' standard and the de novo standard under Rule 72(b)") (internal quotation marks omitted.).  In any event, the Magistrate Judge may rule on the instant tolling issue.

## B.    The Court Has Authority To Issue A Tolling Decision

Apart from the question of the scope of magistrate judge authority, the parties disagree about whether the federal district court has authority at all to decide the tolling issue.  Goldman contends that the Excluded Members who have been compelled to arbitrate are no longer members of the class, and therefore the Court may not render a ruling as to whether the statute of limitations for those now-excluded members should be equitably tolled.  Rather, Goldman says, that question is reserved for arbitration to the extent any Excluded Member in fact proceeds with arbitration.  The Court does not agree.

The two groups of Excluded Members warrant separate consideration.  The Conditionally Excluded Members have not yet been excluded from the class.  As the Court explained in an earlier decision, the Arbitration Decision "did not remove the [Conditionally Excluded Members] from the class.  If [Conditionally Excluded Members] opt out of arbitration, they will remain in the class.  If they do not opt out of arbitration, they will be removed from the class at that juncture."  (Dkt. 1026 at 4 n.2.)  In short, the

7

Conditionally Excluded Members currently remain in the class and have not yet been compelled to arbitrate.  Accordingly, the Court has the authority to decide the tolling issue with respect to them.

The Court also has the requisite authority to toll the statute of limitations for Fully Excluded Members.  To be sure, the Court has ruled that Fully Excluded Members are no longer members of the class.  But that does not mean the Court lacks authority to protect them from prejudice resulting from the alteration of their status.  This principle often is applied in collective actions brought under the Fair Labor Standards Act.  *See, e.g., Scott v. Chipoltle Mexican Grill, Inc.*, No. 12-CV-8333, 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017) ("In order to avoid prejudice to opt-in plaintiffs, Courts may invoke equity powers to toll the statute of limitations in FLSA collective actions that have been decertified"); *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569, 2017 WL 3912345, at *2 (E.D.N.Y. Sept. 6, 2017) (stating same principle and noting that courts "often do [toll the statute of limitations] in cases involving many opt-in plaintiffs").  While there are significant differences in class actions pursuant to Rule 23 and collective actions pursuant to the FLSA, the underlying concern when tolling is invoked is the same: to avoid prejudice to members of the class or collective.

In the context of collective actions, the plaintiffs of particular concern are individuals who may opt in but have not yet done so or already have opted in, only to have the collective later decertified in whole or in part.  *See, e.g., Scott*, 2017 WL 1434498 at *1 (following decertification of collective, court equitably tolled statute of limitations for individuals who opted in); *Strauch v. Computer Sciences Corp.*, No. 3:14-CV-956, 2020

8

WL 4371816, at *2-4 (D. Conn. July 29, 2020) (dismissing individuals who previously opted in to collective but no longer qualified, and equitably tolling statute of limitations); *McEarchen*, 2017 WL 3912345 at *2 (tolling statute of limitations following decertification of collective).

In the Rule 23 class action context, absent class members are of particular concern.  That is all the more so in a case like this where the absent members previously have received notice of the action, chose not to opt out, and thus have every reason to believe they remain members of the class.  Although they have been compelled to arbitration, the Fully Excluded Members need to be notified of their altered status, seek counsel, assess their options, and take appropriate action now that they have been excluded after a decade in which they had been putative or actual class members.  *See* 3 Newberg On Class Actions § 7:40 (5th ed.) (stating "[i]f a class is decertified, Rule 23 authorizes a court to provide notice of this change to absent class members," recognizing that former members not so notified may incur prejudice due to running of statute of limitations, and noting that "some courts have held that decertification notice is required"); *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1339 (11th Cir. 2003) ("once a district court has decertified a class, it must ensure that notification of this action be sent to the class members, in order that the latter can be alerted that the statute of limitations has begun to run again on their individual claims"); *Jianmin Jin v. Shanghai Original, Inc.*, No. 116-CV-5633, 2019 WL 11816612, at *4 (E.D.N.Y. July 10, 2019) (ordering notice of decertification to all class members to "explain their rights to pursue their individual claims and the fact that the statute of limitations is no longer tolled").  There

are approximately 1,150 such individuals who have not been formally notified and likely have no idea that they now need to take prompt action to preserve their individual claims.

Neither Plaintiffs nor Goldman point to a Rule 23 class action case squarely on point.  The Court nevertheless finds the collective action cases relevant and persuasive. *Strauch* is particularly instructive.  There, the court conditionally certified a collective of employees.  The case went to trial and ended in a verdict for the plaintiffs.  Following trial, however, counsel newly identified 114 opt-in members deemed ineligible under the requisite criteria and who had not previously been notified of that change in their status. The court tolled the statute of limitations for a period of 60 days for those individuals. 2020 WL 4371816 at *4.  As the court explained, when dismissing opt-in plaintiffs later deemed ineligible, the court "may invoke its equity powers to toll the applicable statute of limitations prospectively to avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, even though those cases are necessarily not before the court." *Id.* (internal quotation marks and citation omitted).

The situation here is similar.  The Fully Excluded Members, like the opt-in members in *Strauch*, had been long-time members of the class.  As with the opt-in members in *Strauch*, the excluded members here have been determined ineligible for the class to which they previously belonged.  And like the court in *Strauch*, this court has equity powers to toll the statute of limitations for the newly excluded members.

Shunting aside the collective action cases and their reasoning, Goldman relies instead to two cases in which courts compelled plaintiffs to arbitrate and declined to toll the statute of limitations on the basis that that issue should be left to the arbitrator.  *See*

*Thyssen, Inc. v. M/V Markos N*, No. 97-CV-6181, 1999 WL 619634, at *8 (S.D.N.Y. Aug. 16, 1999), *aff'd sub nom.*, *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102 (2d Cir. 2002); *Goldberg v. Sovereign Bancorp., Inc.*, No. 10-CV-6263, 2011 WL 13261837, at *4 (S.D.N.Y. Aug. 19, 2011).   Those cases, however, are inapt.   Neither case was a class action.   Rather, the cases each involved an individual plaintiff who was compelled to arbitrate.   As named parties, the plaintiffs in those cases would have had first-hand, immediate knowledge of the court's decision compelling arbitration.   That scenario is entirely different than the issue presented in this case where the Fully Excluded Members have not yet been notified of their change in status and the need to act promptly if they wish to preserve their individual claims.

By entering into broad arbitration agreements, the Excluded Members may well have agreed to have an arbitrator decide whether Goldman's assertion of a statute of limitations defense is foreclosed by equitable estoppel.   But, again, that is not the context presented here.   The Court is not determining whether Excluded Members' claims are barred by the statute of limitations or whether equitable estoppel defeats that defense. Instead, the Court is exercising its equity power as a prospective measure to forestall prejudice to class members whose status has been altered.[3]   In the event that Excluded Members do not make good use of the time being tolled by this order and file for arbitration

---

[3] To the extent the Court could be considered to have lost jurisdiction over the Fully Excluded Members upon a decision that they are excluded, the Court renders the instant tolling decision *nunc pro tunc*, such that it is deemed to have issued just prior to exclusion. *Cf. Daniels v. The City Of New York*, 138 F. Supp.2d 562, 564-65 (S.D.N.Y. 2001) (upon decertification, "[t]he attorney-client relationship between [class counsel and class members] would end … and the status of potential class members would revert to non-party witnesses").

after that period has expired, then the arbitrator will make the decision as to whether equitable tolling applies to any of the time following expiration of the tolled period. This Court will not have usurped any of the arbitrator's authority.

Having determined that the Court possesses the requisite authority to equitably toll the statute of limitations with respect to Excluded Members, the question becomes whether the requirements for equitable tolling are satisfied here. As discussed next, the answer to that is yes.

## C.    The Elements Of Equitable Tolling Are Met

The doctrine of equitable tolling allows a court to toll a statute of limitations when a claimant can demonstrate that they have pursued their rights diligently and that some extraordinary circumstance stood in the way of timely asserting their rights. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005). Whether equitable tolling applies is determined "on a case-by-case basis to prevent inequity." *Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir.), *cert. denied*, 531 U.S. 968, 121 S. Ct. 404 (2000). While equitable tolling applies "only in rare and exceptional circumstances ... it is sometimes necessary as a matter of fairness." *Phillips v. Generations Family Health Center*, 723 F.3d 144, 150 (2d Cir. 2013) (alterations omitted)). The two requirements for equitable tolling are met here.

First, Plaintiffs acted with reasonable diligence. Judge Torres issued her decision over-ruling the parties' objections to the Arbitration Decision on September 15, 2021. (Dkt. 1264.)   Just sixteen days later, on October 1, 2021, Plaintiffs filed their request to toll the claims of Excluded Members. (Dkt. 1273.)   Filing the request in such a short

12

period, just over two weeks, is indisputably diligent.  Goldman does not contend otherwise.

Instead, Goldman seeks to push back the relevant starting line.  Goldman asserts that the Excluded Members should have acted once the Arbitration Decision issued on March 26, 2020.  As Goldman explains, filing objections to a magistrate judge's order (as distinguished from a report and recommendation) does not excuse the parties from complying with the order absent seeking and obtaining a stay.  (Dkt. 1279 at 3 citing *Michelo v. National Collegiate Student Loan Trust 2007-2*, No. 18-CV-7692, 2021 WL 1080673, at *2 (S.D.N.Y. March 5, 2021); *Vaigasi v. Solow Management Corp.*, No. 11-CV-5088, 2016 WL 616386, at *21 (S.D.N.Y. Feb. 16, 2016)).  That may be so, but the issue here is one of tolling, not compliance.

Regardless, on April 9, 2020, this Court granted a stay of the parties' obligation to meet and confer about the form and content of notice that would issue to relevant members of the class addressing the [Arbitration Decision], "pending Judge Torres' determination of any objections lodged by the parties."  (Dkt. 998 at 1-2.)  The stay order concluded, "Any deadlines that may apply under the arbitration clauses at issue are stayed commensurately."  (*Id.* at 2.)  Goldman's argument for a date preceding Judge Torres' decision runs contrary to that order.[4]  The relevant starting point is September 15,

---

[4] The Court's April 9, 2020 stay order was targeted to the issue of notice to be given to Conditionally Excluded Members.  Nonetheless, the Court deems the concluding sentence of the stay order to be sufficiently ambiguous with respect to the scope of the stay of "the arbitration deadlines at issue" that it would be inequitable to construe it against the Fully Excluded Members.  (Dkt. 998 at 2.)

2021, when Judge Torres issued her decision over-ruling all objections.  Plaintiffs easily satisfy the diligence requirement.

Moreover, the Excluded Members can hardly be faulted for acting without diligence when they have not yet been notified of their exclusion from the class and their need to pursue arbitration if they wish to preserve their claims.  In an effort to push back the starting line even earlier, Goldman suggests that class counsel could and should have counseled the newly Excluded Members as early as November 2018 when Goldman served class counsel individualized demands for arbitration.  That argument falls flat.  In November 2018, the Court had not yet rendered a decision on the arbitration agreements; indeed, Goldman had not yet moved to compel arbitration.  It would make little sense and would certainly be inequitable to charge the Excluded Members with having sat on their rights because class counsel had not conferred with those absent members before a motion or decision had even been rendered.

The Court also concludes that extraordinary circumstances exist that warrant application of equitable tolling.  Under the doctrine known as *American Pipe* tolling, the statute of limitations for claims of putative members of a class is tolled from the time the action was first filed.  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756 (1974).  Applying that principle here, putative class member claims have been tolled since 2010.  And ever since the class was certified in March 2018, the Excluded Members have been actual members of the class.  The only class notice to have gone out so far is one apprising the class members of the action and the fact that they will remain in the class if they do not opt out.  Once again, the Excluded Members have not been formally

14

notified that their status has changed and that the statute of limitations has begun to run again.  It would be quite unfair – and prejudicial – to charge the Excluded Members with the passage of time since the Court's decision excluding them without their having yet been notified of their changed status.

Even if Excluded Members were aware of their altered status, they would need time to consult counsel, consider their options, and proceed to arbitration if that is what they decide to do.  The effort and time required to do that is magnified in a class action of this size (3,320 members), with a large contingent of newly excluded members (more than 1,840), and who have relied on class representation for several years (three since certification).  Moreover, after years of litigation, class counsel has the most knowledge and is in the best position to enable the Excluded Members to act in a timely and informed fashion, regardless of whether class counsel ends up representing any Excluded Member in any individual arbitration.  The time and effort required of class counsel to reach out to over one thousand eight hundred newly excluded members to advise them about their rights and options is obviously quite daunting.

None of Goldman's arguments against invoking equitable tolling stand up to scrutiny.  Goldman asserts that applying equitable tolling here would be an unwarranted extension of *American Pipe* tolling.  (Dkt. 1279 at 3.)  Not so.  *American Pipe* established a proposition that generally applies to all class actions and that addresses whether equitable tolling is triggered by the filing of a class action.  That is not the question presented here, which addresses a different point in time and only in the specific circumstances of this case.

In an effort to brush aside the circumstances faced by the Excluded Members, Goldman repeatedly accuses class counsel of seeking to use tolling as a ploy for "business development purposes."  (*E.g.*, Dkt. 1274 at 2; Dkt. 1279 at 6.)  The Court finds that accusation all too cynical and has every expectation that class counsel's paramount interest is protecting Fully Excluded Members.[5]  As noted earlier, class counsel is in the best position to do so.

Goldman also contends that application of equitable tolling would unduly prejudice Goldman because it would have to endure yet further extension of the time during which memories may fade, and Goldman would be exposed to the uncertainty of whether claims will be filed against them.  Given the long history of this case, the unique circumstances created by Goldman's motion to compel arbitration with more than half of the class members, and Goldman's wherewithal, the Court finds that any prejudice to Goldman is far outweighed by the prejudice that would inure to the Excluded Members in the absence of a tolling period to accommodate their altered status.[6]

---

[5] Goldman also complains that if class counsel were to use contact information to inform, counsel, and represent Fully Excluded Members with respect to individual arbitration, they would be in violation of the stipulated protective order that permits the contact information to be used only "for the purposes of prosecuting and/or defending this action."  (Dkt. 51 ¶ 1.)  That concern easily can be addressed through a court order modifying the protective order.  But that is not the issue currently at hand.  The issue is whether the Court can and should temporarily toll the statute of limitations to ensure that the rights of Fully Excluded Members are protected.

[6] To the extent not addressed in this decision, the Court has considered all of Goldman's other arguments and finds them to be without merit.

All that said, the Court does not agree that it would be appropriate to toll the statute until 90 days after resolution of Phase 1 of the class litigation as Plaintiffs request. That is too indefinite, and it remains to be seen whether there will even be a Phase 1 trial given currently pending motions by Goldman for summary judgment and to decertify the class.[7] A fixed tolling period best serves the purposes of protecting newly Excluded Members while comporting with their obligation to act to preserve their claims. As alternative relief, Plaintiffs ask for an 8-month tolling period. The Court endorses that request.

In the analogous collective action cases cited by Plaintiffs, courts have variously granted tolling periods of 30 days, 60 days, and 90 days. A longer period is warranted here, however, given the large number of members who are now excluded, the geographic scope involved, and the complexity of the matter. *See Scott*, 2017 WL 1434498 at *1 (tolling statute of limitations for 90 days "[g]iven the size and geographic scope of the class"); *cf. Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp.3d 305, 314 (W.D.N.Y. 2018) ("In this case, given the small number of opt-in plaintiffs [– only two –] and the fact that this is not a particularly complex matter, the Court finds that a 30-day tolling period is appropriate"). Among the cases cited by Plaintiffs, *Scott* had the largest contingent of members whose status changed – specifically, 516 individuals. Here, more than three

---

[7] The Court does not agree with Goldman, however, that tolling until after resolution of Phase 1 would give Excluded Members "a free option" to see if the class litigation "gives them a leg up in the arbitration." (Dkt. 1279 at 1.) Moreover, extending tolling to after Phase 1 of the class action could well benefit Goldman; if the Phase 1 trial ends well for Goldman, then Excluded Members may well decide that pursuing arbitration is not worthwhile, thereby saving Goldman what would otherwise be the cost and imposition of defending hundreds of separate arbitrations.

times that number of individuals are involved (including both the Fully Excluded and Conditionally Excluded Members), and there can be no question that the case is complex.

Accordingly, under the circumstances of this case, the Court finds that the 8-month period requested in the alternative by Plaintiffs is an appropriate tolling period.

### Conclusion

For the foregoing reasons, Plaintiffs' motion with respect to equitable tolling is granted in part and denied in part. The statute of limitations for the Excluded Members to file their claims in arbitration is tolled for a period of 240 days following entry of this order. Notwithstanding that tolling period, Conditionally Excluded Members must still exercise their option to opt out of arbitration to remain in the class within the 45-day period prescribed by the notice that will be sent to them.

Dated:        November 3, 2021
              New York, New York

                              SO ORDERED.

                              _____
                              ROBERT W. LEHRBURGER
                              UNITED STATES MAGISTRATE JUDGE

Copies transmitted to all counsel of record.