# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 8, 2022

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the
     Southern District of New York,
      500 Pearl Street,
       New York, New York 10007-1312.

        Re: *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
             No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

      On behalf of Defendants, I respond to Plaintiffs' March 3, 2022 letter (ECF No. 1333 ("Letter")) seeking to amend the Court-approved notice process yet again. Thus far, the Court has approved Plaintiffs' requests for notice to Equity Award recipients, including adopting their proposed form of notice, ordering six separate notices via priority mail, email and text, and allowing class counsel to send supplemental, individualized emails. Now, in the middle of the Court-ordered process, Plaintiffs urge the Court to allow them to conduct a one-sided telephone and email campaign. Plaintiffs also seek to bar, without any basis, Goldman Sachs's Employment Law Group ("ELG") from sharing confidentially the names of Equity Award recipients with other Goldman Sachs personnel solely as needed to comply with Court orders. Plaintiffs seek this bar, even though they previously agreed to this limited disclosure. To be clear, Goldman Sachs has repeatedly reiterated that class members will not face any retaliation, and not a single claim of retaliation has arisen the since class was certified. Plaintiffs' latest requests should be denied for at least the following reasons.

      *First*, this Court should not permit class counsel to make hundreds of unsupervised and unsolicited cold calls on top of the *seven* notices (two mailings, three emails, and two text messages) that Equity Award recipients will have received over just 6 ½ weeks. Plaintiffs claim these phone calls are needed to "ensure that [Equity Award recipients] are aware of their choice," and because "some" text messages may not have been received. (Letter at 3.) That is no basis to order a phone campaign: Equity Award recipients have been sent seven notices of Plaintiffs' choice, including *five* notices sent by means *other* than text message, and a direct email from class counsel. Recipients, all sophisticated professionals whose jobs require them to review complex documents, are under no compulsion to respond to any notice (*see* ECF No. 1303 at 4), and many may not have responded because they have no interest in participating in the class. Class counsel should not be permitted to use private contact information, which was provided to Plaintiffs solely for use as directed by the Court's notice order, to solicit (and perhaps harass) recipients who already have received multiple notices.

The point of the Court-ordered notice process is to ensure that Equity Award recipients receive neutral and accurate information from a third-party notice administrator "to make an informed and knowing choice" about their rights (ECF No. 1303 ¶ 1), including the right to do nothing.  Plaintiffs' proposal turns that rule on its head, subjecting recipients who may have elected to do nothing to a barrage of communications.  Cold calling recipients by class counsel raises "concerns for undue influence, fairness, and propriety of communications" that arise when class counsel communicates directly with individuals "about whether to participate in the class." (ECF No. 1026 at 4.)  Courts have rightly rejected similar requests as unwarranted and intrusive.[1]  Class counsel may present a distorted view of the benefits of remaining in the class, versus arbitrating any claims, or dropping them entirely, or even the merits of this case.  For example, if Plaintiffs prevail, there will be separate and public Phase 2 proceedings where *each class member* will have to litigate—just as in arbitration, except that arbitration is confidential—her claims to secure any recovery.  As discussed below, Plaintiffs' own proposed FAQs convey this inaccurately.

*Second*, the Court should not allow Plaintiffs to send yet another email to Equity Award recipients with one-sided "FAQs"—which would be the *eighth* communication they will have received during the notice period.[2]  Plaintiffs claim that notice recipients are "consistently ask[ing]" questions of class counsel (Letter at 2).  But Plaintiffs and their counsel do not explain why they cannot continue to provide advice in response to specific inquiries, which is exactly what the Court-ordered process contemplates in that class counsel may simply "respon[d] to . . . individual Class Member inquiries." (ECF No. 1299 at 3.)  Instead, Plaintiffs propose to upend the third-party notice process with one-sided communications that purport to dispense one-sided legal advice en masse.

If the Court considers Plaintiffs' proposed "FAQs," Goldman Sachs respectfully submits that the Court should (i) order that any "FAQs" be posted on the notice website, not in an email from class counsel; and (ii) adopt the revisions attached as Appendix A hereto, which correct two sets of inaccuracies in Plaintiffs' draft "FAQs," and adds an additional clarifying question.  Plaintiffs' first two proposed "FAQs," concerning who would learn of notice responses, inaccurately imply that class members will never have to come forward publicly to present individualized evidence of discrimination, when they would have to litigate their individual claims

---

[1]  *See, e.g.*, *Brown* v. *Energy Servs. Grp. Int'l, Inc.*, 2021 WL 5889707, at *3 (E.D. Va. Dec. 13, 2021) ("direct telephone calling" was "unwarranted" for notices returned as undeliverable); *James* v. *Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 925 (D. Kan. 2021) (rejecting notice by telephone due to the "pain of ongoing and unwanted telephonic solicitations"); *Irvine* v. *Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (same, because "direct calling of putative class members would be unduly intrusive and difficult to regulate").

[2]  Plaintiffs raised this request for the first time in their letter to the Court, having previously proposed to Goldman Sachs only to post "FAQs" on the administrator's notice website. (Letter at 3.)  Plaintiffs justify their failure to engage in any meaningful meet-and-confer process by raising Goldman Sachs's refusal to agree to an extension of the notice period's March 24 deadline.  (*Id.*)  But Plaintiffs never asked Goldman Sachs to consent to any extension, which they do not even seek, and there is no basis for one.

The Honorable Robert W. Lehrburger                                                                                          -3-

in Court in Phase 2 proceedings to obtain any relief. Plaintiffs' final two "FAQs" set out the number of recipients who have elected to remain in the class, presumably to pressure other recipients to do the same. But Plaintiffs make no mention of the class members who, by doing nothing, have elected to reaffirm their arbitration obligations or have no interest in participating in litigation against Goldman Sachs. Further, to be even-handed, any proposed "FAQs" should accurately describe recipients' choice. Plaintiffs' direct email may confuse notice recipients insofar as it states that that, if they accept arbitration, they will "be removed from the case *so that [they] can proceed individually by arbitration*." (ECF No. 1332 at 1 (emphasis added).) This language could be read to imply that Equity Award recipients who "accept" arbitration *must* initiate an arbitration. That, of course, is not true because recipients can decide they have no basis to litigate against Goldman Sachs in any forum, as the notice makes clear.

*Third*, the Court should not issue a blanket order "prohibiting Goldman Sachs from sharing the EEA responders' names with Goldman Sachs personnel outside [ELG], absent specific Court permission," based on nothing more than speculation about possible retaliation. (Letter at 1–2.) In connection with the 2018 class notice, Plaintiffs agreed that ELG may from time to time need to share "the names of who stays in or opts-out of the Class" (which have shifted over time due to voluntary dismissals and the impact of the Court's arbitration order) with non-legal employees who are required to maintain confidentiality. (ECF No. 610-1 ¶ 15.) Goldman Sachs has proceeded in accordance with the class notice since 2018 without a single hint of retaliation against any class member or allegation that class member names have been shared inappropriately. Goldman Sachs will, of course, need to track class members and share that information on a confidential and need-to-know basis, as Plaintiffs previously recognized, but Plaintiffs' request would prevent Goldman Sachs from sharing the identities of the notice recipients who elect to remain in the class and, thus, by extension must be tracked on the class list to preserve their rights as class members.

Goldman Sachs takes seriously concerns about retaliation and has repeatedly assured Plaintiffs that "Goldman Sachs [does] not discriminate, retaliate against, or treat any Class Member adversely based on her decision whether or not to remain in the Class." (Pls.' Ex. B at 2; *see* Ex. 1 ¶ 15.) Goldman Sachs also has no interest in disseminating Equity Award recipients' responses to the notice outside ELG. (Pls.' Ex. B at 2.) At the same time, as Plaintiffs previously recognized, Goldman Sachs should not be subject to a blanket prohibition on limited, confidential disclosure of class member names within the Firm. Plaintiffs' proposed order would undermine Goldman Sachs's ability administer routine business processes and should be rejected.

The Court should reject Plaintiffs' requests.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

cc:     All parties of record (by ECF)