UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

H. CRISTINA CHEN-OSTER, SHANNA
ORLICH, ALLISON GAMBA and MARY
DE LUIS,

                    Plaintiffs,

        v.

GOLDMAN SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

                    Defendants.

------------------------------------------------------- x

10 Civ. 6950 (AT) (RWL)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR RECONSIDERATION OR CERTIFICATION
OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Jeffrey B. Wall (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

March 31, 2022

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

ARGUMENT ..........................................................................................................................5

I.      THE COURT SHOULD RECONSIDER ITS STANDING DECISION ...........................5

      A.      An Equal-Footing Injury Is Not Sufficient To Support Equal-Protection
            Claims For Damages ..........................................................................................5

            1.      The Relevant Injury For A Classwide Damages Claim Is
                   Classwide Monetary Harm ....................................................................5

            2.      Even In The Equal-Protection Context, The Relevant Injury For A
                   Damages Claim Is Monetary Harm .........................................................8

      B.      An Equal-Footing Injury Is Likewise Not Sufficient To Support Title VII
             And NYCHRL Claims For Damages ..................................................................11

II.     IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE
        DECERTIFICATION ORDER UNDER 28 U.S.C. § 1292(b) TO ALLOW THE
        SECOND CIRCUIT TO CONSIDER STANDING AND COMMONALITY ................14

      A.      Whether The Class Has Standing Merits Interlocutory Review ...........................16

            1.      Standing Presents A Controlling Question Of Law ...................................16

            2.      There Is Substantial Ground For Disagreement Over The Standing
                   Question .................................................................................................17

            3.      Resolution Of The Standing Question Would Materially Advance
                   The Termination Of The Litigation .........................................................17

      B.      Whether The Class Satisfies Commonality Also Merits Interlocutory
             Review ..............................................................................................................18

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re A2P SMS Antitrust Litig.*,
  2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ............................................................18

*Aiken* v. *Hackett*,
  281 F.3d 516 (6th Cir. 2002) ........................................................................10, 17

*Bellino* v. *JPMorgan Chase Bank, N.A.*,
  2017 WL 129021 (S.D.N.Y. Jan. 13, 2017) ....................................................15, 16

*Bergerson* v. *N.Y. State Office of Mental Health*,
  652 F.3d 277 (2d Cir. 2011)...............................................................................12

*Braunstein* v. *Arizona Dep't of Transp.*,
  683 F.3d 1177 (9th Cir. 2012) ......................................................................10, 17

*Capitol Records, LLC* v. *Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013).................................................................16

*Cruz* v. *Barnhart*,
  2006 WL 547681 (S.D.N.Y. Mar. 7, 2006) ...........................................................1

*Denney* v. *Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)...................................................................... *passim*

*Donahue* v. *City of Boston*,
  304 F.3d 110 (1st Cir. 2002) ...................................................................10, 11, 17

*Ferring B.V.* v. *Allergan, Inc.*,
  343 F. Supp. 3d 284 (S.D.N.Y. 2018)..................................................................15

*Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*,
  2015 WL 585641 (S.D.N.Y. Feb. 10, 2015)....................................................16, 19

*Glatt* v. *Fox Searchlight Pictures Inc.*,
  2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013).......................................................16

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) .........................................................17

*Houser* v. *Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014)..................................................................8, 12

*International Brotherhood of Teamsters* v. *United States*,
    431 U.S. 324 (1977)............................................................................................13

*Kassman* v. *KPMG LLP*,
    416 F. Supp. 3d 252 (S.D.N.Y. 2018)..........................................................19, 20

*Kleeberg* v. *Eber*,
    2021 WL 1164205 (S.D.N.Y. Mar. 25, 2021) .......................................................14

*Lesage* v. *Texas*,
    158 F.3d 213 (5th Cir. 1998) ...............................................................................9

*Mohawk Indus., Inc.* v. *Carpenter*,
    558 U.S. 100 (2009)...........................................................................................15

*Moussouris* v. *Microsoft Corp.*,
    799 Fed. Appx. 459 (9th Cir. 2019)....................................................................20

*Mt. Healthy City Bd. of Ed.* v. *Doyle*,
    429 U.S. 274 (1977)................................................................................. *passim*

*Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*,
    508 U.S. 656 (1993)................................................................................. *passim*

*New York* v. *Scalia*,
    490 F. Supp. 3d 748, 767 (S.D.N.Y. 2020).........................................................6

*Reynolds* v. *Giuliani*,
    2005 WL 351729 (S.D.N.Y. Feb. 14, 2005) ........................................................14

*Robinson* v. *Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)...............................................................................12

*Scott* v. *Chipotle Mexican Grill, Inc.*,
    2017 WL 4326081 (S.D.N.Y. Sept. 25, 2017) .....................................................18

*SEC* v. *Rio Tinto PLC*,
    2021 WL 1893165 (S.D.N.Y. May 11, 2021) ...............................................15, 18

*Shrader* v. *CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)...................................................................................5

*Texas* v. *Lesage*,
    528 U.S. 18 (1999)................................................................................... *passim*

*TransUnion LLC* v. *Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................. *passim*

*Tucker* v. *Arthur Andersen & Co.*,
　67 F.R.D. 468 (S.D.N.Y. 1975) ...........................................................................17, 18

*Unicolors, Inc.* v. *A&M LLC*,
　2018 WL 11219450 (S.D.N.Y. Dec. 18, 2018) ...........................................................14

*United States* v. *Hays*,
　515 U.S. 737 (1995)....................................................................................................11

*Wal-Mart Stores, Inc.* v. *Dukes*,
　564 U.S. 338 (2011)........................................................................................ *passim*

*Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*,
　247 F.3d 1262 (11th Cir. 2001) ...........................................................................10, 11

*Xuedan Wang* v. *Hearst Corp.*,
　2013 WL 3326650 (S.D.N.Y. June 27, 2013) ...........................................................15

*Yamaha Motor Corp., U.S.A.* v. *Calhoun*,
　516 U.S. 199 (1996)....................................................................................................18

## Statutes and Rules

28 U.S.C. § 1292(b) ............................................................................................ *passim*

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

## Other Authorities

Wright & Miller, 16 Federal Practice and Procedure § 3931.1 (3d ed. 2021
　update)...........................................................................................................................18

**PRELIMINARY STATEMENT**

This Court recently rejected Defendants' argument that the class should be decertified because Plaintiffs have not shown that each class member has standing to seek damages. Defendants respectfully submit that decision is premised on a "clear error of law" that warrants reconsideration. *Cruz* v. *Barnhart*, 2006 WL 547681, at *2 (S.D.N.Y. Mar. 7, 2006) (Cote, J.) (citation omitted). Specifically, the Court concluded that the entire class has standing because all class members were subject to the same challenged policies. In reaching that conclusion, the Court borrowed a theory from equal-protection case law—the "equal-footing" theory of *Northeastern Florida Chapter of Associated General Contractors of America* v. *City of Jacksonville*, 508 U.S. 656, 666–68 (1993). Several years after *Jacksonville*, however, the Supreme Court restricted the equal-footing theory to claims for injunctive relief, and held that it does not apply to equal-protection claims for damages. *See Texas* v. *Lesage*, 528 U.S. 18, 20–22 (1999).

In denying decertification, this Court thus borrowed a standing test for Title VII damages claims that the Supreme Court has rejected for equal-protection damages claims. Under either Title VII or the Equal Protection Clause, a plaintiff seeking damages must plead and prove a concrete harm from the allegedly discriminatory policy that is redressable with money: in an affirmative-action case like *Lesage*, that the applicant was denied admission; here, that each class member suffered some lost pay. Because Plaintiffs' own expert cannot say whether all class members lost pay, and because discovery has confirmed that they did not, the Court should reconsider and decertify the class. In the alternative, the Court should certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b), so that the Second Circuit may review the Court's decision on standing, as well as its ruling on commonality, before the parties and the Court have to prepare for and conduct extensive and costly trial proceedings in this case.

## BACKGROUND

Plaintiffs allege that three processes used to evaluate Goldman Sachs associates and vice presidents—360 reviews, quartiling, and cross-ruffing—discriminated against female employees. Plaintiffs initially pursued both injunctive relief and damages, and moved for certification under both Rule 23(b)(2) and Rule 23(b)(3).  (Cert. Br. (ECF No. 247) at 42, 45.)  Plaintiffs' claims for injunctive relief were later placed on a separate litigation track to allow further discovery on Defendants' then-current 360 review and quartiling practices.  (ECF No. 560 at 57–58; *see* Cert. Order (ECF No. 578) at 12–13.)

On March 30, 2018, the Court certified a class under Rule 23(b)(3) for claims of backpay and punitive damages.  (Cert. Order at 12–13.)  The certified damages class consisted of "[a]ll female Associates and Vice Presidents who have worked in Goldman Sachs' Investment Banking, Investment Management, and/or Securities Divisions in the United States at any time from September 10, 2004 to present, and in New York City from July 7, 2002 to the present."  (Cert. Br. at 34; *see* Cert. Order at 49 (granting certification as relevant).)  A few months later, Plaintiffs dropped their class claim for injunctive relief by withdrawing their motion for certification under Rule 23(b)(2) and abandoning further discovery into Goldman Sachs's current annual practices. (ECF No. 625 at 1.)

Discovery proceeded on the Rule 23(b)(3) damages claim, and developed critical facts about the membership of the class.  Plaintiffs' statistical expert, Dr. Farber, analyzed data on an aggregate basis, and concluded that for some but not all years of the class period, women *on average* were reviewed slightly less favorably and received slightly fewer promotions than men. But Dr. Farber did not conclude that every member of the class suffered some monetary harm.  On the contrary, Dr. Farber admitted that his model "can't tell you whether any particular woman was discriminated against."  (Farber Tr. (ECF No. 1236-55) at 210:14–19.)  In other words, Dr. Farber

opined that "on average, there had to be someone who was discriminated against," but his model cannot discern how many people were actually discriminated against, or who they were. (*Id*. at 360:10–19.) Moreover, Dr. Farber conceded that his data "doesn't attach . . . damages to any particular woman," and that he had not analyzed "the damages suffered by any particular woman in the class." (*Id.* at 345:14–346:6.) Dr. Farber thus admittedly could not "testify that all women in the class were the victims of discrimination" (*id.* at 361:9–17), or even that any women in any particular Division suffered discrimination (*id*. at 85:17–86:4). And in fact, Defendants' expert Dr. Shaw observed, "even using [Dr.] Farber's own model," a significant percentage of women earned more than would be predicted for comparable male employees. (Shaw Rpt. (ECF No. 1236-56) ¶ 288.)

Discovery further revealed that the class included some members who *could not have* suffered an injury from a challenged process. For example, hundreds of class members received a top performance quartile in every single year in which they appear in the data, meaning that they suffered no loss in compensation from quartiling. (Shaw Rpt. ¶ 221, App. K (presenting data from "Farber Backup Materials").) And the compensation of certain class members—self-sustaining private wealth advisors—was not tied at all to their 360 review or quartiling results. (Brasco Decl. (ECF No. 1227) ¶ 8.)

Following discovery, Defendants moved to decertify the class. (Decert. Br. (ECF No. 1235).) Defendants explained that the class lacked standing to pursue damages because, in light of Dr. Farber's testimony, Plaintiffs could not demonstrate classwide monetary injury. (Decert. Br. at 23–27; Decert. Reply (ECF No. 1307) at 3–11.) Simply being subject to the challenged evaluation policies might have been sufficient to demonstrate standing to pursue *injunctive relief*, but Plaintiffs abandoned certification of their injunctive claims. Under the Supreme Court's recent decision in *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190 (2021), the class needed to show

classwide monetary injury in order to pursue backpay damages. (Decert. Br. at 23–27; Decert. Reply at 3–7.)

Defendants also showed that even if the class had standing, the class could not satisfy Rule 23's requirements for class certification because discovery had confirmed that individual managers and cross-ruffers conducted highly discretionary reviews of employees in vastly different jobs, thus precluding certification under *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011). (Decert. Br. at 27–37; Decert. Reply at 11–19.) Specifically, expert testimony demonstrated that associates and vice presidents in the class held a wide variety of job functions. Defendants' expert Dr. Eric Dunleavy identified extensive job variation after interviewing dozens of associates and vice presidents. (Dunleavy Work Rpt. (ECF No. 1236-50).) Discovery also confirmed that individual reviewers exercised significant discretion in conducting all three challenged evaluation processes. (*See* App. A (ECF No. 1236-1); App. B (ECF No. 1236-2).) Plaintiffs have not provided any evidence to dispute these critical facts. (*See* Decert. Opp. (ECF No. 1267) at 29.) Even Plaintiffs' expert Dr. Farber admits that the case involves, at the very least, "a few dozen" different job functions. (Farber Tr. at 370:7–14.)

On March 17, the Court denied Defendants' motion for decertification. (Decert. Order (ECF No. 1337).) In the Court's view, there was no clear rule in the Second Circuit to assess standing for Title VII claims, so it borrowed a test from equal-protection jurisprudence. (*Id.* at 38.) The Court held that all members of the class had standing because they were all subject to policies that allegedly "prevented [them] from competing on an equal footing." (*Id.* (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666–67 (1993)).) The Court also held that the class satisfied the requirements of Rule 23. (*Id.* at 38–45.) With respect to commonality, the Court stated that all class members "hold only one of two jobs: Associate or Vice President" (*id.* at 41 (quoting Cert. Order at 27–28 n.11)), and again emphasized

that all class members were subject to the same evaluation processes (*id.*).

## ARGUMENT

## I.    THE COURT SHOULD RECONSIDER ITS STANDING DECISION

Defendants respectfully request that the Court reconsider the portion of its Decertification Order that addresses standing.  (Decert. Order at 37–38.)  Reconsideration is warranted where "the moving party can point to controlling decisions . . . that the court overlooked," which "might reasonably be expected to alter the conclusion reached by the court."  *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Here, the Court found standing based on a theory borrowed from equal-protection cases—the "equal footing" theory—that neither party had briefed.  (Decert. Order at 38.)  As explained below, several years after the Supreme Court adopted the equal-footing theory in *Jacksonville*, it made clear that theory applies only to equal-protection claims for *injunctive relief*, not damages.  *See Texas* v. *Lesage*, 528 U.S. 18, 20–21 (1999).  Under *Lesage*, an equal-protection plaintiff who seeks damages must plead and prove a concrete harm from the challenged policy that can be redressed with a damages award.  *Id.*  And under *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), every member of the class must have Article III standing.  Because Plaintiffs have not shown that all class members suffered some monetary injury from Goldman Sachs's policies, they do not have standing under *Lesage* and *Denney*.

### A.    An Equal-Footing Injury Is Not Sufficient To Support Equal-Protection Claims For Damages

#### 1.    The Relevant Injury For A Classwide Damages Claim Is Classwide Monetary Harm

The Court concluded in its Decertification Order that all class members had standing because they were all subject to the challenged evaluation processes.  (Decert. Order at 38.)  As Defendants explained in their decertification briefing, however, being subject to an allegedly discriminatory policy may be sufficient to show standing in a suit for injunctive relief, but it is not

enough in a suit for damages.  (Decert. Br. at 23–27; Decert. Reply at 3–7.)  The Supreme Court recently reiterated in *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2208 (2021), that plaintiffs must demonstrate standing "for each form of relief that they seek."  Being subject to a discriminatory policy could be relevant to claims for *injunctive relief* because it might show the "risk of future harm" if the policy is not enjoined.  *Id.* at 2210.  But in a suit for damages, plaintiffs cannot rely on "the mere risk of future harm" to show standing.  *Id.* at 2210–11.  Instead, plaintiffs must "demonstrate that the risk of future harm materialized," *id.* at 2211—here, in the form of lost compensation.  That rule makes particular sense in this context.  An employee who is or will be subject to a discriminatory policy can sue to end that policy.  But unless an employee suffers an adverse employment action that resulted in a monetary injury, they cannot sue for damages.

   That requirement of a monetary injury applies not simply to the named Plaintiffs, but to all of the class members.  Under the Second Circuit's decision in *Denney*, "no class may be certified that contains members lacking Article III standing."  443 F.3d at 264.  A class therefore must "be defined in such a way that anyone within it would have standing."  *Id*.  But the class definition in this case does not distinguish between employees who suffered monetary harm and those who did not.  Instead, the class is defined to encompass all female associates and vice presidents in three divisions during the class period, regardless of whether they ever lost pay.  (*See* Decert. Order at 4.)  Plaintiffs' class definition flunks *Denney* because it indiscriminately captures class members with no monetary injury and thus no standing to bring backpay claims.  And as explained below, that defect is even more glaring—and obviously incurable—now that discovery has been completed without any evidence of classwide monetary injury.

   At this point, it is no longer enough for Plaintiffs to *assert* standing.  They must "*establish*[], and not merely allege[], standing."  *New York* v. *Scalia*, 490 F. Supp. 3d 748, 767 (S.D.N.Y. 2020) (Woods, J.) (emphasis added); *see TransUnion*, 141 S. Ct. at 2208 ("A plaintiff

must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation.") (internal quotation marks omitted). Plaintiffs have literally no evidence to establish that every class member in fact experienced a monetary harm. By his own admission, Plaintiffs' expert Dr. Farber cannot determine how many class members, or which ones, actually suffered a loss of compensation. (Farber Tr. at 210:14–19, 360:15–19.) This is the rare case in which Plaintiffs successfully sought certification of a Rule 23(b)(3) damages class by alleging classwide injury, and then did not even attempt to offer evidence that every class member had lost some amount of compensation because of the allegedly discriminatory policies.

In fact, discovery affirmatively demonstrated that many class members did *not* suffer a monetary harm caused by Goldman Sachs's policies. Even under Dr. Farber's regression model, a significant percentage of women earned more than would be predicted for comparable male employees. (Shaw Rpt. ¶ 288 (showing predicted versus actual compensation "[u]sing Prof. Farber's model").) Hundreds of class members received a top quartile in every year in which their quartile was measured, meaning that they suffered no compensation injury from the quartiling process. (Shaw Rpt. ¶ 221, App. K (presenting data from "Farber Backup Materials").) And compensation for some class members—self-sustaining private wealth advisors—was not tied to their 360 review or quartiling results. (Brasco Decl. ¶ 8.) Indeed, as the Court itself recognized, those private wealth advisors "may not recover damages given their differing compensation structure." (Decert. Order at 57.) The Court believed that those private wealth advisors could nevertheless remain in the class for Phase I purposes (*id.*), but that is incorrect. Under *Denney*, the class includes members who have not shown that they were injured, and so the class must be decertified. *See* 443 F.3d at 264.

### 2. Even In The Equal-Protection Context, The Relevant Injury For A Damages Claim Is Monetary Harm

The Court rejected Defendants' standing argument, but on a theory that neither party had briefed. (Decert. Order at 38.) The Court stated that to establish standing "in the equal protection context," a plaintiff must show only that "a policy 'prevented [the plaintiff] from competing on an equal footing,' not that the plaintiff 'would have obtained a benefit but for the barrier.'" (*Id.* (quoting *Jacksonville*, 507 U.S. at 666–67).) Without identifying a Second Circuit case endorsing that test for Title VII claims, the Court nevertheless held that the "equal footing" standard should also apply in the Title VII context. (*Id.* (citing *Houser* v. *Pritzker*, 28 F. Supp. 3d 222, 238–39 (S.D.N.Y. 2014)).) Because all class members were subject to at least one of the challenged processes that allegedly put them on unequal footing, the Court concluded that the entire class had standing. (*Id.*)

Defendants respectfully submit that the Court's reliance on *Jacksonville* overlooked critical, controlling case law in the equal-protection context. Specifically, the Supreme Court in *Lesage*, based on its previous decision in *Mt. Healthy City Board of Education* v. *Doyle*, 429 U.S. 274 (1977), limited *Jacksonville* to claims for injunctive relief. In *Mt. Healthy*, the Supreme Court held that, even if the government has considered a constitutionally impermissible criterion in reaching a decision, the plaintiff cannot receive backward-looking relief (like backpay damages) if the government would have made the same decision absent the impermissible consideration. 429 U.S. at 285–87. In other words, merely being subject to a discriminatory policy alone is not enough for retrospective relief like damages; the plaintiff must show that the policy discriminated against her in some tangible way, and then the burden shifts to the defendant to show that the same harm would have resulted regardless of the policy. It is not enough that the plaintiff was simply subject to a discriminatory policy.

Sixteen years after *Mt. Healthy*, the Supreme Court adopted the equal-footing theory of injury in *Jacksonville*. That led to the question whether *Jacksonville* had lessened the necessary showing in equal-protection damages cases. In *Lesage*, 528 U.S. 18, the Court gave a direct answer: no. The plaintiff in *Lesage* had challenged a "race-conscious" process for admission to a University of Texas graduate program, and sought compensatory damages under Section 1983, among other forms of relief. *Id.* at 19. Lesage had been rejected from the program, but evidence conclusively showed that his application would have been denied even under a race-neutral admissions program. *Id.* The Fifth Circuit held that it was irrelevant to liability whether Lesage otherwise would have been admitted, because his injury was being subject to an admissions process that placed him on unequal footing. *Lesage* v. *Texas*, 158 F.3d 213, 222 (5th Cir. 1998). In the Fifth Circuit's view, that unequal-footing injury allowed Lesage to press his claims, even if he was not otherwise harmed by the discriminatory process.

The Supreme Court rejected that view in a per curiam opinion without any dissent. The Court explained that, under *Mt. Healthy*, for an equal-protection plaintiff to get damages, the challenged government action must have had a concrete effect. *Lesage*, 528 U.S. at 20–21. Because Lesage would have been denied admission regardless of the school's consideration of race, he had "*no cognizable injury* warranting" the damages he sought. *Id.* at 21 (emphasis added). In reaching that conclusion, the Supreme Court expressly distinguished *Jacksonville*, and cabined the equal-footing theory of injury to claims for injunctive relief. As directly relevant here, the Court explained that "a plaintiff who challenges an ongoing race-conscious program and seeks forward-looking relief need not affirmatively establish that he would receive the benefit in question if race were not considered. The relevant injury in such cases is 'the inability to compete on an equal footing.'" *Id.* (quoting *Jacksonville*, 508 U.S. at 666). But Lesage's failure to show that he was deprived of any concrete benefit because of the alleged discrimination "preclude[d] any

finding of liability" for damages.  *Id.*

In other words, *Lesage* held that when a plaintiff seeks "forward-looking relief"—like an injunction—"[t]he relevant injury in such cases is 'the inability to compete on an equal footing.'" *Id.* (citation omitted).  But that is *not* the relevant injury in a damages case like *Lesage* or this one. If it were, then Lesage would have been injured solely by being subject to a race-conscious admissions process, and the government's reasons for ultimately denying Lesage admission would not have mattered.  Instead, *Lesage* makes clear that the relevant injury for a plaintiff who seeks *damages* is whether the challenged policy caused a concrete harm—in *Lesage*, the denial of admission; here, a loss of compensation.  The Supreme Court's equal-protection cases thus draw an important line for standing purposes:  for claims seeking injunctive relief, plaintiffs need only allege that they face ongoing discrimination under *Jacksonville*; but for claims seeking damages, plaintiffs must allege some additional harm that damages can redress under *Lesage* (and *Mt. Healthy*).

That standing framework is familiar to the courts of appeals.  The First, Sixth, and Ninth Circuits all have recognized that *Lesage* controls the standing inquiry in equal-protection damages cases because it "clarif[ies] the 'injury in fact to a cognizable interest' that is required to support standing for [a] damages claim."  *Donahue* v. *City of Boston*, 304 F.3d 110, 117 (1st Cir. 2002) (citation omitted); *see Aiken* v. *Hackett*, 281 F.3d 516, 518–20 (6th Cir. 2002); *Braunstein* v. *Ariz. Dep't of Transp.*, 683 F.3d 1177, 1186–87 (9th Cir. 2012); *cf. Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1277 (11th Cir. 2001) ("[*Lesage*] plainly bears on [the standing] inquiry because it further defines the kind of injury that would support relief.").[*]  The First Circuit aptly

---

[*]     Although the court in *Wooden* recognized that *Lesage* bears on the standing inquiry, it nevertheless relied on *Jacksonville* to conclude that a plaintiff seeking damages had standing.

summarized *Lesage*'s effect: "*Lesage* is a clear cue from the Supreme Court that we cannot apply identical standing analyses to claims for damages and claims for prospective relief. It is equally apparent, in light of *Lesage*, that the 'equal footing' analysis is applied only in claims for the latter type of relief." *Donahue*, 304 F.3d at 118.

Standing in equal-protection cases is thus an example of, and not an exception to, the rule articulated in *TransUnion*: a "risk of future harm," such as the risk created by ongoing exposure to a discriminatory policy, can satisfy Article III in the context of a claim for injunctive relief, but plaintiffs must "demonstrate that the risk of future harm materialized" in order to have standing to sue for damages. 141 S. Ct. at 2210–11; *see United States* v. *Hays*, 515 U.S. 737, 743–44 (1995) ("[E]ven if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.") (internal quotation marks omitted). In short, Plaintiffs' *TransUnion* problem cannot be avoided by borrowing from the equal-protection context.

## B.      An Equal-Footing Injury Is Likewise Not Sufficient To Support Title VII And NYCHRL Claims For Damages

An equal-footing injury is no more cognizable in the context of this class action for backpay under Title VII and NYCHRL than it would be in an equal-protection suit for damages. Neither the cause of action nor the class-action posture changes the analysis.

First, the logic of *Lesage* applies with equal force in the context of Title VII and NYCHRL. *See* 528 U.S. at 20–21. To get damages under Title VII, a plaintiff must show "that he or she

---

247 F.3d at 1278–81; *see Donahue*, 304 F.3d at 118–19 (criticizing this aspect of *Wooden*). But unlike some members of this class, the relevant plaintiff in *Wooden* had clearly pointed to a concrete harm under the allegedly discriminatory admissions policy: his college application had been rejected. Indeed, the Eleventh Circuit noted that the plaintiff's injury was redressable by, "among other things, [a] declar[ation] that [his] application must be re-considered under an entirely race-neutral admissions process." *Wooden*, 247 F.3d at 1281. The court could not have found standing on that basis if the plaintiff's application had not been rejected.

*suffered an adverse employment decision*" and that the discriminatory policy played a role in that decision.  *Robinson* v. *Metro-North Commuter R.R. Co.*, 267 F.3d 147, 159, 161 (2d Cir. 2001) (emphasis added), *abrogated on other grounds by Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 360–67 (2011).  NYCHRL adopts the same framework.  (Decert. Order at 49.)  To receive backpay damages specifically, the adverse decision must be tied to lost pay, because backpay is a form of "economic damages," intended to "return a victim of discrimination to the position she would have found herself in had the violations never occurred."  *Bergerson* v. *N.Y. State Office of Mental Health*, 652 F.3d 277, 286–87 (2d Cir. 2011).  Merely being subject to a challenged policy is thus not a cognizable injury in a Title VII suit for backpay damages, just as it is not a cognizable injury in an equal-protection suit for damages.

In its Decertification Order, this Court cited *Houser* v. *Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014), but there the Title VII plaintiffs were seeking both injunctive relief and damages.  Citing *Jacksonville*, *Houser* held that the relevant injury was whether the plaintiffs had been unable to compete for a benefit on equal footing.  *Id.* at 237–39.  To be sure, the court in *Houser* did not appear to distinguish for purposes of the injury inquiry between the forms of relief that the plaintiffs sought, and it neither cited *Lesage* nor recognized that the relevant injury would be different for the plaintiffs' damages claim.  But the oversight was immaterial.  The court ultimately concluded that certain named plaintiffs' injuries were redressable by backpay damages because they applied for the job with the necessary qualifications "*and [were] not hired.*"  *Id.* at 240 (emphasis added).  *Houser* thus determined that some plaintiffs had standing to seek Title VII damages precisely because those plaintiffs had suffered concrete harm.  *Houser* does not suggest that a plaintiff may seek Title VII damages under an equal-footing theory even if she did *not* suffer an adverse employment decision that caused monetary harm.

Second, the class-action context of this case does not compel a different conclusion.  Under

*Denney*, every class member must have Article III standing for a class to be certified.  443 F.3d at 264.  Because Plaintiffs seek only backpay, the Court must consider for purposes of certification whether any class members lack standing to pursue damages.  *See TransUnion*, 141 S. Ct. at 2210 (standing must be established for "each form of relief sought") (citation omitted).  For the reasons explained above, that means Plaintiffs must show that the entire class suffered a monetary harm.

This posture is, of course, highly unusual in the context of Title VII class actions.  In a usual Title VII class action proceeding under the framework announced in *International Brotherhood of Teamsters* v. *United States*, 431 U.S. 324 (1977), a class may demonstrate classwide standing to pursue injunctive relief at Phase I of the litigation, and defer demonstrations of monetary harm to Phase II when class members may pursue backpay damages on an individual basis.  In this case, however, Plaintiffs withdrew their motion for Rule 23(b)(2) certification. Moreover, any forward-looking claims relating to 360 reviews or quartiling have been mooted by the Court's grant of summary judgment to Defendants on all claims relating to those processes after 2015.  (Decert. Order at 57.)  Phase I thus will *not* adjudicate the availability of injunctive relief, since Plaintiffs are pursuing only backpay damages.  In this atypical Title VII class action, Plaintiffs cannot fall back on the type of injury that would be sufficient for a Phase I injunction in a more typical case.

Indeed, this case is even more unusual than a standard Title VII class action, because after obtaining certification on the theory that every class member has a monetary injury, Plaintiffs' own expert is unable to say that monetary injury was felt across the entire class, or for that matter, any particular segment of the class.  (*See* Farber Tr. at 85:17–86:4, 210:14–19, 345:14–346:6, 360:10–19, 361:9–17.)  Dr. Farber admitted that his model "can't tell you whether any particular woman was discriminated against."  (*Id.* at 210:14–19.)  It is hardly surprising that Plaintiffs and Dr. Farber have not attempted to disaggregate the data.  If they had, it would have showed that not

all class members suffered some lost pay—making it clear beyond question that the class would have to be decertified under *Denney*. Plaintiffs cannot avoid that result by offering only aggregated data and then declining to say whether the entire class experienced a monetary injury. That amounts to a straightforward end run around *TransUnion* and *Denney*.

*   *   *

In sum, this Court borrowed the equal-footing theory of standing from the equal-protection context, but in that context the theory applies only to claims for injunctive relief. This Court has not hesitated to grant reconsideration when alerted to case law that bears on one of its decisions. *See Unicolors, Inc.* v. *A&M LLC*, 2018 WL 11219450, at *3 (S.D.N.Y. Dec. 18, 2018) (Torres, J.) (granting reconsideration because "the Court agrees that it overlooked case law that could reasonably be expected to alter its decision"). Reconsideration is especially appropriate here because the equal-footing issue was not "fully briefed or argued by the parties" before the initial decision. *Reynolds* v. *Giuliani*, 2005 WL 351729, at *1 (S.D.N.Y. Feb. 14, 2005) (Pauley, J.); *see Kleeberg* v. *Eber*, 2021 WL 1164205, at *5 (S.D.N.Y. Mar. 25, 2021) (Parker, M.J.) (granting reconsideration in part in light of overlooked case law where "parties did not brief the issue," and "the Court raised the issue sua sponte in its prior Opinion and Order"). Neither party discussed the equal-footing theory in its decertification briefing, and Plaintiffs did not even cite *Jacksonville* in their opposition to Defendants' motion for decertification. (Decert. Opp.) Defendants respectfully request that the Court reconsider its standing decision without relying on the equal-footing theory, and conclude that Plaintiffs lack classwide standing for the reasons explained in Defendants' decertification briefing. (Decert. Br. at 23–27; Decert. Reply at 3–11.)

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE DECERTIFICATION ORDER UNDER 28 U.S.C. § 1292(b) TO ALLOW THE SECOND CIRCUIT TO CONSIDER STANDING AND COMMONALITY

If the Court does not agree that reconsideration is warranted, Defendants respectfully

-14-

request that the Court certify its Decertification Order for interlocutory appeal under 28 U.S.C. § 1292(b).  A district court may certify an order for interlocutory review if the order (1) involves a "controlling question of law," (2) on which there is "substantial ground for difference of opinion," (3) and "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "[D]istrict courts should not hesitate to certify an interlocutory appeal" when the "preconditions for § 1292(b) review" are "satisfied."  *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110–11 (2009).  The Court's Decertification Order meets the statutory criteria for certification because it involves two controlling and significant questions of law, the resolution of which would materially advance the termination of this litigation:

- Whether class members must have suffered monetary harm to have standing to pursue backpay damages under Title VII; and

- Whether the application of discretionary evaluation processes by individual managers to employees holding myriad different jobs defeats Rule 23's commonality requirement.

"Because the district court's efficiency concerns are greatest in large, complex cases, [§ 1292(b)] certification may be more freely granted in so-called 'big' cases."  *SEC* v. *Rio Tinto PLC*, 2021 WL 1893165, at *3 (S.D.N.Y. May 11, 2021) (Torres, J.) (citation omitted) (granting certification).  Indeed, the Court has previously certified for interlocutory review an important standing question in this litigation.  (ECF No. 500 at 1.)  Moreover, courts in this District routinely certify orders that involve questions of standing and commonality.  *See, e.g.*, *Ferring B.V.* v. *Allergan, Inc.*, 343 F. Supp. 3d 284, 286 (S.D.N.Y. 2018) (Sweet, J.) (certifying standing question); *Bellino* v. *JPMorgan Chase Bank, N.A.*, 2017 WL 129021, at *5 (S.D.N.Y. Jan. 13, 2017) (Román, J.) (certifying standing question); *Xuedan Wang* v. *Hearst Corp.*, 2013 WL 3326650, at *2–3 (S.D.N.Y. June 27, 2013) (Baer, J.) (certifying commonality question).  The

same course is warranted here.

### A.   Whether The Class Has Standing Merits Interlocutory Review

The Court's ruling on standing satisfies all three statutory requirements for certification for interlocutory appeal under Section 1292(b).

### 1.   Standing Presents A Controlling Question Of Law

Whether the class members must have suffered a monetary harm to pursue backpay damages under Title VII is a controlling, threshold legal question.  The issue is a "pure question of law" that turns entirely on the proper application of standing doctrine.  *Bellino*, 2017 WL 129021, at *2.  The Second Circuit could answer that question "quickly and cleanly without having to study the record." *Capitol Records, LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (Abrams, J.) (citation omitted).

The standing question is controlling because "reversal of the district court's opinion" would "significantly affect the conduct of the action." *Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (McMahon, J.) (citation omitted).  Under *Denney*, the class definition must encompass members who have standing in order to maintain certification of this damages class action.  443 F.3d at 264.  But the class definition in this case is not limited to employees who lost pay.  (*See* Decert. Order at 4.)  Nor have Plaintiffs established, after a decade or more of discovery, that every member of the class actually suffered a monetary injury, as Plaintiffs' expert conceded that his studies "can't tell you whether any particular woman was discriminated against." (Farber Tr. at 210:13–19).  If the Second Circuit holds that a plaintiff must have suffered a monetary injury to pursue backpay damages, then the existing class cannot stand under *Denney*.  *See* 443 F.3d at 264.

Class decertification would "significantly affect the conduct of the action." *Glatt* v. *Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (Pauley, J.)

(concluding that an issue was controlling because it "affect[ed] . . . the propriety of certifying a class action"). Decertification would obviate the need for trials on Plaintiffs' disparate-treatment and disparate-impact claims, and potentially hundreds of mini-trials on individual class members' entitlement to backpay or punitive damages in Phase II. *See Tucker* v. *Arthur Andersen & Co.*, 67 F.R.D. 468, 485 (S.D.N.Y. 1975) (Werker, J.) (certifying for interlocutory appeal because if the class "were 'decertified' both the court and the parties would not be faced with managing the many facets of the class action, thus saving considerable time and resources of all concerned"). Needless to say, the effect on this litigation would be significant.

2.     **There Is Substantial Ground For Disagreement Over The Standing Question**

There is "substantial ground for difference of opinion" on the controlling question of class standing. A substantial ground for difference of opinion exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 5002090, at *3 (S.D.N.Y. Oct. 7, 2014) (Crotty, J.) (citation omitted). As explained above, *supra* pp. 8–14, the Court's application of the equal-footing theory to a damages claim conflicts with the Supreme Court's holdings in *Lesage* and *Mt. Healthy*. The Court's standing analysis is also inconsistent with courts of appeals that have recognized in the equal-protection context that, "in light of *Lesage*," "the 'equal footing' analysis is applied only in claims for [prospective] relief." *Donahue*, 304 F.3d at 118; *see Aiken*, 281 F.3d at 519; *Braunstein*, 683 F.3d at 1186–87. In light of contrary authority on the equal-footing theory, there is substantial ground for disagreement with the Court's ruling on standing.

3.     **Resolution Of The Standing Question Would Materially Advance The Termination Of The Litigation**

Finally, resolution of the standing issue would "materially advance the ultimate termination of the litigation." That third prong of Section 1292(b) is satisfied "when an intermediate appeal

'promises to advance the time for trial or to shorten the time required for trial.'" *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *5 (S.D.N.Y. Mar. 2, 2015) (Nathan, J.) (citation omitted). In assessing the third prong, "courts must consider the institutional efficiency of both the district court and the appellate court." *Rio Tinto*, 2021 WL 1893165, at *3 (citation omitted).

As explained above, reversal on the standing issue would require decertifying the class. *See supra* pp. 16–17. The "Second Circuit has recognized that class certification decisions have the potential to materially advance the ultimate termination of the litigation." *Scott* v. *Chipotle Mexican Grill, Inc.*, 2017 WL 4326081, at *1 (S.D.N.Y. Sept. 25, 2017) (Carter, J.) (citing *Marisol A. by Forbes* v. *Giuliani*, 104 F.3d 524, 529 (2d Cir. 1996)). "The determination whether to certify a class can effectively conclude the action, one way or the other." Wright & Miller, 16 Federal Practice and Procedure § 3931.1 (3d ed. 2021 update). And at a minimum, immediate appellate review of the standing issue could spare both the parties and the Court from expending an enormous amount of time and resources trying Plaintiffs' disparate-treatment and disparate-impact claims, with potentially hundreds of mini-trials to follow on individual class members' damages. *See Tucker*, 67 F.R.D. at 485 (finding the third prong of Section 1292(b) to be satisfied because "protracted and expensive litigation may very well be avoided" by class decertification).

**B.      Whether The Class Satisfies Commonality Also Merits Interlocutory Review**

Certifying the Order for interlocutory review would also permit the Second Circuit to consider whether the class satisfies Rule 23's commonality requirement. *See Yamaha Motor Corp., U.S.A.* v. *Calhoun*, 516 U.S. 199, 205 (1996) ("[T]he appellate court may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'") (citation omitted). The Court's ruling on commonality likewise satisfies the three statutory criteria for certification for interlocutory appeal under Section 1292(b).

First, the Order involves a controlling legal question: whether common questions of fact exist for a disparate-impact claim where individual reviewers apply highly discretionary evaluation processes to employees who hold different jobs. That is a question of law that turns on the proper application of *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011). And the question is controlling because if the Second Circuit reverses the Court's commonality determination, then class certification cannot be sustained under Rule 23. For the reasons explained above, *supra* pp. 16–17, decertification would "significantly affect the conduct of the action." *Flo & Eddie*, 2015 WL 585641, at *1 (citation omitted).

Second, there are substantial grounds for disagreement with the Court's ruling on commonality. The Court concluded that there existed "a common mode of exercising discretion that pervades the entire company," because class members were evaluated under the same policies. (Decert. Order at 39–41 (quoting *Wal-Mart*, 564 U.S. at 356).) And the Court distinguished the facts in *Wal-Mart* on the basis that "class members here hold only one of two jobs: Associate or Vice President" (*id.* at 41 (internal quotation marks omitted)), notwithstanding Defendants' evidence and Plaintiffs' expert's admission that class members performed numerous distinctive job functions. (*See* Dunleavy Work Rpt.; Farber Tr. at 370:7–14.) But other courts—including in this District—have held that simply being evaluated under the same general company-wide process alone cannot "produce a common answer to the crucial question *why was I disfavored*" where individual managers exercise significant discretion over *how that policy is applied* to employees holding a wide range of jobs. *Wal-Mart*, 564 U.S. at 352. In *Kassman* v. *KPMG LLP*, 416 F. Supp. 3d 252, 280–81 (S.D.N.Y. 2018) (Schofield, J.), a court in this District denied class certification to a class of employees with diverse jobs based on the "relative freedom . . . extended to local supervisors" and the "lack of rigid criteria to channel [their discretion]." And in *Moussouris* v. *Microsoft Corp.*, 799 Fed. Appx. 459, 462 (9th Cir. 2019), the Ninth Circuit held

that a class lacked commonality because class members held "more than 8,000 different positions," and their "individual managers had broad discretion over how to conduct" the evaluation process. The Court distinguished those cases on the ground that here discretion "was channeled through the challenged processes" (Decert. Order at 41 n.25), but in *Kassman* and *Moussouris*, too, the supervisors exercised their discretion under similar general company-wide frameworks or processes.

Third, interlocutory appeal would materially advance the termination of the case.  As explained above, immediate appellate review could spare the parties and the Court from the burdens of complex trials and potentially hundreds of mini-trials that could ultimately prove to have been unwarranted.  *See supra* pp. 17–18.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider the portion of its Decertification Order that addresses standing, or, in the alternative, certify the Order for interlocutory appeal to allow the Second Circuit to review the Court's holdings on standing and commonality.

Respectfully,

/s/ Robert J. Giuffra, Jr.

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005


Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Amanda Flug Davidoff
Jeffrey B. Wall (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006

*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

March 31, 2022