# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*
___

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

April 14, 2022

Via ECF

The Honorable Robert W. Lehrburger,
   United States District Court for the
     Southern District of New York,
      500 Pearl Street,
       New York, New York 10007-1312.

        Re:   *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
              No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

      Defendants strongly oppose class counsel's April 11, 2022 request (ECF No. 1350 ("Letter")) seeking reconsideration of the Court's March 26, 2020 Order (ECF No. 983 ("Order")) that Equity Award recipients may remain class members only if they affirmatively elect to do so. More than *two years* after the Order, *seven months* after Judge Torres' affirmance, and after *nine notices* were sent over a 60-day notice period (which was extended at class counsel's request), class counsel asks this Court to "reconsider" the Order and declare that Equity Award recipients who did not respond to the notice are not bound by enforceable agreements to arbitrate and may remain in this class (Letter at 2–3), even though the notice clearly stated that no response was required. The Court should reject this extraordinary request for at least five reasons.

      *First*, class counsel's request comes far too late. Motions for reconsideration must be filed "within fourteen (14) days after the entry of the Court's determination of the original motion." Local Rule 6.3. Courts frequently deny motions for reconsideration as untimely where the delay is far less than the *two years* that have elapsed here.[1] The sole case class counsel cites in support of this extraordinary relief is irrelevant. In *Stern* v. *Highland Lake Homeowners*, the Court rescinded a stipulation between the parties based on "material misrepresentations" made by the plaintiff to procure the agreement, which the Court had entered. 2021 WL 1164718, at *5–6 (S.D.N.Y. Mar. 26, 2021) (Román, J.). Class counsel does not, and cannot, assert any similar conduct here.

      *Second*, this Court correctly held that the arbitration clauses in Goldman Sachs's Equity Award agreements are enforceable contracts. (Order at 34–48, 82.) The Court then carefully considered at length (in 40 pages of its decision) whether relief under Rule 23(d) was

---

[1] *See*, *e.g.*, *Alijaj* v. *Wells Fargo*, 2022 WL 392864, at *7–8 (S.D.N.Y. Feb. 9, 2022) (Broderick, J.) (denying motion for reconsideration filed "more than one year" after the challenged order as "untimely"); *McGraw-Hill Glob. Educ. Holdings, LLC* v. *Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) (Pauley, J.) ("[D]efendant filed its motion for reconsideration . . . twenty-seven days after this Court's [] Order. As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion.") (citations omitted).

The Honorable Robert W. Lehrburger                                                                                          -2-

warranted in light of the process of entering into those valid agreements and concluded that Equity Award recipients should receive "45-days notice of the opportunity to opt out of arbitration" in favor of this class action. (*Id.* at 48–88.) If these recipients did not opt out of arbitration by the end of the notice period, "any claims those Class Members have against Goldman in connection with this action must be brought through individual arbitration[.]" (*Id.* at 88.) Judge Torres affirmed the Order on September 15, 2021, overruling Plaintiffs' objections. (ECF No. 1264 at 2–8; *see* ECF No. 1005.) The Court should not permit individuals who executed enforceable agreements to arbitrate the claims at issue here to reject their obligations by any mechanism other than an affirmative response.[2]

*Third*, there is no basis for class counsel's unsupported claim that "dozens" of Equity Award recipients chose not to respond for fear of "harm to their professional reputation," rather than because of a desire to exit the class. (Letter at 2.) Class counsel makes this assertion based on their cherry-picked and self-serving conversations with class members, while maintaining that the full extent of their conversations is privileged. Counsel may not use the attorney-client privilege "at once [] as a shield and a sword." *Chevron Corp.* v. *Donziger*, 2013 WL 6182744, at *2 (S.D.N.Y. Nov. 21, 2013) (Kaplan, J). The Court should not consider this one-sided story,[3] particularly because there is no evidence of any retaliation against any of the over 3,000 class members who elected to remain in the class during the 2018 class notice period.

*Fourth*, Plaintiffs wrongly claim that "97% of those class members comfortable responding rejected arbitration." (Letter at 2.) The decision by nearly half of Equity Award recipients not to make a selection *is* a response—a choice to opt out of the class. This is clear under the notice that they received, which clearly advises: "*If you do nothing*, you will no longer be in the class and will have to initiate arbitration to pursue your claims." (ECF No. 1303 at 4 (emphasis added).) Recipients were sent no fewer than *nine* notices containing this language or referring to notices that did, and class counsel concedes that, at most, 27 recipients "likely did not receive the notice." (Letter at 1.) Recipients are "sophisticated bankers" and are "well-positioned to understand the implications of contracts presented to them." (Order at 70.) Recipients' choice not to respond affirmatively indicates only that they read the notice and made an election not to participate in the class.

*Fifth*, a new notice process requiring affirmative acceptance of a contractual arbitration obligation—on the heels of a 60-day notice period that included at least nine notices and a phone and LinkedIn campaign by class counsel saying just the opposite—would cause confusion for recipients of the prior notices. These Equity Award recipients—who were assured

---

[2] Any modification to this Court's Order that changes the procedure for rejecting an enforceable arbitration agreement would be a denial of Goldman Sachs's motion to compel arbitration, and Goldman Sachs would have the right to an immediate appeal under 9 U.S.C. § 16.

[3] Class counsel's proposal to make an "offer of proof *in camera*" does not solve the problem, both because the Letter has already waived privilege over all class member conversations by describing their purported substance in a public document and because class counsel does not even offer to provide *all* such communications to the Court—only those class counsel selects. And, in any event, Goldman Sachs should have the right to review those communications because class counsel has elected to put those communications at issue.

The Honorable Robert W. Lehrburger                                                                                      -3-

that they had exited the class by doing nothing—would now be required to take affirmative action to exclude themselves.

        The Court should also deny class counsel's alternative request to override the decisions of 27 Equity Award recipients who counsel speculates "have not received the notice." (Letter at 3.)  That speculation is wholly unreliable; it is based on the fact that these individuals did not open one of the numerous notices that they received or receive a phone call from class counsel, but there were many other notice methods (including LinkedIn outreach from class counsel).  In fact, one of the 27 recipients class counsel claims "may not have received the notice" demonstrably *did* receive notice—because she rejected arbitration during the notice period.[4]  Further, even if the other 26 individuals did not receive any of the nine notices that were sent to their last-known contact information (which seems highly implausible), "each and every class member need not receive actual notice" so long as the parties "acted reasonably in choosing the means likely to inform potential class members."  *Christine Asia Co.* v. *Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (McMahon, J.) ("Notice need not be perfect.") (internal citations omitted).  As the Court is aware, the parties took extraordinary steps here to reach every Equity Award recipient.

        Nor is there any basis to order that an investigator be retained to locate the 26 individuals at Goldman Sachs's expense.  The Firm has gone above and beyond to provide contact information for all 693 Equity Award recipients, including by paying for the notice administrator to identify contact information which Equity Award recipients had not provided to Goldman Sachs, both before the notice program began and again for those notices returned as undeliverable.[5]  If class counsel believed even more should be done, it should have raised this position during the two-month notice period, not after the period ended.

        Finally, the Court should reject class counsel's request to reactivate the notice website days after the conclusion of the notice period (Letter at 1), which would serve no purpose and would only confuse Equity Award recipients, who erroneously might conclude that the deadline to respond has not lapsed, or that class counsel continues to represent them.  At some point, the opt-in period must end.

        The Court should reject class counsel's untimely requests to undo its Order.

                                                  Respectfully,

                                                  */s/ Robert J. Giuffra, Jr.*

                                                  Robert J. Giuffra, Jr.

cc:     All parties of record (by ECF)

---

[4] Goldman Sachs has provided the name of this individual to class counsel.

[5] Class counsel falsely claims Goldman Sachs did not consent to "international skip tracing." (Letter at 3.)  In fact, Goldman Sachs consented to class counsel's retaining a third party to conduct international skip tracing for Equity Award recipients who reside abroad and whom class counsel had been unable to contact, but class counsel apparently chose not to do so.  (Ex. 1.)