UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. CRISTINA CHEN-OSTER; SHANNA
ORLICH; ALLISON GAMBA; and MARY DE
LUIS,

     Plaintiffs,

    -against-

GOLDMAN, SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

     Defendants.

No. 10-cv-6950-AT-RWL

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION .......................................................................................... 1

II.     LEGAL STANDARDS ................................................................................. 4

III.    RECONSIDERATION OF STANDING IS NOT WARRANTED ................................. 5

        A.    Absent Class Members Need Not Submit Evidence of Personal Standing.................5

        B.    The Equal Footing Doctrine Separately Supports Classwide Standing. ...................10

IV.     INTERLOCUTORY REVIEW SHOULD BE DENIED ................................. 13

        A.    Interlocutory Review of a Certification Order that Does Not Change Class
              Status Is Not Allowed................................................................................13

        B.    Section 1292(b) Review of this Court's Decertification Order Is Neither
              Permitted Nor Warranted. .......................................................................15

              1.    Goldman Has Not Identified Any Controlling Questions of Law....................15

              2.    There Is Not Substantial Ground for Difference of Opinion............................17

              3.    Interlocutory Review Would Unnecessarily Delay—Not Materially
                    Advance—this Litigation. .................................................................19

V.      CONCLUSION........................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

### CASES

*Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) ..................................................................... 1

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  426 F. Supp. 2d 125 (S.D.N.Y. 2005) ................................................... 18

*Bellino v. JPMorgan Chase Bank, N.A.*,
  2017 WL 129021 (S.D.N.Y. Jan. 13, 2017) .......................................... 14

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ................................................... 15

*Carpenter v. Boeing Co.*,
  456 F.3d 1183 (10th Cir. 2006) ........................................................ 3, 13

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  574 F. Supp. 2d 369 (S.D.N.Y. 2008) .............................................. 15, 17

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
  465 F. Supp. 3d 416 (S.D.N.Y. 2020), *aff'd*,
  2021 WL 5754295 (2d Cir. Dec. 3, 2021) ............................................... 6

*Cohen v. W. Haven Bd. of Police Comm'rs*,
  638 F.2d 496 (2d Cir. 1980) .................................................................... 7

*Connecticut v. Teal*,
  457 U.S. 440 (1982) ............................................................................... 11

*Consub Del. LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007) ................................................ 5, 15

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d. Cir. 2006) ......................................................... passim

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) .......................................................... 10

*Donahue v. City of Boston*,
  304 F. 3d 110 (1st Cir. 2002) ............................................................... 12

*Educ. Assistance Found. for Descendants of Hungarian Immigrants in
  Performing Arts, Inc. v. United States*,
  2014 WL 12780253 (D.D.C. Nov. 21, 2014) ........................................ 20

*Estevez-Yalcin v. The Children's Vill.*,
  2006 WL 3420833 (S.D.N.Y. Nov. 27, 2006) ....................................... 17

*Ferring B.V. v. Allergan, Inc.*,
  343 F. Supp. 3d 284 (S.D.N.Y. 2018) ................................................... 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Fleischman v. Albany Med. Ctr.*,
   639 F. 3d 28 (2d Cir. 2011) ................................................................. 3, 13, 14, 15

*Flor v. BOT Fin. Corp.*,
   79 F.3d 281 (2d Cir. 1996) ................................................................. 4, 18

*Garber v. Off. of the Com'r of Baseball*,
   120 F. Supp. 3d 334 (S.D.N.Y. 2014) ................................................. 3, 4, 5

*Griggs v. Duke Power Co.*,
   401 U.S. 424 (1971) ............................................................................ 11

*Hart v. Rick's Cabaret Intern., Inc.*,
   73 F. Supp. 3d 382 (S.D.N.Y. 2014) .................................................. passim

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
   2019 WL 3202745 (S.D.N.Y. July 16, 2019) ..................................... 5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014) ................................................ passim

*In re Restasis Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ........................................................... 10

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ............................................................................ 2, 7, 10

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018) ................................................ 18

*Kohen v. Pacific Inv. Management Co.*,
   571 F.3d 672 (7th Cir. 2009) .............................................................. 8, 9, 12

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013) ................................................................. 4

*Lackawanna Chiropractic P.C. v. Tivity Health Support LLC*,
   2021 WL 3827733 (W.D.N.Y. Aug. 27, 2021) .................................. 8, 9, 12

*Madera v. Rabsatt*,
   2017 WL 6729452 (S.D.N.Y. Dec. 11, 2017) ................................... 1, 4

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .............................................................. 6

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. Jacksonville*,
   508 U.S. 656 (1993) ............................................................................ 11

*Nucor Corp. v. Brown*,
   760 F.3d 341 (4th Cir. 2014) .............................................................. 13

## TABLE OF AUTHORITIES
### (continued)

Page

*Ofori v. Central Parking Sys. of New York, Inc.*,
2010 WL 335498 (E.D.N.Y. Jan. 22, 2010) ................................................. 4

*Olean Wholesale Grocery v. Bumble Bee Foods*,
No. 19-56514, Dkt. No. 186-1 (9th Cir. Apr. 8, 2022) ................................ 10, 11, 17

*Richardson Elecs., Ltd. v. Panache Broad. of Pennsylvania, Inc.*,
202 F.3d 957 (7th Cir. 2000) ................................................................ 3, 13, 16

*Robinson v. Blank*,
2013 WL 2156040 (S.D.N.Y. May 20, 2013) .......................................... 7

*Robinson v. Metro-N. Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001) ................................................................ 2, 7

*Ruiz v. Citibank, N.A.*,
2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015), *aff'd,* 687 F. App'x 39 (2d Cir. 2017) ................ 1

*Scott v. Chipotle Mexican Grill, Inc.*,
2017 WL 4326081 (S.D.N.Y. Sept. 25, 2017) ........................................ 14

*Shea v. Kerry*,
796 F.3d 42 (D.C. Cir. 2015) ............................................................... 11

*Stevens v. HMSHost Corp.*,
2015 WL 926007 (E.D.N.Y. Mar. 4, 2015) ............................................ 4

*Stone v. Patchett*,
2009 WL 1544650 (S.D.N.Y. June 3, 2009) .......................................... 15, 16

*Texas v. Lesage*,
528 U.S. 18 (1999) .............................................................................. 2, 11, 12

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) ....................................................................... 7, 8, 9

*Tucker v. Arthur Andersen & Co.*,
67 F.R.D. 468 (S.D.N.Y. 1975) ........................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................... 10, 19

*United States v. City of New York*,
276 F.R.D. 22 (E.D.N.Y. 2011) ........................................................... 7

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
247 F.3d 1262 (11th Cir. 2001) ........................................................... 12

*Xuedan Wang v. Hearst Corp.*,
2013 WL 3326650 (S.D.N.Y. June 27, 2013) ........................................ 14

2408327.4

## TABLE OF AUTHORITIES
### (continued)

Page

**STATUTES**

28 U.S.C. § 1292(b) ................................................................................................. passim

**RULES**

Fed. R. Civ. P. 23(f) ................................................................................................. passim

**TREATISES**

1 Newberg on Class Actions § 2:3 .......................................................................... 6, 10

1 Newberg on Class Actions § 3:6 .............................................................................. 9

**OTHER AUTHORITIES**

Joshua P. Davis et. al., *The Puzzle of Class Actions With Uninjured Members*,
   82 Geo. Wash. L. Rev. 858 (2014) .......................................................................... 6

## I.    INTRODUCTION

Goldman, Sachs & Co. and the Goldman Sachs Group ("Goldman") moves this Court to reconsider the denial of Goldman's motion for decertification, or in the alterative, to certify that denial for interlocutory review.  Dkt. No. 1337 ("Order").  Both requests should be denied.

First, there is no reason for the Court to reconsider the Order.  As the Court has observed, "[r]econsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Madera v. Rabsatt*, 2017 WL 6729452, at *1 (S.D.N.Y. Dec. 11, 2017) (Torres, J.) (quoting *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).  A second— indeed, fifth—bite at the class certification apple is exactly what Goldman seeks.[1]

As to class member standing, the Court correctly held that *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d. Cir. 2006), which is binding authority in this Circuit, forecloses Goldman's argument.  Order at 37.  Yet Goldman continues to conflate absent class member standing with the "distinct question" of whether class members can recover individual damages should plaintiffs prevail on liability.  *See id.* (rejecting this very argument).  Goldman's position is nonsensical:  it asserts that before a court may certify a class, every single class member must demonstrate success on the merits.  That would require an impermissible "fail-safe" class,[2]

---

[1] Goldman first challenged the Court's class certification order through a request for Federal Rule of Civil Procedure ("Rule") 23(f) review, which the Second Circuit denied.  No. 18-1075, Dkt. No. 54 (2d Cir. Sept. 4, 2018).  Goldman then sought *en banc* review, which the Second Circuit also denied.  *Id.*, Dkt. No. 66 (2d Cir. Oct. 4, 2018).  Goldman attacked the order a third time through its motion for decertification, which this Court denied.  Order at 45.  The present motion for reconsideration and request for interlocutory review represent Goldman's fourth and fifth attempts to escape this Court's class certification analysis and ruling, respectively.

[2] A fail-safe class is a class defined not by class members' characteristics, but by a defendant's liability.  Among other problems, fail-safe classes destroy the very efficiencies the class action provides by requiring each class member to litigate individual claims before allowing the case to proceed.  *Ruiz v. Citibank, N.A.*, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015), *aff'd,* 687 F. App'x 39 (2d Cir. 2017).  *See also, generally*, 1 Newberg on Class Actions § 3:6.

eliminate the efficiencies of a class action, and erase the two-phase process the Supreme Court set forth specifically for Title VII pattern or practice cases.[3]  Courts have consistently rejected Goldman's position, finding that the potential inclusion of "uninjured class members" does not preclude class certification but should instead be resolved in the remedial phase.  Goldman presents no compelling reason, let alone a clear error, to justify reconsideration of the Court's rejection of this argument.

Goldman is also wrong that the Court erred in citing the equal footing doctrine as a basis to reject Goldman's standing argument.  *Texas v. Lesage*, 528 U.S. 18 (1999), is irrelevant.  As an initial matter, Plaintiffs here do seek injunctive relief, so whether *Lesage* tied the equal footing doctrine to that remedy (which is disputed) is ultimately immaterial.  Moreover, *Lesage* was a merits decision on a motion for summary judgment, not a standing decision (and does not even mention standing).  Finally, *Lesage* and its progeny are single plaintiff cases that say literally nothing about what evidentiary showing is required from absent class members at class certification.  That question, as the Court already found, has been squarely answered in this Circuit.  *See* Order at 38 (citing *Denney*, 443 F.3d at 263).  That Goldman does not like the answer is not grounds for reconsideration.

Second, Goldman's attempt to inject unnecessary delay into this case through a request for interlocutory review should be denied.  There is a mechanism for non-final appellate review of class certification decisions:  Rule 23(f), not 28 U.S.C. § 1292(b).  The Second Circuit already considered *and denied* Goldman's Rule 23(f) request, leaving this Court's certification order intact.  Goldman cannot seek another round of review under Rule 23(f) because the Court's

---

[3] *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) (setting forth two stages for trial of disparate treatment claims: liability, followed by a remedial phase to determine individual damages).  *Accord Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001).

recent Order did not alter the status of class certification. *See Fleischman v. Albany Med. Ctr.*,
639 F. 3d 28, 32 (2d Cir. 2011) (holding that "[a]n order that leaves class-action status
unchanged from what was determined by a prior order is not an order 'granting or denying class-
action certification'" and is therefore not appealable) (quoting *Carpenter v. Boeing Co.,* 456 F.3d
1183, 1191 (10th Cir. 2006)).  Goldman's attempted end-run around Rule 23(f), through section
1292(b), is improper and must be rejected. *See Richardson Elecs., Ltd. v. Panache Broad. of
Pennsylvania, Inc.*, 202 F.3d 957, 959 (7th Cir. 2000) ("[D]istrict judges should not, and we shall
not, authorize appeal under 28 U.S.C. § 1292(b) when appeal might lie under Rule 23(f).").

Even if section 1292(b) were available, this is not one of the "extraordinary cases"
warranting interlocutory review because Goldman cannot meet its burden of proving a single
one—let alone all three—of the section 1292(b) requirements. *Garber v. Off. of the Com'r of
Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). *First*, neither issue Goldman wants to
appeal (commonality and standing) presents a "controlling question of law," because the Second
Circuit would not be able to decide either "without having to study the record." *In re Facebook,
Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014).  Rather, both
issues involve resolution of fact-intensive arguments:  as to commonality, regarding the form and
implementation of Goldman's uniform personnel policies; and, as to standing, regarding
Goldman's challenge to Plaintiffs' statistical analyses, which the Court determined were
"methodologically sound."  Order at 19. *Second*, there is not a "substantial ground for difference
of opinion" on either issue.  28 U.S.C. § 1292(b).  As to commonality, the Second Circuit has
already heard and rejected Goldman's appellate arguments; and, as to standing, Goldman
recycles arguments that run contrary to black-letter law permitting the inclusion of uninjured
class members at class certification and the use of regression models showing average effects as

common evidence of a *prima facie* case of discrimination. *Third*, another trip to the Second

Circuit certainly would *not* "materially advance the ultimate termination of the litigation." *Id*.

There is no reason to delay the trial of this case—now in its twelfth year—with *another*

unnecessary attempt at appellate review of class certification. Discovery is complete and

summary judgment is decided. This case is ready for trial, and should promptly be tried.

## II.   LEGAL STANDARDS

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of

finality and conservation of scarce judicial resources." *Madera*, 2017 WL 6729452, at *1. "A

motion for reconsideration should be granted only when the [movant] identifies an intervening

change of controlling law, the availability of new evidence, or the need to correct a *clear error* or

prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,

729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted) (emphasis added).

Similarly, "[i]nterlocutory appeals are presumptively disfavored" and are "appropriate

only 'in extraordinary cases.'" *Garber*, 120 F. Supp. 3d at 337. *See also Hart v. Rick's Cabaret

Intern., Inc.*, 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014) ("[C]ertification is appropriate only when

a case presents exceptional circumstances."). Indeed, "[t]he Second Circuit has repeatedly

emphasized that interlocutory appeals are an exception to the policy against piecemeal appellate

review, and that certification is warranted only in exceptional cases." *Stevens v. HMSHost

Corp.*, 2015 WL 926007, at *1 (E.D.N.Y. Mar. 4, 2015) (citing *Flor v. BOT Fin. Corp.*, 79 F.3d

281, 284 (2d Cir. 1996) (collecting cases)). The Second Circuit has also "urged the district

courts to exercise great care in making a § 1292(b) certification because § 1292(b) is a 'rare

exception to the final judgment rule.'" *Ofori v. Central Parking Sys. of New York, Inc.*, 2010

WL 335498, at *2 (E.D.N.Y. Jan. 22, 2010).

4

Section 1292(b) is "not intended as a vehicle to provide early review of difficult rulings in hard cases." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007).  Rather, a court may grant interlocutory review only where all three of the following requirements are met:  (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The party seeking interlocutory review "bears the burden of demonstrating that all three prongs of Section 1292(b) are met." *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745, at *1 (S.D.N.Y. July 16, 2019) (alterations omitted).  This assessment "lies squarely within the discretion of the district court," and "even when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *Garber*, 120 F. Supp. 3d at 337.

## III.    RECONSIDERATION OF STANDING IS NOT WARRANTED

The Court's rejection of Goldman's standing argument was rooted in a long line of cases holding that the potential inclusion of "uninjured class members" does not preclude class certification, but instead should be resolved in the remedial phase of the case.  The Court's citation to the equal footing doctrine provided an independent basis for rejecting Goldman's argument.  In order to prevail, Goldman would have to show that both rationales for the Court's decision were wrong, but Goldman presents no compelling reason, let alone a clear error, to justify reconsideration of either aspect of the Court's decision.

### A.    Absent Class Members Need Not Submit Evidence of Personal Standing.

*Denney* remains the law of this Circuit, and squarely forecloses Goldman's call for individualized inquiries into absent class member standing:  "passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is

properly before the court, not whether represented parties or absent class members are properly before the court." *Denney*, 443 F.3d at 263. *See also City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 443 (S.D.N.Y. 2020), a*ff'd*, 2021 WL 5754295 (2d Cir. Dec. 3, 2021) ("Where, as here, a plaintiff sues on behalf of a putative class, the standing inquiry looks only to the plaintiff's own alleged injuries, and not to those of the proposed class members."); 1 Newberg on Class Actions § 2:3 ("If a class representative has standing, the case is justiciable and the proponent of the class suit need not demonstrate that each class member has standing.") (citing cases from eleven circuits so holding).[4]  Goldman's argument that every single class member must demonstrate evidence of financial injury in order for the case to be certified violates this well-settled, black-letter law.  Order at 37.

The class must also be "defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.  In other words, the class must include only individuals who *could* potentially have viable claims. *See* Joshua P. Davis et. al., *The Puzzle of Class Actions With Uninjured Members*, 82 Geo. Wash. L. Rev. 858, 866 (2014) ("Essentially, *Denney* makes clear that unnamed plaintiffs have standing unless the class is defined in a way to include members who could not possibly recover."); *cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012) (citing *Denney* and holding that members of a class in a consumer protection case would have Article III standing if the class were defined in a way to include only those who were exposed to the misleading advertisements).  Put another way, absent class members lack standing only if they *could not have been* injured, but there is no need for them to affirmatively show that they *were* injured in order for the case to be certified. *Accord*

---

[4] In class actions, only the named plaintiffs must plead individual allegations sufficient for standing. *Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984). Here, Goldman lost its challenge to the named plaintiffs' standing, Dkt Nos. 479 & 539, and does not contest it now.  That should end the inquiry.

2408327.4

*TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208 n.4 (2021) (finding that absent class members whose credit reports were never published to third parties could not possibly have been injured, and declining to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class") (emphasis in original).

Here, the class *is* "defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.  As this Court correctly held, *all* class members have potentially viable claims that Goldman's challenged practices cause a disparate impact on women and that Goldman's knowledge of the same subjected them to disparate treatment.  Order at 37-38. Specifically:  if Goldman is found liable at Phase I of trial, class members enter the remedial Phase II with a presumption of entitlement to make-whole relief (both monetary and equitable), which Goldman may rebut.  *Robinson*, 267 F.3d at 161; *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 502 (2d Cir. 1980); *United States v. City of New York*, 276 F.R.D. 22, 34 (E.D.N.Y. 2011).  In that remedial phase, some class members may be found not to have suffered monetary injury, in which case they will not recover monetary damages.  This is the long-established Title VII framework defined by the Supreme Court in *Teamsters*.[5]

The Court was therefore correct in holding that the potential inclusion of "uninjured" class members is a merits issue, not a standing issue.  *See* Order at 37 ("Defendants appear to conflate these two separate inquiries.").[6]  Other courts have addressed this same argument and

---

[5] *See also Robinson v. Blank*, 2013 WL 2156040, at *5 (S.D.N.Y. May 20, 2013) (noting that Title VII provides "broad equitable powers . . . to provide victims . . . with complete relief") (citation and internal quotations omitted).

[6] This is true for *all class members*, including the eight percent Goldman claims received a top manager quartile in all years.  Dkt. No. 1347 ("Br.") at 3, 7; Dkt. No. 1236-57, ¶ 288.  In any event, as set forth in Plaintiffs' decertification opposition, women who receive top scores still earn less and are promoted less often than their male counterparts.  Dkt. No. 1267 at 10-11. Separately, Goldman's argument regarding the inclusion of "uninjured" private wealth advisors (PWAs) is foreclosed by its own conduct.  Br. at 3, 7.  Goldman sought to exclude PWAs on the basis of an arbitration term in the PWA agreement.  Judge Lehrburger granted this request in

2408327.4

rejected it for this same reason—as recently as last year.  For example, in *Lackawanna Chiropractic P.C. v. Tivity Health Support LLC*, decided after *TransUnion*, a court was faced with a motion to approve a settlement class consisting of all persons who had received a fax from Tivity Health recruiting health providers to join the Tivity network.  2021 WL 3827733, at *1 (W.D.N.Y. Aug. 27, 2021).  The magistrate judge recommended denying class certification because some members of the class might have consented to receive such faxes from Tivity, and thus were not injured.  *Id.* at *2.  The district court, however, held that "this reasoning conflates two overlapping and related—but distinct—issues:  standing and the merits of the case."  *Id.*  The court reasoned that consent was a defense that Tivity would be entitled to raise if the case were litigated, and plaintiff could rebut it.  *Id.*  Thus, the consent defense did not go to whether plaintiff adequately alleged class injury, but to whether certain class members had a valid claim on the merits.  *Id.* at *3.  The court went on:

> [T]o find that the class has Article III standing in connection with the proposed settlement, the Court need not weigh in on that dispute. The fact that Tivity might potentially succeed in litigation against some proposed class members . . . does not mean that those members of the proposed settlement class lack standing.

*Id.*  Finally, the court affirmed that "*TransUnion* does not suggest otherwise."  *Id.* at *5.

Similarly, in *Kohen v. Pacific Inv. Management Co.*, the certified class consisted of all persons who purchased a short position in ten-year treasury notes during a specified date range. 571 F.3d 672, 674 (7th Cir. 2009).  At the Seventh Circuit, the defendant argued that class certification was improper because the class included absent class members who lacked standing

---

March 2020 (Dkt. No. 983), which this Court affirmed in September 2021 (Dkt. No. 1264).  In January 2022, Judge Lehrburger approved a notice, sent in February, informing all PWAs that they are no longer class members.  Dkt. No. 1317.  Goldman's "uninjured PWA" argument is therefore moot.

because they did not actually lose money. *Id*. at 676.[7]  Judge Posner rejected the argument that district courts must determine which class members were injured in order to certify a class, because "putting the cart before the horse in that way would vitiate the economies of class action procedure; in effect the trial would precede the certification." *Id*.  Citing *Denney* with approval, Judge Posner further explained that the class definition must not "sweep[] within it persons who *could not have been* injured by the defendant's conduct," but "a class will often include persons who *have not been* injured by the defendant's conduct . . . [s]uch a possibility or indeed inevitability does not preclude class certification." *Id*. at 677 (emphasis added).  Thus, before and after *TransUnion*, the analysis has remained consistent.

As this Court therefore correctly recognized, Goldman's argument that Plaintiffs have not proven that each individual class member was damaged—because Dr. Farber's regression model is proof of average effects, not individual damages—mistakenly conflates standing with a merits issue for the remedial phase, just as in *Lackawanna* and *Kohen*.  Order at 37.[8]  Dr. Farber's model is common evidence from which the trier of fact may find Goldman liable for disparate impact and disparate treatment.  In fact, if Goldman were correct that the Court may not certify a class absent evidence that every single class member suffered monetary harm from the challenged policies, class certification would become a trial on the merits for every class member, destroying the very purpose of the class action mechanism.  Rather, the inclusion of some uninjured class members "is generally unproblematic as the non-injured parties can just be

---

[7] For example, some members of the class may have hedged their bets by purchasing both short and long positions and may have ultimately made more money on the long positions than they lost on the short positions.  *Kohen*, 571 F.3d at 676.

[8] Nor would it help to change the class definition such that it included only those class members who, in fact, suffered monetary injury from discrimination, as that would amount to an impermissible "fail-safe" class.  *See supra* n.2.

sorted out at the remedies phase of the suit."  1 Newberg on Class Actions § 2:3 (citing cases).[9]

As this Court noted, a Title VII class action under the *Teamsters* framework is ideally suited for

this purpose due to the bifurcation between liability and remedial phases where "Phase II shall

address issues affecting individual class members."  Order at 13, n.9.[10]  *See also Tyson Foods,*

*Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016) (affirming certification of class under FLSA that

contained over 200 uninjured members and noting that damages may be apportioned in remedial

phase so that only injured members recover).  To accept Goldman's argument would be to erase

Phase II—and *Teamsters* and *Tyson*, which are binding Supreme Court precedent—entirely.

In sum, the Court correctly held that Goldman's argument conflates standing with

merits, and that the class here is defined in such a way that all members have standing because

all were subject to allegedly discriminatory policies and all have *potentially* viable claims.  Order

at 37-38.  Goldman presents no reason for the Court to reconsider this decision.

### B.    The Equal Footing Doctrine Separately Supports Classwide Standing.

The Court's analysis of the equal footing doctrine likewise provides no basis for

reconsideration.  The Court simply cited good equal protection law that offers an *alternative* way

---

[9] *See also In re Restasis Antitrust Litig.*, 335 F.R.D. 1, 16 (E.D.N.Y. 2020) ("The Supreme Court and the Second Circuit have recognized that the existence of uninjured plaintiffs does not bar class certification."); *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 120 (S.D.N.Y. 2015) (same); *Olean Wholesale Grocery v. Bumble Bee Foods*, No. 19-56514, Dkt. No. 186-1 ("*Olean* Order") (9th Cir. Apr. 8, 2022) at 30 (holding that "a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial" and rejecting the argument that "Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members").

[10] Goldman is wrong, again, that this Title VII case is "highly unusual" under the *Teamster's* framework because there is no Rule 23(b)(2) class.  Br. at 13.  Phase I is not "typically" for litigating entitlement to injunctive relief.  It is for litigating liability.  As Plaintiffs previously explained, *Teamsters* set forth the governing framework for trial of disparate treatment claims, regardless of the type of relief sought—damages, injunction, or (like here) both.  Dkt. No. 1267 (Pl. Opp. to Decert.) at 24-26.  In *Teamsters*, the government sought both types of relief, and the opinion explicitly addresses what is required when class members are entitled to make-whole relief (*i.e.*, damages) after the liability phase of the case.  431 U.S. at 361.

of thinking about whether the class is "defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264. *Lesage*—a single plaintiff case decided on the merits, and not on standing—does not hold otherwise.

As the Court recognized, in the equal protection context a plaintiff has standing to challenge a discriminatory policy if it "prevented [the plaintiff] from competing on an equal footing." Order at 38. Importantly, the plaintiff need not show that she "would have obtained a benefit but for the barrier." *Id*. (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666-67 (1993)). *See also Connecticut v. Teal*, 457 U.S. 440, 450 (1982) ("In considering claims of disparate impact under [Title VII], this Court has consistently focused on employment and promotion requirements that create a discriminatory bar to *opportunities*."); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) ("What is required by [Title VII] is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."); *see also Shea v. Kerry*, 796 F.3d 42, 50 (D.C. Cir. 2015) ("In the context of an employment discrimination claim, a plaintiff may claim an injury in fact from the purported denial of the ability to compete on an equal footing against other candidates for a job.").

Goldman now argues that the Court was incorrect because under *Lesage*, the equal footing doctrine cannot confer standing in cases seeking only monetary damages. This is wrong for at least three reasons. First, Goldman's interpretation of *Lesage* is irrelevant because Plaintiffs here *do* seek injunctive relief, on behalf of themselves[11] and the class, as to all

---

[11] Goldman conveniently overlooks the fact that the Court already held that the named plaintiffs have standing to seek injunctive relief. Dkt. No. 479 (Order Den. Mot. to Dismiss) at 5-11. That should end the inquiry because "the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." *Denney*, 443 F.3d at 264.

2408327.4

challenged practices.  *See* Dkt. No. 1267 (Pl. Opp. to Decert.) at 24-26 (explaining that injunctive relief is an available remedy under Title VII in a Rule 23(b)(3) case, and that the Court may enjoin the 360 review and manager quartile even though it did not injure the class in certain years because Goldman continues to use the practices).[12]  Second, even if this were a damages-only case, *Lesage* does not preclude the application of the equal footing doctrine to the standing analysis here.  In fact, *Lesage* does not even address "standing" at all; it was a merits decision on summary judgment—the word "standing" does not appear even once in the opinion.  The lower courts applying *Lesage* have therefore disagreed as to whether it means that the denial of equal footing is not a cognizable injury in a damages case.  *Compare Donahue v. City of Boston*, 304 F. 3d 110 (1st Cir. 2002) *with Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262 (11th Cir. 2001).  Third, and perhaps most importantly, *Lesage* is a single plaintiff case that has no bearing on the standing of absent class members.  *Lesage* and its progeny addressed solely the claims of *individual plaintiffs*, not those of absent class members.  *Lesage*, 528 U.S. at 19; *Donahue*, 304 F.3d at 119.  By contrast, as the authorities set forth in Section III.A above make crystal clear, absent class members are *not* required to prove that they will win on the merits before a class can be certified.

Accordingly, the Court was correct in finding that the class here has standing.  All class members have potentially viable claims because they were all subjected to the allegedly unlawful practices, *and that is all that the law requires*.  *Denney*, 443 F.3d at 264; *Lackawanna*, 2021 WL 3827733 at *3; *Kohen*, 571 F.3d at 677.  The Court need not rely on the equal footing doctrine to reach this conclusion, though ample precedent supports its application in Title VII cases.[13]

---

[12]  In denying decertification, the Court also already held that Goldman is "incorrect" that Plaintiffs "abandoned" injunctive relief.  Order at 37 n.23.

[13] Highlighting the flimsiness of Goldman's request for reconsideration, even if the Court credited Goldman's arguments regarding *Lesage*, this would not require reconsideration of the

## IV.   INTERLOCUTORY REVIEW SHOULD BE DENIED

Goldman already sought and was denied interlocutory review of this Court's class certification order through the appropriate channel:  Rule 23(f).  Goldman is thus foreclosed from further appellate review of class certification.  To maneuver around this roadblock, Goldman repackages its attack on the Court's certification analysis as a request under section 1292(b).  But section 1292(b) is not an available vehicle for review of class certification decisions, and even if it were, Goldman does not meet a single one of the section 1292(b) requirements.  Goldman's attempt to further delay this case through *another* unwarranted appellate review of class certification should therefore be denied.

### A.   Interlocutory Review of a Certification Order that Does Not Change Class Status Is Not Allowed.

Following the Court's class certification order, Goldman sought and was denied interlocutory review via Rule 23(f).  *See* No. 18-1075, Dkt. No. 54 (2d Cir. Sept. 4, 2018) (finding after oral argument that "the Rule 23(f) petition for leave to appeal is DENIED because an immediate appeal is unwarranted"), *rehr'g en banc denied*, Dkt. No. 66 (2d Cir. Oct. 4, 2018).

There is no basis under either Rule 23(f) or section 1292(b) for *another* appellate review of this Court's class certification analysis.  Because the Order was not "an order granting or denying class-action certification," another appeal under Rule 23(f) is not permitted. *Fleischman*, 639 F. 3d at 30-32; *Carpenter*, 456 F.3d at 1191 (same); *Nucor Corp. v. Brown*, 760 F.3d 341, 343 (4th Cir. 2014) (same).  Goldman is also foreclosed from further appellate review under section 1292(b) instead of Rule 23(f).  *See Richardson*, 202 F.3d at 959 ("[W]hen a class-certification order is an arguable candidate for a Rule 23(f) appeal, the appellants may not use

---

entire Order because the remainder of the Court's standing analysis clearly follows *Denney* and is not implicated by Goldman's mischaracterization of *Lesage*.  To be clear, however, Plaintiffs maintain there is no error in the Order.

section 1292(b) to circumvent . . . Rule 23(f).").  Goldman's *fifth* and improper attempt to undo

the Court's class certification decision therefore should not be entertained.

Goldman's suggestion that courts "routinely certify" class certification issues under

section 1292(b) is not supported by any of the cases Goldman cites.  Br. at 15.  Two of the

cases—*Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284 (S.D.N.Y. 2018) and *Bellino v.*

*JPMorgan Chase Bank, N.A.*, 2017 WL 129021 (S.D.N.Y. Jan. 13, 2017)—were not class action

decisions at all.  And the third—*Xuedan Wang v. Hearst Corp.*, 2013 WL 3326650 (S.D.N.Y.

June 27, 2013)—involved a FLSA collective, which is not a Rule 23 action and therefore not

appealable under Rule 23(f).[14]  What Goldman is attempting here, in contrast, is precisely what

the Second Circuit has cautioned that Rule 23(f) is designed to prevent:  "disruption and delay"

to lower court proceedings.  *Fleischman*, 639 F.3d at 31.  Indeed, while in *Fleischman* the

Second Circuit rejected an attempt to bring "an interlocutory appeal more than *eighteen months*

after the original decision by the district court to certify the class," here Goldman attempts more

than *forty-eight months* after this Court's original decision to certify the class.  *Id.* (emphasis in

---

[14] *See Scott v. Chipotle Mexican Grill, Inc.*, 2017 WL 4326081, at *1 (S.D.N.Y. Sept. 25, 2017)
(permitting section 1292(b) appeal not of the court's Rule 23 ruling, but of the court's FLSA
ruling, because "the Second Circuit's review under Rule 23(f) would not likely encompass the
portion of this Court's decision decertifying the Section 216(b) [FLSA] collective action").
Indeed, Goldman cites *Scott* elsewhere in its brief for the proposition that "class certification
decisions have the potential to materially advance the ultimate termination of the litigation," Br.
at 18, but ignores that the *Scott* plaintiffs correctly sought review of the court's Rule 23 decision
*under Rule 23(f)*, which the Second Circuit accepted.  *Scott*, 2017 WL 4326081, at *1.  However,
the district court had to *separately* consider whether to certify the court's decertification of
plaintiffs' FLSA collective under section 1292(b), because that ruling was not subject to Rule
23(f) review.  *Id.*  Here, however, there is no FLSA cause of action and no separate
decertification decision to consider.

original).  Permitting this would, in the Second Circuit's own words, "leave Rule 23(f)'s deadline toothless." *Id.*[15]

Interlocutory review of an order denying decertification would therefore be appropriate *only if* that order changed the "class-action status" of a case.  *Fleischman*, 639 F.3d at 32. Because this Court's decertification Order did not change the class action status of this case, the Order cannot be the subject of interlocutory review.[16]

**B.** **Section 1292(b) Review of this Court's Decertification Order Is Neither Permitted Nor Warranted.**

Even if 1292(b) review were permitted here, Goldman's request fails each of the statute's requirements and should therefore be denied for this additional reason.

**1.** **Goldman Has Not Identified Any Controlling Questions of Law.**

A "controlling" question for the purposes of section 1292(b) is one that is "pure" and one that the appellate court can decide "quickly and cleanly without having to study the record." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (internal quotation marks omitted).  *See also Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (same); *In re Facebook*, 986 F. Supp. 2d at 536 (same); *Rick's Cabaret*, 73 F. Supp. 3d at 393 (same); *Consub*, 476 F. Supp. at 309 (same); *Stone v. Patchett*, 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) (same).[17]   Both issues Goldman identifies—involving

---

[15] The only other authority Goldman cites in support of its delayed attempt at interlocutory review—*Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468 (S.D.N.Y. 1975)—predated Rule 23(f) by more than twenty years.

[16] Though the Court granted summary judgment as to disparate impact from the 360 review and quartiling processes after 2015, Order at 57, the Order was not one either "granting or denying class certification," and is therefore not subject to non-final review.  *Fleischman*, 639 F.3d at 32. The Order also did not change the class definition in any way.  *Id.*

[17] Issues that "would require the Court of Appeals to consider mixed questions of law and fact" are therefore not certifiable under section 1292(b).  *Century Pac.*, 574 F. Supp. 2d at 371.  *See*

2408327.4

this Court's commonality and standing analyses—fail this test because both would require the Second Circuit to review the evidentiary record in this case.

As to commonality, the decision whether "individual reviewers exercised significant discretion in conducting all three challenged evaluation processes," Br. at 4, is inherently factual in nature. The Court's commonality ruling is a classic example of applying the law (Rule 23) to the facts (Goldman's challenged personnel policies). Indeed, the parties have dedicated hundreds of pages of briefing, and many hundreds of additional pages in exhibits, deposition testimony, and expert analyses to just this question over the last eight years.[18] The Second Circuit would have to study all of this to determine whether this Court was correct in concluding—not once, but twice—that "certification was warranted because Plaintiffs had demonstrated that Defendants had employed a 'common mode of exercising discretion,' through the three processes." Order at 4 (quoting Class Cert. Order at 24-28, 41). *Exactly this question* has been held to be inappropriate for interlocutory review outside of Rule 23(f). *See Richardson*, 202 F.3d at 958 (holding that the Rule 23 determination of whether common questions predominate is "rather too fact-specific to be suitable for a 1292(b) appeal"); *cf. supra*, § IV.A.

As to standing, Goldman challenges the analysis of Plaintiffs' expert economist Dr. Farber, including with repeated (and misleading) citations to Dr. Farber's deposition testimony. Br. at 2, 3, 4, 7, 13, 16. Goldman makes clear that its standing argument is made "in light of Dr. Farber's testimony," *id*. at 3, which Goldman mischaracterizes as a confession that certain class members were not injured, *id*. at 2, 13. And Goldman attempts to buttress this attack with citations to its own expert's analyses. *Id*. at 3, 7. This Court considered each of these

---

also *Capitol Records*, 972 F. Supp. 2d at 551 (same); *In re Facebook*, 986 F. Supp. 2d at 536 (same); *Rick's Cabaret*, 73 F. Supp. 3d at 393 (same); *Stone*, 2009 WL 1544650, at *2 (same).

[18] Dkt. Nos. 247, 264, 310 (Class Cert.); Dkt. Nos. 502, 511, 513, 514, 522, 525 (Objs. to Class Cert. R&R); Dkt. Nos. 1235, 1267, 1307 (Decert.).

16

arguments—as well as the dozens of pages of briefing and hundreds of pages of expert analyses that they sit atop—and concluded that Dr. Farber had a "valid, reasonable explanation for his modeling decision," Order at 14, therefore accepting his "multiple regression analyses that looked at the way [the challenged] policies affected compensation by gender" as common proof of disparate impact, *id*. at 13.  That determination was not one of "pure law," *Century*, 574 F. Supp. at 372, but in fact involved a great deal of factual analysis that would be afforded great deference.[19]  It is therefore "not appropriate for interlocutory review." *Id*.  Moreover, interlocutory review of this Court's standing decision is inappropriate for the additional reason that the Court cited not one, but two bases—*Denney* and the equal footing doctrine—for rejecting Goldman's argument.  *See Rick's Cabaret*, 73 F. Supp. 3d at 393 ("A question is not controlling if Plaintiffs have independent and alternative grounds for pursuing their claims.") (internal quotation marks omitted).

Because review of this Court's commonality and standing rulings would involve "application of the appropriate law to the relevant facts," neither issue is "suitable for certification under § 1292(b)."  *In re Facebook*, 986 F. Supp. 2d at 536.

## 2.  There Is Not Substantial Ground for Difference of Opinion.

Goldman likewise fails to identify a "substantial difference of opinion as to any question of law" raised in its application.  *Estevez-Yalcin v. The Children's Vill.*, 2006 WL 3420833, at *4 (S.D.N.Y. Nov. 27, 2006).  Rather, Goldman is "merely quibbling with this Court's application of the facts to the law, not with the underlying legal rule, which is necessary if this Court is to certify an immediate appeal." *Id*.  Instead, Goldman must either identify "conflicting authority

---

[19] *See Olean* Order at 18-19 ("[W]e review the district court's determination that a statistical regression model, along with other expert evidence, is capable of showing class-wide impact, thus satisfying one of the prerequisites of Rule 23(b)(3) of the Federal Rules of Civil Procedure, for an abuse of discretion.").

on the issue," or demonstrate that "the issue is particularly difficult and of first impression for the Second Circuit." *In re Facebook*, 986 F. Supp. 2d at 539.  Notably, while the legal principles are settled here, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Rick's Cabaret*, 73 F. Supp. 3d at 396 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

As to commonality, Goldman has been quibbling with the Court's analysis for more than four years.  Goldman first objected that the Court misapplied *Wal-Mart* in April of 2018, and has since repeated that argument multiple times—including unsuccessfully before the Second Circuit.[20]  The only "difference of opinion" here is between Goldman and the Court.  Because the "mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion," Goldman's request must be rejected.  *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 426 F. Supp. 2d 125, 129 (S.D.N.Y. 2005).

As to standing, this argument fails for the same reasons reconsideration is not warranted. The legal principles are settled, and the Court applied them correctly to the facts of this case. As discussed, the Second Circuit has definitively held that absent class members need not make an individual showing of injury at class certification, *Denney*, 443 F.3d at 263, and there is

---

[20] *Compare* No. 18-1075, Dkt. No. 1 (2d Cir. Apr. 13, 2018) at 11 ("*Wal-Mart* bars the District Court's ruling that Goldman Sachs' subjective and decentralized evaluation processes constituted a 'common mode' of exercising discretion.") *with* Br. at 4 ("[I]ndividual managers and cross-ruffers conducted highly discretionary reviews of employees in vastly different jobs, thus precluding certification under *Wal-Mart*."); *compare* Dkt. No. 1235 (Mot. for Decert., July 23, 2021) at 28 ("As Judge Schofeld explained in *Kassman v. KPMG LLP*, 'relative freedom . . . extended to local supervisors' in the application of employment processes and a 'lack of rigid criteria to channel [their] discretion . . . all dictate the conclusion that there was no common mode of exercising discretion that would warrant class certification after [*Wal-Mart*].'") *with* Br. at 19 ("In *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 280-81 (S.D.N.Y. 2018) (Schofield, J.), a court in this District denied class certification to a class of employees with diverse jobs based on the 'relative freedom . . . extended to local supervisors' and the 'lack of rigid criteria to channel [their discretion].'").

*universal agreement* not just in the Second Circuit, but nationwide, that the *possibility* of

uninjured class members is not a basis to deny class certification, *Tyson*, 577 U.S. at 461.  *See*

*also supra* Section III.A (collecting other cases and authorities).  Thus, Goldman fails to identify

the requisite conflicting authority or particularly difficult and novel issue.

### 3.     Interlocutory Review Would Unnecessarily Delay—Not Materially Advance—this Litigation.

Even if Goldman were able to identify a controlling question for which there is

substantial ground for difference of opinion, Goldman fails the third requirement of interlocutory

review, that immediate appeal would "materially advance the ultimate termination of the

litigation."  28 U.S.C. § 1292(b).  To satisfy this factor, Goldman must demonstrate that

interlocutory review "promises to advance the time for trial or to shorten the time required for

trial."  *In re Facebook*, 986 F. Supp. 2d at 531.  Without question, Goldman cannot.

Goldman is transparent about its aim:  to avoid "prepar[ing] for and conduct[ing]

extensive and costly trial proceedings in this case."  Br. at 1.  But the fact that a party does not

*want* to try a case is no basis to delay that trial.  And even if Goldman were successful in

narrowing the class before trial to include only women who were monetarily damaged by the

policies (*i.e.*, in advance of the remedial phase, instead of through the remedial phase), this

would have *no effect* on the liability phase of trial.  In other words, with summary judgment now

decided, trial is happening in this case regardless of whether it is for the named plaintiffs, the

certified class, or some improper fail-safe class, and any version of that liability trial will rely

upon the same evidence.  *See Educ. Assistance Found. for Descendants of Hungarian*

*Immigrants in Performing Arts, Inc. v. United States*, 2014 WL 12780253, at *2 (D.D.C. Nov.

21, 2014) ("[C]ertification is . . . inappropriate, 'where, as here, regardless of the outcome of

interlocutory appeal, trial of the case would still have to occur to reach the litigation's ultimate

termination.'") (citation omitted).  The only thing an interlocutory appeal would accomplish is further delay of justice.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny both Goldman's motion for reconsideration and Goldman's request for interlocutory review.


Dated:  April 27, 2022                    By:
                                       */s/ Anne B. Shaver*

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Michelle A. Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman
Jessica A. Moldovan
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Adam T. Klein
Cara E. Greene
Christopher M. McNerney
Michael C. Danna
Sabine Jean
Maya S. Jumper
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Class Counsel*