UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
H. CRISTINA CHEN-OSTER, SHANNA     :
ORLICH, ALLISON GAMBA and MARY    :
DE LUIS,                                     :
                                         :
            Plaintiffs,        :
                                        :
      v.                            :
                                        :
GOLDMAN SACHS & CO. and THE      :
GOLDMAN SACHS GROUP, INC.,     :
                                        :
           Defendants.     :
------------------------------------------------------- x

10 Civ. 6950 (AT) (RWL)

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OR CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005

Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

Amanda Flug Davidoff
Jeffrey B. Wall (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

May 11, 2022

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..........................................................................................................................2

I.      THE COURT SHOULD RECONSIDER ITS DECISION ON STANDING .....................2

        A.      An Equal-Footing Injury Cannot Support Standing In A Damages Suit ................2

        B.      Plaintiffs Have No Evidence To Support Standing To Assert Monetary
                Injury ...............................................................................................................5

        C.      Without The Equal-Footing Doctrine, The Class Is Improperly Defined .............9

II.     IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER
        UNDER 28 U.S.C. § 1292(b) .........................................................................................10

        A.      Section 1292(b) Review Is Available For Denials Of Decertification ................11

        B.      The Statutory Criteria For Interlocutory Review Under Section 1292(b)
                Are Satisfied ..................................................................................................12

                1.      Whether The Class Has Standing Warrants Interlocutory Review ...........12

                2.      Whether The Class Satisfies Commonality Also Warrants
                        Interlocutory Review .............................................................................15

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re A2P SMS Antitrust Litig.*,
    2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ...........................................................................14

*Aiken* v. *Hackett*,
    281 F.3d 516 (6th Cir. 2002) .................................................................................................4

*Arizona Christian Sch. Tuition Org.* v. *Winn*,
    563 U.S. 125 (2011)................................................................................................................8

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018)....................................................................................................8

*Avritt* v. *Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) .............................................................................................13

*Braunstein* v. *Ariz. Dep't of Transp.*,
    683 F.3d 1177 (9th Cir. 2012) ...............................................................................................4

*City of Long Beach* v. *Total Gas & Power N. Am., Inc.*,
    465 F. Supp. 3d 416 (S.D.N.Y. 2020)....................................................................................8

*Cruz* v. *Barnhart*,
    2006 WL 547681 (S.D.N.Y. Mar. 7, 2006) ...........................................................................3

*Denney* v. *Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)........................................................................................ *passim*

*Denney* v. *Jenkens & Gilchrist*,
    230 F.R.D. 317 (S.D.N.Y. 2005) ...........................................................................................5

*Dial Corp.* v. *News Corp.*,
    314 F.R.D. 108 (S.D.N.Y. 2015) ...........................................................................................8

*Doe* v. *Blum*,
    729 F.2d 186 (2d Cir. 1984)....................................................................................................8

*Donahue* v. *City of Boston*,
    304 F.3d 110 (1st Cir. 2002)......................................................................................1, 4, 13

*Fleischman* v. *Albany Medical Center*,
    639 F.3d 28 (2d Cir. 2011)....................................................................................................12

*Int'l Bhd. of Teamsters* v. *United States*,
     431 U.S. 324 (1977)..................................................................................................4, 7

*Kassman* v. *KPMG LLP*,
     416 F. Supp. 3d 252 (S.D.N.Y. 2018)..................................................................15

*Kohen* v. *Pacific Investment Management Co.*,
     571 F.3d 672 (7th Cir. 2009) ..............................................................................7, 8

*Lackawanna Chiropractic P.C.* v. *Tivity Health Support LLC*,
     2021 WL 382773 (W.D.N.Y. Aug. 27, 2021) ........................................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
     299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................................9, 14

*Lujan* v. *Defenders of Wildlife*,
     504 U.S. 555 (1992).......................................................................................*passim*

*Mazza* v. *Am. Honda Motor Co.*,
     666 F.3d 581 (9th Cir. 2012) ..................................................................................8

*Mohawk Indus., Inc.* v. *Carpenter*,
     558 U.S. 100 (2009)............................................................................................2, 11

*Moussouris* v. *Microsoft Corp.*,
     799 Fed. Appx. 459 (9th Cir. 2019).....................................................................15

*Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*,
     508 U.S. 656 (1993)..................................................................................................2

*Neale* v. *Volvo Cars of N. Am., LLC*,
     794 F.3d 353 (3d Cir. 2015)....................................................................................7

*Olean Wholesale Grocery Cooperative, Inc.* v. *Bumble Bee Foods LLC*,
     31 F.4th 651 (9th Cir. 2022) (en banc) ...................................................................8

*In re Restasis Antitrust Litigation*,
     335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................8

*Richardson Electronics, Ltd.* v. *Panache Broadcasting of Pennsylvania, Inc.*,
     202 F.3d 957 (7th Cir. 2000) ...........................................................................11, 12

*Scott* v. *Chipotle Mexican Grill, Inc.*,
     2017 WL 4326081 (S.D.N.Y. Sept. 25, 2017)......................................................14

*Texas* v. *Lesage*,
     528 U.S. 18 (1999)........................................................................................*passim*

*TransUnion LLC* v. *Ramirez*,
    141 S. Ct. 2190 (2021) ......................................................................................... *passim*

*Tyson Foods, Inc.* v. *Bouaphakeo*,
    577 U.S. 442 (2016) ..................................................................................................8

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011) ................................................................................................15

*Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) ................................................................................4

**Statute**

28 U.S.C. § 1292(b) .......................................................................................... *passim*

**Other Authorities**

Wright & Miller, 16 Federal Practice and Procedure § 3931.1 (3d ed. 2022
    update)......................................................................................................................14

Federal Rule of Civil Procedure 23 ................................................................... *passim*

## PRELIMINARY STATEMENT

The Court denied decertification on the ground that all members of the class were injured because they were subject to policies that allegedly placed them on unequal footing.  As Goldman Sachs has explained, however, an equal-footing injury cannot support a claim for damages, which is the only relief that the class now seeks.  *See Texas* v. *Lesage*, 528 U.S. 18, 20–22 (1999). Plaintiffs have little to say about *Lesage* and the application of the equal-footing doctrine to their damages class—and what they say is wrong.  (*See* Opp. (ECF No. 1354) at 10–12.)  First, Plaintiffs assert that they still have a live class claim for injunctive relief.  They do not.  Second, Plaintiffs note that *Lesage* was a merits decision involving a single plaintiff.  Those distinctions miss the point.  Although *Lesage* was a merits decision, it "clarif[ied] the 'injury in fact to a cognizable interest' that is required to support standing for [a] damages claim," as several courts of appeals recognize.  *Donahue* v. *City of Boston*, 304 F.3d 110, 117–18 (1st Cir. 2002).  And the number of plaintiffs in *Lesage* is irrelevant to its holding on the type of injury that can support a damages claim.

Without the equal-footing doctrine, Plaintiffs' class falls apart.  The class was certified to pursue only monetary relief.  And at this stage of the litigation, after discovery and on the brink of trial, Plaintiffs have no evidence of classwide monetary injury.  On the contrary, their expert admitted that he cannot identify which class members experienced such an injury at all.  At a minimum, as this Court has recognized—and Plaintiffs do not contest—a class must be defined such that every class member has standing.  Here, the class is defined by mere exposure to the challenged processes.  The Court approved the class definition because "the class is defined in such a way as to ensure that the class members were subject to the policy that allegedly placed them on an unequal footing based on their gender."  (Order (ECF No. 1337) at 38.)  But because that is not a cognizable injury for a damages class, the Court applied the wrong test.  For those

reasons, Goldman respectfully requests that the Court reconsider its Decertification Order.

In the alternative, because several courts of appeals have rejected an equal-footing theory of injury for damages claims, the Court should certify its Decertification Order for interlocutory appeal under 28 U.S.C. § 1292(b).  Plaintiffs contend that interlocutory review of the Order is categorically unavailable, but that argument finds no support in any statute, rule, or case law.  To the contrary, the Court's Order readily satisfies all three statutory criteria for certification under Section 1292(b):  it involves two (1) "controlling question[s] of law" (standing and commonality), (2) "as to which there is substantial ground for difference of opinion," (3) whose resolution "may materially advance the ultimate termination of the litigation."  Because "[t]he preconditions for § 1292(b) review" are "satisfied," the Court "should not hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110–11 (2009).

**ARGUMENT**

## I.    THE COURT SHOULD RECONSIDER ITS DECISION ON STANDING

### A.    An Equal-Footing Injury Cannot Support Standing In A Damages Suit

The Court denied decertification because it found classwide standing based on the equal-footing doctrine.  (Order at 38.)  As Goldman explained in its motion for reconsideration, that doctrine cannot support standing here because Plaintiffs pursue only backpay damages.  Merely being subject to an allegedly discriminatory policy may be a cognizable injury for *injunctive relief*. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666–67 (1993).  But under *Lesage*, unequal footing is not a cognizable injury in claims for *damages*.  528 U.S. at 20–22.  *Jacksonville* and *Lesage* thus exemplify the general rule articulated in *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2210–11 (2021):  a "risk of future harm," such as the risk created by ongoing exposure to a discriminatory policy, can satisfy Article III in the context of a claim for injunctive relief, but plaintiffs must "demonstrate that the risk of future harm

-2-

materialized" in order to have standing to sue for damages.  In light of *Lesage*, it was a "clear error

of law" to rely on the equal-footing doctrine to find standing in this suit for damages.  *Cruz* v.

*Barnhart*, 2006 WL 547681, at *2 (S.D.N.Y. Mar. 7, 2006) (Cote, J.) (citation omitted).

Plaintiffs contend that the equal-footing theory was not the basis of this Court's decision.

(Opp. at 5 ("The Court's citation to the equal footing doctrine provided an independent basis for

rejecting Goldman's argument."); Opp. at 10–11 (describing equal-footing theory as "an

*alternative* way of thinking about" whether the class is defined to include only those with

standing).)  That is plainly wrong.  This Court first determined that "the class must 'be defined in

such a way that anyone within it would have standing.'"  (Order at 38 (quoting *Denney* v. *Deutsche

Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).)  The Court next concluded that a Title VII plaintiff

has standing if she is subjected to a policy that places her on unequal footing.  (*Id.*)  Finally,

"[c]ombining the requirements for standing for classes and for Title VII claims," the Court

concluded that there was classwide standing "[b]ecause the class definition used here makes clear

that all the class members were subject to the policies" that allegedly placed them on unequal

footing.  (*Id.*)  The equal-footing doctrine represented the Court's sole justification for the breadth

of the class.

When they finally address the merits of the equal-footing doctrine, Plaintiffs fail to justify

its application in this case.  Plaintiffs give three reasons why *Lesage* should not affect the standing

inquiry here, but none is persuasive.  First, Plaintiffs assert that the class still has live claims for

injunctive relief.  (*See* Opp. at 11–12.)  That is flatly incorrect.  (*See* Decert. Reply (ECF No. 1307)

at 9–11.)  Plaintiffs sought certification of injunctive claims under Rule 23(b)(2) and damages

claims under Rule 23(b)(3).  (ECF No. 247 at 42, 45.)  The Court certified only a Rule 23(b)(3)

damages class because certification of Plaintiffs' injunctive claims required additional discovery

and was proceeding on a separate track.  (ECF No. 578 at 12–13.)  A few months later, Plaintiffs

withdrew their motion for certification under Rule 23(b)(2), thereby abandoning their only injunctive claim for the class.  (ECF No. 625 at 1.)  Nor could Plaintiffs somehow revive their long-abandoned claim.  Plaintiffs' decision in 2018 to abandon Rule 23(b)(2) certification also halted discovery into Goldman's current practices.  (ECF No. 627 (vacating all deadlines relating to Rule 23(b)(2) class discovery).)  As Judge Lehrburger has already held in this case, "injunctive relief should not be determined based on a stale record."  (ECF No. 560 at 57.)[1]

Second, Plaintiffs argue that *Lesage* does not affect the standing inquiry because "the word 'standing' does not appear" in the opinion.  (Opp. at 12.)  Plaintiffs' magic-words approach ignores the point.  Merits decisions can shed light on standing:  knowing what type of injury a plaintiff must *prove* on the merits informs what type of injury a plaintiff must *adequately allege* to reach the merits.  Several courts of appeals have recognized that basic point.  As the First Circuit put it, *Lesage* governs the standing inquiry by "clarifying the 'injury in fact to a cognizable interest' that is required to support standing for [a] damages claim."  *Donahue* v. *City of Boston*, 304 F.3d 110, 117 (1st Cir. 2002); *see Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1277 (11th Cir. 2001) ("Whether or not [*Lesage*] expressly discusses standing, it plainly bears on that inquiry because it further defines the kind of injury that would support [damages] relief."); *Aiken* v. *Hackett*, 281 F.3d 516, 519 (6th Cir. 2002) (applying *Lesage* to reject equal-footing theory of standing in a damages case); *Braunstein* v. *Ariz. Dep't of Transp.*, 683 F.3d 1177, 1186–87 (9th Cir. 2012) (same).   After *Lesage*, the equal-footing doctrine cannot be used to establish a

---

[1] The Court's Order addressed arguments premised on "Plaintiffs' decision not to pursue an injunctive class" without questioning that premise.  (Order at 44.)  Plaintiffs assert that the Order elsewhere held that they did not abandon injunctive relief.  (Opp. at 12 n.12.)  What the Order actually says is that Defendants were "incorrect" to argue that "Plaintiffs abandoned the *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 324 (1977) framework" when they declined to pursue injunctive relief.  (Order at 37 n.23.)  In other words, the Court accepted that Plaintiffs had abandoned injunctive relief, but held that the *Teamsters* framework could apply anyway.

cognizable injury in a suit for damages.

Third, Plaintiffs emphasize that *Lesage* is a single-plaintiff case, not a class action. That is irrelevant, because the type of injury that *Lesage* requires has nothing to do with the number of plaintiffs in that case. *Lesage* holds that in a suit for damages, the required injury is a concrete harm from the allegedly discriminatory policy that is redressable with money—here, that each class member suffered some lost pay. The Court found standing on the basis of a different injury by relying on a decision that *Lesage* distinguished and cabined. Reconsideration is therefore warranted.

### B.    Plaintiffs Have No Evidence To Support Standing To Assert Monetary Injury

The inapplicability of the equal-footing doctrine is fatal to class certification. Plaintiffs need the equal-footing doctrine to demonstrate standing, because they have no evidence of classwide monetary injury. And at this stage of the litigation, they must be able to support their alleged injuries with actual evidence, not bare allegations.

The Second Circuit's opinion in *Denney*, 443 F.3d at 264, sets out a clear rule: all members of a class must have Article III standing. That rule applies alongside the bedrock principle that plaintiffs must maintain standing "at all stages of litigation," and must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion*, 141 S. Ct. at 2208 (citing *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In *Denney*, the court found class standing on the basis of the class definition and the allegations in the complaint (rather than the evidentiary record), 443 F.3d at 263–65, because that case concerned a class that the court treated for standing purposes as pre-discovery and pre-summary judgment.[2]

---

[2] The parties in *Denney* "reached a tentative settlement agreement at an early stage in [the] litigation, prior to discovery." *Denney* v. *Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y.

This case, by contrast, is now post-discovery. At this stage, Plaintiffs must support their standing allegations with evidence, *Lujan*, 504 U.S. at 561; *TransUnion*, 141 S. Ct. at 2208, which the Court can examine to determine whether the class includes uninjured members.

Plaintiffs have zero evidence that all class members suffered monetary harm. By his own admission, Plaintiffs' expert Dr. Farber cannot determine how many class members, or which ones, actually lost money because of the challenged processes. (Farber Tr. (ECF No. 1236-55) at 210:14–19, 360:15–19.) Dr. Farber conceded that his data "doesn't attach . . . damages to any particular woman," and that he never analyzed "the damages suffered by any particular woman in the class." (*Id.* at 345:14–346:6.) Dr. Farber thus admittedly could not "testify that all women in the class were the victims of discrimination" (*id.* at 361:9–17), or even that any women in any particular Division suffered discrimination (*id.* at 85:17–86:4). And in fact, under Dr. Farber's own model, Defendants' expert Dr. Shaw showed that a significant percentage of women earned *more* than would be predicted for comparable male employees. (Shaw Rpt. (ECF No. 1236-56) ¶ 288.)

Plaintiffs argue at length against the need for evidence of classwide standing (*see* Opp. at 5–10), but their arguments all fall short. Adhering to the evidentiary requirement of *TransUnion* and *Lujan* does not conflate standing with the merits, as Plaintiffs assert. (*See* Opp. at 8.) Plaintiffs do not have to *prove* at this stage that they have suffered an injury—that is a merits issue for any trial. But at this point, they must have developed some evidence showing that all class members suffered the kind of injury that is redressable by backpay damages. If Plaintiffs had developed

---

2005) (Scheindlin, J.). Before the class was certified, plaintiffs took "informal discovery" from the defendants, pursuant to the terms of the settlement stipulation. *Id.* at 323. For purposes of its standing analysis, the Second Circuit treated the case as a pre-discovery case. *See Denney*, 443 F.3d at 263 ("For purposes of determining standing, we must accept as true all material allegations of the complaint.") (internal quotation marks omitted).

such evidence, then of course rebutting it would be left to the merits.  Plaintiffs also assert that an evidentiary requirement would undermine the *Teamsters* framework.  (*See id.* at 10.)  But in the usual case applying the *Teamsters* framework, a class can show classwide standing to pursue injunctive relief at Phase I of the litigation and defer demonstrations of monetary harm until Phase II.  Plaintiffs do not identify any decision applying *Teamsters* that did not involve a live claim for injunctive relief at Phase I.  (*See id*. at 10 n.10.)  This case is unusual because Plaintiffs chose to abandon their injunctive claims and so must develop evidence supporting monetary injury.

Plaintiffs rely on a handful of inapposite decisions.  None even remotely excuses Plaintiffs' failure at this advanced stage of the case to offer evidence of classwide monetary injury.  For example, Plaintiffs cite *Lackawanna Chiropractic P.C.* v. *Tivity Health Support LLC*, 2021 WL 382773 (W.D.N.Y. Aug. 27, 2021), to argue that it would conflate standing with the merits to require them to demonstrate classwide standing.  (*See* Opp. at 8.)  *Lackawanna* involved a settlement class in a similar procedural posture to *Denney*.  *Lackawanna*, 2021 WL 382773, at *4.  There, everyone in the class definition had standing because the plaintiff had "plausibly pleaded" in the complaint "that all class members were injured in fact."  *Id.* at *5.  Here, unlike in *Lackawanna*, "mere allegations" no longer suffice to establish classwide standing.  *Lujan*, 504 U.S. at 561.

Plaintiffs also rely on *Kohen* v. *Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009), which holds that the "possibility or indeed inevitability" that a class includes uninjured class members "does not preclude class certification."  *Id.* at 677.  But the Seventh Circuit's decision in *Kohen* departs from *Denney*'s rule that "no class may be certified that contains members lacking Article III standing."  *Denney*, 443 F.3d at 264.  *Kohen* and *Denney* are thus on opposite sides of a circuit split over whether a class may be certified when it includes uninjured members.  *See Neale* v. *Volvo Cars of N. Am., LLC*, 794 F.3d 353, 365–67 (3d Cir. 2015) (noting

that *Kohen* and *Denney* are part of a circuit split); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56–57 (1st Cir. 2018) (same). *Denney* rather than *Kohen* binds this Court, and it is telling that Plaintiffs defend their class only under the contrary legal rule.[3]

Nor does *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 461 (2016), help Plaintiffs' argument. (Opp. at 10.) Plaintiffs assert that *Tyson Foods* "affirm[ed] certification of a class under FLSA that contained over 200 uninjured members." (Opp. at 10.) But the Court in *Tyson Foods* *declined to address* the question whether a class may be certified if it contains members who were not injured, because the petitioner had abandoned that argument after certiorari was granted. 577 U.S. at 460. The Court concluded that plaintiffs' statistical evidence could establish predominance, *id.* at 454–60, but it did not address the effect of uninjured class members on certification, let alone address standing. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Arizona Christian Sch. Tuition Org.* v. *Winn*, 563 U.S. 125, 144 (2011).[4]

---

[3] Plaintiffs' other cases are similarly off-target. *City of Long Beach* v. *Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416 (S.D.N.Y. 2020) (Kaplan, J.), a*ff'd*, 2021 WL 5754295 (2d Cir. Dec. 3, 2021), addressed a plaintiff's standing to bring a putative class action to federal court in the first instance, not the classwide standing necessary to support certification. The same is true for *Doe* v. *Blum*, 729 F.2d 186 (2d Cir. 1984), which predates *Denney* by two decades. In *Mazza* v. *Am. Honda Motor Co.*, 666 F.3d 581, 594–95 (9th Cir. 2012), the Ninth Circuit found that to the extent that class members suffered a monetary injury as alleged, they had Article III standing. And in *In re Restasis Antitrust Litigation*, 335 F.R.D. 1, 16 n.12 (E.D.N.Y. 2020), the district court held that "all class members have standing" because everyone in the class had purchased a brand-name drug whose price was artificially inflated.

[4] Plaintiffs also cite other cases that address predominance, not standing. *See Dial Corp.* v. *News Corp.*, 314 F.R.D. 108, 120 (S.D.N.Y. 2015) (Pauley, J.); *Olean Wholesale Grocery Cooperative, Inc.* v. *Bumble Bee Foods LLC*, 31 F.4th 651, 669, 682 (9th Cir. 2022) (en banc) (explaining that the potential inclusion of uninjured class members does not create a predominance problem but declining to decide whether it creates a standing problem for a damages claim because there was evidence of classwide standing).

### C.    Without The Equal-Footing Doctrine, The Class Is Improperly Defined

Even if this Court agrees with Plaintiffs that they do not need to support classwide standing with evidence, the Court's reliance on the equal-footing doctrine still requires reconsideration.  As the Court recognized, at a minimum under *Denney* the class must "be defined in such a way that anyone within it would have standing."  (Order at 38 (citing *Denney*, 443 F.3d at 264).)  And Plaintiffs purport to agree, reciting the same standard.  (Opp. at 6.)  The Court found that the class definition here meets that standard because every member would have an equal-footing injury— but, as explained above, that injury cannot support a damages class here.  (Order at 38.)

Instead, the relevant harm here is a *monetary* injury.  And the class—defined by "[a]ll female Associates and Vice Presidents who have worked in" particular Goldman divisions during particular years (ECF No. 247 at 34; ECF No. 578 at 49; Order at 4)—is not defined to encompass only those with monetary injuries.  (*See* Br. (ECF No. 1347) at 5–7; *see* Decert. Br. (ECF No. 1235) at 23–27; Decert. Reply (ECF No. 1307) at 3–7.)  That class definition is not tied to lost pay, missed promotions, or any adverse determination relating to pay or promotion.  Instead, it indiscriminately covers all individuals who held certain corporate titles during the class period and thus were subject to the challenged processes regardless of whether those individuals suffered any monetary harm.[5]  Indeed, the definition clearly covers some individuals who suffered no monetary

---

[5] A class properly focused on monetary harm need not be an impermissible fail-safe class, as Plaintiffs suggest.  (*See* Opp. at 1.)  A fail-safe class is defined by a defendant's liability—here, for example, a class defined as women who were illegally discriminated against.  Instead, to satisfy *Denney*, a class definition would presumably have to focus on adverse pay and promotion determinations.  Whatever putative class Plaintiffs might have offered, it was their burden to put forth and defend an appropriately defined class, and they have not done so.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 465 (S.D.N.Y. 2018) (Buchwald, J.) ("It remains 'plaintiff's burden to show how the action may be [modified] to avoid certification problems.'") (citation omitted; alteration in original).  Nor could they at this late stage, after full

injury:  for example, individuals who received top quartiles in every possible year; self-sustaining private-wealth advisors (PWAs) whose compensation had nothing to do with the challenged processes; individuals not employed at Goldman Sachs long enough to be evaluated or considered for a promotion at all; and individuals who were evaluated only after 2016 pursuant to procedures that the Court has found lawful.[6]

Implicitly recognizing that error, Plaintiffs respond by trying to water down *Denney*.  They argue that, to survive *Denney*, a class definition needs only to exclude individuals who "*could not have been* injured."  (Opp. at 6.)  That is not consistent with either Article III or *Denney*'s language and reasoning.  Article III permits federal courts to adjudicate disputes only for individuals with a "personal stake" in the case.  *TransUnion*, 141 S. Ct. at 2203.  And precisely because "no class may be certified that contains members lacking Article III standing," *Denney* requires that a class can include only *injured* individuals.  443 F.3d at 264.  Under Plaintiffs' theory, by contrast, a class may be certified that contains likely uninjured members, as long as the class definition excludes those who could not possibly have been injured.  That would turn *Denney* on its head.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER UNDER 28 U.S.C. § 1292(b)

If this Court declines to reconsider its Decertification Order, Defendants respectfully

_____

class-certification proceedings and class discovery on the basis of their proffered class definition.

[6] Plaintiffs push back on two of those categories.  They contend that the class members who received a top quartile for every year in the data are nevertheless injured because they should have been paid even more.  (Opp. at 7 n.6.)  But they do not explain how such an injury could be "fairly traceable" to the challenged processes, given that the challenged 360 reviews and quartiling processes led to those class members' receiving the highest rankings available.  *See Lujan*, 504 U.S. at 560.  Plaintiffs also assert that the class no longer contains any uninjured PWAs.  (Opp. at 7–8 n.6.)  That is incorrect, because Defendants moved to compel arbitration on a list of specific individuals that does not encompass every PWA in the class.  (ECF No. 715.)  More fundamentally, it is *Plaintiffs'* burden to establish classwide injury, *see TransUnion*, 141 S. Ct. at 2207, and Plaintiffs cannot do so through a class definition based solely on exposure to a contested policy.

-10-

submit that interlocutory review is warranted under 28 U.S.C. § 1292(b).  The Court's Order

satisfies all three statutory criteria for certification:  it involves two (1) "controlling question[s] of

law," (2) "as to which there is substantial ground for difference of opinion," whose resolution

(3) "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

Because "[t]he preconditions for § 1292(b) review" are "satisfied," the Court "should not hesitate

to certify an interlocutory appeal."  *Mohawk*, 558 U.S. at 110–11.

### A.    Section 1292(b) Review Is Available For Denials Of Decertification

Plaintiffs wrongly contend that Section 1292(b) review is categorically unavailable for

denials of decertification.  Plaintiffs begin from a correct premise:  that interlocutory review

*pursuant to Rule 23(f)* is unavailable because the Decertification Order is not "an order granting

or denying class-action certification."  (Opp. at 13 (quoting Fed. R. Civ. P. 23(f).)  Defendants did

not appeal under Rule 23(f) for that very reason.  But Plaintiffs wrongly jump to saying that all

forms of interlocutory review, including under Section 1292(b), are likewise unavailable.  (*Id.* at

13–15.)  No statute, rule, or case law supports that argument.

At the threshold, Plaintiffs' argument is inconsistent with the text of Section 1292(b),

which provides that district judges "shall" certify any "such order" that satisfies the three statutory

criteria, with no exception carved out for orders denying decertification.  28 U.S.C. § 1292(b).

Plaintiffs' argument is also inconsistent with the text of Rule 23(f).  Rule 23(f) created a different

mechanism for interlocutory review of certain orders—those "granting or denying class-action

certification."  Fed. R. Civ. P. 23(f).  The Rule allows a party seeking review of such an order to

proceed directly to the court of appeals, subject to a 14-day deadline.  *Id.*  But the Rule says nothing

at all about orders that do not "grant[] or deny[] class-action certification," and certainly does not

displace other existing forms of interlocutory review of such orders.

No case supports Plaintiffs' argument either.  Plaintiffs cite *Richardson Electronics, Ltd.*

v. *Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957 (7th Cir. 2000), which announced a rule for the Seventh Circuit that "when a class-certification order is an arguable candidate for a Rule 23(f) appeal, the appellants may not use [S]ection 1292(b) to circumvent" Rule 23(f)'s deadline. *Id.* at 959. But the *Richardson* rule would not apply here, because Goldman does not seek review of "a class-certification order [that] is an arguable candidate for a Rule 23(f) appeal." *Id.* Goldman seeks review of the *Decertification Order*, which all parties agree cannot be appealed under Rule 23(f). Goldman's focus on the Decertification Order is not some procedural maneuver to circumvent Rule 23(f) and rehash the 2018 Certification Order. (*See* Opp. at 14–15.) Goldman seeks appellate review of substantive rulings unique to the Decertification Order, particularly the Court's novel reliance on the equal-footing doctrine. (*See* Br. at 16–18.)

*Fleischman* v. *Albany Medical Center*, 639 F.3d 28 (2d Cir. 2011), is also inapposite. *Fleischman* held that an order denying a motion to amend a grant of class certification was not an "order granting or denying class-action certification" under Rule 23(f). *Id.* at 30. The court observed that the most recent candidate for Rule 23(f) appeal in the case was the order granting class certification entered eighteen months earlier, and therefore declined to permit "an interlocutory appeal *pursuant to Rule 23(f)*" from the new order. *Id.* at 31 (emphasis added). *Fleischman* says nothing at all about the availability of *Section 1292(b) review* of orders that involve class certification but do not qualify for Rule 23(f) review.

### B. The Statutory Criteria For Interlocutory Review Under Section 1292(b) Are Satisfied

Interlocutory review is not only available but warranted. The Court's rulings on standing and commonality both satisfy all three criteria for interlocutory appeal under Section 1292(b).

### 1. Whether The Class Has Standing Warrants Interlocutory Review

Whether the class members must show monetary harm to pursue backpay damages under

Title VII is a controlling legal question that merits immediate appellate review.  First, standing in this case presents a controlling question of law.  Plaintiffs attempt to cast the standing issue as a factual dispute over Dr. Farber's testimony.  (Opp. at 16–17.)  It is not.  The Court found standing not based on Dr. Farber's statistics, but because every member of the class, as defined, suffered an equal-footing injury.  Defendants assert that such injury is insufficient under *Lesage* and *TransUnion*, and that Plaintiffs must show a classwide *monetary* injury, which (as Dr. Farber admits) they have not done.  That is a purely legal dispute over the type of injury necessary for certification.  Plaintiffs contend that the standing issue is not controlling because the Court cited two "independent and alternative grounds" for standing:  *Denney* and the equal-footing doctrine.  (*Id.* at 17.)  As explained above, *supra* p. 3, that mischaracterizes the Decertification Order.

Second, there are substantial grounds for disagreement with the Court's standing ruling.  Again, the Court found standing on the ground that all members in the class were subject to policies that allegedly put them on unequal footing.  (Order at 38.)  Plaintiffs admit that at least one other circuit has held that *Lesage* "means that the denial of equal footing is not a cognizable injury in a damages case."  (Opp. at 12 (citing *Donahue*, 304 F.3d 110).)  Because the Court's standing ruling conflicts with *Lesage* and other appellate decisions, there are substantial grounds for disagreement.  Plaintiffs oddly claim "*universal agreement*" that a class may contain uninjured members (Opp. at 19), but as explained above, *supra* pp. 5–8, that argument is inconsistent with *Denney*, *TransUnion*, and *Lujan*.  *See Avritt* v. *Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("[A] class cannot be certified if it contains members who lack standing.").

Third, immediate resolution of the standing issue would materially advance the ultimate termination of the litigation.  Plaintiffs assume that if the class lacks standing, they could simply narrow the class, even at this late stage—but they provide no support for that assumption.  (*See* Opp. at 19.)  Under *Denney*, a class may not remain certified if it "contains members lacking

-13-

Article III standing." 443 F.3d at 264.   It is Plaintiffs' burden, not Goldman's, to identify an appropriate class, and they have not done so.  *See In re LIBOR*, 299 F. Supp. 3d at 465 ("It remains 'plaintiff's burden to show how the action may be [modified] to avoid certification problems.'") (citation omitted; alteration in original).  In addition, it would be impossible as a practical matter to narrow the class because Plaintiffs' key expert did not and cannot identify who was actually injured.  (Farber Tr. (ECF No. 1236-55) at 210:14–19 (admitting that his model "can't tell you whether any particular woman was discriminated against").)  Those evidentiary shortcomings go to the very nature of the standing defect here.

Interlocutory review thus would not merely delay an inevitable trial in this case, as Plaintiffs contend.  (*See* Opp. at 19.)  On the contrary, resolution of the standing question could end the litigation now and foreclose the need for trial altogether.  Decertification "can effectively conclude the action," because plaintiffs may "abandon claims that do not justify the costs of solo litigation."  Wright & Miller, 16 Federal Practice and Procedure § 3931.1 (3d ed. 2022 update).  It is thus unsurprising that the "Second Circuit has recognized that class certification decisions have the potential to materially advance the ultimate termination of the litigation." *Scott* v. *Chipotle Mexican Grill, Inc.*, 2017 WL 4326081, at *1 (S.D.N.Y. Sept. 25, 2017) (Carter, J.) (citing *Marisol A. by Forbes* v. *Giuliani*, 104 F.3d 524, 529 (2d Cir. 1996)).

Even if the case were to continue, decertification would materially advance the termination of the litigation by significantly "shorten[ing] the time required for trial."  *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *5 (S.D.N.Y. Mar. 2, 2015) (Nathan, J.) (citation omitted).  Plaintiffs assert that "trial is happening in this case," even if it is just "for the named plaintiffs," and that "any version of that liability trial will rely upon the same evidence."  (Opp. at 19.)  That is wrong: a trial for just the named plaintiffs would not rely on the same classwide evidence, because the named plaintiffs would need to prove only that they experienced discrimination in the years,

divisions, and businesses in which they worked.  Moreover, decertification would eliminate the need for *Phase II* of the trial.  If trial proceeded solely for the named plaintiffs, the Court and the parties would no longer need to prepare for and conduct hundreds of mini-trials on individual class members' asserted entitlement to damages.

### 2.    Whether The Class Satisfies Commonality Also Warrants Interlocutory Review

The Court's ruling on commonality also satisfies all three criteria for Section 1292(b) review.  First, the issue involves a purely legal question:  whether, as a matter of law, a class flunks Rule 23's commonality requirement where class members performed varied job functions under hundreds of different supervisors who exercised discretion.  The answer to that question turns on the proper interpretation of *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011), not on the application of settled law to disputed facts.  (*See* Opp. at 16.)  Second, there are substantial grounds for disagreement with the Court's conclusion on commonality, as demonstrated by contrary rulings in cases with materially similar facts.  *See Kassman* v. *KPMG LLP*, 416 F. Supp. 3d 252 (S.D.N.Y. 2018) (Schofield, J.); *Moussouris* v. *Microsoft Corp.*, 799 Fed. Appx. 459 (9th Cir. 2019).  Third, immediate appellate review would materially advance the termination of the litigation for the reasons explained above, *supra* pp. 14–15.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider the portion of its Decertification Order that addresses standing, or, in the alternative, certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully,

/s/ Robert J. Giuffra, Jr.

Barbara B. Brown (*admitted pro hac vice*)
Carson H. Sullivan (*admitted pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005


Patrick W. Shea
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Amanda Flug Davidoff
Jeffrey B. Wall (*admitted pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006


*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

May 11, 2022