**Lieff
Cabraser
Heimann &
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

May 24, 2022

Kelly M. Dermody
Partner
kdermody@lchb.com

<u>Via ECF</u>
The Honorable Analisa Torres
United States District Court
    for the Southern District of New York

RE:     *Chen-Oster, et al. v. Goldman Sachs & Co.*, No. 10-cv-6950-AT-RWL

Dear Judge Torres:

Pursuant to Your Honor's Individual Practice Rule III.A, Plaintiffs submit this pre-motion letter to respectfully request unsealing of select passages from the class certification record previously submitted to Your Honor.[1]  The parties agree that the majority of the class certification record should be unsealed.  However, Goldman Sachs seeks to keep sealed the names of two senior-level individuals identified six times in the class certification briefing.  As detailed below, Goldman Sachs cannot meet its burden of overcoming the presumption of public access to this information under common law and the First Amendment.  Indeed, a recent decision in a case currently pending before this Court—*Bronx Conservatory of Music, Inc. v. Kwoka*—confirms that these names should be unsealed.

### I.     Background

Plaintiffs lodged their Motion for Class Certification on May 19, 2014.  The Motion referenced and attached materials designated as confidential by Goldman Sachs, and was therefore filed provisionally under seal pursuant to the Protective Order governing this matter. ECF No. 51.  Exhibit A to the May 19, 2014 submission—attached hereto as Exhibit 1—lists the 133 documents filed under seal.  Included among those documents were a set of internal complaints of gender discrimination (and a summary chart), as well as a set of EEOC charges of gender discrimination (and a summary chart).  Additionally, Plaintiffs submitted their Reply in Support of Class Certification on July 29, 2014, and their Objections to Magistrate Judge Francis's Report and Recommendation Regarding Class Certification on June 23, 2017.  Each of these filings was likewise redacted pursuant to the Protective Order.

On June 10, 2014, Magistrate Judge Francis ordered that most of Exhibit A be unsealed. ECF No. 242.  Judge Francis reserved ruling, however, on unsealing of the briefing, declarations, complaints, and EEOC charges, until after this Court decided class certification.  *Id*. at 1-2.  On June 29, 2017, this Court confirmed that Plaintiffs' request to unseal these documents would ripen once the Court ruled on class certification.  ECF No. 510.  Following this Court's March 30, 2018 order granting class certification, ECF No. 578, and resolution of the subsequent appeals, the parties began meeting and conferring regarding unsealing of these documents.

---

[1] The Court has ruled on the other sealing disputes concerning materials submitted to the Court.  *See* ECF No. 1079 (ruling on Goldman Sachs's request to maintain purportedly privileged documents under seal).

Hon. Analisa Torres
May 24, 2022
Page 2

The parties ultimately agreed on almost everything, including select redactions to the complaints and EEOC charges of certain personal identifiers and contact information for complainants, as well as substitution of the names of the subjects of complaints with the corporate title of the subject at the time of the complaint.[2] The parties also agreed regarding most of the redactions to the briefing and declarations. The parties were unable to agree, however, regarding redaction of the identities of two senior leaders of Goldman Sachs appearing throughout the briefing. *See* Ex. 2 (Pls.' Mem. in Support of Class Cert.) at 25-27; Ex. 3 (Pls.' Objs. to the Magistrate Judge's R&R) at 20-21.[3] This motion concerns only whether those two names must be sealed from the public record.

## II.     Argument

Judicial documents carry a presumption of access "secured by two independent sources: the First Amendment and the common law." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Once triggered, this presumption "requires a court to make specific, rigorous findings before sealing the document." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 (2d Cir. 2013). These "rigorous findings" differ under the common law and First Amendment frameworks: "the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Here, Goldman Sachs cannot meet its burden under either framework.

### a.     There Is a Presumption of Public Access to Class Certification Briefing.

There can be no dispute that class certification briefs are judicial documents. *See Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, at *18 (S.D.N.Y. Jan. 10, 2018) (holding that class certification motions are judicial documents to which the presumption applies). Accordingly, Plaintiffs' class certification briefs may be redacted *only if* Goldman Sachs rebuts the strong presumption of access *and* the Court makes the "rigorous findings" required by the common law and First Amendment frameworks.

### b.     The Common Law Right of Public Access Is Substantial Here, and "Countervailing Factors" Do Not Warrant Sealing the Names.

The first step under the common law framework is to determine the "weight" of the presumption. *Bernstein*, 814 F.3d at 142. "[T]he weight . . . must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). "Generally, the information will fall somewhere on a

---

[2] These redactions were made pursuant to a stipulation, and have already been prepared by Goldman Sachs and approved by Plaintiffs.

[3] Red highlighting in these Exhibits denotes content the parties agree should remain under seal, and yellow highlighting denotes the names that are the subject of this motion. The parties agree that the remainder of both documents should be filed without redaction.

Hon. Analisa Torres
May 24, 2022
Page 3

continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure [sic] their irrelevance." *Id*.

Here, the weight of the presumption is substantial because "[m]otions for class certification . . . are part of the Court's core adjudicative function to which a strong presumption of access attaches." *Royal Park Investments*, 2018 WL 739580, at *18.[4] Moreover, the information at issue here was not "within [the] court's purview solely to insure [sic] irrelevance." *Amodeo II*, 71 F.3d at 1049. Both individuals were identified as senior-level subjects of discrimination complaints, in support of Plaintiffs' disparate treatment theory of liability. In partially certifying that theory, the Court cited and quoted extensively from such complaints to determine that Plaintiffs provided "significant proof" that Goldman Sachs operated under a general policy of discrimination. ECF No. 578 at 32-34. Indeed, the Court cited some of the *very same pages* at issue in this motion. *See id.* at 32 (citing Ex. 3 at 13-28). While the Court ultimately declined to certify a stand-alone "boy's club" disparate treatment theory, the bases for the Court's findings at class certification are of great interest to class members. In fact, the class is entitled to know the full scope of the information the Court considered in making its boy's club determination (and other findings), including the identity of senior leaders accused of bias or harassment. *See Dickerson v. Novartis Corp.*, 2016 WL 9560056, at *2 (S.D.N.Y. Apr. 11, 2016) ("The presumption of public access is particularly relevant in the class action context, given that the judicial documents may be relevant to an absent class members' decision to opt out or object to the proposed settlement, as well as '[t]he public interest in the fair administration of class actions.'") (citation omitted).

After determining the weight of the presumption of access—which is high, here—the second step is to balance "the value of public disclosure and 'countervailing factors' such as '(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure.'" *Bernstein*, 814 F.3d at 143 (quoting *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995) ("*Amodeo I*")).

Here, a balancing produces no compelling reason to seal the names of senior-level officials accused of discrimination from critical class certification briefing.[5] *Bronx Conservatory* makes this clear. There, in a case about misappropriation of trade secrets and copyright infringement, the Magistrate Judge considered the plaintiff-Conservatory's request to seal allegations concerning the defendant's counterclaim of sexual harassment. 2021 WL 2850632, at *1 (S.D.N.Y. July 8, 2021). The court first reiterated that there is a "heavy" presumption of public access to judicial documents because "the public cannot 'have confidence in the [Court's]

---

[4] *See also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("In class actions—where by definition some members of the public are also parties to the case—the standards for denying public access to the record should be applied with particular strictness.").

[5] This stands in contrast to the names of complainants (who are low-level employees, some not even class members) and of third-party witnesses. *See Amodeo II*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (citation omitted). This also stands in contrast to the low-level subjects identified only in the exhibits to the briefing, given the particularly strong presumption that applies specifically to class certification motions. *Royal Park Investments*, 2018 WL 739580, at *18.

Hon. Analisa Torres
May 24, 2022
Page 4

administration of justice' without being able to see the specific allegations underlying the case." *Id*. at *2.  The court then determined that the Conservatory failed to demonstrate "countervailing factors" that warranted sealing of defendant's sexual harassment allegations.  *Id*. at *3.  Notably, included among the information that the court unsealed was the identity of the alleged harasser, who was then the President and CEO of the Conservatory.  No. 21-cv-1732-AT-BCM, ECF No. 26 ¶ 33.  The court noted that neither "generalized concerns of adverse publicity and reputational injury" nor an "assertion that [the sexual harassment] allegations are false" justified sealing this individual's identity.  2021 WL 2850632, at *3-4.  Similarly, in *Lytle v. JPMorgan Chase*, another court in this District denied a motion to seal the identities of non-party employees accused of discriminatory behavior.  810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011).  There, too, the court rejected privacy concerns (including risk of embarrassment or potential career harm), concluding that "any injury the employees may suffer by release of the information is insufficient to rebut the strong presumption of access to the information at issue here."  *Id*.

### c. "Higher Values" Do Not Overcome the First Amendment Right to Access Class Certification Briefing.

In "determining whether 'the public and the press should receive First Amendment protection in their attempts to access certain judicial documents,'" the Second Circuit considers "experience and logic," and asks "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question."  *Bernstein*, 814 F.3d at 141 (citation omitted).[6]

Here, First Amendment rights attach to the names of high-ranking alleged sexual harassers identified at class certification.  The briefs in which the names appear are unquestionably judicial documents, for which courts undertaking this First Amendment analysis "have generally invoked the common law right of access . . . in support of finding a history of openness."  *Lugosch*, 435 F.3d at 120.  Context also matters.  It is difficult to imagine a motion for which public access plays a more significant role in the functioning of the "particular process in question" than a motion for class certification.  *Bernstein*, 814 F.3d at 141.  As this case nears a conclusion, it is vital that absent class members and the general public be granted access to evidence the Court considered in permitting this case to proceed as a class action or excising certain aspects from it.

Where, as here, a First Amendment right of access has been established, "the proponent of sealing must 'demonstrat[e] that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Bernstein*, 814 F.3d at 144 (quoting *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).  For the same reasons discussed in connection with the common law framework, the privacy interests of the alleged harassers do not constitute a "higher value" that deserves safeguarding.  *See Bronx Conservatory*, 2021 WL 2850632, at *3 (rejecting privacy as a "higher value" warranting sealing of an alleged harasser's identity).

---

[6] The Circuit considers a second basis for access, not relevant here, if documents "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Bernstein*, 814 F.3d at 141.

Hon. Analisa Torres
May 24, 2022
Page 5

                                              Respectfully submitted,

Kelly M. Dermody                                             Adam T. Klein
Lieff Cabraser Heimann & Bernstein, LLP              Outten & Golden, LLP