```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/22/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER, LISA PARISI, SHANNA ORLICH, ALLISON GAMBA, and MARY DE LUIS,

Plaintiffs,

-against-

GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,

Defendants.

10 Civ. 6950 (AT) (RWL)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis, representing a class of female employees of Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs" or "Defendants"), filed this class action alleging gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

Defendants move for reconsideration of the Court's decision on standing in the order dated March 17, 2022 (the "Order"), ECF No. 1337, or, if reconsideration is denied, for certification of an interlocutory appeal of the Order with respect to the Court's decision on standing and commonality, pursuant to 28 U.S.C. § 1292(b). Defs. Mot., ECF No. 1346.[1] Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Defendants' request for oral argument, Defs. Mem., ECF No. 1347, is DENIED.

## BACKGROUND[2]

The Court presumes familiarity with the facts and procedural history outlined in the Order, and describes them briefly here to the extent they are relevant to the pending motion. Order at 2–5.

Goldman Sachs is a leading financial services company that has four revenue-generating divisions—Investment Banking, Investment Management, Securities, and Merchant Banking. Defs. 56.1 ¶¶ 1–6, ECF No. 1241. These divisions are split into numerous specialized business units. *See*, *e.g.*, ECF No. 265-1. Plaintiffs worked in three of the revenue generating divisions. *See* Class Cert. Order at 2–4, ECF No. 578. In these three divisions, Goldman Sachs employed two systems for evaluating employees, known as "360 review" and "quartiling." Pls. 56.1 ¶ 1, ECF No. 1257. For promotions from Vice President to Managing Director, Goldman Sachs used a process called "cross-ruffing." Class Cert. Order at 8–10.

On September 16, 2010, Plaintiffs filed a class action alleging intentional discrimination, disparate impact discrimination, retaliation, and pregnancy discrimination claims under Title VII and the NYCHRL. *See* Compl. The Honorable Leonard B. Sand originally presided over this case before it was reassigned to the undersigned on May 24, 2013. ECF No. 181. The Court previously determined that the named plaintiffs have standing. *See* ECF No. 479; Class Cert. Order at 10–12.

On March 30, 2018, the Court certified a class consisting of female Associates and Vice Presidents employed in the United States by Goldman Sachs and its predecessors in three of the revenue-generating divisions—Investment Banking, Investment Management, and Securities—

---

[2] The following facts are drawn from the parties' Rule 56.1 statements of undisputed facts, and the opposing party's response. Disputed facts are so noted. Citations to a paragraph in the Rule 56.1 statement also include the opposing party's response.

2

who were subject to 360 review, quartiling, or cross-ruffing, pursuant to Federal Rule of Civil Procedure 23(b)(3) (the "Class Certification Order"). *See* Class Cert. Order at 22–49. The class includes: (1) female Associates and Vice Presidents in the three divisions who were subject to either 360 review, quartiling, or both 360 review and quartiling from July 7, 2002, for those based in New York City and from September 10, 2004, for all other U.S.-based individuals through the resolution of this action, and (2) female Vice Presidents from the three divisions who were subject to the cross-ruffing process during the same time periods. *See* Order at 4. The Court concluded that certification was warranted because Plaintiffs had demonstrated that Defendants had employed a "common mode of exercising discretion," through the three processes, to support a disparate impact class. Class Cert. Order at 24–28, 41 (citation omitted). The Court found that class resolution was also appropriate for Plaintiffs' disparate treatment claim, which relied on the same statistical evidence.[3] *Id.* at 41, 45–47.

      Defendants again contested the certification of the class in a motion for decertification. *See generally* Decert. Mem., ECF No. 1224. Defendants challenged the class arguing that it lacked standing, and did not meet the criteria for a class under Federal Rule of Civil Procedure 23(b)(3). *Id.* In the Order, the Court denied Defendants' motion finding, as relevant to the pending motion for reconsideration, that the class had standing under the equal footing theory of standing borrowed from equal protection law, Order at 37–38, and met the commonality requirement because the class members only hold one of two jobs, Associate and Vice President, and were evaluated under the same processes, *id.* at 39–41.

      Defendants move for reconsideration of the Order, contending that the Court made a clear error of law in finding that the class had standing. Defs. Mem. at 1, 5–14, ECF No. 1347.

---

[3] The Court did not certify the disparate treatment "boy's club" claim, which would have used anecdotal evidence of a "boy's club" culture to demonstrate disparate treatment. Class Cert. Order at 47–49.

Defendants further ask that, should the Court not grant its request for reconsideration, that it certify the issue for interlocutory appeal, and also permit the issue of commonality to be reviewed as part of the interlocutory appeal. *Id.* at 1, 14–20.

## DISCUSSION

I. <u>Reconsideration</u>

Defendants move for reconsideration of the Order arguing that the Court made a clear error of law in borrowing the equal footing principle from equal protection caselaw because the Supreme Court limited the principle to claims for injunctive relief in *Texas v. Lesage*, 528 U.S. 18, 20–22 (1999). Defs. Mem. at 1, 5–14.

A. Legal Standard

Under Rule 54 of the Federal Rules of Civil Procedure, the Court has the inherent power to reconsider any of its decisions prior to the entry of a final judgment adjudicating all claims at issue. *See* Fed. R. Civ. P. 54(b); *see also United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982). Reconsideration is warranted where the movant identifies an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (quotation marks and citations omitted). Motions for reconsideration are not to be used to relitigate old issues, to present new theories, to secure a rehearing on the merits, or to otherwise take "a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended* (July 13, 2012).

The "threshold question" to consider when deciding if a plaintiff has Article III standing is whether the plaintiff has adequately "alleged an 'injury-in-fact' that is fairly traceable to the

4

challenged conduct and redressable by a favorable judicial decision." *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000). This question must remain "distinct" from "the question of whether [plaintiffs have a] valid claim on the merits." *Id.*; *see also Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) (finding that class members "suffered injuries-in-fact[] irrespective of whether their injuries [were] sufficient to sustain any cause of action").

A plaintiff is required to establish the elements necessary to prove standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the summary judgment stage, plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)). Standing must be shown with respect to each form of relief sought, whether it be injunctive relief or damages. *Friends of Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

In the class action context, the Supreme Court recently clarified that "[e]very class member must have Article III standing in order to *recover* individual damages." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (emphasis added). The Supreme Court's holding did not address the "distinct question" of whether each member of the class must demonstrate standing during class certification. *See id.* at 2208 n.4. However, the Second Circuit "do[es] not require that each member of a class submit evidence of personal standing." *Denney*, 443 F.3d at 263 (collecting cases). Instead, the class must "be defined in such a way that anyone within it would have standing." *Id.* at 264. "[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." *Id.* at

5

263 (quoting Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002)).

Federal Rule of Civil Procedure 23(c)(1)(C), states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Pursuant to this rule, a "district court has the affirmative 'duty of monitoring its class decisions in light of the evidentiary development of the case.'" *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (quoting *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983)). Further, the court "must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Id.* (quoting *Richardson*, 709 F.2d at 1019). District courts may act *sua sponte* pursuant to Rule 23(c)(1)(C) to redefine the class. *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261–62 (2d Cir. 2021); *see also Barrows v. Becerra*, 24 F.4th 116, 133 n.74 (2d Cir. 2022).

B. Analysis[4]

Defendants argue that *Lesage* requires the Court to reverse its standing determination. Defs. Mem. at 1, 5–14. They point to equal protection cases in different circuits which found that *Lesage* affected the standing analysis for plaintiffs bringing equal protection damages claims. *Id.* at 10–11 (collecting cases). They then argue that the Court should not use equal footing to find standing here. *Id.* at 1, 5–14.

The Court shall grant Defendants' request that it reconsider the Order with respect to the standing of the class. The Court concludes that it can easily redefine the class to address any standing concerns and ensure the class has standing regardless of the impact of *Lesage* on the

---

[4] The Court shall not address whether injunctive relief is available to the class, which has been certified pursuant to Rule 23(b)(3). However, the Court has previously found that some of named plaintiffs have standing to seek injunctive relief in the remedies phase. *See* ECF No. 479.

equal footing principle.  *See Alexander v. Azar*, 370 F. Supp. 3d 302, 326 (D. Conn. 2019) ("[S]tanding issues are better addressed by redefining the class than by decertifying it entirely."); *see also Barrows*, 24 F.4th at 133 n.74 (approving of a district court redefining a class to ensure it was defined such that all the members would have standing).  However, the Court shall not create a fail-safe class—which "would require litigation of each class member's claim on the merits to determine who is in the class." *Nypl v. JP Morgan Chase & Co.*, 15 Civ. 9300, 2022 WL 819771, *9 (S.D.N.Y. Mar. 18, 2022).  Such a class definition would undermine the superiority requirement of a Rule 23(b)(3) class, and can make the class unmanageable.  *Id.* Therefore, the Court shall not define the class based on the ability to recover damages.

Defendants, in their motion for reconsideration, and original motion to decertify, make standing arguments about specific sub-groups of women in the class.  *See* Defs. Mem. at 3, 7; Defs. Reply at 10, ECF No. 1356; Decert. Mem. at 26–27.  Defendants have identified three groups of Associates and Vice Presidents who they argue do not have standing to recover damages for the 360 review and quartiling processes: (1) women who were not employed "long enough to be subject to the compensation policy, and thus could not have been adversely impacted by the 360 review or quartiling processes," Decert. Mem. at 27 (quotation marks and citation omitted); (2) self-sustaining private wealth advisors, whose compensation was not tied to the 360 review and quartiling processes, Defs. Mem. at 3, 7; and (3) women who were subject to the 360 review and quartiling processes only after 2016, Defs. Reply at 10.  They also argue that women who were in the top quartile in each year in which they appear in the data would not have standing for damages for the quartiling process.  Defs. Mem. at 3, 7.  Further, Defendants argue that, for the cross-ruffing process Vice Presidents who (1) were promoted, or (2) were ineligible

7

for promotion because of their seniority do not have standing.  Decert. Mem. at 27.  The Court shall address each in turn.

For the 360 review and quartiling processes, the Court agrees that those who were not employed long enough to have the 360 review or quartiling processes used to determine their compensation could not be entitled to damages, and therefore, do not have standing for damages.[5]  The Court also agrees that those who were employed only after January 1, 2016, would not be entitled to recover for those processes because the Court granted Defendants summary judgment for any claims based on the two compensation processes after that date.  Order at 57.  Further, as the Court stated in the Order, self-sustaining private wealth advisors are not entitled to damages, therefore, the Court agrees that they would not have standing for that form of relief.  *Id.* at 57.  Finally, with regard to women who were in the highest quartile for all years in which the quartiling process was used to determine their compensation, the Court agrees that they would not have standing to challenge the process because the process did not harm their compensation.[6]  The Court shall also, *sua sponte*, limit the start of the class for the 360 review process to January 1, 2005, because it granted summary judgment to Defendants as to claims based on the use of the process in 2002 through 2004.  Order at 56–57; *see also Jin*, 990 F.3d at 261–62.

---

[5] The Court shall limit the class to those who had one or both of the process used to determine their compensation, rather than impact their compensation, to avoid having a fail-safe class whereby membership is defined by liability. *See Nypl*, 2022 WL 819771 at *9.

[6] There is a material dispute of fact as to whether the 360 review process directly affected compensation or not, or whether it did so only through the quartiling process.  *See* ECF No. 1288 ¶ 1.  Accordingly, the Court shall not exclude from the 360 review process class women who received top quartile ratings in the quartiling process for all of the relevant years.  However, should facts develop that show that the 360 review process impacted compensation only through the quartiling process, Defendants may request that the class for the 360 review process be limited to exclude women who received top quartile ratings in all years in which their quartile rating was used to determine their compensation.

Moving to the cross-ruffing process, the Court disagrees that women who were promoted would not have standing because the women may have been promoted earlier but for the cross-ruffing process, and, therefore, may have experienced an injury caused by the process which would be redressable by back pay to when they would have been promoted but for the cross-ruffing process.  Next, whether there is a fixed period of time an individual must be a Vice President before they are eligible for promotion to Managing Director is contested.  *See* ECF No. 1320 ¶ 33.  Therefore, the Court shall not exclude Vice Presidents with less than two years of time in that role, unless and until it is established that Vice Presidents were not eligible for promotion prior to two years in the role.

Accordingly, the class for damages purposes shall now be defined as follows: (1) female Associates and Vice Presidents—excluding for self-sustaining private wealth advisors—who were subject to the 360 review process and who were employed by Defendants long enough to have the process used to determine their compensation, in the three divisions from January 1, 2005, through January 1, 2016; (2) female Associates and Vice Presidents—excluding for self-sustaining private wealth advisors—who were subject to quartiling and who were employed by Defendants long enough to have the process used to determine their compensation, in the three divisions, from July 7, 2002, for those based in New York City, and from September 10, 2004, for all other U.S.-based individuals, through January 1, 2016; and (3) female Vice Presidents from the three divisions who were subject to the cross-ruffing process from July 7, 2002, for those based in New York City, and from September 10, 2004, for all other U.S.-based individuals through the resolution of this action.

The above analysis only bares on the first step, injury-in-fact, of the standing analysis. There must also be traceability and redressability.  *Lerman v. Bd. of Elections*, 232 F.3d 135, 143

n.9 (2d Cir. 2000).  The alleged injuries are traceable to the processes employed by Defendants, and the class members would be redressed by back pay.

Finally, the Court finds that, the more restricted class definition for damages continues to meet the requirements of Rule 23(b)(3) for the same reasons are articulated in the Class Certification Order and the Order.  *See* Class Cert. Order at 22–49; Order at 38–45.

Accordingly, Defendants' motion for reconsideration is GRANTED in part, and DENIED in part.

II.  Interlocutory Appeal

Anticipating that the Court might deny Defendants' motion for reconsideration, Defendants requested certification of an interlocutory appeal of the Order with respect to the Court's decisions on standing and commonality, pursuant to 28 U.S.C. § 1292(b).  Defs. Mem. 14–15.  The Court has granted Defendants' motion for reconsideration; therefore, Defendants' motion to certify an interlocutory appeal is DENIED as moot on the issue of standing.  The Court shall also DENY the motion on the merits on the issue of commonality.

A.  Legal Standard

Pursuant to the three-pronged test set forth in 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where: (1) "[the] order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13 Civ. 5784, 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (quoting 28 U.S.C. § 1292(b)).  The moving party bears the burden of establishing these three factors.  *Bellino v. JPMorgan Chase Bank, N.A.*, No. 14 Civ. 3139, 2017 WL 129021, *1 (S.D.N.Y. Jan. 13, 2017).  "[E]ven if the order qualifie[s] for certification under

10

28 U.S.C. § 1292(b), the certification decision is entirely a matter of discretion for the district court." *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 36 (2d Cir. 2014).

    B.  Commonality[7]

The resolution of Defendants' request for interlocutory review of the Court's commonality findings is straightforward. The commonality determination was fact-based, and any review of it would be fact-intensive. *See* Order at 39–41. Defendants contend that the there is a controlling legal question regarding the application of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Defs. Mem. at 19. However, this question turns on the facts of this case, including the level of discretion each reviewer is permitted under the policies and the tasks performed by Associates and Vice Presidents. These issues are highly fact-intensive. For example, Defendants filed and relied on forty-one declarations in their decertification motion as to the issue of commonality, Defs. Decert. Mem. at 4, 30. Therefore, Defendants cannot satisfy the first prong of the § 1292(b) analysis with respect to commonality because the question they request to be certified is a mixed question. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371–72 (S.D.N.Y. 2008); *see also Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 96 (2d Cir. 2004) ("By its plain terms, Section 1292(b) may only be used to challenge legal determinations."). Therefore, an interlocutory appeal pursuant to § 1292(b) on the issue of commonality would be inappropriate. Accordingly, the motion is DENIED.

## CONCLUSION

Defendants' motion for reconsideration is GRANTED in part, and DENIED in part, and the motion for certification of an interlocutory appeal is DENIED. Trial in this case shall

---

[7] The Court need not decide if Rule 23(f) or § 1292(b) is the proper mechanism for interlocutory appeal here because Defendants move pursuant to only the latter. *See generally* Defs. Mem. Therefore, the Court declines Plaintiffs' invitation to address the issue. *See* Pls. Mem. at 13–15, ECF No. 1354.

commence on **June 5, 2023**.  The Court shall issue a separate order setting the pre-trial deadlines.

 The Clerk of Court is directed to terminate the motion at ECF No. 1346.

 SO ORDERED.

Dated: August 22, 2022
   New York, New York

_____
ANALISA TORRES
United States District Judge