# SULLIVAN & CROMWELL LLP



December 22, 2022

<u>Via ECF</u>

The Honorable Robert W. Lehrburger,
    United States District Court for the
        Southern District of New York,
           500 Pearl Street,
               New York, New York 10007-1312.

        Re:    *Chen-Oster, et al*. v. *Goldman, Sachs & Co., et ano*.,
                <u>No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)</u>

Dear Judge Lehrburger:

        On behalf of Defendants, we respond to Plaintiffs' December 19, 2022 letter (ECF No. 1394) ("Ltr"), which seeks the extraordinary relief of reopening discovery a mere 44 days before significant pre-trial submissions are due on February 1, 2023. The Court should summarily reject Plaintiffs' request as untimely, prejudicial, lacking good cause, and contrary to both this Court's prior orders and Plaintiffs' prior representations to the Court.

        Respectfully,

        */s/ Robert J. Giuffra, Jr.*          */s/ Lynne C. Hermle*

        Robert J. Giuffra, Jr.             Lynne C. Hermle
        Sullivan & Cromwell LLP        Orrick, Herrington & Sutcliffe LLP

cc:    All parties of record (by ECF)

Hon. Robert W. Lehrburger
December 22, 2022
Page 1

## I.      INTRODUCTION

The Court should reject Plaintiffs' belated attempt to reopen discovery. Fact discovery closed on November 20, 2020, and expert discovery closed on June 21, 2021. Nevertheless, on September 15, 2022 (two years *after* the close of fact discovery), Plaintiffs requested *for the first time* updated data for the 2019 and 2021 promotion cycles. Not only is Plaintiffs' request directly contrary to the Court's prior orders and Plaintiffs' prior representations to the Court, but it is also untimely, prejudicial, and lacks good cause. The Court should deny Plaintiffs' request.

## II.      ARGUMENT

### A.      The Court Already Ruled Twice That Discovery Is Closed

The Court already has decided the issue presented in Plaintiffs' present motion and has confirmed that discovery is closed.  Just last week, the Court confirmed that "***given the closure of both fact and expert discovery and the impending pretrial filing deadline, re-opening discovery at this juncture is ill-advised***." (ECF No. 1393 at 6) (emphasis added). And two years earlier, on December 11, 2020, the Court emphasized "[t]he present ruling, ***shall not be a basis to extend discovery, which has closed***," despite the inherent complexities of an open-ended class definition (ECF No 1140 at 1) (emphasis added). There is no basis to deviate from these prior rulings with trial just six months away.

### B.      Plaintiffs Argued to Their Advantage That Discovery Was Closed

Not only has the Court already twice ruled that discovery is closed, but when Goldman Sachs moved in November 2020 to modify the end of the class period, Plaintiffs emphasized to the Court, to Plaintiffs' advantage, that it should deny Goldman Sachs motion explicitly because discovery was closed. Indeed, at that time, Goldman Sachs raised each of the issues that now confront the Court. (ECF No. 1126 at 2–3). Goldman Sachs emphasized class notice concerns, including issues of due process and supplemental notice. *Id*. It also raised concerns about discovery extending "indefinitely," and the need to "gather[] updated data … with experts continually reassessing their opinions in light of new data." *Id*. Plaintiffs dismissed these concerns as "not rooted in reality" because "***fact discovery has closed***" and assured the Court that "Goldman's proffered parade of horribles about endless discovery" would never materialize.  (ECF No. 1139 at 2 & n.2) (emphasis added). Relying on Plaintiffs' representations, the Court denied Goldman Sachs's motion, but held that the open-ended class definition "***shall not be a basis to extend discovery, which has closed***." (ECF No. 1140 at 1) (emphasis added). The Court should not permit Plaintiffs to reverse course now, having previously benefited from the opposite position.

### C.      There Is No Good Cause to Reopen Discovery

#### 1.      Plaintiffs' Lack of Diligence Ends the Inquiry

Plaintiffs must show "good cause" to compel years' worth of promotion data nearly two years after discovery has closed." Fed. R. Civ. P. 16(b)(4). The "'good cause' inquiry is primarily focused upon the diligence" of the moving party and their reasons for amending the scheduling order." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) (citing Second Circuit cases). "If [the moving] party was not diligent, the inquiry should end. *Hnot v. Willis Grp. Holdings Ltd.*, 2006 WL 2381869, at *5 n. 8 (S.D.N.Y. Aug. 17, 2006). Plaintiffs were not diligent. Plaintiffs could have, but did not, pursue 2019

Hon. Robert W. Lehrburger
December 22, 2022
Page 2

promotion data before the close of fact discovery in 2020. Nor did they pursue 2021 promotions data soon after that cycle ended. Plaintiffs' lack of diligence ends the inquiry.[1]

2. <u>Plaintiffs Cannot Otherwise Show Good Cause</u>

Even if Plaintiffs' lack of diligence were not enough to deny their motion (it is), Plaintiffs cannot satisfy the rest of the six-part test to reopen discovery. *See Pierre v. Hilton Rose Hall Resort & Spa*, 2016 WL 2745821, at *3 (E.D.N.Y. May 11, 2016) (inquiring whether (1) trial is imminent, (2) the request is opposed, (3) the non-moving party would be prejudiced, (4) the movant was diligent, (5) the need for discovery was foreseeable, and (6) discovery would be futile). ***First***, as the Court recognized last week, discovery is closed, the pretrial filing deadline is imminent, and thus "re-opening discovery at this juncture is ill-advised." (ECF No. 1393 at 6.) ***Second***, Goldman Sachs opposes Plaintiffs' belated request.

***Third***, Plaintiffs' request prejudices Goldman Sachs. While Plaintiffs suggest they are not seeking to reopen discovery, they acknowledged multiple times during meet and confer that the data they seek is *useless* unless expert discovery is also reopened. Opening expert discovery has potential ripple effects, threatening to reopen fact discovery into documents, data, and witness testimony used by *both* Plaintiffs' and Defendants' experts to understand how to interpret the data, which at this late date inevitably would upend the February 1 pre-trial submission schedule and the parties' current trial strategies. Additionally, the information Plaintiffs seek is not a straightforward "update." *Over two years ago*, Goldman Sachs informed Plaintiffs that the class-relevant Divisions had been restructured, with more changes to come. (ECF No. 1126 at 2-3.) Goldman Sachs explained that such "divisional restructuring" presented yet another complication of an open-ended class period. *Id*. at 3. Plaintiffs dismissed these concerns as unfounded because "fact discovery has closed." (ECF No. 1139 at 2.) However, these changes fundamentally altered the Divisions and make tracking class relevant roles by pre-2018 divisional alignment exceedingly complicated. Further, in 2020, Goldman Sachs switched its personnel system from PeopleSoft to Oracle HCM Cloud, and many of the relevant data fields changed. Replicating prior productions is not possible because certain data fields no longer exist; and attempting to align data from 2018 to present across two different systems with the hundreds of data fields previously produced will inevitably lead to disagreements, delays, and further discovery motion practice. These burdens "are not trivial" and justify denying Plaintiffs' motion. *See Hnot*, 2006 WL 2381869, at *5–6.

***Fourth***, as noted above, Plaintiffs were not diligent in seeking this data.

***Fifth***, the need for this data was foreseeable. Plaintiffs knew additional promotion cycles were occurring and were aware of the discovery cut-off, yet never pursued this data until recently.

***Sixth***, the sought-after discovery is futile. Plaintiffs' request for "updated personnel data" is on its own meaningless. Contrary to Plaintiffs' claim, the experts in this case do not plug pre-existing data into a static formula and spit out results. In prior analyses the experts reviewed over 100 files across multiple databases, from which they used over 100 unique data fields to construct the variables for their analyses covering thousands of employees. Most of the databases the experts relied upon are no longer maintained by Goldman Sachs in the same format or with the same set of fields. The experts will have to make new decisions regarding how to conduct new analyses

---

[1] Plaintiffs obfuscate by asserting that Goldman Sachs is trying "to unilaterally truncate the promotion claim." Ltr. at 2. But if the promotion claim is truncated, it is of Plaintiffs' own doing. They disavowed the need for the very discovery they now seek and failed to pursue this data after 2018.

Hon. Robert W. Lehrburger
December 22, 2022
Page 3

using new data, with new variables and without some of the variables they previously used. To do this, the experts will likely demand access to updated discovery regarding how the promotions process operated to assess whether and how to modify prior models to fit the new time period. *See, e.g.*, (ECF 1192-9 at ¶¶ 22, 41-43, Appendix B). Absent a wholesale reopening of fact discovery on points the experts have deemed material to their analyses, no meaningful supplemental expert reports are possible, and any compelled production of raw data would be meaningless.

###       D.       Plaintiffs Misconstrue Rule 26's Duty to Supplement

Plaintiffs disregard entirely their burden to show "good cause," and instead mischaracterize their request as "supplementation" under Rule 26(e).[2] Plaintiffs are wrong. Rule 26(e) applies where a "party learns that in some material respect" its disclosures or discovery responses are materially "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Nothing about Defendants' production was "incomplete"—Plaintiffs received exactly what they requested and agreed to as the parameters for data production. Plaintiffs' manufactured "supplementation" request should be rejected. *See, e.g.*, *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 2005 WL 1606059, at *1 (S.D.N.Y. July 7, 2005) (rejecting untimely discovery request as "supplementation" because prior production was not incomplete or incorrect). And, even if there was a duty to supplement, Plaintiffs waived it by failing to diligently pursue this discovery, as noted above. *See, e.g.*, *DC Comics v. Kryptonite Corp.*, 2002 WL 31159121, at *3 (S.D.N.Y. Sept. 26, 2002).

###       E.       Plaintiffs' Proposed Stipulation Is Not Supported by The Law or Facts

Plaintiffs' proposed stipulation is not a meaningful solution to the situation Plaintiffs created for themselves. It would extend any Phase I finding to women (1) who are not included in any fact discovery or expert analysis relevant to Phase I, (2) who have not been given the opportunity to opt out of the class, and (3) many of whom agreed to arbitration. As a matter of due process, women who have not had an opportunity to opt out can neither be bound nor advantaged by Phase I findings. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ("due process requires … that an absent plaintiff be provided with an opportunity to remove h[er]self from the class"). Moreover, Plaintiffs walked away from discovery into Goldman Sachs's current practices by withdrawing their motion for certification of a Rule 23(b)(2) class. (ECF No. 625 at 2) (asking to vacate "all remaining [Rule 23(b)(2)] discovery deadlines"); (ECF No. 627) (vacating Rule 23(b)(2) discovery deadlines).) These choices left Plaintiffs with a "stale record." (ECF No. 560 at 57-58.) They cannot now "undo the consequences of their litigation strategy" by attempting to extend any Phase I finding to individuals and time periods for which they did not conduct discovery. *Cf. Abate v. Fifth Third Bank*, 2019 WL 2409792, at *3 (S.D.N.Y. June 6, 2019).

## III.     CONCLUSION

Trial is a few short months away and pre-trial submissions are due in a matter of weeks. Consistent with its prior rulings, this Court should, again, deny Plaintiffs' request to re-open discovery. In the event the Court grants Plaintiffs' request and allows for new expert reports and depositions, it should do so bilaterally, allowing Goldman Sachs to also update its expert analyses.

---

[2] Plaintiffs' cases do not support their contention that open-ended discovery through a class trial is commonplace. Ltr. at 2. In *Easterling v. Connecticut Dep't of Correction*, 278 F.R.D. 41, 44 (D. Conn. 2011), open-ended discovery was not an issue because the challenged fitness test was utilized only in 2004 and 2006—years before the suit was even filed. In *Velez v. Novartis Pharms. Corp.*, the class period ended in 2007, discovery closed in 2009 and trial began in 2010. *See* S.D.N.Y. No. 04-cv-09194, Class Notice (ECF No. 109), 10/21/2009 Minute Entry, Pretrial Order (ECF No. 177). The class period was extended *only* for purposes of settlement. *Velez v. Novartis*, 2010 WL 4877852, at *1 (S.D.N.Y. Nov. 30, 2010).