January 27, 2023

<u>Via ECF</u>

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger
United States District Court for the
Southern District of New York,
500 Pearl Street,
New York, New York 10007

      Re:   *Chen-Oster, et al*. v. *Goldman, Sachs & Co., et ano*.,
            <u>No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)</u>

Dear Judge Torres and Judge Lehrburger:

      Pursuant to the Court's January 19, 2023 Order addressing the parties' joint letter dated January 14, 2023 (ECF No. 1401) ("Order"), the parties write jointly to: (i) specify which issues are not to be tried by a jury and (ii) elaborate on their request that the Court confirm that witness affidavits are unnecessary here. The parties also write to seek clarity from the Court on (iii) whether and when the Court would like the parties to submit Findings of Fact and Conclusions of Law, and (iv) the deadline for objections and the submission of hard copy exhibits. Plaintiffs also seek further clarity on the Court's order regarding page limitations for the Pre-Trial Memorandum of Law.

      1.     <u>The Parties' Positions on Which Issues are not to Tried to the Jury</u>

      The Order asked that the parties specify "which issues are not to be tried by a jury." (ECF No. 1401.) The parties agree as to what the jury will *hear*, but disagree as to what the jury will *decide*.

      This case involves claims for gender discrimination under two laws: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* ("NYCHRL"). Plaintiffs assert disparate impact and disparate treatment claims under both laws.

      The parties agree the jury will *hear* all the evidence in the Phase I trial. The parties further agree the jury will *decide* both of Plaintiffs' disparate treatment claims and Plaintiffs' New York City Human Rights Law ("NYCHRL") disparate impact claim. That leaves the issue of who will *decide* Plaintiffs' Title VII disparate impact claim. The parties' respective positions are as follows:

*Plaintiffs' position*:

    A.    <u>The Civil Rights Act of 1991 Dictates Which Claims Are Tried To The Jury And To the Bench</u>

As a matter of statute, Title VII disparate impact claims are tried to the bench and disparate treatment claims are tried to a jury.  This is a direct result of Congress's modifications to Title VII in the Civil Rights Act of 1991 ("CRA"). Prior to the Congress's passage of the CRA, a plaintiff seeking monetary relief for disparate treatment and disparate impact claims under Title VII could recover only back pay and front pay. Because back and front pay have historically been recognized as equitable relief under Title VII, neither party was entitled to a jury trial; both disparate treatment and disparate impact claims were tried to the bench. *Robinson v. Metro–N. Commuter R.R. Co.,* 267 F.3d 147, 157 (2d Cir. 2001). The CRA enhanced Title VII's remedial scheme for disparate treatment claims: in addition to back and front pay, it authorized the recovery of compensatory and punitive damages in disparate treatment disputes and afforded a jury trial where these additional remedies are sought. 42 U.S.C. § 1981a(a)(1); *see also Smith v. Connecticut Dep't of Correction*, No. 3:13-CV-00828 VLB, 2014 WL 3824357, at *9 (D. Conn. Aug. 4, 2014). Disparate impact claims, however, received no such enhanced treatment.

Now, under the CRA, a plaintiff bringing suit under Title VII, 42 U.S.C. § 2000e-5, may recover compensatory and punitive damages, *but not* if the claim alleges that an employment practice is unlawful "because of its disparate impact." 42 U.S.C. § 1981a(a)(1). Thus, disparate impact Title VII claimants can recover equitable relief but not compensatory and punitive damages; accordingly, there is no right to jury trial for disparate impact claims. *Pollard v. Wawa Food Market*, 366 F. Supp. 2d 247, 254 (E.D. Pa. 2005) ("Because [plaintiff] proceeds under a disparate impact theory, and not under a theory of intentional discrimination, if successful on her Title VII claim she would be entitled only to equitable relief. 42 U.S.C. § 1981a(a)(1). She therefore is not entitled to a jury trial on that claim.").

Based on this statutory history, district courts agree that unlike Title VII disparate treatment claims, Title VII disparate impact claims afford no right to a jury and are tried to the bench. *See, e.g., Williams v. Boeing Co.,* 225 F.R.D. 626, 628 (W.D. Wash. 2005); *Baptist v. City of Kankakee*, No. 03-CV-2115, 2005 WL 8166941, at *1 (C.D. Ill. Oct. 19, 2005), *aff'd,* 481 F.3d 485 (7th Cir. 2007), *as amended* (Mar. 26, 2007); *Barner v. City of Harvey*, No. 95 C 3316, 2002 WL 1052044, at *1 (N.D. Ill. May 22, 2002); *Velez v. Novartis*, Case No.04-cv-09194-CM (S.D.N.Y March 31, 2010) at ECF 280 (attached hereto as Exhibit A). Circuit courts reviewing these types of cases affirm the appropriateness of Title VII disparate treatment claims being submitted to a jury as the trier of fact, and that disparate impact claims, even when related, are tried in a bench trial. *See Legg v. Ulster Cty.,* 832 F. App'x 727, 729 (2d Cir. 2020) (ruling that disparate treatment claims be submitted to the jury and the disparate impact claims tried in a bench trial); *Albert v. N.Y.C. Sch. Constr. Auth.*, 99 F. App'x 306, 308-09 (2d Cir. 2004) (same); *Ernst v. City of Chi.*, 837 F.3d 788, 791 (7th Cir. 2016) (same).

      B.    <u>This Clear Delineation Does Not Pose A Seventh Amendment Violation</u>

This well-settled framework, as applied by many courts, does not violate the Seventh Amendment. The Reexamination Clause of the Seventh Amendment provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States." U.S. CONST. amend. VII. To address this issue, judges faced with trials of both disparate impact and disparate treatment claims have simply held that the judge will refrain from making factual findings on the disparate impact claim until the jury has made its findings on the disparate treatment claim. For example, in *Velez v. Novartis*, a gender discrimination class action tried in this District in 2010, the Court's Order Concerning Trial Procedure states that, "the Court expects all evidence relating to Novartis' liability under either theory to be presented during the jury trial. While the jury is deliberating, you will argue your respective disparate impact cases to me, based on the evidence previously admitted. Obviously I will await the jury's ruling on disparate treatment before ruling on disparate impact, but you will have your verdict on liability under a disparate impact theory within days of the jury's verdict on disparate treatment." *See* Exhibit A, attached. Similarly, in *Williams v. Boeing Co.* the district court held that "when a disparate treatment claim seeking punitive damages is pled with a disparate impact claim, both claims may be tried at the same time, but the Court will not make any factual findings on the disparate impact claim until the jury has made its findings on the disparate treatment claim." 225 F.R.D. at 640. The court recognized that "[w]hen a factual question is common to both legal and equitable claims in the same action, the jury must make its *factual findings* on the legal claim before the court can rule on the equitable claim." *Id*. (emphasis added).

This is exactly how trial in the case will proceed here.[1]

      C.    <u>Disparate Impact Is Not An Essential Element of Disparate Treatment</u>

Below, Goldman argues that this case is different from all those discussed above, and that here (contrary to statute) the jury must decide Plaintiffs' disparate impact claim, based on the incorrect argument that disparate impact is an essential element of Plaintiffs' disparate treatment claim. Not so.

Goldman conflates the proposition that proof of statistical disparities is relevant to disparate treatment (true) with the proposition that the jury must first determine whether Plaintiffs prevail on disparate impact before it can determine disparate treatment (false). The claims are separate and one is not subsumed within the other.

Plaintiffs establish a prima facie case of disparate impact by "identifying the specific employment practice that is challenged" and then "offer[ing] statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1987); *see also Robinson*, 267 F.3d at 160 (same). Because the statistics must support the inference that the challenged practice is the cause of the disparity,

---

[1] Plaintiffs' proposed jury charges are premised on the allocation of the Title VII disparate impact claim to the Court. Should the Court order something different, Plaintiffs request the ability to submit revised jury charges to comport with the Court's order.

courts often require a showing of a "statistically significant" impact – two standard deviations or more. *See Guardians Ass'n v. Civil Serv. Comm'n of New York*, 630 F.2d 79, 86 (2d Cir. 1980); *Chin v. Port Auth. Of N.Y. and N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) ("The statistics must reveal that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity."). Yet even a substantial or significant statistical disparity does not necessarily render disparate impact unlawful. Goldman may still prevail if it can meet its burden to show that the challenged practices are job related and consistent with business necessity, though Plaintiffs may overcome that with a showing that Goldman could have used less discriminatory alternatives. *United States v. City of New York*, 731 F. Supp. 2d 291, 299 (E.D.N.Y. 2009). The point is that evidence of statistical disparities is but one part of a disparate impact claim, not the entirety of it.

Moreover, the purpose of the statistical showing in a disparate impact claim is different from a disparate treatment claim. Disparate treatment does not require the identification of a specific employment practice that causes a disparate impact (although Plaintiffs have offered that in this case), so the statistical evidence is not offered to support an inference of causation. Rather, it is offered to show a pattern-or-practice of discrimination. *See City of New York*, 717 F.3d at 84 (citing *Hazelwood School District v. United States*, 433 U.S. 299, 307–08 (1977) ("Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination.") The statistical showing may also be combined with further evidence of intent; for example, that the employer knew of bias in its processes and used them anyway.[2]

Accordingly, the jury could find that statistical disparities, particularly when combined with other evidence of intent, proves disparate treatment, without having to first find that the same statistical evidence proves disparate impact. Moreover, there is no requirement that a jury decide all three prongs of the impact claim before it can address the treatment claim, and Goldman identifies no authority for that novel proposition.

Certainly, the evidence supporting both claims is overlapping. But it is for the Court to decide –with appropriate deference to the jury's factual findings – whether the parties have satisfied their respective burdens in the disparate impact burden-shifting framework.

D. The Legal Standard Under Title VII Is Different From The NYCHRL

Unlike Title VII, the New York City Human Rights Law does confer a right to a jury trial on disparate impact claims, and Goldman has invoked this right. However, that does not mean

---

[2] While not directly relevant to the issue before the Court, Plaintiffs note that Goldman mischaracterizes the legal standard for a disparate treatment claim, arguing that the Plaintiffs must prove that Goldman used the challenged practices in order to discriminate against women. Goldman confuses the standard of purposeful discrimination under equal protection law with intentional discrimination under Title VII. *Compare City of New York*, 717 F.3d at 91 (under Title VII, discriminatory intent can be shown by "the City's use of the exams, once their racially disparate impact was known") with *id*. at 93 (under §1981, purposeful discrimination requires showing the city adopted the processes because of their impact). Plaintiffs will address this issue in their pretrial memorandum of law.

that the jury should also decide the Title VII claim.  While the parties will provide evidence that is relevant to both claims, the legal standards governing those claims are different in material ways.  For instance, Goldman's burden to rebut Plaintiffs' prima facie case under Title VII requires a showing that the practice is "job related for the position[s] in question and consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).  Under the NYCHRL, on the other hand, Goldman's burden is to show that its practices "bears a significant relationship to a significant business objective of [Goldman Sachs] or does not contribute to the disparate impact."  NYC Admin Code §§ 8-107(17)(a)(2).  The NYCHRL is phrased for lay people, whereas, as legal commenters have observed, the Title VII standard is tied to complex expert testimony that Congress deliberately entrusted to the Court.  *See* Douglas C. Herbert & Lani Schweiker Shelton, *A Pragmatic Argument Against Applying the Disparate Impact Doctrine in Age Discrimination Cases*, 37 S. Tex. L. Rev. 625, 651-52 & n.147 (1996). Also, the New York legislature has made it clear that the NYCHRL should be construed liberally to afford broader protections for employees than corresponding federal law.  NYC Admin Code § 8-130.

*   *   *

In sum, it is clear from the authorities set forth in Section A, above, that Congress directed the Court to decide Title VII disparate impact claims.  The fact that there is also a NYCHRL disparate impact claim does not alter this result.  The Court and the jury each have a role to play in deciding whether the evidence meets the (different) legal standards that each is charged with deciding.  In the event the Court decides that there are factual findings predicate to both decisions, it can use special interrogatories to obtain the jury's factual findings before it renders its verdict.

Plaintiffs' proposal matches how courts actually try discrimination cases when both impact and treatment are alleged.  Goldman's argument, in contrast, is without direct support.  Goldman fails to identify a single case where a jury decided the plaintiffs' Title VII disparate impact case.

### *Goldman Sachs's position*:

The Reexamination Clause of the Seventh Amendment provides that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States."  U.S. CONST. amend. VII.  As the Second Circuit has held, "when an issue is common to both legal and equitable claims," the legal claim "must be tried first to a jury" because the Seventh Amendment jury trial right "extends to all factual issues necessary to resolving" the legal claims.  *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  The jury's resolution is then binding on the Court.  *See id.* (noting the jury must decide "common factual issues necessary to the resolution of each claim.")

Because all the legal issues to be decided in Plaintiffs' Title VII disparate impact claim are subsumed by Plaintiffs' disparate treatment claims or NYCHRL disparate impact claim, the

Reexamination Clause requires that the jury decide all of the relevant legal issues in the Phase I trial.[3]

> A. The Jury Must Find Unlawful Disparate Impact as an Essential Element for Disparate Treatment Under Plaintiffs' Theory of the Case and the Court's Class Certification Order.

This Court certified specified disparate impact and disparate treatment theories under Title VII and the NYCHRL. As to Plaintiffs' disparate impact claims, the Court granted certification on the theory that three employment evaluation processes used by Goldman Sachs during the class period—360 reviews, manager quartiling, and promotions from vice president to extended managing director (collectively, the "Evaluation Processes")—had a disparate impact on female associates' and vice presidents' 360 review scores and quartile ranks and vice presidents' promotion rates. (March 30, 2018 Order (ECF No. 578) at 41, 45 n.16, 49.) With respect to Plaintiffs' disparate treatment claims, the Court granted certification *solely* on the "theory" that senior executives at Goldman Sachs responsible for implementing and maintaining the Evaluation Processes had knowledge of the unlawful disparate impact caused by the Evaluation Processes yet continued to use them to discriminate against women. (*Id.* at 41, 45 n.16, 49.) In the Court's words, "Plaintiffs style [their disparate treatment] claim as Goldman Sachs' 'awareness of the discriminatory impact of its employment practices and continued use' of the practices." (*Id.* at 45 n.16 (citing Pls.' Obj. to Class Cert. R&R (ECF No. 511) at 52) (alterations omitted).)

Accordingly, Plaintiffs must *first* prove that the Evaluation Processes had an unlawful disparate impact on the class, and *then* prove discriminatory intent, *i.e.*, that the decision-makers at Goldman Sachs responsible for implementing and maintaining the Evaluation Processes were aware of this unlawful disparate impact, and continued to use the Evaluation Processes because of that impact and to discriminate against the class. *See, e.g.*, *United States v. City of New York*, 717 F.3d 72, 91 (2d Cir. 2013) (finding disparate impact statistics of exam scores alone are not evidence of purposeful discrimination, but instead it must be shown that "the City used the Exams with the intent to discriminate"); *Nunez v. Cuomo*, No. 11-3457, 2012 WL 3241260, at *15 (E.D.N.Y. Aug. 7, 2012) (Irizarry, J.) (dismissing disparate treatment claim where plaintiffs could not "trac[e] the disparate impact to a *purpose* to discriminate on the basis of their status as minorit[ies]" on the part of former New York Governor Cuomo (internal quotation marks and citation omitted) (emphasis in original).[4] Consistent with the Seventh Amendment, this means

---

[3] To be clear, Goldman Sachs is not arguing that Title VII disparate treatment and disparate impact claims must *always* be decided by the jury when they are joined in the same case. Nor is it Goldman Sachs' position that the jury must decide Plaintiffs' Title VII disparate impact claim on its own. Rather, unlike the cases Plaintiffs cite above, here, all of the issues relevant to Plaintiffs' Title VII disparate impact claim are subsumed by Plaintiffs' other claims, and the jury's verdict on those issues (and claims) will be binding on the Court for purposes of Plaintiffs' Title VII disparate impact claim pursuant to the Seventh Amendment.

[4] *See also American Fed'n of State, Cnty., and Municipal Emps., AFL-CIO (AFSCME)* v. *State of Washington*, 770 F.2d 1401, 1403–05 (9th Cir. 1985) (holding that, under Title VII, "[i]t is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a

the jury—not the Court—must decide these issues, including the predicate issue of whether the Evaluation Processes had an unlawful disparate impact on the class, as it is part and parcel of Plaintiffs' Title VII disparate treatment claim.  U.S. CONST. amend. VII; *Robinson*, 267 F.3d at 170.[5]

Because the jury must determine whether the Evaluation Processes had an *unlawful* disparate impact, the jury necessarily must decide (1) whether the Evaluation Processes were job related and consistent with business necessity, and (2) whether Plaintiffs have identified equally effective alternatives that would not have resulted in a disparate impact and were available to Goldman Sachs during the relevant time period.  42 U.S.C. § 2000e-2(k)(1)(A)(i); N.Y.C. Admin Code § 8-107(17); *Robinson*, 267 F.3d at 161; *Houser v. Pritzker*, 28 F. Supp. 3d 222, 234–35 (S.D.N.Y. 2014) (Maas, M.J.).  Otherwise, there is no *unlawful* discrimination.  It is not unlawful to use an employment practice that results in a disparate impact on a protected group if that practice is job related and consistent with business necessity, or if there is no equally effective alternative that would not have resulted in a disparate impact.  *Id.*  Evidence relevant to the disparate impact analysis may also be relevant to the disparate treatment claim.  *See, e.g.*, *City of New York*, 717 F.3d at 91 (finding that whether "the lack of job-relatedness" of the exams at issue "should have been apparent to the City and whether the City's use of the Exams, once their racially disparate impact was known" is relevant to proving whether "the City used the Exams *with the intent to discriminate*") (emphasis added).

Plaintiffs' alternative—of the jury hearing but not deciding the issues relevant to Plaintiffs' Title VII disparate impact claim—would result in the Court, rather than the jury, deciding an essential element of the disparate treatment claims, which everyone agrees must be tried to the jury.  The jury would then be bound by the Court's finding, rather than the other way around, in contravention of the Seventh Amendment.

        B.      <u>Because The Jury Must Decide Plaintiffs' NYCHRL Disparate Impact Claim, The Court Will Be Bound By The Jury's Findings With Respect to Plaintiffs' Title VII Disparate Impact Claim.</u>

Not only must the jury decide the issues relevant to Plaintiffs' Title VII disparate impact claim because they are an essential element of Plaintiffs' disparate treatment claims, the critical

---

protected group," and instead "[t]he plaintiff must show the employer chose the particular policy because of its effect on members of a protected class"); *E.E.O.C.* v. *Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273–74 (11th Cir. 2000) (emphasizing that "disparate treatment claims require proof of discriminatory intent," and "the plaintiff bears the ultimate burden of proving that the employment action"—the failure to hire female servers—"was taken *because of* the plaintiff's [protected characteristic]") (emphasis added).

[5] As Plaintiffs note in Footnote 3 above, the parties disagree over whether there is a difference between "purposeful" discrimination and "intentional" discrimination.  As will be addressed in Goldman Sachs' pre-trial memorandum of law, case law confirms there is no meaningful difference.  *See, e.g.*, *Men of Color Helping All Soc., Inc. v. City of Buffalo*, 529 Fed. Appx. 20, 25–27 (2d Cir. 2013) (addressing plaintiffs' "discrimination claims" collectively, including "intentional" and "purposeful" claims brought under Title VII, the New York State Human Rights Law, and sections 1981 and 1983.)

issues for Plaintiffs' Title VII disparate impact claim also are subsumed by Plaintiffs' NYCHRL claim, which Plaintiffs agree must be tried to the jury. Accordingly, the jury, rather than the Court, must decide the Title VII disparate impact claim, or the Court risks reaching an inconsistent conclusion with the jury based on substantially similar evidence of legal standards.

*First*, the legal standards governing Plaintiffs' *prima facie* case of disparate impact under Title VII and the NYCHRL are substantially the same. Specifically, Plaintiffs' disparate impact claim under Title VII "involve[s] three stages of proof." *Robinson*, 267 F.3d at 160. Plaintiffs must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Id.* at 160. The NYCHRL, with immaterial differences, likewise requires Plaintiffs to identify an employment practice and establish a causal link to a disparity. *See* N.Y.C. Code § 8-107(17)(a)(1) (requiring plaintiffs to demonstrate that a policy or practice "*results in* a disparate impact") (emphasis added).

*Second*, the legal standards governing Goldman Sachs' defenses to Plaintiffs' Title VII and NYCHRL disparate impact claims are substantially similar. Under Title VII, if Plaintiffs prove their *prima facie* case of disparate impact, Goldman Sachs can still prevail if it demonstrates the Evaluation Processes were "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Likewise, under the NYCHRL, if Plaintiffs prove their *prima facie* case of disparate impact, Goldman Sachs can still prevail if it proves by a preponderance of the evidence that the Evaluation Processes bear a significant relationship to a significant business objective. N.Y.C. Admin Code § 8-107(17); *Syeed v. Bloomberg L.P.*, No. 20-7464, 2022 WL 3447987, at *11 (S.D.N.Y. Aug. 17, 2022) (Woods, J.) (same Title VII factors apply); *see also, e.g.*, *Hamilton v. City of New York*, 563 F. Supp. 3d 42, 59 (E.D.N.Y. 2021) (Garaufis, J.) (finding NYCHRL disparate impact claim failed for same reason Title VII disparate impact claim failed).

*Third*, the legal standards governing the last prong of Plaintiffs' disparate impact claim are substantially similar (and where they differ, the NYCHRL standard favors Plaintiffs). Under Title VII, if Goldman Sachs demonstrates "the challenged practice is job related for the position in question and consistent with business necessity," the burden shifts back to Plaintiffs to prove (i) "the availability of an alternative policy or practice that would also satisfy the asserted business necessity . . . without producing the disparate effect." *Robinson*, 267 F.3d at 161. Likewise, under the NYCHRL, if Goldman Sachs demonstrates the Evaluation Processes bear a significant relationship to a significant business objective, the burden shifts back to Plaintiffs to produce "substantial evidence that an alternative policy or practice with less disparate impact [was] available to [Goldman Sachs] and [Goldman Sachs] fail[ed] to prove that such alternative policy or practice would not serve [Goldman Sachs] as well." N.Y.C. Admin Code § 8-107(17)(a)(2).

Not only are the legal standards substantially similar, but Plaintiffs intend to rely on the *same* evidence for purposes of proving Plaintiffs' disparate impact claims under both Title VII and the NYCHRL.[6] Indeed, Plaintiffs' statistical expert, Dr. Henry Farber, did not conduct

---

[6] In their operative complaint, Plaintiffs themselves cite to the exact same factual allegations for purposes of the disparate impact claims under Title VII and the NYCHRL and Plaintiffs use

separate statistical analyses for purposes of Plaintiffs' Title VII and NYCHRL claims; instead, Plaintiffs intend to use the exact same statistical models as their proof that the Evaluation Processes allegedly resulted in an unlawful disparate impact on class members. (Farber Rpt. (ECF No. 1225-57).) Similarly, the parties intend to rely on the exact same expert opinions and fact evidence for purposes of the second and third prongs of Plaintiffs' disparate impact claims—including the opinions of their respective I/O psychologist experts, Dr. Wayne Cascio and Dr. Eric Dunleavy, who did not render separate opinions on these issues for purposes of Plaintiffs' Title VII and NYCHRL claims. (Cascio Rpt. (ECF No. 1225-76); Dunleavy Rpt. (ECF No. 1192-2).)

For these reasons, the jury rather than the Court must decide the issues relevant to Plaintiffs' Title VII disparate impact claim.

### 2. Witness Affidavits

The Court's Individual Practices, § V.E.ii.a, state that, in non-jury cases, witness affidavits "constitut[e] the direct testimony of each trial witness." But here, because the parties agree the Phase I jury will hear *all* the evidence, including testimony from all trial witnesses, they agree witness affidavits are unnecessary.

### 3. Findings of Fact and Conclusions of Law

The parties agree that because the jury will hear all the Phase I evidence, submitting Findings of Fact and Conclusions of Law with the rest of the parties' pre-trial submissions on February 1, 2023 would be premature. Accordingly, the parties respectfully and jointly request that to the extent the Court wants the parties to submit Findings of Fact and Conclusions of Law, the Court confirm the parties should not do so until one week after the jury has rendered its verdict in this case.

### 4. Deadline for Objections and Submission of Hard Copy Exhibits

In the parties' joint letter to the Court on January 14, 2023, the parties asked the Court to extend the deadline for oppositions to motions *in limine*, pretrial memoranda of law, jury instructions, verdict forms, and voir dire questions to February 22 (ECF No. 1400). The Court granted the parties' request and extended the deadline for oppositions to motions *in limine* to February 22 (ECF No. 1401). Although the Court's order does not explicitly address the other referenced filings, the parties understand the Court's order to have extended the deadline for oppositions to pretrial memoranda of law, jury instructions, verdict forms, and voir dire questions to February 22 as well, and will proceed accordingly absent contrary direction from the Court.

Additionally, with respect to the submission of hard copies of the exhibits and deposition transcripts, in light of the Court's agreement to allow the parties to supplement exhibit lists and deposition designations, the parties agree that on February 23, they will provide hard copies of

---

literally identical language to describe the substance of the two claims. (*See* Second Am. Compl. at ¶¶ 154, 156, 170, 172.)

only the exhibits and transcripts to which there are objections. They will provide the full set of exhibits and transcripts after the deadline for supplemental exhibit lists.

5.  The Applicable Page Limit for the Parties' Memoranda of Law

In their joint letter to the Court on January 14, 2023, the parties asked that each party be given a total limit of 90 pages to be allocated by each party as they saw fit between (i) briefs in support of motions *in limine* and (ii) the pretrial memoranda of law contemplated in the Court's Individual Practices § V.C.ii (confirming that each party shall file and serve "[i]n all cases, a pretrial memorandum of law, if a party believes it would be useful to the Court.") (ECF No. 1400 at 2.) In response, the Court ordered that the parties shall limit any motions *in limine* and opposition briefs to 45 pages each, without addressing a page limitation to the parties' memoranda of law (the "Pre-Trial Briefs"). (ECF No. 1401 at 1.)

*Plaintiffs' position*:

The Court rejected the parties' request for 90-pages for motions *in limine* and pretrial memoranda of law. *See id.* Thus, Plaintiffs understand the Court's order to mean that the parties have 45 pages total for opening submissions (*i.e.*, for motions in *limine and* memoranda of law together). This is a reasonable allocation, and sufficient for each party's briefing of both motions in *limine* and memoranda of law.[7]

Goldman's request for (unlimited) additional pages for the memoranda of law has already been rejected by the Court. Goldman's proposal creates unnecessary work for the parties and the Court (*cf.* Fed. R. Civ. P. 1), and has the potential to confuse, rather than clarify, the issues at play. As to the topics Goldman contemplates addressing through its memoranda, the Court already has the benefit of the parties' extensive class certification, summary judgment, decertification, and reconsideration briefing.

*Goldman Sachs's position*:

The Court's order is clear. The 45-page limit applies only to brief(s) in support of motions *in limine*, and it does not encompass the parties' respective Pre-Trial Briefs. Goldman Sachs understands that Pre-Trial Briefs are intended to aid the Court in its preparation for trial by providing a general overview of the case's long history and each party's view of law applicable to the issues to be decided at trial. Here, the Court faces complex and overlapping questions of law, standards of proof, and evidence in a certified class action covering more than 20 years through Plaintiffs' disparate impact and disparate treatment claims under both Title VII and the NYCHRL. There is no question Pre-Trial Briefs would "be useful to the Court" in this case.

To the extent the Court is inclined to set a page limit in light of the parties' disagreement on this issue, Goldman Sachs respectfully requests that the Court impose a page-limit of 45 pages, which is consistent with the 90-page limit to which the parties already agreed prior to submitting their January 14, 2023 joint letter and reflects the lengthy history and record in the

---

[7] Plaintiffs' prior accommodation of a proposed page limit was conditioned on the Court approving such request. The Court did not, and Plaintiffs do not need those extra pages regardless.

case, and the complex legal issues to be presented to the jury.  Though Plaintiffs now state they can fit their motion *in limine* briefing and Pre-Trial Brief into 45 pages, Goldman Sachs relied on Plaintiffs' prior agreement in preparing its pre-trial submissions, and respectfully submits that the Court would benefit from Pre-Trial Briefs that adequately address the issues to be tried in a few short months.  Additionally, given the complexity of issues to be addressed in motions *in limine*, it does not make sense to allocate any portion of the 45-page limit the Court already ruled should apply to motions *in limine* to the parties' respective Pre-Trial Briefs.

Respectfully submitted,

| | |
|---|---|
| */s/ Anne B. Shaver* | */s/ Erin M. Connell* |
| Kelly M. Dermody (admitted *pro hac vice*) | Erin M. Connell (admitted *pro hac vice*) |
| Anne B. Shaver (admitted *pro hac vice*) | Kathryn G. Mantoan (admitted *pro hac vice*) |
| Michael Levin-Gesundheit (admitted *pro hac vice*) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| Michelle Lamy (admitted *pro hac vice*) | 405 Howard Street |
| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP | San Francisco, CA  94105 |
| 275 Battery Street, 29th Floor | |
| San Francisco, California  94111-3339 | Lynne C. Hermle (admitted *pro hac vice*)) |
| Telephone: (415) 956-1000 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| Facsimile: (415) 956-1008 | 1000 Marsh Road |
| | Menlo Park, CA  94025 |
| Rachel Geman | |
| Jessica Moldovan | Marc Shapiro |
| 250 Hudson Street, 8th Floor | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| New York, New York  10013-1413 | 51 West 52nd Street |
| Telephone: (212) 355-9500 | New York, NY  10019 |
| Facsimile: (212) 355-9592 | |
| | Robert J. Giuffra, Jr. |
| Adam T. Klein | Sharon L. Nelles |
| Cara E. Greene | Ann-Elizabeth Ostrager |
| Christopher McNerney | Hilary M. Williams |
| Sabine Jean | SULLIVAN & CROMWELL LLP |
| OUTTEN & GOLDEN LLP | 125 Broad Street |
| 685 Third Avenue, 25th Floor | New York, New York  10004 |
| New York, New York  10017 | |
| Telephone: (212) 245-1000 | Amanda Flug Davidoff |
| Facsimile: (646) 509-2060 | Jeffrey B. Wall (admitted *pro hac vice*) |
| | SULLIVAN & CROMWELL LLP |
| | 1700 New York Avenue, N.W., Suite 700 |
| *Attorneys for Plaintiffs and the Certified Class* | Washington, D.C.  20006 |
| | *Attorneys for Defendants* |