## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis, <br><br> Plaintiffs, <br><br> v. <br><br> Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc., <br><br> Defendants. | 10 Civ. 6950 (AT) (RWL) <br><br> **JOINT PRETRIAL ORDER** |

Pursuant to the Court's October 11, 2022 Scheduling Order (ECF No. 1380) and Rule V(B) of Your Honor's Individual Practice in Civil Cases, Plaintiffs H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis ("Plaintiffs") and Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc.[1] ("Defendant," collectively with Plaintiffs, "the Parties") submit to the Court for its approval the following Joint Pre-Trial Order.

---

[1] The Parties' pretrial submissions, including their summary of claims and defenses, witness lists, deposition designations and counter-designations, exhibit lists, jury instructions, voir dire questions, verdict forms, pretrial memorandums of law, motions *in limine*, and objections and oppositions, set forth their view of the proper scope of this Phase I trial. However, recent meet and confer discussions confirm that the Parties have a fundamentally different view of the nature and scope of Phase I. The Parties have tailored their pretrial submissions and objections to conform to their view of the proper contours of Phase I while accounting for evidence the other party claims to be at issue. As to each of their pretrial submissions, the Parties reserve the right to supplement or otherwise modify to account for any pretrial rulings, including rulings on the Parties' motions *in limine*. The Parties further reserve the right to object at trial, on any appropriate ground, to all or part of any witness testimony, exhibits, or evidence proffered by the other party to the extent permitted by the Federal Rules of Evidence or other applicable rule or law.

I.      **Full Caption of the Action:**

The full caption of this action is: *H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis v. Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc.*, No. 10-Civ.-695.

II.     **Names, Addresses, Telephone and Fax Numbers of Trial Counsel**[2]

**Attorneys for Plaintiffs:**

Adam T. Klein
atk@outtengolden.com
Cara E. Greene
ceg@outtengolden.com
Christopher M. McNerney
cmcnerney@outtengolden.com
Michael C. Danna
mdanna@outtengolden.com
Sabine Jean
sjean@outtengolden.com
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:    (212) 245-1000
Fax:     (646) 509-2060

Kelly M. Dermody
kdermody@lchb.com
Anne B. Shaver
ashaver@lchb.com
Brendan P. Glackin
bglackin@lchb.com
Michelle Lamy
mlamy@lchb.com
Michael Levin-Gesundheit
mlevin@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, Suite 2900
San Francisco, CA 94111
Tel.: (415) 956-1000
Fax: (415) 956-1008

Rachel J. Geman
rgeman@lchb.com
Jessica A. Moldovan
jmoldovan@lchb.com
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: (212) 355-9500
Fax: (212) 355-9592

**Attorneys for Defendant:**

Lynne C. Hermle (admitted *pro hac vice*)
lchermle@orrick.com

Robert J. Giuffra, Jr.
giuffrar@sullcrom.com

---

[2] Counsel for all parties seek permission to submit their cell phone numbers, which are not published, via email to the Court.

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA  94025
Office: (650) 614-7400
Fax: (650) 614-7401

Erin M. Connell (admitted *pro hac vice*)
econnell@orrick.com
Kathryn G. Mantoan (admitted *pro hac vice*)
kmantoan@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105
Office: (415) 773-5700
Fax: (415) 773-5759

Marc Shapiro
mrshapiro@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY  10019
Office: (212) 506-5000
Fax: (212) 506-5151

Sharon L. Nelles
nelless@sullcrom.com
Ann-Elizabeth Ostrager
ostragerae@sullcrom.com
Hilary M. Williams
williamsh@sullcrom.com
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Office: (212) 558-4000
Fax: (212) 558-3588

Amanda Flug Davidoff
davidoffa@sullcrom.com
Jeffrey B. Wall (admitted *pro hac vice*)
wallj@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
Office: (202) 956-7500
Fax: (202) 956-7500

III.  **Consent to Trial by a Magistrate Judge:**

All Parties have not consented to trial by a magistrate judge.

IV.  **Basis for Subject Matter Jurisdiction:**

A.  **Plaintiffs' Statement:**

The Court has original subject matter jurisdiction over Plaintiffs' claims under Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (Title VII") pursuant to 28 U.S.C. §§

1331 and 1343 and 42 U.S.C. § 2000e–5(f)(3), because they arise under the laws of the United

States and are brought to recover damages for deprivation of equal rights.

The Court has original jurisdiction over Plaintiffs' claims under the New York City

Human Rights Law, Administrative Code § 8-107 *et seq*. ("NYCHRL") under the Class Action

Fairness Act, 28 U.S.C. § 1332(d).  This is a putative class action in which: (1) there are 100 or

more members in the class; (2) at least some members of the proposed class have a different citizenship from at least one defendant; and (3) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

The Court also has supplemental jurisdiction over Plaintiffs' NYCHRL claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

**B. Defendant's Statement:**

The Court has original subject matter jurisdiction over the Title VII claims pursuant to 28 USC § 1331 and supplemental jurisdiction over the NYCHRL claims under 28 U.S.C. § 1367.

**V.    <u>Summary of Claims and Defenses:</u>**

**A. Plaintiffs' Position:**[3]

Pursuant to Court order, this trial will proceed in two "Phases":  Phase I will address the claims of Plaintiffs and the Class that (a) three Goldman practices (360 Reviews, Quartiling, and Cross-Ruffing) caused an unlawful disparate impact on the Class; (b) that Goldman intentionally discriminated against the Class because it knew that these practices disadvantaged women and continued to use them; and (c) the Class's entitlement to punitive damages (but not the amount). *See, e.g.*, ECF No. 888 (Nov. 11, 2019 Order) ¶ 8.  Phase II will include the individual, non-class claims of the Named Plaintiffs and, if there is a verdict for the Class in Phase I, a determination of damages for the Named Plaintiffs and Class Members (including backpay and amount of punitive damages).  *Id.*  Additionally, the case will proceed to a remedial stage and the Plaintiffs and Class Members may seek additional remedial and make-whole relief to the extent permitted

---

[3] *See also* Plaintiffs' Pretrial Memorandum of Law (Feb. 1, 2023).

by statute.  *See, e.g.*, *United States v. City of N.Y.*, 681 F. Supp. 2d 274, 282 (E.D.N.Y. 2010);

*see also Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151-52 (2d Cir. 2012);

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 159-161 (2d Cir. 2001).  Thus,

there are no claims that Plaintiffs previously asserted, that will not be tried either at Phase I or

Phase II.  Accordingly:

*Plaintiffs' asserted claims that will be tried in Phase I of the trial are*:

1. Intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, on behalf of all Plaintiffs and the National Class (First Claim for Relief of Plaintiffs' Second Amended Complaint) – to be tried to the jury.

2. Disparate impact discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, on behalf of all Plaintiffs and the National Class (Second Claim for Relief of Plaintiffs' Second Amended Complaint) – to be tried to the Court.

3. Intentional discrimination in violation of the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.*, on behalf of all Plaintiffs and the New York Class (Third Claim for Relief of Plaintiffs' Second Amended Complaint) – to be tried to the jury.

4. Disparate impact discrimination in violation of the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.*, on behalf of all Plaintiffs and the New York Class (Fourth Claim for Relief of Plaintiffs' Second Amended Complaint) – to be tried to the jury.

*Plaintiffs' individual asserted claims that will <u>not</u> be tried in Phase I of the trial are*:

5. Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, on behalf of Plaintiffs Chen-Oster, Orlich, and Gamba Individually (Fifth Claim for Relief of Plaintiffs' Second Amended Complaint).

6. Retaliation in violation of the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 *et seq.*, on behalf of Plaintiffs Chen-Oster, Orlich, and Gamba Individually (Six Claim for Relief of Plaintiffs' Second Amended Complaint).

7. Pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act, 42

U.S.C. § 2000e(k)), on behalf of Plaintiffs Chen-Oster and Gamba Individually (Seventh Claim for Relief of Plaintiffs' Second Amended Complaint).

Defendant's position below misstates the law with respect to what Plaintiffs must prove as to each of their claims, the relevant defenses, and the types of evidence the jury may consider; the proper legal standards are set forth in Plaintiffs' Pretrial Memorandum of Law (Feb. 1, 2023).

## B. Defendant's Position:

This trial will proceed in two phases. At issue in Phase I are (1) Plaintiffs' claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq* that the 360 reviews, quartiling, and promotions (collectively, the "Evaluation Processes") caused a disparate impact on female associates and vice presidents who occupied revenue-producing roles in three of Goldman Sachs's revenue-producing divisions, and (2) Plaintiffs' disparate treatment claims under Title VII and the NYCHRL, based on a theory of "awareness of discriminatory impact and intentional continued use" of the Evaluation Processes with the same class of employees.[4] *See* Cert. Order (ECF No. 578) at 49 (Torres, J.). As this Court explained in its January 31, 2023 order (ECF No. 1405), Plaintiffs' Title VII disparate impact claim will be tried to the bench; all other claims will be tried to the jury. However, as described further below, the factual findings underlying Plaintiffs' Title VII disparate impact claim will be resolved by the jury in the course of adjudicating Plaintiffs' disparate treatment claims and their NYCHRL disparate impact claim.

For Plaintiffs' disparate impact claims:

- Plaintiffs bear the initial, *prima facie* burden of demonstrating that (1) 360 reviews, quartiling assessments, and the promotions process each constitute a specific

---

[4] The NYCHRL uses the same burden shifting framework as Title VII for both NYCHRL disparate impact and disparate treatment claims and the substantive standards are substantially similar in most respects.

employment practice or policy, (2) class members received substantially and meaningfully lower 360 review performance scores, lower quartille assessments, and fewer promotions than comparable men, and (3) those substantial and meaningful disparities were, respectively, caused by 360 reviews, quartilling assessments, and the promotions process.  These requirements must be shown independently for each process.

- Goldman Sachs can rebut Plaintiffs' alleged proof of disparate impact, attacking one or more prongs of the *prima facie* case (including causation).

- If Goldman Sachs does not succeed in rebutting Plaintiffs' *prima facie* case of disparate impact, Goldman Sachs can nevertheless defend its use of the Evaluation Process(es) for which Plaintiffs established disparate impact by showing that Goldman Sachs's use of each process was "job related for the position in question and consistent with business necessity."

- If Goldman Sachs succeeds in demonstrating the business necessity of the Evaluation Process(es), the burden then shifts back to Plaintiffs, who must identify equally effective alternatives and establish those alternatives would not have had a similar disparate impact and show that Goldman Sachs refused to adopt them.

For Plaintiffs' disparate treatment claims:

- Plaintiffs must *first* prove that the Evaluation Processes had an unlawful disparate impact on women; and *then* prove discriminatory intent, *i.e.*, that the senior decisionmakers at Goldman Sachs responsible for implementing and maintaining the Evaluation Processes were "aware of the discriminatory impact" of those processes but "continue[d] to use them" because of that impact and with the intent and for the purpose of discriminating.  Pls.' Obj. to R&R (ECF No. 511) at 52; Cert. Order (ECF No. 578) at 45 n.16 (Torres, J.).

- Because Plaintiffs' disparate treatment claim is premised on showing the Evaluation Processes had an *unlawful* disparate impact on women, part of the *prima facie* case for Plaintiffs' disparate treatment claim must include a finding by the jury that (1) the Evaluation Processes are *not* job related and consistent with business necessity, and if they are, that (2) Plaintiffs have not identified equally effective alternatives that would not have caused substantial gender disparities and that Goldman Sachs refused to adopt.

- If Plaintiffs present evidence that Goldman Sachs acted with the intent to discriminate against an entire class, Goldman Sachs can rebut that evidence by challenging Plaintiffs' evidence or producing its own evidence to show that it lacked such an intent.

As further explained in Goldman Sachs's omnibus motion *in limine* and pretrial memorandum of law, the following claims and forms of relief previously pursued by Plaintiffs are not at issue in Phase I:

- Plaintiffs' disparate treatment claim based on a "boy's club theory," as the Court denied certification as to this theory on the basis that "the considerations and intentions of individual managers or business units may well be relevant" to that type of claim such that "individualized inquiries" would be needed and thus predominance was not satisfied.  Order (ECF No. 578) at 47 (Torres, J.).

- Plaintiffs' claim for injunctive and declaratory relief, as Plaintiffs abandoned their Rule 23(b)(2) class and all related discovery, thereby waiving any request for injunctive or declaratory relief.

- All issues concerning alleged lost compensation and/or damages, as the Court has repeatedly ruled that all issues concerning compensation and/or damages are reserved for any Phase II trials, as is any determination of entitlement to punitive damages.

- All of Named Plaintiffs' individual claims, which are also reserved for Phase II.

Defendant's summary of the claims and defenses properly accounts for and explains the showings necessary for Plaintiffs to prevail based on the limited theories certified by this Court. Defendant addresses these points further in their simultaneously-filed pretrial memorandum of law and motion in *limine*.

## VI.   <u>Jury Trial:</u>

### A.   <u>Plaintiffs' Position:</u>

Plaintiffs' claims for intentional discrimination under Title VII and the NYCHRL and for disparate impact under the NYCHRL will be tried by a jury.  Plaintiffs' claims for disparate impact under Title VII will not be tried by a jury.  (*See* Plaintiffs' Pretrial Memorandum of Law (Feb. 1, 2023); ECF 1403.)

Plaintiffs believe that the issues in dispute can be tried in 15 trial days.

### B.   <u>Defendant's Position:</u>

Plaintiffs' claims for intentional discrimination under Title VII and the NYCHRL will be tried to the jury, as will Plaintiffs' disparate impact claim under the NYCHRL. Order (ECF No. 1405) at 1.  Plaintiffs' Title VII disparate impact claim will be tried to the Court.  However, the

factual determinations underlying Plaintiffs' Title VII disparate impact claim will be resolved by the jury in the course of adjudicating Plaintiffs' disparate treatment claims and their NYCHRL disparate impact claim.  This is because Plaintiffs' disparate treatment claim requires proof of knowledge of *unlawful* disparities, not just "disparities" standing alone.  The reason being, disparities, even if caused by a specific employment practice, are not unlawful if that practice serves an important business objective and Plaintiffs cannot identify an equally effective alternative.  Accordingly, the Title VII disparate impact determination will be circumscribed by the jury's fact-findings on those overlapping issues. *See* Goldman Sachs's Omnibus Motion *in limine* (filed Feb. 1, 2023).

Depending upon the Court's rulings on motions *in limine*, Goldman Sachs believes that the issues in dispute can be tried in approximately 15 to 20 trial days.

## VII.   <u>Agreed Statements of Fact and Law:</u> [5]

**The Action**

1.   This is a class action in which Plaintiffs allege claims for disparate impact and disparate treatment discrimination under both federal (Title VII) and New York City Human Rights Laws.

**The Parties**

2.   Defendant Goldman Sachs is a global investment banking, securities, and investment management firm.

3.   Plaintiff Cristina Chen-Oster worked for Goldman Sachs from March 3, 1997 to June 19, 1997 as an Associate and from June 20, 1997 to March 11, 2005 as a Vice President in the Securities Division.

4.   Plaintiff Shanna Orlich worked for Goldman Sachs from July 30, 2007 to November 8, 2008 as an Associate in the Securities Division.

---

[5] The Parties' stipulations are without waiver to their rights to present witness testimony concerning any stipulated topic.

5.      Plaintiff Allison Gamba worked for Goldman Sachs from October 31, 2000 to November 30, 2006 as an Associate and from December 1, 2006 to August 22, 2014 as a Vice President in the Securities Division.

6.      Plaintiff Mary De Luis worked for Goldman Sachs from June 1, 2010 to December 31, 2012 as an analyst, from January 1, 2013 to December 31, 2014 as an Associate, and from January 1, 2015 to May 7, 2016 as a Vice President in the Investment Management Division.

**Goldman Sachs's Organization**

7.      Goldman Sachs is organized into revenue-generating and non-revenue-generating Divisions. The revenue-generating divisions at issue in this case are Investment Management, Investment Banking, and Securities.

**VIII.   <u>Witnesses:</u>**

**A.  <u>Plaintiffs' Statement and Witnesses:</u>**

Pursuant to the Court's Individual Practice Rule V.B.viii, Plaintiffs identify the following witnesses whom they may call live or by deposition in their case-in-chief.

This list is not a commitment that Plaintiffs will call any particular witness at trial, or a representation that any of the witnesses listed are available or will appear for trial.  If any witness is unavailable, Plaintiffs reserve the right to use their deposition testimony or to call a substitute witness.  If any of the potential trial witnesses identified by Goldman Sachs fail to appear for trial, Plaintiffs reserve the right to use their deposition testimony.  Plaintiffs also reserve the right to call at trial: (1) any witnesses identified by Goldman Sachs on its witness list; (2) additional witnesses to provide foundational testimony, should Goldman Sachs contest the authenticity or admissibility of any materials to be proffered at trial; and (3) additional witnesses not identified herein based upon any developments that may occur leading up to and/or during the course of trial.  Plaintiffs also may call witnesses, including persons not listed herein, in their rebuttal to Goldman Sachs's case, or for impeachment or foundational purposes.

Pursuant to this Court's order, Plaintiffs reserve the right to amend this list up to two weeks after the Court rules on the Parties' motions in *limine* and no later than May 2, 2023. ECF No. 1401.

| Witness Name | Manner of Appearance | Description of Testimony |
|---|---|---|
| Lloyd Blankfein | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Shanna Bowman (formerly, Shanna Orlich) | Live | The facts and circumstances supporting her class claims in this lawsuit. (Pursuant to Court Order, Ms. Bowman's individual claims will be tried separately. ECF. 888 at p. 3.) |
| Wayne Cascio | Live | The reliability and validity, and comportment with professional standards, of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs; whether those processes are significantly related to a business objective, and/or job related and consistent with business necessity; and the existence of alternative less discriminatory processes. |
| Cristina Chen-Oster | Live | The facts and circumstances supporting her class claims in this lawsuit. (Pursuant to Court Order, Ms. Chen-Oster's individual claims will be tried separately. ECF. 888 at p. 3.) |
| Gary Cohn | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Edith Cooper | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |

| Mary De Luis | Live | The facts and circumstances supporting her class claims in this lawsuit.  (Pursuant to Court Order, Ms. De Luis's individual claims will be tried separately. ECF. 888 at p. 3.) |
|---|---|---|
| Henry S. Farber | Live | Statistical evidence of a difference in how members of the class and their male comparators fare in Goldman Sachs's 360 review and manager quartiling processes; and statistical evidence of disparities between women and men in promotion rates from Vice President to Managing Director. |
| Allison Gamba | Live | The facts and circumstances supporting her class claims in this lawsuit. (Pursuant to Court Order, Ms. Gamba's individual claims will be tried separately. ECF. 888 at p. 3.) |
| Caren Goldberg | Live | Goldman Sachs's policies, practices, and procedures with respect to diversity and inclusion; whether Goldman Sachs's climate is tolerant of gender bias and harassment. (*See also* ECF 1337 at p. 8-9.) |
| Caroline Heller-Sberloti | Live | Content and operation of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs. |
| Edith Hunt | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Erika Irish-Brown | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes. |
| Jessica Kung | Live | Content and operation of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs. |
| David Landman | Live | Content and operation of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs; whether those processes are significantly related to a business objective, and/or job related and consistent with business necessity; and the existence of alternative less discriminatory processes. |
| Bruce Larson | Deposition | Content and operation of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs; Goldman Sachs's knowledge |

| | | |
|---|---|---|
| | | of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Gwen Libstag | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Stephen Lindia | Live | Content and operation of the 360 review, manager quartiling, and cross-ruffing processes at Goldman Sachs; whether those processes are significantly related to a business objective, and/or job related and consistent with business necessity; and the existence of alternative less discriminatory processes. |
| David Solomon | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Patrick Street | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a culture of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes. |
| Anilu Vasquez-Ubarri | Live | Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes. |

1. **Defendant's Objections to Plaintiffs' Witnesses:**

Defendant objects to the identification of David Solomon as a witness.  Defendant seeks to exclude Mr. Solomon from testifying at trial and address this issue in their motion *in limine*.

Defendant further objects to any witness to the extent their testimony is being offered to address individualized and/or other irrelevant issues to Phase 1 of this trial as previously ordered by this Court and as further addressed in Defendant's motion *in limine*.

**B.  Defendant's Statement and Witnesses:**

Pursuant to the Court's October 11, 2022 Order (ECF No. 1380) and Section V(B)(ix) of the Court's Individual Practices in Civil Cases, Goldman Sachs respectfully submits the following list of witnesses whom it may call at the Phase I trial.  Goldman Sachs reserves all rights to supplement, revise, and/or otherwise amend this list, including upon Plaintiffs' identification of the decision-makers whose intent they claim is relevant to their disparate treatment claim; and the Court's pre-trial rulings on the parties' motions *in limine*, all of which supplementation, revision, and/or amendment will be subject to the Court's January 1, 2023 Order permitting supplementation "up to two weeks after the Court has ruled on the parties' motions *in limine* and the parties have completed [any] depositions," and in any event, no later than May 2, 2023 (ECF No. 1401 at 1–2).

| **Witness Name** | **Manner of Appearance** | **Brief Summary of Anticipated Testimony** |
|---|---|---|
| Abramian-Katz, Angela | Live | Guidance, training, application, and utility of 360s, quartiling, and promotion processes ("Evaluation Processes") in Securities; different roles of associates and VPs in Securities; and relevant HCM initiatives, including training, related to gender and the Evaluation Processes. |
| Arthur, Jacqueline | Live | Structure, business, and functions of IMD; business purpose of the Evaluation Processes in IMD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IMD. |
| Auriault, Anne-Victoire | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |

| | | |
|---|---|---|
| Bantwal, Vivek | Live | Structures, businesses, and functions of IBD and Securities; business purposes of the Evaluation Processes in IBD and Securities; the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IBD and Securities. |
| Benjamin, Kerryann | Live | Scope and content of relevant HCM initiatives, including training, intended to enhance employee performance and promote non-discriminatory outcomes. |
| Benz, Susan | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Blankfein, Lloyd | Live | (As may be relevant)  The role of the Management Committee; business purpose of the Evaluation Processes; and relevant initiatives related to gender and the Evaluation Processes. |
| Bohm, Jean Marie | Live | Discretion generally employed by managers in applying the Evaluation Processes in IMD; business purpose of the Evaluation Processes in IMD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Boyle, Sally | Live | The role of HCM in implementing and maintaining the Evaluation Processes; and the business purpose of the Evaluation Processes. |
| Brasco, Thomas | Live | Structure, business, and functions of IMD; business purpose of the Evaluation Processes in IMD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IMD. |
| Cassidy, Jacqueline | Live | Structure, business, and functions of Securities; business purpose of the Evaluation Processes in Securities; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in Securities. |
| Chi, Alex | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Cohen, Darren | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Cohn, Gary | Live | (As may be relevant)  The role of the Management Committee; business purpose of the Evaluation Processes; and relevant initiatives related to gender and the Evaluation Processes. |
| Cooper, Edith | Live | Oversight of guidance, training, application of the Evaluation Processes; utility of the Evaluation Processes; and oversight of |

| | | relevant HCM initiatives, including training, related to gender and the Evaluation Processes. (As may be relevant) The role of the Management Committee; and oversight of relevant initiatives related to gender and the Evaluation Processes. |
|---|---|---|
| Dunleavy, Eric | Live | Testimony regarding his expert reports, as well as reports and testimony of Plaintiffs' expert Dr. Wayne Cascio. |
| Lakdawala-Flynn, Meena | Live | Structure, business, and functions of IMD; business purpose of the Evaluation Processes in IMD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IMD. |
| Glassman, Joshua | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Gmelich, Justin | Live | Structure, business, and functions of Securities; business purpose of the Evaluation Processes in Securities; the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in Securities; and (as may be relevant) the employment, performance, evaluation, and allegations of Shanna Orlich. |
| Goddeeris, Cyril | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Guth, Celeste | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Hammack, Elizabeth | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Heller, Caroline | Live | Guidance, training, application, and utility of Evaluation Processes in Securities; different roles of associates and VPs in Securities; and relevant HCM initiatives, including training, related to gender and Evaluation Processes. |
| Hogan, Megan | Live | (As may be relevant) HCM initiatives, including training, related to performance and diversity. |
| Holmes, Dane | Live | Oversight of guidance, training, application of the Evaluation Processes; utility of the Evaluation Processes; and oversight of relevant HCM initiatives, including training, related to gender and the Evaluation Processes. (As may be relevant) The role of the |

| | | |
|---|---|---|
| | | Management Committee; and oversight of relevant initiatives related to gender and the Evaluation Processes. |
| Keefe, Geraldine | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Kopylov, Jennifer | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Kozlowski, Joanna | Live | Guidance, training, application, and utility of Evaluation Processes in IBD; different roles of associates and VPs in IBD; and relevant HCM initiatives, including training, related to gender and Evaluation Processes. |
| Krevitt, Jennifer | Live | Guidance, training, application, and utility of Evaluation Processes in IMD; different roles of associates and VPs in IMD; and relevant HCM initiatives, including training, related to gender and Evaluation Processes. |
| Kung, Jessica | Live | Guidance, training, application, and utility of Evaluation Processes in IMD; different roles of associates and VPs in IMD; and relevant HCM initiatives, including training, related to gender and Evaluation Processes. |
| Landman, David | Live | Design, implementation, and external validation of Evaluation Processes, including differences across the Divisions; and guidance and training related to the Evaluation Processes. |
| Lauto, John | Live | (As may be relevant) The employment, performance, evaluation, and allegations of Allison Gamba. |
| Leone, Deborah | Live | Structure, business, and functions of IMD; business purpose of the Evaluation Processes in IMD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IMD. |
| Levene, John | Live | Structure, business, and functions of Securities; business purpose of the Evaluation Processes in Securities; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in Securities. |
| McNamara, James | Live | Discretion generally employed by managers in applying the Evaluation Processes in IMD; business purpose of the Evaluation Processes in IMD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Mora, Ricardo | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) |

| | | personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
|---|---|---|
| Price, Michael | Live | (As may be relevant) The employment, performance, evaluation, and allegations of Cristina Chen-Oster. |
| Rader, Stephanie | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Raman, Akila | Live | Structure, business, and functions of IBD; business purpose of the Evaluation Processes in IBD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IBD. |
| Roth, Jennifer | Live | Discretion generally employed by managers in applying the Evaluation Processes in Securities; business purpose of the Evaluation Processes in Securities; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Ryan, Pamela | Live | Discretion generally employed by managers in applying the Evaluation Processes in IMD; business purpose of the Evaluation Processes in IMD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Sarsfield, Luke | Live | Discretion generally employed by managers in applying the Evaluation Processes in IBD; business purpose of the Evaluation Processes in IBD; and (as may be relevant) personal experience with the Evaluation Processes to illustrate how the Evaluation Processes operated. |
| Scher, Susan Jane | Live | Structure, business, and functions of IBD; business purpose of the Evaluation Processes in IBD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in IBD. |
| Shaw, Kathryn | Live | Testimony regarding her expert reports, as well as reports and testimony of Plaintiffs' expert Dr. Henry Farber. |
| Stein, Laurence | Live | Structure, business, and functions of Securities and IBD; business purpose of the Evaluation Processes in Securities and IBD; and the importance of discretion and the relevance of specific roles in the application of the Evaluation Processes in Securities and IBD. |
| Sweezey, David | Live | (As may be relevant) The employment, performance, evaluation, and allegations of Mary De Luis. |

1.  **Plaintiffs' Objections to Defendant's Witnesses:**

Plaintiffs object to Goldman Sachs calling witnesses whose testimony is irrelevant, duplicative, prejudicial, or confusing to the jury, as outlined in Plaintiffs' Motions *in Limine*, Motion No. 1.

IX.   **Designation of Deposition Testimony To Be Read at Trial:**

Plaintiffs' deposition designations, and Defendant's counter- and cross-designations and objections, are attached as **Appendix A.**[6]

X.   **Trial Exhibits:**

**A. Plaintiffs' Exhibits**

Plaintiffs' list of Proposed Exhibits is attached as **Appendix B.**

**B. Defendant's Exhibits**

Defendant's list of Proposed Exhibits is attached as **Appendix C.**

XI.   **Plaintiffs' Damages and Remedial Relief:**

**A. Plaintiffs' Position**

Although the jury will decide "entitlement" to punitive damages, Phase I "will not include . . . damages (including back pay) and punitive damages."  ECF No. 888 ¶ 8.  Plaintiffs also seek injunctive and declaratory relief after a Phase I liability finding.  *See also* Plaintiffs' Pretrial Memorandum of Law (Feb. 1, 2023) at § II.A.2.

**B. Defendant's Position**

As explained in Goldman Sachs's motion *in limine* and pretrial memorandum of law, Phase I will not resolve damages, entitlement to punitive damages, injunctive relief or declaratory relief.

---

[6] Consistent with the Court's January 31, 2023 order, Plaintiffs will submit by February 23, 2023, a CD with electronic versions of the designated deposition transcripts and accompanying synopses required by the Court's rule V.C.vi.

XII.   **Verdict:**

The parties do not consent to less than a unanimous verdict.

XIII.   **Jury Instructions, Verdict Form, and Voir Dire:**

The Parties' proposed jury instructions are attached as **Appendix D**, Plaintiffs' proposed

verdict form is attached as **Appendix E**, Defendant's proposed verdict form is attached as

**Appendix F**, Plaintiffs' proposed voir dire is attached as **Appendix G**, and Defendant's

proposed voir dire is attached as **Appendix H**.


Dated: New York, New York
        February 1, 2023

| | |
|---|---|
| By:   _/s/ Adam T. Klein_ | By:   _Lynne C. Hermle_ |
| Adam T. Klein | Lynne C. Hermle (admitted *pro hac vice*) |
| Cara E. Greene | **ORRICK, HERRINGTON & SUTCLIFFE** |
| Christopher M. McNerney | **LLP** |
| Michael C. Danna | 1000 Marsh Road |
| Sabine Jean | Menlo Park, CA  94025 |
| **OUTTEN & GOLDEN LLP** | Office: (650) 614-7400 |
| 685 Third Avenue, 25th Floor | Fax: (650) 614-7401 |
| New York, NY 10017 | |
| Tel.:   (212) 245-1000 | Erin M. Connell (admitted *pro hac vice*) |
| Fax:    (646) 509-2060 | Kathryn G. Mantoan (admitted *pro hac vice*) |
| | **ORRICK, HERRINGTON & SUTCLIFFE** |
| _/s/ Kelly M. Dermody_ | **LLP** |
| Kelly M. Dermody | 405 Howard Street |
| Anne B. Shaver | San Francisco, CA  94105 |
| Brendan P. Glackin | Office: (415) 773-5700 |
| Michelle Lamy | Fax: (415) 773-5759 |
| Michael Levin-Gesundheit | |
| **LIEFF CABRASER HEIMANN &** | Marc Shapiro |
| **BERNSTEIN, LLP** | **ORRICK, HERRINGTON & SUTCLIFFE** |
| 275 Battery Street, Suite 2900 | **LLP** |
| San Francisco, CA 94111 | 51 West 52nd Street |
| Tel.: (415) 956-1000 | New York, NY 10019 |
| Fax: (415) 956-1008 | Office: (212) 506-5000 |
| | Fax: (212) 506-5151 |
| Rachel J. Geman | |
| Jessica A. Moldovan | |

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: (212) 355-9500
Fax: (212) 355-9592

*Attorneys for Plaintiffs and the
Classes*

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Office: (212) 558-4000
Fax: (212) 558-3588

Amanda Flug Davidoff
Jeffrey B. Wall (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
Office: (202) 956-7500
Fax: (202) 956-7500

*Attorneys for Defendant*