UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H. CRISTINA CHEN-OSTER,
SHANNA ORLICH, ALLISON
GAMBA and MARY DE LUIS,

           Plaintiffs,

     v.

GOLDMAN SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

           Defendants.

10 Civ. 6950 (AT) (RWL)

---

# DEFENDANTS' PRETRIAL MEMORANDUM OF LAW

Lynne C. Hermle (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Erin M. Connell (admitted *pro hac vice*)
Kathryn G. Mantoan (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Jeffrey B. Wall (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

February 1, 2023

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ..................................................................................................1

**ARGUMENT** ................................................................................................................................2

**I.     PLAINTIFFS CANNOT ESTABLISH UNLAWFUL DISPARATE IMPACT.** .....................................................................................................................2

    A.    Plaintiffs Cannot Establish Disparate Impact Under Title VII. .............................. 2

        1.    *First Stage*: Plaintiffs Cannot Meet Their *Prima Facie* Burden..................2

            a.    Plaintiffs Have Not Identified Specific, Actionable Employment Practices. ......................................................................................2

            b.    Plaintiffs Cannot Prove a "Substantial or Significant" Disparity. ...3

            c.    Plaintiffs Cannot Prove That the Evaluation Processes Caused Classwide Disparate Impact...............................................................4

        2.    *Second Stage*: If Needed, Goldman Sachs Will Prove That the Evaluation Processes Were Job-Related and Consistent with Business Necessity..............................................................................................6

        3.    *Third Stage*: Plaintiffs Have Not Identified an Adequate, Less Discriminatory Alternative. .......................................................................7

    B.    Plaintiffs Cannot Establish Disparate Impact Under the NYCHRL. ....................... 7

**II.    PLAINTIFFS CANNOT ESTABLISH UNLAWFUL DISPARATE TREATMENT.** ........................................................................................................8

    A.    Plaintiffs Cannot Prove That Key Decisionmakers Had Discriminatory Intent. ..... 8

    B.    Goldman Sachs's Evidence Will Show That Senior Leadership Intended to Improve Outcomes for Female Employees............................................................. 9

**III.   CLASSWIDE RELIEF IS NOT AVAILABLE.** ...........................................................10

**CONCLUSION** ..........................................................................................................................10

**PRELIMINARY STATEMENT**

Plaintiffs challenge three discretionary frameworks that individual managers at Goldman Sachs used to evaluate employees: the 360 review process; manager quartiling; and the process for promotion from vice-president to extended managing director (together, the Evaluation Processes). The Court certified, and now Plaintiffs must try to prove, two claims challenging the Evaluation Processes: (i) a disparate impact claim that each of the Evaluation Processes had a disparate impact on female associates and vice presidents; and (ii) a disparate treatment claim that Goldman Sachs knew of the disparate impact caused by the Evaluation Processes but nevertheless continued to use those processes *because* they discriminated against women. Plaintiffs brought each of these claims under both Title VII and the New York City Human Rights Law (NYCHRL).

Plaintiffs' Title VII disparate impact claim will "involve three stages of proof." *Robinson* v. *Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011). First, Plaintiffs must make a *prima facie* showing that Goldman Sachs uses an employment practice that causes a disparate impact on the basis of sex. *Id.* To make a *prima facie* showing of disparate impact, Plaintiffs must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Robinson*, 267 F.3d at 160. If they cannot make that showing, their claim fails. Second, if Plaintiffs do make such a showing, Goldman Sachs has an opportunity to demonstrate that the challenged practice or policy is "job-related" and "consistent with business necessity." *Id.* at 161. Third, if Goldman Sachs makes that demonstration, Plaintiffs must establish an alternative policy or practice that would meet Goldman's business necessity without a disparate effect. *Id.*

Plaintiffs' NYCHRL disparate impact claim has meaningfully similar elements. First, Plaintiffs must demonstrate "a policy or practice" or a "group of policies or practices" that results in a disparate impact" to women. N.Y.C. Code § 8-107(17)(a)(1). Goldman Sachs can rebut the

existence of a disparate impact, or establish that "each such policy or practice bears a significant relationship to a significant business objective." *Id.* § 8-107(17)(a)(2). At that point, the plaintiff must prove "that an alternative policy or practice with less disparate impact is available." The defendant must then prove that this alternative would not serve its objectives as well. *Id.*

Plaintiffs' disparate treatment claims are "predicated on statistical evidence of disparate impact," (Cert. Order at 41), so they can proceed to the jury only if the jury finds unlawful disparate impact. In the unlikely event that these claims proceed, the standards under both statutes are the same: Plaintiffs must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 336 (1977). Instead, they must prove that "discrimination was the company's standing operating procedure," that is, "the regular rather than the unusual practice." *Id.* This requires proving that discriminatory behavior was "deliberate" and intentional. *Lewis* v. *City of Chicago*, 560 U.S. 205, 214–15 (2010).

As explained below, Plaintiffs' claims will fail at every step.

## ARGUMENT

### I. PLAINTIFFS CANNOT ESTABLISH UNLAWFUL DISPARATE IMPACT.

Plaintiffs cannot prove their disparate impact claims under either Title VII or the NYCHRL, both of which proceed under the materially similar frameworks outlined above.

#### A. Plaintiffs Cannot Establish Disparate Impact Under Title VII.

##### 1. *First Stage*: **Plaintiffs Cannot Meet Their *Prima Facie* Burden.**

Plaintiffs cannot satisfy any of the three prongs of the *prima facie* showing under Title VII.

###### a. **Plaintiffs Have Not Identified Specific, Actionable Employment Practices.**

Plaintiffs first must identify a "*specific test, requirement or practice*" that disparately impacted women. *Smith* v. *City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis added); *see also* 42 U.S.C. § 2000e-2(k)(1)(B)(i). In *Wal-Mart*, the Court explained that "the bare existence of

2

delegated discretion" does not qualify as a "specific employment practice" for a classwide disparate impact claim. 564 U.S. at 357. The Court could not have been more explicit: "Merely showing that [an employer's] policy of discretion has produced an overall sex-based disparity does not suffice" as a "specific employment practice." *Id.* Instead, a plaintiff challenging an employment practice that implicates discretionary decision-making must identify some common "thread" or feature of the challenged practice "that tie[s] . . . discretionary decisions together." *Ross* v. *Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 199 (D.D.C. 2017) (K.B. Jackson, J.). In certifying Plaintiffs' claims, the Court gave Plaintiffs the opportunity to identify that common "thread." But after extensive discovery, they still cannot. Instead, the evidence shows that Plaintiffs challenge decentralized, discretionary frameworks and not actionable, specific employment practices.

### b. Plaintiffs Cannot Prove a "Substantial or Significant" Disparity.

Even if Plaintiffs could identify an actionable employment practice for their disparate impact claim, they must also establish that the Evaluation Processes resulted in a disparity in outcomes that was "substantial or significant." *Robinson*, 267 F.3d at 160 (citation omitted).

Plaintiffs cannot show a substantial disparity. Dr. Farber purported to find disparities that are statistically significant by more than two standard deviations. (*See* Farber Rpt. (ECF No. 1242-43) tbls. 5, 6, 9, 10, 28.) But his conclusion is unreliable because Dr. Farber (1) failed to account for major factors in compensation and promotion, like employee performance; and (2) aggregated data in a way that obscures the variation in claimed disparities among different groupings within the class. As a result, Dr. Farber's analysis cannot reliably be used to show that the Evaluation Processes caused any statistical disparities, much less the required "substantial disparities." (*See* Part I.A.1.c, *infra*.) When "the tested disparity is based on erroneous assumptions or suffers from flaws in the underlying data, then standard deviation analysis is foredoomed to yield an equally

3

faulty result." *Maddox* v. *Claytor*, 764 F.2d 1539, 1552 (11th Cir. 1985).

### c. Plaintiffs Cannot Prove That the Evaluation Processes Caused Classwide Disparate Impact.

Finally, Plaintiffs also must prove that the challenged processes, and not some other factor, *caused* the disparities. 42 U.S.C. § 2000e-2(k)(1)(A). They cannot do so.

*First*, as a general matter, neither Plaintiffs nor their experts have explained how the generalized, discretionary processes at issue could have caused classwide disparity. The Supreme Court in *Wal-Mart* made clear that the existence of discretion alone cannot be the problem with a challenged process in a Title VII class action, because the exercise of decentralized managerial discretion is necessarily individualized. 564 U.S. at 355. *Ross* v. *Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017) (K.B. Jackson, J.), is a particularly instructive application of that principle. As here, the plaintiffs in *Ross* claimed that a discretionary multi-step performance review system was actionable because the system was used firm-wide and because lower-level managers "used the same . . . rubric to grade employee performance." *Id*. at 198. But, as then-Judge Jackson explained, those general features "*say[] nothing about how individual supervisors exercised what discretion was left to them.*" *Id*. (emphasis added). The court accordingly concluded that plaintiffs could "*not supply an account of how those procedures themselves*" separate and apart from managerial discretion, could have "resulted in the [] disparate outcomes . . . observed in" the statistical evidence. *Id*. (emphasis added). Plaintiffs here also cannot explain why or how features of the Evaluation Processes would favor men over women.

*Second*, Plaintiffs also will not be able to prove causation due to fundamental flaws with their expert evidence. Dr. Farber used a regression to analyze whether "there is statistical evidence of a difference in how women and men fare" in the outcomes of Evaluation Processes. (Farber Rpt. ¶¶ 76, 86.) As Goldman Sachs's expert Dr. Shaw will show, Dr. Farber's regression failed to account for key decision-making factors with stronger explanatory power. Critically, none of Dr.

4

Farber's analyses account for "[p]roduction measures" that "capture a professional's individual performance, productivity, and contributions to the firm, such as salespeople's sales credits in Securities." (Shaw Rbtl. Rpt. (ECF No. 1242-46–47) ¶ 146.) As many Goldman Sachs witnesses have noted, these measures are a key component of success and promotion at the firm. Dr. Farber also failed to control for the effect of 360 reviews when analyzing quartiling and promotions. (*See* Shaw Rbtl. Rpt. ¶¶ 147–49, 215–17.) Because Dr. Farber's model did not control for these major factors that drive performance assessment, it obscures rather than proves causation.

*Third*, Dr. Farber's analysis suffers from another fatal flaw. Dr. Farber analyzed average, aggregate results for more than 1,400 class members and an almost 20-year class period across all three Divisions, despite their different functions and decentralized operations. This aggregated approach means that Dr. Farber's model "assum[es] that what is true for the whole is true for a[ll] subset[s] of the whole." *Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020) (citations and alterations omitted). His own results show that the class is *not* uniform. For example, Dr. Farber found no disparate impact whatsoever for 360 reviews and/or quartiling in certain time periods, and found that women fared better than men in more than one-third of the promotion cycles. When Dr. Shaw addressed the more egregious errors in Dr. Farber's models, she found no disparate impact for even more groupings. (*See* Shaw Rbtl. Rpt. Exs. 21, 24, 27–29.) This variance in outcomes from Dr. Farber's model (some good for women and others for men) is fatal to Plaintiff's causation showing. After all, if the Evaluation Processes were the cause of "systematic bias," then "we would expect the [disparate impact] . . . to be found in most places" where the Evaluation Processes were applied, not just in *some* of those places. *Abram* v. *United Parcel Serv. of Am., Inc.*, 200 F.R.D. 424, 431 (E.D. Wis. 2001).[1] The court in *Moussouris* v. *Microsoft Corp.*

---

[1] Courts in this circuit and across the country have, for decades, similarly rejected improperly aggregated expert evidence purporting to show disparate impact. *See, e.g.*,

rejected Dr. Farber's aggregated statistics for this very reason: because they obscured that the disparity could be "attributable to only a small set" of managers, and not the cause of classwide disparate impact. 2018 WL 3328418, at *24 (W.D. Wash. June 25, 2018), *aff'd*, 799 F. App'x 459 (9th Cir. 2019) (citation omitted) (emphasis added).

    **2.**    ***Second Stage*: If Needed, Goldman Sachs Will Prove That the Evaluation Processes Were Job-Related and Consistent with Business Necessity.**

Even if Plaintiffs could meet their *prima facie* burden, Goldman Sachs will demonstrate that any disparate impact was not unlawful because the Evaluation Processes were "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Job relatedness exists where "a challenged practice serves, in a significant way, the legitimate employment goals of the employer." *Easterling* v. *State of Conn.*, 783 F. Supp. 2d 323, 337 (D. Conn. 2011) (citation omitted). Moreover, "business necessity cannot be reduced . . . to a scientific formula," and "involves a case-specific judgment" accounting for "the nature of the particular business and job in question." *Watson* v. *Fort Worth Bank & Tr.*, 487 U.S. 977, 1005 (1988) (Blackmun, J., concurring).

Goldman Sachs's expert Dr. Dunleavy will explain that he found the Evaluation Processes to be valid, as they included "numerous guardrails . . . that mitigate or prevent inaccurate or biased ratings/assignments, promote accountability, and enhance reliability and validity." (Dunleavy Job Rbtl. Rpt. (ECF No. 1225-55) at 20.) Moreover, as current and former Goldman Sachs managers will testify, the Evaluation Processes provided managers with flexibility to consider the factors most relevant to the needs of their various businesses. (*See, e.g.*, Glassman Decl. (ECF No. 1205)

---

*Richardson* v. *City of New York*, 2021 WL 1910689, at *9 (S.D.N.Y. May 12, 2021) (Oetken, J.); *Kassman* v. *KPMG LLC*, 416 F. Supp. 3d 252, 282 (S.D.N.Y. 2018) (Schofield, J.); *see also Bolden* v. *Walsh Construction Co.*, 688 F.3d 893, 896 (7th Cir. 2012); *Valentino* v. *U.S. Postal Serv.*, 674 F.2d 56, 67 (D.C. Cir. 1982) (Ginsburg, J.).

¶ 6 ("The flexibility built into 360 reviews is especially useful because the reviewers are free to consider the factors they believe are the most relevant and important, depending on the needs of the business and the relevant market.").)  In any event, the exercise of "discretion by local [managers] over employment matters . . . should itself raise no inference of discriminatory conduct." *Wal-Mart*, 564 U.S. at 355 (citation omitted).  Thus even if Plaintiffs establish their *prima facie* case, Goldman Sachs will prove that any disparate impact was not unlawful.

### 3. *Third Stage*: Plaintiffs Have Not Identified an Adequate, Less Discriminatory Alternative.

Once Goldman Sachs proves that the Evaluation Processes were job-related, the burden shifts back to Plaintiffs to identify an alternative practice that would have advanced Goldman Sachs's business goals without creating a disparate impact, which Goldman Sachs refused to adopt. *Robinson*, 267 F.3d at 161.  Plaintiffs will not be able to meet this burden.  Their expert, Dr. Cascio, merely opines that Goldman Sachs should have implemented additional "guardrails," such as further documentation requirements and additional impractical training.  (Cascio Rbtl. Rpt. (ECF No. 1242-36) at 34, 46.)  He did not identify *any* systematic alternatives to the Evaluation Processes.  Finally, Plaintiffs have no evidence that Goldman Sachs "refused to adopt an available alternative employment practice" that would not have caused a disparate impact, because none was ever proposed.  *Houser* v. *Pritzker*, 28 F. Supp. 3d 222, 234-35 (S.D.N.Y. 2014) (Maas, J.).

### B. Plaintiffs Cannot Establish Disparate Impact Under the NYCHRL.

Plaintiffs' disparate impact claim under the NYCHRL fails for several of the same reasons.  Like Title VII plaintiffs, NYCHRL plaintiffs also must show causation and a less discriminatory alternative.  *See* N.Y.C. Code § 8-107(17)(a)(1) (requiring plaintiffs to demonstrate that the policy or practice "*results in* a disparate impact") (emphasis added); *id.* § 8-107(17)(a)(2) (requiring plaintiffs to "produce[] substantial evidence that an alternative policy or practice with less disparate impact is available").  Plaintiffs' inability to prove either is fatal to their NYCHRL claim.

7

## II. PLAINTIFFS CANNOT ESTABLISH UNLAWFUL DISPARATE TREATMENT.

Plaintiffs also bring disparate treatment claims under Title VII and the NYCHRL. Because these claims are "predicated on statistical evidence of disparate impact," (Cert. Order at 41), disparate impact is effectively an essential element of the disparate treatment claims. This means that the jury can reach Plaintiffs' disparate treatment claims only in the unlikely event that it first finds actionable disparate impact.

### A. Plaintiffs Cannot Prove That Key Decisionmakers Had Discriminatory Intent.

The standards for disparate treatment claims under Title VII and the NYCHRL are materially identical. *Richardson* v. *City of New York*, 2018 WL 4682224, at *9 n.9 (S.D.N.Y. Sept. 28, 2018) (Oetken, J.). To prove that any disparate impact was "deliberate," *Lewis* v. *City of Chicago*, 560 U.S. 205, 214–15 (2010), in Plaintiffs' own words, they must "present evidence probative of intentional discrimination by *key decision makers* in *senior management*" who "*implement[ed] and maintain[ed]*" each of the Evaluation Processes. (Pls.' Dec. 30, 2019 Br. (ECF No. 922) at 1–2 (emphasis added).) Importantly, in disparate treatment claims predicated on disparate impact, plaintiffs must show that challenge practice was "selected or reaffirmed . . . at least in part *'because of,'* not merely *'in spite of,'* its adverse effects upon an identifiable group." *Pers. Adm'r of Mass.* v. *Feeney*, 442 U.S. 256, 279 (1979); *see also Am. Nurses' Ass'n* v. *Illinois*, 783 F.2d 716, 722–23 (7th Cir. 1986) (applying *Feeney* to Title VII case). Moreover, Plaintiffs cannot prove intent to discriminate simply by showing that certain management were made aware of minor raw numerical disparities in outcomes. Instead, Plaintiffs must prove that, at all relevant times, the group knew the Evaluation Processes *themselves* caused disparate impact on women, and did not believe the processes were justified by business needs. For this reason, a finding that the Evaluation Processes were consistent with business necessity will defeat Plaintiffs' ability to prove actionable intent for their disparate treatment claims. *See* Part I.A.2, *supra*.

Plaintiffs have no evidence of the necessary intent. Indeed, they still have not even identified to Goldman Sachs and the Court who they think are the key decisionmakers whose intent matters throughout the class period. (*See* Motion in Limine Br. (ECF No. 1411) at 15–17.) Plaintiffs previously tried to focus on Goldman Sachs's Management Committee, but that attempt failed because Plaintiffs could not show that the Committee had any "role in approving, revising, implementing, or ignoring disparities linked to the three processes." (Nov. 5, 2020 Order (ECF No. 1100) at 3.) Plaintiffs have not identified any other senior manager group with actual control over the Evaluation Processes for which they can prove classwide intent to discriminate.

Nor will Dr. Farber's statistics show classwide intent to discriminate. The Supreme Court in *Hazelwood School District* v. *United States*, 433 U.S. 299 (1977), suggested that any statistical disparity must be "gross" to support an inference of intent—and even then only "in a proper case." *Id.* at 307. Plaintiffs' own statistics do not show sufficiently "gross" disparities to support an inference of intentional discrimination. Instead, according to Plaintiffs' own expert's models: (i) the average 360 review score for women was approximately *99%* of the male score; (ii) women were placed in the top quartile at *91.5% to 92.9%* the rate of men; and (iii) women were promoted at *89%* of the predicted rate, and were favored in *5 of 14* promotion cycles. (Farber Rbtl. Rpt. (ECF No. 1188-12), tbls. 14, 20 & App. A tbls. 5, 6, 9, 10.)

### B. Goldman Sachs's Evidence Will Show That Senior Leadership Intended to Improve Outcomes for Female Employees.

Even if Plaintiffs had any competent evidence of senior decisionmakers' intent to discriminate, Goldman Sachs's affirmative evidence would rebut that showing. An employer has the right to "produce any evidence that is relevant to rebutting the inference of discrimination." *United States* v. *City of New York*, 717 F.3d 72, 85 (2d Cir 2013). Depending on the decisionmakers Plaintiffs identify, Goldman Sachs may introduce reports shared with senior leadership showing progress in process outcomes for women, or evidence of programs designed

9

to improve those outcomes. (*See* Motion in Limine Br. at 25–26.)[2]  Finally, Goldman Sachs will show that it considered the Evaluation Processes a reasonable method of evaluation, not a means of intentionally discriminating against women.

### III. CLASSWIDE RELIEF IS NOT AVAILABLE.

Finally, in the unlikely event that the Phase I trial were to end in findings for the Plaintiffs, no classwide relief would flow from that decision. As explained in Goldman Sachs's motion in limine, Plaintiffs cannot obtain prospective relief at the conclusion of Phase I, because Plaintiffs withdrew their motion seeking certification of a class claim for such relief and abandoned discovery into changes to the Processes after 2015. (*See* Motion in Limine Br. at 32–35.) Nor can Phase I adjudicate Goldman Sachs's liability for backpay or punitive damages, as the Court and Judge Lehrburger have already ruled at least *eight times*. (*Id.* at 27.) Instead, at Phase II class members must make individualized showings of entitlement to such relief, and Goldman Sachs must have the opportunity to rebut those showings on an individualized basis. (*Id.* at 3.)[3]

### CONCLUSION

For the foregoing reasons, at the conclusion of the trial, the Court should enter judgment for Goldman Sachs on Plaintiffs' claims.

---

[2]  As explained in Goldman Sachs's Ombinus Motion in Limine filed concurrently with this Memorandum of Law, introducing such evidence should not open the door to Plaintiffs' purported evidence of a "boys' club culture." (*See* Motion in Limine Br. at 24–26.)

[3]  Goldman Sachs preserves its objection to the supplementation of the data and the expert record if Plaintiffs prevail at Phase I. (*See* ECF No. 1395; ECF No. 1399 at 2.)

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Robert J. Giuffra, Jr. |
| Lynne C. Hermle (admitted *pro hac vice*) | Robert J. Giuffra, Jr. |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Sharon L. Nelles |
| 1000 Marsh Road | Ann-Elizabeth Ostrager |
| Menlo Park, CA  94025 | Hilary M. Williams |
| Office: (650) 614-7400 | SULLIVAN & CROMWELL LLP |
| Fax: (650) 614-7401 | 125 Broad Street |
|  | New York, New York  10004 |
|  | (212) 558-4000 |
| Erin M. Connell (admitted *pro hac vice*) |  |
| Kathryn G. Mantoan (admitted *pro hac vice*) | Amanda Flug Davidoff |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Jeffrey B. Wall (admitted *pro hac vice*) |
| 405 Howard Street | SULLIVAN & CROMWELL LLP |
| San Francisco, CA  94105 | 1700 New York Avenue, N.W., Suite 700 |
| Office: (415) 773-5700 | Washington, D.C.  20006 |
| Fax: (415) 773-5759 | (202) 956-7500 |

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Office: (212) 506-5000
Fax: (212) 506-5151

*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

February 1, 2023