UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS,<br><br>     Plaintiffs,<br><br>     -against-<br><br>GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC.,<br><br>     Defendants. | No. 10-cv-6950-AT-RWL |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' PRETRIAL MEMORANDUM OF LAW**

2750524.4

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.     The Evidence Will Show Unlawful Disparate Impact. ........................................................ 1

      A.     Plaintiffs Will Meet Their Prima Facie Burden. ..................................................... 2

      B.     Goldman Sachs Will Not Be Able to Prove That the Challenged Practices Were Job-Related and Consistent with Business Necessity. .................................. 6

      C.     Plaintiffs Have Identified Less Discriminatory Alternatives ................................. 7

II.    The Evidence Will Show Unlawful Disparate Treatment. ................................................. 8

      A.     Goldman Sachs Seeks to Inappropriately Violate Black Letter Law and Limit Plaintiffs' Pathway to Verdict. ........................................................................ 8

      B.     Goldman Sachs's Rebuttal Evidence Opens the Door to Evidence of Its Institutional Culture and Climate. .......................................................................... 11

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

Page

### CASES

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975) ............................................................................................... 6

*American Nurses' Ass'n v. Illinois*,
    783 F.2d 716 (7th Cir. 1986) ............................................................................... 10

*Chin v. Port Auth. of New York & New Jersey*,
    685 F.3d 135 (2d Cir. 2012) .................................................................................. 4

*Davis v. District of Columbia*,
    949 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................ 10

*Gulino v. New York State Educ. Dep't*,
    460 F.3d 361 (2d Cir. 2006) .................................................................................. 6

*Int'l Broth. of Teamsters v. U.S.*,
    431 U.S. 324 (1977) ............................................................................................... 8

*Malave v. Potter*,
    320 F.3d 321 (2d Cir. 2003) .................................................................................. 5

*Meacham v. Knolls Atomic Power Lab.*,
    461 F.3d 134 (2d Cir. 2006) .................................................................................. 5

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) .................................................................................. 8

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ......................................................................................... 9, 10

*Richardson v. City of New York*,
    2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) ...................................................... 8

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) .............................................................................. 2, 4

*Ross v. Lockheed Martin Corp.*,
    267 F. Supp. 3d 174 (D.D.C. 2017) ................................................................... 2, 5

*Smith v. Xerox Corp.*,
    196 F.3d 358 (2d Cir. 1999) .................................................................................. 4

*U.S. v. City of New York*,
    717 F.3d 72 (2d Cir. 2013) ............................................................................. 8, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................... 2

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Watson v. Fort Worth Bank and Trust*,
   487 U.S. 977 (1988) ................................................................................................. 3, 4

*Williams v. Boeing Co.*,
   225 F.R.D. 626 (W.D. Wash. 2005) ......................................................................... 10

## STATUTES

42 U.S.C. § 2000e-2 ......................................................................................................... 11

N.Y.C. ADMIN. CODE § 8-107 ......................................................................................... 7

2750524.4

**PRELIMINARY STATEMENT**

Goldman Sachs's pretrial memorandum of law presents nothing but arguments the Court has already heard and rejected at class certification and summary judgment. ECF No. 1413 (Def. PMOL). These requests to undo prior orders are meritless (and untimely). The Court has already held that sufficient evidence exists for Plaintiffs' claims to proceed to trial on the merits. The time has come to test the relevant merits evidence—not to re-litigate irrelevant procedural issues and frivolous legal arguments that do nothing to assist the Court in preparing for trial.

**ARGUMENT**

**I.    The Evidence Will Show Unlawful Disparate Impact.**

The Court has certified for trial a Title VII and NYCHRL class disparate impact claim challenging Goldman Sachs's 360 performance review, manager quartiling, and promotion practices (together, the "Challenged Practices").[1] ECF No. 578 (Class Cert. Order).

The parties appear to agree on the legal standards for disparate impact, at least as they are set forth in Goldman Sachs's pretrial memorandum of law. Crucially, however, Goldman Sachs deviates from these standards considerably in its proposed jury charge and verdict form. For example, its disparate impact jury instructions state that "Plaintiffs must prove that each of the Evaluation Process[es] constituted a specific, clearly delineated employment practice *that was applied to all class members and their alleged male comparators in the same way*," and that a "*policy that permits managers to exercise broad discretion*" cannot suffice. ECF No. 1409-4 (Joint Jury Charge) at 73 (Defendant's Proposed Charge on "What Constitutes An Employment Practice") (emphasis supplied).

---

[1] Plaintiffs object to Goldman Sachs's use of the term "Evaluation Processes" to refer to the three Challenged Practices as confusing and misleading. While the 360 Review and Manager Quartiling processes are performance evaluation procedures, Cross-Ruffing is a promotion procedure. For simplicity's sake, the three practices should be referred to collectively as the "Challenged Practices," to avoid confusion for jurors.

The Court should reject Goldman Sachs's proposed jury charges as they do not reflect the correct legal standard, which Goldman Sachs itself provides in its pretrial memorandum of law.

To recap the correct legal standard, Plaintiffs first must make a prima facie showing that Goldman Sachs uses an employment practice that causes a disparate impact on the basis of gender. Second, if Plaintiffs make such a showing, Goldman Sachs has an opportunity to demonstrate that the challenged practice is job related and consistent with business necessity (Title VII) or bears a significant relationship to a significant business objective (NYCHRL). Third, if Goldman Sachs makes that demonstration, Plaintiffs may still prevail if they establish an alternative practice that would meet Goldman Sachs's business necessity without disparate impact (Title VII) or with less disparate impact (NYCHRL). *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 160 (2d Cir. 2001); N.Y.C. Admin. Code § 8-107(17)(a)(2).

### A.     Plaintiffs Will Meet Their Prima Facie Burden.

Goldman Sachs offers three reasons why Plaintiffs cannot meet their prima facie burden, all of which are failed arguments the Court has previously rejected and should reject again.

*First*, Goldman Sachs yet again argues against class certification, asserting that Plaintiffs have not identified specific, actionable employment practices because the Challenged Practices involve discretionary decision-making. Goldman Sachs relies solely on two class certification decisions, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017). Both decisions were issued prior to the Court's class certification order and featured in Goldman Sachs's class certification and decertification briefing. The Court has repeatedly been unpersuaded by this argument. As the Court already found, a practice involving "a common mode of exercising discretion" is an actionable disparate impact claim. Class Cert. Order at 25 (quoting *Dukes*). In fact, the Supreme Court said this plainly in the seminal case *Watson v. Fort Worth Bank and Trust*: "[D]isparate impact analysis is

in principle no less applicable to subjective employment criteria than to objective or standardized tests. . . . [S]ubjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." 487 U.S. 977, 990-91 (1988). The Challenged Practices are specific, actionable employment practices for Plaintiffs' disparate impact claim.

*Second*, Goldman Sachs seeks to re-litigate *Daubert* issues the Court resolved at summary judgment. It repeats its baseless argument that Plaintiffs cannot prove a "substantial or significant" disparity because Dr. Farber's models—which it admits show statistically significant gender gaps in the Challenged Practices—are not reliable for the same rejected reasons it previously asserted. As to Dr. Farber's decision to analyze the data at the firm-wide level, which Goldman Sachs again contests, the Court previously held that Dr. Farber "provides a valid, reasonable explanation for this modeling decision." ECF No. 1337 (S.J. & *Daubert* Order) at 14. The evidence at trial will support Dr. Farber's decision because the features of the Challenged Practices are the same across Divisions in all relevant ways. While there may be few immaterial differences between Divisions—e.g., whether professionals were forced ranked into separate quartiles 2 and 3, versus a combined 2/3 category—the differences are irrelevant to the core, common features that Plaintiffs challenge. In all Divisions, professionals were evaluated by peers with whom they were in competition for pay and promotions in a system where scores were extremely tightly clustered and rife with improper gaming. In all Divisions, professionals were secretly forced ranked into distinct categories, even if actual performance did not justify the marked differentiation. And in all Divisions, Vice Presidents could only be promoted if nominated through a secretive tap-on-the-shoulder process and after winning a popularity contest judged by a small handful of overwhelmingly white men (the Division Heads), devoid of documented evidence and standardized procedures that allow systemic comparisons across

candidates and guard against favoritism and bias. As to Dr. Farber's decision to exclude production variables in his regressions, which Goldman Sachs again contests, the Court likewise found his decision "well-reasoned." *Id*. at 18. The evidence at trial will show that production variables are at best insufficiently populated and subject to gender bias, and at worst totally inapposite because they reflect team rather than individual level inputs and/or lack explanatory context to understand production in relation to the potential for upside earned or downside avoided across varying products and services (e.g., where certain high numbers might be disappointing and low numbers might be extraordinary). In sum, the evidence will support Dr. Farber's model, which provides clear evidence of significant and substantial disparities.[2]

*Third*, Goldman Sachs re-hashes its claims that Plaintiffs cannot show that the Challenged Practices caused the disparities, for a continuing hodge-podge of misguided reasons. But, it is well-settled that causation is proved inferentially through the statistical showing of a disparity. *See, e.g.*, *Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999) ("[T]o make out a prima facie case the statistical disparity must be sufficiently substantial to raise an inference of causation.") (citing *Watson*, 487 U.S. at 994); *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012) ("The statistics must reveal that the disparity is substantial or significant," and "must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity.") (citing *Robinson,* 267 F.3d at 160). Further, a disparity that is statistically significant at the level of two standard deviations or more is sufficient to warrant the inference of causation. *See Smith*, 196 F.3d at 366 ("If an obtained result varies from the expected result by two standard deviations, there is only about a 5% probability

---

[2] This issue ultimately is one for the factfinder to decide: Goldman Sachs cannot pre-decide it now, through a pretrial memorandum of law.

that the variance is due to chance. Courts generally consider this level of significance sufficient to warrant an inference of discrimination."), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 141 (2d Cir. 2006); *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003) (noting that courts consider disparities of two standard deviations or more "sufficient to warrant an inference of discrimination") (internal citation and quotation marks omitted). Dr. Farber's results show statistically significant results above two standard deviations for all the Challenged Practices, sufficient to show causation. ECF No. 1251 (Pl. Mot. S.J.) at 17-18, 22.

In addition, Goldman Sachs's renewed causation attacks misunderstand what Plaintiffs actually must prove and how the evidence supports it. While the trial testimony of Dr. Cascio (Plaintiffs' expert in Industrial/Organizational Psychology) will shed considerable light on why the common deficiencies in the Challenged Practices lead to systemic bias against women, Plaintiffs do not need to explain *why* the Challenged Practices cause disparate impact, only that they do.[3] Similarly, Goldman Sachs cites a slew of inapposite Rule 23 decisions for its baseless re-argument that aggregated statistical analyses are incapable of showing causation across a workforce. As the Court previously held, Dr. Farber's reasons for aggregation are valid, and the evidence will support his modeling decisions. Class Cert. Order at 31. Finally, Goldman Sachs makes the nonsensical argument that its belated efforts to fix the 360 Review and Quartile

---

[3] Goldman Sachs's repeated reliance on *Ross* to argue a standard for causation is misplaced. *Ross* evaluated a proposed class certification in the context of a litigation simultaneously initiated and settled with the filing of the complaint. Unlike here, there was no discovery record, and the court specifically took issue with the lack of any statistical evidence or analysis: "Plaintiffs have pointed to no evidence of biased decision making of any kind, and certainly not statistical evidence of the type that demonstrates that the discretionary ratings decisions led to racially disparate outcomes *in a common way*." 267 F. Supp. 3d at 198-99 (emphasis in original). At most, *Ross* is a decision about the importance of statistical evidence in class actions. It has no bearing at all here, where the Plaintiffs have offered, and the Court has reviewed, substantial statistical evidence regarding disparities in the Challenged Practices.

2750524.4

practices *after* the class period somehow imperil causation for the time period going to trial. The Court already concluded that Plaintiffs' challenges to the 360 Review and Manager Quartile ended in 2015, the last year in which Dr. Farber found impact for those practices. In fact, the evidence will show that cessation of the impact corresponds with Goldman Sachs's institution of substantial changes to these practices in response to the criticisms levelled by Dr. Cascio in this lawsuit. That fact itself bolsters the inference that the common deficiencies in these processes during the relevant years caused the impact. It also supports Plaintiffs' entitlement to attorneys' fees under a catalyst theory under the NYCHRL. ECF No. 1406 (Pl. PMOL) at 17-18.

In sum, the evidence is more than sufficient to establish Plaintiffs' prima facie case.

### B. Goldman Sachs Will Not Be Able to Prove That the Challenged Practices Were Job-Related and Consistent with Business Necessity.

Goldman Sachs vastly downplays its burden, and ignores its lack of supporting evidence, on this second prong of the disparate impact analysis. "[T]he basic rule has always been that 'discriminatory tests are impermissible unless shown, by professionally acceptable methods, to be predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated.'" *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 383 (2d Cir. 2006) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431 (1975)). Goldman Sachs asserts that its expert, Dr. Dunleavy, found the Challenged Practices to be valid because they contained guardrails against inaccuracy or bias. That showing is manifestly insufficient. Validity is "the degree to which evidence and theory support the interpretations of test scores for proposed uses of tests." ECF No. 1242-35 (Cascio Mar. 19, 2021 Rep.) at 2 (citing professional guidelines). Goldman Sachs has *never* validated the Challenged Practices for use in making compensation and promotion decisions. Moreover, the changes that Goldman Sachs made to the 360 Review and Manager Quartiling practices in 2016,

which Plaintiffs advocated (and which align with the end of their disparate impact on women), make plain that the previous versions of those practices were never a business necessity. Goldman Sachs now uses modified versions of those practices that do not cause a disparate impact and yet serve its business needs.

### C. <u>Plaintiffs Have Identified Less Discriminatory Alternatives</u>

Plaintiffs have identified less discriminatory alternatives. As to the 360 Review, Dr. Cascio recommended that it be used for development purposes only, and not for compensation or promotion (a suggestion Goldman Sachs largely adopted in 2016, as described in a declaration by Goldman Sachs's own David Landman, corresponding with an end to disparate impact in the 360 Review). ECF No. 1242-36 (Cascio Apr. 19, 2021 Rep.) at 51; ECF No. 546-1 (Landman Decl.). As to Manager Quartiling, Dr. Cascio recommended that Goldman Sachs tell its employees about the existence and import of the process, that it remove "potential" as a rating criterion, that it permit banding of ratings of similar scores for compensation and promotion outcomes, and that it provide adequate training to managers and monitor for adverse impact. Cascio Apr. 19, 2021 Rep. at 51-52. Finally, as to promotions, Dr. Cascio recommended that Goldman Sachs establish valid written criteria for identifying candidates for promotion to Extended Managing Director, change the Cross-Ruffing process so that at least two or more Cross-Ruffers evaluate each candidate to allow for testing of inter-rater reliability, and use structured interview questions with documented evidence for each. *Id*. at 52-53. The evidence will show that Goldman Sachs considered many of the problems that Dr. Cascio identified with the Challenged Practices several times over the duration of the relevant period, and discussed whether to change or eliminate the Practices entirely, but refused to do so until 2016 (for the 360 Review and Manager Quartiling) or ever (for Cross-Ruffing). *See* N.Y.C. Admin. Code § 8-107(17)(a)(2) ("[A] policy or practice or group of policies or practices demonstrated to result in a disparate impact shall be unlawful where the commission or such person who may bring an action

-7-

produces substantial evidence that an alternative policy or practice with less disparate impact is available to the covered entity and the covered entity fails to prove that such alternative policy or practice would not serve the covered entity as well.").

## II. The Evidence Will Show Unlawful Disparate Treatment.

Under Title VII, Plaintiffs establish disparate treatment by showing a "pervasive practice of intentional discrimination against the class." *U.S. v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (citing *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977)). Under the NYCHRL, Plaintiffs need only demonstrate Goldman treated female employees less well, at least in part because of gender. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (2009).[4] The evidence will satisfy both standards.

### A. **Goldman Sachs Seeks to Inappropriately Violate Black Letter Law and Limit Plaintiffs' Pathway to Verdict.**

According to Goldman Sachs, the only way that Plaintiffs may establish disparate treatment in this case is to first establish disparate *impact* in the Challenged Practices, and then show that certain specific "key decision makers" intended to use the Challenged Practices because of the disparate impact. Def. PMOL at 8. Goldman Sachs is wrong for multiple reasons.

Binding authority is clear that Plaintiffs have several ways to prove Goldman Sachs had a "pervasive practice of intentional discrimination against the class" (Title VII) or treated them less well in part because of their gender (NYCHRL), all based on common evidence consistent with the Court's class certification order. Pl. PMOL at 10-12. As set forth more fully in Plaintiffs' pretrial

---

[4] Goldman Sachs's assertion that the standards for disparate treatment claims under Title VII and the NYCHRL are "materially identical" is puzzling—and wrong. The case it cites, *Richardson v. City of New York*, did not involve Title VII claims and in fact explicitly states that "Plaintiffs' pattern-or-practice claims under NYCHRL must be analyzed 'separately and independently from any federal and state law claims.'" 2018 WL 4682224, at *9 (S.D.N.Y. Sept. 28, 2018) (quoting *Mihalik*, 715 F.3d at 109).

-8-

memorandum of law, these include any combination of: evidence of statistical disparities, evidence that Goldman Sachs was aware that the Challenged Practices adversely impacted women but continued to use them anyway, and evidence that leaders with influence over the Challenged Practices themselves held views colored by gender bias or gender stereotypes. *Id*. All of this evidence is common to the class and does not involve individual class member anecdotes about gender discrimination or sexual harassment. Goldman Sachs's attempt to narrow Plaintiffs' claim to one avenue of proof is unfounded and improper.

Moreover, while statistical disparities are unquestionably relevant to showing a pervasive practice of discrimination, disparate impact is not an essential element of the disparate treatment claim. *See* Pl. PMOL at 13-14 (citing cases); ECF No. 1405 (Jan. 31, 2023 Order) (rejecting argument that "all of the issues relevant to Plaintiffs' Title VII disparate impact claim are subsumed by Plaintiffs' other claims" and noting that "Defendants misread the record [and] cite inapposite authority"). Thus, Goldman Sachs's characterization of Plaintiffs' claim as "disparate impact plus intent" invites reversible error, and its proposed jury instructions must also be rejected for this reason.[5]

Goldman Sachs also cites an incorrect standard for showing intent in a Title VII disparate treatment claim. There is no requirement that Plaintiffs show that Goldman Sachs selected the Challenged Practices *because of* their adverse impact on the Class. Goldman Sachs relies on *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979), but *Feeney* is an equal protection case alleging a claim under § 1983, not Title VII. Accordingly, as this Court already held, the purposeful discrimination standard articulated in *Feeney* does not apply here. *See* Class Cert. Order at 45, n.16 ("Even if *Feeney* were applicable in the instant case on the question of whether awareness would

---

[5] *See* Joint Proposed Jury Charge at 69-82 (Defendants' Proposed Charge on "Elements of Plaintiffs' Title VII Disparate Treatment Claim") (instructing jury that it must first find for Plaintiffs on each element of the disparate impact claim before moving to the issue of intent).

prove 'discrimination was the company's standard operating procedure,' which it is not, *Feeney* itself acknowledges that its statement on discriminatory purpose 'is not to say that the inevitability or foreseeability of consequences of a neutral rule has no bearing upon the existence of discriminatory intent.'") (citing *Feeney*, 442 U.S. at 279 n.25). The only other case Goldman Sachs cites is *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 722-23 (7th Cir. 1986). But *American Nurses*, in addition to being out of circuit, contains no authority for the conclusion that the standard for intentional discrimination is the same under Title VII as an equal protection case. It is also in conflict with the Second Circuit, which distinguished the two standards in *City of New York*. There, in the portion of the opinion addressing the plaintiffs' disparate treatment claim under Title VII, the Second Circuit affirmed that discriminatory intent could be shown by "the City's use of the Exams, once their racially disparate impact was known." 717 F.3d at 91. In a separate portion of the opinion addressing whether two individual city officers were entitled to qualified immunity from plaintiffs' § 1981 claims, the court invoked the purposeful discrimination standard. *Id*. at 93. Other courts have likewise affirmed in Title VII cases that awareness of adverse impact and continued use is sufficient. *See Davis v. District of Columbia*, 949 F. Supp. 2d 1, 11 (D.D.C. 2013) (denying motion to dismiss because allegations that "a particular facially neutral employment practice is so widely known to cause a disparate impact as to suggest that the employer who used it must have intended that disparate effect" were sufficient to state a disparate treatment claim); *Williams v. Boeing Co.*, 225 F.R.D. 626, 636 (W.D. Wash. 2005) (granting class certification of disparate treatment claim based on the theory "that Boeing executives knew of the disparate impact on African-American employees, yet failed to take remedial measures"). Accordingly, Goldman Sachs's proposed jury charge on intent is incorrect.[6] Moreover, the bigger

---

[6] *See* Joint Proposed Jury Charge at 78-80 (Defendants' Proposed Charge on "Title VII Disparate Treatment – Discriminatory Intent").

picture here is that Goldman Sachs's knowledge of gender bias in the Challenged Practices and continued use of them is only one of several kinds of direct and circumstantial evidence of intent.

Goldman Sachs also argues that a finding that the Challenged Practices were consistent with business necessity precludes Plaintiffs from proving discriminatory intent. Def. PMOL at 8. Unsurprisingly, it cites no authority for this proposition, which is counter to statute: "A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter." 42 U.S.C.S. § 2000e-2(k)(2). It is also derivative of Goldman Sachs's erroneous argument that disparate impact is an essential element of disparate treatment. They are separate inquiries, and intent can be shown with, among other things, a showing that Goldman Sachs was aware of adverse impact and chose to use the Practices anyway, even if it believed they were necessary to the business. Regardless, the evidence will show the opposite: that Goldman Sachs knew the Practices were not necessary. Over the relevant period, Goldman Sachs assessed the need for the Practices through internal discussions with senior "stakeholders," consulted external subject matter expert consultants, and compared itself to the practices at peer companies; each time showing that the status quo at Goldman Sachs was not only unnecessary, but indeed posed problems and risks consistent with Plaintiffs' critiques of the Practices.

### B. Goldman Sachs's Rebuttal Evidence Opens the Door to Evidence of Its Institutional Culture and Climate.

To rebut Plaintiffs' evidence of intent, Goldman Sachs states that it will present "affirmative evidence" showing that senior leadership intended to improve outcomes for women, including "evidence of programs designed to improve those outcomes." Def. PMOL at 9-10. At the same time, Goldman Sachs asserts that such evidence should not open the door to Plaintiffs' "purported evidence of a 'boys' club culture.'" *Id*. at 10, n.2.

Goldman Sachs mischaracterizes Plaintiffs' evidence—taking aim at, without naming, the

opinions of expert witness Dr. Goldberg—as "boy's club" in order to try to shoehorn it into the type of individualized evidence that the Court held did not support class certification. But that is a clear misrepresentation. Dr. Goldberg's report concerns Goldman Sachs's *institutional* culture and climate, and its failure to meaningfully address diversity issues. It provides a framework for the jury to analyze Goldman Sachs's diversity policies and their implementation, and a critical counter to its anticipated self-serving evidence about its concern for the issues raised by women.

As with the rest of the issues Goldman Sachs raised in its pretrial memorandum of law, this, too, has already been resolved by the Court. In denying Goldman Sachs's motion to exclude Dr. Goldberg's opinions, the Court explicitly rejected its argument that Dr. Goldberg's opinions related solely to the uncertified "boy's club" theory of disparate treatment. S.J. & *Daubert* Order at 8. The Court explained: "[A]t trial Defendants may seek to present evidence related to their policies, practices, and procedures with respect to diversity and inclusion to rebut Plaintiffs' disparate treatment claims. If Defendants present this evidence, they will put these, and other related policies, at issue. In this scenario, Dr. Goldberg's opinion will likely be relevant because it would contradict the evidence adduced by Defendants." *Id*. (citations omitted). Goldman Sachs presents no reason why the Court should reverse itself on this issue (and its request, effectively, to reconsider the Court's order is untimely). And Goldman Sachs is free, of course, to present its own expert, Dr. Stockdale, consistent with that part of her merits report that survived the *Daubert* challenges. The Court should reject Goldman Sachs's unfair plan to highlight affirmative evidence of its planning or efforts to improve outcomes for women while excluding Plaintiffs' rebuttal evidence on these efforts.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' pretrial memorandum of law, Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed jury charges and verdict form, and reject Goldman Sachs's versions which misstate the law in critical ways.

Respectfully submitted,

Dated:  February 22, 2023        */s/ Kelly M. Dermody*

        Kelly M. Dermody (*admitted pro hac vice*)
        Anne B. Shaver (*admitted pro hac vice*)
        Michael Levin-Gesundheit (*admitted pro hac vice*)
        Michelle A. Lamy (*admitted pro hac vice*)
        **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
        275 Battery Street, 29th Floor
        San Francisco, CA 94111-3339
        Telephone: (415) 956-1000
        Facsimile: (415) 956-1008

        Rachel J. Geman
        Jessica A. Moldovan
        **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
        250 Hudson Street, 8th Floor
        New York, NY 10013-9592
        Telephone: (212) 355-9500
        Facsimile: (212) 355-9592

Dated:  February 22, 2023        */s/ Adam T. Klein*

        Adam T. Klein
        Cara E. Greene
        Christopher M. McNerney
        Michael C. Danna
        Sabine Jean
        **OUTTEN & GOLDEN LLP**
        685 Third Avenue, 25th Floor
        New York, NY 10017
        Telephone: (212) 245-1000
        Facsimile: (646) 509-2060

        *Class Counsel*