**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS, | No. 10-cv-6950-AT-RWL |
| Plaintiffs, | |
| -against- | |
| GOLDMAN, SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

2752589.3

## TABLE OF CONTENTS

**Page**

I.    The Court Should Deny Goldman Sachs's Attempt to Prevent the Named
      Plaintiffs from Testifying at Trial. ...................................................................... 1

      A.    Goldman Sachs Misstates the Court's Prior Orders. ............................................. 1

      B.    Goldman Sachs Misapprehends the Role of Named Plaintiff Testimony. ............ 3

      C.    Named Plaintiff Testimony Would Not Render the Trial Unmanageable............. 4

II.   The Court Should Deny Goldman Sachs's Motion to Exclude Critical "Intent"
      Evidence.......................................................................................................................... 7

      A.    The Jury Is Entitled to Consider that Statistical Disparities on Their Own
            May Establish Intent for a Disparate Treatment Claim. ........................................ 7

            1.    There Are "Gross" Statistical Disparities Here and Goldman
                  Sachs's Arguments to the Contrary Are Meritless. .................................. 8

            2.    Because This Is a Class Action with Meaningful Disparities,
                  Statistics Alone Can Constitute Proof of Discrimination. ........................ 9

            3.    Goldman Sachs's Argument that the Court Foreclosed, or Plaintiffs
                  Disavowed, this Path to Liability Is Wrong.............................................. 11

      B.    There Is No Support for Goldman Sachs's Request for Plaintiffs to Name
            More Witnesses "Whose Intent Matters." .......................................................... 12

            1.    Plaintiffs Provided the Information Goldman Sachs Claims to
                  Need. ......................................................................................................... 12

            2.    Goldman Sachs Is the Relevant Decision-Maker. ................................... 13

            3.    Goldman Sachs Ignores the Multiple Ways a Jury Can Infer Intent. ...... 14

            4.    There Will Be No Surprise at Trial.......................................................... 14

      C.    The Court Should Deny Goldman Sachs's Attempts to Exclude Relevant
            and Highly Probative Testimony from David Solomon. ..................................... 15

            1.    Solomon's Testimony Is Relevant to the Disparate Treatment
                  Claims. ...................................................................................................... 16

            2.    Solomon's Testimony Is Relevant to the Disparate Impact Claims. ....... 17

            3.    There Is No Basis to Exclude Solomon's Testimony Under Federal
                  Rule of Evidence 403................................................................................ 19

**TABLE OF CONTENTS**
**(continued)**

Page

III.   The Court Should Reject Goldman Sachs's Attempt to Mischaracterize Relevant
Evidence as Improper "Boy's Club" Evidence............................................................... 20

    A.   Plaintiffs Do Not Seek to Introduce Individualized "Boy's Club"
Evidence........................................................................................................ 21

    B.   Goldman Sachs Fails to Specify Which "Bad Acts" the Court Should
Preclude........................................................................................................ 23

    C.   The Court Already Held that Goldman Sachs Cannot Present a One-Sided
View of the Firm's Culture at Trial. ............................................................. 25

IV.   The Court Should Deny Goldman Sachs's Remedies-Related Motions *in Limine*. ........ 26

    A.   Dr. Farber's Compensation Analysis Is Relevant and Admissible..................... 27

    B.   Goldman Sachs's Speculative Request Regarding Punitive Damages
Should Be Rejected........................................................................................ 29

    C.   The Availability of Injunctive and Declaratory Relief Will Have No
Bearing on the Phase I Trial.......................................................................... 31

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adkins v. Morgan Stanley*,
307 F.R.D. 119 (S.D.N.Y. 2015) ........................................................... 32

*Adorno v. Port Auth. of N.Y. & N.J.*,
258 F.R.D. 217 (S.D.N.Y. 2009) ........................................................... 25

*Albunio v. City of New York*,
16 N.Y.3d 472 (NY Ct. of App. 2011) ................................................... 11

*All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*,
280 F.R.D. 78 (E.D.N.Y. 2012) ............................................................. 32

*Am. Stock Exch., LLC v. Mopex, Inc.*,
215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................. 15

*Andrus v. Juniper Grp., Inc.*,
2011 WL 4532694 (E.D.N.Y. Sept. 26, 2011) ....................................... 11

*Asmus v. Metro-North R.R. Co.*,
2019 WL 2603532 (D. Conn. June 25, 2019).......................................... 31

*Bailey v. City of New York*,
2003 WL 21031972 (S.D.N.Y. May 2, 2003) ........................................ 10

*Boyle v. City of Philadelphia*,
476 F. Supp. 3d 101 (E.D. Pa. 2020) ..................................................... 10

*Burgis v. N.Y. City Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015) .................................................................... 11

*Buscemi v. Pepsico, Inc.*,
736 F. Supp. 1267 (S.D.N.Y. 1990) ...................................................... 29

*Chen-Oster v. Goldman, Sachs & Co.*,
2022 WL 814074 (S.D.N.Y. Mar. 17, 2022), *on reconsideration in part,* 2022 WL 3586460
(S.D.N.Y. Aug. 22, 2022) ........................................................................ 9

*Chen-Oster v. Goldman, Sachs & Co.*,
293 F.R.D. 557 (S.D.N.Y. 2013) ............................................................. 3

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D. 55 (S.D.N.Y. 2018) ..................................................... 21, 24

*E.E.O.C. v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010)......................................... 23

*E.E.O.C. v. Pitre, Inc.*,
908 F. Supp. 2d 1165 (D.N.M. 2012) ..................................................... 30

*E.E.O.C. v. JBS United States, LLC*,
2013 WL 1437729  (D. Neb. Apr. 9, 2013).............................................. 6

2752589.3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*E.E.O.C. v. Mavis Disc. Tire, Inc.*,
  129 F. Supp. 3d 90 (S.D.N.Y. 2015) ............................... 30

*E.E.O.C. v. Performance Food Group, Inc.*,
  16 F. Supp. 3d 576 (D. Md. 2014) ............................... 30

*E.E.O.C. v. Schott N. Am. Inc.*,
  2009 WL 310897 (M.D. Pa. Feb. 5, 2009) ............................... 6

*F.D.I.C. v. Suna Assocs., Inc.*,
  80 F.3d 681 (2d Cir. 1996) ............................... 5

*Fox v. Gen. Motors LLC*,
  2019 WL 13060148 (N.D. Ga. Oct. 31, 2019) ............................... 30

*Garcia De León v. N.Y. Univ.*,
  2022 WL 2237452 (S.D.N.Y. June 22, 2022) ............................... 32

*Giles v. Rhodes*,
  2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000) ............................... 6

*Guardians Ass'n v. Civil Serv. Comm'n of New York*,
  630 F.2d 79 (2d Cir. 1980) ............................... 9

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,
  907 F. Supp. 2d 492 (S.D.N.Y. 2012) ............................... 31

*Handwerker v. AT&T Corp.*,
  211 F.R.D. 203 (S.D.N.Y. 2002) ............................... 15

*Hart v. RCI Hosp. Holdings, Inc.*,
  90 F. Supp. 3d 250 (S.D.N.Y. 2015) ............................... 23

*Haskell v. Kaman Corp.*,
  743 F.2d 113 (2d Cir. 1984) ............................... 5

*Hazelwood School District v. United States*,
  433 U.S. 299 (1977) ............................... 7, 8

*Hopkins v. Nat'l R.R. Passenger Corp.*,
  2016 WL 8711718 (E.D.N.Y. Apr. 29, 2016) ............................... 28

*In re ICN/Viratek Sec. Litig.*,
  1996 WL 34448146 (S.D.N.Y. July 15, 1996) ............................... 4

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  643 F. Supp. 2d 446 (S.D.N.Y. 2009) ............................... 6

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) ............................... 32

*Int'l Bhd. Of Teamsters v. United States*,
  431 U.S. 324 (1977) ............................... 1, 3, 9, 10

2752589.3

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Levitant v. City of New York Hum. Res. Admin.,*
  914 F. Supp. 2d 281 (E.D.N.Y. 2012) .................................................................... 23

*Malave v. Potter,*
  320 F.3d 321 (2d Cir. 2003) ................................................................................... 9

*Mineo v. City of New York,*
  2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013)....................................................... 29

*Munafo v. Metro. Transp. Auth.,*
  2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) ...................................................... 30

*Olutosin v. Gunsett,*
  2019 WL 5616889  (S.D.N.Y. Oct. 31, 2019) .......................................................... 6

*Philip Morris USA v. Williams,*
  U.S. 346 (2007)...................................................................................................... 30

*Plew v. Ltd. Brands, Inc.,*
  2012 WL 379933 (S.D.N.Y. Feb. 6, 2012)............................................................ 20

*Price Waterhouse v. Hopkins,*
  490 U.S. 228 (1989)............................................................................................... 23

*Pruter v. Local 210, Int'l. Bhd. of Teamsters,*
  2020 WL 6729406 (S.D.N.Y. Nov. 16, 2020) ....................................................... 15

*Reddy v. Nuance Commc'ns, Inc.,*
  2015 WL 4648008 (N.D. Cal. Aug. 5, 2015) ........................................................ 20

*Republic of Turkey v. Christie's Inc.,*
  527 F. Supp. 3d 518 (S.D.N.Y. 2021) ..................................................................... 5

*Robinson v. Metro-N. Commuter R.R. Co.,*
  267 F.3d 147 (2d Cir. 2001) ......................................................................... 3, 5, 7

*Ruiz v. Citibank, N.A.,*
  93 F. Supp.3d 279 (S.D.N.Y. Mar. 19, 2015)......................................................... 3

*SEC v. Genovese,*
  2022 WL 16748779 (S.D.N.Y. Nov. 7, 2022)....................................................... 26

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010)............................................................................................... 32

*Simon II Litig. v. Philip Morris USA Inc.,*
  407 F.3d 125 (2d Cir. 2005) ................................................................................. 29

*Smith v. Xerox Corp.,*
  196 F.3d 358 (2d Cir. 1999) ................................................................................... 9

*Strauch v. Comput. Scis. Corp.,*
  2018 WL 4539660 (D. Conn. Sep. 21, 2018) ...................................................... 4, 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*,
  112 F. Supp. 3d 122 (S.D.N.Y. 2015) ...................................................................... 19

*United States v. City of New York*,
  717 F.3d 72 (2d Cir. 2013) ...................................................................... 7, 14, 25

*Velez v. Novartis Pharm. Corp.*,
  2010 WL 11043081 (S.D.N.Y. Feb. 25, 2010) ...................................................... 1, 6

*Wal-Mart v. Dukes*,
  564 U.S. 338 (2011) ...................................................................... 3, 32

*Wechsler v. Hunt Health Sys., Ltd.*,
  2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003) ...................................................... 22

*Wedra v. Cree, Inc.*,
  2022 WL 2116760 (S.D.N.Y. June 13, 2022) ...................................................... 32

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*,
  331 F.R.D. 279 (S.D.N.Y. 2019) ...................................................................... 32

**STATUTES**

28 U.S.C. §§ 2072 ...................................................................... 32

N.Y.C. Admin. Code § 8–107 ...................................................................... 18

**OTHER AUTHORITIES**

Manual on Employment Discrimination § 1:123 (2023) ...................................................... 7

For the reasons set forth below, Goldman Sachs's motions *in limine* should be denied.[1]

## I.      The Court Should Deny Goldman Sachs's Attempt to Prevent the Named Plaintiffs from Testifying at Trial.

The Court should deny Goldman Sachs's attempts to unilaterally narrow the avenues by which Plaintiffs may present their case at trial, and to rewrite the Court's prior orders about the permissible scope of anecdotal testimony. *Cf.* Def. MIL at 4-11. As the Court has articulated many times, anecdotal evidence is permissible at Phase I so long as it relates "specifically to application of the three processes." ECF No. 888 at 3. Here, Plaintiffs' testimony of their own experiences with the application of the Challenged Practices to them will be introduced for this purpose, to bring the Challenged Practices "convincingly to life." *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 338-39 (1977). This testimony will help the jury understand the policies by rooting them in the named Plaintiffs' lived experiences at Goldman Sachs.[2]

Goldman Sachs makes three arguments for why Plaintiffs nonetheless should not be permitted to testify as to their experiences: that the Court did not contemplate allowing their testimony, that their testimony is not sufficiently representative, and that allowing their testimony would create manageability issues. Each fails for the reasons discussed below.

### A.      Goldman Sachs Misstates the Court's Prior Orders.

Goldman Sachs attempts to exclude the Plaintiffs' testimony concerning their own

---

[1] Though Goldman Sachs's notice of motion identifies eight motions *in limine*, its omnibus brief is divided into four sections that do not correspond to those eight motions. *Compare* ECF No. 1410 (Notice) at 1-2 *with* ECF No. 1411 (Def. MIL) at 2. Plaintiffs' opposition is organized in response to Goldman Sachs's brief, but addresses all requests.

[2] While Goldman Sachs seems to seek to exclude Plaintiffs' testimony about their experiences in its entirety, it also would be premature at this time to selectively parse or limit the Plaintiffs' specific testimony. *See, e.g.*, *Velez v. Novartis Pharm. Corp.*, 2010 WL 11043081, at *10 (S.D.N.Y. Feb. 25, 2010) (declining to exclude relevant testimony simply because of its overlap with other issues).

-1-

experiences by arguing, erroneously, that "evidence of intent (anecdotal or not) [is limited to] application of the Evaluation Processes by the senior decisionmakers responsible for implementing and maintaining those Processes firmwide." Def. MIL at 7 (emphasis omitted). But this argument is plainly inconsistent with the Court's prior orders. *See, e.g.*, ECF No. 888 at 3 (holding, in response to the parties' dispute about whether the named Plaintiffs' individual claims would be tried at Phase I along with their class claims [*see* ECF Nos. 674, 884, 885], that: "Phase 1 of the trial will address on a class-wise basis, and also specifically with respect to the named Plaintiffs, the discriminatory impact of, and treatment related to, Quartiling, 360-Reviews and Cross-Ruffing . . . . Phase 1 will not include (a) named Plaintiffs' individual claims (and Goldman's defenses to those claims) *apart from* application of the three processes.") (emphasis supplied); ECF No. 804 at 3 (noting "[s]ome anecdotal evidence would be permitted," although "generalized statistical evidence would predominate"); ECF No. 753 at 3 (noting the "well-recognized practice of allowing anecdotal evidence to provide real-world examples reflected in statistics" at trial).

This argument merely presents Goldman Sachs's latest variation on a theme that the Court has already (and repeatedly) rejected. *See* ECF No. 753 at 4 ("Defendants would have a Phase 1 trial solely based on statistics and Phase 2 trials devoted solely to individualized issues. That cuts too finely. Phase 2 trials will be necessary to address individualized defenses and damages. But that does not mean that relevant anecdotal and comparator evidence tied to application of the challenged processes is not appropriate to Phase 1."). Despite Goldman Sachs's creative textual exegesis, the Court has *never* limited the named Plaintiffs' ability to testify about their own experiences with the Challenged Practices, and in fact, has held exactly

2752589.3

the opposite.[3] *Cf.* Def. MIL at 6.

**B.**     **Goldman Sachs Misapprehends the Role of Named Plaintiff Testimony.**

Goldman Sachs also argues that Plaintiffs' testimony must be "representative" to be

allowed at trial. Def. MIL at 7-8. But Goldman Sachs misstates the role of named plaintiff

testimony: it is not introduced to prove discrimination, but rather to bring the other evidence "to

life," consistent with decades of Title VII case law. *Teamsters*, 431 U.S. at 338-39; *see also*

*Robinson v. Metro-N. Commuter R.R. Co.,* 267 F.3d 147, 168 (2d Cir. 2001) (finding district

court erred in "misapprehend[ing] the nature of the proof required at the liability stage" and in

failing to appreciate that "specific instances of alleged discrimination" may be relevant to

"provide[] 'texture' to the statistics," and not "to establish that the particular instances of

discrimination actually occurred"); *Chen-Oster v. Goldman, Sachs & Co.,* 293 F.R.D. 557, 565

(S.D.N.Y. 2013) ("Plaintiffs are generally permitted to discover *and introduce* anecdotal

evidence in order to supplement statistical evidence in pattern-or-practice gender discrimination

cases.") (emphasis supplied).

In effect, Goldman Sachs seeks to relitigate the Court's decision to certify this class

action, which is highlighted by its continued reliance on *Wal-Mart v. Dukes*, 564 U.S. 338

(2011), which did not address trial evidence at all.[4] But the Court has already found that the

---

[3] In its analysis of the Court's previous Orders, Goldman Sachs misstates certain statements
while ignoring others. In the Class Certification Order, the Court stated that "generalized proof
of statistical evidence is sufficient for the predominance inquiry" at the class certification stage,
ECF No. 578 at 43, but did not, as Goldman Sachs claims, state "Phase I would deal *only* with
'generalized proof' about the Evaluation Processes," Def. MIL at 5 (emphasis supplied). In fact,
Goldman Sachs fails to point to any order barring Plaintiffs' testimony. *See* ECF No. 630 at 2
(explaining liability trial will be "*focused* on generalized proof") (emphasis supplied); ECF No.
983 at 6 (noting that Phase I will include statistical evidence without analyzing role of
individualize evidence); ECF No. 1337 at 20 (same).

[4] The additional cases Goldman Sachs cites are similarly inapplicable. *Ruiz v. Citibank, N.A.* is a
class certification decision, and therefore does not discuss the relevant standard at issue here. 93

-3-

Plaintiffs' experiences are representative of the class and that they need not present testimony from each Division in each year (and has rejected Goldman Sachs's preferred business unit framework for analysis). *Compare* Def. MIL at 8 *with* ECF No. 578 at 35-39, ECF No. 1337 at 42. *See also Strauch v. Comput. Scis. Corp.*, 2018 WL 4539660, at *14 (D. Conn. Sep. 21, 2018) (defendants' argument "that Plaintiffs failed to present testimony from a statistically significant sample of class members" was a "red herring"). Given that the Court has already ruled on this exact issue, it is law of the case and dispositive. ECF No. 578 at 35-39; ECF No. 1337 at 42.

### C.   Named Plaintiff Testimony Would Not Render the Trial Unmanageable.

As to manageability, the Court has repeatedly found that the class is manageable. ECF No. 578 at 48-9; ECF No. 1337 at 45. Goldman Sachs argues that the jury would be confused by hearing testimony from the named Plaintiffs (while hypocritically also seeking to introduce the personal experiences of many of its own witnesses). Def. MIL at 9; *see also* ECF No. 1409 at 14-18. This argument is nonsensical. There would be much greater risk of confusion to the jury if the named Plaintiffs were barred from testifying about their own experience of gender discrimination concerning the Challenged Practices at trial, as the jury undoubtedly will expect testimony from the four named Plaintiffs and court-appointed class representatives. As discussed, Plaintiffs' testimony also will assist the jury in understanding how the processes worked in practice. Thus, their proposed testimony presents an entirely different situation from *ICN/Viratek Sec. Litigation*, cited by Goldman Sachs, where the "potential for jury confusion" arose from the jury being presented with evidence that was not related to the liability questions

---

F. Supp.3d 279, 291 (S.D.N.Y. Mar. 19, 2015). *In re ICN/Viratek Sec. Litigation* is a securities fraud class action where the court denied defendants' request for six individuals from a class of thousands to testify at trial, not because they were not representative of the class, but because the class members' testimony would not relate to the question before the jury. 1996 WL 34448146, at *4 (S.D.N.Y. July 15, 1996).

before it. *See* 1996 WL 34448146, at *4 (denying defendant's request to subpoena six class members to testify as to their views on defendant's actions where the standard before the jury was on the opinion of the "reasonable investor," not a class member); *see also City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 16901995, at *6 (S.D.N.Y. Nov. 11, 2022) (similarly excluding evidence of "misdeeds" not linked to issues in case).[5]

Plaintiffs' testimony also will not, as Goldman Sachs dramatically claims, generate a "multi-ringed sideshow of mini-trials on collateral issues." Def. MIL at 9. The Court's careful pretrial orders have already preempted any risk of that happening. Moreover, under Plaintiffs' proposed verdict form, the jury will not decide liability as to the Plaintiffs' (or any class members') individual claims. ECF No. 1409 at 1, 3; *see also Robinson*, 267 F.3d at 158. Rather, if Plaintiffs prevail on proving class wide liability, the named Plaintiffs enter Phase II with the same presumption of discrimination in their favor and the same other rights and benefits as every other class member. Thus, Goldman Sachs has no need to contest the veracity of employment decisions made as to Plaintiffs, because the jury is not deciding whether Goldman Sachs discriminated against them (or any other class member). *Cf.* Def. MIL at 10-11. Any testimony Goldman Sachs chooses to put on in response, the amount of such testimony, and the (greatly exaggerated) risks of confusion are entirely within Goldman Sachs's own control and should not preclude Plaintiffs from testifying as to their experiences with the practices. *Cf. Strauch*, 2018 WL 4539660, at *14 (rejecting argument that use of purportedly "highly varied and statistically defective representative testimony to impose liability in this case would deny CSC due process"

---

[5] The other cases Goldman Sachs cites are also distinguishable because (unlike here) the plaintiffs sought to introduce irrelevant and/or duplicative evidence. *See Republic of Turkey v. Christie's Inc.*, 527 F. Supp. 3d 518, 525 (S.D.N.Y. 2021) (rejecting request to introduce widespread testimony to corroborate evidence already in record); *Haskell v. Kaman Corp.*, 743 F.2d 113, 122 (2d Cir. 1984) (finding testimony irrelevant to establish pattern or practice).

in its opportunities to respond); *see also F.D.I.C. v. Suna Assocs., Inc.*, 80 F.3d 681, 687-88 (2d

Cir. 1996) (it is "well-settled that '[a] district court has wide discretion in determining whether to

permit evidence on rebuttal'"); *Velez v. Novartis Pharm. Corp.*, 2010 WL 11043081, at *3

(S.D.N.Y. Feb. 25, 2010) (same).

 Ultimately, Plaintiffs proposed a reasonable and manageable plan for trial: though not

required by the Court's prior order, Plaintiffs agree to limit class member testimony to that of the

named Plaintiffs. Any further proposed limitations on Plaintiffs' testimony, if even warranted,

should be resolved at the actual trial so that the Court will have the aid of "the appropriate factual

context" in deciding whether to exclude specific testimony. *In re Methyl Tertiary Butyl Ether

Prods. Liab. Litig.*, 643 F. Supp. 2d 446, 452 (S.D.N.Y. 2009); *see also Olutosin v. Gunsett*,

2019 WL 5616889, at *13  (S.D.N.Y. Oct. 31, 2019) ("The issue [of what evidence and rebuttal

evidence will be introduced] is dependent on what will transpire at trial, such that a ruling

[before trial] would require the Court to 'speculate as to the nature of the testimony that might

open the door to' any rebuttal testimony.") (quoting *Giles v. Rhodes*, 2000 WL 1425046, at *2

(S.D.N.Y. Sept. 27, 2000)); *EEOC v. Schott N. Am. Inc*., 2009 WL 310897, at *14 (M.D. Pa.

Feb. 5, 2009) (motion *in limine* to exclude anecdotal evidence not linked to challenged practice

"swe[pt] too broadly" and was "premature"); *EEOC v. JBS United States, LLC*, 2013 WL

1437729, at *4 (D. Neb. Apr. 9, 2013) ("Rather than attempting to rule, in limine, on the

relevance and potential prejudicial impact of arguments and evidence in the broad array of

topics . . . the Court will address such objections, when and if necessary, at the time of trial.").

 Excluding Plaintiffs' testimony now, based on Goldman Sachs's speculative arguments

about what they will (or will not) say, would be highly prejudicial as well as premature. For

these reasons, the Court should reject Goldman's extraordinary request to bar the four named

-6-

Plaintiffs/class representatives from testifying at trial about their own experiences with the Challenged Practices.

## II.      The Court Should Deny Goldman Sachs's Motion to Exclude Critical "Intent" Evidence.

Goldman Sachs proposes to impede Plaintiffs' ability to prove disparate treatment by artificially narrowing what can demonstrate "intent." First, Goldman Sachs seeks a ruling, contrary to decades of settled law, that statistics are not sufficient to allow the jury to infer intent. Def. MIL § II(A). Second, Goldman Sachs demands that Plaintiffs name yet *additional* witnesses (*i.e.*, beyond those Plaintiffs already identified with specificity) to support an invented "requirement" not found in statute or case law that Plaintiffs identify all specific decision-makers in a pattern and practice case against the company as a whole. *Id*. § II(B). Third, Goldman Sachs attempts to improperly exclude the testimony of its CEO, David Solomon. *Id*. § II(C).

In each of these positions, Goldman Sachs misstates federal law, ignores the city law, and mischaracterizes the factual record and prior discovery orders. The Court should deny its motion.

### A.      The Jury Is Entitled to Consider that Statistical Disparities on Their Own May Establish Intent for a Disparate Treatment Claim.

Goldman Sachs acknowledges, as binding Supreme Court authority requires, that a fact finder can infer disparate treatment from gross statistical disparities alone. Def. MIL at 13-14; *see also Hazelwood School District v. United States*, 433 U.S. 299, 307-308 (1977) (holding that gross statistical disparities alone show intent in the proper case); *United States v. City of New York*, 717 F.3d 72, 88 (2d Cir. 2013) (same); *Robinson,* 267 F.23 at 158 (same); Manual on Employment Discrimination § 1:123 (2023) (noting that gross statistical disparities alone in a proper case can be prima facie proof of a pattern and practice of discrimination, "[a]t least in a class action"). This concession, alone, warrants denial of Goldman Sachs's motion, but Plaintiffs address the other arguments below as well.

1.     *There Are "Gross" Statistical Disparities Here and Goldman Sachs's Arguments to the Contrary Are Meritless.*

Through its *Daubert* rulings, this Court already rejected Goldman Sachs's requests to hide the statistics from the jury. Based on analyses of extensive data over many years, Plaintiffs' expert showed statistically significant results of two (sometimes more) standard deviations for *all* the Challenged Practices, and the jury is finally entitled to hear that evidence. ECF No. 1251 at 17-18, 22.

Goldman Sachs's latest suggestion is that the *Hazelwood* Court set a minimum standard that lawsuits require an approximately 65% gross disparity in order for a plaintiff to have the benefit of arguing that statistically significant statistical disparities alone are enough to show disparate treatment. Def. MIL at 14. This misleading and scientifically false statement is contradicted by *Hazelwood* itself, and is absent in other cases determining that an inference of causation exists due to statistics.

Specifically, Goldman Sachs claims that since 1977, the Supreme Court in *Hazelwood* requires at least a 65% disparity to support a finding of liability under Title VII with no other evidence of discrimination. Def. MIL at 14. Not so. As an initial matter, *Hazelwood* addressed an entirely different practical problem where the Supreme Court grappled with the appropriate race-availability applicant-flow data in a hiring discrimination case for teachers—choosing between the racial composition of various geographical regions in and around the St. Louis City School District. 433 U.S. at 310-11. The observed race-based differences would be smaller or larger depending on the relevant labor market area; upon examination, the Court held that the lower court's comparison of the teacher worker force to its student population "fundamentally misconceived the role of statistics in employment discrimination cases." *Id.* at 308. The Court

-8-

also noted that "gross" statistical disparities alone may support a finding of liability under Title VII. *Id.* at 308-09 (citing *Teamsters*, 431 U.S. at 339).

Nothing in *Hazelwood* supports Goldman Sachs's argument. Moreover, Goldman Sachs ignores the relevant part of the opinion. As the Court recognized: "The disparity between 3.7% . . . and 5.7% *may* be sufficiently small to weaken the Government's other proof, while the disparity between 3.7% and 15.4% *may* be sufficiently large to reinforce it." 433 U.S. at 310 (emphasis supplied). Goldman Sachs cherry-picks that sentence to support its invented 65% requirement. But the footnote to the very same sentence provides the dispositive context. The Court explained that the 15.4% figure was relevant because it would represent "more than two or three standard deviations" and the 5.7% figure would be *less* than two standard deviations. *Id.* at n.17. Raw numbers do not matter; statistics matter.

As this Court has already repeatedly determined, Plaintiffs have submitted robust statistical evidence of discrimination—again, showing two (or more) standard deviations—that readily supports a finding of gender discrimination and is law of the case, as well as consistent with *Hazelwood*. *See Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *27 (S.D.N.Y. Mar. 17, 2022), *on reconsideration in part,* 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022). More generally, it is well established that the use of inferential statistics routinely supports a finding of discrimination under Title VII. *Smith v. Xerox Corp.*, 196 F.3d 358, 366 (2d Cir. 1999); *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003); *Guardians Ass'n v. Civil Serv. Comm'n of New York*, 630 F.2d 79, 86 (2d Cir. 1980).

> **2.** **Because This Is a Class Action with Meaningful Disparities, Statistics Alone Can Constitute Proof of Discrimination.**

Goldman Sachs also argues that this is not a proper case for allowing the jury to infer intent from statistics alone. This argument relies on an unsupported standard that Goldman Sachs

makes up and inapposite individual cases.

  *First*, Goldman Sachs implies that the company itself must have reviewed the disparities in real time to be accountable for their implications. Def. MIL at 13. That argument is flatly contradicted by five decades of Title VII jurisprudence. An inference of discrimination may be adduced from a prolonged pattern of unremediated statistical disparities. *Teamsters*, 431 U.S. at 339. In any event, Goldman Sachs *has* seen Dr. Farber's statistics for more than ten years, is capable of quantitative analysis on its own, and internally recognized the presence of disparities in the Challenged Practices.[6] Thus, Goldman Sachs clearly was aware.

  *Second*, in asserting that statistics alone *generally* are not dispositive on the issue of intent, Goldman Sachs misunderstands the difference between the use of statistics in individual cases and class actions. The language Goldman Sachs cites in *Bailey v. City of New York*, a case where the plaintiff *did not even allege intentional discrimination*, confirms that the holding related expressly to individual cases. 2003 WL 21031972, at *9 (S.D.N.Y. May 2, 2003). *Boyle v. City of Philadelphia* likewise was about "individual disparate treatment cases." 476 F. Supp. 3d 101, 112 (E.D. Pa. 2020). And in *Burgis v. N.Y. City Dep't of Sanitation*, while the Second Circuit held that "statistics alone are not sufficient to allege discriminatory intent in [individual] § 1981 or Equal Protection cases," the Court clarified that "as a matter of first impression for this Circuit in the context of a putative class action alleging employment discrimination under § 1981 and/or the Equal Protection Clause [] [w]e now hold that, as some of our Title VII cases have

---

[6] *See, e.g.*, Ex. 43 at GS0176438 ███████████

███████████████████████████████████████

████████████████████████████████ Ex. 234 at GS0190623

███████████████████████████████████████

hinted, in certain circumstances (described below), statistics alone may be sufficient." 798 F.3d 63, 69 (2d Cir. 2015).[7]

 *Third,* Goldman Sachs appears to concede that statistical disparities alone can show discrimination under the NYCHRL and that this is a proper case for the jury to hear that instruction under that law. To be clear, Goldman Sachs cites no NYCHRL cases and does not make arguments under city law. But the NYCHRL must be interpreted "[b]roadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York,* 16 N.Y.3d 472, 477-78 (NY Ct. of App. 2011). This provides even more compelling justification for adherence to a well-established standard for proof—i.e., to allow gross statistical disparities to evidence discrimination—under the NYCHRL as under Title VII.

### 3. *Goldman Sachs's Argument that the Court Foreclosed, or Plaintiffs Disavowed, this Path to Liability Is Wrong.*

 Finally, Goldman Sachs incorrectly claims the Court foreclosed the argument that statistics alone can allow a jury to infer discrimination. Def. MIL at 12.[8] In the section of the class certification opinion entitled "Statistical Theory," the Court explicitly recognized that "a statistical showing of disparate impact might suffice." ECF No. 578 at 45. In a footnote to the very next sentence, the Court addressed Plaintiffs' assertion that Goldman Sachs's awareness

---

[7] The Second Circuit explained that the statistical significance "must also be of a level that makes other plausible non-discriminatory explanations very unlikely." *Id.* The Court implied this standard could be satisfied by the two to three standard deviations, as exists here, and held that plaintiffs could not satisfy the standard using only descriptive statistics. Taken together, the cases confirm that even without a uniform definition in the law of what a "proper" case is for a jury to infer intent from statistics alone, this case meets the criteria courts contemplate.

[8] Goldman Sachs relies on *Andrus v. Juniper Grp., Inc.*, 2011 WL 4532694, at *4 (E.D.N.Y. Sept. 26, 2011), where plaintiffs raised the alter-ego theory of liability *for the first time* "on the morning of trial," for its risible claim in this nearly thirteen-year-old disparate treatment case that disparate treatment is a "new theory of liability," Def. MIL at 12.

and continued use of discriminatory practices presented common issues in the context of *rejecting* Goldman Sachs's arguments, not limiting Plaintiffs' avenues of proof on the merits. *Id.* at n.16.[9] Nowhere in the Order did the Court limit statistical proof.

Even apart from Goldman Sachs's mischaracterization of the certification order, Goldman Sachs continues to confuse a Rule 23 ruling with the jury's role at trial. *See generally* ECF No. 1406 at 4, n.1. Neither the Court nor Plaintiffs has waived any right, including the long-established right to argue that the statistical disparities prove disparate treatment.

For these reasons, Goldman Sachs's motion *in limine* (Section II(A)) should be denied.

**B.    There Is No Support for Goldman Sachs's Request for Plaintiffs to Name More Witnesses "Whose Intent Matters."**

### 1.    *Plaintiffs Provided the Information Goldman Sachs Claims to Need.*

Goldman Sachs seeks an order requiring Plaintiffs to identify the "Goldman Sachs decision-makers whose intent mattered." Def. MIL at 15. This fictitious standard is unsupported by even one case where a court ordered similar relief. The request is also outside the confines of a proper motion *in limine*, which generally relates to proposed evidence *in* the record, not evidence a party claims *should be* in the record (or evidence a party wishes it had sought before discovery closed). It also effectively ignores that almost all of Plaintiffs' previously-disclosed trial witnesses—including the current and former CEO, human resources executives, and Management Committee members—are identified to address aspects of decision-making. *See* ECF No. 1409 at 11-13.[10] For these witnesses, Plaintiffs identified their area of testimony as

---

[9] As elsewhere, Goldman Sachs wrongly sought at class certification to exculpate itself due to its unproven and irrelevant assertion that it did not formulate its policies with an intent to discriminate. The Court explained the fallacies with Goldman's arguments. *See* ECF No. 578 at n.16 (discussing how an employer's failure to act can give rise liability).

[10] Goldman Sachs acknowledges that Plaintiffs have named these witnesses, Def. MIL at 16, but claims even this level of specificity is not enough, again without citing any authority as to why (and while providing no more  detail as to its own witnesses).

"Goldman Sachs's knowledge of bias and gender disparities in its 360 review, manager quartiling, and cross-ruffing processes; and a climate of gender bias at the corporate level of Goldman Sachs, including evidence that corporate leaders who had oversight over the challenged processes made decisions based on gender stereotypes." *Id*. at 10-13.

### 2. *Goldman Sachs Is the Relevant Decision-Maker*.

The premise underlying Goldman Sachs's request also is faulty: Goldman Sachs necessarily acts through representatives who implement corporate decisions to modify or continue to use the practices. It is Goldman Sachs that chose to re-ratify discriminatory practices year after year. The names of the particular representatives is not the point. Plaintiffs have made this clear, as Goldman Sachs's own exhibits to its MIL confirm. Goldman Sachs's claim that Plaintiffs have withheld information is a red herring.

Specifically, one of Goldman Sachs's interrogatories sought the identification of the individuals who discriminated against Class Members. ECF No. 1412-4 at 3 (Interrogatory No. 20). In response, Plaintiffs explained, among other things, that "*Goldman Sachs* engaged in a pattern or practice of discrimination against Class Members by being aware of the discriminatory impact of its employment practices and continuing the use of those practices without adjustment or correction to account for the discrimination women faced or to correct the harm caused by the policies." *Id*. at 3-4 (emphasis in original). When Plaintiffs refer to Goldman Sachs decision-makers, this is not a placeholder, but a statement of Goldman Sachs's accountability.

The Second Circuit's language in *City of New York* is instructive about the focus on the company in a class, versus an individual, case: "In a pattern-or-practice case, the plaintiff's initial burden is heavier in one respect and lighter in another respect than the burden in an individual case. It is heavier in that the plaintiff must make a *prima facie* showing of a pervasive policy of intentional discrimination [] rather than a single instance of discriminatory treatment. It

-13-

is lighter in that *the plaintiff need not initially show discrimination against any particular* [] *employee*." 717 F.3d at 84 (quotations omitted) (emphasis supplied). Just as the case is not about any one individual employee, it is not about any one particular representative of the employer (or any one employee's manager).

Thus, under applicable law, there is no requirement to name specific decision-makers because the company is responsible for them no matter who they are. Similarly, as Judge Francis earlier explained, "the claim that plaintiffs advance under the NYCHRL . . . is a strict liability provision that holds the employer legally responsible without regard to whether the employer knew or should have known of the conduct of the managerial employee." ECF No. 183 at 17-18.

### 3.   *Goldman Sachs Ignores the Multiple Ways a Jury Can Infer Intent.*

Goldman Sachs's request also fails to appreciate that a jury could find disparate treatment in a variety of ways, including statistical disparities alone, as shown above. *See also* ECF No. 1406 at 4-5. In this scenario, the so-called decision-maker is irrelevant. A jury could also find a policy of intentional discrimination based on evidence that Goldman Sachs executives with influence over the company's use of the Challenged Practices held views colored by gender bias or gender stereotypes. *Id*. Thus, even if Plaintiffs had not already provided the information Goldman Sachs seeks—and they have—Goldman Sachs's request should be denied on the basis that it relates to *only one* of the ways that a jury can find evidence of disparate treatment: knowledge of disparities and continued use of the practices causing them.

### 4.   *There Will Be No Surprise at Trial.*

Finally, Goldman Sachs will *not* be surprised at trial when Plaintiffs call the very witnesses they have already identified. The cases Goldman Sachs cites in Section II(B), which relate to so-called trial by ambush, are completely inapposite.

In *Pruter v. Local 210, Int'l. Bhd. of Teamsters*, this Court did not allow plaintiffs'
counsel to call at trial witnesses whom they did not make available for deposition due to a
stipulation where they limited depositions to three of the plaintiffs. 2020 WL 6729406, at *1
(S.D.N.Y. Nov. 16, 2020). In *Am. Stock Exch., LLC v. Mopex, Inc.*, the court held that a patentee
could not allege infringement of late-asserted claims. 215 F.R.D. 87, 93 (S.D.N.Y. 2002).
*Handwerker v. AT&T Corp.* involved a plaintiff who brought suit eleven years after the end of
her employment and, among other things, refused to sit for a deposition; "apparently against the
advice of her own counsel," plaintiff also disobeyed "not one but as many as six separate Court
Orders." 211 F.R.D. 203, 205-211 (S.D.N.Y. 2002). Here, in contrast, Plaintiffs have been clear
about the different ways a jury can find disparate treatment by Goldman Sachs against its female
employees, including by seeking evidence of gender bias held by senior decision-makers and
taking the depositions of Goldman Sachs's leaders, and Plaintiffs have identified their witnesses.

For these reasons, Goldman Sachs's motion (Section II(B)) should be denied.

C.     **The Court Should Deny Goldman Sachs's Attempts to Exclude Relevant and
       Highly Probative Testimony from David Solomon.**

Goldman Sachs attempts to improperly exclude the testimony of its CEO, David
Solomon, relying on misapplications of the law and prior discovery orders. In doing so, Goldman
Sachs ignores the highly relevant and probative nature of Solomon's testimony and the
applicable evidentiary standards.

At trial, the admission of a witness's testimony is governed by the Federal Rules of
Evidence (FRE): FRE 402 provides that relevant evidence is admissible unless certain exceptions
apply, none of which are applicable here, and FRE 401 specifies that evidence is relevant if it
"has any tendency to make a fact more or less probable than it would be without the evidence; []
and the fact is of consequence in determining the action." Solomon's testimony is relevant and

-15-

highly probative to Plaintiffs' disparate treatment and disparate impact claims, and Goldman

Sachs has not presented a viable basis for excluding his testimony.

       1.    ***Solomon's Testimony Is Relevant to the Disparate Treatment Claims.***

Solomon, as CEO of Goldman Sachs, has made key admissions of gender bias in

Goldman Sachs's promotion practices. In fact, the minutes from Goldman Sachs's Board of

Directors meeting on June 25, 2019 reflect that Solomon ███████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████ Ex. 854 at GS1043774-75 (emphasis supplied).[11] Elsewhere Solomon has

said: █████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. 834 at

GS0429859-60. This goes to the core of Plaintiffs' disparate treatment claim, as it is probative

evidence of the operation of unlawful bias in the Challenged Practices. ECF No. 1406 at 4-6, 13-

14. Plaintiffs should be able to call Solomon as a witness for this reason alone.

Solomon is certainly well-situated to know whether gender bias has operated in the

Challenged Practices:

- As a senior leader within the Firm and a member of Goldman Sachs's Management Committee ("MC") from 2006 to the present, Solomon has been privy to the Firm's own findings relating to: the flaws with Manager Quartiling, *see*, *e.g.*, Ex. 328 at GS1025971 ████████████████████████████ ████████████ ; the underrepresentation of women in the MD promotion ranks, *see*, *e.g.*, Ex. 839 at GS0653212.001-002 ███████████████████ █████████████████████████████████ ); feedback from women as



_____

[11] Solomon's testimony also is necessary to establish a foundation for the admission of this and other exhibits to which Goldman Sachs has objected.

part of the People Surveys, *see, e.g.*, Ex. 523 at GS0652437 ); and the Firm's repeated acknowledgement that meaningful manager accountability was key to addressing the diversity numbers problem, *see, e.g.*, Ex. 164 at GS1034696-97 (

.

- As co-head of Goldman Sachs's Investment Banking Division (IBD) and a member of IBD's Operating Committee from 2006 to 2016, he was a key decision-maker with respect to promotions within IBD. *See* Larson Tr. at 227:8-21, 228:18-229:21, 231:6-232:25 (

); Ex. 453

.

- In 2006, Solomon was a co-leader of Goldman Sachs's "Quartiling Taskforce,"

, Ex. 135. Among other things, the taskforce materials note that as of 2006, there were,

*Id.* at GS0567436.

Solomon's knowledge of (or disregard for) this information during the time he was charged with making promotion decisions and performance review recommendations is further relevant evidence supporting Plaintiffs' disparate treatment claim. ECF No. 1406 at 4-5, 13-14.

## 2.   *Solomon's Testimony Is Relevant to the Disparate Impact Claims.*

Solomon's testimony also is directly relevant to Goldman Sachs's NYCHRL disparate impact affirmative defense—namely, whether Goldman Sachs's performance evaluation processes bear "a significant relationship to a significant business objective" and whether "an alternative policy or practice with less disparate impact is available to the covered entity and the covered entity fails to prove that such alternative policy or practice would not serve the covered

entity as well." N.Y.C. Admin. Code § 8-107(17)(a)(1-2); *see also* ECF No. 1406 at 11-13.

Likewise, his testimony is relevant to Goldman Sachs's Title VII disparate impact affirmative

defense that the processes are "job related for the position in question." ECF No. 1406 at 3.

Prior to his elevation to CEO, as a senior leader and member of the MC, Solomon

provided critical feedback on Goldman Sachs's performance evaluation processes, including

both the 360 Review and Manager Quartiling. For instance, a summary of interviews with senior

leadership in late 2013/early 2014 regarding the 360 Review redesign reflects Solomon's belief



Ex. 572 at GS0861529. Elsewhere and in the same time frame, Goldman Sachs

notes that Solomon had a strong view that,

Ex. 855 at GS0744357. That a senior

leader in the Firm, one who is now the CEO,

is direct evidence that the performance evaluation system did not have a significant

relationship to a significant business relationship and was not consistent with business necessity.

Indeed, other evidence will establish that shortly thereafter the 360 Review process was

revamped to focus on feedback rather than evaluation, scoring was eliminated entirely (*see*, *e.g.*,

Ex. 729 at GS0614981

), and the observed disparity resulting from the 360 Review system disappeared. ECF

No. 1242-36 at 51-53.

-18-

Solomon's statements at a Board of Directors meeting in 2020 similarly undermine Goldman Sachs's affirmative defenses with respect to Manager Quartiling. The official minutes of that meeting reflect that de Beyer, Solomon's joint presenter, ███████████████ ████████████████████████████████████████████ ██████████████ Ex. 858 at GS1043782. Solomon then concurred. ████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████ *Id.*

### 3.     *There Is No Basis to Exclude Solomon's Testimony Under FRE 403.*

Goldman Sachs has made no showing that the probative value of Solomon's testimony is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403. Indeed, there is no such danger. Rather, Goldman Sachs seems to suggest that special rules apply to the testimony of executives—a suggestion that finds no basis in law. *See United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.,* 112 F. Supp. 3d 122, 149-50 (S.D.N.Y. 2015) (holding that the plaintiff was not precluded from calling the defendant's CEO at trial, as the defendant had not established any unique burden that would confront it if the CEO were to testify). As the Court in *United States Bank National Association* noted in denying the defendant's motion to preclude the testimony of its CEO, "[Defendant] relies instead on the general proposition that CEOs are busy people. That is undoubtedly true, but insufficient to overcome [Plaintiff's] right to call witnesses with relevant testimony" at trial. *Id.*

Further, the so-called "apex witness" rule Goldman Sachs alludes to does not apply to Solomon's trial testimony, as the "apex witness" rule is a limitation of discovery under Rule 26, not a basis for excluding testimony under FRE 403. *See id.* at 149 ("It is not at all clear that the 'apex witness' rule even applies in these circumstances. Every opinion the court has located

applies the apex witness rule to depositions, not trial testimony, which makes sense, because the rule finds its origin in Rule 26's limitations on burdensome discovery."). The two cases on which Goldman Sachs relies in seeking to exclude Solomon's trial testimony are readily distinguishable. In *Plew v. Ltd. Brands*, *Inc.*, the court excluded a defendant CEO's testimony where the Plaintiff had not proffered evidence that the CEO had personal knowledge of matters relevant to the action, while also permitting Plaintiff to make an application to call the CEO as a witness if it could proffer such evidence and show that it was not outweighed by FRE 403 considerations. 2012 WL 379933 (S.D.N.Y. Feb. 6, 2012). Likewise, in *Reddy v. Nuance Commc'ns, Inc.*, the plaintiff made no showing that the CEO had any relevant knowledge related to the case. 2015 WL 4648008 (N.D. Cal. Aug. 5, 2015). In contrast, Solomon has unique and relevant testimony, as discussed above.

Finally, the Court's prior discovery limitations are not determinative as to whether Solomon's trial testimony is admissible under FRE 402; the standards for limiting discovery under the FRCP and precluding trial testimony under the FRE differ. Because Solomon's testimony is undoubtedly relevant under FRE 401, it is admissible under FRE 402, and Goldman Sachs has not put forth any basis, nor does any exist, to exclude his testimony under FRE 403. Therefore, Goldman Sachs's motion to exclude Solomon's testimony should be denied.

## III.   The Court Should Reject Goldman Sachs's Attempt to Mischaracterize Relevant Evidence as Improper "Boy's Club" Evidence.

Goldman Sachs also continues its effort to bury relevant common evidence of discrimination by mischaracterizing it as impermissible "boy's club" information. In particular, Goldman Sachs now moves to exclude unspecified "boy's club," "bad acts," and "culture" evidence. Def. MIL §§ III(A)-(C). Because Goldman Sachs misrepresents Plaintiffs' evidence, the law, and this Court's prior orders, this motion should be denied.

-20-

### A.      Plaintiffs Do Not Seek to Introduce Individualized "Boy's Club" Evidence.

Plaintiffs' exhibit list, witness list, and trial plan all make clear that they do *not* seek to introduce the type of individualized "boy's club" evidence that the Court held did not support class certification. Nevertheless, Goldman Sachs continues to insist that they do, and therefore seeks a sweeping and prejudicial ruling that any "boy's club" evidence, defined by Goldman Sachs to be virtually everything outside statistics and policies, is inadmissible at trial. This extraordinary request should be denied.

Despite asserting that Plaintiffs "will introduce dozens of trial exhibits relevant only to their non-certified 'boy's club' claims," Goldman Sachs identifies only five exhibits of the 911 on Plaintiffs' exhibit list (compared to 1,918 on Goldman Sachs's list) that purportedly qualify as improper "boy's club" evidence. Def. MIL at 20-22. In fact, none do. Goldman Sachs objects to Plaintiffs' Exhibit 871—which reflects multiple internal complaints of gender discrimination *in the Challenged Practices*—and to Plaintiffs' Exhibit 17—which reflects employee concerns of fairness *in the Challenged Practices*.[12] Goldman Sachs makes these objections despite the Court's prior ruling that this is precisely the sort of anecdotal evidence that will be admissible at Phase I. *See* ECF No. 888 at 3 (noting that Phase I may include "'boys' club' claims or

---

[12] *See*, *e.g.*, Ex. 871 at GS0145358 ██████████████████████████████████████

████████████████████████████████████████████████████████

*id.* (████████████████████████████████████████

Ex. 17 at GS0243235 (████████████████████████████████████████

████████████████████████████████████     These exhibits also constitute common evidence of Goldman Sachs's knowledge of discrimination, which is relevant to Plaintiffs' disparate treatment claims. *See supra* § II; *see also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 83 n.16 (S.D.N.Y. 2018) (noting relevance of Goldman Sachs's "aware[ness] of the discriminatory impact of its employment practices and continue[d] . . . use" of the practices).

anecdotes" to the extent they are "related specifically to application of the three processes").[13]
Goldman Sachs also objects to two Exhibits—Exhibits 265 and 281—that reflect Plaintiff
Orlich's experiences of discrimination in the Challenged Practices. Again, Goldman makes this
objection despite the Court's prior order permitting precisely this sort of named Plaintiff
testimony. *See id.* (noting Phase I may include evidence "specifically with respect to the named
Plaintiffs").[14] Finally, Goldman Sachs objects to Exhibit 826, which provides 2018 trends and
metrics related to the handling of sexual harassment complaints *at the institutional level*.
Goldman Sachs objects despite the Court's order that Plaintiffs' expert Dr. Caren Goldberg will
be permitted to offer an opinion on whether Goldman Sachs's "climate is tolerant of gender bias
and harassment" if Goldman Sachs opens the door to such testimony by attempting to portray
itself as concerned for women. ECF No. 1337 at 7-9. *See also infra* § III(C).

   Having failed to identify any exhibit that actually qualifies as improper individualized
"boy's club" evidence, Goldman Sachs also makes the sweeping request that the Court exclude
*any* unspecified "'boy's club' evidence, including about Goldman Sachs's 'culture' or 'climate,'
or individuals' supposed use of 'gender stereotypes.'" Def. MIL at 21. This request is
unintelligible, and any such ruling would be impossible to follow. *See Wechsler v. Hunt Health
Sys., Ltd.*, 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) ("A district court is well within
its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to
present arguments with specificity."). Indeed, it seems Goldman Sachs would characterize *all*
discrimination evidence as improper "boy's club" evidence to avoid facing Plaintiffs' proof at

---

[13] If Goldman Sachs opens the door to evidence regarding the company's culture for diversity,
Exhibits 17 and 871 would also be admissible for that additional purpose. *See infra* § III(C).

[14] *See also supra* § I (rebutting Goldman Sachs's attempt to limit testimony from the Plaintiffs).

trial.[15] The Court should not endorse this improper tactic.

Moreover, Goldman Sachs is wrong on the law. With respect to "gender stereotypes," for example, proof that corporate leaders with oversight on the Challenged Practices made decisions based on gender stereotypes *can* be offered as evidence of intentional discrimination.[16] Indeed, the Court already held that such evidence is relevant *in this case*. *See* ECF No. 1100 at 2 ("[T]his Court determined that individualized evidence of discriminatory animus toward women may be relevant here if that animus was demonstrated by senior personnel responsible for approving, revising, or implementing the allegedly discriminatory policies at issue."). None of Goldman Sachs's authorities suggest otherwise, and none stand for the broad (and boundless) proposition that "boy's club" evidence is per se inadmissible at a discrimination trial.[17]

## B.   Goldman Sachs Fails to Specify Which "Bad Acts" the Court Should Preclude.

Goldman Sachs also moves to preclude "evidence of prior Goldman Sachs employment settlements, litigation, and other alleged 'bad acts' that are closely related to [Plaintiffs'] 'boy's club' theory." Def. MIL at 23. Outside of one example, Goldman Sachs does not define with any

---

[15] It is also somewhat disingenuous for Goldman Sachs to argue, on the one hand, that statistics alone are not enough to demonstrate intent, but on the other, that the trial should exclude evidence of anything other than statistics.

[16] *See*, *e.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("[I]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.") (citation omitted); *see also* Pl. PMOL (ECF No. 1406) at 5-6 (citing cases).

[17] *Hart v. RCI Hosp. Holdings, Inc.* was not a discrimination case at all, but a case challenging minimum wage violations. 90 F. Supp. 3d 250, 259 (S.D.N.Y. 2015). Similarly, *Levitant v. City of New York Hum. Res. Admin.* did not concern evidence of stereotyping at all, but "improper statements during [plaintiff's counsel's] summation, many of which were in direct contravention of this court's prior rulings on motions *in limine*." 914 F. Supp. 2d 281, 311 (E.D.N.Y. 2012). And in *E.E.O.C. v. Bloomberg L.P.*, the court did not exclude evidence regarding actual instances of stereotyping by senior leaders, but expert testimony about "factors that give rise to gender stereotyping" in a corporate context. 2010 WL 3466370, at *18 (S.D.N.Y. Aug. 31, 2010). The opinion finds no application here.

clarity what information it specifically seeks to preclude. Thus, Goldman Sachs again fails to provide the Court with a means to assess its request (and fails to provide the specificity that would allow Plaintiffs to fairly respond). Goldman Sachs's motion is speculative and should be denied on this basis. *Wechsler*, 2003 WL 21998980, at *3.

Even so, evidence of prior settlements, litigation, and "bad acts" is potentially relevant to Goldman Sachs's knowledge and intent. *See Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 83 n.16 (S.D.N.Y. 2018) (noting relevance of Goldman Sachs's "aware[ness] of the discriminatory impact of its employment practices and continue[d] . . . use" of the practices). To the extent Goldman Sachs knew through other cases or settlements that the Challenged Practices illegally discriminated against women, and yet continued to use them, that would be highly relevant, and a jury would be entitled to consider that evidence.

The only exhibit Goldman Sachs actually identifies is Exhibit 583, which highlights Plaintiffs' point. Def. MIL at 23. Exhibit 583 is a spreadsheet produced by Goldman Sachs of ███████████████████████████████████████ that include individuals who were in class positions and concern the precise Challenged Practices in this lawsuit. *See* Ex. 583 ████████ ███████████████████████████████████████████████████████████████ ██████████████████████████. Compiled by Goldman Sachs, it is potentially probative as to years of Goldman Sachs's knowledge regarding problems with the Challenged Practices.[18] This Exhibit also provides relevant anecdotal evidence. *See supra* § I.

---

[18] Goldman Sachs also cites a sentence in Plaintiffs' meet and confer letter to imply that Plaintiffs seek to admit evidence of prior settlements and litigation. Def. MIL at 23, Ex. B at 5 (ECF No. 1412-2). But, as the context makes clear, Plaintiffs' position was that they would not agree to a blanket agreement simply because litigations and settlements may be potentially relevant to notice and knowledge on the part of Goldman Sachs. *Id.* In that letter, Plaintiffs noted they would be willing to consider excluding specific examples, if Goldman Sachs identified any. It did not then and still has not.

C.    **The Court Already Held that Goldman Sachs Cannot Present a One-Sided View of the Firm's Culture at Trial.**

Finally, Goldman Sachs effectively asks the Court to reconsider its prior ruling that if Goldman Sachs puts forth *positive* evidence regarding its policies and practices for diversity and/or women, then Plaintiffs' expert Dr. Caren Goldberg will be permitted to offer her opinion critiquing such efforts and determining whether Goldman Sachs's climate is, in fact, tolerant of gender bias and harassment. Def. MIL § III(C). The thrust of Goldman Sachs's request is clear: it wants the ability to trumpet the company as a fair and equitable workplace, while also preventing Plaintiffs from offering any evidence—and there is substantial evidence—rebutting this claim. The Court should reject this request.

Though Goldman Sachs claims it "has no intention" of offering evidence about its practices with respect to diversity and inclusion, that statement is plainly contradicted by Goldman Sachs's trial plan. Def. MIL at 25. In fact, Goldman Sachs contradicts itself in the *very next sentence*, by asserting that it actually "has every right" to offer such evidence. *Id*.[19] Indeed, Goldman Sachs outright acknowledges that it intends to "point to programs" that purportedly improved outcomes for women, and to statements in which the company "lauded [those] improved outcomes." *Id*. at 25-26 (emphasis omitted). Goldman Sachs also makes this intention clear in its Pretrial Memorandum of Law. *See* ECF No. 1413 at 9-10 (noting that to rebut Plaintiffs' evidence of intent, Goldman Sachs will present "affirmative evidence" showing that senior leadership intended to improve outcomes for women, including "evidence of programs

---

[19] Plaintiffs do not challenge this right. Thus, Goldman Sachs's argument and authorities for the proposition that "[n]o plaintiff can limit the type of evidence that a defendant must produce to rebut a prima facie case" have no bearing on the request Goldman Sachs makes here, by which it seeks to *limit Plaintiffs*—not the other way around. *See* Def. MIL at 25 (citing *United States v. City of New York*, 717 F.3d 72, 85 (2d Cir. 2013); *Adorno v. Port Auth. of N.Y. & N.J.*, 258 F.R.D. 217, 231 (S.D.N.Y. 2009)).

designed to improve those outcomes").

Unable to *credibly* claim that it has no intention of offering evidence it admits it will rely on, Goldman Sachs then asserts that such evidence should not "open the door" to responsive evidence from Plaintiffs. Def. MIL at 25. But the Court has already held that permitting Goldman Sachs to present a one-sided view of its policies and practices with respect to diversity would be unfair and improper. *See* ECF No. 1337 at 8 (declining to exclude the opinions of Dr. Goldberg because "[i]n this scenario, Goldberg's opinion will likely be relevant because it would contradict the evidence adduced by Defendants"). In so holding, the Court explicitly rejected Goldman Sachs's argument that Dr. Goldberg's opinions relate solely to the uncertified "boy's club" theory of disparate treatment. *Id.* Goldman Sachs presents no reason for the Court to reverse itself on this issue. In fact, the Court's Individual Practice Rules prohibit precisely this improper attempt. *See* Judge Torres Individual Practices § III.L (explaining that parties cannot use motions *in limine* to make arguments that should be—and were here—addressed through *Daubert* motions). And the only authority Goldman Sachs cites in support of its argument actually supports the Court's prior ruling. In *SEC v. Genovese*, the court precluded "other bad acts" evidence "unless Defendant opens the door" to such evidence. 2022 WL 16748779, at *6 (S.D.N.Y. Nov. 7, 2022). Here, the Court already defined the relevant door, and Goldman Sachs's pretrial submissions confirm the company intends to walk through it. Accordingly, the Court should deny Goldman Sachs's attempt to preemptively preclude Plaintiffs from offering responsive evidence, including the expert opinion of Dr. Goldberg.

## IV.   The Court Should Deny Goldman Sachs's Remedies-Related Motions *in Limine*.

Goldman Sachs also makes several challenges to remedies that are not properly before the Court through motions *in limine*, and which articulate incorrect statements of the law.

A.     **Dr. Farber's Compensation Analysis Is Relevant and Admissible.**

The Court should deny Goldman Sachs's belated attempt to re-litigate and modify the Court's *Daubert* decision on Dr. Farber's analyses.[20] Consistent with the Court's decision, Plaintiffs will not present evidence from Dr. Farber regarding "general pay disparities for damages purposes," ECF No. 1337 at 20, or Dr. Farber's other damages analyses, as these are properly reserved until Phase II. Goldman Sachs now asks the Court to reverse its prior *Daubert* ruling and prohibit Plaintiffs from presenting evidence as to how the Challenged Practices impact compensation. While Goldman Sachs does not identify any specific paragraphs or tables from Dr. Farber's report that it now seeks to exclude, such testimony is clearly relevant to Phase I, and the Court has already denied Goldman Sachs's request to exclude such information.

*First*, the Court already held nearly a year ago that Plaintiffs may present evidence from Dr. Farber as to how he "looks at compensation generally to ascertain how the processes at issue impacted compensation." ECF No. 1337 at 20. The Court also held that Dr. Farber "can testify that the differences he found [in his regression analyses] were based on gender." *Id.* at 18-19 (specifically identifying Farber Report ¶¶ 76, 79, 81–83, 98–102, 104–105, 134–135 as admissible). The paragraphs identified by the Court as admissible address the impact of the challenged performance review processes on the gender pay gap. *See, e.g.*, ECF No. 1253-18 ¶¶ 98-102, 104-05. Contrary to Goldman Sachs's current characterization, the Court's *Daubert* decision regarding Dr. Farber's analysis did not hold that Plaintiffs may only "present *qualitative* evidence about how the Evaluation Processes may impact compensation," Def. MIL at 28 (emphasis in original), but instead expressly determined that his statistical analyses and opinions

---

[20] Goldman Sachs's motion to limit the testimony of Dr. Farber is also untimely. This Court's rules explicitly state that all motions to exclude testimony of experts "shall be made by the deadline for dispositive motions"—or in this case, by July 12, 2021 (ECF No. 1050)—"and shall not be treated as motions in limine." Individual Practice Rule § III.L.

on this subject were admissible. To be clear, Dr. Farber will not testify regarding his damages calculations; rather, he will testify that the disparities in the performance evaluation processes contribute substantially to a gender pay gap, as the Court has already expressly held he can testify on those subjects. The jury is entitled to understand that the harm of the adverse impact in the performance evaluation processes is not merely hurt pride: it is real money.

*Second*, the Court should reject Goldman Sachs's untimely criticisms of Dr. Farber's damages models. *See* Def. MIL at 29 (arguing that the models are "ill-fitting"). Because damages will not be a subject of Phase I, Goldman Sachs's criticisms are irrelevant. Further, Goldman Sachs's arguments that Dr. Farber's 2021 damages models do not properly account for individuals excluded from the class by the 2022 order, *id.* at 29 & n.8, is misplaced and has no bearing on Phase I; should Plaintiffs prevail at Phase I, the parties will each supplement their damages models and calculations prior to Phase II. Moreover, the promotions claims are ongoing—and additional post-liability discovery will be required to calculate damages associated with that claim in Phase II. *See* ECF No. 1399 (ordering supplementation before Phase II).

*Finally*, the Court should reject Goldman Sachs's argument that Dr. Farber's testimony regarding compensation may be prejudicial to the Firm. Def. MIL at 30. Notably, Goldman Sachs argues only that testimony as to the dollar value of damages may be prejudicial. Because Plaintiffs do not intend to present testimony regarding damages amounts, Goldman Sachs's arguments are moot and irrelevant.[21]

---

[21] Goldman Sachs's cited cases are also inapposite. In *Hopkins* v. *Nat'l R.R.*, a three-plaintiff personal injury case, the court rejected the argument that damages information would be prejudicial because—as here—damages evidence would not be presented at the liability phase. 2016 WL 8711718 (E.D.N.Y. Apr. 29, 2016). Goldman Sachs's remaining cases ordered the bifurcation of trial into liability and damages proceedings, but did not consider the admissibility of any evidence in the liability phase. *See Mineo v. City of New York*, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013); *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990).

2752589.3

**B.** __Goldman Sachs's Speculative Request Regarding Punitive Damages Should Be Rejected.__

The Court should deny Goldman Sachs's effort to shoehorn its arguments regarding punitive damages into a motion *in limine*. Goldman Sachs fails to identify any specific evidence or even category of evidence that it seeks to exclude from trial through its motion. This is not an evidentiary issue, and Goldman Sachs has made no effort to explain how it could be.

As stated in more detail in Plaintiffs' Pre-trial Memorandum of Law, ECF No. 1406 at 16-17, and in support of Plaintiffs' proposed jury charge, ECF No. 1409-4 at 49, 67-68, and proposed verdict form, ECF No. 1409-5 at 2-4, the Phase I jury should determine Plaintiffs' entitlement to punitive damages, but not the amount, because the evidence to determine punitive damages overlaps with the evidence to determine liability.

Goldman Sachs is wrong that an *entitlement* to punitive damages must be decided after an award of compensatory damages, and its cited cases do not support its arguments. Instead, they support the position articulated by Plaintiffs: the *amount* of punitive damages, if any, should be decided after the determination of compensatory damages. In *Simon II Litig. v. Philip Morris USA Inc.*, the court articulated that there must be a nexus between the punitive damages analysis (i.e., "the reprehensibility analysis") and the liability analysis (i.e., "the conduct that harms the plaintiff"), and that the "determination and award of compensatory damages" must come before the amount of punitive damages is determined. 407 F.3d 125, 138-39 (2d Cir. 2005). In *EEOC v. Mavis Disc. Tire, Inc.*, the court rejected the EEOC's proposed trial plan, which called for the Phase I jury to determine "an aggregate [punitive damages award]," because it would result in a punitive damages determination prior to setting compensatory damages; the court *did not* address or consider the question of whether the Phase I jury should determine an entitlement to punitive

damages. 129 F. Supp. 3d 90, 119-20 (S.D.N.Y. 2015).[22] Finally, while the district court in

*EEOC v. Performance Food Group, Inc.* declined to incorporate a jury determination of

entitlement to punitive damages in the Phase I trial, it cited no case law to support its decision;

instead, the only case it cited was another district court that had adopted a trial plan including a

Phase I determination of entitlement to punitive damages. 16 F. Supp. 3d 576, 582 (D. Md. 2014)

(citing *E.E.O.C. v. Pitre, Inc.*, 908 F. Supp. 2d 1165 (D.N.M. 2012)). There is no controlling or

persuasive authority for Goldman Sachs's assertion that mere entitlement to punitive damages

cannot be determined by the Phase I jury. In contrast, there is ample authority for the common

sense rule that the jury should decide entitlement to punitive damages at Phase I, since the

relevant evidence is the same as the liability evidence. *See* ECF No. 1406 at 16-17.

 Additionally, the Court should reject Goldman Sachs's argument that having a jury

decide the availability of punitive damages may unduly "prejudice" Goldman Sachs. The cases

cited are inapposite. In *Fox v. Gen. Motors LLC*, the plaintiff was not seeking punitive damages

and *voluntarily* agreed not to ask the jury to "punish" the defendant. 2019 WL 13060148, at *6

(N.D. Ga. Oct. 31, 2019). Goldman Sachs actually misquotes the court's recitation of the

defendant's argument as the court's reasoning. In *Munafo v. Metro. Transp. Auth.*, the plaintiff

was precluded from presenting "any evidence relevant *solely* to punitive damages." 2003 WL

21799913, at *23 (E.D.N.Y. Jan. 22, 2003) (emphasis supplied). Here, Goldman Sachs does not

argue there is any conceivable evidence related solely to punitive damages, nor does it attempt to

describe what such evidence might be. Finally, in *Asmus v. Metro-North R.R. Co.*, the court

---

[22] Goldman Sachs's cite to *Philip Morris USA v. Williams* misses the mark entirely. That case concerns the due process limitations on "a punitive damages award to punish a defendant for injury that it inflicts upon nonparties . . . who are, essentially, strangers to the litigation." 549 U.S. 346, 354-55 (2007).

denied the defendant's motion *in limine* that sought to preclude any arguments related to any "damages other than compensatory damages," but the plaintiff *agreed* not to urge the jury to "punish" or "penalize" the defendant. 2019 WL 2603532, at *9 (D. Conn. June 25, 2019).

None of these cases support the argument that it would be unduly prejudicial to Goldman Sachs to have the Phase I jury determine the Class's entitlement to punitive damages. Further undermining the argument, Goldman Sachs's own proposed verdict form concedes that the Phase I jury will hear evidence and decide the factual questions underlying whether punitive damages should be awarded. *See* ECF No. 1409-6 at 9 (Question 9), 15-16 (Question 18).

**C.    The Availability of Injunctive and Declaratory Relief Will Have No Bearing on the Phase I Trial.**

Goldman Sachs's request with respect to injunctive and declaratory relief similarly should be denied. There is no evidentiary question here because, regardless of any other arguments, it is the role of the Court, not the jury, to fashion injunctive and declaratory relief if Plaintiffs prevail in Phase I. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 907 F. Supp. 2d 492, 508-509 (S.D.N.Y. 2012) (noting that the statutes "provide[] the Court with 'broad equitable powers'"). Accordingly, Plaintiffs have no intention of making a presentation to the jury regarding either form of relief, and there is no basis for Goldman Sachs's request to "exclude all references, evidence, or arguments related to injunctive or declaratory relief at the upcoming Phase I trial." Def. MIL at 35.

Goldman Sachs is also incorrect as a matter of law regarding the remedies available to Plaintiffs and the Class if they prevail in Phase I. As explained in greater detail in Plaintiffs' Pre-trial Memorandum of Law, ECF No. 1406 at 19-22, the Court may order injunctive or declaratory relief based on the broad equitable powers in Title VII and the NYCHRL.

Goldman Sachs does not cite a single case that holds (or even analyzes whether) class

-31-

certification under Rule 23(b)(3) removes and forecloses the substantive rights and remedies otherwise available under Title VII and the NYCHRL. Instead, *every* case Goldman Sachs cites merely restates the familiar distinction between 23(b)(3) and 23(b)(2): while damages are available under 23(b)(3), they are not available under 23(b)(2), as due process concerns limit a 23(b)(2) class to only injunctive or declaratory relief. Not a single case holds that Rule 23(b)(3) strips a class of its substantive statutory rights to injunctive and declaratory relief.[23] And doing so would violate the Rules Enabling Act given that injunctive and declaratory relief are substantive rights afforded the Plaintiffs and Class by statute and Rule 23 is merely a procedural device. *See*, *e.g.*, 28 U.S.C. §§ 2072(a), (b) (explaining that the REA empowers Supreme Court to "prescribe general rules of practice and procedure and rules of evidence," so long as "[s]uch rules shall not abridge, enlarge or modify any substantive right"); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-08 (2010) (finding Rule 23 to be a procedural rule that does not alter substantive rights); *cf. Dukes*, 564 U.S. at 367 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'"). By contrast, numerous courts have held that Rule 23(b)(3) classes may seek damages, injunctive relief, and declaratory relief. *See* ECF No. 1406 at 20 (citing cases).

---

[23] *See All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, 280 F.R.D. 78, 83 (E.D.N.Y. 2012) (reciting standard for (b)(3) or (b)(2) class certification); *Dukes*, 564 U.S. at 362 (stating that while a (b)(2) class can *only* seek injunctive/declaratory relief, (b)(3) covers "a much wider set of circumstances"); *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 141 (S.D.N.Y. 2015) (stating only that damages "must be sought" under (b)(3) but not that injunctive relief must be sought only under (b)(2)); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 229 (2d Cir. 2016) (distinguishing relief available to two classes, one of which sought money from past harms, and one of which sought injunctive relief for future harms); *Garcia De León v. N.Y. Univ.*, 2022 WL 2237452, at *8-9 (S.D.N.Y. June 22, 2022) (stating principle that while damages are available to a class under (b)(3), only injunctive/declaratory relief and not damages are available under (b)(2)); *Wedra v. Cree, Inc.*, 2022 WL 2116760, at *5 (S.D.N.Y. June 13, 2022) (same); *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 288 (S.D.N.Y. 2019) (same).

Goldman Sachs also separately argues that the factual record would not support classwide injunctive or declaratory relief. Def. MIL at 34. This argument is premature and will be addressed at trial and in the parties' post-trial proposed findings of fact and conclusions of law. Further, while Goldman Sachs argues that "Plaintiffs elected not to take additional discovery into Goldman Sachs's promotions practices after 2018," this is entirely incorrect. As recently explained in the parties' submissions regarding Plaintiffs' motion to compel production of promotion-related data, Plaintiffs sought supplemental promotion-related discovery in 2020, but Goldman Sachs refused to produce any, and continues to refuse to produce any such discovery. *See* ECF Nos. 1394, 1398. Likewise, Goldman Sachs overlooks the continuing nature of Plaintiffs' challenges to promotion practices, through to the present, which certainly will give rise to an injunctive remedy if a verdict for Plaintiffs is reached.

Finally, Goldman Sachs also raises a separate request, without ever offering supportive explanation or argument, that the Court exclude "evidence or argument about Goldman Sachs's current Evaluation Processes." Def. MIL at 35. There is no basis to exclude evidence regarding Goldman Sachs's current practices, and Goldman Sachs has failed to support its position. As described above, Goldman Sachs's current promotion practices are plainly relevant, as the Court's certification of the promotion claim runs through the present. ECF No. 1399 at 1. Moreover, purported *changes* to Goldman Sachs's practices are also potentially relevant to the job-relatedness and business necessity of Goldman Sachs's prior practices, and feasible less discriminatory alternatives, and to Plaintiffs' entitlement to attorneys' fees under the catalyst theory under the NYCHRL. ECF No. 1406 at 17-18.

Respectfully submitted,

Dated: February 22, 2023        */s/ Kelly M. Dermody*

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Michelle A. Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
Jessica A. Moldovan
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Dated: February 22, 2023        */s/ Adam T. Klein*

Adam T. Klein
Cara E. Greene
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Class Counsel*

-34-