

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
t 415.956.1000
f 415.956.1008

February 24, 2023

Kelly M. Dermody
Partner
kdermody@lchb.com

**VIA CM/ECF**

The Honorable Analisa Torres
The Honorable Robert W. Lehrburger
United States District Court
  Southern District of New York
500 Pearl Street
New York, NY 10017

      RE:    *Chen-Oster, et al. v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (RWL)

Dear Judge Torres and Judge Lehrburger:

     We represent Plaintiffs and the Class in the above-referenced case, and submit this letter pursuant to Local Rule 37.2, Judge Torres's Individual Practice Rule III.A, to request a pre-motion conference to resolve an outstanding dispute. Because the dispute pertains to a motion *in limine* pending before Judge Torres and to other pretrial preparation, we respectfully submit this request to both Judge Torres and Judge Lehrburger. ECF No. 1387.

                  Respectfully submitted,

Kelly M. Dermody

Lieff Cabraser Heimann & Bernstein, LLP

Adam T. Klein

Outten & Golden, LLP

cc: All counsel (via ECF)

## I.    INTRODUCTION

Plaintiffs respectfully request the Court's assistance on three time-sensitive matters with significant impact on trial preparation, and move for an Order: (1) requiring, within seven days, that Goldman Sachs honor its prior agreement to provide prompt deposition dates for the 33 of its 46 named trial witnesses who were never previously deposed and produce those witnesses' personnel documentation and, if they served in class positions, employee ID numbers; (2) removing 8 individuals from Goldman Sachs's list of trial witnesses because it never disclosed them as required under Rule 26; and, in light of these depositions, (3) expediting resolution on Plaintiffs' Motion *in Limine* No. 1 ("MIL 1"), which could limit which of the trial witnesses may testify, streamlining pretrial depositions and trial preparation.

## II.    BACKGROUND

In an effort to conserve resources during discovery and in light of lengthy witness lists on Rule 26 disclosures, the parties stipulated that prior to trial they may take the deposition of any individual appearing on the other party's trial witness list who was not previously deposed. ECF No. 859. On February 1, the parties submitted their trial witness lists to the Court. ECF No. 1409. Goldman Sachs listed 33 individuals who have not previously been deposed, including 8 never disclosed under Rule 26. The next day, on February 2, Plaintiffs requested deposition dates for these witnesses and their personnel files and employee ID numbers. Plaintiffs then suggested that the parties seek an expedited ruling on Plaintiffs' MIL 1 so that they could jointly avoid the deposition burdens of those excluded, should the Court grant Plaintiffs' MIL 1.

Goldman Sachs declined Plaintiffs' requests. In a series of meet and confer discussions ending on February 23, Goldman Sachs contended that it was premature to produce any witness's files until it was certain that the witness's deposition would go forward. It also claimed that employee ID numbers—which would allow Plaintiffs to locate a witness in the HR personnel data (which lacks a name field), and learn basic facts, such as 360 review and manager quartile scores—was unwarranted because individual-level data of witnesses is purportedly irrelevant to the witness's testimony at trial. Goldman Sachs has not explained how the parties are supposed to complete these depositions in the remaining (and quickly diminishing) time before the June 7 trial, if Goldman Sachs waits to even begin production of the witnesses' files until after the Court rules on the parties' motions *in limine*. As of this writing, Goldman Sachs has not provided a single deposition date for these 33 witnesses. Goldman Sachs's position is impractical and effectively undermines the parties' prior witness stipulation.

## III.    ARGUMENT

### A.    Denying Reasonable Access to Trial Witnesses is Highly Prejudicial

The parties have just three months to prepare for trial, including by completing the depositions of new trial witnesses. This is still feasible, but only if Goldman Sachs provides necessary information now, so that the parties can adequately prepare for the depositions ahead of time. It has already been three weeks since Plaintiffs requested basic personnel information for these witnesses. Every day of delay prejudices Plaintiffs' time for preparation further.

This is not burdensome. Plaintiffs asked only for the witnesses' employee IDs and personnel files, which are centrally stored and do not require forensic searches. Goldman Sachs

has previously produced such information for the named Plaintiffs, for class members who submitted declarations at class certification (prior to Goldman Sachs deposing them), and 31 comparators to the named Plaintiffs. *See* ECF No. 753 at 6 (ordering production, for comparators, of "centrally stored (a) personnel files, (b) evaluation, compensation and promotion documents, and (c) complaint and disciplinary files if separate from the individuals' personnel files"). Goldman Sachs can readily produce personnel files again for its trial witnesses, and in fact, could *immediately* provide employee IDs.

This information is also highly relevant. Goldman Sachs conceded as much, by offering on February 23 to compile "basic employment information so that Plaintiffs' counsel has a sense of who these individuals are before deposing them," including "details about the individuals' employment history for the duration of their employment at Goldman . . .  as well as information on their educational background, and their work history prior to their employment at Goldman."[1] Goldman Sachs should not be permitted to cherry-pick the details that go into a folio for each witness. Plaintiffs are entitled to *complete*, *unfiltered* information about each witness's employment at Goldman Sachs, including to impeach these witnesses vis-à-vis their potential bias in favor of their employer or their experiences with the Challenged Practices.

Employee IDs provide especially crucial information: Goldman Sachs has designated these witnesses to testify about the operation of the Challenged Practices, and Employee IDs are needed to determine the witnesses' own outcomes with respect to these Practices (e.g., review scores and promotions). This is a critical line of cross-examination going to witness credibility. Goldman Sachs's refusal to provide witnesses' ID numbers is undermined by its assertions that for witnesses "where such information might be relevant—e.g., former class members—Plaintiffs already have access to those witnesses' employee IDs." In other words, Goldman Sachs acknowledges that Plaintiffs are entitled to cross-examine *some* witnesses on their own experiences with the Challenged Practices. But, because Goldman Sachs's data productions do not contain a name field, Plaintiffs are unable to locate some witnesses in the data without Goldman Sachs's associating their names to ID numbers. Goldman Sachs should provide those IDs for individuals who have served in class positions (as Associates or Vice Presidents in Securities, Investment Banking, or Investment Management)—i.e., those individuals who are included in Goldman Sachs's data productions but that Plaintiffs may not be able to locate. Withholding this basic information—which Goldman Sachs could collect and produce in minutes—prejudices Plaintiffs' ability to prepare for their depositions.

Goldman Sachs's only proffered reason for refusing to produce the information at issue is that sensitive information like compensation should not be shared if the witness ultimately does not testify. But the same has been true for all employees appearing as witnesses throughout the case, and this concern has been (and will continue to be) entirely addressed by the protective orders governing this case. ECF Nos. 51, 712.

Plaintiffs thus respectfully request an order that Goldman Sachs produce the witnesses' personnel files, provide employee ID numbers for individuals who have served in class positions,

---

[1] Goldman Sachs's offer to devote resources to compiling information further undermines any claim of burden in producing already-existing, centrally stored personnel files.

and offer deposition dates within seven days.

### B. Eight Undisclosed Witnesses Should Be Precluded From Testifying

Rule 26(a) requires litigants, "without awaiting a discovery request" to disclose "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." In other words, parties are required to disclose *potential* trial witnesses early in the litigation and on an ongoing basis. *See* Fed. R. Civ. P. 26(e) (requiring supplementation). Goldman Sachs did not meet this obligation for eight individuals, and they should be stricken from its witness list.

Specifically, in the more than 12 years since this case was filed, Goldman Sachs never identified the following trial witnesses in a Rule 26 disclosure: (1) Jacqueline Arthur; (2) Anne-Victoire Auriault; (3) Vivek Bantwal; (4) Stephanie Rader; (5) Akila Raman; (6) Jennifer Roth; (7) Pamela Ryan; and (8) Laurence Stein. *See* Ex. A (Defs.' Second Am. Initial Disclosures) (identifying 69 other individuals by name). These individuals also do not reasonably fit into any of the broad categories of individuals described on Goldman Sachs' disclosures by subject matter rather than by name.[2] Under Rule 37(c), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness . . . at a trial." Respectfully, that is exactly what should happen here. *See, e.g.*, *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16-1267, 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018) (Torres, J.).

Goldman Sachs's failure to disclose these new putative trial witnesses was not "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Goldman Sachs may assert that this failure can now be cured by permitting Plaintiffs to take their depositions under the parties' stipulation to depose trial witnesses who were not earlier deposed, but context shows this was not a blank check. In 2019, Goldman Sachs complained to the Court that Plaintiffs' amended initial disclosures were too lengthy. *See* ECF No. 775 at 12-15. Plaintiffs agreed that, in the context of a complex, long-running class action, the number of individuals listed in initial disclosures would be too lengthy to allow depositions of everyone during the discovery period. The logical resolution was a stipulation to allow pretrial depositions of those who were disclosed but not deposed and ultimately appear on a trial witness list. However, Plaintiffs could not have reasonably contemplated that Goldman would in fact list 33 individuals not previously deposed.

To be clear, by reaching a limited agreement on trial witness depositions the parties did *not* simultaneously agree to suspend Rule 26 disclosure requirements—and for good reason. *See* ECF No. 859 (making no reference to Rule 26). Initial disclosures provide fair warning that a party may wish to, among other things, seek documents related to a disclosed individual, ask questions of other witnesses about that individual, or take a deposition of the individual while it is still possible to propound additional discovery requests.[3] By failing to make the required

---

[2] Goldman Sachs claimed the undisclosed witnesses fall into the disclosure category of "witnesses who will testify about the application of the three processes." Such a broad category is not appropriate when offered by an employer with superior knowledge of the actual identifies of such individuals. Regardless, this category is nowhere to be found in Goldman Sachs's disclosures. *See* Ex. A at 20-21.

[3] This point also highlights the fundamental unfairness in Goldman's refusal to provide the basic information described above for deponents in advance of their post-discovery depositions. *See supra*, Section III.A.

disclosure, Goldman Sachs deprived Plaintiffs of a fair opportunity to develop the record regarding these eight individuals during discovery. The ability to take a deposition in the scramble of pretrial preparations when the parties' resources are necessarily stretched thin does not remedy the harm by this violation. Goldman Sachs simply has no good explanation for why it did not disclose the eight individuals now plucked for trial years ago. And, to the extent Goldman Sachs claims confusion about the parties' stipulation, "bad faith" is *not* a requirement for witness preclusion under Rule 37(c)(1). *Design Strategy, Inc. v. Davis*, 469 F.3d 284 at 296 (2d Cir. 2006).[4] Finally, Plaintiffs recognize that in determining whether to strike witnesses under Rule 37(c)(1), courts consider "the importance of the testimony." *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). Here, however, as explained in MIL 1, Goldman Sachs's description of the testimony these eight witnesses would offer (about, e.g., operation of the Challenged Practices) is substantially identical to that of numerous other trial witnesses, rendering it unnecessary and inappropriate under Federal Rule of Evidence 403.

### C. An Expedited Ruling on MIL No. 1 Would Aid in Trial Preparation

Plaintiffs' MIL 1 seeks to prevent Goldman Sachs from presenting irrelevant testimony as to the operation of the Challenged Practices at the business unit level, and cumulative testimony as to the operation of the Challenged Practices at the Division level. It asks the Court to limit Goldman Sachs to one witness per Division, instead of the 15 (Securities), 11 (Investment Banking), and 9 (Investment Management) witnesses presently designated to testify about the same topic: the operation of the Challenged Practices in those Divisions. ECF No. 1408 at 4-5. Should the Court grant MIL 1, Plaintiffs expect it to render moot some of the currently contemplated depositions. (Goldman Sachs appears to agree, having argued that it is premature to produce witnesses' files until it is certain that their depositions will go forward).

Goldman Sachs maintains that the Court cannot fairly adjudicate any motion *in limine* in isolation, but must consider them all together. Plaintiffs disagree. MIL 1 is focused on a discrete issue that need not be considered at the same time as any other MIL in order for the Court to have the necessary context for MIL 1. Plaintiffs' other contested motions concern: documents withheld as privileged, and private and prejudicial information about the named Plaintiffs. ECF No. 1408. Goldman Sachs's motions seek to exclude: named Plaintiff testimony, CEO David Solomon testimony, argument that statistical evidence alone can prove intent, so-called "boys' club" evidence, and Plaintiffs' backpay models. ECF 1411. None impact Plaintiffs' MIL 1.

If the Court is not inclined to rule on any motion *in limine* at this juncture, Plaintiffs will proceed to depose the 33 new witnesses (less any stricken as improperly disclosed). As noted, this requires that Goldman Sachs promptly provide employee IDs and basic personnel files, so the depositions can be completed by no later than May 15.

---

[4] To the extent Goldman Sachs finds stray references to these individuals in its productions after Plaintiffs file this letter, "a 'passing reference,' such as a 'mere mention of a name in a deposition or interrogatory response,'" is insufficient. *N. Am. Photon Infotech, Ltd. v. ZoomInfo* LLC, No. 20-2180, 2022 WL 4132941, at *3 (S.D.N.Y. Sep. 7, 2022) (quoting *Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 662 (2d Cir. 2018)).