# SULLIVAN & CROMWELL LLP



March 1, 2023

Via ECF

The Honorable Analisa Torres
  The Honorable Robert W. Lehrburger,
    United States District Court for the
      Southern District of New York,
        500 Pearl Street,
          New York, New York 10007-1312

      Re: *Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
           No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Torres and Judge Lehrburger:

      On behalf of Defendants, we respond to Plaintiffs' February 24, 2023 letter ("Ltr." or "Letter") (ECF No. 1425) requesting that the Court (1) issue a schedule and order disclosure of information relating to trial witness depositions, (2) strike eight witnesses on Goldman Sachs's witness list, and (3) expeditiously resolve Plaintiffs' first motion in *limine* ahead of Goldman Sachs' motion *in limine*. The Court need not address the deposition schedule because one has been proposed. With respect to the remainder of Plaintiffs' requests, the Court should (1) deny Plaintiffs' request for the production of information that is irrelevant to Phase I and confidential to the designated witnesses, (2) reject Plaintiffs' efforts to back out of their agreed-upon stipulation and exclude Goldman Sachs's properly disclosed witnesses, and (3) deny Plaintiffs' prejudicial request for expedited resolution of *only* Plaintiffs' motion *in limine*.

      Respectfully submitted,

      */s/ Robert J. Giuffra, Jr.*              */s/ Lynne C. Hermle*

      Robert J. Giuffra, Jr.                   Lynne C. Hermle
      Sullivan & Cromwell LLP          Orrick, Herrington & Sutcliffe LLP

cc:    All parties of record (by ECF)

I.     **Summary of Argument**

Of Plaintiffs' various requests in their Letter, two are easily dispatched: Plaintiffs' request for a schedule of depositions between March 15 and April 30 is now moot as Goldman Sachs has provided dates starting on March 10 for all of the 33 witnesses at issue and Goldman Sachs has produced basic personnel information of the type typically found in a personnel file, such as prior work experience, educational background, tenure and scope of job functions and responsibilities at Goldman Sachs.

Plaintiffs' remaining requests for sensitive and irrelevant personnel information, to strike Goldman Sachs's witnesses, and for expedited consideration of a single motion *in limine* should be denied for the following reasons:

First, the Court should reject Plaintiffs' request for irrelevant and confidential personnel documents that goes beyond any "personnel file" – evaluation, compensation, and promotion details, as well as complaint and disciplinary files.  The only proffered justification is the prior production of these files.  But Goldman Sachs only produced such documents where it was directly relevant: for Named Plaintiffs and the 32 comparators they identified for their own individual claims.

Second, Plaintiffs' similar request for employee IDs should be rejected as a thinly veiled attempt at the same sort of confidential and irrelevant performance and compensation history.  Besides the Named Plaintiffs and the 32 comparators, Defendants produced this sensitive personal data for then-class members; *i.e.*, the people represented by Plaintiffs' counsel.  But here, Goldman Sachs designated these witnesses to testify about the application of the three Evaluation Processes at the firm-wide or divisional level.  Plaintiffs cannot sincerely argue that vague notions of "bias" or "credibility" would justify producing such sensitive information where it has nothing to do with the witnesses' testimony, the issues to be tried at Phase I, or the claims in this action.

Third, the identification of witnesses who were identified by category in Defendants' disclosures but not previously deposed should come as no surprise because it was the specific bargain the parties struck.  It was Plaintiffs who, in their 2019 supplemental disclosures, identified 242 individuals and additional broad categories of witnesses such as "other current and former employees who have discoverable information relevant to [the certified] claims." Pls. Am. Initial Disclosures at 2-18 (Ex. A).  In response to Goldman Sachs's argument that such broad disclosures were unacceptable, the Court encouraged the parties to find common ground, which resulted in the September 24, 2019, stipulation that each side would have the "right to depose any witness designated by the opposing Party to testify at trial . . . no later than three weeks before the start of trial." Stip. and Order (ECF No. 859) (Ex. B).  Having benefitted from the stipulation for the past 4 years, and taken the same approach with their disclosures and witness list, Plaintiffs are now asking the Court to reject the stipulation and strike Goldman Sachs's witnesses.

Lastly, rather than just doing what they committed to in the 2019 stipulation, Plaintiffs ask the Court to rule on a single motion *in limine* in the hope of paring down the witnesses Goldman Sachs may call at trial.  But Defendants' list reflects the unclear contours of the Phase I trial, which is due in part to Plaintiffs' refusal to clarify key issues that will shape the scope of Phase I, as laid out in Defendants' motion *in limine*.  In other words, the question of witnesses cannot be separated from the questions of proof, intent, and scope that are at issue in the other pending motions.

## II. Goldman Sachs Has Already Provided Deposition Dates for Its Witnesses.

Plaintiffs request that the Court order a schedule of depositions for the 33 individuals on Defendants' witness list who were not previously deposed. Had Plaintiffs inquired prior to filing their letter, Goldman Sachs would have apprised Plaintiffs that it was nearly done coordinating such a schedule. In any event, Goldman Sachs has now provided Plaintiffs a proposed schedule for all deponents that will allow all depositions to be completed within the stipulated time period.[1]

## III. Plaintiffs Have No Right to Obtain Private and Irrelevant Information.

Plaintiffs' argument for witness-related documents rests on the simple but misleading assertion that "Plaintiffs asked only for the witnesses' employee IDs and personnel files," which Goldman Sachs can simply provide at the push of a button and without invading the privacy of dozens of witnesses with information that is irrelevant to their designation, Phase I trial, or the claims. Ltr. at 1. None of this is true, and the Court should limit Plaintiffs to the personnel information Goldman Sachs has produced.

First, Goldman Sachs does not maintain personnel files, in any traditional sense of the term. Plaintiffs know this from the many, and varied, productions from a multitude of sources: one that stores performance reviews, another compensation, another promotion materials, and still others with complaint and disciplinary files. Instead, like many modern employers, Defendants utilize an HR Information System that stores basic biographic information – employment and job details, work experience in the firm, prior work experience, education – that Goldman Sachs thought would be appropriate to provide in advance of the depositions. Plaintiffs accuse Defendants of "cherry-picking," yet this is precisely the personnel data one thinks of as part of the personnel file. Goldman Sachs has produced these materials, an exemplar of which is attached as Exhibit C.

Second, Plaintiffs' use of the term "personnel file" belies their actual request for irrelevant and confidential documents. Buried in their letter, Plaintiffs explain that they seek "evaluation, compensation and promotion documents," or "complaint and disciplinary files." Ltr. at 2. In other words, Plaintiffs are using the depositions as an opportunity for full-blown discovery into these witnesses.[2] Plaintiffs claim these materials are necessary to prepare for depositions and trial because Goldman Sachs was required to produce them for other individuals. They are wrong. The Court *only* required Goldman Sachs to produce such highly confidential files for the Named Plaintiffs and the 32 named comparators they chose. June 7, 2019 Order at 6 (ECF No. 753). In other words, individuals for whom evaluations, quartiling, promotions and compensation were specifically relevant to Plaintiffs' individual claims.

Third, disclosure of employee IDs for Goldman Sachs's witnesses will allow Plaintiffs' counsel to access the same sensitive compensation and performance information as contained in the supposed "personnel file." Defendants produced this information in discovery for analyses relevant to the class-wide claims, but with employee IDs rather than names in order to protect the

---

[1] When Plaintiffs first raised depositions on February 2, Goldman Sachs proposed that they occur two per day over Zoom to facilitate efficiency before the trial; Plaintiffs instead insist on in-person depositions, in New York City, one per day, and a full seven hours for each deposition.

[2] The 2019 stipulation did not contemplate document demands, which is impermissible now that discovery has closed; however, as noted, Defendants have agreed to provide some information.

privacy of the individuals affected. Employees are hyper-sensitive about revealing these details. Indeed, Plaintiffs have moved *in limine* to preclude the disclosure of *their own* compensation-related information. Other than Named Plaintiffs and the 32 named comparators, Goldman Sachs provided employee IDs with names were individuals who received the class notice in 2018 - *i.e.*, the prospective clients of Plaintiffs' counsel.[3] Yet here, Plaintiffs demand that this same data be produced for Goldman Sachs's management witnesses. The threat is simple and subtle: by testifying, your performance, compensation, and personnel history will be at issue. Plaintiffs claim the information is necessary to "impeach these witnesses vis-à-vis their potential bias in favor of their employer or their experiences with the Challenged Practices." Ltr. at 2. Plaintiffs are wrong on both accounts. As to the latter, the parties "agree[] that [non-Named Plaintiffs'] 'personal experience[s]' with [having] the Evaluation Processes [applied to them] are inadmissible at the Phase I trial." Defs. Opp. to Pls. Mots. *in Limine* at 10 (ECF No. 1418). As to the former, Plaintiffs' mere incantation of "bias," devoid of any discernable basis for the assertion, is plainly inadequate to justify disclosure of highly personal and confidential information.

Plaintiffs offer no cogent basis for producing more than the personnel details Goldman Sachs has already produced; why these confidential and sensitive personnel documents and data have any bearing on Plaintiffs' claims, the issues at Phase I, or the topics for which these witnesses are designated to testify; or why such intrusion into privacy is justified here.

### III. Goldman Sachs Has Properly Disclosed its Trial Witnesses.

Plaintiffs make the extraordinary request that eight individuals "be stricken from [Goldman Sachs's] witness list." Ltr. at 3. This should be denied for at least three reasons.

First, these depositions are *precisely* what the parties anticipated, and the Court approved. The very point of the 2019 stipulation was to take depositions up to "three weeks prior to the start of trial," and the parties imposed no numerical limit. Ex. B. That Plaintiffs did not "reasonably contemplate[]" that "33 individuals not previously deposed" (Ltr. at 1) would be designated is beside the point; and ironic given Plaintiffs' disclosures contemplated at least 242 witnesses. And it certainly does not provide a basis for shutting down depositions and stripping Goldman Sachs of its right "to present every available defense at trial." *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *5 (S.D.N.Y. Aug. 31, 2020) (Liman, J.) (quotation omitted). Even if the parties did not have their stipulation, Rule 37 forgives the failure to disclose "when it is harmless," Fed. R. Civ. P. 37(c)(1). This is especially true here as Plaintiffs readily admit the depositions are "still feasible" (Ltr. at 1.) and are now scheduled.

Second, it is unnecessary even to reach the Rule 37 remedy as all eight individuals fall into at least one category described in Goldman Sachs's initial disclosures. At a minimum, all eight witnesses are covered by Paragraph 2, which identifies "[p]resent and former Associates and Vice Presidents in revenue-generating positions in the" three relevant Divisions.[4] Ex. D at 3 ¶ 2. Each

---

[3] This means that Plaintiffs' counsel have names and employee ID numbers for 12 of Goldman Sachs's 33 witnesses; though this is not a concession that such personnel details are a proper topic for examination.

[4] One witness opted out of the class and is also covered by Paragraph 68. *See* Defs. Second Am. Disclosures (Ex. D) at 20 ¶ 68 ("Any individuals who have opted out of the class action certified by Judge Analisa Torres on March 30, 2018.") In addition, several witnesses had not even been

of these witnesses was formerly an Associate or Vice President in one of the three relevant Divisions and will testify to their experience with the Evaluation Processes, *e.g.*, their business purpose, how they worked in the witnesses' divisions, and the discretion inherent in the Processes. *See* JPTO at 14-18 (ECF No. 1409); Defs. Opp. to Pls. Mots. *in Limine* at 7-9 (ECF No. 1418).

Third, Plaintiffs can hardly claim surprise or prejudice. Plaintiffs' witness list includes two names that never appeared in their Rule 26 disclosures, but presumably fall into Plaintiffs' catch-all category of "other current and former employees who have discoverable information relevant to those claims" or "any individuals identified by Defendants as possibly having information relevant to this litigation, and any person who may have information rebutting such information." Pls. Second Am. Initial Discl. (Ex. E) at 8; 18. Plaintiffs will also suffer no "prejudice . . . as a result of" these individuals serving as trial witnesses because there is an obvious remedy: depose the eight witnesses just as they are proposing to depose the other 25 individuals and as the parties' stipulated.[5] *Sofitel, Inc. v. Dragon Med. & Scientific Comm., Inc.*, 118 F.3d 995, 961 (2d Cir. 1997); *McEnery v. City of N.Y.*, 2007 WL 1574013, at *2-3 (S.D.N.Y. May 29, 2007) (Sweet, J.) (adjourning trial and providing for deposition of late-identified witnesses to avoid "undue prejudice"). Accordingly, Plaintiffs' request to strike the eight trial witnesses should be denied.

### IV. The Court Should Expedite Resolution of Plaintiffs' Motion *in Limine* Only If It Also Expedites Resolution of All Motions *In Limine*.

Plaintiffs ask the Court to expedite ruling only on Plaintiffs' motion *in limine* No. 1 ("MIL No. 1"). Plaintiffs claim preferential treatment on the basis that their motion, if granted, would "render moot" some planned depositions. Ltr. at 4. That may be, but it does not make Plaintiffs' motion any more important or time-sensitive than the inter-related issues presented by Goldman Sachs. Defendants' motion *in limine* asks the same core questions about the scope of trial and proper witness testimony. For example, Goldman Sachs's motion *in limine* asks the Court to limit the scope of individualized evidence regarding the Evaluation Processes, to compel Plaintiffs to identify whose intent matters for disparate treatment, to confirm that boy's club evidence is not admissible, and to preclude Plaintiffs from introducing their damages models in Phase I. *See* Defs. Omnibus Motions *in Limine* (ECF No. 1411). Plaintiffs are free to jettison their other motions as "unimportant," but not Goldman Sachs's motions. Rulings on each of these will narrow the issues and inform which witnesses may be called and the evidence that may be introduced, to say nothing of trial preparation. Expeditiously ruling on *only* Plaintiffs' MIL No. 1 advances only the narrow question of who Goldman Sachs may call to defend itself, without addressing the concomitant questions of proof, order, burden, intent and scope of the Phase I trial. It would also serve only to prejudice Goldman Sachs's trial preparation until the questions presented by Defendants' motion *in limine* are answered. Goldman Sachs respectfully submits that if the Court is inclined to expedite consideration of any motion *in limine*, it do so for *all* pending motions.

---

excluded from the class prior to the close of discovery and thus could not have been included in Goldman Sachs's disclosures.

[5] Any prejudice Plaintiffs could suffer was exacerbated by their own delay. The parties agreed to exchange their witness lists in advance of preparing the Joint Pretrial Order precisely so either party could raise concerns. Goldman Sachs promptly objected to Plaintiffs' disclosures and noted them in the Joint Pretrial Order as well as its motion in *limine*. Plaintiffs did not object to any Goldman Sachs witnesses in advance of the Pretrial Order or in the Order itself. Instead, they waited three weeks to object while the parties are in the midst of preparing for trial.