# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER, SHANNA ORLICH, ALLISON GAMBA, and MARY DE LUIS, | Case No. 1:10-cv-6950-AT-RWL |
| Plaintiffs, | |
| -against- | |
| GOLDMAN SACHS & CO. LLC and THE GOLDMAN SACHS GROUP, NC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 1

    A.  2010-2014: Initial Discovery and Litigation ....................................................... 2

    B.  2014-2018: Class Certification, Motions to Strike Expert Opinions, Intervention of Additional Plaintiffs, and Motions to Dismiss ......................... 4

    C.  2018-2021: Merits Discovery, Motion to Compel Arbitration, Expert Discovery ....................................................................................................... 9

    D.  2021-2022: Daubert, Summary Judgment, and Decertification Motions ....................................................................................................... 12

    E.  2022-2023: Pre-Trial Process ........................................................................... 13

    F.  Settlement Negotiations .................................................................................... 14

    G.  The Class .......................................................................................................... 15

III.  THE SETTLEMENT .............................................................................................. 16

    A.  Monetary Relief ............................................................................................... 16

    B.  Programmatic Relief ........................................................................................ 18

    C.  Releases From Settlement Class Members ....................................................... 19

    D.  Attorneys' Fees, Costs, and Service Awards ................................................... 20

    E.  Settlement Administration ................................................................................ 21

IV.  ARGUMENT .......................................................................................................... 22

    A.  Preliminary Approval of the Class Action Settlement Is Warranted. .............. 22

        1.  Litigation Would Be Complex, Costly, and Long (Factor 1). .............. 24

        2.  The Court Can Assess the Class's Reaction After Notice (Factor 2) ... 25

        3.  The Parties Exchanged Sufficient Information to Evaluate the Claims and Defenses (Factor 3). ........................................................ 26

        4.  The Risks of Establishing Liability and Damages Favor Approval (Factors 4 and 5). ................................................................................ 26

5.      Risk to Maintaining Class Certification Favors Approval (Factor 6)...27

6.      Ability to Withstand a Greater Judgment Is Neutral (Factor 7)............28

7.      The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).......28

8.      The Settlement Provides for Equitable Treatment of Class Members..29

B.      The Proposed Notice Process Satisfies Due Process. .......................................29

V.      CONCLUSION..........................................................................................................30

# TABLE OF AUTHORITIES

**CASES**                                                                                                         **PAGE(S)**

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 24, 26, 28

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................................ 24

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .............................................................................................. 24

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) ................................................................................. 26

*Kassman v. KPMG LLP*,
    No. 11 Civ. 3743, 2021 U.S. Dist. LEXIS 71243 ......................................................... 28

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ............................................................................................ 23

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ..................... 30

*Soler v. Fresh Direct, LLC*,
    No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2013) ........... 23, 24, 30

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010) ......................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................................................... 22, 23

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................ 24

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................................ 26

## OTHER

Fed. R. Civ. P. 23 ............................................................................................................. 23, 29

4 Newberg and Rubenstein on Class Actions (Sixth) § 13:10 .................................................... 23

FJC, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide,*
https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited April 25, 2023)......................................................... 23

# I.    INTRODUCTION

Plaintiffs Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis ("Plaintiffs"), on behalf of themselves and the Class, seek preliminary approval of a proposed settlement with Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. (together, "Goldman").[1] After almost thirteen years of extensive and highly contested litigation, and less than two months before trial, the Parties reached a $215 million settlement following several rounds of mediation over the long course of this case. The settlement is one of the most significant employment discrimination class action settlements, providing substantial financial benefits to the Settlement Class of 2,887 female Associates and Vice Presidents who are or were in revenue-producing roles at Goldman. This settlement also provides significant programmatic relief including independent review and adjustments to Goldman's challenged evaluation and promotion processes. Through this motion, Plaintiffs respectfully submit that this Settlement is fair, adequate, and reasonable and that Notice should be provided to the Class.[2]

# II.    BACKGROUND

Plaintiffs brought this action under Title VII and the New York City Human Rights Law (NYCHRL), asserting both disparate impact and disparate treatment theories of liability. Plaintiffs alleged that Goldman's performance evaluation, promotion, and compensation practices negatively impact women Associates and Vice Presidents in three of Goldman's revenue-generating divisions: Investment Banking, Investment Management, and Securities. Specifically, Plaintiffs challenged Goldman's two evaluation systems: first, the "360 Review,"

---

[1] The Parties' proposed Settlement Agreement and Release ("Settlement Agreement") is attached as Exhibit A to the Declaration of Adam Klein ("Klein Declaration"). All capitalized terms herein are defined in the Settlement Agreement.

[2] Plaintiffs' proposed Notice is attached as Exhibit 1 to the Settlement Agreement.

which involved numerical ratings and qualitative comments by 8-12 evaluators, including subordinates, managers, peers, and internal clients, based on specified criteria; and second, "Quartiling," in which managers assigned employees to one of four or five "quartile" rankings based on performance relative to other employees. 360 review and Quartiling data could be used by Goldman's managers when making employee compensation decisions. Plaintiffs additionally challenged Goldman's promotion process from Vice President to Managing Director, called "Cross-Ruffing," which, among other things, involved interviews by "Cross-Ruffers" with candidates' managers, peers, and internal clients, and multiple rounds of candidate ranking, with final promotions ultimately reviewed and finalized by Goldman's division heads.

Plaintiffs and the Class have been represented by two experienced class action law firms. Goldman has been represented, over time, by three large, international law firms, and retained counsel for certain ESI-related issues and conflicts counsel for managing certain third-party subpoenas. As chronicled below, this case has involved extensive discovery, an immense number of substantive disputes and extensive motion practice over almost thirteen years, three appeals, production by Goldman and review by Plaintiffs' counsel of hundreds of thousands of documents and numerous databases, over 20 expert reports and submissions (most of them contested by the Parties), and over 1,400 docket entries.

### A.    2010-2014: Initial Discovery and Litigation

This case has been intensely litigated since it was first filed by Plaintiffs in September 2010. ECF No. 5. On the same day that Goldman answered the Complaint in November 2010, it also moved to compel then-Named Plaintiff Lisa Parisi's claims into arbitration. ECF Nos. 23, 24, 29.[3] The Parties also immediately began engaging in discovery, including conferring on and

---

[3] On April 28, 2011, the Magistrate Judge denied Goldman's motion to stay and compel

litigating many disputed evidentiary issues. Prior to the filing for class certification, the

Magistrate Judge was asked to resolve at least ten discovery disputes and held many discovery

conferences. Klein Decl. ¶ 8. The Parties vigorously contested each side's positions with respect

to the scope of class discovery, the impact of the Supreme Court's 2011 decision in *Wal-Mart v.*

*Dukes*, the proportionality of discovery (including as to personnel data and the production of

ESI), and the discoverability of internal complaint files and internal gender audits by Goldman's

Employment Law Group, among many other issues. *Id*.

In summer 2011, Goldman also filed two motions to strike Plaintiffs' class allegations,

ECF Nos. 66, 68, and for partial summary judgment on Plaintiffs' disparate impact claims, ECF

Nos. 82-84. Following the filing of Plaintiffs' First Amended Complaint on September 19, 2011,

ECF No. 104, Goldman renewed its motions to strike and for partial summary judgment. ECF

Nos. 98-101. On September 29, 2011, the Magistrate Judge issued a Report and

Recommendation ("R&R") that Goldman's first motion to strike class allegations be denied.

ECF No. 105. The Parties fully briefed Goldman's objections to this R&R, ECF Nos. 114, 116,

119, 121, and on January 10, 2012, the District Judge affirmed the R&R and denied the first

motion to strike class allegations, ECF No. 133. The following week, on January 19, 2012, the

Magistrate Judge issued an R&R recommending that Goldman's second motion to strike class

allegations and for partial summary judgment also be denied. ECF No. 134. Following the

Parties' briefing on Goldman's objections to that R&R, ECF Nos. 135, 140, on July 17, 2012, the

arbitration. ECF No. 59. Goldman moved for reconsideration, ECF Nos. 62-65, which the
Magistrate Judge also denied on July 7, 2011, ECF No. 73. On October 25, 2011, the District
Judge held oral argument on the arbitration motion, and again denied the motion on November
15, 2011. ECF No. 120. Goldman appealed this denial on December 13, 2011. ECF No. 126. On
March 23, 2013, the Second Circuit reversed the District Court's decision and compelled Parisi's
claims into arbitration. ECF No. 171.

District Judge granted Goldman's request to strike only Plaintiffs' class allegations under Federal Rule of Civil Procedure ("Rule") 23(b)(2), finding that former employees lacked standing to seek injunctive or declaratory relief, but denied Goldman's motion in all other respects. ECF No. 158. This ruling on standing was later reversed by the Court, as described below.

During this period, Named Plaintiffs Chen-Oster and Orlich each sat for multi-day depositions in July and December 2011. Klein Decl. ¶ 9. Plaintiffs also undertook thorough and exhaustive document searches in response to Goldman's document requests and interrogatories. *Id.* Plaintiffs also maintained very close, frequent communication with Plaintiffs' counsel – and, notably, including during all of the various mediation sessions and settlement negotiations. *Id.*

### B. 2014-2018: Class Certification, Motions to Strike Expert Opinions, Intervention of Additional Plaintiffs, and Motions to Dismiss

Under the Court's schedule, fact discovery for the pre-class certification phase of the litigation largely ended in October 2013. ECF Nos. 201, 211. By this point, Goldman had produced about 30,000 documents, amounting to nearly 145,000 pages, and comprehensive personnel data for Associates and Vice Presidents dating back to 2002, and the Parties had taken seventeen fact and corporate depositions. Klein Decl. ¶ 10. Following fact discovery, Plaintiffs produced the expert reports of four expert witnesses: Drs. Hank Farber, Wayne Cascio, Pamela Tolbert, and David Yermack. Goldman produced rebuttal reports from four experts: Drs. Michael Campion, Michael Ward, Michael Curran, and Jennifer Chatman. *Id*. Plaintiffs' experts also prepared reply reports. *Id.* Following disputes on the reply opinions, and briefing of *Daubert* motions, Goldman's experts submitted sur-rebuttal reports, and Plaintiffs' experts prepared responses to those sur-rebuttal reports. *Id.* All eight experts were deposed between November 2013 and March 2014. *Id.*

Plaintiffs moved for class certification on July 1, 2014. ECF Nos. 246-60. In support of

their motion, Plaintiffs submitted over 1,200 pages of exhibits, thirteen declarations, and expert reports. *Id*. Goldman opposed on July 25, 2014, submitting a 75-page opposition brief, over 700 pages of exhibits, 181 pages of supporting declarations, and rebuttal expert reports. ECF Nos. 264-298. Goldman deposed four Class Members who submitted declarations in support of class certification. Klein Decl. ¶ 11. The Parties also submitted significant briefing on their respective *Daubert* motions to exclude the other side's expert reports. *Id*. Plaintiffs also moved to strike certain declarations submitted with Goldman's opposition to class certification. ECF Nos. 299, 301-302.

On October 22 and 23, 2014, the Magistrate Judge held a two-day evidentiary hearing and oral argument. Klein Decl. ¶ 12. The Parties' experts testified at length in-person about their analyses and opinions, and counsel presented legal arguments. *Id*. On March 10, 2015, the Magistrate Judge entered a Memorandum and Order granting in part and denying in part the Parties' motions to strike expert opinions, and an R&R recommending denial of class certification under Rule 23(b)(2) and Rule 23(b)(3). ECF Nos. 363, 364. The Magistrate Judge indicated that he would have recommended certification under Rule 23(b)(2), but for the District Judge's July 2012 order that Plaintiffs, as former employees, lacked standing to seek injunctive or declaratory relief. ECF No. 364.

Following the Magistrate Judge's R&R on class certification, Plaintiffs moved for reconsideration, including on the issue of whether Plaintiffs have standing to represent a class under Rule 23(b)(2). ECF Nos. 368, 369. Shortly thereafter, on April 13, 2015, Plaintiffs filed a motion to intervene new Plaintiffs Allison Gamba and Mary De Luis as class representatives; Plaintiffs maintained that both had standing as current employees either at the time of complaint filing or intervention. ECF Nos. 376-379. Goldman opposed reconsideration and intervention.

ECF Nos. 380, 392-400. The Magistrate Judge held oral argument on the intervention motion on July 22, 2015, and on August 3, 2015, granted the motion to intervene, but denied the motion for reconsideration. ECF No. 410.

On August 3, 2015, Plaintiffs filed their Second Amended Complaint, adding the claims of new Plaintiffs Gamba and De Luis. ECF No. 411. The Magistrate Judge stayed discovery on August 26, 2015, pending this Court's review of the Parties' objections to the Magistrate Judge's recommendations on class certification and *Daubert* motions. ECF No. 432. Goldman also objected to the Magistrate Judge's intervention order on August 17, 2015, ECF Nos. 419-422, and the Parties completed briefing on those objections on September 8, 2015. ECF No. 440.

On August 31, 2015, the Court permitted Goldman to file a motion to dismiss Plaintiff Gamba's claims for injunctive and declaratory relief, and held in abeyance the briefing on Plaintiffs' objections to the class certification R&R. ECF No. 437. The Parties briefed the motion to dismiss between September 28 and October 19, 2015. ECF Nos. 441-445. On June 6, 2016, the Court affirmed the Magistrate Judge's intervention order, permitting Plaintiffs Gamba and De Luis to remain in the case as new class representatives. ECF No. 450. Goldman then sought to dismiss Plaintiff De Luis's claims, and following competing letters from the Parties, the Court set a schedule for briefing that motion, but continued to hold in abeyance a briefing schedule on the class certification R&R. ECF No. 454. Goldman filed its motion to dismiss Plaintiff De Luis's claims for injunctive and declaratory relief on July 11, 2016, ECF Nos. 457, 458, and the Parties completed briefing that motion on August 1, 2016, ECF Nos. 462, 463.

On April 12, 2017, the Court entered a Memorandum Opinion and Order denying Goldman's motions to dismiss the claims of Plaintiffs Gamba and De Luis for injunctive and declaratory relief. ECF No. 479. In so doing, the Court further reversed the earlier decision of

District Judge Sand, joining other courts in the Southern District of New York, and found that former employees have standing to seek injunctive or declaratory relief. *Id.* at 7. Following the Court's order, Goldman sought permission to appeal the denial of its motions to dismiss. ECF Nos. 484, 485. Over Plaintiffs' opposition, ECF No. 495, the Court granted Goldman's request and certified the order for appeal on June 14, 2017, ECF No. 500. The Second Circuit denied Goldman's petition for leave to appeal. ECF No. 539.

Plaintiffs filed a Supplemental Amended Complaint on April 25, 2017. ECF No. 486.

On June 23, 2017, Plaintiffs filed two Objections, spanning 87 pages, to the Magistrate Judge's R&R denying class certification and *Daubert* decisions, while Goldman filed five separate Objections, spanning 136 pages, to the same decisions. ECF Nos. 501-507, 511. The Parties completed briefing responses and replies on August 1, 2017. ECF Nos. 513-536.

In light of this Court's reversal of Judge Sand's earlier decision regarding the availability of injunctive and declaratory relief, which had been the basis for the Magistrate Judge's recommended denial of Rule 23(b)(2) certification, the Court issued an order on August 30, 2017, requiring the Parties to submit positions as to what additional record development may be necessary to decide Rule 23(b)(2) certification. ECF No. 540. In September 2017, the Magistrate Judge held a status conference and then ordered the Parties to submit evidence and argument regarding whether Goldman's policies had changed, necessitating further pre-certification discovery. ECF No. 544. The Parties submitted evidence and briefing in October and November 2017. ECF Nos. 545, 546, 553, 554. The Magistrate Judge held oral argument on December 13, 2017, and a further status conference on January 23, 2018, regarding class certification. The Court then ordered that Rule 23(b)(2)-related class certification fact and expert discovery be completed by August 29, 2018, with briefing to be completed by November 16, 2018. ECF No.

568.

On March 30, 2018, the Court overturned the R&R on class certification and certified a class pursuant to Rule 23(b)(3). ECF No. 578. Shortly thereafter, Goldman sought to stay discovery and the distribution of Class notice in order to appeal the decision, ECF No. 579, which Plaintiffs opposed and the Court denied. ECF Nos. 580, 581. Goldman petitioned the Second Circuit to appeal the class certification decision under Rule 23(f), and after oral argument, on September 4, 2018, the Second Circuit denied Goldman's petition. ECF No. 620.

Prior to the Second Circuit's denial of Goldman's Rule 23(f) petition, the Parties had continued to engage on the question of when and on what record the Court should consider Rule 23(b)(2) class certification. Following the completion of supplemental fact discovery regarding changes to Goldman Sachs's policies, Plaintiffs moved to modify the schedule and requested that the Court proceed with deciding Rule 23(b)(2) certification. ECF No. 582. The Parties briefed this motion, and the Magistrate Judge held oral argument on June 27, 2018, and then denied Plaintiffs' request to decide Rule 23(b)(2) certification on the existing record based on the Magistrate Judge's finding that the challenged processes had materially changed after 2015. ECF Nos. 609, 613. Following continued expert discovery on the process changes, on September 27, 2018, Plaintiffs notified the Court that they no longer intended to separately and additionally move for certification under Rule 23(b)(2), in light of the Court's order granting certification under Rule 23(b)(3) and their belief that injunctive relief was already included. ECF No. 625. Accordingly, the Magistrate Judge vacated the remaining deadlines associated with Rule 23(b)(2)-related discovery and briefing. ECF No. 627.

During this period, the Parties also expended significant time negotiating the contents and form of the Class notice to be distributed to potential Class Members. Klein Decl. ¶ 13. In July

2018, the Parties reached impasse and sought the Court's assistance on issues including whether Goldman should be required to produce to Plaintiffs the contact information of Class Members prior to the end of the opt-out period, the substantive content of the opt-out form, and additional language in the notice itself regarding the characterization of Phase II proceedings. ECF No. 610. On July 24, 2018, the Magistrate Judge issued an order resolving these disputes, clearing the way for notice to be disseminated. ECF No. 618. The Court also resolved additional disputes regarding the notice in November 2018. ECF Nos. 637, 638, 639. The notice was distributed on November 30, 2018 to the 3,487 potential Class Members, and after a 45-day opt-out period, 166 individuals elected to opt out. Klein Decl. ¶ 13. Another four Class Members opted out of the class over the course of 2019 and 2020. *Id*.

During this period, Plaintiffs continued to be intently engaged with the litigation. Plaintiff Gamba was deposed twice, first in June 2014, and again in September 2018, and Mary De Luis was deposed in August 2018. *Id.* ¶ 14.

### C. 2018-2021: Merits Discovery, Motion to Compel Arbitration, Expert Discovery

Following the class certification order in March 2018, the Parties began merits discovery, an approximately three-year period involving more than a dozen conferences to resolve evidentiary and privilege disputes and resulting in Goldman producing more than 141,000 additional documents, amounting to nearly 800,000 pages. Klein Decl. ¶ 15.

On May 2, 2018, the Magistrate Judge held a scheduling conference to set the scope of fact discovery. To manage discovery, the Magistrate Judge required the Parties to submit status reports every 60 days to raise any disputes. Between May 2018 and November 2020, the Parties submitted at least fourteen such reports, raising a significant number of discovery disputes during this period. *See, e.g.*, ECF No. 617 (July 23, 2018), 624 (Sept. 20, 2018). Over those two years,

the Court held at least fourteen discovery conferences to resolve discovery disagreements. The disagreements included, among other things, the negotiation, timing, and scope of Goldman's ESI searches and productions; the production of additional internal complaint files and comparator personnel files; Goldman's privilege logs and Plaintiffs' numerous requests that Goldman de-designate numerous documents withheld as privileged, including multiple rounds of privilege challenges and in camera review of withheld documents; Goldman's relevance redactions and Plaintiffs' requests that Goldman unredact and reproduce large numbers of documents; Plaintiffs' request to quash Goldman's subpoenas to Plaintiffs' employers and requests for tax records; whether the Parties would be required to respond to various interrogatories and requests for admission; and the scope of deposition discovery, including whether Plaintiffs could depose Goldman's executive leadership. Klein Decl. ¶ 16. Several substantive issues also arose repeatedly during this period of time, including: the scope of evidence that would be presented at Phase I and Phase II proceedings; the extent to which Plaintiffs' class claims encompassed Goldman's compensation-setting policies; the role of anecdotal evidence and individual complaints at trial; evidence regarding individuals' alleged gender bias; and evidence regarding Goldman's internal diversity analyses. *Id*. The Magistrate Judge ruled in favor of Plaintiffs on certain of these disputes, and in favor of Goldman on others. With respect to the scope of evidence and issues to be presented at Phase I and Phase II, the Magistrate Judge ordered in November 2019 that the Phase I trial would not include "damages (including back pay) and punitive damages." ECF No. 888.

During the discovery period, Goldman also filed a motion to compel arbitration for a large portion of the Class. ECF Nos. 715, 716. Plaintiffs simultaneously filed a motion for relief under Rule 23(d) to void language in certain equity award agreements that required arbitration of

claims in this action. ECF Nos. 717-720. Following significant briefing and oral argument, the Magistrate Judge issued an Order on March 26, 2020. ECF No. 983. The Court largely enforced all the arbitration provisions under contract law, but also determined under Rule 23(d) that Goldman's arbitration provisions in equity award agreements were "procured in a confusing and potentially misleading fashion." *Id*. at 82. As a remedy, the Court permitted notice to Class Members who had executed equity award agreements and an opportunity for those Class Members to opt out of arbitration. After the Parties litigated the contents and form of that notice, the Magistrate Judge resolved those disputes across a series of orders, and the notice was issued in February 2022. ECF Nos. 1303, 1332, 1336, 1341, 1353. The District Court ultimately upheld the Magistrate's order regarding arbitration on September 15, 2021 and over 1,500 Class Members were compelled to arbitration. ECF No. 1264.

Fact discovery closed on November 20, 2020. ECF No. 1050. By the end of the discovery period, Goldman had produced, subject to the Protective Order, over 242,000 documents, amounting to almost 1.2 million pages, and produced databases reflecting sixteen years of personnel data, including the personnel history, evaluations, compensation, promotions, and numerous other data metrics that Goldman tracks and records in its Human Resources systems for many thousands of relevant positions and employees. Plaintiffs responded to five sets of document requests, four sets of interrogatories, and two sets of requests for admission, while Goldman responded to thirteen sets of document requests, nine sets of interrogatories, and four sets of requests for admission. Klein Decl. ¶ 17. Plaintiffs took the depositions of eleven additional fact witnesses. *Id.*

Throughout the merits discovery phase, Named Plaintiffs remained closely engaged with Plaintiffs' counsel on all aspects of the litigation, including responding to robust discovery

requests and dealing with Goldman's subpoenas of their employers. Klein Decl. ¶ 18. Named

Plaintiffs engaged with Plaintiffs' counsel over hundreds of communications in the course of this

litigation, and spent significant hours working with counsel, reviewing filings, providing

information, and staying updated on all litigation decisions and strategy. *Id.*

Following the close of discovery, Plaintiffs' six merits experts, Dr. Henry Farber,

Dr. Wayne Cascio, Dr. Caren Goldberg, Dr. Leaetta Hough, Dr. David Yermack, and Sarah

Butler, issued reports supporting Plaintiffs' claims. Klein Decl. ¶ 19. Goldman submitted rebuttal

expert reports from Brian Dunn, Dr. Eric Dunleavy (who submitted two reports on different

substantive areas), Dr. Kathryn Shaw, and Dr. Margaret Stockdale. *Id.* All ten experts were then

deposed. *Id.*

### D. 2021-2022: Daubert, Summary Judgment, and Decertification Motions

Following the close of fact and expert discovery, the Parties engaged in substantive legal

briefing on a variety of pre-trial matters. Klein Decl. ¶ 20. Beginning in July 2021, the Parties

briefed *Daubert* motions to exclude expert opinions. ECF Nos. 1184-1189, 1191-1192. At the

same time, the Parties also briefed Goldman's motion to decertify the class. ECF Nos. 1194-

1236. Plaintiffs and Goldman additionally each filed cross-motions for summary judgment on

August 9, 2021. ECF Nos. 1239-1253. Across these series of motions, the Parties submitted

many hundreds of pages of briefing, declarations, deposition testimony, and exhibits to the Court

for consideration. Briefing of the *Daubert* motions, decertification motion, and motions for

summary judgment concluded in November 2021.

On March 17, 2022, the Court denied decertification, denied in part and granted in part

Goldman's summary judgment motion, denied Plaintiffs' summary judgment motion, and denied

in part and granted in part Goldman's and Plaintiffs' *Daubert* motions. ECF No. 1337. Shortly

thereafter, Goldman moved for reconsideration of its motion for decertification, or certification

of certain issues for interlocutory review. ECF Nos. 1346, 1347. On August 22, 2022, after full briefing, the Court denied Goldman's request for interlocutory review and granted in part Goldman's motion for reconsideration, clarifying the scope of certain claims. ECF No. 1374.

### E. 2022-2023: Pre-Trial Process

On October 11, 2022, the Court scheduled trial for June 2023 and set a schedule for pre-trial submissions. ECF No. 1380. The Parties continued to litigate additional discovery issues during this time, including production of additional complaint files and personnel data, and raised several pre-trial disputes with the Court. On January 31, 2023, after briefing, the Court issued an order clarifying that the Court would hear Plaintiffs' Title VII disparate impact challenge, while the jury would hear and decide Plaintiffs' remaining claims. ECF No. 1405.

On February 1, 2023, the Parties submitted competing pre-trial memoranda, a proposed pre-trial order containing competing proposed jury instructions and voir dire questions, exhibit lists containing thousands of exhibits and evidentiary objections, deposition designations for trial, and motions *in limine*. ECF Nos. 1406-1413. The Parties submitted oppositions to the motions *in limine* and pre-trial memoranda on February 22, 2023. ECF Nos. 1417-1421.

The Parties also spent significant time during this period conferring on their respective witness lists and scheduling and preparing for depositions for over 30 of Goldman's trial witnesses that Plaintiffs had not previously deposed, as contemplated by the parties' prior agreement regarding trial witnesses. ECF No. 859. Plaintiffs moved to strike eight of Goldman's witnesses as not properly disclosed, and the Court granted Plaintiffs' motion. ECF No. 1433. Goldman then moved to strike two of Plaintiffs' witnesses, and Plaintiffs' responded by seeking to strike an additional eight of Goldman's witnesses. ECF Nos. 1435, 1436. These motions, as well as the Parties' motions *in limine* and disputes concerning jury instructions, voir dire, and other trial issues remain pending.

### F.    Settlement Negotiations

At several points throughout this extensive litigation, the Parties engaged in mediation. Klein Decl. ¶ 22. In the first attempt, on October 10, 2012, the Court referred the Parties to court mediation, ECF No. 162, which the Parties participated in with a court-appointed mediator on March 8, 2013. *Id.* ¶ 23. Around the same time, the Parties requested a 90-day continuance of discovery deadlines to explore resolution, ECF No. 168, and met in June and August 2013 with experienced private mediator David Rotman, but ultimately were unable to settle. *Id.*

Following the Court's class certification ruling in 2018, the Parties unsuccessfully attempted to negotiate a settlement with a third experienced mediator, former judge Daniel Weinstein, on September 24, 2018. Klein Decl. ¶ 24. The Parties then engaged experienced mediator Nancy Lesser in May 2019. *Id.* Ms. Lesser engaged the Parties in pre-mediation settlement discussions, which broke down prior to the scheduled mediation session. The Parties did not negotiate further at that time. *Id.*

After the Court's March 2022 summary judgment, decertification, and *Daubert* decisions, the Parties participated in a fourth round of mediation with experienced mediator Dina Jansenson, on May 23, 2022. Klein Decl. ¶ 25. They were unable to reach a resolution at that time. *Id.* Ten months later, the Parties attended a fifth round of mediation on March 12, 2023, again with mediator Dina Jansenson, who made a mediator's proposal for class monetary relief that the parties ultimately accepted. *Id.* Following the mediation, the Parties reached an agreement in principle and then negotiated a full settlement agreement, which was executed on May 8, 2023. *Id.*

Named Plaintiffs were very closely engaged in the settlement process over the course of these thirteen years, including repeatedly taking time off from work for each round of mediation, traveling across the country to meet in person with Plaintiffs' counsel numerous times before and

during mediations, and spending significant hours communicating – through calls, video-conferences, and emails – with Plaintiffs' counsel on each decision point. Klein Decl. ¶ 26.

### G. The Class

On March 30, 2018, the Court certified claims under Rule 23(b)(3) for a Class of current and former female Associates and Vice Presidents in revenue-generating roles in the Investment Banking, Investment Management, and Securities Divisions in New York City from July 7, 2002 through the resolution of this action, and elsewhere in the United States from September 10, 2004 through the resolution of this action. ECF No. 578. The Court found that this Class satisfied all the factors under Rule 23(a) and 23(b)(3), appointed Named Plaintiffs as Class Representatives, and appointed Plaintiffs' Counsel as Class Counsel. *Id.*

Over the five years since the class was certified, several decisions have impacted Class membership. First, in orders on March 26, 2020 and September 15, 2021, the Court excluded from the Class, and compelled to arbitration, approximately 1,500 individuals who agreed to bring claims in arbitration under the terms of various severance, promotion, compensation, and equity award agreements. ECF Nos. 983, 1264. Second, on March 17, 2022, the Court granted in part Goldman's summary judgment motions as to the 360 Review process from 2002 to 2004 and the 360 Review and Manager Quartiling processes after 2015, ECF No. 1337 at 59, which eliminated certain claims for certain Class Members.

Finally, on August 22, 2022, the Court granted in part Goldman's motion for reconsideration, and modified the Class definition as follows:

> (1) female Associates and Vice Presidents – excluding for self-sustaining private wealth advisors – who were subject to the 360 review process and who were employed by Defendants long enough to have the process used to determine their compensation, in the three divisions from January 1, 2005, through January 1, 2016; (2) female Associates and Vice Presidents – excluding for self- sustaining private wealth advisors – who were subject to quartiling and who were employed

by Defendants long enough to have the process used to determine their compensation, in the three divisions, from July 7, 2002, for those based in New York City, and from September 10, 2004, for all other U.S.-based individuals, through January 1, 2016; and (3) female Vice Presidents from the three divisions who were subject to the cross-ruffing process from July 7, 2002, for those based in New York City, and from September 10, 2004, for all other U.S.-based individuals through the resolution of this action.

ECF No. 1374 at 9.

The Parties' Settlement Agreement adopts a Settlement Class definition that mirrors the Class as originally certified by the Court in March 2018, except that it excludes former Class Members whose claims were compelled to arbitration or that previously opted out of the class action ("Previously Excluded Class Members"). The Settlement Class includes Class Members who would have been excluded by virtue of the Court's 2022 summary judgment orders. Klein Decl., Ex. A (Settlement Agreement) § IX(B). These individuals are included in the Settlement Class because they have not yet received notice that they were excluded by the Court's August 2022 order, and they could be returned to the case through appeal following the Class trial.

Solely for the purpose of allowing Participating Class Members (and not Previously Excluded Class Members or Settlement Class Members who elect to exclude themselves from the Settlement Class) who are subject to arbitration agreements the opportunity to participate in the Settlement and for no other purpose, Goldman Sachs agrees that it will not enforce such Participating Class Members' arbitration agreements.

## III.   THE SETTLEMENT

### A.     Monetary Relief

Goldman has agreed to pay $215 million into the Settlement Fund. Klein Decl., Ex. A (Settlement Agreement) §§ III(y), VIII.A. The Settlement Fund is inclusive of payment for: (a) all amounts paid to Participating Settlement Class Members; (b) all Service Awards paid to Settlement Class Representatives, as awarded by the Court; (c) all Class Counsel Attorneys' Fees

and Class Counsel Litigation Expenses, as awarded by the Court; (d) all costs in connection with the administration of the Settlement Fund including, but not limited to, those related to Notice, claims processing, legal advice obtained by the Settlement Administrator relating to the establishment of the Qualified Settlement Fund, tax treatment and tax reporting of awards to Settlement Class Members, and preparation of the Settlement Fund's tax returns (and the taxes associated with such tax returns as defined below); and (e) applicable federal, state, and local income taxes, and all federal and state unemployment taxes required by law to be withheld other than those to be paid for by Goldman. *Id.* §§ III(o), (bb). The Settlement Fund does not include the costs of the Programmatic Relief, described in section III.B *infra*, and the Employer Payroll Tax Payment. *Id.* § VIII(A)(4).

The Net Settlement Fund shall be allocated 50% to the Evaluation Process Claim and 50% to the Promotion Process Claim. *Id.* § IX(A). Participating Settlement Class Members' share of the Settlement Fund for both the Evaluation Process Claim and the Promotion Process Claim will be calculated based on the Plan of Allocation described in Section IX of the Settlement, which accounts for (i) the number of work-weeks worked in relevant positions (and, for the Promotion Process Claim, additional work-weeks if Participating Settlement Class Members worked during certain promotion cycles, up to two cycles) and (i) Participating Settlement Class Members' base salary applicable to those work-weeks. *Id.* §§ IX(B)-(D). Each Settlement Class Member will receive a minimum of $3,000 from the settlement. *Id.* § IX(D)(2). The Plan of Allocation applies a discount to the Evaluation Process Claim for weeks worked after December 31, 2015, in recognition of the Court's summary judgment order dismissing those claims (and the fact that this order would have been subject to appeal). *Id.* § IX(B)(3); *see* Mar. 17, 2022 Order (ECF No. 1337) at 57.

## B.    Programmatic Relief

The Parties jointly selected APTMetrics ("APT"), an independent industrial organizational psychology consulting firm, to complete a standard validation study of Goldman Sachs's performance evaluation processes and the process for promotion from Vice President to Managing Director. Klein Decl., Ex. A (Settlement Agreement) § V(A)(1). APT will conduct a new validation study in the event that Goldman Sachs implements substantive changes to its performance evaluation processes or to the process for promotion from Vice President to Managing Director during the Effective Period. *Id.*

Among other adjustments or agreed-upon continuation of Goldman's business practices fully described in the Settlement Agreement, *see* Klein Decl., Ex. A (Settlement Agreement) § V, Goldman also has agreed to the following: First, Goldman will continue the practice of focusing 360 reviews primarily on professional development, and reducing "score compression" by largely eliminating numerical scoring. *Id.* § V(A)(2). Second, Goldman will maintain the practice of including "attribution" of the 360 reviews (*i.e.*, identifying 360 reviewers by name with their feedback) in the manager's view of 360 reviews (but not in the reviewee's view) to ensure accountability for feedback and to provide managers with greater context for the 360 review.  *Id.* § V(A)(3). Third, Goldman will continue the practice of providing all employees (other than participating managing directors) a 360 review report that includes (i)  manager feedback on strengths and developmental needs, (ii) a summary of risk, conduct, and control feedback and ratings, and (iii) a summary of "manager effectiveness" feedback and ratings (for employees who supervise three or more direct reports). *Id.* § V(A)(4). Fourth, Goldman will continue the practice of excluding "potential" as a criterion for performance evaluation decisions. *Id.* § V(A)(5). Defendants will instruct employees that performance evaluations should be backward-looking based on employees' performance and conduct during the applicable review

period. Id. Fifth, Goldman will require that managers discuss job-relevant criteria for promotion with Vice Presidents who report to them, including, where relevant in the managers' discretion, reference to the specific competencies of the Managing Director job (as will be informed by APT's validation study), and career growth opportunities in their Division and Business Unit during annual performance evaluations. *Id.* § V(A)(6).

Goldman has further agreed to engage an independent labor economist to perform an annual pay equity analysis for the year-end compensation cycles in 2023, 2024 and 2025, and that the labor economist shall analyze (1) base pay, (2) bonus pay, and (3) equity awards (if applicable) to identify potential gender pay gaps between substantially similar employees. *Id.* § V(B)(1). If the independent labor economist identifies a gender pay gap, Goldman Sachs will undertake further analysis to determine whether there is a non-gender-based reason for the pay gap. *Id.* § V(B)(2). If Goldman Sachs is unable to identify such a non-gender based-reason for the pay gap, such as a performance-based or other business rationale, Goldman will take appropriate steps to address the pay gap. *Id.* Goldman will pay for the labor economist and for APT, separate and independent from the Settlement Fund. *Id.* §§ VA.1., V.B.1.

## C.    Releases From Settlement Class Members

Participating Settlement Class Members will be bound by a release of Class claims, releasing Goldman from "all claims, causes of action, demands, losses, costs, interest, penalties, fees, attorneys' fees, expenses, rights, actions, duties, obligations, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, asserted or unasserted, arising during the Settlement Class Period, that were or could have been asserted based on the facts alleged in the Complaint, including but not limited to claims for alleged disparate treatment or disparate impact discrimination on the basis of gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq.; NYCHRL, New York City Administrative Code § 8-107 et seq.; or any other law arising out of (i) Goldman Sachs's 360 Reviews, Manager Quartiling, or the process for promotion from Vice President to Managing Director; (ii) Goldman Sachs's procedures for determining compensation; (iii) an alleged pattern and practice of intentional discrimination related to Goldman Sachs's performance evaluation and promotion practices; and (iv) Goldman Sachs's corporate culture, only to the extent it relates to Goldman Sachs's compensation, evaluation and promotion decisions." *Id.* §§ III(u), VII.A.1. The released claims include a release of any remedy or recovery related to or arising from the released claims. Participating Settlement Class Members will also be enjoined from commencing any action asserting any of the released claims. *Id.* § VII.A.1.

### D. Attorneys' Fees, Costs, and Service Awards

Under the Settlement Agreement, for the nearly thirteen years of unreimbursed work for the benefit of the Class, Class Counsel will request Court approval of attorneys' fees in the amount of $71,665,000 (*i.e.*, approximately one-third of the Settlement Fund), as well as litigation costs and expenses not to exceed $7,500,000. *Id.* § X(A).

Class Counsel will also seek Court approval for a service award payment of $250,000 to each of the Settlement Class Representatives. *Id.* § X(C). These amounts will be separate and apart from any other recovery to which the Settlement Class Representatives will be entitled under the Settlement as Settlement Class Members. *Id.* These payments are intended to compensate them for (a) the very significant time and effort they spent on behalf of the Class with the prosecution of the claims, and the resulting value they have conferred to Settlement Class Members, and (b) the exposure and risk they incurred by taking a leadership role in a lawsuit that has garnered broad media coverage, along with the risk of retaliation in the employment marketplace by employers that do not wish to employ someone associated with a

lawsuit against an employer.

The Settlement Class Representatives have agreed to resolve their individual, non-class claims for separate consideration, and have agreed to provide a broader general release of claims for matters that are outside the scope of this Settlement, as negotiated with the assistance of a third party mediator. The settlement amounts for the Class Representatives were agreed to by the parties after the parties reached agreement on the class settlement amount. The Parties have provided a separate submission to the Court under seal describing the terms of the resolution of Settlement Class Representatives' individual, non-class claims. Klein Decl. ¶ 28.

**E.      Settlement Administration**

The Parties have jointly selected Rust Consulting, Inc. as Settlement Administrator, to administer the Settlement Fund pursuant to the terms of the Settlement Agreement and orders of the Court. *Id.* § III(w); Klein Decl. ¶ 29. The Settlement Administrator will maintain a dedicated case website listing telephone and email contact information for the Settlement Administrator and for Class Counsel. Klein Decl., Ex. A (Settlement Agreement) § VI(C)(6). Within 21 days after Goldman provides the Class List to the Settlement Administrator, the Settlement Administrator will mail and email the Court-approved Notice to each Settlement Class Member's last known residential and personal email address. *Id.* § VI(C)(4). The Settlement Administrator will run the list of Settlement Class Members through the United States Postal Service's National Change of Address database before mailing the Notice. *Id.* § VI(C)(3). Along with the Notice, the Settlement Administration will send each Settlement Class Member an estimate of each Settlement Class Member's Settlement Share. *Id.* §§ VI(C)(4), III(cc), (dd).

Settlement Class Members will have 45 days from the date of mailing to object to or opt out of the Settlement. *Id.* § VI(D)(1). If Notices are returned to the Settlement Administrator by the United States Postal Service with forwarding addresses, the Settlement Administrator shall

re-mail the Notice to the new address within two (2) business days. *Id.* § VI(C)(5). For any Notices returned as undeliverable, the Settlement Administrator will perform a standard skip trace in an effort to ascertain the current address. *Id.* If such an address is ascertained, the Settlement Administrator shall re-mail the Notice within two (2) business days of receiving such current address. *Id.* The Settlement Administrator may also call any identified last-known telephone numbers of Settlement Class Members to obtain current addresses. *Id.*

Within 30 days of the Effective Date, the Settlement Administrator shall distribute checks to all Settlement Class Members. *Id.* § VIII(C)(1). Each Settlement Class Member will have 180 days to cash her check. *Id.* The Settlement Administrator will distribute a reminder postcard 60 days prior to the check expiration date, will attempt to contact Settlement Class Members who have not cashed their checks via telephone or email, will perform an address trace for any undeliverable checks, and will re-send the checks if a different address is found. *Id.*

If, 180 days after initial distribution from Net Settlement Fund, there is a remaining balance of more than $150,000.00 in the Net Settlement Fund, a second distribution will be made to those Participating Settlement Class Members who deposited their initial check, and will provide Participating Settlement Class Members with another 180 days to cash the second checks. *Id.* § VIII(C)(2). If, after this second distribution, there is a remaining balance of funds in the Net Settlement Fund, it shall be paid to *cy pres* recipients the National Women's Law Center and Equal Rights Advocates. *Id.*

## IV.   ARGUMENT

### A.   Preliminary Approval of the Class Action Settlement Is Warranted.

The law favors compromise and settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal citations omitted). The approval of

a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). "In exercising this discretion, courts should give 'proper deference to the private consensual decision of the Parties.'" *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 75362, at *10 (S.D.N.Y. June 1, 2010) (quoting *Clark v. Ecolab, Inc.*, Nos. 04 Civ. 4488, 06 Civ. 5672, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 27, 2009)).

Review of a class settlement proceeds in "two stages." Fed. R. Civ. P. 23(e); *Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647, at *4-5 (S.D.N.Y. Mar. 14, 2013) (Torres, J.). First, the "court makes a preliminary evaluation of fairness," and then the Court determines whether notice to the class is justified by the parties' showing that the court will likely be able to approve the settlement as fair, reasonable, and adequate. *Id.* (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 33*0 F.R.D. 11, 27 (E.D.N.Y. 2019)). Then, after notice and an opportunity to raise objections are given to the class, the court holds a fairness hearing. *Id.* at *4.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling Parties. 4 Newberg and Rubenstein on Class Actions (Sixth) § 13:10; *Soler*, 2023 U.S. Dist. LEXIS 42647, at *5 (citing same). Settlement fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. *Wal-Mart Stores*, 396 F.3d at 116; *Soler*, 2023 U.S. Dist. LEXIS 42647, at *6-7 (2023). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Soler*, 2023 U.S. Dist. LEXIS 42647, at *7 (quoting *Wal-Mart Stores*, 396 F.3d at 116). "Further, a

mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id.*

(quoting *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019)).

The first step in the settlement process simply allows notice to be issued to the class and

for class members to object to or opt out of the settlement. After the notice period, the Court will

be able to evaluate the settlement with the benefit of the class members' input. In evaluating a

class action settlement at the second step, courts in the Second Circuit consider the nine factors

set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See Soler*, 2023 U.S.

Dist. LEXIS 42647, at *8 (stating that the court's inquiry into the adequacy of relief "overlaps

with the Grinnell factors"). Although the Court need not fully evaluate the *Grinnell* factors to

conduct its initial evaluation of the settlement's fairness, the Court may consider these criteria as

a guide.[4] Here, the relevant *Grinnell* factors strongly weigh in favor of preliminary approval.

### 1. Litigation Would Be Complex, Costly, and Long (Factor 1).

As to *Grinnell* factor 1, by reaching a favorable settlement before a trial, appeals, and a

further damages phase, Plaintiffs avoid significant expense and delay and ensure timely

individual and programmatic relief for the Class. *See In re Austrian & German Bank Holocaust

Litig., 80* F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236

F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the

costs, delays and multitude of other problems associated with them."). The litigation history of

this case, following new standards announced in *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), was

---

[4] The *Grinnell* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463.

especially contentious, involving disagreements over virtually every aspect of the case, resulting in over 1,400 docket entries over nearly thirteen years. Klein Decl. ¶ 30.

Highlighting the complexity, the Parties recently filed motions *in limine* on the scope of trial and witnesses, and submitted memoranda of law highlighting various disputed legal issues impacting both trial and remedies. These important disputes remain undecided and their resolution would significantly impact the scope of trial. Although both Plaintiffs and Goldman believe they would have prevailed on many (or all) of them, the outcome was not certain.

Moreover, this Settlement provides substantial money to Settlement Class Members, and real modifications to Goldman's processes *now*, without any further cost or delay. At the point of Settlement, the Parties were embarking on at least 20 pre-trial depositions, and undertaking significant efforts to prepare for trial. And, even if Plaintiffs prevailed at Phase I, Class Members still would not recover at that point, because Goldman would retain rights to appeal the Phase I verdict and Plaintiffs would still need to prove damages through a Phase II process. These steps could have added *years* before Settlement Class Members received *any* recovery. The proposed Settlement eliminates these uncertainties and ensures recovery now. Therefore, this factor heavily weighs in favor of preliminary approval.

## 2. The Court Can Assess the Class's Reaction After Notice (Factor 2).

After notice is issued and class members have had an opportunity to be heard, the Court can fully analyze the second *Grinnell* factor. However, Plaintiffs note that the Settlement provides extraordinary monetary relief for Settlement Class Members, as well as adjustments to Goldman's performance evaluation and promotion processes. Klein Decl. ¶ 31. Plaintiffs' Counsel are confident that Settlement Class Members will respond favorably.

### 3. The Parties Exchanged Sufficient Information to Evaluate the Claims and Defenses (Factor 3).

As to *Grinnell* factor 3, the Parties completed all pre-trial discovery, and thus had more than sufficient information to evaluate the strengths and potential weakness of their claims. The question on this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alterations in original).

Here, that standard is plainly met: based on the lengthy discovery periods, where Plaintiffs analyzed hundreds of thousands of Goldman documents, class data, and expert opinions, and engaged in extensive briefing, including dispositive motions that clarified the issues in dispute, the Parties were well-equipped to evaluate the strengths and weaknesses and "had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. These claims were fully vetted and tested through adversarial litigation to the point of trial. This factor supports preliminary approval.

### 4. The Risks of Establishing Liability and Damages Favor Approval (Factors 4 and 5).

As to *Grinnell* factors 4 and 5, although Plaintiffs believe their claims are meritorious, they also recognize the significant legal and procedural obstacles they would face in establishing liability and recovering damages at trial. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Class action trials, including under Title VII and the

NYCHRL, are subject to obvious risk. Klein Decl. ¶ 32. Juries may get confused about the class issues and expert evidence. Moreover, this would have been the first gender discrimination class action trial in the Southern District of New York since *Velez v. Novartis* in 2010, and the first anywhere since *Dukes*, meaning there were certain novel questions going to the scope of the trial that created additional uncertainty.

At trial, the Class also faced evidentiary and legal challenges, including establishing that Goldman's performance evaluation and promotion processes violated the law, and that the processes were common to the three Class-relevant Divisions or were the cause of any harm to Class Members. *Id.* As shown by its pre-trial submissions, Goldman strongly contests the legal, evidentiary, and factual basis for each of Plaintiffs' claims. *See* ECF Nos. 1411, 1413, 1421. Moreover, even if Plaintiffs had prevailed at the Phase I trial, they still faced the risk of decertification and years of appeal before the class received any benefit from any Phase I verdict in Plaintiffs' favor.

Risk was also present at the damages phase, even if Plaintiffs prevailed at the Phase I trial. For example, the Parties disputed what damages issues could be determined at Phase II on a class basis and which required individual proof or were subject to individual defenses. In contrast to these risks, the Settlement provides certainty and ensures that Goldman will provide monetary and programmatic relief to Settlement Class Members who remain employed at Goldman without any further proof. These circumstances strongly favor preliminary approval.

### 5. Risk to Maintaining Class Certification Favors Approval (Factor 6).

As discussed, the risk of maintaining class certification post-trial is also present. While Plaintiffs recently defeated Goldman's decertification motion, Goldman would have had another opportunity to raise these issues after trial and on appeal. While Plaintiffs believe they would be able to convincingly respond to Goldman's decertification arguments at trial and on appeal, the

Settlement eliminates any further risk of decertification, further favoring approval.

**6.      Ability to Withstand a Greater Judgment Is Neutral (Factor 7).**

Goldman's ability to withstand a greater judgment is a neutral factor. Collectability was not a factor in the Settlement negotiations and, therefore, Plaintiffs provided no discount for risk of collection. Klein Decl. ¶ 33. Although Goldman may have been able to withstand a greater judgment, this alone does not suggest that the settlement is unfair, especially where the other factors so clearly favor settlement at this juncture. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (noting that "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair"). Here, the Settlement eliminates the risk that Plaintiffs and Settlement Class Members may not recover anything. Klein Decl. ¶ 33. Accordingly, this factor is either neutral or favors settlement approval.

**7.      The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).**

This settlement is comprehensive, with significant programmatic adjustments related to the concerns that led to this litigation. *First*, as compensation for their claims, all Settlement Class Members are entitled to a share of the $215 million Settlement Fund, using the allocation formula outlined in Section III.A, *supra*, which takes into account workweeks, eligibility for promotion from Vice President to Managing Director, and other factors. Settlement Class members will receive a minimum award of at least $3,000. Based on Class Counsel's estimate, this recovery represents approximately 50% of total potential damages for Settlement Class Members' claims. Klein Decl. ¶ 34; *see Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2021 U.S. Dist. LEXIS 71243, at *10-11 (S.N.D.Y. Apr. 12, 2021) (approving gender discrimination settlement for "approximately 20% of Plaintiffs' alleged potential damages"). This is a strong class recovery, particularly given the risks of trial liability and damages, and that this avoids any

risks that Settlement Class Members could have incurred in coming forward for individual Phase II *Teamsters* hearings. Klein Decl. ¶ 34.

*Second*, the Settlement also requires Goldman to undertake programmatic adjustments that benefit all current and future Associates and Vice Presidents. Most directly, the Parties jointly selected APT to complete a validation study of Goldman Sachs's performance evaluation processes and the process for promotion from Vice President to Managing Director. Goldman will issue written guidance to 360 reviewers and Goldman will also retain an independent expert to conduct a pay equity review for the next three compensation cycles. These adjustments will greatly benefit Class Members who remain employed at Goldman and untold numbers of future employees. As described more fully above, *see* § III(B), Goldman will also continue several practices related to performance evaluation and promotion.

### 8.    The Settlement Provides for Equitable Treatment of Class Members.

Finally, in addition to the *Grinnell* factors, Rule 23(e)(2)(C) requires a court to examine whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C). Under the terms of the Settlement, all Settlement Class Members will receive a minimum of $3,000 based on an allocation formula that accounts for their workweeks, base salary applicable to those workweeks, and, where applicable, employment as a Vice President during promotion cycles. Klein Decl. ¶ 35. Accordingly, this factor also weighs in favor of preliminary approval.

### B.    The Proposed Notice Process Satisfies Due Process.

The proposed Notice fully complies with due process and Rule 23(c)(2)(B). The Notice is written in plain language and organized and formatted to be as clear as possible. *Id.* R. 23(e). It is

based on the model notices provided by the Federal Judicial Center ("FJC"),[5] *see Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132, at *4 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices), and what was previously approved by the Court at class certification, ECF No. 618. The Notice describes the Settlement's terms, the proposed attorneys' fees and costs, and the proposed service awards; will be sent with an estimate of each Settlement Class Member's Settlement Share; explains how to opt out or object; and will provide the date, time, and place of the fairness hearing. *See* Klein Decl., Ex. A (Settlement Agreement), Ex. 1 (Notice); *see also Soler*, 2023 U.S. Dist. LEXIS 42647, at *18-19 (approving similar notice).

The Notice process is also reasonably calculated to reach all class members who would be bound by the Settlement. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *19-20. The Settlement Administrator will mail and e-mail the Notice to Settlement Class Members, create and administer a settlement website, take reasonable steps to obtain correct addresses for Settlement Class Members whose notice is returned as undeliverable, and attempt re-mailings for those Settlement Class Members. *See* Klein Decl., Ex. A (Settlement Agreement), Ex. 1 (Notice). No claim form is required, and the proposed Notice process presents no barriers to participation. *Id.; see Id.* (approving similar distribution plan).

## V.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, approve the proposed Notice, and schedule a final fairness hearing for a date that is at least 100 calendar days after preliminary approval.

---

[5] *See* FJC, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited April 25, 2023).

Respectfully submitted,

Dated: May 8, 2023          By:   */s/ Adam T. Klein*

Adam T. Klein
Cara E. Greene
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:  (212) 245-1000
Fax:  (646) 509-2060


Dated: May 8, 2023          By:   */s/ Kelly M. Dermody*

Kelly M. Dermody (admitted pro hac vice)
Anne B. Shaver (admitted pro hac vice)
Michael Levin-Gesundheit (admitted pro hac vice)
Michelle A. Lamy (admitted pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.:  (415) 956-1000
Fax:  (415) 956-1008

Rachel J. Geman
Jessica A. Moldovan
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Tel.:  (212) 355-9500
Fax:  (212) 355-9592

*Attorneys for Plaintiffs and the Class*