# Exhibit A

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER; SHANNA ORLICH; ALLISON GAMBA; and MARY DE LUIS, <br><br> Plaintiffs, <br><br> -against- <br><br> GOLDMAN SACHS & CO. and THE GOLDMAN SACHS GROUP, INC., <br><br> Defendants. | No. 10-cv-6950-AT-RWL <br><br> **STIPULATION AND SETTLEMENT AGREEMENT** |

## I.  **INTRODUCTION**

This Stipulation and Agreement and the attached Exhibits 1 and 2 (collectively, "Settlement Agreement" or "Settlement") in the Action pending before the U.S. District Court for the Southern District of New York (the "Court"), is entered into by and between H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba and Mary De Luis (collectively, the "Settlement Class Representatives"), on behalf of themselves and Settlement Class Members, and Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. (collectively, "Defendants" and, together with the Settlement Class Representatives, the "Parties"), by their respective counsel.  This Settlement Agreement is submitted for approval by this Court pursuant to Fed. R. Civ. P. 23(e) and is intended by the Parties to fully, finally, and forever resolve, discharge, release, and settle the Released Claims as against the Released Defendants' Persons upon and subject to the terms and conditions of this Settlement Agreement.

-1-

## II.    **PROCEDURAL HISTORY**

This Litigation is a class action against Defendants asserting claims for discrimination on the basis of gender in connection with certain of Goldman Sachs's employment processes.  The class action is brought by the Named Plaintiffs on behalf of a class of female Associates and Vice Presidents in revenue-producing roles in certain of Goldman Sachs's Divisions.  The Litigation has been pending for over 12 years and the procedural history recounted below represents only a summary of certain key developments in this vigorously contested matter.

On September 10, 2010, the initial named plaintiffs filed the original complaint asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; New York City Human Rights Law, New York City Administrative Code § 8-107 et seq. ("NYCHRL").

On March 21, 2013, the Second Circuit compelled one of the initial named plaintiffs to arbitration.

On March 10, 2015, the Magistrate Judge recommended that the Court deny Plaintiffs' motion for class certification under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

On March 30, 2018, the Court sustained certain of Plaintiffs' objections to the Magistrate Judge's order and certified a damages class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

On September 27, 2018, Plaintiffs withdrew their motion for class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

On September 15, 2021, the Court compelled 1,511 class members to arbitration.

During the course of discovery, Defendants produced just over 1 million pages of documents, Plaintiffs produced over 16,000 pages of documents; and the Parties took 57 depositions.

On August 22, 2022, the Court denied Goldman Sachs's motion to decertify the class, denied Plaintiffs' motion for summary judgment, and granted in part and denied in part Goldman Sachs's motion for summary judgment.

The Parties attempted unsuccessfully to resolve the Litigation through mediation on five different occasions: in 2012, twice in 2013, in 2018, and in 2022.  In March 2023, the Parties again agreed to explore a resolution of the Litigation and engaged the services of Dina Jansenson, Esq., a Senior Mediator with JAMS, who had also supervised the Parties' mediation in 2022.  Ms. Jansenson is a nationally recognized mediator with over 25 years of experience.

At and after the mediation, the Parties engaged in vigorous settlement negotiations, which ultimately resulted in the Parties executing a term sheet on March 28, 2023 memorializing their agreement-in-principle to settle the Litigation.  The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims against Defendants in return for a cash payment by Defendants of $215 million for the benefit of Participating Settlement Class Members and for Defendants' agreement to memorialize certain adjustments to their business practices made over the course of the Litigation and in response to concerns raised by the Plaintiffs, and to implement additional adjustments going forward.  This Settlement agreement (together with the exhibits hereto) reflects the final and binding agreement between the Parties and supersedes the Term Sheet.

## III.   DEFINITIONS

In addition to terms defined elsewhere in this Settlement Agreement, the terms below shall have the following meanings wherever used in this Settlement Agreement and in all of its Exhibits:

(a)    "Action," or "Litigation" means the class action pending in the Court captioned *Chen-Oster et al*. v. *Goldman Sachs & Co. et al*., Case No. 10-cv-6950-AT-RWL.

(b)  "Arbitration Order" means the September 15, 2021 order of the Court (ECF No. 1264).

(c)  "Class Counsel" means the law firms of Outten & Golden LLP and Lieff Cabraser Heimann & Bernstein LLP.

(d)  "Class Counsel Attorneys' Fees" and "Class Counsel Litigation Expenses" mean the amounts approved by the Court for payment to Class Counsel to compensate them for, respectively, attorneys' fees and litigation expenses incurred in connection with the Action, including their pre-filing investigation, their filing and prosecution of the Action, and the negotiation, execution, and administration of this Settlement.

(e)  "Complaint" means the Second Amended Class Action Complaint (ECF No. 411) filed in the Court.

(f)  "Defendants' Counsel" means the law firms of Sullivan & Cromwell LLP, Paul Hastings LLP, and Orrick, Herrington & Sutcliffe LLP.

(g)  "Dispute Fund" means, subject to Court approval, one percent (1%) of the Settlement Amount ($2,150,000) to be reserved by the Settlement Administrator and used in the Settlement Administrator's reasonable discretion to resolve disputes that arise from or relate to the distribution of Settlement Shares, if any, and that are raised during the time period that is 180 days from the date that Settlement Shares are first distributed to Participating Settlement Class Members.

(h)  "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions below have been met or have occurred or have been waived (as applicable): (i) the Court has entered the Preliminary Approval Order in all material respects; (ii) Defendants have not exercised their option (if any triggered) to terminate this

Settlement pursuant to Section XI hereof and the Supplemental Agreement, and the option to do so has expired in accordance with the terms of this Stipulation and the Supplemental Agreement; and (iii) the Court has entered the Judgment and it has become Final.

(i)        "Escrow Account" means an interest-bearing account established and maintained by the Settlement Administrator at Citibank, N.A. wherein Defendants shall deposit the Settlement Amount as set out in Section VIII.A.1.

(j)        "Escrow Agent" means Citibank, N.A.

(k)        "Final" with respect to the Judgment or any other Court order means: (a) if no notice of appeal is filed, the expiration date of the time for filing a notice of appeal from the Judgment or order; or (b) if a notice of appeal is filed from the Judgment or order, (i) the date of final dismissal of all such appeals, or the final dismissal of any other proceeding to review the Judgment or order, or (ii) the date the Judgment or order is affirmed in all material respects on appeal, whether because of the time to file a petition for further appellate review of the affirmance expires, or a request for further appellate review of the Judgment or order is denied; or (c) if any further appellate review is granted, the date of final affirmance in all material respects of the Judgment or order.  However, any appeal or proceeding seeking subsequent judicial review with respect to the Plan of Allocation (as submitted or subsequently modified), the Settlement Class Representatives' application for Service Awards, or Class Counsel's application for Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses shall not in any way delay or preclude the Judgment from becoming Final.

(l)        "Final Approval Hearing" means the hearing before the Court to address final approval of, or any other rulings contemplated by, this Settlement Agreement.

(m)     "Goldman Sachs" means Defendants and any entity Defendants control or

under common control with Defendants that has employed Class Members in the United States

during the Settlement Class Period.

(n)      "Judgment" means a judgment of this Court granting final approval of the

Settlement on the terms substantially set forth in this Settlement Agreement.

(o)     "Net Settlement Fund" means the Settlement Fund less (i) court-awarded

Service Awards; (ii)  court-awarded Class Counsel Attorneys' Fees and Class Counsel Litigation

Expenses; (iii) the Settlement Administrator's court-awarded reasonable fees and expenses;

(iii) the Dispute Fund; and (iv) any taxes due on interest or income earned on the Settlement

Fund while on deposit in the Escrow Account.

(p)     "Notice" means the Notice of Settlement of Class Action to be sent to

Settlement Class Members substantially in the form attached hereto as Exhibit 1.

(q)     "Participating Settlement Class Member" means a Settlement Class

Member who has not excluded herself from the Settlement Class by submitting a timely and

valid Opt-Out Statement that is accepted by the Court.

(r)      "Plan of Allocation" means the proposed methodology, subject to Court

approval, for allocating Settlement Shares to Settlement Class Members from the Net Settlement

Fund, as set forth in Section IX hereof.

(s)     "Preliminary Approval Order" means an order of the Court, a proposed

version of which is attached hereto as Exhibit 2, preliminarily approving the terms and

conditions of this Settlement, providing for the form, manner, and timing of the Notice, and

providing for deadlines and the manner of, requests for exclusion from the Settlement and

objections to the Settlement.

(t)      "Previously Excluded Class Member" means putative class members

(i) whose claims were compelled to arbitration by the Arbitration Order and who, to the extent

applicable, did not opt out of the obligation to arbitrate claims in an equity award agreement after

receiving notice of the opportunity to do so; or (ii) who previously excluded themselves from

participating in the Litigation.

(u)      "Released Claims" means all claims, causes of action, demands, losses,

costs, interest, penalties, fees, attorneys' fees, expenses, rights, actions, duties, obligations,

judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities

of every nature and description, whether known or unknown, asserted or unasserted, arising

during the Settlement Class Period, that were or could have been asserted based on the facts

alleged in the Complaint, including but not limited to claims for alleged disparate treatment or

disparate impact discrimination on the basis of gender under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq.; NYCHRL, New York City Administrative Code § 8-107 et

seq.; or any other law arising out of (i) Goldman Sachs's 360 Reviews, Manager Quartiling, or

the process for promotion from Vice President to Managing Director; (ii) Goldman Sachs's

procedures for determining compensation; (iii) an alleged pattern and practice of intentional

discrimination related to Goldman Sachs's performance evaluation and promotion practices; and

(iv) Goldman Sachs's corporate culture, only to the extent it relates to Goldman Sachs's

compensation, evaluation and promotion decisions.  The Released Claims include a release of

any remedy or recovery related to or arising from the Released Claims, including without

limitation, back pay, front pay, compensatory damages, emotional distress damages, injunctive

or other equitable relief, interest, punitive damages, and attorneys' fees.  Notwithstanding the

foregoing, (i) the Settlement Class Representatives' individual non-class claims and (ii)

Settlement Class Members' claims relating to accounts held by Goldman Sachs, including but not limited to custodial accounts or vested retirement benefits, are not Released Claims.

(v)     "Released Defendants' Persons" means Defendants, any entity in which any Defendant has a controlling interest, and any entity under common control with any Defendant (collectively, "Defendant Entities"); as well as any of Defendant Entities' respective current and former parents, affiliates, subsidiaries, officers, directors, agents, successors, predecessors, assigns, assignees, partnerships, partners, committees, joint ventures, trustees, trusts, employees, heirs, insurers and reinsurers (in their capacities as such), and consultants, experts, and attorneys.

(w)     "Service Award" means, subject to Court approval, an additional amount to be paid to each Settlement Class Representative, as described in Section X.C.1, for their service to the Settlement Class in this Litigation.

(x)     "Settlement Administrator" means Rust Consulting, Inc., which has been jointly designated by counsel for the Parties, subject to Court approval, to administer the Settlement and distribute the Settlement Fund pursuant to the terms of this Agreement and orders of the Court.

(y)     "Settlement Amount" means $215,000,000 (Two Hundred and Fifteen Million Dollars) to be paid into the Escrow Account pursuant to the terms hereof.

(z)     "Settlement Class" or "Settlement Class Member" means persons who are in one or both of the two groups defined below, but excluding persons who were during the Settlement Class Period (i) a trustee, officer, or outside director of a Defendant; or (ii) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such persons:

(1) Evaluation Processes Group: all women who, during the Settlement Class Period, held a revenue-producing Associate or Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions or any of their successor groupings in the United States (the "Applicable Divisions") and (a) were subject to Goldman Sachs's performance review process, known as the 360 Review process; or (b) were subject to Goldman Sachs's comparative performance ranking process, known as the Manager Quartiling process; but (c) excluding Previously Excluded Class Members.

(2) Promotion Group: all women who, during the Settlement Class Period, held a revenue-producing Vice President position at Goldman Sachs in the Applicable Divisions; but excluding Previously Excluded Class Members.

(aa)   "Settlement Class Period" means the time period beginning July 7, 2002 for Settlement Class Members employed in New York City, or beginning September 10, 2004 for Settlement Class Members employed elsewhere in the United States and, in either case, ending March 28, 2023.

(bb)   "Settlement Fund" means the Settlement Amount plus any interest or income earned thereon on deposit in the Escrow Account or other account as permitted by the Court.

(cc)   "Settlement Share" means the amount to be paid to each Participating Settlement Class Member, as determined by the Settlement Administrator based on the Class List and Plan of Allocation, less applicable deductions.

-9-

(dd)    "Settlement Share Estimate" means a form that the Settlement Administrator will prepare individually for each Settlement Class Member and will mail to each Settlement Class Member with the Notice, containing the Settlement Class Member's estimated Settlement Share.

## IV.   **GENERAL TERMS**

The Parties agree that they will cooperate in good faith to effectuate and implement all terms and conditions of this Settlement Agreement. The Parties agree to meet and confer in good faith regarding acceptance of non-material or procedural changes to this Settlement Agreement as necessary or if so required by the Court in connection with preliminary or final approval of the Settlement.

Settlement Class Representatives, Class Counsel, and Defendants and Defendants' Counsel agree to support the Settlement, including in their public statements.  At least two business days prior to issuing any press release concerning the Settlement, the Parties will share drafts, including final drafts, to ensure that they are consistent with this obligation.

The Parties agree that the Settlement Amount and other terms of this Settlement Agreement were negotiated at arm's length and in good faith, including through a mediation process supervised and conducted by Dina Jansenson, Esq. of JAMS, and reflect that the Settlement was voluntarily reached after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strength and weaknesses of their respective clients' claims or defenses.

This Settlement Agreement is not intended to and does not constitute an admission by any Party as to the merits, validity, or accuracy of any of the allegations, claims, defenses, or affirmative defenses of any Party in this Action in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Settlement Class

Representatives, on behalf of themselves and the Settlement Class Members they represent, continue to assert the merits and validity of their claims under laws prohibiting gender discrimination. By entering into this Agreement, Defendants do not admit or concede, expressly or impliedly, but rather deny all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief, and all other forms of relief, as well as the class or other allegations asserted in the Action, and deny that they have in any way violated laws prohibiting gender discrimination.

## V.     ADJUSTMENTS TO BUSINESS PRACTICES

Goldman Sachs maintains that its performance evaluation processes, the process for promotion from Vice President to Managing Director and other human resource practices have continuously evolved over the Settlement Class Period.  The adjustments set out herein reflect that evolution as well as advancements in the field of industrial organization psychology over the Settlement Class Period.

Defendants or their successors in interest shall implement and maintain the adjustments to their business practices set out in this Section V ("Adjustments to Business Practices") for employees in the United States for a period of three (3) years following the Effective Date (the "Effective Period"), unless a different time period is mutually agreed to by the Parties or ordered by the Court.  Defendants hereby provide notice to Class Counsel that the Human Capital Division (including Firmwide Compensation and the Talent Assessment groups) will be responsible within Goldman Sachs for the implementation and maintenance of the Adjustments to Business Practices.  Defendants reserve the right to change the internal group at Goldman Sachs with responsibility for the implementation and maintenance of the Adjustments to Business Practices during the Effective Period due to business needs and will provide notice to Class Counsel of any such change.  In agreeing to undertake the Adjustments to Business

Practices, Goldman Sachs does not waive and instead expressly reserves its right to attorney-client privilege to the extent Goldman Sachs has sought or seeks legal advice in connection with the Adjustments to Business Practice.  Plaintiffs agree that Goldman Sachs has not waived any attorney-client privilege in agreeing to undertake the Adjustments to Business Practices.

### A.  Adjustments to Performance Evaluation and Promotion Processes

1.     The Parties have jointly selected APTMetrics ("APT"), an independent industrial organizational psychology consulting firm, to complete a standard validation study (the "Study") of Goldman Sachs's performance evaluation processes and the process for promotion from Vice President to Managing Director.  APT's fees and expenses will be paid for by Goldman Sachs. APT will complete the Study within 18 months after the Effective Date.  APT will conduct a new validation study in the event that Goldman Sachs implements substantive changes to its performance evaluation processes or to the process for promotion from Vice President to Managing Director during the Effective Period.

2.     Goldman Sachs agrees to continue the practice of using 360 reviews primarily for professional development, and reducing "score compression" by largely eliminating numerical scoring.

3.     Goldman Sachs will maintain the practice of including "attribution" of the 360 reviews (*i.e.*, identifying 360 reviewers by name with their feedback) in the manager's view of 360 reviews (but not in the reviewee's view) to ensure accountability for feedback and to provide managers greater context for the 360 reviews.

4.     Goldman Sachs will continue the practice of providing all employees (other than participating managing directors) a 360 review report that includes (i) written manager feedback on strengths and developmental needs, (ii) a summary of risk, conduct, and control

feedback and ratings, and (iii) a summary of "manager effectiveness" feedback and ratings (for employees who supervise three or more direct reports).

5.      Goldman Sachs will continue the practice of excluding "potential" as a criterion for performance evaluation decisions.  Defendants will instruct employees that performance evaluations should be backward-looking based on employees' performance and conduct during the applicable review period.

6.      Goldman Sachs will require that managers discuss job-relevant criteria for promotion with Vice Presidents who report to them, including, where relevant in the managers' discretion, reference to the specific competencies of the Managing Director job (as will be informed by APT's validation study), and career growth opportunities in their Division and Business Unit during annual performance evaluations.

7.      Goldman Sachs will issue more explicit written guidance to 360 reviewers that they should only review employees with whom the 360 reviewers have had meaningful professional interactions. APT will review and provide input on such written guidance prior to its publication within Goldman Sachs.

8.      Goldman Sachs will continue the practice of using established and validated core competencies, including any new or revised competencies established by the APT's validation study, for promotion from Vice President to Managing Director.  Defendants will provide additional explicit training for employees who evaluate candidates for promotion (*i.e.*, "cross-ruffers") to evaluate candidates based on the established core competencies.

9.      Goldman Sachs will continue the practice of using structured interviews, including standardized interview questions (with the flexibility to ask additional questions, as

needed) for employees who are interviewed during the promotion process from Vice President to Managing Director.

10.     Goldman Sachs will continue the practice of providing goal-setting and developmental feedback at intervals throughout the year, to promote alignment of expectations between employees and managers and ongoing feedback and career coaching.

11.     Goldman Sachs will continue the practice of monitoring outcomes in the performance evaluation processes to identify and investigate any unexplained gender-based differences and take appropriate remedial action where appropriate.

**B.  Pay Equity Analysis**

1.     Goldman Sachs agrees that for the year-end compensation cycles in 2023, 2024 and 2025, Goldman Sachs shall retain an independent labor economist to perform an annual pay equity analysis, and that the labor economist shall analyze (1) base pay, (2) bonus pay, and (3) equity awards (if applicable) to identify potential gender pay gaps between substantially similar employees.  Goldman Sachs will pay all fees and expenses for this expert.

2.     If the labor economist identifies a gender pay gap, Goldman Sachs will undertake further analysis to determine whether there is a non-gender-based reason for the pay gap.  If Goldman Sachs is unable to identify such a non-gender based-reason for the pay gap, such as a performance-based or other business rationale, Goldman Sachs will take appropriate steps to address the pay gap.

**C.  Other**

On each anniversary of the Effective Date up to and including the third anniversary of the Effective Date (or, in each case, the business day that is prior to such anniversary), Goldman Sachs shall confirm to Class Counsel in writing the implementation of the Adjustments to Business Practices described in this Section V.

Solely for the purpose of allowing Participating Class Members (and not Previously Excluded Class Members or Settlement Class Members who exclude themselves from the Settlement) who are subject to arbitration agreements the opportunity to participate in the Settlement and for no other purpose, Goldman Sachs agrees that it will not enforce such Participating Class Members' arbitration agreements.

## VI.     APPROVAL AND NOTICE PROCEDURES

### A.  Jurisdiction and Venue.

The Parties agree that the Court has jurisdiction over the Parties and the subject matter of this Action and that venue is proper.  The administration and consummation of the Settlement shall be under the authority of the Court, and the Court shall retain exclusive jurisdiction for the purpose of entering orders relating to the Settlement and enforcing the terms of this Settlement Agreement, including without limitation the release of claims and litigation bar set forth in Section VII.A.1, distributions from the Settlement Fund and payment of Settlement Shares to Participating Settlement Class Members.

### B.  Preliminary Approval

1.     The Settlement Class Representatives shall submit to the Court a motion seeking preliminary approval of the Settlement that will include this Agreement and all Exhibits thereto ("Preliminary Approval Motion").  As set out in the proposed Preliminary Approval Order, the Settlement Class Representatives shall request, among other things, that the Court approve distribution of the Notice, set a Final Approval Hearing for a date that is at least 100 days after the date that the Preliminary Approval Order is entered, and set deadlines for Settlement Class Members to submit Opt-Out Statements or Notices of Objection as provided for in Section VI.D and in the Notice.

2.      Class Counsel will be responsible for drafting all documents necessary for the Preliminary Approval Motion.  Class Counsel will provide Defendants with drafts of all documents to be filed in connection with the Preliminary Approval Motion no less than five (5) business days in advance of the date that the Motion is to be filed.

**C.  <u>Notice Procedures.</u>**

1.      The Parties have agreed upon the Notice attached as Exhibit 1, subject to Court approval.

2.      Within five (5) days after entry of the Preliminary Approval Order, Defendants shall provide to the Settlement Administrator a list of all Settlement Class Members, including, to the extent reasonably available, the full name, social security number, last known home address, last known personal email address(es) and telephone number(s), relevant job history during the Settlement Class Period (including Associate or Vice President titles, pay, and weeks worked in Associate or Vice President positions), and work location during the Settlement Class period (New York City or other U.S.) (the "Settlement Class List").  The Settlement Class List will be provided in a computer-readable format acceptable to the Settlement Administrator. Defendants will provide Class Counsel with a copy of the Settlement Class List, except that Class Counsel will not be provided with Social Security Numbers.

3.      The Settlement Administrator shall run the addresses provided on the Class List through the United States Postal Service's National Change of Address database and, in lieu of the address on the Class List, shall mail the Notice to the address provided by such database, if any.  There will be no second mailing of the Notice to Settlement Class Members except as provided in Section VI.C.5 below.

4.      Within twenty-one (21) days after Defendants provide the Class List to the Settlement Administrator, the Settlement Administrator will mail and email the Notice and a

Settlement Share Estimate to each Settlement Class Member's last known residential address and last known personal email address(es) on the Class List (the "Initial Mailing Date").  The Settlement Administrator will endeavor to provide Notice to each Settlement Class Member, to the extent practicable.

5.      If Notices are returned to the Settlement Administrator by the United States Postal Service with forwarding addresses, the Settlement Administrator shall re-mail the Notice to the new address within two (2) business days.  In the event that Notices are returned to the Settlement Administrator by the United States Postal Service as undeliverable, the Settlement Administrator shall perform a standard skip trace to attempt to ascertain the current address of the Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator shall re-mail the Notice within two (2) business days of receiving such current address, and may call any last-known telephone numbers (and telephone numbers updated through public and proprietary databases) associated with such Settlement Class Member in order to obtain current addresses.

6.      The Settlement Administrator shall also maintain a website dedicated specifically to the Settlement at the following web address: www.goldmangendersettlement.com. The website shall provide links to a copy of the Second Amended Complaint, this Settlement Agreement (and all Exhibits thereto), and the Notice as approved by the Court. The website shall list telephone and email contact information for the Settlement Administrator and for Class Counsel.  The website's address will be included in the Notice.

7.      Beginning one week after the Initial Mailing Date and ending one week after the Objection and Opt-Out Deadline the Settlement Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings, including the number of Notices

which were re-mailed, the number of successful and unsuccessful mailings, and the number of Settlement Class Members who have submitted Opt-Out Statements or Notices of Objection as described in Section VI.D.

8.     The Settlement Administrator shall provide to Defendant's Counsel and Class Counsel, at least five (5) business days prior to the Objection and Opt-Out Deadline (defined below), a list of Settlement Class Members to whom Notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

### D.  Objections and Opt-Outs.

1.     Any Settlement Class Member who wishes to object to the Settlement at the Final Approval Hearing must submit to the Settlement Administrator a written statement setting out the basis for the objection, with any supporting facts or law ("Notice of Objection"). To be valid, the Notice of Objection must contain the full name, address, and telephone number of the Settlement Class Member, and must be physically signed by the Settlement Class Member. To be timely, the Notice of Objection must be received by the Settlement Administrator no later than forty-five (45) days after the Initial Mailing Date (the "Objection and Opt-Out Deadline"). Any Settlement Class Member who fails to submit a timely and valid Notice of Objection in the manner specified herein shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement (whether by appeal or otherwise).  Settlement Class Members who do not timely and validly submit a Notice of Objection and, where applicable, their counsel, will waive any and all rights to appeal from the Judgment, and the Judgment therefore shall become final and non-appealable at to such Settlement Class Members at the time the Judgment is entered.   Any objecting Settlement Class Member may withdraw her/their Notice of Objection at any time.

2.     The Settlement Administrator shall stamp the Notice of Objection with the date it was received, and shall send copies of each Notice of Objection to Class Counsel and Defendants' Counsel by email not later than two (2) business days after receipt thereof.  The Settlement Administrator shall retain the stamped originals of all Notices of Objection until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

3.     An objecting Settlement Class Member who wishes to appear at the Final Approval Hearing must file with the Clerk of the Court a statement that she/they intend to appear at the Final Approval Hearing ("Notice of Intention to Appear") no later than twenty-one (21) days prior to the Final Approval Hearing.  The Notice of Intention to Appear must include copies of any documents, exhibits, or other evidence that the objecting Settlement Class Member proposes to present to the Court at the Final Approval Hearing.  Any objecting Settlement Class Member who does not provide a timely and valid Notice of Intention to Appear consistent with these requirements and any other requirements set out in the Notice may be barred from being heard at the Final Approval Hearing, subject to the Court's discretion.

4.     A lawyer representing an objecting Settlement Class Member must file a Notice of Appearance with the Court no later than twenty-one (21) days prior to the Final Approval Hearing and must also serve copies of the Notice of Appearance and copies of any documents, exhibits, or other evidence that the objecting Settlement Class Member proposes to present to the Court at the Final Approval Hearing by email to the undersigned Class Counsel and Defendants' Counsel.

5.     A Settlement Class Member may request exclusion from the Settlement by mailing or emailing to the Settlement Administrator a written statement to that effect ("Opt-Out

Statement"). To be valid, the Opt-Out Statement must contain the full name, address, and telephone number of the Settlement Class Member who seeks to opt out and must be physically signed by the Settlement Class Member. The Opt-Out Statement should include the statement: "I elect to exclude myself from the Settlement in the *Goldman Sachs Gender Class Action*. I understand that I will not be entitled to any money under the Settlement." To be timely, the Opt-Out Statement must be received by the Objection and Opt-Out Deadline. No request for exclusion may be made on behalf of a group of Settlement Class Members.

6.      Participating Settlement Class Members will be bound by all terms of the Settlement Agreement if the Settlement is granted Final Approval. A Settlement Class Member who submits a timely and valid Opt-Out Statement shall not be a Participating Settlement Class Member, shall not receive any Settlement Share and may not object to the Settlement. If a Settlement Class Member submits both an Opt-Out Statement and a Notice of Objection, then the Opt-Out Statement will control and will invalidate the Notice of Objection.

7.      The Settlement Administrator shall stamp on any original Opt-Out Statement that it receives the date it was received, and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel by email no later than two (2) business days after receipt thereof. The Settlement Administrator shall retain the stamped originals of all Opt-Out Statements until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

8.      Within five (5) days after the Objection and Opt-Out Deadline, the Settlement Administrator shall send to Class Counsel and Defendants' Counsel a final list of all Notices of Objection and Opt-Out Statements received by the Settlement Administrator. The

Settlement Administrator shall promptly advise Class Counsel and Defendants' Counsel of any Notices of Objection or Opt-Out Statements that are not timely received.

9.      At least ten (10) business days prior to the Final Approval Hearing, the Settlement Administrator will provide to Class Counsel and Defendants' Counsel a signed and notarized declaration (i) describing the Settlement Administrator's diligent efforts to provide the Notice to Settlement Class Members and identifying the number (but not the name) of Settlement Class Members for whom the Settlement Administrator was unable to deliver a Notice; (ii) identifying the number of Notices of Objection and of Opt-Out Statements received by the Settlement Administrator; and (iii) attaching true and correct copies of all such Notices of Objection and Opt-Out Statements.  Class Counsel will file the declaration with the Court at least seven (7) days prior to the Final Approval Hearing.

10.      With respect to each Settlement Class Member who timely submits an Opt-Out Statement, any applicable tolling of any statute of limitations for claims asserted on behalf of such Settlement Class Members in the Action will end on the date that Class Counsel files the Settlement Administrator's declaration contemplated herein.  The Settlement Shares that otherwise would have been distributed to Settlement Class members who submitted an Opt-Out Statement shall remain part of the Net Settlement Fund for distribution to Settlement Class Members in accordance with the Plan of Allocation.

11.      The Parties agree that the decision to object or opt out is to be left to individual Settlement Class Members.  If contacted by a Settlement Class Member, Class Counsel may provide advice or assistance as such Settlement Class Member requests.  If Defendants' Counsel is contacted by a Settlement Class Member regarding the Settlement, Defendants' Counsel shall refer such Settlement Class Member to Class Counsel.  In addition, at

no time shall the Settlement Class Representatives, Defendants, or their respective counsel seek

to solicit or otherwise encourage Settlement Class Members or any other persons to submit a

Notice of Objection or Opt-Out Statement, or to appeal the Judgment.

**E. Final Approval.**

1.      If the Preliminary Approval Motion is granted, the Settlement Class

Representatives shall file a motion seeking final approval of the Settlement twenty-one (21) days

before the date set for the Final Approval Hearing (the "Final Approval Motion").  Class Counsel

will be responsible for drafting all documents necessary for the Final Approval Motion.  Class

Counsel will provide Defendants with drafts of all documents to be filed in connection with the

Final Approval Motion no less than five (5) business days in advance of the date that the Motion

is to be filed.

2.      The Final Approval Motion shall, among other things, seek: (a) final

approval of the Settlement as fair, reasonable, adequate, and binding on all Participating

Settlement Class Members and direct the Parties to implement the Settlement terms; (b) entry of

the Judgment, which shall dismiss the Action on the merits and with prejudice; (c) an order

providing that the promises, agreement, obligations, undertakings, representations, certifications,

and warranties set out herein shall survive Final Approval, (d) an order providing that the Court

shall have continuing jurisdiction to enforce the Settlement Agreement; and (e) a statement to

reflect the Parties' compliance with Rule 11 of the Federal Rules of Civil Procedure.

3.      The Settlement Class Representatives or Defendants may file a reply brief

seven (7) days prior to the date set for the Final Approval Hearing in further support of Final

Approval of the Settlement and in response to any Notices of Objection submitted by Settlement

Class Members.

## VII.     RELEASE/BAR OF CLAIMS

### A.  Settlement Class Member Release and Injunction.

1.     As of the Effective Date, pursuant to the Judgment, and without further action by anyone, the Settlement Class Representatives and all Participating Settlement Class Members shall be deemed to have, and, by operation of the Judgment, shall have, fully, finally, and forever waived, released, and discharged all Released Claims against all Released Defendants' Persons, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any action or proceeding in any court, tribunal or forum asserting any of the Released Claims against any of the Release Defendants' Persons.  This Release shall have res judicata, collateral estoppel, and all other preclusive effects in all pending and future lawsuits, arbitrations, or other suits, actions or proceedings involving any of the Release Defendants' Persons.

2.     Upon the Effective Date, all class claims, including the class claims of the Settlement Class Representatives will be deemed voluntarily dismissed with prejudice.

3.     With respect to any and all Released Claims, the Parties agree that by operation of the Judgment, upon the Effective Date, Settlement Class Representatives shall have expressly waived, and Settlement Class Representatives and each other Participating Settlement Class Member shall be deemed to have waived, and, by operation of the Judgment, shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY,**

and any and all provisions, rights, and benefits conferred by any law of any state or territory of

the United States, or principle of common law, which is similar, comparable, or equivalent to

Cal. Civ. Code §1542.  Settlement Class Representatives or Participating Settlement Class

Members may hereafter discover facts in addition to or different from those which she or they

now knows or believes to be true with respect to the subject matter of the Released Claims, but

Settlement Class Representatives expressly, fully, finally, and forever settle and release, and each

other Participating Settlement Class Member, upon the Effective Date, shall be deemed to have,

and, by operation of the Judgment, shall have, fully, finally, and forever settled and released, any

and all Released Claims, including known claims and unknown Released Claims, without regard

to any subsequent discovery or existence of such different or additional facts.  Settlement Class

Representatives and Defendants acknowledge, and all other Participating Settlement Class

Members shall be deemed to have acknowledged as of the Effective Date, that the inclusion of

"unknown claims" in the definition of Released Claims was separately bargained for and was an

essential element of this Settlement.

## B.  <u>Individual Claims of Settlement Class Representatives.</u>

The Settlement Class Representatives have agreed to resolve their individual, non-class

claims for separate consideration, and have agreed to provide a broader general release of claims

for matters that are outside the scope of this Settlement, as negotiated with the assistance of a

third party mediator.  The settlement amounts for the Class Representatives were agreed to by

the parties after the parties reached agreement on the class settlement amount.  The Parties have

provided a separate submission to the Court under seal describing the terms of the resolution of

Settlement Class Representatives' individual, non-class claims.

**C.** <u>**No Bar to Future Claims.**</u>

Nothing in the Settlement Agreement shall be construed to bar any claims of Settlement Class Members or Settlement Class Representatives that arise from conduct occurring after March 28, 2023.

**D.** <u>**Ownership of Claims.**</u>

Participating Settlement Class Members may not assign or transfer their rights to participate in this Settlement Agreement. The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

**VIII.** <u>**MONETARY RELIEF**</u>

**A.** <u>**Payment of the Settlement Amount**</u>

1. In exchange for the releases provided herein, Defendants will: (a) wire transfer Ten Million dollars ($10,000,000) of the Settlement Amount to the Escrow Account no later than fifteen (15) days after the later of (i) entry of the Preliminary Approval Order or (ii) Defendants' Counsel's receipt of wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 form for the Escrow Account; (b) wire transfer Forty Million dollars ($40,000,000) of the Settlement Amount to the Escrow Account within ten (10) days after the Court enters the Final Approval Order; and (c) wire transfer the remaining One Hundred and Sixty-Five Million dollars ($165,000,000) of the Settlement Amount to the Escrow Account within ten (10) days of the Effective Date. Defendants have no obligation to deposit any portion of the Settlement Amount other than as set forth in this Paragraph.

2.      All funds held by the Escrow Agent in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Settlement and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event the yield on United States Treasury Bills is negative, in lieu of purchasing such instruments, all or any portion of the funds held by the Escrow Agent may be deposited in accounts that are fully insured by the FDIC or backed by the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in accounts that are fully insured by the FDIC or backed by the full faith and credit of the United States.

3.      The Settlement Administrator, subject to the Court's supervision, shall have exclusive authority to make disbursements, withdrawals or payments from the Settlement Fund.

4.      The Settlement Amount shall constitute the total settlement cash outlay by Defendants in connection with the resolution of this Action and this Settlement, except for (i) the costs of the Adjustments to Business Practices described in Section V, (ii) Defendants' payments to the Settlement Class Representatives for settlement of their individual non-class claims and (ii) Defendants' share of payroll tax (*i.e.*, FICA, FUTA, SUTA, and Medicare) applicable to the Settlement Shares.

**B.  <u>Settlement Administrator Authority to Determine Eligibility for Settlement Shares.</u>**

1.     The Settlement Administrator has exclusive authority to determine each Participating Settlement Class Member's eligibility for a Settlement Share, to determine the amount of such Settlement Share according to the Plan of Allocation, and to resolve any disputes regarding the distribution of Settlement Shares.  The Settlement Administrator's  determination of each Participating Settlement Class Member's eligibility for, and amount of, a Settlement Share shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator, or other judicial body, including without limitation this Court.

2.     As part of the motion for Final Approval, Class Counsel will seek the Court's approval of: (a) the Settlement Administrator's administrative determinations concerning eligibility and Settlement Share Estimates; (b) payment of any administration fees and expenses associated with the administration of the Settlement Fund; and (c) once the Effective Date has occurred, payment of final Settlement Shares from the Net Settlement Fund to Participating Settlement Class Members.

3.     Payment pursuant to the Final Approval Order shall be final and conclusive against all Participating Settlement Class Members.  Participating Settlement Class Members who do not receive a Settlement Share because of the inability to locate them, who do not deposit their Settlement Share check, or who dispute the accuracy of their Settlement Share shall nevertheless be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Released Defendants' Persons with respect to any and all of the Released Claims.

4.     No Settlement Class Representative or Participating Settlement Class Member shall have any claim against the Settlement Representatives, Class Counsel or their

agents, the Settlement Administrator, any Released Defendants' Persons, or Defendants' Counsel or their agents, arising from the Settlement or any distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation approved by the Court, or any order of the Court; for the investment or distribution of the Settlement Fund or the Net Settlement Fund; for the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator; for the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

**C.** **Payment of Settlement Shares.**

1. Within thirty (30) days of the Effective Date, the Settlement Administrator shall begin to mail checks to each Participating Settlement Class Member in the amount of her Settlement Share as determined by the Settlement Administrator based on the Plan of Allocation. The face of each such check shall clearly state that it must be cashed within one hundred eighty (180) days of the date on the check. The Settlement Administrator shall, sixty (60) days prior to the check expiration date, send a reminder postcard to those Participating Settlement Class Members who have not yet deposited their Settlement Share checks.  The Settlement Administrator shall also attempt to contact those Participating Settlement Class Members via telephone or email.  Within three (3) business days of receipt of any undeliverable check returned by the United States Post Office, the Settlement Administrator shall perform an address trace for the Participating Settlement Class Member in question and re-send the Settlement Share check if a different address is found.

2. If, one hundred and eighty (180) days after initial distribution of Settlement Shares, there is a remaining balance of more than One Hundred and Fifty Thousand Dollars ($150,000) in the Net Settlement Fund, a second distribution will be made to those

Participating Settlement Class Members who deposited the check for their initial Settlement Share (the "Supplementary Shares"). The second distribution will be made in accordance with the Plan of Allocation. Checks for Supplementary Shares, if any, must also be deposited within one hundred and eighty (180) days of the date on the check. If, after all such efforts have been exhausted, there is a remaining balance of funds in the Net Settlement Amount, including any remaining balance in the Dispute Fund, ("Remainder"), the Remainder shall be paid to *cy pres* recipient(s) the National Women's Law Center and Equal Rights Advocates.

3.      No later than ten (10) days after the initial Settlement Share check void date or Supplementary Share check void date, whichever is later, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a declaration providing a final report on the disbursements of all Settlement Shares. The Settlement Administrator shall retain documentation and proof of the Settlement Shares for a period of seven (7) years. After this seven-year period, the Settlement Administrator shall destroy all copies of the Settlement Class List in its possession.

D.   **Other Settlement Administrator Obligations and Representations.**

1.      The Settlement Administrator shall (1) calculate Settlement Class Member Settlement Share Estimates, and provide such estimates and computer-readable data file supporting the proposed estimates to Ashenfelter & Ashmore LLP for independent review and verification; (1) mail and email the Notice and Settlement Share Estimates as provided in Part IV.C; (2) respond to questions from Settlement Class Members; (3) distribute Settlement Shares to Participating Settlement Class Members as described in Section IX; (4) maintain a toll-free number for communications with Settlement Class Members; (5) no later than seven (7) days after the Effective Date, distribute Service Awards to the Settlement Class Representatives; (6) distribute amounts approved by the Court as Class Counsel Attorneys' Fees and Class Counsel

Litigation Expenses as provided in Section X; (7) determine the employer's share of taxes owed and remit them to the taxing authorities, file required state and federal tax returns, and take all other actions required by Section VIII.E; (9) if needed, distribute funds to the *cy pres* recipients as described in Section VIII.C.2; (10) maintain a dedicated settlement website; and (11) perform any other duties necessary to carry out its responsibilities described in this Agreement.

2.      The Settlement Administrator shall serve as trustee of the Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund.

3.      The Settlement Administrator shall maintain the Settlement Class List in the strictest confidence and shall not disclose it except as required to administer the Settlement. The Settlement Administrator shall use Settlement Class Members' social security numbers only for the purpose of locating and identifying Settlement Class Members and shall keep all social security numbers strictly confidential.

4.      The Parties agree to cooperate with the Settlement Administrator in administering the terms of this Agreement.  The Parties agree to make reasonable efforts to control and minimize costs and expenses incurred in the administration of the Settlement.

5.      At least ten (10) days prior to the Final Approval Hearing, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a statement detailing its costs of administration, which Class Counsel shall file with the Court.

6.      The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

E.  **Tax Treatment.**

1.      **Qualified Tax Status and Tax Responsibilities**.

The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, and shall be administered by the Settlement Administrator under the Court's supervision.  Defendants shall hereby be deemed to have made an election under Section 468B of the Revenue Code to have the Fund treated as a "Qualified Settlement Fund." Defendants shall timely furnish statements to the Settlement Administrator that comply with Treasury Regulation § 1.468B-3(e) and shall attach a copy of the statements to their federal income tax return that are filed for the taxable year in which Defendants make the required payment(s) to the Settlement Fund.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

        2.      **Payment of Federal, State, and Local Taxes**.

        a.      The Parties recognize that the Settlement Shares and the Service Awards will be subject to applicable tax withholding and reporting.  The Settlement Administrator shall be responsible for withholding, remitting, and reporting each Participating Settlement Class Member's share of the payroll taxes from the Net Settlement Fund, and Defendants shall be responsible for the employers' share of payroll taxes as set forth in this Section.

        b.      All Settlement Shares and, if applicable, all Supplementary Shares, will be allocated as follows:

        i.      One-third (33.33%) of each Settlement Share (the "Wage Portion") is intended to settle each Participating Settlement Class Member's claims for unpaid wages.  Accordingly, the Wage Portion will be reduced by payroll tax withholding and

deductions, and the Settlement Administrator will issue to the Participating Settlement Class Member a Form W-2 with respect to the Wage Portion.

      ii.  One-third (33.33%) of each Settlement Share (the "Non-Wage Portion") is intended to settle each Participating Settlement Class Member's claims for all compensatory damages.  Accordingly, the Non-Wage Portion will not be reduced by payroll tax withholding and deductions; and, instead, the Settlement Administrator will issue to the Participating Settlement Class Member a Form 1099 with respect to the Non-Wage Portion.

      iii.  One-third (33.33%) of each Settlement Share (the "Interest Portion") is intended to settle the interest portion of each Participating Settlement Class Member's claims.  Accordingly, the Interest Portion will not be reduced by payroll tax withholding and deductions; and, instead, the Settlement Administrator will issue to the Participating Settlement Class Member a Form 1099 with respect to the Interest Portion.

      c.  The Wage Portion of each Settlement Share shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  All standard employee payroll deductions will be made for state and federal withholding taxes, including any other applicable payroll deductions owed by the Participating Settlement Class Members as a result of the Wage Portion, resulting in a net wage portion.  The Settlement Administrator will issue a separate check and IRS Form 1099 for the Non-Wage Portion.  Any Service Awards made pursuant to Section X.C.1 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

d.      In the event that it is subsequently determined by a tax authority that any Settlement Class Representative, Participating Settlement Class Member, or Class Counsel owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the payment recipient and the tax authorities, and that Defendants shall not be responsible for the payment of such taxes, including any interest and penalties.

e.      The Settlement Administrator shall inform Defendants in writing of the employers' share of all taxes or contributions required to be paid by Defendants. Defendants shall, within twenty (20) business days of such notice, remit all such monies to the Settlement Administrator ("Employer Payroll Tax Payment").

f.      The Settlement Administrator shall be solely responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities.

g.      Except with respect to the Employer Payroll Tax Payment, the Settlement Administrator shall be responsible for satisfying from the Settlement Fund any and all federal, state, and local employment and withholding taxes, including, without limitation, federal, and state income tax withholding, FICA, FUTA, SUTA, Medicare, and any state employment taxes.  The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, penalties, and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

h.      The Settlement Administrator shall have its own Employer Identification Number under Internal Revenue Service Form W-9 and shall use its own Employer Identification Number in calculating payroll withholdings for taxes and shall transmit the required employers' and employees' share of the withholdings to the appropriate state and federal tax authorities.

i.      All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), shall be paid out of the Settlement Fund, and reasonable expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses").  Further, Settlement Fund Taxes and Settlement Funds Tax Expenses shall be treated as a cost of the administration of the Settlement Fund.  The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this paragraph.

j.      Circular 230 Disclaimer.  EACH PARTY TO THIS SETTLEMENT AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS SETTLEMENT AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY")

ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS SETTLEMENT AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS SETTLEMENT AGREEMENT, (B) HAS NOT ENTERED INTO THIS SETTLEMENT AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS SETTLEMENT AGREEMENT.

## IX.    PLAN OF ALLOCATION

### A.  General

1.    The Settlement Administrator shall use the Class List and this Plan of Allocation to calculate the Settlement Shares that should be paid to each Settlement Class Member from the Net Settlement Fund.

2.    The Net Settlement Fund will be allocated 50% to claims related to the 360 Review and Manager Quartiling Processes ("Evaluation Process Claim") and 50% to claims related to the process for promotion from Vice President to Managing Director ("Promotion Process Claim").

### B.  Settlement Shares for Evaluation Process Claim

1.    Settlement Shares for the Evaluation Process Claim will be calculated based on (i) the number of weeks a Participating Settlement Class Member actually worked in a revenue-producing position in the Applicable Divisions (a "Class Position") as an Associate or Vice-President during the Settlement Class Period, multiplied by (ii) the Participating Settlement Class Member's base salary applicable to those weeks.

2.    For those weeks that a Participating Settlement Class Member actually worked in a Class Position as an Associate or Vice-President during the Settlement Class Period on or after January 1, 2016, the result of the calculation in Section IX.B.1 shall be reduced by multiplying such result by 0.85.  This reduction reflects that the Court granted summary judgment to Goldman Sachs on the Evaluation Process Claim for the time period after December 31, 2015, but that this grant of summary judgment would have been subject to appeal after trial.  (Mar. 17, 2022 Order (ECF No. 1337) at 57.)

3.    The results of the calculations in Sections IX.B.1 and IX.B.2 will be the numerator ("X") in determining the fraction representing each Participating Settlement Class

Member's Settlement Share for the Evaluation Process Claim.  The denominator for the fraction representing the Participating Settlement Class Member's Settlement Share for the Evaluation Process Claim ("Y") will be the aggregate amount of all "X" values for all Participating Settlement Class Members.

### C.  Settlement Shares for Promotion Process Claim

Settlement Shares for the Promotion Process Claim will be calculated based on (i) the number of weeks a Participating Settlement Class Member actually worked as a Vice President in a Class Position during the Settlement Class Period, up to a maximum of 250 weeks; plus (ii) up to an additional 50 weeks for weeks worked by such Vice President in a Class Position in each year of a Managing Director promotion cycle during the Settlement Class Period (e.g., 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2011, 2012, 2013, 2015, 2017, 2019, and 2021), up to a maximum of two promotion cycles (i.e., up to a total of 100 bonus weeks).  The result of this calculation will be the numerator for the Participating Settlement Class Member's share for the Promotion Process Claim, with the denominator being the sum of all weeks calculated in (i) and (ii) above across the Vice President Participating Settlement Class Members.

### D.  Total Settlement Shares

1.     Each Settlement Class Member's Settlement Share will be the result of (i) applying the calculations above to the portion of the Net Settlement Fund allocated to the Evaluation Process Claim and/or the Promotion Process Claim; and (ii) deducting employee-side tax withholdings or other deductions described herein.

2.     If a Settlement Class Member's Settlement Share, is less than $3,000, prior to applicable deductions, her Settlement Share will be increased to $3,000, prior to applicable deductions.

### E. **Supplementary Shares, If Any**

The amount of each Supplementary Share will be calculated by dividing the amount of the Settlement Share deposited by each Participating Settlement Class Members eligible for a Supplementary Share by the total amount of all deposited Settlement Shares, and multiplying the resulting fraction by the remaining balance in the Net Settlement Fund.

### X. **ATTORNEYS' FEES, EXPENSES OF CLASS COUNSEL, AND ADMINISTRATIVE EXPENSES**

### A. **Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses.**

1. No more than thirty (30) days after the Initial Mailing Date, Class Counsel shall petition the Court for an award of Class Counsel Attorneys' Fees in a total amount not to exceed one-third of the Settlement Amount, (*i.e.*, $71,665,000), and Class Counsel Litigation Expenses not to exceed $7,500,000 that shall fully compensate Class Counsel for the attorneys' fees and litigation costs incurred at any time in connection with the Action, including any applicable multiplier. Class Counsel will be issued an IRS Form 1099 for the attorneys' fees and costs detailed in this Section and shall be solely and legally responsible for paying all applicable taxes on the payments made pursuant to this Section. Should the Court award a lesser amount of fees or costs, the difference between this amount and the amount awarded for fees and costs will be added to the Net Settlement Fund. Goldman Sachs shall have no responsibility or liability for the allocation of Class Counsel Fees and Costs among or between Class Counsel. Any dispute among Class Counsel regarding allocation of fees among them shall have no effect on the Settlement.

2. An award of Class Counsel Attorneys' Fees or Class Counsel Litigation Expenses is not a necessary term of this Settlement Agreement and is not a condition of the Settlement. The Court may consider and rule upon the fairness, reasonableness and adequacy of

the Settlement independent of any consideration of Class Counsel's application for an award of

Class Counsel Attorneys' Fees or Class Counsel Litigation Expenses, and any decision by the

Court not to approve such application, in whole or in part, shall have no effect on the Settlement.

Neither the Settlement Class Representatives nor Class Counsel may cancel or terminate the

Settlement based on this Court's or any appellate court's ruling with respect to Class Counsel's

Attorneys' Fees or Class Counsel Litigation Expenses.

3.      The Parties agree that any Class Counsel's Attorneys' Fees and Class

Counsel Litigation Expenses awarded in this Action will be paid from the Settlement Fund.

Neither Class Counsel nor any other attorney shall be entitled to fees or costs for work performed

in this Action other than as provided in this Settlement Agreement.

4.      The outcome of any proceeding related to Class Counsel's application for

attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final

Approval ruling.  The Court's approval of Class Counsel's application for attorneys' fees and

costs is not a material term of this Agreement.

5.      Defendants and their counsel agree not to oppose Class Counsel's petition

for an award of Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses that is

consistent with this Section.

**B.  <u>Timing of Attorneys' Fee and Expense Payment.</u>**

Any Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses payable to

Class Counsel shall be distributed from the Settlement Fund pursuant to the Settlement

Agreement by the Settlement Administrator.  The Settlement Administrator shall distribute the

Court-ordered Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses within

twelve (12) days after the Effective Date.  Defendants shall have no liability or other

responsibility for the allocation of such Attorneys' Fees and Expenses among the Class Counsel, which decision shall be made by Class Counsel.

**C.  Service Award.**

1. No more than thirty (30) days after the Initial Mailing Date, Class Counsel will seek, and Defendants will not oppose, Court approval for Service Awards of $250,000 to each of the Settlement Class Representatives to be paid from the Settlement Fund for Settlement Class Representatives' participation in the prosecution and settlement of this case.  Should the Court award any Settlement Class Representative a lesser amount for Service Awards, the difference between the amount sought and the amount awarded for Service Awards will be added to the Net Settlement Fund.

2. Defendants agree not to oppose the Court-approved Service Awards up to the above-listed amounts.  The Service Awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Settlement Class Representatives' Settlement Shares, and are subject to Court approval.

3. The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval ruling.  The Court's approval of the application for Service Awards is not a material term of this Agreement.

**D.  Settlement Administration Costs.**

The Settlement Administrator's reasonable administration costs including, but not limited to, costs related to Notice, claims processing, legal advice obtained by the Settlement Administrator relating to the establishment of the Qualified Settlement Fund, tax treatment and tax reporting of awards to Settlement Class Members, and preparation of the Settlement Fund's tax returns and payment of taxes, providing necessary reports and declarations, and other duties and

responsibilities set forth herein to process this Settlement Agreement, and as requested by the

Parties ("Settlement Administration Costs") will be paid from the Settlement Fund, including, if

necessary and as reasonable, any such costs in excess of the amount represented by the

Settlement Administrator as being the estimated maximum costs necessary to administer the

Settlement.  The Settlement Administration Costs are estimated to be approximately $60,000

based upon the receipt of quotes from the Settlement Administrator.  To the extent actual

Settlement Administration Costs are greater than $60,000, such excess amount will be deducted

from the Settlement Fund, subject to the Court's approval.  Settlement Administration Costs

allocated but not paid to the Settlement Administrator ("Unused Settlement Administration

Costs") will be returned to the Settlement Fund, and treated as part of the Remainder pursuant to

Section VIII.C.2.

## XI.     RIGHT OF REVOCATION; TERMINATION

A.     Defendants shall have the right (but not obligation) to terminate this Settlement if

a particular confidential threshold is reached with respect to Settlement Class Members who

submit Opt-Out Statements.  Settlement Class Representatives and Defendants have entered into

a separate Supplemental Agreement (the "Supplemental Agreement") describing this threshold,

which shall be binding as if set forth herein.  The Supplemental Agreement will be filed under

seal with the Court.

B.     The Settlement Class Representatives and the Defendants, through their

respective counsel, shall each have the right to terminate the Settlement and this Stipulation, as

to themselves, by providing written notice of their election to do so ("Termination Notice") to all

other Parties hereto within thirty (30) calendar days of: (a) the Court's Final order refusing to

enter the Preliminary Approval Order in any material respect; (b) the Court's Final order refusing

to approve this Settlement or any material part of it; (c) the Court's Final order refusing to enter

the Judgment in any material respect; or (d) the date on which the Judgment is, by Final order, modified or reversed by a court of appeal or any higher court in any material respect.

C.     If Defendants exercise their option to terminate the Settlement pursuant to Section XI.A, if the Effective Date does not occur, or if this Settlement Agreement is not approved by the Court, is terminated or fails to become effective in accordance with its material terms (or, if following approval or Judgment by this Court, such approval or Judgment is reversed or materially modified), the Parties shall be restored to their respective positions that existed in this Action prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement (including all Exhibits) shall have no force or effect and are rendered nullities.  Statements, discussions, or materials prepared, exchanged, issued, or used during the negotiation of this Settlement shall not be used in this Action or in any proceeding for any purpose; any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the Litigation will resume as if there had been no Settlement Agreement.  In this event, the Parties will retain all rights, claims, objections, affirmative defenses, and defenses as to class certification and otherwise as to any of the allegations and claims asserted in and defenses to this Action.  This Settlement Agreement will not be considered an admission of liability by Defendants nor, in the event it is not finally approved, represent a cap on damages available to the Settlement Class Representatives or any Settlement Class Member, and the Parties agree not to take a position to the contrary in the Litigation.

D.     The Settlement Administrator shall have the obligation to return the entire Settlement Fund (including all income and/or interest generated, less reasonable settlement administration costs actually incurred) to Defendants within ten (10) days in the event that the

Effective Date does not occur or the Settlement Agreement is otherwise terminated or rendered null and void.

## XII.   CONFIDENTIALITY

### A.  Confidentiality Regarding This Settlement.

Prior to the time the Settlement Class Representatives file their Preliminary Approval Motion, Class Counsel and the Settlement Class Representatives and Defendants and Defendants' Counsel agree to keep the existence and terms of the Settlement confidential.

### B.  Settlement Communications.

The Parties agree that any statements, discussions, communications, or any materials prepared, exchanged, issued, or used during mediation and the negotiation of this Settlement Agreement will not be admissible in any forum regarding any issue or subject of this case or any other case.   This Settlement Agreement will not be admissible in any forum regarding any issue or subject of this case or any other case, but will be admissible for purposes of its enforcement by any Party.

## XIII.   GOVERNING LAW

### A.  Choice of Law. The construction, interpretation, operation, effect, and validity of this Settlement and all other documents necessary to effectuate the Settlement, shall be governed by the laws of the State of New York, without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

### B.  Entire Agreement. This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the Parties with respect to the Settlement. This Settlement Agreement does not impose any obligations on the Parties beyond the terms and conditions stated herein.  This Settlement Agreement shall not prevent or preclude Defendants from revising their employment practices and policies or

taking other personnel actions during the term of this Settlement Agreement.

**C.  Consistent with Other Legal Obligations.**  Nothing in this Settlement will be construed

as interfering with Defendants' obligations to determine the nature, conduct,

organization, or structure of their businesses as may be required by law except as

necessary to give full force and effect to the provisions of this Settlement and its

exhibits.  This Settlement Agreement and the terms herein are subject to Defendants'

other legal obligations, and nothing herein shall obligate Defendants to take any

action that is contrary to said obligations.

## XIV.  OTHER CONDITIONS OF SETTLEMENT

**A.  Exhibits.**

The Exhibits are material and integral parts hereof of this Settlement Agreement and are

hereby incorporated by reference as though fully set forth herein.  Notwithstanding the

foregoing, in the event that there exists a conflict or inconsistency between the terms of this

Settlement Agreement and the terms of any Exhibit attached hereto, the terms of the Settlement

Agreement shall prevail.

**B.  Notices to Counsel.**

All notices to counsel required or desired to be given under this Settlement Agreement

shall be in writing and sent via email to counsel for the respective Parties.  Specifically, such

notices shall be emailed to Adam T. Klein and Cara E. Greene of Outten & Golden LLP, and

Kelly M. Dermody and Anne B. Shaver of Lieff Cabraser Heimann & Bernstein, LLP for the

Settlement Class and Settlement Class Representatives, and to Robert J. Giuffra, Jr. and Amanda

F. Davidoff of Sullivan & Cromwell LLP and to Lynne Hermle and Erin Connell of Orrick

Sutcliffe & Herrington LLP for Defendants, at their respective email addresses set forth below.

**C.  Failure to Insist on Strict Compliance.**

-44-

The failure of any Party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall not be construed to be a waiver with respect to any prior or subsequent breach of such terms and conditions.

**D.  Modifications to This Agreement.**

This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto (or their successors-in-interest).

**E.  Extension of Deadlines.**

The Settlement Class Representatives and Defendants recognize that from time to time unforeseen events may cause delays in the accomplishment of objectives, no matter how well-intentioned and diligent the Parties may be.  Accordingly, with regard to the provisions of this Settlement Agreement that require the Parties to take certain actions within specified time periods (other than deadlines set forth in the Preliminary Approval Order), the Parties agree that Court approval will not be required for reasonable extensions of deadlines that do not impact any Court-ordered deadlines.  In the event that any Party determines in good faith that an action required by this Settlement Agreement cannot be taken within the specified time period, counsel for that Party shall promptly notify counsel for the other Party that it anticipates a delay, the reasons for the delay, and a proposed alternative deadline.

**F.  No Drafting Presumption.**

All Parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one Party than another.

**G.  Materiality.**

Except as otherwise stated herein, each substantive term of this Agreement is material

and has been relied upon by the Parties in entering into this Agreement.

**H.** **<u>Interpretation of Terms.</u>**

Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

**I.** **<u>Severability.</u>**

If any portion of this Settlement Agreement, except for any part of Section VII and Section VIII.A., is judged to be unenforceable, the remainder of the Agreement shall continue to be valid and enforceable.

**J.** **<u>Integration.</u>**

This Settlement Agreement and the Exhibits attached hereto contain the entire agreement between the Parties relating to any and all matters addressed in the Settlement Agreement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, with respect to such matters are of no force or effect.

**K.** **<u>Paragraph and Section Headings.</u>**

Paragraph and section headings are for reference only and do not create substantive rights or obligations.

**L.** **<u>Counterparts.</u>**

This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

**M.** **<u>Authority</u>**

All counsel and any other natural person executing this Settlement Agreement, or any related Settlement documents, warrant and represent that they have the full authority to do so and

that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

### N. **Agreement Binding.**

As of the date on which Class Counsel and Defendants' Counsel execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless it is terminated or revoked as set forth in Section XI, or unless the conditions precedent to the Effective Date are not met or do not occur.  This Settlement Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors, and assignees; provided, however, that this Settlement Agreement shall not inure to the benefit of any third party.

### O. **Dispute Resolution**

In the event of any dispute or disagreement with respect to the meaning, effect, or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the Parties agree that such dispute will resolved exclusively through application to the Court.

### P. **No Third-Party Beneficiaries.**

Settlement Class Members will not be deemed third party beneficiaries of the Settlement Agreement and will have no individual right to enforce its terms; rather, only Defendants and the Settlement Class Representatives, through their respective Counsel, may seek to enforce the terms of the Settlement. Class Counsel and Defendants' counsel shall meet and confer before the commencement of any enforcement proceedings.

**Q. Stay of Litigation**

Upon the Court's entry of the Preliminary Approval Order, all proceedings in the Action shall be stayed, except to effectuate the terms of this Agreement.

**SO AGREED:**

**Approved As To Form And Content By Counsel**:

Dated: May 8, 2023

By:_____
        Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Cara E. Greene
685 3rd Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 207-0043
Facsimile: (646) 509-2060

Dated: May 8, 2023

By:_____
        Kelly M. Dermody

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Kelly M. Dermody
Anne B. Shaver
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Class Counsel and Counsel for Settlement Class Representatives*

Dated: May 8, 2023

By: _____
    Robert J. Giuffra, Jr.

**SULLIVAN & CROMWELL LLP**
Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

Amanda Flug Davidoff
Jeffrey B. Wall (admitted *pro hac vice*)
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330

Dated: May 8, 2023

By: _____
    Erin M. Connell

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Lynne C. Hermle (admitted pro hac vice)
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400

Erin M. Connell (admitted pro hac vice)
Kathryn G. Mantoan (admitted pro hac vice)
405 Howard Street
San Francisco, CA  94105
Telephone: (415) 773-5700

Marc R. Shapiro
51 West 52nd Street
New York, New York  10019
Telephone: (212) 506-5000

# Exhibit 1

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
*Chen-Oster, et al. v. Goldman, Sachs & Co., et al.*, No. 1:10-cv-06950-AT-RWL

# COURT-APPROVED NOTICE
# SETTLEMENT AND FINAL APPROVAL HEARING

*This is a court-authorized notice.  This is not a solicitation from a lawyer.*

On [date], 2023, the Honorable Analisa Torres of the United States District Court for the Southern District of New York granted preliminary approval of a proposed settlement set forth in the Parties' Stipulation and Settlement Agreement ("Settlement" or "Settlement Agreement") concerning this gender discrimination class action lawsuit brought against Goldman Sachs.

- This Notice is not an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted by either side in this litigation.  Goldman Sachs denies the claims and material allegations in the lawsuit.  The sole purpose of this Notice is to inform you of the proposed Settlement and your right to remain in or exclude yourself from it, so that you can make an informed decision.

- The proposed Settlement provides $215,000,000 to compensate individuals, and provides for adjustments to Goldman Sachs's business practices that address the claims in this litigation.  **Individuals eligible to receive money from the Settlement ("Settlement Class Members") are persons who are in one or both of the two groups described below**:

  o Evaluation Processes Group:  All women who held a revenue-producing Associate or Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions, or any of their sucessor groupings, in New York at any time from July 7, 2002 to March 28, 2023 or elsewhere in the United States at any time from September 10, 2004 through March 28, 2023, and who (a) were subject to Goldman Sachs's performance review process, known as the 360 Review, or (b) were subject to Goldman Sachs's comparative performance ranking process, known as Manager Quartiling; and

  o Promotion Group:  All women who held a revenue-producing Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions, or any of their sucessor groupings, in New York at any time from July 7, 2002 to March 28, 2023 or elsewhere in the in the United States at any time from September 10, 2004 to March 28, 2023.

- Associates or Vice Presidents (i) whose claims were compelled to arbitration by the Court's September 2021 Order and who, to the extent applicable, did not opt out of the obligation to arbitrate claims in an equity award agreement after receiving notice of the opportunity to do so; or (ii) who previously elected to exclude themselves from this class action, are not Settlement Class Members (together, the "Previously Excluded Class Members").

- Please read this Notice carefully. Your legal rights may be affected whether you respond to this notice or not, and you have a choice to make now as to whether to remain in the Class or exclude yourself from it.

This Notice only summarizes the Settlement.  For more information, visit the settlement website at https://www.goldmangendersettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING, REMAIN IN THE CLASS** | If you do nothing, you will be bound by the terms of the Settlement, and you will receive a payment from the Settlement.  You do not need to submit any forms or paperwork to get the payment. |

| | |
|---|---|
| **EXCLUDE YOURSELF FROM SETTLEMENT** | If you wish to exclude yourself from the Settlement Class for any reason, including if you have brought or wish to bring your own lawsuit against Goldman Sachs for the claims covered by this class action, you may exclude yourself by following the directions in Section 13, below.<br><br>If you ask to be excluded from the Settlement Class, you will: (1) retain the right to file your own action related to the issues in the case, subject to any defenses Goldman Sachs may have; (2) not be bound the terms of the Settlement; and (3) not receive a payment from the Settlement. |
| **OBJECT TO SETTLEMENT** | You may write to the Court to object to the proposed Settlement if you believe it is not fair and reasonable.  In order to object, you must follow the directions in Section 16, below. You cannot both exclude yourself from the Settlement and object to the Settlement. |

This Notice explains the lawsuit, the Settlement, your legal rights, and the benefits you could receive under the Settlement.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ............................................................................................................. **1**
    1.    Why did I get this Notice? ............................................................................................ 1
    2.    What is the Lawsuit about? .......................................................................................... 1
    3.    Why is this a class action, and who is involved? ....................................................... 1
    4.    Why is there a Settlement? ........................................................................................... 2

**THE SETTLEMENT BENEFITS – WHAT YOU GET FROM THE SETTLEMENT** ................................... **2**
    5.    What does the Settlement provide? .............................................................................. 2
    6.    How will my share of the Settlement be calculated? ................................................... 2
    7.    How will my payment be treated for tax purposes? ..................................................... 3
    8.    When will I get my payment? ...................................................................................... 3

**RELEASE AGREEMENT** ............................................................................................................ **4**
    9.    What am I giving up to get a payment? ........................................................................ 4

**THE LAWYERS REPRESENTING YOU** ........................................................................................ **4**
    10.    Who represents the Settlement Class? ......................................................................... 4
    11.    Should I get my own lawyer? ...................................................................................... 4
    12.    How will the lawyers be paid? ..................................................................................... 4

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ....................................................................... **5**
    13.    How do I exclude myself from the Settlement? ........................................................... 5
    14.    If I don't exclude myself, can I sue Goldman Sachs for the same claims later? ......... 5
    15.    If I exclude myself, can I get money from this case? .................................................. 5

**OBJECTING TO THE SETTLEMENT** ............................................................................................ **5**
    16.    How do I tell the Court if I do not like something about the Settlement? .................... 5
    17.    What is the difference between objecting and excluding myself? ............................... 6

**IF YOU DO NOTHING** ............................................................................................................. **6**
    18.    What happens if I do nothing at all? ............................................................................ 6

**YOUR PRIVACY** .................................................................................................................... **6**
    19.    Will anyone know if I am Class Member? ................................................................... 6

**THE COURT'S FAIRNESS HEARING** .......................................................................................... **6**
    20.    When and where will the Court decide whether to approve the Settlement? ............... 6

**GETTING MORE INFORMATION** ............................................................................................... **7**
    21.    Are more details about the lawsuit available? ............................................................. 7

## BASIC INFORMATION

### 1.   Why did I get this Notice?

The purpose of this Notice is to inform you that the parties in *Chen-Oster, et al. v. Goldman, Sachs & Co., et al.*, No. 1:10-cv-06950-AT-RWL, pending in the United States District Court for the Southern District of New York ("Goldman Sachs Gender Discrimination Lawsuit" or "Lawsuit"), have agreed to the Settlement, subject to Court approval. You have received this Notice because Goldman Sachs's records show that you are a Settlement Class Member.  Settlement Class Members are:

- All women who held a revenue-producing Associate or Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions, or any of their sucessor groupings in New York at any time from July 7, 2002 to March 28, 2023 or elsewhere in the United States from at any time from September 10, 2004 through March 28, 2023, and who (a) were subject to Goldman Sachs's performance review process, known as the 360 Review; or (b) were subject to Goldman Sachs's comparative performance ranking process, known as Manager Quartiling; and

- All women who held a revenue-producing Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions, or any of their sucessor groupings, in New York at any time from July 7, 2002 to March 28, 2023 or elsewhere in the in the United States at any time from September 10, 2004 to March 28, 2023.

Associates or Vice Presidents (i) whose claims were compelled to arbitration by the Court's September 2021 arbitration Order and who, to the extent applicable, did not opt out of the obligation to arbitrate claims in an equity award agreement after receiving notice of the opportunity to do so; or (ii) who previously elected to exclude themselves from this class action, are not Settlement Class Members (together, the "Previously Excluded Class Members").

**The Court authorized that you be sent this Notice because Settlement Class Members have a right to know that the Court has granted preliminary approval of the proposed Settlement and to be informed about your options before the Court decides whether to grant final approval of the Settlement.  If the Court grants final approval of the Settlement, and after any objections and appeals are resolved, a third-party administrator appointed by the Court (the "Settlement Administrator") will make settlement payments to Settlement Class Members.**

### 2.   What is this Lawsuit about?

The Lawsuit  alleges that Goldman Sachs discriminated on the basis of gender against female Associates and Vice Presidents in the Investment Banking, Investment Management, and Securities Divisions in pay, promotions, and performance reviews, including that it maintained policies which caused an adverse impact on the pay and promotions of these female Associates and Vice-Presidents; that Goldman Sachs maintained a pattern and practice of intentional discrimination against these female Associates and Vice Presidents in violation of federal and local anti-discrimination laws, where applicable; and that Goldman Sachs's culture adversely impacted pay and promotions processes as applied to female Associates and Vice Presidents in the class.  Goldman Sachs denies all of these allegations, and denies that it violated any laws or engaged in any wrongdoing.

To obtain more information about the claims in this lawsuit, you can view the Complaint and other court documents in this case at https://www.goldmangendersettlement.com.

### 3.   Why is this a class action, and who is involved?

In a class action lawsuit, one or more people called "Plaintiffs" or "Class Representatives" sue on behalf of other people who have the same claims.  The people with the same claims form the "Class" and are called "Class Members."  The attorneys representing the Class are called "Class Counsel."  In a class action, the court resolves the issues for all Class Members, except for those who exclude themselves from the Class.  Each

Class Member is bound by the determination or judgment entered in the case, whether the Class wins or loses, and may not file her own lawsuit over the same claims that were decided in the class action.

The Plaintiffs and Court-appointed Settlement Class Representatives in this Lawsuit are H. Cristina Chen-Oster, Shanna Orlich, Allison Gamba and Mary De Luis.

| 4.   Why is there a Settlement? |
|---|

Plaintiffs and Goldman Sachs both believe they would have prevailed if the case went to trial, and the Court has not decided that either Plaintiffs or Goldman Sachs won or lost. Instead, both sides agreed to this Settlement, which is a compromise.  The parties vigorously negotiated the Settlement terms and settled the case with the help of an independent mediator. As a result of the Settlement, the Class will avoid the delays and uncertainties associated with a trial, and you and other Settlement Class Members receive a payment. Plaintiffs and Class Counsel believe that the Settlement is fair, reasonable, and adequate.

## THE SETTLEMENT BENEFITS – WHAT YOU GET FROM THE SETTLEMENT

| 5.   What does the Settlement provide? |
|---|

The Settlement provides for payment of money and for programmatic changes to Goldman Sachs's business practices.

*First*, Goldman Sachs has agreed to pay $215,000,000 for this Settlement, which covers payments to you and other Settlement Class Members; Court-approved service payments to the Settlement Class Representatives in recognition of their service to Settlement Class Members; Court-approved payment of Class Counsel's attorneys' fees and expenses; and payment of the Settlement Administrator's costs of administering the Settlement.

*Second*, Goldman Sachs has agreed to implement certain adjustments to its business practices for a period of three years, including (i) hiring an independent expert to evaluate its Performance Evaluation and Promotion Processes to help ensure that they are appropriately job-related; (ii) hiring an independent compensation expert to study gender pay equity; and (iii) to taking appropriate steps to address gender-based pay gaps to the extent not explained by performance factors or other business rationales.

*Third*, if you are not a Previously Excluded Class Member and are subject to an arbitration agreement with Goldman Sachs, Goldman Sachs has agreed that, solely for purposes of participation in this Settlement and no other purpose, it will not enforce that arbitration agreement against you, in order to allow you the opportunity to participate in this Settlement as a Settlement Class Member.

| 6.   How will my share of the Settlement be calculated? |
|---|

Only Settlement Class Members who do not exclude themselves from the Settlement will receive a payment from the Settlement Fund.

The portion of the Settlement Fund covering payments to Settlement Class Members will be allocated 50% to claims related to the Evaluation Processes ("Evaluation Process Claim") and 50% to claims related to the Promotion Process (Promotion Process Claim").

Settlement Shares for the Evaluation Process Claim will be calculated based on (i) the number of weeks a Settlement Class Member actually worked in a revenue-producing position in the Applicable Divisions (a "Class Position") as an Associate or Vice-President during the Settlement Class Period, multiplied by (ii) the Settlement Class Member's base salary applicable to those work-weeks.  For those weeks that a Participating Settlement Class Member actually worked in a Class Position as an Associate or Vice-President during the Settlement Class Period on or after January 1, 2016, the result of the foregoing calculation shall be reduced by multiplying such result by 0.85.  This reduction reflects that the Court granted summary judgment to Goldman

Sachs on the Evaluation Process Claim for the time period after December 31, 2015, but that this grant of summary judgment would have been subject to appeal after trial.

The result of these calculations will be the numerator ("X") in determining the fraction representing each Settlement Class Member's Settlement Share for the Evaluation Process Claim. The denominator for the fraction representing the Settlement Class Member's Settlement Share for the Evaluation Process Claim ("Y") will be the aggregate amount of all "X" values for all Settlement Class Members.

Settlement Shares for the Promotion Process Claim will be calculated based on (i) the number of weeks a Settlement Class Member actually worked as a Vice President in a Class Position during the Settlement Class Period, up to a maximum of 250 weeks; plus (ii) up to an additional 50 weeks for weeks worked by such Vice President in a Class Position in each year of a Managing Director promotion cycle during the Settlement Class Period (e.g., 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2011, 2012, 2013, 2015, 2017, 2019, and 2021), up to a maximum of two promotion cycles (*i.e.*, up to a total of 100 bonus weeks). The result of this calculation will be the numerator for the Settlement Class Member's share for the Promotion Process Claim, with the denominator being the sum of all weeks calculated in (i) and (ii) above across the Vice President Settlement Class Members.

Each Settlement Class Member's Settlement Share will be the result of (i) applying the calculations above to the portion of the Settlement Fund allocated to the Evaluation Process Claim and/or the Promotion Process Claim; and (ii) deducting employee-side tax withholdings or other deductions described herein.

If a Settlement Class Member's Settlement Share is less than $3,000, prior to applicable deductions, her Settlement Share will be increased to $3,000, prior to applicable deductions.

### 7.   How will my payment be treated for tax purposes?

One-third (33.33%) of each Settlement Class Member's individual settlement payment will be considered wages. Accordingly, for this portion (33.33%), normal payroll taxes and withholdings will be deducted from your settlement payment pursuant to city, state and federal law, and the Settlement Administrator will issue a W-2 Form to you for this portion of your individual settlement payment. One-third (33.33%) of each Settlement Class Member's individual settlement payment is intended to settle claims for all compensatory damages, and the remaining one-third (33.33%) is intended to settle claims for interest owed to each Settlement Class Member. Accordingly, these portions (66.67%) will not be reduced by payroll tax withholding or deductions, and the Settlement Administrator will issue Forms 1099 to you for these portions of your individual settlement payment.

***This Notice does not constitute tax advice.  To the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended to be used, and cannot be used or relied on, by any person, including for the purpose of avoiding any tax liability or penalties.***

### 8.   When will I get my payment?

The terms and conditions of this Settlement are subject to Court approval. The Court will hold a hearing on **[date], 2023** to decide whether to grant final approval to the Settlement (the "Final Approval Hearing"). If the Court approves the Settlement, and there are no appeals, it is estimated that checks will be mailed around **[date], 2023**. However, because it is always possible for there to be unexpected delays or appeals, payments may be delayed by a year or more, or an appeals court may determine that the payments cannot be made. If the Settlement does not receive final approval from the Court (after any appeals), no payments will be distributed to any Settlement Class Members, the entire Settlement will be void and unenforceable, and the Parties shall be restored to their respective positions that existed in the Lawsuit prior to entering into the Settlement Agreement.

Further information about the Settlement will be provided at https://www.goldmangendersettlement.com.  If your contact information changes, please submit your new contact information to the Settlement Administrator by mail or e-mail at the address provided in Section 21, below.

## RELEASE AGREEMENT

### 9.   What am I giving up to get a payment?

If the Court grants final approval of the Settlement and you do not exclude yourself from the Settlement, you will give up ("release") your right to bring a lawsuit against Goldman Sachs for the claims resolved by this Settlement.  This includes claims for alleged intentional disparate treatment discrimination or disparate impact discrimination on the basis of gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; NYCHRL, New York City Administrative Code § 8-107 et seq.; or any other law, arising out of (i) Goldman Sachs's 360 Review Process, Manager Quartiling Process, or process for promotion from Vice President to Managing Director; (ii) Goldman Sachs's procedures for determining compensation; (iii) an alleged pattern and practice of intentional discrimination related to Goldman Sachs's performance evaluation and promotion practices; and (iv) Goldman Sachs's corporate culture, only to the extent it relates to Goldman Sachs's compensation, evaluation, and promotion decisions.

This release includes giving up any remedy or recovery related to or arising from the claims described in the paragraph above, including without limitation, back pay, front pay, compensatory damages, emotional distress damages, injunctive or other equitable relief, interest, punitive damages, and attorneys' fees.  The release does not include claims relating to accounts held by Goldman Sachs including but not limited to custodial accounts or vested retirement benefits; *e.g.*, a Marcus Savings or Marcus Invest account, investment funds you hold at Goldman Sachs, or your 401(k) account.

**Unless you exclude yourself from the Settlement, you will be covered by this release.**

## THE LAWYERS REPRESENTING YOU

### 10. Who represents the Settlement Class?

The Court appointed the following law firms as Class Counsel to represent all Settlement Class Members.  If you have questions about the Settlement, you can contact Class Counsel here:

| **LIEFF CABRASER HEIMANN & BERNSTEIN LLP** | **OUTTEN & GOLDEN LLP** |
|---|---|
| 275 Battery Street, 29th Floor | 685 Third Avenue, 25th Floor |
| San Francisco, CA 94111 | New York, NY 10017 |
| (415) 956-1000 | (212) 245-1000 |
| www.lieffcabraser.com | www.outtengolden.com |

Class Counsel can also be reached by e-mail at: gsgendersettlement@outtengolden.com

### 11. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel are working on your behalf.  If you want your own lawyer, you may hire one, but you will be responsible for any payment for that lawyer's services.

### 12. How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $71,665,000 (one-third of the Settlement Amount) for attorneys' fees, and up to $7,500,000 in litigation expenses, to compensate Class Counsel for their work in connection with the case.  The Court will decide how much to pay Class Counsel.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 13. How do I exclude myself from the Settlement?

If you ask to be excluded from the Settlement, you will not get any Settlement payment, and you cannot object to the Settlement.  You will not be legally bound by anything that has happened in the Lawsuit, and the Settlement would not affect any right you might have, if any, to pursue legal action against Goldman Sachs on your own.

You may exclude yourself from the Settlement by "opting out" **no later than forty-five (45) days** after the date this Notice was first mailed, *i.e.*, by **[DATE]** (the "Opt-Out Deadline").

In order to exclude yourself from the Settlement, you must mail or email the Settlement Administrator a written, signed statement that you are opting out of the Settlement (an "Opt-Out Statement").  The Opt-Out Statement must contain your full name, address, and telephone number in order to be valid.  The Opt-Out Statement should include the statement: "I elect to exclude myself from the Settlement in the *Goldman Sachs Gender Class Action*.  I understand that I will not be entitled to any money under the Settlement."  The Opt-Out Statement must be personally signed in ink and sent in the mail to the Settlement Administrator or scanned and attached to an email to the Settlement Administrator.  No opt-out request may be made on behalf of a group of Settlement Class Members.

If you do not submit a timely and valid Opt-Out Statement, you will be deemed a Settlement Class Member and will be bound by all terms of the Settlement Agreement if the Court grants final approval of the Settlement.  An Opt-Out Statement sent by mail must be postmarked by the Opt-Out Deadline.  If you submit the Opt-Out Statement via email, it must be sent to the Settlement Administrator by the Opt-Out Deadline. The Settlement Administrator's contact information can be found in Section  21.

You cannot exclude yourself (opt out) by telephone.

### 14. If I don't exclude myself, can I sue Goldman Sachs for the same claims later?

No.  If you do not send an Opt-Out Statement to the Settlement Administrator, then you will remain a Settlement Class Member and you will give up the right to sue Goldman Sachs for the claims related to this case.

If you have a pending lawsuit against Goldman Sachs or are contemplating bringing a claim of your own, speak to the lawyer representing you immediately, because you may need to opt-out from the Settlement Class if you wish to continue your own lawsuit.

### 15. If I exclude myself, can I get money from this case?

No.  If you send an Opt-Out Statement, you will not receive money.  You will keep any right you may have to bring an individual action about the same legal claims in the Class action lawsuit should you want to do so.

## OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court if I do not like something about the Settlement?

If you are a Settlement Class Member, you can object to the Settlement.

The Court cannot order a larger or smaller or different settlement; it can only approve or deny the proposed Settlement.  If the Court denies approval of the Settlement, there will be no settlement at this time, no payments will be made to Settlement Class Members, and the Lawsuit will continue.

Any objection to the Settlement must be in writing. Your statement describing your objection must contain your full name, address, and telephone number, and must be physically signed by you in ink.  Your statement must explain the grounds for your objection, and the facts or law, if any, supporting the objection.  To be

considered, the statement must be mailed or emailed to the Settlement Administrator no later than forty-five (45) days after the date this Notice was first mailed, *i.e.*, by **[DATE]** (the "Objection Deadline").

If you send a written objection, you may appear before the Court at the Final Approval Hearing.  To do so, you must file a statement with the Clerk of the Court indicating your intent to appear no later than twenty-one (21) days prior to the Final Approval Hearing, *i.e.*, by **[DATE]**. The statement you file with the Court must include copies of any documents, exhibits, or other evidence that you propose to present to the Court at the Final Approval Hearing. If a lawyer is representing you for the purpose of making objections, they must file a Notice of Appearance with the Court no later than twenty-one (21) days prior to the Final Approval Hearing, *i.e.*, by **[DATE]**, and must also serve copies of the Notice of Appearance and copies of any documents, exhibits, or other evidence that the objector proposes to present to the Court at the Final Approval Hearing by email to counsel for the Parties as designated in Section 10.

If you do not comply with these requirements, you may be barred from presenting your objection at the Final Approval Hearing subject to the Court's final determination in the exercise of its discretion.  If you submit an objection and change your mind, you may withdraw your objection at any time prior to the Final Approval Hearing by notifying the Settlement Administrator or Class Counsel in writing by mail or email.

### 17. What is the difference between objecting and excluding myself?

Objecting is simply telling the Court that you do not like something about the Settlement.  You can only object if you remain a Settlement Class Member.  You cannot stay in the Class just to submit an objection and then later submit an Opt-Out Statement if your objection fails.  Excluding yourself by submitting an Opt-Out Statement means you are telling the Court that you do not want to be part of the Class and do not want to release any claims you might have against Goldman Sachs.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## IF YOU DO NOTHING

### 18. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will remain in the Settlement and you will automatically receive a payment from the Settlement if the Court grants final approval to the Settlement.

## YOUR PRIVACY

### 19. Will anyone know if I am Class Member?

The Court has appointed an independent, experienced Settlement Administrator: Rust Consulting LLC.  The list of Settlement Class members is not available to the public.  Unless compelled by court order or other legal process, counsel for Goldman Sachs will not share the names of Settlement Class Members with anyone outside Goldman Sachs's Legal department except for the Settlement Administrator, and, within the Goldman Sachs Legal Department, the names of Settlement Class Members will be shared only with personnel with legitimate need to know in order to effectuate the Settlement or an order from the Court.  As required by the Court, the Settlement Administrator will share Opt-Out Statements with Class Counsel, counsel for Goldman Sachs, and the Court.

## THE COURT'S FINAL APPROVAL HEARING

### 20. When and where will the Court decide whether to approve the Settlement?

The Court is currently scheduled to conduct a Final Approval Hearing regarding the proposed Settlement on **[DATE]**. You do not need to attend the hearing, but you may attend if you would like.  You may ask the Court for permission to speak at the Final Approval Hearing. The Court may change the date of the hearing, and if it does this, the new date will be provided on the settlement website but a new notice will not be sent.

At this hearing, the Court will consider the fairness, reasonableness, and adequacy of the Settlement. If there are objections, the Court will consider them. After the hearing, the Court will issue an order either approving or rejecting the Settlement. We do not know how long the Court's order will take.

## GETTING MORE INFORMATION

| 21. **Are more details about the lawsuit available?** |
|---|

The full Settlement Agreement and certain pleadings filed in this case are available on the website created for this settlement by the Settlement Administrator, available at https://www.goldmangendersettlement.com. Updated information on the date, time, and place of the Final Approval hearing will also be available on the website. You may also visit the website by following the QR code below:

[INSERT QR Code]

The Settlement Administrator's address and contact information is:

[Insert contact information]

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK OF THE COURT REGARDING THIS ACTION.  YOU SHOULD DIRECT ANY QUESTIONS YOU MAY HAVE ABOUT THIS NOTICE TO THE SETTLEMENT ADMINISTRATOR AND/OR TO CLASS COUNSEL.**

# Exhibit 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

H. CRISTINA CHEN-OSTER; SHANNA
ORLICH; ALLISON GAMBA; and MARY DE
LUIS,

          Plaintiffs,

          -against-

GOLDMAN SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

          Defendants.

No. 10-cv-6950-AT-RWL

**[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF
SETTLEMENT**

Upon review and consideration of the Parties' submissions, including Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the Declaration of Adam T. Klein and supporting exhibits, and the Parties' Stipulation and Settlement Agreement dated May 8, 2023 (the "Settlement Agreement" or "Agreement"[1]) and all exhibits thereto, and having heard from the Parties at the Preliminary Approval Hearing held on May 16, 2023, and having evaluated the proposed settlement under the requirements of Rule 23(e) it is **HEREBY ORDERED, ADJUDGED** and **DECREED** as follows:

1.     **Settlement.** Plaintiffs Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis ("Settlement Class Representatives"), on behalf of themselves and all Class Members, and Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc.

---

[1]     Unless otherwise noted, capitalized terms in this Order have the same meaning as defined in the Settlement Agreement.

(collectively, "Defendants" and, together with the Settlement Class Representatives, the "Parties"), have negotiated a settlement of this action (the "Action") to resolve any and all claims being released by the Settlement Agreement.

2.      **Review.** The Court has carefully reviewed the Settlement Agreement, as well as the files, records, and proceedings to date in the Action.  The terms and conditions in the Settlement Agreement are hereby incorporated as though fully set forth in this Order, and, unless otherwise indicated, capitalized terms in this Order shall have the meanings attributed to them in the Settlement Agreement.

3.      **Jurisdiction and Venue.**  This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members, and venue in this Court is proper.

4.      **Preliminary Approval.** The Settlement Agreement and the Settlement set forth therein entered into by and among the Parties has been negotiated at arm's-length and is approved on a preliminary basis as fair, reasonable, and adequate.

5.      **Monetary Relief.** The proposed relief to the Settlement Class Members consists of $215,000,000.00 inclusive of payment for: (a) Settlement Shares to Class Members, (b) all Service Awards paid to Settlement Class Representatives, as awarded by the Court, (c) all Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses, as awarded by the Court, (d) all Settlement Administration Costs, as awarded by the Court, and (e) applicable federal, state, and local income taxes, and all federal and state unemployment taxes required by law to be withheld other than those to be paid for by Defendants.

6.      **Programmatic Relief.** For employees in the United States, for a period of three (3) years after the Settlement becomes Effective (the "Effective Period"), unless a different

time peirod is mutually agreed to by the Parties, the proposed programmatic relief includes:

**Adjustments to Performance Evaluation and Promotion Processes:** (i) an initial standard validation study by APTMetrics ("APT") of Defendants' performance evaluation processes and the process for promotion from Vice President to Managing Director within 18 months after the Effective Date and a new validation study in the event that Defendants implement substantive changes to these processes during the Effective Period; (ii) Defendants will continue the practice of using 360 reviews primarily for professional development, and reducing "score compression" by largely eliminating numerical scoring; (iii) Defendants will maintain the practice of including "attribution" in 360 reviews (*i.e.*, identifying 360 reviewers by name with their feedback) in the manager's view of 360 reviews (but not in the reviewee's view) to ensure accountability for feedback and to provide managers greater context for the 360 reviews; (iv) Defendants will continue the practice of providing all employees (other than participating managing directors) a 360 review report that includes (a) written manager feedback on strengths and developmental needs, (b) a summary of risk, conduct, and control feedback and ratings, and (c) a summary of "manager effectiveness" feedback and ratings (for employees who supervise three or more direct reports); (v) Defendants will continue the practice of excluding "potential" as a criterion for performance evaluation decisions and instruct employees that performance evaluations should be backward-looking based on employees' performance and conduct during the applicable review period; (vi) Defendants will require that managers discuss job-relevant criteria for promotion with Vice Presidents who report to them, including, where relevant in the managers' discretion, reference to the specific competencies of the Managing Director job (as will be informed by APT's validation study), and career growth opportunities in their Division and Business Unit during annual performance evaluations; (vii) Defendants will issue more explicit written guidance

to 360 reviewers that they should only review employees with whom the 360 reviewers have had meaningful professional interactions, and APT will review and provide input on such written guidance prior to its publication within Goldman Sachs; (viii) Defendants will continue the practice of using established and validated core competencies, including any new or revised competencies established by the APT's validation study, for promotion from Vice President to Managing Director and will provide additional explicit training for employees who evaluate candidates for promotion (*i.e.*, "cross-ruffers") to evaluate candidates based on the established core competencies; (ix) Defendants will continue the practice of using structured interviews, including standardized interview questions (with the flexibility to ask additional questions, as needed) for employees who are interviewed during the promotion process from Vice President to Managing Director; (x) Defendants will continue the practice of providing goal-setting and developmental feedback at intervals throughout the year, to promote alignment of expectations between employees and managers and ongoing feedback and career coaching; and (xi) Defendants will continue the practice of monitoring outcomes in the performance evaluation processes to identify and investigate any unexplained gender-based differences and take remedial action where appropriate.

**Pay Equity Analysis:** (i) Defendants shall retain an independent labor economist to perform an annual pay equity analysis for the year-end compensation cycles in 2023, 2024 and 2025, and the labor economist shall analyze (1) base pay, (2) bonus pay, and (3) equity awards (if applicable) to identify potential gender pay gaps between substantially similar employees; and (ii) if the labor economist identifies a gender pay gap, Defendants will undertake further analysis to determine whether there is a non-gender-based reason for the pay gap, and, if Defendants are

unable to identify such a non-gender-based reason for the pay gap, such as a performance-based or other business rationale, Defendants will take appropriate steps to address the pay gap.

**Other:** On each anniversary of the Effective Date up to and including the third anniversary of the Effective Date (or, in each case, the business day that is prior to such anniversary), Defendants shall confirm to Class Counsel in writing the implementation of the Adjustments to Business Practices as described in this Section.

Solely for the purpose of allowing Participating Class Members (and not Previously Excluded Class Members[1] or Settlement Class Members who elect to exclude themselves from the Settlement Class) who are subject to arbitration agreements the opportunity to participate in the Settlement and for no other purpose, Goldman Sachs agrees that it will not enforce such Participating Class Members' arbitration agreements.

7.      **Settlement Class.**  The Settlement Class consists of persons who are in one or both of the two groups defined below, and who are not or were not (i) a trustee, officer, or outside director of a Defendant; or (ii) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such person:

- Evaluation Processes Group: all women who, during the Settlement Class Period, held a revenue-producing Associate or Vice President position at Goldman Sachs in the Investment Banking, Investment Management, or Securities Divisions or any of their successor groupings in the United States (the "Applicable Divisions") and (a) were subject to Goldman Sachs's performance review process, known as the 360 Review process; or (b) were subject to Goldman Sachs's comparative performance ranking process, known as the Manager Quartiling process; but (c) excluding Previously Excluded Class Members; and
- Promotion Group: all women who, during the Settlement Class Period, held a

---

[1] "Previously Excluded Class Members" means putative class members (i) whose claims were compelled to arbitration by the Arbitration Order and who, to the extent applicable, did not opt out of the obligation to arbitrate claims in an equity award agreement after receiving notice of the opportunity to do so; or (ii) who previously excluded themselves from participating in the Litigation

revenue-producing Vice President position at Goldman Sachs in the Applicable Divisions; but excluding Previously Excluded Class Members.

8.      **Designation of Settlement Class Representatives.** Plaintiffs Cristina Chen-Oster, Shanna Orlich, Allison Gamba, and Mary De Luis, current Class Representatives, are designated as Settlement Class Representatives for the sole purpose of seeking a settlement of the Action.

9.      **Designation of Class Counsel.** The law firms of Outten & Golden LLP and Lieff Cabraser Heimann & Bernstein LLP, current Class Counsel, are designated as Class Counsel for the Settlement Class.

10.     **Final Approval Hearing.**   A hearing regarding final approval of the Settlement ("Final Approval Hearing") will be held 100 days or more after the date of this Order.  The Final Approval Hearing shall take place on _____ at_____in New York City, New York either telephonically, by video conference, or in person, before the Honorable Analisa Torres.  Such hearing may be reset to a later date without requiring additional, subsequent notice to Class Members.

11.     **Class Notice**.

(a)      The Court approves the Class Notice in the Settlement Agreement, attached as Exhibit 1 to the Settlement Agreement, to be distributed in the manner provided for in Section VI(C) of the Settlement Agreement. In finalizing the Class Notice, the Parties may make non-substantive formatting changes, as necessary, without seeking further approval of the Court. The Court further finds that email and first-class mailing the Class Notice as set forth in the Settlement Agreement are reasonable, and constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and meets the requirements of due process.

(b)      Defendants shall provide to the Settlement Administrator a list of all

Settlement Class Members, including, to the extent reasonably available, full name, social security number, last known home address, last known personal email address(es) and telephone number(s), relevant job history during the Settlement Class Period (including Associate or Vice President titles, pay, and weeks worked in Associate or Vice President positions), and work location during the Settlement Class Period (New York City or other U.S. state) as soon as practicable, but no later than five (5) days after entry of this Order.

(c)     The Class Notice should be issued by email and first-class U.S. mail to Settlement Class Members no more than twenty-one (21) days after Defendants provide the Class List to the Settlement Administrator.

12.     **Settlement Administrator.** The Court authorizes and directs the Parties to retain Rust Consulting LLC as Settlement Administrator, and authorizes and directs such Administrator to: (i) send the Class Notice by mail and email; and (ii) carry out such other responsibilities in order to administer the Settlement in accordance with its terms and objectives and as stated in the Settlement Agreement.

13.     **Exclusion from the Settlement Class.**  Settlement  Class Members may request exclusion from the Settlement by "opting out." Any Settlement Class Member who wishes to exclude themselves from the Settlement must mail or email to the Settlement Administrator a written, signed statement that they are opting out of the Settlement ("Opt-Out Statement").  The Opt-Out Statement must contain the full name, address, and telephone number of the Settlement Class Member who seeks to opt out to be valid.  The Opt-Out Statement should include the statement: "I elect to exclude myself from the Settlement in the *Goldman Sachs Gender Class Action*.  I understand that I will not be entitled to any money under the Settlement."

(a)     To be effective, such an Opt-Out Statement must be sent via email

or mail and postmarked no later than forty-five (45) days after the Notice was first sent. The postmark of the mailing envelope or email date shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted.

(b)     The Opt-Out Statement must be physically signed by the Settlement Class Member who seeks to opt out and sent in the mail or scanned and attached to an email to the Settlement Administrator.  No opt-out request may be made on behalf of a group of Class Members.

(c)     Except for those Settlement Class Members who submit a timely and valid Opt-Out Statement requesting exclusion, all other Settlement Class Members will be Participating Settlement Class Members for all purposes under the Agreement, and upon the Effective Date (as defined in the Settlement Agreement), will be bound by its terms, including, but not limited to, the Releases in Section VII.A of the Settlement Agreement.

(d)     If the proposed Settlement is finally approved, any Settlement Class Member who has not submitted a timely and valid Opt-Out Statement shall be a Participating Settlement Class Member and shall be bound by all subsequent proceedings, orders, and judgments in the Action, even if she has pending, or subsequently initiates, litigation against Defendants or any of the Released Parties relating to any of the Released Claims.

13.     **Objections and Appearances.** Any Settlement Class Member who has not submitted a timely and valid Opt-Out Statement and who complies with the requirements below may object to any aspect of the proposed settlement either on her own or through an attorney hired at her expense. Any Settlement Class Member who wishes to present objections to the Settlement at the Final Approval Hearing must first do so in a written statement ("Notice of Objection").

(a)     To be valid, the Notice of Objection must contain the full name, address, and telephone number of the Settlement Class Member, and must be physically signed by the Settlement Class Member.  The Notice of Objection must contain a written statement setting out the basis for the objection, with any supporting facts or law.  To be considered, the Notice of Objection must be mailed or emailed to the Settlement Administrator no later than forty-five (45) days after the date the Notice was first sent.  The postmark or email date of the Notice of Objection shall be the exclusive means for determining that a Notice of Objection is timely.  Settlement Class Members who fail to make objections in the manner specified herein shall be deemed to have waived any objections and shall be barred from making any objection (whether by appeal or otherwise) to the Settlement.

(b)     An objecting Settlement Class Member who wishes to appear at the Final Approval Hearing must file with the Clerk of the Court a statement that she/they intend to appear at the Final Approval Hearing ("Notice of Intention to Appear") no later twenty-one (21) days prior to the Final Approval Hearing.  The Notice of Intention to Appear must include copies of any documents, exhibits, or other evidence that the objecting Settlement Class Member (or her/their counsel) propose to present to the Court at the Final Approval Hearing.  Any objecting Settlement Class Member who does not provide a timely and valid Notice of Intention to Appear consistent with these requirements and any other requirements set out in the Notice, and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this section and the Notice, may be barred from being heard at the Final Approval Hearing subject to the Court's discretion.  Any objecting Settlement Class Member may withdraw her objection at any time by mailing or emailing the Settlement Administrator.

(c)     Any lawyer representing an objecting Settlement Class Member for the

purpose of raising an objection to the Settlement must file a Notice of Appearance with the Court

no later than twenty-one (21) days prior to the Final Approval Hearing and must also serve copies

of the Notice of Appearance and copies of any documents, exhibits, or other evidence that the

objecting Settlement Class Member proposes to present to the Court at the Final Approval Hearing

by email to counsel for the Parties.

(d)     Any Settlement Class Member who fails to object to the Settlement in the

manner described in the Agreement, the Notice, and this Order shall be deemed to have waived

any such objection, shall not be permitted to object to any terms or approval of the Settlement at

the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or

the terms of the Agreement by appeal or other means.

14.     **Releases.**   "Released Claims" means all claims, causes of action, demands,

losses, costs, interest, penalties, fees, attorneys' fees, expenses, rights, actions, duties, obligations,

judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities

of every nature and description, whether known or unknown, asserted or unasserted, arising

during the Settlement Class Period, that were or could have been asserted based on the facts

alleged in the Complaint, including but not limited to claims for alleged disparate treatment or

disparate impact discrimination on the basis of gender under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq.; NYCHRL, New York City Administrative Code § 8-107 et seq.;

or any other law arising out of (i) Goldman Sachs's 360 Reviews, Manager Quartiling, or the

process for promotion from Vice President to Managing Director; (ii) Goldman Sachs's

procedures for determining compensation; (iii) an alleged pattern and practice of intentional

discrimination related to Goldman Sachs's performance evaluation and promotion practices; and

(iv) Goldman Sachs's corporate culture, only to the extent it relates to Goldman Sachs's

compensation, evaluation and promotion decisions.  The Released Claims include a release of any remedy or recovery related to or arising from the Released Claims, including without limitation, back pay, front pay, compensatory damages, emotional distress damages, injunctive or other equitable relief, interest, punitive damages, and attorneys' fees.  Notwithstanding the foregoing, (i) the Settlement Class Representatives' individual non-class claims and (ii) Settlement Class Members' claims relating to accounts held by Goldman Sachs, including but not limited to custodial accounts or vested retirement benefits, are not Released Claims.

As of the Effective Date, pursuant to the Judgment, and without further action by anyone, the Settlement Class Representatives and all Participating Settlement Class Members shall be deemed to have, and, by operation of the Judgment, shall have, fully, finally, and forever waived, released, and discharged all Released Claims against all Released Defendants' Persons, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any action or proceeding in any court, tribunal or forum asserting any of the Released Claims against any of the Release Defendants' Persons.  This Release shall have res judicata, collateral estoppel, and all other preclusive effects in all pending and future lawsuits, arbitrations, or other suits, actions or proceedings involving any of the Release Defendants' Persons.

Upon the Effective Date, all class claims, including the class claims of the Settlement Class Representatives, will be deemed voluntarily dismissed with prejudice.

As set forth in the Settlement Agreement, the Settlement Class Representatives and Participating Settlement Class Members are releasing unknown claims, and may hereafter discover facts in addition to or different from those which she or they now knows or believes to be true with respect to the subject matter of the Released Claims, but Settlement Class Representatives expressly, fully, finally, and forever settle and release, and each other

Participating Settlement Class Member, upon the Effective Date, shall be deemed to have, and, by operation of the Judgment, shall have, fully, finally, and forever settled and released, any and all Released Claims, including known claims and unknown Released Claims, without regard to any subsequent discovery or existence of such different or additional facts.  Settlement Class Representatives and Defendants acknowledge, and all other Participating Settlement Class Members shall be deemed to have acknowledged as of the Effective Date, that the inclusion of "unknown claims" in the definition of Released Claims was separately bargained for and was an essential element of this Settlement.

15.     **Attorneys' Fees and Expenses, and Service Awards.** Class Counsel shall file their motion requesting Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses and Service Awards for each of the Settlement Class Representatives no more than thirty (30) days after the Initial Mailing Date of the Notice.

16.     **Exclusive Jurisdiction.** The administration and consummation of the Settlement shall be under the authority of the Court, and the Court shall retain exclusive jurisdiction for the purpose of entering orders relating to the Settlement and enforcing the terms of the Settlement Agreement, including without limitation the release of claims and litigation bar set forth in Section VII.A.1 of the Settlement Agreement, distributions from the Settlement Fund, and payment of Settlement Shares to Participating Settlement Class Members.

**17.**     **Use of Order.**   Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed, offered, admitted, received, used, or deemed to be an admission or concession of liability for wrongdoing whatsoever or breach of any duty by Defendants.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action.

In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to as an admission or concession of liability for wrongdoing whatsoever or breach of any duty by Defendants in the Action, or in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Settlement Agreement.

18.     **Stay of Proceedings.**  All proceedings in this Action are stayed until further Order of the Court, except as may be necessary effectuate the terms of the Settlement Agreement.

19.     **Deadlines.** With regard to the provisions of the Settlement Agreement requiring the Parties to take certain actions within specified time periods (other than deadlines set forth in this Order), Court approval will not be required for reasonable extensions of deadlines that do not impact any Court-ordered deadlines.

20.     **Termination.**  If (a) the Settlement Agreement is terminated as provided for in the Settlement Agreement, or (b) any specified material term or condition of the Settlement as set forth in the Settlement Agreement is not satisfied as provided in the Settlement Agreement, then this Order may not be introduced as evidence or referred to in any actions or proceedings by any person or entity and shall be treated as vacated, *nunc pro tunc* and each party shall be restored to his, her, or its respective position in this Action as it existed prior to the execution of the Settlement Agreement.

21.     **Necessary Steps.** The Court authorizes the Parties to take all necessary and appropriate steps to implement the Settlement Agreement.

SO ORDERED this_____day of____, 2023.


_____

Hon. Analisa Torres