UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER, SHANNA ORLICH, ALLISON GAMBA, and MARY DE LUIS, <br><br> Plaintiffs, <br><br> -against- <br><br> GOLDMAN SACHS & CO. LLC and THE GOLDMAN SACHS GROUP, NC., <br><br> Defendants. | Case No. 1:10-cv-6950-AT-RWL |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.   2005-2014: Initial Discovery and Litigation.............................................. 3

    B.   2014-2018: Class Certification, Motions to Strike Expert Opinions, Intervention of Additional Plaintiffs, and Motions to Dismiss................................... 5

    C.   2018-2021: Merits Discovery, Motion to Compel Arbitration and Motion for Rule 23(d) Relief, Expert Discovery ................................................. 10

    D.   2021-2022: Daubert, Summary Judgment, and Decertification Motions ..................... 13

    E.   2022-2023: Trial Preparation ................................................................... 14

    F.   Settlement Negotiations ............................................................................ 15

    G.   Settlement Approval and Administration ................................................ 16

III. ARGUMENT ...................................................................................................... 17

    A.   Class Counsel's Request for Fees Is Fair and Reasonable ........................... 17

        1.   The Fee Award Is Reasonable Under the Percentage of the Fund Method .......... 17

        2.   The Fee Award Is Supported by a Lodestar Cross-Check ..................... 19

        3.   The Fee Award Is Supported by Each of the Second Circuit's Golderberger Factors ................................................................. 22

            a.   Class Counsel Expended Extensive Time and Labor on this Case and Are Highly Qualified Litigators (*Goldberger* Factors 1 and 4)............... 22

            b.   The Magnitude and Complexity of this Litigation, and the Risk Class Counsel took in Prosecuting Plaintiffs' Civil Rights Claims, Warrant the Requested Fees (*Goldberger* Factors 2 and 3)................. 24

            c.   The Requested Fees are Reasonable in Relation to the Settlement (*Goldberger* Factor 5). .................................................. 26

            d.   Public Policy Considerations Support the Reasonableness of Class Counsel's Requested Fees (*Goldberger* Factor 6) ....................... 27

    B.   Class Counsel's Request for Reimbursement of Costs Is Reasonable ........... 29

IV. CONCLUSION ................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Cases**                                                                   **Page(s)**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 16, 2006) ...................... 22

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................. 25

*In re Beacon Assocs. Litig.*,
Nos. 09 Civ. 3907 et al., 2013 U.S. Dist. LEXIS 82192 (S.D.N.Y. May 9, 2013) ............... 19

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .................................... 23

*Bredbenner v. Liberty Travel, Inc.*,
Nos. 9 Civ. 905 et al., 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ........................ 19

*In re Buspirone Antitrust Litig.*,
MDL No. 1413, 2003 U.S. Dist. LEXIS 26538 *(S.D.N.Y. Apr. 11, 2003)*............................ 18

*Carlson v. Xerox Corp.*,
596 F. Supp. 2d 400 (D. Conn. 2009) .................................... 22

*In re Citigroup Inc. Sec. Litig.,*
965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013)........................................ 19

City of *Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................ 24

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) ............................................ 28

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 04082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) .................... 26

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................... 25, 26

*Fikes Wholesale, Inc. v. VISA U.S.A., Inc.*,
62 F.4th 704 (2d Cir. 2023) .................................. 17, 21, 22

*Fleisher v. Phx. Life Ins. Co.*,
No. 11 Civ. 8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ........................ 30

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ...................................... 28

*Fujiwara v. Sushi Yasuda Ltd.*,
58 F. Supp. 3d 424 (S.D.N.Y. 2014) .................................. 22

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ..................................................................... 17, 19, 24

*Gonzalez v. Pritzker*,
   No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277 (S.D.N.Y. Sept. 20, 2016) ..................... 30

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................................... 28

*Hesse v. Godiva Chocolatier*,
   No. 19 Civ. 972, 2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ..................... 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..................................................................... 29

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................... 2, 17, 18

*Johnson v. Brennan*,
   2011 U.S. Dist. LEXIS 105775 (S.D.N.Y Sept. 16, 2011) ..................................... 21

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*,
   No. 17 Civ. 6255, 2022 U.S. Dist. LEXIS 144266 (E.D.N.Y. Apr. 12, 2022) ..................... 27

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ..................... 21

*Meijer, Inc. v. 3M*,
   No. 4 Civ. 5871, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. Aug. 14, 2006) ..................... 19

*Michels v. Phoenix Home Life Mut. Ins.*,
   1997 WL 1161145 (Sup. Ct., N.Y. County, Jan. 7, 1997, No. 95/5318) ..................... 22

*Newman v. Piggie Park Enters., Inc.*,
   390 U.S. 400 (1968) ..................................................................................... 28

*Norwest Fin., Inc. v. Fernandez*,
   121 F. Supp. 2d 258 (S.D.N.Y. 2000) ..................................................................... 21

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ..................... 24

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................................... 28

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996) ..................................................................... 24

*Pudu v. 6D Glob. Techs., Inc.*,
   No. 15 Civ. 8061, 2021 U.S. Dist. LEXIS 90819 (S.D.N.Y. May 12, 2021) ..................... 27

iv

*Quaratino v. Tiffany & Co.*,
    166 F.3d 422 (2d Cir. 1999) .................................................................. 28

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) ................................................. 21

*Sewell v. v. Bovis Lend Lease LMB, Inc.*,
    No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ............ 18, 19, 21

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 16 Civ. 6728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) ................ 29, 30

*Soler v. Fresh Direct, LLC*,
    No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023) ................. 26, 27

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................18

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) .............................................. 19, 27

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890 (S.D.N.Y. Aug. 6, 2012) ........................ 30

*In re U.S. Foodserv., Inc.*,
    07 Md. 1894, 2014 U.S. Dist. LEXIS 200758 (D. Conn. Dec. 9, 2014) ...................... 2, 18, 30

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................. 30

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 17

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ........................ 30

**Statutes**

Fed. R. Civ. P. 23 ..................................................................... 3, 4, 6, 9, 10

42 U.S.C. § 2000e-5 ...................................................................... 28

N.Y.C. Admin. Code § 8-101 ........................................................ 29

N.Y.C. Admin. Code § 8-502 ........................................................ 28

## I.   INTRODUCTION

Following this Court's preliminary approval of the Parties' historic $215 million settlement, Plaintiffs respectfully seek attorneys' fees and reimbursement of litigation costs associated with the nearly thirteen-year prosecution (and eighteen-year investigation) of this groundbreaking gender discrimination class action. Through the settlement, Class Counsel from Outten & Golden LLP ("O&G") and Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") obtained not only one of the largest gender discrimination settlements in history for the Settlement Class of 2,887 revenue-producing female Associates and Vice Presidents within three divisions at Goldman Sachs, but also significant programmatic relief, including independent review and adjustments to Goldman Sach's evaluation and promotion processes. To achieve this result, Class Counsel engaged in years of thorough, dedicated, and hard-fought litigation without compensation. Whether Class Counsel would receive any payment was wholly contingent upon achieving a good result—which they have done.[1] In the process, Class Counsel incurred approximately $6,671,072 in out-of-pocket litigation costs, with no guarantee of recovery.

In addition to seeking reimbursement of these out-of-pocket litigation costs, Class Counsel request that the Court award one-third of the settlement, or $71,665,000, in attorneys' fees to compensate Class Counsel for the time they spent working on this case over the past eighteen years, including nearly thirteen in active litigation. Class Counsel's request for fees and costs is fair and reasonable under both the percentage-of-the-fund and lodestar methods. It is supported by each of the factors the Second Circuit has set forth for evaluating the

---

[1] *See* Atkinson, Khorri, "Goldman's Sex-Bias Deal Is 'Milestone' for Women on Wall Street," Bloomberg Law, https://news.bloomberglaw.com/daily-labor-report/goldmans-sex-bias-deal-is-milestone-for-women-on-wall-street, ("This case, to me, seems like an exception rather than a rule because the amount of resources to keep this lawsuit going is truly astronomical.").

reasonableness of a fee award, including the case's duration, the complexity of the issues, and the magnitude of resources Goldman Sachs expended in opposition to Plaintiffs through the case's long history up through the brink of trial. As detailed below, the settlement is exceptional and ranks as one of the largest statutory discrimination class action settlements since the enactment of the Civil Rights Act of 1964.

Further, this percentage is comfortably in line with attorneys' fees awarded in this Circuit for large class actions. *See, e.g.*, *In re U.S. Foodserv., Inc.*, No. 07 Md. 1894, 2014 U.S. Dist. LEXIS 200758, at *12-13 (D. Conn. Dec. 9, 2014) (awarding $99 million in fees, one-third of $297 million gross settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 513-16 (S.D.N.Y. 2009) (awarding attorneys' fees of one-third of $510 million net settlement). Because each factor supports approval of this motion for fees and costs, as shown further below, Plaintiffs respectfully request that the motion be granted.

## II.    FACTUAL BACKGROUND

O&G and LCHB are both highly experienced and preeminent class action law firms. They have represented Plaintiffs and the Class for all thirteen-plus years of intensive litigation before the Court—and for eighteen years when including proceedings at the EEOC. At each step of the case, Class Counsel ably matched the vast resources of Goldman Sachs, which, over the course of this case, has been represented by *five* large, well-resourced, international law firms.[2] As chronicled below, Plaintiffs asserted complex class discrimination claims under Title VII and the New York City Human Rights Law ("NYCHRL"), prevailed on their class certification motion, and defeated decertification motions, motions to dismiss, summary judgment and *Daubert* motions, and three appeals. This case also involved extensive discovery, including an

---

[2]  These law firms include Sullivan & Cromwell, LLP; Paul Hastings LLP; Orrick, Herrington & Sutcliffe LLP; DLA Piper; and Cohen & Gresser, LLP.

immense number of substantive disputes and discovery motion practice, production by Goldman and review by Class Counsel of hundreds of thousands of documents and numerous databases, forty-eight fact and expert depositions, over 20 expert reports and submissions (most of them contested by the Parties), and over 1,440 docket entries. While Class Counsel did not prevail 100% of the time on contested motions, Class Counsels' efforts were successful more often than not, and Class Counsel respectfully submit that their unwavering tenacity no matter the challenge ultimately convinced Goldman to agree to this groundbreaking settlement on the brink of trial.

A.      2005-2014: Initial Discovery and Litigation

This case began with the filing of a charge of discrimination before the EEOC in 2005. Klein Decl. ¶ 7. It has been intensely litigated since it was first filed in Court in September 2010. ECF No. 5. On the same day that Goldman answered the Complaint in November 2010, it also moved to compel then-Named Plaintiff Lisa Parisi's claims into arbitration. ECF Nos. 23, 24, 29.[3] The Parties also immediately engaged in discovery, including conferring on and litigating many disputed evidentiary issues. Prior to the filing for class certification, the Magistrate Judge was asked to resolve at least ten discovery disputes and held many discovery conferences, which each required substantial legal research and preparation. Klein Decl. ¶ 8. The Parties vigorously contested each side's positions with respect to the scope of class discovery, the impact of the Supreme Court's 2011 decision in *Wal-Mart v. Dukes*, the proportionality of discovery (including as to personnel data and the production of ESI), and the discoverability of internal complaint files and internal gender audits by Goldman's Employment Law Group, among many

---

[3] On April 28, 2011, the Magistrate Judge denied Goldman's motion to stay and compel arbitration. ECF No. 59. Goldman moved for reconsideration, ECF Nos. 62-65, which the Magistrate Judge also denied on July 7, 2011, ECF No. 73. On October 25, 2011, the District Judge held oral argument on the arbitration motion, and again denied the motion on November 15, 2011. ECF No. 120. Goldman appealed this denial on December 13, 2011. ECF No. 126. On March 23, 2013, the Second Circuit reversed and compelled arbitration. ECF No. 171.

other issues. *Id.*

In summer 2011, Goldman filed two motions to strike Plaintiffs' class allegations, ECF Nos. 66, 68, and for partial summary judgment on Plaintiffs' disparate impact claims, ECF Nos. 82-84. Following the filing of Plaintiffs' First Amended Complaint on September 19, 2011, ECF No. 104, Goldman renewed these motions. ECF Nos. 98-101. On September 29, 2011, the Magistrate Judge issued a Report and Recommendation ("R&R") that Goldman's first motion to strike class allegations be denied. ECF No. 105. The Parties fully briefed Goldman's objections to this R&R, ECF Nos. 114, 116, 119, 121, and on January 10, 2012, the District Judge affirmed the R&R and denied the first motion to strike class allegations, ECF No. 133. The following week, on January 19, 2012, the Magistrate Judge issued an R&R recommending that Goldman's second motion to strike class allegations and for partial summary judgment also be denied. ECF No. 134. Following the Parties' briefing on Goldman's objections to that R&R, ECF Nos. 135, 140, on July 17, 2012, the District Judge granted Goldman's request to strike only Plaintiffs' class allegations under Federal Rule of Civil Procedure ("Rule") 23(b)(2), finding that former employees lacked standing to seek injunctive or declaratory relief, but denied Goldman's motion in all other respects. ECF No. 158. This ruling on standing was later reversed by the Court.

During this period, Class Counsel also prepared Named Plaintiffs Chen-Oster and Orlich for, and defended them at, multi-day depositions in July and December 2011. Klein Decl. ¶ 9. Class Counsel also worked with Plaintiffs to undertake thorough and exhaustive document searches and prepared responses to Goldman's document requests and interrogatories. *Id.* Class Counsel also maintained very close, frequent communication with Plaintiffs. *Id.*

During this early period in the litigation, Class Counsel spent approximately 16,963.1 hours of attorney and staff time, amounting to a lodestar of approximately $11,402,116.50. Klein

Decl. ¶ 10; Dermody Decl. ¶ 44.

    **B.**    **2014-2018: Class Certification, Motions to Strike Expert Opinions, Intervention of Additional Plaintiffs, and Motions to Dismiss.**

Under the Court's schedule, fact discovery for the pre-class certification phase of the litigation largely ended in October 2013. ECF Nos. 201, 211. By this point, Class Counsel had served six sets of Requests for Production, three sets of Interrogatories, and one set of Requests for Admission. Klein Decl. ¶ 11. Goldman had produced—and Class Counsel had reviewed— about 30,000 documents, amounting to nearly 145,000 pages, and comprehensive personnel data for Associates and Vice Presidents dating back to 2002, and the Parties had taken seventeen fact and 30(b)(6) depositions. *Id*. During this period, Class Counsel worked with expert witnesses, including providing them the relevant data and documents, reviewing expert reports, and overseeing all aspects of expert discovery. *Id.* Plaintiffs produced the expert reports of four expert witnesses: Drs. Hank Farber, Wayne Cascio, Pamela Tolbert, and David Yermack. Goldman produced rebuttal reports from four experts: Drs. Michael Campion, Michael Ward, Michael Curran, and Jennifer Chatman. *Id.* ¶ 12. Plaintiffs' experts also prepared reply reports. *Id.* Following disputes on the reply opinions, and briefing of *Daubert* motions, Goldman's experts submitted sur-rebuttal reports, and Plaintiffs' experts prepared responses to those sur-rebuttal reports. *Id.* Class Counsel prepared Plaintiffs' experts for, and defended them at, depositions, as well as prepared for and took the depositions of Goldman's experts—amounting to eight depositions in total—between November 2013 and March 2014. *Id.*

Plaintiffs moved for class certification on July 1, 2014, submitting over 1,200 pages of exhibits, thirteen declarations, and four expert reports. ECF Nos. 246-60. Goldman opposed on July 25, 2014, submitting a 75-page opposition brief, over 700 pages of exhibits, 181 pages of supporting declarations, and rebuttal expert reports. ECF Nos. 264-298. Goldman deposed four

Class Members who submitted declarations in support of class certification, requiring Class Counsel to prepare the witnesses for and defend their depositions. Klein Decl. ¶ 13. The Parties also submitted significant briefing on their respective *Daubert* motions to exclude the other side's expert reports. *Id.* Plaintiffs also moved to strike certain declarations submitted with Goldman's opposition to class certification. ECF Nos. 299, 301-302.

On October 22 and 23, 2014, the Magistrate Judge held a two-day evidentiary hearing and oral argument on Plaintiffs' class certification motion. Klein Decl. ¶ 14. Class Counsel spent significant time preparing for argument and live testimony, including preparing Dr. Henry Farber to testify and be cross-examined. *Id.* The Parties' statistical experts testified at length about their analyses and opinions, and counsel presented legal arguments. *Id.* On March 10, 2015, the Magistrate Judge entered a Memorandum and Order granting in part and denying in part the Parties' motions to strike expert opinions, and an R&R recommending denial of class certification under Rule 23(b)(2) and Rule 23(b)(3). ECF Nos. 363, 364. The Magistrate Judge indicated that he would have recommended certification under Rule 23(b)(2), but for the District Judge's July 2012 order that Plaintiffs, as former employees, lacked standing to seek injunctive or declaratory relief. ECF No. 364.

Following the Magistrate Judge's R&R on class certification, Plaintiffs moved for reconsideration, including on the issue of whether Plaintiffs have standing to represent a class under Rule 23(b)(2). ECF Nos. 368, 369. Shortly thereafter, on April 13, 2015, Plaintiffs filed a motion to intervene new Plaintiffs Allison Gamba and Mary De Luis as class representatives; Plaintiffs maintained that both had standing as current employees either at the time of complaint filing or intervention. ECF Nos. 376-379. Goldman opposed reconsideration and intervention. ECF Nos. 380, 392-400. The Magistrate Judge held oral argument on the intervention motion on

July 22, 2015, and on August 3, 2015, granted the motion to intervene, but denied the motion for reconsideration. ECF No. 410.

On August 3, 2015, Plaintiffs filed their Second Amended Complaint, adding the claims of new Plaintiffs Gamba and De Luis. ECF No. 411. The Magistrate Judge stayed discovery on August 26, 2015, pending this Court's review of the Parties' objections to the Magistrate Judge's recommendations on the class certification and *Daubert* motions. ECF No. 432. Goldman also objected to the Magistrate Judge's intervention order on August 17, 2015, ECF Nos. 419-422, and the Parties completed briefing on those objections on September 8, 2015, ECF No. 440.

On August 31, 2015, the Court permitted Goldman to file a motion to dismiss Plaintiff Gamba's claims for injunctive and declaratory relief, and held in abeyance the briefing on the Parties' objections to the class certification R&R. ECF No. 437. The Parties briefed the motion to dismiss between September 28 and October 19, 2015. ECF Nos. 441-445. On June 6, 2016, the Court affirmed the Magistrate Judge's intervention order, permitting Plaintiffs Gamba and De Luis to remain in the case as new class representatives. ECF No. 450. Goldman then sought to dismiss Plaintiff De Luis's claims, and following competing letters from the Parties, the Court set a schedule for briefing that motion, but continued to hold in abeyance a briefing schedule on the class certification R&R. ECF No. 454. The parties completed briefing on Goldman's motion to dismiss Plaintiff De Luis's claims for injunctive and declaratory relief on August 1, 2016, ECF Nos. 457-458, 462-463.

On April 12, 2017, the Court entered a Memorandum Opinion and Order denying Goldman's motions to dismiss the claims of Plaintiffs Gamba and De Luis for injunctive and declaratory relief. ECF No. 479. In so doing, the Court reversed the earlier decision of District Judge Sand, joining other courts in the Southern District of New York in holding that former

employees have standing to seek injunctive or declaratory relief. *Id.* at 7. Following the Court's order, Goldman sought permission to appeal the denial of its motions to dismiss. ECF Nos. 484, 485. Over Plaintiffs' opposition, ECF No. 495, the Court granted Goldman's request and certified the order for appeal on June 14, 2017, ECF No. 500. The Second Circuit denied Goldman's petition for leave to appeal. ECF No. 539. Plaintiffs filed a Supplemental Amended Complaint on April 25, 2017. ECF No. 486.

On June 23, 2017, Plaintiffs filed two Objections, spanning 87 pages, to the Magistrate Judge's R&R denying class certification and *Daubert* decisions, while Goldman filed five separate Objections, spanning 136 pages, to the same decisions. ECF Nos. 501-507, 511. The Parties completed briefing responses and replies on August 1, 2017. ECF Nos. 513-536.

In light of this Court's reversal of Judge Sand's earlier decision regarding the availability of injunctive and declaratory relief, which had been the basis for the Magistrate Judge's recommended denial of Rule 23(b)(2) certification, the Court issued an order on August 30, 2017, requiring the Parties to submit positions as to what additional record development may be necessary to decide Rule 23(b)(2) certification. ECF No. 540. In September 2017, the Magistrate Judge held a status conference and then ordered the Parties to submit evidence and argument regarding whether Goldman's policies had changed, necessitating further pre-certification discovery. ECF No. 544. The Parties submitted evidence and briefing in October and November 2017. ECF Nos. 545, 546, 553, 554. The Magistrate Judge held oral argument on December 13, 2017, and a further status conference on January 23, 2018, regarding class certification. The Court then ordered that Rule 23(b)(2)-related fact and expert discovery be completed by August 29, 2018, with briefing to be completed by November 16, 2018. ECF No. 568.

On March 30, 2018, the Court overturned the R&R on class certification and certified a

class pursuant to Rule 23(b)(3). ECF No. 578. Shortly thereafter, Goldman sought to stay discovery and the distribution of Class notice in order to appeal the decision, ECF No. 579, which Plaintiffs opposed and the Court denied. ECF Nos. 580, 581. Goldman petitioned the Second Circuit to appeal the class certification decision under Rule 23(f), and after oral argument, on September 4, 2018, the Second Circuit denied Goldman's petition. ECF No. 620.

Prior to the Second Circuit's denial of Goldman's Rule 23(f) petition, the Parties had continued to engage on the question of when and on what record the Court should consider Rule 23(b)(2) class certification. Following the completion of supplemental fact discovery regarding changes to Goldman's policies, Plaintiffs moved to modify the schedule and requested that the Court proceed with deciding Rule 23(b)(2) certification without further discovery. ECF No. 582. The Parties briefed this motion, and the Magistrate Judge held oral argument on June 27, 2018, and then denied Plaintiffs' request to decide Rule 23(b)(2) certification on the existing record. ECF Nos. 609, 613. Following continued expert discovery on the process changes, on September 27, 2018, Plaintiffs notified the Court that they no longer intended to separately and additionally move for certification under Rule 23(b)(2), in light of the Court's order granting certification under Rule 23(b)(3) and the availability of injunctive relief for a class certified under Rule 23(b)(3). ECF No. 625. Accordingly, the Magistrate Judge vacated the remaining deadlines associated with Rule 23(b)(2)-related discovery and briefing. ECF No. 627.

During this period, the Parties also expended significant time negotiating the contents and form of the Class certification notice to be distributed to potential Class Members. Klein Decl. ¶ 15. In July 2018, the Parties reached impasse and sought the Court's assistance on issues including whether Goldman should be required to produce to Plaintiffs the contact information of Class Members prior to the end of the opt-out period, the substantive content of the opt-out

form, and additional language in the notice itself regarding the characterization of Phase II proceedings. ECF No. 610. On July 24, 2018, the Magistrate Judge issued an order resolving these disputes, clearing the way for notice to be disseminated. ECF No. 618. The Court also resolved additional disputes regarding the notice in November 2018. ECF Nos. 637, 638, 639. The notice was distributed on November 30, 2018 to the 3,487 potential Class Members, and after a 45-day opt-out period, 166 individuals elected to opt out. Klein Decl. ¶ 15. Another four Class Members opted out of the class over the course of 2019 and 2020. *Id.* Meanwhile, Class Counsel prepared Plaintiff Gamba for her second deposition in September 2018, and Mary De Luis for her deposition in August 2018, and defended both depositions. *Id.* ¶ 16.

During this period in the litigation, Class Counsel spent approximately 15,972.30 hours of attorney and staff time, amounting to a lodestar of approximately $11,459,371. Klein Decl. ¶ 17; Dermody Decl. ¶ 44.

### C.     2018-2021: Merits Discovery, Motion to Compel Arbitration and Motion for Rule 23(d) Relief, Expert Discovery

Following the class certification order in March 2018, the Parties began merits discovery, an approximately three-year period involving twenty-three depositions, more than a dozen court conferences to resolve evidentiary and privilege disputes and resulting in Goldman producing— and Class Counsel reviewing—more than 141,000 additional documents, amounting to nearly 800,000 pages. Klein Decl. ¶ 18.

On May 2, 2018, the Magistrate Judge held a scheduling conference to set the scope of fact discovery. To manage discovery, the Magistrate Judge required the Parties to submit status reports every 60 days to raise any disputes. Between May 2018 and November 2020, the Parties submitted at least fourteen such reports, raising a significant number of discovery disputes during this period. *See, e.g.*, ECF Nos. 617 (July 23, 2018), 624 (Sept. 20, 2018). Over those two years,

the Court held at least fourteen discovery conferences to resolve discovery disagreements. Class Counsel spent significant time conferring on these discovery issues with Goldman's counsel, researching legal issues, and preparing for each conference, which routinely required oral argument. Klein Decl. ¶ 19. The disagreements included, among other things, the negotiation, timing, and scope of Goldman's ESI searches and productions; the production of additional internal complaint files and comparator personnel files; Goldman's privilege logs and Plaintiffs' numerous successful requests that Goldman de-designate certain documents withheld as privileged, including multiple rounds of privilege challenges, *in camera* review of withheld documents, serial amendments and revisions to privilege logs, and de-designations of withheld documents; Goldman's relevance redactions and Plaintiffs' requests that Goldman unredact and reproduce large numbers of documents; Plaintiffs' request to quash Goldman's subpoenas to Plaintiffs' employers and requests for tax records; whether the Parties would be required to respond to certain interrogatories and requests for admission; and the scope of deposition discovery, including whether Plaintiffs could depose Goldman's executive leadership. *Id.*

Several substantive issues also arose repeatedly during this period of time, including: the scope of evidence that would be presented at Phase I and Phase II trial proceedings; the extent to which Plaintiffs' Class claims encompassed Goldman's compensation-setting policies; the role of anecdotal evidence and individual complaints at trial; and the relevance of evidence regarding individuals' alleged gender bias and evidence regarding Goldman's internal diversity analyses. *Id.* ¶ 20. Many of these issues included novel, complex legal issues, requiring careful research, strategy, and argument. *Id.*

Following notice of certification to the Class, Goldman filed a motion to compel arbitration for a large portion of the Class. ECF Nos. 715, 716. Plaintiffs opposed and

simultaneously filed a motion for relief under Rule 23(d) to void language in certain equity award agreements that required arbitration of claims in this action. ECF Nos. 717-720. Following substantial briefing and oral argument, the Magistrate Judge issued an Order on March 26, 2020. ECF No. 983. The Court largely enforced the arbitration provisions under contract law but, significantly, also determined under Rule 23(d) that Goldman's arbitration provisions in equity award agreements were "procured in a confusing and potentially misleading fashion." *Id.* at 82. Each of these arbitration motions was further subject to a second round of briefing for appeals to the District Court. As a remedy, the Court permitted notice to Class Members who had executed equity award agreements and an opportunity for those Class Members to opt out of arbitration. After the Parties litigated the contents and form of that notice in October 2021, *see* ECF Nos. 1299, 1303, the notice was issued in February 2022. To protect the rights of these Class Members receiving notice, Class Counsel spent significant time working with the notice administrator and, subject to guidance from the Magistrate, contacting individuals in numerous rounds of outreach to ensure each individual fully understood the procedural choice she was facing. This process required several follow-up requests to the Magistrate Judge, which Goldman vigorously opposed, to permit additional outreach. *See* ECF Nos. 1332, 1336. These efforts resulted in 339 individuals (nearly 50%) rejecting arbitration and choosing to remain in the Class. Klein Decl. ¶ 21.

Over 1,500 Class Members were ultimately compelled to arbitration. ECF No. 1264. However, as a result of Counsel's advocacy, the Court allowed tolling of the claims of those individuals subject to separation agreements (enforceable in arbitration), managing director arbitration agreements, and private wealth advisor agreements for eight months, a virtually unprecedented outcome in the arbitration context, to permit these Class Members to seek new

counsel. *See* ECF No. 1315.

Fact discovery closed on November 20, 2020. ECF No. 1050. By the end of the discovery period, Goldman had produced and Class Counsel reviewed and analyzed almost 1.2 million pages of materials and also databases reflecting sixteen years of personnel data, including the personnel history, evaluations, compensation, promotions, and numerous other data metrics that Goldman tracks and records in its Human Resources systems for many thousands of employees. Plaintiffs responded to five sets of document requests, four sets of interrogatories, and two sets of requests for admission, while Goldman responded to thirteen sets of document requests, nine sets of interrogatories, and four sets of requests for admission. Klein Decl. ¶ 22. Plaintiffs took the depositions of eleven additional fact witnesses. *Id.*

Following the close of discovery, Class Counsel spent significant time working with Plaintiffs' six merits experts, Dr. Henry Farber, Dr. Wayne Cascio, Dr. Caren Goldberg, Dr. Leaetta Hough, Dr. David Yermack, and Sarah Butler, including providing them necessary data and documents, answering questions, and reviewing experts reports. *Id.* ¶ 23. Goldman submitted rebuttal expert reports from Brian Dunn, Dr. Eric Dunleavy (who submitted two reports on different substantive areas), Dr. Kathryn Shaw, and Dr. Margaret Stockdale. *Id.* Class Counsel carefully reviewed each of Goldman's expert reports and coordinated with Plaintiffs' experts to prepare reply reports. *Id.* Class Counsel then prepared Plaintiffs' experts for depositions, and prepared for and took the depositions of Goldman's experts, amounting to ten expert depositions in total. *Id.*

During this period, Class Counsel spent approximately 22,342 hours of attorney and staff time, amounting to a lodestar of approximately $13,821,572.50. *Id.* ¶ 24; Dermody Decl. ¶ 44.

### D.    2021-2022: Daubert, Summary Judgment, and Decertification Motions

Following the close of fact and expert discovery, the Parties engaged in substantive legal

briefing on a variety of pre-trial matters. Klein Decl. ¶ 25. Beginning in July 2021, the Parties briefed *Daubert* motions to exclude expert opinions. ECF Nos. 1184-1189, 1191-1192. At the same time, the Parties also briefed Goldman's motion to decertify the class. ECF Nos. 1194-1236. Plaintiffs and Goldman additionally each filed motions for summary judgment on August 9, 2021. ECF Nos. 1239-1253. Across these series of motions, the Parties submitted many hundreds of pages of briefing, declarations, deposition testimony, and exhibits to the Court for consideration. Briefing of the *Daubert* motions, decertification motion, and motions for summary judgment concluded in November 2021.

On March 17, 2022, the Court denied decertification, denied in part and granted in part Goldman's summary judgment motion, denied Plaintiffs' summary judgment motion, and denied in part and granted in part Goldman's and Plaintiffs' *Daubert* motions. ECF No. 1337. Shortly thereafter, Goldman moved for reconsideration of its motion for decertification, or certification of certain issues for interlocutory review. ECF Nos. 1346, 1347. On August 22, 2022, after another round of briefing, the Court denied Goldman's request for interlocutory review and granted in part Goldman's motion for reconsideration, clarifying the scope of certain claims for trial. ECF No. 1374.

During this period in the litigation, Class Counsel spent approximately 9,809.4 hours of attorney and staff time, amounting to a lodestar of approximately $6,574,531.50. Klein Decl. ¶ 26; Dermody Decl. ¶ 44.

### E.     2022-2023: Trial Preparation

On October 11, 2022, the Court scheduled trial for June 2023 and set a schedule for pre-trial submissions. ECF No. 1380. Class Counsel spent significant time litigating additional discovery issues during this time, including production of additional complaint files and personnel data, and raised several pre-trial disputes with the Court. Klein Decl. ¶ 27. On January

- 14 -

31, 2023, after briefing, the Court issued an order clarifying that the Court would hear Plaintiffs'

Title VII disparate impact challenge, while the jury would hear and decide Plaintiffs' disparate

treatment claim. ECF No. 1405.

Class Counsel prepared for trial in earnest, including completing a two-day mock jury

exercise. Klein Decl. ¶ 28. On February 1, 2023, the Parties submitted competing pre-trial

memoranda, a proposed pre-trial order containing competing proposed jury instructions and *voir*

*dire* questions, exhibit lists containing thousands of exhibits and evidentiary objections,

deposition designations for trial, and motions *in limine*. ECF Nos. 1406-1413. The Parties

submitted oppositions to the motions *in limine* and pre-trial memoranda on February 22, 2023.

ECF Nos. 1417-1421.

Class Counsel additionally spent significant time conferring on the Parties' respective

witness lists and scheduling and preparing for depositions for over 30 of Goldman's trial

witnesses whom Plaintiffs had not deposed, as contemplated by the parties' prior agreement

regarding trial witnesses. ECF No. 859. Plaintiffs moved to strike eight of Goldman's witnesses

as not properly disclosed, and the Court granted Plaintiffs' motion. ECF No. 1433. Goldman then

moved to strike two witnesses, and Plaintiffs responded by seeking to strike an additional eight

witnesses. ECF Nos. 1435, 1436. These motions, as well as the Parties' motions *in limine* and

disputes concerning jury instructions, voir dire, and other trial issues, remain pending.

During this period in the litigation, Class Counsel spent approximately 5,866.9 hours of

attorney and staff time, amounting to a lodestar of approximately $3,430,216.50. Klein Decl.

¶ 30; Dermody Decl. ¶ 44.

### F.    Settlement Negotiations

At several points throughout this extensive litigation, the Parties engaged in mediation.

Klein Decl. ¶ 32. In the first attempt, on October 10, 2012, the Court referred the Parties to court

mediation, ECF No. 162, which the Parties participated in with a court-appointed mediator on March 8, 2013. *Id.* ¶ 33. Around the same time, the Parties requested a 90-day continuance of discovery deadlines to explore resolution, ECF No. 168, and met in June and August 2013 with experienced private mediator David Rotman, but ultimately were unable to settle. *Id.* ¶ 34.

Following the Court's class certification ruling in 2018, the Parties unsuccessfully attempted to negotiate a settlement with a third experienced mediator, former Judge Daniel Weinstein, on September 24, 2018. Klein Decl. ¶ 35. The Parties then engaged experienced mediator Nancy Lesser in May 2019. *Id.* Ms. Lesser engaged the Parties in pre-mediation settlement discussions, which broke down prior to the scheduled mediation session. *Id.*

After the Court's March 2022 summary judgment, decertification, and *Daubert* decisions, the Parties participated in a fourth round of mediation with experienced mediator Dina Jansenson, on May 23, 2022. Klein Decl. ¶ 36. They were unable to reach a resolution at that time. *Id.* Ten months later, the Parties attended a fifth round on March 12, 2023, again with mediator Dina Jansenson, who made a mediator's proposal for class monetary relief that the parties ultimately accepted. *Id.* Following mediation, the Parties reached agreement in principle and then negotiated a full settlement agreement, including programmatic changes, which was executed on May 8, 2023. *Id.*

### G.    Settlement Approval and Administration

Class Counsel have spent substantial time securing preliminary approval of the settlement, coordinating with the Settlement Administrator and overseeing the notice process, responding to Class Member and non-Class Member inquiries and questions, conferring with Goldman's counsel, and preparing to move for final approval of the settlement. During this period, Class Counsel have spent approximately 555.9 hours of attorney and staff time, amounting to a lodestar of approximately $346,509.50. Klein Decl. ¶ 31; Dermody Decl. ¶ 44.

### III.    ARGUMENT

####  A.    Class Counsel's Request for Fees Is Fair and Reasonable.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their years of work on behalf of the Class, securing a historic monetary settlement, and negotiating robust programmatic relief. *See Fikes Wholesale, Inc. v. VISA U.S.A., Inc.*, 62 F.4th 704, 723 (2d Cir. 2023) ("It is well-established under the common fund doctrine that 'attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund.'" (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010))). As explained below, Class Counsel's request for one-third of the settlement fund is consistent with fee awards approved by many courts, including in this Circuit in large class actions, and is amply warranted here given the hard-fought litigation and successful settlement. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 513-16 (awarding attorneys' fees of 33.33% of $510 net million settlement). In accordance with the Second Circuit precedent governing fee requests, an award of one-third of the settlement fund here—for a total of $71,665,000 in fees—is reasonable and appropriate. In setting a reasonable fee, district court judges may use "either the lodestar amount . . . or a percentage of the fund." *Fikes*, 62 F.4th at 723. Under either method, the requested fees are appropriate.

####  1.    The Fee Award Is Reasonable Under the Percentage of the Fund Method.

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The Second Circuit confirmed this year that "the trend in this Circuit [is to] apply[] the percentage method," *id.*, "which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation,'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*,

No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, *74 (S.D.N.Y. Nov. 26, 2002)). A common fund percentage fee may be "less than, equal to, or greater than the lodestar." *Fikes*, 62 F.4th at 727 (quoting *Fresno County*, 925 F.3d at 68).

Here, the Court should use the percentage-of-the-fund method and award fees equal to one-third of the monetary settlement fund. Class Counsel negotiated one of the largest class discrimination settlements in history, benefitting not just Plaintiffs and Class Members, but all women at Goldman going forward. Indeed, women at Goldman will benefit into perpetuity from the significant programmatic adjustments Class Counsel negotiated, which address the issues challenged in this litigation. A percentage-of-the-fund fee award will encourage other plaintiffs' lawyers to bring important public interest cases like this one, which serves as a notable chapter in the history of Title VII litigation, and to persevere in these litigations for the long haul. Courts in this Circuit appropriately compensate counsel with one-third of the settlement fund in settlements of similar, or greater, value. *See, e.g.*, *In re U.S. Foodserv., Inc.*, 2014 U.S. Dist. LEXIS 200758, at *12-13 (awarding $99 million, one-third of $297 million gross settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 513-16 (awarding one-third of $510 million net settlement); *In re Buspirone Antitrust Litig.*, MDL No. 1413, 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 11, 2003) (awarding one-third of $220 million settlement).

The percentage method is also closely aligned with market practices because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003)); *see also Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *29 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable

percentage of any fee ultimately awarded."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the formula that mimics the compensation system actually used by individual clients").

> **2.    The Fee Award Is Supported by a Lodestar Cross-Check**.

When applying the percentage method to set an attorney's fee award, as Class Counsel request here, courts may (but are not required to) employ the lodestar method as a "cross-check" of reasonableness. *Goldberger*, 209 F.3d at 50; *see In re Beacon Assocs. Litig.*, Nos. 09 Civ. 3907 et al., 2013 U.S. Dist. LEXIS 82192, at *44 (S.D.N.Y. May 9, 2013) (discussing "the traditional 'lodestar' calculation as a method of testing the fairness of a proposed percentage award"). "[T]he resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Meijer, Inc. v. 3M*, No. 4 Civ. 5871, 2006 U.S. Dist. LEXIS 56744, at *79 (E.D. Pa. Aug. 14, 2006) (omission and alteration in original).

"In determining the lodestar for cross-check purposes, the Court need not engage in a 'full-blown lodestar inquiry,' or 'mathematical precision.'" *Bredbenner v. Liberty Travel, Inc.*, Nos. 9 Civ. 905 et al., 2011 U.S. Dist. LEXIS 38663, at *61-62 (D.N.J. Apr. 8, 2011). "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013) (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *37 ( quoting *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 175 (W.D.N.Y. Oct. 11, 2011)). The cross-check should also consider the fact that Class Counsel will spend additional time "responding to objections, overseeing the

settlement administration process, and potentially litigation of appeals," and thus lodestar will continue to increase for years after fees are requested, with Class Counsel receiving no additional compensation. *Hesse v. Godiva Chocolatier*, No. 19 Civ. 972, 2022 U.S. Dist. LEXIS 72641, at *41 (S.D.N.Y. Apr. 20, 2022).

Here, the accompanying attorney declarations set forth the hours of work and billing rates used to calculate the lodestar. As described in those declarations, Class Counsel and their staffs devoted a total of approximately 71,511.6 hours to this action, resulting in an aggregate lodestar of $47,034,316.50. Klein Decl. ¶¶ 39 & Ex. 1 (O&G Fee Summary); Dermody Decl. ¶¶ 42-43.[4] These hours are more than reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Klein Decl. ¶ 40; Dermody Decl. ¶ 42.

As outlined in the Klein and Dermody declarations, Class Counsel's time was spent on tasks necessary to the successful prosecution of this complex Title VII and NYCHRL class action. The lawyers involved collectively have decades of experience with class discrimination litigation and settlements, and all of that experience was brought to bear to achieve the results of this case. Even so, Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work. Klein Decl. ¶ 41.

Courts have also repeatedly approved Class Counsel's rates as reasonable, Klein Decl. ¶ 42; Dermody Decl. ¶ 46, and courts in this circuit also have repeatedly approved hourly rates like Class Counsel's as reasonable, Klein Decl. ¶ 42. Further, the rates sought by Class Counsel are those paid by their clients seeking hourly attorney work, including on discrimination matters.

---

[4] Should the Court find it useful, Class Counsel are prepared to provide their detailed time entries (or a sampling if preferred by the Court).

Klein Decl. ¶¶ 43-44; *see Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-64 (S.D.N.Y. 2000) (rejecting challenge to reasonableness of fee request where counsel provided declaration indicating that client was "billed on the basis of services provided at fixed hourly rates which were charged at [counsel's] usual and customary rates"); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) (noting that fees sought by Outten & Golden attorneys "were the rates that their clients are willing to pay and do pay").

At all times, Class Counsel used a team of core attorneys to minimize duplication and made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively. Klein Decl. ¶ 50. In addition, Class Counsel's contemporaneous time records were carefully reviewed, and duplicative work, as well as *de minimis* time billed by attorneys and staff with little participation in the action, was removed. For example, Class Counsel proactively removed time for anyone who worked less than ten hours on this matter. Klein Decl. ¶ 51; Dermody Decl. ¶ 42.

Class Counsel's requested fee of $71,665,000 represents a multiplier of 1.52 times their lodestar to date. Klein Decl. ¶ 52. This multiplier is well within the range that courts regularly approve, as the Second Circuit just recently confirmed. *See Fikes*, 62 F.4th at 726-27 (affirming district court fee award of $523 million, with 2.45 multiplier); *see also Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *37 (S.D.N.Y Sept. 16, 2011) ("Courts routinely award counsel two to three times lodestar in class action settlements."); *In re Lloyd's*, 2002 U.S. Dist. LEXIS 22663, at *81 (S.D.N.Y. Nov. 26, 2002) (finding that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Sewell*, 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 16, 2012) (approving a 3.0 multiplier as "fall[ing] well within the range granted by our Courts" and noting that "[c]ourts commonly award lodestar

multipliers between two and six"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (approving multiplier of 2.28); *Michels v. Phoenix Home Life Mut. Ins.*, 1997 WL 1161145, at *32 (Sup. Ct., N.Y. County, Jan. 7, 1997, No. 95/5318) (approving multiplier of 3.3); *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 414 (D. Conn. 2009) (approving $750 million settlement fund with a lodestar multiplier of 1.56); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621, at *16 (S.D.N.Y. Nov. 16, 2006) (approving $455 million settlement fund with multiplier of 2.89). A lodestar multiplier compensates counsel for the risk incurred in prosecuting a case with no guarantee of payment, and for the substantial delay in payment well past services rendered.

A multiplier of 1.52 here is justified, particularly in the context of civil rights cases, where class certification is highly contested, cases do not always succeed (*e.g.*, *Wal-Mart v. Dukes*), and years-long litigations can terminate with plaintiffs' counsel receiving no compensation.

### 3.    The Fee Award Is Supported by Each of the Second Circuit's Golderberger Factors.

Regardless of which method is used, courts in this Circuit consider six factors identified by the Second Circuit in *Goldberger* to evaluate the reasonableness of an attorneys' fee award: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Fikes*, 62 F.4th at 723 (quoting *Goldberger*, 209 F.3d at 50). All factors support the fee requested here.

#### a.    Class Counsel Expended Extensive Time and Labor on this Case and Are Highly Qualified Litigators (*Goldberger* Factors 1 and 4).

As described at length above, Class Counsel expended significant effort to achieve this

historic settlement. Class Counsel engaged in thirteen years of hard-fought, contentious litigation before this Court, pushing this case to the brink of trial. Klein Decl. ¶¶ 7-31. Class Counsel also engaged in years of settlement discussions, in coordination with five different mediators, to reach agreement. *Id.* ¶¶ 32-38. Thereafter, Class Counsel have now spent significant time working to secure preliminary approval of the settlement and supervise the notice process, which has included responding to approximately 800 inquiries. Klein Decl. ¶ 38. As detailed above in connection with the lodestar analysis, Class Counsel devoted approximately 71,511.6 hours to this litigation, resulting in an aggregate lodestar of $47,034,316.50. *Id.* ¶ 39; Dermody Decl. ¶¶ 42-43.

There are very few firms that have the resources, interest, and experience to pursue the contingent claims at issue here. Class Counsel are leaders in addressing discrimination in the workplace, both in class actions and individual representation. Klein Decl. ¶ 53; Dermody Decl. ¶ 41. As this Court recognized in appointing O&G and LCHB as Class Counsel, both firms are experienced, highly-regarded members of the plaintiffs' employment bar with extensive expertise in the areas of class actions and complex litigation involving discrimination claims, including gender discrimination claims like those at issue here. *See* ECF No. 578; *see also* Klein Decl. ¶¶ 2-6 & Ex. 3; Dermody Decl. ¶¶ 35-39. Goldman retained multiple AmLaw 100 firms to defend the case, which is testament to the complexity of the litigation and to the response demanded by Class Counsel's skilled and zealous prosecution.

The requested fee, however, is not based solely on time and effort already expended. It is also meant to compensate Class Counsel for time that will be spent administering and monitoring the settlement in the future. Klein Decl. ¶ 54. In Class Counsel's experience, overseeing the final steps of the settlement process will require a substantial ongoing commitment. *Id.*; *see also*

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker v. Jekyll & Hyde Entm't Holdings,* L.L.C., No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). Class Counsel anticipate that they will incur significant additional fees interacting with the settlement administrator and fielding Class Members' questions. Klein Decl. ¶ 54. Class Counsel's lodestar will also grow as they finalize the settlement process, prepare for the Fairness Hearing, and address Class Member questions. *Id.* None of this work is included in the fee request.

Accordingly, *Goldberger* factors 1 and 4 support Class Counsel's fee request.

> **b.    The Magnitude and Complexity of this Litigation, and the Risk Class Counsel took in Prosecuting Plaintiffs' Civil Rights Claims, Warrant the Requested Fees (*Goldberger* Factors 2 and 3).**

The size and difficulty of the issues in a case is also a significant factor to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Moreover, uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d at 49. "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Here, Class Counsel achieved outstanding results in this exceptionally complex case

involving class discrimination claims challenging Goldman's process for performance evaluations and promotions. "Most class actions are inherently complex." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is at the extreme end of complexity even for a civil rights class action. The parties here litigated many dozens of substantive, complicated discovery, merits, and class certification issues over thirteen years in court, and many novel and complex legal and factual questions are teed up for the Court in preparation for trial. Klein Decl. ¶¶ 7-31. This resulting settlement, in addition to providing significant monetary awards, provides substantial review of, and modification to, the performance evaluation and promotion processes at one of the world's largest financial institutions; will serve as a model for other companies going forward; and will help to level the playing field for women at Goldman and in the finance industry.

Throughout the duration of this thirteen-year litigation before this Court, Class Counsel received no compensation for their work, and at no time was compensation assured. *Id.* ¶ 55. While Class Counsel successfully protected the Class from decertification and overcame Goldman's motions for dismissal and summary judgment, significant risk at trial remains. Here, a jury trial would necessarily require complicated testimony on statistical regressions and industrial organizational psychology, with facts and documents spanning over a twenty-year class period, with evidence and issues presented both to a jury and the Court. Moreover, this would have been the first gender discrimination class action trial in the Southern District of New York since *Velez v. Novartis* in 2010, and the first anywhere since *Dukes*, meaning certain novel questions going to the scope of the trial created additional uncertainty. Klein Decl. ¶ 56. Class Counsel and Plaintiffs remain confident in their ability to succeed at trial, but that outcome is not

guaranteed. Further, even if Plaintiffs were to succeed at trial, they would need to survive a certain appeal and continued efforts to decertify the Class, and would need to navigate a presently-undefined Phase II process to resolve individual damages and affirmative defenses for Class members—all of which may have required years of additional litigation before individuals received any damages amounts. A settlement now, on the eve of trial, avoids these significant risks, and ensures that Class members receive meaningful monetary awards now. *Id.* ¶ 57.

Counsel undertook prosecuting this action despite all of these risks and without any assurance of payment, litigating this case on a wholly contingent basis since taking on the case in 2005. *Id.* ¶ 58. As shown by the history of this litigation and as discussed at length above, civil rights cases of this type are, by their very nature, complicated, time-consuming, and subject to risk. The litigation history of this case, following new standards announced in *Wal-Mart v. Dukes*, was especially contentious, involving disagreements over virtually every aspect of the case, resulting in over 1,400 court docket entries. Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel, who invested millions of dollars in costs and tens of millions of dollars in time, stood to gain nothing in this case if it was unsuccessful. *Id.*

In sum, both the complexity and magnitude of the claims (*Goldberger* factor 2), and the risk undertaken (*Goldberger* factor 3), support finding that Class Counsel's fees are reasonable.

**c.   The Requested Fees are Reasonable in Relation to the Settlement (*Goldberger* Factor 5).**

A fee of one-third of the settlement fund is also reasonable and "consistent with the norms of class litigation in this circuit." *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 04082, 2010 U.S. Dist. LEXIS 139136, at *18-19 (S.D.N.Y. Nov. 29, 2010) (collecting cases); *see also Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647, at *11 (S.D.N.Y. Mar.

14, 2023) (Torres, J.) ("Courts in this district have approved similar attorney's fees of approximately one-third from class settlement funds, which is 'well within the applicable range of reasonable percentage fund awards.'" (quoting *DDAPV Direct Purchaser Antitrust Litig.* No. 05 Civ. 2237, 2011 U.S. Dist. LEXIS 97487 (S.D.N.Y. Nov. 28, 2011))); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*, No. 17 Civ. 6255, 2022 U.S. Dist. LEXIS 144266, at *12 (E.D.N.Y. Apr. 12, 2022) (collecting cases and holding that "one-third" is "reasonable and consistent with awards in similar cases in this Circuit"); *Pudu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061, 2021 U.S. Dist. LEXIS 90819, at *18 (S.D.N.Y. May 12, 2021) ("Applying the percentage method, 33.3% is within the range of fee awards typically awarded."). Here, the one-third amount requested is also a fair approximation of Class Counsel's actual hours and lodestar. Class Counsel's current approximate lodestar—which will continue to grow—is $47,034,316.50. As set forth above, the requested fee represents a modest multiplier of 1.52 on this lodestar, which falls below the multipliers routinely accepted in this Circuit and District. *See supra* § III.A.2.

Here, because courts in this Circuit have routinely granted requests for one-third of the fund in cases with similar or lower multipliers, *Goldberger* factor 5 also weighs in favor of granting the requested fee award.

####  d.   Public Policy Considerations Support the Reasonableness of Class Counsel's Requested Fees (*Goldberger* Factor 6).

Public policy also weighs in favor of granting Class Counsel's request. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). Courts have recognized that fee awards serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future

misconduct of a similar nature. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).

Class actions are also an invaluable safeguard of public rights. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that many plaintiffs "would have no realistic day in court if a class action were not available"). An award of attorneys' fees ensures that plaintiffs' claims will be brought. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). In this case, public policy weighs heavily in favor of awarding Class Counsel's requested fee. This litigation and settlement directly further the purpose of Title VII and the NYCHRL to challenge and dismantle gender discrimination in the workplace.

The statutes at issue, Title VII and the NYCHRL, are each subject to fee-shifting. *See* 42 U.S.C. § 2000e-5(k); N.Y.C. Admin. Code § 8-502(g) ("In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs."). While Class Counsel are not seeking fee-shifting here, the existence of these provisions reflects a legislative judgment that individuals with discrimination claims should be able to attract effective representation even if they could not afford a lawyer (or if the claims were relatively small), and a legislative intent to encourage private enforcement of civil rights statutes to the benefit of the public as a whole. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (attorneys' fees provision was enacted to encourage pursuance of judicial relief); *see also Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (Brennan, J., concurring in part) (fee awards provide "a meaningful opportunity to vindicate" policies (quoting S. Rep. No. 94-1011, at 2 (1976))); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."). These rationales apply with full force here, where the public interest in vindicating the civil rights of individuals

discriminated against on the basis of their gender is high. *See* N.Y.C. Admin. Code § 8-101 ("[T]here is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . gender[.]").

**B.      Class Counsel's Request for Reimbursement of Costs Is Reasonable.**

Class Counsel request reimbursement of $6,671,072 for their out-of-pocket litigation costs to be paid from the settlement fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).

Here, Class Counsel's expenses over this thirteen-year litigation before this Court were incidental and necessary to the representation of the Class and are in line with costs charged to individual clients who pay out of pocket. Dermody Decl. ¶¶ 48-51; Klein Decl. ¶¶ 59-61 & Ex. 2. These expenses include five rounds of mediation fees, court fees, depositions (videographer and court reporter fees), document management, expert witness fees over two rounds of expert discovery, jury consulting fees, notice administration for both class notice and arbitration notices, case website fees, postage, transportation, printing, copying, electronic legal research, attorney travel, and process server fees. Dermody Decl. ¶¶ 48-51; Klein Decl. ¶ 60.[5]

Reimbursement for such expenses and costs is routinely granted. *See In re Signet*

---

[5]  Because Plaintiffs anticipate approximately $20,000 in additional expert costs, with only $5,662.31 remaining in the Joint Cost Fund, Plaintiffs now request an additional $15,000 on top of the costs detailed herein—to account for additional expenses between now and final approval, with this amount to be confirmed by final approval. To the extent Plaintiffs incur less than this additional amount, they will reduce their reimbursement request accordingly in connection with their reply briefing. This amount requested is less than the amount estimated in the Class Notice. Dermody Decl. ¶ 48 & n. 1.

*Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728, 2020 U.S. Dist. LEXIS 128998, at *64, *69 (S.D.N.Y. July 21, 2020) (granting reimbursement of $3,149,815.55 in expenses, including "expert fees, deposition costs, on-line legal and factual research, document management and hosting, mediation fees, travel costs, and photocopying expenses"); *Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 U.S. Dist. LEXIS 131277, at *12-13 (S.D.N.Y. Sept. 20, 2016) (granting reimbursement of litigation costs, including expert fees); *Fleisher v. Phx. Life Ins. Co.*, No. 11 Civ. 8405, 2015 U.S. Dist. LEXIS 121574, at *76-77, *80 (S.D.N.Y. Sep. 9, 2015) (granting reimbursement of "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation"); *In re U.S. Foodserv., Inc.*, 2014 U.S. Dist. LEXIS 200758, at *13 (granting reimbursement of over $8 million in litigation costs); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, at *31-32 (S.D.N.Y. Oct. 2, 2013) (approving reimbursement of class counsel's expenses); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 U.S. Dist. LEXIS 127890, at *19-20 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (awarding reimbursement of costs); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (noting that it is common practice to grant expense requests and awarding $18.7 million in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses."). The expenses incurred here are reasonable, given the length of the litigation, complexity of the issues, and tremendous resources Goldman brought to bear.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the requested attorneys' fees and reimbursement of costs to Class Counsel.

Respectfully Submitted,

Dated: July 12, 2023

*/s/ Adam T. Klein*

Adam T. Klein
Cara E. Green
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

Dated: July 12, 2023

*/s/ Kelly M. Dermody*

Kelly M. Dermody (admitted pro hac vice)
Cara E. Green
Christopher M. McNerney
Anne B. Shaver (admitted *pro hac vice*)
Michael Levin-Gesundheit (admitted *pro hac vice*)
Michelle A. Lamy (admitted *pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel J. Geman
Jessica A. Moldovan
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

*Attorneys for Plaintiffs and the Class*