## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| H. CRISTINA CHEN-OSTER, SHANNA ORLICH, ALLISON GAMBA, and MARY DE LUIS,<br><br>Plaintiffs,<br><br>-against-<br><br>GOLDMAN SACHS & CO. LLC and THE GOLDMAN SACHS GROUP, NC.,<br><br>Defendants. | Case No. 1:10-cv-6950-AT-RWL |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 2

    A.  The Litigation ............................................................................................ 2

    B.  Notice of Settlement to the Class Members ............................................. 2

    C.  Class Members' Reaction to the Settlement ........................................... 5

III. ARGUMENT ..................................................................................................... 7

    A.  Judicial Policy Favors Settlement. ........................................................... 7

    B.  The Settlement Is Fair, Reasonable, and Adequate, and
        Should Be Approved in All Respects. ....................................................... 7

        i.  The Settlement Is Procedurally Fair. ............................................... 8

        ii. The Settlement Is Substantively Fair. ........................................... 10

            a.  *Grinnell* Factors 1, 3, 4, 5, 6, 7, 8 and 9. ..................... 11

            b.  *Grinnell* Factor 2. ........................................................ 12

            c.  Rule 23(e)(2) Additional Considerations. ...................... 17

    C.  The Notice Satisfied Rule 23. ................................................................. 20

IV. Certification of the Settlement Class under Rule 23(b)(3) Continues
    to be Appropriate. ............................................................................................ 22

V.  CONCLUSION ................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 11

*Bhatia v. Piedrahita*,
    756 F.3d 211 (2d Cir. 2014) ............................................................................ 14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................... *passim*

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ................................................................................ 9

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ............. 8

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ........................................................................... 10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ....................................................................... 7, 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................... 8

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .......................................................................... 8, 19

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................. 8-9

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................. 19

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ............................................................................. 8

*Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .......................................................................... 7-8

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................... 7

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ...... 20

*Rodriguez v. It's Just Lunch Int'l*,
    No. 07 Civ. 09227, 2019 U.S. Dist. LEXIS 228270 (S.D.N.Y. Mar. 2, 2020) ..................... 17

*Seijas v. Republic of Arg.*,
    No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398 (S.D.N.Y. Apr. 27, 2017) ........................ 17

*Soler v. Fresh Direct, LLC*,
    No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023) ....................... 21

*Stinson v. City of N.Y.*,
    256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................... 14

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................ 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................... 7, 17,  19

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................... 17

## RULES

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## I.    INTRODUCTION

Plaintiffs seek final approval of this Class Action Settlement with Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. (together, "Goldman Sachs").  The $215-million Settlement follows nearly 13 years of vigorously contested litigation in this Court on behalf of a class of female Associates and Vice Presidents in revenue-producing roles at Goldman Sachs in the Investment Banking, Investment Management, and Securities Divisions or any of their successor groupings in the United States.  Based on more than 600 contacts between current and former Goldman Sachs employees and the Settlement Administrator, and more than 875 contacts with Class Counsel, the response to the Settlement has been overwhelmingly positive.  Most importantly, only one Class Member (solely from the newly-added group of 45 recently noticed Class Members) has objected, and only 16 of 2,845 (or less than 0.6%) have opted out.  *See* Declaration of Sara Schwermer-Sween for Rust Consulting, Inc. ("Schwermer-Sween Decl.") ¶¶ 16, 24.  The Court preliminarily concluded months ago that the Settlement is "fair, reasonable, and adequate," and it is now clear that the Court can readily confirm that finding. ECF No. 1446 at 1.

As supported by the positive response of the Class, and for the reasons stated below, Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement as fair, reasonable and adequate pursuant to Rule 23(e); (2) granting final judgment pursuant to the terms of the Settlement Agreement; (3) dismissing the Litigation with prejudice pursuant to the terms of the Settlement Agreement; and (4) retaining jurisdiction solely for purposes of enforcing the Settlement Agreement.[1] Goldman Sachs does not oppose this motion.

---

[1]     A Proposed Order is attached to the Notice of Motion. Plaintiffs have separately moved for Approval of Attorneys' Fees and Costs (ECF No. 1451) and Settlement Class Representative Service Awards (ECF No. 1449), which are also addressed in the Proposed Order.

## II.     BACKGROUND

### A.     The Litigation

An in-depth factual background of the litigation and settlement negotiations is set forth in Plaintiffs' Motion for Preliminary Approval (ECF. No 1440) and Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 1451).

In brief, this Settlement follows over a decade of intensely hard-fought litigation, spanning over 1,400 docket entries, and comes only as the Parties were about to begin trial.  The Settlement was reached after six separate efforts at mediation over the life of the case, under the supervision of an experienced mediator, and after vigorous arm's-length negotiations.

### B.     Notice of Settlement to the Class Members

On May 8, 2023, Plaintiffs moved for Preliminary Approval of the Settlement.  ECF No. 1440.  This Court subsequently granted preliminary approval and approved dissemination of the proposed Class Notice, which explained the monetary and programmatic relief as well as the proposed allocation of attorneys' fees and costs. ECF No. 1441-1 (Settlement Agreement), Ex. 1 (Notice).  The Class Notice also provided specific information regarding how to object to or exclude oneself from the Settlement.  *Id.*

On or about May 22, 2023, Goldman Sachs provided Settlement Administrator Rust Consulting, Inc. ("Rust") with a list containing Class Member's names, last known addresses, Social Security Numbers and applicable employment information.  Schwermer-Sween Decl. ¶ 10.  The Class List contained data for 2,796 Class Members.  *Id.*

Rust maintained a dedicated case website listing telephone and email contact information for the Settlement Administrator and for Class Counsel. *Id.* § VI(C)(6).  On June 12, 2023, Rust mailed and emailed the Court-approved Notice to each Settlement Class Member's last known

residential and personal email address.  Schwermer-Sween Decl. ¶ 12.  Rust ran the list of

Settlement Class Members through the United States Postal Service's National Change of

Address database before mailing the Notice.  *Id.* ¶ 11.  Along with the Notice, Rust sent each

Settlement Class Member an estimate of each Settlement Class Member's Settlement Share.  *Id.*,

Ex. A.  If Notices were returned to Rust by the United States Postal Service with forwarding

addresses, Rust promptly re-mailed the Notice to the new address.  *Id.* ¶ 15.  For any Notices that

were returned without a forwarding address, Rust performed a standard skip trace in an effort to

ascertain the current address.  *Id.*  If such an address was ascertained, the Settlement

Administrator promptly re-mailed the Notice.  *Id.*  In total, all but 36 paper notices were

successfully delivered through this process.  *Id.*.  In addition, of the 36 mailed notices that

remained undeliverable, Rust was able to determine that 18 of these individuals opened their

emailed copy of the notice.  *Id.*  This means that, at minimum, the Class Notice reached 99.4% of

Class Members.  *Id.*  It is reasonable to expect that, given extensive media reporting on the case

and the regular communication between and among Class Members about this Settlement, these

18 remaining individuals still were made aware of the Settlement.  Indeed, one of these 18 was

nevertheless among the individuals who contacted Class Counsel about the Settlement.

Declaration of Michael Levin-Gesundheit ("Levin-Gesundheit Decl.") ¶ 5.

Settlement Class Members had until July 27, 2023 to object to or opt out of the

Settlement.  Schwermer-Sween Decl. ¶ 12.  Two weeks prior to that deadline, on July 12, 2023,

Class Counsel filed their motion for attorneys' fees and costs, and for service awards to the

Named Plaintiffs.  Class Counsel published copies of these materials on the Settlement web

page.  *Id.* ¶ 8.  No Class Members objected and only 16 Class Members opted out by the

exclusion deadline (with one additional individual seeking to opt out late).  *Id.* ¶¶ 16-17.

On August 26, 2023, the Court directed the Settlement Administrator to issue Supplemental Notice to 45 additional Class Members ("Supplemental Members") in accordance with the Notice Procedures in the Settlement Agreement, which applied to the original Notice. ECF No. 1455 (Order).  The Order was posted on the Settlement web page shortly thereafter. Schwermer-Sween Decl. ¶ 18.  On September 5, 2023, Rust mailed and emailed the Supplemental Notice to Supplemental Members.  *Id.* ¶ 20.  Supplemental Members had until October 20, 2023 to object to or opt out of the Settlement.  *Id.* ¶ 22.  In response to this Supplemental Notice, one Class Member objected, and no Class Members opted out.  *Id.* ¶¶ 23-24.

Thus, as described above, just one Class Member objected to the Settlement, and sixteen Class Members chose to opt out of the Settlement.  *Id.* ¶¶ 16, 24.  No Class Member has requested to appear at the Fairness Hearing.

Should the Court grant final approval, within 14 days of the Effective Date, Rust will distribute checks to all Settlement Class Members.  ECF No. 1458 (Joint Stipulation and Order) at 3.  Each Settlement Class Member will have 180 days to cash her check.  ECF No. 1441-1 (Settlement Agreement) § VIII(C)(1).  Rust will distribute a reminder postcard 60 days prior to the check expiration date, will attempt to contact Settlement Class Members who have not cashed their checks via telephone or email, will perform an address trace for any undeliverable checks, and will re-send the checks if a different address is found.  *Id.*

If there is a remaining balance of more than $150,000 in the Net Settlement Fund after 180 days from initial distribution from the Net Settlement Fund, Rust will issue a second distribution to those Participating Settlement Class Members who deposited their initial check, and will provide Participating Settlement Class Members with another 180 days to cash the

second checks. *Id.* § VIII(C)(2).  If, after this second distribution, there is a remaining balance of funds in the Net Settlement Fund (or if there is no redistribution), the remaining balance shall be paid to *cy pres* recipients the National Women's Law Center and Equal Rights Advocates.  *Id.*

### C.    Class Members' Reaction to the Settlement

Over the course of the past four months, Class Counsel have received communications from at least 875 women who work or worked at Goldman Sachs regarding the Settlement. Levin-Gesundheit Decl. ¶ 6.  These inquiries began even before Plaintiffs filed their motion for preliminary settlement approval (due to press coverage of the proposed Settlement) and have continued since.  In the period prior to the dissemination of the Class Notice, Class Counsel established an online form to collect basic information from these individuals and determine their status as members of the Class.  *Id.* ¶ 4.  Before dissemination of the Class Notice, Class Counsel received 655 inquiries via this channel alone.  *Id.* ¶ 5.  Class Counsel continued to receive inquires via email and phone calls after the dissemination of Class Notice.  *Id.*

Settlement Class Members are overwhelmingly enthusiastic about the Settlement.  *Id.* ¶ 7. One Class Member submitted a comment to Rust expressly supporting the Settlement, stating "[a]s a former female employee of Goldman Sachs & Co with a long tenure," the "case resonate[d] with [her]."  Schwermer-Sween Decl.¶ 18, Ex. B.  She wrote that she was "grateful for the group of plaintiffs that had the courage to proceed publicly on our behalf."  *Id*.  Dozens of Settlement Class Members also expressed gratitude to the Named Plaintiffs and appreciation for Class Counsel's many years of work on their behalf.  Levin-Gesundheit Decl. ¶ 7.  Comments included "I was so pleased to see this outcome. A tremendous victory!"; "I am so appreciative of the work done by your firm and the women who brought this case forward"; "Congratulations on getting this across the finish line! I can't imagine how much work went into it. Lots of plaintiffs

appreciate your work."; and "I believe this case will advance gender equity going forward." *Id.* (detailing representative comments). Class Counsel also answered numerous Class Member inquires on how the allocation formula worked. *Id.* Class Counsel continue to receive communications regarding the Settlement and have been in regular communication with Goldman Sachs's attorneys regarding individualized inquiries about personnel data and eligibility. *Id.* ¶ 4.

Moreover, only one of 2,845 Class Members objected to the Settlement. As addressed more fully below in Section II.B.ii.b, the Objector takes no issue with the adequacy of the Settlement itself, but rather would like to see non-Class Members benefit from the Class recovery and certain Class Members (including herself) receive larger Settlement Allocations (which necessarily means that other Class Members would see their Settlement Allocations decrease). In particular, the Objector challenges Goldman Sachs's longstanding coding of certain job roles as non-revenue producing. These job roles, one of which the Objector occupied before promotion into a class role in early 2023, were never part of this case. While individuals like the Objector who held non-covered roles may be disappointed not to receive a check (or in the Objector's case, a larger check), this is not a proper basis to object to approval of the Settlement for the certified Class. That is because the data analytics supporting the Settlement never included them and the Settlement itself does not release claims related to non-covered roles. The Objector and anyone else who held these non-covered roles remain free to pursue claims related to those roles, based on data analysis and other evidence related to those roles. Indeed, the fact that the Objector would like to see the Settlement cover even more people is evidence of the substantial value the Settlement provides for covered Class Members.

## III.      ARGUMENT

### A.      Judicial Policy Favors Settlement.

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and quotations omitted), *superseded by statute on other grounds as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context." (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).

### B.      The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine whether "the class representatives and class counsel have adequately represented the class," and whether "the proposal was negotiated at arm's length." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts must consider whether "the relief provided for the class is adequate," considering specific factors enumerated in Rule 23(e)(2)(C), and whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  To guide analysis of these requirements, courts consider the factors set forth in *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  *See Moses*, 79 F.4th at 243 ("[O]ur traditional *Grinnell* factors[] . . . remain a useful framework for considering the substantive fairness of a settlement.").  In making its fairness determination, courts recognize the "unique ability of class and defense counsel to assess the potential risks and rewards of litigation. . . . " *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at \*6-7 (S.D.N.Y. May 7, 2015).

### i.   The Settlement Is Procedurally Fair.

To find a settlement procedurally fair, reviewing courts "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted); *superseded by statute on other grounds as stated in Moses*, 79 F.4th at 243; *see also* Fed. R. Civ. P. 23(e)(2)(B).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at \*3 (S.D.N.Y. July 31, 2008).  Additionally, the court must determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P 23(e)(2)(B).  "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019)

8

(quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

Here, as the Court found at preliminary approval, the settlement negotiations between the Parties reflect a procedurally fair process.  The negotiations were adversarial, stopping and starting amidst intensive litigation over a decade; involved many mediations, meetings and communications; included multiple settlement proposals; and were facilitated by experienced, independent mediators.  Declaration of Adam T. Klein in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Klein Decl.") ¶ 4.  The Parties attended six mediation sessions with four different experienced mediators, five of which were unsuccessful.  *Id.*

The Named Plaintiffs were very closely engaged in the settlement process over the course of these thirteen years, including by repeatedly taking time off from work for rounds of mediation, traveling across the country to meet in person with Plaintiffs' counsel numerous times before and during mediations, and spending significant hours communicating with Plaintiffs' counsel on settlement positions-through calls, video-conferences, and emails-on each decision point.  *Id.* ¶ 5.

At all times during this process, the Parties' respective counsel argued and bargained vigorously on behalf of their clients.  *Id.* ¶ 6.  These arm's-length negotiations involved counsel well-versed in employment discrimination class action law, and "qualified, experienced and able to conduct the litigation."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.  Plaintiffs are represented by lawyers who are recognized as national leaders in complex employment matters, who have been appointed as class counsel and successfully prosecuted numerous class actions, including in the area of employment discrimination.  *See* ECF No. 1452 (Declaration of

9

Adam Klein) ¶¶ 2-6, Ex. 3; ECF No. 1453 (Declaration of Kelly Dermody) ¶¶ 35-39, Ex. A.

These highly experienced litigators have endorsed the Settlement.  Additionally, the interests of

Plaintiffs are not antagonistic to the Class: they suffered the same injuries and have an "interest

in vigorously pursuing the claims of the class."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268

(2d Cir. 2006). [2]

 Accordingly, consistent with its Preliminary Approval Order, the Court should affirm the

procedural fairness of the settlement.

   **ii. The Settlement Is Substantively Fair.**

 In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the

substantive fairness of a class action settlement. 495 F.2d at 448.  The *Grinnell* factors guide

district courts in making this determination.  They are: (1) the complexity, expense, and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund

to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  In addition, Rule

23(e) directs the Court to consider whether "the relief provided for the class is adequate,"

---

[2] Plaintiffs also respectfully direct the Court to their Memorandum of Law in Support of
Plaintiffs' Unopposed Motion for Approval of Class Representatives' Service Awards, *see* ECF
No. 1449, which set out Plaintiffs' efforts on behalf of the Class, and incorporate by reference
the arguments therein.

considering specific factors overlapping with the *Grinnell* factors,[3] and whether "the proposal treats class members equitably to each other."  Fed. R. Civ. P. 23(e)(2)(C), (D).

Here, all *Grinnell* factors strongly weigh in favor of final settlement approval, as addressed at length in Plaintiffs' Motion for Preliminary Approval and the Court's Preliminary Approval Order.  *See* ECF No. 1440 at 24-29; ECF 1446 at 2-3. For the Court's convenience, Plaintiffs summarize those points here, while expanding on *Grinnell* factor 2 in light of the reaction of the Class and the Rule 23(e)(2) analysis.

### a.  *Grinnell Factors 1, 3, 4, 5, 6, 7, 8 and 9.*

To recap, *Grinnell* factor 1 is satisfied because by reaching a favorable settlement before a trial, appeals, and a further damages phase, Plaintiffs avoid significant expense and delay and ensure timely individual and programmatic relief for the Class.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); *see also* ECF No. 1440 at 24-25; Klein Decl. ¶ 17.  *Grinnell* factor 3 is satisfied because the Parties completed all pre-trial discovery, and thus had more than sufficient information to evaluate the strengths and potential weakness of their claims.  *See* ECF No. 1440 at 26; *see also* Klein Decl. ¶ 18.  *Grinnell* factors 4 and 5 are satisfied because, although Plaintiffs believe their claims are meritorious, they also recognize the significant legal and procedural obstacles they would face in establishing liability and recovering damages at trial.  *See* ECF No. 1440 at 26-27; *see also* Klein

---

[3]     Those factors are: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

Decl. ¶ 19.  *Grinnell* factor 6 is satisfied because Goldman Sachs would have had another opportunity to decertify the Class after trial and on appeal and the Settlement eliminates any further risk of decertification.  *See* ECF No. 1440 at 27-28; *see also* Klein Decl. ¶ 19.  As to *Grinnell* factor 7, Goldman Sachs's ability to withstand a greater judgment is a neutral factor but the Settlement eliminates the risk that Plaintiffs and Settlement Class Members may not recover anything.  *See* ECF No. 1440 at 28-29; *see also* Klein Decl. ¶ 20.  *Grinnell* factors 8 and 9 are satisfied because this Settlement is comprehensive, with significant programmatic adjustments related to the concerns that led to this litigation.  *See* ECF No. 1440 at 28; *see also* Klein Decl. ¶ 21.

### b.  *Grinnell Factor 2.*

With respect to *Grinnell* factor 2, Plaintiffs can now apprise the Court that the Class's reaction is exceedingly positive.  The Class Notice, which was sent to approximately 2,845 women, detailed the Settlement's monetary and programmatic relief, disclosed Class Counsel's fee request and the Named Plaintiffs' service award request, and provided clear instructions on how to exercise one's right to exclude oneself or object to the Settlement.  In response, as of the close of the general opt-out/objections period, no Class Members had objected and 16 Class Members timely opted out[4]; one Class Member among the 45 later-noticed Class Members objected, with no additional opt outs.  The objection represents 0.03% of the Class and the opt-outs amount to less than 0.6% of the Class.  Schwermer-Sween Decl. ¶¶ 16, 24.  The Settlement Administrator also received a letter from a Class Member supporting the Settlement, complementing the many supportive messages Class Counsel have received.  Schwermer-Sween

---

[4]     In addition, one Class Member submitted an untimely opt-out request approximately a month and a half late, which Goldman Sachs has indicated it will not agree to accept based on the limited information available.  Class Counsel would honor the late opt out.

Decl. ¶ 18, Ex. B.  Furthermore, Settlement Class Members expressed considerable enthusiasm about the Settlement, including dozens who expressed gratitude to the Named Plaintiffs and appreciation for Class Counsel's many years of work on their behalf.  Levin-Gesundheit Decl. ¶ 7.

The single objection, offered by an Objector who became an Associate at Goldman Sachs in 2020, provides no basis to reject the Settlement under any of the *Grinnell* factors or Rule 23(e).  Her objection is that she wishes the Settlement Class encompassed more job roles outside the certified Class.  Specifically, she complains that the Settlement Class does not cover positions that Goldman Sachs has long coded as non-revenue producing, including, in particular, the role she held for three years as an Associate Wealth Management Professional ("WMP").  In 2023, the Objector was promoted to a position that Goldman Sachs codes as revenue producing: Vice President WMP.  She claims that, based on personal experience, her job duties as an Associate WMP (when she was not a Class Member) did not vary enough from her duties as a Vice President WMP (when she became a Class Member, upon promotion in 2023) to justify the two positions being treated differently.  Respectfully, this Objection should be overruled both because the Objector has no standing to object on behalf of job roles not covered by the lawsuit, and because, even if she had standing, she bases this argument on a misunderstanding of when job roles were coded as revenue producing, misapprehending that such determinations were made to settle this lawsuit when, in fact, they have been part of Goldman's professional operations (and a consistent limiting principle in this case) since before this lawsuit was filed.

While Class Counsel take no position on the content of the Objector's current, individual job duties, Class Counsel vigorously oppose the Objector's request to undo a Settlement because time spent in non-Class roles is not included.  It is, of course, black-letter law that non-Class

Members have no standing to object to class Settlements.  *See* Rule 23(e)(5) (describing "Class-Member Objections"); *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 291 (S.D.N.Y. 2017) (same). Here, the Objector wears two hats.  She is a Class Member, on account of a few months of work in a Class role in 2023, but, as to her work at Goldman Sachs before 2023, she is *not* a Class Member.  Her objection is made solely wearing that second hat.  She objects in her capacity as a non-Class Member for claims that are *not* settled or released here and for which she therefore suffered no "formal legal prejudice as a result of the [S]ettlement." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (addressing the issue in the related context of non-settling defendants' standing to object).  While Plaintiffs nonetheless address the merits, such an objection ultimately cannot properly be before the Court.

Turning to the merits, the objection should be overruled for several reasons. First, the objection does not account for a basic principle of class definitions in all class actions:  that boundaries must be set based on objective criteria (like personnel data and resulting expert analyses), such as occurred here.  Anecdotal experience as to time in a non-Class position is not a reason to question common evidence or undo the settlement on behalf of thousands of others in Class positions on whose behalf this common evidence has been collected and analyzed ever since the case was filed 13 years ago.

Additionally, the Objector's suggestion that the litigation class and Settlement Class definitions differ as to the use of the revenue designation is wrong.  Plaintiffs filed this case on September 16, 2010, on "behalf of a class of ***similarly situated*** current and former Associates, Vice Presidents, and [at the time] Managing Directors."  ECF No. 5 at ¶ 12 (emphasis added). Immediately after the complaint was filed, Plaintiffs and Goldman Sachs began conferring about what "similarly situated" meant.  Klein Decl. ¶ 11.  Goldman Sachs explained that within the

revenue-producing divisions of Goldman Sachs (e.g., Investment Banking, etc.), Goldman Sachs distinguished between revenue-producing and administrative/support roles by a code applied in the HR system. *Id.* Plaintiffs fully considered the issue and decided—more than 12 years ago now—to proceed on behalf of individuals who, like the named Plaintiffs, were coded as engaging in revenue-producing activities, and not on behalf of women coded in non-revenue roles. *Id.* Accordingly, the Parties proceeded with discovery as to only individuals that were revenue-producing as coded in the Goldman Sachs HR system. *Id.* To be clear, non-revenue-producing roles were *not* included in any of the data analyses run by Plaintiffs' or Goldman Sachs's experts that informed litigation strategy, and were not presented as common proof at class certification and summary judgment, or to support any exposure that underpinned settlement negotiations. *Id.* ¶ 12. [5]

---

[5]   *See, e.g.*, Nov. 19, 2013 Farber Dep. Tr. (ECF No. 362-3) at 111:4–10 (confirming his analysis was limited to individuals in "*revenue-producing position[s]* in a revenue division during the time frame [he was] studying them"); Feb. 18, 2014 Cascio Report (ECF No. 260) ¶ 30 (analyzing "U.S.-based Associates and Vice-Presidents in *revenue-producing roles* of four divisions"); Apr. 19, 2021 Farber Report (ECF No. 1242-44) ¶ 45 (opining that Plaintiffs' damages model was appropriate for "a class consisting of *revenue-producing employees*" with allegedly common attributes); Mar. 19, 2021 Yermack Report (ECF No. 1242-48) ¶ 13 ("Associates and Vice Presidents in *revenue-generating roles* at financial services firms are purposefully educated and trained with a common skill set to enable flexibility to respond to the employer's needs and changes in the market."); Mar. 19, 2021 Stockdale Report (ECF No. 1192-10) ¶ 300, n. 670 ("[T]he data [analyzed] are limited to people who were, at least at one relevant time, in a *revenue-producing role* in one of Goldman Sachs' offices in the United States, in IMD, IBD, or Securities."); Jan. 15, 2021 Cascio Report (ECF No. 1242-34) ¶ 37.(describing report's focus on "the performance-review and promotion processes for U.S.-based Associates and Vice-Presidents in *revenue-producing roles* of three divisions"); Jan. 15, 2021 Dunn Report (ECF No. 1225-56) at 3 n.4 (explaining understanding that "the Class in this case is limited to *revenue-producing professionals, as identified by the job codes used by Goldman Sachs*."); Jan. 15, 2021 Dunleavy Report (ECF No. 1242-39) at 5A-9 (competency factors for "*non-revenue professionals*" are "*not relevant to this matter*"); Farber Dep. Tr. (ECF No. 1242-45) at 21:23–22:2 (Q.   "And *did you analyze* the data for Goldman Sachs *employees who did not work in a revenue-generating position*?"   A.   "Not that I can recall, *no*.") (emphases added).

Consistent with the scope of discovery and data analysis, at class certification, Plaintiffs sought only to certify a class of women in roles coded as revenue producing in the three Class divisions.  *See* Pls.' Mem. of Law ISO Class Cert. at 3-4, ECF No. 247 ("Class members are female Associates and Vice Presidents ***in revenue-producing roles*** in three of the company's nine divisions. . . ."); Pls.' Reply ISO Class Cert at 45, ECF No. 310 ("The proposed Class includes female Associates and Vice Presidents ***in revenue-producing roles*** in Goldman's three main revenue-generating divisions: Securities, Investment Management, and Investment Banking.").  The Court then "GRANTED in part and DENIED in part" Plaintiffs' Motion for Class Certification (certifying a class under Rule 23(b)(3) but not under 23(b)(2)), but did not, as the Objector misunderstands, *sua sponte* expand the class.  ECF No. 578 at 49.  In other words, the Court granted Plaintiffs' motion and certified the class Plaintiffs sought to certify: a class of Associates and Vice Presidents in revenue-producing roles.

Following class certification, the 2018 litigation class notice was distributed only to employees coded as revenue producing in Goldman Sachs's HR system.  Klein Decl. ¶ 13.  The same is true of the 2023 Settlement Class notice.  *Id.*  Simply put, whether a position was coded as revenue producing in the HR system has been as accepted a boundary in this case in the same way as whether the system coded the person as working as a Managing Director (non-class) or Vice President (class) has been accepted as a boundary, and this has been true for more than a dozen years—from discovery to class certification and to settlement.  *Id.* ¶ 14.  It would be inequitable to the women in the Class to dilute their recoveries by including individuals whose claims were never subject to full discovery and whose damages (if there are any) were not analyzed or bargained for in Settlement negotiations.    Critically, as described above, Associate WMPs—and any other non-revenue-producing roles, for that matter—have never been part of

the class and are not releasing claims under this Settlement.  This Settlement simply does not impact them.[6]

Ultimately, even accounting for the lone objection, "the fact that the vast majority of class members neither objected nor opted out is a strong indication" of the settlement's fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008); *see also Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 09227, 2019 U.S. Dist. LEXIS 228270, at *14 (S.D.N.Y. Mar. 2, 2020) ("[T]he extremely low number of objectors as a percentage of the Classes strongly supports approval of the settlement."); *Seijas v. Republic of Arg.*, No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398, at *25 (S.D.N.Y. Apr. 27, 2017) ("The low number of objectors supports settlement approval." (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 118).

In granting preliminary approval, the Court previously found that "the Settlement is fair, reasonable, and adequate."  ECF No. 1466 at 1.  Based on the response to the notice program, the Court can now confirm that finding, as the Class more than agrees.

### c.  *Rule 23(e)(2) Additional Considerations.*

The settlement also meets the substantive requirements of Rule 23(e)(2) because the monetary and non-monetary relief provided to the Class is more than adequate, and the Parties' agreement treats Class Members equitably to each other.  *See* Fed. R. Civ. P. 23(e)(2)(C), (D).

*First*, the relief provided to the Class is substantial for the reasons discussed as to *Grinnell* factors 1, 4, 5, and 6, especially in light of "the costs, risks, and delay of trial and

---

[6]      The supporting declaration of a non-Class Member submitted by the Objector does not provide any additional arguments against approving the Settlement.  To be clear, unlike the Objector (who became a Class Member for a short period of time in 2023), the declarant has never worked in a Class position and thus, unlike the Objector, has no standing to object to any part of the Settlement (and she remains free to pursue her own case for all purposes, should she choose to do so).

appeal." Fed. R. Civ. P. 23(e)(2)(C)(i).  Class Members are provided with a significant monetary

recovery and the programmatic adjustments agreed to by the Parties directly address the

concerns that were the subject of this litigation.

*Second*, the proposed method of distributing the relief to Class Members is effective and

Class Members are "treat[ed] . . . equitably relative to each other." *See* Fed. R. Civ. P.

23(e)(2)(C)(ii), (D).  Settlement Class Members' share of the Settlement Fund were calculated

based on (i) the number of work-weeks worked in relevant positions (and, for the Promotion

Process Claim, additional work-weeks if Participating Settlement Class Members were Vice

Presidents during years of a Managing Director promotion cycle) and (ii) for the Evaluation

Process Claim, Settlement Class Members' base salary applicable to those work-weeks.  ECF

No. 1441-1 (Settlement Agreement) §§ IX(B)-(D).  Thus, the allocation formula equitably tracks

the injury and relevant time in role.  Moreover, each Settlement Class Member will receive a

minimum of $3,000 from the settlement, ensuring that all Class Members receive compensation

for their release of claims.  *Id.* § IX(D)(2).  The method of processing claims was fair as well: the

Settlement Administration sent each Settlement Class Member an estimate of each Settlement

Class Member's Settlement Share.  *Id.* §§ VI(C)(4), III(cc), (dd).  Settlement Class Members had

45 days from the date of mailing to object to or opt out of the Settlement.  *Id.* § VI(D)(1).  Class

Members did not have to submit a claim form to participate in the Settlement.  Any additional

funds left over from the Settlement will be redistributed to Class Members or paid to *cy pres*

recipients the National Women's Law Center and Equal Rights Advocates.  *Id.* § VIII(C)(2);

Klein Decl. ¶ 22; *see also Grinnell* factors 8 & 9.

*Third*, the relief is additionally adequate because the terms of the proposed award of

attorneys' fees, including timing of payment, is reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

As discussed further in Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs, ECF No. 1451 at 17-19, Class Counsel's request for an attorneys' fee award amounting to one-third of the total settlement, is a reasonable amount because Class Counsel "create[d] a settlement fund for the benefit of a class [and] are entitled to be compensated for their services," *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  The "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations" all indicate that the fee request is reasonable and fair (again, as further discussed in Plaintiffs' motion seeking attorneys' fees). *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *Goldberger*, 209 F.3d at 50).  Per the Settlement Agreement, Class Counsel's request for attorneys' fees is to be considered independently from the Court's consideration of "the fairness, reasonableness, and adequacy of the Settlement" and the outcome of the fee request will not have any effect on the Settlement. ECF No. 1441-1 (Settlement Agreement) § X.A.2.  Moreover, as to timing, the payment schedule is reasonable because the Court has adopted a fair timing schedule, *see* ECF No. 1458 (Joint Stipulation and Order), and the payment of attorneys' fees and costs and Settlement checks are only two days apart.  *See* ECF No. 1441-1 (Settlement Agreement) § X.B.

*Fourth*, the agreement required to be identified under Rule 23(e)(3)  (the Parties' settlement agreement attached to the Declaration of Adam T. Klein in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No.1441, as Exhibit A) was accessible on the settlement website for viewing, downloading, and/or printing by Class Members, and was also provided to the Court for review as part of preliminary settlement approval.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv); *see also* Schwermer-Sween Decl. ¶ 8.

19

In sum, the *Grinnell* factors—including Plaintiffs' well-developed understanding of the strengths and weaknesses of the case and the significant risks, expense, and delay of further litigation—and a consideration of Rule 23(e)(2) conclusively support a finding that the Settlement is fair, adequate, and reasonable.

### C.       The Notice Satisfied Rule 23.

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . The notice must clearly and state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice here, which the Court approved in granting preliminary approval, has satisfied each of these requirements and complied with the procedures set forth in the Court's Preliminary Approval Order.  ECF No. 1446.  The Notice was written in plain language and organized and formatted to be as clear as possible.  Fed. R. Civ. P. 23(e).  It is based on the model notices provided by the Federal Judicial Center ("FJC").[7]  *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132, at *4, *6 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices).  The Notice included the Settlement's terms and the proposed attorneys' fees and costs; was sent with an individualized estimate of each Settlement Class Member's Settlement Share; explained how to opt out or object; and provided the date, time, and place of the fairness hearing.  *See* ECF No. 1441-1 (Settlement

---

[7]        *See* FJC, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited August 3, 2023).

Agreement), Ex. 1 (Notice); *see also Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023), at *18-19 (approving similar notice). This information was adequate to put class members on notice of the proposed settlement and satisfied the requirements of Rule 23(c)(2)(B).

Class Counsel's efforts to ensure that Class Members received notice of the proposed settlement (both the original and supplemental notices) have been exhaustive. First, the Parties retained Rust, an established firm specializing in class action settlement administration. Klein Decl. ¶ 8; Schwermer-Sween Decl. ¶ 3. Before sending the Class Notice and Supplemental Notice, Rust ran all addresses through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Schwermer-Sween Decl.¶ 11. Rust then sent the Class Notice and Supplemental Notice by First-Class U.S. Mail and e-mail to Class Members and Supplemental Members. *Id.* ¶¶ 12, 13, 20. None of the Supplemental Notices came back as undeliverable. *Id.* ¶ 21. For each notice issuance, Rust then ran electronic searches to determine any new or alternative address for the Class Members whose Class Notice were returned as undeliverable, and re-mailed 222 notices. *Id.* ¶ 15. The Class Notice was e-mailed to all email addresses provided in the Class List. *Id.* ¶¶ 13, 20. As described above in Section II.B, at minimum the Class Notice reached 99.4% of Class Members and, given the level of media coverage, word of the Settlement likely reached all or very nearly all Class Members. Levin-Gesundheit Decl. ¶ 3; Schwermer-Sween Decl. ¶ 15.

In sum, the dissemination of the Class Notice complied fully with the Rule 23 requirements.

**IV.    Certification of the Settlement Class under Rule 23(b)(3) Continues to be Appropriate.**

On March 30, 2018, the Court granted class certification under Rule 23(b)(3). ECF No. 578.  The Court found that the Class satisfied all the factors under Rule 23(a) and 23(b)(3), appointed Named Plaintiffs as Class Representatives, and appointed Plaintiffs' Counsel as Class Counsel. *Id.*  On May 15, 2023, the Court preliminarily approved the Settlement.  ECF No. 1446. This Court also appointed Named Plaintiffs as Settlement Class Representatives of the Settlement Class for purposes of settlement, and appointed Outten & Golden LLP and Lieff Cabraser Heimann & Bernstein LLP as Class Counsel for the Settlement Class.  *Id.* at 2.

Since that time, nothing has changed to alter the propriety of the Court's thorough certification analysis, that was vetted through adversarial litigation and a Rule 23(f) appeal.  The settlement class definition is entirely consistent with the previously certified class, which has always been limited to revenue-producing roles.  *E.g.*, ECF No. 247 at 3-4.[8]  Moreover, no Class Member has challenged the Court's finding that the elements of Rule 23 are met for purposes of settlement class certification.

**V.    CONCLUSION**

Accordingly, for the reasons stated herein, as well as in Plaintiffs' Motion for Attorneys' Fees and Costs, Plaintiffs' Motion for Service Awards, and in the proposed Order granting final approval, Plaintiffs respectfully request that the Court enter an order (1) approving the Settlement as fair, reasonable and adequate pursuant to Rule 23(e); (2) granting final judgment pursuant to the terms of the Settlement Agreement; (3) dismissing the Litigation with prejudice

---

[8]    Contrary to the Objector's arguments, no subclass was sought or created: if personnel data reflects that an individual was in a revenue-producing role during the relevant period in one of the three certified Divisions, they are in the class for that period of time.  *All* other roles are not included.

pursuant to the terms of the Settlement Agreement; and (4) retaining jurisdiction solely for purposes of enforcing the Settlement Agreement.

Respectfully submitted,

Dated: October 27, 2023        By:   _/s/ Adam. T. Klein_____

Adam T. Klein
Cara E. Greene
Christopher M. McNerney
Michael C. Danna
Sabine Jean
**Outten & Golden LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:   (212) 245-1000
Fax:    (646) 509-2060

Dated: October 27, 2023        By:   _/s/ Kelly M. Dermody_____

Kelly M. Dermody (admitted pro hac vice)
Anne B. Shaver (admitted pro hac vice)
Michael Levin-Gesundheit (admitted pro hac vice)
Michelle A. Lamy (admitted pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.:   (415) 956-1000
Fax:    (415) 956-1008

Rachel J. Geman
Jessica A. Moldovan
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Tel.:   (212) 355-9500
Fax:    (212) 355-9592

*Attorneys for Plaintiffs and the Class*