UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
H. CRISTINA CHEN-OSTER, SHANNA     :
ORLICH, ALLISON GAMBA and MARY     :
DE LUIS,                           :
                                   :
                  Plaintiffs,      :
                                   :
           v.                      :        10 Civ. 6950 (AT) (RWL)
                                   :
GOLDMAN SACHS & CO. and THE        :
GOLDMAN SACHS GROUP, INC.,         :
                                   :
                  Defendants.      :
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' RESPONSE TO
NOTICE AND STATEMENT OF OBJECTION**

Lynne C. Hermle (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Erin M. Connell (admitted *pro hac vice*)
Kathryn G. Mantoan (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Amanda Flug Davidoff
Jeffrey B. Wall (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006

*Attorneys for Defendants
Goldman Sachs & Co. and
The Goldman Sachs Group, Inc.*

October 27, 2023

**INTRODUCTION**

Just ***one*** out of the 2,829 Settlement Class Members in this thirteen-year-long class action have objected to the proposed Settlement.[1]  ("Objection" or "Obj."; ECF No. 1462-1, Ex. D.)  This "very low number of objections" standing alone "evidences the fairness" of the Settlement.  *In re Worldcom, Inc. Sec. Litig.*, 2005 WL 2319118, at \*15 (S.D.N.Y. Sept. 21, 2005) (Cote, J.); *see also Melito* v. *Am. Eagle Outfitters, Inc.*, 2017 WL 3995619, at \*12 (S.D.N.Y. Sept. 11, 2017) (Caproni, J.) (finding low objection rate "weigh[ed] in favor of approval"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457–58 (S.D.N.Y. 2004) (Lynch, J.) (low number of objectors and opt-outs was "a ringing endorsement of the settlement by class members").

Critically, the sole Objector does not challenge any of the monetary or programmatic relief to be provided to the Settlement Class, the scope of the reciprocal releases, or Class Counsel's requested fees.  *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*1 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.) (approving class settlement where "[n]ot one" objector "has objected to the amount of the Settlement, or to any of the substantive terms of the Settlement").  Rather, the objection arises from the Objector's dissatisfaction with receiving "only the minimum Settlement Share ($3,000)" (Obj. at 2) based on less than four months of work in a Class position over a more than 20-year Class period, and the fact that she cannot receive settlement credit for her time spent in a *non*-revenue-producing position that is outside the Settlement Class definition (*see* Settlement Agreement § III(z)(1)).

---

[1]     All capitalized terms not otherwise defined herein are defined the Settlement Agreement (*see* ECF No. 1441-1).

The Court should reject this single objection.  *First*, the Objector misreads the March 30, 2018 Class Certification Order and the underlying briefing as somehow supporting a broader class definition.  But as both Plaintiffs and Defendants agree, the massive record in this case confirms that class membership was at all times limited to women in revenue-producing roles in the three relevant Goldman Sachs divisions.  *Second*, the Objector claims, based only on her experience in a job she had held for a few months, that Goldman Sachs's process for designating employment positions as "revenue-producing" is arbitrary.  Not so.  Since at least a decade before this action was filed, Goldman Sachs has followed a principled and clear business process for designating job codes as either revenue-producing or non-revenue producing, and it is undisputed that the Objector held a position designated as non-revenue producing until January 2023.

For the reasons below, and as other courts have done when faced with similar objections, this Court should reject the objection and grant final approval of the Settlement.

## ARGUMENT

I.   **THIS CLASS ACTION WAS BROUGHT AND LITIGATED ONLY ON BEHALF OF FEMALE GOLDMAN SACHS EMPLOYEES IN REVENUE-PRODUCING JOB CODES IN THREE GOLDMAN SACHS DIVISIONS.**

The Objector's claim that the Settlement Class definition "significantly deviates" from the class certified by this Court (Obj. at 3–4) is wrong.  Instead, as shown below, the Settlement Agreement, which this Court has preliminarily approved (*see* May 15, 2023 Order (ECF No. 1446) at 1–2), is based on the same class definition that the parties and the Court has applied consistently since the start of this action.

Plaintiffs determined the scope of this class action in 2014 by moving to certify a class of "female Associates and Vice Presidents *in revenue-producing roles*." (May 19, 2014 Class Cert. Br. (ECF No. 247) at 3 (emphasis added).)  This limitation was clearly enunciated throughout class certification briefing.  The Objector cites to a passage in Plaintiffs' reply brief in support of

class certification that referred to "employees in the three revenue-producing divisions" (Obj. at 7 (quoting July 29, 2014 Class Cert. Reply Br. (ECF No. 310) at 1)), but ignores that the same brief makes clear that Plaintiffs moved to represent a class composed *only* of "female Associates and Vice Presidents in ***revenue-producing roles***" (Class Cert. Reply Br. at 45 (emphasis added)). Indeed, Plaintiffs' evidence in support of commonality at class certification was their statistical expert's analysis based on Goldman Sachs's Human Capital Management data ("HCM Data") *only* for employees in revenue-producing roles (*see* Class Cert. Br. at 39)—no other data was analyzed. (*See* Feb. 18, 2014 Cascio Report (ECF No. 260) ¶ 30 (analyzing "U.S.-based Associates and Vice-Presidents in ***revenue-producing roles*** of four divisions"); Nov. 19, 2013 Farber Dep. Tr. (ECF No. 362-3) at 111:4–10 (confirming his analysis was limited to individuals in "***revenue-producing position[s]*** in a revenue division during the time frame [he was] studying them") (emphases added).) Plaintiffs also expressly argued that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy were satisfied *only* for women in "revenue-producing roles" in the class-relevant divisions. (Class Cert. Br. at 3.)

The Court's Class Certification Order, in granting certification, nowhere purports to expand the class beyond the scope of Plaintiffs' motion. Nor could it have, because there was no "evidence that each of Rule 23's requirements ha[d] been met" for employees in *non*-revenue producing roles. *Johnson* v. *Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citing *Amchen Prods., Inc.* v. *Windsor*, 521 U.S. 591, 614 (1997)) (vacating and remanding district court's grant of class certification for failure to prove that Rule 23 requirements were met).

Since certification was granted, the limitation of the class to female employees in "revenue-producing" roles in three Goldman Sachs divisions has undergirded every aspect of this litigation. Merits and expert discovery were, of course, also based on HCM Data limited to

3

"Associates and Vice Presidents in 'Revenue-coded' positions in the Securities, Investment Management, and Investment Banking Divisions of Goldman Sachs who worked in the United States." (Oct. 11, 2017 Obradovich Aff. (ECF No. 546-3) ¶ 2; *see*, *e.g.*, Apr. 19, 2021 Farber Report (ECF No. 1242-44) ¶ 45 (opining that Plaintiffs' damages model was appropriate for "a class consisting of *revenue-producing employees*"); Jan. 15, 2021 Dunn Report (ECF No. 1225-56) at 3 n.4 ("[T]he Class in this case is limited to *revenue-producing professionals, as identified by the job codes used by Goldman Sachs*.") (emphases added).)

Indeed, the record in this case is replete with references to this limitation on class membership. For example:

- In a March 2020 order compelling arbitration, the Court found that "all Class Members who entered into Separation Agreements" with arbitration clauses "were well-educated professionals *in revenue-producing roles*." (Mar. 26, 2020 Order (ECF No. 983) at 31.)

- Plaintiffs' damages expert testified: Q. "Well, suppose somebody in the class *moved out of a revenue-producing position* in a revenue division during the time frame you were studying them; did you remove them from the data *for the years they were not in those revenue-producing positions*?" A. "*That was the plan*." (Nov. 19, 2013 Farber Dep. Tr. at 111:4–10.)

- Plaintiffs' industrial and organizational psychologist's expert report describing his analysis of "U.S.-based Associates and Vice-Presidents in *revenue-producing roles* of four divisions. (Feb. 18, 2014 Cascio Report ¶ 30.)

- Plaintiffs' damages expert stated in his report that he was "asked to analyze data concerning employees in *revenue-generating positions* located within three of Goldman's divisions." (Jan. 15, 2021 Farber Report (ECF No. 1250-18) ¶ 5.)

- Plaintiffs' industrial and organizational psychology expert described his focus on "the performance-review and promotion processes for U.S.-based Associates and Vice-

4

Presidents in ***revenue-producing roles*** of three divisions[.]" (Jan. 15, 2021 Cascio Report (ECF No. 1242-34) ¶ 37.)

- Defendants' industrial and organizational psychology expert opined that competency factors for "***non-revenue professionals***" are "***not relevant to this matter***." (Jan. 15, 2021 Dunleavy Report (ECF No. 1242-39) at 5A-9.)

- Plaintiffs' compensation expert opined that "Associates and Vice Presidents in ***revenue-generating roles*** at financial services firms are purposefully educated and trained with a common skill set to enable flexibility to respond to the employer's needs and changes in the market." (Mar. 19, 2021 Yermack Report (ECF No. 1242-48) ¶ 13.)

- Defendants' expert concerning Goldman Sachs's culture explained that the data analyzed in her report was "limited to people who were, at least at one relevant time, in a ***revenue-producing role*** in one of Goldman Sachs' offices in the United States, in IMD, IBD, or Securities." (Mar. 19, 2021 Stockdale Report (ECF No. 1192-10) ¶ 300, n.670.)

- Plaintiffs' damages expert testified:  Q.  "And ***did you analyze*** the data for Goldman Sachs ***employees who did not work in a revenue-generating position***?"  A. "Not that I can recall, ***no***." (May 18, 2021 Farber Dep. Tr. (ECF No. 1242-45) at 21:23–22:2.)[2]

The extensive merits and expert discovery record, which was limited to female associates and vice presidents in revenue-producing roles, further informed the parties' dispositive motions, damages calculations, settlement negotiations, and more.  There is no question that the Settlement Class definition in the Settlement Agreement is fully consistent with the scope of this litigation since Plaintiffs moved for class certification in 2014.

The Court should reject the Objector's request to expand class membership and provide settlement benefits to employees as to whom the requirements of Rule 23 *were never*

---

[2]     All bolded and italicized emphasis added.

*satisfied* and whose substantive claims *were never litigated*.  Such an expansion of the class would unfairly and arbitrarily reduce the expected recovery of those employees in revenue-producing roles on whose behalf this class action was brought.

Courts routinely reject this kind of objection seeking, at the eleventh hour, to re-define the class for the benefit of persons who were never in the class to begin with.  In *In re Marsh & McLennan Cos., Inc. Securities Litigation*, for example, a securities class action excluded the defendants' employees from the class.  2009 WL 5178546, at *8, *25.  In rejecting the objection that it was "'unfair' to exclude former employees" as "meritless," Judge McMahon emphasized that the "*class definition has always excluded . . .* Marsh employees." *Id.* at *25 (emphasis added).

Likewise, in *In re WorldCom, Inc. Securities Litigation*, the Court approved a partial final settlement of a class of "all persons and entities who purchased or otherwise acquired publicly traded securities of WorldCom during [the relevant period], and who were injured thereby."  2004 WL 2591402, at *3 (S.D.N.Y. Nov. 12, 2004) (Cote, J.).  An objector sought to "alter the class definition" to include sellers of "instruments bought by WorldCom creditors to hedge their Worldcom debt."  *Id.* at *15.  The court rejected this request because those issuers were "not members of the class" and the class action was "not brought on [their] behalf."  *Id.* Indeed, there is nothing inherently "unfair" about being excluded from a class action settlement because persons outside the settlement class are equally outside the scope of the release, and retain whatever rights they have to pursue claims.  *Melito*, 2017 WL 3995619, at *14 n.19, *20 (approving settlement and process for identifying class members as "fair and reasonable").

Contrary to the overwhelming record and applicable law, the Objector seeks to turn back the clock by a decade and have this Court redefine the class in this action, at the expense of

women in revenue-producing roles at Goldman Sachs on whose behalf this class action was litigated.  Her objection should be rejected.

## II.     GOLDMAN SACHS'S "REVENUE-PRODUCING" JOB CODE DESIGNATION IS NOT ARBITRARY.

The Objector's claim that the HCM Data, used to identify revenue-producing employees, "arbitrarily" excludes relevant individuals from the Settlement Class and results in an "unfair" allocation of Settlement Shares is demonstrably incorrect.  (Obj. at 4–6.)[3]

*First*, Goldman Sachs's designation of a position as revenue-producing is made based on the skills and responsibilities required for the role, as determined by business unit managers and HCM business partners who are familiar with the position.  Making those determinations has been part of the Firm's standard business processes and job coding since at least a decade before this class action was filed in 2010, and all business partners are trained in how to apply job codes for their divisions.

*Second*, HCM Data has consistently been used to determine which employees' job codes were "revenue-producing" throughout this case, up to and including for purposes of identifying Settlement Class members.  In fact, the Objector became a Settlement Class Member only because Goldman Sachs insisted on a *consistent* application of the "revenue-producing" designation.  In August 2023, Goldman Sachs moved the Court to include 45 Vice President Wealth Management Professionals ("VP WMPs"), including the Objector, who had inadvertently been excluded due to a "ministerial coding error" in the HCM Data.  (Aug. 26, 2023 Order (ECF

---

[3]     Because the Objector is wrong that the revenue-producing designation is "arbitrary" or that the Class should be broadened, she is equally wrong that any "sub-classes" should be credited in the Settlement or that the Settlement Agreement's notice procedures were violated in any way. (Obj. at 5–6.)

No. 1455) at 1.)  The Objector is a Settlement Class Member precisely because the "revenue-producing" designation is *not* applied arbitrarily.

Specifically, the Objector complains about the designation of the VP WMP position as revenue-producing and the Associate WMP position as non-revenue producing because, in her view and, based only on her personal experience, the two roles involve similar responsibilities. (Obj. at 2–4.)[4]  In fact, the different designations for these roles are based on meaningful differences.  For example, VP WMPs are expected to act and make decisions independently on matters of strategic importance which affect financial and legal risk to the Firm and the Firm's clients, while Associate WMPs typically would not be involved in those types of decisions without proper oversight and direction from their more senior colleagues.  The Objector's subjective views of her responsibilities are not a substitute for Goldman Sachs's reasonable business judgment about job-coding for these positions, nor do they suggest that Goldman Sachs's judgment is "arbitrary." (Obj. at 2–4.)[5]

---

[4]     The Objector also attaches to her objection a declaration from an individual who states that she is "presently excluded from being a Settlement Class Member because Goldman Sachs has chosen not to categorize Associate WMPs as 'revenue-producing.'" (*See* Obj. at 9.)  By her own admission, the declarant is not a Settlement Class Member and therefore "do[es] not have standing to object to a settlement of [the] class action." *Cent. States Se. Sw. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care*, 504 F.3d 229, 244 (2d Cir. 2007).  The declaration should not be considered by the Court.

[5]     If the Court were to accept the Objector's position that the Court must look to the specific experience of each person in a particular role to determine if she works in a "revenue-producing" position, the Settlement Class (and, indeed, the class certified at the merits stage) would not meet Rule 23's requirements because it would not be ascertainable. *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).  Ascertainability requires that a class be "defined using objective criteria that establish a membership with definite boundaries." *Id.*  If membership in the class cannot be determined using "objective" criteria such as the HCM Data, the entire basis for class treatment that the Court relied on in 2018 would be eviscerated.

At bottom, the objection amounts to a request for compensation for time spent in a *non*-revenue-producing role.  While "seeking greater compensation from" Goldman Sachs "may be preferable to" the Objector, it is not a valid basis to object to the overall fairness of the settlement.  *Davis* v. *Eastman Kodak Co.*, 2010 WL 11558014, at \*15 (W.D.N.Y. 2010) (approving settlement in class action employment litigation and rejecting objection).

## CONCLUSION

In sum, because the objection is driven by a misunderstanding of the record and has no bearing on the fairness, reasonableness, or adequacy of the Settlement, the Court should overrule her objection and finally approve the Settlement.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*

Lynne C. Hermle (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Office: (650) 614-7400
Fax: (650) 614-7401

Erin M. Connell (admitted *pro hac vice*)
Kathryn G. Mantoan (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
Office: (415) 773-5700
Fax: (415) 773-5759

Marc R. Shapiro
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Office: (212) 506-5000
Fax: (212) 506-5151

Robert J. Giuffra, Jr.
Sharon L. Nelles
Ann-Elizabeth Ostrager
Hilary M. Williams
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

Amanda Flug Davidoff
Jeffrey B. Wall (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
(202) 956-7500

*Attorneys for Defendants*
*Goldman Sachs & Co. and*
*The Goldman Sachs Group, Inc.*

9