USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __11/07/2023__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

H. CRISTINA CHEN-OSTER; SHANNA
ORLICH; ALLISON GAMBA; and MARY DE
LUIS,

              Plaintiffs,

              -against-

GOLDMAN SACHS & CO. and THE
GOLDMAN SACHS GROUP, INC.,

              Defendants.

No. 10 Civ. 6950 (AT) (RWL)

**ORDER GRANTING FINAL APPROVAL
OF SETTLEMENT, APPROVAL OF
SERVICE AWARDS, AND APPROVAL OF
CLASS COUNSEL'S FEES AND COSTS**

       The above-entitled matter came before the Court on Plaintiffs' unopposed Motions for

Final Approval of Settlement, and for Approval of Service Award and Attorneys' Fees and Costs

("Motions for Final Approval").  ECF Nos. 1447, 1450, 1460.  The settlement in this case

follows vigorously contested litigation in this Court on behalf of a class of female associates and

vice presidents in revenue-producing positions at Goldman Sachs in the Investment Banking,

Investment Management, or Securities divisions or any of their successor groupings in the

United States for nearly 13 years.

       Upon review and consideration of the Parties' submissions, including Plaintiffs'

Memorandum of Law in Support of Plaintiffs' Motions for Final Approval, supporting

declarations and exhibits, and the Parties' Stipulation and Settlement Agreement dated May 8,

2023 (the "Settlement Agreement" or "Agreement"[1]), having heard from the Parties at the

---

[1] Unless otherwise noted, capitalized terms in this Order have the same meaning as defined in the
Settlement Agreement.

Fairness Hearing held on November 7, 2023, and having evaluated the proposed settlement

under the requirements of Rule 23(e), it is **HEREBY ORDERED, ADJUDGED** and

**DECREED** as follows:

## I.      JURISDICTION

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(d), and has personal jurisdiction over the Parties and the Settlement Class

Members.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

## II.     APPROVAL OF SETTLEMENT AGREEMENT

2.      Federal Rule of Civil Procedure 23(e) requires court approval for a class action

settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed.

R. Civ. P. 23(e).  On May 15, 2023, the Court preliminarily approved the Settlement under Rule

23(e)(1).  ECF No. 1446.  Since that time, nothing has occurred to alter the Court's analysis.

The Class Member response to the Settlement has been positive, with only sixteen of 2,845 Class

Members seeking to exclude themselves.

3.      One Class Member objected to the Settlement.  ECF No. 1462-1, Ex. D.

4.      The Court has carefully reviewed the written objection and finds that it does not

affect the Court's evaluation of the Settlement's adequacy and fairness.  Plaintiffs in this case

pursued a case on behalf of women in revenue-producing roles at Goldman Sachs, and those are

the only roles that were ever at issue in the litigation or part of the putative class.  The parties did

not take discovery of non-revenue-producing roles.  Nor did Plaintiffs seek to certify a class that

included women in non-revenue-producing roles, and the parties did not negotiate for settlement

of the claims of women not in revenue-producing roles.  This is not a reflection of defect in the

litigation or settlement, but rather reflects the kind of line drawing that occurs when identifying a

class in every class action.  The written objection seeks to alter the class definition to include

people who were never in the class to begin with, which courts routinely reject. *See Fikes Wholesale Inc. v. HSBC Bank USA*, 62 F.4th 704, 714–18 (2d Cir. 2023); *see also In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5175846, at \*25 (S.D.N.Y. Dec. 23, 2009).  Women who worked in non-revenue producing roles are not affected by the Settlement, and the Settlement does not release any claims brought by such women.  The objection is, therefore, overruled.

5.      The Court hereby finally approves the Settlement as set forth in the Settlement Agreement.  The Court has reviewed the terms of the proposed Settlement Agreement along with its exhibits, including specifically the programmatic and monetary relief, and Plaintiffs' Motions for Final Approval.

6.      Based on a review of those papers, and the Court's familiarity with the case, the Court concludes that the relief provided to the class under the Settlement is the result of extensive, arm's-length negotiations and is in all respects fair, reasonable, and adequate, and binding on all members of the Class who have not opted out.  *See* Fed. R. Civ. P. 23(e); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  The programmatic and monetary relief are significant and meaningful, especially when weighed against the risks of ongoing litigation.

7.      The parties have agreed to the detailed programmatic relief as set forth in the Settlement Agreement.  For employees in the United States, for a period of three (3) years after the Settlement becomes Effective (the "Effective Period"), the proposed programmatic relief includes:

**Adjustments to Performance Evaluation and Promotion Processes:** (i) a standard validation study by APTMetrics ("APT") of Defendants' performance

evaluation processes and the process for promotion from Vice President to Managing Director within 18 months after the Effective Date and a new validation study in the event that Goldman Sachs implements substantive changes to its performance evaluation processes or to the process for promotion from Vice President to Managing Director during the Effective Period; (ii) Goldman Sachs will continue the practice of using 360 reviews primarily for professional development, and has already reduced "score compression" by largely eliminating numerical scoring; (iii) Goldman Sachs will maintain the practice of including "attribution" in 360 reviews (*i.e.*, identifying 360 reviewers by name with their feedback) in the manager's view of 360 reviews (but not in the reviewee's view) to ensure accountability for feedback and to provide managers greater context for the 360 reviews; (iv) Goldman Sachs will continue the practice of providing all employees (other than participating managing directors) a 360 review report that includes (a) written manager feedback on strengths and developmental needs, (b) a summary of risk, conduct, and control feedback and ratings, and (c) a summary of "manager effectiveness" feedback and ratings (for employees who supervise three or more direct reports); (v) Goldman Sachs will continue the practice of excluding "potential" as a criterion for performance evaluation decisions and will instruct employees that performance evaluations should be backward-looking based on employees' performance and conduct during the applicable review period; (vi) Goldman Sachs will require that managers discuss job-relevant criteria for promotion with Vice Presidents who report to them, including, where relevant in the managers' discretion, reference to the specific competencies of the Managing Director job (as will be informed by APT's validation study), and career growth opportunities in their Division and Business Unit during annual performance evaluations; (vii) Goldman Sachs will issue more explicit written guidance to 360 reviewers that they should only review employees with whom the 360 reviewers have had meaningful professional interactions, and APT will review and provide input on such written guidance prior to its publication within

Goldman Sachs; (viii) Goldman Sachs will continue the practice of using established and validated core competencies, including any new or revised competencies established by the APT's validation study, for promotion from Vice President to Managing Director, and will provide additional explicit training for employees who evaluate candidates for promotion (*i.e.*, "cross-ruffers") to evaluate candidates based on the established core competencies; (ix) Goldman Sachs will continue the practice of using structured interviews, including standardized interview questions (with the flexibility to ask additional questions, as needed) for employees who are interviewed during the promotion process from Vice President to Managing Director; (x) Goldman Sachs will continue the practice of providing goal-setting and developmental feedback at intervals throughout the year, to promote alignment of expectations between employees and managers and ongoing feedback and career coaching; and (xi) Goldman Sachs will continue the practice of monitoring outcomes in the performance evaluation processes to identify and investigate any unexplained gender-based differences and take remedial action where appropriate.

**Pay Equity Analysis:** (i) Goldman Sachs shall retain an independent labor economist to perform an annual pay equity analysis for the year-end compensation cycles for the year-end compensation cycles in 2023, 2024 and 2025, and the labor economist shall analyze (1) base pay, (2) bonus pay, and (3) equity awards (if applicable) to identify potential gender pay gaps between substantially similar employees; and (ii) if the labor economist identifies a gender pay gap, Goldman Sachs will undertake further analysis to determine whether there is a non-gender-based reason for the pay gap, and, if Goldman Sachs is unable to identify such a non-gender-based reason for the pay gap, such as a performance-based or other business rationale, Goldman Sachs will take appropriate steps to address the pay gap.

**Other:** On each anniversary of the Effective Date up to and including the third anniversary of the Effective Date (or, in each case, the business day that is prior to such

anniversary), Goldman Sachs shall confirm to Class Counsel in writing the implementation of the Adjustments to Business Practices as described in this Section.

8.      The parties have also agreed to monetary relief for Settlement Class Members, as set forth in the Settlement Agreement.  The relief to the Settlement Class Members consists of $215,000,000.00 inclusive of payment for: (a) Settlement Shares to Class Members, (b) all Service Awards paid to Settlement Class Representatives, as awarded by the Court, (c) all Class Counsel Attorneys' Fees and Class Counsel Litigation Expenses, as awarded by the Court, (d) all Settlement Administration Costs, as awarded by the Court, and (e) applicable federal, state, and local income taxes, and all federal and state unemployment taxes required by law to be withheld other than those to be paid for by Defendants.

9.      Within fourteen (14) days of the Settlement Effective Date, the Settlement Administrator will distribute checks to all Participating Settlement Class Members in the amount of her Settlement Share as determined by the Settlement Administrator based on the Plan of Allocation and $250,000.00 each to Named Plaintiffs and Settlement Class Representatives Cristina Chen-Oster, Shanna Bowman, Allison Gamba, and Mary De Luis for their approved Service Awards.  Within twelve (12) days of the Settlement Effective Date, the Settlement Administrator will also pay, or cause to be paid, by wire transfer, $71,665,000 in Court-approved attorneys' fees and $6,684,806.15 in out-of-pocket litigation costs to Class Counsel.

10.      Each Settlement Class Member will have 180 days to cash her check.  The Settlement Adminstrator will distribute a reminder postcard 60 days prior to the check expiration date, will attempt to contact Settlement Class Members who have not cashed their checks via telephone or email, will perform an address trace for any undeliverable checks, and will re-send the checks if a different address is found.

11.     If, 180 days after initial distribution from Net Settlement Fund, there is a remaining balance of more than $150,000.00 in the Net Settlement Fund, a second distribution will be made to those Participating Settlement Class Members who deposited their initial check, and will provide Participating Settlement Class Members with another 180 days to cash the second checks.  If, after this second distribution, there is a remaining balance of funds in the Net Settlement Fund (or if there is no redistribution), the remaining balance shall be paid to *cy pres* recipients the National Women's Law Center and Equal Rights Advocates.

12.     The settlement is procedurally and substantively fair, reasonable, adequate, and is not a product of collusion.  *See* Fed. R. Civ. P. 23(e); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *Gordon v. Vanda Pharms., Inc.*, No. 19 Civ. 1108, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022).

13.     The assistance of an experienced mediator reinforces that the Settlement Agreement is non-collusive.

14.     The Court finds as to the *Grinnell* factors that: (1) the likely complexity, length, and expense of further litigation favors final approval; (2) the substantial amount of discovery and litigation already undertaken favor final approval; (3) the strengths and weaknesses of Plaintiffs' case versus the benefits of the Settlement favor final approval; (4) the opinion of competent counsel favors final approval; and (5) weighing the benefits of settlement against the risk associated with proceeding with trial favors final approval.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  Furthermore, the settlement also meets the procedural and substantive requirements of Rule 23(e)(2), including because the monetary and non-monetary relief provided to the Class is adequate, and the parties' agreement treats Class Members

7

equitably to each other.  *See* Fed. R. Civ. P. 23(e)(2)(C), (D).

15.     The Court further finds that the response of the Class Members to the Settlement

Agreement supports approval of the Settlement.  As of the date of this Order, out of the

approximately 2,845 Class Members, sixteen individuals have opted out of the Settlement and

only one has objected to the Settlement.

16.     The Court finds that the *Grinnell* factors and a consideration of Rule 23(e)(2)

conclusively support a finding that the Settlement Agreement is fair, reasonable, and adequate,

and within the range of other settlements that have obtained final approval by federal courts.  *See*

*In re Electronic Books Antitrust Litig.*, 639 F. App'x 724, 727 (2d Cir. 2016); *In re DDAPV*

*Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237, 2011 WL 12627961, at \*4 (S.D.N.Y. Nov.

28, 2011).

17.     The Court finds that the notice effectuated was the best practicable notice under

the circumstances, and was accomplished in all material respects, as set forth in the Declaration

of Sara Schwermer-Sween for Rust Consulting, Inc.

18.     The Class Notice provided adequate notice of these proceedings and the terms of

the Settlement Agreement to all parties entitled to such notice.  The distribution of the notice

fully met the requirements of Rule 23 and satisfied the requirements of constitutional due process

and any other applicable law.

19.     The Settlement is hereby **APPROVED** and incorporated herein and shall become

effective according to its terms.

III.     <u>RELEASE AND DISMISSAL OF CLAIMS WITH PREJUDICE</u>

20.     Upon the Effective Date of the Settlement, each Settlement Class Member who

has not opted out will release the Defendants from:

all claims, causes of action, demands, losses, costs, interest, penalties, fees, attorneys'

fees, expenses, rights, actions, duties, obligations, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, whether known or unknown, asserted or unasserted, arising during the Settlement Class Period, that were or could have been asserted based on the facts alleged in the Complaint, including but not limited to claims for alleged disparate treatment or disparate impact discrimination on the basis of gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; NYCHRL, New York City Administrative Code § 8-107 et seq.; or any other law arising out of (i) Goldman Sachs's 360 Reviews, Manager Quartiling, or the process for promotion from Vice President to Managing Director; (ii) Goldman Sachs's procedures for determining compensation; (iii) an alleged pattern and practice of intentional discrimination related to Goldman Sachs's performance evaluation and promotion practices; and (iv) Goldman Sachs's corporate culture, only to the extent it relates to Goldman Sachs's compensation, evaluation and promotion decisions.  The Released Claims include a release of any remedy or recovery related to or arising from the Released Claims, including without limitation, back pay, front pay, compensatory damages, emotional distress damages, injunctive or other equitable relief, interest, punitive damages, and attorneys' fees.   Notwithstanding the foregoing, (i) the Settlement Class Representatives' individual non-class claims and (ii) Settlement Class Members' claims relating to accounts held by Goldman Sachs, including but not limited to custodial accounts or vested retirement benefits, are not Released Claims.

21.     As of the Effective Date, pursuant to the Judgment, and without further action by anyone, the Settlement Class Representatives and all Participating Settlement Class Members shall be deemed to have, and, by operation of the Judgment, shall have, fully, finally, and forever waived, released, and discharged all Released Claims against all Released Defendants' Persons, and shall forever be barred and enjoined from commencing, instituting, or prosecuting any action or proceeding in any court, tribunal or forum asserting any of the Released Claims against any of the Release Defendants' Persons.  This Release shall have res judicata, collateral estoppel, and all other preclusive effects in all pending and future lawsuits, arbitrations, or other suits, actions or proceedings involving any of the Release Defendants' Persons.

22.     Upon the Effective Date, all class claims, including the class claims of the Settlement Class Representatives, will be deemed voluntarily dismissed with prejudice.

23.     As set forth in the Settlement Agreement, the Settlement Class Representatives

and Participating Settlement Class Members are releasing unknown claims, and may hereafter

discover facts in addition to or different from those which she or they now knows or believes to

be true with respect to the subject matter of the Released Claims, but Settlement Class

Representatives expressly, fully, finally, and forever settle and release, and each other

Participating Settlement Class Member, upon the Effective Date, shall be deemed to have, and,

by operation of the Judgment, shall have, fully, finally, and forever settled and released, any and

all Released Claims, including known claims and unknown Released Claims, without regard to

any subsequent discovery or existence of such different or additional facts.  Settlement Class

Representatives and Defendants acknowledge, and all other Participating Settlement Class

Members shall be deemed to have acknowledged as of the Effective Date, that the inclusion of

"unknown claims" in the definition of Released Claims was separately bargained for and was an

essential element of this Settlement.

## IV.     <u>AWARD OF ATTORNEYS' FEES AND COSTS</u>

24.     The Court awards Class Counsel one-third of the settlement, or $71,665,000 in

attorneys' fees and $6,684,806.15 in out-of-pocket litigation costs for their efforts in support of

this litigation.

25.     This percentage is in line with attorneys' fees awarded in this Circuit for large

class actions.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 513–16

(S.D.N.Y. 2009) (awarding attorneys' fees of one-third of $510 million net settlement); *Hayes v.*

*Harmony Gold Mining Co.*, No. 08 Civ. 3653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2,

2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013).  The claimed lodestar of $47,285,666.50 results in

multiplier of 1.52, which also demonstrates that the requrested fee is reasonable.  *See Fikes*

*Wholesale*, 62 F.4th at 726–27; *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at

*13 (S.D.N.Y. Sept. 16, 2011).

26.     "Attorneys may be compensated for reasonable out-of-pocket expenses incurred

and customarily charged to their clients, as long as they were incidental and necessary to the

representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d

180, 183 n.3 (S.D.N.Y. 2003) (quotation marks and citation omitted).  Class Counsel's expenses

include five rounds of mediation fees, court fees, depositions (videographer and court reporter

fees), document management, expert witness fees over two rounds of expert discovery, jury

consulting fees, notice administration for both class notice and arbitration notices, case website

fees, postage, transportation, printing, copying, electronic legal research, attorney travel, and

process server fees. Reimbursement for such expenses and costs is routinely granted.  *See, e.g.*,

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728, 2020 WL 4196468, at *22 (S.D.N.Y.

July 21, 2020).

27.     The Court has also considered the factors set forth by the Second Circuit in

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), including the time and

labor expended by counsel, the magnitude and complexities of the litigation, the risk of the

litigation, the quality of representation, the requested fee in relation to the settlement, and public

policy considerations.

28.     Class Counsel engaged considerable resources in the prosecution of this case over

the course of approximately thirteen years.

29.     The attorneys at Outten & Golden LLP and Lieff Cabraser Heimann & Bernstein,

LLP, who litigated this case are experienced class action and employment lawyers with good

reputations among the class action and employment bars and significant experience in litigating

discrimination matters.  Courts have recognized them as qualified counsel in class actions,

including this Court in appointing them as Class Counsel here.  ECF No. 579.

30.     Although Class Counsel had no guarantee of any compensation in pursuing this case, and has worked without compensation for approximately thirteen years, they achieved substantial success in settling the claims on behalf of the class.

31.     The award to Class Counsel does not include all the work that Class Counsel will do in the future.

32.     In light of the above, the award of fees and costs is a reasonable award and is approved.  The award shall be paid from the gross settlement fund.

## V.     <u>SERVICE AWARD TO NAMED PLAINTIFFS</u>

33.     The Court finds that service awards of $250,000 each to Named Plaintiffs and Settlement Class Representatives Chen-Oster, Orlich, Gamba and De Luis is reasonable.

34.     Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs. *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011).

35.     Named Plaintiffs expended significant hours pursuing their claims and assisting Class Counsel, all for the benefit of the Class. *See Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.").

36.     Named Plaintiffs estimate they have spent at least 5,000 hours on behalf of the Class, from investigation, to responding to burdensome written discovery and depositions, aiding in the drafting of complaints and substantive motions, prosecuting and defending multiple appeals, preparing for trial, participating in numerous mediations, communicating with class

members, and attending court hearings over the course of this litigation (including a two-day

evidentiary hearing and oral argument on class certification). *See* Chen-Oster Decl. ¶¶ 4-21,

ECF No. 1452-4; Bowman Decl. ¶¶ 5-21, ECF No. 1452-5; Gamba Decl. ¶¶ 4-16, ECF No.

1452-6; De Luis Decl. ¶¶ 4-17, ECF No. 1452-7. Throughout the case, Named Plaintiffs

remained closely engaged with Class Counsel on all aspects of the litigation. At different points

of the litigation, each Named Plaintiff made unique contributions that only that Named Plaintiff

could make, while all four exposed themselves to critical professional risks.

37.     These endeavors illustrate the real value Named Plaintiffs provided to the case,

through years of effort. *See, e.g.*, *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011

WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Courts recognize the important factual

knowledge that named plaintiffs bring to employment class actions, including information about

employer policies and practices that affect compensation."); *In re Colgate-Palmolive Co. ERISA*

*Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014); *Parker*, 2010 WL 532960, at *1.

38.     Here, the requested service award is reasonable and is approved.

## VI.     FINAL APPROVAL OF SETTLEMENT

39.     Without affecting the finality of this Final Approval Order and Final Judgment,

the Court shall retain jurisdiction over implementation of the Settlement Agreement for one year

from the Effective Date, including without limitation the release of claims and litigation bar set

forth in Section VII.A.1 of the Settlement Agreement, distributions from the Settlement Fund,

and payment of Settlement Shares to Participating Settlement Class Members.

40.     As of the Effective Date of the Settlement, the action shall automatically be

dismissed with prejudice, except that the Court will retain continuing jurisdiction as set forth

above.

41.     The parties shall abide by all terms of the Settlement Agreement.

42.     The Clerk of Court shall terminate the motions at ECF Nos. 1447, 1450, 1460.

Any other pending motions are moot.  All conferences are vacated.  The Clerk of Court is further

directed to close the case.

SO ORDERED.

Dated:  November 7, 2023
          New York, New York

_____
ANALISA TORRES
United States District Judge