**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 20, 2024

Via ECF

The Honorable Robert W. Lehrburger,
　United States District Court for the
　　Southern District of New York,
　　　500 Pearl Street,
　　　　New York, New York 10007-1312.

　　　　Re:　*Chen-Oster, et al.* v. *Goldman, Sachs & Co., et ano.*,
　　　　　　No. 10 Civ. 6950 (AT) (RWL) (S.D.N.Y.)

Dear Judge Lehrburger:

　　　　On behalf of Goldman Sachs, I respond to Class Counsel's February 14, 2024 letter (ECF No. 1470), seeking an order requiring Goldman Sachs to preserve *all* of the documents it produced in this settled action "until at least July 2025," even though Goldman Sachs is not aware of any excluded former class member who intends to commence an arbitration against the Firm (and Class Counsel have identified no such person).  The Court should deny Class Counsel's request and should further direct Class Counsel to comply with the Protective Order and Confidentiality Agreement (ECF No. 51; "Protective Order"), including by not searching Goldman Sachs's productions for documents that they believe might be relevant to some hypothetical future arbitration by an excluded former class member.

## Background

　　　　On March 14, 2011, the Parties agreed to the Protective Order, which the Court entered on March 18, 2011.  The Protective Order requires that "[a]ll discovery shall be used solely for the purposes of prosecuting and/or defending this action."  (Protective Order ¶ 1.)  It further requires that "within sixty (60) days after . . . the complete settlement of all claims asserted against all parties in this action, the Receiving Party shall return or destroy all documents, information or things [they] received that w[ere] designated 'CONFIDENTIAL' or 'CONFIDENTIAL – ATTORNEYS' EYES ONLY.'"  (*Id.* ¶ 17.)  The Protective Order contains no exception for the theoretical possibility of future arbitrations by then-putative class members.

　　　　On March 26, 2020, Your Honor granted Goldman Sachs's motion to compel arbitration of the claims of certified class members who executed Managing Director ("MD"), Private Wealth Advisor ("PWA"), and Equity Award agreements containing arbitration clauses; individuals who executed Equity Award agreements were given the opportunity to reject arbitration and remain in the class.  (ECF No. 983 at 87–88.)  Judge Torres affirmed that Order on September 15, 2021.  (ECF No. 1264.)  Individuals excluded based on MD and PWA agreements were notified of their exclusion in February 2022.  Equity Award recipients were excluded if they failed to reject arbitration by April 8, 2022.  (ECF No. 1350 at 1.)  Class Counsel sought preliminary approval of the settlement on May 8, 2023.  (ECF No. 1440.)  On November 7, 2023, the Court granted final approval over one objection (ECF No. 1467), and the settlement became final on December 8, 2023 after the appeal period expired.  The Protective Order thus required the parties to return or destroy all confidential documents by February 8, which the parties agreed to extend to February 15 at Class Counsel's request.  (Ex. A at 9.)

On February 7, Class Counsel first raised with Goldman Sachs that they "are in the process of evaluating [the] claims" of unidentified "former class members removed from the class on account of arbitration," and were "concerned" that documents produced in this action "may be relevant" to such hypothetical claims and could "potentially be[] lost." (*Id.* at 9.) Class Counsel stated that they had performed "[a] cursory word search" within Goldman Sachs's productions (a search that is not permitted under the Protective Order's terms), which "shows that thousands of documents produced in this litigation hit on the names of the former class members." (*Id.*) To Goldman Sachs's knowledge, not one of the 742 class members excluded almost *four years ago* because they entered into valid arbitration agreements has filed an arbitration claim or asked Goldman Sachs to preserve any documents.

1.  **Goldman Sachs Has No Preservation Obligations With Respect to Unidentified Excluded Class Members, and the Court Should Not Impose Any New Obligations.**

*First*, to be clear, Goldman Sachs has complied—and will continue to comply—with any independent preservation obligations applicable to documents produced in this case. But the Firm's duty to preserve all documents produced in this action "ended upon" its conclusion, "because, at that point, future litigation was not reasonably foreseeable." *Edwards* v. *Hearst Commc'ns, Inc.*, 2017 WL 6458612, at *1, *4 (S.D.N.Y. Dec. 18, 2017) (Cott, J.). Litigation is "reasonably foreseeable" if a potential plaintiff "give[s] some specifics as to the particular claim that will be made"; it is not enough merely to "demand that defendants preserve evidence"—which, in any event, no excluded class member has done. *John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*, 2015 WL 5769943, at *1, *8 (S.D.N.Y. Oct. 2, 2015) (Gorenstein, J.) (no preservation obligation based on letter stating that defendants improperly distributed "infringing textbooks," without mention of any "specific acts of infringement" or "a list of titles that were at issue").

Critically, Goldman Sachs has "not received so much as one pre-suit letter or inquiry" related to arbitrations by excluded class members, so it is "reasonable for [Goldman Sachs] to believe that no future litigation [is] forthcoming." *Edwards*, 2017 WL 5458612, at *4. Class Counsel's assertion that they are "evaluating" potential claims of some unidentified subset of the 742 excluded class members (Ltr. at 1) lacks any "specifics as to the particular claim that will be made" and fails to identify any "reasonably foreseeable" litigation that would create a duty to preserve these documents. *John Wiley & Sons, Inc.*, 2015 WL 5769943, at *8.

*Second*, Class Counsel cites no law supporting its extraordinary request that this Court, in a now-settled case, direct Goldman Sachs to retain *all* documents produced in this litigation until "at least July 2025," while Class Counsel "evaluat[es]" potential claims by unidentified hypothetical litigants. (Ltr. at 1.) Excluded class members have had nearly four years to evaluate whether to bring individual arbitrations. At minimum, since at least early 2022, when they received notices of exclusion from the class or failed to reject their arbitration agreements, they have known that "[i]f [they] wish[ed] to pursue the claims from this class action, [they] would need to initiate an arbitration." (ECF No. 1317-1 at 2; *see* ECF No. 1303 at 5.) Since then, not one of these excluded class members has sent Goldman Sachs a retention letter or otherwise indicated any intention to commence an arbitration. Nor has Class Counsel explained how all "242,000 documents" amounting to "almost 1.2 million pages" produced by Goldman Sachs in this action—covering a period of more than fifteen years, three Goldman Sachs divisions, and thousands of employees—could conceivably be relevant in any individual arbitrations. (ECF No. 1441 ¶ 17.) Goldman Sachs should not be required to take on the burden of preserving hundreds of thousands of documents from a settled case based on Class Counsel's speculation that *some* documents *may* be relevant to hypothetical future individual arbitration when Goldman

Sachs has no other obligation to keep them. Retention policies serve legitimate business purposes, and no reason exists to question their application here.

Class Counsel are wrong in claiming that they "could not have foreseen" that certain individuals would "be excluded [from the class] on account of arbitration" when they agreed in 2011 that they would destroy Goldman Sachs's productions at the conclusion of this action. (Ltr. at 1.) By that time, Goldman Sachs had asserted as an affirmative defense that "[l]itigation in this Court is precluded with respect to" putative class members "who have executed arbitration agreements that require employment-related disputes to be submitted to arbitration" and had moved to compel the sole named plaintiff with an arbitration agreement to arbitrate her claims. (ECF Nos. 23, 29 ¶ 235.) Class Counsel agreed to the Protective Order, which governed nearly a decade of discovery. The Court should not agree to Class Counsel's post-settlement request to modify the Protective Order to permit them to "take a second bite at the proverbial apple by using materials produced in [one] matter, with the reasonable belief that they would only be used for this matter, to litigate further in [another forum]." *Nielsen Co. (U.S.), LLC* v. *Success Sys., Inc.*, 112 F. Supp. 3d 83, 122 (S.D.N.Y. 2015) (Maas, J.).

**2.      The Court Should Enforce the Agreed-Upon Protective Order.**

The Protective Order does not permit searches of "former class member names" within Goldman Sachs's productions in this now-settled action for "documents pertaining to" excluded class members that may be relevant to hypothetical future arbitrations. (Ex. A at 2, 7.) Such searches clearly violate the requirement that "[a]ll discovery shall be used solely for the purposes of prosecuting and/or defending this action." (Protective Order ¶ 1); *see Wolters Kluwer Fin. Servs. Inc.* v. *Scivantage*, 2007 WL 1498114, at *1, *9 (S.D.N.Y. May 23, 2007) (Baer, J.) (protective order prohibiting the use of information designated confidential "in any other litigation proceeding" barred use of protected information in a new action in another jurisdiction); *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 69, 70 (S.D.N.Y. Jan. 29, 2007) (Owen, J.) (defendant "[o]bviously" violated protective order by using discovery material in separate litigation).

In light of the Protective Order's clear prohibition on any searches of documents for use in hypothetical future arbitrations, Goldman Sachs requests that the Court order Class Counsel to comply with the Protective Order and refrain from using any discovery obtained from Goldman Sachs, including that which Class Counsel may retain within its "archival copies of papers filed with the Court, transcripts, work product, and correspondence" in this action (Protective Order ¶ 17), to evaluate or prosecute any other potential or actual claims.

*           *           *

Notwithstanding Class Counsel's overbroad and unfounded request, Goldman Sachs wishes to propose a reasonable resolution to this dispute. Goldman Sachs is prepared to preserve, for 90 days from the date of this letter, documents from its Employee Relations group produced in this action concerning individual former class members who (i) opted out of the class, or (ii) were excluded based on an arbitration agreement. Those documents are specific to such individuals and include, for example, individual complaints and any unprivileged notes and correspondence related to the resolution of such complaints. Given the substantial time any relevant individuals have had to evaluate their claims, 90 days is more than sufficient to allow them to conclude that evaluation and to serve document hold notices for claims that they actually intend to pursue in arbitrations.

The Honorable Robert W. Lehrburger                                                                                               -4-

                    Respectfully submitted,

                    */s/ Robert J. Giuffra, Jr.*

                    Robert J. Giuffra, Jr.
                    Sullivan & Cromwell LLP

cc:    All parties of record (by ECF)